computers.  It is obvious to one of ordinary skill in the art to place the video phone and

computer at the visitation telephone terminal 143 for communications with the user

terminal 141 that also contains these components)**; and**

> **a local server located at the secure facility the kiosk being configured to**
>
> **transmit the audio and video to the local server when the communications are**
>
> **intended for the second kiosk located in the visitation area** (col. 9 line 10-21; The
>
> call management system of the facility has a server the completes calls between the
>
> telephone terminals 141 and visitation telephones 143)**, and**

> **wherein the local server is configured to record the audio and video and**
>
> **transmit the audio and video to the second kiosk located in the visitation area**
>
> (col. 8 line 50-60; col 10 line 51-67; col. 11 line 1-29; The computer-based platform of
>
> the facility comprising a call management system and call recording system records
>
> calls for retrieval or playback  at the visitation telephones 143.  It is obvious to one of
>
> ordinary skill in the art that if a video phone is used, audio and video information are
>
> recorded and transmitted to the visitation terminal)**.**

> Regarding claim 9, Rae discloses **wherein the kiosk is configured to allow the**
>
> **user to reserve use of the kiosk by receiving a user request for use at a certain**
>
> **time and checking permissions related to the user that are stored on the server,**
>
> **and, when the user request is granted, the kiosk does not allow anyone other**
>
> **than the user to log in at the certain time** (col. 20 line 41-60; The system may also be
>
> used for tracking privileges and managing facility resources such as establishing
>
> telephone availability schedules.  Establishing a telephone schedule is analogous to

Application/Control Number: 13/088,883                                    Page 6
Art Unit: 2683

reserving use of a kiosk.  It is obvious to one of ordinary skill in the art that the tracked

privileges may apply to scheduling telephone availability.  It is further obvious to one of

ordinary skill in the art to recognize that if a telephone is not available because it is

already scheduled to another user, no other users but the scheduled user may be

permitted to use the telephone).

Regarding claim 11, Rae discloses **wherein the kiosk is configured to accept**

**messages input by the user after the user has logged on and transmit the**

**messages to the server, and the server is configured to provide a third party**

**access to the messages** (col. 19 line 24-28; col. 25 line 6-13; col. 20 line 26-30; The

kiosk requires the user to logon to the terminal before use.  The terminal may have a

computer, which is well known in the art to be capable of transmitting messages.  The

call management system allows the user to have access to external services,

analogous to providing a third party access to the messages)**.**

Regarding claim 14, Rae discloses **wherein the kiosk is configured to provide**

**the user with at least one of: access to audio, video, and text of educational and**

**religious materials stored on the server and/or the kiosk, and the ability to order**

**items from a list of commissary items** (col. 20 line 19-20; The inmate may purchase

commissary goods).

Regarding claim 15, Rae discloses **wherein the kiosk is configured to connect**

**to the Internet and provide access to authorized Internet web pages** (col. 15 line 7-

13; col. 11 line 57-67; col. 25 line 6-13; Data may be provided via the Internet.  A

validation system determines if the user is authorized to call certain parties in the

Application/Control Number: 13/088,883                                    Page 7
Art Unit: 2683

telephone only embodiment of the invention.  However, in an embodiment that allows
Internet over personal computers, one of ordinary skill recognizes that the authorization
may apply to web pages as well, as this is a medium the user may contact via the
Internet, analogous to a medium the user may contact via the telephone)**, and the
kiosk is configured to log all visited Internet web pages and to transmit logs to
the server** (col. 10 line 51-67; col. 25 line 6-13; col. 15 line 7-13; The telephone only
embodiment of the invention has a call recording system that tracks and archives all call
information.  It is obvious to one of ordinary skill in the art to recognize that this same
tracking and archiving functionality may apply to all activities on an embodiment that
uses a computer which allows access to the Internet)**.**

Regarding claim 16, Rae discloses **wherein the kiosk is configured to receive
text-based messages from a server, and to display a notification of an available
text-based message on an idle screen of the kiosk** (Abstract; col. 15 line 37-44; The
call management system has an inmate management system that allows individuals to
view notification of events on a computer for all occasions, which is interpreted to
include an idle screen of a computer.  Notifications may be in the form of emails)**.**

Regarding claim 17, Rae discloses **wherein the kiosk is configured to receive
voice or video messages from a server, and to display a notification of an
available voice or video message on an idle screen of the kiosk** (Abstract; col. 15
line 37-44; The call management system has an inmate management system that
allows individuals to view notification of events on a computer for all occasions, which is

Application/Control Number: 13/088,883                                      Page 8
Art Unit: 2683

interpreted to include an idle screen of a computer.  Notifications may be in the form of

voicemails or videomails)**.**

Regarding claim 24, Rae discloses **wherein the network is the Internet** (col. 15

3-13; Data provided via the Internet)**.**

Regarding claim 25, Rae discloses **wherein the kiosk is configured to provide**

**access to Internet web pages via a proxy server** (col. 9 line 50-64; col. 25 line 6-13;

In the call management embodiment, the processor-based server of the call application

management system 110 acts as a proxy server between the user terminals to provide

interfacing.  In an embodiment that includes computers, with access to the Internet, one

of ordinary skill in the art recognizes that the server of the management system would

also serve as a proxy server to provide interfacing between web pages of the Internet).

Regarding claim 26, Rae discloses **wherein the log in information is a**

**personal identification number** (col. 19 line 24-28)**.**

Regarding claim 32, Rae discloses **wherein the biometric verification**

**comprises a facial authentication via the camera** (col. 16 line 10-27)**.**

Regarding claim 33, Rae discloses **wherein the biometric verification**

**comprises a voice authentication via the microphone** (col. 16 line 10-27)


4.      Claim 5 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Kenoyer (U.S. Pub 2006/0259755).

Regarding claim 5, Rae does not explicitly disclose **wherein the server is**

**configured to periodically extract a frame of the video and perform a check to**

Application/Control Number: 13/088,883                                    Page 9
Art Unit: 2683

**determine if a face is present in the frame, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video.**

In an analogous art, Kenoyer discloses **wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame** (paragraph [0041]; paragraph [0044]; The video conferencing system continuously determines if a face is present and matches the stored image)**, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video** (paragraph [0042]; paragraph [0044]; The user is only authenticated if the currently captured image matches the stored image.  It is obvious to one of ordinary skill in the art that if the user is not authenticated, the user may not continue to participate in the video conference, thus ending transmission of video of the unauthenticated user to the destination)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Kenoyer's method of continuously authenticating the user in video transmission in Rae's call processing system with video phone to ensure that an unauthenticated user does not communicate over the call processing system system.


5.      Claims 6, 7 and 22 rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as applied to claim 1 above, and further in view of Hodge (U.S. 2006/0285667).

Application/Control Number: 13/088,883                                    Page 10
Art Unit: 2683

Regarding claim 6, Rae discloses the system **configured to periodically extract a frame of video and authenticate a face in the frame against a stored identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication. Biometric authentication may be required every time a user makes a call. If a user makes multiple calls, this is considered to be "periodically extracting a frame of video").

Rae does not explicitly disclose **the server** performing authentication.

In an analogous art, Hodge discloses **the server** performing authentication (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae's system with biometric authentication so that there is a central location for storing all authentication data, instead of storing authentication data at each terminal.

Regarding claim 7, Rae discloses **wherein the kiosk is configured to periodically record a frame of video and authenticates a face in the frame against a stored identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication. Biometric authentication may be required every time a user makes a call. If a user makes multiple calls, this is considered to be "periodically extracting a frame of video")**.**

Hodge discloses **transmit the frame to the server, and wherein the server processor authenticates** (paragraph [0321]-[0322]; The biometric information is transmitted from the scanner at the telephone to the site server for authentication).

Application/Control Number: 13/088,883                                    Page 11
Art Unit: 2683

Regarding claim 22, Rae discloses **a method of monitoring use of an interactive kiosk, comprising: using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication. Biometric authentication may be required every time a user makes a call.  If a user makes multiple calls, this is considered to be "periodically extracting a frame of video") **and restricting use of the kiosk when the image does not match the pre-stored image to a predetermined degree** (col. 19 line 24-28; The call is blocked if the PIN and biometric data do not match)**.**

Rae does not explicitly disclose **transmitting the image to a server; and comparing, at the server, the image with a pre-stored image of the user of the kiosk**.

In an analogous art, Hodge discloses **transmitting the image to a server; and comparing, at the server, the image with a pre- stored image of the user of the kiosk** (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae's call processing system with biometric authentication so that there is a central location for storing all authentication data, instead of having to store authentication data at each terminal.

Application/Control Number: 13/088,883                                        Page 12
Art Unit: 2683

6.      Claims 8 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Cree (U.S. Pat 6,665,380).

        Regarding claim 8, Rae does not explicitly disclose **wherein the kiosk accepts**

**anonymous messages input by the user without requiring the user to enter the**

**log in information.**

        In an analogous art, Cree discloses **wherein the kiosk accepts anonymous**

**messages input by the user without requiring the user to enter the log in**

**information** (col. 10 line 65-67; col. 11 line 1-16; Any inmate may pick up the phone

and see if they have messages.  They can access corresponding functions, and only if

they want to select a messaging function are they required to enter their account

number and PIN)**.**

        At the time of invention, it would have been obvious to one of ordinary skill in the

art to combine Cree's system that allows anonymous input in Rae's call processing

system so that users do not have to unnecessarily log in to the terminal if they don't

have any messages.


7.      Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Aiu (U.S. Pub 2004/003079).

        Regarding claim 10, Rae does not explicitly disclose **wherein, in intervals of**

**time leading up to the certain time, when a second user is logged in, the kiosk is**

**configured to display notification messages alerting the second user that the**

**second user will be logged off at the certain time due to a reservation.**

Application/Control Number: 13/088,883                                                  Page 13
Art Unit: 2683

      In an analogous art, Aiu discloses **wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification messages alerting the second user that the second user will be logged off at the certain time due to a reservation** (Figure 3; paragraph [0038])**.**

      At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Aiu's method of displaying an alert to the current user when the current user is about to be restricted in Rae's call processing system with video phone in order to alert the user that another user is scheduled to use the terminal system at an upcoming time, and the current user will no longer be allowed to use the terminal.


8.     Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as applied to claim 1 above, and further in view of Banti (U.S. Pub 2010/0313276).

      Regarding claim 12, Rae does not explicitly disclose **wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages.**

      In an analogous art, Banti discloses **wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages** (Figure 3 element 255; paragraph [0015]; The mail server prevents a second user from taking an action that is restricted, such as forwarding the message to another user)**.**

      At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Banti's method of restricting actions on messages in Rae's call

Application/Control Number: 13/088,883                                     Page 14
Art Unit: 2683

processing system to prevent outside parties from manipulating the secure messages

sent from the secure facility.


9.      Claims 13, 18, and 28-31 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Rae as applied to claim 1 above, and further in view of Cree (U.S.

Pat 6,665,380) and Mattila (U.S. Pub 2008/0129816).

        Regarding claim 13, Rae discloses **wherein the server is configured to**

**receive an incoming call for the user from a third party caller** (col. 25 line 6-13;

Where a third party caller is interpreted as a caller using a cellular phone**), determine**

**whether the user has permission to receive incoming calls** (col. 11 line 57-67; The

validation system verifies that the user is authorized to receive calls from the calling

party**), and if the user has permission, transmit the incoming call to a kiosk** (col. 12

line 27-32; The validation system used to allow calls to be completed).

        Rae does not explicitly disclose **transmit the incoming call to the kiosk and at**

**least a second kiosk, and wherein the kiosk and the second kiosk are configured**

**to, upon receipt of the incoming call, display a screen notifying the user of the**

**incoming call, and prompt the user to input the log in information.**

        Cree discloses **transmit the incoming call to the kiosk and at least a second**

**kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone

number in the cell block, where the cell block telephone is analogous to the kiosk.  At

the time of invention, it would have been obvious to one of ordinary skill in the art to

place two cell block telephones in the cell block, as this is a mere duplication of

Application/Control Number: 13/088,883                                    Page 15
Art Unit: 2683

essential working parts, in order to provide more telephones for the users)**, and
wherein the kiosk and the second kiosk are configured to, upon receipt of the
incoming call, notifying the user of the incoming call** (col. 10 line 38-50; The
inmates in the vicinity of the cell block telephone are notified that they have messages)
**and prompt the user to input the log in information** (col. 11 line 10-16)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the
art substitute Cree's method of notifying a user of an incoming call and requiring input of
login information in Rae's call processing system that has user terminals with computers
in order to alert users of incoming messages on a more modern system that provides
more user functions.

The combination of Rae and Cree does not explicitly disclose **display a screen
notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of
the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the
art to combine Mattila's method of notifying the user of an incoming call at the terminal
in Rae and Cree's call system with user terminals for receiving calls in order to
effectively notify a user of the terminal with a video phone and computer of an incoming
call request.

Regarding claim 18, Mattila discloses **wherein the kiosk is configured to
receive a visitation request from a server** (Figure 22 element 28; paragraph [0045];
The video conference terminal may accept conference sessions from another video

Application/Control Number: 13/088,883                    Page 16
Art Unit: 2683

conference terminal.  The conference session request is analogous to the visitation

request.  The conference server handles the conference requests**), and to display a**

**notification of an available visitation request on an idle screen of the kiosk**

(paragraph [0048]; paragraph [0057]; The notification is displayed on the terminal,

where the terminal may also display an idle screen.  It is obvious to one of ordinary skill

in the art that if the notification has an idle screen, a notification may be displayed on

the idle screen)**.**


Regarding claim 28, Rae discloses **a system for providing services to a**

**secure facility, the system comprising:**

 **a plurality of kiosks located at a secure facility, each kiosk comprising a**

**processor, display, speaker, and microphone** (Figure 1 element 141 and 143; col. 7

line 3-16; col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminals 141 and

visitation telephones 143, where speakers are an inherent component of a telephone.  A

camera and microphone may be placed at the terminal for biometric authentication or

general use.  In an alternative embodiment, the system may also be implemented with

video phones and computers.  At the time of invention, it would have been obvious to

one of ordinary skill in the art to have a workstation that combines the embodiments so

that there is a computer and a video phone in order to provide more services to the

workstation user.  Additionally, computers are well known in the art to have a processor

and display.  Therefore, it would have been obvious to one of ordinary skill in the art to

have a display and processor at the workstation as a part of the computer)**; and**

**a server that communicates with the kiosks and a device of an outside party via one or more network connections** (col. 9 line 14-21; col. 9 line 50-64; The network 111 connecting the telephone terminals, or any device that is coupled to the network)**, the server comprising a server processor, a network interface unit, and a computer memory** (col. 9 line 50-64; The processor-based server having a media gateway to provide communications to the user terminal.  It is well known in the art that servers have memory.  Therefore, at the time of invention, it would have been obvious to one of ordinary skill in the art to include memory in the processor-based server)**; and**

**wherein the server is configured to receive a communications request from the device of the outside party** (col. 25 line 6-13; Where a device of the outside party is interpreted as a caller using a cellular phone)**.**

Rae does not explicitly disclose **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message and initiate a login procedure**.

In an analogous art, Cree discloses **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone number in the cell block if the inmate, where the cell block telephone is analogous to the kiosk)**, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message** (col. 10 line 38-50; The inmates in the vicinity of the cell block telephone are notified that they have messages) **and initiate a login procedure** (col. 11 line 10-16).

At the time of invention, it would have been obvious to one of ordinary skill in the art substitute Cree's method of notifying a user of an incoming call and requiring input of login information in Rae's call processing system that has user terminals with computers in order to alert users of incoming messages on a more modern system that provides more user functions.

The combination of Rae and Cree does not explicitly disclose **display a screen notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Mattila's method of notifying the user of an incoming call at the terminal in Rae and Cree's call processing system with user terminals for receiving calls in order to effectively notify a user of the terminal with a video phone and computer of an incoming request.

Regarding claim 29, Rae discloses **wherein the communications request is a request to initiate a voice call or a video call** (col 25 line 6-13; The system used with telephones, cell phones, or video phones)**.**

Application/Control Number: 13/088,883                                    Page 19
Art Unit: 2683

Regarding claim 30, Rae discloses **wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server** (col. 20 line 46-60; col. 9 line 10-14; The system can store information regarding what cells the inmates are assigned to, and may schedule facility resources like establishing telephone availability schedules.  It is obvious to one of ordinary skill in the art that this may be stored in memory of the processor-based server of the system).

Regarding claim 31, Mattila discloses **wherein the kiosk is configured to play an alert tone or audio message upon receiving the message** (paragraph [0048]).


10.     Claim 19, 21, 27, 34, and 35 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rae (U.S. Pat 8,340,260), and further in view of Kennedy (U.S. Pub 2010/0256500).

Regarding claim 19, Rae discloses **a kiosk for providing facility services in a secure manner, comprising:**

**a computer processor** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  A processor is an inherent component of a computer);

**a memory connected to the processor via a bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  Memory is an inherent component of a computer);

**a camera connected to the bus for inputting video communications** (col. 16 line 13-27; The camera can capture moving images);

Application/Control Number: 13/088,883                                Page 20
Art Unit: 2683

**a microphone connected to the bus for inputting audio communications** (col. 16 line 13-27; The microphone)**;**

**a speaker connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A telephone may be at the terminal.  A speaker is an inherent component of a telephone)**;**

**a display connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  It is well known in the art that a display is a component of a personal computer.  Therefore, at the time of invention, it would have been obvious to one of ordinary skill in the art to include a display at the kiosk)**; and**

**a network interface connected to the bus for communicating with a server via a network connection** (col. 9 line 50-64; The media gateway 117 that comprises a processor-based server connects the user terminals via a network 111 in order to provide communications)**,**

**wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification** (col. 19 line 24-28; The user enters in a PIN and biometric information)**, records audio and video communications and transmits the audio and video communications to the server** (col 9 line 50-64; col. 25 line 6-13; col 10 line 51-67; col. 11 line 1-2; The user terminal receives communications from the server via the media gateway.  It is obvious to one of ordinary skill in the art that if a video phone is being used, audio and video information would be transmitted from the microphone and camera input.  The call recording system records the call at a

Application/Control Number: 13/088,883                                    Page 21
Art Unit: 2683

workstation for retrieval or playback at workstations)**, and provides access to internet web pages via a web proxy** (col. 9 line 50-64; col. 25 line 6-13; In the call management system, the processor-based server of the call application management system 110 acts as a proxy server between the user terminals to provide interfacing.  In an embodiment that includes computers, with access to the Internet, one of ordinary skill in the art recognizes that the server of the management system would also serve as a proxy server to provide interfacing between web pages)**.**

Rae does not disclose **a touchscreen display.**

In an analogous art, Kennedy discloses **a touchscreen display** (paragraph [0031]).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Kennedy's touchscreen display in Rae's computer in order to modernize the computer interface.

Regarding claim 21, it is interpreted and rejected for the same reasons as set forth in claims 9, 11, and 14 above, with the additional limitations set forth in claim 19 above.

Regarding claim 27, it is interpreted and rejected for the same reasons as set forth in claim 26 above, with the additional limitations set forth in claim 19 above.

Regarding claim 34, it is interpreted and rejected for the same reasons as set forth in claim 32 above, with the additional limitations set forth in claim 19 above.

Regarding claim 35, it is interpreted and rejected for the same reasons as set forth in claim 33 above, with the additional limitations set forth in claim 19 above.

Application/Control Number: 13/088,883                                         Page 22
Art Unit: 2683

11.     Claim 20 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae and

Kennedy as applied to claim 19 above, and further in view of Kenoyer (U.S. Pub

2006/0259755).

        Regarding claim 20, it is interpreted and rejected for the same reasons set forth

in claim 5 above, with the additional limitations set forth in claim 19 above.


12.     Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae and

Hodge as applied to claim 22 above, and further in view of Kenoyer (U.S. Pub

2006/0259755).

        Regarding claim 23, it is interpreted and rejected for the same reasons set forth

in claim 5 above, with the additional limitations set forth in claim 12 above.


                                      *Conclusion*

        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to LAURA NGUYEN whose telephone number is (571)270-

3785.  The examiner can normally be reached on Monday - Friday 9:00 AM - 5:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Brian Zimmerman can be reached on (571) 272-3059.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Application/Control Number: 13/088,883                                          Page 23
Art Unit: 2683

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/LAURA  NGUYEN/
Examiner, Art Unit 2683


                                   /Brian A Zimmerman/
                                   Supervisory Patent Examiner, Art Unit 2683

| | | | | |
|---|---|---|---|---|
| ***Notice of References Cited*** | Application/Control No.<br>13/088,883 | | Applicant(s)/Patent Under Reexamination<br>O'NEIL ET AL. | |
| | Examiner<br>LAURA NGUYEN | | Art Unit<br>2683 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,665,380 B1 | 12-2003 | Cree et al. | 379/88.25 |
| * | B | US-2004/0003079 A1 | 01-2004 | Aiu et al. | 709/225 |
| * | C | US-2006/0259755 A1 | 11-2006 | KENOYER, MICHAEL | 713/001 |
| * | D | US-2006/0285667 A1 | 12-2006 | Hodge, Stephen Lee | 379/142.05 |
| * | E | US-2008/0129816 A1 | 06-2008 | Mattila et al. | 348/14.08 |
| * | F | US-2010/0259500 A1 | 10-2010 | Kennedy, Peter | 345/173 |
| * | G | US-2010/0313276 A1 | 12-2010 | Banti et al. | 726/28 |
| * | H | US-8,340,260 B1 | 12-2012 | Rae et al. | 379/189 |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13088883 | O'NEIL ET AL. |
| | **Examiner** | **Art Unit** |
| | LAURA NGUYEN | 2683 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant      ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/18/2013 | | | | | | | |
| | 1 | ✓ | | | | | | | |
| | 2 | ✓ | | | | | | | |
| | 3 | ✓ | | | | | | | |
| | 4 | ✓ | | | | | | | |
| | 5 | ✓ | | | | | | | |
| | 6 | ✓ | | | | | | | |
| | 7 | ✓ | | | | | | | |
| | 8 | ✓ | | | | | | | |
| | 9 | ✓ | | | | | | | |
| | 10 | ✓ | | | | | | | |
| | 11 | ✓ | | | | | | | |
| | 12 | ✓ | | | | | | | |
| | 13 | ✓ | | | | | | | |
| | 14 | ✓ | | | | | | | |
| | 15 | ✓ | | | | | | | |
| | 16 | ✓ | | | | | | | |
| | 17 | ✓ | | | | | | | |
| | 18 | ✓ | | | | | | | |
| | 19 | ✓ | | | | | | | |
| | 20 | ✓ | | | | | | | |
| | 21 | ✓ | | | | | | | |
| | 22 | ✓ | | | | | | | |
| | 23 | ✓ | | | | | | | |
| | 24 | ✓ | | | | | | | |
| | 25 | ✓ | | | | | | | |
| | 26 | ✓ | | | | | | | |
| | 27 | ✓ | | | | | | | |
| | 28 | ✓ | | | | | | | |
| | 29 | ✓ | | | | | | | |
| | 30 | ✓ | | | | | | | |
| | 31 | ✓ | | | | | | | |
| | 32 | ✓ | | | | | | | |
| | 33 | ✓ | | | | | | | |
| | 34 | ✓ | | | | | | | |
| | 35 | ✓ | | | | | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 4 | ((RICHARD) near2 (TORGERSRUD)).INV. | US-PGPUB; USPAT | OR | ON | 2013/04/11 14:53 |
| S2 | 3695 | 340/5.51-5.54,5.8,5.81-5.85.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:06 |
| S3 | 1286 | 340/5.82-5.84.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:07 |
| S4 | 1033 | 340/5.52-5.53.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:08 |
| S5 | 143 | (access$3 admission entry admittance entra$4) near5 (internet audo video music movie book) and S3 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:13 |
| S6 | 126 | (access$3 admission entry admittance entra$4) near5 (internet audo video music movie book) and S4 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:13 |
| S7 | 95 | ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book)) and ((biometric facial) same (log$in identification identifier id)) and S3 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:14 |
| S8 | 85 | ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book)) and ((biometric facial) same (log$in identification identifier id)) and S4 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:14 |
| S9 | 297 | 725/30.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:53 |
| S10 | 16 | (biometric facial) and S9 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:54 |
| S11 | 4 | ((11/371641) or (10/215367)).APP. | US-PGPUB; USPAT | OR | OFF | 2013/04/11 16:01 |
| S12 | 12 | ("20020042879" | "20030229492" | "4054756" | "4933965" | "4935956" | "5274695" | "5717743" | "5923746" | "6182221" | "6219439" | "6282566" | "6377699").PN. OR ("7844252").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2013/04/11 16:01 |
| S13 | 43 | ("20020042879" | "20020177433" | "5274695" | "5473671" | "5485507" | "5502759" | "5655013" | "5717743" | "5923746" | "5943403" | "6084967" | "6104922" | "6182221" | "6213391" | "6219439" | "6282566" | "6377699" | "6389397" | "6668045" | "6687733" | "6819219" | "6836556" | "6950508").PN. OR ("7333798").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2013/04/11 16:02 |
| S14 | 310 | ("20010028649" | "20010036821" | "20010041590" | "20010047333" | "20020071537" | "20020141386" | "20020159440" | "20020176403" | "20030002639" | "20030023714" | "20030041326" | "20030091028" | "20030126470" | "20030133558" | "20030185204" | "20030198325" | "20040052218" | "20040181433" | "20060209797" | "20060285650" | "20060286962" | "20070041545" | "20070071206" | "20070115924" | "20070242658" | "20070263812" | "20080040780" | "3096404" | "3113185" | "3350515" | "3397288" | "3398288" | "3626107" | "3660610" | "3676605" | "3798382" | "3813495" | "3829617" | "3851121" | "3864519" | "3952160" | "3985956" | "3997731" | "4001513" | "4002848" | "4027109" | "4054756" | "4055730" | "4122308" | "4156799" | "4188508" | "4196317" | "4310726" | "4319091" | "4326123" | "4333056" | "4371752" | "4387274" | "4405833" | "4439636" | "4445211" | "4477698" | "4518825" | "4538030" | "4540855" | "4552996" | "4559416" | "4585904" | "4593157" | "4595983" | "4602129" | "4626630" | "4629829" | "4644109" | "4686699" | "4696028" | "4696031" | "4698840" | | US-PGPUB; USPAT; USOCR | OR | ON | 2013/04/11 16:03 |

"4712230" | "4723273" | "4726057" | "4727577" | "4731818"
"4736405" | "4737982" | "4746786" | "4763350" | "4766604"
"4768223" | "4768227" | "4769834" | "4777647" | "4782516"
"4791640" | "4794642" | "4797910" | "4799255" | "4802207"
"4803718" | "4815120" | "4825460" | "4839917" | "4850011"
"4868873" | "4885765" | "4890317" | "4896348" | "4899358"
"4899375" | "4901341" | "4908852" | "4916733" | "4920562"
"4922519" | "4922520" | "4924488").PN. OR ("4924501" |
"4932062" | "4933966" | "4933967" | "4935956" | "4937856"
"4937862" | "4943995" | "4944001" | "4947422" | "4947425"
"4979214" | "4991203" | "4993062" | "4993068" | "5003595"
"5008923" | "5020095" | "5022067" | "5023869" | "5023896"
"5023906" | "5033088" | "5054059" | "5063593" | "5093858"
"5109405" | "5131024" | "5134651" | "5150357" | "5153907"
"5155761" | "5163083" | "5164989" | "5181237" | "5187740"
"5193110" | "5200995" | "5210789" | "5216702" | "5218636"
"5220501" | "5222120" | "5229764" | "5247569" | "5255305"
"5274698" | "5276731" | "5283825" | "5283829" | "5287401"
"5305312" | "5309505" | "5311589" | "5319701" | "5319702"
"5321754" | "5323448" | "5325421" | "5325427" | "5327489"
"5329578" | "5333181" | "5335266" | "5345501" | "5345595"
"5351285" | "5351287" | "5355403" | "5369699" | "5375161"
"5381474" | "5394465" | "5416831" | "5425087" | "5428662"
"5442696" | "5450485" | "5452347" | "5455819" | "5461665"
"5465293" | "5465387" | "5471519" | "5473686" | "5483582"
"5483593" | "5485507" | "5497414" | "5504810" | "5524141"
"5524145" | "5535261" | "5539812" | "5544231" | "5566229"
"5577116" | "5583920" | "5583934" | "5606604" | "5617471"
"5619561" | "5627887" | "5634126" | "5651056" | "5655013"
"5682386" | "5722418" | "5724404" | "5742905" | "5745553"
"5745558" | "5757781" | "5768355" | "5777558" | "5796811"
"5799068" | "5805685" | "5809125" | "5844978" | "5859907"
"5862519" | "5867559" | "5875230" | "5883945").PN. OR
("5907602" | "5923746" | "5926533" | "5937042" | "5943403"
"5946386" | "5960064" | "6031895" | "6052454" | "6064963"
"6072860" | "6075843" | "6097804" | "6134320" | "6141406"
"6169789" | "6188751" | "6249570" | "6320946" | "6320948"
"6324280" | "6363065" | "6366653" | "6381321" | "6404764"
"6404857" | "6404870" | "6445682" | "6480590" | "6487200"
"6496477" | "6529500" | "6529602" | "6553336" | "6560323"
"6560325" | "6611583" | "6621812" | "6654722" | "6665380"
"6687360" | "6731630" | "6788775" | "6795444" | "6816469"
"6876647" | "6904139" | "6920209" | "6985478" | "7039171"
"7042992" | "7046782" | "7075922" | "7085359" | "7203186"
"7248680" | "7302053" | "7333798" | "7360087" | "7360090"
"7505406" | "7505409" | "7529357" | "RE37073").PN. OR
("8340260").URPN.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| S15 | 4954 | 340/5.51-5.54,5.8,5.81-5.85,5.2,5.21,5.28,5.31.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:09 |
| S16 | 452 | (prison inmate institution) and S15 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:09 |
| S17 | 203 | (prison inmate institution) and ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book media phone call telephone)) and S15 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:11 |
| S18 | 41 | (prison inmate penal correctional) and ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book media phone call telephone)) and S15 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:15 |
| S19 | 2 | (11/870157).APP. | US-PGPUB; USPAT | OR | OFF | 2013/04/11 16:18 |
| S20 | 2 | (prison inmate penal correctional) and ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book media phone call telephone)) and S19 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:20 |
| S21 | 1 | (prison inmate penal correctional) and S9 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:22 |
| S22 | 6 | (institution) and S9 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:23 |
| S23 | 168 | 455/26.1.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:25 |
| S24 | 55 | ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book media phone call | US-PGPUB; | | | 2013/04/11 16:25 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | telephone)) and S23 | USPAT | | | |
| S25 | 35 | (prison inmate penal correctional) and ((access$3 admission entry admittance entra$4) near5 (internet audio video music movie book phone call telephone)) and S15 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:35 |
| S26 | 4 | ((RICHARD) near2 (TORGERSRUD)).INV. | US-PGPUB; USPAT | OR | ON | 2013/04/15 11:50 |
| S27 | 26 | (US-20120206236-$ or US-20120023518-$ or US-20100312616-$ or US-20100083000-$ or US-20100070989-$ or US-20090228336-$ or US-20060285667-$ or US-20020116508-$ or US-20120124615-$ or US-20120096483-$ or US-20100138856-$ or US-20070250851-$ or US-20060020960-$ or US-20030198325-$ or US-20030041326-$ or US-20090046841-$ or US-20080273684-$ or US-20080040748-$ or US-20110006881-$).did. or (US-6979264-$ or US-6972660-$ or US-5923746-$ or US-8340260-$ or US-7529357-$ or US-6665380-$ or US-8374127-$).did. | US-PGPUB; USPAT | OR | ON | 2013/04/15 15:46 |
| S28 | 1 | (touchscreen) and S27 | US-PGPUB; USPAT | OR | ON | 2013/04/15 15:46 |
| S29 | 243 | (touchscreen) near5 computer and 345/173.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/16 12:21 |
| S30 | 17377 | (rout$3) with (incoming receiv$3) with (communication message request) with (terminal computer station) | US-PGPUB; USPAT | OR | ON | 2013/04/16 15:46 |
| S31 | 40 | S30 and (inmate arrestee prison jail penal correctional) | US-PGPUB; USPAT | OR | ON | 2013/04/16 15:48 |
| S32 | 1 | (10/642532).APP. | US-PGPUB; USPAT | OR | OFF | 2013/04/16 15:57 |
| S33 | 1181 | (inmate arrestee prison jail penal correctional) same (call$3 messag$3) | US-PGPUB; USPAT | OR | ON | 2013/04/16 16:55 |
| S34 | 902 | S33 and ((incoming receiv$3) with (communication message request call)) | US-PGPUB; USPAT | OR | ON | 2013/04/16 16:56 |
| S35 | 169 | S34 and "370"/$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/16 16:57 |
| S36 | 648 | S33 same5 ((incoming receiv$3) with (communication message request call)) | US-PGPUB; USPAT | OR | ON | 2013/04/16 16:58 |
| S37 | 3 | S36 and (visitation near5 request) | US-PGPUB; USPAT | OR | ON | 2013/04/16 17:09 |
| S38 | 19 | S33 same5 ((incoming receiv$3) with (communication message request call) with video) | US-PGPUB; USPAT | OR | ON | 2013/04/16 17:13 |
| S39 | 21 | (inmate arrestee prison jail penal correctional) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/16 17:17 |
| S40 | 2936 | (internet (web near3 page)) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 10:38 |
| S41 | 751 | (internet (web near3 page)) with access and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 10:38 |
| S42 | 1 | (11/359289).APP. | US-PGPUB; USPAT | OR | OFF | 2013/04/17 10:39 |
| S43 | 1211 | (reserv$3 request$3) with (computer terminal station) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 11:37 |
| S44 | 115 | ((reserv$3 request$3) near5 (computer terminal station)) and ((internet (web near3 page)) near5 access) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 11:38 |
| S45 | 161 | ((reserv$3 request$3 schedul$3) near5 (conference meeting visit visitation) near5 (computer terminal station)) and | US-PGPUB; | | | 2013/04/17 11:57 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 348/14.$.ccls. | USPAT | | | |
| S46 | 19 | ((display$3 show$3) near7 (reserv$5 request$3 schedul$3) near5 (conference meeting visit visitation) near5 (computer terminal station) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 11:59 |
| S47 | 4 | ((identify$3 determin$3 find$3) near5 (computer terminal station) near5 (nearby vicinity)) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 12:06 |
| S48 | 45 | ((server) with (rout$3) with (incoming receiv$3) with (message call visit vistation communication request) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 12:10 |
| S49 | 2770 | 382/118.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:09 |
| S50 | 32 | ((stop$4 end$3 terminat$3 restrict$3) with (video) with (transmit$4 transmission send$3 communicat$3)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:10 |
| S51 | 0 | ((stop$4 end$3 terminat$3 restrict$3) with (video)) same ((face facial) with (absent present)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:16 |
| S52 | 5467 | 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:17 |
| S53 | 1026 | ((stop$4 end$3 terminat$3 restrict$3) with (video) with (transmit$4 transmission send$3 communicat$3)) and S52 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:17 |
| S55 | 0 | ((stop$4 end$3 terminat$3 restrict$3) with (video) with (transmit$4 transmission send$3 communicat$3)) same ((face facial) with (absent absence present remov$3 missing)) and S52 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:19 |
| S56 | 5 | ((stop$4 end$3 terminat$3 restrict$3) with (video)) same ((face facial) with (absent absence present remov$3 missing)) and S52 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:20 |
| S57 | 9 | ((stop$4 end$3 terminat$3 restrict$3) with (video)) same ((face facial biometric) with (absent absence present remov$3 missing authoriz$3 unauthoriz$3 authenticat$3)) and S52 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:21 |
| S58 | 186 | ((stop$4 end$3 terminat$3 restrict$3) with (video conferenc$3)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:30 |
| S59 | 113 | ((stop$4 end$3 terminat$3 restrict$3) near5 (video conferenc$3)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:31 |
| S60 | 100 | ((stop$4 end$3 terminat$3) near5 (video conferenc$3)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:31 |
| S61 | 86 | (((stop$4 end$3 terminat$3) near5 (video conferenc$3)) same4 (face facial)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:31 |
| S62 | 54 | (((stop$4 end$3 terminat$3) near5 (video conferenc$3)) same (face facial)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:32 |
| S63 | 31 | ((stop$4 end$3 terminat$3 restrict$3) with (video)) same ((face facial) with track$3) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:35 |
| S64 | 1 | ((stop$4 end$3 terminat$3) near5 (video) near5 (transmit$4 transmission)) same ((face facial) near5 (absent absence present presence)) | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:37 |
| S65 | 115 | (face facial) same (track$3) same (end$3 terminat$3 stop$4) same (video conferenc$3) same (transmit$4 transmission send$3 communicat$3) | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:42 |
| S66 | 1748 | 725/9,10,12,14.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:54 |
| S67 | 123 | ((stop$4 end$3 terminat$3) with (transmit$4 transmission send$3 communicat$3 play$3 playback broadcast$3)) and (face facial) and S66 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:56 |
| S68 | 17 | ((stop$4 end$3 terminat$3) with (transmit$4 transmission send$3 communicat$3 play$3 playback broadcast$3)) and ((face facial) with (absent absence present presence)) and S66 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:56 |
| S69 | 12 | ((stop$4 end$3 terminat$3 restrict$3) near5 (video)) same | US- | OR | ON | 2013/04/17 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | ((face facial) near5 (present presence absent absence missing remov$3)) | US-PGPUB; USPAT | | | 18:06 |
| S70 | 385 | 725/98,99.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:12 |
| S71 | 76 | ((stop$4 end$3 terminat$3 restrict$3) with (video) with (transmit$4 transmission send$3 communicat$3)) and S70 | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:12 |
| S72 | 63 | ((notification alert warning) near10 (log$off (log$3 near3 off))) same (kiosk terminal station computer device) same (request reservation reserved) | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:27 |
| S73 | 52 | (US-20120206236-$ or US-20120023518-$ or US-20100312616-$ or US-20100083000-$ or US-20100070989-$ or US-20090228336-$ or US-20060285667-$ or US-20020116508-$ or US-20120124615-$ or US-20120096483-$ or US-20100138856-$ or US-20070250851-$ or US-20060020960-$ or US-20030198325-$ or US-20030041326-$ or US-20090046841-$ or US-20080273684-$ or US-20080040748-$ or US-20110006881-$ or US-20100259500-$ or US-20110261807-$ or US-20110206038-$ or US-20110110367-$ or US-20110110276-$ or US-20090213844-$ or US-20080170561-$).did. or (US-20070242658-$ or US-20060087555-$ or US-20050114192-$ or US-20120293597-$ or US-20110096139-$ or US-20040252184-$ or US-20070118389-$ or US-20110254913-$ or US-20040181801-$ or US-20110115877-$ or US-20060259755-$ or US-20120060176-$).did. or (US-6979264-$ or US-6972660-$ or US-5923746-$ or US-8340260-$ or US-7529357-$ or US-6665380-$ or US-8374127-$ or US-6697469-$ or US-8098804-$ or US-8019354-$ or US-7256816-$ or US-7061521-$ or US-5914747-$ or US-7362349-$).did. | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:30 |
| S74 | 15 | (minute) and S73 | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:31 |
| S75 | 17 | biometric and (user near5 (present presence absent absence)) and 725/9,10,12,14.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/18 11:47 |
| S76 | 34 | ((detect$3 sens$3) near5 (user)) same ((turn$3 shut$4 power$3 terminat$3 end$3 stop$4) near5 (transmission transmit$4 send$3 off)) and 725/9,10,12,14.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/18 11:51 |
| S77 | 29 | ((detect$3 sens$3) near5 (user)) same ((turn$3 shut$4 power$3 terminat$3 end$3 stop$4) near5 (transmission transmit$4 send$3 off)) and 382/118.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/18 11:58 |
| S78 | 1 | ("20090092293").PN. | US-PGPUB; USPAT | OR | OFF | 2013/04/18 12:05 |
| S79 | 4 | (display$3) near5 (notification alert reminder) near10 (user) near5 (log$off (logged near2 off)) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:24 |
| S80 | 80 | (display$3 show$3) near5 (notification alert reminder message) near10 (log$off (logged near2 off)) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:25 |
| S81 | 8078 | (display$3 show$3) near5 (notification alert reminder message) near10 (interval period$7) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:28 |
| S82 | 44 | S81 same ((log$4 sign$3) near3 (off out)) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:30 |
| S83 | 161 | (restrict$3) near5 (copy$3 forward$3) near5 (message) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:36 |
| S84 | 6 | S83 same ((remote third) near3 (party user)) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:46 |
| S85 | 18 | S83 same ((display$3 show$3 present$3) near3 message) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:52 |
| S86 | 1 | ("20080129816").PN. | US-PGPUB; USPAT | OR | OFF | 2013/04/18 14:15 |

**EAST Search History (Interference)**

< This search history is empty>

**4/ 18/ 2013 2:23:01 PM**
**C:\ Users\ LNGUYEN8\ Documents\ EAST\ Workspaces\ 13088883_Kiosk to authenticate users using login info and biometrics in order to provide authorized services and content to the user.wsp**



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

CONFIRMATION NO. 9388

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 RULE | 340 | 2683 | P5789.0006/P006 |

**APPLICANTS**
Richard Torgersrud, San Francisco, CA;
Kevin O'Neil, Parma, ID;
Grant Gongaware, San Francisco, CA;
Morgan Collins, San Mateo, CA;

** CONTINUING DATA ***************************

** FOREIGN APPLICATIONS ***************************

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED **
05/24/2011

| Foreign Priority claimed ☐ Yes ☑ No | ☐ Met after Allowance | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☐ No | | | | | |
| Verified and Acknowledged /LAURA N NGUYEN/ Examiner's Signature | Initials | CA | 18 | 23 | 3 |

**ADDRESS**

DICKSTEIN SHAPIRO LLP
1825 EYE STREET NW
Washington, DC 20006-5403
UNITED STATES

**TITLE**

INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

| FILING FEE RECEIVED 2216 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13088883 | O'NEIL ET AL. |
| | **Examiner** | **Art Unit** |
| | LAURA NGUYEN | 2683 |

### CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 340 | 5.51-5.54,5.8,5.81-5.85,5.2,5.21,5.28,5.31 | 4/18/2013 | LN |
| 725 | 9,10,12,14,30,98,99 | 4/18/2013 | LN |
| 382 | 118 | 4/18/2013 | LN |
| 348 | 14.01-14.16 | 4/18/2013 | LN |
| 345 | 173 | 4/18/2013 | LN |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST Search | 4/18/2013 | LN |

### INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

/L.N./
Examiner.Art Unit 2683

13088883

PLUS Search Results for S/N 13088883, Searched Tue Apr 09 08:44:36 EDT 2013
The Patent Linguistics Utility System (PLUS) is a USPTO automated search system
for U.S. Patents from 1971 to the present PLUS is a query-by-example search system which
produces a list of patents that are most closely related linguistically to the application
searched. This search was prepared by the staff of the Scientific and Technical Information
Center, SIRA.

| | |
|---|---|
| 5983200 72 | 20030038835 61 |
| 6163822 66 | |
| 6292830 66 | |
| 7740171 66 | |
| 7815107 66 | |
| 20070022008 66 | |
| 20070022046 66 | |
| 20070022047 66 | |
| 20070022048 66 | |
| 20080034065 66 | |
| 6086173 64 | |
| 6131874 64 | |
| 5940811 62 | |
| 6105007 62 | |
| 6195694 62 | |
| 5218633 61 | |
| 5255028 61 | |
| 5457636 61 | |
| 5774663 61 | |
| 5897623 61 | |
| 5949411 61 | |
| 6026387 61 | |
| 6219087 61 | |
| 6219087 61 | |
| 6246990 61 | |
| 6286029 61 | |
| 6326934 61 | |
| 6577907 61 | |
| 6680714 61 | |
| 6688518 61 | |
| 6867876 61 | |
| 6901374 61 | |
| 6959285 61 | |
| 6959286 61 | |
| 6980312 61 | |
| 7016854 61 | |
| 7249052 61 | |
| 7265776 61 | |
| 7283972 61 | |
| 7359078 61 | |
| 7664679 61 | |
| 7797374 61 | |
| 8190483 61 | |
| 20020078459 61 | |
| 20020082962 61 | |
| 20020089971 61 | |
| 20020097715 61 | |
| 20020123933 61 | |
| 20020165923 61 | |



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 |

**CONFIRMATION NO. 9388**

24998
DICKSTEIN SHAPIRO LLP
1825 EYE STREET NW
Washington, DC 20006-5403

**PUBLICATION NOTICE**

*OC000000057150969*

**Title:** INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

**Publication No.** US-2012-0262271-A1
**Publication Date:** 10/18/2012

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

Docket No.: P5789.0006/P006
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Kevin O'Neil et al.

| | |
|---|---|
| Application No.: 13/088,883 | Confirmation No.: 9388 |
| Filed: April 18, 2011 | Art Unit: 2172 |
| For:  INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY | Examiner: Not Yet Assigned |

## FIRST PRELIMINARY AMENDMENT UNDER 37 C.F.R. 1.115

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

### INTRODUCTORY COMMENTS

Prior to examination on the merits, please amend the above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 9 of this paper.

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

## AMENDMENTS TO THE CLAIMS

1.      (Currently amended)   A system for providing services to a secure facility, the system comprising:

a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

a server that communicates with the kiosk via ~~an internet~~ a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the ~~internet~~ network connection,

wherein the server records the audio and video and transmits the audio and video to a destination, and

wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying ~~a personal identification number~~ log in information entered by the user and also performing a biometric verification ~~one or more of a facial recognition via the camera and a biometric voice recognition via the microphone~~.

2.      (Currently amended)   The system of claim 1, wherein the destination is a ~~computer~~ device communicating with the server ~~via a web interface,~~ and the server is configured to authenticate a user of the ~~computer~~ device ~~via the web interface~~.

3.      (Original)      The system of claim 1, wherein the destination is a second kiosk located in a visitation area of a second secure facility.

4.      (Currently amended)   The system of claim 1, further comprising:

a second kiosk located in a visitation area of the secure facility; and

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

a local server located at the secure facility

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area, and

wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5.      (Original)      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video.

6.      (Original)      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7.      (Original)      The system of claim 1, wherein the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8.      (Currently amended)  The system of claim 1, wherein the kiosk accepts anonymous messages input by the user without requiring the user to enter the log in information ~~personal identification number~~.

9.      (Original)      The system of claim 1, wherein the kiosk is configured to allow the user to reserve use of the kiosk by receiving a user request for use at a certain time and checking permissions related to the user that are stored on the server, and, when the user request is granted, the kiosk does not allow anyone other than the user to log in at the certain time.

10.     (Original)      The system of claim 9, wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification

DSMDB-3014989v1

Application No. 13/088,883                                          Docket No.: P5789.0006/P006
First Preliminary Amendment

messages alerting the second user that the second user will be logged off at the certain time due to a
reservation.

    11.    (Currently amended)  The system of claim 1, wherein the kiosk is configured to
accept messages input by the user after the user has logged on and transmit the messages to the
server, and the server is configured to provide a third party access to the messages ~~via a web
interface of the server~~.

    12.    (Original)     The system of claim 11, wherein the server is configured to present
the messages via the web interface such that the third party is restricted from copying or forwarding
the messages.

    13.    (Currently amended)  The system of claim 1, wherein the server is configured to
receive an incoming call for the user from a third party caller, determine whether the user has
permission to receive incoming calls, if the user has permission, transmit the incoming call to the
kiosk and at least a second kiosk, and

        wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call,
display a screen notifying the user of the incoming call, and prompt the user to input the log in
information.

    14.    (Original)     The system of claim 1, wherein the kiosk is configured to provide the
user with at least one of: access to audio, video, and text of educational and religious materials
stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.

    15.    (Currently amended)  The system of claim 1, wherein the kiosk is configured to
connect to the Internet and provide access to authorized Internet web pages ~~via a proxy that restricts
access to authorized domains~~, and the kiosk is configured to log all visited Internet web pages and
to transmit logs to the server.

DSMDB-3014989v1

4

16.     (Original)     The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

17.     (Original)     The system of claim 1, wherein the kiosk is configured to receive voice or video messages from a server, and to display a notification of an available voice or video message on an idle screen of the kiosk.

18.     (Original)     The system of claim 1, wherein the kiosk is configured to receive a visitation request from a server, and to display a notification of an available visitation request on an idle screen of the kiosk.

19.     (Currently amended)   A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a speaker connected to the bus ~~speaker~~;

a touchscreen display connected to the bus; and

a network interface connected to the bus for communicating with a server via ~~the Internet~~ a network connection,

wherein the kiosk authenticates a user by receiving personal log in information ~~a personal identification number~~ and comparing the received personal log in information ~~identification number~~ against a known personal log in information ~~identification number~~ associated with the user, verifies the user's identity using a biometric verification ~~one of facial authentication of an image captured by~~

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

~~the camera and voice authentication of an audible phrase recorded using the microphone~~, records audio and video communications and transmits the audio and video communications to the server, and provides access to ~~the~~ internet <u>web pages</u> via a web proxy.

20.    (Original)    The kiosk of claim 19, wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, and stop transmitting video when a face is not present.

21.    (Original)    The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational and religious materials; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.    (Original)    A method of monitoring use of an interactive kiosk, comprising:

using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk; transmitting the image to a server; comparing, at the server, the image with a pre-stored image of the user of the kiosk; and restricting use of the kiosk when the image does not match the pre-stored image to a predetermined degree.

23.    (Original)    The method of claim 22, further comprising:

periodically extracting a frame of the video information during use of the kiosk to transmit video information;

determining whether the frame includes an image of a human face; and restricting transmission of the video information when the frame does not include an image of a face.

24.    (New)   The system of claim 1, wherein the network is the Internet.

25.    (New)   The system of claim 15, wherein the kiosk is configured to provide access to Internet web pages via a proxy server.

DSMDB-3014989v1

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

26.     (New)  The system of claim 1, wherein the log in information is a personal identification number.

27.     (New)  The system of claim 19, wherein the personal log in information is a personal identification number.

28.     (New)  A system for providing services to a secure facility, the system comprising:

a plurality of kiosks located at a secure facility, each kiosk comprising a processor, display, speaker, and microphone; and

a server that communicates with the kiosks and a device of an outside party via one or more network connections, the server comprising a server processor, a network interface unit, and a computer memory;

wherein the server is configured to receive a communications request from the device of the outside party and, in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and

wherein the kiosk is configured to receive the message, and, upon receipt of the message, display an incoming communications request message and initiate a login procedure.

29.     (New)  The system of claim 28, wherein the communications request is a request to initiate a voice call or a video call.

30.     (New)  The system of claim 28, wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server.

31.     (New)  The system of claim 28, wherein the kiosk is configured to play an alert tone or audio message upon receiving the message.

DSMDB-3014989v1

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

32.    (New)  The system of claim 1, wherein the biometric verification comprises a facial authentication via the camera.

33.    (New)  The system of claim 1, wherein the biometric verification comprises a voice authentication via the microphone.

34.    (New)  The kiosk of claim 19, wherein the biometric verification comprises a facial authentication of an image captured by the camera.

35.    (New)  The kiosk of claim 19, wherein the biometric verification comprises a voice authentication of an audible phrase recorded using the microphone.

DSMDB-3014989v1

Application No. 13/088,883                                       Docket No.: P5789.0006/P006
First Preliminary Amendment

## **REMARKS**

Applicant requests entry of the foregoing amendment prior to examination.  Claims 1-35 are pending.  Claims 1, 2, 4, 8, 11, 13, 15, and 19 have been amended and claims 24-35 are newly added.  Applicant reserves the right to pursue the original claims and other claims in this and other applications.  Favorable consideration on the merits is respectfully solicited.

Dated:  February 3, 2012                       Respectfully submitted,

By _____
Gianni Minutoli
   Registration No.: 41,198
Jonathan L. Falkler
   Registration No.: 62,115
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403
(202) 420-2200
Attorneys for Applicant

DSMDB-3014989v1

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13088883 |
| **Filing Date:** | 18-Apr-2011 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard Torgersrud |
| **Filer:** | Mark J. Thronson/Madeline Baker |
| **Attorney Docket Number:** | P5789.0006/P006 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 1202 | 12 | 60 | 720 |
| Independent claims in excess of 3 | 1201 | 1 | 250 | 250 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **970** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11995866 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 24998 |
| **Filer:** | Mark J. Thronson/Madeline Baker |
| **Filer Authorized By:** | Mark J. Thronson |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 03-FEB-2012 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 15:00:10 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $970 |
| RAM confirmation Number | 1395 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | | Document.pdf | 346997<br><br>5fae5418c7a13bd5b24e5a25e6c4cd4abbe8a915 | yes | 9 |

| **Multipart Description/PDF files in .zip description** | | |
| --- | --- | --- |
| **Document Description** | **Start** | **End** |
| Preliminary Amendment | 1 | 1 |
| Claims | 2 | 8 |
| Applicant Arguments/Remarks Made in an Amendment | 9 | 9 |

| **Warnings:** |
| **Information:** |

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 32009<br><br>9ddcc4e731a67db142de3df747b19b7f8c261d83 | no | 2 |

| **Warnings:** |
| **Information:** |

| **Total Files Size (in bytes):** | 379006 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>13/088,883 | Filing Date<br>04/18/2011 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|

| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | colspan: If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |

\* If the difference in column 1 is less than zero, enter "0" in column 2.   | TOTAL | | TOTAL |

### APPLICATION AS AMENDED – PART II

| | | | | | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY |

| AMENDMENT | 02/03/2012 | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 35 | Minus | ** 23 | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | *** 3 | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

| AMENDMENT | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/PEGGY YARBOROUGH/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | 2172 | 1246 | P5789.0006/P006 | 23 | 3 |

CONFIRMATION NO. 9388

24998
DICKSTEIN SHAPIRO LLP
1825 EYE STREET NW
Washington, DC 20006-5403

**FILING RECEIPT**

*OC000000047858268*

Date Mailed: 05/26/2011

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**

> Richard Torgersrud, San Francisco, CA;
> Kevin O'Neil, Parma, ID;
> Grant Gongaware, San Francisco, CA;
> Morgan Collins, San Mateo, CA;

**Power of Attorney:** The patent practitioners associated with Customer Number 24998

**Domestic Priority data as claimed by applicant**

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)

**If Required, Foreign Filing License Granted:** 05/24/2011

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/088,883**

**Projected Publication Date:** 10/18/2012

**Non-Publication Request:** No

**Early Publication Request:** No

**Title**

INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

**Preliminary Class**

715

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 13/088,883 |

### APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 330 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 540 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 220 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 23 minus 20 = | * 3 | | | OR | x 52 = | 156 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = | | | | | x 220 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1246 |

### APPLICATION AS AMENDED - PART II

#### AMENDMENT A

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

#### AMENDMENT B

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
  The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

PTO/SB/05 (08-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| UTILITY PATENT APPLICATION TRANSMITTAL *(ONLY FOR NEW NONPROVISIONAL APPLICATIONS UNDER 37 CFR 1.53(B))* | Attorney Docket No. | P5789.0006/P006 |
|---|---|---|
| | First Inventor | Kevin O'Neil |
| | Title | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| | Express Mail Label No. | |

**APPLICATION ELEMENTS**
*See MPEP chapter 600 concerning utility patent application contents.*

**ADDRESS TO:**   Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

1. ☐ Fee Transmittal Form (e.g., PTO/SB/17)
2. ☐ Applicant claims small entity status. See 37 CFR 1.27.
3. ☒ Specification [Total Pages **43**]
   Both the claims and abstract must start on a new page
   (For information on the preferred arrangement, see MPEP 608.01(a))
4. ☒ Drawing(s) (35 U.S.C. 113) [Total Sheets **18**]
5. Oath or Declaration [Total Sheets **20**]
   a. ☒ Newly executed (original or copy)
   b. ☐ A copy from a prior application (37 CFR 1.63(d))
      *(for continuation/divisional with Box 18 completed)*
      i. ☐ DELETION OF INVENTOR(S)
         Signed statement attached deleting inventor(s) name in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).
6. ☐ Application Data Sheet. See 37 CFR 1.76
7. ☐ CD-ROM or CD-R in duplicate, large table or Computer Program (Appendix)
   ☐ Landscape Table on CD
8. Nucleotide and/or Amino Acid Sequence Submission (if applicable, items a. – c. are required)
   a. ☐ Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or   ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

**ACCOMPANYING APPLICATION PARTS**

9. ☐ Assignment Papers (cover sheet & document(s))
   Name of Assignee
10. ☐ 37 CFR 3.73(b) Statement   ☐ Power of Attorney
    (when there is an assignee)
11. ☐ English Translation Document (if applicable)
12. ☐ Information Disclosure Statement (PTO/SB/08 or PTO-1449)
    ☐ Copies of citations attached
13. ☐ Preliminary Amendment
14. ☐ Return Receipt Postcard (MPEP 503)
    (Should be specifically itemized)
15. ☐ Certified Copy of Priority Document(s)
    (if foreign priority is claimed)
16. ☐ Nonpublication Request under 35 U.S.C.122 (b)(2)(B)(i).
    Applicant must attach form PTO/SB/35 or equivalent.
17. ☐ Other:

18. If a CONTINUING APPLICATION, check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:
    ☐ Continuation   ☐ Divisional   ☐ Continuation-in-part (CIP)   of prior application No.: _____
    *Prior application information:* Examiner _____   Art Unit: _____

**19. CORRESPONDENCE ADDRESS**

| ☒ The address associated with Customer Number: | 24998 | *OR* | ☐ Correspondence address below |
|---|---|---|---|

| Name | Gianni Minutoli DICKSTEIN SHAPIRO LLP | | | | |
|---|---|---|---|---|---|
| Address | 1825 Eye Street, NW | | | | |
| City | Washington | State | DC | Zip Code | 20006-5403 |
| Country | US | Telephone | (202) 420-2200 | Email | |

| Signature | | Date | April 18, 2011 |
|---|---|---|---|
| Name (Print/Type) | Gianni Minutoli | Registration No. (Attorney/Agent) | 41,198 |

DSMDB-2921541v1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICATION FOR U.S. LETTERS PATENT

Title:

INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE
FOR USE IN A SECURE FACILITY

Inventors:

Richard Torgersrud
Kevin O'Neil
Grant Gongaware
Morgan Collins

Citizenships: US, US, US, US

DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200

DSMDB-2863401v1

# INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE
## FOR USE IN A SECURE FACILITY

### FIELD OF THE INVENTION

[0001]     Embodiments described herein relate generally to interactive computer systems, and more specifically to providing a mutipurpose interactive audio/video platform and device for use in a secure facility.

### BACKGROUND OF THE INVENTION

[0002]     Secure facilities such as prisons, institutions, and other government facilities house large populations of individuals in confinement.  Such facilities present unique administrative challenges – including challenges related to providing educational, entertainment, communications, and other services.  Most notably, secure facilities require additional levels of monitoring and oversight that are not required when similar services provided to other populations.  Additionally, since a large number of individuals may be confined in a relatively small space, certain efficiencies must be achieved to effectively administer the various services of the facility.

[0003]     Currently, the services are provided piecemeal – with each service handled by different technological means and often even different departments or service providers.  For example, one service provider may provide telecommunications service, while another handles educational or entertainment programs.  These services are provided separately from purely administrative services such as scheduling visitations, processing complaints, providing commissary services, or other facility requirements that may be provided by in-house departments of the secure facility.  Significant efficiencies can be achieved by automating these various services and by providing them in a centralized manner.  Moreover, providing these

1

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

services by a centralized computer system can facilitate more effective monitoring of resident activity.  With more effective monitoring in place, it is possible to provide additional services that can provide supplemental revenue to the facilities.  Accordingly, there is a need for a way to administer various services required in a secure facility that is efficient, secure, and effective.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0004]    FIG. 1 illustrates an embodiment of the interactive audio/video platform.

[0005]    FIG. 2 illustrates the organization and interaction of clusters of another embodiment of the interactive audio/video platform.

[0006]    FIG. 3 illustrates an example kiosk for use in the interactive audio/video platform.

[0007]    FIG. 4 illustrates an example processor-based computer system of the kiosk.

[0008]    FIG. 5 illustrates an example idle screen of a kiosk interface described herein.

[0009]    FIG. 6 illustrates an example reservation screen of the kiosk interface.

[0010]    FIG. 7 illustrates an example login screen of the kiosk interface.

[0011]    FIG. 8 illustrates an example voice verification screen of the kiosk interface.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0012]   FIG. 9 illustrates an example facial recognition verification screen of the kiosk interface.

[0013]   FIG. 10 illustrates an example main screen of the kiosk interface.

[0014]   FIG. 11 illustrates an example phone screen of the kiosk interface.

[0015]   FIG. 12 illustrates an example voicemail screen of the kiosk interface.

[0016]   FIG. 13 illustrates an example bail bonds screen of the kiosk interface.

[0017]   FIG. 14 illustrates an example video conferencing screen of the kiosk interface.

[0018]   FIG. 15 illustrates an example video messaging screen of the kiosk interface.

[0019]   FIG. 16 illustrates an example kite screen of the kiosk interface.

[0020]   FIG. 17 illustrates an example internet screen of the kiosk interface.

[0021]   FIG. 18 illustrates an example fund request screen of the kiosk interface.

DETAILED DESCRIPTION OF THE INVENTION

[0022]   Embodiments described herein address the problems with current provision of administrative services for secure facilities such as prisons or other government detention centers. The described embodiments provide a customized interactive audio/video platform for providing administrative services. The customized interactive audio/video platform includes, among other things, kiosks at secure facilities that are interconnected via a central

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

processing platform providing enhanced security and monitoring services. The kiosks provide, among other things, telephony services, video conferencing, text messaging, tele-medical services, religious and educational services, commissary services, entertainment services, and social networking. The services are provided in a manner that meets the strict guidelines of a secured facility such as, e.g., a prison.

[0023]    Embodiments may be implemented using computer hardware or software, or a combination of both. Computer software implementing features of the embodiments may be stored as instructions on a tangible computer readable medium. References to the "system" or "platform" describe specific embodiments and do not limit the scope of the claimed invention.

[0024]    Though embodiments are described with reference to facilities such as prisons or detention facilities, the embodiments described herein could be used in any facility requiring consolidated secure services.

[0025]    It should be understood that embodiments of the invention are not limited by the example embodiments described herein and that changes can be made thereto.  Example embodiments are now described with reference to the accompanying figures wherein like reference numbers are used consistently for like features throughout the drawings.

[0026]    FIG. 1 illustrates an embodiment of an example interactive audio/video platform 25 that includes kiosks 102 for providing administrative services at multiple facilities 100. The platform 25 includes a processing center 150 connected to one or more facilities 100 through a network such as, e.g., the Internet 190. Facilities 100 may be any facilities requiring voice, video and/or information services, especially those with security requirements and a large traffic volumes, including secure facilities such as prisons or other government detention

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

facilities. Each facility 100 contains at least one kiosk 102. Each kiosk 102 is connected to a router 104 via a networking link 120. The routers 104 are configured to communicate with the processing center 150, which may be distributed across several locations. The routers 104 each connect the communications received from the kiosks 102 to the Internet 190, and exchange IP (Internet Protocol) packets bidirectionally between the processing center 150 and facility 100. The processing center 150 includes application hardware and software for data processing and the other functions described below.

[0027]     The processing center 150 is a system that is distributed across multiple clusters 151-153, which may or may not be geographically diverse (described below in more detail). Each cluster 151-153 hosts multiple nodes, including an application node, a database node, and a traffic processing node (discussed below in relation to FIG. 2). The clusters 151-153 communicate with each other via the Internet or dedicated connections, and information in any database node can be shared among the clusters 151-153. Data storage and retrieval can be performed across several clusters. The clusters 151-153 can also provide fail-over for one another, and routers 104 at each facility may be configured to communicate with another cluster if a primary cluster is unavailable. Similarly, resources of the nodes within a cluster (which may include multiple computers) can be reallocated as processing needs require.

[0028]     One function of the processing center 150 is to route communications from facility residents using kiosks 102 to outside parties 180, 181.  The processing center 150 routes voice, text, and/or video traffic from facility kiosks 102 to their ultimate destinations 180, 181.  To route voice communications traffic, the processing center 150 communicates via internet protocol to a "VoIP-to-POTS" provider 160, which converts VoIP communications to POTS communications.  Example VoIP-to-POTS providers 160 include Paetech, Level 3, and

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

Verizon.  After converting the VoIP signal to a POTS signal, the VoIP-to-POTS provider 160 provides the communication to a telecommunications provider 170 that routes the call to the called parties 180, 181.

[0029]   The processing center 150 may be in communication with multiple VoIP-to-POTS providers 160, and may route communications to any one of the providers 160 based on various factors including time-of-day, load, or rates.  Similarly, the processing center 150 or the VoIP-to-POTS provider 160 may route calls to various telecommunications providers 170 based on factors including time-of-day, load, or rates.  For example, VoIP-to-POTS providers 160 often have connection limits.  Therefore, the processing center 150 may be configured to first attempt a connection to a primary VoIP-to-POTS provider 160 with a low rate for a given call destination.  If that connection is refused, then the processing center 150 would be configured to attempt connections to a second, and perhaps third VoIP-to-POTS provider 160 until a connection is established.

[0030]   The processing center 150 can also receive calls from outside parties 180, 181 and route the calls to facility kiosks 102.  The VoIP-to-POTS provider 160 may convert the POTS signal to a VoIP signal before the communication is sent to the processing center 150.  Alternatively, although not shown in FIG. 1, the outside callers 180, 181 may place a call using the traditional telecommunications provider 170 and may be directly connected to the processing center 150 where the signal is converted using an A/D converter.  The processing center can connect outside callers 180, 181 to residents and can also allow outside callers 180, 181 to leave voicemail messages.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0031]     The processing center 150 also routes video and text communications. Communications received from facility routers 104 are stored or cached on web servers in the processing center 150 or on third party web servers.  In addition to storing communications routed through the processing center 150, the processing center 150 may be configured to receive and store recordings of local communications that have been recorded at the facilities 100 (e.g., local video communications).  The communications stored at the processing center 150 can be accessed by an outside party 180, 181 by using a web browser on a computer connected to the Internet 190.  The processing center is also configured to receive requests for data from the routers 104, such as hypertext transfer protocol (HTTP) requests, and return information to the routers 104, such as information on a third party website.

[0032]     Another function of the processing center 150 is to log information into databases.  The processing center 150 logs all voice and data traffic, and may record voice or video traffic according to predefined rules.  The processing center 150 also logs all failed and/or blocked communication attempts, such as attempts to call third parties that a facility resident is prohibited from contacting.  Local activity logs on the kiosks 102 may be periodically uploaded to the processing center 150.

[0033]     FIG. 2 is a system diagram showing the organization and interaction of clusters of another example interactive audio/video platform 225. FIG. 2 illustrates multiple facilities 200, each connected to the Internet 290 via a router 204.  The facilities 200, which may include at least one kiosk, communicate, via the Internet 290, with a processing center 250 that is made up of multiple call clusters 251-254.

Docket No.:   P5789.0006/P006

[0034]     FIG. 2 illustrates a first central processing cluster 251 in location A, a second central processing cluster 252 in location B, a third central processing cluster 253 in location C, and a fourth central processing cluster 254 in location D.  The central processing clusters 251-254 together operate as the processing center 250, and each cluster may include one or many computers functioning together to perform various tasks.  The central processing clusters 251-254 may be located in different geographic regions, and one or more of the central processing clusters 251-254 may function as backup clusters or overflow clusters, operating only when other clusters are unavailable or overloaded.

[0035]     The routers 204 at each facility 200 may be configured to route communications for a particular facility to a predetermined central processing cluster, and may be set to route communications to another central processing cluster if the predetermined central processing cluster is unavailable.  Alternatively, the routers 204 may be configured to distribute communications across multiple processing clusters according to a predetermined ratio (described below).  These two configurations may be used alternatively or in conjunction with one another, and their use could be determined based on the traffic load on a network.

[0036]     The routers 204 may also be configured to route communications over multiple outbound network connections at each facility 200.  The router 204 may be configured to use a second network connection when a first network connection is unavailable.  For example, a facility may be serviced (i.e., communication with the outside world) by a DSL line and a T1 line, and the DSL line may be used as a backup when the T1 line becomes unavailable.  As mentioned above, a router 204 may also be configured to distribute communications across multiple network connections according to a predetermined ratio.  For example, if a facility is serviced by multiple T1 lines, the router 204 may be configured to distribute the call-data load

8

Docket  No.:    P5789.0006/P006

across the T1 lines to a single cluster, or multiple clusters, allowing a large capacity of calls to be carried simultaneously.  These configurations may be used alternatively or in conjunction with one another, and their use could be determined based on the traffic load on the network.

[0037]    Each central processing cluster 251-254 includes multiple nodes each performing various functions.  A central processing cluster may be one computer that is divided into virtual servers, each of which is treated as a node in the cluster.  Alternatively, each node may be a dedicated computer, or multiple computers can form each node.  Servers can be added as necessary to increase capacity of the cluster.

[0038]    An example cluster for use in a secure facility is now described.  Secure facilities, such as prisons, have unique features that must be addressed by the interactive audio/video platform 225.  For example, residents have limited access to cash, and so the platform provides various ways of paying for telephone and/or data access.  An account is established for each resident, and funding of the account is provided via kiosks, calling cards, and an interactive voice response system.  Provisioning for outside funding may also be desirable.  Accordingly, the platform 225 may provide for funding of an account by an outside party via live customer service, an interactive voice response system, a website, or kiosks in visiting areas of the facilities.

[0039]    The interactive audio/video platform 225 may also allow collect calls to be placed  by residents.  A common problem with collect call systems is that, because a called party may not recognize the number or know what individual from the facility is calling, there must be a way for a resident to identify themselves.  In traditional collect call systems, an individual may be allowed to record their name to be played to a called party.  This, however,

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

can permit the transmission of a short message without payment for use of the system. Accordingly, the platform 225 may instead retrieve and play an audio clip of the inmate's name that was recorded under supervision, or that was recorded by another party, or generated by a voice synthesizer.

[0040]    System accounts must be tied to particular facility residents and must be only accessible by those facility residents.  To accomplish this, the platform 225 may require a resident, upon accessing the system, to enter a unique PIN number that is associated with the resident.  Additional PIN numbers may be required to access voicemail or other secure features. The platform 225 may also include voice and/or facial recognition features, described in more detail below.

[0041]    Secure facilities also often place restrictions on the communications of residents.  Accordingly, the platform 225 is able to automatically restrict a resident from making calls or video and text communications with certain destinations based on restrictions noted in the residents' accounts.  Similarly, the platform 225 prevents outside callers from leaving voicemail messages for inmates that are restricted from communicating with the outside caller. The platform 225 may also place time limits on calls, and may include audio and/or video warnings that a call may be cut off due to time restrictions.  Additionally, the platform 225 may prevent a resident from accessing certain kiosk features, such as entertainment features, based on a variety of time, facility, or other rules.

[0042]    Secure facilities also require activity logging and monitoring capabilities. The logging may include storing information such as when a communication was made, to whom, and how long it lasted.  Full audio and/or video recording of communications may also be

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

necessary in prisons, for example, where virtually all communications need to be recorded and retrieved by investigators.  Investigators may also need to monitor live communications.  These functions can be automated by the platform 225.  The platform 225 may also be set to not record certain communications, such as communications between an inmate and his attorney or a doctor.  This can be automated by including attorney or doctor numbers on a "do-not-record" list for the system or resident's account or by providing an option to request that a communication not be recorded via an interactive response system.  The request may be reviewed by a live operator for authenticity, or may be logged for further review to detect abuse.

[0043]    Each central processing cluster 251-254 includes a data processing node 256.  The data processing node 256 hosts data routing, communication recording, and logging functionality.  The data processing node 256 is also responsible for digital signal processing. Audio routing and recording may be used to process and route calls to destination parties, or to record and retrieve voicemail messages or communications records.  The data processing node 210 may be one or many computers functioning together to form the node.

[0044]    The data processing node 256 is responsible for routing communications to telecommunications providers 270 and routing video and data traffic to and from other kiosks 102 or third party servers 203.  For telephone calls, a distributed carrier system allows clusters to access multiple VoIP-to-POTS providers 260 and telecommunications providers 270 to terminate any call.  If one carrier is overloaded, the data processing node 256 will seek the next available carrier based on a set of predefined rules that govern priority.  Priority can be set based on factors such as rate, time of day, call termination point, and carrier load.  The data processing node 256 may optionally track the number of connections sent to a single carrier, and

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

automatically route calls to a different carrier based on the carrier load.  Call processing administrators can adjust the priority at any time via a single, dedicated interface.

[0045]    Each central processing cluster 251-254 includes an application node 257. The application node 257 hosts payment validation, security, user interface, and business logic functionality.  Business logic functionality includes all the rules governing communications or information access.  This could include, for example, fraud prevention and protection, schedule limits defined per resident, facility, phone, or destination number, or alarms for triggering investigation.  The application node 257 is also responsible for implementing rules related to call acceptance, communications blocking, recording, and logging functionality.  The application node 257 can be accessed by authorized users via an administrative web page.  By accessing the application node, administrators and investigators 240 can retrieve recorded calls, and can review records and adjust settings, such as calling or voicemail permissions for facility residents. Customer service personnel 241 can also use a web page to review issues reported by facility residents or outside callers.  The application node 257 may be one or many computers functioning together to form the node.

[0046]    Each central processing cluster 251-254 also includes a database node 258.  The database node hosts settings for the business logic functionality.  The database node 258 also stores indexed logs, audio and video communication recordings, voicemail recordings, and settings for individual residents and facilities.  The database node 258 may be one or many computers functioning together to form the node.  The database nodes 258 at each central processing cluster 251-254 may replicate some or all of the data at another database node.  Since some facilities may impose rules regarding the geographic location where their data is stored, the

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

central processing cluster 251-254 may include rules that define the data that the databases will replicate for each facility.

[0047]     Central processing clusters 251-254 are connected to a communications network and to one another via smart load balancers 255.  The smart load balancers 255 may be configured to communicate with one another over the Internet or through a dedicated communications network or link.  The smart load balancers 255 may be configured to communicate to periodically update status information stored at each smart load balancer.  The smart load balancers 255 can accordingly redirect incoming communications received from routers 204 based on the availability or load on a particular central processing cluster, and can redirect outgoing communications based on the responsiveness of a provider network.

[0048]     Central processing clusters 251-254 can also share and retrieve data from one another directly via a communications link or over the Internet.  For example, if a resident at Facility A makes a request for a voicemail or text message, and the request has been routed to central processing cluster 251, but the desired data is stored on central processing cluster 252, cluster 251 can retrieve the audio from cluster 252 for playback.  Similarly, an investigator reviewing recordings via the web site interface can be communicating with the application node 257 using any central processing cluster 251-254 and can retrieve recordings from any cluster. Logs and recordings can be stored at multiple geographically diverse locations and may be backed up at separate locations for redundancy.  A central processing cluster 251-254 can identify a storage location of data by referencing a cluster identifier that is included with each piece of call data in a database node 258.  Accordingly, the databases storing data do not need to be replicated across clusters (though they can be).

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0049]     The multiple central processing clusters 251-254 provide full cluster fail-over.  That is, if one of the central processing clusters 251-254 fails, the routers 204 at the facilities are configured to automatically seek and connect to another cluster.  Similarly, the smart load balancers 255 are configured to redirect incoming and/or outgoing communications when a particular cluster 251-254 is unavailable or non-responsive.  In both instances, the other cluster can take over call processing duties and allow communications to continue.  Using multiple computers at each node of a cluster ensures that, if a single node in the cluster fails, another node can take over all of the functions of the failed node.  Resources of a node in a cluster may be reallocated based on processing requirements.  This all happens seamlessly without affecting configurations at the facilities 200 or the routers 204.

[0050]     Investigators and administrators 292 can access the platform 225 using a computer with a web browser.  The web interface of the platform 225 enables investigators and administrators 292 to view logs, listen to and view audio and video recordings, and change configuration settings for their facility.  Outside parties 291 can also use a web browser to access a web interface that enables them to create an account, add funds to their account or to a resident account, or send and receive audio, text, and/or video messages to and from a resident, as described in more detail below.

[0051]     By removing the processing centers 150, 250 from the facility 100, 200 and distributing it across multiple clusters, sensitive computer hardware can be housed in special environmentally controlled and secure hosting environments that may be geographically dispersed.  Clusters of computer hardware can operate independent of one another, allowing for redundancy and failovers.  If a cluster completely fails, another functional cluster can take over all computing processes.  Additionally, an individual cluster is redundant within itself, so that

DSMDB-2863401v1

Docket No.:   P5789.0005/P006

should any node of the cluster fail, resources can be reallocated to perform the required functions of the node.

[0052]    Computing clusters can handle large volumes of voice and data traffic from multiple locations more effectively than non-cluster solutions. This is a result of clusters being able to adapt to call load and expand capacity as needed. The resources within a cluster 251-254 can also be adjusted dynamically as service needs require. For example, if a call processing node 256 becomes overloaded, resources can be redirected from another node. This applies across clusters 251-254 as well; if a cluster starts to come under heavy load or become nonresponsive, connected clients can be shifted to a different cluster.

[0053]    Multiple clusters also facilitate maintenance and expansion, as they allow operations at a single location to be interrupted for planned or unplanned servicing without bringing down communications and services. Clusters allow near limitless scalability as service needs expand. This can be accomplished by increasing computing capacity of the cluster, with no downtime. This also leads to hardware cost savings as service capacity can be increased with minimal hardware investment. Services within a cluster can be upgraded, or computing capacity added without affecting service availability. Higher uptime results in enhanced revenue. Fast replacement and maintenance is facilitated by having service personnel and replacement equipment in close proximity to a small number of cluster locations.

[0054]    FIG. 3 illustrates an example kiosk 102 used in an embodiment of the interactive audio/video platform. The kiosk 102 includes an integrated camera 303 that can be used for video communications or for user authentication via facial recognition. The kiosk 102 also includes a touch screen 301 that displays images and can detect the presence and location of

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

a user's touch within the display area. The touch screen 301, may be, for example, a 15 inch capacitive or resistive touch screen display. The touch screen 301 serves as the main kiosk interface with a user. A telephone handset 302 connected to the kiosk 102 includes a speaker and a microphone. The telephone handset 302 can be used to issue voice commands and provide voice authentication as required, or it can be used for voice and video communications, among other things. The telephone handset 302 is optional, as a kiosk user may instead plug in a headphones or headphones with an in-line microphone using one or more stereo headphone jacks 304. Stereo headphone jacks 304 can also be located on the side of the kiosk 102 or behind a movable panel 311, which can be locked in a position exposing the jacks 304, or in a position blocking them, depending on the preferences of the facility. A USB interface optionally located behind the movable panel 311 can be used for system diagnostics by technicians or to synchronize files to an external device, such as a portable media player. The kiosk 102 also includes a speaker 305 that provides audio output.

[0055]     While FIG. 3 illustrates a kiosk that is a wall-mountable kiosk, other structural forms, enclosures, or designs are possible. The kiosk 102 may be any shape or size suitable to providing the described components and services. The kiosk 102 may be, for example, a standalone structure, a personal computer, a laptop, a mobile device, or a tablet computer device. If the kiosk 102 is in the form of a laptop, mobile device, or tablet computer, it may be a ruggedized device designed to withstand physical shock, and may be integrated with a docking system that connects to the device for locking, storage, display, additional connectivity and/or charging. The kiosk 102 may be tethered to a structure by known methods, such as a security lock cable.

Docket No.:   P5789.0006/P006

[0056]    Internally, the kiosk 102 includes a processor-based computer system 400, such as the one illustrated in the FIG. 4 block diagram.  The processor-based system 400 may be a computer system or any other processor system, including computer systems designed for use in mobile devices or tablet computers.  The system 400 includes one or more central processing units (CPUs) 402, that communicate with random access memory (RAM) 408, read-only memory (ROM) 410, a hard disk drive 414, a network interface controller (NIC) 406, a touch screen interface 501, and other Input/output (I/O) devices 404 over a bus 420.  It must be noted that the bus 420 may be a series of buses and bridges commonly used in a processor-based system, but for convenience purposes only, the bus 420 has been illustrated as a single bus.  I/O devices 404 may include features described above in reference to FIG. 3 including the telephone handset 302, the camera 303, or the headphone jacks 304 and may also be connected to the bus 420.  The processor-based system 400 also includes ROM 410 which may be used to store a software program.  Portions of the software program may also be stored on the hard disk drive 414, and the software program may write and read data such as logs to and from the hard disk drive 414.  A NIC 506 handles incoming and outgoing network communications, such as IP communications via Ethernet.

[0057]    The hard disk drive 414 of the kiosk 102 optional, as the device could be configured to utilize network storage instead.  When configured to utilize network storage, the kiosk 102, upon being powered on, will search the network (which may be a local network) for a server (which may be a local server) to locate a boot image.  When a boot image is located, the device will download and run the boot image (a "netboot").  When the device is in this mode, all temporary information after booting is stored in the local memory of the device (RAM 408).

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

Important information, such as logs of user activities, is sent directly to a server (local or remote) for permanent storage.

[0058]     The kiosks 102 may be configured to communicate directly with servers at the processing centers 150, 250 (illustrated in FIGS. 1 and 2), or they may be networked to communicate with a local server computer at the facility 100 that coordinates communication with servers at the processing centers 150, 250.  In another configuration, they may communicate with a server at a location remote to both the facility 100 and the processing centers 150, 250. The processor-based computer system 400 may run an operating system such as the Linux operating system, or may be configured with a custom operating system.  Although the FIG. 4 block diagram depicts only one CPU 402, the FIG. 4 system could also be configured as a parallel processor machine for performing parallel processing.

[0059]     FIG. 5 illustrates an example idle screen 501 of the kiosk interface (i.e., touch screen 301).  The idle screen 501 is displayed when no resident has logged on or reserved the system for use.  The kiosk interface may display a video 502 of a handset being lifted, a finger touching the screen, and a headset being plugged into the audio jacks, which instructs the resident how to interact with the kiosk 102.  The video 502 may also display advertisements or other facility messages.

[0060]     Three primary interaction options are presented on the idle screen 501. First, a resident can select the login icon 503 to log in to the system.  The login procedure is described in more detail below in reference to FIG. 7.  Second, a resident can select the tip icon 504 to submit an anonymous crime tip without logging in.  Once this icon 504 is selected, the resident is presented with the ability to type or record a crime tip that is forwarded to the

Docket No.:   P5789.0006/P006

appropriate authorities.  Third, a resident can select the PREA icon 505, which is used to report an incident under the Prison Rape Elimination Act (PREA).  As with crime tips, these incident reports are prepared anonymously and forwarded to the appropriate authorities.  Accordingly, the resident is not required to log in for some functionality.

[0061]     The idle screen 501 also displays an appointments schedule 415, which shows reservations of the kiosk 102.  Facility residents are able to use the kiosk 102 to reserve use of the kiosks at certain times, as is discussed in more detail below.  The appointments schedule 415 shows when this particular kiosk 102 is reserved.  The "Requested" tab shows requests submitted by inmates, and the "Confirmed" tab shows reservations that have been confirmed by the appropriate administrative staff.  Requested reservations may be transmitted to administrative staff, enabling staff to view and approve the reservations using a web interface.  Alternatively, the approval of reservations can be automated, so that each resident is permitted to make a certain number of reservations within a predefined time period.  The activity display 506 shows recent activity for a particular kiosk 102 or group of kiosks 102.

[0062]     Other features on the idle screen 501 include a scroll 507 that can display various facility messages, such as facility bulletins, set by an administrator.  The scroll 507 can also be used to display advertisements or information about features of the kiosk 102.  Icons 508-511 at the bottom of the display are persistent icons that are displayed on most or all screens of the kiosk interface.  A resident can select the volume icon 508 to change the volume of the speakers, headphones, or handset.  Selecting the repeat prompt icon 509 causes the system to replay the last voice prompt.  The help icon 510 takes a resident to a help menu, which may include interactive help with audio and video instructions.  The language icon 511 changes the language of the text displayed on the kiosk 102.  In the illustrated example, the language icon

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

511 can be selected to switch the language to Spanish, but the language icon 511 may allow

switching between additional languages such as French or Russian.

[0063]     When a kiosk 102 has been reserved, a reservation screen 601 is

displayed on the kiosk interface, as illustrated in FIG. 6.  In the illustrated example, the resident's

name is displayed in an icon 602, which instructs the resident to log on.  When a kiosk 102 has

been reserved, only the resident with the reservation can log on.  If another user is already

accessing the system when there is an upcoming reservation, the current user is warned of the

upcoming reservation via messages displayed on the kiosk 102.  Warnings can be displayed in

several intervals, for example 5 minutes, 1 minutes, and 20 seconds prior to a scheduled

appointment time.  Once the scheduled time arrives, the current user is automatically logged off

of the device.

[0064]     FIG. 7 illustrates a login screen 701 of the kiosk interface.  At the login

screen 701, a resident is requested to enter a personal identification number (PIN) using a virtual

key pad 702 and login icon 703 to log in to the kiosk 102.  Each resident at a facility is given a

unique personal identification number to ensure security.  During the log in process, the camera

of the kiosk 102 is activated.  An image or video of the resident logging on is recorded, and

stored along with a record of the attempted log in.  Administrators can later view images or video

of these log in attempts. In addition, the kiosk 102 will use facial detection software to ensure

that a face is present in the camera field of view.  If no face is present (for example, because a

resident is blocking the camera with their hand or other obstruction), the system will not permit a

log in to be completed.  During a resident's log in, the kiosk 102 may display a video feed 705

on the login screen 701, providing a visual reminder to the resident that the images are being

Docket No.:   P5789.0006/P006

recorded.  Additional secondary verification systems (such as voice biometrics and

individualized facial recognition) may also be utilized, as illustrated in FIGS. 7-8.

[0065]    FIG. 8 illustrates a voice verification screen 801 of the kiosk interface.
The voice verification system utilizes a voice ID audio clip that was previously recorded by the

facility resident.  The pre-recorded clip can be recorded under the supervision of facility

administrative staff, and may be, for example, a recording of a resident stating their name or

another short phrase.  At the voice verification screen 801, the facility resident is requested to lift

the telephone handset and speak the pre-recorded phrase.  After speaking the phrase, the resident

selects the login icon 802 to log into the system.  The voice verification system records the

phrase spoken by the facility resident, and compares a digital signature of the audio to the pre-

recorded audio clip.  The pre-recorded clips may be created and stored locally at the kiosk 102

(not shown) or may be created by another mechanism and stored at a database 258 of the

processing center 250 (as illustrated in FIG. 2).  Accordingly, the comparison may be made by

software on the kiosk 102 or at the processing center 250.  If the recorded audio matches the pre-

recorded audio clip, the resident is granted access.

[0066]    FIG. 9 illustrates a facial recognition verification screen 901 of the kiosk

interface.  Facial recognition verification may be used in combination with one or more of the

other verification systems, including the PIN verification and the voice verification.  On the

facial recognition verification screen 901, the video preview window 902 displays the field of

view of the camera.  The display requests that the resident line up their eyes with the eye level

marks 903 displayed next to the video preview window 902.  This ensures that an appropriate

image is captured for verification.  When the resident selects the verify icon 904, facial

verification is performed.

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

[0067]      As with the voice verification system, the facial verification processing may be performed locally at the kiosk 102 or may be performed at the processing center 150.  In either case, the facial verification processing includes comparing an image captured by the camera 303 of the kiosk 102 with a pre-stored image of the resident.  The facial recognition system uses facial "landmarks" generated by mathematical formulas to present a score which indicates a likelihood that the captured image matches the pre-stored image.  If the images match to a sufficient degree, the verification is approved and the resident is granted access to the system.  If the images do not match, the system may store the captured image and other usage details for review by administration officials.

[0068]      Once a resident has logged into the system, they are presented with a main screen 1011 of the kiosk interface, illustrated in FIG. 10.  From this screen, a resident can access all other features of the kiosk 102.  Features can include phone calling, internet access, text messaging, video conferencing and messaging, religious services, law library access, tele-medical sessions, commissary ordering, educational materials, Kite recording, and access to other facility services.  As such, the screen 1011 can have a phone icon 1001, an internet icon 1002, a messaging icon 1003, a video icon 1004, a religious services icon 1005, a law library icon 1006, a tele-medical icon 1007, a commissary icon 1008, an education icon 1009, and a kite icon 1010.  The icons in FIG. 10 are a sampling of possible icons, but other icons may be provided for additional features.  The options available at the main screen 1011 can be configured by facility administrators, and each resident can be configured with a unique profile limiting the available options to some sub-set of all of the options.  Accordingly, certain restrictions can be placed on individual residents of the facility due to misuse of the system or for other reasons.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0069]     Communications features are central to the kiosk functionality.  Residents can communicate via voice, video, or text messaging.  To initiate a voice communication, a resident can select the phone icon 1001 from the main screen 1011.  The resident is then presented with a phone screen 1111, such as the one illustrated in FIG. 11.  Depending on the configuration preferred by a facility, additional authentication may be performed prior to the voice communication (voice authentication, facial recognition authentication, or other forms of authentication).

[0070]     As shown in FIG. 11, at the phone screen 1111 a resident is presented with a virtual key pad 1101 that can be used to dial a telephone number.  The resident can also select a number using the call history 1102 or phonebook features 1103.  The call history 1102 is automatically constructed from a resident's history of incoming and/or outgoing calls.  The phonebook can be edited by the resident.  Quick dials 1104 are presented for frequently used administrative numbers such as customer service, funds transfer, anonymous crime tip, PREA reporting, bail bonds, or voicemail.  A resident's call is routed, via the internet, to a processing center such as processing centers 150, 250 illustrated in FIGS. 1 and 2.  Processing at the processing centers determines whether the resident has permission to make calls to the dialed party and whether the resident has sufficient funds, and either allows or denies the call.  The processing center 150, 250 can also log and record the call, as appropriate.  If the call is approved, it is processed according to the descriptions above in reference to FIGS. 1 and 2.

[0071]     From the phone screen 1111, a resident can access voicemail using the quick dial icon 1104.  FIG. 12 illustrates an example voicemail screen 1201.  As shown in FIG. 12, voicemail messages can be displayed visually in a list 1202.  The voicemail can be stored locally on the kiosk 102 or may be stored at a processing center (such as processing centers 150,

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

250 illustrated in FIGS. 1 and 2). The resident may be permitted only a limited number of playbacks of voicemail recordings, indicated by icons 1204 displaying a number of remaining playbacks. Limits on playbacks may be optionally removed, depending on the desires of a particular facility. Optionally, the kiosk 102 may be configured so that a voicemail may be played more than a predetermined number of times only after a fee is paid. The call back icon 1203 allows the resident to return the call of the individual displayed on the list 1202. Voicemail messages are stored permanently on the server of the processing center, so that administrative staff always has an archive of voicemails received by the residents.

[0072]     A resident may also access a bail bonds screen 1301 from the phone screen 1111. The bail bonds screen 1301 is displayed in FIG. 13. As shown in FIG. 13, available bail bond companies may be displayed in a random order in a list 1302. It should be appreciated that the companies can be listed in alphabetical or other orders too. The resident may select from this list or may select the search icon 1303 to search for a bail bond company by name. If the search icon 1303 is selected, the resident can enter the name of a bail bond company using an on-screen keyboard, and a database of known bail bond companies will be searched.

[0073]     The kiosk 102 also enables incoming calls. An outside caller, such as parties 180, 181, 280 in FIGS. 1 and 2, can dial a number assigned to one or more facilities and, using an IVR with dial-by-name functionality, locate the inmate they wish to call. Alternatively, the resident may have a personalized number assigned, for an additional fee. If the resident has permission to receive incoming calls from the calling party, and if the resident or the outside caller has sufficient funds in their account, then kiosks 102 that are identified as being located in the area that the resident is housed in will play an alert tone. Optionally, the schedule of the

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

resident can be stored in the system and different kiosks 102 may be activated according to the

predicted location of a resident based on the schedule.  When there is an incoming call, the kiosk

102 would display the resident's name, and optionally, a caller ID for the incoming call.  The

kiosk 102 may also audibly announce the incoming call and the name of the receiving party (this

may be enabled or disabled on a per-facility basis).

[0074]   To answer the call, the resident would need to log into a kiosk 102 using

the login procedure described above.  Only the resident associated with the called number will be

permitted to answer the call.  During the resident's log in, a voice message can be played to the

outside caller, so that they are informed that the resident is in the processing of logging in.  If a

resident does not log in after a predetermined period of time, the caller is prompted to leave a

voicemail message.

[0075]   When there are multiple incoming calls received simultaneously, the

kiosk 102 will announce the names of the multiple calling parties.  The login screen would

display the names of the calling parties or the called parties, and the resident would select the

appropriate name from the screen and then proceed to the login procedure.

[0076]   The incoming call can also be a video call.  In this case, the caller would

log into an internet website providing a video conferencing interface (described in more detail

below).  As with voice calls, an alert tone would be played by one or more kiosks 102 in the

vicinity of the resident, and the resident would be prompted to log in to receive the video call.

[0077]   Using the kiosk 102 for telephone communications has significant

advantages over ordinary telephone systems.  The touch screen of the kiosk 102 can display extra

information, such as caller ID, available funds, time left on a call, or help options.  The touch

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

screen can also display advertisements or facility messages during the call.  Additionally,

through integration with the processing centers 150, 250, additional security, logging,

monitoring, and recording functionality is enabled.

[0078]    The kiosk 102 also provides secure text-based messaging between

residents of the facility and the public.  A resident can access text-based messaging functionality

by selecting the messaging icon 1003 from the main screen 1011 illustrated in FIG. 10.  On the

messaging screen (not shown), the resident can select to retrieve received messages or to

compose and send a new message.  To send a new message, the resident types a recipient name

or selects a name from an address book similar to how text messaging is done on cellular phones,

smart phones, and PDAs.  An on-screen keyboard allows the resident to type a message.

Residents can be charged per-message or by alphanumeric character, as desired by the facility.

[0079]    Messages sent by residents are transmitted to a processing center (such as

processing centers 150, 250 of FIGS. 1 and 2) where they are stored.  The processing center

sends an email or SMS message to a pre-registered email address or cellular phone number of the

recipient, notifying that they have an available message.  Optionally, messages may include

photo or video attachments taken with the kiosk camera.  Attachment functionality may be

enabled or disabled based on facility preference.  The message itself is not displayed in the email

or SMS message, the message is only available for viewing when the outside user logs into a

secure website.  This ensures secure delivery of the message.  For additional security, the

messaging functionality may be set so that messages viewed on the website cannot be forwarded

or copied from the secure website.  This provides the facility with an additional level of control

over the messages.  Thus, while the system resembles email, the messages are not accessible via

email, and can not be copied or forwarded like email.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0080]     All messages transmitted via the system are logged at the processing centers 150, 250 (as illustrated in FIGS. 1 and 2).  Even messages that are deleted by a resident our outside party can be stored for audit and investigative purposes.  Additionally, messaging may be restricted on a per-resident or group basis: prohibiting particular inmates from sending or receiving messages to all, or just some, persons, as well as prohibiting some outside parties from messaging specific inmates.  An outside party may need to have an account with the system, and may need to have proper funds or credits in the account and pass an ID verification check, which may include the verification methods above (PIN number, voice identification and/or facial recognition).

[0081]     The kiosk 103 also provides secure video conferencing and video messaging.  A resident can access video conferencing functionality by selecting the video icon 1004 from the main screen 1011 illustrated in FIG. 10.  FIG. 14 illustrates an example of a video conferencing screen 1501.  Incoming video is displayed in a video window 1502, and a resident can view outgoing video in a smaller window 1503.  The video conferencing feature may also allow residents to save a snapshot of the incoming video.  The snapshots may incur an additional charge to the resident's account.

[0082]     Full motion color video conferencing can be provided between a resident in a secure facility and either (a) a remote party connected over the internet with a standard internet browser or (b) a party at another kiosk 102 located in the same or at another facility.  For example, kiosks 102 may be located in a visitor's area of a facility.

[0083]     An outside party can connect to an internet website that provides video conferencing with a facility and log in with a pre-registered account or create a new account.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

The outside party may need to have an account with the system, and may need to have proper funds or credits in the account and pass an ID verification check, which may include the verification methods described above (PIN number, voice identification and/or facial recognition).  The remote party can add funds to his/her account to cover the cost of video conferencing, which may be charged on a per-session or per-minute basis, as set by the facility. From the website, the outside party can either schedule a call or connect to a pre-scheduled call. The outside party can also attempt a live call to the facility (as described above).  To participate in the video conference, the outside party would need a computer with an internet connection, a web camera, a microphone, and speakers (or headset).

[0084]    An outside party can also use another kiosk 102 located in the same facility.  As with the internet website, the outside party would log into a visitation kiosk 102 and could add funds to an account to cover the cost of video conferencing (as mentioned above, a resident may also be allotted a certain amount of free visitation time).  The outside party can either schedule a call or connect to a pre-scheduled call.  It is also possible to route communications from one facility to another, so that a party at a first facility can communicate with a resident in another.  When two kiosks 102 in the same facility are used for a video conference, the video may be transmitted through a local media server at the facility, instead of being routed through servers at a processing center 150, 250 as illustrated in FIGS. 1 and 2.

[0085]    Facial detection software is utilized to provide additional security and to monitor use of the video conferencing feature.  The facial detection software may be executed locally on the kiosk 102, or may be executed at processing centers that are routing the communications.  The facial detection software uses video analysis of individual frames of video to detect that a human face is present inside the video frame.  If a face is not detected, the system

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

blurs or otherwise obscures the image.  This prevents inappropriate images from being transmitted.

[0086]    The facial detection software may also periodically pass images to a facial verification system.  The facial verification system compares a detected face image with a face image stored in a database.  If the detected image does not match the pre-stored image, a warning is displayed to prompt the resident to face the camera so that a second image can be captured.  If the second image does not match or a face is not detected, the account will be logged off the system.  This can be logged as a violation at the processing center.  The facial verification ensures that the logged-in resident has not allowed another resident to use the account after logging in.  The facial detection software may also detect when a second face is present in the frame, and may blur or disconnect a conference when a second face is present.

[0087]    The facial verification feature can be active even when the resident is not intentionally using the camera, such as when the resident is using entertainment or text messaging features.  Images taken periodically and compared against pre-stored images ensure that only authorized residents are accessing system features.  Facial verification may also be used on video being captured by an outside user during a video conference or video message.  Outside parties that wish to use the video conferencing features may be required to register a facial image with their account.  This ensures that only authorized individuals are communicating with a resident during a conference.

[0088]    Video messaging allows a resident and outside party to send video messages to one another using the kiosk 102, in a similar manner to the text-based messaging described above.  An example video messaging screen 1601 is illustrated in FIG. 15.  An outside

Docket No.:   P5789.0006/P006

party receiving a video message would receive an SMS or email message alerting them to the availability of the video message. As with the text-based messaging, the outside party would log into a secure website to view the message. Video messages can be charged on a per-message or per-minute basis.

[0089]    Another option available from the main screen 1011 of the kiosk 102 (illustrated in FIG. 10) is a tele-medical session 1007. This feature allows residents to participate in a video conference with a medical professional or record video that can used to pre-screen patients before they are allowed to schedule an appointment with a doctor. All video can be logged to allow facility staff to review and follow up on any potential medical situations. Optionally, the facial detection features described above may be disabled for tele-medical sessions.

[0090]    By selecting the religious services icon 1005 of the main screen 1011 (illustrated in FIG. 10), a resident can access video and audio recordings of religious services. The resident can also access religious texts. The law library icon 1006 (illustrated in FIG. 10) provides access to electronic versions of law books and statutes in a searchable format. Locally-relevant law books may be provided (i.e., the laws for the state the facility is located in). Law libraries may be stored on servers at the processing center, or may be accessed via publicly available websites.

[0091]    Selecting the education icon 1009 of the main screen 1011 (illustrated in FIG. 10) provides a resident with access to various educational material. Facility rules and procedures are presented for text-based browsing. These can include handbook material covering facility rules, procedures, and other information. The educational function may also

Docket No.:  P5789.0006/P006

provide access to facility orientation videos that explain facility operations, rules, and procedures.  Access to this section can be made available without charge, but with limited viewing time to avoid monopolizing the kiosk 102.  Distance learning programs may also be offered as video and text coursework, for free or based on a charge, depending on facility rules.

[0092]      Selecting the commissary icon 1008 (illustrated in FIG. 10) from the main screen 1011 allows a resident to place orders from a facility commissary by browsing a collection of items and making selections.  The resident can purchase items using a shopping cart metaphor as implemented on internet shopping websites.  The resident must have available funds in their account to purchase items from the commissary.  Time spent browsing the commissary can be limited to a predetermined number of minutes per day, so that the function can be provided free of charge while not monopolizing the kiosk 102.

[0093]      Selecting the Kite icon 1010 provided on the main screen 1011 (illustrated in FIG. 10) allows a resident to prepare Kite messages.  Kites are a form of written communications in jails, and typically include requests for medical treatment, complaints or concerns about housing, commissary, food, and the facility itself.  The Kite menu is available to all residents, and does not require funds to access.  Kites are recorded using video from the camera 303, and audio from the telephone handset 302 of the kiosk 102.  The resident stands in front of the device and records their request verbally, and video (with audio) of the kite requests is recorded.  When recording a video, the kiosk 102 will indicate when the video is starting and will display a preview window during the recording.

[0094]      The resident can use the kiosk 102 to receive a history of all of their Kite requests and their current status, as illustrated on the example Kite screen 1701 illustrated in

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

FIG. 16.  A resident can click the read response icons 1702 to read responses to past kite

requests.  When the resident submits a new Kite, the video message becomes available for

review by facility staff using the web interface of the central platform.  Kite messages are

presented to administrators as a queue of video messages to view and respond to.  A text-based

response can be prepared for viewing on the kiosk 102 by the resident.  Any action undertaken in

connection to the Kite (viewing, responding, changing status, etc.) can be logged in a Kite audit

trail and can be reviewed by facility administrative staff.

[0095]      The internet icon 1002 on the main screen 1011 (illustrated in FIG. 10)

provides access to information on internet web sites.  All traffic through the internet browser is

routed through a proxy server hosted at the processing center or locally at the facility.  The proxy

server can block any site that is not on a pre-approved list of websites.  The default behavior is to

block access to a website, and only a site added to a whitelist are reachable.  To facilitate

browsing of approved sites, the resident may be presented with a list of categories and pre-

approved sites.  By selecting a category, the resident is presented with a list of sites in that

category.  FIG. 17 provides an example of an Internet screen 1701 showing available websites

1702 in an Education Category 1703.  Category 1703 shows certain categories (e.g., Adult and

Continuing Education) but is not so limited.  Any category approved by the facility can be

displayed.  The Internet browser can provide access to the full text of books in the public domain

and made available through public websites.  Streaming television may be accessed through pre-

approved sites.

[0096]      The only method of text input for the internet feature is via an on-screen

keyboard on the kiosk display.  The keyboard may be enabled/disabled on a per site basis.  This

can be used to prevent residents from entering comments or messages on sites where they can

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

not be monitored.  For example, a resident may be permitted to view stories on a news site, but not permitted to enter comments onto the site.

[0097]     For additional security, the resident may be blocked from entering their own internet address, and the only method of browsing may be the selection of pre-approved sites.  The proxy server can be configured prevent a resident from obtaining content from a site that is not on a pre-approved domain.

[0098]     All actions taken on a kiosk 102 are logged and recorded in the resident's records that are stored at the processing center.  Examples of information logged in an audit trail include each session start, location of the session (e.g., kiosk number), length, and audio or video recordings of activities.  The system can also log phone calls placed, including call destination, length, billing method, and a recording of the audio.  Video conferences can also be recorded (at both sides of the conference), and the time, length, and billing method are logged.  Text messages sent and received can be stored, along with message text, time, and destination.  The log can contain a list of every internet site and visited, at what time, and for how long.  All visitations attended, requested, or denied, and all interactions with outside parties can also be logged.  All applications and services accessed can be logged, including the time started and the length used.  As with the other features, the logging capabilities can be configured on a per-facility basis, allowing each facility to customize the level of reporting and monitoring, as appropriate.  Administrators can access logs or configuration settings using a web interface provided by the processing center 150, 250 (illustrated in FIGS. 1 and 2).

[0099]     All recorded communications are logged and made available for review by administrative staff.  Recordings (audio, video, and text) are associated with the resident and

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

the destination party.  Playback of recordings is made available through an administrative web interface provided by the processing center.  Recordings and text are also available for remote download via the web interface provided by the processing center.

[00100]     The described system can charge residents for access on a timed (per minute) basis.  The billing rate can be adjusted based on the activity and the time of day.  For example, video calls at 6am may be $.20/min and at 8pm they may be $.50/min.  Each resident has their own account, and funds are deducted from their account as they use the kiosk 102.  The kiosk 102 may display a running total of funds or remaining time for a particular activity.  When a resident launches a new application on the kiosk 102, they are informed of the current rate for that activity.  Pricing can be set using the administrative web interface.

[0100]     Additionally, the system may support multiple accounts for different features.  For example, a commissary account may be separate and external from a prepaid calling account or an entertainment account.  The kiosk 102 can provide the ability to transfer funds from one account to another, if enabled by administrative staff.

[0101]     If a resident has exhausted available funds, a prompt is displayed allowing the resident to send a pre-formatted email to contacts that have been associated with them.  An example fund request screen 1801 is illustrated in FIG. 18.  The associated contacts 1802 would be individuals that have in the past provided funds to the resident's account.  The pre-formatted email would request additional funds.  The system can restrict the number of requests that are allowed in a given time period.  For example, the system may only allow one request to be sent to each associated contact every 30 days.  The system will only allow one outstanding request per contact to avoid harassment.  The receiving party can reply to the email to have their name

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

blocked at any time.  Since the message is pre-formatted, the resident cannot use the fund request email for any other purpose.

[0102]    The kiosk 102 also allows a resident to request a visitation appointment. A resident can request a visitation with anyone that has a system account and has an established relationship with the resident.  For example, the resident can request a visitation appointment with individuals that have made a funds deposit for the resident or have communicated via phone, text, or video.  The resident can optionally pay for both sides of the visitation using their available funds, or only their own side, or they can request that the outside party accepting the visitation pay for both sides.  The appointment request message is submitted, and if approved by administrative staff, is forwarded to the visitor by SMS or email messaging.  The visitor can proceed to schedule the appointing using a web interface accessible via the Internet. Alternatively, a visitor can initiate a visitation request using the website, and it can be forwarded to the resident for scheduling via the kiosk 102.  When a visitor requests a visitation, they may be required to pay for both sides of the visitation.

[0103]    Appointment reminders may be provided via the kiosk 102 in increments leading up to the appointment (e.g., 2 days, 1 day, and 1 hour before an appointment).  The resident must log in to an available kiosk 102 during their visitation window to participate in the appointment.  If the resident has not logged in after a predetermined period of time, the appointment may be canceled.

[0104]    Visitation fees can be set to accrue at both ends of the conversation.  For example, the resident may pay a rate based on the minute rate in effect at the current time, and

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

the visitor would pay the rate at their location.  Visitation fees may be pre-paid at the time of reservation.

[0105]     Visitation rules can be set on a per-facility basis.  For example, facilities may limit the number and times of visits on a global or a per-resident basis.  The rules are defined in the administrative web interface and can be selected or changed at any time.  On-site visits can be conducted through kiosks 102 in a visitor's area of the secure facility.  If required at the facility, these visits may be provided without charge.  A visitor may, however, elect to exceed an allotted free time by paying for additional time, if permitted by the configuration settings of the facility.  Funds can be deposited locally via the kiosk 102, or by accessing funds in a pre-existing account.

[0106]     The kiosk 102 may also provide remote monitoring capabilities.  By accessing a web interface provided by the processing center 150, 250 (illustrated in FIG. 2 and 3), an administrator can remotely activate the camera and/or microphone on a kiosk 102.  This would enable the administrator to covertly monitor the area within the kiosk camera 303 field-of-view.

[0107]     The above description and drawings are only to be considered illustrative of specific embodiments, which achieve the features and advantages describe herein.  Modifications and substitutions for specific conditions and materials can be made.  Accordingly, the embodiments are not considered as being limited by the foregoing description and drawings, but are only limited by the scope of the appended claims.

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

## CLAIMS

1.      A system for providing services to a secure facility, the system comprising:

a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

a server that communicates with the kiosk via an internet connection, the server comprising a server processor, a network interface unit, and a computer memory;

the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the internet connection,

wherein the server records the audio and video and transmits the audio and video to a destination, and

wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying a personal identification number entered by the user and also  performing one or more of a facial recognition via the camera and a biometric voice recognition via the microphone.

2.      The system of claim 1, wherein the destination is a computer communicating with the server via a web interface, and the server is configured to authenticate a user of the computer via the web interface.

3.      The system of claim 1, wherein the destination is a second kiosk located in a visitation area of a second secure facility.

4.      The system of claim 1, further comprising:

a second kiosk located in a visitation area of the secure facility; and

a local server located at the secure facility

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area, and

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

wherein local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5.      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video.

6.      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7.      The system of claim 1, wherein the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8.      The system of claim 1, wherein the kiosk accepts anonymous messages input by the user without requiring the user to enter the personal identification number.

9.      The system of claim 1, wherein the kiosk is configured to allow the user to reserve use of the kiosk by receiving a user request for use at a certain time and checking permissions related to the user that are stored on the server, and, when the user request is granted, the kiosk does not allow anyone other than the user to log in at the certain time.

10.     The system of claim 9, wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification messages alerting the second user that the second user will be logged off at the certain time due to a reservation.

11.     The system of claim 1, wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages via a web interface of the server.

12.     The system of claim 11, wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

13.     The system of claim 1, wherein the server is configured to receive an incoming call for the user from a third party caller, determine whether the user has permission to receive incoming calls, if the user has permission, transmit the incoming call to the kiosk and at least a second kiosk, and

wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input log in information.

14.     The system of claim 1, wherein the kiosk is configured to provide the user with at least one of: access to audio, video, and text of educational and religious materials stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.

15.     The system of claim 1, wherein the kiosk is configured to provide access to Internet web pages via a proxy that restricts access to authorized domains, and the kiosk is configured to log all visited Internet web pages and to transmit logs to the server.

16.     The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

17.     The system of claim 1, wherein the kiosk is configured to receive voice or video messages from a server, and to display a notification of an available voice or video message on an idle screen of the kiosk.

18.     The system of claim 1, wherein the kiosk is configured to receive a visitation request from a server, and to display a notification of an available visitation request on an idle screen of the kiosk.

19.     A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a connected to the bus speaker;

a touchscreen display connected to the bus; and

a network interface connected to the bus for communicating with a server via the Internet,

wherein the kiosk authenticates a user by receiving a personal identification number and comparing the received personal identification number against a known personal identification number associated with the user, verifies the user's identity using one of facial authentication of an image captured by the camera and voice authentication of an audible phrase recorded using the microphone, records audio and video communications and transmits the audio and video communications to the server, and provides access to the internet via a web proxy.

20.    The kiosk of claim 19, wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, and stop transmitting video when a face is not present.

21.    The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational and religious materials; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.    A method of monitoring use of an interactive kiosk, comprising:

using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk; transmitting the image to a server; comparing, at the server, the image with a pre-stored image of the user of the kiosk; and restricting use of the kiosk when the image does not match the pre-stored image to a predetermined degree.

23.    The method of claim 22, further comprising:

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

periodically extracting a frame of the video information during use of the kiosk to transmit video information;

determining whether the frame includes an image of a human face; and restricting transmission of the video information when the frame does not include an image of a face.

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

## ABSTRACT

A system and device for providing services to a secure facility.  The system includes a kiosk with a processor, display, speaker, microphone, and a camera, and the kiosk communicates with a server that includes a server processor, a network interface unit, and a computer memory.  The kiosk receives communications and transmits audio and video of the communications to the server via an internet connection, and the server records the audio and video and transmits the audio and video to a destination.  The kiosk is configured to authenticate the identity of a user by verifying a personal identification number entered by the user and also performing one or more of a facial recognition via the camera or a biometric voice recognition via the microphone.  The kiosk provides access to services including internet services, text-based messaging, tele-medical services, religious and educational materials, commissary ordering, and entertainment.

DSMDB-2863401v1



Figure 1



Figure 2



Figure 3



Figure 4



501

502

503

504

505

506

515

508   509   510   511

Figure 5



601

602

Figure 6



701

702

703

705

Figure 7

801

Telmate

Friday, July 31  3:15pm

**Welcome Ken Jones**

**ID Check:**

**Lift handset and speak your voice verification phrase.**

| < Cancel Login | Login > |
|----------------|---------|

802

Login will be cancelled in 15 seconds.

Volume   Repeat Prompt   Help   Español

Figure 8

901



902

903

904

FIG. 9

1011



Figure 10

1102   1103   1111



1101

1104

Figure 11

1201

| Telmate | Ken Jones | Prepaid Balance: $5.00 | T-Phone Reserved at 5:00pm | | Friday, July 31  3:15pm |
|---|---|---|---|---|---|

**<<**    **Voicemail**

^ UP ^

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| > | 2 Plays Left | 4/12/10 @ 3:12pm | (505) 121-1234 | Inmate S. | $ | Call Back | X |
| ‖ | 1 Play Left | 4/12/10 @ 3:00pm | (626) 555-1212 | Inmate J. | | Call Back | X |
| | No Plays Left | 4/10/10 @ 2:00pm | (714) 123-2341 | Indiana Jones | $ | Call Back | X |
| | No Plays Left | 4/8/10 @ 11:12am | (818) 135-5613 | Jenny Jones | | Call Back | X |
| | No Plays Left | 4/6/10 @ 7:02am | (213) 135-1356 | | | Call Back | X |
| | No Plays Left | 3/12/10 @ 8:02am | (650) 133-1351 | Ginger | $ | Call Back | X |
| | No Plays Left | 3/12/10 @ 7:21am | (800) 135-1351 | Don Draper | | Call Back | X |
| | No Plays Left | 2/6/10 @ 6:00pm | (866) 121-1315 | Mom | | Call Back | X |

1202    1203

1204

v DOWN v

| Logout | Buy Tphone Time | Main Menu | | Volume | Help | Español |
|---|---|---|---|---|---|---|

Figure 12

1301



1303

1302

Figure 13

1401



1403

1402

Figure 14

Figure 15



Figure 16

1701



1702

Figure 17

1801

| Telmate | Ken Jones   T-Phone Reserved at 5:00pm | | Friday, July 31  3:15pm |

**EMail Friends**

Telmate will send a message to your Friends who have deposited funds for you before.

Tap the names you wish to notify.

If a name isn't available, It's because the party did not give us permission to contact them, or you have already requested funds from them.

| ^ UP ^ |

| Touch to Email  Jackie Jones |
| Will Email  Margret Jones | ✓ |
| Touch to Email  Frank Smith |
| Touch to Email  Barbara Smith |
| Will Email  January Jackson | ✓ |
| Will Email  Larry Leroy | ✓ |
| Touch to Email  Smith Regan |
| Touch to Email  Michael Michaels |

| v DOWN v |

1802

**Send Email**

**Cancel**

Logout    My Account    Main Menu          Volume   Help   Español

Figure 18

Attorney Docket No.: P5789.0006/P006

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

INTERACTIVE AUDIO/VIDEO PLATFORM AND DEVICE FOR
USE IN A SECURE FACILITY

the specification of which is attached hereto.

In the event that the filing date and/or Application No. are not entered above at the time I execute this document, and if such information is deemed necessary, I hereby authorize and request my attorneys/agent(s) at **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, to insert above the filing date and/or Application No. of said application.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to herein.

I acknowledge the duty to disclose all information known to me that is material to patentability as defined in 37 CFR 1.56.

FOREIGN PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code § 119(a)-(d) of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

[x] no such foreign applications have been filed

[ ] such foreign applications have been filed as follows:

Page 1 of 7

Attorney Docket No.: P5789.0006/P006

EARLIEST FOREIGN APPLICATION(S), IF ANY FILED WITHIN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

ALL FOREIGN APPLICATION(S), IF ANY FILED MORE THAN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S. PROVISIONAL APPLICATIONS

I hereby claim priority benefits under Title 35, United States Code §119(e), of any United States provisional patent application(s) listed below:

[x] no such U.S. provisional applications have been filed.

[ ] such U.S. provisional applications have been filed as follows:

| Application Number | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)

I hereby claim the benefit under Title 35, United States Code, §120 of the United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose all information that is material to patentability as defined in 37 CFR 1.56 which became available to me between the filing date of the prior application and the national or PCT international filing date of this application:

[x] no such U.S./PCT applications have been filed.

Attorney Docket No.: P5789.0006/P006

☐   such U.S./PCT applications have been filed as follows:

| Application Number | Relationship | Parent Application | Date of Filing |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint:

All practitioners at Customer Number 24998

all of **Dickstein Shapiro LLP,** 1825 Eye Street, NW, Washington, DC  20006-5403, jointly, and each of them severally, my attorneys at law/patent agent(s), with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent, and to transact all business in the U.S. Patent and Trademark Office connected therewith.

Please mail all correspondence to Gianni Minutoli, whose address is:

**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC  20006-5403

Please direct telephone calls to: Gianni Minutoli at (202) 420-3191.

Please direct facsimiles to: (202) 420-2201

Attorney Docket No.: P5789.0006/P006

| Full name of sole or first inventor | |
| --- | --- |
| Richard Torgersrud | |
| Sole or first inventor's signature | Date |
| | 7 April 11 |
| Residence | |
| San Francisco, CA | |
| Citizenship    US | |
| Mailing Address | |
| 683 Brannan Street, #304 San Francisco, CA 94107 | |

# All-purpose Acknowledgment

STATE OF *California* , COUNTY OF *San Francisco*

On *April 07, 2011* before me, the undersigned, a Notary Public in and for said State, personally appeared *Richard Torgersrvd*

personally known to me  –OR–  proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

Name (type or printed) *Maria Teresa Ocegueda*

My commission expires: *April 29, 2011*

(Seal)

MARIA TERESA OCEGUEDA
COMM. #1742663
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Apr. 29, 2011

HE17494 (2-66-929516)

Attorney Docket No.: P5789.0006/P006

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

INTERACTIVE AUDIO/VIDEO PLATFORM AND DEVICE FOR
USE IN A SECURE FACILITY

the specification of which is attached hereto.

In the event that the filing date and/or Application No. are not entered above at the time I execute this document, and if such information is deemed necessary, I hereby authorize and request my attorneys/agent(s) at **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, to insert above the filing date and/or Application No. of said application.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to herein.

I acknowledge the duty to disclose all information known to me that is material to patentability as defined in 37 CFR 1.56.

FOREIGN PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code § 119(a)-(d) of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

[x] no such foreign applications have been filed

[ ] such foreign applications have been filed as follows:

Attorney Docket No.: P5789.0006/P006

EARLIEST FOREIGN APPLICATION(S), IF ANY FILED WITHIN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

ALL FOREIGN APPLICATION(S), IF ANY FILED MORE THAN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S. PROVISIONAL APPLICATIONS

I hereby claim priority benefits under Title 35, United States Code §119(e), of any United States provisional patent application(s) listed below:

[x] no such U.S. provisional applications have been filed.

[ ] such U.S. provisional applications have been filed as follows:

| Application Number | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)

I hereby claim the benefit under Title 35, United States Code, §120 of the United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose all information that is material to patentability as defined in 37 CFR 1.56 which became available to me between the filing date of the prior application and the national or PCT international filing date of this application:

[x] no such U.S./PCT applications have been filed.

Attorney Docket No.: P5789.0006/P006

☐  such U.S./PCT applications have been filed as follows:

| Application Number | Relationship | Parent Application | Date of Filing |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint:

All practitioners at Customer Number 24998

all of **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC  20006-5403, jointly, and each of them severally, my attorneys at law/patent agent(s), with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent, and to transact all business in the U.S. Patent and Trademark Office connected therewith.

Please mail all correspondence to Gianni Minutoli, whose address is:

**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC  20006-5403

Please direct telephone calls to Gianni Minutoli at (202) 420-3191.

Please direct facsimiles to: (202) 420-2201

Attorney Docket No.: P5789.0006/P006

| Full name of sole or first inventor | | |
|---|---|---|
| Kevin O'Neil | | |
| Sole or first inventor's signature | | Date |
| | | 4/7/11 |
| Residence | | |
| Parma, ID | | |
| Citizenship        US | | |
| Mailing Address | | |
| 3705 Elmore Road,
Parma, ID 83660 | | |

# All-purpose Acknowledgment

STATE OF *California* , COUNTY OF *San Francisco*

On *April 07, 2011* before me, the undersigned, a Notary Public in and for said State, personally appeared *Kevin O'Neil*

personally known to me  –OR–  proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

Name (type or printed) *Maria Teresa Ocegueda*                    (Seal)

My commission expires: *April 29, 2011*

MARIA TERESA OCEGUEDA
COMM. #1742663
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Apr. 29, 2011

NHL7494 (2 06 97918)

Attorney Docket No.: P5789.0006/P006

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

INTERACTIVE AUDIO/VIDEO PLATFORM AND DEVICE FOR
USE IN A SECURE FACILITY

the specification of which is attached hereto.

In the event that the filing date and/or Application No. are not entered above at the time I execute this document, and if such information is deemed necessary, I hereby authorize and request my attorneys/agent(s) at **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, to insert above the filing date and/or Application No. of said application.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to herein.

I acknowledge the duty to disclose all information known to me that is material to patentability as defined in 37 CFR 1.56.

FOREIGN PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code § 119(a)-(d) of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

[x] no such foreign applications have been filed

[ ] such foreign applications have been filed as follows:

Attorney Docket No.: P5789.0006/P006

**EARLIEST FOREIGN APPLICATION(S), IF ANY FILED WITHIN 12 MONTHS (6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION**

| Application Number | Country | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**ALL FOREIGN APPLICATION(S), IF ANY FILED MORE THAN 12 MONTHS (6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION**

| Application Number | Country | Date of Filing |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**CLAIM FOR BENEFIT OF EARLIER U.S. PROVISIONAL APPLICATIONS**

I hereby claim priority benefits under Title 35, United States Code §119(e), of any United States provisional patent application(s) listed below:

[x] no such U.S. provisional applications have been filed.

[ ] such U.S. provisional applications have been filed as follows:

| Application Number | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)**

I hereby claim the benefit under Title 35, United States Code, §120 of the United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose all information that is material to patentability as defined in 37 CFR 1.56 which became available to me between the filing date of the prior application and the national or PCT international filing date of this application:

[x] no such U.S./PCT applications have been filed.

Attorney Docket No.: P5789.0006/P006

☐   such U.S./PCT applications have been filed as follows:

| Application Number | Relationship | Parent Application | Date of Filing |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint:

All practitioners at Customer Number 24998

all of **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC  20006-5403, jointly, and each of them severally, my attorneys at law/patent agent(s), with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent, and to transact all business in the U.S. Patent and Trademark Office connected therewith.

Please mail all correspondence to Gianni Minutoli, whose address is:

**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC  20006-5403

Please direct telephone calls to Gianni Minutoli at (202) 420-3191.

Please direct facsimiles to: (202) 420-2201

Page 3 of 7

Attorney Docket No.: P5789.0006/P006

| Full name of sole or first inventor | | |
|---|---|---|
| Grant Gongaware | | |
| Sole or first inventor's signature | | Date |
| | | 4-7-2011 |
| Residence | | |
| San Francisco, CA | | |
| Citizenship     US | | |
| Mailing Address | | |
| 355 Berry Street, #515 San Francisco, CA 94158 | | |

# All-purpose Acknowledgment

STATE OF _California_, COUNTY OF _San Francisco_

On _April 07, 2011_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Grant Gingaware_

___ personally known to me  –OR–  ✗ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Name (type or printed) _Maria Teresa Ocegueda_          (Seal)

My commission expires: _April 29, 2011_

MARIA TERESA OCEGUEDA
COMM. #1742663
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Apr. 29, 2011

Attorney Docket No.: P5789.0006/P006

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

INTERACTIVE AUDIO/VIDEO PLATFORM AND DEVICE FOR
USE IN A SECURE FACILITY

the specification of which is attached hereto.

In the event that the filing date and/or Application No. are not entered above at the time I execute this document, and if such information is deemed necessary, I hereby authorize and request my attorneys/agent(s) at **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, to insert above the filing date and/or Application No. of said application.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to herein.

I acknowledge the duty to disclose all information known to me that is material to patentability as defined in 37 CFR 1.56.

### FOREIGN PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code § 119(a)-(d) of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

[x] no such foreign applications have been filed

[ ] such foreign applications have been filed as follows:

Attorney Docket No.: P5789.0006/P006

EARLIEST FOREIGN APPLICATION(S), IF ANY FILED WITHIN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

ALL FOREIGN APPLICATION(S), IF ANY FILED MORE THAN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S. PROVISIONAL APPLICATIONS

I hereby claim priority benefits under Title 35, United States Code §119(e), of any United States provisional patent application(s) listed below:

[x] no such U.S. provisional applications have been filed.

[ ] such U.S. provisional applications have been filed as follows:

| Application Number | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)

I hereby claim the benefit under Title 35, United States Code, §120 of the United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose all information that is material to patentability as defined in 37 CFR 1.56 which became available to me between the filing date of the prior application and the national or PCT international filing date of this application:

[x] no such U.S./PCT applications have been filed.

Attorney Docket No.: P5789.0006/P006

☐ such U.S./PCT applications have been filed as follows:

| Application Number | Relationship | Parent Application | Date of Filing |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint:

All practitioners at Customer Number 24998

all of **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, jointly, and each of them severally, my attorneys at law/patent agent(s), with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent, and to transact all business in the U.S. Patent and Trademark Office connected therewith.

Please mail all correspondence to Gianni Minutoli, whose address is:

**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC 20006-5403

Please direct telephone calls to Gianni Minutoli at (202) 420-3191.

Please direct facsimiles to: (202) 420-2201

Page 3 of 7

Attorney Docket No.: P5789.0006/P006

| | |
|---|---|
| Full name of sole or first inventor | |
| Morgan Collins | |
| Sole or first inventor's signature | Date |
| | 4/7/2011 |
| Residence | |
| San Mateo, CA | |
| Citizenship    US | |
| Mailing Address | |
| 18 Mounds Road, #3 | |
| San Mateo, CA 94402 | |

Page 7 of 7

# All-purpose Acknowledgment

STATE OF _California_ , COUNTY OF _San Francisco_

On _April 07, 2011_ _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _Morgan Collins_

____ personally known to me  –OR–  proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Name (type or printed) _Maria Teresa Ocegueda_ (Seal)

My commission expires _april 29, 2011_

MARIA TERESA OCEGUEDA
COMM. #1742663
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Apr. 29, 2011

HE17494 (2-66 97916)

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Kevin O'Neil |
| **Filer:** | Ryan Holbrook Flax/Monick Lewis |
| **Attorney Docket Number:** | P5789.0006/P006 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility application filing | 1011 | 1 | 330 | 330 |
| Utility Search Fee | 1111 | 1 | 540 | 540 |
| Utility Examination Fee | 1311 | 1 | 220 | 220 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 1202 | 3 | 52 | 156 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **1246** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9902156 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Kevin  O'Neil |
| **Customer Number:** | 24998 |
| **Filer:** | Ryan Holbrook Flax/Monick Lewis |
| **Filer Authorized By:** | Ryan Holbrook Flax |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 18-APR-2011 |
| **Filing Date:** | |
| **Time Stamp:** | 16:26:26 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $1246 |
| RAM confirmation Number | 2962 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | | P57890006.PDF | 4026578 | yes | 82 |
|---|---|---|---|---|---|
| | | | 7e434302aba1dcce25160703710716e79dd 1ed2b | | |

| **Multipart Description/PDF files in .zip description** | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Transmittal of New Application | 1 | 1 |
| Specification | 2 | 44 |
| Drawings-only black and white line drawings | 45 | 62 |
| Oath or Declaration filed | 63 | 82 |

| **Warnings:** |
|---|

| **Information:** |
|---|

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 36904 | no | 2 |
|---|---|---|---|---|---|
| | | | 5d8bbb1c201537d903818639aae33da4b2 526a68 | | |

| **Warnings:** |
|---|

| **Information:** |
|---|

| | | | **Total Files Size (in bytes):** | 4063482 |
|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**EXHIBIT 36**

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address:  COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 01/18/2022 | 11228672 | 3210.1280001 | 2188 |

26111        7590        12/28/2021

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

INVENTOR(s)  (Please see PAIR WEB site http://pair.uspto.gov for additional inventors):

Jason MARASS, Fairhope, AL;
Brian PETERS, St. Paul, MN;
Garth JOHNSON, Indianapolis, IN;
Stephen Lee HODGE, Dallas, TX;

APPLICANT(s)  (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

GLOBAL TEL*LINK CORPORATION, Reston, VA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

26111          7590          12/16/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/16/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

| ***Response to Rule 312 Communication*** | Application No. | Applicant(s) |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | Examiner | Art Unit | AIA (FITF) Status |
| | BARRY W TAYLOR | 2646 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☑ The amendment filed on <u>10 December 2021</u> under 37 CFR 1.312 has been considered, and has been:

   a) ☐   entered.

   b) ☑   entered as directed to matters of form not affecting the scope of the invention.

   c) ☐   disapproved because the amendment was filed after the payment of the issue fee.

             Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1)
             and the required fee to withdraw the application from issue.

   d) ☐   disapproved. See explanation below.

   e) ☐   entered in part. See explanation below.

———

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

U.S. Patent and Trademark Office

PTOL-271 (Rev. 04-01)                   **Response to Rule 312 Communication**            Part of Paper No. 20211214

OK TO ENTER: /B.W.T/

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| First Named Inventor: Jason MARASS | Confirmation No.: 2188 |
| Applicant: Global Tel*Link Corporation | Art Unit: 2646 |
| Application No.: 16/925,076 | Examiner: TAYLOR, BARRY W |
| Filed: July 9, 2020 | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment Under 37 C.F.R. § 1.312

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Submitted herein is an Amendment Under 37 C.F.R. § 1.312. As payment of the issue fee

has not yet been made or is filed herewith, Applicant respectfully submits that filing under 37

C.F.R. § 1.312 is proper. (M.P.E.P. § 714.16.)

It is not believed that extensions of time are required beyond those that may otherwise be

provided for in documents accompanying this paper. However, if additional extensions of time are

necessary to prevent abandonment of this application, then such extensions of time are hereby

petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or

appeal of this application (including issue fee, fees for net addition of claims or forwarding to

appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| First Named Inventor: Jason MARASS | Confirmation No.: 2188 |
| Applicant: Global Tel*Link Corporation | Art Unit: 2646 |
| Application No.: 16/925,076 | Examiner: TAYLOR, BARRY W |
| Filed: July 9, 2020 | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment Under 37 C.F.R. § 1.312

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Submitted herein is an Amendment Under 37 C.F.R. § 1.312. As payment of the issue fee has not yet been made or is filed herewith, Applicant respectfully submits that filing under 37 C.F.R. § 1.312 is proper. (M.P.E.P. § 714.16.)

It is not believed that extensions of time are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

\- 2 -                                                 Jason MARASS
Application No. 16/925,076

## *Amendments to the Claims*

This listing of claims will replace all prior versions, and listings, of claims in the application.

1-22.   (Canceled)

23.      (Previously Presented) A system for preventing unsanctioned use of a mobile device within a controlled environment facility, comprising:

an application barrier stored on a memory of the mobile device, the application barrier configured to:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including functions that modify settings of the mobile device;

disable applications deemed non-useful by the controlled environment facility;

enable applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitor the social interactions of the social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity.

24.      (Currently Amended) The system of claim 23, wherein the application barrier is further configured to prevent installation or removal of [[an]] the application.

25.      (Previously Presented) The system of claim 23, wherein the application barrier is further configured to detect an attempt to perform an unsanctioned function of the enabled applications stored in the memory of the mobile device.

26.     (Previously Presented) The system of claim 25, wherein the application barrier is further configured to prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function.

27.     (Currently Amended) The system of claim 23, wherein the application barrier is further configured to:

        detect an attempt to delete ~~one of the applications on~~ the application from the mobile device; and

        send a command to [[the]] a processor of the mobile device to cancel the attempt to delete.

28.     (Currently Amended) The system of claim 23, wherein the application barrier is further configured to:

        detect an attempt to install an outside application on the mobile device; and

        send a command to [[the]] a processor of the mobile device to cancel the attempt to install.

29.     (Currently Amended) The system of claim 23, wherein the application barrier is further configured to:

        detect an over-the-air command received by the mobile device over a wireless link;

        determine that the over-the-air command meets a security requirement of a second application sanctioned to change the ~~device~~ settings of the mobile device; and

        in response to determining that the over-the-air command meets the security requirement, allow the over-the-air command to be executed by a processor of the mobile device.

30.     (Previously Presented) The system of claim 25, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

31.     (Currently Amended) A mobile device for use in a controlled environment facility, comprising:

        a memory that stores a set of operations of an application barrier; and

        a processor configured to:

- 4 -                                                        Jason MARASS
                                                        Application No. 16/925,076

execute the set of operations of the application barrier, the set of operations comprising:

disabling ~~disable~~ non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including functions that modify settings of the mobile device;

disabling ~~disable~~ applications deemed non-useful by the controlled environment facility;

enabling ~~enable~~ applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enabling ~~enable~~ a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitoring ~~monitor~~ the social interactions of the social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity.

32.     (Currently Amended) The mobile device of claim 31, wherein the set of operations further includes detecting an attempt by a user of the mobile device to perform an unsanctioned function of [[an]] the application ~~stored on the memory~~.

33.     (Previously Presented) The mobile device of claim 32, wherein the set of operations further includes preventing the processor from executing operations related to the attempt to perform the unsanctioned function.

34.     (Previously Presented) The mobile device of claim 32, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

35.     (Currently Amended) The mobile device of claim 32, wherein the set of operations further includes:

- 5 -                                                              Jason MARASS
                                                            Application No. 16/925,076

detecting an attempt to delete ~~one of the applications on~~ the application from the mobile device; and

sending a command to the processor to cancel the attempt to delete.

36.    (Currently Amended) The mobile device of claim 32, wherein the set of operations includes:

detecting an attempt to install a second application on the mobile device; and

sending a command to the processor of the mobile device to cancel the ~~installation~~ attempt to install.

37.    (Currently Amended) The mobile device of claim 32, wherein the set of operations includes:

detecting an over-the-air command received by the mobile device over a wireless link;

determining that the over-the-air command is from a sanctioned source; and

in response to determining that the over-the-air command is from the sanctioned source, allowing the over-the-air command to be executed by the processor.

38.    (Currently Amended) A system for use in a controlled environment facility for preventing unsanctioned use of a mobile device in [[a]] the controlled environment facility, comprising:

an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device, the application barrier configured to:

perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including functions that modify settings of the mobile device;

perform application enablement, including:

disabling applications deemed non-useful by the controlled environment facility;

enabling applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled; and

- 6 -                                                                    Jason MARASS
                                                                 Application No. 16/925,076

enabling a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

performing monitoring of the social interactions of the social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity.

39.     (Currently Amended) The system of claim 38, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete ~~one of the applicatoins~~ the application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

40.     (Previously Presented) The system of claim 39, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

41.     (Currently Amended) The system of claim 38, wherein the application barrier is further configured to:

detect an attempt to delete ~~one of the applications on~~ the application from the mobile device; and

send a command to [[the]] a processor [[the]] to cancel the attempt to delete.

- 7 -                                                          Jason MARASS
                                                          Application No. 16/925,076

## *Remarks*

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 23-41 are pending in the application, with claims 23, 31, and 38 being the independent claims. Claims 24, 27-29, 31, 32, 35-39, and 41 are sought to be amended. The amendments correct minor informalities in the claims. Applicant reserves the right to prosecute similar or broader claims, with respect to the amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:     December 10, 2021

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

17729816.1

Atty. Dkt. No. 3210.1280001

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 16925076 |
| **Filing Date:** | 09-Jul-2020 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Attorney Docket Number:** | 3210.1280001 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 1501 | 1 | 1200 | 1200 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **1200** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 44483576 |
| **Application Number:** | 16925076 |
| **International Application Number:** | |
| **Confirmation Number:** | 2188 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280001 |
| **Receipt Date:** | 10-DEC-2021 |
| **Filing Date:** | 09-JUL-2020 |
| **Time Stamp:** | 13:57:10 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $ 1200 |
| RAM confirmation Number | E2021B0D57274247 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2021-12-10-Cover-Letter-Issue-Fee-3210-1280001.pdf | 192177 a50dbdeb29634886 2a8edfc32ea9502898a 91d14 | no | 1 |

**Warnings:**

**Information:**

| 2 | Issue Fee Payment (PTO-85B) | 2021-12-10-Issue-Fee-3210-1280001.PDF | 90556 f2a7b3227c6b9534d97 cae63d3155b3a65b 4cb06 | no | 1 |

**Warnings:**

**Information:**

| 3 | Post Allowance Communication - Incoming | 2021-12-10-Comments-Reasons-Allowance-3210-1280001.pdf | 102053 82fe5830b8ed3bad439d 6071b9d8bba2c5 4def7a | no | 1 |

**Warnings:**

**Information:**

| 4 | | 2021-12-10-Amendment-312-3210-1280001.pdf | 127716 ca99cc6725f8312acf108 572d916fde52433 4024 | yes | 7 |

| **Multipart Description/PDF files in .zip description** | | | |
|---|---|---|---|
| **Document Description** | | **Start** | **End** |
| Amendment after Notice of Allowance (Rule 312) | | 1 | 1 |
| Claims | | 2 | 6 |
| Applicant Arguments/Remarks Made in an Amendment | | 7 | 7 |

**Warnings:**

**Information:**

| 5 | Fee Worksheet (SB06) | fee-info.pdf | 37915 3565a38013e51dfb81bf 29eda15737b3dca eb8f | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 550417 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**LAUREN C. SCHLEH**
COUNSEL
202-772-8587
LSCHLEH@STERNEKESSLER.COM

December 10, 2021

Commissioner for Patents                                    *Confirmation No. 2188*
PO Box 1450                                                *Attn: Mail Stop Issue Fee*
Alexandria, VA  22313-1450

      Re:    Allowed U.S. Utility Patent Application
               Appl. No. 16/925,076; Filed: July 9, 2020
               For:    **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
               First Named Inventor: Jason MARASS
               Our Ref:      3210.1280001

Commissioner:

      In response to the **Notice of Allowance and Fee(s) Due** dated **September 14, 2021**, the following documents are transmitted for appropriate action by the U.S. Patent and Trademark Office:

    1.   Issue Fee Transmittal (Form PTOL-85);
    2.   Online Credit Card Payment Authorization for **$1,200** to cover the Issue Fee;
    3.   Comments on Statement of Reasons for Allowance; and
    4.   Amendment Under 37 C.F.R. §1.312.

      The above-listed documents are filed electronically.

      Fee payment is provided through online credit card payment.

      The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

                          Respectfully submitted,

                          STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                          /Lauren C. Schleh/

                          Lauren C. Schleh
                          Attorney for Applicant
                          Registration No. 65,457

LCS/crb
Enclosure(s)
17734012.1

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |
|---|---|---|---|

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26111      7590      09/14/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 12/14/2021 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TAYLOR, BARRY W | 2646 | 455-411000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

**2.** For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Sterne, Kessler, Goldstein & Fox P.L.L.C.
2  _____
3  _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Global Tel*Link Corporation

(B) RESIDENCE: (CITY AND STATE OR COUNTRY)

Reston, VA

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. Fees submitted:  ☒ Issue Fee   ☐ Publication Fee (if required)   ☐ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via EFS-Web   ☐ Enclosed check   ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. 19-0036

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature | /Lauren C. Schleh/ | Date | December 10, 2021 |
|---|---|---|---|
| Typed or printed name | Lauren C. Schleh | Registration No. | 65,457 |

Page 2 of 3

PTOL-85 Part B (08-18) Approved for use through 01/31/2020      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| First Named Inventor: Jason MARASS | Confirmation No.: 2188 |
| Applicant: GLOBAL TEL*LINK CORPORATION | Art Unit: 2646 |
| Application No.: 16/925,076 | Examiner: TAYLOR, BARRY W |
| Filing Date: July 9, 2020 | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Comments on Statement of Reasons for Allowance

Commissioner for Patents                                       *Mail Stop: Issue Fee*
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

      Applicant thanks the Examiner for indicating the allowability of claims 23-41 in the Notice of Allowance dated September 14, 2021.

### *Comments on Statement of Reasons for Allowance*

      Applicant notes the Examiner's Statement of Reasons for Allowance presented on page 2 of the Notice of Allowance. Applicant reserves the right to demonstrate claims 23-41 are allowable over the art made of record for further reasons related to any of their recited features. Applicant further contends that reservation of this right does not give rise to any implication regarding whether the Applicant agrees with or acquiesces in the reasoning provided by the Examiner.

                            Respectfully submitted,

                            STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                            /Lauren C. Schleh/

                            Lauren C. Schleh
                            Attorney for Applicant
                            Registration No. 65,457

Date:   December 10, 2021
1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

17733997.1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

26111      7590      09/14/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

DATE MAILED: 09/14/2021

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 12/14/2021 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26111          7590          09/14/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

|  | (Typed or printed name) |
|---|---|
|  | (Signature) |
|  | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 12/14/2021 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TAYLOR, BARRY W | 2646 | 455-411000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐Issue Fee ☐Publication Fee (if required) ☐Advance Order - # of Copies _____
4b. Method of Payment: *(Please first reapply any previously paid issue fee shown above)*

☐ Electronic Payment via EFS-Web   ☐ Enclosed check   ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

26111      7590      09/14/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

DATE MAILED: 09/14/2021

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 16/925,076 | Applicant(s) MARASS et al. | |
| --- | --- | --- | --- |
| | Examiner BARRY W TAYLOR | Art Unit 2646 | AIA (FITF) Status Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to amnd 9/3/2021.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 23-41 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐All     b) ☐ Some*     c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☑ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____.

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | |
| --- | --- |

Application/Control Number: 16/925,076                                                    Page 2
Art Unit: 2646

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Allowable Subject Matter*

1.      Claims 23-41 are allowed.

2.      The following is an examiner's statement of reasons for allowance.

Claims 23-41 are allowed for the reasons as set forth in Applicant's response filed 9/3/2021, page 7 – page 8.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

3.      The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

---(2019/0215696) Ying et al teaches antitheft software installed on mobile terminal.  When another SIM card is put into a lost mobile device, the mobile automatically sends an SMS message to a preprogrammed phone number (0004 ). Monitor whether the antitheft security module has been modified in any manner at any time during execution of the terminal retrieving applications, so as to implement functions such as prompt, tracking, and retrieving of the UE when the UE retrieving application is uninstalled or when ROM flashing is performed on the UE (figure 7, 0042).

Application/Control Number: 16/925,076                                          Page 3
Art Unit: 2646

---(2018/0165936) Smith et al teaches a monitoring App may be downloaded on the UE. The monitoring App may be configured to intercept communications, content, and/or data determined to be inappropriate or illegal before transmitted by the UE and/or before being saved on the UE (0012).

4.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to BARRY W TAYLOR whose telephone number is (571)272-7509. The examiner can normally be reached on Monday-Thursday: 7-5.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Lester Kincaid can be reached on 571-272-7922. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 16/925,076                                      Page 4
Art Unit: 2646

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

| *Notice of References Cited* | Application/Control No.<br>16/925,076 | Applicant(s)/Patent Under<br>Reexamination<br>MARASS et al. | | |
|---|---|---|---|---|
| | Examiner<br>BARRY W TAYLOR | Art Unit<br>2646 | Page 1 of 1 | |

## U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20180165936-A1 | 06-2018 | Smith; Kenneth | H04L43/08 | 1/1 |
| * | B | US-20190215696-A1 | 07-2019 | Ying; Jindong | H04L9/3247 | 1/1 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20210909

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| H04W 12/08, 12/35, 12/126, 12/37 | 05/28/2021 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| updated search for parent application and Google Scholar | 05/28/2021 | BWT |
| updated search. | 09/09/2021 | BWT |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| H04W | 12/08, 12/35, 12/126, 12/37 | 09/09/2021 | BWT |

| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | |
|---|---|
| | |

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

**CPC**

| Symbol | | | | | Type | Version |
|---|---|---|---|---|---|---|
| H04M | / | 1 | / | 185 | F | 2013-01-01 |
| H04W | / | 4 | / | 50 | I | 2018-02-01 |
| H04W | / | 12 | / | 08 | I | 2013-01-01 |
| H04W | / | 12 | / | 082 | I | 2021-01-01 |
| H04W | / | 12 | / | 084 | I | 2021-01-01 |
| H04W | / | 12 | / | 088 | I | 2021-01-01 |
| H04W | / | 4 | / | 80 | A | 2018-02-01 |
| H04M | / | 1 | / | 67 | A | 2013-01-01 |
| H04M | / | 1 | / | 72409 | A | 2021-01-01 |
| H04W | / | 12 | / | 126 | A | 2021-01-01 |
| H04W | / | 12 | / | 35 | A | 2021-01-01 |
| H04W | / | 12 | / | 37 | A | 2021-01-01 |

**CPC Combination Sets**

| Symbol | | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|---|
| | / | | / | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 19 | |
| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | 09 September 2021 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 7 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

| INTERNATIONAL CLASSIFICATION | | | | |
|---|---|---|---|---|
| **CLAIMED** | | | | |
| H04W | | 12 | | 37 |

| NON-CLAIMED |
|---|

| US ORIGINAL CLASSIFICATION | |
|---|---|
| **CLASS** | **SUBCLASS** |
| | |

| CROSS REFERENCES(S) | | | | | | |
|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | | |
| | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 19 | |
| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | 09 September 2021 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 7 |

U.S. Patent and Trademark Office

Part of Paper No.: 20210909

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

☐ Claims renumbered in the same order as presented by applicant     ☐ CPA     ☐ T.D.     ☐ R.1.47

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 10 | | 19 | 7 | 28 | 15 | 37 | | | | | | |
| | 2 | | 11 | | 20 | 8 | 29 | 16 | 38 | | | | | | |
| | 3 | | 12 | | 21 | 5 | 30 | 17 | 39 | | | | | | |
| | 4 | | 13 | | 22 | 9 | 31 | 18 | 40 | | | | | | |
| | 5 | | 14 | 1 | 23 | 10 | 32 | 19 | 41 | | | | | | |
| | 6 | | 15 | 2 | 24 | 11 | 33 | | | | | | | | |
| | 7 | | 16 | 3 | 25 | 12 | 34 | | | | | | | | |
| | 8 | | 17 | 4 | 26 | 13 | 35 | | | | | | | | |
| | 9 | | 18 | 6 | 27 | 14 | 36 | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 19 | |
| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | 09 September 2021 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 7 |

U.S. Patent and Trademark Office

Part of Paper No.: 20210909

### Digital **social media**, youth, and nonmedical use of prescription drugs: the need for reform

TK Mackey, BA Liang, SA Strathdee - Journal of medical internet research, 2013 - jmir.org

… Additionally, use of **monitoring** companies such as LegitScript, which has clients such as Google, Microsoft … and the FDA, may better ensure that authorized sites are actively **monitored** and remain … that **social media** sites do little to enforce their own policies or **monitor** their content …

☆ 𝄞 Cited by 55    Related articles    All 13 versions    ≫

### Global reach of direct-to-consumer advertising using **social media** for **illicit** online drug sales

TK Mackey, BA Liang - Journal of medical internet research, 2013 - jmir.org

… Importantly, **illicit** online pharmacy **activities** and lack of appropriate eDTCA marketing regulation is compounded by an absence of online pharmacy regulation globally [14] … Further, because of the potential global reach of **social media** marketing in enabling this **illicit** trade, we …

☆ 𝄞 Cited by 71    Related articles    All 11 versions    ≫

### Tracking **illicit** drug dealing and abuse on Instagram using multimodal analysis

X Yang, J Luo - ACM Transactions on Intelligent Systems and …, 2017 - dl.acm.org

… [2015] **monitored** adolescent alcohol … [2016] used network information of Instagram user timelines to **monitor** potential drug … While these works show great promise in using **social media** for drug use **tracking**, our work is differentiated from them primarily by proposing more robust …

☆ 𝄞 Cited by 45    Related articles    All 6 versions

### Analyzing and retrieving **illicit** drug-related posts from **social media**

T Ding, A Roy, Z Chen, Q Zhu … - 2016 IEEE International …, 2016 - ieeexplore.ieee.org

… 10], community and event detection [11], influenza trend detection [12], crime **monitoring** [13], drug use … terminologies are constantly evolving, our model allows us to retrieve and **monitor** drug abuse … [11] H. Sayyadi, M. Hurst, and A. Maykov, "Event detection and **tracking** in social …

☆ 𝄞 Cited by 10    Related articles    All 6 versions

### **Social media** surveillance and law enforcement

A Mateescu, D Brunton, A Rosenblat, D Patton … - Data Civ …, 2015 - datasociety.net

… Other documents show that DHS **monitored** the **social media activity** of prominent #blacklivesmatter … in "**monitoring** of First Amendment protected **activities** for public dissent," questions remain about the … The ability to cheaply **monitor** huge quantities of public information …

☆ 𝄞 Cited by 26    Related articles    All 6 versions    ≫

### Analyzing the **social media** footprint of street gangs

S Wijeratne, D Doran, A Sheth … - 2015 IEEE international …, 2015 - ieeexplore.ieee.org

… powered platform to discover the structure, function, and operation of gangs: 1. **Monitor** negative community … This **monitoring** requires finding entities relevant to gang **activities** in posts as well as … This includes **tracking** the creation and diffusion of information across a network of re …

☆ 𝄞 Cited by 29    Related articles    All 11 versions

### Machine learning and natural language processing for geolocation-centric **monitoring** and characterization of opioid-related **social media** chatter

A Sarker, G Gonzalez-Hernandez, Y Ruan… - JAMA network …, 2019 - jamanetwork.com

… 17. Sarker A, O'Connor K, Ginn R, et al. **Social media** mining for toxicovigilance: automatic **monitoring** of prescription medication abuse from Twitter … **Social media** fact sheet. https://www.pewinternet.org/fact-sheet/**social-media** … Leveraging **social networks** for toxicovigilance …

☆ 𝄞 Cited by 21    Related articles    All 7 versions    ≫

### 'Going viral' and 'Going country': the expressive and instrumental **activities** of street gangs on **social media**

ML Storrod, JA Densley - Journal of youth studies, 2017 - Taylor & Francis

… of gangs and how **social** rules and behaviours within them are **monitored** and enforced … Our respondents also talked about gang members '**monitoring**' who had 'liked', 'tagged' or 'retweeted … 2010, 142) describes as 'remote mothering' – that is, the ability to **monitor** where someone …

☆ 𝄞 Cited by 119    Related articles    All 6 versions

## Social media and drug markets

D Thanki, BJ Frederick - 2016 - eprints.glos.ac.uk

… The British Broadcasting Corporation (BBC) recently reported that most **social media** owners
do not actively **monitor** and/or remove drug … l Further research and **monitoring** Research exploring
the link between new forms of **media**, in particular **social media**, and drug supply and …

☆　🗩　Cited by 24　Related articles　≫

## Social media analytics and research test-bed (SMART dashboard)

MH Tsou, CT Jung, C Allen, JA Yang … - … on social media & … , 2015 - dl.acm.org

… 5.3 **Tracking** Ebola in West Africa and US Cities The recent emergence of the lethal … for Disease
Control and Prevention (CDC) have good tools for reporting, **monitoring**, and measuring the … One
potential use of the SMART dashboard is to **monitor** public opinions and responses …

☆　🗩　Cited by 30　Related articles　All 4 versions

# Related searches

social media illicit **online drug sales**

social media illicit **drug use behaviors**

social media **analytics**

monitoring **and characterization** social media **chatter**

social media **footprint**

**dark side of** social media

**nonmedical use digital** social media

social media **posts**

social media **prescription drug abuse**

social media **global health implications**

social media **drug markets**

social media **alternative treatments**

**high healthcare utilization** social networks

social media **nonmedical prescription medication use**

social media **misuse of prescription opioids**

social media **facebook accounts**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 7,187 | (H04W12/35 or H04W12/126 or H04W12/37).CPC. | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:33 |
| L2 | 273 | (monitor$4 near7 interaction$1 near7 ((social$5 adj3 (media or functions)) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:34 |
| L3 | 0 | 1 and 2 | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:34 |
| L4 | 1,383,636 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/09/09 07:35 |
| L5 | 82 | L4 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) same (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) same (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:35 |
| L6 | 97,474 | (enabl$5 or disabl$5) same (chat or facebook$3 or face-book$5 or twitter$2 or whatsapp$3 or snapchat$3 or snap-chat$5 or social) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:36 |
| L7 | 373 | 6 same (monitor$4 near7 interaction$1) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:37 |
| L8 | 326 | 7 and (@ad<="20170217" or @rlad<="20170217" or @pd<="20170217") | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:38 |
| L9 | 3 | 7 and ((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:39 |

9/9/2021 7:40:33 AM
C:\Users\btaylor\Documents\EAST\Workspaces\Workspaces\%15,435,993 prevent use of mobile for inmates.wsp

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>16/925,076 | Filing Date<br>07/09/2020 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE   ☐ SMALL   ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 19 minus 20 = | * 0 | x $100 = | 0 |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 3 minus 3 = | * 0 | x $460 = | 0 |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 0 |

### APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| **AMENDMENT** | 09/03/2021 | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * 19 Minus | ** 20 | = 0 | x $100 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 3 Minus | *** 3 | = 0 | x $480 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| **AMENDMENT** | Total<br>(37 CFR 1.16(i)) | * Minus | ** | = | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /GERALDINE L STANLEY/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| First Named Inventor: Jason MARASS | Confirmation No.: 2188 |
| Applicant: Global Tel*Link Corporation | Art Unit: 2646 |
| Application No.: 16/925,076 | Examiner: TAYLOR, BARRY W |
| Filed: July 9, 2020 | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment and Reply Under 37 C.F.R. § 1.111

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In reply to the Office Action dated June 3, 2021, Applicant submits the following Amendment and Remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page **2** of this paper.

**Remarks and Arguments** begin on page **7** of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

- 2 -

Jason MARASS
Application No. 16/925,076

## *Amendments to the Claims*

This listing of claims will replace all prior versions, and listings, of claims in the application.

1-22.   (Canceled)

23.   (Currently Amended)  A system for preventing unsanctioned use of a mobile device within a controlled environment facility, comprising:

an application barrier stored on a memory of the mobile device, the application barrier configured to:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including ~~social functions of the application~~functions that modify settings of the mobile device; [[and]]

disable applications deemed non-useful by the controlled environment facility;

enable applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitor ~~user activity~~the social interactions of [[a]]the social application, the monitoring including gathering social interactions of the social application and ~~review~~reviewing the social interactions for illicit activity.

24.   (Previously Presented)  The system of claim 23, wherein the application barrier is further configured to prevent installation or removal of an application.

25.   (Currently Amended)  The system of claim 23, wherein the application barrier is further configured to detect an attempt to perform an unsanctioned function of the ~~application~~enabled applications stored in the memory of the mobile device.

- 3 -                                          Jason MARASS
Reply to Office Action of June 3, 2021                Application No. 16/925,076

26.     (Previously Presented)  The system of claim 25, wherein the application barrier is further configured to prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function.

27.     (Currently Amended) The system of claim 23, wherein the application barrier is further configured to:

    detect an attempt to delete ~~the application~~<ins>one of the applications</ins> on the mobile device; and

    send a command to the processor of the mobile device to cancel the attempt.

28.     (Currently Amended)  The system of claim 23, wherein the application barrier is further configured to:

    detect an attempt to install an <ins>outside </ins>application on the mobile device; and

    send a command to the processor of the mobile device to cancel the attempt.

29.     (Previously Presented)  The system of claim 23, wherein the application barrier is further configured to:

    detect an over-the-air command received by the mobile device over a wireless link;

    determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

    in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

30.     (Previously Presented)  The system of claim 25, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

31.     (Currently Amended)  A mobile device for use in a controlled environment facility, comprising:

        a memory that stores a set of operations of an application barrier; and

        a processor configured to:

- 4 -                                                        Jason MARASS
Reply to Office Action of June 3, 2021                 Application No. 16/925,076

execute the set of operations of the application barrier, the set of operations comprising:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including ~~social functions of the application; and~~functions that modify settings of the mobile device;

disable applications deemed non-useful by the controlled environment facility;

enable applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitor ~~user activity~~ the social interactions of [[a]]the social application, the monitoring including gathering social interactions of the social application and ~~review~~reviewing the social interactions for illicit activity.

32. (Previously Presented)  The mobile device of claim 31, wherein the set of operations further includes detecting an attempt by a user of the mobile device to perform an unsanctioned function of an application stored on the memory.

33. (Previously Presented)  The mobile device of claim 32, wherein the set of operations further includes preventing the processor from executing operations related to the attempt to perform the unsanctioned function.

34. (Previously Presented)  The mobile device of claim 32, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

35. (Currently Amended)  The mobile device of claim 32, wherein the set of operations further includes:

detecting an attempt to delete ~~the application~~one of the applications on the mobile device; and sending a command to the processor to cancel the attempt.

- 5 -                                    Jason MARASS
Reply to Office Action of June 3, 2021          Application No. 16/925,076

36.    (Previously Presented)  The mobile device of claim 32, wherein the set of operations includes:

detecting an attempt to install a second application on the mobile device; and

sending a command to the processor of the mobile device to cancel the installation attempt.

37.    (Previously Presented)  The mobile device of claim 32, wherein the set of operations includes:

detecting an over-the-air command received by the mobile device over a wireless link;

determining that the over-the-air command is from a sanctioned source; and

in response to determining that the command is from the sanctioned source, allowing the command to be executed by the processor.

38.    (Currently Amended)  A system for use in a controlled environment facility for preventing unsanctioned use of a mobile device in a controlled environment facility, comprising:

an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device, the application barrier configured to:

perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including ~~social functions of the application~~ functions that modify settings of the mobile device; [[and]]

perform application enablement, including:

disabling applications deemed non-useful by the controlled environment facility;

enabling applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled; and

enabling a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

Atty. Dkt. No. 3210.1280001

performing monitoring of ~~user activity of a~~the social interactions of the social application, the monitoring including gathering social interactions of the social application and ~~review~~reviewing the social interactions for illicit activity.

39.     (Currently Amended)  The system of claim 38, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete ~~an application~~one of the applicatoins from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

40.     (Previously Presented)  The system of claim 39, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

41.     (Currently Amended)  The system of claim 38, wherein the application barrier is further configured to:

detect an attempt to delete ~~the application~~one of the applications on the mobile device; and send a command to the processor the cancel the attempt.

## *Remarks*

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 23-41 are pending in the application, with claims 23, 31, and 38 being the independent claims. By this Amendment, claims 23, 25, 27, 28, 31, 35, 38, 39 and 41 are sought to be amended. Applicant respectfully reserves the right to prosecute similar or broader claims, with respect to the canceled and/or amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Based on the above amendment and the following remarks, Applicant respectfully requests that the Examiner reconsider all outstanding objections and rejections and that they be withdrawn.

### *Rejections under 35 U.S.C. § 103*

The Office Action rejects claims 23-28, 30-36, and 38-41 under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Publication No. 2015/0040246 to Yuen *et al.* in view of U.S. Patent Publication No. 2017/0149795 to Day, II; and rejects claims 29 and 37 under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in view of Day, II further in view of U.S. Patent Publication No. 2014/0226487 to Forssell *et al.*

The applied references fail to disclose and would not have rendered obvious at least "disable applications deemed non-useful by the controlled environment facility," as recited in independent claim 23.

The Office Action relies on Yuen to disclose the disabling aspects of the claims. However, Yuen merely describes disabling function calls to a newly-installed application. Yuen, ¶ [0041]. Additionally, Yuen discloses disabling an icon associated with an application to prevent its access. Yuen, ¶¶ [0053]-[0055]. But nothing in Yuen discloses that this disabling is based on any

- 8 -                                                      Jason MARASS
Reply to Office Action of June 3, 2021                    Application No. 16/925,076

usefulness determination. Rather, Yuen suggests that all newly-installed and/or unknown

applications are disabled in some form. The remaining references are silent with respect to this

feature and therefore fail to at least cure Yuen's deficiencies.

For at least similar reasons, the applied references fail to disclose and would not have

rendered obvious at least "disable applications deemed non-useful by the controlled environment

facility," as recited in independent claim 31, and "disabling applications deemed non-useful by the

controlled environment facility," as recited in independent claim 38.

Additionally, the applied references also fail to disclose and would not have rendered

obvious "enable a social application having social functions and programming to allow for

monitoring of social interactions conducted using the social functions," as recited in independent

claim 23.

The Office Action acknowledges that Yuen does not disclose monitoring social application

activity, but alleges that Day cures Yuen's deficiencies. Office Action, p. 4. Day discloses a module

that monitors social traffic for illicit activity, such as swearing or photographs. Day, ¶¶ [0004],

[0122], and [0154]. But Day's security module is separate software from the social application

being monitored. For example, Day discloses that "the user system control module 118 can

intercept or otherwise access and analyze image or video feeds from or to the camera module of the

user systems 130" (¶ [0109]), and "[t]he user systems controls module 118 can intercept the

communications…[by] captur[ing] packets received at the communications module of the user

system 130." Day, ¶ [0121]. Thus, Day's monitoring is performed separately from the applications

being monitored, and there is no indication in Day that its social application has "programming to

allow for monitoring of social interactions conducted using the social functions." The remaining

- 9 -

Jason MARASS
Application No. 16/925,076

references are silent with respect to these features, and therefore fail to at least cure Day's deficiencies.

For at least similar reasons, the applied references fail to disclose and would not have rendered obvious at least "enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions," as recited in independent claim 31, and "enabling a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions," as recited in independent claim 38.

Therefore, independent claims 23, 31 and 38 are patentable over the applied references. Claims 24-30, 32-37 and 39-41 are patentable at least for their dependencies from the independent claims, as well as for the additional features they recite.

Accordingly, Applicant respectfully requests withdrawal of the rejections.

- 10 -

Jason MARASS

Reply to Office Action of June 3, 2021

Application No. 16/925,076

## *Conclusion*

All of the stated grounds of objection and rejection have been properly traversed, accommodated, or rendered moot. Applicant therefore respectfully requests that the Examiner reconsider all presently outstanding objections and rejections and that they be withdrawn. Applicant believes that a full and complete reply has been made to the outstanding Office Action and, as such, the present application is in condition for allowance. If the Examiner believes, for any reason, that personal communication will expedite prosecution of this application, the Examiner is invited to telephone the undersigned at the number provided.

Prompt and favorable consideration of this Amendment and Reply is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date: ___September 3, 2021___

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

17059243.1

Atty. Dkt. No. 3210.1280001

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 43680771 |
| **Application Number:** | 16925076 |
| **International Application Number:** | |
| **Confirmation Number:** | 2188 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280001 |
| **Receipt Date:** | 03-SEP-2021 |
| **Filing Date:** | 09-JUL-2020 |
| **Time Stamp:** | 15:57:01 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2021-09-03-Cover-Letter-3210-1280001.PDF | 171258 <br> 5a323bf3c44635144850527323f05a033e1e7de64 | no | 1 |

**Warnings:**

Information:

| 2 | | 2021-09-03-Amendment-Reply-111-3210-1280001.PDF | 146613 | yes | 10 |
| | | | 768dac90c86df44b38905b68ce1aeef8ebab97eb | | |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | **Document Description** | **Start** | **End** |
| | Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| | Claims | 2 | 6 |
| | Applicant Arguments/Remarks Made in an Amendment | 7 | 10 |

| Warnings: | |
|---|---|
| Information: | |
| **Total Files Size (in bytes):** | 317871 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**LAUREN C. SCHLEH**
COUNSEL
202-772-8587
LSCHLEH@STERNEKESSLER.COM


September 3, 2021


Commissioner for Patents                        *Confirmation No. 2188*
PO Box 1450                                                    *Art Unit: 2646*
Alexandria, VA  22313-1450                   *Attn: Mail Stop Amendment*

   Re:  U.S. Utility Patent Application
       Appl. No. 16/925,076; Filing Date: July 9, 2020
       For: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
       First Named Inventor:  Jason MARASS
       Our Ref: 3210.1280001

Commissioner:

  Transmitted herewith for appropriate action is a document entitled *Amendment and Reply Under 37 C.F.R. § 1.111*, which is submitted electronically.

  In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

  The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims, or forwarding to appeal), or credit any overpayment, to our Deposit Account No. 19-0036.

        Respectfully submitted,

        STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

        /Lauren C. Schleh/

        Lauren C. Schleh
        Attorney for Applicant
        Registration No. 65,457

LCS/crb
Enclosure(s)
17284345_1.docx

U NITED  S TATES  P ATENT AND  T RADEMARK  O FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

26111          7590          06/03/2021

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/03/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

| *Office Action Summary* | Application No.<br>16/925,076 | Applicant(s)<br>MARASS et al. | |
|---|---|---|---|
| | Examiner<br>BARRY W TAYLOR | Art Unit<br>2646 | AIA (FITF) Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐ This action is **FINAL.**      2b) ☑ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>23-41</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>23-41</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on <u>09 July 2020</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a)☐ All   b)☐ Some**   c)☐ None of the:
   1.☐ Certified copies of the priority documents have been received.
   2.☐ Certified copies of the priority documents have been received in Application No. _____.
   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Application/Control Number: 16/925,076                                        Page 2
Art Unit: 2646

# DETAILED ACTION

## *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined
under the first inventor to file provisions of the AIA.

## *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35
U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any
correction of the statutory basis for the rejection will not be considered a new ground of
rejection if the prior art relied upon, and the rationale supporting the rejection, would be
the same under either status.

This application currently names joint inventors. In considering patentability of the
claims the examiner presumes that the subject matter of the various claims was
commonly owned as of the effective filing date of the claimed invention(s) absent any
evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to
point out the inventor and effective filing dates of each claim that was not commonly
owned as of the effective filing date of the later invention in order for the examiner to
consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)
prior art against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all
obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

Application/Control Number: 16/925,076                                        Page 3
Art Unit: 2646

1.       Claims 23-28, 30-36, 38- 41 are rejected under 35 U.S.C. 103 as being

unpatentable over Yuen et al (2015/0040246) in view of Day, II (2017/0149795).

       Regarding claim 23.  Yuen teaches  a system for preventing unsanctioned use of

a mobile device, comprising:

       **an application barrier stored on a memory of the mobile device, the**

**application barrier configured to** (figure 1, 0031-0032 wherein smartphone item 10

has mobile agent item 20 for managing content of an installed application list 22, figure

3, 0039-0043 wherein mobile agent identifies via an Operation System of the mobile

that the application was changed (e.g., installed, removed, downloaded, updated):

       **disable non-secure functions of an application stored in the memory of the**

**mobile device** (0041 – one example means for disabling (i.e., not allowing user of the

mobile device to access and execute) the newly installed application, another example

means for disabling by the mobile agent to disable or otherwise redirect a system of

function call associated with the newly installed application, such that mobile agent

would not allow the system of function call issued by the Operating System of the

device infrastructure to be received by the newly installed application.  Another example

means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of

a user interface 27 icon (e.g., a graphical user interface) associated with the newly

installed application, 0053-0055 as discussed above, each mobile device is configured

with Mobile Agent 20 for managing content of the application list 22, containing

identification of all mobile applications presently installed (and/or removed) on the

mobile device and the mobile agent can quarantine/disable non-compliant applications)**,**

Application/Control Number: 16/925,076                                          Page 4
Art Unit: 2646

Yuen does not teach **the non-secure functions including social functions of the application**; and **monitor user activity of a social application, the monitoring including gathering social interactions of the social application and review the social interactions for illicit activity**.

Day teaches monitoring non-secure functions including social functions of the application (**abstract** – access and extract data from or about one or more of the smartphone software applications, including at least two of texting application, a **social media application**, image application that facilitates TX and RX of images, web browser application, **0005** – smartphone app tracks/monitors applications such as posts to social network, **0007** – smartphone app tracks/monitors any applications downloaded including content of any social network posts created, viewed or sent,  **0098** – monitor and control activities on smartphone wherein activities include social media, text messages, chat services, and websites, **0101** – flag conversations with illicit content, **0102** – smartphone has a safety system plugin 132 (e.g., **Application Barrier**) to monitor social application(s) and is helpful in controlling the local functionality of the UE, **0109** – Thus it can prevent, inhibit, deter, or monitor taking or receiving inappropriate pictures, **0111** – **portions of the safety system 110 (e.g., Application Barrier) can be installed on the UE 130**, 0112 – Facebook, Twitter, etc., **0121** -  the safety system (e.g., Application Barrier) can monitor and review Whatsapp message**, SnapChat messages, Facebook messages, etc.**, **0122** – these communications can be analyzed by the analysis module 112.  Some or all of this analysis can occur either onboard the UE, on a server, and/or within a safety system 110.  **For example, the communication may contain illicit content such as profanity or inappropriate images**, **0123** –

monitor social media data, **0131** – filter content from various software applications on

the UE, such as web browser clients, social media clients, SMS, MMS, etc.  The safety

system 110 (e.g., **Application Barrier**) can also work as a plug-in for these

applications.  The safety system (**Application Barrier**) can review the content and

determine any content to block or flag for review via the administration portal or user

interface module.  In some embodiments, application monitoring, filtering and blocking

may also be implemented as described herein with respect to Apps Agent, **0132** – the

UE can alert a user and/or prohibit, inhibit, or block downloading and installations of

certain applications, **0134-0135** – Website monitoring, filtering and blocking and alerting

with respect to pornography, profanity, nudity, violence, drugs, images – gang symbols,

genitalia, other body parts, etc. **0137** – analysis of web pages visited, URLs employed,

applications run, and messages sent or received or recording evidence of illicit

activities, **0148** – disable access to web browsing or social networking links from UEs

during work hours, **0149** – software on the smartphone can be employed to track

attempts to circumvent any settings or restrictions and report any clandestine usage

(e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system

110 (e.g., Application Barrier) can also track any attempts at tampering or disabling

features of the safety system, **0154** – safety system (e.g., Application Barrier) can

intercept data being transferred to and/or from the camera on the phone.  During video

chatting (FaceTime, Skype, etc.), the system can perform image recognition and block

any indecent content in real time, as well as, monitoring external communications.  For

example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school

geofenced, **0167-0168** – monitoring social media activities, **0173** – monitor applications

on a smartphone and alert when an application is installed, monitor text messages,

monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed

and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from

images (for example sent or received via messages, posted on Facebook, or SnapChat,

etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on

messaging use, application use, social network use, picture capturing usage, etc.

Based on this data gathered, determine whether a particular behavior with respect to

using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all

functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the mobile agent as taught by Yuen to

include gathering social interactions of the social application(s) and review the

interactions as taught by Day in order to enable the parent/administrator to quickly

identify misbehavior and/or illicit activities on Facebook, Whatsapp, Snapchat, Twitter,

etc. and disable the applications when appropriate.

Regarding claim 31.  Yuen teaches a mobile device for use in a controlled

environment facility, comprising:

**a memory that stores a set of operations of an application barrier** (figure 1,

0031-0032 wherein smartphone item 10 has mobile agent item 20 for managing content

of an installed application list 22, figure 3, 0039-0043 wherein mobile agent identifies via

an Operation System of the mobile that the application was changed (e.g., installed,

removed, downloaded, updated)**; and a processor configured to: execute the set of

operations of the application barrier, the set of operations comprising: disable**

**non-secure functions of an application stored in the memory of the mobile device**

(0041 – one example means for disabling (i.e., not allowing user of the mobile device to

access and execute) the newly installed application, another example means for

disabling by the mobile agent to disable or otherwise redirect a system of function call

associated with the newly installed application, such that mobile agent would not allow

the system of function call issued by the Operating System of the device infrastructure

to be received by the newly installed application.  Another example means is by the

mobile agent to disable operation or otherwise hide (e.g., grayed out) of a user interface

27 icon (e.g., a graphical user interface) associated with the newly installed application,

0053-0055 as discussed above, each mobile device is configured with Mobile Agent 20

for managing content of the application list 22, containing identification of all mobile

applications presently installed (and/or removed) on the mobile device and the mobile

agent can quarantine/disable non-compliant applications).

Yuen does not teach **the non-secure functions including social functions of**

**the application**; and **monitor user activity of a social application, the monitoring**

**including gathering social interactions of the social application and review the**

**social interactions for illicit activity**.

Day teaches monitoring non-secure functions including social functions of the

application (**abstract** – access and extract data from or about one or more of the

smartphone software applications, including at least two of texting application, a **social**

**media application**, image application that facilitates TX and RX of images, web

browser application, **0005** – smartphone app tracks/monitors applications such as posts

to social network, **0007** – smartphone app tracks/monitors any applications downloaded

including content of any social network posts created, viewed or sent, **0098** – monitor

and control activities on smartphone wherein activities include social media, text

messages, chat services, and websites, **0101** – flag conversations with illicit content,

**0102** – smartphone has a safety system plugin 132 (e.g., **Application Barrier**) to

monitor social application(s) and is helpful in controlling the local functionality of the UE,

**0109** – Thus it can prevent, inhibit, deter, or monitor taking or receiving inappropriate

pictures, **0111** – <u>**portions of the safety system 110 (e.g., Application Barrier) can be**</u>

<u>**installed on the UE 130**</u>, 0112 – Facebook, Twitter, etc., **0121** -  the safety system

(e.g., Application Barrier) can monitor and review Whatsapp message<u>**, SnapChat**</u>

<u>**messages, Facebook messages, etc.**</u>, **0122** – these communications can be analyzed

by the analysis module 112.  Some or all of this analysis can occur either onboard the

UE, on a server, and/or within a safety system 110.  **For example, the communication**

**may contain <u>illicit</u> content such as profanity or inappropriate images**, 0123 –

monitor social media data, **0131** – filter content from various software applications on

the UE, such as web browser clients, social media clients, SMS, MMS, etc.  The safety

system 110 (e.g., **Application Barrier**) can also work as a plug-in for these

applications.  The safety system (**Application Barrier**) can review the content and

determine any content to block or flag for review via the administration portal or user

interface module.  In some embodiments, application monitoring, filtering and blocking

may also be implemented as described herein with respect to Apps Agent, **0132** – the

UE can alert a user and/or prohibit, inhibit, or block downloading and installations of

certain applications, **0134-0135** – Website monitoring, filtering and blocking and alerting

with respect to pornography, profanity, nudity, violence, drugs, images – gang symbols,

genitalia, other body parts, etc. **0137** – analysis of web pages visited, URLs employed,

applications run, and messages sent or received or recording evidence of illicit

activities, **0148** – disable access to web browsing or social networking links from UEs

during work hours, **0149** – software on the smartphone can be employed to track

attempts to circumvent any settings or restrictions and report any clandestine usage

(e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system

110 (e.g., Application Barrier) can also track any attempts at tampering or disabling

features of the safety system, **0154** – safety system (e.g., Application Barrier) can

intercept data being transferred to and/or from the camera on the phone.  During video

chatting (FaceTime, Skype, etc.), the system can perform image recognition and block

any indecent content in real time, as well as, monitoring external communications.  For

example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school

geofenced, **0167**-**0168** – monitoring social media activities, **0173** – monitor applications

on a smartphone and alert when an application is installed, monitor text messages,

monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed

and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from

images (for example sent or received via messages, posted on Facebook, or SnapChat,

etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on

messaging use, application use, social network use, picture capturing usage, etc.

Based on this data gathered, determine whether a particular behavior with respect to

using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all

functionalities (for example texting, Facebook, etc.) in the UE.

Application/Control Number: 16/925,076                                    Page 10
Art Unit: 2646

It would have been obvious for one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the mobile agent as taught by Yuen to

include gathering social interactions of the social application(s) and review the

interactions as taught by Day in order to enable the parent/administrator to quickly

identify misbehavior and/or illicit activities on Facebook, Whatsapp, Snapchat, Twitter,

etc. and disable the applications when appropriate.

Regarding claim 38.  Yuen teaches a system for use in a controlled environment

facility for preventing unsanctioned use of a mobile device in a controlled environment

facility, comprising:

**an application barrier** (figure 1, 0031-0032 wherein smartphone item 10 has

mobile agent item 20 for managing content of an installed application list 22, figure 3,

0039-0043 wherein mobile agent identifies via an Operation System of the mobile that

the application was changed (e.g., installed, removed, downloaded, updated), **stored**

**on a memory of the mobile device, configured to prevent an unsanctioned**

**function from being performed on the mobile device, the application barrier**

**configured to** (0041 – one example means for disabling (i.e., not allowing user of the

mobile device to access and execute) the newly installed application, another example

means for disabling by the mobile agent to disable or otherwise redirect a system of

function call associated with the newly installed application, such that mobile agent

would not allow the system of function call issued by the Operating System of the

device infrastructure to be received by the newly installed application.  Another example

means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of

a user interface 27 icon (e.g., a graphical user interface) associated with the newly

installed application, 0053-0055 as discussed above, each mobile device is configured

with Mobile Agent 20 for managing content of the application list 22, containing

identification of all mobile applications presently installed (and/or removed) on the

mobile device and the mobile agent can quarantine/disable non-compliant applications)**:**

**perform application modification in which non-secure functions of an**

**application stored in the memory of the mobile device are disabled** ((figure 1,

0031-0032 wherein smartphone item 10 has mobile agent item 20 having an installed

application list item 22, figure 3, 0039-0043 wherein mobile agent identifies via an

Operation System of the mobile that the application was changed (e.g., installed or

removed, 0041 – one example means for disabling (i.e., not allowing user of the mobile

device to access and execute) the newly installed application, another example means

for disabling by the mobile agent to disable or otherwise redirect a system of function

call associated with the newly installed application, such that mobile agent would not

allow the system of function call issued by the Operating System of the device

infrastructure to be received by the newly installed application.  Another example means

is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of a user

interface 27 icon (e.g., a graphical user interface) associated with the newly installed

application, 0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications).

Yuen does not teach **the non-secure functions including social functions of**

**the application; and monitor user activity of a social application, the monitoring**

Application/Control Number: 16/925,076                                          Page 12
Art Unit: 2646

**including gathering social interactions of the social application and review the**

**social interactions for illicit activity.**

Day teaches monitoring non-secure functions including social functions of the

application (**abstract** – access and extract data from or about one or more of the

smartphone software applications, including at least two of texting application, a **social**

**media application**, image application that facilitates TX and RX of images, web

browser application, **0005** – smartphone app tracks/monitors applications such as posts

to social network, **0007** – smartphone app tracks/monitors any applications downloaded

including content of any social network posts created, viewed or sent,  **0098** – monitor

and control activities on smartphone wherein activities include social media, text

messages, chat services, and websites, **0101** – flag conversations with illicit content,

**0102** – smartphone has a safety system plugin 132 (e.g., **Application Barrier**) to

monitor social application(s) and is helpful in controlling the local functionality of the UE,

**0109** – Thus it can prevent, inhibit, deter, or monitor taking or receiving inappropriate

pictures, **0111** – **portions of the safety system 110 (e.g., Application Barrier) can be**

**installed on the UE 130**, 0112 – Facebook, Twitter, etc., **0121** -  the safety system

(e.g., Application Barrier) can monitor and review Whatsapp message**, SnapChat**

**messages, Facebook messages, etc.**, **0122** – these communications can be analyzed

by the analysis module 112.  Some or all of this analysis can occur either onboard the

UE, on a server, and/or within a safety system 110.  **For example, the communication**

**may contain illicit content such as profanity or inappropriate images**, 0123 –

monitor social media data, **0131** – filter content from various software applications on

the UE, such as web browser clients, social media clients, SMS, MMS, etc.  The safety

system 110 (e.g., **Application Barrier**) can also work as a plug-in for these

applications.  The safety system (**Application Barrier**) can review the content and

determine any content to block or flag for review via the administration portal or user

interface module.  In some embodiments, application monitoring, filtering and blocking

may also be implemented as described herein with respect to Apps Agent, **0132** – the

UE can alert a user and/or prohibit, inhibit, or block downloading and installations of

certain applications, **0134-0135** – Website monitoring, filtering and blocking and alerting

with respect to pornography, profanity, nudity, violence, drugs, images – gang symbols,

genitalia, other body parts, etc. **0137** – analysis of web pages visited, URLs employed,

applications run, and messages sent or received or recording evidence of illicit

activities, **0148** – disable access to web browsing or social networking links from UEs

during work hours, **0149** – software on the smartphone can be employed to track

attempts to circumvent any settings or restrictions and report any clandestine usage

(e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system

110 (e.g., Application Barrier) can also track any attempts at tampering or disabling

features of the safety system, **0154** – safety system (e.g., Application Barrier) can

intercept data being transferred to and/or from the camera on the phone.  During video

chatting (FaceTime, Skype, etc.), the system can perform image recognition and block

any indecent content in real time, as well as, monitoring external communications.  For

example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school

geofenced, **0167-0168** – monitoring social media activities, **0173** – monitor applications

on a smartphone and alert when an application is installed, monitor text messages,

monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed

Application/Control Number: 16/925,076                                      Page 14
Art Unit: 2646

and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from

images (for example sent or received via messages, posted on Facebook, or SnapChat,

etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on

messaging use, application use, social network use, picture capturing usage, etc.

Based on this data gathered, determine whether a particular behavior with respect to

using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all

functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the mobile agent as taught by Yuen to

include gathering social interactions of the social application(s) and review the

interactions as taught by Day in order to enable the parent/administrator to quickly

identify misbehavior and/or illicit activities on Facebook, Whatsapp, Snapchat, Twitter,

etc. and disable the applications when appropriate.

Regarding claim 24.  Yuen teaches wherein the application barrier is further

configured to prevent installation or removal of an application (figure 1, 0039 wherein

mobile is configured with a mobile agent to identify applications that have been installed

or removed, 0045 – removed application is not authorized, 0050 mobile agent also

maintains a list of all currently disabled newly installed applications, 0053 wherein

mobile agent has list (item 22 figure 1) identifying all installed and/or removed

applications); and send a command to the processor of the mobile device to cancel the

attempt (0040 – mobile agent first disables the newly installed application, 0041 – the

mobile disables or hides the icon associated with the installed application, 0054-0055

wherein mobile agent can quarantine/disable all applications defined by the difference).

Day teaches the application barrier is further configured to prevent installation or

removal of an application (**0132-0133**– the safety system can alert a user and/or

prohibit, inhibit, or block downloading and installation of certain applications, **0152** –

safety system (**Application Barrier**) can also track any attempts at tampering or

disabling features of the safety system.  For example, a user may try to remove the

safety system and the safety system can attempt to block removal or disabling of its

features, **0221** – prevent bypassing the curfew screen).

Regarding claims 25 and 32.  Yuen teaches wherein the application barrier is

further configured to detect an attempt to perform an unsanctioned function of the

application stored in the memory of the mobile device (figure 1, 0031-0032 wherein

smartphone item 10 has mobile agent item 20 having an installed application list item

22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the

mobile that the application was changed (e.g., installed or removed), 0041 – one

example means for disabling (i.e., not allowing user of the mobile device to access and

execute) the newly installed application, another example means for disabling by the

mobile agent to disable or otherwise redirect a system of function call associated with

the newly installed application, such that mobile agent would not allow the system of

function call issued by the Operating System of the device infrastructure to be received

by the newly installed application.  Another example means is by the mobile agent to

disable operation or otherwise hide (e.g., grayed out) of a user interface 27 icon (e.g., a

graphical user interface) associated with the newly installed application, 0053-0055 as

discussed above, each mobile device is configured with Mobile Agent 20 for managing

content of the application list 22, containing identification of all mobile applications

presently installed (and/or removed) on the mobile device and the mobile agent can

quarantine/disable non-compliant applications).

Day teaches wherein the application barrier is further configured to detect an

attempt to perform an unsanctioned function of the application stored in the memory

of the mobile device (**abstract** – access and extract data from or about one or more of

the smartphone software applications, including at least two of texting application, **a**

**social media application**, image application that facilitates TX and RX of images, web

browser application, **0005** – smartphone app tracks/monitors applications such as

**posts to social network**, **0007** – smartphone app tracks/monitors any applications

downloaded including content of any social network posts created, viewed or sent,

**0098** – monitor and control activities on smartphone wherein activities **include social**

**media, text messages, chat services, and websites**, 0101 – <u>flag conversations</u>

<u>with illicit content</u>, **0102** – smartphone has a safety system plugin 132 (e.g.,

**Application Barrier**) to monitor social application(s) and is helpful in controlling the

local functionality of the UE, **0109** – <u>**Thus it can prevent, inhibit, deter, or monitor**</u>

<u>**taking or receiving inappropriate pictures**</u>, **0111** – portions of the safety system 110

(e.g., Application Barrier) can be installed on the UE 130, 0112 – Facebook, Twitter,

etc., **0121** -  the safety system (e.g., Application Barrier) can monitor and review

Whatsapp message**<u>, SnapChat messages, Facebook messages, etc.</u>**, **0122** – these

communications can be analyzed by the analysis module 112.  Some or all of this

analysis can occur either onboard the UE, on a server, and/or within a safety system

110.  **For example, the communication may contain <u>illicit</u> content such as**

**profanity or inappropriate images**, **0123** – monitor social media data, **0131** – filter

content from various software applications on the UE, such as web browser clients,

social media clients, SMS, MMS, etc.  The safety system 110 (e.g., **Application**

**Barrier**) can also work as a plug-in for these applications.  The safety system

(**Application Barrier**) can <u>**review the content and determine any content to block**</u>

<u>**or flag for review via the administration portal or user interface module**</u>.  In some

embodiments, application monitoring, filtering and blocking may also be implemented as

described herein with respect to Apps Agent, **0132** – the UE can alert a user and/or

prohibit, inhibit, or block downloading and installations of certain applications, **0134-**

**0135** – Website monitoring, filtering and blocking and alerting with respect to

<u>**pornography, profanity, nudity, violence, drugs, images – gang symbols,**</u>

<u>**genitalia, other body parts, etc.**</u> **0137** – analysis of web pages visited, URLs

employed, applications run, and messages sent or received or recording <u>**evidence of**</u>

<u>**illicit activities**</u>, **0148** – disable access to web browsing or social networking links from

UEs during work hours, **0149** – software on the smartphone can be employed to <u>**track**</u>

<u>**attempts to circumvent any settings or restrictions and report any clandestine**</u>

<u>**usage**</u> (e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety

system 110 (e.g., Application Barrier) can also track any attempts at tampering or

disabling features of the safety system, **0154** – safety system (e.g., Application Barrier)

can intercept data being transferred to and/or from the camera on the phone.  During

video chatting (FaceTime, Skype, etc.), the system can perform image recognition and

<u>**block any indecent content in real time, as well as, monitoring external**</u>

<u>**communications.  For example, SnapChat, Whatsapp, etc.,**</u> **0157** – disable

Facebook inside of school geofenced, **0167-0168** – monitoring social media activities,

**0173** – monitor applications on a smartphone and alert when an application is installed, monitor text messages, monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also **identify from images (for example sent or received via messages, posted on Facebook, or SnapChat, etc.) that the child is holding a can of beer** (**illicit activity**), **0204** – collect data on messaging use, application use, social network use, picture capturing usage, etc.  Based on this data gathered, determine whether a **particular behavior** with respect to using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.) in the UE.

Regarding claims 26 and 33.  Yuen teaches wherein the application barrier is further configured to prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function (figure 1, 0031-0032 wherein smartphone item 10 has mobile agent item 20 having an installed application list item 22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the mobile that the application was changed (e.g., installed or removed), 0041 – one example means for disabling (i.e., not allowing user of the mobile device to access and execute) the newly installed application, another example means for disabling by the mobile agent to disable or otherwise redirect a system of function call associated with the newly installed application, such that mobile agent would not allow the system of function call issued by the Operating System of the device infrastructure to be received by the newly installed application.  Another example means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of a user

interface 27 icon (e.g., a graphical user interface) associated with the newly installed

application, 0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications).

      Day teaches wherein the application barrier is further configured to prevent a

processor of the mobile device from executing operations related to the attempt to

perform the unsanctioned function (**abstract** – access and extract data from or about

one or more of the smartphone software applications, including at least two of texting

application, **a social media application**, image application that facilitates TX and RX of

images, web browser application, **0005** – smartphone app tracks/monitors applications

such as **posts to social network**, **0007** – smartphone app tracks/monitors any

applications downloaded including content of any social network posts created, viewed

or sent,  **0098** – monitor and control activities on smartphone wherein activities **include

social media, text messages, chat services, and websites**, 0101 – <u>flag

conversations with illicit content</u>, 0102 – smartphone has a safety system plugin 132

(e.g., **Application Barrier**) to monitor social application(s) and is helpful in controlling

the local functionality of the UE, 0109 – <u>**Thus it can prevent, inhibit, deter, or monitor

taking or receiving inappropriate pictures**</u>, 0111 – portions of the safety system 110

(e.g., Application Barrier) can be installed on the UE 130, 0112 – Facebook, Twitter,

etc., **0121** -  the safety system (e.g., Application Barrier) can monitor and review

Whatsapp message<u>**, SnapChat messages, Facebook messages, etc.**</u>, **0122** – these

communications can be analyzed by the analysis module 112.  Some or all of this

Application/Control Number: 16/925,076                                    Page 20
Art Unit: 2646

analysis can occur either onboard the UE, on a server, and/or within a safety system

110.  **For example, the communication may contain <u>illicit</u> content such as**

**profanity or inappropriate images**, **0123** – monitor social media data, **0131** – filter

content from various software applications on the UE, such as web browser clients,

social media clients, SMS, MMS, etc.  The safety system 110 (e.g., **Application**

**Barrier**) can also work as a plug-in for these applications.  The safety system

(**Application Barrier**) can <u>review the content and determine any content to block</u>

<u>or flag for review via the administration portal or user interface module</u>.  In some

embodiments, application monitoring, filtering and blocking may also be implemented as

described herein with respect to Apps Agent, **0132** – the UE can alert a user and/or

prohibit, inhibit, or block downloading and installations of certain applications, **0134-**

**0135** – Website monitoring, filtering and blocking and alerting with respect to

**<u>pornography, profanity, nudity, violence, drugs, images – gang symbols,</u>**

**<u>genitalia, other body parts, etc.</u>** **0137** – analysis of web pages visited, URLs

employed, applications run, and messages sent or received or recording **<u>evidence of</u>**

**<u>illicit activities</u>**, **0148** – disable access to web browsing or social networking links from

UEs during work hours, **0149** – software on the smartphone can be employed to **<u>track</u>**

**<u>attempts to circumvent any settings or restrictions and report any clandestine</u>**

**<u>usage</u>** (e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety

system 110 (e.g., Application Barrier) can also track any attempts at tampering or

disabling features of the safety system, **0154** – safety system (e.g., Application Barrier)

can intercept data being transferred to and/or from the camera on the phone.  During

video chatting (FaceTime, Skype, etc.), the system can perform image recognition and

**block any indecent content in real time, as well as, monitoring external**

**communications.  For example, SnapChat, Whatsapp, etc., 0157** – disable

Facebook inside of school geofenced, **0167-0168** – monitoring social media activities,

**0173** – monitor applications on a smartphone and alert when an application is installed,

monitor text messages, monitor web browsing, monitor social media, **0189, figure 14** –

Facebook installed and/or uninstalled, **0201** – safety system (e.g., Application Barrier)

can also **identify from images (for example sent or received via messages, posted**

**on Facebook, or SnapChat, etc.) that the child is holding a can of beer** (**illicit**

**activity**), **0204** – collect data on messaging use, application use, social network use,

picture capturing usage, etc.  Based on this data gathered, determine whether a

**particular behavior** with respect to using the UE is deviating from the norm (**illicit**

**activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.)

in the UE.

Regarding claims 27, 35 and 41.  Yuen teaches wherein the application barrier is

further configured to: detect an attempt to delete the application on the mobile device;

and send a command to the processor of the mobile device to cancel the attempt (figure

1, 0039 wherein mobile is configured with a mobile agent to identify applications that

have been installed or removed, 0045 – removed application is not authorized, 0050

mobile agent also maintains a list of all currently disabled newly installed applications,

0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or

removed applications); and send a command to the processor of the mobile device to

cancel the attempt (0040 – mobile agent first disables the newly installed application,

0041 – the mobile disables or hides the icon associated with the installed application,

0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Day teaches wherein the application barrier is further configured to: detect an attempt to delete the application on the mobile device; and send a command to the processor of the mobile device to cancel the attempt (**0132-0133**– the safety system can alert a user and/or prohibit, inhibit, or block downloading and installation of certain applications, **0152** – safety system (**Application Barrier**) can also track any attempts at tampering or disabling features of the safety system.  For example, a user may try to remove the safety system and the safety system can attempt to block removal or disabling of its features, **0221** – prevent bypassing the curfew screen).

Regarding claims 28 and 36.  Yuen teaches wherein the application barrier is further configured to: detect an attempt to install an application on the mobile device; and send a command to the processor of the mobile device to cancel the attempt (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Day teaches wherein the application barrier is further configured to: detect an attempt to install an application on the mobile device; and send a command to the processor of the mobile device to cancel the attempt (**0132-0133**– the safety system can alert a user and/or prohibit, inhibit, or block downloading and installation of certain applications, **0152** – safety system (**Application Barrier**) can also track any attempts at tampering or disabling features of the safety system.  For example, a user may try to remove the safety system and the safety system can attempt to block removal or disabling of its features, **0221** – prevent bypassing the curfew screen)

Regarding claims 30, 34 and 40.  Yuen does not teach wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

Day teaches monitoring non-secure functions including social functions of the application (**abstract** – access and extract data from or about one or more of the smartphone software applications, including at least two of texting application, a **social media application (e.g., unsanctioned source outside of the controlled home/facility)**, image application that facilitates TX and RX of images, web browser application, **0005** – smartphone app tracks/monitors applications such as **posts to social network (e.g., unsanctioned source outside of the controlled home/facility)**, **0007** – smartphone app tracks/monitors any applications downloaded including content of any **social network posts created, viewed or sent (e.g., unsanctioned source outside of the controlled home/facility)**,  **0098** – monitor and control activities on smartphone wherein activities include **social media**, text messages, **chat services**, **and websites**, **0101** – **flag conversations with illicit content**, **0102** – smartphone has

a safety system plugin 132 (e.g., **Application Barrier**) to monitor **social application(s)**

**(e.g., unsanctioned source outside of the controlled home/facility)** and is helpful in

controlling the local functionality of the UE, **0109** – Thus it can prevent, inhibit, deter, or

monitor taking or receiving inappropriate pictures, **0111** – portions of the safety system

110 (e.g., Application Barrier) can be installed on the UE 130, 0112 – Facebook,

Twitter, etc. **(e.g., unsanctioned source outside of the controlled home/facility)**,

**0121** -  the safety system (e.g., Application Barrier) can monitor and review Whatsapp

message**, SnapChat messages, Facebook messages, etc. (e.g., unsanctioned**

**source outside of the controlled home/facility)**, **0122** – these communications can

be analyzed by the analysis module 112.  Some or all of this analysis can occur either

onboard the UE, on a server, and/or within a safety system 110.  **For example, the**

**communication may contain <u>illicit</u> content such as profanity or inappropriate**

**images**, **0123** – monitor social media data, **0131** – filter content from various software

applications on the UE, such as web browser clients, social media clients, SMS, MMS,

etc.  The safety system 110 (e.g., **Application Barrier**) can also work as a plug-in for

these applications.  The safety system (**Application Barrier**) can review the content

and determine any content to block or flag for review via the administration portal or

user interface module.  In some embodiments, application monitoring, filtering and

blocking may also be implemented as described herein with respect to Apps Agent,

**0132** – the UE can alert a user and/or prohibit, inhibit, or block downloading and

installations of certain applications, **0134-0135** – Website monitoring, filtering and

blocking and alerting with respect to pornography, profanity, nudity, violence, drugs,

images – gang symbols, genitalia, other body parts, etc. **0137** – analysis of web pages

visited, URLs employed, applications run, and messages sent or received or recording evidence of illicit activities, **0148** – disable access to web browsing or social networking links from UEs during work hours, **0149** – software on the smartphone can be employed to track attempts to circumvent any settings or restrictions and report any clandestine usage (e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system 110 (e.g., Application Barrier) can also track any attempts at tampering or disabling features of the safety system, **0154** – safety system (e.g., Application Barrier) can intercept data being transferred to and/or from the camera on the phone.  During video chatting (FaceTime, Skype, etc.), the system can perform image recognition and block any indecent content in real time, as well as, monitoring external communications. For example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school geofenced, **0167**-**0168** – monitoring social media activities, **0173** – monitor applications on a smartphone and alert when an application is installed, monitor text messages, monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from images (for example sent or received via messages, posted on Facebook, or SnapChat, etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on messaging use, application use, social network use, picture capturing usage, etc. Based on this data gathered, determine whether a particular behavior with respect to using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile agent as taught by Yuen to

include gathering social interactions of the social application(s) **(e.g., unsanctioned source outside of the controlled home/facility)** and review the interactions as taught by Day in order to enable the parent/administrator to quickly identify misbehavior and/or illicit activities on Facebook, Whatsapp, Snapchat, Twitter, etc. and disable the applications when appropriate.

Regarding claim 39.  Yuen teaches wherein the application barrier is configured to prevent an unsanctioned function from being performed by: detecting at least one of a **first attempt by a user to <u>delete</u> an application** from the memory of the mobile device, **a second attempt by the user to <u>install</u> a second application** on the mobile device and preventing the processor of the UE from executing any operations related to the first attempt, the second attempt, and the ~~third attempt~~ (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Yuen does not teach **a third attempt by the application to <u>access content from a disallowed source outside of the controlled environment facility</u>**; and preventing a processor of the mobile device from executing any operations related to the ~~first attempt, the second attempt, and~~ the third attempt.

Day also teaches wherein the application barrier is further configured to: detect

an attempt to delete the application on the mobile device; and send a command to the

processor of the mobile device to cancel the attempt (**0132-0133**– the safety system

can alert a user and/or prohibit, inhibit, or block downloading and installation of certain

applications, **0152** – safety system (**Application Barrier**) can also track any attempts at

tampering or disabling features of the safety system.  For example, a user may try to

remove the safety system and the safety system can attempt to block removal or

disabling of its features, **0221** – prevent bypassing the curfew screen)

Day teaches monitoring non-secure functions including social functions of the

application (**abstract** – access and extract data from or about one or more of the

smartphone software applications, including at least two of texting application, a **<u>social

media application</u> (e.g., disallowed source outside of the controlled home/facility)**,

image application that facilitates TX and RX of images, web browser application, **0005** –

smartphone app tracks/monitors applications such as **posts to social network (e.g.,

disallowed source outside of the controlled home/facility)**, **0007** – smartphone app

tracks/monitors any applications downloaded including content of any **<u>social network

posts created, viewed or sent</u> (e.g., disallowed source outside of the controlled

home/facility)**,  **0098** – monitor and control activities on smartphone wherein activities

include **<u>social media</u>**, text messages, **<u>chat services</u>**, **<u>and websites</u>**, **0101** – **<u>flag

conversations with illicit content</u>**, **0102** – smartphone has a safety system plugin 132

(e.g., **Application Barrier**) to monitor **social application(s) (e.g., disallowed source

outside of the controlled home/facility)** and is helpful in controlling the local

functionality of the UE, **0109** – Thus it can prevent, inhibit, deter, or monitor taking or

receiving inappropriate pictures, **0111** – portions of the safety system 110 (e.g.,

Application Barrier) can be installed on the UE 130, 0112 – Facebook, Twitter, etc.

**(e.g., disallowed source outside of the controlled home/facility)**, **0121** -  the safety

system (e.g., Application Barrier) can monitor and review Whatsapp message**,**

**SnapChat messages, Facebook messages, etc. (e.g., disallowed source outside**

**of the controlled home/facility)**, **0122** – these communications can be analyzed by the

analysis module 112.  Some or all of this analysis can occur either onboard the UE, on

a server, and/or within a safety system 110.  **For example, the communication may**

**contain <u>illicit</u> content such as profanity or inappropriate images**, **0123** – monitor

social media data, **0131** – filter content from various software applications on the UE,

such as web browser clients, social media clients, SMS, MMS, etc.  The safety system

110 (e.g., **Application Barrier**) can also work as a plug-in for these applications.  The

safety system (**Application Barrier**) can review the content and determine any content

to block or flag for review via the administration portal or user interface module.  In

some embodiments, application monitoring, filtering and blocking may also be

implemented as described herein with respect to Apps Agent, **0132** – the UE can alert a

user and/or prohibit, inhibit, or block downloading and installations of certain

applications, **0134-0135** – Website monitoring, filtering and blocking and alerting with

respect to pornography, profanity, nudity, violence, drugs, images – gang symbols,

genitalia, other body parts, etc. **0137** – analysis of web pages visited, URLs employed,

applications run, and messages sent or received or recording evidence of illicit

activities, **0148** – disable access to web browsing or social networking links from UEs

during work hours, **0149** – software on the smartphone can be employed to track

attempts to circumvent any settings or restrictions and report any clandestine usage

(e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system

110 (e.g., Application Barrier) can also track any attempts at tampering or disabling

features of the safety system, **0154** – safety system (e.g., Application Barrier) can

intercept data being transferred to and/or from the camera on the phone.  During video

chatting (FaceTime, Skype, etc.), the system can perform image recognition and block

any indecent content in real time, as well as, monitoring external communications.  For

example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school

geofenced, **0167**-**0168** – monitoring social media activities, **0173** – monitor applications

on a smartphone and alert when an application is installed, monitor text messages,

monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed

and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from

images (for example sent or received via messages, posted on Facebook, or SnapChat,

etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on

messaging use, application use, social network use, picture capturing usage, etc.

Based on this data gathered, determine whether a particular behavior with respect to

using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all

functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the mobile agent as taught by Yuen to

include gathering social interactions of the social application(s) **(e.g., disallowed

source outside of the controlled home/facility)** and review the interactions as taught

by Day in order to enable the parent/administrator to quickly identify misbehavior and/or

illicit activities on Facebook, Whatsapp, Snapchat, Twitter, etc. and disable the

applications when appropriate.

2.      Claims 29 and 37 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Day, II further in view of Forssell et al (2014/0226487).

        Regarding claims 29 and 37.  Yuen in view of Day do not explicitly show wherein

the application barrier is further configured to: detect an over-the-air command received

by the mobile device over a wireless link; determine that the command meets a security

requirement of a second application sanctioned to change the device settings; and in

response to determining that the command meets the security requirement, allow the

command to be executed by a processor of the mobile device.

        However, Day teaches parents can enable or disable remotely, over a network,

some or all of the features of the safety system 110 on their child's UE using one or

more authentication mechanisms  (**0218, 233, 310-0311, 0316-0317, 0328**).  Day

further teaches parent can send command to child's UE to enable/disable certain

applications (**0220, 0314, 0316, 0319, 0322**).

        Forssell teaches device management server, like Nokia Siemens Network's

SADM, may be used to configure user devices automatically Over-the-Air.  DM server

may configure into user devices Wi-Fi network settings, like SSID, and used

authentication method (0113-0118).

        It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the mobile device as taught by

Yuen in view of Day to use a Device Management Server as taught by Forssell in order

to automatically configure device Wi-Fi settings Over-the-Air.

Application/Control Number: 16/925,076                                          Page 31
Art Unit: 2646

### *Conclusion*

3.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to BARRY W TAYLOR whose telephone number is (571)272-7509.  The examiner can normally be reached on Monday-Thursday: 7-5.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

Application/Control Number: 16/925,076                                      Page 32
Art Unit: 2646

| *Notice of References Cited* | Application/Control No. 16/925,076 | Applicant(s)/Patent Under Reexamination MARASS et al. | |
|---|---|---|---|
| | Examiner BARRY W TAYLOR | Art Unit 2646 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20140226487-A1 | 08-2014 | Forssell; Mika | H04W60/005 | 370/235 |
| * | B | US-20150040246-A1 | 02-2015 | Yuen; Chun Fung | H04W12/10 | 726/30 |
| * | C | US-20170149795-A1 | 05-2017 | Day, II; Rowland William | H04W12/086 | 1/1 |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                 **Notice of References Cited**                 Part of Paper No. 20210528

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| H04W 12/08, 12/35, 12/126, 12/37 | 05/28/2021 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| updated search for parent application and Google Scholar | 05/28/2021 | BWT |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| /BARRY W TAYLOR/<br>Primary Examiner, Art Unit 2646 | |
|---|---|
| | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 05/28/2021 | | | | | | | | |
| | 1 | - | | | | | | | | |
| | 2 | - | | | | | | | | |
| | 3 | - | | | | | | | | |
| | 4 | - | | | | | | | | |
| | 5 | - | | | | | | | | |
| | 6 | - | | | | | | | | |
| | 7 | - | | | | | | | | |
| | 8 | - | | | | | | | | |
| | 9 | - | | | | | | | | |
| | 10 | - | | | | | | | | |
| | 11 | - | | | | | | | | |
| | 12 | - | | | | | | | | |
| | 13 | - | | | | | | | | |
| | 14 | - | | | | | | | | |
| | 15 | - | | | | | | | | |
| | 16 | - | | | | | | | | |
| | 17 | - | | | | | | | | |
| | 18 | - | | | | | | | | |
| | 19 | - | | | | | | | | |
| | 20 | - | | | | | | | | |
| | 21 | - | | | | | | | | |
| | 22 | - | | | | | | | | |
| | 23 | ✓ | | | | | | | | |
| | 24 | ✓ | | | | | | | | |
| | 25 | ✓ | | | | | | | | |
| | 26 | ✓ | | | | | | | | |
| | 27 | ✓ | | | | | | | | |
| | 28 | ✓ | | | | | | | | |
| | 29 | ✓ | | | | | | | | |
| | 30 | ✓ | | | | | | | | |
| | 31 | ✓ | | | | | | | | |
| | 32 | ✓ | | | | | | | | |
| | 33 | ✓ | | | | | | | | |
| | 34 | ✓ | | | | | | | | |
| | 35 | ✓ | | | | | | | | |
| | 36 | ✓ | | | | | | | | |
| | 37 | ✓ | | | | | | | | |
| | 38 | ✓ | | | | | | | | |
| | 39 | ✓ | | | | | | | | |
| | 40 | ✓ | | | | | | | | |
| | 41 | ✓ | | | | | | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 2 | ("20170149795" or "20080222692").pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 15:51 |
| L2 | 6 | ("20170149795" or "20080222692") | US-PGPUB; USPAT | OR | ON | 2021/05/26 15:52 |
| L3 | 8 | "10237280" | US-PGPUB; USPAT | OR | ON | 2021/05/26 15:59 |
| L4 | 1 | "10237280".pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 15:59 |
| L5 | 4 | ("20130040604" or "20140214668" or "20140310403" or "20160294962").pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:01 |
| L6 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:19 |
| L7 | 1 | "20150040246".pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:21 |
| L8 | 1 | "9305162".pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:21 |
| L9 | 1,351,801 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:26 |
| L10 | 3,701 | L9 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:26 |
| L11 | 1,351,801 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:27 |

| L12 | 289 | L11 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:27 |
|---|---|---|---|---|---|---|
| L15 | 2,564 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:43 |
| L16 | 12,854 | ((jailbroken or jailbreak$4 or (jail aj2 (brokn or break$4))) near7 (os or (operat$6 adj3 system))) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:44 |
| L17 | 64 | L16 and (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:44 |
| L18 | 1,351,801 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:46 |
| L19 | 3,701 | L18 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:46 |
| L20 | 16,712 | (H04W12/08 or H04W4/001 or H04W4/008).CPC. | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:46 |
| L21 | 282 | L19 and L20 | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:46 |
| L22 | 1,351,801 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:46 |
| L23 | 131 | L22 same ((monitor$4 or interactions) near7 ((social$3 adj3 media) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:46 |
| L24 | 268 | (monitor$4 near7 interaction$1 near7 ((social$5 adj3 (media or functions)) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:48 |

| L25 | 0 | 24 same ((prevent$5 or cancel$5) near7 (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:51 |
| L26 | 6 | 24 and ((prevent$5 or cancel$5) near7 (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:51 |
| L27 | 13 | 24 and ((prevent$5 or cancel$5) same (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:52 |
| L28 | 2,917 | (monitor$4 same interaction$1 same ((social$5 adj3 (media or functions)) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:00 |
| L29 | 14 | 28 same ((prevent$5 or cancel$5) same (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:02 |
| L30 | 229 | 28 and ((prevent$5 or cancel$5) same (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:05 |
| L31 | 130 | 28 and ((prevent$5 or cancel$5) same (download$5 or install$7 or delet$5 or unsaction$4) same (app$1 or application$1) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:05 |
| L32 | 302 | 28 and ((prevent$5 or cancel$5 or block$4) same (download$5 or install$7 or delet$5 or unsaction$4) same (app$1 or application$1)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:08 |
| L33 | 172 | 32 not 31 | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:49 |
| L34 | 69 | 28 and ((prevent$5 or cancel$5 or block$4) near7 (download$5 or install$7 or delet$5 or unsaction$4) same (app$1 or application$1)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:53 |

5/26/2021 5:57:55 PM
C:\Users\btaylor\Documents\EAST\Workspaces\Workspaces\%15,435,993 prevent use of mobile for inmates.wsp

# Bibliographic Data

Application No:     16/925,076

Foreign Priority claimed:          ○ Yes   ◉ No

35 USC 119 (a-d) conditions met:   ☑ Yes   ☐ No           ☐ Met After Allowance

Verified and Acknowledged:   | /BARRY W TAYLOR/ |        | BWT |

|  | Examiner's Signature |  | Initials |

Title:   | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/09/2020 **RULE** | 455 | 2646 | 3210.1280001 |

**APPLICANTS**

  GLOBAL TEL*LINK CORPORATION, Reston, VA, UNITED STATES

**INVENTORS**

  Jason MARASS, Fairhope, AL, UNITED STATES

  Brian PETERS, St. Paul, MN, UNITED STATES

  Garth JOHNSON, Indianapolis, IN, UNITED STATES

  Stephen Lee HODGE, Dallas, TX, UNITED STATES

**CONTINUING DATA**

  This application is a CON of 15435993 02/17/2017 PAT 10721624

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED****

  07/20/2020

**STATE OR COUNTRY**

  UNITED STATES

**ADDRESS**

  STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
  1100 NEW YORK AVENUE, N.W.
  WASHINGTON, DC 20005
  UNITED STATES

**FILING FEE RECEIVED**

  $1,880

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | | | Complete if Known | |
|---|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | | | Application Number | To Be Assigned |
| | | | | | | Filing Date | Herewith |
| | | | | | | First Named Inventor | Jason MARASS |
| | | | | | | Art Unit | To Be Assigned |
| | | | | | | Examiner Name | To Be Assigned |
| Sheet | | 1 | of | 7 | | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 10,068,398 B1 | 09-04-2018 | Hodge | |
| | US2 | 10,205,727 | 02-12-2019 | Hodge | |
| | US3 | 10,205,820 | 02-12-2019 | Hodge | |
| | US4 | 10,341,484 B2 | 07-02-2019 | Hodge et al. | |
| | US5 | 10,464,474 B2 | 11-05-2019 | Hodge | |
| | US6 | 2002/0071537 A1 | 06-13-2002 | Gainsboro | |
| | US7 | 2003/0036381 A1 | 02-20-2003 | Nagashima | |
| | US8 | 2003/0086546 A1 | 05-08-2003 | Falcone et al. | |
| | US9 | 2003/0126470 A1 | 07-03-2003 | Crites et al. | |
| | US10 | 2003/0198325 A1 | 10-23-2003 | Bayne | |
| | US11 | 2003/0224764 A1 | 12-04-2003 | Baker | |
| | US12 | 2004/0023698 A1 | 02-05-2004 | Chang | |
| | US13 | 2005/0265529 A1 | 12-01-2005 | Hogg, Jr. et al. | |
| | US14 | 2006/0062355 A1 | 03-23-2006 | Leonard | |
| | US15 | 2006/0095175 A1 | 05-04-2006 | deWaal et al. | |
| | US16 | 2006/0176169 A1 | 08-10-2006 | Doolin et al. | |
| | US17 | 2007/0041545 A1 | 02-22-2007 | Gainsboro | |
| | US18 | 2007/0047694 A1 | 03-01-2007 | Bouchard et al. | |
| | US19 | 2007/0057763 A1 | 03-15-2007 | Blattner et al. | |
| | US20 | 2008/0057976 A1 | 03-06-2008 | Rae et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 2 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US21 | 2008/0200156 A1 | 08-21-2008 | Hicks et al. | |
| | US22 | 2009/0080629 A1 | 03-26-2009 | Rokosky et al. | |
| | US23 | 2009/0128356 A1 | 05-21-2009` | Nitta et al. | |
| | US24 | 2010/0062833 A1 | 03-11-2010 | Mattice et al. | |
| | US25 | 2010/0189228 A1 | 07-29-2010 | Seyfetdinov | |
| | US26 | 2010/0260173 A1 | 10-14-2010 | Johnson | |
| | US27 | 2011/0004878 A1 | 01-06-2011 | Divoux | |
| | US28 | 2011/0039581 A1 | 02-17-2011 | Cai et al. | |
| | US29 | 2011/0158223 A1 | 06-30-2011 | Liu et al. | |
| | US30 | 2011/0162060 A1 | 06-30-2011 | Vijayakumar et al. | |
| | US31 | 2011/0213618 A1 | 09-01-2011 | Hodge et al. | |
| | US32 | 2011/0237226 A1 | 09-29-2011 | Dhuna | |
| | US33 | 2012/0099714 A1 | 04-26-2012 | Hodge | |
| | US34 | 2012/0252411 A1 | 10-04-2012 | Johsgard et al. | |
| | US35 | 2012/0262271 A1 | 10-18-2012 | Torgersrud et al. | |
| | US36 | 2013/0179210 A1 | 07-11-2013 | Collins | |
| | US37 | 2013/0293378 A1 | 11-07-2013 | Aninye et al. | |
| | US38 | 2013/0311364 A1 | 11-21-2013 | Shipman et al. | |
| | US39 | 2013/0318594 A1 | 11-28-2013 | Hoy et al. | |
| | US40 | 2014/0032691 A1 | 01-30-2014 | Barton et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 3 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US41 | 2014/0044242 A1 | 02-13-2014 | Hodge et al. | |
| | US42 | 2014/0089849 A1 | 03-27-2014 | Choi et al. | |
| | US43 | 2014/0108649 A1 | 04-17-2014 | Barton | |
| | US44 | 2014/0109174 A1 | 04-17-2014 | Barton et al. | |
| | US45 | 2014/0115466 A1 | 04-24-2014 | Barak et al. | |
| | US46 | 2014/0157141 A1 | 06-05-2014 | Hussain | |
| | US47 | 2014/0219432 A1 | 08-07-2014 | Bengston et al. | |
| | US48 | 2014/0226487 A1 | 08-14-2014 | Forssell et al. | |
| | US49 | 2014/0267547 A1 | 09-18-2014 | Torgersrud et al. | |
| | US50 | 2014/0273929 A1 | 09-18-2014 | Torgersrud | |
| | US51 | 2014/0282868 A1 | 09-18-2014 | Sheller et al. | |
| | US52 | 2014/0287715 A1 | 09-25-2014 | Hodge et al. | |
| | US53 | 2014/0333425 A1 | 11-13-2014 | Giraud | |
| | US54 | 2015/0040246 A1 | 02-05-2015 | Yuen et al. | |
| | US55 | 2015/0105105 A1 | 04-16-2015 | Van Heerden et al. | |
| | US56 | 2015/0237052 A1 | 08-20-2015 | Brique et al. | |
| | US57 | 2015/0242629 A1 | 08-27-2015 | Lindo et al. | |
| | US58 | 2016/0055323 A1 | 02-25-2016 | Stuntebeck et al. | |
| | US59 | 2016/0066182 A1 | 03-03-2016 | Hodge et al. | |
| | US60 | 2016/0088021 A1 | 03-24-2016 | Jayanti Venkata et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | |
| --- | --- | --- | --- |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | ***Complete if Known*** | |
| | | Application Number | To Be Assigned |
| | | Filing Date | Herewith |
| | | First Named Inventor | Jason MARASS |
| | | Art Unit | To Be Assigned |
| | | Examiner Name | To Be Assigned |
| Sheet | 4 of 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- |
| | US61 | 2016/0094560 A1 | 03-31-2016 | Stuntebeck | |
| | US62 | 2016/0219146 A1 | 07-28-2016 | Hodge et al. | |
| | US63 | 2016/0267257 A1 | 09-15-2016 | Wisgo | |
| | US64 | 2016/0291643 A1 | 10-06-2016 | Sande | |
| | US65 | 2016/0309008 A1 | 10-20-2016 | Hangsleben | |
| | US66 | 2016/0330084 A1 | 11-10-2016 | Hunter et al. | |
| | US67 | 2016/0381212 A1 | 12-29-2016 | Hodge et al. | |
| | US68 | 2016/0381219 A1 | 12-29-2016 | Hodge et al. | |
| | US69 | 2016/0381556 A1 | 12-29-2016 | Hodge et al. | |
| | US70 | 2017/0013393 A1 | 01-12-2017 | Chang | |
| | US71 | 2017/0039784 A1 | 02-09-2017 | Gelbart et al. | |
| | US72 | 2017/0061006 A1 | 03-02-2017 | Hildebrand et al. | |
| | US73 | 2017/0084150 A1 | 03-23-2017 | Keyton | |
| | US74 | 2017/0146801 A1 | 05-25-2017 | Stempora | |
| | US75 | 2017/0168164 A1 | 06-15-2017 | Lee | |
| | US76 | 2017/0177892 A1 | 06-22-2017 | Tingstrom et al. | |
| | US77 | 2017/0193622 A1 | 07-06-2017 | Rosado | |
| | US78 | 2017/0208468 A1 | 07-20-2017 | Hodge et al. | |
| | US79 | 2017/0233168 A1 | 08-17-2017 | Horvath et al. | |
| | US80 | 2017/0244729 A1 | 08-24-2017 | Fahrny et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
| --- | --- | --- | --- |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet ____ 5 ____ of ____ 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US81 | 2017/0329966 A1 | 11-16-2017 | Koganti | |
| | US82 | 2018/0039779 A1 | 02-08-2018 | Li et al. | |
| | US83 | 2018/0159972 A1 | 06-07-2018 | Hodge et al. | |
| | US84 | 2018/0242155 A1 | 08-23-2018 | Marass et al. | |
| | US85 | 2018/0275859 A1 | 09-27-2018 | Hodge | |
| | US86 | 2018/0316675 A1 | 11-01-2018 | Hodge | |
| | US87 | 4,495,386 | 01-22-1985 | Brown et al. | |
| | US88 | 5,255,306 | 10-19-1993 | Melton et al. | |
| | US89 | 5,896,556 | 04-20-1999 | Moreland et al. | |
| | US90 | 6,054,928 | 04-25-2000 | Lemelson et al. | |
| | US91 | 6,058,173 | 05-02-2000 | Penfield et al. | |
| | US92 | 6,668,045 B1 | 12-23-2003 | Mow | |
| | US93 | 6,965,590 B1 | 11-15-2005 | Schmidl et al. | |
| | US94 | 7,085,359 B2 | 08-01-2006 | Crites et al. | |
| | US95 | 7,106,843 B1 | 09-12-2006 | Gainsboro et al. | |
| | US96 | 7,218,993 B2 | 05-15-2007 | Yasukawa et al. | |
| | US97 | 7,254,708 B2 | 08-07-2007 | Silvester | |
| | US98 | 7,280,816 B2 | 10-09-2007 | Fratti et al. | |
| | US99 | 7,333,798 B2 | 02-19-2008 | Hodge | |
| | US100 | 7,366,782 B2 | 04-29-2008 | Chong et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | To Be Assigned |
| | | | Filing Date | Herewith |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | To Be Assigned |
| | | | Examiner Name | To Be Assigned |
| Sheet | 6 | of | 7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US101 | 7,529,357 B1 | 05-05-2009 | Rae et al. | |
| | US102 | 7,587,067 B1 | 09-08-2009 | Schiller | |
| | US103 | 7,742,581 B2 | 06-22-2010 | Hodge et al. | |
| | US104 | 7,804,941 B2 | 09-28-2010 | Keiser et al. | |
| | US105 | 7,860,222 B1 | 12-28-2010 | Sidler et al. | |
| | US106 | 7,899,167 B1 | 03-01-2011 | Rae | |
| | US107 | 8,019,354 B2 | 09-13-2011 | Rae et al. | |
| | US108 | 8,031,052 B2 | 10-04-2011 | Polozola | |
| | US109 | 8,370,206 B2 | 02-05-2013 | Collins | |
| | US110 | 8,428,559 B2 | 04-23-2013 | Silva | |
| | US111 | 8,498,937 B1 | 07-30-2013 | Shipman, Jr. et al. | |
| | US112 | 8,571,525 B2 | 10-29-2013 | Weinstein et al. | |
| | US113 | 8,639,926 B2 | 01-28-2014 | Brown et al. | |
| | US114 | 8,646,056 B2 | 02-04-2014 | Poplett | |
| | US115 | 8,917,848 B2 | 12-23-2014 | Torgersrud et al. | |
| | US116 | 9,094,500 B1 | 07-28-2015 | Edwards | |
| | US117 | 9,124,763 B2 | 09-01-2015 | Humphries | |
| | US118 | 9,232,051 B2 | 01-05-2016 | Torgersrud et al. | |
| | US119 | 9,262,604 B2 | 02-16-2016 | Kimbrell | |
| | US120 | 9,272,713 B1 | 03-01-2016 | Dvoskin | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | *Complete if Known* | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | Application Number | To Be Assigned |
| | | Filing Date | Herewith |
| | | First Named Inventor | Jason MARASS |
| | | Art Unit | To Be Assigned |
| | | Examiner Name | To Be Assigned |
| Sheet | 7 of 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US121 | 9,282,188 B2 | 03-08-2016 | Hodge et al. | |
| | US122 | 9,307,386 B2 | 04-05-2016 | Hodge et al. | |
| | US123 | 9,614,954 B2 | 04-04-2017 | Hodge et al. | |
| | US124 | 9,614,955 B2 | 04-04-2017 | Hodge et al. | |
| | US125 | 9,661,128 B2 | 05-23-2017 | Hodge et al. | |
| | US126 | 9,674,338 B2 | 06-06-2017 | Hodge et al. | |
| | US127 | 9,866,680 B2 | 01-09-2018 | Hodge et al. | |
| | US128 | 9,871,915 B2 | 01-16-2018 | Hodge et al. | |
| | US129 | 9,878,660 B1 | 01-30-2019 | Hodge | |
| | US130 | 9,888,108 B2 | 02-06-2018 | Hodge et al. | |
| | US131 | 9,892,242 B1 | 02-13-2018 | Hodge | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08b (7-09)

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| *Complete if Known* | |
|---|---|
| Application Number | To Be Assigned |
| Filing Date | Herewith |
| First Named Inventor | Jason MARASS |
| Art Unit | To Be Assigned |
| Examiner Name | To Be Assigned |

| Sheet | 1 | of | 2 | Attorney Docket Number | 3210.1280001 |
|---|---|---|---|---|---|

| | | **NON PATENT LITERATURE DOCUMENTS** | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published | T[2] |
| | NPL1 | "Criminal Calls: A Review of the Bureau of Prisons' Management of Inmate Telephone Privileges," U.S. Department of Justice, Office of the Inspector General, August 1999. | |
| | NPL2 | European Search Report and Opinion directed to European Patent Application No. 14769931.8, dated October 26, 2016; 10 pages. | |
| | NPL3 | International Search Report and Written Opinion of the International Searching Authority, directed to related International Patent Application No. PCT/US14/31339, mailed November 6, 2014; 19 pages. | |
| | NPL4 | Knox, "The Problem of Gangs and Security Threat Groups (STG's) in American Prisons Today: Recent Research Findings From the 2004 Prison Gang Survey," National Gang Crime Research Center, 2005; 67 pages. | |
| | NPL5 | Rey, R.F., ed., "Engineering and Operations in the Bell System," 2nd Edition, AT&T Bell Laboratories: Murray Hill, NJ, 1983. | |
| | NPL6 | Rosenberg, et al., "SIP: Session Initial Protocol," Network Working Group, Standard Track, June 2002; 269 pages. | |
| | NPL7 | U.S. Provisional Appl. No. 61/801,861, "Handheld Video Visitation," to TORGERSRUD, ET AL., filed March 15, 2013. | |
| | NPL8 | Winterdyk et al., "Managing Prison Gangs," Journal of Criminal Justice, Vol. 38, 2010; pp. 730-736. | |
| | NPL9 | U.S. Provisional Application No. 61/804,479, filed March 22, 2013. | |
| | NPL10 | International Search Report and Written Opinion of the International Searching Authority directed to International Patent Application No. PCT/US2018/024611, mailed June 11, 2018; 8 pages. | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 2 | of | 2 | Attorney Docket Number | 3210.1280001 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume number, publisher, city and/or country where published | T[2] |
| | NPL11 | International Search Report and Written Opinion of the International Searching Authority directed to related International Patent Application No. PCT/US2018/000080, mailed April 30, 2018; 13 pages. | |
| | NPL12 | File History of U.S. Patent No. 9,094,500, Appl. No. 14/322,869, filed July 2, 2014. | |
| | NPL13 | File History of U.S. Patent No. 9,307,386, Appl. No. 13/946,637, filed July 19, 2013. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

## Mental health among jail and prison **inmates**

Y Yi, K Turney, C Wildeman - American journal of men's ..., 2017 - journals.sagepub.com
... Download Citation. Download article citation data for: Mental Health Among Jail and Prison
**Inmates**. Youngmin Yi, MA , Kristin Turney, PhD , and Christopher Wildeman, PhD. American
Journal of Men's Health 2016 11:4, 900-909. Share. Share ... Share this article via **social media** ...
☆  ⟩⟩  Cited by 52    Related articles    All 5 versions    ⟩⟩

## What are we feeding our **inmates**?

SA Collins, SH Thompson - Journal of Correctional Health ..., 2012 - journals.sagepub.com
... Download Citation. Download article citation data for: What Are We Feeding Our **Inmates**?
Shayda A. Collins and Sharon H. Thompson, EdD, CHES. Journal of Correctional Health Care
2012 18:3, 210-218. Share. Share ... Share this article via **social media** ...
☆  ⟩⟩  Cited by 77    Related articles    All 12 versions    ⟩⟩

## Tweeting the *Jihad*: **Social Media** Networks of Western Foreign Fighters in Syria and Iraq

J Klausen - Studies in Conflict & Terrorism, 2015 - Taylor & Francis
... August and September 2014 alluded to the jumpsuits worn by the **inmates** in Guantanamo ... British
fighter with ISIL, used Twitter to circulate a screenshot made **using** Instagram of ... The pictures of
violence starkly highlighted the role played by **social media** in contemporary terrorist ...
☆  ⟩⟩  Cited by 668    Related articles    All 10 versions

## Measuring suicidality **using** the Personality Assessment Inventory: A convergent validity study with federal **inmates**

MW Patry, PR Magaletta - Assessment, 2015 - journals.sagepub.com
... Tips on citation download. Download Citation. Download article citation data for: Measuring
Suicidality **Using** the Personality Assessment Inventory. Marc W. Patry and Philip R. Magaletta.
Assessment 2014 22:1, 36-45. Share. Share ... Share this article via **social media** ...
☆  ⟩⟩  Cited by 30    Related articles    All 8 versions    ⟩⟩

## Training and preparing **inmates** for post-prison employment

D Wells, National Institute of Justice (NIJ) ... - Corrections Today, 2014 - ncjrs.gov
... shift in how jobs are advertised — print ads to online job boards and **social media** websites —
it ... ers and acquire skills in **using** the Internet, including creating email accounts; **using** search
engines ... **Inmates** should leave prison with copies of a generic cover letter and resume that ...
☆  ⟩⟩  Cited by 4    Related articles    All 2 versions    ⟩⟩

## Sporting girls, streetwalkers, and **inmates** of houses of ill repute: **Media** narratives and the historical mutability of prostitution stigmas

HK Hallgrímsdóttir, R Phillips ... - Sociological ..., 2008 - journals.sagepub.com
... All the articles were coded **using** an "open-coding" technique ... Sporting Girls, Streetwalkers, and
**Inmates** of Houses of Ill Repute ... The final theme (8 percent of the articles) deals with concerns
regarding the failure of **social** institutions (primarily, the family, schools, and religious ...
☆  ⟩⟩  Cited by 95    Related articles    All 11 versions    ⟩⟩

## The pains of permanent imprisonment: Examining perceptions of confinement among older life without parole **inmates**

ME Leigey, MA Ryder - International journal of offender ..., 2015 - journals.sagepub.com
... Share this article via **social media**. The e-mail addresses that you supply to use this
service will not be used for any other purpose without your consent. Recommend
to a friend. Email a link to the following content: *Recipient's ...
☆  ⟩⟩  Cited by 38    Related articles    All 6 versions    ⟩⟩

## Hepatitis C seroprevalence among prison **inmates** since 2001: still high but declining

AK Varan, DW Mercer, MS Stein ... - Public Health ..., 2014 - journals.sagepub.com
... Seroprevalence among Prison **Inmates** since 2001: Still High but Declining. Aiden K. Varan, MPH ,
Daniel W. Mercer, MPH , Matthew S. Stein, MSPH , and Anne C. Spaulding, MD, MPH. Public
Health Reports 2014 129:2, 187-195. Share. Share ... Share this article via **social media** ...
☆  ⟩⟩  Cited by 100    Related articles    All 8 versions    ⟩⟩

Racial and ethnic differences in the predictive validity of the Level of Service Inventory—Revised among prison **inmates**

JL Chenane, PK Brennan, B Steiner… - Criminal Justice and …, 2015 - journals.sagepub.com

… in the Predictive Validity of the Level of Service Inventory–Revised Among Prison **Inmates**. Joselyne L. Chenane, Pauline K. Brennan, Benjamin Steiner, and Jared M. Ellison. Criminal Justice and Behavior 2014 42:3, 286-303. Share. Share … Share this article via **social media** …

☆ 𝟗𝟗 Cited by 48 Related articles All 7 versions

**Social media** dilemmas in the employment context

H Lam - Employee Relations, 2016 - emerald.com

… on the internet, including a hospital staff breaching patient confidentiality, a prison officer befriending **inmates**, employees badmouthing the … Similar to the various arguments against cybervetting discussed above, employers **using social media** for disciplinary actions need to …

☆ 𝟗𝟗 Cited by 53 Related articles All 2 versions

## Related searches

social media **profiles**

**world of** social media

social media **policies**

social media **networks western foreign fighters**

**islamic state** social media

**public private boundaries** social media

**skilled worker shortage** social media

**reasonable expectation of privacy** social media

**evolving role of** social **networking**

social **stigma** media **narratives**

social media **networks syria and iraq**

**german federal employment agency** social media

**risks and rewards** social media

**first insights** social media

**employment relations** social media

**management responsibilities** social **networking**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 |

**CONFIRMATION NO. 2188**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**PUBLICATION NOTICE**

*OC000000122369565*

**Title:** SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

**Publication No.** US-2020-0412860-A1
**Publication Date:** 12/31/2020

# NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 16/925,076 |

### APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 300 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 660 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 760 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 19 | minus 20 = * | | | OR | x 100 = | 0.00 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 | minus 3 = * | | | | x 460 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1720 |

### APPLICATION AS AMENDED - PART II

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | | 1880 | 3210.1280001 | 19 | 3 |

**CONFIRMATION NO. 2188**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**UPDATED FILING RECEIPT**

CC000000120082228

Date Mailed: 09/23/2020

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
Jason MARASS, Fairhope, AL;
Brian PETERS, St. Paul, MN;
Garth JOHNSON, Indianapolis, IN;
Stephen Lee HODGE, Dallas, TX;

**Applicant(s)**
GLOBAL TEL*LINK CORPORATION, Reston, VA;

**Assignment For Published Patent Application**
GLOBAL TEL*LINK CORPORATION, Reston, VA

**Power of Attorney:** The patent practitioners associated with Customer Number 26111

**Domestic Priority data as claimed by applicant**
This application is a CON of 15/435,993 02/17/2017 PAT 10721624

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 07/20/2020
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/925,076**
**Projected Publication Date:** 12/31/2020
**Non-Publication Request:** No
**Early Publication Request:** No
**Title**

                SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.



**LAUREN C. SCHLEH**
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

September 21, 2020

Commissioner for Patents                    *Confirmation No. 2188*
PO Box 1450                                 *Mail Stop Missing Parts*
Alexandria, VA  22313-1450

     Re:    U.S. Utility Patent Application
           Appl. No. 16/925,076; Filed:  July 9, 2020
           For:    **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
           Inventors:  MARASS *et al.*
           Our Ref:  3210.1280001

Commissioner:

     In reply to the "Notice to File Missing Parts of Non-Provisional Application," dated July 22, 2020, Applicant transmits the following documents for appropriate action by the U.S. Patent and Trademark Office:

     1.    Online Credit Card Payment Authorization for **$1,880.00** to cover:
           $ 1,720.00 Patent Application fee (including basic filing, search and examination fees);
           $    160.00 Surcharge for late filing fee or late Oath or Declaration; and
     2.    Preliminary Amendment Under 37 C.F.R. § 1.115.

     The above-listed documents are filed electronically.

     Fee payment is provided through online credit card payment.  The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.  If extensions of time under 37 C.F.R. § 1.136 other than those otherwise provided for herewith are required to prevent abandonment of the present patent application, then such extensions of time are hereby petitioned, and any fees therefor are hereby authorized to be charged to our Deposit Account No. 19-0036.

                        Respectfully submitted,
                        STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                        /Lauren C. Schleh/

                        Lauren C. Schleh
                        Attorney for Applicant
                        Registration No. 65,457

LCS/crb
Enclosure(s)                                                        15589842.1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventor: MARASS *et al.* | Confirmation No.: 2188 |
| Applicant: Global Tel*Link Corporation | Art Unit: To Be Assigned |
| Application No.: 16/925,076 | Examiner: To Be Assigned |
| (*Continuation of Appl. No. 15/435,993; Filed: February 17, 2017*) | Atty. Docket: 3210.1280001 |
| Filing Date: July 9, 2020 | |

Title:  **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Preliminary Amendment Under 37 C.F.R. § 1.115

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In advance of prosecution, Applicant submits the following amendments and remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page **2** of this paper.

**Remarks and Arguments** begin on page **6** of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

- 2 -                                                  MARASS *et al.*
                                          Application No. 16/925,076

## Amendments to the Claims

This listing of claims will replace all prior versions, and listings, of claims in the application.

1-22.   (Canceled)

23.      (New)  A system for preventing unsanctioned use of a mobile device, comprising:

an application barrier stored on a memory of the mobile device, the application barrier configured to:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including social functions of the application; and

monitor user activity of a social application, the monitoring including gathering social interactions of the social application and review the social interactions for illicit activity.

24.      (New) The system of claim 23, wherein the application barrier is further configured to prevent installation or removal of an application.

25.      (New) The system of claim 23, wherein the application barrier is further configured to detect an attempt to perform an unsanctioned function of the application stored in the memory of the mobile device.

26.      (New) The system of claim 25, wherein the application barrier is further configured to prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function.

27.      (New) The system of claim 23, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

- 3 -                                                        MARASS *et al.*
                                              Application No. 16/925,076

28.     (New)  The system of claim 23, wherein the application barrier is further configured to:

        detect an attempt to install an application on the mobile device; and

        send a command to the processor of the mobile device to cancel the attempt.

29.     (New)  The system of claim 23, wherein the application barrier is further configured to:

        detect an over-the-air command received by the mobile device over a wireless link;

        determine that the command meets a security requirement of a second application
sanctioned to change the device settings; and

        in response to determining that the command meets the security requirement, allow the
command to be executed by a processor of the mobile device.

30.     (New)  The system of claim 25, wherein the unsanctioned function includes exchanging data
with an unsanctioned source outside of the controlled environment facility.

31.     (New)  A mobile device for use in a controlled environment facility, comprising:

                a memory that stores a set of operations of an application barrier; and

                a processor configured to:

                        execute the set of operations of the application barrier, the set of operations
comprising:

                                disable non-secure functions of an application stored in the memory
of the mobile device, the non-secure functions including social functions of the application;
and

                                monitor user activity of a social application, the monitoring including
gathering social interactions of the social application and review the social interactions for
illicit activity.

32.     (New)  The mobile device of claim 31, wherein the set of operations further includes
detecting an attempt by a user of the mobile device to perform an unsanctioned function of an
application stored on the memory.

- 4 -                                            MARASS *et al.*
                                        Application No. 16/925,076

33.    (New)   The mobile device of claim 32, wherein the set of operations further includes preventing the processor from executing operations related to the attempt to perform the unsanctioned function.

34.    (New)   The mobile device of claim 32, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

35.    (New)  The mobile device of claim 32, wherein the set of operations further includes:
        detecting an attempt to delete the application on the mobile device; and
        sending a command to the processor to cancel the attempt.

36.    (New)  The mobile device of claim 32, wherein the set of operations includes:
        detecting an attempt to install a second application on the mobile device; and
        sending a command to the processor of the mobile device to cancel the installation attempt.

37.    (New)  The mobile device of claim 32, wherein the set of operations includes:
        detecting an over-the-air command received by the mobile device over a wireless link;
        determining that the over-the-air command is from a sanctioned source; and
        in response to determining that the command is from the sanctioned source, allowing the command to be executed by the processor.

38.    (New)  A system for use in a controlled environment facility for preventing unsanctioned use of a mobile device in a controlled environment facility, comprising:
        an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device, the application barrier configured to:
                perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application; and

Atty. Dkt. No. 3210.1280001

- 5 -                                                    MARASS *et al.*
                                              Application No. 16/925,076

monitor user activity of a social application, the monitoring including gathering social interactions of the social application and review the social interactions for illicit activity.

39.     (New)  The system of claim 38, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

        detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

        preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

40.     (New)  The system of claim 39, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

41.     (New)  The system of claim 38, wherein the application barrier is further configured to:

        detect an attempt to delete the application on the mobile device; and

        send a command to the processor the cancel the attempt.

\- 6 -                                    MARASS *et al.*
Application No. 16/925,076

## *Remarks*

Upon entry of the foregoing amendment, claims 23-41 are pending in the application, with claims 23, 31, and 38 being independent. By this Amendment, claims 23-41 are added and claims 1-22 are canceled without prejudice to or disclaimer of the subject matter therein.  Applicant respectfully reserves the right to prosecute similar or broader claims, with respect to the canceled claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

## *Conclusion*

Prompt and favorable consideration of this Preliminary Amendment is respectfully requested. Applicant believes the present application is in condition for allowance. If the Examiner believes, for any reason, that personal communication will expedite prosecution of this application, the Examiner is invited to telephone the undersigned at the number provided.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:     September 21, 2020

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

15586444.1

Atty. Dkt. No. 3210.1280001

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 16925076 |
| **Filing Date:** | 09-Jul-2020 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Attorney Docket Number:** | 3210.1280001 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY APPLICATION FILING | 1011 | 1 | 300 | 300 |
| UTILITY SEARCH FEE | 1111 | 1 | 660 | 660 |
| UTILITY EXAMINATION FEE | 1311 | 1 | 760 | 760 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| LATE FILING FEE FOR OATH OR DECLARATION | 1051 | 1 | 160 | 160 |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **1880** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 40612979 |
| **Application Number:** | 16925076 |
| **International Application Number:** | |
| **Confirmation Number:** | 2188 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280001 |
| **Receipt Date:** | 21-SEP-2020 |
| **Filing Date:** | 09-JUL-2020 |
| **Time Stamp:** | 15:28:54 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $1880 |
| RAM confirmation Number | E20209KF29128640 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Applicant Response to Pre-Exam Formalities Notice | 2020-09-21-Reply-Missing-Parts-3210-1280001.pdf | 273220 <br> b79d7937f40a09ad618b2fe56df47s8efe68 5dc7 | no | 1 |

**Warnings:**

**Information:**

| 2 | | 2020-09-21-Preliminary-Amendment-3210-1280001.pdf | 140229 <br> cfb753fc114a23b331504b6d788f90249fe1 cf79 | yes | 6 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | **Document Description** | | **Start** | **End** | |
| | Preliminary Amendment | | 1 | 1 | |
| | Claims | | 2 | 5 | |
| | Applicant Arguments/Remarks Made in an Amendment | | 6 | 6 | |

**Warnings:**

**Information:**

| 3 | Fee Worksheet (SB06) | fee-info.pdf | 37088 <br> 28d227ce7f0e856f577cd6c9ee629d9c7b51 19b4 | no | 2 |

**Warnings:**

**Information:**

| | | | **Total Files Size (in bytes):** | 450537 | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | | 0.00 | 3210.1280001 | 22 | 3 |

**CONFIRMATION NO. 2188**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**FILING RECEIPT**


OC0000001186113503

Date Mailed: 07/22/2020

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
Jason MARASS, Fairhope, AL;
Brian PETERS, St. Paul, MN;
Garth JOHNSON, Indianapolis, IN;
Stephen Lee HODGE, Dallas, TX;

**Applicant(s)**
GLOBAL TEL*LINK CORPORATION, Reston, VA;

**Assignment For Published Patent Application**
GLOBAL TEL*LINK CORPORATION, Reston, VA

**Power of Attorney:** The patent practitioners associated with Customer Number 26111

**Domestic Priority data as claimed by applicant**
This application is a CON of 15/435,993 02/17/2017 PAT 10721624

**Foreign Applications** for which priority is claimed  (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange: Yes**

**Permission to Access Search Results: Yes**

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 07/20/2020
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/925,076**
**Projected Publication Date:** To Be Determined - pending completion of Missing Parts
**Non-Publication Request:** No
**Early Publication Request:** No
**Title**

SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 |

**CONFIRMATION NO. 2188**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**FORMALITIES LETTER**


*OC000000118611304*

Date Mailed: 07/22/2020

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

*Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
- The application search fee must be submitted.
- The application examination fee must be submitted.
- Additional claim fees of $ **200** as an undiscounted entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.
- Surcharge as set forth in 37 CFR 1.16(f) must be submitted.
  The surcharge is due for any one of:
  - late submission of the basic filing fee, search fee, or examination fee,
  - late submission of inventor's oath or declaration,
  - filing an application that does not contain at least one claim on filing, or
  - submission of an application filed by reference to a previously filed application.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. No entity status discount is in effect. If applicant is qualified for small entity status, a written assertion of small entity status must be submitted to establish small entity status. (See 37 CFR 1.27). If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

- $ **300** basic filing fee.
- $ **160** surcharge.
- $ **660** search fee.
- $ **760** examination fee.
- $ **200** for **2** total claims over 20.

- $( **0**) previous unapplied payment amount.
- $ **2080** TOTAL FEE BALANCE DUE.

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

     Replies should be mailed to:

       Mail Stop Missing Parts
       Commissioner for Patents
       P.O. Box 1450
       Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice".
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

   If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

     Questions about the contents of this notice and the
     requirements it sets forth should be directed to the Office
     of Data Management, Application Assistance Unit, at
     **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

   /eruga/
_____

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

Application or Docket Number
**16/925,076**

### APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 300 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 660 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 760 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 22 minus 20 = | * 2 | | | OR | x 100 = | 200 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = | | | | | x 460 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1920 |

### APPLICATION AS AMENDED - PART II

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 1 | of | 2 | Attorney Docket Number | 3210.1280001 |

| **NON PATENT LITERATURE DOCUMENTS** | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) volume-issue number(s), publisher, city and/or country where published | T[2] |
| | NPL1 | "Criminal Calls: A Review of the Bureau of Prisons' Management of Inmate Telephone Privileges," U.S. Department of Justice, Office of the Inspector General, August 1999. | |
| | NPL2 | European Search Report and Opinion directed to European Patent Application No. 14769931.8, dated October 26, 2016; 10 pages. | |
| | NPL3 | International Search Report and Written Opinion of the International Searching Authority, directed to related International Patent Application No. PCT/US14/31339, mailed November 6, 2014; 19 pages. | |
| | NPL4 | Knox, "The Problem of Gangs and Security Threat Groups (STG's) in American Prisons Today: Recent Research Findings From the 2004 Prison Gang Survey," National Gang Crime Research Center, 2005; 67 pages. | |
| | NPL5 | Rey, R.F., ed., "Engineering and Operations in the Bell System," 2nd Edition, AT&T Bell Laboratories: Murray Hill, NJ, 1983. | |
| | NPL6 | Rosenberg, et al., "SIP: Session Initial Protocol," Network Working Group, Standard Track, June 2002; 269 pages. | |
| | NPL7 | U.S. Provisional Appl. No. 61/801,861, "Handheld Video Visitation," to TORGERSRUD, ET AL., filed March 15, 2013. | |
| | NPL8 | Winterdyk et al., "Managing Prison Gangs," Journal of Criminal Justice, Vol. 38, 2010; pp. 730-736. | |
| | NPL9 | U.S. Provisional Application No. 61/804,479, filed March 22, 2013. | |
| | NPL10 | International Search Report and Written Opinion of the International Searching Authority directed to International Patent Application No. PCT/US2018/024611, mailed June 11, 2018; 8 pages. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | To Be Assigned |
| | | | Filing Date | Herewith |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | To Be Assigned |
| | | | Examiner Name | To Be Assigned |
| Sheet | 2 | of | 2 | Attorney Docket Number | 3210.1280001 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume number, publisher, city and/or country where published | T[2] |
| | NPL11 | International Search Report and Written Opinion of the International Searching Authority directed to related International Patent Application No. PCT/US2018/000080, mailed April 30, 2018; 13 pages. | |
| | NPL12 | File History of U.S. Patent No. 9,094,500, Appl. No. 14/322,869, filed July 2, 2014. | |
| | NPL13 | File History of U.S. Patent No. 9,307,386, Appl. No. 13/946,637, filed July 19, 2013. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

PTO/AIA/82A (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | To Be Assigned |
| Filing Date | Herewith |
| First Named Inventor | Jason MARASS |
| Title | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| Art Unit | To Be Assigned |
| Examiner Name | To Be Assigned |
| Attorney Docket Number | 3210.1280001 |

**SIGNATURE of Applicant or Patent Practitioner**

| Signature | /Lauren C. Schleh/ | Date (Optional) | |
|---|---|---|---|
| Name | Lauren C. Schleh | Registration Number | 65,457 |
| Title (if Applicant is a juristic entity) | Attorney for Applicant | | |
| Applicant Name (if Applicant is a juristic entity) | Global Tel*Link Corporation | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☑ *Total of 1 forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[X] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

**26111**

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:

[X] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number:   **26111**

OR

| Firm or Individual Name | |  | | |
|---|---|---|---|---|
| Address | | | | |
| City | | State | | Zip |
| Country | | | | |
| Telephone | | Email | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

Global Tel*Link Corporation

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[X] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

## SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | | Date (Optional)  9-29-2015 |
|---|---|---|
| Name | Stephen Hodge | |
| Title | Senior Vice President, Research and Development | |

NOTE: Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[X] Total of     1     forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

2043372.1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: To Be Assigned |
| Applicant: GLOBAL TEL*LINK CORPORATION | Art Unit: To Be Assigned |
| Application No.: To Be Assigned | Examiner: To Be Assigned |
| Filing Date: Herewith | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Information Disclosure Statement

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Listed on accompanying IDS Forms PTO/SB/08a equivalent and/or PTO/SB/08b equivalent are documents that may be considered material to the patentability of this application as defined in 37 C.F.R. §1.56, and in compliance with the duty of disclosure requirements of 37 C.F.R. §§ 1.97 and 1.98.

Applicant has listed publication dates on the attached IDS Forms based on information presently available to the undersigned. However, the listed publication dates should not be construed as an admission that the information was actually published on the date indicated.

Applicant reserves the right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered.

- 2 -                                                          MARASS *et al.*
                                                Application No. To Be Assigned

This statement should not be construed as a representation that a search has been made, or that information more material to the examination of the present patent application does not exist. The Examiner is specifically requested not to rely solely on the material submitted herewith.

Filing under 37 C.F.R. § 1.97(b). This Information Disclosure Statement is being filed within three months of the date of filing of a national application other than a continued prosecution application (CPA), OR within three months of the date of entry of the national stage as set forth in 37 C.F.R. § 1.491 in an international application, OR before the mailing date of a first Office Action on the merits OR before the mailing of a first Office Action after the filing of a request for continued examination under 37 C.F.R. § 1.114. No statement or fee is required.

In accordance with 37 C.F.R. § 1.98(a)(2)(ii), no copies of U.S. patents and patent application publications cited as documents **US1-US131** on the attached IDS Forms are submitted.

Copies of the documents **NPL1-NPL13** were cited by or submitted to the Office in an IDS that complies with 37 C.F.R. § 1.98(a)-(c) in Application No. 15/435,993, filed February 17, 2017 (now pending), which is relied upon for an earlier filing date under 35 U.S.C. § 120. Thus, copies of these documents are not attached. 37 C.F.R. § 1.98(d).

It is expected that the examiner will review the prosecution and cited art in the parent Application No. 15/435,993, filed February 17, 2017 (now pending), in accordance with MPEP 2001.06(b), and indicate in the next communication from the office that the art cited in the earlier prosecution history has been reviewed in connection with the present application.

Atty. Dkt. No. 3210.1280001

- 3 -                                                    MARASS *et al.*
                                              Application No. To Be Assigned

It is respectfully requested that the Examiner initial and return a copy of the enclosed IDS

Forms, and indicate in the official file wrapper of this patent application that the documents have

been considered.

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or

credit any overpayment, to our Deposit Account No. 19-0036.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:      July 9, 2020

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

Atty. Dkt. No. 3210.1280001

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 1 | of | 7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 10,068,398  B1 | 09-04-2018 | Hodge | |
| | US2 | 10,205,727 | 02-12-2019 | Hodge | |
| | US3 | 10,205,820 | 02-12-2019 | Hodge | |
| | US4 | 10,341,484 B2 | 07-02-2019 | Hodge et al. | |
| | US5 | 10,464,474 B2 | 11-05-2019 | Hodge | |
| | US6 | 2002/0071537 A1 | 06-13-2002 | Gainsboro | |
| | US7 | 2003/0036381 A1 | 02-20-2003 | Nagashima | |
| | US8 | 2003/0086546 A1 | 05-08-2003 | Falcone et al. | |
| | US9 | 2003/0126470 A1 | 07-03-2003 | Crites et al. | |
| | US10 | 2003/0198325 A1 | 10-23-2003 | Bayne | |
| | US11 | 2003/0224764 A1 | 12-04-2003 | Baker | |
| | US12 | 2004/0023698 A1 | 02-05-2004 | Chang | |
| | US13 | 2005/0265529 A1 | 12-01-2005 | Hogg, Jr. et al. | |
| | US14 | 2006/0062355 A1 | 03-23-2006 | Leonard | |
| | US15 | 2006/0095175 A1 | 05-04-2006 | deWaal et al. | |
| | US16 | 2006/0176169 A1 | 08-10-2006 | Doolin et al. | |
| | US17 | 2007/0041545 A1 | 02-22-2007 | Gainsboro | |
| | US18 | 2007/0047694 A1 | 03-01-2007 | Bouchard et al. | |
| | US19 | 2007/0057763 A1 | 03-15-2007 | Blattner et al. | |
| | US20 | 2008/0057976 A1 | 03-06-2008 | Rae et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet  2  of  7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US21 | 2008/0200156 A1 | 08-21-2008 | Hicks et al. | |
| | US22 | 2009/0080629 A1 | 03-26-2009 | Rokosky et al. | |
| | US23 | 2009/0128356 A1 | 05-21-2009` | Nitta et al. | |
| | US24 | 2010/0062833 A1 | 03-11-2010 | Mattice et al. | |
| | US25 | 2010/0189228 A1 | 07-29-2010 | Seyfetdinov | |
| | US26 | 2010/0260173 A1 | 10-14-2010 | Johnson | |
| | US27 | 2011/0004878 A1 | 01-06-2011 | Divoux | |
| | US28 | 2011/0039581 A1 | 02-17-2011 | Cai et al. | |
| | US29 | 2011/0158223 A1 | 06-30-2011 | Liu et al. | |
| | US30 | 2011/0162060 A1 | 06-30-2011 | Vijayakumar et al. | |
| | US31 | 2011/0213618 A1 | 09-01-2011 | Hodge et al. | |
| | US32 | 2011/0237226 A1 | 09-29-2011 | Dhuna | |
| | US33 | 2012/0099714 A1 | 04-26-2012 | Hodge | |
| | US34 | 2012/0252411 A1 | 10-04-2012 | Johsgard et al. | |
| | US35 | 2012/0262271 A1 | 10-18-2012 | Torgersrud et al. | |
| | US36 | 2013/0179210 A1 | 07-11-2013 | Collins | |
| | US37 | 2013/0293378 A1 | 11-07-2013 | Aninye et al. | |
| | US38 | 2013/0311364 A1 | 11-21-2013 | Shipman et al. | |
| | US39 | 2013/0318594 A1 | 11-28-2013 | Hoy et al. | |
| | US40 | 2014/0032691 A1 | 01-30-2014 | Barton et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | To Be Assigned |
| | | | Filing Date | Herewith |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | To Be Assigned |
| | | | Examiner Name | To Be Assigned |
| Sheet | 3 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US41 | 2014/0044242 A1 | 02-13-2014 | Hodge et al. | |
| | US42 | 2014/0089849 A1 | 03-27-2014 | Choi et al. | |
| | US43 | 2014/0108649 A1 | 04-17-2014 | Barton | |
| | US44 | 2014/0109174 A1 | 04-17-2014 | Barton et al. | |
| | US45 | 2014/0115466 A1 | 04-24-2014 | Barak et al. | |
| | US46 | 2014/0157141 A1 | 06-05-2014 | Hussain | |
| | US47 | 2014/0219432 A1 | 08-07-2014 | Bengston et al. | |
| | US48 | 2014/0226487 A1 | 08-14-2014 | Forssell et al. | |
| | US49 | 2014/0267547 A1 | 09-18-2014 | Torgersrud et al. | |
| | US50 | 2014/0273929 A1 | 09-18-2014 | Torgersrud | |
| | US51 | 2014/0282868 A1 | 09-18-2014 | Sheller et al. | |
| | US52 | 2014/0287715 A1 | 09-25-2014 | Hodge et al. | |
| | US53 | 2014/0333425 A1 | 11-13-2014 | Giraud | |
| | US54 | 2015/0040246 A1 | 02-05-2015 | Yuen et al. | |
| | US55 | 2015/0105105 A1 | 04-16-2015 | Van Heerden et al. | |
| | US56 | 2015/0237052 A1 | 08-20-2015 | Brique et al. | |
| | US57 | 2015/0242629 A1 | 08-27-2015 | Lindo et al. | |
| | US58 | 2016/0055323 A1 | 02-25-2016 | Stuntebeck et al. | |
| | US59 | 2016/0066182 A1 | 03-03-2016 | Hodge et al. | |
| | US60 | 2016/0088021 A1 | 03-24-2016 | Jayanti Venkata et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet   4   of   7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US61 | 2016/0094560 A1 | 03-31-2016 | Stuntebeck | |
| | US62 | 2016/0219146 A1 | 07-28-2016 | Hodge et al. | |
| | US63 | 2016/0267257 A1 | 09-15-2016 | Wisgo | |
| | US64 | 2016/0291643 A1 | 10-06-2016 | Sande | |
| | US65 | 2016/0309008 A1 | 10-20-2016 | Hangsleben | |
| | US66 | 2016/0330084 A1 | 11-10-2016 | Hunter et al. | |
| | US67 | 2016/0381212 A1 | 12-29-2016 | Hodge et al. | |
| | US68 | 2016/0381219 A1 | 12-29-2016 | Hodge et al. | |
| | US69 | 2016/0381556 A1 | 12-29-2016 | Hodge et al. | |
| | US70 | 2017/0013393 A1 | 01-12-2017 | Chang | |
| | US71 | 2017/0039784 A1 | 02-09-2017 | Gelbart et al. | |
| | US72 | 2017/0061006 A1 | 03-02-2017 | Hildebrand et al. | |
| | US73 | 2017/0084150 A1 | 03-23-2017 | Keyton | |
| | US74 | 2017/0146801 A1 | 05-25-2017 | Stempora | |
| | US75 | 2017/0168164 A1 | 06-15-2017 | Lee | |
| | US76 | 2017/0177892 A1 | 06-22-2017 | Tingstrom et al. | |
| | US77 | 2017/0193622 A1 | 07-06-2017 | Rosado | |
| | US78 | 2017/0208468 A1 | 07-20-2017 | Hodge et al. | |
| | US79 | 2017/0233168 A1 | 08-17-2017 | Horvath et al. | |
| | US80 | 2017/0244729 A1 | 08-24-2017 | Fahrny et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | | *Complete if Known* | |
|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | | Application Number | To Be Assigned |
| | | | | | Filing Date | Herewith |
| | | | | | First Named Inventor | Jason MARASS |
| | | | | | Art Unit | To Be Assigned |
| | | | | | Examiner Name | To Be Assigned |
| Sheet | | 5 | of | 7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US81 | 2017/0329966 A1 | 11-16-2017 | Koganti | |
| | US82 | 2018/0039779 A1 | 02-08-2018 | Li et al. | |
| | US83 | 2018/0159972 A1 | 06-07-2018 | Hodge et al. | |
| | US84 | 2018/0242155 A1 | 08-23-2018 | Marass et al. | |
| | US85 | 2018/0275859 A1 | 09-27-2018 | Hodge | |
| | US86 | 2018/0316675 A1 | 11-01-2018 | Hodge | |
| | US87 | 4,495,386 | 01-22-1985 | Brown et al. | |
| | US88 | 5,255,306 | 10-19-1993 | Melton et al. | |
| | US89 | 5,896,556 | 04-20-1999 | Moreland et al. | |
| | US90 | 6,054,928 | 04-25-2000 | Lemelson et al. | |
| | US91 | 6,058,173 | 05-02-2000 | Penfield et al. | |
| | US92 | 6,668,045 B1 | 12-23-2003 | Mow | |
| | US93 | 6,965,590 B1 | 11-15-2005 | Schmidl et al. | |
| | US94 | 7,085,359 B2 | 08-01-2006 | Crites et al. | |
| | US95 | 7,106,843 B1 | 09-12-2006 | Gainsboro et al. | |
| | US96 | 7,218,993 B2 | 05-15-2007 | Yasukawa et al. | |
| | US97 | 7,254,708 B2 | 08-07-2007 | Silvester | |
| | US98 | 7,280,816 B2 | 10-09-2007 | Fratti et al. | |
| | US99 | 7,333,798 B2 | 02-19-2008 | Hodge | |
| | US100 | 7,366,782 B2 | 04-29-2008 | Chong et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet   6   of   7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US101 | 7,529,357 B1 | 05-05-2009 | Rae et al. | |
| | US102 | 7,587,067 B1 | 09-08-2009 | Schiller | |
| | US103 | 7,742,581 B2 | 06-22-2010 | Hodge et al. | |
| | US104 | 7,804,941 B2 | 09-28-2010 | Keiser et al. | |
| | US105 | 7,860,222 B1 | 12-28-2010 | Sidler et al. | |
| | US106 | 7,899,167 B1 | 03-01-2011 | Rae | |
| | US107 | 8,019,354 B2 | 09-13-2011 | Rae et al. | |
| | US108 | 8,031,052 B2 | 10-04-2011 | Polozola | |
| | US109 | 8,370,206 B2 | 02-05-2013 | Collins | |
| | US110 | 8,428,559 B2 | 04-23-2013 | Silva | |
| | US111 | 8,498,937 B1 | 07-30-2013 | Shipman, Jr. et al. | |
| | US112 | 8,571,525 B2 | 10-29-2013 | Weinstein et al. | |
| | US113 | 8,639,926 B2 | 01-28-2014 | Brown et al. | |
| | US114 | 8,646,056 B2 | 02-04-2014 | Poplett | |
| | US115 | 8,917,848 B2 | 12-23-2014 | Torgersrud et al. | |
| | US116 | 9,094,500 B1 | 07-28-2015 | Edwards | |
| | US117 | 9,124,763 B2 | 09-01-2015 | Humphries | |
| | US118 | 9,232,051 B2 | 01-05-2016 | Torgersrud et al. | |
| | US119 | 9,262,604 B2 | 02-16-2016 | Kimbrell | |
| | US120 | 9,272,713 B1 | 03-01-2016 | Dvoskin | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet   7   of   7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code [2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US121 | 9,282,188 B2 | 03-08-2016 | Hodge et al. | |
| | US122 | 9,307,386 B2 | 04-05-2016 | Hodge et al. | |
| | US123 | 9,614,954 B2 | 04-04-2017 | Hodge et al. | |
| | US124 | 9,614,955 B2 | 04-04-2017 | Hodge et al. | |
| | US125 | 9,661,128 B2 | 05-23-2017 | Hodge et al. | |
| | US126 | 9,674,338 B2 | 06-06-2017 | Hodge et al. | |
| | US127 | 9,866,680 B2 | 01-09-2018 | Hodge et al. | |
| | US128 | 9,871,915 B2 | 01-16-2018 | Hodge et al. | |
| | US129 | 9,878,660 B1 | 01-30-2019 | Hodge | |
| | US130 | 9,888,108 B2 | 02-06-2018 | Hodge et al. | |
| | US131 | 9,892,242 B1 | 02-13-2018 | Hodge | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 39960115 |
| **Application Number:** | 16925076 |
| **International Application Number:** | |
| **Confirmation Number:** | 2188 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280001 |
| **Receipt Date:** | 09-JUL-2020 |
| **Filing Date:** | |
| **Time Stamp:** | 17:58:57 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2020-07-09-Miscellaneous-Letter-3210-1280001.PDF | 280895<br>dc801ab0ae42c835963396dc5a492f21fc73 1882 | no | 2 |

**Warnings:**

**Information:**

| 2 | Authorization for Extension of Time all replies | 2020-07-09-EOT-Authorization-3210-1280001.PDF | 108376<br><br>0ee3dc2193034363e293dde98bbab5fe8a320f68 | no | 1 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 3 | Application Data Sheet | 2020-07-09-ADS-3210-1280001.PDF | 1256187<br><br>18fccbcac4a8f80e1da0b1c0a3486395d2a4ae67 | no | 9 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 4 | Oath or Declaration filed | 2020-07-09-Declaration-3210-1280001.PDF | 531952<br><br>442fe80daca6b1b3fd84133de69b6870c11fd3f6 | no | 4 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 5 | | 2020-07-09-Continued-Prosecution-Application-3210-1280001.pdf | 241259<br><br>88d23c5c9178c43dfabd6c5f5cb93bc29cec0cfc | yes | 36 |
|---|---|---|---|---|---|

| | **Multipart Description/PDF files in .zip description** | | |
|---|---|---|---|
| | **Document Description** | **Start** | **End** |
| | Specification | 1 | 30 |
| | Claims | 31 | 35 |
| | Abstract | 36 | 36 |

**Warnings:**

**Information:**

| 6 | Drawings-only black and white line drawings | 2020-07-09-Drawings-3210-1280001.PDF | 103450<br><br>2f46df071d52aae5ccb80d74c8a8c0a7c5e1ce55 | no | 10 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 7 | Power of Attorney | 2020-07-09-POA-82A-3210-1280001.PDF | 207346<br><br>072fbcc0c119549cbafec347d66ebcb59c3b2f60 | no | 1 |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Power of Attorney | 2020-07-09-POA-82B-3210-1280001.PDF | 985797<br><br>0dc7fde447d96a758b49ad4ef49200edf4ad8511 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 9 | Transmittal Letter | 2020-07-09-IDS-Pleading-3210-1280001.PDF | 119167<br><br>6a194c3f60922927fc27e3563fa1525d8c99da57 | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 10 | Information Disclosure Statement (IDS) Form (SB08) | 2020-07-09-IDS-SB08a-3210-1280001.PDF | 203446<br><br>e5f4b87f296233326d652d4413387cf7ae402a71 | no | 7 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 11 | Information Disclosure Statement (IDS) Form (SB08) | 2020-07-09-IDS-SB08b-3210-1280001.PDF | 145704<br><br>de954dfc9610b2e26e05e8619f5425174 4a8e9e3 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 12 | Transmittal of New Application | 2020-07-09-Utility-Transmittal-3210-1280001.pdf | 1271362<br><br>93001a075e643aebaec996afbf63a301a4ef8039 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 5454941 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: To Be Assigned |
| Applicant: GLOBAL TEL*LINK CORPORATION | Art Unit: To Be Assigned |
| Application No.: To Be Assigned | Examiner: To Be Assigned |
| (*Continuation of Appl. No. 15/435,993; Filed: February 17, 2017*) | Atty. Docket: 3210.1280001 |
| Filed: Herewith | |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Authorization to Treat a Reply as Incorporating an Extension of Time Under 37 C.F.R. § 1.136(a)(3)

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

The U.S. Patent and Trademark Office is hereby authorized to treat any concurrent or future reply that requires a petition for an extension of time under this paragraph for its timely submission, as incorporating a petition for extension of time for the appropriate length of time. The U.S. Patent and Trademark Office is hereby authorized to charge all required extension of time fees to our Deposit Account No. 19-0036, if such fees are not otherwise provided for in such reply.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date: ___July 9, 2020_____

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

15184223.1

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | | Remove |
|---|---|---|---|---|---|
| Legal Name | | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Jason | | MARASS | |

**Residence Information (Select One)**  ● US Residency   Non US Residency   Active US Military Service

| City | Fairhope | State/Province | AL | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 410 Myrtle Ave. |
|---|---|
| Address 2 | |
| City | Fairhope | State/Province | AL |
| Postal Code | 36532 | Country i | US |

| Inventor | 2 | | | | Remove |
|---|---|---|---|---|---|
| Legal Name | | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Brian | | PETERS | |

**Residence Information (Select One)**  ◉ US Residency   Non US Residency   Active US Military Service

| City | St. Paul | State/Province | MN | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 1375 Fairmount Ave. |
|---|---|
| Address 2 | |
| City | St. Paul | State/Province | MN |
| Postal Code | 55105 | Country i | US |

| Inventor | 3 | | | | Remove |
|---|---|---|---|---|---|
| Legal Name | | | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Garth | | JOHNSON | |

**Residence Information (Select One)**  ◉ US Residency   Non US Residency   Active US Military Service

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

| City | Indianapolis | State/Province | IN | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 8920 Stormhaven Ct. |
|---|---|
| Address 2 | |
| City | Indianapolis | State/Province | IN |
| Postal Code | | Country i | US |

| Inventor | 4 | | Remove |
|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Stephen | Lee | HODGE | |

**Residence Information (Select One)**  ● US Residency     Non US Residency     Active US Military Service

| City | Dallas | State/Province | TX | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 10030 Inwood Road |
|---|---|
| Address 2 | |
| City | Dallas | State/Province | TX |
| Postal Code | 75229 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.     | Add |

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 26111 |
|---|---|
| Email Address | | Add Email | Remove Email |

## Application Information:

| Title of the Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |
|---|---|---|
| Attorney Docket Number | 3210.1280001 | Small Entity Status Claimed ☐ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Total Number of Drawing Sheets (if any) | 10 | Suggested Figure for Publication (if any) | |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a).  Do not complete this section if application papers including a specification and any drawings are being filed.  Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

☐   Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐   **Request Not to Publish.**  I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ●   Customer Number | US Patent Practitioner | ○   Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 26111 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending ▾ | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation of ▾ | 15/435993 | 2017-02-17 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.    [Add]

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

Remove

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 3210.1280001 |
| | Application Number | |
| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1.  Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A.  Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2)  any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B.  Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2.  Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐    A.  Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed.  If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐    B.  Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:**  Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | | Attorney Docket Number | 3210.1280001 |
|---|---|---|---|
| | | Application Number | |
| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | | |

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant** | 1 | | Remove |

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

| Clear |

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | | Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| ▼ |

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here. ☒

| Organization Name | GLOBAL TEL*LINK CORPORATION |
|---|---|

**Mailing Address Information For Applicant:**

| **Address 1** | 12021 Sunset Hills Road | | |
|---|---|---|---|
| Address 2 | Suite 100 | | |
| **City** | Reston | **State/Province** | VA |
| **Country** | US | Postal Code | 20190 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button. | Add |

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

## Assignee 1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

| | Remove |
|---|---|
| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☒ |

| Organization Name | GLOBAL TEL*LINK CORPORATION |
|---|---|

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | 12021 Sunset Hills Road | | |
|---|---|---|---|
| Address 2 | Suite 100 | | |
| City | Reston | State/Province | VA |
| Country i | US | Postal Code | 20190 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.  | Add |

## Signature:

| Remove |
|---|

NOTE: This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /Lauren C. Schleh/ | | Date (YYYY-MM-DD) | 2020-07-09 |
|---|---|---|---|---|
| First Name | Lauren C. | Last Name | Schleh | Registration Number | 65,457 |

Additional Signature may be generated within this form by selecting the Add button.  | Add |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |
| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:  [X]  The attached application, or

[ ]  United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Jason MARASS                         Date (Optional) 2/6/17

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2

5206644

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X]  The attached application, or

[ ]  United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft.  Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application.  If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO.  Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent.  Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14).  Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Brian PETERS                                    Date (Optional): 2/1/17

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed.  Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2

5026644

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that

This declaration is directed to:  [X] The attached application, or

☐ United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Garth JOHNSON

Signature: _____

Date (Optional): 1/30/2017

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

502634x

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X]  The attached application, or

[ ]  United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Stephen Lee HODGE

Date (Optional): 2-6-2017

Signature:

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

5026644

- 1 -

# SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]       This application is a continuation of U.S. Patent Application No. 15/435,993, filed February 17, 2017, which is incorporated by reference herein in its entirety.

# BACKGROUND

Field

[0002]       The disclosure relates to a system and method for detecting and locating contraband devices in a correctional facility utilizing mobile devices.

Background

[0003]       In corrections environments such as prisons, telecommunications are highly monitored and controlled. Typically, a correctional facility makes use of an inmate communication system (ICS), sometimes called an inmate telecommunication system (ITS), that provides both the infrastructure for inmates to communicate with individuals outside of the facility. The ICS also provides correctional facility personnel the ability to record, monitor and control these communications. Inmates are typically afforded a small number of individuals that they can communicate with, such as lawyers, family members, and friends. Inmates are also typically subject to specific restrictions on their communications. For example, inmates are explicitly restricted from contacting other parties, such as judges, witnesses, or accomplices related to their alleged offenses. There also may be a time of day, a length of call, three-way call or other restrictions on calls, all of which must be controlled by way of various instrumentalities that may include computer controlled equipment at the facility and/or at remote locations in addition to human monitoring and/or control. To facilitate these communications and the security measures required to enforce these and other restrictions, an ICS may deploy a wireless infrastructure within the correctional facility grounds and mobile devices sanctioned by the correctional facility may be issued to inmates to allow them perform these communications.

Atty. Dkt. No. 3210.1280001

- 2 -

[0004]        Great lengths are taken to prevent the illicit use of the ICS. An ICS may be configured to record and monitor inmate communications attempted using a mobile device issued to an inmate. With the advances of communications technologies, there may be new methods to bypass security measures. Inmates may seek to discover and exploit the new technology to overcome the restrictions placed on their communications. In particular, the mobile devices, once issued by the correctional facility, may be subject to all manner of tampering.

[0005]        While various aspects and alternative features are known in the field of communication monitoring, no one design has emerged that generally addresses the concerns of the prison industry, as discussed herein.


BRIEF DESCRIPTION OF THE DRAWINGS/FIGURES

[0006]        The accompanying drawings, which are incorporated herein and form a part of the specification, illustrate embodiments of the present disclosure and, together with the description, further serve to explain the principles of the disclosure and to enable a person skilled in the pertinent art to make and use the embodiments.

[0007]        FIG. 1 illustrates a block diagram of a detection and monitoring system, according to an exemplary embodiment of the present disclosure.

[0008]        FIG. 2 illustrates the structure of the security barriers, according to an exemplary embodiment of the present disclosure.

[0009]        FIG. 3A-3B illustrate the hardware barrier and its relation to the mobile device, according to an exemplary embodiment of the present disclosure.

[0010]        FIG. 4 illustrates the security barriers implemented on the mobile device, according to an exemplary embodiment of the present disclosure.

[0011]        FIG. 5 illustrates the functional elements of a wireless access point, according to an exemplary embodiment of the present disclosure.

[0012]        FIG. 6A-6B illustrate two scenarios of wireless intrusion, according to exemplary embodiments of the present disclosure.

[0013]        FIG. 7 illustrates the firewall and its relation to the other network elements, according to an exemplary embodiment of the present disclosure.

[0014]        FIG. 8A-8C illustrate the operative security barriers for different scenarios, according to an exemplary embodiment of the present disclosure.

Atty. Dkt. No. 3210.1280001

- 3 -

[0015]        FIG. 9 illustrates a computer system, according to an exemplary embodiment of the present disclosure.

[0016]        The present disclosure will be described with reference to the accompanying drawings. In the drawings, like reference numbers indicate identical or functionally similar elements. Additionally, the left most digit(s) of a reference number identifies the drawing in which the reference number first appears.

## DETAILED DESCRIPTION

[0017]        As discussed above, with the advances in communications technologies, correctional facilities and ICS providers now have the need to secure sanctioned mobile devices against all manner of new threats. With the advent of smart devices such as smartphones and tablet devices that allow both traditional voice and data communication capabilities, it is now common in correctional facilities for mobile devices to be issued to inmates for temporary use. The ICS provider will typically deploy a wireless network infrastructure, comprising wireless access points and internet backbone connection to the prison to enable these mobile devices to communicate with the outside world. These mobile devices, in conjunction with the wireless network infrastructure, allow the inmates to engage in several activities that are sanctioned by the correctional facility, such as telephone conversation with allowed parties and limited internet access with approved websites and services. However, because of the much wider functionality available in devices as compared to traditional controlled environment telephone systems, such as internet access through cellular and wireless communications technologies and the installation of use of software applications on memory in the device, these devices also pose new security risks that must be addressed by ICS providers. These new security risks are manifold, and when exploited allow the inmates to use the mobile device for unsanctioned functions, connect to wireless networks not sanctioned by or deployed in the correctional facility, and access internet and other data content not authorized by the correctional facility.

[0018]        An inmate may physically tamper with a mobile device such that the inner circuitry of the device is altered to allow for unsanctioned activity in the phone. Because mobile devices are typically equipped with at least one of the common variants of a universal serial bus (USB) connector (e.g. micro-USB, mini-USB, USB 3.0, etc.) the

- 4 -

power of the battery may be used to charge a contraband device that has been smuggled into the correctional facility by a wily inmate. Access to the USB connector also allows other smuggled peripheral devices (e.g. a keyboard, wireless hot spot adapter, etc.) to be used with the phone to provide functionality not sanctioned by the correctional facility. In fact, the battery itself may also be used as a weapon or a tool for escape or other shenanigans, as mobile device batteries are typically made with potentially dangerous, corrosive, or flammable substances such as a lithium-ion battery.

[0019]      The software applications installed on the mobile device also pose security risks to the phone. A clever inmate may prod applications for vulnerabilities either secured poorly or unconsidered by the correctional facility or ICS provider. Many applications (e.g. Facebook, Yelp, etc.) provide social functions such as commenting and messaging that can be used for clandestine communications between an inmate and an unauthorized outside party that may evade detection by the correctional facility. Other applications have features that have unintended implications for security risks. For example, while there are several applications that serve as dedicated internet web browsers that may be thoughtfully regulated by a correctional facility or ICS provider, such as Chrome or Firefox, other applications often employ a proprietary web-browser that would escape such thoughtful regulation. Inmates could use these proprietary web-browsers to access unauthorized internet web domains. Furthermore, an inmate can simply install new applications on an unsecured mobile device that allow for unsanctioned functionalities without any knowledge by the correctional facility. As such, application management functions and the applications themselves need to be secured by the ICS provider.

[0020]      An unsecured operating system (OS) of the mobile device poses yet another set of security risks to the phone. The operating system typically governs the capabilities of the device, such as which radios the mobile device has switched on (WiFi, Bluetooth, Cellular), which wireless networks to connect to and any required login information, and other important device settings. These settings will typically be accessible through a simple graphical user interface (GUI). Inmates may access these settings to allow the mobile device to connect to a wireless access point outside of the correctional facility or otherwise not provided or monitored by the ICS provider, which in turn allows the mobile device to circumvent network security measures operating on the wireless infrastructure deployed by the ICS. Access to shortwave radio technology such as Bluetooth allows the

- 5 -

device to pair, communicate, and exchange data with another mobile device or a contraband device smuggled into the facility without the correctional facility personnel ever detecting it. Therefore, the ICS provider must also take steps to secure the operating system from allowing unsanctioned activity.

[0021]    The wireless access points themselves may also implement security features to prevent unsanctioned use of the mobile device. Wireless access points may be equipped with wireless intrusion prevention (WIP) systems that detect activity between sanctioned mobile devices and wireless access points outside of the correctional facility. Furthermore, the supporting wired network that links the wireless access points to outside networks such as the internet may also provide security features such as access control lists to prevent data packets from certain websites and IP addresses.

[0022]    In light of the above, the present disclosure provides details of a layered security system for preventing unsanctioned use of a mobile device within a correctional facility. In embodiments, multiple security barriers are devised in the hardware and software of the mobile device and in the wireless network infrastructure deployed by the ICS provider in the correctional facility that prevent the unsanctioned use. These barriers are "layered" in that they act as a next barrier of protection when a previous barrier fails.

[0023]    FIG. 1 illustrates a block diagram of a correctional facility 100 within a correctional facility environment, according to embodiments of the present disclosure. In an exemplary embodiment, the system comprises mobile devices 101-103 and wireless access point devices 104-106 within the correctional facility grounds 110, a firewall device 120, a network 130, and a communications processing center 150 connected to the internet 170. Within the correctional facility grounds 110, mobile devices 101-103 are devices which are issued by the correctional facility to facilitate inmate communications with individuals outside of the correctional facility environment. The mobile devices are configured to perform authorized communications with outside parties, including texting, audio, and video communication.

[0024]    In the present disclosure, different security measures are deployed on the mobile devices 101-103, the wireless access point devices 104-106, and the firewall device 120 to prevent unsanctioned use of the mobile devices 101-103. The security measures are designed in a layered or stacked fashion, wherein if an inmate manages to bypass one security measure in the stack, the next barrier of the stack should provide additional

- 6 -

protection against unsanctioned use of the devices. This security layer structure will be discussed further below.

[0025]     In embodiments, mobile devices may be capable of accessing limited data services such as internet to law websites, music, and other services. The mobile devices may be encased in a hardware barrier, sometimes called a "clam shell" case, that prevents inmates from physically tampering with the mobile device or having access to all of the ports typically available on such a device, such as the universal serial bus (USB) port. Furthermore, the software applications and the operating system on these mobile devices are designed or otherwise modified by the inmate communication system (ICS) provider and approved by the correctional facility for the purpose of securing and preventing unsanctioned usage of the mobile devices. The design of the hardware barrier, software, and operating system security functions will be described in greater detail below.

[0026]     The wireless access point devices 104-106 are devices that are deployed by the ICS provider in the correctional facility to server the communications initiated by the mobile devices 101-103. These wireless access point devices will run a version of the IEEE 802.11 "WiFi" protocol that specifies the media access control (MAC) layer and physical (PHY) layer standards that allow wireless communication with the mobile devices. The mobile devices 101-103 form wireless connections with one of the wireless access point devices 104-106. Wireless access point devices 104-106 are deployed throughout the correctional facility. In embodiments, some may serve specific enclosed areas such as a room designated for voice or video call communications, a cafeteria, library, etc. The wireless access point devices are modified to perform wireless intrusion prevention (WIP) functionality that can detect and neutralize unsanctioned wireless activity by the mobile devices 101-103. These functionalities will be described in greater detail below.

[0027]     In embodiments, wireless access points that are not deployed for use in the correctional facility are also located outside of the facility, as illustrated by wireless access point 107. Such wireless access points are deployed in neighboring buildings without nefarious purpose and are known to the wireless access points 104-106. In another embodiment, wireless access point 107 is smuggled in or around the correctional facility for the purpose of allowing inmates to circumvent the correctional facility wireless network infrastructure and security. In embodiments, security measures on both

- 7 -

the mobile devices 101-103 as well as the WIP functionality on wireless access points 104-106 are all designed to prevent mobile devices 101-103 from forming connections devices as exemplified by wireless access point 107, and neutralizing mobile device wireless functionality when they do. These security functions are described in greater detail below.

[0028]     In embodiments, any communications involving the mobile devices and parties outside the correctional facility are delivered using packetized data. The packetized data is routed through the wireless access points 104-106 to the communications processing center 150 via network 130. Voice is served over packetized voice protocols such as Voice over Internet Protocol (VoIP). Typical packetized data protocols such as transport control protocol/internet protocol (TCP/IP) serve mobile device data services such as restricted web-browsing or music. In embodiments, the mobile devices also connect to the communication center via wired communication links that use other common MAC and PHY layer protocols, such as those associated with the IEEE 802.3 "Ethernet" standard. These wired communication links may be available in designated areas of the correctional facility such as a dedicated telecommunication room or a library.

[0029]     In embodiments, all communications from the mobile devices are routed through one of the wireless access points 104-106 to a firewall device 120 followed by a network 130. The firewall device stores an access control list (ACL) that enumerates the internet protocol (IP) addresses or the domain names of websites that mobile devices within the correctional facility are allowed to communicate with. All data traffic to or from any mobile device within the facility flows through the firewall device 120. For ease of discussion, the firewall device 120 is shown as a separate device other network elements outside of the correctional facility 110, but this separation is not necessary in all embodiments. The firewall device 120 may be located within the network 130 or the communications processing center 150.  The firewall device may be a dedicated set of servers designed to filter all traffic through the ACL, or may be implemented on one or more common routers within network 130.

[0030]     In embodiments, the network 130 consists of a local area network (LAN), a wide area network (WAN), or the internet. Network 130 is made up of routers and switches running well-known protocols such as IEEE 802.3 "Ethernet" protocol. The network may be owned and provisioned by the correctional facility 110, the ICS provider, or may be

- 8 -

part of a public network such as the internet. The network 130 serves to connect the correctional facility's local network infrastructure to a communications processing center 150.

[0031]     The communication processing center 150 is responsible for monitoring the usage of the mobile devices for any signs of illicit behavior on the part of the inmate using the device. In voice communications, for example, the communication center is responsible for authenticating the inmate party and the outside party to ensure that these parties are allowed to communicate with each other. This will typically be done by comparing the inmate and the outside party to a "white list" or a "black list" of allowed or disallowed parties, such that inmates can only communicate with parties on their white list or not on their black list. Such lists may also be stored on the mobile devices themselves, such that when the mobile device is issued to a particular inmate, the inmate will only be allowed to contact their allowed parties. For data communications, both the communication center and the mobile devices themselves will typically be responsible for preventing the user of the mobile device from accessing prohibited data.

[0032]     FIG. 2 illustrates the layers of security barriers 200 that prevent unsanctioned use of a mobile device. As discussed above, the security measures are implemented on the mobile devices, the wireless access point devices, and the firewall device, such as mobile devices 101-103, wireless access points 104-106, and firewall device 120 as seen in FIG. 1. Inmate 209 must bypass the security barriers 210-250 in order to perform unsanctioned activity. As indicated in FIG. 2, security barriers 210, 220, and 230 are deployed on the mobile devices as embodied by mobile devices 101-103 of FIG. 1, barrier 240 is deployed at wireless access points within the correctional facility as embodied by wireless access points 104-106 of FIG. 1, and barrier 250 is deployed at the firewall device as embodied by firewall device 120 of FIG. 1. Below is a brief description of the barriers and their interactions. All barriers are described in greater detail with respect to FIGs. 3A-3B and FIGs. 4-7. FIG. 2 also depicts call processing center 260, which is an embodiment of call processing center 150 from FIG. 1.

[0033]     Barrier 210 is the hardware barrier that comprises a physical hardware barrier placed on a mobile device. In an embodiment, the barrier is in the form of a secured case that encloses the mobile device and prevents the inmate from physically altering the mobile device or gaining access to the mobile device power source. Barrier 220 is the

- 9 -

application security barrier, implemented on a mobile device, in which applications which are installed on the mobile device are modified and managed to prevent applications form performing unsanctioned activity on the mobile device. Applications stripped of functions that are considered unsanctioned by the correctional facility such as social functions, or the functions may be disabled as deemed necessary by the correctional facility. Furthermore, applications are prevented from being installed or removed on the mobile device.

[0034]     Barrier 230 is the OS security barrier, also implemented on a mobile device, in which the OS of the mobile device is secured to prevent tampering with the settings of the device. This barrier prevents the inmate user from accessing the device settings GUI that is common on most mobile devices, and also prevents applications running on the device from being able to alter the mobile device settings. While in exemplary embodiments application features that may allow the application to alter the device settings would typically be disabled or removed completely in accordance with application security barrier 220, the OS barrier 230 offers a second barrier to the inmate in the event that such features are accessed. For example, if an inmate is able to bypass the application security barrier 220 by obtaining access to an unsanctioned feature of a particular application in use, the OS security barrier 230 prevents the inmate from changing or manipulating any device settings on the mobile device through the unsanctioned feature of the application.

[0035]     In an embodiment, barrier 240 is the wireless security barrier, implemented on a wireless access point within the correctional facility, that detects and neutralizes mobile device wireless activity deemed unsanctioned by the correctional facility. This barrier comprises a wireless intrusion prevention (WIP) system that detects when a mobile device is attempting to either access an unsanctioned wireless access point, as embodied in wireless access point 107 of FIG. 1, or the mobile devices is itself attempting to act as a wireless hot spot. Thus, if an inmate is able to bypass the OS security barrier 230 and, for example, disconnect from a sanctioned wireless access point device to try to connect to an unsanctioned wireless access point, the wireless security barrier 240 initiates the WIP system implemented on the wireless access point to prevent the successful communication between the mobile device and an unsanctioned wireless access point.

[0036]     Finally, barrier 250 is the access control security barrier, implemented on a firewall device as embodied by firewall device 120 of FIG. 1, in which a mobile device is

- 10 -

prevented from sending to or receiving traffic from an unauthorized internet address. This barrier monitors all traffic to or from every mobile device within the correctional facility, determines if the traffic is coming to or from a trusted source outside the correctional facility, and discards any traffic that does not come from a trusted source. Thus, if an inmate is able to bypass the application security barrier 220 or the OS security barrier 230 to access a feature of an application or the OS that directs traffic to an unknown source, the access control security barrier 250 captures and discards all traffic to and from that source, thereby preventing successful communication between the mobile device and that source.

[0037]    It should be noted that not all unsanctioned activity requires the bypassing of all five security barriers depicted in FIG. 2. In embodiments, there are several scenarios in which some security barriers may pose no hindrance to the unsanctioned behavior being attempted by an inmate in possession of a mobile device. For example, if an inmate desires to charge a contraband device using the battery of the mobile device, in an embodiment the inmate only needs to break through the hardware barrier 210 to gain access to a USB connector on the device, the application barrier 220, and the OS security barrier 230 to force the USB connector to allow a reverse current flow from the mobile device to the contraband device. On the other hand, to access an unsanctioned website, the inmate has to bypass the application security barrier 220, OS security barrier 230, and access control barrier 250. Thus, the five barriers of security provide redundancy in the security system that is robust in handling multiple security threats of various kinds. A single barrier would not be secure enough to handle the myriad security threats present in the correctional facility environment.

[0038]    FIG. 3A illustrates the mobile device hardware 300 and connectors 320 and 330 that are authorized for that device. Device 300 is an exemplary embodiment of the hardware of mobile devices 101-103 that are illustrated in FIG. 1. The figure is intended to demonstrate the security vulnerabilities of the mobile device that exist due to the hardware of the device. The mobile device contains a screen 305A that occupies the majority of the face of the device. This screen responds to physical contact by the inmate, and typically displays, when first used by an inmate, a "home" screen where icons that represent sanctioned applications available on the device are displayed on the screen.

- 11 -

When the icons are pressed by the inmate, the mobile device opens an application to run on the mobile device.

[0039]        Typically, the mobile device face also comprises a bezel 312 that surrounds the screen on all sides, beginning at the edge of the screen 306B to the edge of the device 306A on all sides. The bezel does not respond to physical contact from the inmate, but will generally be significantly wider on one side of the device face to allow space for a button 302. In some embodiments, there are several buttons similar to button 302 implemented on the bezel of the device. Button 302 will typically function as a "home" button where, regardless of what application is being used by the inmate, pressing the button 302 will allow the mobile device to return to the "home" screen where, as described before, the icons representing programs available on the device will be displayed, allowing the inmate to choose to use a different application. Depending on application design, there is typically a way to move to the "home" screen without access to this button. This button may be either tactile response or touch-sensitive similar to the touch screen 305A.

[0040]        Mobile device 300 will also typically include connector ports for various functions. Ports 307A, 309A, and 310 are all examples of ports that are implemented on a common mobile device. However, in many embodiments, additional ports may be available, and the existing ports 307A, 309A, and 310 may be placed in different areas of the mobile device 300. Port 307A is an "audio jack," otherwise known as a "phone connector", "phone jack", or "headphone jack." Port 310 is a universal serial bus (USB) port. Port 309A is a "barrel charger" for charging the battery of the mobile device.

[0041]        Port 307A allows for an audio peripheral such as headphones or headphone/microphone combinations. This connector is nearly universal for mobile devices. The male connector 330 corresponds to port 307A. These peripherals allow for a device to output audio to a set of headphones to play audio directly into the ears of an inmate, or a microphone to allow for better reception of inmate speech during an audio call. While standards for the audio jack are not particularly strict, the audio jack connector 330 will typically come in one of several configurations, such as "tip/sleeve" (TS), "tip/ring/sleeve" (TRS), "tip/ring/ring/sleeve" (TRRS), and "tip/ring/ring/ring/sleeve" (TRRRS). The ring refers to the portion between two black bands as seen on connector 330. 330B and 330C would each be considered a "ring" while 330A is the "tip" and 330D

- 12 -

the "sleeve." The addition of rings adds a new input or output interface to be added to the jack, such that it may support more services. For example, a simple TS connector may only support audio output from headphones, while a TRRS may support audio output, microphone input, and microphone button input that allows simple interaction such as pausing audio playback in a music-playing application running on the mobile device. Typically, at least a TRRS functionality is employed in most embodiments of modern mobile devices. In embodiments, the correctional facility considers this functionality allowable for inmates. In addition, certain rings of the audio jack may be disabled as deemed necessary by the correctional facility to only allow for more basic functionalities of the audio jack (e.g. allowing audio and microphone input/output interfaces while disabling the "microphone button" input).

[0042]     Mobile device 300 will also typically support a universal serial bus (USB) jack 310. There are multiple forms of the USB, most commonly "micro-USB", "mini-USB" and "USB 3.0." In commercial use, this connector serves two main functions, power charging and data transfer when connected to another computing device. At least one form of this connector is implemented in nearly all mobile devices.  The functioning of these ports is defined in a series of standards titled "USB 1.x", "USB 2.0", "USB 3.0/3.1", and more recently "USB Type-C". In exemplary embodiments, the correctional facility disallows use of this connector for the user by both modifying the OS kernel to disable functionality of this port, and denying physical access to the port. However, this is not limiting, and some correctional facilities may consider this port usable by inmates. Additionally, field technicians sanctioned by the ICS provider or the correctional facility may connect to this port, using proprietary computing equipment, to change settings on the mobile device.

[0043]     The port 309A is the port for a connector called a "barrel charger", otherwise known as a "direct current (DC) connector" or a "coaxial power connector," and is used explicitly for charging the battery of the mobile device. The male connector 320 corresponds to port 309A. These connectors operate under several international standards such as IEC in the U.S., EIAJ in Japan, and DIN in Germany, although several other standards and proprietary implementations exist. Unlike ports 307A and 310, port 309A is not commonly implemented in mobile devices, which have opted for a USB port as embodied by 310 due to its support for data transfer as well as power charging functions.

- 13 -

In the exemplary embodiment, the connector is added to the mobile device by the ICS provider to allow for a port that charges the battery of a mobile device but does not allow for data-related functionality that can be performed using the USB port 310. This port is therefore sanctioned by the ICS provider and correctional facility, and is the main means by which an inmate or correctional facility staff charges the mobile device.

[0044]     Internal to the device, a diode is also placed in series with the barrel charger to the leads of the battery to disallow a reverse current flow. This prevents current from flowing out of the device through the barrel charger port. Without this security feature in place, an inmate is able to charge a contraband device using the energy of a well-charged battery of the mobile device.

[0045]     FIG. 3B illustrates an exemplary embodiment for the hardware barrier of the device, otherwise known as a "clam shell" case. The case comprises a front plate 350 which fits over the screen side of the device and a back plate 370 that fits over the back of the device. Front and back plates 350 and 370 can together be considered an exemplary embodiment of the hardware barrier 210 in FIG. 2.

[0046]     In an exemplary embodiment, the front plate 350 fits over the front of the device, with a large opening 305B that exactly matches the location and dimensions of the screen. Therefore, the inner edge 306C of the front matches perfectly with the edge of the screen 306B on the mobile device. Along the outer rim of the front plate, there are 8 holes 352A-H which fit tamper-resistant screws that fasten the front plate to the back plate. The case does not allow access to the button 302 on mobile device 300, instead covering that button such that it cannot be depressed by the inmate user. The tamper resistant screws may have a screw head shape for which screwdrivers are not readily available, and the holes 352A-H are recessed such that they cannot be tampered with using conventional means such as coins, paper clips, or improvised tools by inmates.

[0047]     The back plate 370 is a solid piece of plastic which contains no holes that are accessible to the user. There are 8 receptacles 352I-P that receive the tamper-resistant screws from the front plate 350. When fastened together properly, the front plate 350 and back plate 370 form a complete seal over all portions of the device, such that an inmate cannot gain access to the inner workings of the device without devising a method to separate the front and back plates from each other.

- 14 -

[0048]     The front and back plates, when fastened, do allow for two access points to the device. 307B and 307C form a hole when the front and back plates are sealed that allows for access to the audio jack 307A of the mobile device, and 309B and 309C similarly allow access to the barrel charger port 309A. Access to the micro-USB port 310 is not allowed by the front and back plate 350 and 370. In some embodiments, the case is designed more liberally to allow for access to the USB port 310, or to allow an aerated area over speakers on mobile device 300. However, in general, the case is designed to be extremely secure and to disallow physical access to any part of the device deemed vulnerable to security threat.

[0049]     FIG. 4 illustrates the mobile device 400 with where application and OS security barriers have been implemented. The mobile device 400 may be an exemplary embodiment of mobile devices 101-103 as seen in FIG. 1. While the previous FIG. 3A is also an embodiment of the mobile devices 101-103, FIG. 3A is intended to demonstrate the security vulnerabilities of the mobile device due to hardware accessibility, while FIG. 4 illustrates the interaction of the security measures implemented on the mobile device software, namely the application and management security barrier 420 and OS security barrier 430. Specifically, FIG. 4 shows how the security barriers implemented on the device interact with both the user input/output (I/O) modules implemented on the mobile device and the radio of the mobile device that sends out communications.

[0050]     In an embodiment, the mobile device has I/O circuitry 410 which allows the user to interact with the device. This I/O circuitry 410 includes input such as the touch screen of the mobile device as embodied by 305A of FIG. 3, the microphone, camera, and ports such as the audio jack and barrel charger jack as embodied by 307A and 309A of FIG. 3A. I/O circuitry 410 also includes as USB port, as illustrated by 310 of FIG. 3A, as well as button 302 as embodied by 302 in FIG. 3A. As noted in reference to FIG. 3B, the inmate is explicitly denied access to both the button 302 and the USB port 310 by the hardware barrier embodied by front and back plate 350 and 370 as illustrated in FIG. 3B, but if the hardware barrier is bypassed, then application management and security barrier 420 and OS security barrier 430 still neutralizes any threats that arise from inmate access to those particular I/O means.

[0051]     In embodiments, the inmate interacts with the mobile device using the I/O circuitry 410. As described with reference to FIG. 3A, this interaction will mainly take

- 15 -

place in the form of initiating and interacting with applications on the touch screen. The application management and security barrier 420 monitors these interactions to ensure that no unsanctioned activity can be initiated via any applications that the inmate is otherwise authorized to use.

[0052]     In embodiments, commercially available applications often provide functionalities that are superfluous to their main function and provide means for circumventing security monitoring in a controlled-environment setting. For example, some applications provide a simple web browser functionality that is initiated when a user selects a particular action. This provides a means of escaping IP address or domain name filters implemented on the mobile device to prevent certain internet content from being accessed by the inmate. Other applications whose main goal is not social interaction nonetheless provide basic social interaction functions such as commenting, rating functions, interactive messaging/chatting features, and voice/video chat. These functionalities provide means for inmates to engage in clandestine communications that evade security monitoring. In general, extraneous functions provided by a commercially available application provide possible means for circumventing correctional facility rules.  Additionally, many commercial applications make ad-hoc changes to settings in the mobile device that may be unsanctioned by the correctional facility. An application, for example, can attempt to make changes to WiFi settings, turn on a Bluetooth radio, or turn on the GPS radio of the mobile device. This too may evade security monitoring.

[0053]     Given the broad range of threats inherent in applications, in embodiments, the application security barrier 420 takes two approaches. The first approach is application modification 422, in which applications that are considered useful for inmates are first stripped of any application features which are considered to be security vulnerabilities by either the ICS provider or the correctional facility. The ICS provider may also provide applications for allowable social interactions where the ICS programs in the ability to monitor the use of those applications. This monitoring may occur at the call processing center, such as call processing center 150 depicted in FIG. 1. There, data traffic that travels to and from that application can be monitored to determine if any illicit activity is occurring.

[0054]     The second approach to the application security barrier 420 is the application management 424. This module disallows the addition or removal of any applications

- 16 -

currently on the device, as well as modifications of settings on applications considered important to the security of the device. By disallowing inmates to install new applications on the device, the inmate is prevented from gaining access to new applications that have unforeseen means of performing illicit activity that are not be detectable by the ICS provider. By preventing the removal of applications by the inmate, security-related applications in particular are prevented from being removed from the device. The module also detects attempts by the user of the mobile device to use a function on an application that is unsanctioned by the correctional facility. In such cases, the module will attempt to prevent the function from being executed by the mobile device processing circuitry. In embodiments, when such activity is detected, the application security barrier 420 also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity.

[0055]     In embodiments, if application security barrier 420 is bypassed, the OS Security barrier 430 acts as the next security barrier in preventing inmates from engaging in illicit activity. Some discussion of an OS is warranted here to convey the importance of OS security barrier 430.  The main element of an OS is a "kernel", a software module that controls the interaction between applications and the mobile device hardware. The kernel serves several functions, including reserving processing resources in which the application executes its functions, and acting as the interface between the application and the hardware devices on the mobile device. These hardware devices include the general I/O such as the touch screen and any tactile buttons on the mobile device, mobile device radios such as WiFi, and cellular radios, and hardware interfaces such as the USB port 310 or the audio jack 307A as shown in FIG. 3. These interfaces are shown as communication interface module 440 in FIG. 4. Connected to communication module 440 is an antennae 445. In embodiments, antennae 445 may be one or more antenna that serve the multiple wireless interfaces listed above.

[0056]     Consider the following example. An application desires data from a network connection served over a wireless interface such as Bluetooth, and also GPS coordinates from the GPS radio. The application sends requests called "system calls" to the kernel that specify actions desired by the application, and the kernel performs the necessary translations to fulfill those system calls. In this example, the kernel engages the Bluetooth radio to send and receive data, the GPS radio to receive GPS coordinates, and the

- 17 -

processor and memory to allow the application to temporarily store the data received by the Bluetooth and GPS radios. As such, the OS, and the kernel in particular, provides a key point for ICS providers to implement security features on the mobile device.

[0057]     In embodiments, the OS security barrier 430 prevents the inmate from accessing settings of the device that controls the communication interfaces 440. In common implementations of commercially available OS, the device settings are directly accessible from the home screen as an icon similar to an application icon. This icon, and any underlying GUI that allows for easy mobile device setting changes, is removed from the mobile device. In particular, the OS barrier prevents the access to the WiFi settings to prevent the inmate inputting a non-sanctioned access point service set identifier (SSID) and passcode, such as access point 107 depicted in FIG. 1, into the mobile device. The passcode may be in the form of a wired equivalent privacy (WEP), WiFi Protected Access (WPA) or WiFi Protected Access 2 (WPA2) key. The OS barrier detects attempts by the inmate to toggle radios on and off in the mobile device, such as the WiFi, Bluetooth, or cellular radios. The access icon to settings from the operating system environment is removed, thereby preventing the one-click access to these settings. It also detects attempts by an application to make these device settings changes, such as a radio being switched on to perform an function specific to the application.

[0058]     Furthermore, the OS barrier 430 also prevents the surreptitious access of the mobile device settings through applications whose security barriers have been bypassed. In many commercially available applications, a common feature allows the application to access mobile device settings directly. A common example is a map application that seeks to automatically switch on the mobile device's GPS radio when the device is engaged. In cases where the application security barrier 420 is bypassed, or simply omitted due to an oversight by the ICS provider, the application attempts to access mobile device settings, thereby allowing the inmate to change these mobile device settings. The OS barrier, at the kernel, prevents applications from accessing the mobile device settings.

[0059]     Another key feature of the OS security barrier 430 is to prevent devices that have been plugged into the available ports of the mobile device, such as USB port 310 or the audio jack 307A depicted in FIG. 3, from accessing or changing the mobile device settings. In the event that the hardware barrier, such as that depicted in FIG. 3B, is bypassed, the OS security barrier 430 also prevents peripheral devices that are plugged

- 18 -

into the available ports on the mobile device from interacting with the applications or the settings of the mobile device. In embodiments, when such activity is detected, the OS security barrier also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity.

[0060]     While it is desirable to prohibit the inmate from changing settings or manipulating applications on the device, the ICS provider still requires access to the device settings to make various operational changes. In embodiments, the ICS provider uses an over-the-air (OTA) update functionality to access a mobile device's setting. In OTA applications, mobile device settings and application changes can be made through wireless transmission to the devices. Several applications exist that provide this functionality, where the application initiates a background process "daemon" at the mobile device startup which recognizes specific data types and commands received wirelessly. Using the OTA method, the ICS provider can send settings changes directly to mobile devices without any interaction from the inmate, such as updating a WiFi SSID or password, installing, updating, or deleting applications, or initiating other operating system updates.

[0061]     In an embodiment, the other way ICS providers changes settings is by physical access to the device, wherein a terminal such as a laptop can be linked directly to the mobile device using the USB port such as 310 in FIG. 3. Though settings icons and GUIs are removed as part of the OS security barrier 230, the terminal implements software that allows access to the underlying operating system software on the mobile device to make changes as necessary. As with OTA updates described above, the operator of the terminal makes changes to the mobile device settings, install or otherwise update applications on the device, or initiate operating system updates.

[0062]     The mobile device 400 may also be fitted with a radio frequency identification (RFID) tags. RFID tags typically work in concert with an RFID reader, which sends an interrogating signal that prompts an RFID tag to send identifying information back to the reader. In an embodiment, RFID tags tied to the mobile device may emit an identification (ID) signal to an interrogating RFID reader. RFID tags typically are associated with an electronic product code (EPC) that contains a protocol, organization, and serial number component that is unique for each RFID tag. RFID tags may be either active or passive, meaning that they possess or lack a power source, respectively. Active RFID tags are

- 19 -

capable of more complex security mechanisms to protect the communications between RFID tag and reader.

[0063]    RFID readers may be placed throughout the correctional facility in a way that allows each reader to cover all tags within a highly defined area. For example, one or more RFID readers can be placed in a particular location of a facility, such as a cafeteria, a cell block, or a courtyard, and can send interrogating signals to all mobile devices equipped with RFID tags. The RFID tags then respond with the identifying information signified in their EPC, where this code can be checked against the known codes that have been utilized by the correctional facility to track their mobile devices. There are numerous ways in which RFID tags affixed to mobile devices and RFID readers can be used to add additional security to the mobile devices.

[0064]    In an embodiment, an RFID tag with its associated EPC is paired with a particular device having an associated MAC address. If no RFID reader detects the reader, a signal can be sent to correctional facility administrators that a particular mobile device appears to not be within the facility grounds, and corrective steps can be taken to locate the device, question the inmate that the device has been issued to, and so on. In another embodiment, a mobile device's RFID tag may communicate with an RFID reader in an area of the facility that either the mobile device or the inmate issued the mobile device has not been permitted to occupy. In such cases, correctional facility administrators may be informed so that corrective actions can be triggered, such as searching the area of the facility in which the device was detected, questioning the inmate in possession of the device, and so on.

[0065]    Other security layer may also utilize the information obtained by RFID readers to activate security protocols against the mobile device. In one embodiment, the wireless security layer 240 may be utilized to attack the mobile device using the mobile device's associated MAC address, as is detailed FIG. 5. In another embodiment, a firewall device implementing the access control barrier 250 may be informed of the mobile device's location violation, and disregard all traffic transmitted to and received from that device, as detailed further below with respect to FIG. 7.

[0066]    A key security issue with RFID tags is that they are can be easily cloned if proper security steps are not taken. Because a basic EPC may amount to nothing more than a permanently fixed bit string, care must be taken by correctional facility administrators to

- 20 -

prevent nefarious parties from mimicking the signal of a particular RFID tag. This can be accomplished through various forms of encryption that allow RFID readers and RFID tags to communicate securely.

[0067]     FIG. 5 illustrates a wireless access point 500. Access point 500 may be an exemplary embodiment of the access points 104-106 depicted in FIG. 1. The wireless access point 500 demonstrates an exemplary embodiment of the wireless security barrier 240 as seen in FIG. 2. The wireless access point is made up of a wireless communication interface 510 and antennae 512 coupled to the communication interface, processing circuitry 520 comprised of processor 522 and memory 524, network interface 530, and wireless intrusion prevention sensor 540 and antennae 542 coupled to the wireless intrusion prevention sensor. The wireless intrusion prevention sensor 540 and antennae 542 allow the wireless access point to carry out the functions of the wireless security barrier 240, while the other components serve to allow the access point 500 to serve data to and from the mobile devices, such as 101-103 in FIG. 1.

[0068]     As discussed above, the wireless access point 500 serves data wirelessly to the mobile devices 101-103. This device will typically operate under a version of the IEEE 802.11 "WiFi" protocol that allows a bi-directional link between the access point 500 and multiple mobile devices. The wireless communication interface 510 and accompanying antennae 512 allow access point 500 to communicate wirelessly with the mobile device. The processing circuitry 520, with component processor 522 and memory 524, are programmed to allow the access point to execute instructions in accordance with the WiFi protocol. The processing circuitry also carries and executes operations in accordance with the wireless intrusion prevention sensor 540 to form the wireless security barrier 240, as will be discussed in further detail below. Finally, the network interface 530 is the wireline interface that connects the access point 500 with a wider outside network, such as a LAN, WAN, or the internet. This connection serves as the backbone connection to the data networks and VoIP networks which serve data to and from the mobile devices 101-103. Typically, this interface will operate in accordance with the IEEE 802.3 "Ethernet" protocol.

[0069]     In an embodiment, the wireless intrusion prevention sensor (WIPS) 540 and antennae 542 enable the wireless access point 500 to implement wireless security barrier 240. In scenarios where the inmate has managed to bypass the application and OS

- 21 -

security barriers 220 and 230 as depicted in FIG. 2 and discussed in greater detail relative to FIG. 4, an inmate gains access to the mobile device WiFi settings and engage in any number of unsanctioned behaviors. WIPS 540 and antennae 542 are designed to detect transmissions indicative of these unsanctioned behaviors and transmit signals to block the unsanctioned behavior from being engaged successfully by the inmate.

[0070]     The two key situations are depicted in FIGs. 6A-6B. Both figures depict a scenario within a correctional facility in which the application and OS security barriers have been bypassed by the inmate in some fashion. Specifically, in FIG. 6A, mobile device 604 has bypassed the application and OS security barriers 220 and 230 to gain access to the WiFi settings in mobile device 604, and has connected to an unsanctioned wireless access point 610 outside of the correctional facility 110A. In such a case, the wireless access point 618 within the correctional facility 110A equipped with a WIPS system would detect the activity and attack mobile device 604 to prevent it from engaging successfully in the unsanctioned activity. The WIPS system also attacks the outside wireless access point device 610 if that device is determined to be an unsanctioned wireless access point that is established near the correctional facility.

[0071]     In FIG. 6B, a different scenario occurs in which an inmate in possession of mobile device 612, having bypassed the application and OS security barriers 220 and 230, gains access to the WiFi settings of the mobile device and begins behaving like a WiFi hot spot. Mobile device 612 forms wireless connections with another mobile device 614 to connect with and begin serving data to. This allows mobile devices 614 to engage in unsanctioned activity as well. In such a case, the wireless access point 628 within the correctional facility 110A equipped with a WIPS system would detect the activity and attack mobile device 604 to prevent it from engaging successfully in the unsanctioned activity.

[0072]     Returning to FIG. 5, in an exemplary embodiment, the wireless access point 500 stores in memory 524 a MAC address white list which contains the MAC addresses for all of the mobile devices issued by the prison which are authorized to access the correctional facility network. In an embodiment, the device also stores a MAC address black list of devices which are explicitly prohibited from accessing the network. The wireless access point 500 also stores a list of known wireless access point service set identifiers (SSIDs) that the ICS provider, correctional facility, or other authority recognizes as a valid network near the correctional facility. This list contains SSIDs of

- 22 -

neighboring wireless access points, such as those that are deployed in nearby office buildings, businesses, etc. that are near the correctional facility.

[0073]    WIPS 540 is capable of detecting when unsanctioned activity related to the initiation of WiFi connections occurs. In embodiments, a typical wireless access point is associated with a SSID and a wireless media access control (MAC) address. Any mobile device connecting to a wireless access point will also have a MAC address. When a mobile device attempts to connect to a wireless access point, the wireless access point advertise its SSID (and in some embodiments its MAC address) while the mobile device also exposes its MAC address. The WIPS 540 and accompanying antennae also receives the MAC address and SSID information and make a decision to perform an intervention if any of this information indicates illicit behavior on the part of an inmate within the correctional facility.

[0074]    If the WIPS 540 detects such unsanctioned behavior, it can use the information of the SSID, access point MAC address, or mobile device MAC address to attack the device engaged in the unsanctioned activity to prevent that activity from being successful. The WIPS 540 attack is through a deauthentication denial of service attack. In this attack, the WIPS 540 and antennae 542 repeatedly sends deauthentication frames to the device engaged in the unsanctioned activity. By "flooding" the target device with these frames, the WIPS can essentially render the target device inoperable due to the target device's attempt to process these frames. The examples of FIGs. 6A and 6B are exemplary embodiments of situations in which a mobile device bypasses the application and OS security barriers and gain access to the WiFi device. In embodiments, when such activity is detected, the WiFi device also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity.

[0075]    In FIG. 6A, mobile device 604, having been compromised by the inmate that possesses it, disconnects from a sanctioned wireless access point, such as 616 and 618 within the correctional facility 110a, and attempts to connect with a wireless access point 610 outside the correctional facility. The wireless access points 616 and 618, having been provisioned by the ICS provider, are equipped with WIPS systems as embodied by WIPS 540 in access point device 500. When the mobile device 604 and wireless access point 610 exchange messages during common WiFi authentication procedure, the WIPS sensors on one or both of the wireless access point 616 and 618 detect the MAC address

- 23 -

of the mobile device 604 and recognizes the device as a mobile device issued by the correctional facility 110a, and detects that it is attempting to authenticate with a wireless access point 610 that is not provisioned within the correctional facility 110a. Note that wireless access point 610 is on the whitelist of recognized outside wireless access points. In such cases, this wireless access point 610 would be ignored by the WIPS system of any of the wireless access points within correctional facility 110a so long as they were not engaged in any activity with a mobile device issued by the correctional facility.

[0076]     At this point, the wireless access point 618 determines that the behavior is unsanctioned, and attacks the mobile device 604 using a deauthentication attack as described above. If the wireless access point 610 is not found on the whitelist of acceptable outside wireless access points based on its SSID or MAC address, the wireless access point 618 also attacks the wireless access point device 610 using a similar deauthentication attack. It should be noted that in some embodiments, the wireless access point 610 could also be a wireless access point that an inmate has snuck into the correctional facility. The WIPS system would not distinguish between these situations, and would attack this wireless access point as long as it was not on the access point whitelist as described above.

[0077]     In FIG. 6B, mobile device 612 disconnects from a sanctioned wireless access point such as access point 628 or 630 within correctional facility 110B. In this embodiment, mobile device 612 begins functioning as a wireless hot spot, wherein the device 612 essentially behaves like a typical wireless access point using the IEEE 802.11 protocol and form WiFi wireless connections with other devices. Another mobile device 614 within the facility then forms a wireless WiFi connection with 612. In such a case, the WIPS system of the wireless access point 628 would detect the device 612 either through its SSID or MAC address and use a deauthentication attack as described above against the mobile device 612. Additionally, it may attack mobile device 614 because it detects that this device is issued by the correctional facility and is attempting to access a wireless access point (in this case mobile device 612 behaving as a WiFi hot spot) that is not recognized by the facility.

[0078]     FIG. 7 depicts the firewall 700 that implements the access control security barrier. Firewall 700 may be considered an exemplary embodiment of the access control security barrier 250 as depicted in FIG. 2. FIG. 7 depicts the firewall 700 in relation to a

- 24 -

correctional facility 110C. In embodiments, the firewall 700 may be implemented on existing router hardware in network 730 or in dedicated hardware that can implement "fully qualified domain name" (FQDN) filtering. This distinction will be fully discussed below. In an embodiment, the correctional facility 110C contains several mobile devices 701-703 issued by the correctional facility, along with wireless access points 704-706 that are placed throughout the correctional facility by the ICS provider. These wireless access points 704-706 may be implementations of wireless access point 500 that include a wireless intrusion prevention sensor 540 and antennae 542 as depicted in FIG. 5. The wireless access points 704-706 serve to connect mobile devices 701-703 with applications and services requiring network connectivity that are sanctioned by the correctional facility.

[0079]    In an embodiment, the wireless access points have wireline connections to the firewall 700, which then connects to the network 730. Network 730 may be an embodiment of network 130 as depicted in FIG. 1. The wireless access points, as discussed relative to FIG. 5, are connected to other routing and switching devices, including a firewall 700, via high bandwidth wireline connections operating on existing protocols such as IEEE 802.3 Ethernet protocol. The firewall 700 implements an access control list 710 that contains lists of allowable internet protocol (IP) addresses that are allowed to communicate with the mobile devices. Network 730, as described previously, consists of routers and switches running well-known protocols such as IEEE 802.3 "Ethernet" protocol. The network may be owned and provisioned by the correctional facility 110C, the ICS provider, or may be part of a public network such as the internet. The network 730 then connects to a call processing center controlled by the ICS provider, as depicted in FIG. 1 (150).

[0080]    Thus, in the architecture shown in FIG. 7 (and FIG. 1), any data traffic that is sent or received by the mobile devices 701-703 is routed through the firewall 700. The access control list 710 lists the allowable IP addresses and/or web domains that are allowed to exchange data with the mobile devices issued by the correctional facility. Since all data traffic to or from the mobile devices passes through the firewall 700, the firewall device engages in packet inspection operations that can determine the IP addresses and/or the web domains of each individual packet. If the firewall device detects packets that are not addressed to or from the list of IP addresses or web domains contained on the access

- 25 -

control list 710, the firewall device can simply discard the packets without allowing them to travel to their intended destination. In embodiments, when such activity is detected, the firewall may also send a notification to the call processing center such that ICS or correctional facility personnel may be notified  of such activity. This alert may contain identifier information of the mobile device engaging in the activity such as the MAC address, the SSID or other identifier information of an unsanctioned WiFi hotspot, or otherwise.

[0081]    Thus, the firewall 700 and its access control list 710 form the final security barrier between the mobile devices 701-703 and the outside world. In situations in which the inmate in possession of the mobile device has managed to bypass the application and OS security barriers by gaining access to an unsanctioned application or function which allows them to attempt to communicate with an unsanctioned website or IP address, any traffic routed through the ICS provider system will be routed necessarily through the firewall 700. This may happen if an application is installed on the mobile device which has a web browser function, or if an existing application is hacked. Thus, firewall 700, detecting traffic directed to or from unsanctioned addresses, discards any such traffic before it reaches the inmate or the unsanctioned address. It should be noted, however, that in embodiments the access control barrier embodied by firewall 700 does not serve as a security barrier for certain types of unsanctioned activity. For example, if a mobile device manages to connect to an outside wireless access point, as depicted in FIG. 6A, the traffic between the mobile device and outside wireless access point is not subject to the packet inspection and filtering operations of the firewall 700.

[0082]    For clarity, the firewall 700 is depicted as a separate device, but depending on the scope of the access control list 710, may in fact be implemented on existing router hardware in the network 730. For example, if the access control list is made up entirely of Internet Protocol version 4 (IPv4) addresses, which are made up of four 3-digit numbers separated by periods such as "195.168.0.0" seen in FIG. 7, then the access control list 710 may be implemented directly on the routers of network 730, and as such would not require a fully separate firewall 700. However, if a correctional facility sanctions access to website domains for a particular service, such as a law-related website called "www.legalaide.com" as seen in FIG. 7, the access control list requires a fully qualified domain name (FQDN) firewall which is implemented on dedicated hardware. In such

- 26 -

cases, the firewall 700 would indeed be a separate entity from the routers and switches comprising the network 730. Simply put, for the firewall 700 to satisfy the requirements of access control barrier 250 is that all data traffic to or from the mobile devices must be passed through devices that can implement the packet inspection and discarding operations described above. Even in cases where correctional facilities only require an access control list 700 comprised of only IPv4 addresses, a separate firewall 700 may be desired due to the significantly more flexible and customizable nature of the hardware in implementing an access control list.

[0083]    FIG. 8A-C illustrate the security barriers that an inmate may need to bypass in order to engage in three different types of unsanctioned behavior. As is demonstrated, not all security barriers are operative depending on the type of unsanctioned behavior the inmate wishes to engage in, but the multiple security barriers interact together to provide a robust security suite in all scenarios. It should be noted that these figures are meant to be illustrative, and in no way represent the entirety of unsanctioned behaviors or security breaches that an inmate may wish to engage. In the embodiment depicted in FIG. 8A, the inmate 209 desires to charge a contraband device using the power source of the mobile device. In order to gain access to the battery of the mobile device and allow for a reverse current to travel from the battery to the contraband device, the inmate would have to bypass the hardware barrier 210 by either opening the mobile device case (350 and 370) to gain access to USB connector port (310) or manipulating the barrel connector diode (such as 309A as depicted in FIG. 3A) to allow a reverse electrical current. The inmate then must bypass both the application and OS security barriers 220 and 230 to change the settings of the USB connector port 310 to allow a reverse electrical current to travel from the mobile device to the contraband device. If inmate 209 managed to bypass these three barriers, the inmate is able to charge the contraband device. Notice that, because the goal of the security breach is to charge a contraband device, the wireless security barrier 240 and access control list barrier 250 do not pose any hindrance to the inmate 209.

[0084]    In the embodiment depicted in FIG. 8B, the inmate 209 wishes to access an unsanctioned social network website. In order to engage in this behavior, in embodiments the inmate 209 has to bypass the hardware security barrier to connect a peripheral device to the mobile device. The inmate 209 has to also bypass the application security barrier in order to either install an application not yet installed on the mobile device or change an

- 27 -

existing application on the mobile device to allow the inmate to use a web browser. The inmate may also need to bypass the operating system security barrier 230 in order to install applications on the mobile device. Finally, if the inmate manages to break all barriers of security localized on the mobile device, the access control list barrier 250 still needs to be bypassed in order to send between the mobile device and the unsanctioned destination. Notice, however, that the wireless security barrier 240 is not present in the security barrier stack. This is because typically the wireless access point that implements the wireless security barrier 240 does not necessarily have the functionality to perform packet inspection. As such, this barrier may pose no hindrance to the inmate 209 in this particular scenario. However, in other embodiments, more advanced wireless access points may be capable of packet inspection and packet discarding.

[0085]    Finally, in FIG. 8C, the inmate 209 may wish to disconnect the mobile device from its sanctioned wireless access point within the correctional facility and connect to an outside wireless access point. This scenario is also described with reference to FIG. 6A. In this scenario, the inmate 209 may need to bypass the hardware security in order to connect a peripheral device to the mobile device via the USB connector port such as port 310 in FIG. 3A, then bypass both the application and OS security barriers 220 and 230 to gain access to the wireless settings of the mobile device. Once those barriers are bypassed, meaning that the inmate 209 has managed to change the mobile device wireless settings in order to attempt to connect to an unsanctioned wireless access point, the wireless security barrier 240 implemented on a sanctioned wireless access point detects this breach and attack the mobile device and potentially the outside wireless access point with a deauthentication attack as described above with reference to FIG. 5, FIG. 6A, and FIG. 6B above. Notice that in this case the access control barrier 250 is not a hindrance to inmate 209 because the firewall that implements the access control list of barrier 250 does not filter the traffic of a wireless access point outside of the correctional facility.

[0086]    In all three cases, different barriers of the security suite 200 due to the nature of the unsanctioned activity attempted by the inmate 209. This demonstrates the need for and interplay between the security barriers 210-250 – not all barriers are capable of providing security against all types of security bypass attempts, but several barriers hinder any single security bypass attempt.

- 28 -

[0087]     FIG. 9 depicts a computer system 900 which can be used to implement It will be apparent to persons skilled in the relevant art(s) that various elements and features of the present disclosure, as described herein, can be implemented in hardware using analog and/or digital circuits, in software, through the execution of computer instructions by one or more general purpose or special-purpose processors, or as a combination of hardware and software.

[0088]     The following description of a general purpose computer system is provided for the sake of completeness. Embodiments of the present disclosure can be implemented in hardware, or as a combination of software and hardware. Consequently, embodiments of the disclosure may be implemented in the environment of a computer system or other processing system. For example, the method of FIGS. 5-6 can be implemented in the environment of one or more computer systems or other processing systems. An example of such a computer system 900 is shown in FIG. 9. One or more of the modules depicted in the previous figures can be at least partially implemented on one or more distinct computer systems 900.

[0089]     Computer system 900 includes one or more processors, such as processor 904. Processor 904 can be a special purpose or a general purpose digital signal processor. Processor 904 is connected to a communication infrastructure 902 (for example, a bus or network). Various software implementations are described in terms of this exemplary computer system. After reading this description, it will become apparent to a person skilled in the relevant art(s) how to implement the disclosure using other computer systems and/or computer architectures.

[0090]     Computer system 900 also includes a main memory 906, preferably random access memory (RAM), and may also include a secondary memory 908. Secondary memory 908 may include, for example, a hard disk drive 910 and/or a removable storage drive 912, representing a floppy disk drive, a magnetic tape drive, an optical disk drive, or the like. Removable storage drive 912 reads from and/or writes to a removable storage unit 916 in a well-known manner. Removable storage unit 916 represents a floppy disk, magnetic tape, optical disk, or the like, which is read by and written to by removable storage drive 912. As will be appreciated by persons skilled in the relevant art(s), removable storage unit 916 includes a computer usable storage medium having stored therein computer software and/or data.

- 29 -

[0091]        In alternative implementations, secondary memory 908 may include other similar means for allowing computer programs or other instructions to be loaded into computer system 900. Such means may include, for example, a removable storage unit 918 and an interface 914. Examples of such means may include a program cartridge and cartridge interface (such as that found in video game devices), a removable memory chip (such as an EPROM, or PROM) and associated socket, a thumb drive and USB port, and other removable storage units 918 and interfaces 914 which allow software and data to be transferred from removable storage unit 918 to computer system 900.

[0092]        Computer system 900 may also include a communications interface 920. Communications interface 920 allows software and data to be transferred between computer system 900 and external devices. Examples of communications interface 920 may include a modem, a network interface (such as an Ethernet card), a communications port, a PCMCIA slot and card, etc. Software and data transferred via communications interface 920 are in the form of signals which may be electronic, electromagnetic, optical, or other signals capable of being received by communications interface 920. These signals are provided to communications interface 920 via a communications path 922. Communications path 922 carries signals and may be implemented using wire or cable, fiber optics, a phone line, a cellular phone link, an RF link and other communications channels.

[0093]        As used herein, the terms "computer program medium" and "computer readable medium" are used to generally refer to tangible storage media such as removable storage units 916 and 918 or a hard disk installed in hard disk drive 910. These computer program products are means for providing software to computer system 900.

[0094]        Computer programs (also called computer control logic) are stored in main memory 906 and/or secondary memory 908. Computer programs may also be received via communications interface 920. Such computer programs, when executed, enable the computer system 900 to implement the present disclosure as discussed herein. In particular, the computer programs, when executed, enable processor 904 to implement the processes of the present disclosure, such as any of the methods described herein. Accordingly, such computer programs represent controllers of the computer system 900. Where the disclosure is implemented using software, the software may be stored in a

- 30 -

computer program product and loaded into computer system 900 using removable storage drive 912, interface 914, or communications interface 920.

[0095]     In another embodiment, features of the disclosure are implemented primarily in hardware using, for example, hardware components such as application-specific integrated circuits (ASICs) and gate arrays. Implementation of a hardware state machine so as to perform the functions described herein will also be apparent to persons skilled in the relevant art(s).

[0096]     It is to be appreciated that the Detailed Description section, and not the Abstract section, is intended to be used to interpret the claims. The Abstract section may set forth one or more, but not all exemplary embodiments, and thus, is not intended to limit the disclosure and the appended claims in any way.

[0097]     The disclosure has been described above with the aid of functional building blocks illustrating the implementation of specified functions and relationships thereof. The boundaries of these functional building blocks have been arbitrarily defined herein for the convenience of the description. Alternate boundaries may be defined so long as the specified functions and relationships thereof are appropriately performed.

[0098]     It will be apparent to those skilled in the relevant art(s) that various changes in form and detail can be made therein without departing from the spirit and scope of the disclosure. Thus, the disclosure should not be limited by any of the above-described exemplary embodiments, but should be defined only in accordance with the following claims and their equivalents.

- 31 -

WHAT IS CLAIMED IS:

1.      A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

detect a first attempt to perform an unsanctioned function of an application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the first attempt; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

detect a second attempt to access device settings of the mobile device; and

prevent the processor of the mobile device from executing operations related to the second attempt;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

2.      The system of claim 1, wherein the front plate and the back plate of the hardware barrier are configured to form a seal around the device that allows physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

3.      The system of claim 2, further comprising a diode connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

4.      The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

Atty. Dkt. No. 3210.1280001

5.      The system of claim 1, wherein the application barrier is further configured to:

        detect an attempt to install a second application on the mobile device; and

        send a command to the processor of the mobile device to cancel the attempt.

6.      The system of claim 1, wherein the application barrier is further configured to:

        detect an over-the-air command received by the mobile device over a wireless link;

        determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

        in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

7.      The system of claim 1, wherein the second attempt is initiated by the application.

8.      The system of claim 1, wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

9.      A mobile device, comprising:

        a memory that stores a first set of operations of an application barrier and a second set of operations of an operating system (OS) barrier; and

        a processor configured to:

            execute the first set of operations of the application barrier, the first set of operations comprising:

                detecting a first attempt by a user of the mobile device to perform an unsanctioned function of an application stored on the memory; and

                preventing the processor from executing operations related to the first attempt; and

            execute the second set of operations of the OS barrier, the second set of operations comprising:

- 33 -

        detecting a second attempt to access device settings of the mobile device; and

        preventing the processor from executing operations related to the second attempt;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility; and

wherein the device settings include a wireless access point setting.


10.     The mobile device of claim 9, wherein a hardware barrier that includes a front plate and a back plate fastened together by tamper-resistant screws is configured to form a seal around the device that allows direct physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.


11.     The mobile device of claim 10, wherein a diode is connected to  the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.


12.     The mobile device of claim 9, wherein first set of operations further comprises:

        detecting an attempt to delete the application on the mobile device; and

        sending a command to the processor to cancel the attempt.


13.     The mobile device of claim 9, wherein first set of operations further comprises:

        detecting an attempt to install a second application on the mobile device; and

        sending a command to the processor of the mobile device to cancel the installation attempt.


14.     The mobile device of claim 9, wherein the first set of operations further comprises:

        detecting an over-the-air command received by the mobile device over a wireless link;

        determining that the over-the-air command is from a sanctioned source; and

        in response to determining that the command is from the sanctioned source, allowing the command to be executed by the processor.

- 34 -

15.    The mobile device of claim 9, wherein the second attempt is initiated by the application.

16.    The mobile device of claim 9, wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

17.    A system of layered security barriers designed to prevent unsanctioned use of a mobile device in a controlled environment facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form a seal around the mobile device that allows limited physical contact with the mobile device;

an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device;

an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change of device settings of the mobile device; and

an access control barrier implemented on a firewall device between a wireless access point serving the controlled-environment facility and a network, the access control barrier configured to perform filtering of a plurality of packets directed to or transmitted by the mobile device.

18.    The system of claim 17, the system further comprising a wireless intrusion barrier implemented on the wireless access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access point device;

obtain a wireless access point identifier associated with the second wireless access point device;

determine that the second wireless access point identifier is not among a plurality of wireless access point identifiers stored on the wireless access point device; and

in response to the determining, attack the mobile device using a deauthentication denial of service attack.

Atty. Dkt. No. 3210.1280001

- 35 -

19.     The system of claim 18, wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

20.     The system of claim 17, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

        detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

        preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

21.     The system of claim 17, wherein the operating system (OS) is configured to prevent the unsanctioned change of the device settings by:

        detecting an attempt by a user to access the device settings on the mobile device; and

        preventing the processor of the mobile device from executing operations related to the attempt,

        wherein the device settings include a wireless access point setting.

22.     The system of claim 17, wherein the access control barrier is configured to perform filtering of the plurality of packets by:

        receiving a packet transmitted by or directed to the mobile device;

        performing an inspection of a packet, the inspection including obtaining an address of the packet;

        determining that the address is not among a plurality of addresses stored on the firewall device; and

        in response to the determining, discarding the packet.

Atty. Dkt. No. 3210.1280001

- 36 -

## ABSTRACT

A layered security suite is disclosed wherein multiple security barriers that prevent the unsanctioned use of a mobile device issued by a controlled-environment facility. The security barriers are implemented along multiple points within the communication path between the mobile device with outside networks, including on the mobile device, on wireless access points that serve data traffic for the mobile device, and a firewall device that monitors all data coming to and from the wireless access points. The barriers on the mobile device prevent the user from performing unsanctioned application and settings changes, including both software and hardware components, while the barrier on the wireless access point detects and prevents unauthorized connections between mobile devices and unsanctioned wireless access points. The firewall device discards packets with unsanctioned internet addresses. The layers work in concert to prevent all manner of tampering with the mobile device by members of the controlled-environment facility.

15184020.1

Atty. Dkt. No. 3210.1280001



FIG. 1

200



FIG. 2

4905299_1 / 3



320

330

330A
330B
330C
330D

**FIG. 3A**



300

306A

306B

307A

305A

302

309A

310

312



FIG. 3B

4905299_1 / 4



**FIG. 4**



**FIG. 5**

4905299_1 / 6



**FIG. 6B**



**FIG. 6A**

4905299_1 / 7



4905299_1 / 8

**FIG. 7**



FIG. 8A

FIG. 8B

FIG. 8C

209

210 Hardware

220 Application

230 Operating system

240 Wireless Security

250 Access control

4905299_1 / 9

900



**FIG. 9**

PTO/AIA/15 (10-17)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | 3210.1280001 |
| First Named Inventor | Jason MARASS |
| Title | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| Priority Mail Express® Label No. | |

## APPLICATION ELEMENTS

*See MPEP chapter 600 concerning utility patent application contents.*

1. ☐ **Fee Transmittal Form** (PTO/SB/17 or equivalent)

2. ☐ **Applicant asserts small entity status.** See 37 CFR 1.27

3. ☐ **Applicant certifies micro entity status.** See 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent.

4. ☑ **Specification** [Total Pages 36] Both the claims and abstract must start on a new page. (See MPEP § 608.01(a) for information on the preferred arrangement)

5. ☑ **Drawing(s) (35 U.S.C. 113)** [Total Sheets 10]

6. **Inventor's Oath or Declaration** [Total Pages 4] *(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))*
   a. ☐ Newly executed (original or copy)
   b. ☑ A copy from a prior application (37 CFR 1.63(d))

7. ☑ **Application Data Sheet** * See note below. See 37 CFR 1.76 (PTO/AIA/14 or equivalent)

8. ☐ **CD-ROM or CD-R** in duplicate, large table, or Computer Program *(Appendix)*
   ☐ Landscape Table on CD

9. **Nucleotide and/or Amino Acid Sequence Submission** *(if applicable, items a. – c. are required)*
   a. ☐ Computer Readable Form (CRF)
   b. ☐ Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

### ADDRESS TO:

**Commissioner for Patents**
P.O. Box 1450
Alexandria, VA 22313-1450

## ACCOMPANYING APPLICATION PAPERS

10. ☐ **Assignment Papers** *(cover sheet & document(s))* Name of Assignee Global Tel*Link Corporation

11. ☐ **37 CFR 3.73(c) Statement** *(when there is an assignee)*   ☑ **Power of Attorney**

12. ☐ **English Translation Document** *(if applicable)*

13. ☑ **Information Disclosure Statement** (PTO/SB/08 or PTO-1449)
   ☐ Copies of citations attached

14. ☐ **Preliminary Amendment**

15. ☐ **Return Receipt Postcard** *(MPEP § 503) (Should be specifically itemized)*

16. ☐ **Certified Copy of Priority Document(s)** *(if foreign priority is claimed)*

17. ☐ **Nonpublication Request** Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.

18. ☑ **Other:** Authorization under 37 CFR 1.136(a)(3)

***Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

## 19. CORRESPONDENCE ADDRESS

☑ The address associated with Customer Number: 26111     OR   ☐ Correspondence address below

| Name | |
|---|---|
| Address | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Email | |

| | | | |
|---|---|---|---|
| Signature | /Lauren C. Schleh/ | Date | July 9, 2020 |
| Name (Print/Type) | Lauren C. Schleh | Registration No. (Attorney/Agent) | 65,457 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.



Lauren C. Schleh
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM


July 9, 2020


Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

> Re:    U.S. Non-Provisional Patent Application under 37 C.F.R. § 1.53(b)
> (*Continuation of Appl. No. 15/435,993; Filed: February 17, 2017*)
> Appl. No. To Be Assigned; Filed: Herewith
> For:    **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
> Inventors:    MARASS *et al.*
> Our Ref:    3210.1280001

Commissioner:

The following documents are transmitted herewith for appropriate action by the U.S. Patent and Trademark Office:

1.    Utility Patent Application Transmittal Form (PTO/AIA/15);

2.    Authorization to Treat a Reply As Incorporating An Extension of Time Under 37 C.F.R. § 1.136(a)(3);

3.    U.S. Utility Patent Application entitled:

**SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

and naming as inventor:

**Jason MARASS, Brian PETERS, Garth JOHNSON** and **Stephen Lee HODGE**

the application consisting of:

a.    An Application Data Sheet (37 C.F.R. § 1.76);

b.    Signed Inventor's Declaration, as originally filed in prior Appl. No. 15/435,993;

c.    A specification containing:

i.    **30** pages of description prior to the claims;

Commissioner for Patents
July 9, 2020
Page 2

      ii.     **5** pages of claims (22 claims);

      iii.    a one (**1**) page abstract; and

   d.    **10** sheets of drawings: (Figure(s) **1-2, 3A-3B, 4-5, 6A-6B, 7, 8A-8C,** and **9**); and

4.    Information Disclosure Statement;

5.    Form PTO/SB/08a (7 sheets) listing 131 documents (**US1-US131**);

6.    Form PTO/SB/08b (2 sheets) listing 13 documents (**NPL1-NPL13**); and

6.    A Transmittal for Power of Attorney form (PTO/AIA/82A) and an executed Power of Attorney by Applicant (PTO/AIA/82B).

The above-listed documents are filed electronically.

Correspondence should be sent to Customer Number 26111.

This patent application is being submitted under 37 C.F.R. § 1.53(b) without the required fees.

            Respectfully submitted,

            STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

            /Lauren C. Schleh/

            Lauren C. Schleh
            Attorney for Applicant
            Registration No. 65,457

LCS/crb
Enclosure(s)

15184263.1

**EXHIBIT 37**

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 07/21/2020 | 10721624 | 3210.1280000 | 1254 |

26111          7590          06/30/2020
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Jason MARASS, Fairhope, AL;
GLOBAL TEL*LINK CORPORATION, Reston, VA;
Brian PETERS, St. Paul, MN;
Garth JOHNSON, Indianapolis, IN;
Stephen Lee HODGE, Dallas, TX;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

26111        7590        06/17/2020
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/17/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

PTOL-90A (Rev. 04/07)

| *Response to Rule 312 Communication* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 15/435,993 | MARASS et al. | |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | BARRY W TAYLOR | 2646 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☑ The amendment filed on <u>09 June 2020</u> under 37 CFR 1.312 has been considered, and has been:

   a) ☐   entered.

   b) ☑   entered as directed to matters of form not affecting the scope of the invention.

   c) ☐   disapproved because the amendment was filed after the payment of the issue fee.

                Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1)
                and the required fee to withdraw the application from issue.

   d) ☐   disapproved. See explanation below.

   e) ☐   entered in part. See explanation below.

_____

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

PTOL-271 (Rev. 04-01)          **Reponse to Rule 312 Communication**          Part of Paper No. 20200611

OK TO ENTER: /B.W.T/

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment Under 37 C.F.R. § 1.312

*Mail Stop Issue Fee*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

    Submitted herein is an Amendment Under 37 C.F.R. § 1.312. As payment of the issue fee

has not yet been made or is filed herewith, Applicant respectfully submits that filing under 37

C.F.R. § 1.312 is proper. (M.P.E.P. § 714.16.)

    **Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of

this paper.

    **Remarks and Arguments** begin on page 11 of this paper.

    It is not believed that extensions of time are required beyond those that may otherwise be

provided for in documents accompanying this paper. However, if additional extensions of time are

necessary to prevent abandonment of this application, then such extensions of time are hereby

petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or

appeal of this application (including issue fee, fees for net addition of claims or forwarding to

appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment Under 37 C.F.R. § 1.312

*Mail Stop Issue Fee*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Submitted herein is an Amendment Under 37 C.F.R. § 1.312. As payment of the issue fee has not yet been made or is filed herewith, Applicant respectfully submits that filing under 37 C.F.R. § 1.312 is proper. (M.P.E.P. § 714.16.)

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks and Arguments** begin on page 11 of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15435993 |
| **Filing Date:** | 17-Feb-2017 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Attorney Docket Number:** | 3210.1280000 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 1501 | 1 | 1000 | 1000 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| | | | **Total in USD ($)** | **1000** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 39669009 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 09-JUN-2020 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 15:22:43 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $1000 |
| RAM confirmation Number | E202069F23023715 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2020-06-09-Miscellaneous-Letter-3210-1280000.pdf | 277485 <br> bf1bb7c00eb31fbf5fc87e613a87ac6fbdb054a3 | no | 1 |

**Warnings:**

**Information:**

| 2 | Issue Fee Payment (PTO-85B) | 2020-06-09-Issue-Fee-3210-1280000.PDF | 106469 <br> e373cdc56258eb12261c8b6f7e211ef31a7f4949 | no | 1 |

**Warnings:**

**Information:**

| 3 | Post Allowance Communication - Incoming | 2020-06-09-Comments-Reasons-Allowance-3210-1280000.pdf | 117214 <br> bd62e5abb100b2f3b67293bd7f1400c23cfdeacc | no | 1 |

**Warnings:**

**Information:**

| 4 | | 2020-06-09-Amendment-312-3210-1280000.pdf | 140610 <br> bffa9b91e3bec623b72fa1649e5d14e050641e74 | yes | 11 |

| | **Multipart Description/PDF files in .zip description** | | | | |
|---|---|---|---|---|---|
| | **Document Description** | | **Start** | | **End** |
| | Applicant Arguments/Remarks Made in an Amendment | | 11 | | 11 |
| | Claims | | 2 | | 10 |
| | Amendment after Notice of Allowance (Rule 312) | | 1 | | 1 |

**Warnings:**

**Information:**

| 5 | Fee Worksheet (SB06) | fee-info.pdf | 30356 <br> 0513fd77725bc834afc90fddc68f88a9218aa342 | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 672134 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**



**LAUREN C. SCHLEH**
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

June 9, 2020

Commissioner for Patents
PO Box 1450
Alexandria, VA  22313-1450

*__Confirmation No. 1254__*
*__Mail Stop Issue Fee__*

Re:   Allowed U.S. Utility Patent Application
      Appl. No. 15/435,993; Filing Date: February 17, 2017
      For:  **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
      Inventors: MARASS *et al.*
      Our Ref:  3210.1280000

Commissioner:

In response to the **Notice of Allowance and Fee(s) Due** dated March 11, 2020, the following documents are transmitted for appropriate action by the U.S. Patent and Trademark Office:

1.   Issue Fee Transmittal (Form PTOL-85);
2.   Online Credit Card Payment Authorization for **$1,000.00** to cover: $1,000.00 - Issue Fee;
3.   Comments on Statement of Reasons for Allowance; and
4.   Amendment under 37 C.F.R. §1.312.

The above-listed documents are filed electronically.

Fee payment is provided through online credit card payment.  The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

LCS/crb
Enclosure(s)

15112061.1

## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26111          7590          03/11/2020
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 06/11/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TAYLOR, BARRY W | 2646 | 455-411000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Sterne, Kessler, Goldstein & Fox P.L.L.C.

2  _____

3  _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Global Tel*Link Corporation

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Reston, VA

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☒ Issue Fee ☐ Publication Fee (if required) ☐ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via EFS-Web ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. 19-0036

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature | /Lauren C. Schleh/ | Date | June 9, 2020 |
|---|---|---|---|
| Typed or printed name | Lauren C. Schleh | Registration No. | 65,457 |

PTOL-85 Part B (08-18) Approved for use through 01/31/2020    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventor: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: Global Tel*Link Corporation | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Comments on Statement of Reasons for Allowance

Commissioner for Patents                                        *Mail Stop: Issue Fee*
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

        Applicant thanks the Examiner for indicating the allowability of claims 1-22 in the Notice of

Allowance dated March 11, 2020.

### *Comments on Statement of Reasons for Allowance*

        Applicant notes the Examiner's Statement of Reasons for Allowance presented on page 2 of

the Notice of Allowance. Applicant reserves the right to demonstrate claims 1-22 are allowable over

the art made of record for further reasons related to any of their recited features. Applicant further

contends that reservation of this right does not give rise to any implication regarding whether the

Applicant agrees with or acquiesces in the reasoning provided by the Examiner.

                                        Respectfully submitted,
                                        STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                                        /Lauren C. Schleh/

                                        Lauren C. Schleh
                                        Attorney for Applicant
                                        Registration No. 65,457

Date:    June 9, 2020
1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600                                                        15111983.1

- 11 -

MARASS *et al.*
Application No. 15/435,993

## *Remarks*

Reconsideration of this application is respectfully requested.

Upon entry of the foregoing amendment, claims 1-22 are pending in the application, with claims 1, 9, and 17 being the independent claims. Claims 1, 2, 4-6, 8-10, 12, 13, 16-19, and 21 are sought to be amended. The amendments correct minor informalities in the claims. Applicant reserves the right to prosecute similar or broader claims, with respect to the amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date: ___June 9, 2020___

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

15135026.1

Atty. Dkt. No. 3210.1280000

- 2 -                                                      MARASS *et al.*
                                                        Application No. 15/435,993

## Amendments to the Claims

This listing of claims will replace all prior versions, and listings, of claims in the application.


1.      (Currently Amended) A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate, the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application;

monitor user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity;

prevent installation or removal of an application;

detect an attempt to perform an unsanctioned function of the application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

- 3 -                                    MARASS *et al.*
                                        Application No. 15/435,993

detect an attempt to access device settings of the mobile device by a user of the mobile device; and

prevent, at a kernel of an operating system operating on the mobile device, the processor of the mobile device from executing operations that attempt to access or alter the device settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of a controlled environment facility; and

wherein the device settings of the mobile device include a wireless access point setting.

2.      (Currently Amended) The system of claim 1, wherein the front plate and the back plate of the hardware barrier are configured to form a seal around the mobile device that allows physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

3.      (Original) The system of claim 2, further comprising a diode connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

4.      (Currently Amended) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt to delete.

5.      (Currently Amended) The system of claim 1, wherein the application barrier is further

configured to:

        detect an attempt to install a second application on the mobile device; and

        send a command to the processor of the mobile device to cancel the attempt to

install.


6.      (Currently Amended) The system of claim 1, wherein the application barrier is further

configured to:

        detect an over-the-air command received by the mobile device over a wireless link;

        determine that the command meets a security requirement of a second application

sanctioned to change the device settings of the mobile device; and

        in response to determining that the command meets the security requirement, allow

the command to be executed by a processor of the mobile device.


7.      (Previously Presented) The system of claim 1, wherein the attempt to access or alter the device

settings of the mobile device is initiated by the application.


8.      (Currently Amended) The system of claim 1, wherein the device settings of the mobile device

further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting

determining whether or not the mobile device may receive data over a Bluetooth wireless link,

and the cellular radio setting determining whether or not the mobile device may receive data

over a cellular wireless link.

- 5 -                                                                    MARASS *et al.*
                                                                    Application No. 15/435,993

9.       (Currently Amended) A mobile device, comprising:

a memory that stores a first set of operations of an application barrier and a second

set of operations of an operating system (OS) barrier; and

a processor configured to:

execute the first set of operations of the application barrier, the first set of

operations comprising:

performing application modification in which non-secure functions of

an application stored in the memory of the mobile device are disabled, the non-

secure functions including social functions of the application;

monitoring user activity of a social application, the monitoring

including gathering social interactions of the social application and reviewing the social

interactions for illicit activity;

preventing installation or removal of an application;

detecting an attempt by a user of the mobile device to perform an

unsanctioned function of the application stored on the memory; and

preventing the processor from executing operations related to the first

attempt; and

execute the second set of operations of the OS barrier, the second set of

operations comprising:

detecting an attempt to access device settings of the mobile device by

the user of the mobile device; and

- 6 -                                                MARASS *et al.*
                                                     Application No. 15/435,993

preventing, at a kernel of an operating system operating on the mobile device, the processor from executing operations that attempt to access or alter the device settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of [[the]] a controlled environment facility; and

wherein the device settings of the mobile device include a wireless access point setting.

10.   (Currently Amended) The mobile device of claim 9, wherein a hardware barrier that includes a front plate and a back plate fastened together by tamper-resistant screws is configured to form a seal around the mobile device that allows direct physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

11.   (Original) The mobile device of claim 10, wherein a diode is connected to  the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

12.   (Currently Amended) The mobile device of claim 9, wherein the first set of operations further comprises:

detecting an attempt to delete the application on the mobile device; and

sending a command to the processor to cancel the attempt to delete.

- 7 -                                                    MARASS *et al.*
                                          Application No. 15/435,993

13.    (Currently Amended) The mobile device of claim 9, wherein <u>the</u> first set of operations further

comprises:

       detecting an attempt to install a second application on the mobile device; and

       sending a command to the processor of the mobile device to cancel the ~~installation~~

attempt <u>to install</u>.


14.    (Original) The mobile device of claim 9, wherein the first set of operations further comprises:

       detecting an over-the-air command received by the mobile device over a wireless

link;

       determining that the over-the-air command is from a sanctioned source; and

       in response to determining that the command is from the sanctioned source, allowing

the command to be executed by the processor.


15.    (Previously Presented) The mobile device of claim 9, wherein the attempt to access or alter the

device settings of the mobile device is initiated by the application.


16.    (Currently Amended) The mobile device of claim 9, wherein the device settings <u>of the mobile</u>

<u>device</u> further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio

setting determining whether or not the mobile device may receive data over a Bluetooth

wireless link, and the cellular radio setting determining whether or not the mobile device may

receive data over a cellular wireless link.

17.    (Currently Amended) A system of layered security barriers designed to prevent unsanctioned use of a mobile device in a controlled environment facility, comprising:

      a hardware barrier that includes a front plate and a back plate configured to form a seal around the mobile device that allows limited physical contact with the mobile device, the hardware barrier obstructing access to at least one port of the mobile device;

      an application barrier, stored on a memory of the mobile device, configured to:

          perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled;

          monitor user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity;

          prevent installation or removal of an application; and

          prevent an unsanctioned function from being performed on the mobile device;

      an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change or access of device settings of the mobile device by a user of the mobile device via a graphical user interface, and to prevent, at a kernel of an operating system operating on the mobile device, executing of instructions that attempt to access or alter the device settings of the mobile device; and

      an access control barrier implemented on a firewall device between a wireless access point device serving the ~~controlled-environment~~ controlled environment facility and a

- 9 -                                             MARASS *et al.*
                                          Application No. 15/435,993

network, the access control barrier configured to perform filtering of a plurality of packets

directed to or transmitted by the mobile device.

18.    (Currently Amended) The system of claim 17, ~~the system~~ further comprising a wireless

intrusion barrier implemented on the wireless access point device, the wireless intrusion barrier

configured to:

        detect an attempt by the mobile device to connect with a second wireless access

point device;

        obtain a wireless access point identifier associated with the second wireless access

point device;

        determine that the second wireless access point identifier is not among a plurality of

wireless access point identifiers stored on the wireless access point device; and

        in response to the determining, attack the mobile device using a deauthentication

denial of service attack.

19.    (Currently Amended) The system of claim 18, wherein the wireless intrusion barrier is further

configured to attack the second wireless access point <u>device</u> using another deauthentication

denial of service attack in response to the determining.

20.    (Original) The system of claim 17, wherein the application barrier is configured to prevent an

unsanctioned function from being performed by:

        detecting at least one of a first attempt by a user to delete an application from the

memory of the mobile device, a second attempt by the user to install a second application on

the mobile device, and a third attempt by the application to access content from a disallowed

source outside of the controlled environment facility; and

      preventing a processor of the mobile device from executing any operations related to

the first attempt, the second attempt, and the third attempt.


21.    (Currently Amended) The system of claim 17, wherein the ~~operating system (OS)~~ OS barrier is

configured to prevent the unsanctioned change of the device settings of the mobile device by:

      detecting an attempt by a user to access the device settings [[on]] of the mobile

device; and

      preventing the processor of the mobile device from executing operations related to

the attempt to access,

      wherein the device settings of the mobile device include a wireless access point

setting.


22.    (Original) The system of claim 17, wherein the access control barrier is configured to perform

filtering of the plurality of packets by:

      receiving a packet transmitted by or directed to the mobile device;

      performing an inspection of a packet, the inspection including obtaining an address

of the packet;

      determining that the address is not among a plurality of addresses stored on the

firewall device; and

        in response to the determining, discarding the packet.



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | |
|---|---|---|---|
| 26111 | 7590 | 03/11/2020 | |

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

DATE MAILED: 03/11/2020

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 06/11/2020 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. <u>PROSECUTION ON THE MERITS IS CLOSED.</u> THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
|---|---|---|---|
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26111        7590        03/11/2020
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 06/11/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TAYLOR, BARRY W | 2646 | 455-411000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

| (A) NAME OF ASSIGNEE | (B) RESIDENCE: (CITY and STATE OR COUNTRY) |
|---|---|
| | |

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐Issue Fee ☐Publication Fee (if required) ☐Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid issue fee shown above)*

☐ Electronic Payment via EFS-Web   ☐ Enclosed check   ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

Page 2 of 3
PTOL-85 Part B (08-18) Approved for use through 01/31/2020   OMB 0651-0033   U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

| | |
|---|---|
| 26111        7590        03/11/2020 | EXAMINER |
| STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C. | TAYLOR, BARRY W |
| 1100 NEW YORK AVENUE, N.W. | |
| WASHINGTON, DC 20005 | ART UNIT        PAPER NUMBER |
| | 2646 |

DATE MAILED: 03/11/2020

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No.<br>15/435,993 | Applicant(s)<br>MARASS et al. | |
|---|---|---|---|
| | Examiner<br>BARRY W TAYLOR | Art Unit<br>2646 | AIA (FITF) Status<br>Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to Amnd 3/2/2020.
   - ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 1-22. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐All     b) ☐ Some     *c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   - ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____.
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____.

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

Application/Control Number: 15/435,993                                        Page 2
Art Unit: 2646

## DETAILED ACTION

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### Allowable Subject Matter

1.      Claims 1-22 are allowed.

2.      The following is an examiner's statement of reasons for allowance.

Claims 1-22 are allowed for the reasons as set forth in Applicant's response filed 3/2/2020 (page 11- page 13).

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### Conclusion

3.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to BARRY W TAYLOR whose telephone number is (571)272-7509.  The examiner can normally be reached on Monday-Thursday: 7-5.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

Application/Control Number: 15/435,993                                             Page 3
Art Unit: 2646

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


     /BARRY W TAYLOR/
     Primary Examiner, Art Unit 2646

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

**CPC**

| Symbol | | | | | Type | Version |
|---|---|---|---|---|---|---|
| H04W | / | 12 | / | 08 | F | 2013-01-01 |
| H04W | / | 4 | / | 50 | I | 2018-02-01 |
| H04M | / | 1 | / | 185 | I | 2013-01-01 |
| H04W | / | 4 | / | 80 | A | 2018-02-01 |
| H04M | / | 1 | / | 72527 | A | 2013-01-01 |
| H04M | / | 1 | / | 67 | A | 2013-01-01 |

**CPC Combination Sets**

| Symbol | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|
| | / | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 22 | |
| /BARRY W TAYLOR/ | 04 March 2020 | O.G. Print Claim(s) | O.G. Print Figure |
| Primary Examiner, Art Unit 2646 | | | |
| (Primary Examiner) | (Date) | 1 | 7 |

U.S. Patent and Trademark Office

Part of Paper No.: 20200304A

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

| INTERNATIONAL CLASSIFICATION | | | |
|---|---|---|---|
| **CLAIMED** | | | |
| H04M | | 1 | 66 |
| **NON-CLAIMED** | | | |
| | | | |

| US ORIGINAL CLASSIFICATION | |
|---|---|
| **CLASS** | **SUBCLASS** |
| | |

| CROSS REFERENCES(S) | | | | | | |
|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | | |
| | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 22 | |
| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | 04 March 2020 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 7 |

U.S. Patent and Trademark Office

Part of Paper No.: 20200304A

| **Issue Classification** | **Application/Control No.** 15/435,993 | **Applicant(s)/Patent Under Reexamination** MARASS et al. |
|---|---|---|
| | **Examiner** BARRY W TAYLOR | **Art Unit** 2646 |

☑ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 10 | 10 | 19 | 19 | | | | | | | | | | |
| 2 | 2 | 11 | 11 | 20 | 20 | | | | | | | | | | |
| 3 | 3 | 12 | 12 | 21 | 21 | | | | | | | | | | |
| 4 | 4 | 13 | 13 | 22 | 22 | | | | | | | | | | |
| 5 | 5 | 14 | 14 | | | | | | | | | | | | |
| 6 | 6 | 15 | 15 | | | | | | | | | | | | |
| 7 | 7 | 16 | 16 | | | | | | | | | | | | |
| 8 | 8 | 17 | 17 | | | | | | | | | | | | |
| 9 | 9 | 18 | 18 | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 22 | |
| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | 04 March 2020 | **O.G. Print Claim(s)** | **O.G. Print Figure** |
| (Primary Examiner) | (Date) | 1 | 7 |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| H04W 12/08, 4/001, 4/008 | 2/27/2018 | BWT |
| H04M 1/72569, 1/72563, 1/72577, 1/18 | 02/27/2018 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| no double patenting.  east search attached. | 02/27/2018 | BWT |
| updated search. | 09/13/2018 | BWT |
| updated search. | 2/20/2019 | BWT |
| updated search. | 07/10/2019 | BWT |
| updated search. | 12/18/2019 | BWT |
| PALM inventor name and east search.  no double patenting. | 03/04/2020 | BWT |

| /BARRY W TAYLOR/<br>Primary Examiner, Art Unit 2646 | /BARRY W TAYLOR/<br>Primary Examiner, Art Unit 2646 |
|---|---|

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| H04W | 12/08, 4/001, 4/008 | 03/04/2020 | BWT |
| H04M | 1/72569, 1/72563, 1/72577, 1/18 | 03/04/2020 | BWT |

| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 |
|---|---|

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2020/03/04 17:44 |
| L2 | 0 | "2018/0242155" | US-PGPUB; USPAT | OR | ON | 2020/03/04 17:44 |
| L3 | 57843 | (H04M1/185 OR H04M1/67 OR H04M1/72527 OR H04W12/08 OR H04W12/0802 OR H04W12/0804 OR H04W12/0808 OR H04W4/50 OR H04W4/80).CPC. | US-PGPUB; USPAT | OR | ON | 2020/03/04 17:45 |
| L4 | 1 | 1 and ((monitor$4 or interactions) near7 (social$5 or facebook$4 or yelp$4 or twitter)) | US-PGPUB; USPAT | OR | ON | 2020/03/04 17:45 |
| L5 | 1221118 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2020/03/04 17:45 |
| L6 | 97 | L5 same ((monitor$4 or interactions) near7 ((social$5 adj3 media) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2020/03/04 17:45 |

**3/4/2020 5:47:25 PM**
**C:\Users\btaylor\Documents\EAST\Workspaces\Workspaces\%15,435,993 prevent use of mobile for inmates.wsp**

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** Substitute for Form PTO-875 | Application or Docket Number 15/435,993 | Filing Date 02/17/2017 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE  ☐ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = * | | x $80 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = * | | x $420 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| AMENDMENT | 03/02/2020 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 22 | Minus | ** 22 | = 0 | x $100 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $460 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| | |
|---|---|
| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /TRINA RIDDICK/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment and Reply Under 37 C.F.R. § 1.111

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In reply to the Office Action dated January 2, 2020, Applicant submits the following

Amendment and Remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of

this paper.

**Remarks and Arguments** begin on page 11 of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be

provided for in documents accompanying this paper. However, if additional extensions of time are

necessary to prevent abandonment of this application, then such extensions of time are hereby

petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or

appeal of this application (including issue fee, fees for net addition of claims or forwarding to

appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

## Amendments to the Claims

This listing of claims will replace all prior versions, and listings, of claims in the application.

1.      (Currently Amended) A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate, the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application;

monitor user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity;

prevent installation or removal of an application;

detect an attempt to perform an unsanctioned function of the application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

MARASS *et al.*

Reply to Office Action of January 2, 2020

Application No. 15/435,993

detect an attempt to access device settings of the mobile device by a user of the mobile device; and

prevent, at a kernel of an operating system operating on the mobile device, the processor of the mobile device from executing operations that attempt to access or alter the device settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

2.   (Original) The system of claim 1, wherein the front plate and the back plate of the hardware barrier are configured to form a seal around the device that allows physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

3.   (Original) The system of claim 2, further comprising a diode connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

4.   (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

5.   (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to install a second application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

6.    (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an over-the-air command received by the mobile device over a wireless link;

determine that the command meets a security requirement of a second application

sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow

the command to be executed by a processor of the mobile device.

7.    (Previously Presented) The system of claim 1, wherein the attempt to access or alter the device

settings of the mobile device is initiated by the application.

8.    (Original) The system of claim 1, wherein the device settings further include a Bluetooth radio

setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the

mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting

determining whether or not the mobile device may receive data over a cellular wireless link.

9.    (Currently Amended) A mobile device, comprising:

a memory that stores a first set of operations of an application barrier and a second

set of operations of an operating system (OS) barrier; and

a processor configured to:

execute the first set of operations of the application barrier, the first set of

operations comprising:

- 5 -                                                    MARASS *et al.*

performing application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application;

monitoring user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity;

preventing installation or removal of an application;

detecting an attempt by a user of the mobile device to perform an unsanctioned function of the application stored on the memory; and

preventing the processor from executing operations related to the first attempt; and

execute the second set of operations of the OS barrier, the second set of operations comprising:

detecting an attempt to access device settings of the mobile device by the user of the mobile device; and

preventing, at a kernel of an operating system operating on the mobile device, the processor from executing operations that attempt to access or alter the device settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility; and

wherein the device settings include a wireless access point setting.

- 6 -                                                          MARASS *et al.*

Reply to Office Action of January 2, 2020                      Application No. 15/435,993

10.    (Original) The mobile device of claim 9, wherein a hardware barrier that includes a front plate

       and a back plate fastened together by tamper-resistant screws is configured to form a seal

       around the device that allows direct physical contact with only a screen of the mobile device, a

       headphone port of the mobile device, a barrel charger port of the mobile device, and a

       universal serial bus (USB) port of the mobile device.

11.    (Original) The mobile device of claim 10, wherein a diode is connected to  the barrel charger

       port, the diode preventing electrical current from flowing out of the barrel charger port.

12.    (Original) The mobile device of claim 9, wherein first set of operations further comprises:

              detecting an attempt to delete the application on the mobile device; and

              sending a command to the processor to cancel the attempt.

13.    (Original) The mobile device of claim 9, wherein first set of operations further comprises:

              detecting an attempt to install a second application on the mobile device; and

              sending a command to the processor of the mobile device to cancel the installation

       attempt.

14.    (Original) The mobile device of claim 9, wherein the first set of operations further comprises:

              detecting an over-the-air command received by the mobile device over a wireless

       link;

              determining that the over-the-air command is from a sanctioned source; and

in response to determining that the command is from the sanctioned source, allowing

the command to be executed by the processor.

15.    (Previously Presented) The mobile device of claim 9, wherein the attempt to access or alter the

device settings of the mobile device is initiated by the application.

16.    (Original) The mobile device of claim 9, wherein the device settings further include a

Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining

whether or not the mobile device may receive data over a Bluetooth wireless link, and the

cellular radio setting determining whether or not the mobile device may receive data over a

cellular wireless link.

17.    (Currently Amended) A system of layered security barriers designed to prevent unsanctioned

use of a mobile device in a controlled environment facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form a

seal around the mobile device that allows limited physical contact with the mobile device,

the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier, stored on a memory of the mobile device, configured to:

perform application modification in which non-secure functions of an

application stored in the memory of the mobile device are disabled;

monitor user activity of a social application, the monitoring including

gathering social interactions of the social application and reviewing the social

interactions for illicit activity;

prevent installation or removal of an application; and

prevent an unsanctioned function from being performed on the mobile

device;

an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change or access of device settings of the mobile

device by a user of the mobile device via a graphical user interface, and to prevent, at a

kernel of an operating system operating on the mobile device, executing of instructions that

attempt to access or alter the device settings of the mobile device; and

an access control barrier implemented on a firewall device between a wireless access

point serving the controlled-environment facility and a network, the access control barrier

configured to perform filtering of a plurality of packets directed to or transmitted by the

mobile device.

18.     (Original) The system of claim 17, the system further comprising a wireless intrusion barrier

implemented on the wireless access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access

point device;

obtain a wireless access point identifier associated with the second wireless access

point device;

determine that the second wireless access point identifier is not among a plurality of

wireless access point identifiers stored on the wireless access point device; and

in response to the determining, attack the mobile device using a deauthentication

denial of service attack.

19.    (Original) The system of claim 18, wherein the wireless intrusion barrier is further configured

to attack the second wireless access point using another deauthentication denial of service

attack in response to the determining.

20.    (Original) The system of claim 17, wherein the application barrier is configured to prevent an

unsanctioned function from being performed by:

        detecting at least one of a first attempt by a user to delete an application from the

memory of the mobile device, a second attempt by the user to install a second application on

the mobile device, and a third attempt by the application to access content from a disallowed

source outside of the controlled environment facility; and

        preventing a processor of the mobile device from executing any operations related to

the first attempt, the second attempt, and the third attempt.

21.    (Original) The system of claim 17, wherein the operating system (OS) is configured to prevent

the unsanctioned change of the device settings by:

        detecting an attempt by a user to access the device settings on the mobile device; and

        preventing the processor of the mobile device from executing operations related to

the attempt,

        wherein the device settings include a wireless access point setting.

- 10 -                                                                    MARASS *et al.*
Reply to Office Action of January 2, 2020                    Application No. 15/435,993

22.     (Original) The system of claim 17, wherein the access control barrier is configured to perform

filtering of the plurality of packets by:

        receiving a packet transmitted by or directed to the mobile device;

        performing an inspection of a packet, the inspection including obtaining an address

of the packet;

        determining that the address is not among a plurality of addresses stored on the

firewall device; and

                in response to the determining, discarding the packet.

<table>
<tr><td></td><td>- 11 -</td><td>MARASS <em>et al.</em></td></tr>
</table>

Reply to Office Action of January 2, 2020                    Application No. 15/435,993

## *Remarks*

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 1-22 are pending in the application, with claims 1, 9, and 17 being the independent claims. By this Amendment, claims 1, 9 and 17 are sought to be amended. Applicant respectfully reserves the right to prosecute similar or broader claims, with respect to the cancelled and/or amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Based on the above amendment and the following remarks, Applicant respectfully requests that the Examiner reconsider all outstanding objections and rejections and that they be withdrawn.

### *Rejections under 35 U.S.C. § 112*

The Office Action rejects claims 1, 9 and 17 under 35 U.S.C. § 112(a) or 35 U.S.C. § 112 (pre-AIA), first paragraph, as allegedly failing to comply with the written description requirement. This rejection is respectfully traversed.

The Office Action alleges that there is no support in the specification for the recitation in claim 1 of "an application barrier stored on a memory of the mobile device, the application barrier configured to: perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application; monitor user activity of a social application, the monitoring including gathering social interactions of the social application." However paragraphs [0052]-[0055] of the published specification provide express support for these features.  Specifically, paragraph [0052] discloses the application management and security barrier 420. Paragraphs [0054] and [0055]

- 12 -                                                                    MARASS *et al.*
Reply to Office Action of January 2, 2020                    Application No. 15/435,993

describe the monitoring of social interactions. Specifically, paragraphs [0054] describes that "The ICS provider may also provide applications for allowable social interactions where the ICS programs in the ability to monitor the use of those applications." The specification further states that "This monitoring may occur at the call processing center, such as call processing center 150 depicted in FIG. 1. There, data traffic that travels to and from that application can be monitored to determine if any illicit activity is occurring." *Id.*

Thus, the present specification expressly supports the above limitations. Accordingly, Applicant respectfully requests withdrawal of the rejection.

### *Rejections under 35 U.S.C. § 103*

The Office Action rejects claims 1, 4-5, 7-9, 12-13, and 15-16 under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Publication No. 2015/0040246 to Yuen *et al.* in view of U.S. Patent Publication No. 2017/0329966 to Koganti *et al.* and U.S. Patent Publication No. 2016/0309008 to Hangsleben and U.S. Patent Publication No. 2017/0244729 to Fahrny *et al.*, further in view of U.S. Patent Publication No. 2018/0039779 to Li *et al.*

The Office Action rejects claims 2 and 10 under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in view of Koganti *et al.*, Hangsleben, Fahrny *et al.* and Li *et al.* further in view of U.S. Patent Publication No. 2016/0291643 to Sande *et al.*

The Office Action rejects claims 3 and 11 under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in view of Koganti *et al.*, Hangsleben, Fahrny *et al.*, Li *et al.* and Sande *et al.*, further in view of U.S. Patent Publication No. 2004/0023698 to Chang.

The Office Action rejects claims 6 and 14 under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in view of Koganti *et al.*, Hangsleben, Fahrny *et al.* and Li *et al.* further in view of U.S. Patent Publication No. 2014/0226487 to Forssell *et al.*

The Office Action rejects claims 17-22 under 35 U.S.C. § 103 as allegedly being unpatentable over Koganti *et al.* in view of Yuen *et al.*, Hangsleben, and U.S. Patent Publication No. 2011/0162060 to Vijayakumar *et al.* further in view of Fahrny *et al.*

These rejections are respectfully traversed.

The applied references fail to disclose, and would not have rendered obvious, at least "an application barrier stored on a memory of the mobile device, the application barrier configured to…monitor user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity," as recited in independent claim 1.

The Office Action acknowledges that most of the references fail to disclose this feature, but alleges that Kogani cures their deficiencies. Office Action, p. 13. Specifically, the Office Action alleges that Kogani discloses "'triggers' for social media and 'monitor' for monitoring such applications…" *Id.* However, this disclosure in Kogani does not describe the gathering of social interactions, nor does not it describe reviewing those interactions for illicit activity.  The Office Action cites to paragraph [0084] of Kogani for alleged support of its argument. However, the cited paragraph merely describes that a security policy for a social media application may different from that for a banking application. Nothing in the cited portions of Kogani teaches an application barrier that gathers and reviews social interactions, as recited in the claims. The remaining references

- 14 -                                              MARASS *et al.*
Reply to Office Action of January 2, 2020              Application No. 15/435,993

appear to be silent with respect to these features, and therefore fail to at least cure Kogani's deficiencies.

For at least similar reasons, the applied references would not have disclosed or rendered obvious at least "monitoring user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity," as recited in independent claim 9, and "an application barrier, stored on a memory of the mobile device, configured to…monitor user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity," as recited in independent claim 17.

Therefore, independent claims 1, 9 and 17 are patentable over the applied references. Claims 2-8, 10-16, and 18-20 are patentable at least for their dependencies from the independent claims, as well as for the additional features they recite.

Accordingly, Applicant respectfully requests withdrawal of the rejections.

- 15 -                                                    MARASS *et al.*
Reply to Office Action of January 2, 2020                 Application No. 15/435,993

## *Conclusion*

All of the stated grounds of objection and rejection have been properly traversed,

accommodated, or rendered moot. Applicant therefore respectfully requests that the Examiner

reconsider all presently outstanding objections and rejections and that they be withdrawn. Applicant

believes that a full and complete reply has been made to the outstanding Office Action and, as such,

the present application is in condition for allowance. If the Examiner believes, for any reason, that

personal communication will expedite prosecution of this application, the Examiner is invited to

telephone the undersigned at the number provided.

Prompt and favorable consideration of this Amendment and Reply is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date: ___March 2, 2020___

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

14408624_1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 38743361 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 02-MAR-2020 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 16:39:14 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2020-03-02-Miscellaneous-Letter-3210-1280000.pdf | 297563 <br> afbb673690cbd9acb3b710c95bef10de9179593f | no | 1 |

**Warnings:**

Information:

| 2 | | | 2020-03-02-Amendment-Reply-111-3210-1280000.pdf | 202816<br><br>0da2a9295f23e56324eeeb9500700542f104ab5 | yes | 15 |
|---|---|---|---|---|---|---|

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 10 |
| Applicant Arguments/Remarks Made in an Amendment | 11 | 15 |

**Warnings:**

Information:

| Total Files Size (in bytes): | 500379 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**Sterne Kessler**
STERNE KESSLER GOLDSTEIN & FOX

LAUREN C. SCHLEH
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

March 2, 2020

Commissioner for Patents                                    *Confirmation No. 1254*
PO Box 1450                                                          *Art Unit 2646*
Alexandria, VA  22313-1450                          *Attn:  Mail Stop Amendment*

       Re:    U.S. Utility Patent Application
            Appl. No. 15/435,993; Filing Date: February 17, 2017
            For:    **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
            Inventors:  MARASS *et al.*
            Our Ref:  3210.1280000

Commissioner:

       Transmitted herewith for appropriate action is a document entitled **Amendment and Reply Under 37 C.F.R. § 1.111**, which is submitted electronically.

       In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

       The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) or credit any overpayment to our Deposit Account No. 19-0036.

                     Respectfully submitted,

                     STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                     /Lauren C. Schleh/

                     Lauren C. Schleh
                     Attorney for Applicant
                     Registration No. 65,457

LCS/crb
Enclosure(s)

14643061_1

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oғғɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

26111        7590        01/02/2020
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/02/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

| *Office Action Summary* | Application No. 15/435,993 | Applicant(s) MARASS et al. | |
|---|---|---|---|
| | Examiner BARRY W TAYLOR | Art Unit 2646 | AIA (FITF) Status Yes |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>15 November 2019</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL**.    2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-22</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-22</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on <u>19 February 2017</u> is/are: a) ☑ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
      a) ☐ All    b) ☐ Some**    c) ☐ None of the:
        1. ☐ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____.
        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
    Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the
> invention, and of the manner and process of making and using it, in such full, clear, concise,
> and exact terms as to enable any person skilled in the art to which it pertains, or with which it
> is most nearly connected, to make and use the same, and shall set forth the best mode
> contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the
> manner and process of making and using it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains, or with which it is most nearly
> connected, to make and use the same, and shall set forth the best mode contemplated by the
> inventor of carrying out his invention.

1.      Claims 1, 9 and 17 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-

AIA), first paragraph, as failing to comply with the written description requirement.  The

claim(s) contains subject matter which was not described in the specification in such a

way as to reasonably convey to one skilled in the relevant art that the inventor or a joint

inventor, or for pre-AIA the inventor(s), at the time the application was filed, had

possession of the claimed invention.

Claim 1 recites "an application barrier stored on a memory of the mobile device,

the application barrier configured to:  perform application modification in which non-

secure functions of an application stored in the memory of the mobile device are

disabled, the non-secure functions including social functions of the application; monitor

user activity of a social application, the monitoring including gathering social interactions of the social application; prevent installation or removal of an application".

The Examiner notes Applicants specification does not even mention "an application barrier stored on a memory of the mobile device, the application barrier configured to:  perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application; monitor user activity of a social application, the monitoring including gathering social interactions of the social application; prevent installation or removal of an application".

Claim 9 recites "execute the first set of operations of the application barrier, the first set of operations comprising:  performing application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application; monitor user activity of a social application, the monitoring including gathering social interactions of the social application; prevent installation or removal of an application".

The Examiner notes Applicants specification does not even recited claim limitations.

Claim 17 recites "an application barrier stored on a memory of the mobile device, configured to:  perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled; monitor user activity of a social application, the monitoring including gathering social interactions of the social application; prevent installation or removal of an application".

The Examiner notes Applicants specification does not even recited claim

limitations.

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

This application currently names joint inventors. In considering patentability of the

claims the examiner presumes that the subject matter of the various claims was

commonly owned as of the effective filing date of the claimed invention(s) absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

point out the inventor and effective filing dates of each claim that was not commonly

owned as of the effective filing date of the later invention in order for the examiner to

consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)

prior art against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

2.      Claims 1, 4-5, 7-9, 12-13, 15-16 are rejected under 35 U.S.C. 103 as being

unpatentable over Yuen et al (2015/0040246) in view of Koganti et al (2017/0329966)

Application/Control Number: 15/435,993                                          Page 5
Art Unit: 2646

and Hangsleben (2016/0309008) and Fahrny et al (2017/0244729) further in view of Li
et al (2018/0039779).

Regarding claims 1 and 9.  Yuen teaches a mobile device and a system of
layered security barriers of a mobile device that prevents unsanctioned use of the
mobile device, comprising:

a hardware barrier that includes a front plate and a back plate, the hardware
barrier obstructing access to at least one port of the mobile device;

an application barrier stored on a memory of the mobile device, the application
barrier configured to: detect a first attempt to perform an unsanctioned function of an
application stored in the memory of the mobile device (figure 1, 0031-0032 wherein
smartphone item 10 has mobile agent item 20 having an installed application list item
22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the
mobile that the application was changed (e.g., installed or removed);

prevent a processor of the mobile device from executing operations related to the
attempt to perform the unsanctioned function (0041 – one example means for disabling
(i.e., not allowing user of the mobile device to access and execute) the newly installed
application, another example means for disabling by the mobile agent to disable or
otherwise redirect a system of function call associated with the newly installed
application, such that mobile agent would not allow the system of function call issued by
the Operating System of the device infrastructure to be received by the newly installed
application.  **Another example means is by the mobile agent to disable operation
or otherwise hide (e.g., grayed out) of a <u>user interface 27 icon</u> (e.g., a graphical
user interface) associated with the newly installed application**, 0053-0055 as

discussed above, each mobile device is configured with Mobile Agent 20 for managing

content of the application list 22, containing identification of all mobile applications

presently installed (and/or removed) on the mobile device and the mobile agent can

quarantine/disable non-compliant applications); and

an operating system (OS) barrier stored in the memory of the mobile device, the

OS barrier configured to:

detect an attempt to access device settings of the mobile device (0041 another

example means for disabling by the mobile agent to disable or otherwise redirect a

system of **function call** associated with the newly installed application, such that

**mobile agent would not allow the system of function call issued by the Operating**

**System** of the device infrastructure to be received by the newly installed application.

**For example, mobile agent disables operation or otherwise hides (e.g., grayed**

**out) a user interface 27 icon (e.g., graphical user interface)**, 0052 as may be the

case for a **jail broken** (e.g., OS barrier) or **rooted device** (e.g., OS barrier).  As such, it

can be an advantage to have the list 22 maintained by the mobile device wherein list 22

is a local list of all authorized applications installed)); and

prevent the processor of the mobile device from executing operations related the

second attempt (0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications);

Yuen does not show hardware barrier or wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

Koganti teaches a mobile device uses a Device Trust Management Service DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003, 0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS triggers, SSID violation, hardware Triggers, unauthorized communication network, jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005, 0007, 0009, 0038, 0045 – <u>**detect tampering to the device including an opened mobile device case, obviously having a front and back (e.g., fort plate and back plate)**</u>, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating System Barrier** (figure 3 item 320, 0036, 0069).

Koganti <u>**teaches wherein the unsanctioned function includes exchanging data with a unsanctioned source outside**</u> **of** (see 0003, 0005, 0007, 0009 wherein detect unsanctioned browser app, media player app, or network connection service used for exchanging data with an unsanctioned source outside of).  Koganti teaches the status include operations of and/or configurations of the electronic device.  The operations of the electronic device include Operating System and/or Application operations (0016).  **Paragraph 0038 <u>access request from applications show as 324 in figure 3 wherein applications can be "browser" 326 (e.g., graphical user interface)</u>, web access status, network connectivity status, application threat status used to exchange data**.  Paragraph 0039 monitor OS/OS kernel and device behavior, monitor connection status of peripheral hardware and/or

transmission/reception status with an unsanctioned source outside of.  Paragraphs

0041-0042 monitor for Text input request requesting access to the modem to send SMS

text or a social media application.  Paragraph 0043 wherein monitors 342 may monitor

request for network connections (e.g., **texting application**) which requires display (e.g.,

**graphical user interface**).  **Paragraph 0044 authenticate user has entered correct**

**PIN or password (e.g., graphical user interface**).  Paragraph 0046 request/attempts

to execute software or applications **(e.g. using graphical user interface)**,

request/attempts for web access **(e.g. using graphical user interface)**,

request/attempts to download/upload data and/or connection to a particular base

station, access point, website, or identified network, SSID violations.  Paragraph 0050

wherein a USB connection to peripheral hardware may pose a threat monitor user

screen **(e.g. graphical user interface)**.  Paragraph 0052 wherein violations and/or

changes of the design and/or intended use of the electronic device may be a threat,

verify PIN or password entered **(e.g. using graphical user interface)**.  TABLE 1, 0064

wherein Unknown SSID.  Paragraph 0066 wherein monitors 342 may monitor for and

detect a connection of the electronic device to a public WiFi network.  Paragraph 0069

wherein SMS used to communicate is also monitored wherein SMS applications require

**(e.g. using graphical user interface)**.  Paragraph 0070 wherein whitelist/blacklist for

particular communications network and/or USB port used for charging BUT not allowed

for uploading or downloading files and/or particular website **(e.g. using graphical user**

**interface)**.  Paragraph 0074 request user input **(e.g. using graphical user interface).**

Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device

is in possession of an authorized user, software, firmware, and/or hardware of the

electronic device may exhibit and/or engage in behavior that constitutes the threat of the

security of the device**.  For example, a user of the device may download a flashlight**

**application (e.g. using graphical user interface) and consent to a user agreement**

**for the flashlight application.  The user may be unaware that the user agreement**

**includes consent for the flashlight App to upload pictures and contact**

**information to the server (e.g., detect second attempt to access device settings).**

**However, the scoring service (see item 345 in figure 3) may detect the uploading**

**(e.g., detect second attempt to access device settings) as a threat based on**

**security policy.  Subsequently, the targeted security action service 360 (figure 3)**

**may deny access of the flashlight Application to the file system content 245**

**and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure**

**3) may prevent the flashlight application from engaging in the undesired and**

**threating behavior.**   Paragraph 0079 browser 326 **(e.g. using graphical user**

**interface) may provide a runtime environment and/or control access to assets of**

**the mobile device.  Paragraph 0087 access security policy may apply to an entity**

**(application, user, website, network, etc.) requesting or attempting to access**

**portions of the file system content, Table 7 "Access with forced authentication"**

**(force user to enter PIN and/or password).  Paragraph 0093 authentication**

**triggers (e.g., invalid PIN or password).**

Koganti teaches wherein the settings include a wireless access point setting

(0043 network access settings of a modem and/or the computer network interface,0046

SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for

and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted

Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to

3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if

WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen to include

the Device Trust Management Service (DTMS) as taught by Koganti in order to prevent

the device from performing undesired and threating behavior with an unsanctioned

source even if the program has been downloaded.


**Applicant amends and argues that prior art does not teach "disable non-secure functions of an application stored in the memory of the mobile device" (paper dated 5/28/2019).**

**The Examiner notes support for Applicants amendment is at paragraph 0018 of the originally filed specification – disable web browser.**

Koganti further teaches disable non-secure functions of an application stored in

the memory of the mobile device (0003 – modify access for at least one or more

applications (e.g., **browser application** which is consistent with applicants specification

at 0018), 0005 – modify access and/or operations of at least one or more applications

which includes a **browser application**, 0007 – modify operations of one or more

applications which includes **web access**, 0009 – modify operations of at least one

application or the service – **web access**, **figure 3 – Applications including**

**"Browser" labeled 326**, 0038 – monitor for **web access**, 0046 – monitor triggers

relating to **web access**, 0069 – alter or modify operations of the applications, 0070 –

Application/Control Number: 15/435,993                                              Page 11
Art Unit: 2646

**selectively modify, inhibit, or disable access to website,** TABLE 2 – allow for

browser, **disallow for social media application**, TABLE 5 – disable JavaScript for the

website and/or change site authorization to read-only or block the website, 0084 –

**security policy for** one or more applications, websites, **social media application may**

**differ from security policy for a banking application**, Table 11 – minimize browsing

tabs).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to further modify the teaching of Yuen to

include the Device Trust Management Service (DTMS) having one or more security

policies for one or more applications as taught by Koganti in order to disallow/disable

certain applications and/or functions of applications.


Yuen in view of Koganti do not show the hardware barrier obstructing access to

at least one port of the mobile device (amendment 7/19/2018).

Hangsleben teaches using a hardware barrier (0018, 0020) to block an inmate

from hiding contraband in the mobile device port(s) (0014, 0015, 0076) but allow the

inmate to use the mobile phone

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen in view of

Koganti to include a hardware barrier as taught by Hangsleben in order to block ports

and/or cavities of the mobile device thereby inhibiting contraband and/or other materials

from being stored in mobile device cavities.

Yuen in view of Koganti and Hangsleben do not explicitly teach preventing

access or altering of device settings at a kernel (RCE dated 2/14/2019).

**Fahrny teaches real-time security monitoring of processes running on the**

**device using a kernel level intrusion detection agent** (0034, 0040-0041, 0049, 0062,

0083) thereby preventing accesses or altering of device settings (005, 0020, 0038,

0041, 0049).  Fahrny teaches wherein the attempt to access or alter the device settings

of the mobile device is initiated by the application (0015, 0020, 0041, 0062, 0064, 0078,

0083).

It would have been obvious to one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the teaching of Yuen in view of Koganti and

Hangsleben to use kernel level intrusion detection agent as taught by Fahrny in order to

prevent access or altering of device settings in real-time.


Yuen in view of Koganti, Hangsleben and Fahrny do not explicitly show **"an**

**application barrier stored on a memory of the mobile device, the application**

**barrier configured to:  perform application modification in which non-secure**

**functions of an application stored in the memory of the mobile device are**

**disabled, the non-secure functions including social functions of the application;**

**monitor user activity of a social application, the monitoring including gathering**

**social interactions of the social application; prevent installation or removal of an**

**application" (RCE dated 11/15/2019).**

Application/Control Number: 15/435,993                                    Page 13
Art Unit: 2646

However, Koganti at figure 3 and paragraphs 0042 teaches "triggers" for social media and "monitor" for monitoring such applications including a security policy for social media application which may differ from the security policy for a banking application (0084).

Li teaches a layered analysis to evaluate device behaviors and software applications and may be **implemented within parts of the operating system (e.g., within the kernel**, in the kernel space, in the user space, etc. (0050, 0061).  Li teaches using a **behavior observer component** (item 252 in paragraph 0068) to monitor system resource usage, memory access operations, number of files open, whether the display is on or off, the state of the camera, and browser inter-actions.  The behavior observer component may also monitor driver statistics and/or the status of one or more hardware components, such as cameras, sensors, electronic displays, WiFi communication components, memory controllers, access ports, timers, peripheral devices, wireless communication components and clients running on the mobile device (0069-0070).  Li teaches the behavior observer component **monitors operations of software applications, browser based communications, content of text-based messages** (0071), voicemail, calendar information (0072).  The behavior observer component also **monitors for updates/changes to**, compass information, **computing device settings**, **notifications communicated to and from a software applications**, application updates, entry of passwords (0073).  The behavior observer component also monitors multiple levels, including the application level, radio level, and sensor level. Application level observations include **observing social streams**, observing notes entered, observing events pertaining to the use of PassBook, Google Wallet, PayPal

**and other similar applications or services** (0074).  The behavior observer component

assist the mobile device in classifying behavior as benign, suspicious, or non-benign

(0079).  The behavior observer component and the behavior analyzer component may

provide, either individually or collectively, real-time behavior analysis of the computing

system's behavior to identify suspicious behavior from limited or coarse observations.

This allows the mobile device to efficiently identify and prevent problems without

requiring a large amount of processor, memory, or battery resources (0081).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen in view of

Koganti, Hangsleben and Fahrny to implement kernel level intrusion detection or to

implement behavior observer component within separate programs or applications or to

implement as software instructions agents, or any combination thereof as taught by Li in

order to enable the mobile device to monitor the operations of software applications,

browser based communications, content of text-based messages, and/or social media

streaming content, etc. in real-time and the mobile uses the real-time monitored data to

quickly detect/identify "suspicious" behavior and prevent problems without requiring a

large amount of processor, memory, or battery resources as taught by Li at 0081.

Regarding claims 4 and 12.    Yuen teaches detect an attempt to delete the

application on the mobile device (figure 1, 0039 wherein mobile is configured with a

mobile agent to identify applications that have been installed or removed, 0045 –

removed application is not authorized, 0050 mobile agent also maintains a list of all

currently disabled newly installed applications, 0053 wherein mobile agent has list (item

22 figure 1) identifying all installed and/or removed applications); and send a command

to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code (0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Fahrny teaches detecting an attempt to read, modify, alter and/or replace system applications/settings and preventing (0015).

Regarding claims 5 and 13.   Yuen teaches wherein the application barrier is further configured to: detect an attempt to install a second application on the mobile device (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code (0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Fahrny teaches detecting manipulation and/or modification of program code (0073, 0075).

Regarding claims 7 and 15.  Yuen teaches wherein the second attempt is initiated by the application (0041).

Koganti teaches wherein the second attempt is initiated by the application (0005, 0038, 0069, 0075).

Fahrny teaches real-time security monitoring of processes running on the device using a kernel level intrusion detection agent (0034, 0040-0041, 0049, 0062, 0083) thereby preventing accesses or altering of device settings (005, 0020, 0038, 0041, 0049).  **Fahrny teaches wherein the attempt to access or alter the device settings of the mobile device is initiated by the application** (0015, 0020, 0041, 0062, 0064, 0078, 0083).

Regarding claims 8 and 16.  Yuen does not show wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

Koganti teaches a mobile device uses a Device Trust Management Service DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003, 0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS triggers, SSID violation, hardware Triggers, unauthorized communication network, jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005, 0007, 0009, 0038, 0045 – **detect tampering to the device including an opened mobile device case, obviously having a front and back (e.g., fort plate and back**

**plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating**

**System Barrier** (figure 3 item 320, 0036, 0069).

Koganti **teaches wherein the unsanctioned function includes exchanging**

**data with a unsanctioned source outside of** (see 0003, 0005, 0007, 0009 wherein

detect unsanctioned browser app, media player app, or network connection service

used for exchanging data with an unsanctioned source outside of).  Koganti teaches the

status include operations of and/or configurations of the electronic device.  The

operations of the electronic device include Operating System and/or Application

operations (0016).  Paragraph 0038 web access status, network connectivity status,

application threat status used to exchange data with outside of.  Paragraph 0039

monitor OS/OS kernel and device behavior, monitor connection status of peripheral

hardware and/or transmission/reception status with an unsanctioned source outside of.

Paragraphs 0041-0042 monitor for Text input request requesting access to the modem

to send SMS text or a social media application.  Paragraph 0043 wherein monitors 342

may monitor request for network connections.  Paragraph 0046 request/attempts for

web access, request/attempts to download/upload data and/or connection to a particular

base station, access point, website, or identified network, SSID violations.  Paragraph

0050 wherein a USB connection to peripheral hardware may pose a threat.  Paragraph

0052 wherein violations and/or changes of the design and/or intended use of the

electronic device may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph

0066 wherein monitors 342 may monitor for and detect a connection of the electronic

device to a public WiFi network.  Paragraph 0069 wherein SMS used to communicate

outside of is also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

Application/Control Number: 15/435,993                                                    Page 18
Art Unit: 2646

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device.  For example, a user of

the device may download a flashlight application and consent to a user agreement for

the flashlight application.  The user may be unaware that the user agreement includes

consent for the flashlight App to upload pictures and contact information to the server

(e.g., detect second attempt to access device settings).  However, the scoring service

(see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to

access device settings) as a threat based on security policy.  Subsequently, the

targeted security action service 360 (figure 3) may deny access of the flashlight

Application to the file system content 245 and/or the peripheral hardware device

interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application

from engaging in the undesired and threating behavior.

**Koganti teaches wherein the settings include a wireless access point
setting (0043 network access settings of a modem and/or the computer network
interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown
SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device
connected to trusted Bluetooth network, is device connected to trusted Wi-Fi
network, is device connected to 3G/4G network, is device connected via USB to a
trusted external device.  TABLE 4 if WiFi SSID indicates untrusted WiFi network,
deny or limit enterprise services, 0093).**

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen to monitor changes in Bluetooth, Wi-Fi, and 3G/4G network as taught by Koganti in order to prevent the device from preforming undesired and threating behavior with an unsanctioned source.

3.      Claims 2 and 10 are rejected under 35 U.S.C. 103 as being unpatentable over Yuen in view of Koganti, Hangsleben, Fahrny and Li further in view of Sande et al (2016/0291643).

Regarding claims 2 and 10.  Yuen in view of Koganti, Hangsleben, Fahrny and Li do not show wherein the front plate and the back plate of the hardware barrier are configured to form a seal around the device that allows physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

Hangsleben teaches using front plate and back plate to limit the inmate's access to GUI (0014, 0015, 0076).

Sande teaches protective enclosures have front plate and back plate (0025-0026) to protect the device from rough handling, impact, drops, and moisture (0004) and can have any desired shape (0026).  For example, funnel-shaped to allow easier access to corresponding components of the mobile device (e.g., an earphone port, etc.), etc.  Sande teaches using tamper-proof screws (0037).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile phone case of Yuen in view of Koganti, Hangsleben, Fahrny and Li to have apertures as taught by Sande in

order to define a funnel structure to guide a cable/plug associated with the earphone
into the earphone port/plug.

4.      Claims 3 and 11 are rejected under 35 U.S.C. 103 as being unpatentable over
Yuen in view of Koganti, Hangsleben, Fahrny, Li and Sande further in view of Chang
(2004/0023698).

        Regarding claims 3 and 11.  Yuen in view of Koganti, Hangsleben, Fahrny, Li
and Sande do not show a diode connected to the barrel charger port, the diode
preventing electrical current from flowing out of the barrel charger port.

        Chang teaches using a resistor and diode in series when charging a cell phone,
wherein the resistor is used to control the charging current intensity and the diode is
applied to prevent a backflow of current from the cell phone (abstract, 0020).

        It would have been extremely obvious to one of ordinary skill in the art before the
effective filing date of the claimed invention to modify the mobile device as taught by
Yuen in view of Koganti, Hangsleben, Fahrny, Li and Sande to use a diode at the
charging port as taught by Chang in order to prevent current from flowing from the
battery to the charging port.

5.      Claims 6 and 14 are rejected under 35 U.S.C. 103 as being unpatentable over
Yuen in view of Koganti, Hangsleben, Fahrny and Li further in view of Forssell et al
(2014/0226487).

        Regarding claims 6 and 14    Yuen in view of Koganti, Hangsleben, Fahrny and
Li do not show wherein the application barrier is further configured to: detect an over-
the-air command received by the mobile device over a wireless link; determine that the

command meets a security requirement of a second application sanctioned to change

the device settings; and

in response to determining that the command meets the security requirement,

allow the command to be executed by a processor of the mobile device.

Forssell teaches device management server, like Nokia Siemens Network's

SADM, may be used to configure user devices automatically Over-the-Air.  DM server

may configure into user devices Wi-Fi network settings, like SSID, and used

authentication method (0113-0118).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the mobile device as taught by

Yuen in view of Koganti, Hangsleben, Fahrny and Li to use a Device Management

Server as taught by Forssell in order to automatically configure device Wi-Fi settings

Over-the-Air.

6.      Claims 17-22 is/are rejected under 35 U.S.C. 103 as being unpatentable over

Koganti et al (2017/0329966) in view of Yuen et al (2015/0040246), Hangsleben

(2016/0309008) and Vijayakumar et al (2011/0162060) further in view of Fahrny et al

(2017/0244729).

Regarding claim 17.    Koganti teaches system of layered security barriers

designed to prevent unsanctioned use of a mobile device in a controlled environment

facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form

a seal around the mobile device that allows limited physical contact with the mobile

device (0003, 0005, 0007, 0009, 0038, 0045 – **detect tampering to the device**

**including an opened mobile device case, obviously having a front and back (e.g.,**

**fort plate and back plate)**, 0069, 0093);

an application barrier, stored on a memory of the mobile device, configured to

prevent an unsanctioned function from being performed on the mobile device (figure 3

item 324, 0069);

an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change or access of device settings of the

mobile device (figure 3 item 320, 0036, 0069).

**Applicant adds the limitation "disable non-secure functions of an**

**application stored in the memory of the mobile device" (paper dated 5/28/2019).**

**The Examiner notes support for Applicants amendment is at paragraph**

**0018 of the originally filed specification – disable web browser.**

Koganti further teaches disable non-secure functions of an application stored in

the memory of the mobile device (0003 – modify access for at least one or more

applications (e.g., **browser application** which is consistent with applicants specification

at 0018), 0005 – modify access and/or operations of at least one or more applications

which includes a **browser application**, 0007 – modify operations of one or more

applications which includes **web access**, 0009 – modify operations of at least one

application or the service – **web access**, **figure 3 – Applications including**

**"Browser" labeled 326**, 0038 – monitor for **web access**, 0046 – monitor triggers

relating to **web access**, 0069 – alter or modify operations of the applications, 0070 –

**selectively modify, inhibit, or disable access to website,** TABLE 2 – allow for

browser, **disallow for social media application**, TABLE 5 – disable JavaScript for the

website and/or change site authorization to read-only or block the website, 0084 –

**security policy for** one or more applications, websites, **social media application may**

**differ from security policy for a banking application**, Table 11 – minimize browsing

tabs).


Koganti does not explicitly show preventing an unsanctioned change of device

settings of the MS by a user of the MS via GUI.

However, Koganti teaches GUI.  **Paragraph 0038 access request from**

**applications show as 324 in figure 3 wherein applications can be "browser" 326**

**(e.g., graphical user interface), web access status, network connectivity status,**

**application threat status used to exchange data.**  Paragraph 0039 monitor OS/OS

kernel and device behavior, monitor connection status of peripheral hardware and/or

transmission/reception status with an unsanctioned source outside of.   Paragraphs

0041-0042 monitor for Text input request requesting access to the modem to send SMS

text or a social media application.  Paragraph 0043 wherein monitors 342 may monitor

request for network connections (e.g., **texting application**) which requires display (e.g.,

**graphical user interface**).  **Paragraph 0044 authenticate user has entered correct**

**PIN or password (e.g., graphical user interface**).  Paragraph 0046 request/attempts

to execute software or applications **(e.g. using graphical user interface)**,

request/attempts for web access **(e.g. using graphical user interface)**,

request/attempts to download/upload data and/or connection to a particular base

station, access point, website, or identified network, SSID violations.  Paragraph 0050

wherein a USB connection to peripheral hardware may pose a threat monitor user

screen **(e.g. graphical user interface)**.  Paragraph 0052 wherein violations and/or

changes of the design and/or intended use of the electronic device may be a threat,

verify PIN or password entered **(e.g. using graphical user interface)**.  TABLE 1, 0064

wherein Unknown SSID.  Paragraph 0066 wherein monitors 342 may monitor for and

detect a connection of the electronic device to a public WiFi network.  Paragraph 0069

wherein SMS used to communicate is also monitored wherein SMS applications require

**(e.g. using graphical user interface)**.  Paragraph 0070 wherein whitelist/blacklist for

particular communications network and/or USB port used for charging BUT not allowed

for uploading or downloading files and/or particular website **(e.g. using graphical user

interface)**.  Paragraph 0074 request user input **(e.g. using graphical user interface).**

Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device

is in possession of an authorized user, software, firmware, and/or hardware of the

electronic device may exhibit and/or engage in behavior that constitutes the threat of the

security of the device.  For example, a user of the device may download a flashlight

application (**e.g. using graphical user interface**) and consent to a user agreement for

the flashlight application.  The user may be unaware that the user agreement includes

consent for the flashlight App to upload pictures and contact information to the server

(e.g., detect second attempt to access device settings).  However, the scoring service

(see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to

access device settings) as a threat based on security policy.  Subsequently, the

targeted security action service 360 (figure 3) may deny access of the flashlight

Application to the file system content 245 and/or the peripheral hardware device

interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application

Application/Control Number: 15/435,993                                    Page 25
Art Unit: 2646

from engaging in the undesired and threating behavior.   Paragraph 0079 browser 326

**(e.g. using graphical user interface) may provide a runtime environment and/or**

**control access to assets of the mobile device.  Paragraph 0087 access security**

**policy may apply to an entity (application, user, website, network, etc.) requesting**

**or attempting to access portions of the file system content, Table 7 "Access with**

**forced authentication" (force user to enter PIN and/or password).  Paragraph 0093**

**authentication triggers (e.g., invalid PIN or password).**

 **Yuen at 0041 teaches mobile agent disables operation or otherwise hides**

**(e.g., grayed out) a <u>user interface 27 icon (e.g., graphical user interface)</u>**, 0052 as

may be the case for a **jail broken** (e.g., OS barrier) or **rooted device** (e.g., OS barrier).

As such, it can be an advantage to have the list 22 maintained by the mobile device

wherein list 22 is a local list of all authorized applications installed))

 It would have been obvious to one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the invention as taught by Koganti to use a

mobile agent as taught by Yuen in order to prevent a user from changing settings on the

mobile device by graying out the icon (e.g., gray out the settings icon on the mobile

phone).

 Koganti in view of Yuen do not teach the hardware barrier obstructing access to

at least one port of the mobile device.

 Hangsleben teaches using a hardware barrier (0018, 0020) to block an inmate

from hiding contraband in the mobile device port(s) (0014, 0015, 0076) but allow the

inmate to use the mobile phone

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Koganti in view of Yuen to include a hardware barrier as taught by Hangsleben in order to block ports and/or cavities of the mobile device thereby inhibiting contraband and/or other materials from being stored in mobile device cavities.

Koganti in view of Yuen and Hangsleben do not show an access control barrier implemented on a firewall device between a wireless access point serving the controlled-environment facility and a network, the access control barrier configured to perform filtering of a plurality of packets directed to or transmitted by the mobile device.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti in view of Yuen and Hangsleben to implement a firewall as taught by Vijayakumar in order to control what traffic is allowed to pass through the firewall and what traffic is unauthorized to pass.

Koganti in view of Yuen, Hangsleben, and Vijayakumar do not explicitly teach
preventing access or altering of device settings at a kernel (RCE dated 2/14/2019).

**Fahrny teaches real-time security monitoring of processes running on the
device using a kernel level intrusion detection agent** (0034, 0040-0041, 0049, 0062,
0083) thereby preventing accesses or altering of device settings (005, 0020, 0038,
0041, 0049). Fahrny teaches wherein the attempt to access or alter the device settings
of the mobile device is initiated by the application (0015, 0020, 0041, 0062, 0064, 0078,
0083).

It would have been obvious to one of ordinary skill in the art before the effective
filing date of the claimed invention to modify the teaching of Koganti in view of Yuen,
Hangsleben, and Vijayakumar to use kernel level intrusion detection agent as taught by
Fahrny in order to prevent access or altering of device settings in real-time.

Koganti in view of Yuen, Hangsleben, Vijayakumar and Fahrny do not explicitly
show **"an application barrier stored on a memory of the mobile device, configured
to: perform application modification in which non-secure functions of an
application stored in the memory of the mobile device are disabled; monitor user
activity of a social application, the monitoring including gathering social
interactions of the social application; prevent installation or removal of an
application" (RCE dated 11/15/2019).**

However, Koganti at figure 3 and paragraphs 0042 teaches "triggers" for social
media and "monitor" for monitoring such applications including a security policy for

Application/Control Number: 15/435,993                                          Page 28
Art Unit: 2646

social media application which may differ from the security policy for a banking

application (0084).

　　　　Li teaches a layered analysis to evaluate device behaviors and software

applications and may be **implemented within parts of the operating system (e.g.,**

**within the kernel**, in the kernel space, in the user space, etc. (0050, 0061).  Li teaches

using a **behavior observer component** (item 252 in paragraph 0068) to monitor

system resource usage, memory access operations, number of files open, whether the

display is on or off, the state of the camera, and browser inter-actions.  The behavior

observer component may also monitor driver statistics and/or the status of one or more

hardware components, such as cameras, sensors, electronic displays, WiFi

communication components, memory controllers, access ports, timers, peripheral

devices, wireless communication components and clients running on the mobile device

(0069-0070).  Li teaches the behavior observer component **monitors operations of**

**software applications, browser based communications, content of text-based**

**messages** (0071), voicemail, calendar information (0072).  The behavior observer

component also **monitors for updates/changes to**, compass information, **computing**

**device settings**, **notifications communicated to and from a software applications**,

application updates, entry of passwords (0073).  The behavior observer component also

monitors multiple levels, including the application level, radio level, and sensor level.

Application level observations include **observing social streams**, observing notes

entered, observing events pertaining to the use of PassBook, Google Wallet, PayPal

**and other similar applications or services** (0074).  The behavior observer component

assist the mobile device in classifying behavior as benign, suspicious, or non-benign

(0079).  The behavior observer component and the behavior analyzer component may

provide, either individually or collectively, real-time behavior analysis of the computing

system's behavior to identify suspicious behavior from limited or coarse observations.

This allows the mobile device to efficiently identify and prevent problems without

requiring a large amount of processor, memory, or battery resources (0081).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Koganti in view of

Yuen, Hangsleben, Vijayakumar and Fahrny to implement kernel level intrusion

detection or to implement behavior observer component within separate programs or

applications or to implement as software instructions agents, or any combination thereof

as taught by Li in order to enable the mobile device to monitor the operations of

software applications, browser based communications, content of text-based messages,

and/or social media streaming content, etc. in real-time and the mobile uses the real-

time monitored data to quickly detect/identify "suspicious" behavior and prevent

problems without requiring a large amount of processor, memory, or battery resources

as taught by Li at 0081.

Regarding claim 18.  Koganti in view of Yuen and Hangsleben do not show the

system further comprising a wireless intrusion barrier implemented on the wireless

access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access

point device;

obtain a wireless access point identifier associated with the second wireless

access point device;

determine that the second wireless access point identifier is not among a plurality

of wireless access point identifiers stored on the wireless access point device; and in

response to the determining, attack the mobile device using a deauthentication denial of

service attack.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

in view of Yuen and Hangsleben to implement a firewall that can detect malicious

wireless communication devices as taught by Vijayakumar in order to control what

devices are allowed to connect and which devices to force off the network.

Regarding claim 19.  Koganti in view of Yuen and Hangsleben do not show

wherein the wireless intrusion barrier is further configured to attack the second wireless

access point using another deauthentication denial of service attack in response to the

determining.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

in view of Yuen and Hangsleben to implement a firewall that can detect malicious

wireless communication devices as taught by Vijayakumar in order to control what

devices are allowed to connect and which devices to force off the network (Vijayakumar

at 0101 – wherein the firewall instructs the access point to send the malicious wireless

device a deauthentication frame to remove the malicious wireless device from the

network).

Regarding claim 20.  Koganti teaches wherein the application barrier is

configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the

memory of the mobile device (see Application Barrier item 324 in figure 3, 0036-0037

wherein DTMS interacts with applications 324 to detect a threat, 0038-0039 – detect

manipulation and/or modification of the program code, 0042 – monitor the operations

and/or configurations of the applications, 0069, 0075-0076),

a second attempt by the user to install a second application on the mobile

device, and a third attempt by the application to access content from a disallowed

source outside of the controlled environment facility (0042 wherein SMS application

request access to the modem to send a short message or wherein application tries to

Application/Control Number: 15/435,993                                    Page 32
Art Unit: 2646

access content from unauthorized social media, paragraph 0075 wherein the DTMS

may respond to threats even if the electronic device is in possession of an authorized

user, software, firmware, and/or hardware of the electronic device may exhibit and/or

engage in behavior that constitutes the threat of the security of the device**. For

example, a user of the device may download a flashlight application and consent

to a user agreement for the flashlight application. The user may be unaware that

the user agreement includes consent for the flashlight App to upload pictures

and contact information to the server (e.g., detect second attempt to access

device settings). However, the scoring service (see item 345 in figure 3) may

detect the uploading (e.g., detect second attempt to access device settings) as a

threat based on security policy. Subsequently, the targeted security action

service 360 (figure 3) may deny access of the flashlight Application to the file

system content 245 and/or the peripheral hardware device interface. In this way,

the DTMS 340 (figure 3) may prevent the flashlight application from engaging in

the undesired and threating behavior**); and

preventing a processor of the mobile device from executing any operations

related to the first attempt, the second attempt, and the third attempt (paragraph 0075

wherein the DTMS may respond to threats even if the electronic device is in possession

of an authorized user, software, firmware, and/or hardware of the electronic device may

exhibit and/or engage in behavior that constitutes the threat of the security of the

device**. For example, a user of the device may download a flashlight application

and consent to a user agreement for the flashlight application. The user may be

unaware that the user agreement includes consent for the flashlight App to**

Application/Control Number: 15/435,993                                    Page 33
Art Unit: 2646

**upload pictures and contact information to the server (e.g., detect second attempt
to access device settings).  However, the scoring service (see item 345 in figure
3) may detect the uploading (e.g., detect second attempt to access device
settings) as a threat based on security policy.  Subsequently, the targeted
security action service 360 (figure 3) may deny access of the flashlight
Application to the file system content 245 and/or the peripheral hardware device
interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight
application from engaging in the undesired and threating behavior**).

Regarding claim 21.  Koganti teaches wherein the operating system (OS) is
configured to prevent the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile
device; and preventing the processor of the mobile device from executing operations
related to the attempt (Paragraph 0039 monitor OS/OS kernel and device behavior,
monitor connection status of peripheral hardware and/or transmission/reception status
with an unsanctioned source outside of.  Paragraphs 0041-0042 monitor for Text input
request requesting access to the modem to send SMS text or a social media
application.  Paragraph 0043 wherein monitors 342 may monitor request for network
connections.  Paragraph 0046 request/attempts for web access, request/attempts to
download/upload data and/or connection to a particular base station, access point,
website, or identified network, SSID violations.  Paragraph 0050 wherein a USB
connection to peripheral hardware may pose a threat.  Paragraph 0052 wherein
violations and/or changes of the design and/or intended use of the electronic device
may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph 0066 wherein

monitors 342 may monitor for and detect a connection of the electronic device to a public WiFi network. Paragraph 0069 wherein SMS used to communicate outside of is also monitored. Paragraph 0070 wherein whitelist/blacklist for particular communications network and/or USB port used for charging BUT not allowed for uploading or downloading files. Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device is in possession of an authorized user, software, firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device**. For example, a user of the device may download a flashlight application and consent to a user agreement for the flashlight application. The user may be unaware that the user agreement includes consent for the flashlight App to upload pictures and contact information to the server (e.g., detect second attempt to access device settings). However, the scoring service (see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to access device settings) as a threat based on security policy. Subsequently, the targeted security action service 360 (figure 3) may deny access of the flashlight Application to the file system content 245 and/or the peripheral hardware device interface. In this way, the DTMS 340 (figure 3) may prevent the flashlight application from engaging in the undesired and threating behavior**), wherein the device settings include a wireless access point setting (0043 network access settings of a modem and/or the computer network interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to

Application/Control Number: 15/435,993                                    Page 35
Art Unit: 2646

3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if

WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

　　　　Regarding claim 22.  Koganti in view of Yuen and Hangsleben do not show

wherein the access control barrier is configured to perform filtering of the plurality of

packets by:

　　　　receiving a packet transmitted by or directed to the mobile device;

　　　　performing an inspection of a packet, the inspection including obtaining an

address of the packet; determining that the address is not among a plurality of

addresses stored on the firewall device; and in response to the determining, discarding

the packet.

　　　　Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108).  **Vijayakumar teaches**

**firewall rules include using source and destination address (0025, 0027)**.

　　　　It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

in view of Yuen and Hangsleben to implement a firewall that can detect monitor source

and destination addresses as taught by Vijayakumar in order to control data flowing to

and from the firewall.

### *Response to Arguments*

7.      Applicant's arguments with respect to claims 1-22 have been considered but are

moot because the arguments do not apply to any of the references being used in the

current rejection.

## *Conclusion*

8.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to BARRY W TAYLOR whose telephone number is

(571)272-7509.  The examiner can normally be reached on Monday-Thursday: 7-5.

        Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 15/435,993                                                    Page 37
Art Unit: 2646

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

| *Notice of References Cited* | Application/Control No. 15/435,993 | Applicant(s)/Patent Under Reexamination MARASS et al. | |
|---|---|---|---|
| | Examiner BARRY W TAYLOR | Art Unit 2646 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20180039779-A1 | 02-2018 | Li; Dong | G06F21/56 | 1/1 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20191218

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/27/2018 | 09/13/2018 | 02/20/2019 | 07/10/2019 | 12/18/2019 | | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 2 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 3 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 4 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 5 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 7 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 9 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 10 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 17 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 19 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 20 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 21 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | 22 | ✓ | ✓ | ✓ | ✓ | ✓ | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| H04W 12/08, 4/001, 4/008 | 2/27/2018 | BWT |
| H04M 1/72569, 1/72563, 1/72577, 1/18 | 02/27/2018 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| no double patenting.  east search attached. | 02/27/2018 | BWT |
| updated search. | 09/13/2018 | BWT |
| updated search. | 2/20/2019 | BWT |
| updated search. | 07/10/2019 | BWT |
| updated search. | 12/18/2019 | BWT |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| /BARRY W TAYLOR/<br>Primary Examiner, Art Unit 2646 | /BARRY W TAYLOR/<br>Primary Examiner, Art Unit 2646 |
|---|---|

## EAST Search History

## EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 0 | "10180242155" | US-PGPUB; USPAT | OR | ON | 2019/12/18 12:58 |
| L2 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2019/12/18 12:58 |
| L3 | 44 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$ or US-20130194067-$ or US-20180048752-$ or US-20170126733-$ or US-20110314475-$ or US-20150186661-$ or US-20130303143-$ or US-20150074615-$ or US-20070142041-$ or US-20170163615-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2019/12/18 12:58 |
| L4 | 1 | 2 and social | US-PGPUB; USPAT | OR | ON | 2019/12/18 12:59 |
| L5 | 8 | 3 and (monitor$5 same (social or facebook$2 or twitter$3 or (face adj2 book$2))) | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:16 |
| L6 | 1200118 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2019/12/18 13:45 |
| L7 | 3145 | L6 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2019/12/18 13:45 |
| L8 | 18046 | (H04W12/08 or H04W4/001 or H04W4/008).CPC. | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:49 |
| L9 | 18018 | (H04W12/08 or H04W4/001).CPC. | US- | OR | ON | 2019/12/18 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 13:49 |
| L10 | 10 | (H04W4/001).CPC. | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:50 |
| L11 | 303 | 7 and 8 | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:51 |
| L12 | 11 | 3 and kernel | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:52 |
| L17 | 29 | 3 and (social or facebook$4 or yelp$4 or web-browser$1 or browser$1 or chrome$3 or firefox$3) | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:55 |
| L18 | 22 | 3 and (social$5 or facebook$4 or yelp$4 or chat$5) | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:59 |
| L19 | 182278 | 6 and (social or facebook$4 or yelp$4 or web-browser$1 or browser$1 or chrome$3 or firefox$3) | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:59 |
| L20 | 15793 | 6 same (social or facebook$4 or yelp$4 or web-browser$1 or browser$1 or chrome$3 or firefox$3) | US-PGPUB; USPAT | OR | ON | 2019/12/18 13:59 |
| L21 | 62969 | 6 and ((monitor$4 or interact$5) same (social or facebook$4 or yelp$4 or web-browser$1 or browser$1 or chrome$3 or firefox$3)) | US-PGPUB; USPAT | OR | ON | 2019/12/18 14:00 |
| L22 | 3495 | 6 same ((monitor$4 or interact$5) same (social or facebook$4 or yelp$4 or web-browser$1 or browser$1 or chrome$3 or firefox$3)) | US-PGPUB; USPAT | OR | ON | 2019/12/18 14:00 |
| L23 | 5987 | 6 same ((social$5 adj3 media) or facebook$4 or yelp$4 or snap$7) | US-PGPUB; USPAT | OR | ON | 2019/12/18 14:01 |
| L24 | 6043 | 6 same ((social$5 adj3 media) or facebook$4 or yelp$4 or snap$7 or twitter) | US-PGPUB; USPAT | OR | ON | 2019/12/18 14:01 |
| L25 | 95 | 6 same ((monitor$4 or interactions) near7 ((social$5 adj3 media) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2019/12/18 14:02 |
| L26 | 85 | 25 and (@ad<="20170217" or @rlad<="20170217" or @pd<="20170217") | US-PGPUB; USPAT | OR | ON | 2019/12/18 14:03 |
| L27 | 26 | 6 same ((monitor$4 or interactions) near7 ((social$5 adj3 media) or facebook$4 or yelp$4 or twitter)) | US-PGPUB; USPAT | OR | ON | 2019/12/18 14:10 |

**12/18/2019 2:13:54 PM**
**C:\Users\btaylor\Documents\EAST\Workspaces\Workspaces\% 15,435,993 prevent use of mobile for inmates.wsp**

Doc code: RCEX
PTO/SB/30EFS (02-18)
Doc description: Request for Continued Examination (RCE)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

## REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
### (Submitted Only via EFS-Web)

| Application Number | 15/435,993 | Filing Date | 2017-02-17 | Docket Number (if applicable) | 3210.1280000 | Art Unit | 2646 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Jason MARASS | | | Examiner Name | TAYLOR, Barry W. | | |

This is a **Request for Continued Examination (RCE) under 37 CFR 1.114** of the above-identified application.

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV

### SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☒ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

☒ Other   Amendment and Reply Under 37 C.F.R. § 1.116 filed October 15, 2019

☐ Enclosed

☐ Amendment/Reply

☐ Information Disclosure Statement (IDS)

☐ Affidavit(s)/ Declaration(s)

☐ Other

### MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required) _____

☐ Other _____

### FEES

**The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
☒ The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No   190036

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

| X Patent Practitioner Signature |
| Applicant Signature |

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (02-18)
Approved for use through 11/30/2020. OMB 0851-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | |
|---|---|---|
| Signature | /Lauren C. Schleh/ | Date (YYYY-MM-DD) | 2019-11-14 |
| Name | Lauren C. Schleh | Registration Number | 65457 |

This collection of information is required by 37 CFR 1.114.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/22 (03-13)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) | Docket Number (Optional) |
|---|---|
| | 3210.1280000 |

| Application Number 15/435,993 | Filed February 17, 2017 |
|---|---|

For **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

| Art Unit 2646 | Examiner TAYLOR, Barry W. |
|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above-identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|  |  | Fee | Small Entity Fee | Micro Entity Fee | |
|---|---|---|---|---|---|
| ☑ | One month (37 CFR 1.17(a)(1)) | $200 | $100 | $50 | $ 200 |
| ☐ | Two months (37 CFR 1.17(a)(2)) | $600 | $300 | $150 | $ |
| ☐ | Three months (37 CFR 1.17(a)(3)) | $1,400 | $700 | $350 | $ |
| ☐ | Four months (37 CFR 1.17(a)(4)) | $2,200 | $1,100 | $550 | $ |
| ☐ | Five months (37 CFR 1.17(a)(5)) | $3,000 | $1,500 | $750 | $ |

☐ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☑ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to
Deposit Account Number 19-0036 .

☑ Payment made via EFS-Web.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant.

☑ attorney or agent of record. Registration number 65,457 .

☐ attorney or agent acting under 37 CFR 1.34. Registration number _____ .

| /Lauren C. Schleh/ | November 14, 2019 |
|---|---|
| Signature | Date |
| Lauren C. Schleh | (202) 371-2600 |
| Typed or printed name | Telephone Number |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

☑ * Total of 1 forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop PCT, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

14127590

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.



**LAUREN C. SCHLEH**
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

November 15, 2019

Commissioner for Patents                           *Confirmation No. 1254*
PO Box 1450                                              *Art Unit 2646*
Alexandria, VA  22313-1450                       *Attn:  Mail Stop RCE*

    Re:    U.S. Utility Patent Application
            Appl. No. 15/435,993; Filing Date: February 17, 2017
            For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
            Inventors:  MARASS *et al.*
            Our Ref:  3210.1280000

Commissioner:

    Transmitted herewith for appropriate action are the following documents:

1.  Online Credit Card Payment Authorization in the amount of **$2,100.00** to cover:
    **$1,900.00**     Request for Continued Examination (RCE) Fee – 2nd and subsequent request;
    **$  200.00**     One (1) Month Extension of Time Fee;
2.  Petition for Extension of Time Under 37 C.F.R. 1.136(a); and
3.  Request for Continued Examination (RCE) Transmittal (PTO/SB/30).

    The above-listed documents are filed electronically.

    In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

    Fee payment is provided through online credit card payment.  The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) or credit any overpayment to our Deposit Account No. 19-0036.

                      Respectfully submitted,

                      STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                      /Lauren C. Schleh/

                      Lauren C. Schleh
                      Attorney for Applicant
                      Registration No. 65,457

LCS/crb
Enclosure(s)
                                            14127730_1

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15435993 |
| **Filing Date:** | 17-Feb-2017 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Attorney Docket Number:** | 3210.1280000 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 1 month with $0 paid | 1251 | 1 | 200 | 200 |
| **Miscellaneous:** | | | | |
| RCE- 2ND AND SUBSEQUENT REQUEST | 1820 | 1 | 1900 | 1900 |
| **Total in USD ($)** | | | | **2100** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 37761244 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 15-NOV-2019 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 16:18:08 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $2100 |
| RAM confirmation Number | E2019AEG18254498 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Continued Examination (RCE) | 2019-11-15-RCE-3210-1280000.PDF | 1350176 <br><br> ff33d8a659948bb739dfed274fbdef3eab8ed30e | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Extension of Time | 2019-11-15-EOT-3210-1280000.PDF | 168549 <br><br> f32477301aeaf880f24596037407318e3ef6d4c1 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Miscellaneous Incoming Letter | 2019-11-15-Miscellaneous-Letter-3210-1280000.pdf | 299194 <br><br> 387bac17f2cc9af9120f22ab3f0fc0a147755b07 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Fee Worksheet (SB06) | fee-info.pdf | 32570 <br><br> 0f81ed02a186755c9592614e276dba3b1fd994f0 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 1850489 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

<span>U</span>NITED <span>S</span>TATES <span>P</span>ATENT AND <span>T</span>RADEMARK <span>O</span>FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

| 26111          7590          10/22/2019 |
|---|
| STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C. |
| 1100 NEW YORK AVENUE, N.W. |
| WASHINGTON, DC 20005 |

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/22/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Advisory Action***<br>***Before the Filing of an Appeal Brief*** | 15/435,993 | MARASS et al. |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | BARRY W TAYLOR | 2646 | Yes |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

THE REPLY FILED <u>15 October 2019</u> FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

<u>NO NOTICE OF APPEAL FILED</u>

1. ☑ The reply was filed after a final rejection. No Notice of Appeal has been filed. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114 if this is a utility or plant application. Note that RCEs are not permitted in design applications. The reply must be filed within one of the following time periods:

    a) ☑ The period for reply expires <u>3</u> months from the mailing date of the final rejection.

    b) ☐ The period for reply expires on: (1) the mailing date of this Advisory Action; or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

    c) ☐ A prior Advisory Action was mailed more than 3 months after the mailing date of the final rejection in response to a first after-final reply filed within 2 months of the mailing date of the final rejection.The current period for reply expires ____ months from the mailing date of *the prior Advisory Action* or SIX MONTHS from the mailing date of the final rejection, whichever is earlier.

    *Examiner Note:* If box 1 is checked, check either box (a), (b) or (c). ONLY CHECK BOX (b) WHEN THIS ADVISORY ACTION IS THE <u>FIRST</u> RESPONSE TO APPLICANTS <u>FIRST</u> AFTER-FINAL REPLY WHICH WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. ONLY CHECK BOX (c) IN THE LIMITED SITUATION SET FORTH UNDER BOX (c). See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) or (c) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

<u>NOTICE OF APPEAL</u>

2. ☐ The Notice of Appeal was filed on ____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37CFR 41.37(a).

<u>AMENDMENTS</u>

3. ☑ The proposed amendments filed after a final rejection, but prior to the date of filing a brief, will <u>not</u> be entered because

    a) ☑ They raise new issues that would require further consideration and/or search (see NOTE below);

    b) ☐ They raise the issue of new matter (see NOTE below);

    c) ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

    d) ☐ They present additional claims without canceling a corresponding number of finally rejected claims.
        NOTE: See <u>Continuation Sheet</u> (See 37CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicants reply has overcome the following rejection(s): ____

6. ☐ Newly proposed or amended claim(s) ____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☐ For purposes of appeal, the proposed amendment(s):(a)☐ will not be entered, or (b)☐ will be entered, and an explanation of how the new or amended claims would be rejected is provided below or appended.

<u>AFFIDAVIT OR OTHER EVIDENCE</u>

8. ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on ____

9. ☐ The affidavit or other evidence filed after final action, but before or on the date of filing a Notice of Appeal will <u>not</u> be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).

10. ☐ The affidavit or other evidence filed after the date of filing a Notice of Appeal, but prior to the date of filing a brief, will <u>not</u> be entered because the affidavit or other evidence failed to overcome <u>all</u> rejections under appeal and/or appellant fails to provide a showing of good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).

11. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

<u>REQUEST FOR RECONSIDERATION/OTHER</u>

12. ☐ The request for reconsideration has been considered but does NOT place the application in condition for allowance because ____.

13. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). ____

14. ☐ Other: ____.

<u>STATUS OF CLAIMS</u>

15. The status of the claim(s) is (or will be) as follows:
    Claim(s) allowed: ____.
    Claim(s) objected to: ____.
    Claim(s) rejected: <u>1-22</u>.
    Claim(s) withdrawn from consideration: ____.

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

**Application No.** 15/435,993

Continuation of 3. NOTE:
Applicant has added and deleted claim language requiring a further search and/or consideration.

Applicant has not yet pointed to the specification for support which also requires further consideration.

The Examiner notes the art of record teaches "triggers" for social media and "monitors" for monitoring such applications, as well as, security policies for a social media application - see Koganti et al (2017/0329966) at figure 3, paragraphs 0042 and 0084.

DO NOT ENTER: /B.W.T/

**Amendment Under 37 C.F.R. § 1.116**
**Expedited Procedure – Art Unit 2646**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment and Reply Under 37 C.F.R. § 1.116

Commissioner for Patents                                                    *Mail Stop AF*
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In reply to the Office Action dated July 15, 2019, Applicant submits the following

Amendment and Remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of

this paper.

**Remarks and Arguments** begin on page 11 of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be

provided for in documents accompanying this paper. However, if additional extensions of time are

necessary to prevent abandonment of this application, then such extensions of time are hereby

petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or

appeal of this application (including issue fee, fees for net addition of claims or forwarding to

appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Amendment Under 37 C.F.R. § 1.116
Expedited Procedure – Art Unit 2646

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment and Reply Under 37 C.F.R. § 1.116

Commissioner for Patents                                                        *Mail Stop AF*
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In reply to the Office Action dated July 15, 2019, Applicant submits the following

Amendment and Remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of

this paper.

**Remarks and Arguments** begin on page 11 of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be

provided for in documents accompanying this paper. However, if additional extensions of time are

necessary to prevent abandonment of this application, then such extensions of time are hereby

petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or

appeal of this application (including issue fee, fees for net addition of claims or forwarding to

appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 37458588 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 15-OCT-2019 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 17:05:28 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2019-10-15-Miscellaneous-Letter-3210-1280000.pdf | 297559  e9330c783a0c16310df7dd5e8d9098dac2df45b8 | no | 1 |

**Warnings:**

Information:

| 2 | | | 2019-10-15-Amendment-Reply-116-3210-1280000.pdf | 200863 | yes | 14 |
| | | | | 369b0376298fd1450d584bbfe0a99135888 77e06 | | |

| | | **Multipart Description/PDF files in .zip description** | | |
| | | **Document Description** | **Start** | **End** |
| | | Applicant Arguments/Remarks Made in an Amendment | 11 | 14 |
| | | Claims | 2 | 10 |
| | | Response After Final Action | 1 | 1 |

| **Warnings:** |
| **Information:** |

| **Total Files Size (in bytes):** | 498422 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**Lauren C. Schleh**
Associate
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

October 15, 2019

Commissioner for Patents
PO Box 1450
Alexandria, VA  22313-1450

_**Confirmation No. 1254**_
_**Art Unit 2646**_
_**Attn:  Mail Stop AF**_

Re:   U.S. Utility Patent Application
       Appl. No. 15/435,993; Filing Date: February 17, 2017
       For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
       Inventors:  MARASS _et al._
       Our Ref:  3210.1280000

Commissioner:

Transmitted herewith for appropriate action is a document entitled _**Amendment and Reply Under 37 C.F.R. § 1.116**_, which is submitted electronically.

In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) or credit any overpayment to our Deposit Account No. 19-0036.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

LCS/crb
Enclosure(s)

14000666_1

## Remarks

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 1-22 are pending in the application, with claims 1, 9, and 17 being the independent claims. By this Amendment, claims 1, 9 and 17 are sought to be amended. Applicant respectfully reserves the right to prosecute similar or broader claims, with respect to the cancelled and/or amended claims, in the future.  These changes are believed to introduce no new matter, and their entry is respectfully requested.

Based on the above amendment and the following remarks, Applicant respectfully requests that the Examiner reconsider all outstanding objections and rejections and that they be withdrawn.

### *Rejections under 35 U.S.C. § 103*

Claims 1, 4-5, 7-9, 12-13, and 15-16 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Application Publication No. 2015/0040246 to Yuen *et al.*  in view of U.S. Patent Application Publication No. 2017/0329966 to Koganti *et al.* and  U.S. Patent Application Publication No. 2016/0309008 to Hangsleben further in view of U.S. Patent Application Publication No. 2017/0244729 to Fahrny *et al.*; claims 2 and 10 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in view of Koganti *et al.*, Hangsleben and Fahrny *et al.* further in view of U.S. Patent Application Publication No. 2016/0291643 to Sande *et al.*; claims 3 and 11 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in view of Koganti *et al.*, Hangsleben, Fahrny *et al.* and Sande *et al.* further in view of U.S. Patent Application Publication No. 2004/0023698 to Chang; claims 6 and 14 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in

- 12 -                                                                                     MARASS *et al.*
Reply to Office Action of July 15, 2019                                  Application No. 15/435,993

view of Koganti *et al.*, Hangsleben and Fahrny *et al.* further in view of U.S. Patent Application

Publication No. 2014/0226487 to Forssell *et al.*; and claims 17-22 stand rejected under 35 U.S.C. §

103 as allegedly being unpatentable over Koganti *et al.* in view of Yuen *et al.*, Hangsleben and U.S.

Patent Application Publication No. 2011/0162060 to Vijayakumar *et al.* further in view of Fahrny *et

al.* These rejections are respectfully traversed.

　　　　The applied references fail to disclose, and would not have rendered obvious at least

"perform application modification in which non-secure functions of an application stored in the

memory of the mobile device are disabled, the non-secure functions including social functions of

the application," as recited in independent claim 1.

　　　　The Office Action alleges that Koganti discloses the disabling limitation of the independent

claims. Office Action, p. 8. However, Koganti merely describes modifying web access. According

to Koganti, this web access includes browsing restrictions on the Internet. Nothing in Koganti

discloses that the disabling occurs with respect to "social functions of the application," as recited in

independent claim 1. Additionally, the remaining references appear to be silent with respect to this

feature.

　　　　The applied references also fail to disclose, and would not have rendered obvious at least

"monitor user activity of a social application, the monitoring including gathering social interactions

of the social application," as recited in independent claim 1. None of the applied references are

directed to activity monitoring, let alone the gathering of social interactions. Thus, whether applied

alone or in combination, the applied references also fail to disclose this limitation.

　　　　For at least similar reasons, the applied references fail to disclose or render obvious at least

"performing application modification in which non-secure functions of an application stored in the

- 13 -                                                                      MARASS *et al.*
Reply to Office Action of July 15, 2019                    Application No. 15/435,993

memory of the mobile device are disabled, the non-secure functions including social functions of the application; monitoring user activity of a social application, the monitoring including gathering social interactions of the social application," as recited in independent claim 9, and "perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled; monitor user activity of a social application, the monitoring including gathering social interactions of the social application," as recited in independent claim 17.

Therefore, independent claims, 1, 9 and 17 are patentable over the applied references. Claims 2-8, 10-16 and 18-22 are patentable at least for their dependencies from the independent claims, as well as for the additional features they recite.

Accordingly, Applicant respectfully requests withdrawal of the rejections.

- 14 -                                                                          MARASS *et al.*
Reply to Office Action of July 15, 2019                              Application No. 15/435,993

## *Conclusion*

All of the stated grounds of objection and rejection have been properly traversed,

accommodated, or rendered moot. Applicant therefore respectfully requests that the Examiner

reconsider all presently outstanding objections and rejections and that they be withdrawn. Applicant

believes that a full and complete reply has been made to the outstanding Office Action and, as such,

the present application is in condition for allowance. If the Examiner believes, for any reason, that

personal communication will expedite prosecution of this application, the Examiner is invited to

telephone the undersigned at the number provided.

Prompt and favorable consideration of this Amendment and Reply is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:    October 15, 2019

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

13934101_1

Atty. Dkt. No. 3210.1280000

MARASS *et al.*

Reply to Office Action of July 15, 2019

Application No. 15/435,993

## *Amendments to the Claims*

This listing of claims will replace all prior versions, and listings, of claims in the application.

1.     (Currently Amended) A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate, the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

perform application modification in which ~~disable~~ non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application;

monitor user activity of a social application, the monitoring including gathering social interactions of the social application;

prevent installation or removal of an application;

detect an attempt to perform an unsanctioned function of the application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

Reply to Office Action of July 15, 2019

MARASS *et al.*
Application No. 15/435,993

detect an attempt to access device settings of the mobile device by a user of the mobile device; and

prevent, at a kernel of an operating system operating on the mobile device, the processor of the mobile device from executing operations that attempt to access or alter the device settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

2.      (Original) The system of claim 1, wherein the front plate and the back plate of the hardware barrier are configured to form a seal around the device that allows physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

3.      (Original) The system of claim 2, further comprising a diode connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

4.      (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

5.      (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to install a second application on the mobile device; and

- 4 -                                              MARASS *et al.*

send a command to the processor of the mobile device to cancel the attempt.

6.      (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an over-the-air command received by the mobile device over a wireless link;

determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

7.      (Previously Presented) The system of claim 1, wherein the attempt to access or alter the device settings of the mobile device is initiated by the application.

8.      (Original) The system of claim 1, wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

9.      (Currently Amended) A mobile device, comprising:

a memory that stores a first set of operations of an application barrier and a second set of operations of an operating system (OS) barrier; and

a processor configured to:

execute the first set of operations of the application barrier, the first set of operations comprising:

Atty. Dkt. No. 3210.1280000

- 5 -                                                                                    MARASS *et al.*
Reply to Office Action of July 15, 2019                          Application No. 15/435,993

~~disable~~ performing application modification in which non-secure

functions of an application stored in the memory of the mobile device are disabled,

the non-secure functions including social functions of the application;

monitoring user activity of a social application, the monitoring

including gathering social interactions of the social application;

preventing installation or removal of an application;

detecting an attempt by a user of the mobile device to perform an

unsanctioned function of the application stored on the memory; and

preventing the processor from executing operations related to the first

attempt; and

execute the second set of operations of the OS barrier, the second set of

operations comprising:

detecting an attempt to access device settings of the mobile device by

the user of the mobile device; and

preventing, at a kernel of an operating system operating on the mobile

device, the processor from executing operations that attempt to access or alter the device

settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned

source outside of the controlled environment facility; and

wherein the device settings include a wireless access point setting.

Atty. Dkt. No. 3210.1280000

- 6 -

MARASS *et al.*
Application No. 15/435,993

10.   (Original) The mobile device of claim 9, wherein a hardware barrier that includes a front plate and a back plate fastened together by tamper-resistant screws is configured to form a seal around the device that allows direct physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

11.   (Original) The mobile device of claim 10, wherein a diode is connected to  the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

12.   (Original) The mobile device of claim 9, wherein first set of operations further comprises:

detecting an attempt to delete the application on the mobile device; and

sending a command to the processor to cancel the attempt.

13.   (Original) The mobile device of claim 9, wherein first set of operations further comprises:

detecting an attempt to install a second application on the mobile device; and

sending a command to the processor of the mobile device to cancel the installation

attempt.

14.   (Original) The mobile device of claim 9, wherein the first set of operations further comprises:

detecting an over-the-air command received by the mobile device over a wireless

link;

determining that the over-the-air command is from a sanctioned source; and

MARASS *et al.*

Reply to Office Action of July 15, 2019

Application No. 15/435,993

in response to determining that the command is from the sanctioned source, allowing the command to be executed by the processor.

15.   (Previously Presented) The mobile device of claim 9, wherein the attempt to access or alter the device settings of the mobile device is initiated by the application.

16.   (Original) The mobile device of claim 9, wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

17.   (Currently Amended) A system of layered security barriers designed to prevent unsanctioned use of a mobile device in a controlled environment facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form a seal around the mobile device that allows limited physical contact with the mobile device, the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier, stored on a memory of the mobile device, configured to:

perform application modification in which ~~disable~~ non-secure functions of an application stored in the memory of the mobile device are disabled;[[, and]]

monitor user activity of a social application, the monitoring including gathering social interactions of the social application;

prevent installation or removal of an application; and

prevent an unsanctioned function from being performed on the mobile

device;

an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change or access of device settings of the mobile

device by a user of the mobile device via a graphical user interface, and to prevent, at a

kernel of an operating system operating on the mobile device, executing of instructions that

attempt to access or alter the device settings of the mobile device; and

an access control barrier implemented on a firewall device between a wireless access

point serving the controlled-environment facility and a network, the access control barrier

configured to perform filtering of a plurality of packets directed to or transmitted by the

mobile device.


18.    (Original) The system of claim 17, the system further comprising a wireless intrusion barrier

implemented on the wireless access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access

point device;

obtain a wireless access point identifier associated with the second wireless access

point device;

determine that the second wireless access point identifier is not among a plurality of

wireless access point identifiers stored on the wireless access point device; and

in response to the determining, attack the mobile device using a deauthentication

denial of service attack.

MARASS *et al.*

Reply to Office Action of July 15, 2019

Application No. 15/435,993

19.    (Original) The system of claim 18, wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

20.    (Original) The system of claim 17, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

  detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

  preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

21.    (Original) The system of claim 17, wherein the operating system (OS) is configured to prevent the unsanctioned change of the device settings by:

  detecting an attempt by a user to access the device settings on the mobile device; and

  preventing the processor of the mobile device from executing operations related to the attempt,

  wherein the device settings include a wireless access point setting.

22.    (Original) The system of claim 17, wherein the access control barrier is configured to perform filtering of the plurality of packets by:

  receiving a packet transmitted by or directed to the mobile device;

Atty. Dkt. No. 3210.1280000

- 10 -                                              MARASS *et al.*

performing an inspection of a packet, the inspection including obtaining an address

of the packet;

determining that the address is not among a plurality of addresses stored on the

firewall device; and

in response to the determining, discarding the packet.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>15/435,993 | Filing Date<br>02/17/2017 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE   ☐ SMALL   ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = * | | x $80 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = * | | x $420 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | | (Column 2)<br>HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 10/15/2019 | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * 22 | Minus | ** 22 | = 0 | x $100 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $460 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1)<br>CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | | (Column 2)<br>HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | SLIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /KAREN L VESTAL/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

26111        7590        07/15/2019
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/15/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

| *Office Action Summary* | Application No. | Applicant(s) |
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit | AIA (FITF) Status |
| | BARRY W TAYLOR | 2646 | Yes |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>28 May 2019</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on \_\_\_\_\_.

2a)☑ This action is **FINAL.**    2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on \_\_\_\_\_; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims\***

5)  ☑ Claim(s) <u>1-22</u> is/are pending in the application.
     5a) Of the above claim(s) \_\_\_\_\_ is/are withdrawn from consideration.

6)  ☐ Claim(s) \_\_\_\_\_ is/are allowed.

7)  ☑ Claim(s) <u>1-22</u> is/are rejected.

8)  ☐ Claim(s) \_\_\_\_\_ is/are objected to.

9)  ☐ Claim(s) \_\_\_\_\_ are subject to restriction and/or election requirement

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on <u>19 February 2017</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
      a)☐ All    b)☐ Some\*\*    c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. \_\_\_\_\_.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☑ Notice of References Cited (PTO-892)

2)☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
    Paper No(s)/Mail Date \_\_\_\_\_.

3)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date \_\_\_\_\_.

4)☐ Other: \_\_\_\_\_.

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

This application currently names joint inventors. In considering patentability of the

claims the examiner presumes that the subject matter of the various claims was

commonly owned as of the effective filing date of the claimed invention(s) absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

point out the inventor and effective filing dates of each claim that was not commonly

owned as of the effective filing date of the later invention in order for the examiner to

consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)

prior art against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

Application/Control Number: 15/435,993                                Page 3
Art Unit: 2646

1.      Claims 1, 4-5, 7-9, 12-13, 15-16 are rejected under 35 U.S.C. 103 as being

unpatentable over Yuen et al (2015/0040246) in view of Koganti et al (2017/0329966)

and Hangsleben (2016/0309008) further in view of Fahrny et al (2017/0244729).

        Regarding claims 1 and 9.  Yuen teaches a mobile device and a system of

layered security barriers of a mobile device that prevents unsanctioned use of the

mobile device, comprising:

        a hardware barrier that includes a front plate and a back plate, the hardware

barrier obstructing access to at least one port of the mobile device;

        an application barrier stored on a memory of the mobile device, the application

barrier configured to: detect a first attempt to perform an unsanctioned function of an

application stored in the memory of the mobile device (figure 1, 0031-0032 wherein

smartphone item 10 has mobile agent item 20 having an installed application list item

22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the

mobile that the application was changed (e.g., installed or removed);

        prevent a processor of the mobile device from executing operations related to the

attempt to perform the unsanctioned function (0041 – one example means for disabling

(i.e., not allowing user of the mobile device to access and execute) the newly installed

application, another example means for disabling by the mobile agent to disable or

otherwise redirect a system of function call associated with the newly installed

application, such that mobile agent would not allow the system of function call issued by

the Operating System of the device infrastructure to be received by the newly installed

application.  **Another example means is by the mobile agent to disable operation**

**or otherwise hide (e.g., grayed out) of a <u>user interface 27 icon</u> (e,g., a graphical**

**user interface) associated with the newly installed application**, 0053-0055 as

discussed above, each mobile device is configured with Mobile Agent 20 for managing

content of the application list 22, containing identification of all mobile applications

presently installed (and/or removed) on the mobile device and the mobile agent can

quarantine/disable non-compliant applications); and

an operating system (OS) barrier stored in the memory of the mobile device, the

OS barrier configured to:

detect an attempt to access device settings of the mobile device (0041 another

example means for disabling by the mobile agent to disable or otherwise redirect a

system of **function call** associated with the newly installed application, such that

**mobile agent would not allow the system of function call issued by the Operating**

**System** of the device infrastructure to be received by the newly installed application.

**For example, mobile agent disables operation or otherwise hides (e.g., grayed**

**out) a** **user interface 27 icon (e.g., graphical user interface)**, 0052 as may be the

case for a **jail broken** (e.g., OS barrier) or **rooted device** (e.g., OS barrier).  As such, it

can be an advantage to have the list 22 maintained by the mobile device wherein list 22

is a local list of all authorized applications installed)); and

prevent the processor of the mobile device from executing operations related the

second attempt (0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications);

Yuen does not show hardware barrier or wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

Koganti teaches a mobile device uses a Device Trust Management Service DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003, 0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS triggers, SSID violation, hardware Triggers, unauthorized communication network, jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005, 0007, 0009, 0038, 0045 – **detect tampering to the device including an opened mobile device case, obviously having a front and back (e.g., fort plate and back plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating System Barrier** (figure 3 item 320, 0036, 0069).

Koganti **teaches wherein the unsanctioned function includes exchanging data with a unsanctioned source outside of** (see 0003, 0005, 0007, 0009 wherein detect unsanctioned browser app, media player app, or network connection service used for exchanging data with an unsanctioned source outside of).  Koganti teaches the status include operations of and/or configurations of the electronic device.  The operations of the electronic device include Operating System and/or Application operations (0016).  **Paragraph 0038 access request from applications show as 324 in figure 3 wherein applications can be "browser" 326 (e.g., graphical user interface), web access status, network connectivity status, application threat status used to exchange data.**  Paragraph 0039 monitor OS/OS kernel and device behavior, monitor connection status of peripheral hardware and/or

transmission/reception status with an unsanctioned source outside of.  Paragraphs

0041-0042 monitor for Text input request requesting access to the modem to send SMS

text or a social media application.  Paragraph 0043 wherein monitors 342 may monitor

request for network connections (e.g., **texting application**) which requires display (e.g.,

**graphical user interface**).  **Paragraph 0044 authenticate user has entered correct**

**PIN or password (e.g., graphical user interface**).  Paragraph 0046 request/attempts

to execute software or applications **(e.g. using graphical user interface)**,

request/attempts for web access **(e.g. using graphical user interface)**,

request/attempts to download/upload data and/or connection to a particular base

station, access point, website, or identified network, SSID violations.  Paragraph 0050

wherein a USB connection to peripheral hardware may pose a threat monitor user

screen **(e.g. graphical user interface)**.  Paragraph 0052 wherein violations and/or

changes of the design and/or intended use of the electronic device may be a threat,

verify PIN or password entered **(e.g. using graphical user interface)**.  TABLE 1, 0064

wherein Unknown SSID.  Paragraph 0066 wherein monitors 342 may monitor for and

detect a connection of the electronic device to a public WiFi network.  Paragraph 0069

wherein SMS used to communicate is also monitored wherein SMS applications require

**(e.g. using graphical user interface)**.  Paragraph 0070 wherein whitelist/blacklist for

particular communications network and/or USB port used for charging BUT not allowed

for uploading or downloading files and/or particular website **(e.g. using graphical user**

**interface)**.  Paragraph 0074 request user input **(e.g. using graphical user interface).**

Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device

is in possession of an authorized user, software, firmware, and/or hardware of the

electronic device may exhibit and/or engage in behavior that constitutes the threat of the

security of the device**.  For example, a user of the device may download a flashlight**

**application (e.g. using graphical user interface) and consent to a user agreement**

**for the flashlight application.  The user may be unaware that the user agreement**

**includes consent for the flashlight App to upload pictures and contact**

**information to the server (e.g., detect second attempt to access device settings).**

**However, the scoring service (see item 345 in figure 3) may detect the uploading**

**(e.g., detect second attempt to access device settings) as a threat based on**

**security policy.  Subsequently, the targeted security action service 360 (figure 3)**

**may deny access of the flashlight Application to the file system content 245**

**and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure**

**3) may prevent the flashlight application from engaging in the undesired and**

**threating behavior.**   Paragraph 0079 browser 326 **(e.g. using graphical user**

**interface) may provide a runtime environment and/or control access to assets of**

**the mobile device.  Paragraph 0087 access security policy may apply to an entity**

**(application, user, website, network, etc.) requesting or attempting to access**

**portions of the file system content, Table 7 "Access with forced authentication"**

**(force user to enter PIN and/or password).  Paragraph 0093 authentication**

**triggers (e.g., invalid PIN or password).**

Koganti teaches wherein the settings include a wireless access point setting

(0043 network access settings of a modem and/or the computer network interface,0046

SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for

and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted

Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to

3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if

WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen to include

the Device Trust Management Service (DTMS) as taught by Koganti in order to prevent

the device from performing undesired and threating behavior with an unsanctioned

source even if the program has been downloaded.


**Applicant amends and argues that prior art does not teach "disable non-secure functions of an application stored in the memory of the mobile device" (paper dated 5/28/2019).**

**The Examiner notes support for Applicants amendment is at paragraph 0018 of the originally filed specification – disable web browser.**

Koganti further teaches disable non-secure functions of an application stored in

the memory of the mobile device (0003 – modify access for at least one or more

applications (e.g., **browser application** which is consistent with applicants specification

at 0018), 0005 – modify access and/or operations of at least one or more applications

which includes a **browser application**, 0007 – modify operations of one or more

applications which includes **web access**, 0009 – modify operations of at least one

application or the service – **web access**, **figure 3 – Applications including**

**"Browser" labeled 326**, 0038 – monitor for **web access**, 0046 – monitor triggers

relating to **web access**, 0069 – alter or modify operations of the applications, 0070 –

**selectively modify, inhibit, or disable access to website,** TABLE 2 – allow for

browser, **disallow for social media application**, TABLE 5 – disable JavaScript for the

website and/or change site authorization to read-only or block the website, 0084 –

**security policy for** one or more applications, websites, **social media application may**

**differ from security policy for a banking application**, Table 11 – minimize browsing

tabs).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to further modify the teaching of Yuen to

include the Device Trust Management Service (DTMS) having one or more security

policies for one or more applications as taught by Koganti in order to disallow/disable

certain applications and/or functions of applications.


Yuen in view of Koganti do not show the hardware barrier obstructing access to

at least one port of the mobile device (amendment 7/19/2018).

Hangsleben teaches using a hardware barrier (0018, 0020) to block an inmate

from hiding contraband in the mobile device port(s) (0014, 0015, 0076) but allow the

inmate to use the mobile phone

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen in view of

Koganti to include a hardware barrier as taught by Hangsleben in order to block ports

and/or cavities of the mobile device thereby inhibiting contraband and/or other materials

from being stored in mobile device cavities.

Application/Control Number: 15/435,993                                      Page 10
Art Unit: 2646

Yuen in view of Koganti and Hangsleben do not explicitly teach preventing

access or altering of device settings at a kernel (RCE dated 2/14/2019).

**Fahrny teaches real-time security monitoring of processes running on the**

**device using a kernel level intrusion detection agent** (0034, 0040-0041, 0049, 0062,

0083) thereby preventing accesses or altering of device settings (005, 0020, 0038,

0041, 0049).  Fahrny teaches wherein the attempt to access or alter the device settings

of the mobile device is initiated by the application (0015, 0020, 0041, 0062, 0064, 0078,

0083).

It would have been obvious to one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the teaching of Yuen in view of Koganti and

Hangsleben to use kernel level intrusion detection agent as taught by Fahrny in order to

prevent access or altering of device settings in real-time.


Regarding claims 4 and 12.   Yuen teaches detect an attempt to delete the

application on the mobile device (figure 1, 0039 wherein mobile is configured with a

mobile agent to identify applications that have been installed or removed, 0045 –

removed application is not authorized, 0050 mobile agent also maintains a list of all

currently disabled newly installed applications, 0053 wherein mobile agent has list (item

22 figure 1) identifying all installed and/or removed applications); and send a command

to the processor of the mobile device to cancel the attempt (0040 – mobile agent first

disables the newly installed application, 0041 – the mobile disables or hides the icon

associated with the installed application, 0054-0055 wherein mobile agent can

quarantine/disable all applications defined by the difference).

Application/Control Number: 15/435,993                                Page 11
Art Unit: 2646

Koganti also teaches detecting manipulation and/or modification of program code (0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Fahrny teaches detecting an attempt to read, modify, alter and/or replace system applications/settings and preventing (0015).

Regarding claims 5 and 13.    Yuen teaches wherein the application barrier is further configured to: detect an attempt to install a second application on the mobile device (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code (0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Fahrny teaches detecting manipulation and/or modification of program code (0073, 0075).

Regarding claims 7 and 15.  Yuen teaches wherein the second attempt is initiated by the application (0041).

Koganti teaches wherein the second attempt is initiated by the application (0005, 0038, 0069, 0075).

Application/Control Number: 15/435,993                                     Page 12
Art Unit: 2646

Fahrny teaches real-time security monitoring of processes running on the device

using a kernel level intrusion detection agent (0034, 0040-0041, 0049, 0062, 0083)

thereby preventing accesses or altering of device settings (005, 0020, 0038, 0041,

0049).  **Fahrny teaches wherein the attempt to access or alter the device settings**

**of the mobile device is initiated by the application** (0015, 0020, 0041, 0062, 0064,

0078, 0083).


Regarding claims 8 and 16.  Yuen does not show wherein the device settings

further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio

setting determining whether or not the mobile device may receive data over a Bluetooth

wireless link, and the cellular radio setting determining whether or not the mobile device

may receive data over a cellular wireless link.

Koganti teaches a mobile device uses a Device Trust Management Service

DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003,

0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS

triggers, SSID violation, hardware Triggers, unauthorized communication network,

jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005,

0007, 0009, 0038, 0045 – **detect tampering to the device including an opened**

**mobile device case, obviously having a front and back (e.g., fort plate and back**

**plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating**

**System Barrier** (figure 3 item 320, 0036, 0069).

Koganti **teaches wherein the unsanctioned function includes exchanging**

**data with a unsanctioned source outside of** (see 0003, 0005, 0007, 0009 wherein

detect unsanctioned browser app, media player app, or network connection service

used for exchanging data with an unsanctioned source outside of).  Koganti teaches the

status include operations of and/or configurations of the electronic device.  The

operations of the electronic device include Operating System and/or Application

operations (0016).  Paragraph 0038 web access status, network connectivity status,

application threat status used to exchange data with outside of.  Paragraph 0039

monitor OS/OS kernel and device behavior, monitor connection status of peripheral

hardware and/or transmission/reception status with an unsanctioned source outside of.

Paragraphs 0041-0042 monitor for Text input request requesting access to the modem

to send SMS text or a social media application.  Paragraph 0043 wherein monitors 342

may monitor request for network connections.  Paragraph 0046 request/attempts for

web access, request/attempts to download/upload data and/or connection to a particular

base station, access point, website, or identified network, SSID violations.  Paragraph

0050 wherein a USB connection to peripheral hardware may pose a threat.  Paragraph

0052 wherein violations and/or changes of the design and/or intended use of the

electronic device may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph

0066 wherein monitors 342 may monitor for and detect a connection of the electronic

device to a public WiFi network.  Paragraph 0069 wherein SMS used to communicate

outside of is also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device.  For example, a user of the device may download a flashlight application and consent to a user agreement for the flashlight application.  The user may be unaware that the user agreement includes consent for the flashlight App to upload pictures and contact information to the server (e.g., detect second attempt to access device settings).  However, the scoring service (see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to access device settings) as a threat based on security policy.  Subsequently, the targeted security action service 360 (figure 3) may deny access of the flashlight Application to the file system content 245 and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application from engaging in the undesired and threating behavior.

**Koganti teaches wherein the settings include a wireless access point setting (0043 network access settings of a modem and/or the computer network interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to 3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).**

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen to monitor changes in Bluetooth, Wi-Fi, and 3G/4G network as taught by Koganti in order to

prevent the device from preforming undesired and threating behavior with an

unsanctioned source.

2.      Claims 2 and 10 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Koganti, Hangsleben and Fahrny further in view of Sande et al

(2016/0291643).

Regarding claims 2 and 10.  Yuen in view of Koganti, Hangsleben and Fahrny do

not show wherein the front plate and the back plate of the hardware barrier are

configured to form a seal around the device that allows physical contact with only

a screen of the mobile device, a headphone port of the mobile device, a barrel charger

port of the mobile device, and a universal serial bus (USB) port of the mobile device.

Hangsleben teaches using front plate and back plate to limit the inmate's access

to GUI (0014, 0015, 0076).

Sande teaches protective enclosures have front plate and back plate (0025-

0026) to protect the device from rough handling, impact, drops, and moisture (0004)

and can have any desired shape (0026).  For example, funnel-shaped to allow easier

access to corresponding components of the mobile device (e.g., an earphone port, etc.),

etc.  Sande teaches using tamper-proof screws (0037).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the mobile phone case of Yuen in

view of Koganti, Hangsleben and Fahrny to have apertures as taught by Sande in order

to define a funnel structure to guide a cable/plug associated with the earphone into the

earphone port/plug.

Application/Control Number: 15/435,993                                        Page 16
Art Unit: 2646

3.      Claims 3 and 11 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Koganti, Hangsleben, Fahrny and Sande further in view of Chang

(2004/0023698).

        Regarding claims 3 and 11.  Yuen in view of Koganti, Hangsleben, Fahrny and

Sande do not show a diode connected to the barrel charger port, the diode preventing

electrical current from flowing out of the barrel charger port.

        Chang teaches using a resistor and diode in series when charging a cell phone,

wherein the resistor is used to control the charging current intensity and the diode is

applied to prevent a backflow of current from the cell phone (abstract, 0020).

        It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the mobile device as taught by

Yuen in view of Koganti, Hangsleben and Fahrny to use a diode at the charging port as

taught by Chang in order to prevent current from flowing from the battery to the charging

port.

4.      Claims 6 and 14 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Koganti, Hangsleben and Fahrny further in view of Forssell et al

(2014/0226487).

        Regarding claims 6 and 14    Yuen in view of Koganti, Hangsleben, and Fahrny

do not show wherein the application barrier is further configured to: detect an over-the-

air command received by the mobile device over a wireless link; determine that the

command meets a security requirement of a second application sanctioned to change

the device settings; and

in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

Forssell teaches device management server, like Nokia Siemens Network's SADM, may be used to configure user devices automatically Over-the-Air.  DM server may configure into user devices Wi-Fi network settings, like SSID, and used authentication method (0113-0118).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti, Hangsleben and Fahrny to use a Device Management Server as taught by Forssell in order to automatically configure device Wi-Fi settings Over-the-Air.

5.      Claims 17-22 is/are rejected under 35 U.S.C. 103 as being unpatentable over Koganti et al (2017/0329966) in view of Yuen et al (2015/0040246), Hangsleben (2016/0309008) and Vijayakumar et al (2011/0162060) further in view of Fahrny et al (2017/0244729).

Regarding claim 17.   Koganti teaches system of layered security barriers designed to prevent unsanctioned use of a mobile device in a controlled environment facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form a seal around the mobile device that allows limited physical contact with the mobile device (0003, 0005, 0007, 0009, 0038, 0045 – **detect tampering to the device including an opened mobile device case, obviously having a front and back (e.g., fort plate and back plate)**, 0069, 0093);

an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device (figure 3 item 324, 0069);

an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change or access of device settings of the mobile device (figure 3 item 320, 0036, 0069).

**Applicant adds the limitation "disable non-secure functions of an application stored in the memory of the mobile device" (paper dated 5/28/2019).**

**The Examiner notes support for Applicants amendment is at paragraph 0018 of the originally filed specification – disable web browser.**

Koganti further teaches disable non-secure functions of an application stored in the memory of the mobile device (0003 – modify access for at least one or more applications (e.g., **browser application** which is consistent with applicants specification at 0018), 0005 – modify access and/or operations of at least one or more applications which includes a **browser application**, 0007 – modify operations of one or more applications which includes **web access**, 0009 – modify operations of at least one application or the service – **web access**, **figure 3 – Applications including "Browser" labeled 326**, 0038 – monitor for **web access**, 0046 – monitor triggers relating to **web access**, 0069 – alter or modify operations of the applications, 0070 – **selectively modify, inhibit, or disable access to website,** TABLE 2 – allow for browser, **disallow for social media application**, TABLE 5 – disable JavaScript for the website and/or change site authorization to read-only or block the website, 0084 – **security policy for** one or more applications, websites, **social media application may**

**differ from security policy for a banking application**, Table 11 – minimize browsing

tabs).


Koganti does not explicitly show preventing an unsanctioned change of device

settings of the MS by a user of the MS via GUI.

However, Koganti teaches GUI.  **Paragraph 0038 access request from**

**applications show as 324 in figure 3 wherein applications can be "browser" 326**

**(e.g., graphical user interface), web access status, network connectivity status,**

**application threat status used to exchange data**.  Paragraph 0039 monitor OS/OS

kernel and device behavior, monitor connection status of peripheral hardware and/or

transmission/reception status with an unsanctioned source outside of.   Paragraphs

0041-0042 monitor for Text input request requesting access to the modem to send SMS

text or a social media application.  Paragraph 0043 wherein monitors 342 may monitor

request for network connections (e.g., **texting application**) which requires display (e.g.,

**graphical user interface**).  **Paragraph 0044 authenticate user has entered correct**

**PIN or password (e.g., graphical user interface**).  Paragraph 0046 request/attempts

to execute software or applications **(e.g. using graphical user interface),**

request/attempts for web access **(e.g. using graphical user interface),**

request/attempts to download/upload data and/or connection to a particular base

station, access point, website, or identified network, SSID violations.  Paragraph 0050

wherein a USB connection to peripheral hardware may pose a threat monitor user

screen **(e.g. graphical user interface**).  Paragraph 0052 wherein violations and/or

changes of the design and/or intended use of the electronic device may be a threat,

Application/Control Number: 15/435,993                                          Page 20
Art Unit: 2646

verify PIN or password entered **(e.g. using graphical user interface)**.  TABLE 1, 0064

wherein Unknown SSID.  Paragraph 0066 wherein monitors 342 may monitor for and

detect a connection of the electronic device to a public WiFi network.  Paragraph 0069

wherein SMS used to communicate is also monitored wherein SMS applications require

**(e.g. using graphical user interface)**.  Paragraph 0070 wherein whitelist/blacklist for

particular communications network and/or USB port used for charging BUT not allowed

for uploading or downloading files and/or particular website **(e.g. using graphical user

interface)**.  Paragraph 0074 request user input **(e.g. using graphical user interface).**

Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device

is in possession of an authorized user, software, firmware, and/or hardware of the

electronic device may exhibit and/or engage in behavior that constitutes the threat of the

security of the device.  For example, a user of the device may download a flashlight

application (**e.g. using graphical user interface**) and consent to a user agreement for

the flashlight application.  The user may be unaware that the user agreement includes

consent for the flashlight App to upload pictures and contact information to the server

(e.g., detect second attempt to access device settings).  However, the scoring service

(see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to

access device settings) as a threat based on security policy.  Subsequently, the

targeted security action service 360 (figure 3) may deny access of the flashlight

Application to the file system content 245 and/or the peripheral hardware device

interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application

from engaging in the undesired and threating behavior.   Paragraph 0079 browser 326

**(e.g. using graphical user interface) may provide a runtime environment and/or**

control access to assets of the mobile device.  **Paragraph 0087 access security**

**policy may apply to an entity (application, user, website, network, etc.) requesting**

**or attempting to access portions of the file system content, Table 7 "Access with**

**forced authentication" (force user to enter PIN and/or password).  Paragraph 0093**

**authentication triggers (e.g., invalid PIN or password).**

  **Yuen at 0041 teaches mobile agent disables operation or otherwise hides**

**(e.g., grayed out) a** <u>**user interface 27 icon (e.g., graphical user interface)**</u>, 0052 as

may be the case for a **jail broken** (e.g., OS barrier) or **rooted device** (e.g., OS barrier).

As such, it can be an advantage to have the list 22 maintained by the mobile device

wherein list 22 is a local list of all authorized applications installed))

  It would have been obvious to one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the invention as taught by Koganti to use a

mobile agent as taught by Yuen in order to prevent a user from changing settings on the

mobile device by graying out the icon (e.g., gray out the settings icon on the mobile

phone).

  Koganti in view of Yuen do not teach the hardware barrier obstructing access to

at least one port of the mobile device.

  Hangsleben teaches using a hardware barrier (0018, 0020) to block an inmate

from hiding contraband in the mobile device port(s) (0014, 0015, 0076) but allow the

inmate to use the mobile phone

  It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Koganti in view of

Yuen to include a hardware barrier as taught by Hangsleben in order to block ports

and/or cavities of the mobile device thereby inhibiting contraband and/or other materials

from being stored in mobile device cavities.


Koganti in view of Yuen and Hangsleben do not show an access control barrier

implemented on a firewall device between a wireless access point serving the

controlled-environment facility and a network, the access control barrier configured

to perform filtering of a plurality of packets directed to or transmitted by the mobile

device.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

in view of Yuen and Hangsleben to implement a firewall as taught by Vijayakumar in

order to control what traffic is allowed to pass through the firewall and what traffic is

unauthorized to pass.


Koganti in view of Yuen, Hangsleben, and Vijayakumar do not explicitly teach

preventing access or altering of device settings at a kernel (RCE dated 2/14/2019).

Application/Control Number: 15/435,993                                    Page 23
Art Unit: 2646

**Fahrny teaches real-time security monitoring of processes running on the device using a kernel level intrusion detection agent** (0034, 0040-0041, 0049, 0062, 0083) thereby preventing accesses or altering of device settings (005, 0020, 0038, 0041, 0049).  Fahrny teaches wherein the attempt to access or alter the device settings of the mobile device is initiated by the application (0015, 0020, 0041, 0062, 0064, 0078, 0083).

It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Koganti in view of Yuen, Hangsleben, and Vijayakumar to use kernel level intrusion detection agent as taught by Fahrny in order to prevent access or altering of device settings in real-time.

Regarding claim 18.  Koganti in view of Yuen and Hangsleben do not show the system further comprising a wireless intrusion barrier implemented on the wireless access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access point device;

obtain a wireless access point identifier associated with the second wireless access point device;

determine that the second wireless access point identifier is not among a plurality of wireless access point identifiers stored on the wireless access point device; and in response to the determining, attack the mobile device using a deauthentication denial of service attack.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti in view of Yuen and Hangsleben to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network.

Regarding claim 19.  Koganti in view of Yuen and Hangsleben do not show wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti

in view of Yuen and Hangsleben to implement a firewall that can detect malicious

wireless communication devices as taught by Vijayakumar in order to control what

devices are allowed to connect and which devices to force off the network (Vijayakumar

at 0101 – wherein the firewall instructs the access point to send the malicious wireless

device a deauthentication frame to remove the malicious wireless device from the

network).

Regarding claim 20.  Koganti teaches wherein the application barrier is

configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the

memory of the mobile device (see Application Barrier item 324 in figure 3, 0036-0037

wherein DTMS interacts with applications 324 to detect a threat, 0038-0039 – detect

manipulation and/or modification of the program code, 0042 – monitor the operations

and/or configurations of the applications, 0069, 0075-0076),

a second attempt by the user to install a second application on the mobile

device, and a third attempt by the application to access content from a disallowed

source outside of the controlled environment facility (0042 wherein SMS application

request access to the modem to send a short message or wherein application tries to

access content from unauthorized social media, paragraph 0075 wherein the DTMS

may respond to threats even if the electronic device is in possession of an authorized

user, software, firmware, and/or hardware of the electronic device may exhibit and/or

engage in behavior that constitutes the threat of the security of the device**.  For**

**example, a user of the device may download a flashlight application and consent**

**to a user agreement for the flashlight application.  The user may be unaware that**

**the user agreement includes consent for the flashlight App to upload pictures**

**and contact information to the server (e.g., detect second attempt to access**

**device settings).  However, the scoring service (see item 345 in figure 3) may**

**detect the uploading (e.g., detect second attempt to access device settings) as a**

**threat based on security policy.  Subsequently, the targeted security action**

**service 360 (figure 3) may deny access of the flashlight Application to the file**

**system content 245 and/or the peripheral hardware device interface.  In this way,**

**the DTMS 340 (figure 3) may prevent the flashlight application from engaging in**

**the undesired and threating behavior**); and

preventing a processor of the mobile device from executing any operations

related to the first attempt, the second attempt, and the third attempt (paragraph 0075

wherein the DTMS may respond to threats even if the electronic device is in possession

of an authorized user, software, firmware, and/or hardware of the electronic device may

exhibit and/or engage in behavior that constitutes the threat of the security of the

device**.  For example, a user of the device may download a flashlight application**

**and consent to a user agreement for the flashlight application.  The user may be**

**unaware that the user agreement includes consent for the flashlight App to**

**upload pictures and contact information to the server (e.g., detect second attempt**

**to access device settings).  However, the scoring service (see item 345 in figure**

**3) may detect the uploading (e.g., detect second attempt to access device**

**settings) as a threat based on security policy.  Subsequently, the targeted**

**security action service 360 (figure 3) may deny access of the flashlight**

**Application to the file system content 245 and/or the peripheral hardware device**

**interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight**

**application from engaging in the undesired and threating behavior**).

Regarding claim 21.  Koganti teaches wherein the operating system (OS) is

configured to prevent the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile

device; and preventing the processor of the mobile device from executing operations

related to the attempt (Paragraph 0039 monitor OS/OS kernel and device behavior,

monitor connection status of peripheral hardware and/or transmission/reception status

with an unsanctioned source outside of.  Paragraphs 0041-0042 monitor for Text input

request requesting access to the modem to send SMS text or a social media

application.  Paragraph 0043 wherein monitors 342 may monitor request for network

connections.  Paragraph 0046 request/attempts for web access, request/attempts to

download/upload data and/or connection to a particular base station, access point,

website, or identified network, SSID violations.  Paragraph 0050 wherein a USB

connection to peripheral hardware may pose a threat.  Paragraph 0052 wherein

violations and/or changes of the design and/or intended use of the electronic device

may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph 0066 wherein

monitors 342 may monitor for and detect a connection of the electronic device to a

public WiFi network.  Paragraph 0069 wherein SMS used to communicate outside of is

also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device**.  For example, a user of the device may download a flashlight application and consent to a user agreement for the flashlight application.  The user may be unaware that the user agreement includes consent for the flashlight App to upload pictures and contact information to the server (e.g., detect second attempt to access device settings).  However, the scoring service (see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to access device settings) as a threat based on security policy.  Subsequently, the targeted security action service 360 (figure 3) may deny access of the flashlight Application to the file system content 245 and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application from engaging in the undesired and threating behavior**), wherein the device settings include a wireless access point setting (0043 network access settings of a modem and/or the computer network interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to 3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

Regarding claim 22.  Koganti in view of Yuen and Hangsleben do not show wherein the access control barrier is configured to perform filtering of the plurality of packets by:

receiving a packet transmitted by or directed to the mobile device;

Application/Control Number: 15/435,993                                    Page 29
Art Unit: 2646

performing an inspection of a packet, the inspection including obtaining an

address of the packet; determining that the address is not among a plurality of

addresses stored on the firewall device; and in response to the determining, discarding

the packet.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108). **Vijayakumar teaches**

**firewall rules include using source and destination address (0025, 0027)**.

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

in view of Yuen and Hangsleben to implement a firewall that can detect monitor source

and destination addresses as taught by Vijayakumar in order to control data flowing to

and from the firewall.

### *Response to Arguments*

6.      Applicant's arguments filed 5/28/2019 have been fully considered but they

are not persuasive.

a) Applicant's skip the Koganti reference and argue the applied art does not

teach disable non-secure functions of an application stored in the memory of the mobile

device (paper dated 5/28/2019).

The Examiner notes Applicant fails to point to the specification for support.

Therefore, t**he Examiner notes support for Applicants amendment is at paragraph 0018 of the originally filed specification – disable web browser.**

Koganti further teaches disable non-secure functions of an application stored in the memory of the mobile device (0003 – modify access for at least one or more applications (e.g., **browser application** which is consistent with applicants specification at 0018), 0005 – modify access and/or operations of at least one or more applications which includes a **browser application**, 0007 – modify operations of one or more applications which includes **web access**, 0009 – modify operations of at least one application or the service – **web access**, **figure 3 – Applications including "Browser" labeled 326**, 0038 – monitor for **web access**, 0046 – monitor triggers relating to **web access**, 0069 – alter or modify operations of the applications, 0070 – **selectively modify, inhibit, or disable access to website,** TABLE 2 – allow for browser, **disallow for social media application**, TABLE 5 – disable JavaScript for the website and/or change site authorization to read-only or block the website, 0084 – **security policy for** one or more applications, websites, **social media application may differ from security policy for a banking application**, Table 11 – minimize browsing tabs).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to further modify the teaching of Yuen to include the Device Trust Management Service (DTMS) having one or more security policies for one or more applications as taught by Koganti in order to disallow/disable certain applications and/or functions of applications.

Application/Control Number: 15/435,993                                    Page 31
Art Unit: 2646

### *Conclusion*

7.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

        ---(2016/0094560) Stuntebeck also teaches an application barrier that enables,

or disables a browser app (0064) and/or modify features of an Internet browsing app

(0068), as well as, block access if compromised (e.g., jailbroken) at 0069 and device

settings further include Bluetooth radio and cellular settings.

**8.      THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

9.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to BARRY W TAYLOR whose telephone number is

(571)272-7509.  The examiner can normally be reached on Monday-Thursday: 7-5.

        Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

| *Notice of References Cited* | Application/Control No.<br>15/435,993 | Applicant(s)/Patent Under<br>Reexamination<br>MARASS et al. | |
|---|---|---|---|
| | Examiner<br>BARRY W TAYLOR | Art Unit<br>2646 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20160094560-A1 | 03-2016 | Stuntebeck; Erich Peter | H04L63/102 | 726/1 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20190710A

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| H04W 12/08, 4/001, 4/008 | 2/27/2018 | BWT |
| H04M 1/72569, 1/72563, 1/72577, 1/18 | 02/27/2018 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| no double patenting.  east search attached. | 02/27/2018 | BWT |
| updated search. | 09/13/2018 | BWT |
| updated search. | 2/20/2019 | BWT |
| updated search. | 07/10/2019 | BWT |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

| /BARRY W TAYLOR/<br>Primary Examiner, Art Unit 2646 | /BARRY W TAYLOR/<br>Primary Examiner, Art Unit 2646 |
|---|---|

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/27/2018 | 09/13/2018 | 02/20/2019 | 07/10/2019 | | | | |
| | 1 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 2 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 3 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 4 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 5 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 6 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 7 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 8 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 9 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 10 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 11 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 12 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 13 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 14 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 15 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 16 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 17 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 18 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 19 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 20 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 21 | ✓ | ✓ | ✓ | ✓ | | | | |
| | 22 | ✓ | ✓ | ✓ | ✓ | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **SECOND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 15/435,993 |
| | Filing Date | February 17, 2017 |
| | First Named Inventor | Jason MARASS |
| | Art Unit | 2646 |
| | Examiner Name | TAYLOR, Barry W. |
| Sheet | 1 | of | 1 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 2006/0095175 A1 | 05-04-2006 | deWaal et al. | |
| | US2 | 2009/0128356 A1 | 05-21-2009 | Nitta et al. | |
| | US3 | 2011/0039581 A1 | 02-17-2011 | Cai et al. | |
| | US4 | 2011/0004878 A1 | 01-06-2011 | Divoux | |
| | US5 | 2013/0293378 A1 | 11-07-2013 | Aninye et al. | |
| | US6 | 2013/0318594 A1 | 11-28-2013 | Hoy et al. | |
| | US7 | 2014/0115466 A1 | 04-24-2014 | Barak et al. | |
| | US8 | 2014/0157141 A1 | 06-05-2014 | Hussain | |
| | US9 | 2014/0333425 A1 | 11-13-2014 | Giraud | |
| | US10 | 2015/0105105 A1 | 04-16-2015 | Van Heerden et al. | |
| | US11 | 2015/0237052 A1 | 08-20-2015 | Brique et al. | |
| | US12 | 2017/0013393 A1 | 01-12-2017 | Chang | |
| | US13 | 2017/0039784 A1 | 02-09-2017 | Gelbart et al. | |
| | US14 | 2017/0146801 A1 | 05-25-2017 | Stempora | |
| | US15 | 2017/0168164 A1 | 06-15-2017 | Lee | |
| | US16 | 2017/0233168 A1 | 08-17-2017 | Horvath et al. | |
| | US17 | 2018/0159972 A1 | 06-07-2018 | Hodge et al. | |
| | US18 | 2018/0275859 A1 | 09-27-2018 | Hodge | |
| | US19 | 2018/0316675 A1 | 11-01-2018 | Hodge | |
| | US20 | 9,272,713 B1 | 03-01-2016 | Dvoskin | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 07/10/2019 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **SECOND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 15/435,993 |
| | | | Filing Date | February 17, 2017 |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | 2646 |
| | | | Examiner Name | TAYLOR, Barry W. |
| Sheet | 1 | of | 1 | Attorney Docket Number | 3210.1280000 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published | T[2] |
| | NPL1 | International Search Report and Written Opinion of the International Searching Authority directed to related International Patent Application No. PCT/US2018/000080, mailed April 30, 2018; 14 pages. | |
| | NPL2 | International Search Report and Written Opinion of the International Searching Authority directed to related International Patent Application No. PCT/US2018/024611, mailed June 11, 2018; 8 pages. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 07/10/2019 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.
ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 44 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$ or US-20130194067-$ or US-20180048752-$ or US-20170126733-$ or US-20110314475-$ or US-20150186661-$ or US-20130303143-$ or US-20150074615-$ or US-20070142041-$ or US-20170163615-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2019/07/10 09:20 |
| L2 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2019/07/10 09:20 |
| L3 | 0 | 2 and (unsecure or un-secure) | US-PGPUB; USPAT | OR | ON | 2019/07/10 09:22 |
| L4 | 1 | 2 and (secur$4) | US-PGPUB; USPAT | OR | ON | 2019/07/10 09:22 |
| L5 | 1 | 2 and (application near7 barrier) | US-PGPUB; USPAT | OR | ON | 2019/07/10 09:29 |
| L6 | 0 | 1 and (application near7 barrier) | US-PGPUB; USPAT | OR | ON | 2019/07/10 09:32 |
| L7 | 29 | 1 and (social or facebook$4 or yelp$4 or web-browser$1 or browser$1 or chrome$3 or firefox$3) | US-PGPUB; USPAT | OR | ON | 2019/07/10 09:45 |
| L8 | 1 | "20170329966" | US-PGPUB; USPAT | OR | ON | 2019/07/10 10:36 |
| L9 | 1 | 8 and modif$7 | US-PGPUB; | OR | ON | 2019/07/10 10:36 |

| | | | USPAT | | | |
|---|---|---|---|---|---|---|
| L10 | 1 | 8 and disabl$7 | US-PGPUB; USPAT | OR | ON | 2019/07/10 10:52 |
| S1 | 164 | (((correction$4 adj3 facilit$4) or prison or inmat$4) same tamper$4 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/20 09:20 |
| S2 | 1 | "20100151820" | US-PGPUB; USPAT | OR | ON | 2018/02/20 09:55 |
| S3 | 20 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/20 10:06 |
| S4 | 13 | ("20110237226" \| "20140108649" \| "20170061006" \| "20170084150" \| "20170193622" \| "5255306" \| "6054928" \| "7587067" \| "9282188" \| "9866680" \| "9871915" \| "9888108" \| "9892242").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/20 10:12 |
| S5 | 83 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618" \| "20120099714" \| "20120252411" \| "20120262271" \| "20130179210" \| "20130311364" \| "20140032691" \| "20140044242" \| "20140089849" \| "20140108649" \| "20140109174" \| "20140219432" \| "20140267547" \| "20140273929" \| "20140282868" \| "20140287715" \| "20150242629" \| "20160055323" \| "20160066182" \| "20160088021" \| "20160219146" \| "20160267257" \| "20160330084" \| "20160381212" \| "20160381219" \| "20160381556" \| "20170061006" \| "20170177892" \| "20170208468" \| "4495386" \| "5896556" \| "6058173" \| "6668045" \| "6965590" \| "7085359" \| "7106843" \| "7218993" \| "7254708" \| "7280816" \| "7333798" \| "7366782" \| "7529357" \| "7742581" \| "7804941" \| "7860222" \| "7899167" \| "8019354" \| "8031052" \| "8370206" \| "8428559" \| "8498937" \| "8571525" \| "8639926" \| "8646056" \| "8917848" \| "9094500" \| "9124763" \| "9232051" \| "9262604" \| | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/20 10:16 |

| | | "9307386" | "9614954" | "9614955" | "9661128" | "9674338").PN. | | | | |
|---|---|---|---|---|---|---|
| S6 | 6262 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:40 |
| S7 | 5312 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:41 |
| S8 | 1792 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:44 |
| S9 | 0 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) same (charg$5 adj4 another adj4 device)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:45 |
| S10 | 147 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) same (charg$5 adj4 device)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:45 |
| S11 | 10 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same (new adj2 (app or application)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:55 |
| S12 | 855 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((app or application) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:58 |
| S13 | 227 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:07 |
| S14 | 99 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:08 |
| S15 | 6262 | S6((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:09 |

| | | ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | | | | |
|---|---|---|---|---|---|---|
| S16 | 99 | ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:09 |
| S17 | 4 | ("20140108649" or "20150242629" or "20160267257" or "20170177892").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:45 |
| S18 | 20 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060002352" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:11 |
| S19 | 20 | ("20120099714" OR "20120252411" OR "20120262271" OR "20130179210" OR "20130311364" OR "20140032691" OR "20140044242" OR "20140089849" OR "20140109174" OR "20140219432" OR "20140267547" OR "20140273929" OR "20140282868" OR "20140287715" OR "20150242629" OR "20160055323" OR "20160066182" OR "20160088021" OR "20160219146" OR "20160267257").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:24 |
| S20 | 18 | "9307386" | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:30 |
| S21 | 1 | "9307386".PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:32 |
| S22 | 13 | ("20110237226" \| "20140108649" \| "20170061006" \| "20170084150" \| "20170193622" \| "5255306" \| "6054928" \| "7587067" \| "9282188" \| "9866680" \| "9871915" \| "9888108" \| "9892242").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:29 |
| S23 | 20 | ("20160330084" OR "20160381212" OR "20160381219" OR "20160381556" OR "20170208468" OR "20170177892" OR "4495386" OR "5896556" OR "6058173" OR "6668045" OR "6965590" OR "7085359" OR "7106843" OR "7218993" OR "7254708" OR "7280816" OR "7333798" OR "7366782" OR "7529357" OR "7742581").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:34 |
| S24 | 2 | "20120252411" | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:49 |
| S25 | 5 | ("20010036821" \| "20020071537" \| "5535261" \| "6052454" \| "6064963").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/21 16:00 |
| S26 | 20 | ("7804941" OR "7860222" OR "7899167" OR "8019354" OR "8031052" OR | US-PGPUB; | OR | ON | 2018/02/21 16:07 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "8370206" OR "8428559" OR "8498937" OR "8571525" OR "8639926" OR "8646056" OR "8917848" OR "9094500" OR "9124763" OR "9232051" OR "9262604" OR "9307386" OR "9614954" OR "9614955" OR "9661128").PN. | USPAT; USOCR | | | |
| S27 | 5 | "9674338" | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:10 |
| S28 | 7528 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or ((correction$4 adj2 facility) or penal) and ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:17 |
| S29 | 73371 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) (settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:18 |
| S30 | 61884 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) (settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/21 16:19 |
| S31 | 643 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) near7(settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/21 16:20 |
| S32 | 644 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) near7(settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 09:15 |
| S33 | 1 | "20150188949" | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:29 |

| S34 | 1 | S33 and settings | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:29 |
|------|---------|------|------|------|------|------|
| S35 | 1 | S33 and (app or application$1) | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:32 |
| S36 | 1 | "20110055899" | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:49 |
| S37 | 1 | S36 and (devic$2) | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:49 |
| S38 | 0 | S36 and (mobile or phone or cellphone or smartphone) | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:51 |
| S39 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:01 |
| S40 | 149192 | S39 same (hardware or software or application or (device adj3 settings)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:04 |
| S41 | 14250 | S39 same (operating adj2 system) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:05 |
| S42 | 57264 | S39 near7 (hardware or software or application or (device adj3 settings)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:05 |
| S43 | 2513 | S39 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:07 |
| S44 | 0 | S39 same (detectf$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:27 |
| S45 | 35 | S39 same (detect$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:27 |
| S46 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:53 |
| S47 | 35 | S46 same (detect$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:53 |
| S48 | 2 | "20120240197" | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:54 |
| S49 | 2 | S48 and tamper$6 | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:55 |
| S50 | 56 | S46 same (detect$5 near7 (download$4 | US- | OR | OFF | 2018/02/22 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | or acess$5) near7 (software or application or (device adj3 (configuration$1 or settings)))) | PGPUB; USPAT | | | 13:02 |
| S51 | 277 | S46 and (layered adj2 security) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:12 |
| S52 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:22 |
| S53 | 55828 | S52 same ((delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:24 |
| S54 | 841 | S52 same ((ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near4 (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:28 |
| S55 | 0 | S52 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near7 (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:42 |
| S56 | 68 | S52 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) same (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) same (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:42 |
| S57 | 1867 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:44 |
| S58 | 49 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near7 settings) | US-PGPUB; USPAT | OR | ON | 2018/02/22 14:13 |
| S59 | 179 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:51 |
| S60 | 179 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:52 |
| S61 | 677 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5 or prevent$5) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:52 |

| | | or application or (device adj3 (configuration$1 or settings)))) | | | | |
|---|---|---|---|---|---|---|
| S62 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:33 |
| S63 | 13 | "2015/0040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:34 |
| S64 | 498 | S61 not S60 | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:50 |
| S65 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:08 |
| S66 | 1 | S65 and (mobile or cellular or phone or telephone or smartphone or pda) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:09 |
| S67 | 1 | S65 and application | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:10 |
| S68 | 1 | S65 and device | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:13 |
| S69 | 1 | S65 and (software or (system adj2 call)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:18 |
| S70 | 1 | S65 and (os or (operating adj2 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:19 |
| S71 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S72 | 0 | "20170244729""20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S73 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S74 | 5 | deauthenticat$5 adj4 (dos or (denial adj2 service adj3 attack)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 17:03 |
| S75 | 41 | deauthenticat$5 same (dos or (denial adj2 service adj3 attack)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 17:06 |
| S76 | 266 | ((ssid$1) near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:30 |
| S77 | 139 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:34 |

| | | ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | | | | |
|---|---|---|---|---|---|---|
| S78 | 141 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:34 |
| S79 | 141 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 06:49 |
| S80 | 0 | S79 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:12 |
| S81 | 6265 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:12 |
| S82 | 204 | S81 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:12 |
| S83 | 3 | "9576157" | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:19 |
| S84 | 0 | ((unathorized near3 (use or usage or used)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:22 |
| S85 | 599 | ((unauthorized or sanctioned or unsanctioned or contraband or illicit$3 or pirated or smuggled or bootlegged or illegal) same ((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:24 |
| S86 | 5 | "20090253410" | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:30 |
| S87 | 1 | "20090253410".pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:56 |
| S88 | 1 | S87 and (operat$4 adj3 system) | US-PGPUB; | OR | ON | 2018/02/23 07:56 |

| | | | USPAT | | | |
|---|---|---|---|---|---|---|
| S89 | 1 | S87 and (software or application) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:59 |
| S90 | 6504 | ((jailbreak$4 or (jail adj3 break$4) or rooting) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 08:30 |
| S91 | 38 | S90 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 08:31 |
| S92 | 82 | S90 and (ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 08:36 |
| S93 | 1 | "20170329966" | US-PGPUB; USPAT | OR | OFF | 2018/02/23 09:01 |
| S94 | 1 | S93 and (case or tamper$5) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 09:01 |
| S95 | 3977 | (case same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 09:07 |
| S96 | 20 | S95 same (front same back) | US-PGPUB; USPAT | OR | ON | 2018/02/23 09:08 |
| S97 | 15 | ((case or shell or cover or enclosure) same (front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:00 |
| S98 | 31 | (( front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:01 |
| S99 | 31 | ((front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:02 |
| S100 | 24484 | ((front adj3 plate) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:04 |
| S101 | 3489 | S100 same (back adj3 plate) | US-PGPUB; | OR | ON | 2018/02/23 12:04 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S102 | 814 | ((front adj3 plate) near7 (back adj3 plate) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:05 |
| S103 | 6612 | ((case or shell or cover or enclosure or housing) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:22 |
| S104 | 2317 | (((case or shell or cover or enclosure or housing) near7 (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant)))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:22 |
| S105 | 2 | S104 and ((case or shell or cover or enclosure or housing) same ((earphone or headphone) near3 port$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:51 |
| S106 | 24 | ("20050058494" \| "20060138182" \| "20120305422" \| "20130009413" \| "20130265643" \| "20130265644" \| "20150068934" \| "20150150362" \| "20150296651" \| "20160166321" \| "4850657" \| "6567651" \| "7370840" \| "7630745" \| "8281924" \| "8616422" \| "8973795" \| "9004330" \| "9419669" \| "D670279" \| "D674803" \| "D685358" \| "D690305" \| "D718316").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/23 12:53 |
| S107 | 28 | ("2015/0068934").URPN. | USPAT | OR | ON | 2018/02/23 12:54 |
| S108 | 82 | S104 and ((case or shell or cover or enclosure or housing) same ((usb) near3 port$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:55 |
| S109 | 1 | "20160291643".pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S110 | 0 | S109 and (usb or (serial)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S111 | 1 | S109 and (port) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S112 | 458 | (diode same (charg$4 adj3 port)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:05 |
| S113 | 12 | S112 same (prevent$5 adj4 current) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:05 |
| S114 | 2 | "20160291643" | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:16 |
| S115 | 26 | (US-20160007201-$ or US-20150215254- | US- | OR | ON | 2018/02/23 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | $ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$).did. or (US-9892242-$ or US-9262604-$).did. | PGPUB; USPAT | | | 13:18 |
| S116 | 5 | S115 and (ota or (over adj3 air) or over-the-air) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:18 |
| S117 | 260 | S100 and (ota or (over adj3 air) or over-the-air) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:27 |
| S118 | 1 | S100 and ((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:27 |
| S119 | 1845 | (((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:28 |
| S120 | 1013 | (((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:28 |
| S121 | 26 | S120 same (wifi or wi-fi or blu or bluetooth or "802.11") | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:29 |
| S122 | 2 | "20140226487" | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:44 |
| S123 | 0 | S122 and (blu or bluetooth or "802.11") | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:44 |
| S124 | 9 | S120 same (bluetooth or (blue adj2 tooth)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:00 |
| S125 | 307 | (((ota or (over adj3 air) or over-the-air) same (bluetooth or (blue adj2 tooth)) same (configuration$1 or settings)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:43 |
| S126 | 114 | S125 same (os or (operat$4 adj2 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:45 |
| S127 | 7 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or | US-PGPUB; | | ON | 2018/02/23 15:11 |

| | | "20140226487" or "20160094560" or "20110162060").pn. | US-PGPUB; USPAT | | | |
|---|---|---|---|---|---|---|
| S128 | 2 | S127 and kernel | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:12 |
| S129 | 27 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$).did. or (US-9892242-$ or US-9262604-$).did. | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:17 |
| S130 | 7 | S129 and kernel | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:17 |
| S131 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:26 |
| S132 | 3 | S131 and ((uninstall$5 or delet$5 or remov$5) near7 (app or application$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:27 |
| S133 | 7 | S131 and (app or application$1) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:33 |
| S134 | 4 | S131 and ((install$5 or download$4 or (down adj2 load$4)) near7 (app or application$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:35 |
| S135 | 2 | S131 and (filter$5 near7 (traffic or packet$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:34 |
| S136 | 5 | S131 and (firewall) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:38 |
| S137 | 1 | S131 and (access adj3 point adj3 identifier$1) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:51 |
| S138 | 6 | S131 and ((uninstall$5 or delet$5 or remov$5)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 17:22 |
| S139 | 7 | S131 and (case or cover or housing or enclosure or protective or tamper$9) | US-PGPUB; USPAT | OR | ON | 2018/02/23 17:33 |
| S140 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/23 18:22 |
| S141 | 2 | S140 and "26" | US-PGPUB; USPAT | OR | ON | 2018/02/23 18:22 |

| S142 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 07:38 |
|------|-----|------|------|------|------|------|
| S143 | 6 | S142 and (mac or address$3 or ssid$1 or (service adj3 set)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 07:38 |
| S144 | 5 | S142 and (settings or identifier$1) | US-PGPUB; USPAT | OR | ON | 2018/02/26 07:53 |
| S145 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:22 |
| S146 | 6 | S145 and (wifi or wi-fi or wlan or w-lan or hotspot or "802.11"$3) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:23 |
| S147 | 5 | S145 and (os or (operat$4 adj3 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:40 |
| S148 | 7 | S145 and (hardware or case or tamper$5 or enclosure or shell or cover or housing or protective) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:47 |
| S149 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:40 |
| S150 | 13 | "2015/0040246" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:40 |
| S151 | 1 | "20170329966" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:43 |
| S152 | 0 | "2017/0329966" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:43 |
| S153 | 10281 | ((jailbroken or jailbreak$4 or (jail aj2 (brokn or break$4))) near7 (os or (operat$6 adj3 system))) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:07 |
| S154 | 1 | S153 same (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:09 |
| S155 | 49 | S153 and (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:09 |
| S156 | 67580 | (kernel same (os or (operat$6 adj3 system))) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:11 |
| S157 | 23 | S156 same (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:11 |
| S158 | 2 | ("20130097660" or "20140298403").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:08 |
| S159 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:55 |

| S160 | 4 | S159 and exchang$4 | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:56 |
| S161 | 6 | S159 and (text or txt or sms or data or external) | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:57 |
| S162 | 2 | "20160291643" | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
| S163 | 0 | S162 and ssid | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
| S164 | 0 | S162 and (access adj3 point) | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
| S165 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:00 |
| S166 | 29 | S165 and (settings or ssid$1 or essid$1 or addresses or mac) | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:00 |
| S167 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:01 |
| S168 | 6 | S167 and (settings or ssid$1 or essid$1 or addresses or mac) | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:01 |
| S169 | 1 | S167 and screws | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:34 |
| S170 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |
| S171 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US- | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | | | | |
| S172 | 5 | S170 and firewall | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |
| S173 | 2 | "20110162060" | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |
| S174 | 0 | S173 and deauthicat$5 | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |
| S175 | 2 | S173 and deauthenticat$5 | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |
| S176 | 3 | S170 and discard$6 | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:04 |
| S177 | 5 | S170 and (filter$5 or packet$4) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:06 |
| S178 | 6 | S170 and (filter$5 or packet$4 or firewall) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:06 |
| S179 | 5 | S170 and (address$4) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:10 |
| S180 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/09/12 09:04 |
| S181 | 3 | S180 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:07 |
| S182 | 1 | "20180242155" | US- | OR | OFF | 2018/09/12 |

| | | | PGPUB; USPAT | | | 09:21 |
|---|---|---|---|---|---|---|
| S183 | 1 | S182 and port | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:22 |
| S184 | 1 | S182 and (hardware adj3 barr$4) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:42 |
| S185 | 23 | S180 and (port$1 or connector$1 or jack) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:47 |
| S186 | 631 | (((correction$4 adj3 facilit$4) or prison or inmat$4) and (access$4 near7 (port or usb))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 09:58 |
| S187 | 6 | ("20110162060" or "20140226487" or "200423698" or "20160291643" or "20170329966" or "20150040246" or "20160309008").pn. | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:23 |
| S188 | 7 | ("20110162060" or "20140226487" or "20040023698" or "20160291643" or "20170329966" or "20150040246" or "20160309008").pn. | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:24 |
| S189 | 35 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:25 |
| S190 | 1 | S188 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:27 |
| S191 | 15 | S189 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:29 |
| S192 | 2 | "20130194067" | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:37 |
| S193 | 1 | S182 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:02 |
| S194 | 1 | S182 and (second same (gui or (graphical adj2 user adj2 interface))) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:05 |
| S195 | 1 | S182 and (second same attempt) | US- | OR | OFF | 2018/09/12 |

| | | | PGPUB; USPAT | | | 2018/09/12 12:06 |
|---|---|---|---|---|---|---|
| S196 | 1 | S182 and (settings same (gui or (graphical adj2 user adj2 interface))) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:06 |
| S197 | 2 | S188 and (access$5 near7 settings) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:09 |
| S198 | 3 | S188 and (settings) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:10 |
| S199 | 4272901 | prevent$5 near7 access$5 near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:13 |
| S200 | 4160465 | prevent$5 near7 (access$5 adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:13 |
| S201 | 4160212 | user near7 prevent$5 near7 (access$5 adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:14 |
| S202 | 4160121 | user near7 prevent$5 near7 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:15 |
| S203 | 4160120 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:19 |
| S204 | 12546 | S203 near7 attempt$5 | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:20 |
| S205 | 4254875 | ((user near3 prevent$5) near$47 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:21 |
| S206 | 4254097 | ((user near3 prevent$5) near$4 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:21 |
| S207 | 133 | prevent$5 near7 access$5 near5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:22 |
| S208 | 1 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near7 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:23 |
| S209 | 1 | "20170126733" | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:43 |
| S210 | 1 | S209 and sso | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:43 |
| S211 | 0 | S209 and settings | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:45 |
| S212 | 1 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near7 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:02 |
| S213 | 1 | ((user near3 prevent$5) same (access$5 adj4 device adj4 settings) same (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:02 |

| S214 | 72 | ((user same (access$5 adj4 device adj4 settings) same (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:03 |
| S215 | 305 | tamper same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:13 |
| S216 | 27 | (second adj2 attempt) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:43 |
| S217 | 30199 | (user same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings)) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:58 |
| S218 | 2376 | ((user near3 chang$4) same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings)) | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:05 |
| S219 | 1106 | ((user near3 chang$4) same ((ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) near7 ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings))) | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:09 |
| S220 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:22 |
| S221 | 2 | S220 and ("27" or "122") | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:23 |
| S222 | 129798 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:07 |
| S223 | 6220 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) near7 settings) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:08 |
| S224 | 6558 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) near7 (configurations or settings)) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:08 |
| S225 | 3120 | S224 same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:09 |
| S226 | 80 | S225 same (prevent$5 or unauthorised or unauthorized or unlawful or illegal or unsanctioned or prohibit$6) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:12 |
| S227 | 2 | "20150074615" | US- | OR | ON | 2018/09/13 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 09:30 |
| S228 | 2 | S227 and (settings or configurations) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:31 |
| S229 | 2 | S227 and (try) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:49 |
| S230 | 1 | "20070142041" | US-PGPUB; USPAT | OR | ON | 2018/09/13 10:33 |
| S231 | 2 | "20150074615" | US-PGPUB; USPAT | OR | ON | 2018/09/13 10:36 |
| S232 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:19 |
| S233 | 1 | S232 and ((gui or (user adj2 interface)) same prevent$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:26 |
| S234 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:36 |
| S235 | 2 | S234 and (grayed or out or hide or hidden) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:36 |
| S236 | 0 | S224 same (second near3 attempt$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:46 |
| S237 | 137 | S224 and (second near3 attempt$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:46 |
| S238 | 44 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$ or US-20130194067-$ or US-20180048752-$ or US-20170126733-$ or US-20110314475-$ or US-20150186661-$ or US-20130303143-$ or US-20150074615-$ or US-20070142041-$ or US-20170163615-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2019/02/19 15:45 |
| S239 | 1 | "20180242155" | US- | OR | ON | 2019/02/19 |

| | | | PGPUB; USPAT | | | 15:46 |
|---|---|---|---|---|---|---|
| S240 | 1 | S239 and display | US-PGPUB; USPAT | OR | ON | 2019/02/19 15:46 |
| S241 | 1 | S239 and setting$1 | US-PGPUB; USPAT | OR | ON | 2019/02/19 15:47 |
| S242 | 1 | S239 and detect$5 | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:03 |
| S243 | 1 | S239 and (detect$5 same (display or gui or graphical)) | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:05 |
| S244 | 1 | S239 and (kernel) | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:09 |
| S245 | 1 | S239 and (system adj2 call$5) | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:19 |
| S246 | 17 | S238 and (kernel or (system adj2 call$5)) | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:20 |
| S247 | 599 | (kernel same (device near4 settings)) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:17 |
| S248 | 9 | S247 same prevent$5 | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:17 |
| S249 | 9 | S247 same alter$5 | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:21 |
| S250 | 16 | S247 same (prevent$5 or unauthorised or unauthorized or unlawful or illegal or unsanctioned or prohibit$6) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:23 |
| S251 | 6963 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:28 |
| S252 | 2 | S247 and S251 | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:28 |
| S253 | 1 | S247 and (prisoner or inmat$4 or incarcerat$4 or convict or jailbird) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:29 |
| S254 | 31 | S247 and (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:30 |
| S255 | 357 | S247 and ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or | US-PGPUB; USPAT | OR | OFF | 2019/02/19 17:35 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | wtu$2 or pda or cellphone)) | | | | |
| S256 | 198 | S247 same ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2019/02/19 17:36 |
| S257 | 44 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$ or US-20130194067-$ or US-20180048752-$ or US-20170126733-$ or US-20110314475-$ or US-20150186661-$ or US-20130303143-$ or US-20150074615-$ or US-20070142041-$ or US-20170163615-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:28 |
| S258 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:28 |
| S259 | 1 | S258 and (settings same (gui or (user adj2 interface) or graphical)) | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:29 |
| S260 | 1 | S258 and (hardware) | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:34 |
| S261 | 11 | S257 and kernel | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:46 |
| S262 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2019/02/20 12:30 |
| S263 | 0 | S262 and (settings same (gui or (user adj2 interface) or graphical)) | US-PGPUB; USPAT | OR | ON | 2019/02/20 12:30 |
| S264 | 1 | S262 and (settings or (gui or (user adj2 interface) or graphical)) | US-PGPUB; USPAT | OR | ON | 2019/02/20 12:30 |
| S265 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2019/02/20 13:19 |
| S266 | 1 | S265 and (settings same (gui or (user adj2 interface) or graphical)) | US-PGPUB; | OR | ON | 2019/02/20 13:19 |

| | | | USPAT | | | |
|---|---|---|---|---|---|---|
| S267 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2019/02/20 13:53 |
| S268 | 1 | S267 and settings | US-PGPUB; USPAT | OR | ON | 2019/02/20 13:53 |
| S269 | 1 | S267 and kernel | US-PGPUB; USPAT | OR | ON | 2019/02/20 13:56 |
| S270 | 1 | S267 and (settings same application$1) | US-PGPUB; USPAT | OR | ON | 2019/02/20 14:11 |
| S271 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2019/02/20 14:25 |
| S272 | 1 | S271 and (delet$5) | US-PGPUB; USPAT | OR | ON | 2019/02/20 14:25 |
| S273 | 1 | S271 and (install$6) | US-PGPUB; USPAT | OR | ON | 2019/02/20 14:30 |
| S274 | 0 | S271 and (ota or o-t-a or (over adj2 air)) | US-PGPUB; USPAT | OR | ON | 2019/02/20 14:34 |
| S275 | 1 | S271 and (remot$4 same settings) | US-PGPUB; USPAT | OR | ON | 2019/02/20 14:35 |
| S276 | 1 | S271 and (bluetooth) | US-PGPUB; USPAT | OR | ON | 2019/02/20 14:39 |

7/10/2019 11:53:50 AM
C:\ Users\ btaylor\ Documents\ EAST\ Workspaces\ Workspaces\ % 15,435,993 prevent use of mobile for inmates.wsp

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>15/435,993 | Filing Date<br>02/17/2017 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE  ☐ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = * | | x $80 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = * | | x $420 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| AMENDMENT | 05/28/2019 | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total<br>(37 CFR 1.16(i)) | * 22 | Minus | ** 22 | = 0 | x $100 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $460 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /TRINA RIDDICK/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment and Reply Under 37 C.F.R. § 1.111

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In reply to the Office Action dated February 26, 2019, Applicant submits the following Amendment and Remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks and Arguments** begin on page 10 of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 36128625 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Maya Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 28-MAY-2019 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 16:08:25 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2019-05-28-Cover-Letter-3210-1280000.PDF | 223490<br>2f05c59dd3e301cb331ff7be7d18f9f1147c1567 | no | 1 |

**Warnings:**

**Information:**

| 2 | | 2019-05-28-Amendment-Reply-111-3210-1280000.PDF | 173808<br><br>4826244e017c1384a37dbc04c0aa4b38c74a9a77 | yes | 15 |
|---|---|---|---|---|---|

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Applicant Arguments/Remarks Made in an Amendment | 10 | 15 |
| Claims | 2 | 9 |
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 397298 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**LAUREN C. SCHLEH**
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

May 28, 2019

Commissioner for Patents                                    *Confirmation No. 1254*
PO Box 1450                                                          *Art Unit 2646*
Alexandria, VA 22313-1450                              *Attn: Mail Stop Amendment*

   Re: U.S. Utility Patent Application
      Appl. No. 15/435,993; Filing Date: February 17, 2017
      For: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
      Inventors: MARASS *et al.*
      Our Ref: 3210.1280000

Commissioner:

   Transmitted herewith for appropriate action is a document entitled *Amendment and Reply Under 37 C.F.R. § 1.111*, which is submitted electronically.

   In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

   The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) or credit any overpayment to our Deposit Account No. 19-0036.

        Respectfully submitted,

        STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

        /Lauren C. Schleh/

        Lauren C. Schleh
        Attorney for Applicant
        Registration No. 65,457

LCS/crb
Enclosure(s)

13201786_1

## Remarks

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 1-22 are pending in the application, with claims 1, 9, and 17 being the independent claims. By this Amendment, claims 1, 9 and 17 are amended. Applicant respectfully reserves the right to prosecute similar or broader claims, with respect to the cancelled and/or amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Based on the above amendment and the following remarks, Applicant respectfully requests that the Examiner reconsider all outstanding objections and rejections and that they be withdrawn.

### Rejections under 35 U.S.C. § 112

The Office Action rejects claims 1, 9, and 17 under 35 U.S.C. § 112(a) or 35 U.S.C. § 112 (pre-AIA), first paragraph, as allegedly failing to comply with the written description requirement. This rejection is respectfully traversed.

The Office Action first argues that the recitation in claims 1 and 9, and the similar recitation in claim 17, of "detect an attempt to access settings of the mobile device by a user of the mobile device via a graphical user interface" is not supported.  Applicant respectfully disagrees. Applicant's specification discloses this limitation at least at paragraph [0033], which states "[b]arrier 230 is the OS security barrier, also implemented on a mobile device, in which the OS of the mobile device is secured to prevent tampering with the settings of the device. This barrier prevents the inmate user from accessing the device settings GUI that is common on most mobile devices…" In other words, even though the icon for accessing the settings GUI may be removed, a

- 11 -                                                                    MARASS *et al.*
Reply to Office Action of February 26, 2019                          Application No. 15/435,993

user may still navigate to the settings GUI for purposes of implementing changes. However, in the
interest of advancing prosecution, this limitation has been amended responsive to the rejection in
claims 1 and 9.

Accordingly, Applicant respectfully requests withdrawal of the rejection.


### Rejections under 35 U.S.C. § 103

Claims 1, 4-5, 7-9, 12-13, and 15-16 stand rejected under 35 U.S.C. § 103 as allegedly being
unpatentable over U.S. Patent Application Publication No. 2015/0040246 to Yuen *et al.* in view of
U.S. Patent Application Publication No. 2017/0329966 to Koganti *et al.* and U.S. Patent
Application Publication No. 2016/0309008 to Hangsleben further in view of U.S. Patent
Application Publication No. 2017/0244729 to Fahrny *et al.*; claims 2 and 10 stand rejected under 35
U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in view of Koganti *et al.*,
Hangsleben and Fahrny *et al.* further in view of U.S. Patent Application Publication No.
2016/0291643 to Sande *et al.*; claims 3 and 11 stand rejected under 35 U.S.C. § 103 as allegedly
being unpatentable over Yuen *et al.* in view of Koganti *et al.*, Hangsleben, Fahrny *et al.* and Sande
*et al.* further in view of U.S. Patent Application Publication No. 2004/0023698 to Chang; claims 6
and 14 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in
view of Koganti *et al.*, Hangsleben and Fahrny *et al.* further in view of U.S. Patent Application
Publication No. 2014/0226487 to Forssell *et al.*; and claims 17-22 stand rejected under 35 U.S.C. §
103 as allegedly being unpatentable over Koganti *et al.* in view of Yuen *et al.*, Hangsleben and U.S.
Patent Application Publication No. 2011/0162060 to Vijayakumar *et al.* further in view of Fahrny
*et al.* These rejections are respectfully traversed.


Atty. Dkt. No. 3210.1280000

The applied references fail to disclose, and would not have rendered obvious, at least "an application barrier stored on a memory of the mobile device, the application barrier configured to…disable non-secure functions of an application stored in the memory of the mobile device," as recited in independent claim 1.

The Office Action alleges that Yuen discloses the claimed application barrier at paras. [0031]-[0032] because Yuen discloses preventing applications from being installed without authorization.  However, the mere preventing of a user from installing applications does not "disable non-secure functions" of those applications. The remaining references also appear to be silent with respect to this feature, and therefore fail to at least cure Yuen's deficiencies.

For at least similar reasons, the applied references fail to disclose and would not have rendered obvious at least "execute the first set of operations of the application barrier, the first set of operations comprising: disable non-secure functions of an application stored in the memory of the mobile device," as recited in independent claim 9, and "an application barrier, stored on a memory of the mobile device, configured to disable non-secure functions of an application stored in the memory of the mobile device, and prevent an unsanctioned function from being performed on the mobile device," as recited in independent claim 17.

The applied references also fail to disclose, and would not have rendered obvious, at least "an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to…detect an attempt to access device settings of the mobile device by a user of the mobile device; and prevent, at a kernel of an operating system operating on the mobile device, the processor of the mobile device from executing operations that attempt to access or alter the device settings of the mobile device," as recited in independent claim 1.

- 13 -                                                                     MARASS *et al.*
Reply to Office Action of February 26, 2019                    Application No. 15/435,993

The Office Action alleges that Yuen discloses these limitations because Yuen discloses disabling the system of function calls by newly-installed applications. Office Action, pp. 5-6. However, nothing in the cited portions of Yuen (nor anywhere else in Yuen) discloses detecting attempts to access device settings, or preventing the execution of instructions to alter those device settings. The Office Action appears to acknowledge Yuen's failure, and thus relies on Fahrny to cure Yuen's deficiencies. Office Action, p. 10. But Fahrny is directed to preventing a hacker, who has gained access to the device root, from accessing certain application functions. Fahrny, ¶ [0020]. In other words, Fahrny merely teaches setting privileges for each application process and/or kernel to access software and hardware components of the device. Fahrny, ¶ [0041]. Thus, Fahrny does not detect the  attempt to access the settings, but rather merely prevents access to the settings upon detecting an intrusion to the root. The remaining references are silent with respect to these limitations, and therefore fail to at least cure Fahrny's deficiencies.

For at least similar reasons, the applied references fail to disclose and would not have rendered obvious at least "execute the second set of operations of the OS barrier, the second set of operations comprising: detecting an attempt to access device settings of the mobile device by the user of the mobile device; and preventing, at a kernel of an operating system operating on the mobile device, the processor from executing operations that attempt to access or alter the device settings of the mobile device," as recited in independent claim 9, and "an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change or access of device settings of the mobile device by a user of the mobile device via a graphical user interface, and to prevent, at a kernel of an operating system operating on the mobile device,

- 14 -                                                        MARASS *et al.*

Reply to Office Action of February 26, 2019                  Application No. 15/435,993

executing of instructions that attempt to access or alter the device settings of the mobile device," as

recited in independent claim 17.

Therefore, independent claims 1, 9 and 17 are patentable over the applied references. Claims

2-8, 10-16 and 18-22 are patentable at least for their dependencies from the independent claims, as

well as for the additional features they recite.

Accordingly, Applicant respectfully requests withdrawal of the rejections.

Atty. Dkt. No. 3210.1280000

- 15 -                                                                    MARASS *et al.*
Reply to Office Action of February 26, 2019                      Application No. 15/435,993

## *Conclusion*

All of the stated grounds rejection have been properly traversed, accommodated, or rendered

moot. Applicant therefore respectfully requests that the Examiner reconsider all presently

outstanding rejections and that they be withdrawn. Applicant believes that a full and complete reply

has been made to the outstanding Office Action and, as such, the present application is in condition

for allowance. If the Examiner believes, for any reason, that personal communication will expedite

prosecution of this application, the Examiner is invited to telephone the undersigned at the number

provided.

Prompt and favorable consideration of this Amendment and Reply is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:   May 28, 2019

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

13156079_1

Atty. Dkt. No. 3210.1280000

- 2 -

Reply to Office Action of February 26, 2019

MARASS *et al.*
Application No. 15/435,993

## *Amendments to the Claims*

This listing of claims will replace all prior versions, and listings, of claims in the application.

1.      (Currently Amended) A system of layered security barriers of a mobile device that prevents

unsanctioned use of the mobile device, comprising:

        a hardware barrier that includes a front plate and a back plate, the hardware barrier

obstructing access to at least one port of the mobile device;

        an application barrier stored on a memory of the mobile device, the application barrier

configured to:

                disable non-secure functions of an application stored in the memory of the

mobile device;

                detect an attempt to perform an unsanctioned function of [[an]]the application

stored in the memory of the mobile device;

                prevent a processor of the mobile device from executing operations related to

the attempt to perform the unsanctioned function; and

        an operating system (OS) barrier stored in the memory of the mobile device, the OS

barrier configured to:

                detect an attempt to access device settings of the mobile device by a user of

the mobile device via a graphical user interface; and

                prevent, at a kernel of an operating system operating on the mobile device,

the processor of the mobile device from executing operations [[the]]that attempt to access or

alter the device settings of the mobile device;

Atty. Dkt. No. 3210.1280000

wherein the unsanctioned function includes exchanging data with an unsanctioned

source outside of; and

wherein the device settings include a wireless access point setting.

2.      (Original) The system of claim 1, wherein the front plate and the back plate of the hardware

barrier are configured to form a seal around the device that allows physical contact with only a

screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the

mobile device, and a universal serial bus (USB) port of the mobile device.

3.      (Original) The system of claim 2, further comprising a diode connected to the barrel charger

port, the diode preventing electrical current from flowing out of the barrel charger port.

4.      (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

5.      (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to install a second application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

6.      (Original) The system of claim 1, wherein the application barrier is further configured to:

detect an over-the-air command received by the mobile device over a wireless link;

determine that the command meets a security requirement of a second application

sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow

the command to be executed by a processor of the mobile device.

7.    (Previously Presented) The system of claim 1, wherein the attempt to access or alter the device

settings of the mobile device is initiated by the application.

8.    (Original) The system of claim 1, wherein the device settings further include a Bluetooth radio

setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the

mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting

determining whether or not the mobile device may receive data over a cellular wireless link.

9.    (Currently Amended) A mobile device, comprising:

a memory that stores a first set of operations of an application barrier and a second

set of operations of an operating system (OS) barrier; and

a processor configured to:

execute the first set of operations of the application barrier, the first set of

operations comprising:

disable non-secure functions of an application stored in the memory

of the mobile device;

detecting an attempt by a user of the mobile device to perform an

unsanctioned function of [[an]]the application stored on the memory; and

preventing the processor from executing operations related to the first

attempt; and

execute the second set of operations of the OS barrier, the second set of

operations comprising:

detecting an attempt to access device settings of the mobile device by

the user of the mobile device ~~via a graphical user interface~~; and

preventing, at a kernel of an operating system operating on the mobile

device, the processor from executing operations [[the]]<u>that</u> attempt to access or alter the

device settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned

source outside of the controlled environment facility; and

wherein the device settings include a wireless access point setting.


10.    (Original) The mobile device of claim 9, wherein a hardware barrier that includes a front plate

and a back plate fastened together by tamper-resistant screws is configured to form a seal

around the device that allows direct physical contact with only a screen of the mobile device, a

headphone port of the mobile device, a barrel charger port of the mobile device, and a

universal serial bus (USB) port of the mobile device.


11.    (Original) The mobile device of claim 10, wherein a diode is connected to  the barrel charger

port, the diode preventing electrical current from flowing out of the barrel charger port.


12.    (Original) The mobile device of claim 9, wherein first set of operations further comprises:

- 6 -

Reply to Office Action of February 26, 2019

> detecting an attempt to delete the application on the mobile device; and
>
> sending a command to the processor to cancel the attempt.

13.   (Original) The mobile device of claim 9, wherein first set of operations further comprises:

> detecting an attempt to install a second application on the mobile device; and
>
> sending a command to the processor of the mobile device to cancel the installation

attempt.

14.   (Original) The mobile device of claim 9, wherein the first set of operations further comprises:

> detecting an over-the-air command received by the mobile device over a wireless

link;

> determining that the over-the-air command is from a sanctioned source; and
>
> in response to determining that the command is from the sanctioned source, allowing

the command to be executed by the processor.

15.   (Previously Presented) The mobile device of claim 9, wherein the attempt to access or alter the

device settings of the mobile device is initiated by the application.

16.   (Original) The mobile device of claim 9, wherein the device settings further include a

Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining

whether or not the mobile device may receive data over a Bluetooth wireless link, and the

cellular radio setting determining whether or not the mobile device may receive data over a

cellular wireless link.

Atty. Dkt. No. 3210.1280000

MARASS *et al.*
Reply to Office Action of February 26, 2019                    Application No. 15/435,993

17.    (Currently Amended) A system of layered security barriers designed to prevent unsanctioned

use of a mobile device in a controlled environment facility, comprising:

      a hardware barrier that includes a front plate and a back plate configured to form a

seal around the mobile device that allows limited physical contact with the mobile device,

the hardware barrier obstructing access to at least one port of the mobile device;

      an application barrier, stored on a memory of the mobile device, configured to

<u>disable non-secure functions of an application stored in the memory of the mobile device,</u>

<u>and</u> prevent an unsanctioned function from being performed on the mobile device;

      an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change or access of device settings of the mobile

device by a user of the mobile device via a graphical user interface, and to prevent, at a

kernel of an operating system operating on the mobile device, executing of instructions that

attempt to access or alter the device settings of the mobile device; and

      an access control barrier implemented on a firewall device between a wireless access

point serving the controlled-environment facility and a network, the access control barrier

configured to perform filtering of a plurality of packets directed to or transmitted by the

mobile device.


18.    (Original) The system of claim 17, the system further comprising a wireless intrusion barrier

implemented on the wireless access point device, the wireless intrusion barrier configured to:

      detect an attempt by the mobile device to connect with a second wireless access

point device;

Reply to Office Action of February 26, 2019

> obtain a wireless access point identifier associated with the second wireless access point device;

> determine that the second wireless access point identifier is not among a plurality of wireless access point identifiers stored on the wireless access point device; and

> in response to the determining, attack the mobile device using a deauthentication denial of service attack.

19.   (Original) The system of claim 18, wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

20.   (Original) The system of claim 17, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

> detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

> preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

21.   (Original) The system of claim 17, wherein the operating system (OS) is configured to prevent the unsanctioned change of the device settings by:

> detecting an attempt by a user to access the device settings on the mobile device; and

preventing the processor of the mobile device from executing operations related to

the attempt,

wherein the device settings include a wireless access point setting.


22.    (Original) The system of claim 17, wherein the access control barrier is configured to perform

filtering of the plurality of packets by:

receiving a packet transmitted by or directed to the mobile device;

performing an inspection of a packet, the inspection including obtaining an address

of the packet;

determining that the address is not among a plurality of addresses stored on the

firewall device; and

in response to the determining, discarding the packet.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **SECOND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 15/435,993 |
| | | | Filing Date | February 17, 2017 |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | 2646 |
| | | | Examiner Name | TAYLOR, Barry W. |
| Sheet | 1 | of 1 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code [2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 2006/0095175 A1 | 05-04-2006 | deWaal et al. | |
| | US2 | 2009/0128356 A1 | 05-21-2009 | Nitta et al. | |
| | US3 | 2011/0039581 A1 | 02-17-2011 | Cai et al. | |
| | US4 | 2011/0004878 A1 | 01-06-2011 | Divoux | |
| | US5 | 2013/0293378 A1 | 11-07-2013 | Aninye et al. | |
| | US6 | 2013/0318594 A1 | 11-28-2013 | Hoy et al. | |
| | US7 | 2014/0115466 A1 | 04-24-2014 | Barak et al. | |
| | US8 | 2014/0157141 A1 | 06-05-2014 | Hussain | |
| | US9 | 2014/0333425 A1 | 11-13-2014 | Giraud | |
| | US10 | 2015/0105105 A1 | 04-16-2015 | Van Heerden et al. | |
| | US11 | 2015/0237052 A1 | 08-20-2015 | Brique et al. | |
| | US12 | 2017/0013393 A1 | 01-12-2017 | Chang | |
| | US13 | 2017/0039784 A1 | 02-09-2017 | Gelbart et al. | |
| | US14 | 2017/0146801 A1 | 05-25-2017 | Stempora | |
| | US15 | 2017/0168164 A1 | 06-15-2017 | Lee | |
| | US16 | 2017/0233168 A1 | 08-17-2017 | Horvath et al. | |
| | US17 | 2018/0159972 A1 | 06-07-2018 | Hodge et al. | |
| | US18 | 2018/0275859 A1 | 09-27-2018 | Hodge | |
| | US19 | 2018/0316675 A1 | 11-01-2018 | Hodge | |
| | US20 | 9,272,713 B1 | 03-01-2016 | Dvoskin | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **SECOND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | Application Number | 15/435,993 |
| | | Filing Date | February 17, 2017 |
| | | First Named Inventor | Jason MARASS |
| | | Art Unit | 2646 |
| | | Examiner Name | TAYLOR, Barry W. |
| Sheet | 1 of 1 | Attorney Docket Number | 3210.1280000 |

**NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published | T[2] |
|---|---|---|---|
| | NPL1 | International Search Report and Written Opinion of the International Searching Authority directed to related International Patent Application No. PCT/US2018/000080, mailed April 30, 2018; 14 pages. | |
| | NPL2 | International Search Report and Written Opinion of the International Searching Authority directed to related International Patent Application No. PCT/US2018/024611, mailed June 11, 2018; 8 pages. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

PATENT COOPERATION TREATY

From the INTERNATIONAL SEARCHING AUTHORITY

Sterne Kessler Goldstein
& Fox, P.L.L.C.
C. EVERITT

To:
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005
USA

**PCT**

NOTIFICATION OF TRANSMITTAL OF
THE INTERNATIONAL SEARCH REPORT AND
THE WRITTEN OPINION OF THE INTERNATIONAL
SEARCHING AUTHORITY, OR THE DECLARATION

(PCT Rule 44.1)

| Date of mailing (day/month/year) | **3 0 APR 2018** |
|---|---|

| Applicant's or agent's file reference 3210.128PC01 | **FOR FURTHER ACTION**   See paragraphs 1 and 4 below |
|---|---|

| International application No. PCT/US18/00680 | International filing date (day/month/year)  16 February 2018 (16.02.2018) |
|---|---|

Applicant
GLOBAL TEL* LINK CORP.

1. ☒ The applicant is hereby notified that the international search report and the written opinion of the International Searching Authority have been established and are transmitted herewith.

  **Filing of amendments and statement under Article 19:**
  The applicant is entitled, if he so wishes, to amend the claims of the international application (see Rule 46):

  **When?**   The time limit for filing such amendments is normally two months from the date of transmittal of the international search report.

  **How?**   Directly to the International Bureau of WIPO, preferably through ePCT or on paper to, 34 chemin des Colombettes 1211 Geneva 20, Switzerland, Facsimile No.: +41 22 338 82 70

  **For more detailed instructions, see** PCT Applicant's Guide, International Phase, paragraphs 9.004-9.011.

2. ☐ The applicant is hereby notified that no international search report will be established and that the declaration under Article 17(2)(a) to that effect and the written opinion of the International Searching Authority are transmitted herewith.

3. ☐ With regard to any protest against payment of (any additional fee) under Rule 40.2, the applicant is notified that:

  ☐ the protest together with the decision thereon has been transmitted to the International Bureau together with any request to forward the texts of both the protest and the decision thereon to the designated Offices.

  ☐ no decision has been made yet on the protest; the applicant will be notified as soon as a decision is made.

4. **Reminders**

  The applicant may submit comments on an informal basis on the written opinion of the International Searching Authority to the International Bureau. These comments will be made available to the public after international publication. The International Bureau will send a copy of such comments to all designated Offices unless an international preliminary examination report has been or is to be established.

  Shortly after the expiration of 18 months from the priority date, the international application will be published by the International Bureau. If the applicant wishes to avoid or postpone publication, a notice of withdrawal of the international application, or of the priority claim, must reach the International Bureau before the completion of the technical preparations for international publication (Rules 90bis.1 and 90bis.3).

  Within 19 months from the priority date, but only in respect of some designated Offices, a demand for international preliminary examination must be filed if the applicant wishes to postpone the entry into the national phase until 30 months from the priority date (in some Offices even later); otherwise, the applicant must, within 28 months from the priority date, perform the prescribed acts for entry into the national phase before those designated Offices. In respect of other designated Offices, the time limit of 30 months (or later) will apply even if no demand is filed within 19 months. For details about the applicable time limits, Office by Office, see www.wipo.int/pct/en/texts/time_limits.html and the PCT Applicant's Guide, National Chapters.

  Within 19 months from the priority date, the applicant may request that a supplementary international search be carried out by a different International Searching Authority that offers this service (Rule 45bis.1). The procedure for requesting supplementary international search is described in the PCT Applicant's Guide, International Phase, paragraphs 8.006-8.032.

| Name and mailing address of the ISA/ US | Authorized officer |
|---|---|
| Mail Stop PCT, Attn: ISA/US Commissioner for Patents P.O. Box 1450 Alexandria, Virginia 22313-1450 | Harry Kim |
| Facsimile No. (571) 273-8300 | Telephone No. 571-272-4300 |

Form PCT/ISA/220 (July 2014)

PATENT COOPERATION TREATY

# PCT

## INTERNATIONAL SEARCH REPORT

(PCT Article 18 and Rules 43 and 44)

| Applicant's or agent's file reference 3210.128PC01 | FOR FURTHER ACTION | see Form PCT/ISA/220 as well as, where applicable, item 5 below. |
|---|---|---|
| International application No. PCT/US18/00086 | International filing date (day/month/year) 16 February 2018 (16.02.2018) | (Earliest) Priority Date (day/month/year) 17 February 2017 (17.02.2017) |
| Applicant GLOBAL TEL* LINK CORP. | | |

This international search report has been prepared by this International Searching Authority and is transmitted to the applicant according to Article 18. A copy is being transmitted to the International Bureau.

This international search report consists of a total of ⟨2⟩ sheets.

☐ It is also accompanied by a copy of each prior art document cited in this report.

1.  **Basis of the Report**
    a.  With regard to the **language**, the international search was carried out on the basis of:
    
    ☒  the international application in the language in which it was filed.
    
    ☐  a translation of the international application into _____, which is the language of a translation furnished for the purposes of international search (Rules 12.3(a) and 23.1(b)).
    
    b. ☐ This international search report has been established taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 Rule 43.6 bis(a).
    
    c. ☐ With regard to any **nucleotide and/or amino acid sequence** disclosed in the international application, see Box No. I.

2. ☐ **Certain claims were found unsearchable** (See Box No. II).

3. ☐ **Unity of invention is lacking** (See Box No. III).

4.  With regard to the **title**,
    
    ☒  the text is approved as submitted by the applicant.
    
    ☐  the text has been established by this Authority to read as follows:

5.  With regard to the **abstract**,
    
    ☒  the text is approved as submitted by the applicant.
    
    ☐  the text has been established, according to Rule 38.2(b), by this Authority as it appears in Box No. IV. The applicant may, within one month from the date of mailing of this international search report, submit comments to this Authority.

6.  With regard to the **drawings**,
    a.  the figure of the **drawings** to be published with the abstract is Figure No. 1
    
    ☒  as suggested by the applicant.
    
    ☐  as selected by this Authority, because the applicant failed to suggest a figure.
    
    ☐  as selected by this Authority, because this figure better characterizes the invention.
    
    b. ☐ none of the figures is to be published with the abstract.

Form PCT/ISA/210 (first sheet) (April 2007)

| INTERNATIONAL SEARCH REPORT | International application No. |
|---|---|
| | PCT/US18/00086 |

**A.   CLASSIFICATION OF SUBJECT MATTER**
IPC:     H04W 12/08( 2009.01),4/00( 2018.01);H04M 1/725( 2006.01)

CPC:    H04W 12/06, 12/12, 12/08, 88/02; H04L 63/08
According to International Patent Classification (IPC) or to both national classification and IPC

**B.    FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
    CPC : H04W 12/06, 12/12, 12/08, 88/02; H04L 63/08

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

**C.    DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category * | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| Y | US 2017/0329966A1 (KOGANTI et al.) 16 November 2017, see entire document. | 1-22 |
| Y | US 2015/0040246 A1 (Yuen et al.) 05 February 2015, see entire document. | 1-16 |
| Y | US 2016/0291643 A1 (Sand et al.) 06 October 2016, see entire document. | 2, 10 |
| Y | US 2004/0023698 A1(Chang) 05 February 2004, see entire document. | 3, 11 |
| Y | US 2014/0226487 A1 (Forssell et al.) 14 August 2014, see entire document. | 6, 14 |
| Y | US 2011/0162060 A1 (Vijayakumar et al. 30 June 2011, see entire document. | 17-22 |

☐   Further documents are listed in the continuation of Box C.     ☐   See patent family annex.

| * | Special categories of cited documents: | "T" | later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
|---|---|---|---|
| "A" | document defining the general state of the art which is not considered to be of particular relevance | | |
| "E" | earlier application or patent published on or after the international filing date | "X" | document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "L" | document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) | "Y" | document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art |
| "O" | document referring to an oral disclosure, use, exhibition or other means | | |
| "P" | document published prior to the international filing date but later than the priority date claimed | "&" | document member of the same patent family |

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 19 April 2018 (19.04.2018) | 30 APR 2018 |
| Name and mailing address of the ISA/US | Authorized officer |
| Mail Stop PCT, Attn: ISA/US<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | Harry Kim<br><br>Telephone No. 571-272-6300 |
| Facsimile No. (571) 273-8300 | |

Form PCT/ISA/210 (second sheet) (April 2007)

PATENT COOPERATION TREATY

From the
INTERNATIONAL SEARCHING AUTHORITY

| To: STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C. 1100 NEW YORK AVENUE, N.W. WASHINGTON, DC 20005 USA | **PCT** |
|---|---|

**WRITTEN OPINION OF THE
INTERNATIONAL SEARCHING AUTHORITY**

(PCT Rule 43bis.1)

| Date of mailing (day/month/year) | **3 0 APR 2018** |
|---|---|

| Applicant's or agent's file reference | FOR FURTHER ACTION See paragraph 2 below |
|---|---|
| 3216.128PC01 | |

| International application No. | International filing date (day/month/year) | Priority date (day/month/year) |
|---|---|---|
| PCT/US18/00080 | 16 February 2018 (16.02.2018) | 17 February 2017 (17.02.2017) |

International Patent Classification (IPC) or both national classification and IPC

IPC:  **H04W 12/08**( 2009.01),**4/00**( 2018.01);**H04M 1/725**( 2006.01)
CPC:  H04W 12/06, 12/12, 12/08, 88/02; H04L 63/08

Applicant

GLOBAL TEL* LINK CORP.

1. This opinion contains indications relating to the following items:

☒ Box No. I       Basis of the opinion

☐ Box No. II      Priority

☐ Box No. III     Non-establishment of opinion with regard to novelty, inventive step and industrial applicability

☐ Box No. IV      Lack of unity of invention

☒ Box No. V       Reasoned statement under Rule 43bis.1(a)(i) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement

☐ Box No. VI      Certain documents cited

☐ Box No. VII     Certain defects in the international application

☐ Box No. VIII    Certain observations on the international application

2. **FURTHER ACTION**

If a demand for international preliminary examination is made, this opinion will be considered to be a written opinion of the International Preliminary Examining Authority ("IPEA") except that this does not apply where the applicant chooses an Authority other than this one to be the IPEA and the chosen IPEA has notified the International Bureau under Rule 66.1bis(b) that written opinions of this International Searching Authority will not be so considered.

If this opinion is, as provided above, considered to be a written opinion of the IPEA, the applicant is invited to submit to the IPEA a written reply together, where appropriate, with amendments, before the expiration of 3 months from the date of mailing of Form PCT/ISA/220 or before the expiration of 22 months from the priority date, whichever expires later.

For further options, see Form PCT/ISA/220.

3. For further details, see notes to Form PCT/ISA/220.

| Name and mailing address of the ISA/ US Mail Stop PCT, Attn: ISA/US Commissioner for Patents P.O. Box 1450 Alexandria, Virginia 22313-1450 Facsimile No. (571) 273-8300 | Date of completion of this opinion 19 April 2018 (19.04.2018) | Authorized officer Harry Kim Telephone No.  571-272-4300 |
|---|---|---|

Form PCT/ISA/237 (cover sheet) (April 2007)

**WRITTEN OPINION OF THE**
**INTERNATIONAL SEARCHING AUTHORITY**

PCT/US18/00086

---

**Box No. I  Basis of this opinion**

1. With regard to the **language**, this opinion has been established on the basis of:

    ☒   the international application in the language in which it was filed

    ☐   a translation of the international application into _____, which is the language of a translation furnished for the purposes of international search (Rules 12.3(a) and 23.1(b)).

2. ☐  This opinion has been established taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rule 43bis.1(a)).

3. With regard to any **nucleotide and/or amino acid sequence** disclosed in the international application, this opinion has been established on the basis of:

    a.   type of material

        ☐   a sequence listing

        ☐   table(s) related to the sequence listing

    b.   format of material

        ☐   on paper

        ☐   in electronic form

    c.   time of filing/furnishing

        ☐   contained in the international application as filed.

        ☐   filed together with the international application in electronic form.

        ☐   furnished subsequently to this Authority for the purposes of search.

4. ☐  In addition, in the case that more than one version or copy of a sequence listing and/or table(s) relating thereto has been filed or furnished, the required statements that the information in the subsequent or additional copies is identical to that in the application as filed or does not go beyond the application as filed, as appropriate, were furnished.

5. Additional comments:

---

Form PCT/ISA/237 (Box No. I) (April 2007)

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. PCT/US18/00080 |
|---|---|

**Box No. V**  Reasoned statement under Rule 43 *bis*.1(a)(i) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement

1.  Statement

|  | | | |
|---|---|---|---|
| Novelty (N) | Claims | 1-22 | YES |
| | Claims | NONE | NO |
| Inventive step (IS) | Claims | NONE | YES |
| | Claims | 1-22 | NO |
| Industrial applicability (IA) | Claims | 1-22 | YES |
| | Claims | NONE | NO |

2.  Citations and explanations:

Please See Continuation Sheet

Form PCT/ISA/237 (Box No. V) (April 2007)

International application No.
PCT/US18/00086

WRITTEN OPINION OF THE
INTERNATIONAL SEARCHING AUTHORITY

**Supplemental Box**
In case the space in any of the preceding boxes is not sufficient.

**V. 2. Citations and Explanations:**

Claims 1-22 meet the criteria set out in PCT Article 33(2), because the prior art does not teach or fairly suggest the claimed invention.

Claims 1-22 meet the criteria set out in PCT Article 33(4), and thus have industrial applicability because the subject matter claimed can be made or used in industry.

. Claims 1,4-5, 7-9, 12-13, 15-16 lack an inventive step under PCT Article 33(3)< as being obvious over Yuen et al (2015/0040246) in view of Kogani et al (2017/0329966).

Regarding claims 1 and 9. Yuen teaches a mobile device and a system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate; an application barrier stored on a memory of the mobile device, the application barrier configured to: detect a first attempt to perform an unsanctioned function of an application stored in the memory of the mobile device (figure 1, 0031-0032 wherein smartphone item 10 has mobile agent item 20 having an installed application list item 22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the mobile that the application was changed (e.g., installed or removed);

prevent a processor of the mobile device from executing operations related to the first attempt (0041 - one example means for disabling (i.e., not allowing user of the mobile device to access and execute) the newly installed application, another example means for disabling by the mobile agent to disable or otherwise redirect a system of function call associated with the newly installed application, such that mobile agent would not allow the system of function call issued by the Operating System of the device infrastructure to be received by the newly installed application. Another example means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of a user interface icon associated with the newly installed application, 0053-0055 as discussed above, each mobile device is configured with Mobile Agent 20 for managing content of the application list 22, containing identification of all mobile applications

presently installed (and/or removed) on the mobile device and the mobile agent can quarantine/disable non-compliant applications); and

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. PCT/US18/00080 |
|---|---|

**Supplemental Box**
In case the space in any of the preceding boxes is not sufficient.

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

detect a second attempt to access device settings of the mobile device (0041 another example means for disabling by the mobile agent to disable or otherwise redirect a system of function call associated with the newly installed application, such that mobile agent would not allow the system of function call issued by the

Operating System of the device infrastructure to be received by the newly installed application, 0052 as may be the case for a jail broken (e.g., OS barrier) or rooted device (e.g., OS barrier). As such, it can be an advantage to have the list 22 maintained by the mobile device wherein list 22 is a local list of all authorized applications installed)); and

prevent the processor of the mobile device from executing operations related the second attempt (0053-0055 as discussed above, each mobile device is configured with Mobile Agent 20 for managing content of the application list 22, containing identification of all mobile applications presently installed (and/or removed) on the mobile device and the mobile agent can quarantine/disable non-compliant applications);

Yuen does not show hardware barrier or wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

Koganti teaches a mobile device uses a Device Trust Management Service DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003,

0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093-Application triggers, OS triggers, SSID violation, hardware Triggers, unauthorized communication network, jailbroken OS, a rooted OS, etc.). Koganti teaches hardware barrier (0003, 0005,

0007, 0009, 0038, 0045 -- detect tampering to the device including an opened mobile device case, obviously having a front and back (e.g., port plate and back

plate). 0069, 0093), Application Barrier (figure 3 item 324, 0069) and Operating System Barrier (figure 3 item 320, 0036, 0069).

Koganti teaches wherein the unsanctioned function includes exchanging data with a unsanctioned source outside of (see 0003, 0005, 0007, 0009 wherein detect unsanctioned browser app, media player app, or network connection service used for exchanging data with an unsanctioned source outside of). Koganti teaches the status include operations of and/or configurations of the electronic device. The operations of the electronic device include Operating System or Application operations (0016). Paragraph 0038 web access status, network connectivity status, application threat status used to exchange data with outside of. Paragraph 0039 monitor OS/OS kernal and device behavior, monitor connection status of peripheral hardware and/or transmission/reception status with an unsanctioned source outside of. Paragraphs 0041-0042 monitor for Text input request requesting access to the modem to send SMS text or a social media application. Paragraph 0043 wherein monitors 342 may monitor request for network connections. Paragraph 0046 request/attempts for web access, request/attempts to download/upload data and/or connection to a particular

base station, access point, website, or identified network, SSID violations. Paragraph 0050 wherein a USB connection to peripheral hardware may pose a threat. Paragraph 0052 wherein violations and/or changes of the design and/or intended use of the electronic device may be a threat. TABLE 1,0064 wherein Unknown SSID. Paragraph 0066 wherein monitors 342 may monitor for and detect a connection of the electronic device to a public WiFi network. Paragraph 0069 wherein SMS used to communicate outside of is also monitored. Paragraph 0070 wherein whitelist/blacklist for particular communications network and/or USB port used for charging BUT not allowed for uploading or downloading files. Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device is in possession of an authorized user, software, firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device. For example, a user of the device may download a flashlight application and consent to a user

agreement for the flashlight application. The user may be unaware that the user

agreement includes consent for the flashlight App to upload pictures and contact

information to the server (e.g., detect second attempt to access device settings).

However, the scoring service (see item 345 in figure 3) may detect the uploading

(e.g., detect second attempt to access device settings) as a threat based on

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. PCT/US18/00080 |
|---|---|

**Supplemental Box**
In case the space in any of the preceding boxes is not sufficient.

security policy. Subsequently, the targeted security action service 360 (figure 3)

may deny access of the flashlight Application to the file system content 245

and/or the peripheral hardware device interface. In this way, the DTMS 340 (figure

3) may prevent the flashlight application from engaging in the undesired and

threating behavior.

Koganti teaches wherein the settings include a wireless access point setting (0043 network access settings of a modem and/or the computer network interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to 3G/4G network, is device connected via USB to a trusted external device. TABLE 4 If WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen to include the Device Trust Management Service (DTMS) as taught by Koganti in order to prevent the device from preforming undesired and threating behavior with an unsanctioned source even if the program has been downloaded.

Regarding claims 4 and 12. Yuen teaches detect an attempt to delete the application on the mobile device (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 -removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0046 - mobile agent first disables the newly installed application, 0041 - the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code (0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Regarding claims 5 and 13. The system of claim 1, wherein the application barrier is further configured to: detect an attempt to install a second application on the mobile device (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 - removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0046 - mobile agent first disables the newly installed application, 0041 - the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code (0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Regarding claims 7 and 15. Yuen teaches wherein the second attempt is initiated by the application (0041).

Koganti teaches wherein the second attempt is initiated by the application (0005, 0038, 0069, 0075).

Regarding claims 8 and 16. Yuen does not show wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth

wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

Koganti teaches a mobile device uses a Device Trust Management Service DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003,

0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093-Application triggers, OS triggers, SSID violation, hardware Triggers, unauthorized communication network, jailbroken OS, a rooted OS, etc.). Koganti teaches hardware barrier (0003, 0005,

0007, 0009, 0032, 0045 - detect tampering to the device including an opened mobile device case, obviously having a front and back (e.g., fort plate and back

plate), 0069, 0093], Application Barrier (figure 3 item 324, 0069) and Operating System Barrier (figure 3 item 326, 0036, 0069).

Koganti teaches wherein the unsanctioned function includes exchanging data with a unsanctioned source outside of (see 0003, 0005,

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. PCT/US12/00086 |
|---|---|

**Supplemental Box**

In case the space in any of the preceding boxes is not sufficient.

0007, 0009 wherein detect unsanctioned browser app, media player app, or network connection service used for exchanging data with an unsanctioned source outside of). Koganti teaches the status include operations of and/or configurations of the electronic device. The operations of the electronic device include Operating System and/or Application operations (0016). Paragraph 0038 web access status, network connectivity status, application threat status used to exchange data with outside of. Paragraph 0039 monitor OS/OS kernel and device behavior, monitor connection status of peripheral hardware and/or transmission/reception status with an unsanctioned source outside of. Paragraphs 0041-0042 monitor for Text input request requesting access to the modem to send SMS text or a social media application. Paragraph 0043 wherein monitors 342

may monitor request for network connections. Paragraph 0046 request/attempts for web access, request/attempts to download/upload data and/or connection to a particular base station, access point, website, or identified network, SSID violations. Paragraph 0050 wherein a USB connection to peripheral hardware may pose a threat. Paragraph 0052 wherein violations and/or changes of the design and/or intended use of the electronic device may be a threat. TABLE 1,0064 wherein Unknown SSID. Paragraph 0066 wherein monitors 342 may monitor for and detect a connection of the electronic device to a public WiFi network. Paragraph 0069 wherein SMS used to communicate outside of is also monitored. Paragraph 0070 wherein whitelist/blacklist for particular communications network and/or USB port used for charging BUT not allowed for uploading or downloading files. Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device is in possession of an authorized user, software, firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device. For example, a user of the device may download a flashlight application and consent to a user agreement for the flashlight application. The user may be unaware that the user agreement includes consent for the flashlight App to upload pictures and contact information to the server (e.g., detect second attempt to access device settings). However, the scoring service (see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to access device settings) as a threat based on security policy. Subsequently, the targeted security action service 360 (figure 3) may deny access of the flashlight Application to the file system content 245 and/or the peripheral hardware device.

interface. In this way, the DTMS 340 (figure 3) may prevent the flashlight application from engaging in the undesired and threating behavior.

Koganti teaches wherein the settings include a wireless access point setting (0043 network access settings of a modem and/or the computer network

interface.0046 SSID violation, unauthorized access point. 0060-0064 unknown

SSID. 0066 monitor for and detect public WiFi. 0075-0076 and TABLE 3 is device

connected to trusted Bluetooth network, is device connected to trusted Wi-Fi

network, is device connected to 3G/4G network, is device connected via USB to a

trusted external device. TABLE 4 If WiFi SSID indicates untrusted WiFi network.

deny or limit enterprise services. 0093].

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen to monitor changes in Bluetooth, Wi-Fi, and 3G/4G network as taught by Koganti in order to prevent the device from preforming undesired and threating behavior with an

unsanctioned source.

2.   Claims 2 and 10 lack an inventive step under PCT Article 33(3), as being obvious over Yuen in view of Koganti further in view of Sande et al (2016/0291643).

Regarding claims 2 and 10, Yuen in view of Koganti do not show wherein the front plate and the back plate of the hardware barrier are configured to form a seal around the device that allows physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

Sande teaches protective enclosures have front plate and back plate (0025-0026) to protect the device from rough handling, impact, drops, and moisture (0004) and can have any desired shape (0026). For example, funnel-shaped to allow easier access to corresponding components of the mobile device (e.g., an earphone port, etc.), etc. Sande teaches using tamper-proof screws (0037).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile phone case of Yuen in view of Koganti to have apertures as taught by Sande in order to define a funnel structure to guide a cable/plug associated with the earphone into the earphone port/plug

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. PCT/US18/00080 |
|---|---|

**Supplemental Box**
In case the space in any of the preceding boxes is not sufficient.

3.   Claims 3 and 11 lack an inventive step under PCT Article 33(3), as being obvious over Yuen in view of Koganti and Sande further in view of Chang (2004/0023698).

Regarding claims 3 and 11, Yuen in view of Koganti and Sande do not show a diode connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

Chang teaches using a resistor and diode in series when charging a cell phone, wherein the resistor is used to control the charging current intensity and the diode is applied to prevent a backflow of current from the cell phone (abstract, 0020).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti to use a diode at the charging port as taught by Chang in order to prevent current from flowing from the battery to the charging port.

4. Claims 6 and 14 lack an inventive step under PCT Article 33(3), as being obvious over Yuen in view of Koganti further in view of Forsell et al (2014/0226487).

Regarding claims 6 and 14 Yuen in view of Koganti do not show wherein the application barrier is further configured to: detect an over-the-air command received by the mobile device over a wireless link, determine that the command meets a security requirement of a second application sanctioned to change the device settings; and in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

Forsell teaches device management server, like Nokia Siemens Network's SADM, may be used to configure user devices automatically Over-the-Air. DM server may configure into user devices Wi-Fi network settings, like SSID, and used authentication method (0113-0118).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti to use a Device Management Server as taught by Forsell in order to automatically configure device Wi-Fi settings Over-the-Air.

5. Claims 17-22 lack an inventive step under PCT Article 33(3), as being obvious over Koganti etal (2017/0329966) in view of Vijayakumar et al (2011/0162060).

Regarding claim 17, Koganti teaches system of layered security barriers designed to prevent unsanctioned use of a mobile device in a controlled environment facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form a seal around the mobile device that allows limited physical contact with the mobile device (0003, 0005, 0007, 0009, 0038, 0045 - detect tampering to the device including an opened mobile device case, obviously having a front and back (e.q.,

fort plate and back plate). 0069, 0093);

an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device (figure 3 item 324, 0069);

an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change of device settings of the mobile device (figure 3 item 320, 0036, 0069).; and

Koganti does not show an access control barrier implemented on a firewall device between a wireless access point serving the controlled-environment facility and a network, the access control barrier configured to perform filtering of a plurality of packets directed to or transmitted by the mobile device.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101,0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti to implement a firewall as taught by Vijayakumar in order to control what traffic is allowed to pass

Form PCT/ISA/237 (Supplemental Box) (April 2007)

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. PCT/US18/00080 |
|---|---|

**Supplemental Box**
In case the space in any of the preceding boxes is not sufficient.

through the firewall and what traffic is unauthorized to pass.

Regarding claim 18. Koganti does not show the system further comprising a wireless intrusion barrier implemented on the wireless access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access point device;

obtain a wireless access point identifier associated with the second wireless access point device;

determine that the second wireless access point identifier is not among a plurality of wireless access point identifiers stored on the wireless access point device; and in response to the determining, attack the mobile device using a deauthentication denial of service attack.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network.

Regarding claim 19. Koganti does not show wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network (Vijayakumar at 0101 - wherein the firewall instructs the access point to send the malicious wireless device a deauthentication frame to remove the malicious wireless device from the network).

Regarding claim 20. Koganti teaches wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device (see Application Barrier item 324 in figure 3, 0036-0037 wherein DTMS interacts with applications 324 to detect a threat, 0038-0039 - detect manipulation and/or modification of the program code, 0042 - monitor the operations and/or configurations of the applications, 0069, 0075-0076),

a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility (0042 wherein SMS application request access to the modem to send a short message or wherein application tries to access content from unauthorized social media, paragraph 0075 wherein the DTMS may respond to threats even if the electronic device is in possession of an authorized user, software, firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device. For example, a user of the device may download a flashlight application and consent

to a user agreement for the flashlight application. The user may be unaware that

the user agreement includes consent for the flashlight App to upload pictures

and contact information to the server (e.g., detect second attempt to access

device settings). However, the scoring service (see item 345 in figure 3) may

detect the uploading (e.g., detect second attempt to access device settings) as a

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. PCT/US18/00080 |
|---|---|

**Supplemental Box**
In case the space in any of the preceding boxes is not sufficient.

threat based on security policy. Subsequently, the targeted security action

service 360 (figure 3) may deny access of the flashlight Application to the file

system content 245 and/or the peripheral hardware device interface. In this way,

the DTMS 340 (figure 3) may prevent the flashlight application from engaging in

the undesired and threating behavior); and

preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt (paragraph 0075 wherein the DTMS may respond to threats even if the electronic device is in possession of an authorized user, software, firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device. For example, a user of the device may download a flashlight application

and consent to a user agreement for the flashlight application. The user may be

unaware that the user agreement includes consent for the flashlight App to

upload pictures and contact information to the server (e.q., detect second attempt

to access device settings). However, the scoring service (see item 345 in figure

3) may detect the uploading (e.q., detect second attempt to access device

settings as a threat based on security policy. Subsequently, the targeted

security action service 360 (figure 3) may deny access of the flashlight Application to the file system content 245 and/or the peripheral hardware device

interface. In this way, the DTMS 340 (figure 3) may prevent the flashlight

application from engaging in the undesired and threating behavior).

Regarding claim 21. The system of claim 17, wherein the operating system (OS) is configured to prevent the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile device; and preventing the processor of the mobile device from executing operations

related to the attempt (Paragraph 0039 monitor OS/OS kernel and device behavior, monitor connection status of peripheral hardware and/or transmission/reception status with an unsanctioned source outside of. Paragraphs 0041-0042 monitor for Text input request requesting access to the modem to send SMS text or a social media application. Paragraph 0043 wherein monitors 342 may monitor request for network connections. Paragraph 0046 request/attempts for web access, request/attempts to download/upload data and/or connection to a particular base station, access point, website, or identified network, SSID violations. Paragraph 0050 wherein a USB connection to peripheral hardware may pose a threat. Paragraph 0052 wherein violations and/or changes of the design and/or intended use of the electronic device may be a threat. TABLE 1, 0064 wherein Unknown SSID. Paragraph 0066 wherein monitors 342 may monitor for and detect a connection of the electronic device to a public WiFi network. Paragraph 0069 wherein SMS used to communicate outside of is also monitored. Paragraph 0070 wherein whitelist/blacklist for particular communications network and/or USB port used for charging BUT not allowed for uploading or downloading files. Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device is in possession of an authorized user, software, firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device. For example, a user of the device may download a flashlight application and consent to a user

agreement for the flashlight application. The user may be unaware that the user

agreement includes consent for the flashlight App to upload pictures and contact

information to the server (e.g., detect second attempt to access device settings).

Form PCT/ISA/237 (Supplemental Box) (April 2007)

| WRITTEN OPINION OF THE<br>INTERNATIONAL SEARCHING AUTHORITY | International application No.<br>PCT/US18/00086 |
|---|---|

**Supplemental Box**
In case the space in any of the preceding boxes is not sufficient.

However, the scoring service (see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to access device settings) as a threat based on

security policy. Subsequently, the targeted security action service 360 (figure 3)

may deny access of the flashlight Application to the file system content 245

and/or the peripheral hardware device interface. In this way, the DTMS 340 (figure

3) may prevent the flashlight application from engaging in the undesired and

threating behavior), wherein the device settings include a wireless access point setting (0043 network access settings of a modem and/or the computer network interface,0046 SSID violation, unauthorized access-point, 0060-0064 unknown SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to 3G/4G network, is device connected via USB to a trusted external device, TABLE 4 IF WiFi SSID indicates unstrusted WiFi network, deny or limit enterprise services, 0093).

Regarding claim 22, Koganti does not show wherein the access control barrier is configured to perform filtering of the plurality of packets by:

receiving a packet transmitted by or directed to the mobile device; performing an inspection of a packet, the inspection including obtaining an address of the packet; determining that the address is not among a plurality of addresses stored on the firewall device; and in response to the determining, discarding the packet.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108). Vijayakumar teaches firewall rules include using source and destination address (0025, 00271).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti to implement a firewall that can detect monitor source and destination addresses as taught by Vijayakumar in order to control data flowing to and from the firewall.

Form PCT/ISA/237 (Supplemental Box) (April 2007)

## PATENT COOPERATION TREATY

RECEIVED
JUN 14 2018
Sterne Kessler Goldstein
& Fox, PLLC

From the INTERNATIONAL SEARCHING AUTHORITY

*PCT* C. Swatt

To: Michael D. Specht
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Avenue, NW
Washington, District of Columbia 20005
United States of America

NOTIFICATION OF TRANSMITTAL OF
THE INTERNATIONAL SEARCH REPORT AND
THE WRITTEN OPINION OF THE INTERNATIONAL
SEARCHING AUTHORITY, OR THE DECLARATION

(PCT Rule 44.1)

| Date of mailing *(day/month/year)* | **1 1 JUN 2018** |
|---|---|

| Applicant's or agent's file reference | |
|---|---|
| 3210.142PC01 | **FOR FURTHER ACTION**   See paragraphs 1 and 4 below |

| International application No. | International filing date *(day/month/year)* |
|---|---|
| PCT/US18/24611 | 27 March 2018 (27.03.2018) |

Applicant

GLOBAL TEL*LINK CORPORATION

1. ☒ The applicant is hereby notified that the international search report and the written opinion of the International Searching Authority have been established and are transmitted herewith.

   **Filing of amendments and statement under Article 19:**
   The applicant is entitled, if he so wishes, to amend the claims of the international application (see Rule 46):

   **When?** The time limit for filing such amendments is normally two months from the date of transmittal of the international search report.

   **How?** Directly to the International Bureau of WIPO, preferably through ePCT or on paper to, 34 chemin des Colombettes 1211 Geneva 20, Switzerland, Facsimile No.: +41 22 338 82 70.

   For more detailed instructions, see *PCT Applicant's Guide*, International Phase, paragraphs 9.004 – 9.011.

2. ☐ The applicant is hereby notified that no international search report will be established and that the declaration under Article 17(2)(a) to that effect and the written opinion of the International Searching Authority are transmitted herewith.

3. ☐ With regard to any protest against payment of (an) additional fee(s) under Rule 40.2, the applicant is notified that:
   ☐ the protest together with the decision thereon has been transmitted to the International Bureau together with any request to forward the texts of both the protest and the decision thereon to the designated Offices.
   ☐ no decision has been made yet on the protest; the applicant will be notified as soon as a decision is made.

4. **Reminders**

   The applicant may submit comments on an informal basis on the written opinion of the International Searching Authority to the International Bureau. These comments will be made available to the public after international publication. The International Bureau will send a copy of such comments to all designated Offices unless an international preliminary examination report has been or is to be established.

   Shortly after the expiration of 18 months from the priority date, the international application will be published by the International Bureau. If the applicant wishes to avoid or postpone publication, a notice of withdrawal of the international application, or of the priority claim, must reach the International Bureau before the completion of the technical preparations for international publication (Rules 90bis.1 and 90bis.3).

   Within 19 months from the priority date, but only in respect of some designated Offices, a demand for international preliminary examination must be filed if the applicant wishes to postpone the entry into the national phase until 30 months from the priority date (in some Offices even later); otherwise, the applicant must, within 20 months from the priority date, perform the prescribed acts for entry into the national phase before these designated Offices. In respect of other designated Offices, the time limit of 30 months (or later) will apply even if no demand is filed within 19 months. For details about the applicable time limits, Office by Office, see www.wipo.int/pct/en/texts/time_limits.html and the *PCT Applicant's Guide*, National Chapters.

   Within 22 months from the priority date, the applicant may request that a supplementary international search be carried out by a different International Searching Authority that offers this service (Rule 45bis.1). The procedure for requesting supplementary international search is described in the *PCT Applicant's Guide*, International Phase, paragraph 8.006-8.032.

| Name and mailing address of the ISA/US | Authorized officer |
|---|---|
| Mail Stop PCT, Attn: ISA/US Commissioner for Patents P.O. Box 1450, Alexandria, Virginia 22313-1450 | Shane Thomas |
| Facsimile No. 571-273-8300 | Telephone No. PCT Helpdesk: 571-272-4300 PCT OSP: 571-272-7774 |

Form PCT/ISA/220  (July 2017)

PATENT COOPERATION TREATY

# PCT

INTERNATIONAL SEARCH REPORT

(PCT Article 18 and Rules 43 and 44)

| Applicant's or agent's file reference<br>3230 142PC01 | FOR FURTHER<br>ACTION | see Form PCT/ISA/220<br>as well as, where applicable, item 5 below. | |
|---|---|---|---|
| International application No.<br>PCT/US18/24611 | International filing date *(day/month/year)*<br>27 March 2018 (27.03.2018) | (Earliest) Priority Date *(day/month/year)*<br>27 March 2017 (27.03.2017) | |
| Applicant<br>GLOBAL TEL*LINK CORPORATION | | | |

This international search report has been prepared by this International Searching Authority and is transmitted to the applicant according to Article 18. A copy is being transmitted to the International Bureau.

This international search report consists of a total of ⌣ sheets.

☐ It is also accompanied by a copy of each prior art document cited in this report.

1. **Basis of the report**

   a. With regard to the **language**, the international search was carried out on the basis of:

   ☒ the international application in the language in which it was filed.

   ☐ a translation of the international application into _____ which is the language of a translation furnished for the purposes of international search (Rules 12.3(a) and 23.1(b)).

   b. ☐ This international search report has been established taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rule 43.6bis(a)).

   c. ☐ With regard to any nucleotide and/or amino acid sequence disclosed in the international application, see Box No. I.

2. ☐ Certain claims were found unsearchable (see Box No. II).

3. ☐ Unity of invention is lacking (see Box No. III).

4. With regard to the **title**,

   ☒ the text is approved as submitted by the applicant.

   ☐ the text has been established by this Authority to read as follows:

5. With regard to the **abstract**,

   ☒ the text is approved as submitted by the applicant.

   ☐ the text has been established, according to Rule 38.2, by this Authority as it appears in Box No. IV. The applicant may, within one month from the date of mailing of this international search report, submit comments to this Authority.

6. With regard to the **drawings**,

   a. the figure of the drawings to be published with the abstract is Figure No. __1__

   ☒ as suggested by the applicant.

   ☐ as selected by this Authority, because the applicant failed to suggest a figure.

   ☐ as selected by this Authority, because this figure better characterizes the invention.

   b. ☐ none of the figures is to be published with the abstract.

INTERNATIONAL SEARCH REPORT

International application No.

PCT/US18/24611

| A. CLASSIFICATION OF SUBJECT MATTER |
|---|
| IPC  -  H04W 12/08, 4/02, 4/021, 4/029; G06F 9/451, 3/0484 (2018.01) |
| CPC -  |
| H04W 12/08, 4/02, 4/021, 4/029; G06F 9/451, 3/0484 |

According to International Patent Classification (IPC) or to both national classification and IPC

| B. FIELDS SEARCHED |
|---|
| Minimum documentation searched (classification system followed by classification symbols) |
| See Search History document |
| Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched |
| See Search History document |
| Electronic data base consulted during the international search (name of data base and, where practicable, search terms used) |
| See Search History document |

| C. DOCUMENTS CONSIDERED TO BE RELEVANT | | |
|---|---|---|
| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
| A | US 2014/0116486 A1 (LIVEPERSON, INC.) 24 April 2014; entire document. | 1-20 |
| A | US 2015/0237052 A1 (NAGRAVISION, S.A.) 20 August 2015; entire document. | 1-20 |
| A | US 2013/0293379 A1 (OMNILINK SYSTEMS, INC.) 07 November 2013, entire document. | 1-20 |

☐ Further documents are listed in the continuation of Box C.        ☐   See patent family annex.

| * | Special categories of cited documents: | "T" | later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
|---|---|---|---|
| "A" | document defining the general state of the art which is not considered to be of particular relevance | | |
| "E" | earlier application or patent but published on or after the international filing date | "X" | document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "L" | document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) | "Y" | document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art |
| "O" | document referring to an oral disclosure, use, exhibition or other means | | |
| "P" | document published prior to the international filing date but later than the priority date claimed | "&" | document member of the same patent family |

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 29 May 2018 (29.05.2018) | 1 1 JUN 2018 |

| Name and mailing address of the ISA/ | Authorized officer |
|---|---|
| Mail Stop PCT, Attn: ISA/US, Commissioner for Patents P.O. Box 1450, Alexandria, Virginia 22313-1450 Facsimile No. 571-273-8300 | Shane Thomas  PCT Helpdesk: 571-272-4300 PCT OSP: 571-272-7774 |

Form PCT/ISA/210 (second sheet) (January 2015)

PATENT COOPERATION TREATY

From the
INTERNATIONAL SEARCHING AUTHORITY

To: Michael D. Specht
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Avenue, NW
Washington, District of Columbia 20005
United States of America

PCT

WRITTEN OPINION OF THE
INTERNATIONAL SEARCHING AUTHORITY

(PCT Rule 43bis.1)

| | |
|---|---|
| | Date of mailing *(day/month/year)*      1 1 JUN 2018 |
| Applicant's or agent's file reference<br>3210.142PC01 | FOR FURTHER ACTION<br>See paragraph 2 below |

| International application No. | International filing date *(day/month/year)* | Priority date *(day/month/year)* |
|---|---|---|
| PCT/US18/24611 | 27 March 2018 (27.03.2018) | 27 March 2017 (27.03.2017) |

International Patent Classification (IPC) or both national classification and IPC
IPC - H04W 12/08, 4/02, 4/021, 4/029; G06F 9/451, 3/0484 (2018.01)
CPC -
    H04W 12/08, 4/02, 4/021, 4/029; G06F 9/451, 3/0484

Applicant GLOBAL TEL*LINK CORPORATION

1.  This opinion contains indications relating to the following items:

   ☒  Box No. I    Basis of the opinion

   ☐  Box No. II   Priority

   ☐  Box No. III  Non-establishment of opinion with regard to novelty, inventive step and industrial applicability

   ☐  Box No. IV  Lack of unity of invention

   ☒  Box No. V   Reasoned statement under Rule 43bis.1(a)(i) with regard to novelty, inventive step and industrial applicability;<br>                  citations and explanations supporting such statement

   ☐  Box No. VI  Certain documents cited

   ☐  Box No. VII Certain defects in the international application

   ☐  Box No. VIII Certain observations on the international application

2.  FURTHER ACTION

    If a demand for international preliminary examination is made, this opinion will be considered to be a written opinion of the
International Preliminary Examining Authority ("IPEA") except that this does not apply where the applicant chooses an Authority
other than this one to be the IPEA and the chosen IPEA has notified the International Bureau under Rule 66.1bis(b) that written
opinions of this International Searching Authority will not be so considered.

    If this opinion is, as provided above, considered to be a written opinion of the IPEA, the applicant is invited to submit to the IPEA
a written reply together, where appropriate, with amendments, before the expiration of 3 months from the date of mailing of Form
PCT/ISA/220 or before the expiration of 22 months from the priority date, whichever expires later.

    For further options, see Form PCT/ISA/220.

| Name and mailing address of the ISA/US | Date of completion of this opinion | Authorized officer |
|---|---|---|
| Mail Stop PCT, Attn: ISA/US<br>Commissioner for Patents<br>P.O. Box 1450, Alexandria, Virginia 22313-1450<br><br>Facsimile No.  571-273-8300 | 20 May 2018 (20.05.2018) | Shane Thomas<br><br>PCT Helpdesk: 571-272-4300<br>PCT OSP: 571-272-7774 |

Form PCT/ISA/237 (cover sheet) (January 2015)

**WRITTEN OPINION OF THE**
**INTERNATIONAL SEARCHING AUTHORITY**

International application No.

PCT/US18/24611

**Box No. I     Basis of this opinion**

1. With regard to the language, this opinion has been established on the basis of:

   ☒ the international application in the language in which it was filed.

   ☐ a translation of the international application into _____ which is the language of a translation furnished for the purposes of international search (Rules 12.3(a) and 23.1(b)).

2. ☐ This opinion has been established taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rule 43*bis*.1(a)).

3. ☐ With regard to any **nucleotide and/or amino acid sequence** disclosed in the international application, this opinion has been established on the basis of a sequence listing:

   a. ☐ forming part of the international application as filed:

      ☐ in the form of an Annex C/ST.25 text file.

      ☐ on paper or in the form of an image file.

   b. ☐ furnished together with the international application under PCT Rule 13*ter*.1(a) for the purposes of international search only in the form of an Annex C/ST.25 text file.

   c. ☐ furnished subsequent to the international filing date for the purposes of international search only:

      ☐ in the form of an Annex C/ST.25 text file (Rule 13*ter*.1(a)).

      ☐ on paper or in the form of an image file (Rule 13*ter*.1(b) and Administrative Instructions, Section 713).

   d. ☐ In addition, in the case that more than one version or copy of a sequence listing has been filed or furnished, the required statements that the information in the subsequent or additional copies is identical to that forming part of the application as filed or does not go beyond the application as filed, as appropriate, were furnished.

4. Additional comments:

WRITTEN OPINION OF THE
INTERNATIONAL SEARCHING AUTHORITY

| International application No. |
|---|
| PCT/US18/24651 |

Box No. V    Reasoned statement under Rule 43*bis*.1(a)(i) with regard to novelty, inventive step and industrial applicability; citations and explanations supporting such statement

1.    Statement

| | | | | |
|---|---|---|---|---|
| Novelty (N) | Claims | 1-20 | | YES |
| | Claims | None | | NO |
| Inventive step (IS) | Claims | 1-20 | | YES |
| | Claim | None | | NO |
| Industrial applicability (IA) | Claims | 1-20 | | YES |
| | Claims | None | | NO |

2.    Citations and explanations:

Claim 1 meets the criteria set out in PCT Article 33(2)-(3), because the prior art does not teach or fairly suggest: receiving, by a wearable device, an inmate profile that includes information regarding a dynamic user interface of the wearable device; verifying that the administrative rule is received from an authorized source associated with a controlled environment.

In the closest prior art, US 2014/0115466 A1 to LIVEPERSON, INC. (hereinafter "LivePerson") discloses a method, comprising: receiving, by a device, a profile that includes information regarding a dynamic user interface of the device (receiving, by a device, a set of data (information) indicative of (regarding) a new function to dynamically add to a user interface; figure 4); wherein the authorized function includes: customizing a setting of the dynamic user interface of the device based on the profile and the administrative rule (causing a user interface to dynamically add a new function (customizing a setting) of a user device based on the user's search history (profile) and a shared set of rules which describe when to add a function (administrative); figure 3; paragraphs [0069], [0060]), and displaying the dynamic user interface based at least in part on the customized setting (displaying the user interface with the dynamically added function on the user device; paragraph [0054]).

In additional prior art, US 2015/0237652 A1 to NAGRAVISION, S.A. (hereinafter "Nagravision") discloses a method, comprising: receiving, by a wearable device, an profile that includes information of the wearable device (receiving, at a wearable user device, download logic 222 to access configuration files 216 (profile that includes information), figure 2; paragraphs [0023], [0024]); receiving, by the wearable device, an administrative rule that specifies a restriction regarding an authorized function of the wearable device (receiving, by the wearable device, a configuration file to control application level access (administrative rule) that specifies conditions (restriction) for allowing access to the application (authorized function) on the wearable user device; claim 11); and performing an authorized function based at least on the profile and the administrative rule (the downloaded logic determining whether to permit access to a requested application (performing an authorized function) based on the configuration file controlling application level access, paragraph [0027]; claim 11).

In additional prior art, US 2013/0293378 A1 to OMNILINK SYSTEMS, INC. (hereinafter "Omnilink") discloses a wearable device, an inmate profile that includes information regarding the wearable device (a wearable device presents a standard device profile to the system for offender (inmate) location tracking (information regarding the wearable device); paragraphs [0047], [0052], [0053]).

Since LivePerson, Nagravision and Omnilink fail to disclose receiving, by a wearable device, an inmate profile that includes information regarding a dynamic user interface of the wearable device; verifying that the administrative rule is received from an authorized source associated with a controlled environment, it would not have been obvious to one of ordinary skill in the art at the time the invention was made to have employed this method, because the references taken solely, or in combination, fail to provide the required limitations, and modification of any complementary combination of the references of record would be impermissible hindsight and not provide any advantages over the present application.

Although wearable devices for inmate tracking and dynamic user interfaces for user devices are well known in the art, the combination of a wearable device for inmates that receives a dynamic user interface based on the inmate profile, and further verifying the rule is received by the device, improves upon prior art systems by enabling management of inmates in a correctional facility through wearable devices in order to provide limited customized services for each inmate based on a profile, and would require a complexity beyond the level of ordinary skill, and therefore this claim meets the PCT criteria for patentability.

Claims 2-9 also meet the criteria set out in PCT Article 33(2)-(3), because they depend upon claim 1.

***Continued Within the Next Supplemental Box***.

WRITTEN OPINION OF THE
INTERNATIONAL SEARCHING AUTHORITY

International application No.

PCT/US18/24611

**Supplemental Box**

In case the space in any of the preceding boxes is not sufficient.
Continuation of.

-***-Continued from Box V. Citations and Explanations-***-

Claim 10 meets the criteria set out in PCT Article 33(2)-(3), because the prior art does not teach or fairly suggest a surveillance module configured to activate a surveillance mode of the wearable device; and instruct the inmate interface module to perform the authorized function.

In the closest prior art, Nagravision discloses a wearable device (wearable device 100, figure 6, paragraph: [0065], comprising: a position module configured to provide position information of the wearable device (location tracking (position) module 121 generates GPS location data (position information) of the wearable device; figure 5, paragraph [0052]); wherein the position information identifies a location of the wearable device within a controlled environment (the device is location aware by processing GPS coordinates (identifies a location) and where an address is added such as an offender's home address where he is required to remain (within a controlled environment); paragraphs [0074], [0075]); receiving, by a wearable device, an profile that includes information interface of the wearable device (receiving, at a wearable user device, download logic 222 to access configuration files 216 (profile that includes information); figure 2; paragraphs [0023], [0024]); receiving, by the wearable device, an administrative rule that specifies a restriction regarding an authorized function of the wearable device (receiving, by the wearable device, a configuration file to control application level access (administrative rule) that specifies conditions (restriction) for allowing access to the application (authorized function) on the wearable user device; claim 11); and performing an authorized function (the downloaded logic determining whether to permit access to a requested application (performing an authorized function); paragraph [0027], claim 11).

In additional prior art, LivePerson discloses a processor configured to: a user interface module configured to customize a dynamic user interface of the wearable device based at least in part on an profile and an administrative rule (a processor implements techniques to track and store the user's search history (user interface module); and a server references a stored set of rules to which describe when to add a function (configured to customize) to the user interface based on the user's search history (profile) and a stored set of rules which describe when to add a function (administrative); paragraphs [0058], [0060], [0072]); receiving, by a device, a profile that includes information regarding a user interface of the device (receiving, by a device, a set of data (information) indicative of (receiving a setting of a new function to dynamically add to a user interface; figure 4); wherein the authorized function includes: customizing a setting of the dynamic user interface (causing a user interface to dynamically add a new function (customizing a setting) of a user device, figure 3; paragraphs [0059], [0060]); and displaying the dynamic user interface based at least in part on the customized setting (displaying the user interface with the dynamically added function on the user device; paragraph [0054]).

In additional prior art, Omnilink discloses a wearable device, an inmate profile that includes information regarding the wearable device (a wearable device presents a standard device profile to the system for offender (inmate) location tracking (information regarding the wearable device); paragraphs [0047], [0052], [0053]).

Since Nagravision, LivePerson and Omnilink fail to disclose a surveillance module configured to activate a surveillance mode of the wearable device; and instruct the inmate interface module to perform the authorized function, it would not have been obvious to one of ordinary skill in the art at the time the invention was made to have employed this device, because the references taken solely, or in combination, fail to provide the required limitations, and modification of any complementary combination of the references of record would be impermissible hindsight and not provide any advantages over the present application.

Although wearable devices for inmate tracking and dynamic user interfaces for user devices are well known in the art, the combination of a wearable device for inmates that receives a dynamic user interface based on the inmate profile, and further activating a surveillance mode of the wearable device, improves upon prior art systems by enabling management of inmates in a correctional facility through wearable devices in order to provide limited customized services for each inmate based on a profile, and further to track the location of each inmate through the wearable device, and would require a complexity beyond the level of ordinary skill, and therefore this claim meets the PCT criteria for patentability.

Claims 11-17 also meet the criteria set out in PCT Article 33(2)-(3), because they depend upon claim 10.

Claim 18 meets the criteria set out in PCT Article 33(2)-(3), because the prior art does not teach or fairly suggest monitoring interface information of the customized interface, wherein the interface information comprises an input to the customized dynamic user interface; and transmitting the monitored information.

In the closest prior art, LivePerson discloses receiving, by the device from an authorized source an interface instruction for controlling an operation of the device (receiving, by a device and from an engagement server (authorized source), a set of data (information) indicative of a new function (instruction) to dynamically add to a user interface for invoking a functionality (controlling an operation) of the device; figure 4, paragraph [0066]); performing an authorized function based at least on the interface instruction, wherein the authorized function comprises customizing a dynamic user interface of the device (controlling playback of video content (performing an authorized function) based on the user interface functionality using the dynamically added new function on the device; paragraph [0063]); wherein the authorized function includes: customizing a setting of the dynamic user interface of the device based on the profile and the administrative rule (causing a user interface to dynamically add a new function (customizing a setting) of a user devices based on the user's search history (profile) and a stored set of rules which describe when to add a function (administrative); figure 3; paragraphs [0058], [0060]); and displaying the dynamic user interface based at least in part on the customized setting (displaying the user interface with the dynamically added function on the user device; paragraph [0064]).

-***-Continued Within the Next Supplemental Box-***-

Form PCT/ISA/237 (Supplemental Box) (January 2015)

WRITTEN OPINION OF THE
INTERNATIONAL SEARCHING AUTHORITY

International application No.

PCT/US18/24611

**Supplemental Box**

In case the space in any of the preceding boxes is not sufficient.
Continuation of:

-***-Continued from Previous Supplemental Box-***-

In additional prior art, Nagravision discloses a method, comprising: providing, by a wearable device, a position location of the wearable device (location tracking module 121 generating (providing) GPS location data (position) of the wearable device; figure 5, paragraph [0052]); performing an authorized function based at least on the interface instruction (the downloaded logic determining whether to permit access to a requested application (performing an authorized function) based on the configuration file controlling application level access (interface instruction); paragraph [0027]; claim 11).

In additional prior art, Omnilink discloses providing, by a wearable device, a position location of the wearable device (a wearable device provides GPS location tracking; paragraphs [0047], [0052], [0063]); an authorized source associated with a controlled environment (a computer at a corrections facility (authorized source associated with a controlled environment); paragraphs [0047], [0052], [0063], [0077]).

Since LivePerson, Nagravision and Omnilink fail to disclose monitoring interface information of the customized interface, wherein the interface information comprises an input to the customized dynamic user interface; and transmitting the monitored information, it would not have been obvious to one of ordinary skill in the art at the time the invention was made to have employed this method, because the references taken solely, or in combination, fail to provide the required limitations, and modification of any complementary combination of the references of record would be impermissible hindsight and not provide any advantages over the present application.

Although wearable devices for device tracking and dynamic user interfaces for user devices are well known in the art, the combination of a wearable device for tracking that receives a dynamic user interface, and further monitoring use of the customized interface and transmitting the monitored information, improves upon prior art systems by enabling management of device users in a controlled environment through wearable devices in order to provide limited customized services for each user, and further to monitor usage of the devices, and would require a complexity beyond the level of ordinary skill, and therefore this claim meets the PCT criteria for patentability.

Claims 19-20 also meet the criteria set out in PCT Article 33(2)-(3), because they depend upon claim 18.

Claims 1-20 have industrial applicability as defined by PCT Article 33(4) because the subject matter can be made or used in industry.

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15435993 |
| **Filing Date:** | 17-Feb-2017 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Mary Porras |
| **Attorney Docket Number:** | 3210.1280000 |

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| SUBMISSION- INFORMATION DISCLOSURE STMT | 1806 | 1 | 240 | 240 |
| **Total in USD ($)** | | | | **240** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 35324186 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Mary Porras |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 05-MAR-2019 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 15:14:05 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $240 |
| RAM confirmation Number | 030619INTEFSW15144300 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 32101280000_2SIDS.pdf | 617541 \newline 30543ef0424cb131d7cf281ee70fc921286a4802 | yes | 5 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | | End |
| | Miscellaneous Incoming Letter | | 1 | | 1 |
| | Transmittal Letter | | 2 | | 3 |
| | Information Disclosure Statement (IDS) Form (SB08) | | 4 | | 5 |

**Warnings:**

**Information:**

| 2 | Non Patent Literature | NPL1_WOandISR000080.PDF | 14355977 \newline 5699fcb8c6ef2b3588b95492c4e1674a994df201d | no | 14 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 3 | Non Patent Literature | NPL2_WOandISR024611.PDF | 8119101 \newline bf9a0e07882c3057cb35650f67eb0d86604c16b4 | no | 8 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 4 | Fee Worksheet (SB06) | fee-info.pdf | 30611 \newline 45840121931d5679ad0e46b87384882e5115c853 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 23123230 | | |
|---|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111

If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**Sterne Kessler**
STERNE KESSLER GOLDSTEIN & FOX

LAUREN C. SCHLEH
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

March 5, 2019

Commissioner for Patents                    *Confirmation No. 1254*
PO Box 1450                                        *Art Unit 2646*
Alexandria, VA 22313-1450          *Attn: Mail Stop Amendment*

    Re:    U.S. Utility Patent Application
              Application No. 15/435,993; Filing Date: February 17, 2017
              For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
              Inventors: MARASS *et al.*
              Our Ref: 3210.1280000

Commissioner:

    Transmitted herewith for appropriate action are the following documents:

1. Online Credit Card Payment Authorization in the amount of **$240.00** in payment of the fee under 37 C.F.R. § 1.17(p);
2. Second Supplemental Information Disclosure Statement;
3. Form PTO/SB/08a (1 sheet) listing 20 documents (**US1-US20**);
4. Form PTO/SB/08b (1 sheet) listing 2 documents (**NPL1-NPL2**); and
5. Copies of cited documents (**NPL1-NPL2**).

    In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

    Fee payment is provided through online credit card payment. The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

                            Respectfully submitted,

                            STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                            Lauren C. Schleh
                            Attorney for Applicant
                            Registration No. 65,457

LCS/mep
Enclosure(s)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket 3210.1280000 |
| Title: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |

## Second Supplemental Information Disclosure Statement

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Listed on accompanying IDS Forms PTO/SB/08a equivalent and/or PTO/SB/08b equivalent are documents that may be considered material to the patentability of this application as defined in 37 C.F.R. §1.56, and in compliance with the duty of disclosure requirements of 37 C.F.R. §§ 1.97 and 1.98.

Applicant has listed publication dates on the attached IDS Forms based on information presently available to the undersigned. However, the listed publication dates should not be construed as an admission that the information was actually published on the date indicated.

Applicant reserves the right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered.

This statement should not be construed as a representation that a search has been made, or that information more material to the examination of the present patent application does not exist. The Examiner is specifically requested not to rely solely on the material submitted herewith.

- 2 -                                                                    MARASS *et al.*
                                                                        Application No. 15/435,993

Filing under 37 C.F.R. § 1.97(c). This Information Disclosure Statement is being filed more than three months after the U.S. filing date AND after the mailing date of the first Office Action on the merits, but before the mailing date of a Final Rejection, or Notice of Allowance, or an action that otherwise closes prosecution in the application.

The required fee is provided through online credit card payment authorization in the amount of **$240.00** in payment of the fee under 37 C.F.R. § 1.17(p).

Copies of documents **NPL1-NPL2** are submitted. However, in accordance with 37 C.F.R. § 1.98(a)(2)(ii), no copies of U.S. patents and patent application publications cited as documents **US1-US20** on the attached IDS Forms are submitted.

It is respectfully requested that the Examiner initial and return a copy of the enclosed IDS Forms, and indicate in the official file wrapper of this patent application that the documents have been considered.

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:     March 5, 2019

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

Atty. Dkt. No. 3210.1280000

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

26111          7590          02/26/2019
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/26/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

| *Office Action Summary* | Application No.<br>15/435,993 | Applicant(s)<br>MARASS et al. |
|---|---|---|
| | Examiner<br>BARRY W TAYLOR | Art Unit<br>2646 | AIA Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>RCE 14 February 2019</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.**      2b)☑ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☑ Claim(s) <u>1-22</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☑ Claim(s) <u>1-22</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see
http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on <u>19 February 2017</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All   b)☐ Some**   c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 15/435,993                                           Page 2
Art Unit: 2646

## DETAILED ACTION

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the
> invention, and of the manner and process of making and using it, in such full, clear, concise,
> and exact terms as to enable any person skilled in the art to which it pertains, or with which it
> is most nearly connected, to make and use the same, and shall set forth the best mode
> contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the
> manner and process of making and using it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains, or with which it is most nearly
> connected, to make and use the same, and shall set forth the best mode contemplated by the
> inventor of carrying out his invention.

1.      Claims 1, 9 and 17 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-

AIA), first paragraph, as failing to comply with the written description requirement.  The

claim(s) contains subject matter which was not described in the specification in such a

way as to reasonably convey to one skilled in the relevant art that the inventor or a joint

inventor, or for pre-AIA the inventor(s), at the time the application was filed, had

possession of the claimed invention.

Regarding claims 1 and 9.  Claims 1 and 9 recite "detect an attempt to access

settings of the mobile device by a user of the mobile device via a graphical user

interface".  Claims 1 and 9 are not supported in Applicants specification.  The

limitation(s) is/are not even mentioned in the specification.  Applicants specification at

Application/Control Number: 15/435,993                                          Page 3
Art Unit: 2646

0056 teaches away because the **access icon to the settings from the OS environment is removed**, thereby by preventing one-click access to these setting. Furthermore, there is no detecting step since the access icon has been removed.  The only other place in applicants specification is at 0060 which teaches the setting **icons and GUIs are removed as part of the OS security barrier**.

      Regarding claim 17.  Claim 17 recites an OS barrier stored in memory configured to prevent unsanctioned change or access of device settings of the MS by a user of the mobile device via GUI.  Claim 17 is not supported in Applicants specification.  The limitation(s) is/are not even mentioned in the specification.  Applicants specification at 0056 teaches away because the **access icon to the settings from the OS environment is removed**, thereby by preventing one-click access to these setting.  The only other place in applicants specification is at 0060 which teaches the setting **icons and GUIs are removed as part of the OS security barrier**.

### *Claim Rejections - 35 USC § 103*

      In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

      This application currently names joint inventors. In considering patentability of the claims the examiner presumes that the subject matter of the various claims was commonly owned as of the effective filing date of the claimed invention(s) absent any evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

Application/Control Number: 15/435,993                                    Page 4
Art Unit: 2646

point out the inventor and effective filing dates of each claim that was not commonly

owned as of the effective filing date of the later invention in order for the examiner to

consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)

prior art against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

2.      Claims 1, 4-5, 7-9, 12-13, 15-16 are rejected under 35 U.S.C. 103 as being

unpatentable over Yuen et al (2015/0040246) in view of Koganti et al (2017/0329966)

and Hangsleben (2016/0309008) further in view of Fahrny et al (2017/0244729).

Regarding claims 1 and 9.  Yuen teaches a mobile device and a system of

layered security barriers of a mobile device that prevents unsanctioned use of the

mobile device, comprising:

a hardware barrier that includes a front plate and a back plate, the hardware

barrier obstructing access to at least one port of the mobile device;

an application barrier stored on a memory of the mobile device, the application

barrier configured to: detect a first attempt to perform an unsanctioned function of an

application stored in the memory of the mobile device (figure 1, 0031-0032 wherein

smartphone item 10 has mobile agent item 20 having an installed application list item

22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the

mobile that the application was changed (e.g., installed or removed);

prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function (0041 – one example means for disabling (i.e., not allowing user of the mobile device to access and execute) the newly installed application, another example means for disabling by the mobile agent to disable or otherwise redirect a system of function call associated with the newly installed application, such that mobile agent would not allow the system of function call issued by the Operating System of the device infrastructure to be received by the newly installed application. **Another example means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of a <u>user interface 27 icon</u> (e,g., a graphical user interface) associated with the newly installed application**, 0053-0055 as discussed above, each mobile device is configured with Mobile Agent 20 for managing content of the application list 22, containing identification of all mobile applications presently installed (and/or removed) on the mobile device and the mobile agent can quarantine/disable non-compliant applications); and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

detect an attempt to access device settings of the mobile device (0041 another example means for disabling by the mobile agent to disable or otherwise redirect a system of **<u>function call</u>** associated with the newly installed application, such that **<u>mobile agent would not allow the system of function call issued by the Operating System</u>** of the device infrastructure to be received by the newly installed application. **For example, mobile agent disables operation or otherwise hides (e.g., grayed out) a <u>user interface 27 icon (e.g., graphical user interface)</u>**, 0052 as may be the

case for a **jail broken** (e.g., OS barrier) or **rooted device** (e.g., OS barrier).  As such, it

can be an advantage to have the list 22 maintained by the mobile device wherein list 22

is a local list of all authorized applications installed)); and

> prevent the processor of the mobile device from executing operations related the

second attempt (0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications);


> Yuen does not show hardware barrier or wherein the unsanctioned function

includes exchanging data with an unsanctioned source outside of; and

> wherein the device settings include a wireless access point setting.

> Koganti teaches a mobile device uses a Device Trust Management Service

DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003,

0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS

triggers, SSID violation, hardware Triggers, unauthorized communication network,

jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005,

0007, 0009, 0038, 0045 – **detect tampering to the device including an opened**

**mobile device case, obviously having a front and back (e.g., fort plate and back**

**plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating**

**System Barrier** (figure 3 item 320, 0036, 0069).

> Koganti **teaches wherein the unsanctioned function includes exchanging**

**data with a unsanctioned source outside of** (see 0003, 0005, 0007, 0009 wherein

detect unsanctioned browser app, media player app, or network connection service

used for exchanging data with an unsanctioned source outside of).  Koganti teaches the

status include operations of and/or configurations of the electronic device.  The

operations of the electronic device include Operating System and/or Application

operations (0016).  **Paragraph 0038 <u>access request from applications show as 324</u>**

**<u>in figure 3 wherein applications can be "browser" 326 (e.g., graphical user</u>**

**<u>interface),</u> web access status, network connectivity status, application threat**

**status used to exchange data**.  Paragraph 0039 monitor OS/OS kernel and device

behavior, monitor connection status of peripheral hardware and/or

transmission/reception status with an unsanctioned source outside of.  Paragraphs

0041-0042 monitor for Text input request requesting access to the modem to send SMS

text or a social media application.  Paragraph 0043 wherein monitors 342 may monitor

request for network connections (e.g., **texting application**) which requires display (e.g.,

**<u>graphical user interface</u>**).  **Paragraph 0044 authenticate user has entered correct**

**PIN or password (e.g., <u>graphical user interface</u>**).  Paragraph 0046 request/attempts

to execute software or applications **(e.g. using graphical user interface)**,

request/attempts for web access **(e.g. using graphical user interface)**,

request/attempts to download/upload data and/or connection to a particular base

station, access point, website, or identified network, SSID violations.  Paragraph 0050

wherein a USB connection to peripheral hardware may pose a threat monitor user

screen **(e.g. graphical user interface)**.  Paragraph 0052 wherein violations and/or

changes of the design and/or intended use of the electronic device may be a threat,

verify PIN or password entered **(e.g. using graphical user interface)**.  TABLE 1, 0064

wherein Unknown SSID.  Paragraph 0066 wherein monitors 342 may monitor for and

detect a connection of the electronic device to a public WiFi network.  Paragraph 0069

wherein SMS used to communicate is also monitored wherein SMS applications require

**(e.g. using graphical user interface)**.  Paragraph 0070 wherein whitelist/blacklist for

particular communications network and/or USB port used for charging BUT not allowed

for uploading or downloading files and/or particular website **(e.g. using graphical user**

**interface)**.  Paragraph 0074 request user input **(e.g. using graphical user interface)**.

Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device

is in possession of an authorized user, software, firmware, and/or hardware of the

electronic device may exhibit and/or engage in behavior that constitutes the threat of the

security of the device<ins>. **For example, a user of the device may download a flashlight**</ins>

<ins>**application** (e.g. using graphical user interface) **and consent to a user agreement**</ins>

<ins>**for the flashlight application.  The user may be unaware that the user agreement**</ins>

<ins>**includes consent for the flashlight App to upload pictures and contact**</ins>

<ins>**information to the server (e.g., detect second attempt to access device settings).**</ins>

<ins>**However, the scoring service (see item 345 in figure 3) may detect the uploading**</ins>

<ins>**(e.g., detect second attempt to access device settings) as a threat based on**</ins>

<ins>**security policy.  Subsequently, the targeted security action service 360 (figure 3)**</ins>

<ins>**may deny access of the flashlight Application to the file system content 245**</ins>

<ins>**and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure**</ins>

<ins>**3) may prevent the flashlight application from engaging in the undesired and**</ins>

<ins>**threating behavior.**</ins>  Paragraph 0079 browser 326 **(e.g. using graphical user**

**interface) may provide a runtime environment and/or control access to assets of**

**the mobile device.  Paragraph 0087 access security policy may apply to an entity (application, user, website, network, etc.) requesting or attempting to access portions of the file system content, Table 7 "Access with forced authentication" (force user to enter PIN and/or password).  Paragraph 0093 authentication triggers (e.g., invalid PIN or password).**

Koganti teaches wherein the settings include a wireless access point setting (0043 network access settings of a modem and/or the computer network interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to 3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen to include the Device Trust Management Service (DTMS) as taught by Koganti in order to prevent the device from preforming undesired and threating behavior with an unsanctioned source even if the program has been downloaded.


Yuen in view of Koganti do not show the hardware barrier obstructing access to at least one port of the mobile device (amendment 7/19/2018).

Hangsleben teaches using a hardware barrier (0018, 0020) to block an inmate from hiding contraband in the mobile device port(s) (0014, 0015, 0076) but allow the inmate to use the mobile phone

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen in view of Koganti to include a hardware barrier as taught by Hangsleben in order to block ports and/or cavities of the mobile device thereby inhibiting contraband and/or other materials from being stored in mobile device cavities.

Yuen in view of Koganti and Hangsleben do not explicitly teach preventing access or altering of device settings at a kernel (RCE dated 2/14/2019).

**Fahrny teaches real-time security monitoring of processes running on the device using a kernel level intrusion detection agent** (0034, 0040-0041, 0049, 0062, 0083) thereby preventing accesses or altering of device settings (005, 0020, 0038, 0041, 0049).  Fahrny teaches wherein the attempt to access or alter the device settings of the mobile device is initiated by the application (0015, 0020, 0041, 0062, 0064, 0078, 0083).

It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen in view of Koganti and Hangsleben to use kernel level intrusion detection agent as taught by Fahrny in order to prevent access or altering of device settings in real-time.

Regarding claims 4 and 12.   Yuen teaches detect an attempt to delete the application on the mobile device (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all

currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code (0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Fahrny teaches detecting an attempt to read, modify, alter and/or replace system applications/settings and preventing (0015).

Regarding claims 5 and 13.    Yuen teaches wherein the application barrier is further configured to: detect an attempt to install a second application on the mobile device (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code (0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Application/Control Number: 15/435,993                                    Page 12
Art Unit: 2646

Fahrny teaches detecting manipulation and/or modification of program code (0073, 0075).

Regarding claims 7 and 15.  Yuen teaches wherein the second attempt is initiated by the application (0041).

Koganti teaches wherein the second attempt is initiated by the application (0005, 0038, 0069, 0075).

Fahrny teaches real-time security monitoring of processes running on the device using a kernel level intrusion detection agent (0034, 0040-0041, 0049, 0062, 0083) thereby preventing accesses or altering of device settings (005, 0020, 0038, 0041, 0049).  **Fahrny teaches wherein the attempt to access or alter the device settings of the mobile device is initiated by the application** (0015, 0020, 0041, 0062, 0064, 0078, 0083).


Regarding claims 8 and 16.  Yuen does not show wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

Koganti teaches a mobile device uses a Device Trust Management Service DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003, 0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS triggers, SSID violation, hardware Triggers, unauthorized communication network, jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005,

0007, 0009, 0038, 0045 – **detect tampering to the device including an opened**

**mobile device case, obviously having a front and back (e.g., fort plate and back**

**plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating**

**System Barrier** (figure 3 item 320, 0036, 0069).

Koganti **teaches wherein the unsanctioned function includes exchanging**

**data with a unsanctioned source outside of** (see 0003, 0005, 0007, 0009 wherein

detect unsanctioned browser app, media player app, or network connection service

used for exchanging data with an unsanctioned source outside of). Koganti teaches the

status include operations of and/or configurations of the electronic device. The

operations of the electronic device include Operating System and/or Application

operations (0016). Paragraph 0038 web access status, network connectivity status,

application threat status used to exchange data with outside of. Paragraph 0039

monitor OS/OS kernel and device behavior, monitor connection status of peripheral

hardware and/or transmission/reception status with an unsanctioned source outside of.

Paragraphs 0041-0042 monitor for Text input request requesting access to the modem

to send SMS text or a social media application. Paragraph 0043 wherein monitors 342

may monitor request for network connections. Paragraph 0046 request/attempts for

web access, request/attempts to download/upload data and/or connection to a particular

base station, access point, website, or identified network, SSID violations. Paragraph

0050 wherein a USB connection to peripheral hardware may pose a threat. Paragraph

0052 wherein violations and/or changes of the design and/or intended use of the

electronic device may be a threat. TABLE 1, 0064 wherein Unknown SSID. Paragraph

0066 wherein monitors 342 may monitor for and detect a connection of the electronic

device to a public WiFi network.  Paragraph 0069 wherein SMS used to communicate

outside of is also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device.  For example, a user of

the device may download a flashlight application and consent to a user agreement for

the flashlight application.  The user may be unaware that the user agreement includes

consent for the flashlight App to upload pictures and contact information to the server

(e.g., detect second attempt to access device settings).  However, the scoring service

(see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to

access device settings) as a threat based on security policy.  Subsequently, the

targeted security action service 360 (figure 3) may deny access of the flashlight

Application to the file system content 245 and/or the peripheral hardware device

interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application

from engaging in the undesired and threating behavior.

**Koganti teaches wherein the settings include a wireless access point
setting (0043 network access settings of a modem and/or the computer network
interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown
SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device
connected to trusted Bluetooth network, is device connected to trusted Wi-Fi
network, is device connected to 3G/4G network, is device connected via USB to a**

**trusted external device.  TABLE 4 if WiFi SSID indicates untrusted WiFi network,**

**deny or limit enterprise services, 0093).**

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen to monitor

changes in Bluetooth, Wi-Fi, and 3G/4G network as taught by Koganti in order to

prevent the device from preforming undesired and threating behavior with an

unsanctioned source.

3.      Claims 2 and 10 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Koganti, Hangsleben and Fahrny further in view of Sande et al

(2016/0291643).

Regarding claims 2 and 10.  Yuen in view of Koganti, Hangsleben and Fahrny do

not show wherein the front plate and the back plate of the hardware barrier are

configured to form a seal around the device that allows physical contact with only

a screen of the mobile device, a headphone port of the mobile device, a barrel charger

port of the mobile device, and a universal serial bus (USB) port of the mobile device.

Hangsleben teaches using front plate and back plate to limit the inmate's access

to GUI (0014, 0015, 0076).

Sande teaches protective enclosures have front plate and back plate (0025-

0026) to protect the device from rough handling, impact, drops, and moisture (0004)

and can have any desired shape (0026).  For example, funnel-shaped to allow easier

access to corresponding components of the mobile device (e.g., an earphone port, etc.),

etc.  Sande teaches using tamper-proof screws (0037).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile phone case of Yuen in view of Koganti, Hangsleben and Fahrny to have apertures as taught by Sande in order to define a funnel structure to guide a cable/plug associated with the earphone into the earphone port/plug.

4.      Claims 3 and 11 are rejected under 35 U.S.C. 103 as being unpatentable over Yuen in view of Koganti, Hangsleben, Fahrny and Sande further in view of Chang (2004/0023698).

Regarding claims 3 and 11.  Yuen in view of Koganti, Hangsleben, Fahrny and Sande do not show a diode connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

Chang teaches using a resistor and diode in series when charging a cell phone, wherein the resistor is used to control the charging current intensity and the diode is applied to prevent a backflow of current from the cell phone (abstract, 0020).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti, Hangsleben and Fahrny to use a diode at the charging port as taught by Chang in order to prevent current from flowing from the battery to the charging port.

5.      Claims 6 and 14 are rejected under 35 U.S.C. 103 as being unpatentable over Yuen in view of Koganti, Hangsleben and Fahrny further in view of Forssell et al (2014/0226487).

Application/Control Number: 15/435,993                                    Page 17
Art Unit: 2646

Regarding claims 6 and 14    Yuen in view of Koganti, Hangsleben, and Fahrny do not show wherein the application barrier is further configured to: detect an over-the-air command received by the mobile device over a wireless link; determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

Forssell teaches device management server, like Nokia Siemens Network's SADM, may be used to configure user devices automatically Over-the-Air.  DM server may configure into user devices Wi-Fi network settings, like SSID, and used authentication method (0113-0118).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti, Hangsleben and Fahrny to use a Device Management Server as taught by Forssell in order to automatically configure device Wi-Fi settings Over-the-Air.

6.    Claims 17-22 is/are rejected under 35 U.S.C. 103 as being unpatentable over Koganti et al (2017/0329966) in view of Yuen et al (2015/0040246), Hangsleben (2016/0309008) and Vijayakumar et al (2011/0162060) further in view of Fahrny et al (2017/0244729).

Regarding claim 17.    Koganti teaches system of layered security barriers designed to prevent unsanctioned use of a mobile device in a controlled environment facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form

a seal around the mobile device that allows limited physical contact with the mobile

device (0003, 0005, 0007, 0009, 0038, 0045 – **detect tampering to the device**

**including an opened mobile device case, obviously having a front and back (e.g.,**

**fort plate and back plate)**, 0069, 0093);

an application barrier, stored on a memory of the mobile device, configured to

prevent an unsanctioned function from being performed on the mobile device (figure 3

item 324, 0069);

an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change or access of device settings of the

mobile device (figure 3 item 320, 0036, 0069).

Koganti does not explicitly show preventing an unsanctioned change of device

settings of the MS by a user of the MS via GUI.

However, Koganti teaches GUI.  **Paragraph 0038 access request from**

**applications show as 324 in figure 3 wherein applications can be "browser" 326**

**(e.g., graphical user interface), web access status, network connectivity status,**

**application threat status used to exchange data**.  Paragraph 0039 monitor OS/OS

kernel and device behavior, monitor connection status of peripheral hardware and/or

transmission/reception status with an unsanctioned source outside of.  Paragraphs

0041-0042 monitor for Text input request requesting access to the modem to send SMS

text or a social media application.  Paragraph 0043 wherein monitors 342 may monitor

Application/Control Number: 15/435,993                                          Page 19
Art Unit: 2646

request for network connections (e.g., **texting application**) which requires display (e.g.,

**graphical user interface**).  **Paragraph 0044 authenticate user has entered correct**

**PIN or password (e.g., <u>graphical user interface</u>**).  Paragraph 0046 request/attempts

to execute software or applications **(e.g. using graphical user interface)**,

request/attempts for web access **(e.g. using graphical user interface)**,

request/attempts to download/upload data and/or connection to a particular base

station, access point, website, or identified network, SSID violations.  Paragraph 0050

wherein a USB connection to peripheral hardware may pose a threat monitor user

screen **(e.g. graphical user interface)**.  Paragraph 0052 wherein violations and/or

changes of the design and/or intended use of the electronic device may be a threat,

verify PIN or password entered **(e.g. using graphical user interface)**.  TABLE 1, 0064

wherein Unknown SSID.  Paragraph 0066 wherein monitors 342 may monitor for and

detect a connection of the electronic device to a public WiFi network.  Paragraph 0069

wherein SMS used to communicate is also monitored wherein SMS applications require

**(e.g. using graphical user interface)**.  Paragraph 0070 wherein whitelist/blacklist for

particular communications network and/or USB port used for charging BUT not allowed

for uploading or downloading files and/or particular website **(e.g. using graphical user

interface)**.  Paragraph 0074 request user input **(e.g. using graphical user interface).**

Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device

is in possession of an authorized user, software, firmware, and/or hardware of the

electronic device may exhibit and/or engage in behavior that constitutes the threat of the

security of the device.  For example, a user of the device may download a flashlight

application **(e.g. using graphical user interface**) and consent to a user agreement for

the flashlight application.  The user may be unaware that the user agreement includes

consent for the flashlight App to upload pictures and contact information to the server

(e.g., detect second attempt to access device settings).  However, the scoring service

(see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to

access device settings) as a threat based on security policy.  Subsequently, the

targeted security action service 360 (figure 3) may deny access of the flashlight

Application to the file system content 245 and/or the peripheral hardware device

interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application

from engaging in the undesired and threating behavior.   Paragraph 0079 browser 326

**(e.g. using graphical user interface) may provide a runtime environment and/or**

**control access to assets of the mobile device.  Paragraph 0087 access security**

**policy may apply to an entity (application, user, website, network, etc.) requesting**

**or attempting to access portions of the file system content, Table 7 "Access with**

**forced authentication" (force user to enter PIN and/or password).  Paragraph 0093**

**authentication triggers (e.g., invalid PIN or password).**

   **Yuen at 0041 teaches mobile agent disables operation or otherwise hides**

**(e.g., grayed out) a <u>user interface 27 icon (e.g., graphical user interface)</u>,** 0052 as

may be the case for a **jail broken** (e.g., OS barrier) or **rooted device** (e.g., OS barrier).

As such, it can be an advantage to have the list 22 maintained by the mobile device

wherein list 22 is a local list of all authorized applications installed))

   It would have been obvious to one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the invention as taught by Koganti to use a

mobile agent as taught by Yuen in order to prevent a user from changing settings on the

Application/Control Number: 15/435,993                                          Page 21
Art Unit: 2646

mobile device by graying out the icon (e.g., gray out the settings icon on the mobile

phone).

Koganti in view of Yuen do not teach the hardware barrier obstructing access to

at least one port of the mobile device.

Hangsleben teaches using a hardware barrier (0018, 0020) to block an inmate

from hiding contraband in the mobile device port(s) (0014, 0015, 0076) but allow the

inmate to use the mobile phone

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Koganti in view of

Yuen to include a hardware barrier as taught by Hangsleben in order to block ports

and/or cavities of the mobile device thereby inhibiting contraband and/or other materials

from being stored in mobile device cavities.


Koganti in view of Yuen and Hangsleben do not show an access control barrier

implemented on a firewall device between a wireless access point serving the

controlled-environment facility and a network, the access control barrier configured

to perform filtering of a plurality of packets directed to or transmitted by the mobile

device.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

in view of Yuen and Hangsleben to implement a firewall as taught by Vijayakumar in

order to control what traffic is allowed to pass through the firewall and what traffic is

unauthorized to pass.


Koganti in view of Yuen, Hangsleben, and Vijayakumar do not explicitly teach

preventing access or altering of device settings at a kernel (RCE dated 2/14/2019).

**Fahrny teaches real-time security monitoring of processes running on the**

**device using a kernel level intrusion detection agent** (0034, 0040-0041, 0049, 0062,

0083) thereby preventing accesses or altering of device settings (005, 0020, 0038,

0041, 0049).  Fahrny teaches wherein the attempt to access or alter the device settings

of the mobile device is initiated by the application (0015, 0020, 0041, 0062, 0064, 0078,

0083).

It would have been obvious to one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the teaching of Koganti in view of Yuen,

Hangsleben, and Vijayakumar to use kernel level intrusion detection agent as taught by

Fahrny in order to prevent access or altering of device settings in real-time.

Regarding claim 18.  Koganti in view of Yuen and Hangsleben do not show the system further comprising a wireless intrusion barrier implemented on the wireless access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access point device;

obtain a wireless access point identifier associated with the second wireless access point device;

determine that the second wireless access point identifier is not among a plurality of wireless access point identifiers stored on the wireless access point device; and in response to the determining, attack the mobile device using a deauthentication denial of service attack.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti in view of Yuen and Hangsleben to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network.

Regarding claim 19.  Koganti in view of Yuen and Hangsleben do not show wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti in view of Yuen and Hangsleben to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network (Vijayakumar at 0101 – wherein the firewall instructs the access point to send the malicious wireless device a deauthentication frame to remove the malicious wireless device from the network).

Regarding claim 20.  Koganti teaches wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device (see Application Barrier item 324 in figure 3, 0036-0037 wherein DTMS interacts with applications 324 to detect a threat, 0038-0039 – detect

manipulation and/or modification of the program code, 0042 – monitor the operations

and/or configurations of the applications, 0069, 0075-0076),

a second attempt by the user to install a second application on the mobile

device, and a third attempt by the application to access content from a disallowed

source outside of the controlled environment facility (0042 wherein SMS application

request access to the modem to send a short message or wherein application tries to

access content from unauthorized social media, paragraph 0075 wherein the DTMS

may respond to threats even if the electronic device is in possession of an authorized

user, software, firmware, and/or hardware of the electronic device may exhibit and/or

engage in behavior that constitutes the threat of the security of the device**.  For

example, a user of the device may download a flashlight application and consent

to a user agreement for the flashlight application.  The user may be unaware that

the user agreement includes consent for the flashlight App to upload pictures

and contact information to the server (e.g., detect second attempt to access

device settings).  However, the scoring service (see item 345 in figure 3) may

detect the uploading (e.g., detect second attempt to access device settings) as a

threat based on security policy.  Subsequently, the targeted security action

service 360 (figure 3) may deny access of the flashlight Application to the file

system content 245 and/or the peripheral hardware device interface.  In this way,

the DTMS 340 (figure 3) may prevent the flashlight application from engaging in

the undesired and threating behavior**); and

preventing a processor of the mobile device from executing any operations

related to the first attempt, the second attempt, and the third attempt (paragraph 0075

wherein the DTMS may respond to threats even if the electronic device is in possession

of an authorized user, software, firmware, and/or hardware of the electronic device may

exhibit and/or engage in behavior that constitutes the threat of the security of the

device**.  For example, a user of the device may download a flashlight application**

**and consent to a user agreement for the flashlight application.  The user may be**

**unaware that the user agreement includes consent for the flashlight App to**

**upload pictures and contact information to the server (e.g., detect second attempt**

**to access device settings).  However, the scoring service (see item 345 in figure**

**3) may detect the uploading (e.g., detect second attempt to access device**

**settings) as a threat based on security policy.  Subsequently, the targeted**

**security action service 360 (figure 3) may deny access of the flashlight**

**Application to the file system content 245 and/or the peripheral hardware device**

**interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight**

**application from engaging in the undesired and threating behavior**).

Regarding claim 21.  Koganti teaches wherein the operating system (OS) is

configured to prevent the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile

device; and preventing the processor of the mobile device from executing operations

related to the attempt (Paragraph 0039 monitor OS/OS kernel and device behavior,

monitor connection status of peripheral hardware and/or transmission/reception status

with an unsanctioned source outside of.  Paragraphs 0041-0042 monitor for Text input

request requesting access to the modem to send SMS text or a social media

application.  Paragraph 0043 wherein monitors 342 may monitor request for network

connections.  Paragraph 0046 request/attempts for web access, request/attempts to

download/upload data and/or connection to a particular base station, access point,

website, or identified network, SSID violations.  Paragraph 0050 wherein a USB

connection to peripheral hardware may pose a threat.  Paragraph 0052 wherein

violations and/or changes of the design and/or intended use of the electronic device

may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph 0066 wherein

monitors 342 may monitor for and detect a connection of the electronic device to a

public WiFi network.  Paragraph 0069 wherein SMS used to communicate outside of is

also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device**.  For example, a user

of the device may download a flashlight application and consent to a user

agreement for the flashlight application.  The user may be unaware that the user

agreement includes consent for the flashlight App to upload pictures and contact

information to the server (e.g., detect second attempt to access device settings).

However, the scoring service (see item 345 in figure 3) may detect the uploading

(e.g., detect second attempt to access device settings) as a threat based on

security policy.  Subsequently, the targeted security action service 360 (figure 3)

may deny access of the flashlight Application to the file system content 245

and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure**

**3) may prevent the flashlight application from engaging in the undesired and threating behavior**), wherein the device settings include a wireless access point setting (0043 network access settings of a modem and/or the computer network interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to 3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

Regarding claim 22.  Koganti in view of Yuen and Hangsleben do not show wherein the access control barrier is configured to perform filtering of the plurality of packets by:

receiving a packet transmitted by or directed to the mobile device;

performing an inspection of a packet, the inspection including obtaining an address of the packet; determining that the address is not among a plurality of addresses stored on the firewall device; and in response to the determining, discarding the packet.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).  **Vijayakumar teaches firewall rules include using source and destination address (0025, 0027)**.

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti in view of Yuen and Hangsleben to implement a firewall that can detect monitor source and destination addresses as taught by Vijayakumar in order to control data flowing to and from the firewall.

### *Response to Arguments*

7.     Applicant's arguments with respect to claims 1-22 have been considered but are moot because the arguments do not apply to any of the references being used in the current rejection.

### *Conclusion*

8.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to BARRY W TAYLOR whose telephone number is (571)272-7509.  The examiner can normally be reached on Monday-Thursday: 7-5.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

| Notice of References Cited | Application/Control No. 15/435,993 | Applicant(s)/Patent Under Reexamination MARASS et al. | | |
|---|---|---|---|---|
| | Examiner BARRY W TAYLOR | Art Unit 2646 | Page 1 of 1 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20170244729-A1 | 08-2017 | Fahrny; James | G06F12/1458 | 1/1 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| H04W 12/08, 4/001, 4/008 | 2/27/2018 | BWT |
| H04M 1/72569, 1/72563, 1/72577, 1/18 | 02/27/2018 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| no double patenting.  east search attached. | 02/27/2018 | BWT |
| updated search. | 09/13/2018 | BWT |
| updated search. | 2/20/2019 | BWT |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 |
|---|---|

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| ✔ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/27/2018 | 09/13/2018 | 02/20/2019 | | | | | |
| | 1 | ✔ | ✔ | ✔ | | | | | |
| | 2 | ✔ | ✔ | ✔ | | | | | |
| | 3 | ✔ | ✔ | ✔ | | | | | |
| | 4 | ✔ | ✔ | ✔ | | | | | |
| | 5 | ✔ | ✔ | ✔ | | | | | |
| | 6 | ✔ | ✔ | ✔ | | | | | |
| | 7 | ✔ | ✔ | ✔ | | | | | |
| | 8 | ✔ | ✔ | ✔ | | | | | |
| | 9 | ✔ | ✔ | ✔ | | | | | |
| | 10 | ✔ | ✔ | ✔ | | | | | |
| | 11 | ✔ | ✔ | ✔ | | | | | |
| | 12 | ✔ | ✔ | ✔ | | | | | |
| | 13 | ✔ | ✔ | ✔ | | | | | |
| | 14 | ✔ | ✔ | ✔ | | | | | |
| | 15 | ✔ | ✔ | ✔ | | | | | |
| | 16 | ✔ | ✔ | ✔ | | | | | |
| | 17 | ✔ | ✔ | ✔ | | | | | |
| | 18 | ✔ | ✔ | ✔ | | | | | |
| | 19 | ✔ | ✔ | ✔ | | | | | |
| | 20 | ✔ | ✔ | ✔ | | | | | |
| | 21 | ✔ | ✔ | ✔ | | | | | |
| | 22 | ✔ | ✔ | ✔ | | | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 44 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$ or US-20130194067-$ or US-20180048752-$ or US-20170126733-$ or US-20110314475-$ or US-20150186661-$ or US-20130303143-$ or US-20150074615-$ or US-20070142041-$ or US-20170163615-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:28 |
| L2 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:28 |
| L3 | 1 | 2 and (settings same (gui or (user adj2 interface) or graphical)) | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:29 |
| L4 | 1 | 2 and (hardware) | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:34 |
| L5 | 11 | 1 and kernel | US-PGPUB; USPAT | OR | ON | 2019/02/20 11:46 |
| L6 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2019/02/20 12:30 |
| L7 | 0 | 6 and (settings same (gui or (user adj2 interface) or graphical)) | US-PGPUB; USPAT | OR | ON | 2019/02/20 12:30 |
| L8 | 1 | 6 and (settings or (gui or (user adj2 interface) or graphical)) | US-PGPUB; USPAT | OR | ON | 2019/02/20 12:30 |
| S1 | 164 | (((correction$4 adj3 facilit$4) or prison or inmat$4) same tamper$4 same (mobile or | US-PGPUB; | OR | ON | 2018/02/20 09:20 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | USPAT | | | |
| S2 | 1 | "20100151820" | US-PGPUB; USPAT | OR | ON | 2018/02/20 09:55 |
| S3 | 20 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/20 10:06 |
| S4 | 13 | ("20110237226" \| "20140108649" \| "20170061006" \| "20170084150" \| "20170193622" \| "5255306" \| "6054928" \| "7587067" \| "9282188" \| "9866680" \| "9871915" \| "9888108" \| "9892242").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/20 10:12 |
| S5 | 83 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618" \| "20120099714" \| "20120252411" \| "20120262271" \| "20130179210" \| "20130311364" \| "20140032691" \| "20140044242" \| "20140089849" \| "20140108649" \| "20140109174" \| "20140219432" \| "20140267547" \| "20140273929" \| "20140282868" \| "20140287715" \| "20150242629" \| "20160055323" \| "20160066182" \| "20160088021" \| "20160219146" \| "20160267257" \| "20160330084" \| "20160381212" \| "20160381219" \| "20160381556" \| "20170061006" \| "20170177892" \| "20170208468" \| "4495386" \| "5896556" \| "6058173" \| "6668045" \| "6965590" \| "7085359" \| "7106843" \| "7218993" \| "7254708" \| "7280816" \| "7333798" \| "7366782" \| "7529357" \| "7742581" \| "7804941" \| "7860222" \| "7899167" \| "8019354" \| "8031052" \| "8370206" \| "8428559" \| "8498937" \| "8571525" \| "8639926" \| "8646056" \| "8917848" \| "9094500" \| "9124763" \| "9232051" \| "9262604" \| "9307386" \| "9614954" \| "9614955" \| "9661128" \| "9674338").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/20 10:16 |
| S6 | 6262 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:40 |

| | | telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | | | | |
|---|---|---|---|---|---|---|
| S7 | 5312 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:41 |
| S8 | 1792 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:44 |
| S9 | 0 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) same (charg$5 adj4 another adj4 device)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:45 |
| S10 | 147 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) same (charg$5 adj4 device)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:45 |
| S11 | 10 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same (new adj2 (app or application)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:55 |
| S12 | 855 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((app or application) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:58 |
| S13 | 227 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) same (mobile or terminal or device or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:07 |
| S14 | 99 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:08 |
| S15 | 6262 | S6((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:09 |
| S16 | 99 | ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:09 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | | | | |
| S17 | 4 | ("20140108649" or "20150242629" or "20160267257" or "20170177892").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:45 |
| S18 | 20 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060202355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:11 |
| S19 | 20 | ("20120099714" OR "20120252411" OR "20120262271" OR "20130179210" OR "20130311364" OR "20140032691" OR "20140044242" OR "20140089849" OR "20140109174" OR "20140219432" OR "20140267547" OR "20140273929" OR "20140282868" OR "20140287715" OR "20150242629" OR "20160055323" OR "20160066182" OR "20160088021" OR "20160219146" OR "20160267257").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:24 |
| S20 | 18 | "9307386" | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:30 |
| S21 | 1 | "9307386".PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:32 |
| S22 | 13 | ("20110237226" \| "20140108649" \| "20170061006" \| "20170084150" \| "20170193622" \| "5255306" \| "6054928" \| "7587067" \| "9282188" \| "9866680" \| "9871915" \| "9888108" \| "9892242").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:29 |
| S23 | 20 | ("20160330084" OR "20160381212" OR "20160381219" OR "20160381556" OR "20170208468" OR "20170177892" OR "4495386" OR "5896556" OR "6058173" OR "6668045" OR "6965590" OR "7085359" OR "7106843" OR "7218993" OR "7254708" OR "7280816" OR "7333798" OR "7366782" OR "7529357" OR "7742581").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:34 |
| S24 | 2 | "20120252411" | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:49 |
| S25 | 5 | ("20010036821" \| "20020071537" \| "5535261" \| "6052454" \| "6064963").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/21 16:00 |
| S26 | 20 | ("7804941" OR "7860222" OR "7899167" OR "8019354" OR "8031052" OR "8370206" OR "8428559" OR "8498937" OR "8571525" OR "8639926" OR "8646056" OR "8917848" OR "9094500" OR "9124763" OR "9232051" OR "9262604" OR "9307386" OR "9614954" OR "9614955" OR "9661128").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/21 16:07 |

| S27 | 5 | "9674338" | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:10 |
| S28 | 7528 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:17 |
| S29 | 73371 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) (settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:18 |
| S30 | 61884 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) (settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/21 16:19 |
| S31 | 643 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) near7(settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/21 16:20 |
| S32 | 644 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) near7(settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 09:15 |
| S33 | 1 | "20150188949" | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:29 |
| S34 | 1 | S33 and settings | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:29 |
| S35 | 1 | S33 and (app or application$1) | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:32 |

| S36 | 1 | "20110055899" | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:49 |
|-----|---|---------------|-----------------|----|----|------------------|
| S37 | 1 | S36 and (devic$2) | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:49 |
| S38 | 0 | S36 and (mobile or phone or cellphone or smartphone) | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:51 |
| S39 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:01 |
| S40 | 149192 | S39 same (hardware or software or application or (device adj3 settings)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:04 |
| S41 | 14250 | S39 same (operating adj2 system) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:05 |
| S42 | 57264 | S39 near7 (hardware or software or application or (device adj3 settings)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:05 |
| S43 | 2513 | S39 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:07 |
| S44 | 0 | S39 same (detectf$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:27 |
| S45 | 35 | S39 same (detect$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:27 |
| S46 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:53 |
| S47 | 35 | S46 same (detect$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:53 |
| S48 | 2 | "20120240197" | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:54 |
| S49 | 2 | S48 and tamper$6 | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:55 |
| S50 | 56 | S46 same (detect$5 near7 (download$4 or acess$5) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:02 |
| S51 | 277 | S46 and (layered adj2 security) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:12 |

| S52 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:22 |
|---|---|---|---|---|---|---|
| S53 | 55828 | S52 same ((delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:24 |
| S54 | 841 | S52 same ((ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near4 (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:28 |
| S55 | 0 | S52 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near7 (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:42 |
| S56 | 68 | S52 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) same (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) same (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:42 |
| S57 | 1867 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:44 |
| S58 | 49 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near7 settings) | US-PGPUB; USPAT | OR | ON | 2018/02/22 14:13 |
| S59 | 179 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:51 |
| S60 | 179 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:52 |
| S61 | 677 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5 or prevent$4) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:52 |
| S62 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:33 |
| S63 | 13 | "2015/0040246" | US- | OR | ON | 2018/02/22 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 15:34 |
| S64 | 498 | S61 not S60 | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:50 |
| S65 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:08 |
| S66 | 1 | S65 and (mobile or cellular or phone or telephone or smartphone or pda) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:09 |
| S67 | 1 | S65 and application | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:10 |
| S68 | 1 | S65 and device | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:13 |
| S69 | 1 | S65 and (software or (system adj2 call)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:18 |
| S70 | 1 | S65 and (os or (operating adj2 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:19 |
| S71 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S72 | 0 | "20170244729""20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S73 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S74 | 5 | deauthenticat$5 adj4 (dos or (denial adj2 service adj3 attack)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 17:03 |
| S75 | 41 | deauthenticat$5 same (dos or (denial adj2 service adj3 attack)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 17:06 |
| S76 | 266 | ((ssid$1) near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:30 |
| S77 | 139 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:34 |
| S78 | 141 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:34 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | | | | |
| S79 | 141 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5)) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 06:49 |
| S80 | 0 | S79 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:12 |
| S81 | 6265 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:12 |
| S82 | 204 | S81 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:12 |
| S83 | 3 | "9576157" | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:19 |
| S84 | 0 | ((unathorized near3 (use or usage or used)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:22 |
| S85 | 599 | ((unauthorized or sanctioned or unsanctioned or contraband or illicit$3 or pirated or smuggled or bootlegged or illegal) same ((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:24 |
| S86 | 5 | "20090253410" | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:30 |
| S87 | 1 | "20090253410".pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:56 |
| S88 | 1 | S87 and (operat$4 adj3 system) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:56 |
| S89 | 1 | S87 and (software or application) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:59 |
| S90 | 6504 | ((jailbreak$4 or (jail adj3 break$4) or rooting) same (mobile or terminal or | US-PGPUB; | OR | ON | 2018/02/23 08:30 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | USPAT | | | |
| S91 | 38 | S90 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 08:31 |
| S92 | 82 | S90 and (ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 08:36 |
| S93 | 1 | "20170329966" | US-PGPUB; USPAT | OR | OFF | 2018/02/23 09:01 |
| S94 | 1 | S93 and (case or tamper$5) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 09:01 |
| S95 | 3977 | (case same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 09:07 |
| S96 | 20 | S95 same (front same back) | US-PGPUB; USPAT | OR | ON | 2018/02/23 09:08 |
| S97 | 15 | ((case or shell or cover or enclosure) same (front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:00 |
| S98 | 31 | ( (front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:01 |
| S99 | 31 | ((front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:02 |
| S100 | 24484 | ((front adj3 plate) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:04 |
| S101 | 3489 | S100 same (back adj3 plate) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:04 |
| S102 | 814 | ((front adj3 plate) near7 (back adj3 plate) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:05 |

| S103 | 6612 | ((case or shell or cover or enclosure or housuing) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:22 |
|---|---|---|---|---|---|---|
| S104 | 2317 | (((case or shell or cover or housuing) near7 (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant)))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:22 |
| S105 | 2 | S104 and ((case or shell or cover or enclosure or housuing) same ((earphone or headphone) near3 port$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:51 |
| S106 | 24 | ("20050058494" | "20060138182" | "20120305422" | "20130009413" | "20130265643" | "20130265644" | "20150068934" | "20150150362" | "20150296651" | "20160166321" | "4850657" | "6567651" | "7370840" | "7630745" | "8281924" | "8616422" | "8973795" | "9004330" | "9419669" | "D670279" | "D674803" | "D685358" | "D690305" | "D718316").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/23 12:53 |
| S107 | 28 | ("2015/0068934").URPN. | USPAT | OR | ON | 2018/02/23 12:54 |
| S108 | 82 | S104 and ((case or shell or cover or enclosure or housuing) same ((usb) near3 port$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:55 |
| S109 | 1 | "20160291643".pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S110 | 0 | S109 and (usb or (serial)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S111 | 1 | S109 and (port) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S112 | 458 | (diode same (charg$4 adj3 port)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:05 |
| S113 | 12 | S112 same (prevent$5 adj4 current) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:05 |
| S114 | 2 | "20160291643" | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:16 |
| S115 | 26 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US- | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:18 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$).did. or (US-9892242-$ or US-9262604-$).did. | | | | |
| S116 | 5 | S115 and (ota or (over adj3 air) or over-the-air) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:18 |
| S117 | 260 | S100 and (ota or (over adj3 air) or over-the-air) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:27 |
| S118 | 1 | S100 and ((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:27 |
| S119 | 1845 | (((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:28 |
| S120 | 1013 | (((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:28 |
| S121 | 26 | S120 same (wifi or wi-fi or blu or bluetooth or "802.11") | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:29 |
| S122 | 2 | "20140226487" | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:44 |
| S123 | 0 | S122 and (blu or bluetooth or "802.11") | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:44 |
| S124 | 9 | S120 same (bluetooth or (blue adj2 tooth)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:00 |
| S125 | 307 | (((ota or (over adj3 air) or over-the-air) same (bluetooth or (blue adj2 tooth)) same (configuration$1 or settings)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:43 |
| S126 | 114 | S125 same (os or (operat$4 adj2 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:45 |
| S127 | 7 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:11 |
| S128 | 2 | S127 and kernel | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:12 |
| S129 | 27 | (US-20160007201-$ or US-20150215254- | US- | OR | ON | 2018/02/23 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | $ or US-20100151820-$ or US-20140108649-$ or US-20140023691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$).did. or (US-9892242-$ or US-9262604-$).did. | PGPUB; USPAT | | | 15:17 |
| S130 | 7 | S129 and kernel | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:17 |
| S131 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:26 |
| S132 | 3 | S131 and ((uninstall$5 or delet$5 or remov$5) near7 (app or application$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:27 |
| S133 | 7 | S131 and (app or application$1) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:33 |
| S134 | 4 | S131 and ((install$5 or download$4 or (down adj2 load$4)) near7 (app or application$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:35 |
| S135 | 2 | S131 and (filter$5 near7 (traffic or packet$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:34 |
| S136 | 5 | S131 and (firewall) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:38 |
| S137 | 1 | S131 and (access adj3 point adj3 identifier$1) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:51 |
| S138 | 6 | S131 and ((uninstall$5 or delet$5 or remov$5)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 17:22 |
| S139 | 7 | S131 and (case or cover or housing or enclosure or protective or tamper$9) | US-PGPUB; USPAT | OR | ON | 2018/02/23 17:33 |
| S140 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/23 18:22 |
| S141 | 2 | S140 and "26" | US-PGPUB; USPAT | OR | ON | 2018/02/23 18:22 |
| S142 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 07:38 |
| S143 | 6 | S142 and (mac or address$3 or ssid$1 or (service adj3 set)) | US-PGPUB; | OR | ON | 2018/02/26 07:38 |

| | | | US-PGPUB; USPAT | OR | ON | |
|---|---|---|---|---|---|---|
| S144 | 5 | S142 and (settings or identifier$1) | US-PGPUB; USPAT | OR | ON | 2018/02/26 07:53 |
| S145 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:22 |
| S146 | 6 | S145 and (wifi or wi-fi or wlan or w-lan or hotspot or "802.11"$3) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:23 |
| S147 | 5 | S145 and (os or (operat$4 adj3 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:40 |
| S148 | 7 | S145 and (hardware or case or tamper$5 or enclosure or shell or cover or housing or protective) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:47 |
| S149 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:40 |
| S150 | 13 | "2015/0040246" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:40 |
| S151 | 1 | "20170329966" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:43 |
| S152 | 0 | "2017/0329966" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:43 |
| S153 | 10281 | ((jailbroken or jailbreak$4 or (jail aj2 (brokn or break$4))) near7 (os or (operat$6 adj3 system))) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:07 |
| S154 | 1 | S153 same (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:09 |
| S155 | 49 | S153 and (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:09 |
| S156 | 67580 | (kernel same (os or (operat$6 adj3 system))) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:11 |
| S157 | 23 | S156 same (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:11 |
| S158 | 2 | ("20130097660" or "20140298403").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:08 |
| S159 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:55 |
| S160 | 4 | S159 and exchang$4 | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:56 |
| S161 | 6 | S159 and (text or txt or sms or data or external) | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:57 |

| S162 | 2 | "20160291643" | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
|------|---|---------------|-----------------|----|----|------------------|
| S163 | 0 | S162 and ssid | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
| S164 | 0 | S162 and (access adj3 point) | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
| S165 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:00 |
| S166 | 29 | S165 and (settings or ssid$1 or essid$1 or addresses or mac) | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:00 |
| S167 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:01 |
| S168 | 6 | S167 and (settings or ssid$1 or essid$1 or addresses or mac) | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:01 |
| S169 | 1 | S167 and screws | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:34 |
| S170 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |
| S171 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | | | | |
| S172 | 5 | S170 and firewall | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |
| S173 | 2 | "20110162060" | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |
| S174 | 0 | S173 and deauthicat$5 | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |
| S175 | 2 | S173 and deauthenticat$5 | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |
| S176 | 3 | S170 and discard$6 | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:04 |
| S177 | 5 | S170 and (filter$5 or packet$4) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:06 |
| S178 | 6 | S170 and (filter$5 or packet$4 or firewall) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:06 |
| S179 | 5 | S170 and (address$4) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:10 |
| S180 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/09/12 09:04 |
| S181 | 3 | S180 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:07 |
| S182 | 1 | "20180242155" | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:21 |
| S183 | 1 | S182 and port | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:22 |
| S184 | 1 | S182 and (hardware adj3 barr$4) | US- | OR | OFF | 2018/09/12 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 09:42 |
| S185 | 23 | S180 and (port$1 or connector$1 or jack) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:47 |
| S186 | 631 | (((correction$4 adj3 facilit$4) or prison or inmat$4) and (access$4 near7 (port or usb))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 09:58 |
| S187 | 6 | ("20110162060" or "20140226487" or "200423698" or "20160291643" or "20170329966" or "20150040246" or "20160309008").pn. | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:23 |
| S188 | 7 | ("20110162060" or "20140226487" or "20040023698" or "20160291643" or "20170329966" or "20150040246" or "20160309008").pn. | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:24 |
| S189 | 35 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:25 |
| S190 | 1 | S188 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:27 |
| S191 | 15 | S189 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:29 |
| S192 | 2 | "20130194067" | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:37 |
| S193 | 1 | S182 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:02 |
| S194 | 1 | S182 and (second same (gui or (graphical adj2 user adj2 interface))) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:05 |
| S195 | 1 | S182 and (second same attempt) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:06 |
| S196 | 1 | S182 and (settings same (gui or (graphical adj2 user adj2 interface))) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:06 |
| S197 | 2 | S188 and (access$5 near7 settings) | US- | OR | ON | 2018/09/12 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 12:09 |
| S198 | 3 | S188 and (settings) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:10 |
| S199 | 4272901 | prevent$5 near7 access$5 near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:13 |
| S200 | 4160465 | prevent$5 near7 (access$5 adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:13 |
| S201 | 4160212 | user near7 prevent$5 near7 (access$5 adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:14 |
| S202 | 4160121 | user near7 prevent$5 near7 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:15 |
| S203 | 4160120 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:19 |
| S204 | 12546 | S203 near7 attempt$5 | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:20 |
| S205 | 4254875 | ((user near3 prevent$5) near$47 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:21 |
| S206 | 4254097 | ((user near3 prevent$5) near$4 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:21 |
| S207 | 133 | prevent$5 near7 access$5 near5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:22 |
| S208 | 1 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near7 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:23 |
| S209 | 1 | "20170126733" | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:43 |
| S210 | 1 | S209 and sso | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:43 |
| S211 | 0 | S209 and settings | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:45 |
| S212 | 1 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near7 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:02 |
| S213 | 1 | ((user near3 prevent$5) same (access$5 adj4 device adj4 settings) same (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:02 |
| S214 | 72 | ((user) same (access$5 adj4 device adj4 settings) same (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:03 |
| S215 | 305 | tamper same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:13 |

| S216 | 27 | (second adj2 attempt) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:43 |
| S217 | 30199 | (user same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings)) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:58 |
| S218 | 2376 | ((user near3 chang$4) same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings)) | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:05 |
| S219 | 1106 | ((user near3 chang$4) same ((ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) near7 ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings))) | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:09 |
| S220 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:22 |
| S221 | 2 | S220 and ("27" or "122") | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:23 |
| S222 | 129798 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:07 |
| S223 | 6220 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) near7 settings) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:08 |
| S224 | 6558 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) near7 (configurations or settings)) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:08 |
| S225 | 3120 | S224 same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:09 |
| S226 | 80 | S225 same (prevent$5 or unauthorised or unauthorized or unlawful or illegal or unsanctioned or prohibit$6) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:12 |
| S227 | 2 | "20150074615" | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:30 |
| S228 | 2 | S227 and (settings or configurations) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:31 |
| S229 | 2 | S227 and (try) | US- | OR | ON | 2018/09/13 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 09:49 |
| S230 | 1 | "20070142041" | US-PGPUB; USPAT | OR | ON | 2018/09/13 10:33 |
| S231 | 2 | "20150074615" | US-PGPUB; USPAT | OR | ON | 2018/09/13 10:36 |
| S232 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:19 |
| S233 | 1 | S232 and ((gui or (user adj2 interface)) same prevent$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:26 |
| S234 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:36 |
| S235 | 2 | S234 and (grayed or out or hide or hidden) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:36 |
| S236 | 0 | S224 same (second near3 attempt$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:46 |
| S237 | 137 | S224 and (second near3 attempt$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:46 |
| S238 | 44 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$ or US-20130194067-$ or US-20180048752-$ or US-20170126733-$ or US-20110314475-$ or US-20150186661-$ or US-20130303143-$ or US-20150074615-$ or US-20070142041-$ or US-20170163615-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2019/02/19 15:45 |
| S239 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2019/02/19 15:46 |
| S240 | 1 | S239 and display | US-PGPUB; USPAT | OR | ON | 2019/02/19 15:46 |
| S241 | 1 | S239 and setting$1 | US- | OR | ON | 2019/02/19 |

| | | | PGPUB; USPAT | | | 15:47 |
|---|---|---|---|---|---|---|
| S242 | 1 | S239 and detect$5 | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:03 |
| S243 | 1 | S239 and (detect$5 same (display or gui or graphical)) | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:05 |
| S244 | 1 | S239 and (kernel) | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:09 |
| S245 | 1 | S239 and (system adj2 call$5) | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:19 |
| S246 | 17 | S238 and (kernel or (system adj2 call$5)) | US-PGPUB; USPAT | OR | ON | 2019/02/19 16:20 |
| S247 | 599 | (kernel same (device near4 settings)) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:17 |
| S248 | 9 | S247 same prevent$5 | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:17 |
| S249 | 9 | S247 same alter$5 | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:21 |
| S250 | 16 | S247 same (prevent$5 or unauthorised or unauthorized or unlawful or illegal or unsanctioned or prohibit$6) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:23 |
| S251 | 6963 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:28 |
| S252 | 2 | S247 and S251 | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:28 |
| S253 | 1 | S247 and (prisoner or inmat$4 or incarcerat$4 or convict or jailbird) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:29 |
| S254 | 31 | S247 and (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) | US-PGPUB; USPAT | OR | ON | 2019/02/19 17:30 |
| S255 | 357 | S247 and ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2019/02/19 17:35 |
| S256 | 198 | S247 same ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or | US-PGPUB; USPAT | OR | OFF | 2019/02/19 17:36 |

wtu$2 or pda or cellphone))

**2/ 20/ 2019 1:09:16 PM**
**C:\ Users\ btaylor\ Documents\ EAST\ Workspaces\ Workspaces\ % 15,435,993 prevent use of**
**mobile for inmates.wsp**

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 15/435,993 | Filing Date | 2017-02-17 | Docket Number (if applicable) | 3210.1280000 | Art Unit | 2646 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Jason MARASS | | | Examiner Name | TAYLOR, Barry W | | |

This is a **Request for Continued Examination (RCE)** under 37 CFR 1.114 of the above-identified application.

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application.  The Instruction Sheet for this form is located at WWW.USPTO.GOV

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

    ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

    ☐ Other _____

☒ Enclosed

    ☒ Amendment/Reply

    ☐ Information Disclosure Statement (IDS)

    ☐ Affidavit(s)/ Declaration(s)

    ☐ Other _____

## MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a  period of months
   (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required) _____

☐ Other _____

## FEES

☒ **The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to
Deposit Account No | 190036

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

| X | Patent Practitioner Signature |
|---|---|
| | Applicant Signature |

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Lauren C. Schleh/ | Date (YYYY-MM-DD) | 2019-02-14 |
| Name | Lauren C. Schleh | Registration Number | 65457 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that:  (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.     The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.     A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.     A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.     A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.     A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.     A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.     A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.

8.     A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.     A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/22 (03-13)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)** | Docket Number (Optional) 3210.1280000 |
|---|---|

| Application Number 15/435,993 | Filed February 17, 2017 |
|---|---|

For **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

| Art Unit 2646 | Examiner TAYLOR, Barry W. |
|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above-identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|  |  | Fee | Small Entity Fee | Micro Entity Fee |  |
|---|---|---|---|---|---|
| ☐ | One month (37 CFR 1.17(a)(1)) | $200 | $100 | $50 | $ _____ |
| ☑ | Two months (37 CFR 1.17(a)(2)) | $600 | $300 | $150 | $ 600 |
| ☐ | Three months (37 CFR 1.17(a)(3)) | $1,400 | $700 | $350 | $ _____ |
| ☐ | Four months (37 CFR 1.17(a)(4)) | $2,200 | $1,100 | $550 | $ _____ |
| ☐ | Five months (37 CFR 1.17(a)(5)) | $3,000 | $1,500 | $750 | $ _____ |

☐ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☑ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to
Deposit Account Number 19-0036 _____.

☑ Payment made via EFS-Web.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant.

☑ attorney or agent of record. Registration number 65,457 _____.

☐ attorney or agent acting under 37 CFR 1.34. Registration number _____.

| /Lauren C. Schleh/ | February 14, 2019 |
|---|---|
| Signature | Date |
| Lauren C. Schleh | (202) 371-2600 |
| Typed or printed name | Telephone Number |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

☑ * Total of 1 _____ forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop PCT, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

12694601

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

## Remarks

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 1-22 are pending in the application, with claims 1, 9, and 17 being the independent claims. By this Amendment, claims 1, 7, 9, 15 and 17 are sought to be amended. Applicant respectfully reserves the right to prosecute similar or broader claims, with respect to the cancelled and/or amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Based on the above amendment and the following remarks, Applicant respectfully requests that the Examiner reconsider all outstanding objections and rejections and that they be withdrawn.

### Rejection under 35 U.S.C. § 112

Claims 1 and 9 stand rejected under 35 U.S.C. § 112(a) or 35 U.S.C. § 112 (pre-AIA), first paragraph, as allegedly failing to comply with the written description requirement. This rejection is respectfully traversed.

By this Amendment, claims 1 and 9 are amended responsive to the rejection. Accordingly, Applicant respectfully requests withdrawal of the rejection.

### Rejections under 35 U.S.C. § 103

The Office Action rejects claims 1, 4-5, 7-9, 12-13, and 15-16 under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Publication No. 2015/0040246 to Yuen *et al.*, in view of U.S. Patent Publication No. 2017/0329966 to Koganti *et al.* further in view of U.S. Patent Publication No. 2016/0309008 to Hangsleben; claims 2 and 10 under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.*, in view of Koganti *et al.* and Hangsleben further in view of

U.S. Patent Publication No. 2016/0291643 to Sande *et al.*; claims 3 and 11 under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.*, in view of Koganti *et al.*, Hangsleben and Sande *et al.* further in view of U.S. Patent Publication No. 2004/0023698 to Chang; claims 6 and 14 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.*, in view of Koganti *et al.*, and Hangsleben further in view of U.S. Patent Publication No. 2014/0226487 to Forssell *et al.*; and claims 17-22 stand rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Koganti *et al.* in view of Yuen *et al.* and Hangsleben further in view of U.S. Patent Publication No. 2011/0162060 to Vijayakumar *et al.* These rejections are respectfully traversed.

The applied references fail to disclose, and would not have rendered obvious, at least "an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to…prevent, at a kernel of an operating system operating on the mobile device, the processor of the mobile device from executing operations the attempt to access or alter the device settings of the mobile device," as recited in independent claim 1.

The Office Action relies on Yuen for disclosing the claimed OS barrier. Specifically, the Office Action alleges that Yuen discloses this feature because Yuen describes hiding a recently-added application icon and/or by denying running of the application. Office Action, p. 4 *citing* Yuen, ¶ [0041].

However, Yuen seeks to prevent operation of a newly-installed application on the mobile device until authorization of the user for that application has been approved. Thus, after being installed, Yuen disables that application while the authorization takes place. During this period, the application is disabled by its icon being grayed out, or by disabling system responses to that application. All of these prevention methods are carried out by a mobile agent 20. Yuen, ¶ [0039]-

- 12 -                                                           MARASS *et al.*
Reply to Office Action of September 18, 2018                  Application No. 15/435,993

[0041]. Yuen makes no indication that the mobile agent prevents the application instructions "at a kernel of an operating system," as recited in the claims.  Rather, Yuen seems to indicate that the mobile agent operates at an application level, rather than at the kernel. Specifically, when Yuen describes preventing system calls, Yuen discloses that the mobile agent 20 "create[s] a hook for the operating system." Yuen, ¶ [0041]. The mobile agent 20 "would then deny the running of the installed application by telling the operating system that it is not allowed as a return result of that hook." Yuen, ¶ [0041]. Without any indication to the contrary in Yuen, there appears to be nothing in Yuen to suggest that the application disabling takes place at the kernel. The remaining references appear to be silent with respect to this feature, and therefore fail to at least cure Yuen's deficiencies.

For at least similar reasons the applied references also fail to disclose, and would not have rendered obvious at least "preventing, at a kernel of an operating system operating on the mobile device, the processor from executing operations the attempt to access or alter the device settings of the mobile device," as recited in independent claim 9, and "an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change or access of device settings of the mobile device by a user of the mobile device via a graphical user interface, and to prevent, at a kernel of an operating system operating on the mobile device, executing of instructions the attempt to access or alter the device settings of the mobile device," as recited in independent claim 17.

Therefore, independent claims 1, 9 and 17 are patentable over the applied references. Claims 2-8, 10-16 and 18-22 are patentable at least for their dependencies from the independent claims, as well as for the additional features they recite.

Accordingly, Applicant respectfully requests withdrawal of the rejections.

Atty. Dkt. No. 3210.1280000

- 13 -                                                                    MARASS *et al.*
Reply to Office Action of September 18, 2018                    Application No. 15/435,993

## *Conclusion*

All of the stated grounds of objection and rejection have been properly traversed,

accommodated, or rendered moot. Applicant therefore respectfully requests that the Examiner

reconsider all presently outstanding objections and rejections and that they be withdrawn. Applicant

believes that a full and complete reply has been made to the outstanding Office Action and, as such,

the present application is in condition for allowance. If the Examiner believes, for any reason, that

personal communication will expedite prosecution of this application, the Examiner is invited to

telephone the undersigned at the number provided.

Prompt and favorable consideration of this Amendment and Reply is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:   February 14, 2019

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

12646642_1

Atty. Dkt. No. 3210.1280000

## *Amendments to the Claims*

This listing of claims will replace all prior versions, and listings, of claims in the application.

1.      (Currently Amended) A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate, the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

detect ~~a first~~an attempt to perform an unsanctioned function of an application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the ~~first~~ attempt to perform the unsanctioned function; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

detect ~~a second attempt, the second attempt being~~ an attempt to access device settings of the mobile device by a user of the mobile device via a graphical user interface; and

prevent, at a kernel of an operating system operating on the mobile device, the processor of the mobile device from executing operations ~~related to the second attempt~~the attempt to access or alter the device settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned

source outside of; and

wherein the device settings include a wireless access point setting.

2.　　(Original) The system of claim 1, wherein the front plate and the back plate of the hardware

barrier are configured to form a seal around the device that allows physical contact with only a

screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the

mobile device, and a universal serial bus (USB) port of the mobile device.

3.　　(Original) The system of claim 2, further comprising a diode connected to the barrel charger

port, the diode preventing electrical current from flowing out of the barrel charger port.

4.　　(Original) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

5.　　(Original) The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to install a second application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

6.　　(Original) The system of claim 1, wherein the application barrier is further configured to:

detect an over-the-air command received by the mobile device over a wireless link;

determine that the command meets a security requirement of a second application

sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow

the command to be executed by a processor of the mobile device.

7.      (Currently Amended) The system of claim 1, wherein the ~~second~~ attempt <u>to access or alter the</u>

<u>device settings of the mobile device</u> is initiated by the application.

8.      (Original) The system of claim 1, wherein the device settings further include a Bluetooth radio

setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the

mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting

determining whether or not the mobile device may receive data over a cellular wireless link.

9.      (Currently Amended) A mobile device, comprising:

a memory that stores a first set of operations of an application barrier and a second

set of operations of an operating system (OS) barrier; and

a processor configured to:

execute the first set of operations of the application barrier, the first set of

operations comprising:

detecting ~~a first~~<u>an</u> attempt by a user of the mobile device to perform

an unsanctioned function of an application stored on the memory; and

preventing the processor from executing operations related to the first

attempt; and

execute the second set of operations of the OS barrier, the second set of

operations comprising:

detecting ~~a second attempt, the second attempt being~~ an attempt to

access device settings of the mobile device by the user of the mobile device via a graphical

user interface; and

preventing<u>, at a kernel of an operating system operating on the mobile</u>

<u>device,</u> the processor from executing operations ~~related to the second attempt~~<u>the attempt to</u>

<u>access or alter the device settings of the mobile device</u>;

wherein the unsanctioned function includes exchanging data with an unsanctioned

source outside of the controlled environment facility; and

wherein the device settings include a wireless access point setting.

10.     (Original) The mobile device of claim 9, wherein a hardware barrier that includes a front plate

and a back plate fastened together by tamper-resistant screws is configured to form a seal

around the device that allows direct physical contact with only a screen of the mobile device, a

headphone port of the mobile device, a barrel charger port of the mobile device, and a

universal serial bus (USB) port of the mobile device.

11.     (Original) The mobile device of claim 10, wherein a diode is connected to  the barrel charger

port, the diode preventing electrical current from flowing out of the barrel charger port.

12.     (Original) The mobile device of claim 9, wherein first set of operations further comprises:

detecting an attempt to delete the application on the mobile device; and

sending a command to the processor to cancel the attempt.

13.   (Original) The mobile device of claim 9, wherein first set of operations further comprises:

detecting an attempt to install a second application on the mobile device; and

sending a command to the processor of the mobile device to cancel the installation

attempt.

14.   (Original) The mobile device of claim 9, wherein the first set of operations further comprises:

detecting an over-the-air command received by the mobile device over a wireless

link;

determining that the over-the-air command is from a sanctioned source; and

in response to determining that the command is from the sanctioned source, allowing

the command to be executed by the processor.

15.   (Currently Amended) The mobile device of claim 9, wherein the ~~second~~ attempt to access or

alter the device settings of the mobile device is initiated by the application.

16.   (Original) The mobile device of claim 9, wherein the device settings further include a

Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining

whether or not the mobile device may receive data over a Bluetooth wireless link, and the

cellular radio setting determining whether or not the mobile device may receive data over a

cellular wireless link.

17.     (Currently Amended) A system of layered security barriers designed to prevent unsanctioned

use of a mobile device in a controlled environment facility, comprising:

        a hardware barrier that includes a front plate and a back plate configured to form a

seal around the mobile device that allows limited physical contact with the mobile device,

the hardware barrier obstructing access to at least one port of the mobile device;

        an application barrier, stored on a memory of the mobile device, configured to

prevent an unsanctioned function from being performed on the mobile device;

        an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change or access of device settings of the mobile

device by a user of the mobile device via a graphical user interface, and to prevent, at a

kernel of an operating system operating on the mobile device, executing of instructions that

attempt to access or alter the device settings of the mobile device; and

        an access control barrier implemented on a firewall device between a wireless access

point serving the controlled-environment facility and a network, the access control barrier

configured to perform filtering of a plurality of packets directed to or transmitted by the

mobile device.


18.     (Original) The system of claim 17, the system further comprising a wireless intrusion barrier

implemented on the wireless access point device, the wireless intrusion barrier configured to:

        detect an attempt by the mobile device to connect with a second wireless access

point device;

obtain a wireless access point identifier associated with the second wireless access

point device;

determine that the second wireless access point identifier is not among a plurality of

wireless access point identifiers stored on the wireless access point device; and

in response to the determining, attack the mobile device using a deauthentication

denial of service attack.


19.     (Original) The system of claim 18, wherein the wireless intrusion barrier is further configured

to attack the second wireless access point using another deauthentication denial of service

attack in response to the determining.


20.     (Original) The system of claim 17, wherein the application barrier is configured to prevent an

unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the

memory of the mobile device, a second attempt by the user to install a second application on

the mobile device, and a third attempt by the application to access content from a disallowed

source outside of the controlled environment facility; and

preventing a processor of the mobile device from executing any operations related to

the first attempt, the second attempt, and the third attempt.


21.     (Original) The system of claim 17, wherein the operating system (OS) is configured to prevent

the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile device; and

preventing the processor of the mobile device from executing operations related to

the attempt,

wherein the device settings include a wireless access point setting.


22.    (Original) The system of claim 17, wherein the access control barrier is configured to perform

filtering of the plurality of packets by:

receiving a packet transmitted by or directed to the mobile device;

performing an inspection of a packet, the inspection including obtaining an address

of the packet;

determining that the address is not among a plurality of addresses stored on the

firewall device; and

in response to the determining, discarding the packet.

Amendment Under 37 C.F.R. § 1.116
Expedited Procedure – Art Unit 2646

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: TAYLOR, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment and Reply Under 37 C.F.R. § 1.114

Commissioner for Patents                                                          *Mail Stop RCE*
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In reply to the Office Action dated September 18, 2018, Applicant submits the following

Amendment and Remarks.

Amendments to the Claims are reflected in the listing of claims which begins on page 2 of

this paper.

Remarks and Arguments begin on page 10 of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be

provided for in documents accompanying this paper. However, if additional extensions of time are

necessary to prevent abandonment of this application, then such extensions of time are hereby

petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or

appeal of this application (including issue fee, fees for net addition of claims or forwarding to

appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15435993 |
| **Filing Date:** | 17-Feb-2017 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Attorney Docket Number:** | 3210.1280000 |

Filed as Large Entity

Filing Fees for   Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 2 months with $0 paid | 1252 | 1 | 600 | 600 |
| **Miscellaneous:** | | | | |
| RCE- 1ST REQUEST | 1801 | 1 | 1300 | 1300 |
| **Total in USD ($)** | | | | **1900** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 35155340 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 14-FEB-2019 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 16:42:42 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $1900 |
| RAM confirmation Number | 021519INTEFSW16433900 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2019-02-14-Miscellaneous-Letter-3210-1280000.pdf | 300172 <br> 0da6fbfe2dc972jb7c0ef90a7ad55c2463786 2b95 | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Request for Continued Examination (RCE) | 2019-02-14-RCE-3210-1280000.PDF | 1350124 <br> 1e8e4dcf5897afa8839432fde75dde859da1 71c3 | no | 3 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Extension of Time | 2019-02-14-EOT-3210-1280000.PDF | 163444 <br> 963e6e49d68e6142fe8fdb982947fddef248 7fc8 | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | | 2019-02-14-Amendment-Reply-114-3210-1280000.PDF | 197385 <br> 9febfedcc632b3a0622765dc98202b98a1a7 c69c | yes | 13 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | | Start | End |
| Applicant Arguments/Remarks Made in an Amendment | | 10 | 13 |
| Claims | | 2 | 9 |
| Amendment Submitted/Entered with Filing of CPA/RCE | | 1 | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Fee Worksheet (SB06) | fee-info.pdf | 32739 <br> 308a4c25c2d33b6c65a9d1e792ca228614a 21373 | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 2043864 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**LAUREN C. SCHLEH**
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

February 14, 2019

Commissioner for Patents                    *Confirmation No. 1254*
PO Box 1450                                          *Art Unit 2646*
Alexandria, VA  22313-1450                 *Attn:  Mail Stop RCE*

         Re:    U.S. Utility Patent Application
              Appl. No. 15/435,993; Filing Date: February 17, 2017
              For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
              Inventors:  MARASS *et al.*
              Our Ref:  3210.1280000

Commissioner:

     Transmitted herewith for appropriate action are the following documents:

1. Online Credit Card Payment Authorization in the amount of **$1,900.00** to cover:
      $1,300.00     Request for Continued Examination (RCE) Fee – 1st Request;
      $   600.00     Extension of Time Fee for two (2) months;
2. Petition for Extension of Time Under 37 CFR 1.136(a);
3. Request for Continued Examination (RCE) Transmittal (PTO/SB/30); and
4. Amendment and Reply Under 37 C.F.R. § 1.114.

     The above-listed documents are filed electronically.

     In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

     Fee payment is provided through online credit card payment.  The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) or credit any overpayment to our Deposit Account No. 19-0036.

                         Respectfully submitted,

                         STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                         /Lauren C. Schleh/

                         Lauren C. Schleh
                         Attorney for Applicant
                         Registration No. 65,457

LCS/crb
Enclosure(s)

                                  12694640_1

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 15/435,993 | Filing Date 02/17/2017 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE   ☐ SMALL   ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = * | | x $80 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = * | | x $420 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| AMENDMENT 02/14/2019 | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 22 | Minus | ** 22 | = 0 | x $100 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $460 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | SLIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /KAREN L VESTAL/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

26111          7590          09/18/2018
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/18/2018 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. 15/435,993 | Applicant(s) MARASS et al. |
|---|---|---|
| | Examiner BARRY W TAYLOR | Art Unit 2646 | AIA Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>Amnd 7/19/2018</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☑ This action is **FINAL**.   2b)☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims\***

5) ☑ Claim(s) <u>1-22</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-22</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on <u>2/17/17</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a)☐ All   b)☐ Some**   c)☐ None of the:
   1.☐ Certified copies of the priority documents have been received.
   2.☐ Certified copies of the priority documents have been received in Application No. _____.
   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 11-13)                    Office Action Summary                    Part of Paper No./Mail Date 20180913

Application/Control Number: 15/435,993                                          Page 2
Art Unit: 2646

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the
> invention, and of the manner and process of making and using it, in such full, clear, concise,
> and exact terms as to enable any person skilled in the art to which it pertains, or with which it
> is most nearly connected, to make and use the same, and shall set forth the best mode
> contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the
> manner and process of making and using it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains, or with which it is most nearly
> connected, to make and use the same, and shall set forth the best mode contemplated by the
> inventor of carrying out his invention.

1.      Claims 1 and 9 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA),

first paragraph, as failing to comply with the written description requirement.  The

claim(s) contains subject matter which was not described in the specification in such

a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint

inventor, or for pre-AIA the inventor(s), at the time the application was filed, had

possession of the claimed invention.

Claims 1 and 9 recite "detect a second attempt, the second attempt being an

attempt to access settings of the mobile device by a user of the mobile device via a

graphical user interface".  Claims 1 and 9 are not supported in Applicants specification.

The limitation(s) is/are not even mentioned in the specification.

Application/Control Number: 15/435,993                                      Page 3
Art Unit: 2646

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

This application currently names joint inventors. In considering patentability of the

claims the examiner presumes that the subject matter of the various claims was

commonly owned as of the effective filing date of the claimed invention(s) absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

point out the inventor and effective filing dates of each claim that was not commonly

owned as of the effective filing date of the later invention in order for the examiner to

consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)

prior art against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

2.      Claims 1, 4-5, 7-9, 12-13, 15-16 are rejected under 35 U.S.C. 103 as being

unpatentable over Yuen et al (2015/0040246) in view of Koganti et al (2017/0329966)

further in view of Hangsleben (2016/0309008).

Application/Control Number: 15/435,993                                    Page 4
Art Unit: 2646

   Regarding claims 1 and 9. Yuen teaches a mobile device and a system of

layered security barriers of a mobile device that prevents unsanctioned use of the

mobile device, comprising:

   a hardware barrier that includes a front plate and a back plate, the hardware

barrier obstructing access to at least one port of the mobile device;

   an application barrier stored on a memory of the mobile device, the application

barrier configured to: detect a first attempt to perform an unsanctioned function of an

application stored in the memory of the mobile device (figure 1, 0031-0032 wherein

smartphone item 10 has mobile agent item 20 having an installed application list item

22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the

mobile that the application was changed (e.g., installed or removed);

   prevent a processor of the mobile device from executing operations related to the

first attempt (0041 – one example means for disabling (i.e., not allowing user of the

mobile device to access and execute) the newly installed application, another example

means for disabling by the mobile agent to disable or otherwise redirect a system of

function call associated with the newly installed application, such that mobile agent

would not allow the system of function call issued by the Operating System of the

device infrastructure to be received by the newly installed application. **Another**

**example means is by the mobile agent to disable operation or otherwise hide**

**(e.g., grayed out) of a <u>user interface 27 icon</u> (e,g., a graphical user interface)**

**associated with the newly installed application**, 0053-0055 as discussed above,

each mobile device is configured with Mobile Agent 20 for managing content of the

application list 22, containing identification of all mobile applications presently installed

(and/or removed) on the mobile device and the mobile agent can quarantine/disable

non-compliant applications); and

an operating system (OS) barrier stored in the memory of the mobile device, the

OS barrier configured to:

detect a second attempt to access device settings of the mobile device (0041

another example means for disabling by the mobile agent to disable or otherwise

redirect a system of **function call** associated with the newly installed application, such

that **mobile agent would not allow the system of function call issued by the**

**Operating System** of the device infrastructure to be received by the newly installed

application.  **For example, mobile agent disables operation or otherwise hides**

**(e.g., grayed out) a** **user interface 27 icon (e.g., graphical user interface)**, 0052 as

may be the case for a **jail broken** (e.g., OS barrier) or **rooted device** (e.g., OS barrier).

As such, it can be an advantage to have the list 22 maintained by the mobile device

wherein list 22 is a local list of all authorized applications installed)); and

prevent the processor of the mobile device from executing operations related the

second attempt (0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications);


Yuen does not show hardware barrier or wherein the unsanctioned function

includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

Koganti teaches a mobile device uses a Device Trust Management Service

DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003,

0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS

triggers, SSID violation, hardware Triggers, unauthorized communication network,

jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005,

0007, 0009, 0038, 0045 – **detect tampering to the device including an opened**

**mobile device case, obviously having a front and back (e.g., fort plate and back**

**plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating**

**System Barrier** (figure 3 item 320, 0036, 0069).

Koganti **teaches wherein the unsanctioned function includes exchanging**

**data with a unsanctioned source outside of** (see 0003, 0005, 0007, 0009 wherein

detect unsanctioned browser app, media player app, or network connection service

used for exchanging data with an unsanctioned source outside of).  Koganti teaches the

status include operations of and/or configurations of the electronic device.  The

operations of the electronic device include Operating System and/or Application

operations (0016).  **Paragraph 0038 access request from applications show as 324**

**in figure 3 wherein applications can be "browser" 326 (e.g., graphical user**

**interface),** web access status, network connectivity status, application threat

**status used to exchange data**.  Paragraph 0039 monitor OS/OS kernel and device

behavior, monitor connection status of peripheral hardware and/or

transmission/reception status with an unsanctioned source outside of.  Paragraphs

0041-0042 monitor for Text input request requesting access to the modem to send SMS

text or a social media application.  Paragraph 0043 wherein monitors 342 may monitor

request for network connections (e.g., **texting application**) which requires display (e.g.,

**graphical user interface**).  **Paragraph 0044 authenticate user has entered correct**

**PIN or password (e.g., <u>graphical user interface</u>**).  Paragraph 0046 request/attempts

to execute software or applications **(e.g. using graphical user interface)**,

request/attempts for web access **(e.g. using graphical user interface)**,

request/attempts to download/upload data and/or connection to a particular base

station, access point, website, or identified network, SSID violations.  Paragraph 0050

wherein a USB connection to peripheral hardware may pose a threat monitor user

screen **(e.g. graphical user interface)**.  Paragraph 0052 wherein violations and/or

changes of the design and/or intended use of the electronic device may be a threat,

verify PIN or password entered **(e.g. using graphical user interface)**.  TABLE 1, 0064

wherein Unknown SSID.  Paragraph 0066 wherein monitors 342 may monitor for and

detect a connection of the electronic device to a public WiFi network.  Paragraph 0069

wherein SMS used to communicate is also monitored wherein SMS applications require

**(e.g. using graphical user interface)**.  Paragraph 0070 wherein whitelist/blacklist for

particular communications network and/or USB port used for charging BUT not allowed

for uploading or downloading files and/or particular website **(e.g. using graphical user**

**interface)**.  Paragraph 0074 request user input **(e.g. using graphical user interface).**

Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device

is in possession of an authorized user, software, firmware, and/or hardware of the

electronic device may exhibit and/or engage in behavior that constitutes the threat of the

security of the device<u>.  **For example, a user of the device may download a flashlight**</u>

<u>**application** (e.g. using graphical user interface) **and consent to a user agreement**</u>

**for the flashlight application.  The user may be unaware that the user agreement**

**includes consent for the flashlight App to upload pictures and contact**

**information to the server (e.g., detect second attempt to access device settings).**

**However, the scoring service (see item 345 in figure 3) may detect the uploading**

**(e.g., detect second attempt to access device settings) as a threat based on**

**security policy.  Subsequently, the targeted security action service 360 (figure 3)**

**may deny access of the flashlight Application to the file system content 245**

**and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure**

**3) may prevent the flashlight application from engaging in the undesired and**

**threating behavior.**   Paragraph 0079 browser 326 **(e.g. using graphical user**

**interface) may provide a runtime environment and/or control access to assets of**

**the mobile device.  Paragraph 0087 access security policy may apply to an entity**

**(application, user, website, network, etc.) requesting or attempting to access**

**portions of the file system content, Table 7 "Access with forced authentication"**

**(force user to enter PIN and/or password).  Paragraph 0093 authentication**

**triggers (e.g., invalid PIN or password).**

Koganti teaches wherein the settings include a wireless access point setting

(0043 network access settings of a modem and/or the computer network interface,0046

SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for

and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted

Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to

3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if

WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen to include the Device Trust Management Service (DTMS) as taught by Koganti in order to prevent the device from preforming undesired and threating behavior with an unsanctioned source even if the program has been downloaded.

Yuen in view of Koganti do not show the hardware barrier obstructing access to at least one port of the mobile device.

Hangsleben teaches using a hardware barrier (0018, 0020) to block an inmate from hiding contraband in the mobile device port(s) (0014, 0015, 0076) but allow the inmate to use the mobile phone

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the teaching of Yuen in view of Koganti to include a hardware barrier as taught by Hangsleben in order to block ports and/or cavities of the mobile device thereby inhibiting contraband and/or other materials from being stored in mobile device cavities.

Regarding claims 4 and 12.    Yuen teaches detect an attempt to delete the application on the mobile device (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first

Application/Control Number: 15/435,993                                      Page 10
Art Unit: 2646

disables the newly installed application, 0041 – the mobile disables or hides the icon

associated with the installed application, 0054-0055 wherein mobile agent can

quarantine/disable all applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code

(0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Regarding claims 5 and 13.    Yuen teaches wherein the application barrier is

further configured to: detect an attempt to install a second application on the mobile

device (figure 1, 0039 wherein mobile is configured with a mobile agent to identify

applications that have been installed or removed, 0045 – removed application is not

authorized, 0050 mobile agent also maintains a list of all currently disabled newly

installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying

all installed and/or removed applications); and send a command to the processor of the

mobile device to cancel the attempt (0040 – mobile agent first disables the newly

installed application, 0041 – the mobile disables or hides the icon associated with the

installed application, 0054-0055 wherein mobile agent can quarantine/disable all

applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code

(0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Regarding claims 7 and 15.  Yuen teaches wherein the second attempt is

initiated by the application (0041).

Koganti teaches wherein the second attempt is initiated by the application (0005,

0038, 0069, 0075).

Regarding claims 8 and 16.  Yuen does not show wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

Koganti teaches a mobile device uses a Device Trust Management Service DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003, 0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS triggers, SSID violation, hardware Triggers, unauthorized communication network, jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005, 0007, 0009, 0038, 0045 – **detect tampering to the device including an opened mobile device case, obviously having a front and back (e.g., fort plate and back plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating System Barrier** (figure 3 item 320, 0036, 0069).

Koganti **teaches wherein the unsanctioned function includes exchanging data with a unsanctioned source outside** of (see 0003, 0005, 0007, 0009 wherein detect unsanctioned browser app, media player app, or network connection service used for exchanging data with an unsanctioned source outside of).  Koganti teaches the status include operations of and/or configurations of the electronic device.  The operations of the electronic device include Operating System and/or Application operations (0016).  Paragraph 0038 web access status, network connectivity status, application threat status used to exchange data with outside of.  Paragraph 0039 monitor OS/OS kernel and device behavior, monitor connection status of peripheral

hardware and/or transmission/reception status with an unsanctioned source outside of.

Paragraphs 0041-0042 monitor for Text input request requesting access to the modem

to send SMS text or a social media application.  Paragraph 0043 wherein monitors 342

may monitor request for network connections.  Paragraph 0046 request/attempts for

web access, request/attempts to download/upload data and/or connection to a particular

base station, access point, website, or identified network, SSID violations.  Paragraph

0050 wherein a USB connection to peripheral hardware may pose a threat.  Paragraph

0052 wherein violations and/or changes of the design and/or intended use of the

electronic device may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph

0066 wherein monitors 342 may monitor for and detect a connection of the electronic

device to a public WiFi network.  Paragraph 0069 wherein SMS used to communicate

outside of is also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device.  For example, a user of

the device may download a flashlight application and consent to a user agreement for

the flashlight application.  The user may be unaware that the user agreement includes

consent for the flashlight App to upload pictures and contact information to the server

(e.g., detect second attempt to access device settings).  However, the scoring service

(see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to

access device settings) as a threat based on security policy.  Subsequently, the

targeted security action service 360 (figure 3) may deny access of the flashlight

Application to the file system content 245 and/or the peripheral hardware device

interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application

from engaging in the undesired and threating behavior.

**Koganti teaches wherein the settings include a wireless access point**

**setting (0043 network access settings of a modem and/or the computer network**

**interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown**

**SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device**

**connected to trusted Bluetooth network, is device connected to trusted Wi-Fi**

**network, is device connected to 3G/4G network, is device connected via USB to a**

**trusted external device.  TABLE 4 if WiFi SSID indicates untrusted WiFi network,**

**deny or limit enterprise services, 0093).**

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen to monitor

changes in Bluetooth, Wi-Fi, and 3G/4G network as taught by Koganti in order to

prevent the device from preforming undesired and threating behavior with an

unsanctioned source.

3.      Claims 2 and 10 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Koganti and Hangsleben further in view of Sande et al (2016/0291643).

Regarding claims 2 and 10.  Yuen in view of Koganti and Hangsleben do not

show wherein the front plate and the back plate of the hardware barrier are configured

to form a seal around the device that allows physical contact with only a screen of the

Application/Control Number: 15/435,993                                    Page 14
Art Unit: 2646

mobile device, a headphone port of the mobile device, a barrel charger port of

the mobile device, and a universal serial bus (USB) port of the mobile device.

Hangsleben teaches using front plate and back plate to limit the inmate's access

to GUI (0014, 0015, 0076).

Sande teaches protective enclosures have front plate and back plate (0025-

0026) to protect the device from rough handling, impact, drops, and moisture (0004)

and can have any desired shape (0026).  For example, funnel-shaped to allow easier

access to corresponding components of the mobile device (e.g., an earphone port, etc.),

etc.  Sande teaches using tamper-proof screws (0037).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the mobile phone case of Yuen in

view of Koganti and Hangsleben to have apertures as taught by Sande in order to

define a funnel structure to guide a cable/plug associated with the earphone into the

earphone port/plug.

4.      Claims 3 and 11 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Koganti, Hangsleben and Sande further in view of Chang

(2004/0023698).

Regarding claims 3 and 11.  Yuen in view of Koganti, Hangsleben and Sande do

not show a diode connected to the barrel charger port, the diode preventing electrical

current from flowing out of the barrel charger port.

Chang teaches using a resistor and diode in series when charging a cell phone,

wherein the resistor is used to control the charging current intensity and the diode is

applied to prevent a backflow of current from the cell phone (abstract, 0020).

Application/Control Number: 15/435,993                                                  Page 15
Art Unit: 2646

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti and Hangsleben to use a diode at the charging port as taught by Chang in order to prevent current from flowing from the battery to the charging port.

5.      Claims 6 and 14 are rejected under 35 U.S.C. 103 as being unpatentable over Yuen in view of Koganti and Hangsleben further in view of Forssell et al (2014/0226487).

Regarding claims 6 and 14    Yuen in view of Koganti and Hangsleben do not show wherein the application barrier is further configured to: detect an over-the-air command received by the mobile device over a wireless link; determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

Forssell teaches device management server, like Nokia Siemens Network's SADM, may be used to configure user devices automatically Over-the-Air.  DM server may configure into user devices Wi-Fi network settings, like SSID, and used authentication method (0113-0118).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti and Hangsleben to use a Device Management Server as taught by Forssell in order to automatically configure device Wi-Fi settings Over-the-Air.

6.      Claims 17-22 is/are rejected under 35 U.S.C. 103 as being unpatentable over

Koganti et al (2017/0329966) in view of Yuen et al (2015/0040246) and Hangsleben

(2016/0309008) further in view of Vijayakumar et al (2011/0162060).

Regarding claim 17.    Koganti teaches system of layered security barriers

designed to prevent unsanctioned use of a mobile device in a controlled environment

facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form

a seal around the mobile device that allows limited physical contact with the mobile

device (0003, 0005, 0007, 0009, 0038, 0045 – **detect tampering to the device**

**including an opened mobile device case, obviously having a front and back (e.g.,**

**fort plate and back plate)**, 0069, 0093);

an application barrier, stored on a memory of the mobile device, configured to

prevent an unsanctioned function from being performed on the mobile device (figure 3

item 324, 0069);

an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change of device settings of the mobile device

(figure 3 item 320, 0036, 0069).




Koganti does not explicitly show preventing an unsanctioned change of device

settings of the MS by a user of the MS via GUI.

However, Koganti teaches GUI.  **Paragraph 0038 access request from**

**applications show as 324 in figure 3 wherein applications can be "browser" 326**

**(e.g., graphical user interface), web access status, network connectivity status, application threat status used to exchange data**.  Paragraph 0039 monitor OS/OS kernel and device behavior, monitor connection status of peripheral hardware and/or transmission/reception status with an unsanctioned source outside of.  Paragraphs 0041-0042 monitor for Text input request requesting access to the modem to send SMS text or a social media application.  Paragraph 0043 wherein monitors 342 may monitor request for network connections (e.g., **texting application**) which requires display (e.g., **graphical user interface**).  **Paragraph 0044 authenticate user has entered correct PIN or password (e.g., graphical user interface)**.  Paragraph 0046 request/attempts to execute software or applications **(e.g. using graphical user interface)**, request/attempts for web access **(e.g. using graphical user interface)**, request/attempts to download/upload data and/or connection to a particular base station, access point, website, or identified network, SSID violations.  Paragraph 0050 wherein a USB connection to peripheral hardware may pose a threat monitor user screen **(e.g. graphical user interface)**.  Paragraph 0052 wherein violations and/or changes of the design and/or intended use of the electronic device may be a threat, verify PIN or password entered **(e.g. using graphical user interface)**.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph 0066 wherein monitors 342 may monitor for and detect a connection of the electronic device to a public WiFi network.  Paragraph 0069 wherein SMS used to communicate is also monitored wherein SMS applications require **(e.g. using graphical user interface)**.  Paragraph 0070 wherein whitelist/blacklist for particular communications network and/or USB port used for charging BUT not allowed for uploading or downloading files and/or particular website **(e.g. using graphical user**

**interface**).  Paragraph 0074 request user input **(e.g. using graphical user interface).**

Paragraph 0075 wherein the DTMS may respond to threats even if the electronic device

is in possession of an authorized user, software, firmware, and/or hardware of the

electronic device may exhibit and/or engage in behavior that constitutes the threat of the

security of the device.  For example, a user of the device may download a flashlight

application (**e.g. using graphical user interface**) and consent to a user agreement for

the flashlight application.  The user may be unaware that the user agreement includes

consent for the flashlight App to upload pictures and contact information to the server

(e.g., detect second attempt to access device settings).  However, the scoring service

(see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to

access device settings) as a threat based on security policy.  Subsequently, the

targeted security action service 360 (figure 3) may deny access of the flashlight

Application to the file system content 245 and/or the peripheral hardware device

interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application

from engaging in the undesired and threating behavior.   Paragraph 0079 browser 326

**(e.g. using graphical user interface) may provide a runtime environment and/or**

**control access to assets of the mobile device.  Paragraph 0087 access security**

**policy may apply to an entity (application, user, website, network, etc.) requesting**

**or attempting to access portions of the file system content, Table 7 "Access with**

**forced authentication" (force user to enter PIN and/or password).  Paragraph 0093**

**authentication triggers (e.g., invalid PIN or password).**

       **Yuen at 0041 teaches mobile agent disables operation or otherwise hides**

**(e.g., grayed out) a <u>user interface 27 icon (e.g., graphical user interface)</u>**, 0052 as

Application/Control Number: 15/435,993                                                          Page 19
Art Unit: 2646

may be the case for a **jail broken** (e.g., OS barrier) or **rooted device** (e.g., OS barrier).

As such, it can be an advantage to have the list 22 maintained by the mobile device

wherein list 22 is a local list of all authorized applications installed))

It would have been obvious to one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the invention as taught by Koganti to use a

mobile agent as taught by Yuen in order to prevent a user from changing settings on the

mobile device by graying out the icon (e.g., gray out the settings icon on the mobile

phone).

Koganti in view of Yuen do not teach the hardware barrier obstructing access to

at least one port of the mobile device.

Hangsleben teaches using a hardware barrier (0018, 0020) to block an inmate

from hiding contraband in the mobile device port(s) (0014, 0015, 0076) but allow the

inmate to use the mobile phone

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Koganti in view of

Yuen to include a hardware barrier as taught by Hangsleben in order to block ports

and/or cavities of the mobile device thereby inhibiting contraband and/or other materials

from being stored in mobile device cavities.


Koganti in view of Yuen and Hangsleben do not show an access control barrier

implemented on a firewall device between a wireless access point serving the

controlled-environment facility and a network, the access control barrier configured

to perform filtering of a plurality of packets directed to or transmitted by the mobile

device.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

in view of Yuen and Hangsleben to implement a firewall as taught by Vijayakumar in

order to control what traffic is allowed to pass through the firewall and what traffic is

unauthorized to pass.

Regarding claim 18.  Koganti in view of Yuen and Hangsleben do not show the

system further comprising a wireless intrusion barrier implemented on the wireless

access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access

point device;

obtain a wireless access point identifier associated with the second wireless

access point device;

determine that the second wireless access point identifier is not among a plurality

of wireless access point identifiers stored on the wireless access point device; and in

response to the determining, attack the mobile device using a deauthentication denial of service attack.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti in view of Yuen and Hangsleben to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network.

Regarding claim 19.  Koganti in view of Yuen and Hangsleben do not show wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti in view of Yuen and Hangsleben to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network (Vijayakumar at 0101 – wherein the firewall instructs the access point to send the malicious wireless device a deauthentication frame to remove the malicious wireless device from the network).

Regarding claim 20.  Koganti teaches wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device (see Application Barrier item 324 in figure 3, 0036-0037 wherein DTMS interacts with applications 324 to detect a threat, 0038-0039 – detect manipulation and/or modification of the program code, 0042 – monitor the operations and/or configurations of the applications, 0069, 0075-0076),

a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility (0042 wherein SMS application request access to the modem to send a short message or wherein application tries to access content from unauthorized social media, paragraph 0075 wherein the DTMS may respond to threats even if the electronic device is in possession of an authorized user, software, firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device**. For**

**example, a user of the device may download a flashlight application and consent
to a user agreement for the flashlight application.  The user may be unaware that
the user agreement includes consent for the flashlight App to upload pictures
and contact information to the server (e.g., detect second attempt to access
device settings).  However, the scoring service (see item 345 in figure 3) may
detect the uploading (e.g., detect second attempt to access device settings) as a
threat based on security policy.  Subsequently, the targeted security action
service 360 (figure 3) may deny access of the flashlight Application to the file
system content 245 and/or the peripheral hardware device interface.  In this way,
the DTMS 340 (figure 3) may prevent the flashlight application from engaging in
the undesired and threating behavior**); and

preventing a processor of the mobile device from executing any operations
related to the first attempt, the second attempt, and the third attempt (paragraph 0075
wherein the DTMS may respond to threats even if the electronic device is in possession
of an authorized user, software, firmware, and/or hardware of the electronic device may
exhibit and/or engage in behavior that constitutes the threat of the security of the
device**.  For example, a user of the device may download a flashlight application
and consent to a user agreement for the flashlight application.  The user may be
unaware that the user agreement includes consent for the flashlight App to
upload pictures and contact information to the server (e.g., detect second attempt
to access device settings).  However, the scoring service (see item 345 in figure
3) may detect the uploading (e.g., detect second attempt to access device
settings) as a threat based on security policy.  Subsequently, the targeted**

Application/Control Number: 15/435,993                                    Page 24
Art Unit: 2646

**security action service 360 (figure 3) may deny access of the flashlight**

**Application to the file system content 245 and/or the peripheral hardware device**

**interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight**

**application from engaging in the undesired and threating behavior**).

Regarding claim 21.  Koganti teaches wherein the operating system (OS) is

configured to prevent the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile

device; and preventing the processor of the mobile device from executing operations

related to the attempt (Paragraph 0039 monitor OS/OS kernel and device behavior,

monitor connection status of peripheral hardware and/or transmission/reception status

with an unsanctioned source outside of.  Paragraphs 0041-0042 monitor for Text input

request requesting access to the modem to send SMS text or a social media

application.  Paragraph 0043 wherein monitors 342 may monitor request for network

connections.  Paragraph 0046 request/attempts for web access, request/attempts to

download/upload data and/or connection to a particular base station, access point,

website, or identified network, SSID violations.  Paragraph 0050 wherein a USB

connection to peripheral hardware may pose a threat.  Paragraph 0052 wherein

violations and/or changes of the design and/or intended use of the electronic device

may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph 0066 wherein

monitors 342 may monitor for and detect a connection of the electronic device to a

public WiFi network.  Paragraph 0069 wherein SMS used to communicate outside of is

also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

Application/Control Number: 15/435,993                                         Page 25
Art Unit: 2646

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device**. For example, a user**

**of the device may download a flashlight application and consent to a user**

**agreement for the flashlight application.  The user may be unaware that the user**

**agreement includes consent for the flashlight App to upload pictures and contact**

**information to the server (e.g., detect second attempt to access device settings).**

**However, the scoring service (see item 345 in figure 3) may detect the uploading**

**(e.g., detect second attempt to access device settings) as a threat based on**

**security policy.  Subsequently, the targeted security action service 360 (figure 3)**

**may deny access of the flashlight Application to the file system content 245**

**and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure**

**3) may prevent the flashlight application from engaging in the undesired and**

**threating behavior**), wherein the device settings include a wireless access point setting

(0043 network access settings of a modem and/or the computer network interface,0046

SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for

and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted

Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to

3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 if

WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

Regarding claim 22.  Koganti in view of Yuen and Hangsleben do not show wherein the access control barrier is configured to perform filtering of the plurality of packets by:

receiving a packet transmitted by or directed to the mobile device;

performing an inspection of a packet, the inspection including obtaining an address of the packet; determining that the address is not among a plurality of addresses stored on the firewall device; and in response to the determining, discarding the packet.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).  **Vijayakumar teaches firewall rules include using source and destination address (0025, 0027)**.

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti in view of Yuen and Hangsleben to implement a firewall that can detect monitor source and destination addresses as taught by Vijayakumar in order to control data flowing to and from the firewall.

### *Response to Arguments*

7.      Applicant's arguments with respect to claims 1-22 have been considered but are

moot because the arguments do not apply to any of the references being used in the

current rejection.

### *Conclusion*

8.      Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

9.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to BARRY W TAYLOR whose telephone number is

(571)272-7509.  The examiner can normally be reached on Monday-Thursday: 7-5.

        Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

Application/Control Number: 15/435,993                                           Page 28
Art Unit: 2646

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

| | | | | |
|---|---|---|---|---|
| ***Notice of References Cited*** | Application/Control No. 15/435,993 | | Applicant(s)/Patent Under Reexamination MARASS et al. | |
| | Examiner BARRY W TAYLOR | | Art Unit 2646 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20160309008-A1 | 10-2016 | Hangsleben; Dave W. | G06F1/1632 | 1/1 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20180913

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| H04W 12/08, 4/001, 4/008 | 2/27/2018 | BWT |
| H04M 1/72569, 1/72563, 1/72577, 1/18 | 02/27/2018 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| no double patenting.  east search attached. | 02/27/2018 | BWT |
| updated search. | 09/13/2018 | BWT |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | |
|---|---|
| | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| ✔ | **Rejected** | | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|---|
| = | **Allowed** | | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/27/2018 | 09/13/2018 | | | | | | |
| | 1 | ✓ | ✓ | | | | | | |
| | 2 | ✓ | ✓ | | | | | | |
| | 3 | ✓ | ✓ | | | | | | |
| | 4 | ✓ | ✓ | | | | | | |
| | 5 | ✓ | ✓ | | | | | | |
| | 6 | ✓ | ✓ | | | | | | |
| | 7 | ✓ | ✓ | | | | | | |
| | 8 | ✓ | ✓ | | | | | | |
| | 9 | ✓ | ✓ | | | | | | |
| | 10 | ✓ | ✓ | | | | | | |
| | 11 | ✓ | ✓ | | | | | | |
| | 12 | ✓ | ✓ | | | | | | |
| | 13 | ✓ | ✓ | | | | | | |
| | 14 | ✓ | ✓ | | | | | | |
| | 15 | ✓ | ✓ | | | | | | |
| | 16 | ✓ | ✓ | | | | | | |
| | 17 | ✓ | ✓ | | | | | | |
| | 18 | ✓ | ✓ | | | | | | |
| | 19 | ✓ | ✓ | | | | | | |
| | 20 | ✓ | ✓ | | | | | | |
| | 21 | ✓ | ✓ | | | | | | |
| | 22 | ✓ | ✓ | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

# Bibliographic Data

Application No: 15435993

| Foreign Priority claimed: | ◯ Yes | ◉ No | | |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met: | ☐ Yes | ☑ No | | ☐ Met After Allowance |

| Verified and Acknowledged: | /Barry Taylor/ | bwt |
|---|---|---|
| | Examiner's Signature | Initials |

Title: | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 02/17/2017 <br> **RULE** | 455 | 2646 | 3210.1280000 |

**APPLICANTS**

GLOBAL TEL*LINK CORPORATION, Reston, VA,

**INVENTORS**

Jason MARASS, Fairhope, AL, UNITED STATES

Brian PETERS, St. Paul, MN, UNITED STATES

Garth JOHNSON, Indianapolis, IN, UNITED STATES

Stephen Lee HODGE, Dallas, TX, UNITED STATES

**CONTINUING DATA**

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

02/24/2017

**STATE OR COUNTRY**

UNITED STATES

**ADDRESS**

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

1100 NEW YORK AVENUE, N.W.

WASHINGTON, DC 20005

UNITED STATES

**FILING FEE RECEIVED**

$1,760

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 305 | tamper same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:13 |
| L2 | 27 | (second adj2 attempt) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:43 |
| L3 | 30199 | (user same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings)) | US-PGPUB; USPAT | OR | ON | 2018/09/13 07:58 |
| L4 | 2376 | ((user near3 chang$4) same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) same ((device or mobile or terminal or ms$2 or phone or smartphone or telephone) adj4 settings)) | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:05 |
| L5 | 1106 | ((user near3 chang$4) same ((ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) near7 ((device or ms$2 or phone or smartphone or telephone) adj4 settings))) | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:09 |
| L6 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:22 |
| L7 | 2 | 6 and ("27" or "122") | US-PGPUB; USPAT | OR | ON | 2018/09/13 08:23 |
| L8 | 129798 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:07 |
| L9 | 6220 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) near7 settings) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:08 |
| L10 | 6558 | (user near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) near7 (configurations or settings)) | US-PGPUB; USPAT | OR | OFF | 2018/09/13 09:08 |

| L11 | 3120 | 10 same (ui or (user adj2 interface) or icon or display or screen or gui or gui or touchscreen) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:09 |
| L12 | 80 | 11 same (prevent$5 or unauthorised or unauthorized or unlawful or illegal or unsanctioned or prohibit$6) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:12 |
| L13 | 2 | "20150074615" | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:30 |
| L14 | 2 | 13 and (settings or configurations) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:31 |
| L15 | 2 | 13 and (try) | US-PGPUB; USPAT | OR | ON | 2018/09/13 09:49 |
| L16 | 1 | "20070142041" | US-PGPUB; USPAT | OR | ON | 2018/09/13 10:33 |
| L17 | 2 | "20150074615" | US-PGPUB; USPAT | OR | ON | 2018/09/13 10:36 |
| L18 | 1 | "20180242155" | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:19 |
| L19 | 1 | 18 and ((gui or (user adj2 interface)) same prevent$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:26 |
| L20 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:36 |
| L21 | 2 | 20 and (grayed or out or hide or hidden) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:36 |
| L22 | 0 | 10 same (second near3 attempt$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:46 |
| L23 | 137 | 10 and (second near3 attempt$5) | US-PGPUB; USPAT | OR | ON | 2018/09/13 11:46 |
| S1 | 164 | (((correction$4 adj3 facilit$4) or prison or inmat$4) same tamper$4 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/20 09:20 |
| S2 | 1 | "20100151820" | US-PGPUB; USPAT | OR | ON | 2018/02/20 09:55 |
| S3 | 20 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/20 10:06 |

| S4 | 13 | ("20110237226" \| "20140108649" \| "20170061006" \| "20170084150" \| "20170193622" \| "5255306" \| "6054928" \| "7587067" \| "9282188" \| "9866680" \| "9871915" \| "9888108" \| "9892242").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/20 10:12 |
|---|---|---|---|---|---|---|---|
| S5 | 83 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618" \| "20120099714" \| "20120252411" \| "20120262271" \| "20130179210" \| "20130311364" \| "20140032691" \| "20140044242" \| "20140089849" \| "20140108649" \| "20140109174" \| "20140219432" \| "20140267547" \| "20140273929" \| "20140282868" \| "20140287715" \| "20150242629" \| "20160055323" \| "20160066182" \| "20160088021" \| "20160219146" \| "20160267257" \| "20160330084" \| "20160381212" \| "20160381219" \| "20160381556" \| "20170061006" \| "20170177892" \| "20170208468" \| "4495386" \| "5896556" \| "6058173" \| "6668045" \| "6965590" \| "7085359" \| "7106843" \| "7218993" \| "7254708" \| "7280816" \| "7333798" \| "7366782" \| "7529357" \| "7742581" \| "7804941" \| "7860222" \| "7899167" \| "8019354" \| "8031052" \| "8370206" \| "8428559" \| "8498937" \| "8571525" \| "8639926" \| "8646056" \| "8917848" \| "9094500" \| "9124763" \| "9232051" \| "9262604" \| "9307386" \| "9614954" \| "9614955" \| "9661128" \| "9674338").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/20 10:16 |
| S6 | 6262 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:40 |
| S7 | 5312 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:41 |
| S8 | 1792 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:44 |
| S9 | 0 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:45 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | cellphone) same (charg$5 adj4 another adj4 device)) | | | | |
| S10 | 147 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) same (charg$5 adj4 device)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:45 |
| S11 | 10 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same (new adj2 (app or application)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:55 |
| S12 | 855 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((app or application) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:58 |
| S13 | 227 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:07 |
| S14 | 99 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:08 |
| S15 | 6262 | S6((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:09 |
| S16 | 99 | ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:09 |
| S17 | 4 | ("20140108649" or "20150242629" or "20160267257" or "20170177892").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:45 |
| S18 | 20 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:11 |
| S19 | 20 | ("20120099714" OR "20120252411" OR "20120262271" OR "20130179210" OR | US-PGPUB; | OR | ON | 2018/02/21 14:24 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "20130311364" OR "20140032691" OR "20140044242" OR "20140089849" OR "20140109174" OR "20140219432" OR "20140267547" OR "20140273929" OR "20140282868" OR "20140287715" OR "20150242629" OR "20160055323" OR "20160066182" OR "20160088021" OR "20160219146" OR "20160267257").PN. | USPAT | | | |
| S20 | 18 | "9307386" | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:30 |
| S21 | 1 | "9307386".PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:32 |
| S22 | 13 | ("20110237226" \| "20140108649" \| "20170061006" \| "20170084150" \| "20170193622" \| "5255306" \| "6054928" \| "7587067" \| "9282188" \| "9866680" \| "9871915" \| "9888108" \| "9892242").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:29 |
| S23 | 20 | ("20160330084" OR "20160381212" OR "20160381219" OR "20160381556" OR "20170208468" OR "20170177892" OR "4495386" OR "5896556" OR "6058173" OR "6668045" OR "6965590" OR "7085359" OR "7106843" OR "7218993" OR "7254708" OR "7280816" OR "7333798" OR "7366782" OR "7529357" OR "7742581").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:34 |
| S24 | 2 | "20120252411" | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:49 |
| S25 | 5 | ("20010036821" \| "20020071537" \| "5535261" \| "6052454" \| "6064963").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/21 16:00 |
| S26 | 20 | ("7804941" OR "7860222" OR "7899167" OR "8019354" OR "8031052" OR "8370206" OR "8428559" OR "8498937" OR "8571525" OR "8639926" OR "8646056" OR "8917848" OR "9094500" OR "9124763" OR "9232051" OR "9262604" OR "9307386" OR "9614954" OR "9614955" OR "9661128").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/21 16:07 |
| S27 | 5 | "9674338" | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:10 |
| S28 | 7528 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:17 |
| S29 | 73371 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:18 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | ((tamper$5 or chang$4 or meddl$4) (settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | | | | | |
| S30 | 61884 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) (settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/21 16:19 |
| S31 | 643 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) near7(settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/21 16:20 |
| S32 | 644 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) near7(settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 09:15 |
| S33 | 1 | "20150188949" | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:29 |
| S34 | 1 | S33 and settings | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:29 |
| S35 | 1 | S33 and (app or application$1) | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:32 |
| S36 | 1 | "20110055899" | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:49 |
| S37 | 1 | S36 and (devic$2) | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:49 |
| S38 | 0 | S36 and (mobile or phone or cellphone or smartphone) | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:51 |
| S39 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:01 |
| S40 | 149192 | S39 same (hardware or software or | US- | OR | OFF | 2018/02/ |

| | | application or (device adj3 settings)) | PGPUB; USPAT | | | 11:04 |
|---|---|---|---|---|---|---|
| S41 | 14250 | S39 same (operating adj2 system) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:05 |
| S42 | 57264 | S39 near7 (hardware or software or application or (device adj3 settings)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:05 |
| S43 | 2513 | S39 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:07 |
| S44 | 0 | S39 same (detectf$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:27 |
| S45 | 35 | S39 same (detect$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:27 |
| S46 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:53 |
| S47 | 35 | S46 same (detect$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:53 |
| S48 | 2 | "20120240197" | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:54 |
| S49 | 2 | S48 and tamper$6 | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:55 |
| S50 | 56 | S46 same (detect$5 near7 (download$4 or acess$5) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:02 |
| S51 | 277 | S46 and (layered adj2 security) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:12 |
| S52 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:22 |
| S53 | 55828 | S52 same ((delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:24 |
| S54 | 841 | S52 same ((ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near4 (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:28 |
| S55 | 0 | S52 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:42 |

| | | bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near7 (settings or configuration$1)) | | | | |
|---|---|---|---|---|---|---|
| S56 | 68 | S52 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) same (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) same (settings or configuration$1) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:42 |
| S57 | 1867 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:44 |
| S58 | 49 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near7 settings) | US-PGPUB; USPAT | OR | ON | 2018/02/22 14:13 |
| S59 | 179 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:51 |
| S60 | 179 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:52 |
| S61 | 677 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5 or prevent$4) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:52 |
| S62 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:33 |
| S63 | 13 | "2015/0040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:34 |
| S64 | 498 | S61 not S60 | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:50 |
| S65 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:08 |
| S66 | 1 | S65 and (mobile or cellular or phone or telephone or smartphone or pda) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:09 |
| S67 | 1 | S65 and application | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:10 |
| S68 | 1 | S65 and device | US- | OR | ON | 2018/02/22 |

| | | | PGPUB; USPAT | | | 16:13 |
|---|---|---|---|---|---|---|
| S69 | 1 | S65 and (software or (system adj2 call)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:18 |
| S70 | 1 | S65 and (os or (operating adj2 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:19 |
| S71 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S72 | 0 | "20170244729""20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S73 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S74 | 5 | deauthenticat$5 adj4 (dos or (denial adj2 service adj3 attack)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 17:03 |
| S75 | 41 | deauthenticat$5 same (dos or (denial adj2 service adj3 attack)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 17:06 |
| S76 | 266 | ((ssid$1) near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:30 |
| S77 | 139 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:34 |
| S78 | 141 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings)) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:34 |
| S79 | 141 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 06:49 |
| S80 | 0 | S79 and (tamper-resistant or (tamper | US- | OR | OFF | 2018/02/23 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | adj3 resistant)) | PGPUB; USPAT | | | 07:12 |
| S81 | 6265 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:12 |
| S82 | 204 | S81 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:12 |
| S83 | 3 | "9576157" | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:19 |
| S84 | 0 | ((unauthorized near3 (use or usage or used)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:22 |
| S85 | 599 | ((unauthorized or sanctioned or unsanctioned or contraband or illicit$3 or pirated or smuggled or bootlegged or illegal) same ((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:24 |
| S86 | 5 | "20090253410" | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:30 |
| S87 | 1 | "20090253410".pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:56 |
| S88 | 1 | S87 and (operat$4 adj3 system) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:56 |
| S89 | 1 | S87 and (software or application) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:59 |
| S90 | 6504 | ((jailbreak$4 or (jail adj3 break$4) or rooting) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 08:30 |
| S91 | 38 | S90 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 08:31 |
| S92 | 82 | S90 and (ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 08:36 |
| S93 | 1 | "20170329966" | US-PGPUB; USPAT | OR | OFF | 2018/02/23 09:01 |
| S94 | 1 | S93 and (case or tamper$5) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 09:01 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S95 | 3977 | (case same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 09:07 |
| S96 | 20 | S95 same (front same back) | US-PGPUB; USPAT | OR | ON | 2018/02/23 09:08 |
| S97 | 15 | ((case or shell or cover or enclosure) same (front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:00 |
| S98 | 31 | ( (front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:01 |
| S99 | 31 | ((front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:02 |
| S100 | 24484 | ((front adj3 plate) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:04 |
| S101 | 3489 | S100 same (back adj3 plate) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:04 |
| S102 | 814 | ((front adj3 plate) near7 (back adj3 plate) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:05 |
| S103 | 6612 | ((case or shell or cover or enclosure or housuing) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:22 |
| S104 | 2317 | (((case or shell or cover or enclosure or housuing) near7 (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant)))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:22 |

| S105 | 2 | S104 and ((case or shell or cover or enclosure or housuing) same ((earphone or headphone) near3 port$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:51 |
|------|-----|---------|---------|-----|-----|---------|
| S106 | 24 | ("20050058494" \| "20060138182" \| "20120305422" \| "20130009413" \| "20130265643" \| "20130265644" \| "20150068934" \| "20150150362" \| "20150296651" \| "20160166321" \| "4850657" \| "6567651" \| "7370840" \| "7630745" \| "8281924" \| "8616422" \| "8973795" \| "9004330" \| "9419669" \| "D670279" \| "D674803" \| "D685358" \| "D690305" \| "D718316").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/23 12:53 |
| S107 | 28 | ("2015/0068934").URPN. | USPAT | OR | ON | 2018/02/23 12:54 |
| S108 | 82 | S104 and ((case or shell or cover or enclosure or housuing) same ((usb) near3 port$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:55 |
| S109 | 1 | "20160291643".pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S110 | 0 | S109 and (usb or (serial)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S111 | 1 | S109 and (port) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| S112 | 458 | (diode same (charg$4 adj3 port)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:05 |
| S113 | 12 | S112 same (prevent$5 adj4 current) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:05 |
| S114 | 2 | "20160291643" | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:16 |
| S115 | 26 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$).did. or (US-9892242-$ or US-9262604-$).did. | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:18 |
| S116 | 5 | S115 and (ota or (over adj3 air) or over-the-air) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:18 |
| S117 | 260 | S100 and (ota or (over adj3 air) or over-the-air) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:27 |
| S118 | 1 | S100 and ((ota or (over adj3 air) or over- | US- | | OR | ON | 2018/02/23 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | the-air) near7 (configuration$1 or settings)) | PGPUB; USPAT | | | 13:27 |
| S119 | 1845 | (((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:28 |
| S120 | 1013 | (((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:28 |
| S121 | 26 | S120 same (wifi or wi-fi or blu or bluetooth or "802.11") | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:29 |
| S122 | 2 | "20140226487" | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:44 |
| S123 | 0 | S122 and (blu or bluetooth or "802.11") | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:44 |
| S124 | 9 | S120 same (bluetooth or (blue adj2 tooth)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:00 |
| S125 | 307 | (((ota or (over adj3 air) or over-the-air) same (bluetooth or (blue adj2 tooth)) same (configuration$1 or settings)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:43 |
| S126 | 114 | S125 same (os or (operat$4 adj2 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:45 |
| S127 | 7 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:11 |
| S128 | 2 | S127 and kernel | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:12 |
| S129 | 27 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$).did. or (US-9892242-$ or US-9262604-$).did. | US-PGPUB; USPAT | OR | | 2018/02/23 15:17 |

| S130 | 7 | S129 and kernel | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:17 |
| S131 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:26 |
| S132 | 3 | S131 and ((uninstall$5 or delet$5 or remov$5) near7 (app or application$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:27 |
| S133 | 7 | S131 and (app or application$1) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:33 |
| S134 | 4 | S131 and ((install$5 or download$4 or (down adj2 load$4)) near7 (app or application$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:35 |
| S135 | 2 | S131 and (filter$5 near7 (traffic or packet$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:34 |
| S136 | 5 | S131 and (firewall) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:38 |
| S137 | 1 | S131 and (access adj3 point adj3 identifier$1) | US-PGPUB; USPAT | OR | ON | 2018/02/23 16:51 |
| S138 | 6 | S131 and ((uninstall$5 or delet$5 or remov$5)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 17:22 |
| S139 | 7 | S131 and (case or cover or housing or enclosure or protective or tamper$9) | US-PGPUB; USPAT | OR | ON | 2018/02/23 17:33 |
| S140 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/23 18:22 |
| S141 | 2 | S140 and "26" | US-PGPUB; USPAT | OR | ON | 2018/02/23 18:22 |
| S142 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 07:38 |
| S143 | 6 | S142 and (mac or address$3 or ssid$1 or (service adj3 set)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 07:38 |
| S144 | 5 | S142 and (settings or identifier$1) | US-PGPUB; USPAT | OR | ON | 2018/02/26 07:53 |
| S145 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:22 |
| S146 | 6 | S145 and (wifi or wi-fi or wlan or w-lan or hotspot or "802.11"$3) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:23 |
| S147 | 5 | S145 and (os or (operat$4 adj3 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:40 |

| S148 | 7 | S145 and (hardware or case or tamper$5 or enclosure or shell or cover or housing or protective) | US-PGPUB; USPAT | OR | ON | 2018/02/26 09:47 |
| S149 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:40 |
| S150 | 13 | "2015/0040246" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:40 |
| S151 | 1 | "20170329966" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:43 |
| S152 | 0 | "2017/0329966" | US-PGPUB; USPAT | OR | ON | 2018/02/26 10:43 |
| S153 | 10281 | ((jailbroken or jailbreak$4 or (jail aj2 (brokn or break$4))) near7 (os or (operat$6 adj3 system))) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:07 |
| S154 | 1 | S153 same (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:09 |
| S155 | 49 | S153 and (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:09 |
| S156 | 67580 | (kernel same (os or (operat$6 adj3 system))) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:11 |
| S157 | 23 | S156 same (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/26 11:11 |
| S158 | 2 | ("20130097660" or "20140298403").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:08 |
| S159 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:55 |
| S160 | 4 | S159 and exchang$4 | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:56 |
| S161 | 6 | S159 and (text or txt or sms or data or external) | US-PGPUB; USPAT | OR | ON | 2018/02/26 12:57 |
| S162 | 2 | "20160291643" | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
| S163 | 0 | S162 and ssid | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
| S164 | 0 | S162 and (access adj3 point) | US-PGPUB; USPAT | OR | ON | 2018/02/26 14:52 |
| S165 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:00 |

| | | US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | | | | |
|---|---|---|---|---|---|---|
| S166 | 29 | S165 and (settings or ssid$1 or essid$1 or addresses or mac) | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:00 |
| S167 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:01 |
| S168 | 6 | S167 and (settings or ssid$1 or essid$1 or addresses or mac) | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:01 |
| S169 | 1 | S167 and screws | US-PGPUB; USPAT | OR | ON | 2018/02/26 15:34 |
| S170 | 8 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060" or "20090253410").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |
| S171 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |
| S172 | 5 | S170 and firewall | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:05 |
| S173 | 2 | "20110162060" | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |
| S174 | 0 | S173 and deauthicat$5 | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |

| S175 | 2 | S173 and deauthenticat$5 | US-PGPUB; USPAT | OR | ON | 2018/02/26 17:19 |
|------|---|--------------------------|-----------------|----|----|------------------|
| S176 | 3 | S170 and discard$6 | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:04 |
| S177 | 5 | S170 and (filter$5 or packet$4) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:06 |
| S178 | 6 | S170 and (filter$5 or packet$4 or firewall) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:06 |
| S179 | 5 | S170 and (address$4) | US-PGPUB; USPAT | OR | ON | 2018/02/26 18:10 |
| S180 | 32 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/09/12 09:04 |
| S181 | 3 | S180 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:07 |
| S182 | 1 | "20180242155" | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:21 |
| S183 | 1 | S182 and port | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:22 |
| S184 | 1 | S182 and (hardware adj3 barr$4) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:42 |
| S185 | 23 | S180 and (port$1 or connector$1 or jack) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 09:47 |
| S186 | 631 | (((correction$4 adj3 facilit$4) or prison or inmat$4) and (access$4 near7 (port or usb))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 09:58 |
| S187 | 6 | ("20110162060" or "20140226487" or "200423698" or "20160291643" or "20170329966" or "20150040246" or "20160309008").pn. | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:23 |
| S188 | 7 | ("20110162060" or "20140226487" or "20040023698" or "20160291643" or | US-PGPUB; | OR | ON | 2018/09/12 11:24 |

| | | | USPAT | | | |
|---|---|---|---|---|---|---|
| | | "20170329966" or "20150040246" or "20160309008").pn. | | | | |
| S189 | 35 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$ or US-20140006225-$).did. or (US-20140298403-$ or US-20130097660-$ or US-20160309008-$ or US-20170220073-$ or US-20120257583-$).did. or (US-9892242-$ or US-9262604-$ or US-9608891-$ or US-8804533-$).did. | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:25 |
| S190 | 1 | S188 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:27 |
| S191 | 15 | S189 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:29 |
| S192 | 2 | "20130194067" | US-PGPUB; USPAT | OR | ON | 2018/09/12 11:37 |
| S193 | 1 | S182 and (gui or (graphical adj2 user adj2 interface)) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:02 |
| S194 | 1 | S182 and (second same (gui or (graphical adj2 user adj2 interface))) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:05 |
| S195 | 1 | S182 and (second same attempt) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:06 |
| S196 | 1 | S182 and (settings same (gui or (graphical adj2 user adj2 interface))) | US-PGPUB; USPAT | OR | OFF | 2018/09/12 12:06 |
| S197 | 2 | S188 and (access$5 near7 settings) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:09 |
| S198 | 3 | S188 and (settings) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:10 |
| S199 | 4272901 | prevent$5 near7 access$5 near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:13 |
| S200 | 4160465 | prevent$5 near7 (access$5 adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:13 |
| S201 | 4160212 | user near7 prevent$5 near7 (access$5 adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:14 |

| S202 | 4160121 | user near7 prevent$5 near7 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:15 |
|---|---|---|---|---|---|---|
| S203 | 4160120 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:19 |
| S204 | 12546 | S203 near7 attempt$5 | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:20 |
| S205 | 4254875 | ((user near3 prevent$5) near$47 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:21 |
| S206 | 4254097 | ((user near3 prevent$5) near$4 (access$5 adj4 device adj4 settings) near$5 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:21 |
| S207 | 133 | prevent$5 near7 access$5 near5 (gui or (graphical adj3 user adj2 interface)) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:22 |
| S208 | 1 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near7 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:23 |
| S209 | 1 | "20170126733" | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:43 |
| S210 | 1 | S209 and sso | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:43 |
| S211 | 0 | S209 and settings | US-PGPUB; USPAT | OR | ON | 2018/09/12 12:45 |
| S212 | 1 | ((user near3 prevent$5) near7 (access$5 adj4 device adj4 settings) near7 (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:02 |
| S213 | 1 | ((user near3 prevent$5) same (access$5 adj4 device adj4 settings) same (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:02 |
| S214 | 72 | ((user) same (access$5 adj4 device adj4 settings) same (gui or (graphical adj3 user adj2 interface))) | US-PGPUB; USPAT | OR | ON | 2018/09/12 13:03 |

**9/13/2018 12:13:33 PM**
**C:\ Users\ btaylor\ Documents\ EAST\ Workspaces\ Workspaces\ % 15,435,993 prevent use of mobile for inmates.wsp**

 Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oғғɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 |

**CONFIRMATION NO. 1254**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**PUBLICATION NOTICE**

*OC000000101796982*

**Title:** SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

**Publication No.** US-2018-0242155-A1
**Publication Date:** 08/23/2018

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 15/435,993 | Filing Date 02/17/2017 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE   ☐ SMALL   ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = * | | x $80 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = * | | x $420 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| AMENDMENT | 07/19/2018 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 22 | Minus | ** 22 | = 0 | x $100 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $460 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | sheila D chapman |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors:: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: Global Tel*Link Corporation | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: Taylor, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment and Reply Under 37 C.F.R. § 1.111

Commissioner for Patents                                            *Mail Stop Amendment*
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In reply to the Office Action dated February 28, 2018, Applicant submits the following

Amendment and Remarks.

Amendments to the Claims begin on page 2 of this paper.

Remarks and Arguments begin on page 10 of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be

provided for in documents accompanying this paper. However, if additional extensions of time are

necessary to prevent abandonment of this application, then such extensions of time are hereby

petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or

appeal of this application (including issue fee, fees for net addition of claims or forwarding to

appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

- 2 -                                                                    MARASS *et al.*
                                                                         Application No. 15/435,993

## Amendments to the Claims

This listing of claims will replace all prior versions, and listings, of claims in the application.

1.     (Currently Amended) A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate, the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

detect a first attempt to perform an unsanctioned function of an application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the first attempt; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

detect a second attempt, the second attempt being an attempt to access device settings of the mobile device by a user of the mobile device via a graphical user interface; and

prevent the processor of the mobile device from executing operations related to the second attempt;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

Atty. Dkt. No. 3210.1280000

- 3 -                                                    MARASS *et al.*
                                                Application No. 15/435,993

wherein the device settings include a wireless access point setting.

2.    (Original) The system of claim 1, wherein the front plate and the back plate of the hardware
      barrier are configured to form a seal around the device that allows physical contact with only a
      screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the
      mobile device, and a universal serial bus (USB) port of the mobile device.

3.    (Original) The system of claim 2, further comprising a diode connected to the barrel charger
      port, the diode preventing electrical current from flowing out of the barrel charger port.

4.    (Original) The system of claim 1, wherein the application barrier is further configured to:
              detect an attempt to delete the application on the mobile device; and
              send a command to the processor of the mobile device to cancel the attempt.

5.    (Original) The system of claim 1, wherein the application barrier is further configured to:
              detect an attempt to install a second application on the mobile device; and
              send a command to the processor of the mobile device to cancel the attempt.

6.    (Original) The system of claim 1, wherein the application barrier is further configured to:
              detect an over-the-air command received by the mobile device over a wireless link;
              determine that the command meets a security requirement of a second application
      sanctioned to change the device settings; and

- 4 -                                     MARASS *et al.*
                                          Application No. 15/435,993

in response to determining that the command meets the security requirement, allow
the command to be executed by a processor of the mobile device.

7.      (Original) The system of claim 1, wherein the second attempt is initiated by the application.

8.      (Original) The system of claim 1, wherein the device settings further include a Bluetooth radio
setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the
mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting
determining whether or not the mobile device may receive data over a cellular wireless link.

9.      (Currently Amended) A mobile device, comprising:

        a memory that stores a first set of operations of an application barrier and a second
set of operations of an operating system (OS) barrier; and

        a processor configured to:

                execute the first set of operations of the application barrier, the first set of
operations comprising:

                        detecting a first attempt by a user of the mobile device to perform an
unsanctioned function of an application stored on the memory; and

                        preventing the processor from executing operations related to the first
attempt; and

                execute the second set of operations of the OS barrier, the second set of
operations comprising:

detecting a second attempt, the second attempt being an attempt to access device settings of the mobile device by the user of the mobile device via a graphical user interface; and

preventing the processor from executing operations related to the second attempt;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility; and

wherein the device settings include a wireless access point setting.

10.    (Original) The mobile device of claim 9, wherein a hardware barrier that includes a front plate and a back plate fastened together by tamper-resistant screws is configured to form a seal around the device that allows direct physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

11.    (Original) The mobile device of claim 10, wherein a diode is connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

12.    (Original) The mobile device of claim 9, wherein first set of operations further comprises:

detecting an attempt to delete the application on the mobile device; and

sending a command to the processor to cancel the attempt.

13.    (Original) The mobile device of claim 9, wherein first set of operations further comprises:

- 6 -

MARASS *et al.*
Application No. 15/435,993

detecting an attempt to install a second application on the mobile device; and

sending a command to the processor of the mobile device to cancel the installation

attempt.

14.   (Original) The mobile device of claim 9, wherein the first set of operations further comprises:

detecting an over-the-air command received by the mobile device over a wireless

link;

determining that the over-the-air command is from a sanctioned source; and

in response to determining that the command is from the sanctioned source, allowing

the command to be executed by the processor.

15.   (Original) The mobile device of claim 9, wherein the second attempt is initiated by the

application.

16.   (Original) The mobile device of claim 9, wherein the device settings further include a

Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining

whether or not the mobile device may receive data over a Bluetooth wireless link, and the

cellular radio setting determining whether or not the mobile device may receive data over a

cellular wireless link.

17.   (Currently Amended) A system of layered security barriers designed to prevent unsanctioned

use of a mobile device in a controlled environment facility, comprising:

Atty. Dkt. No. 3210.1280000

MARASS *et al.*
Application No. 15/435,993

a hardware barrier that includes a front plate and a back plate configured to form a

seal around the mobile device that allows limited physical contact with the mobile device,

the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier, stored on a memory of the mobile device, configured to

prevent an unsanctioned function from being performed on the mobile device;

an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change of device settings of the mobile device by a

user of the mobile device via a graphical user interface; and

an access control barrier implemented on a firewall device between a wireless access

point serving the controlled-environment facility and a network, the access control barrier

configured to perform filtering of a plurality of packets directed to or transmitted by the

mobile device.

18.    (Original) The system of claim 17, the system further comprising a wireless intrusion barrier

implemented on the wireless access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access

point device;

obtain a wireless access point identifier associated with the second wireless access

point device;

determine that the second wireless access point identifier is not among a plurality of

wireless access point identifiers stored on the wireless access point device; and

- 8 -

MARASS *et al.*
Application No. 15/435,993

in response to the determining, attack the mobile device using a deauthentication denial of service attack.

19.    (Original) The system of claim 18, wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

20.    (Original) The system of claim 17, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

21.    (Original) The system of claim 17, wherein the operating system (OS) is configured to prevent the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile device; and

preventing the processor of the mobile device from executing operations related to the attempt,

wherein the device settings include a wireless access point setting.

Atty. Dkt. No. 3210.1280000

- 9 -

MARASS *et al.*
Application No. 15/435,993

22.    (Original) The system of claim 17, wherein the access control barrier is configured to perform

filtering of the plurality of packets by:

        receiving a packet transmitted by or directed to the mobile device;

        performing an inspection of a packet, the inspection including obtaining an address

of the packet;

        determining that the address is not among a plurality of addresses stored on the

firewall device; and

        in response to the determining, discarding the packet.

- 10 -                                                          MARASS *et al.*
                                                    Application No. 15/435,993

# *Remarks*

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 1-22 are pending in the application, with claims 1, 9, and 17 being the independent claims. By this Amendment, claims 1, 9 and 17 are amended. Applicant reserves the right to prosecute similar or broader claims, with respect to the cancelled and/or amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Based on the above amendment and the following remarks, Applicant respectfully requests that the Examiner reconsider all outstanding objections and rejections and that they be withdrawn.

## *Rejection under 35 U.S.C. § 103*

Claims 1, 4, 5, 7-9, 12, 13, 15, and 16 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Application Publication No. 2015/0040246 to Yuen *et al.*, in view of U.S. Patent Application Publication No. 2017/0329966 to Koganti *et al.* ("Koganti").

Claims 2 and 10 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen and Koganti, in view of U.S. Patent Application Publication No. 2016/0291643 to Sande *et al.* ("Sande").

Claims 3 and 11 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen, Koganti, and Sande, in view of U.S. Patent Application Publication No. 2004/0023698 to Chang ("Chang").

Claims 6 and 14 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen and Koganti, in view of U.S. Patent Application Publication No. 2014/0226487 to Forssell *et al.* ("Forssell").

Atty. Dkt. No. 3210.1280000

Claims 17-22 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over

Koganti, in view of U.S. Patent Application Publication No. 2011/0162060 to Vijayakumar *et al.*

("Vijayakumar").

These rejections are respectfully traversed.

The applied references fail to disclose, and would not have rendered obvious at least "the

hardware barrier obstructing access to at least one port of the mobile device," as recited in

independent claim 1. The Office Action alleges that Koganti discloses the claimed hardware barrier.

Office Action, pp. 4-5. Specifically, Koganti describes monitoring potential tampering of the

device. Koganti, ¶ [0045]. Koganti discloses that "tampering refers to a persistent physical change

to the hardware of the electronic device 11 (e.g., a new, changed, and/or replaced battery,

fingerprint input device, SIM card, and/or an opened mobile device case)." *Id.* However, nothing in

Koganti describes that the hardware barrier "obstructs access to at least one port of the mobile

device," as recited above. The remaining references appear silent with respect to this feature, and

therefore fail to at least cure Koganti's deficiencies.

For at least similar reasons, the applied references also fail to disclose or render obvious "the

hardware barrier obstructing access to at least one port of the mobile device," as recited in

independent claim 17.

The applied references also fail to disclose, or render obvious, at least "detecting a second

attempt, the second attempt being an attempt to access device settings of the mobile device by the

user of the mobile device via a graphical user interface," as recited in independent claim 9.

The Office Action relies on Yuen as allegedly disclosing this feature. Office Action, p. 4.

Specifically, the Office Action alleges that Yuen describes preventing a function call issued by the

- 12 -

MARASS *et al.*
Application No. 15/435,993

operating system to receive a newly installed application. However, there is no indication in Yuen of preventing modification of settings "by a user", or "via a graphical user interface." None of the other references appear to describe monitoring for, or preventing, these specific activities with respect to the claimed second attempt.

For at least similar reasons, the applied references fail to disclose or render obvious at least "detect a second attempt, the second attempt being an attempt to access device settings of the mobile device by a user of the mobile device via a graphical user interface," as recited in independent claim 1, and "an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change of device settings of the mobile device by a user of the mobile device via a graphical user interface," as recited in independent claim 17.

Therefore, independent claims 1, 9 and 17 are patentable over the applied references. Claims 2-8, 10-16 and 18-22 are patentable at least for their dependencies from the independent claims, as well as for the additional features they recite.

Accordingly, Applicant respectfully requests withdrawal of the rejections.

Atty. Dkt. No. 3210.1280000

- 13 -

MARASS *et al.*
Application No. 15/435,993

## Conclusion

All of the stated grounds of objection and rejection have been properly traversed,

accommodated, or rendered moot. Applicant therefore respectfully requests that the Examiner

reconsider all presently outstanding objections and rejections and that they be withdrawn. Applicant

believes that a full and complete reply has been made to the outstanding Office Action and, as such,

the present application is in condition for allowance. If the Examiner believes, for any reason, that

personal communication will expedite prosecution of this application, the Examiner is invited to

telephone the undersigned at the number provided.

Prompt and favorable consideration of this Amendment and Reply is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:   July 19, 2018

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

9135807_1.docx

Atty. Dkt. No. 3210.1280000

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15435993 |
| **Filing Date:** | 17-Feb-2017 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 2 months with $0 paid | 1252 | 1 | 600 | 600 |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **600** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 33224986 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 19-JUL-2018 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 15:27:43 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $600 |
| RAM confirmation Number | 072018INTEFSW15282800 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 3210-1280000-AmendmentReplyFiling.pdf | 10013475 <br><br> 23f24354 9e2fd6392695a263d06f112869e15a32 | yes | 15 |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | **Document Description** | **Start** | **End** |
| | Miscellaneous Incoming Letter | 1 | 1 |
| | Extension of Time | 2 | 2 |
| | Amendment/Req. Reconsideration-After Non-Final Reject | 3 | 3 |
| | Claims | 4 | 11 |
| | Applicant Arguments/Remarks Made in an Amendment | 12 | 15 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30918 <br><br> d6ed2286f560741c415769b4ccdee978e6e ab010 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 10044393 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



LAUREN C. SCHLEH
ASSOCIATE
(202) 772-8587
LSCHLEH@SKGF.COM

July 19, 2018

Commissioner for Patents                                    *Confirmation No. 1254*
PO Box 1450                                                           *Art Unit 2646*
Alexandria, VA  22313-1450                          *Mail Stop Amendment*

     Re:    U.S. Utility Patent Application
              Appl. No. 15/435,993; Filed:  February 17, 2017
              For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
              Inventors: MARASS *et al.*
              Our Ref:   3210.1280000

Commissioner:

    The following documents are transmitted herewith for appropriate action by the U.S. Patent and Trademark Office:

    1.     Petition for Extension of Time Under 37 C.F.R. § 1.136(a);

    2.     Amendment and Reply Under 37 C.F.R. § 1.111; and

    3.     Payment made via EFS-Web for **$600.00** to cover a 2-month extension of time fee.

    ***The above-listed documents are filed electronically through EFS-Web.***

    In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) or credit any overpayment to our Deposit Account No. 19-0036.

                      Respectfully submitted,

                      STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                      /LAUREN C. SCHLEH/

                      Lauren C. Schleh
                      Attorney for Applicant
                      Registration No. 65,457

LCS:mlb
Enclosures                                          9690211_1.doc

PTO/AIA/22 (03-13)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)** | Docket Number (Optional) 3210.1280000 |
|---|---|

| Application Number 15/435,993 | Filed February 17, 2017 |
|---|---|

For **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

| Art Unit 2646 | Examiner Taylor, Barry W. |
|---|---|

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above-identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

|  | | Fee | Small Entity Fee | Micro Entity Fee | |
|---|---|---|---|---|---|
| ☐ | One month (37 CFR 1.17(a)(1)) | $200 | $100 | $50 | $ _____ |
| ☑ | Two months (37 CFR 1.17(a)(2)) | $600 | $300 | $150 | $ 600.00 |
| ☐ | Three months (37 CFR 1.17(a)(3)) | $1,400 | $700 | $350 | $ _____ |
| ☐ | Four months (37 CFR 1.17(a)(4)) | $2,200 | $1,100 | $550 | $ _____ |
| ☐ | Five months (37 CFR 1.17(a)(5)) | $3,000 | $1,500 | $750 | $ _____ |

☐ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

☐ A check in the amount of the fee is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☑ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to
Deposit Account Number 19-0036 _____.

☑ Payment made via EFS-Web.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant.

☑ attorney or agent of record. Registration number 65,457 _____.

☐ attorney or agent acting under 37 CFR 1.34. Registration number _____.

| /Lauren C. Schleh/ | July 19, 2018 |
|---|---|
| Signature | Date |
| Lauren C. Schleh | (202) 371-2600 |
| Typed or printed name | Telephone Number |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

☑ * Total of 1 (one) _____ forms are submitted.

This collection of information is required by 37 CFR 1.136(a). The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 6 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop PCT, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

9679534

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | Jason MARASS | 3210.1280000 | 1254 |

26111        7590        02/28/2018

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DISTRICT OF COLUMBIA 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/28/2018 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | **Application No.** 15/435,993 | **Applicant(s)** MARASS et al. |
|---|---|---|
| | **Examiner** BARRY W TAYLOR | **Art Unit** 2646 | **AIA Status** Yes |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____ .
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .
2a)☐ This action is **FINAL.**    2b)☑ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☑ Claim(s) <u>1-22</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6)☐ Claim(s) _____ is/are allowed.
7)☑ Claim(s) <u>1-22</u> is/are rejected.
8)☐ Claim(s) _____ is/are objected to.
9)☐ Claim(s) _____ are subject to restriction and/or election requirement
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on <u>17 February 2017</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a)☐ All   b)☐ Some**   c)☐ None of the:
   1.☐ Certified copies of the priority documents have been received.
   2.☐ Certified copies of the priority documents have been received in Application No. _____ .
   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☑ Notice of References Cited (PTO-892)
2)☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____ .
3)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____ .
4)☐ Other: _____ .

Application/Control Number: 15/435,993                                                                Page 2
Art Unit: 2646

# DETAILED ACTION

## *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

## *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

This application currently names joint inventors. In considering patentability of the claims the examiner presumes that the subject matter of the various claims was commonly owned as of the effective filing date of the claimed invention(s) absent any evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that was not commonly owned as of the effective filing date of the later invention in order for the examiner to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

Application/Control Number:15/435,993                                        Page3
Art Unit:2646

1.      Claims 1, 4-5, 7-9, 12-13, 15-16 are rejected under 35 U.S.C. 103 as being

unpatentable over Yuen et al (2015/0040246) in view of Koganti et al (2017/0329966).

        Regarding claims 1 and 9.  Yuen teaches a mobile device and a system of

layered security barriers of a mobile device that prevents unsanctioned use of the

mobile device, comprising:

        a hardware barrier that includes a front plate and a back plate;

        an application barrier stored on a memory of the mobile device, the application

barrier configured to: detect a first attempt to perform an unsanctioned function of an

application stored in the memory of the mobile device (figure 1, 0031-0032 wherein

smartphone item 10 has mobile agent item 20 having an installed application list item

22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the

mobile that the application was changed (e.g., installed or removed);

        prevent a processor of the mobile device from executing operations related to the

first attempt (0041 – one example means for disabling (i.e., not allowing user of the

mobile device to access and execute) the newly installed application, another example

means for disabling by the mobile agent to disable or otherwise redirect a system of

function call associated with the newly installed application, such that mobile agent

would not allow the system of function call issued by the Operating System of the

device infrastructure to be received by the newly installed application.  Another example

means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of

a user interface icon associated with the newly installed application, 0053-0055 as

discussed above, each mobile device is configured with Mobile Agent 20 for managing

content of the application list 22, containing identification of all mobile applications

presently installed (and/or removed) on the mobile device and the mobile agent can

quarantine/disable non-compliant applications); and

an operating system (OS) barrier stored in the memory of the mobile device, the

OS barrier configured to:

detect a second attempt to access device settings of the mobile device (0041

another example means for disabling by the mobile agent to disable or otherwise

redirect a system of **function call** associated with the newly installed application, such

that **mobile agent would not allow the system of function call issued by the**

**Operating System** of the device infrastructure to be received by the newly installed

application, 0052 as may be the case for a **jail broken** (e.g., OS barrier) or **rooted**

**device** (e.g., OS barrier).  As such, it can be an advantage to have the list 22

maintained by the mobile device wherein list 22 is a local list of all authorized

applications installed)); and

prevent the processor of the mobile device from executing operations related the

second attempt (0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications);


Yuen does not show hardware barrier or wherein the unsanctioned function

includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

Application/Control Number:15/435,993                                                    Page5
Art Unit:2646

Koganti teaches a mobile device uses a Device Trust Management Service

DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003,

0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS

triggers, SSID violation, hardware Triggers, unauthorized communication network,

jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005,

0007, 0009, 0038, 0045 – **detect tampering to the device including an opened**

**mobile device case, obviously having a front and back (e.g., fort plate and back**

**plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating**

**System Barrier** (figure 3 item 320, 0036, 0069).

Koganti **teaches wherein the unsanctioned function includes exchanging**

**data with a unsanctioned source outside** **of** (see 0003, 0005, 0007, 0009 wherein

detect unsanctioned browser app, media player app, or network connection service

used for exchanging data with an unsanctioned source outside of).  Koganti teaches the

status include operations of and/or configurations of the electronic device.  The

operations of the electronic device include Operating System and/or Application

operations (0016).  Paragraph 0038 web access status, network connectivity status,

application threat status used to exchange data with outside of.  Paragraph 0039

monitor OS/OS kernel and device behavior, monitor connection status of peripheral

hardware and/or transmission/reception status with an unsanctioned source outside of.

Paragraphs 0041-0042 monitor for Text input request requesting access to the modem

to send SMS text or a social media application.  Paragraph 0043 wherein monitors 342

may monitor request for network connections.  Paragraph 0046 request/attempts for

web access, request/attempts to download/upload data and/or connection to a particular

base station, access point, website, or identified network, SSID violations.  Paragraph

0050 wherein a USB connection to peripheral hardware may pose a threat.  Paragraph

0052 wherein violations and/or changes of the design and/or intended use of the

electronic device may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph

0066 wherein monitors 342 may monitor for and detect a connection of the electronic

device to a public WiFi network.  Paragraph 0069 wherein SMS used to communicate

outside of is also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device.  **For example, a user**

**of the device may download a flashlight application and consent to a user**

**agreement for the flashlight application.  The user may be unaware that the user**

**agreement includes consent for the flashlight App to upload pictures and contact**

**information to the server (e.g., detect second attempt to access device settings).**

**However, the scoring service (see item 345 in figure 3) may detect the uploading**

**(e.g., detect second attempt to access device settings) as a threat based on**

**security policy.  Subsequently, the targeted security action service 360 (figure 3)**

**may deny access of the flashlight Application to the file system content 245**

**and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure**

**3) may prevent the flashlight application from engaging in the undesired and**

**threating behavior.**

Application/Control Number:15/435,993                                         Page7
Art Unit:2646

Koganti teaches wherein the settings include a wireless access point setting

(0043 network access settings of a modem and/or the computer network interface,0046

SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for

and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted

Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to

3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 If

WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen to include

the Device Trust Management Service (DTMS) as taught by Koganti in order to prevent

the device from preforming undesired and threating behavior with an unsanctioned

source even if the program has been downloaded.

Regarding claims 4 and 12.    Yuen teaches detect an attempt to delete the

application on the mobile device (figure 1, 0039 wherein mobile is configured with a

mobile agent to identify applications that have been installed or removed, 0045 –

removed application is not authorized, 0050 mobile agent also maintains a list of all

currently disabled newly installed applications, 0053 wherein mobile agent has list (item

22 figure 1) identifying all installed and/or removed applications); and send a command

to the processor of the mobile device to cancel the attempt (0040 – mobile agent first

disables the newly installed application, 0041 – the mobile disables or hides the icon

associated with the installed application, 0054-0055 wherein mobile agent can

quarantine/disable all applications defined by the difference).

Application/Control Number:15/435,993                                                    Page8
Art Unit:2646

Koganti also teaches detecting manipulation and/or modification of program code
(0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Regarding claims 5 and 13.   The system of claim 1, wherein the application
barrier is further configured to: detect an attempt to install a second application on the
mobile device (figure 1, 0039 wherein mobile is configured with a mobile agent to
identify applications that have been installed or removed, 0045 – removed application is
not authorized, 0050 mobile agent also maintains a list of all currently disabled newly
installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying
all installed and/or removed applications); and send a command to the processor of the
mobile device to cancel the attempt (0040 – mobile agent first disables the newly
installed application, 0041 – the mobile disables or hides the icon associated with the
installed application, 0054-0055 wherein mobile agent can quarantine/disable all
applications defined by the difference).

Koganti also teaches detecting manipulation and/or modification of program code
(0039-0047, 0066, 0068-0070, 0075-0079, 0093).

Regarding claims 7 and 15.  Yuen teaches wherein the second attempt is
initiated by the application (0041).

Koganti teaches wherein the second attempt is initiated by the application (0005,
0038, 0069, 0075).

Regarding claims 8 and 16.  Yuen does not show wherein the device settings
further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio
setting determining whether or not the mobile device may receive data over a Bluetooth

Application/Control Number:15/435,993                                            Page9
Art Unit:2646

wireless link, and the cellular radio setting determining whether or not the mobile device

may receive data over a cellular wireless link.

Koganti teaches a mobile device uses a Device Trust Management Service

DTMS uses monitors (item 342 in figure 3) to detect unsanctioned functions (0003,

0005, 0007, 0009, 0038-0039, 0045-0046, 0071, 0093– Application triggers, OS

triggers, SSID violation, hardware Triggers, unauthorized communication network,

jailbroken OS, a rooted OS, etc.).  Koganti teaches **hardware barrier** (0003, 0005,

0007, 0009, 0038, 0045 – **detect tampering to the device including an opened**

**mobile device case, obviously having a front and back (e.g., fort plate and back**

**plate)**, 0069, 0093), **Application Barrier** (figure 3 item 324, 0069) and **Operating**

**System Barrier** (figure 3 item 320, 0036, 0069).

Koganti **teaches wherein the unsanctioned function includes exchanging**

**data with a unsanctioned source outside of** (see 0003, 0005, 0007, 0009 wherein

detect unsanctioned browser app, media player app, or network connection service

used for exchanging data with an unsanctioned source outside of).  Koganti teaches the

status include operations of and/or configurations of the electronic device.  The

operations of the electronic device include Operating System and/or Application

operations (0016).  Paragraph 0038 web access status, network connectivity status,

application threat status used to exchange data with outside of.  Paragraph 0039

monitor OS/OS kernel and device behavior, monitor connection status of peripheral

hardware and/or transmission/reception status with an unsanctioned source outside of.

Paragraphs 0041-0042 monitor for Text input request requesting access to the modem

to send SMS text or a social media application.  Paragraph 0043 wherein monitors 342

may monitor request for network connections.  Paragraph 0046 request/attempts for

web access, request/attempts to download/upload data and/or connection to a particular

base station, access point, website, or identified network, SSID violations.  Paragraph

0050 wherein a USB connection to peripheral hardware may pose a threat.  Paragraph

0052 wherein violations and/or changes of the design and/or intended use of the

electronic device may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph

0066 wherein monitors 342 may monitor for and detect a connection of the electronic

device to a public WiFi network.  Paragraph 0069 wherein SMS used to communicate

outside of is also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device.  For example, a user of

the device may download a flashlight application and consent to a user agreement for

the flashlight application.  The user may be unaware that the user agreement includes

consent for the flashlight App to upload pictures and contact information to the server

(e.g., detect second attempt to access device settings).  However, the scoring service

(see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to

access device settings) as a threat based on security policy.  Subsequently, the

targeted security action service 360 (figure 3) may deny access of the flashlight

Application to the file system content 245 and/or the peripheral hardware device