interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight application

from engaging in the undesired and threating behavior.

**Koganti teaches wherein the settings include a wireless access point**

**setting (0043 network access settings of a modem and/or the computer network**

**interface,0046 SSID violation, unauthorized access point, 0060-0064 unknown**

**SSID, 0066 monitor for and detect public WiFi, 0075-0076 and TABLE 3 is device**

**connected to trusted Bluetooth network, is device connected to trusted Wi-Fi**

**network, is device connected to 3G/4G network, is device connected via USB to a**

**trusted external device.  TABLE 4 If WiFi SSID indicates untrusted WiFi network,**

**deny or limit enterprise services, 0093).**

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the teaching of Yuen to monitor

changes in Bluetooth, Wi-Fi, and 3G/4G network as taught by Koganti in order to

prevent the device from preforming undesired and threating behavior with an

unsanctioned source.

Application/Control Number: 15/435,993                                        Page 12
Art Unit: 2646

2.      Claims 2 and 10 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Koganti further in view of Sande et al (2016/0291643).

        Regarding claims 2 and 10.  Yuen in view of Koganti do not show wherein the

front plate and the back plate of the hardware barrier are configured to form a seal

around the device that allows physical contact with only a screen of the mobile device, a

headphone port of the mobile device, a barrel charger port of the mobile device, and a

universal serial bus (USB) port of the mobile device.

        Sande teaches protective enclosures have front plate and back plate (0025-

0026) to protect the device from rough handling, impact, drops, and moisture (0004)

and can have any desired shape (0026).  For example, funnel-shaped to allow easier

access to corresponding components of the mobile device (e.g., an earphone port, etc.),

etc.  Sande teaches using tamper-proof screws (0037).

        It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the mobile phone case of Yuen in

view of Koganti to have apertures as taught by Sande in order to define a funnel

structure to guide a cable/plug associated with the earphone into the earphone

port/plug.

3.      Claims 3 and 11 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Koganti and Sande further in view of Chang (2004/0023698).

        Regarding claims 3 and 11.  Yuen in view of Koganti and Sande do not show a

diode connected to the barrel charger port, the diode preventing electrical current from

flowing out of the barrel charger port.

Chang teaches using a resistor and diode in series when charging a cell phone, wherein the resistor is used to control the charging current intensity and the diode is applied to prevent a backflow of current from the cell phone (abstract, 0020).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti to use a diode at the charging port as taught by Chang in order to prevent current from flowing from the battery to the charging port.

4.      Claims 6 and 14 are rejected under 35 U.S.C. 103 as being unpatentable over Yuen in view of Koganti further in view of Forssell et al (2014/0226487).

Regarding claims 6 and 14    Yuen in view of Koganti do not show wherein the application barrier is further configured to: detect an over-the-air command received by the mobile device over a wireless link; determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

Forssell teaches device management server, like Nokia Siemens Network's SADM, may be used to configure user devices automatically Over-the-Air.  DM server may configure into user devices Wi-Fi network settings, like SSID, and used authentication method (0113-0118).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile device as taught by Yuen in view of Koganti to use a Device Management Server as taught by Forssell in order to automatically configure device Wi-Fi settings Over-the-Air.

Application/Control Number:15/435,993                                    Page14
Art Unit:2646

5.      Claims 17-22 is/are rejected under 35 U.S.C. 103 as being unpatentable over

Koganti et al (2017/0329966) in view of Vijayakumar et al (2011/0162060).

        Regarding claim 17.    Koganti teaches system of layered security barriers

designed to prevent unsanctioned use of a mobile device in a controlled environment

facility, comprising:

        a hardware barrier that includes a front plate and a back plate configured to form

a seal around the mobile device that allows limited physical contact with the mobile

device (0003, 0005, 0007, 0009, 0038, 0045 – **detect tampering to the device**

**including an opened mobile device case, obviously having a front and back (e.g.,**

**fort plate and back plate)**, 0069, 0093);

        an application barrier, stored on a memory of the mobile device, configured to

prevent an unsanctioned function from being performed on the mobile device (figure 3

item 324, 0069);

        an operating system (OS) barrier stored on the memory of the mobile device,

configured to prevent an unsanctioned change of device settings of the mobile device

(figure 3 item 320, 0036, 0069).; and

        Koganti does not show an access control barrier implemented on a firewall

device between a wireless access point serving the controlled-environment facility and a

network, the access control barrier configured to perform filtering of a plurality of

packets directed to or transmitted by the mobile device.

        Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

to implement a firewall as taught by Vijayakumar in order to control what traffic is

allowed to pass through the firewall and what traffic is unauthorized to pass.

Regarding claim 18.  Koganti does not show the system further comprising a

wireless intrusion barrier implemented on the wireless access point device, the wireless

intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access

point device;

obtain a wireless access point identifier associated with the second wireless

access point device;

determine that the second wireless access point identifier is not among a plurality

of wireless access point identifiers stored on the wireless access point device; and in

response to the determining, attack the mobile device using a deauthentication denial of

service attack.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network.

Regarding claim 19.  Koganti does not show wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device (WID) that implements rules based on ESSID of the WID to specify whether traffic is allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079). Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious Wireless Communication Device WCD) and transmits a deauthentication frame to the WCD to remove it from the WLAN (0028, 0101, 0107-0108).

It would have been extremely obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the invention as taught by Koganti to implement a firewall that can detect malicious wireless communication devices as taught by Vijayakumar in order to control what devices are allowed to connect and which devices to force off the network (Vijayakumar at 0101 – wherein the firewall instructs the access point to send the malicious wireless device a deauthentication frame to remove the malicious wireless device from the network).

Regarding claim 20.  Koganti teaches wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device (see Application Barrier item 324 in figure 3, 0036-0037 wherein DTMS interacts with applications 324 to detect a threat, 0038-0039 – detect manipulation and/or modification of the program code, 0042 – monitor the operations and/or configurations of the applications, 0069, 0075-0076),

a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility (0042 wherein SMS application request access to the modem to send a short message or wherein application tries to access content from unauthorized social media, paragraph 0075 wherein the DTMS may respond to threats even if the electronic device is in possession of an authorized user, software, firmware, and/or hardware of the electronic device may exhibit and/or engage in behavior that constitutes the threat of the security of the device**. For example, a user of the device may download a flashlight application and consent to a user agreement for the flashlight application.  The user may be unaware that the user agreement includes consent for the flashlight App to upload pictures and contact information to the server (e.g., detect second attempt to access device settings).  However, the scoring service (see item 345 in figure 3) may detect the uploading (e.g., detect second attempt to access device settings) as a threat based on security policy.  Subsequently, the targeted security action service 360 (figure 3) may deny access of the flashlight Application to the file**

**system content 245 and/or the peripheral hardware device interface.  In this way,
the DTMS 340 (figure 3) may prevent the flashlight application from engaging in
the undesired and threating behavior**); and

preventing a processor of the mobile device from executing any operations
related to the first attempt, the second attempt, and the third attempt (paragraph 0075
wherein the DTMS may respond to threats even if the electronic device is in possession
of an authorized user, software, firmware, and/or hardware of the electronic device may
exhibit and/or engage in behavior that constitutes the threat of the security of the
device**.  For example, a user of the device may download a flashlight application
and consent to a user agreement for the flashlight application.  The user may be
unaware that the user agreement includes consent for the flashlight App to
upload pictures and contact information to the server (e.g., detect second attempt
to access device settings).  However, the scoring service (see item 345 in figure
3) may detect the uploading (e.g., detect second attempt to access device
settings) as a threat based on security policy.  Subsequently, the targeted
security action service 360 (figure 3) may deny access of the flashlight
Application to the file system content 245 and/or the peripheral hardware device
interface.  In this way, the DTMS 340 (figure 3) may prevent the flashlight
application from engaging in the undesired and threating behavior**).

Regarding claim 21.    The system of claim 17, wherein the operating system
(OS) is configured to prevent the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile
device; and preventing the processor of the mobile device from executing operations

related to the attempt (Paragraph 0039 monitor OS/OS kernel and device behavior,

monitor connection status of peripheral hardware and/or transmission/reception status

with an unsanctioned source outside of.  Paragraphs 0041-0042 monitor for Text input

request requesting access to the modem to send SMS text or a social media

application.  Paragraph 0043 wherein monitors 342 may monitor request for network

connections.  Paragraph 0046 request/attempts for web access, request/attempts to

download/upload data and/or connection to a particular base station, access point,

website, or identified network, SSID violations.  Paragraph 0050 wherein a USB

connection to peripheral hardware may pose a threat.  Paragraph 0052 wherein

violations and/or changes of the design and/or intended use of the electronic device

may be a threat.  TABLE 1, 0064 wherein Unknown SSID.  Paragraph 0066 wherein

monitors 342 may monitor for and detect a connection of the electronic device to a

public WiFi network.  Paragraph 0069 wherein SMS used to communicate outside of is

also monitored.  Paragraph 0070 wherein whitelist/blacklist for particular

communications network and/or USB port used for charging BUT not allowed for

uploading or downloading files.  Paragraph 0075 wherein the DTMS may respond to

threats even if the electronic device is in possession of an authorized user, software,

firmware, and/or hardware of the electronic device may exhibit and/or engage in

behavior that constitutes the threat of the security of the device**.  For example, a user**

**of the device may download a flashlight application and consent to a user**

**agreement for the flashlight application.  The user may be unaware that the user**

**agreement includes consent for the flashlight App to upload pictures and contact**

**information to the server (e.g., detect second attempt to access device settings).**

Application/Control Number:15/435,993                                          Page20
Art Unit:2646

**However, the scoring service (see item 345 in figure 3) may detect the uploading**

**(e.g., detect second attempt to access device settings) as a threat based on**

**security policy.  Subsequently, the targeted security action service 360 (figure 3)**

**may deny access of the flashlight Application to the file system content 245**

**and/or the peripheral hardware device interface.  In this way, the DTMS 340 (figure**

**3) may prevent the flashlight application from engaging in the undesired and**

**threating behavior**), wherein the device settings include a wireless access point setting

(0043 network access settings of a modem and/or the computer network interface,0046

SSID violation, unauthorized access point, 0060-0064 unknown SSID, 0066 monitor for

and detect public WiFi, 0075-0076 and TABLE 3 is device connected to trusted

Bluetooth network, is device connected to trusted Wi-Fi network, is device connected to

3G/4G network, is device connected via USB to a trusted external device.  TABLE 4 If

WiFi SSID indicates untrusted WiFi network, deny or limit enterprise services, 0093).

Regarding claim 22.  Koganti does not show wherein the access control barrier is

configured to perform filtering of the plurality of packets by:

receiving a packet transmitted by or directed to the mobile device;

performing an inspection of a packet, the inspection including obtaining an

address of the packet; determining that the address is not among a plurality of

addresses stored on the firewall device; and in response to the determining, discarding

the packet.

Vijayakumar teaches a firewall implemented at a WLAN infrastructure device

(WID) that implements rules based on ESSID of the WID to specify whether traffic is

allowed to or from the ESSID (abstract, 0003, 0007, 0024-0026, 0069, 0079).

Application/Control Number:15/435,993                                                  Page21
Art Unit:2646

Vijayakumar teaches the wireless access point device detects intrusion (e.g., malicious

Wireless Communication Device WCD) and transmits a deauthentication frame to the

WCD to remove it from the WLAN (0028, 0101, 0107-0108).  **Vijayakumar teaches**

**firewall rules include using source and destination address (0025, 0027)**.

It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the invention as taught by Koganti

to implement a firewall that can detect monitor source and destination addresses as

taught by Vijayakumar in order to control data flowing to and from the firewall.

*Conclusion*

6.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to BARRY W TAYLOR whose telephone number is

(571)272-7509.  The examiner can normally be reached on Monday-Thursday: 8-6.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number:15/435,993                                                    Page22
Art Unit:2646

       Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

| *Index of Claims* | Application/Control No.<br><br>15/435,993 | Applicant(s)/Patent Under Reexamination<br><br>MARASS et al. |
|---|---|---|
| | Examiner<br><br>BARRY W TAYLOR | Art Unit<br><br>2646 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 02/27/2018 | | | | | | | |
| | 1 | ✓ | | | | | | | |
| | 2 | ✓ | | | | | | | |
| | 3 | ✓ | | | | | | | |
| | 4 | ✓ | | | | | | | |
| | 5 | ✓ | | | | | | | |
| | 6 | ✓ | | | | | | | |
| | 7 | ✓ | | | | | | | |
| | 8 | ✓ | | | | | | | |
| | 9 | ✓ | | | | | | | |
| | 10 | ✓ | | | | | | | |
| | 11 | ✓ | | | | | | | |
| | 12 | ✓ | | | | | | | |
| | 13 | ✓ | | | | | | | |
| | 14 | ✓ | | | | | | | |
| | 15 | ✓ | | | | | | | |
| | 16 | ✓ | | | | | | | |
| | 17 | ✓ | | | | | | | |
| | 18 | ✓ | | | | | | | |
| | 19 | ✓ | | | | | | | |
| | 20 | ✓ | | | | | | | |
| | 21 | ✓ | | | | | | | |
| | 22 | ✓ | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| *Notice of References Cited* | Application/Control No.<br>15/435,993 | Applicant(s)/Patent Under<br>Reexamination<br>MARASS et al. | |
|---|---|---|---|
| | Examiner<br>BARRY W TAYLOR | Art Unit<br>2646 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20170329966-A1 | 11-2017 | KOGANTI; Sudheer | G06F21/56 | 1/1 |
| * | B | US-20160291643-A1 | 10-2016 | Sande; Greg Mitchel | G06F1/1656 | 1/1 |
| * | C | US-20150040246-A1 | 02-2015 | Yuen; Chun Fung | H04L63/168 | 726/30 |
| * | D | US-20140226487-A1 | 08-2014 | Forssell; Mika | H04W36/22 | 370/235 |
| * | E | US-20110162060-A1 | 06-2011 | Vijayakumar; Rajesh | H04L12/413 | 726/13 |
| * | F | US-20040023698-A1 | 02-2004 | Chang, Ming-Yuh | H02J7/0044 | 455/573 |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                        **Notice of References Cited**                        Part of Paper No. 20180223

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L1 | 15 | ((case or shell or cover or enclosure) same (front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:00 |
| L2 | 31 | ( (front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:01 |
| L3 | 31 | ((front adj3 plate) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:02 |
| L4 | 24484 | ((front adj3 plate) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:04 |
| L5 | 3489 | 4 same (back adj3 plate) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:04 |
| L6 | 814 | ((front adj3 plate) near7 (back adj3 plate) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:05 |
| L7 | 6612 | ((case or shell or cover or enclosure or housuing) same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:22 |
| L8 | 2317 | (((case or shell or cover or enclosure or housuing) near7 (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant)))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:22 |
| L9 | 2 | 8 and ((case or shell or cover or enclosure or housuing) same ((earphone or | US-PGPUB; | OR | ON | 2018/02/23 12:51 |

| | | headphone) near3 port$1)) | USPAT | | | |
|---|---|---|---|---|---|---|
| L10 | 24 | ("20050058494" \| "20060138182" \| "20120305422" \| "20130009413" \| "20130265643" \| "20130265644" \| "20150068934" \| "20150150362" \| "20150296651" \| "20160166321" \| "4850657" \| "6567651" \| "7370840" \| "7630745" \| "8281924" \| "8616422" \| "8973795" \| "9004330" \| "9419669" \| "D670279" \| "D674803" \| "D685358" \| "D690305" \| "D718316").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/23 12:53 |
| L11 | 28 | ("2015/0068934").URPN. | USPAT | OR | ON | 2018/02/23 12:54 |
| L12 | 82 | 8 and ((case or shell or cover or enclosure or housuing) same ((usb) near3 port$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:55 |
| L13 | 1 | "20160291643".pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| L14 | 0 | 13 and (usb or (serial)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| L15 | 1 | 13 and (port) | US-PGPUB; USPAT | OR | ON | 2018/02/23 12:56 |
| L16 | 458 | (diode same (charg$4 adj3 port)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:05 |
| L17 | 12 | 16 same (prevent$5 adj4 current) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:05 |
| L18 | 2 | "20160291643" | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:16 |
| L19 | 26 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$).did. or (US-9892242-$ or US-9262604-$).did. | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:18 |
| L20 | 5 | 19 and (ota or (over adj3 air) or over-the-air) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:18 |
| L21 | 260 | 4 and (ota or (over adj3 air) or over-the-air) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:27 |
| L22 | 1 | 4 and ((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:27 |
| L23 | 1845 | (((ota or (over adj3 air) or over-the-air) | US- | OR | ON | 2018/02/23 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | near7 (configuration$1 or settings)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | PGPUB; USPAT | | | 13:28 |
| L24 | 1013 | (((ota or (over adj3 air) or over-the-air) near7 (configuration$1 or settings)) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:28 |
| L25 | 26 | 24 same (wifi or wi-fi or blu or bluetooth or "802.11") | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:29 |
| L26 | 2 | "20140226487" | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:44 |
| L27 | 0 | 26 and (blu or bluetooth or "802.11") | US-PGPUB; USPAT | OR | ON | 2018/02/23 13:44 |
| L28 | 9 | 24 same (bluetooth or (blue adj2 tooth)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:00 |
| L29 | 307 | (((ota or (over adj3 air) or over-the-air) same (bluetooth or (blue adj2 tooth)) same (configuration$1 or settings)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:43 |
| L30 | 114 | 29 same (os or (operat$4 adj2 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 14:45 |
| L31 | 7 | ("20170329966" or "20150040246" or "20160291643" or "20040023698" or "20140226487" or "20160094560" or "20110162060").pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:11 |
| L32 | 2 | 31 and kernel | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:12 |
| L33 | 27 | (US-20160007201-$ or US-20150215254-$ or US-20100151820-$ or US-20140108649-$ or US-20140032691-$ or US-20170177892-$ or US-20160267257-$ or US-20150242629-$ or US-20160088021-$ or US-20140109174-$ or US-20150188949-$ or US-20130276124-$ or US-20180039779-$ or US-20120240197-$ or US-20170244729-$ or US-20170118211-$ or US-20090019539-$ or US-20110162060-$ or US-20160143028-$ or US-20090253410-$ or US-20170329966-$ or US-20160291643-$ or US-20050236480-$ or US-20040023698-$ or US-20160094560-$).did. or (US-9892242-$ or US-9262604-$).did. | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:17 |
| L34 | 7 | 33 and kernel | US-PGPUB; USPAT | OR | ON | 2018/02/23 15:17 |
| S1 | 164 | ((((correction$4 adj3 facilit$4) or prison or | US- | OR | ON | 2018/02/20 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | inmat$4) same tamper$4 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | PGPUB; USPAT | | | 09:20 |
| S2 | 1 | "20100151820" | US-PGPUB; USPAT | OR | ON | 2018/02/20 09:55 |
| S3 | 20 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/20 10:06 |
| S4 | 13 | ("20110237226" \| "20140108649" \| "20170061006" \| "20170084150" \| "20170193622" \| "5255306" \| "6054928" \| "7587067" \| "9282188" \| "9866680" \| "9871915" \| "9888108" \| "9892242").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/20 10:12 |
| S5 | 83 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618" \| "20120099714" \| "20120252411" \| "20120262271" \| "20130179210" \| "20130311364" \| "20140032691" \| "20140044242" \| "20140089849" \| "20140108649" \| "20140109174" \| "20140219432" \| "20140267547" \| "20140273929" \| "20140282868" \| "20140287715" \| "20150242629" \| "20160055323" \| "20160066182" \| "20160088021" \| "20160219146" \| "20160267257" \| "20160330084" \| "20160381212" \| "20160381219" \| "20160381556" \| "20170061006" \| "20170177892" \| "20170208468" \| "4495386" \| "5896556" \| "6058173" \| "6668045" \| "6965590" \| "7085359" \| "7106843" \| "7218993" \| "7254708" \| "7280816" \| "7333798" \| "7366782" \| "7529357" \| "7742581" \| "7804941" \| "7860222" \| "7899167" \| "8019354" \| "8031052" \| "8370206" \| "8428559" \| "8498937" \| "8571525" \| "8639926" \| "8646056" \| "8917848" \| "9094500" \| "9124763" \| "9232051" \| "9262604" \| "9307386" \| "9614954" \| "9614955" \| "9661128" \| "9674338").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/20 10:16 |
| S6 | 6262 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:40 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | | | | |
| S7 | 5312 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:41 |
| S8 | 1792 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:44 |
| S9 | 0 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) same (charg$5 adj4 another adj4 device)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:45 |
| S10 | 147 | S6 and (batter$5 same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone) same (charg$5 adj4 device)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:45 |
| S11 | 10 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same (new adj2 (app or application)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:55 |
| S12 | 855 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((app or application) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 07:58 |
| S13 | 227 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:07 |
| S14 | 99 | S6 and ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:08 |
| S15 | 6262 | S6((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:09 |
| S16 | 99 | ((prisoner or inmat$4 or incarcerat$4 or convict or jailbird) same ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone))) | US-PGPUB; USPAT | OR | ON | 2018/02/21 08:09 |
| S17 | 4 | ("20140108649" or "20150242629" or | US- | OR | ON | 2018/02/21 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "20160267257" or "20170177892").pn. | PGPUB; USPAT | | | 08:45 |
| S18 | 20 | ("20020071537" \| "20030036381" \| "20030086546" \| "20030126470" \| "20030198325" \| "20030224764" \| "20050265529" \| "20060062355" \| "20060176169" \| "20070041545" \| "20070047694" \| "20070057763" \| "20080057976" \| "20080200156" \| "20090080629" \| "20100062833" \| "20100189228" \| "20100260173" \| "20110158223" \| "20110213618").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:11 |
| S19 | 20 | ("20120099714" OR "20120252411" OR "20120262271" OR "20130179210" OR "20130311364" OR "20140032691" OR "20140044242" OR "20140089849" OR "20140109174" OR "20140219432" OR "20140267547" OR "20140273929" OR "20140282868" OR "20140287715" OR "20150242629" OR "20160055323" OR "20160066182" OR "20160088021" OR "20160219146" OR "20160267257").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:24 |
| S20 | 18 | "9307386" | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:30 |
| S21 | 1 | "9307386".PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 14:32 |
| S22 | 13 | ("20110237226" \| "20140108649" \| "20170061006" \| "20170084150" \| "20170193622" \| "5255306" \| "6054928" \| "7587067" \| "9282188" \| "9866680" \| "9871915" \| "9888108" \| "9892242").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:29 |
| S23 | 20 | ("20160330084" OR "20160381212" OR "20160381219" OR "20160381556" OR "20170208468" OR "20170177892" OR "4495386" OR "5896556" OR "6058173" OR "6668045" OR "6965590" OR "7085359" OR "7106843" OR "7218993" OR "7254708" OR "7280816" OR "7333798" OR "7366782" OR "7529357" OR "7742581").PN. | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:34 |
| S24 | 2 | "20120252411" | US-PGPUB; USPAT | OR | ON | 2018/02/21 15:49 |
| S25 | 5 | ("20010036821" \| "20020071537" \| "5535261" \| "6052454" \| "6064963").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/21 16:00 |
| S26 | 20 | ("7804941" OR "7860222" OR "7899167" OR "8019354" OR "8031052" OR "8370206" OR "8428559" OR "8498937" OR "8571525" OR "8639926" OR "8646056" OR "8917848" OR "9094500" OR "9124763" OR "9232051" OR "9262604" OR "9307386" OR "9614954" OR "9614955" OR "9661128").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2018/02/21 16:07 |
| S27 | 5 | "9674338" | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:10 |

| S28 | 7528 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:17 |
|---|---|---|---|---|---|---|
| S29 | 73371 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) (settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/21 16:18 |
| S30 | 61884 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) (settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/21 16:19 |
| S31 | 643 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) near7(settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/21 16:20 |
| S32 | 644 | (prisoner or inmat$4 or convict or criminal or incarcerat$4 or convict or jailbird or contraband or bootleg or illicit$4 or smuggl$5 or (control$4 adj3 facility) or (correction$4 adj2 facility) or penal) and ((tamper$5 or chang$4 or meddl$4) near7(settings) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 09:15 |
| S33 | 1 | "20150188949" | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:29 |
| S34 | 1 | S33 and settings | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:29 |
| S35 | 1 | S33 and (app or application$1) | US-PGPUB; USPAT | OR | ON | 2018/02/22 09:32 |
| S36 | 1 | "20110055899" | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:49 |

| S37 | 1 | S36 and (devic$2) | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:49 |
|-----|---|-------------------|------------------|----|----|-------------------|
| S38 | 0 | S36 and (mobile or phone or cellphone or smartphone) | US-PGPUB; USPAT | OR | ON | 2018/02/22 10:51 |
| S39 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:01 |
| S40 | 149192 | S39 same (hardware or software or application or (device adj3 settings)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:04 |
| S41 | 14250 | S39 same (operating adj2 system) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:05 |
| S42 | 57264 | S39 near7 (hardware or software or application or (device adj3 settings)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:05 |
| S43 | 2513 | S39 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:07 |
| S44 | 0 | S39 same (detectf$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:27 |
| S45 | 35 | S39 same (detect$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 11:27 |
| S46 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:53 |
| S47 | 35 | S46 same (detect$5 near7 (delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:53 |
| S48 | 2 | "20120240197" | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:54 |
| S49 | 2 | S48 and tamper$6 | US-PGPUB; USPAT | OR | OFF | 2018/02/22 12:55 |
| S50 | 56 | S46 same (detect$5 near7 (download$4 or acess$5)) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:02 |
| S51 | 277 | S46 and (layered adj2 security) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:12 |
| S52 | 1023796 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:22 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | | | | |
| S53 | 55828 | S52 same ((delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 13:24 |
| S54 | 841 | S52 same ((ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near4 (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:28 |
| S55 | 0 | S52 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near7 (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:42 |
| S56 | 68 | S52 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) same (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) same (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:42 |
| S57 | 1867 | ((unsanction$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 13:44 |
| S58 | 49 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) near7 settings) | US-PGPUB; USPAT | OR | ON | 2018/02/22 14:13 |
| S59 | 179 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:51 |
| S60 | 179 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:52 |
| S61 | 677 | S52 same ((disallow$4 or forbid$5 or deny$5 or cancel$5 or prevent$4) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 14:52 |
| S62 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:33 |
| S63 | 13 | "2015/0040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:34 |
| S64 | 498 | S61 not S60 | US-PGPUB; USPAT | OR | ON | 2018/02/22 15:50 |

| S65 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:08 |
|---|---|---|---|---|---|---|
| S66 | 1 | S65 and (mobile or cellular or phone or telephone or smartphone or pda) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:09 |
| S67 | 1 | S65 and application | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:10 |
| S68 | 1 | S65 and device | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:13 |
| S69 | 1 | S65 and (software or (system adj2 call)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:18 |
| S70 | 1 | S65 and (os or (operating adj2 system)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:19 |
| S71 | 1 | "20170244729" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S72 | 0 | "20170244729""20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S73 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2018/02/22 16:59 |
| S74 | 5 | deauthenticat$5 adj4 (dos or (denial adj2 service adj3 attack)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 17:03 |
| S75 | 41 | deauthenticat$5 same (dos or (denial adj2 service adj3 attack)) | US-PGPUB; USPAT | OR | ON | 2018/02/22 17:06 |
| S76 | 266 | ((ssid$1) near7 (tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:30 |
| S77 | 139 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:34 |
| S78 | 141 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/22 18:34 |

| S79 | 141 | ((ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) same (prevent$4 or prohibit$5 or deny$4 or forbid$4 or disallow$5) same (tamper$5 or chang$4 or meddl$4 or modify$5 or modification or tamper-proof) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 06:49 |
|-----|-----|-----|-----|-----|-----|-----|
| S80 | 0 | S79 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:12 |
| S81 | 6265 | (((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:12 |
| S82 | 204 | S81 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:12 |
| S83 | 3 | "9576157" | US-PGPUB; USPAT | OR | OFF | 2018/02/23 07:19 |
| S84 | 0 | ((unathorized near3 (use or usage or used)) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:22 |
| S85 | 599 | ((unauthorized or sanctioned or unsanctioned or contraband or illicit$3 or pirated or smuggled or bootlegged or illegal) same ((correction$4 adj3 facilit$4) or prison$4 or inmat$4 or incarcerat$4 or convict or jail or jailbird) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:24 |
| S86 | 5 | "20090253410" | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:30 |
| S87 | 1 | "20090253410".pn. | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:56 |
| S88 | 1 | S87 and (operat$4 adj3 system) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:56 |
| S89 | 1 | S87 and (software or application) | US-PGPUB; USPAT | OR | ON | 2018/02/23 07:59 |
| S90 | 6504 | ((jailbreak$4 or (jail adj3 break$4) or rooting) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 08:30 |
| S91 | 38 | S90 and (tamper-resistant or (tamper adj3 resistant)) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 08:31 |

| S92 | 82 | S90 and (ssid$1 or ((ap or (access adj2 point)) adj3 (mac or address$4 or ssid$2 or settings))) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 08:36 |
| S93 | 1 | "20170329966" | US-PGPUB; USPAT | OR | OFF | 2018/02/23 09:01 |
| S94 | 1 | S93 and (case or tamper$5) | US-PGPUB; USPAT | OR | OFF | 2018/02/23 09:01 |
| S95 | 3977 | (case same (tamper or tamperproof or tamper-resistant or (tamper$4 adj3 (proof or resistant))) same (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | ON | 2018/02/23 09:07 |
| S96 | 20 | S95 same (front same back) | US-PGPUB; USPAT | OR | ON | 2018/02/23 09:08 |

**2/23/2018 3:22:37 PM**
**C:\Users\btaylor\Documents\EAST\Workspaces\Workspaces\%15,435,993 prevent use of mobile for inmates.wsp**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/435,993 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| H04W 12/08, 4/001, 4/008 | 2/27/2018 | BWT |
| H04M 1/72569, 1/72563, 1/72577, 1/18 | 02/27/2018 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| no double patenting.  east search attached. | 02/27/2018 | BWT |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | |
|---|---|
| | |

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | | **Complete if Known** | |
|---|---|---|---|---|---|---|
| **FIRST SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 15/435,993 | |
| | | | | Filing Date | February 17, 2017 | |
| | | | | First Named Inventor | Jason MARASS | |
| | | | | Art Unit | 2646 | |
| | | | | Examiner Name | Taylor, Barry W. | |
| Sheet | 1 | of | 1 | Attorney Docket Number | 3210.1280000 | |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 2011/0237226 A1 | 09-29-2011 | Dhuna | |
| | US2 | 2014/0108649 A1 | 04-17-2014 | Barton | |
| | US3 | 2017/0061006 A1 | 03-02-2017 | Hildebrand et al. | |
| | US4 | 2017/0084150 A1 | 03-23-2017 | Keyton | |
| | US5 | 2017/0193622 A1 | 07-06-2017 | Rosado | |
| | US6 | 5,255,306 | 10-19-1993 | Melton et al. | |
| | US7 | 6,054,928 | 04-25-2000 | Lemelson et al. | |
| | US8 | 7,587,067 B1 | 09-08-2009 | Schiller | |
| | US9 | 9,282,188 B2 | 03-08-2016 | Hodge et al. | |
| | US10 | 9,866,680 B2 | 01-09-2018 | Hodge et al. | |
| | US11 | 9,871,915 B2 | 01-16-2018 | Hodge et al. | |
| | US12 | 9,888,108 B2 | 02-06-2018 | Hodge et al. | |
| | US13 | 9,892,242 B1 | 02-13-2018 | Hodge | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

8997871_1.docx

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 02/23/2018 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

**ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/**

15/435,993   GAU:  2646

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 15/435,993 |
| | | | | Filing Date | February 10, 2017 |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | 2646 |
| | | | | Examiner Name | Taylor, Barry W. |
| Sheet | 1 | of | 5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 2002/0071537 A1 | 06-13-2002 | Gainsboro | |
| | US2 | 2003/0036381 A1 | 02-20-2003 | Nagashima | |
| | US3 | 2003/0086546 A1 | 05-08-2003 | Falcone et al. | |
| | US4 | 2003/0126470 A1 | 07-03-2003 | Crites et al. | |
| | US5 | 2003/0198325 A1 | 10-23-2003 | Bayne | |
| | US6 | 2003/0224764 A1 | 12-04-2003 | Baker | |
| | US7 | 2005/0265529 A1 | 12-01-2005 | Hogg, Jr. et al. | |
| | US8 | 2006/0062355 A1 | 03-23-2006 | Leonard | |
| | US9 | 2006/0176169 A1 | 08-10-2006 | Doolin et al. | |
| | US10 | 2007/0041545 A1 | 02-22-2007 | Gainsboro | |
| | US11 | 2007/0047694 A1 | 03-01-2007 | Bouchard et al. | |
| | US12 | 2007/0057763 A1 | 03-15-2007 | Blattner et al. | |
| | US13 | 2008/0057976 A1 | 03-06-2008 | Rae et al. | |
| | US14 | 2008/0200156 A1 | 08-21-2008 | Hicks et al. | |
| | US15 | 2009/0080629 A1 | 03-26-2009 | Rokosky et al. | |
| | US16 | 2010/0062833 A1 | 03-11-2010 | Mattice et al. | |
| | US17 | 2010/0189228 A1 | 07-29-2010 | Seyfetdinov | |
| | US18 | 2010/0260173 A1 | 10-14-2010 | Johnson | |
| | US19 | 2011/0158223 A1 | 06-30-2011 | Liu et al. | |
| | US20 | 2011/0213618 A1 | 09-01-2011 | Hodge et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T6 |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 02/23/2018 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

**ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/**

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | Complete if Known | |
| --- | --- | --- | --- |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | Application Number | 15/435,993 |
| | | Filing Date | February 10, 2017 |
| | | First Named Inventor | Jason MARASS |
| | | Art Unit | 2646 |
| | | Examiner Name | Taylor, Barry W. |
| Sheet | 2 of 5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
| --- | --- | --- | --- | --- | --- |
| | US21 | 2012/0099714 A1 | 04-26-2012 | Hodge | |
| | US22 | 2012/0252411 A1 | 10-04-2012 | Johsgard et al. | |
| | US23 | 2012/0262271 A1 | 10-18-2012 | Torgersrud et al. | |
| | US24 | 2013/0179210 A1 | 07-11-2013 | Collins | |
| | US25 | 2013/0311364 A1 | 11-21-2013 | Shipman et al. | |
| | US26 | 2014/0032691 A1 | 01-30-2014 | Barton et al. | |
| | US27 | 2014/0044242 A1 | 02-13-2014 | Hodge et al. | |
| | US28 | 2014/0089849 A1 | 03-27-2014 | Choi et al. | |
| | US29 | 2014/0109174 A1 | 04-17-2014 | Barton et al. | |
| | US30 | 2014/0219432 A1 | 08-07-2014 | Bengston et al. | |
| | US31 | 2014/0267547 A1 | 09-18-2014 | Torgersrud et al. | |
| | US32 | 2014/0273929 A1 | 09-18-2014 | Torgersrud | |
| | US33 | 2014/0282868 A1 | 09-18-2014 | Sheller et al. | |
| | US34 | 2014/0287715 A1 | 09-25-2014 | Hodge et al. | |
| | US35 | 2015/0242629 A1 | 08-27-2015 | Lindo et al. | |
| | US36 | 2016/0055323 A1 | 02-25-2016 | Stuntebeck et al. | |
| | US37 | 2016/0066182 A1 | 03-03-2016 | Hodge et al. | |
| | US38 | 2016/0088021 A1 | 03-24-2016 | Jayanti Venkata et al. | |
| | US39 | 2016/0219146 A1 | 07-28-2016 | Hodge et al. | |
| | US40 | 2016/0267257 A1 | 09-15-2016 | Wisgo | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 02/23/2018 |
| --- | --- | --- | --- |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

**ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/**

15/435,993    CAU: 2646

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Application Number | 15/435,993 |
| | Filing Date | February 10, 2017 |
| | First Named Inventor | Jason MARASS |
| | Art Unit | 2646 |
| | Examiner Name | Taylor, Barry W. |
| Sheet    3    of    5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US41 | 2016/0330084 A1 | 11-10-2016 | Hunter et al. | |
| | US42 | 2016/0381212 A1 | 12-29-2016 | Hodge et al. | |
| | US43 | 2016/0381219 A1 | 12-29-2016 | Hodge et al. | |
| | US44 | 2016/0381556 A1 | 12-29-2016 | Hodge et al. | |
| | US45 | 2017/0208468 A1 | 07-20-2017 | Hodge et al. | |
| | US46 | 2017/0177892 A1 | 06-22-2017 | Tingstrom et al. | |
| | US47 | 4,495,386 | 01-22-1985 | Brown et al. | |
| | US48 | 5,896,556 | 04-20-1999 | Moreland et al. | |
| | US49 | 6,058,173 | 05-02-2000 | Penfield et al. | |
| | US50 | 6,668,045 B1 | 12-23-2003 | Mow | |
| | US51 | 6,965,590 B1 | 11-15-2005 | Schmidl et al. | |
| | US52 | 7,085,359 B2 | 08-01-2006 | Crites et al. | |
| | US53 | 7,106,843 B1 | 09-12-2006 | Gainsboro et al. | |
| | US54 | 7,218,993 B2 | 05-15-2007 | Yasukawa et al. | |
| | US55 | 7,254,708 B2 | 08-07-2007 | Silvester | |
| | US56 | 7,280,816 B2 | 10-09-2007 | Fratti et al. | |
| | US57 | 7,333,798 B2 | 02-19-2008 | Hodge | |
| | US58 | 7,366,782 B2 | 04-29-2008 | Chong et al. | |
| | US59 | 7,529,357 B1 | 05-05-2009 | Rae et al. | |
| | US60 | 7,742,581 B2 | 06-22-2010 | Hodge et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 02/23/2018 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 15/435,993 |
| | | | Filing Date | February 10, 2017 |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | 2646 |
| | | | Examiner Name | Taylor, Barry W. |
| Sheet | 4 | of | 5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code [2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US61 | 7,804,941 B2 | 09-28-2010 | Keiser et al. | |
| | US62 | 7,860,222 B1 | 12-28-2010 | Sidler et al. | |
| | US63 | 7,899,167 B1 | 03-01-2011 | Rae | |
| | US64 | 8,019,354 B2 | 09-13-2011 | Rae et al. | |
| | US65 | 8,031,052 B2 | 10-04-2011 | Polozola | |
| | US66 | 8,370,206 B2 | 02-05-2013 | Collins | |
| | US67 | 8,428,559 B2 | 04-23-2013 | Silva | |
| | US68 | 8,498,937 B1 | 07-30-2013 | Shipman, Jr. et al. | |
| | US69 | 8,571,525 B2 | 10-29-2013 | Weinstein et al. | |
| | US70 | 8,639,926 B2 | 01-28-2014 | Brown et al. | |
| | US71 | 8,646,056 B2 | 02-04-2014 | Poplett | |
| | US72 | 8,917,848 B2 | 12-23-2014 | Torgersrud et al. | |
| | US73 | 9,094,500 B1 | 07-28-2015 | Edwards | |
| | US74 | 9,124,763 B2 | 09-01-2015 | Humphries | |
| | US75 | 9,232,051 B2 | 01-05-2016 | Torgersrud et al. | |
| | US76 | 9,262,604 B2 | 02-16-2016 | Kimbrell | |
| | US77 | 9,307,386 B2 | 04-05-2016 | Hodge et al. | |
| | US78 | 9,614,954 B2 | 04-04-2017 | Hodge et al. | |
| | US79 | 9,614,955 B2 | 04-04-2017 | Hodge et al. | |
| | US80 | 9,661,128 B2 | 05-23-2017 | Hodge et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | | Date Considered | 02/23/2018 |
|---|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

**ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/**

Equivalent of Form PTO/SB/08a (07-09)

| | | Complete if Known |
|---|---|---|
| Substitute for form 1449/PTO | Application Number | 15/435,993 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Filing Date | February 10, 2017 |
| | First Named Inventor | Jason MARASS |
| | Art Unit | 2646 |
| | Examiner Name | Taylor, Barry W. |
| Sheet | 5 | of | 5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code [2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US81 | 9,674,338 B2 | 06-06-2017 | Hodge et al. | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

8238306_1.docx

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 02/23/2018 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

**ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/**

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 15/435,993 |
| | Filing Date | February 10, 2017 |
| | First Named Inventor | Jason MARASS |
| | Art Unit | 2646 |
| | Examiner Name | Taylor, Barry W. |
| Sheet | 1 | of | 2 | Attorney Docket Number | 3210.1280000 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published | T[2] |
| | NPL1 | "Criminal Calls: A Review of the Bureau of Prisons' Management of Inmate Telephone Privileges," U.S. Department of Justice, Office of the Inspector General, August 1999. | |
| | NPL2 | European Search Report and Opinion directed to European Patent Application No. 14769931.8, dated October 26, 2016; 10 pages. | |
| | NPL3 | File History of U.S. Patent No. 9,094,500, Appl. No. 14/322,869, filed July 2, 2014. | |
| | NPL4 | File History of U.S. Patent No. 9,307,386, Appl. No. 13/946,637, filed July 19, 2013. | |
| | NPL5 | International Search Report and Written Opinion of the International Searching Authority, directed to related International Patent Application No. PCT/US14/31339, mailed November 6, 2014; 19 pages. | |
| | NPL6 | Knox, "The Problem of Gangs and Security Threat Groups (STG's) in American Prisons Today: Recent Research Findings From the 2004 Prison Gang Survey," National Gang Crime Research Center, 2005; 67 pages. | |
| | NPL7 | Rey, R.F., ed., "Engineering and Operations in the Bell System," 2nd Edition, AT&T Bell Laboratories: Murray Hill, NJ, 1983. | |
| | NPL8 | Rosenberg, et al., "SIP: Session Initial Protocol," Network Working Group, Standard Track, June 2002; 269 pages. | |
| | NPL9 | U.S. Provisional Appl. No. 61/801,861, "Handheld Video Visitation," to TORGERSRUD, ET AL., filed March 15, 2013. | |
| | NPL10 | Winterdyk et al., "Managing Prison Gangs," Journal of Criminal Justice, Vol. 38, 2010; pp. 730-736. | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 02/23/2018 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

—

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 15/435,993 |
| | | | | Filing Date | February 10, 2017 |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | 2646 |
| | | | | Examiner Name | Taylor, Barry W. |
| Sheet | 2 | of | 2 | Attorney Docket Number | 3210.1280000 |

| NON PATENT LITERATURE DOCUMENTS | | | | |
|---|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume number, publisher, city and/or country where published | | T[2] |
| | NPL11 | U.S. Provisional Application No. 61/804,479, filed March 22, 2013. | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

8238307_1.docx

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 02/23/2018 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | **Complete if Known** | |
|---|---|---|---|---|---|
| **FIRST SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 15/435,993 |
| | | | | Filing Date | February 17, 2017 |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | 2646 |
| | | | | Examiner Name | Taylor, Barry W. |
| Sheet | 1 | of | 1 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 2011/0237226 A1 | 09-29-2011 | Dhuna | |
| | US2 | 2014/0108649 A1 | 04-17-2014 | Barton | |
| | US3 | 2017/0061006 A1 | 03-02-2017 | Hildebrand et al. | |
| | US4 | 2017/0084150 A1 | 03-23-2017 | Keyton | |
| | US5 | 2017/0193622 A1 | 07-06-2017 | Rosado | |
| | US6 | 5,255,306 | 10-19-1993 | Melton et al. | |
| | US7 | 6,054,928 | 04-25-2000 | Lemelson et al. | |
| | US8 | 7,587,067 B1 | 09-08-2009 | Schiller | |
| | US9 | 9,282,188 B2 | 03-08-2016 | Hodge et al. | |
| | US10 | 9,866,680 B2 | 01-09-2018 | Hodge et al. | |
| | US11 | 9,871,915 B2 | 01-16-2018 | Hodge et al. | |
| | US12 | 9,888,108 B2 | 02-06-2018 | Hodge et al. | |
| | US13 | 9,892,242 B1 | 02-13-2018 | Hodge | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

8997871_1.docx

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 31776133 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/William Flanigen |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 13-FEB-2018 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 16:01:14 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 32101280000_1SIDS.pdf | 462712 48f8998099fe20dccb282d81195e55307d190f92 | yes | 4 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Miscellaneous Incoming Letter | 1 | 1 |
| Transmittal Letter | 2 | 3 |
| Information Disclosure Statement (IDS) Form (SB08) | 4 | 4 |

| Warnings: | |
|---|---|
| Information: | |

| **Total Files Size (in bytes):** | 462712 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**LAUREN C. SCHLEH**
ASSOCIATE
(202) 772-8587
LSCHLEH@SKGF.COM

February 13, 2018

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

*Confirmation No. 1254*
*Art Unit 2646*
*Attn: Mail Stop Amendment*

Re:   U.S. Utility Patent Application
      Application No. 15/435,993; Filing Date: February 10, 2017
      For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
      Inventors: MARASS *et al.*
      Our Ref: 3210.1280000

Commissioner:

Transmitted herewith for appropriate action are the following documents:

1. First Supplemental Information Disclosure Statement; and

2. Form PTO/SB/08a (1 sheet) listing 13 documents (**US1-US13**).

In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

LCS/wcf
Enclosures

8997945_1.docx

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: Taylor, Barry W. |
| Filing Date: February 17, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

### First Supplemental Information Disclosure Statement

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Listed on accompanying IDS Form PTO/SB/08a equivalent are documents that may be considered material to the patentability of this application as defined in 37 C.F.R. §1.56, and in compliance with the duty of disclosure requirements of 37 C.F.R. §§ 1.97 and 1.98.

Applicant has listed publication dates on the attached IDS Form based on information presently available to the undersigned. However, the listed publication dates should not be construed as an admission that the information was actually published on the date indicated.

Applicant reserves the right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered.

This statement should not be construed as a representation that a search has been made, or that information more material to the examination of the present patent application does not exist. The Examiner is specifically requested not to rely solely on the material submitted herewith.

- 2 -

MARASS *et al.*
Application No. 15/435,993

Filing under 37 C.F.R. § 1.97(b). This Information Disclosure Statement is being filed within three months of the date of filing of a national application other than a continued prosecution application (CPA), OR within three months of the date of entry of the national stage as set forth in 37 C.F.R. § 1.491 in an international application, OR before the mailing date of a first Office Action on the merits OR before the mailing of a first Office Action after the filing of a request for continued examination under 37 C.F.R. § 1.114. No statement or fee is required.

In accordance with 37 C.F.R. § 1.98(a)(2)(ii), no copies of the U.S. patents and patent application publications cited as documents **US1-US13** on the attached IDS Form are submitted.

It is respectfully requested that the Examiner initial and return a copy of the enclosed IDS Form, and indicate in the official file wrapper of this patent application that the documents have been considered.

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date: _____

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

8997903_1.docx

Atty. Dkt. No. 3210.1280000

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 15/435,993 |
| | | | Filing Date | February 10, 2017 |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | 2646 |
| | | | Examiner Name | Taylor, Barry W. |
| Sheet | 1 | of | 5 | Attorney Docket Number | 3210.1280000 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 2002/0071537 A1 | 06-13-2002 | Gainsboro | |
| | US2 | 2003/0036381 A1 | 02-20-2003 | Nagashima | |
| | US3 | 2003/0086546 A1 | 05-08-2003 | Falcone et al. | |
| | US4 | 2003/0126470 A1 | 07-03-2003 | Crites et al. | |
| | US5 | 2003/0198325 A1 | 10-23-2003 | Bayne | |
| | US6 | 2003/0224764 A1 | 12-04-2003 | Baker | |
| | US7 | 2005/0265529 A1 | 12-01-2005 | Hogg, Jr. et al. | |
| | US8 | 2006/0062355 A1 | 03-23-2006 | Leonard | |
| | US9 | 2006/0176169 A1 | 08-10-2006 | Doolin et al. | |
| | US10 | 2007/0041545 A1 | 02-22-2007 | Gainsboro | |
| | US11 | 2007/0047694 A1 | 03-01-2007 | Bouchard et al. | |
| | US12 | 2007/0057763 A1 | 03-15-2007 | Blattner et al. | |
| | US13 | 2008/0057976 A1 | 03-06-2008 | Rae et al. | |
| | US14 | 2008/0200156 A1 | 08-21-2008 | Hicks et al. | |
| | US15 | 2009/0080629 A1 | 03-26-2009 | Rokosky et al. | |
| | US16 | 2010/0062833 A1 | 03-11-2010 | Mattice et al. | |
| | US17 | 2010/0189228 A1 | 07-29-2010 | Seyfetdinov | |
| | US18 | 2010/0260173 A1 | 10-14-2010 | Johnson | |
| | US19 | 2011/0158223 A1 | 06-30-2011 | Liu et al. | |
| | US20 | 2011/0213618 A1 | 09-01-2011 | Hodge et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 15/435,993 |
| | Filing Date | February 10, 2017 |
| | First Named Inventor | Jason MARASS |
| | Art Unit | 2646 |
| | Examiner Name | Taylor, Barry W. |
| Sheet | 2 | of | 5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US21 | 2012/0099714 A1 | 04-26-2012 | Hodge | |
| | US22 | 2012/0252411 A1 | 10-04-2012 | Johsgard et al. | |
| | US23 | 2012/0262271 A1 | 10-18-2012 | Torgersrud et al. | |
| | US24 | 2013/0179210 A1 | 07-11-2013 | Collins | |
| | US25 | 2013/0311364 A1 | 11-21-2013 | Shipman et al. | |
| | US26 | 2014/0032691 A1 | 01-30-2014 | Barton et al. | |
| | US27 | 2014/0044242 A1 | 02-13-2014 | Hodge et al. | |
| | US28 | 2014/0089849 A1 | 03-27-2014 | Choi et al. | |
| | US29 | 2014/0109174 A1 | 04-17-2014 | Barton et al. | |
| | US30 | 2014/0219432 A1 | 08-07-2014 | Bengston et al. | |
| | US31 | 2014/0267547 A1 | 09-18-2014 | Torgersrud et al. | |
| | US32 | 2014/0273929 A1 | 09-18-2014 | Torgersrud | |
| | US33 | 2014/0282868 A1 | 09-18-2014 | Sheller et al. | |
| | US34 | 2014/0287715 A1 | 09-25-2014 | Hodge et al. | |
| | US35 | 2015/0242629 A1 | 08-27-2015 | Lindo et al. | |
| | US36 | 2016/0055323 A1 | 02-25-2016 | Stuntebeck et al. | |
| | US37 | 2016/0066182 A1 | 03-03-2016 | Hodge et al. | |
| | US38 | 2016/0088021 A1 | 03-24-2016 | Jayanti Venkata et al. | |
| | US39 | 2016/0219146 A1 | 07-28-2016 | Hodge et al. | |
| | US40 | 2016/0267257 A1 | 09-15-2016 | Wisgo | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 15/435,993 |
| | | | Filing Date | February 10, 2017 |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | 2646 |
| | | | Examiner Name | Taylor, Barry W. |
| Sheet | 3 | of | 5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code [2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US41 | 2016/0330084 A1 | 11-10-2016 | Hunter et al. | |
| | US42 | 2016/0381212 A1 | 12-29-2016 | Hodge et al. | |
| | US43 | 2016/0381219 A1 | 12-29-2016 | Hodge et al. | |
| | US44 | 2016/0381556 A1 | 12-29-2016 | Hodge et al. | |
| | US45 | 2017/0208468 A1 | 07-20-2017 | Hodge et al. | |
| | US46 | 2017/0177892 A1 | 06-22-2017 | Tingstrom et al. | |
| | US47 | 4,495,386 | 01-22-1985 | Brown et al. | |
| | US48 | 5,896,556 | 04-20-1999 | Moreland et al. | |
| | US49 | 6,058,173 | 05-02-2000 | Penfield et al. | |
| | US50 | 6,668,045 B1 | 12-23-2003 | Mow | |
| | US51 | 6,965,590 B1 | 11-15-2005 | Schmidl et al. | |
| | US52 | 7,085,359 B2 | 08-01-2006 | Crites et al. | |
| | US53 | 7,106,843 B1 | 09-12-2006 | Gainsboro et al. | |
| | US54 | 7,218,993 B2 | 05-15-2007 | Yasukawa et al. | |
| | US55 | 7,254,708 B2 | 08-07-2007 | Silvester | |
| | US56 | 7,280,816 B2 | 10-09-2007 | Fratti et al. | |
| | US57 | 7,333,798 B2 | 02-19-2008 | Hodge | |
| | US58 | 7,366,782 B2 | 04-29-2008 | Chong et al. | |
| | US59 | 7,529,357 B1 | 05-05-2009 | Rae et al. | |
| | US60 | 7,742,581 B2 | 06-22-2010 | Hodge et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 15/435,993 |
| | Filing Date | February 10, 2017 |
| | First Named Inventor | Jason MARASS |
| | Art Unit | 2646 |
| | Examiner Name | Taylor, Barry W. |
| Sheet | 4 | of | 5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US61 | 7,804,941 B2 | 09-28-2010 | Keiser et al. | |
| | US62 | 7,860,222 B1 | 12-28-2010 | Sidler et al. | |
| | US63 | 7,899,167 B1 | 03-01-2011 | Rae | |
| | US64 | 8,019,354 B2 | 09-13-2011 | Rae et al. | |
| | US65 | 8,031,052 B2 | 10-04-2011 | Polozola | |
| | US66 | 8,370,206 B2 | 02-05-2013 | Collins | |
| | US67 | 8,428,559 B2 | 04-23-2013 | Silva | |
| | US68 | 8,498,937 B1 | 07-30-2013 | Shipman, Jr. et al. | |
| | US69 | 8,571,525 B2 | 10-29-2013 | Weinstein et al. | |
| | US70 | 8,639,926 B2 | 01-28-2014 | Brown et al. | |
| | US71 | 8,646,056 B2 | 02-04-2014 | Poplett | |
| | US72 | 8,917,848 B2 | 12-23-2014 | Torgersrud et al. | |
| | US73 | 9,094,500 B1 | 07-28-2015 | Edwards | |
| | US74 | 9,124,763 B2 | 09-01-2015 | Humphries | |
| | US75 | 9,232,051 B2 | 01-05-2016 | Torgersrud et al. | |
| | US76 | 9,262,604 B2 | 02-16-2016 | Kimbrell | |
| | US77 | 9,307,386 B2 | 04-05-2016 | Hodge et al. | |
| | US78 | 9,614,954 B2 | 04-04-2017 | Hodge et al. | |
| | US79 | 9,614,955 B2 | 04-04-2017 | Hodge et al. | |
| | US80 | 9,661,128 B2 | 05-23-2017 | Hodge et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | **Complete if Known** | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | 15/435,993 |
| | | | Filing Date | February 10, 2017 |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | 2646 |
| | | | Examiner Name | Taylor, Barry W. |
| Sheet | 5 | of 5 | Attorney Docket Number | 3210.1280000 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code [2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US81 | 9,674,338 B2 | 06-06-2017 | Hodge et al. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

8238306_1.docx

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | 15/435,993 |
| | Filing Date | February 10, 2017 |
| | First Named Inventor | Jason MARASS |
| | Art Unit | 2646 |
| | Examiner Name | Taylor, Barry W. |
| Sheet  1  of  2 | Attorney Docket Number | 3210.1280000 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published | $T^2$ |
| | NPL1 | "Criminal Calls: A Review of the Bureau of Prisons' Management of Inmate Telephone Privileges," U.S. Department of Justice, Office of the Inspector General, August 1999. | |
| | NPL2 | European Search Report and Opinion directed to European Patent Application No. 14769931.8, dated October 26, 2016; 10 pages. | |
| | NPL3 | File History of U.S. Patent No. 9,094,500, Appl. No. 14/322,869, filed July 2, 2014. | |
| | NPL4 | File History of U.S. Patent No. 9,307,386, Appl. No. 13/946,637, filed July 19, 2013. | |
| | NPL5 | International Search Report and Written Opinion of the International Searching Authority, directed to related International Patent Application No. PCT/US14/31339, mailed November 6, 2014; 19 pages. | |
| | NPL6 | Knox, "The Problem of Gangs and Security Threat Groups (STG's) in American Prisons Today: Recent Research Findings From the 2004 Prison Gang Survey," National Gang Crime Research Center, 2005; 67 pages. | |
| | NPL7 | Rey, R.F., ed., "Engineering and Operations in the Bell System," 2nd Edition, AT&T Bell Laboratories: Murray Hill, NJ, 1983. | |
| | NPL8 | Rosenberg, et al., "SIP: Session Initial Protocol," Network Working Group, Standard Track, June 2002; 269 pages. | |
| | NPL9 | U.S. Provisional Appl. No. 61/801,861, "Handheld Video Visitation," to TORGERSRUD, ET AL., filed March 15, 2013. | |
| | NPL10 | Winterdyk et al., "Managing Prison Gangs," Journal of Criminal Justice, Vol. 38, 2010; pp. 730-736. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | 15/435,993 |
| | | | | Filing Date | February 10, 2017 |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | 2646 |
| | | | | Examiner Name | Taylor, Barry W. |
| Sheet | 2 | of | 2 | Attorney Docket Number | 3210.1280000 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume number, publisher, city and/or country where published | T[2] |
| | NPL11 | U.S. Provisional Application No. 61/804,479, filed March 22, 2013. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

8238307_1.docx

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

# PATENT COOPERATION TREATY

From the INTERNATIONAL SEARCHING AUTHORITY

RECEIVED

NOV 10 2014

Sterne, Kessler, Goldstein & Fox
P.L.L.C.

## PCT

To: Michael D. Specht
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Avenue, NW
Washington, DC 20005
United States of America

NOTIFICATION OF TRANSMITTAL OF
THE INTERNATIONAL SEARCH REPORT AND
THE WRITTEN OPINION OF THE INTERNATIONAL
SEARCHING AUTHORITY, OR THE DECLARATION

(PCT Rule 44.1)

| Date of mailing *(day/month/year)* | 06 NOV 2014 |
|---|---|

| Applicant's or agent's file reference | |
|---|---|
| 3210.037PC01 | **FOR FURTHER ACTION**   See paragraphs 1 and 4 below |

| International application No. | International filing date *(day/month/year)* |
|---|---|
| PCT/US14/31339 | 20 March 2014 (20.03.2014) |

| Applicant | Global Tel*Link Corp. |
|---|---|

1. ☒ The applicant is hereby notified that the international search report and the written opinion of the International Searching Authority have been established and are transmitted herewith.

 **Filing of amendments and statement under Article 19:**
 The applicant is entitled, if he so wishes, to amend the claims of the international application (see Rule 46):
 **When?** The time limit for filing such amendments is normally two months from the date of transmittal of the international search report.
 **How?** Directly to the International Bureau of WIPO preferably through ePCT or on paper to, 34 chemin des Colombettes 1211 Geneva 20, Switzerland, Facsimile No.: +41 22 338 82 70
 **For more detailed instructions,** see *PCT Applicant's Guide*, International Phase, paragraphs 9.004 – 9.011.

2. ☐ The applicant is hereby notified that no international search report will be established and that the declaration under Article 17(2)(a) to that effect and the written opinion of the International Searching Authority are transmitted herewith.

3. ☐ **With regard to any protest** against payment of (an) additional fee(s) under Rule 40.2, the applicant is notified that:

 ☐ the protest together with the decision thereon has been transmitted to the International Bureau together with any request to forward the texts of both the protest and the decision thereon to the designated Offices.

 ☐ no decision has been made yet on the protest; the applicant will be notified as soon as a decision is made.

4. **Reminders**

 The applicant may **submit comments on an informal basis on the written opinion of the International Searching Authority** to the International Bureau. These comments will be made available to the public after international publication. The International Bureau will send a copy of such comments to all designated Offices unless an international preliminary examination report has been or is to be established.

 Shortly after the expiration of **18 months from the priority date, the international application will be published** by the International Bureau. If the applicant wishes to avoid or postpone publication, a notice of withdrawal of the international application, or of the priority claim, must reach the International Bureau before the completion of the technical preparations for international publication (Rules 90*bis*.1 and 90*bis*.3).

 Within **19 months** from the priority date, but only in respect of some designated Offices, a demand for international preliminary examination must be filed if the applicant wishes to postpone the entry into the national phase **until 30 months** from the priority date (in some Offices even later); otherwise, the applicant must, **within 20 months** from the priority date, perform the prescribed acts for **entry into the national phase** before those designated Offices. In respect of other designated Offices, the time limit of **30 months** (or later) will apply even if no demand is filed within 19 months. For details about the applicable time limits, Office by Office, see www.wipo.int/pct/en/texts/time_limits.html and the *PCT Applicant's Guide*, National Chapters.

 Within **19 months from the priority date, the applicant may request that a supplementary international search be carried out** by a different International Searching Authority that offers this service (Rule 45*bis*.1). The procedure for requesting supplementary international search is described in the *PCT Applicant's Guide*, International Phase, paragraphs 8.006-8.032.

| Name and mailing address of the ISA/ | Authorized officer |
|---|---|
| Mail Stop PCT, Attn: ISA/US Commissioner for Patents P.O. Box 1450, Alexandria, Virginia 22313-1450 | Shane Thomas |
| Facsimile No. 571-273-3201 | Telephone No. PCT Helpdesk: 571-272-4300 PCT OSP: 571-272-7774 |

Form PCT/ISA/220 (July 2014)

## PATENT COOPERATION TREATY

# PCT

### INTERNATIONAL SEARCH REPORT

(PCT Article 18 and Rules 43 and 44)

| Applicant's or agent's file reference 3210.037PC01 | **FOR FURTHER ACTION** | see Form PCT/ISA/220 as well as, where applicable, item 5 below. |
|---|---|---|
| International application No. PCT/US14/31339 | International filing date *(day/month/year)* 20 March 2014 (20.03.2014) | (Earliest) Priority Date *(day/month/year)* 22 March 2013 (22.03.2013) |
| Applicant Global Tel*Link Corp. | | |

This international search report has been prepared by this International Searching Authority and is transmitted to the applicant according to Article 18. A copy is being transmitted to the International Bureau.

This international search report consists of a total of ☐ **4** sheets.

☐ It is also accompanied by a copy of each prior art document cited in this report.

1. **Basis of the report**
    a. With regard to the **language**, the international search was carried out on the basis of:
        ☒ the international application in the language in which it was filed.
        ☐ a translation of the international application into _____ which is the language of a translation furnished for the purposes of international search (Rules 12.3(a) and 23.1(b)).
    b. ☐ This international search report has been established taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rule 43.6*bis*(a)).
    c. ☐ With regard to any **nucleotide and/or amino acid sequence** disclosed in the international application, see Box No. I.

2. ☐ **Certain claims were found unsearchable** (see Box No. II).

3. ☒ **Unity of invention is lacking** (see Box No. III).

4. With regard to the **title**,
    ☒ the text is approved as submitted by the applicant.
    ☐ the text has been established by this Authority to read as follows:

5. With regard to the **abstract**,
    ☒ the text is approved as submitted by the applicant.
    ☐ the text has been established, according to Rule 38.2, by this Authority as it appears in Box No. IV. The applicant may, within one month from the date of mailing of this international search report, submit comments to this Authority.

6. With regard to the **drawings**,
    a. the figure of the **drawings** to be published with the abstract is Figure No. 1 _____
        ☐ as suggested by the applicant.
        ☐ as selected by this Authority, because the applicant failed to suggest a figure.
        ☒ as selected by this Authority, because this figure better characterizes the invention.
    b. ☐ none of the figures is to be published with the abstract.

Form PCT/ISA/210 (first sheet) (July 2009)

**INTERNATIONAL SEARCH REPORT**

| International application No. |
| --- |
| PCT/US14/31339 |

---

**Box No. II     Observations where certain claims were found unsearchable (Continuation of item 2 of first sheet)**

This international search report has not been established in respect of certain claims under Article 17(2)(a) for the following reasons:

1. ☐ Claims Nos.:
   because they relate to subject matter not required to be searched by this Authority, namely:

2. ☐ Claims Nos.:
   because they relate to parts of the international application that do not comply with the prescribed requirements to such an extent that no meaningful international search can be carried out, specifically:

3. ☐ Claims Nos.:
   because they are dependent claims and are not drafted in accordance with the second and third sentences of Rule 6.4(a).

---

**Box No. III     Observations where unity of invention is lacking (Continuation of item 3 of first sheet)**

This International Searching Authority found multiple inventions in this international application, as follows:

This application contains the following inventions or groups of inventions which are not so linked as to form a single general inventive concept under PCT Rule 13.1. In order for all inventions to be examined, the appropriate additional examination fee must be paid.

Group I: Claims 1-7 are directed toward a system for providing communication services to a wireless communication device.

Group II: Claims 8-14 are directed toward a wireless communication device for use in a controlled environment.

Group III: Claims 15-20 are directed toward a method for providing communication services to a wireless communication device over an internet protocol.

The inventions listed as Groups I-III do not relate to a single general inventive concept under PCT Rule 13.1 because, under PCT Rule 13.2, they lack the same or corresponding special technical features for the following reasons:
-***-See Supplemental Page-***-

1. ☐ As all required additional search fees were timely paid by the applicant, this international search report covers all searchable claims.

2. ☐ As all searchable claims could be searched without effort justifying additional fees, this Authority did not invite payment of additional fees.

3. ☐ As only some of the required additional search fees were timely paid by the applicant, this international search report covers only those claims for which fees were paid, specifically claims Nos.:

4. ☒ No required additional search fees were timely paid by the applicant.  Consequently, this international search report is restricted to the invention first mentioned in the claims;  it is covered by claims Nos.:
   1-7

**Remark on Protest**       ☐ The additional search fees were accompanied by the applicant's protest and, where applicable, the payment of a protest fee.

☐ The additional search fees were accompanied by the applicant's protest but the applicable protest fee was not paid within the time limit specified in the invitation.

☐ No protest accompanied the payment of additional search fees.

Form PCT/ISA/210 (continuation of first sheet (2)) (July 2009)

## INTERNATIONAL SEARCH REPORT

| | International application No. |
|---|---|
| | PCT/US14/31339 |

| A. | CLASSIFICATION OF SUBJECT MATTER |
|---|---|

IPC(8) -  H04M 1/66, 3/22; H04W 4/24 (2014.01)
USPC -  370/338, 379/196, 142.05
According to International Patent Classification (IPC) or to both national classification and IPC

| B. | FIELDS SEARCHED |
|---|---|

Minimum documentation searched (classification system followed by classification symbols)
IPC (8): H04L 12/66; H04M 1/66, 3/22; H04W 4/24, 88/10 (2014.01); USPC: 370/338, 352, 379/88.17, 88.19, 242, 114.01, 142.05, 196, 197; 709219; CPC Classification(s): H04L 12/66, H04M 3/38, H04W 88/10

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)
MicroPatent (US-G, US-A, EP-A, EP-B, WO, JP-bib, DE-C,B, DE-A, DE-T, DE-U, GB-A, FR-A); DialogPRO; IEEE; Google/Google Scholar; KEYWORDS: call restrict*, authenticat*, authorit*, wireless device, call processing center, server, wireless access point, internet protocol, PSTN, public switched telephone network,

| C. | DOCUMENTS CONSIDERED TO BE RELEVANT |
|---|---|

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X ------- Y | US 2008/0057976 A1 (RAE, RL et al.) 06 March 2008; abstract, Figures 1-4, paragraphs [0012], [0014], [0018]-[0022], [0025], [0036], [0039]-[0040], [0052]-[0058], [0061], [0064] and [0065] | 1, 6, 7 ------- 2-5 |
| Y | US 2012/0099714 A1 (HODGE, S) 26 April 2012; abstract and paragraphs [0034], [0036] and [0317] | 2-5 |
| P,Y | US 2014/0219432 A1 (BENGSTON, S et al.) 7 August 2014; figures 1-10 and paragraphs [0082]-[0086] | 1-7 |
| A | US 2008/0200156 A1 (HICKS, M et al.) 21 August 2008; figure 1 and paragraphs [0012], [0013] and [0017] | 6-7 |
| A | US 7860222 B1 (SIDLER, J et al.) 28 December 2010; figures 1, 2 and 6B and column 6, lines 45-54; column 8, line 37 to column 9, line 9; column 10, lines 1-29; column 11, lines 49-61; column 25, line 47 to column 26, line 28 | 1-7 |
| A | US 2003/0224764 A1 (BAKER, N) 4 December 2003; figure 2, paragraphs [0018] and [0019] | 1-7 |
| A | US 2005/0265529 A1 (HOGG, J et al.) 1 December 2005; figure 1 and paragraph [0029] | 1-7 |

☐  Further documents are listed in the continuation of Box C.  ☐

| * | Special categories of cited documents: | "T" | later document published after the international filing date or priority |
|---|---|---|---|
| "A" | document defining the general state of the art which is not considered to be of particular relevance | | date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
| "E" | earlier application or patent but published on or after the international filing date | "X" | document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "L" | document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) | "Y" | document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination |
| "O" | document referring to an oral disclosure, use, exhibition or other means | | being obvious to a person skilled in the art |
| "P" | document published prior to the international filing date but later than the priority date claimed | "&" | document member of the same patent family |

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 22 August 2014 (22.08.2014) | 0 6 NOV 2014 |

| Name and mailing address of the ISA/US | Authorized officer: |
|---|---|
| Mail Stop PCT, Attn: ISA/US, Commissioner for Patents P.O. Box 1450, Alexandria, Virginia 22313-1450 Facsimile No.   571-273-3201 | Shane Thomas PCT Helpdesk: 571-272-4300 PCT OSP: 571-272-7774 |

Form PCT/ISA/210 (second sheet) (July 2009)

INTERNATIONAL SEARCH REPORT

| | International application No. |
|---|---|
| | PCT/US14/31339 |

-***-Continued from Box III: Lack of Unity of Invention-***-
The special technical features of Group I include a wireless access point communicatively coupled to the central processor and configured to facilitate communication between the wireless communication device and the central processing center, which are not present in Groups II and III.

The special technical features of Group II include a communication module configured to limit wireless communication to the wireless communication device over an internet protocol; and to lock the device upon a failed authentication; and a monitoring module coupled to at least one sensor, the monitoring module configured to receive sensed environment information from the at least one sensor and at least one of analyze and store the environment information, which are not present in Groups I and III.

The special technical features of Group III include facilitating communication between the wireless communication device and the central processing center using an internet protocol, which is not present in Groups I and II.

The common technical features shared by Groups I-III are a wireless communication device; processing call information from the wireless communication device, wherein the processing includes: processing payment for the call; performing call restriction processing on the call; and authenticating at least one of the wireless communication device and a caller; facilitating communication between the wireless communication device and a central processing center; and wherein communication occurs over an internet protocol.

However, these common features are previously disclosed by US 2011/0158223 A1 to Liu, G et al. (hereinafter 'Liu'). Liu discloses a wireless communication device (user communication device 100 may be a wireless phone, paragraph [0030]); processing call information from the wireless communication device, wherein the processing includes: processing payment for the call (processing entity may accept payment information for an outgoing toll call, paragraph [0069]); performing call restriction processing on the call (processing entity may convey a call authorization message based on call restrictions, paragraph [0065]); and authenticating at least one of the wireless communication device and a caller (processing entity may enable authorization by authenticating the user using biometric methods, paragraph [0065]); facilitating communication between the wireless communication device and a central processing center (processing entity established a media connection with the source device, which may be communication device 100, figures 1 and 2; paragraphs [0038] and [0065]); and wherein communication occurs over an internet protocol (processing entity communicates over IP network 130, figure 2; paragraphs [0034]-[0035]).

Since the common technical features are previously disclosed by the Liu reference, these common features are not special and so Groups I-III lack unity.

Form PCT/ISA/210 (extra sheet) (July 2009)

# PATENT COOPERATION TREATY

From the
INTERNATIONAL SEARCHING AUTHORITY

To: Michael D. Specht
Sterne, Kessler, Goldstein & Fox PLLC
1100 New York Avenue, NW
Washington, DC 20005
United States of America

# PCT

WRITTEN OPINION OF THE
INTERNATIONAL SEARCHING AUTHORITY

(PCT Rule 43*bis*.1)

| | |
|---|---|
| | Date of mailing *(day/month/year)* **06 NOV 2014** |
| Applicant's or agent's file reference<br>3210.037PC01 | **FOR FURTHER ACTION**<br>See paragraph 2 below |

| International application No.<br>PCT/US14/31339 | International filing date *(day/month/year)*<br>20 March 2014 (20.03.2014) | Priority date *(day/month/year)*<br>22 March 2013 (22.03.2013) |
|---|---|---|

International Patent Classification (IPC) or both national classification and IPC
IPC(8) - H04M 1/66, 3/22; H04W 4/24 (2014.01)
USPC - 370/338, 379/196, 142.05

Applicant Global Tel*Link Corp.

---

1. This opinion contains indications relating to the following items:

   ☒ Box No. I       Basis of the opinion

   ☐ Box No. II      Priority

   ☐ Box No. III     Non-establishment of opinion with regard to novelty, inventive step and industrial applicability

   ☒ Box No. IV      Lack of unity of invention

   ☒ Box No. V       Reasoned statement under Rule 43*bis*.1(a)(i) with regard to novelty, inventive step or industrial applicability;
                      citations and explanations supporting such statement

   ☒ Box No. VI      Certain documents cited

   ☐ Box No. VII     Certain defects in the international application

   ☐ Box No. VIII    Certain observations on the international application

2. **FURTHER ACTION**

   If a demand for international preliminary examination is made, this opinion will be considered to be a written opinion of the
   International Preliminary Examining Authority ("IPEA") except that this does not apply where the applicant chooses an Authority
   other than this one to be the IPEA and the chosen IPEA has notified the International Bureau under Rule 66.1*bis*(b) that written
   opinions of this International Searching Authority will not be so considered.

   If this opinion is, as provided above, considered to be a written opinion of the IPEA, the applicant is invited to submit to the IPEA
   a written reply together, where appropriate, with amendments, before the expiration of 3 months from the date of mailing of Form
   PCT/ISA/220 or before the expiration of 22 months from the priority date, whichever expires later.

   For further options, see Form PCT/ISA/220.

| Name and mailing address of the ISA/US<br>Mail Stop PCT, Attn: ISA/US<br>Commissioner for Patents<br>P.O. Box 1450, Alexandria, Virginia 22313-1450<br>Facsimile No. 571-273-3201 | Date of completion of this opinion<br>22 August 2014 (22.08.2014) | Authorized officer:<br>Shane Thomas<br><br>PCT Helpdesk: 571-272-4300<br>PCT OSP: 571-272-7774 |
|---|---|---|

Form PCT/ISA/237 (cover sheet) (July 2011)

**WRITTEN OPINION OF THE**
**INTERNATIONAL SEARCHING AUTHORITY**

International application No.

PCT/US14/31339

| Box No. I | Basis of this opinion |
| --- | --- |

1. With regard to the **language**, this opinion has been established on the basis of:

   ☒ the international application in the language in which it was filed.

   ☐ a translation of the international application into _____ which is the language of a translation furnished for the purposes of international search (Rules 12.3(a) and 23.1(b)).

2. ☐ This opinion has been established taking into account the **rectification of an obvious mistake** authorized by or notified to this Authority under Rule 91 (Rule 43 *bis*.1(a))

3. With regard to any **nucleotide and/or amino acid sequence** disclosed in the international application, this opinion has been established on the basis of a sequence listing filed or furnished:

   a. (means)

   ☐ on paper

   ☐ in electronic form

   b. (time)

   ☐ in the international application as filed

   ☐ together with the international application in electronic form

   ☐ subsequently to this Authority for the purposes of search

4. ☐ In addition, in the case that more than one version or copy of a sequence listing has been filed or furnished, the required statements that the information in the subsequent or additional copies is identical to that in the application as filed or does not go beyond the application as filed, as appropriate, were furnished.

5. Additional comments:

Form PCT/ISA/237 (Box No. I) (July 2011)

**WRITTEN OPINION OF THE**
**INTERNATIONAL SEARCHING AUTHORITY**

| International application No. |
| --- |
| PCT/US14/31339 |

| Box No. IV | Lack of unity of invention |
| --- | --- |

1. ☒ In response to the invitation (Form PCT/ISA/206) to pay additional fees the applicant has, within the applicable time limit:

    ☐   paid additional fees

    ☐   paid additional fees under protest and, where applicable, the protest fee

    ☐   paid additional fees under protest but the applicable protest fee was not paid

    ☒   not paid additional fees

2. ☐ This Authority found that the requirement of unity of invention is not complied with and chose not to invite the applicant to pay additional fees.

3. This Authority considers that the requirement of unity of invention in accordance with Rule 13.1, 13.2 and 13.3 is

    ☐   complied with

    ☒   not complied with for the following reasons:

This application contains the following inventions or groups of inventions which are not so linked as to form a single general inventive concept under PCT Rule 13.1. In order for all inventions to be examined, the appropriate additional examination fee must be paid.

Group I: Claims 1-7 are directed toward a system for providing communication services to a wireless communication device.

Group II: Claims 8-14 are directed toward a wireless communication device for use in a controlled environment.

Group III: Claims 15-20 are directed toward a method for providing communication services to a wireless communication device over an internet protocol.

The inventions listed as Groups I-III do not relate to a single general inventive concept under PCT Rule 13.1 because, under PCT Rule 13.2, they lack the same or corresponding special technical features for the following reasons:

The special technical features of Group I include a wireless access point communicatively coupled to the central processor and configured to facilitate communication between the wireless communication device and the central processing center, which are not present in Groups II and III.

The special technical features of Group II include a communication module configured to limit wireless communication to the wireless communication device over an internet protocol; and to lock the device upon a failed authentication; and a monitoring module coupled to at least one sensor, the monitoring module configured to receive sensed environment information from the at least one sensor and at least one of analyze and store the environment information, which are not present in Groups I and III.

The special technical features of Group III include facilitating communication between the wireless communication device and the central processing center using an internet protocol, which is not present in Groups I and II.

The common technical features shared by Groups I-III are a wireless communication device; processing call information from the wireless communication device, wherein the processing includes: processing payment for the call; performing call restriction processing on the call; and authenticating at least one of the wireless communication device and a caller; facilitating communication between the wireless communication device and a central processing center; and wherein communication occurs over an internet protocol.

However, these common features are previously disclosed by US-2011/0158223 A1 to Liu, G et al. (hereinafter 'Liu'). Liu discloses a wireless communication device (user communication device 100 may be a wireless phone, paragraph [0030]); processing call information from the wireless communication device, wherein the processing includes: processing payment for the call (processing entity may accept payment information for an outgoing toll call, paragraph [0069]); performing call restriction processing on the call (processing entity may convey a call authorization message based on call restrictions, paragraph [0065]); and authenticating at least one of the wireless communication device and a caller (processing entity may enable authorization by authenticating the user using biometric methods, paragraph [0065]); facilitating communication between the wireless communication device and a central processing center (processing entity established a media connection with the source device, which may be communication device 100, figures 1 and 2; paragraphs [0038] and [0065]); and wherein communication occurs over an internet protocol (processing entity communicates over IP network 130, figure 2; paragraphs [0034]-[0035]).

Since the common technical features are previously disclosed by the Liu reference, these common features are not special and so Groups I-III lack unity.

4. Consequently, this opinion has been established in respect of the following parts of the international application:

    ☐   all parts

    ☒   the parts relating to claims Nos. 1-7

Form PCT/ISA/237 (Box No. IV) (July 2011)

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. |
|---|---|
| | PCT/US14/31339 |

| Box No. V | Reasoned statement under Rule 43*bis*.1(a)(i) with regard to novelty, inventive step or industrial applicability; citations and explanations supporting such statement |
|---|---|

1.    Statement

| | | | | |
|---|---|---|---|---|
| Novelty  (N) | Claims | 2-5 | | YES |
| | Claims | 1, 6, 7 | | NO |
| Inventive step  (IS) | Claims | NONE | | YES |
| | Claims | 1-7 | | NO |
| Industrial applicability  (IA) | Claims | 1-7 | | YES |
| | Claims | NONE | | NO |

2.    Citations and explanations:

Claims 1, 6 and 7 lack novelty under PCT Article 33(2) as being anticipated by US 2008/0057976 A1, to Rae, Robert, L. et al. (hereinafter 'Rae').

As per Claim 1, Rae disclose a system for providing communication services to a wireless communication device (a system for facilitating and controlling wireless communication of wireless devices within a controlled environment facility; abstract); the system comprising: a central processing center configured to process call information from the wireless communication device (information processing platform (processing center) for processing call information from the wireless communication devices; figures 2, 3A and 3B; paragraph [0014]); wherein the processing of the call information includes: processing payment for the call, performing call restriction processing on the call and authenticating at least one of the wireless communication device and a caller (verifying an account available for billing the call, verifying the caller is on allowed or non-allowed list and validating (authenticating) the caller by PIN; figures 2, 3A and 3B; paragraphs [0052]-[0058], [0061]); a wireless access point communicatively coupled to the central processor and configured to facilitate communication between the wireless communication device and the central processing center (a wireless access point providing communication interfacing between wireless devices and information processing platform (processing center); abstract; figures 2, 3A, 3B and 4;paragraphs [0012], [0018]-[0022], [0047]); and a server coupled to the central processing center configured to provide database support for the processing of the call information (the information processing platform may be provided in a distributed topology, such as having server system and database for call information; figures 1111; paragraphs [0039], [0040]).

As per claim 6, Rae discloses system of claim 1, additionally Rae discloses wherein the wireless access point is configured to communicate with the wireless communication device using an internet protocol. (the wireless access point provides communication interfacing between the information processing platform and wireless devices utilizing all communication protocol, the platform identifies the wireless devices by using its IP address (the wireless access point communicates with wireless devices by IP protocol) figures 1, 2, 3A, 3B, 4; paragraphs [0025], [0055], [0064] and [0065]).

As per claim 7, Rae discloses system of claim 6, additionally Rae discloses wherein the wireless access point configured to convert communications received from the wireless communication device from the internet protocol to a telephone protocol capable of being processed by the central processing center. (the wireless access point provides communication interfacing between the information processing platform and wireless devices utilizing all communication protocol, the platform identifies the wireless devices by using its IP address (the wireless access point communicates with wireless devices by IP protocol), furthermore the wireless access point may communicate with the information platform via a PSTN network 130 (converts internet protocol into PSTN protocol), communicating with the wireless device by using a internet network and wireless access point; figures 1, 2, 3A, 3B, 4; paragraphs [0025], [0036], [0055], [0064] and [0065]).

Claims 2-5 lack an inventive step under PCT Article 33(3) as being obvious over Rae in view of US 2012/0099714 A1 to Hodge, Stephen Lee. (hereinafter 'Hodge').

As per claim 2, Rae discloses the system of claim 1. Rae does not disclose wherein the authenticating includes: receiving identifying information associated with the caller and matching the received identifying information with identification information previously stored in the server. Hodge discloses wherein the authenticating includes: receiving identifying information associated with the caller and matching the received identifying information with previously stored information in a database (comparing received personal identification information with information stored in a database; paragraph [0036]). It would have been obvious to a person of ordinary skill in the art, at the time of the invention, to have modified the system of Rae to include wherein the authenticating includes: receiving identifying information associated with the caller and matching the received identifying information with identification information previously stored in the server, as taught in Hodge, because by doing so, the system of Rae would provide more reliable system for authenticating the caller.

As per claim 3, a combination of Rae and Hodge discloses the system of claim 2. Rae does not disclose wherein the receiving identifying information includes prompting the caller for a personal identification number. Hodge further discloses wherein the receiving identifying information includes prompting the caller for a personal identification number (the system prompts the user to enter a user-specific personal identification number, paragraph [0036]). It would have been obvious to a person of ordinary skill in the art, at the time of the invention, to have modified the system of Rae to include wherein the receiving identifying information includes prompting the caller for a personal identification number, as taught in Hodge, because by doing so, the system of Rae would provide more reliable system for authenticating the caller.
-***-Continued Within the Next Supplemental Box-***-

Form PCT/ISA/237 (Box No. V) (July 2011)

<table>
<tr><td colspan="2">**WRITTEN OPINION OF THE<br>INTERNATIONAL SEARCHING AUTHORITY**</td><td>International application No.<br><br>PCT/US14/31339</td></tr>
</table>

| Box No. VI | Certain documents cited |
|---|---|

1.   Certain published documents (Rules 43bis.1 and 70.10)

| Application No.<br>Patent No. | Publication date<br>*(day/month/year)* | Filing date<br>*(day/month/year)* | Priority date (valid claim)<br>*(day/month/year)* |
|---|---|---|---|
| US 2014/0219432 A1 | 7/8/2014 | 20/12/2013 | 21/12/2012 |

2.   Non-written disclosures (Rules 43bis.1 and 70.9)

| Kind of non-written disclosure | Date of non-written disclosure<br>*(day/month/year)* | Date of written disclosure<br>referring to non-written disclosure<br>*(day/month/year)* |
|---|---|---|

Form PCT/ISA/237 (Box No. VI) (July 2011)

| WRITTEN OPINION OF THE INTERNATIONAL SEARCHING AUTHORITY | International application No. PCT/US14/31339 |
|---|---|

## Supplemental Box

In case **the space in any of the preceding boxes is not sufficient.**
Continuation of:
-***-Continued from Box V: Citations and Explanations-***-
As per claim 4, a combination of Rae and Hodge discloses the system of claim 2. Rae does not disclose wherein the receiving identifying information includes receiving biometric information of the caller from the wireless communication device. Hodge further discloses wherein the receiving identifying information includes receiving biometric information of the caller from the wireless communication device (system may use biometric authentication by receiving information from a biometric scanner, paragraph [0319]). It would have been obvious to a person of ordinary skill in the art, at the time of the invention, to have modified the system of Rae to include wherein the receiving identifying information includes receiving biometric information of the caller from the wireless communication device, as taught in Hodge, because by doing so, the system of Rae would provide more reliable system for authenticating the caller.

As per claim 5, a combination of Rae and Hodge discloses the system of claim 2. Rae does not disclose wherein the processing of payment includes: accessing a Debit Account stored on the server that is associated with the authenticated caller; verifying that the Debit Account includes sufficient funds for placing the call; and deducting the payment from the Debit Account. Hodge further discloses wherein the processing of payment includes: accessing a Debit Account stored on the server that is associated with the authenticated caller; verifying that the Debit Account includes sufficient funds for placing the call; and deducting the payment from the Debit Account (verifying the balance of a debit account of the caller and the amount of the call is subtracted from the account after its completion, paragraphs [0034]). It would have been obvious to a person of ordinary skill in the art, at the time of the invention, to have modified the system of Rae to include wherein the processing of payment includes: accessing a Debit Account stored on the server that is associated with the authenticated caller; verifying that the Debit Account includes sufficient funds for placing the call; and deducting the payment from the Debit Account, as taught in Hodge, because by doing so, the system of Rae would provide a more flexible payment for the caller.

Claims 1-7 have industrial applicability as defined by PCT Article 33(4) because the subject matter can be made or used in industry.

# PCT Recordation of Search History

Case/PCT Application Number: PCT/US14/31339

CLIN Number/Technical Field of PCT Application: 5

Date(s) during which the search was conducted: August 14, 2014 to August 22, 2014

Date of Completion of Recordation of Search History Form: August 22, 2014

Research Analyst Initials: ZJR

Search Approval Official (SAO) Initials: CEH

## Field of Search/Classification Information:

IPC(8) Classification(s): H04M 1/66, 3/22; H04W 4/24 (2014.01)

USPC Classification(s): 370/338, 379/196, 142.05

CPC Classification(s): H04L 12/66, H04M 3/38, H04W 88/10

## Database(s) Searched (Patent and Non-Patent Literature (NPL), Including Sub-Databases and Files Searched) and Search Terms Used:

MicroPatent (US-G, US-A, EP-A, EP-B, WO, JP-bib, DE-C,B, DE-A, DE-T, DE-U, GB-A, FR-A); DialogPRO; IEEE; Google/Google Scholar; KEYWORDS: call restrict*, authenticat*, authorit*, wireless device, call processing center, server, wireless access point, internet protocol, PSTN, public switched telephone network,

## Database Search String Recordation, Including Dates of Searches):

## Patent Database Search Strategy/Results:

| results | criteria | | last run |
|---|---|---|---|
| 233 hits | Any Classification | H04L001266 or H04M000166 or H04M000322 or H04W000424 or H04W008810 | 2014-08-22 |

| | | | |
|---|---|---|---|
| | Full patent spec. | (call* or *communicat*) near5 (restrict* or safe adj guard* or safe*guard* or auth* or verif* or valid*) same (server* or central* or call* near5 (process* or control* or manag* or auth*) near5 (unit* or system* or platform* or apparatus* or device* or equipment* or node*1 or entit*) or local* near5 (switch* or *exchang*) or center*) and (access*point* or (W*LAN or wireless*) adj5 (node*1 or gateway* or beacon* or router*) or access* adj2 point* or hot*spot* or hot adj spot* or e*node*2 or femto*cell*1 or micro*cell* or pico*cell or AP or APs or WAP) same (internet* or VO*IP or packet* adj switch* or IP) same (PSTN or public* adj2 switch* adj3 network*) | |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 532 hits | Any Classification | H04L001266 or H04M000166 or H04M000322 or H04W000424 or H04W008810 | 2014-08-22 |
| | Full patent spec. | (call* or *communicat*) near5 (restrict* or safe adj guard* or safe*guard* or auth* or verif* or valid*) and (central* or call* near5 (process* or control* or manag* or auth*) near5 (unit* or system* or platform* or apparatus* or device* or equipment* or node*1 or entit*) or local* near5 (switch* or *exchang*) or center*) same (access*point* or (W*LAN or wireless*) adj5 (node*1 or gateway* or beacon* or router*) or access* adj2 point* or hot*spot* or hot adj spot* or e*node*2 or femto*cell*1 or micro*cell* or pico*cell or AP or APs or WAP) and (internet* or VO*IP or packet* adj switch* or IP) and (PSTN or public* adj2 switch* adj3 network*) and (server* or data adj base* or database*) | |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 131 hits | Any Classification | 370338 or 370352 or 37908817 or 37908819 or 379242 or 37911401 or 37914205 or 379196 or 379197 or 709219 | 2014-08-22 |
| | Full patent spec. | (call* or *communicat*) near5 (restrict* or safe adj guard* or safe*guard* or auth* or verif* or valid*) same (server* or central* or call* near5 (process* or control* or manag* or auth*) near5 (unit* or system* or platform* or apparatus* or device* or equipment* or node*1 or entit*) or local* near5 (switch* or *exchang*) or center*) and (access*point* or (W*LAN or wireless*) adj5 (node*1 or gateway* or beacon* or router*) or access* adj2 point* or hot*spot* or hot adj spot* or e*node*2 or femto*cell*1 or micro*cell* or pico*cell or AP or APs or WAP) same (internet* or VO*IP or packet* adj switch* or IP) same (PSTN or public* adj2 switch* adj3 network*) | |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 488 hits | Any Classification | 370338 or 370352 or 37908817 or 37908819 or 379242 or 37911401 or 37914205 or 379196 or 379197 or 709219 | 2014-08-22 |
| | Full patent spec. | (call* or *communicat*) near5 (restrict* or safe adj guard* or safe*guard* or auth* or verif* or valid*) and (central* or call* near5 (process* or control* or manag* or auth*) near5 (unit* or system* or platform* or apparatus* or device* or equipment* or node*1 or entit*) or local* near5 (switch* or *exchang*) or center*) same (access*point* or (W*LAN or wireless*) adj5 (node*1 or gateway* or beacon* or router*) or access* adj2 point* or hot*spot* or hot adj spot* or e*node*2 or femto*cell*1 or micro*cell* or pico*cell or AP or APs or WAP) and (internet* or VO*IP or packet* adj switch* or IP) and (PSTN or public* adj2 switch* adj3 network*) and (server* or | |

| | | | |
|---|---|---|---|
| | | data adj base* or database*) | |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 12 hits | Patent/Publication No. | US20080057976A1 OR US20120099714A1 OR US20100202595A1 OR US20050249147A1 OR US20080123630A1 OR US7917092B2 OR US20080200156A1 OR US20130003719A1 OR US20030224764A1 OR US20050265529A1 OR US7860222B1 OR US20140219432a1 | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 31 hits | Combined query | 23 and 24 | 2014-08-22 |
| 31 hits | Patent/Publication No. | US8223794B2 US7976386B2 US7912456B2 US6961575B2 US6490451B1 US6359880B1 US20110274034A1 US20110013555A1 US20100265880A1 US20100153692A1 US20090225733A1 US20080200156A1 US20080123630A1 US20080101292A1 US20070140189A1 US20070025333A1 US20060111115A1 US20060111112A1 US20060140178A1 US20060083199A1 US20060002355A1 US20060025135A1 US20060009192A1 US20050249147A1 US20030185204A1 US20030130864A1 US20030088421A1 EP2326089A2 EP1128648A2 WO2002027640A2 GB2495913A | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 101 hits | Combined query | 20 and 22 | 2014-08-22 |
| 574 hits | Full patent spec. | (wireless* or W*LAN) adj4 (gateway* or router* or beacon* or hot*spot* or hot adj spot* or access* adj2 point* or access*point*) same (IP or packet* adj2 switch* or session* or SIP or internet or VO*IP) same (public* adj2 switch* adj3 network* or circuit* adj2 switch* or PSTN) same (center* or central*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 20 hits | Combined query | 19 and 20 | 2014-08-22 |
| 15507 hits | Claims, Title or Abstract | (IP or packet* or session* or SIP or internet or VO*IP) same (public* adj2 switch* adj3 network* or circuit* adj2 switch* or PSTN) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 210 hits | Full patent spec. | (wireless* or W*LAN) adj4 (gateway* or router* or beacon* or hot*spot* or hot adj spot* or access* adj2 point* or access*point*) same (IP or packet* adj2 switch* or session* or SIP or internet or VO*IP) near5 (phone* or telephone* or terminal* or device* or apparatus* or handset* or handheld*) same (public* adj2 switch* adj3 network* or circuit* adj2 switch* or PSTN) same (center* or central*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 58 hits | Full patent spec. | wireless* near6 (gateway* or router* or beacon* or hot*spot* or hot adj spot* or access* adj2 point* or access*point*) near10 (IP or packet* adj2 switch* or session* or SIP or internet or VO*IP) adj3 (public* adj2 switch* adj3 network* or circuit* adj2 swtich* or PSTN) | 2014-08-22 |

| | | | |
|---|---|---|---|
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 41 hits | Full patent spec. | (Wireless* or W*LAN) near7 (gateway* or router* or beacon* or hot*spot* or hot adj spot* or access* adj2 point* or access*point*) same (convers* or convert*) near15 (IP or packet* adj2 switch* or session* or SIP or internet or VO*IP) adj15 (public* adj2 switch* adj3 network* or circuit* adj2 swtich* or PSTN) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 34 hits | Full patent spec. | (Wireless* or W*LAN) near3 (gateway* or router* or beacon* or hot*spot* or hot adj spot* or access* adj2 point* or access*point*) same (convers* or convert*) near10 (IP or packet* adj2 switch* or session* or SIP or internet or VO*IP) near15 (public* adj2 switch* adj3 network* or circuit* adj2 swtich* or PSTN) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 7 hits | Full patent spec. | (call* or *communicat* or phone* or telephon*) same (IP or VO*IP or packet* adj2 switch* or session* or internet*) same (wireless* adj3 (LAN or router* or gateway* or beacon* or local adj3 network* or hot adj spot* of hot*spot* or access*point* or AP or APs) or W*LAN*1 or WAP or WAPs) same (central* or call* near5 (process* or control* or manag* or auth*) near5 (unit* or system* or platform* or apparatus* or device* or equipment* or node*1 or entit*) or (local* or telephone* or phone* or call*) near5 (switch* or *exchang*) or center* or server* or host*) same (inmate* or prison* or jail*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 30 hits | Full patent spec. | Wireless* near3 (gateway* or router* or beacon* or hot*spot* or hot adj spot* or access* adj2 point* or access*point*) same (convers* or convert*) near10 (IP or packet* adj2 switch* or session* or SIP or internet or VO*IP) near15 (public* adj2 switch* adj3 network* or circuit* adj2 swtich* or PSTN) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 111 hits | Title or Abstract | (IP or VO*IP or packet* adj2 switch* or session* or internet*) near5 (wireless* adj3 (router* or gateway* or beacon* or local adj3 network* or hot adj spot* or hot*spot* or access*point* or AP or APs) or W*LAN*1 or WAP or WAPs) same (central* or call* near5 (process* or control* or manag* or auth*) near5 (unit* or system* or platform* or apparatus* or device* or equipment* or node*1 or entit*) or center* or host*) and (phone* or telephone* or *communicat* or call*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 89 hits | Combined query | 10 and 11 | 2014-08-22 |
| 51673 hits | Full patent spec. | (inmate* or prison* or detention adj2 center* or (correct* or controlled) adj3 facilit* or jail*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 10586 hits | Claims, Title or Abstract | (call* or *communicat* or phone* or telephon*) and (IP or VO*IP or internet*) and (wi*fi* or wi adj (max or fi) or access* | 2014-08-22 |

| | | | |
|---|---|---|---|
| | | adj2 point* or wireless adj (LAN or local adj3 network*) or hot adj2 spot* or hot*spot* or access*point* or W*LAN*1) and (central* or call* near5 (process* or control* or manag* or auth*) near5 (unit* or system* or platform* or apparatus* or device* or equipment* or node*1 or entit*) or (local* or telephone* or phone* or call*) near5 (switch* or *exchang*) or center* or server* or host*) | |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 49 hits | Full patent spec. | call* same (restrict* or safe adj guard* or safe*guard* or auth* or verif* or valid*) and (central* or call* near5 (process* or control* or manag* or auth*) near5 (unit* or system* or platform* or apparatus* or device* or equipment* or node*1 or entit*) or local* near5 (switch* or *exchang*) or center*) same (access*point* or (W*LAN or wireless) adj3 (gateway* or beacon* or router*) or access* adj2 point* or wi*fi or 802.11 or IEEE adj 802. or wi adj (wax or fi) or wi*max or hot*spot* or AP or APs or WAP) and (internet* or VO*IP or IP) and (account* or identi* or ID or IDs or PIN or pay* or bill* or charg* or bio*) and (PSTN or public* adj2 switch* adj3 network* or server* or data adj base* or sav* or record* or stor* or retriev* or database*) | 2014-08-22 |
| | Patent/Publication No. | US7860722B1 OR US7860222B1 OR US7676034B1 OR US7079637B1 OR US7023979B1 OR US20140162681A1 OR US20130204998A1 OR US20130150004A1 OR US20130127980A1 OR US20120244834A1 OR US20110169950A1 OR US20110086614A1 OR US20100274816A1 OR US20100248719A1 OR US20100235285A1 OR US20100105416A1 OR US20080167060A1 OR US20080137589A1 OR US20070087756A1 OR US20030224764A1 OR US20030158960A1 OR US20030149526A1 OR WO2008076572A2 OR WO2004010393A1 OR WO1998034391A2 OR US6909708B1 OR US6731625B1 OR US20140219432A1 OR US20140218466A1 OR US20130278631A1 OR US20130130207A1 OR US20120242501A1 OR US20120197096A1 OR US20110218885A1 OR US20110204142A1 OR US20100317420A1 OR US20080057976A1 OR US20080040780A1 OR US20060167784A1 OR US20050265529A1 OR US20050192727A1 OR US20050216555A1 OR US20040078219A1 OR US20030093187A1 OR US20020091991A1 OR WO2007081519A2 OR WO2005041131A2 OR WO2005003351A1 OR WO1998047298A2 | |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years | 1836-2014 | |
| 60 hits | Any Classification | 370 or 379 or 455 or H04* | |
| | Full patent spec. | call* same (restrict* or safe adj guard* or safe*guard* or authori* or authent*) and (inmate* or prison*) and (central* or local* near5 (switch* or *exchang*) or center*) same (access*point* or access* adj2 point* or wi*fi or 802.11 or IEEE adj 802 or wi adj (wax or fi) or wi*max or hot*spot* or AP or APs or WAP) and (internet* or IP) and (account* or identit* or indentificat* or ID or IDs or PIN or pay* or bill* or charg* or bio*) and (server* or data adj base* or sav* or record* or stor* or retriev* or database*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |

| | | | |
|---|---|---|---|
| | | Years 1836-2014 | |
| 27 hits | Full patent spec. | call* same (restrict* or safe adj guard* or permit* or safe*guard* or authori* or authent*) and (inmate* or prison*) and (identit* or identification* or ID or IDs or PIN) and (central* or local* near4 *exchang* or center*) same (data*base* or data adj2 base*1 or sav*3 or stor* or record* or retriev*) same (access*point* or access* adj2 point* or wi*fi or 802.11 or IEEE adj 802 or wi adj (wax or fi) or AP or APs or WAP or hot*spot*) same (IP or internet* or internet* adj protocol*) and (data*base* or data adj2 base*1 or sav*3 or stor* or record* or retriev* or server*) same (identit* or identification* or ID or IDs or PIN or bio* or account* or pay* or bill* or charg* or authent* or authori*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | | Years 1836-2014 | |
| 99 hits | Full patent spec. | call* near5 (restrict* or safe adj guard* or safe*guard*) and (caller* or call* adj3 (part*4 or particip* or person* or user* or source*)) near6 (identit* or identification* or ID or IDs or PIN) and (central* or center* or host* or server*) same (data*base* or data adj2 base*1 or sav*3 or stor* or record* or retriev*) same (access*point* or access* adj2 point* or wi*fi or 802.11 or IEEE adj 802 or wi adj fi or ad adj hoc or ad*hoc*) same (IP or internet* adj protocol*) and (data*base* or data adj2 base*1 or sav*3 or stor* or record* or retriev* or server*) near15 (identit* or identification* or ID or IDs or PIN or bio*) and (center* or central* or server* or host) same (account* or debit* or pay* or bill* or charg* or authent*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | | Years 1836-2014 | |
| 65 hits | Title or Abstract | (call* or *communicat* or phone* or telephon*) and (inmate* or prison* or detention adj2 center* or (correct* or control*) adj3 facilit* or jail* or verif* or auth* or restrict*) and (identit* or identificat* or identifier* or ID or IDs or PIN or account* or bio*) and (IP or VOIP or internet*) and (wi*fi* or wi adj (max or fi) or access* adj2 point* or wireless adj (LAN or local adj3 network*) or access*point* or W*LAN*1) and (central* or center* or server* or host*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | | Years 1836-2014 | |
| 23 hits | Title or Abstract | (call* or *communicat* or phone* or telephone) near9 (restrict* or block* or constrain* or auth* or verif*) and (identit* or identificat* or identifier* or ID or IDs or PIN or account* or bio*) and (IP or VOIP or internet*) and (wi*fi* or wi adj (max or fi) or access* adj2 point* or wireless adj (LAN or local adj3 network*) or access*point* or W*LAN*1) and (central* or center* or server* or host*) | 2014-08-22 |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | | Years 1836-2014 | |
| 8 hits | Full patent spec. | *communicat* near3 service* or (access* adj3 point*) or server* or database* or call* near4 (information* or pay* or restrict* or block*) or authent* or PIN or identification* or ID or IDs or bio* or debit* or account* | 2014-08-22 |
| | Patent/Publication No. | US8630726B2 US8509736B2 US8488756B2 US8345850B2 US8243891B2 US8233880B2 US20120099714A1 US20100202595A1 | |
| | Databases | USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |

| | Years 1836-2014 | |
|---|---|---|
| 1 hit | Patent/Publication No. 20110158223 | 2014-08-22 |
| | Databases USG USA EPA EPB WO JP DEG DEA DET DEU GBA FRA | |
| | Years 1836-2014 | |

## Espacenet:

Smart search
Advanced search
Classification search

Quick help

→ How do I activate the query history?
→ How long will my query history be saved for?
→ Is there a limit to the number of queries that can be saved?

### Query history

☐ Select all    ▦ Compact    ⊖ Export ( CSV | XLS )    ✕ Remove selected (0)    🖨 Print

7 items in query history list

1. PSTN AND (IP OR internet* OR packet*) H04L12/66 OR H04W88/10

PSTN AND (IP OR internet* OR packet*) in the title or abstract AND H04L12/66 OR H04W88/10 as the Cooperative Patent Classification

Approximately 149 results found in the Worldwide database on Fri, 22 Aug 2014 22:42

2. PSTN AND internet AND protocol* H04L12/66 OR H04W88/10

PSTN AND internet AND protocol* in the title or abstract AND H04L12/66 OR H04W88/10 as the Cooperative Patent Classification

Approximately 32 results found in the Worldwide database on Fri, 22 Aug 2014 22:41

3. Access* AND point* AND call* AND auth* H04L12/66 OR H04W88/10

Access* AND point* AND call* AND auth* in the title or abstract AND H04L12/66 OR H04W88/10 as the Cooperative Patent Classification

3 results found in the Worldwide database on Fri, 22 Aug 2014 22:40

4. call* AND (auth* OR verif*) AND central* H04M3/38 OR H04M3/42102 OR H04M3/2281

call* AND (auth* OR verif*) AND central* in the title or abstract AND H04M3/38 OR H04M3/42102 OR H04M3/2281 as the Cooperative Patent Classification

18 results found in the Worldwide database on Fri, 22 Aug 2014 22:39

5. call* AND (auth* OR restrict*) AND center* H04M3/38 OR H04M3/42102 OR H04M3/2281

call* AND (auth* OR restrict*) AND center* in the title or abstract AND H04M3/38 OR H04M3/42102 OR H04M3/2281 as the Cooperative Patent Classification

15 results found in the Worldwide database on Fri, 22 Aug 2014 22:38

6. PSTN AND internet AND protocol* H04M3/38 OR H04M3/42102 OR H04M3/2281

PSTN AND internet AND protocol* in the title or abstract AND H04M3/38 OR H04M3/42102 OR H04M3/2281 as the Cooperative Patent Classification

11 results found in the Worldwide database on Fri, 22 Aug 2014 22:36

7. Access* AND point* H04M3/38 OR H04M3/42102 OR H04M3/2281

Access* AND point* in the title or abstract AND H04M3/38 OR H04M3/42102 OR H04M3/2281 as the Cooperative Patent Classification

Approximately 82 results found in the Worldwide database on Fri, 22 Aug 2014 22:35

## Non-Patent Literature (NPL) Search Strategy/Results:

### Google Scholar (22 August 2014):

- Call authentication call processing center wireless access point (server OR database)
- Call restrict center OR central wireless access point internet protocol
- wireless access point convert internet protocol PSTN protocol

### IEEE.org (22 August 2014):

- Call authentication call processing center wireless access point (server OR database)
- Call restrict center OR central wireless access point internet protocol
- wireless access point convert internet protocol PSTN protocol

## ProQuest (22 August 2014):

- Call* N/5 (auth* or restrict*) and (payment* or bill* or debit*) and call* N/4 (monitor* or process* or manag*) N/6 (center or central*) and wireless and (access P/2 point*) and (server OR database)
- Call* N/5 (auth* or restrict*) and (center* or host* or server* or central*) and wireless and (access P/2 point*) and (IP or VOIP or internet P/1 protocol)
- wireless and (access P/2 point*) and (IP or VOIP or internet P/1 protocol) and (conver* or interfac* or transfer*) and PSTN

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 30318979 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Casey Berger |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 11-SEP-2017 |
| **Filing Date:** | 17-FEB-2017 |
| **Time Stamp:** | 16:42:07 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 32101280000.pdf | 962810 <br> 139d35f1a41ed6481d217d098ef05f4aaa8fb debc | yes | 11 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Miscellaneous Incoming Letter | 1 | 1 |
| Transmittal Letter | 2 | 4 |
| Information Disclosure Statement (IDS) Form (SB08) | 5 | 11 |

**Warnings:**

**Information:**

| 2 | Non Patent Literature | NPL1_CriminalCalls.PDF | 19484059 ecf315bcd4d6318f122b999e30141c41247 d7e23 | no | 166 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 3 | Non Patent Literature | NPL2_ESR.pdf | 375221 be2d56e826c25669bf706bc6ba0410a4bb2 f3693 | no | 10 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 4 | Non Patent Literature | NPL3_FileHistoryEdwards.PDF | 16516343 7e13d142a52628fe87385b4bcae1b88aa0d 6a57a | no | 100 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 5 | Non Patent Literature | NPL4_FileHistory9307386.PDF | 20770428 34fcb1635300fa3411e37dc5acf4866575f0 05b | no | 219 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 6 | Non Patent Literature | NPL5_ISR_PCTUS1431339_110 62014.PDF | 545489 e0d00e479619b094484628b0ee43fe6455c f771b | no | 19 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 7 | Non Patent Literature | NPL6_TheProblemofGangs.PDF | 1849078<br><br>17370f71bb60801ff78a93ebc015ff372c3d4<br>71c | no | 67 |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Non Patent Literature | NPL7_ReyEngineering.PDF | 19784159<br><br>12537d6a31a79651baf16a7828b4b1cc05c<br>1b55 | no | 884 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 9 | Non Patent Literature | NPL8_RosenbergSIP.PDF | 1765409<br><br>250ef3452fd3de97c8127271b0c4fbfa0a32<br>c09b | no | 269 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 10 | Non Patent Literature | NPL9_61801861.PDF | 5043651<br><br>1a0cab6728817a600e6aee1d81fa9fead6e8<br>3419 | no | 106 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 11 | Non Patent Literature | NPL10_WinterdykManagingPrisonGangs.PDF | 1542875<br><br>74a44ed095d2a6dafe743c1e5bba79cfdb2<br>7fe51 | no | 7 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 12 | Non Patent Literature | NPL11_61804479.pdf | 1663579<br><br>c3c207ba00695303f1adad320d161580328<br>7e10f | no | 27 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 90303101 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**LAUREN C. SCHLEH**
ASSOCIATE
(202) 772-8587
LSCHLEH@SKGF.COM

September 11, 2017

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

*Confirmation No. 1254*
*Art Unit 2646*
*Attn: Mail Stop Amendment*

    Re:    U.S. Utility Patent Application
              Application No. 15/435,993; Filing Date: February 10, 2017
              For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
              Inventors: MARASS *et al.*
              Our Ref: 3210.1280000

Commissioner:

    Transmitted herewith for appropriate action are the following documents:

    1.   Information Disclosure Statement;

    2.   Form PTO/SB/08a (5 sheets) listing 81 documents (**US1-US81**);

    3.   Form PTO/SB/08b (2 sheets) listing 11 documents (**NPL1-NPL11**); and

    4.   Copies of cited documents (**NPL1-NPL11**).

    In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

    The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

                    Respectfully submitted,

                    STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                    Lauren C. Schleh
                    Attorney for Applicant
                    Registration No. 65,457

LCS/cmb
Enclosures

8238309_1.docx

Sterne, Kessler, Goldstein & Fox P.L.L.C. | 1100 New York Avenue, NW | Washington, DC 20005 | t 202.371.2600 f 202.371.2540    SKGF.COM

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: 1254 |
| Applicant: GLOBAL TEL*LINK CORP. | Art Unit: 2646 |
| Application No.: 15/435,993 | Examiner: Taylor, Barry W. |
| Filing Date: February 10, 2017 | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Information Disclosure Statement

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Listed on accompanying IDS Forms PTO/SB/08a equivalent and PTO/SB/08b equivalent are documents that may be considered material to the patentability of this application as defined in 37 C.F.R. §1.56, and in compliance with the duty of disclosure requirements of 37 C.F.R. §§ 1.97 and 1.98.

Where the publication date of a listed document does not provide a month of publication, the year of publication of the listed document is sufficiently earlier than the effective U.S. filing date and any foreign priority date so that the month of publication is not in issue. Applicant has listed publication dates on the attached IDS Forms based on information presently available to the undersigned. However, the listed publication dates should not be construed as an admission that the information was actually published on the date indicated.

Applicant reserves the right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered.

- 2 -                                                    MARASS *et al.*
                                                    Application No. 15/435,993

This statement should not be construed as a representation that a search has been made, or that information more material to the examination of the present patent application does not exist. The Examiner is specifically requested not to rely solely on the material submitted herewith.

Filing under 37 C.F.R. § 1.97(b). This Information Disclosure Statement is being filed within three months of the date of filing of a national application other than a continued prosecution application (CPA), OR within three months of the date of entry of the national stage as set forth in 37 C.F.R. § 1.491 in an international application, OR before the mailing date of a first Office Action on the merits OR before the mailing of a first Office Action after the filing of a request for continued examination under 37 C.F.R. § 1.114. No statement or fee is required.

Copies of documents **NPL1-NPL11** are submitted. However, in accordance with 37 C.F.R. § 1.98(a)(2)(ii), no copies of U.S. patents and patent application publications cited as documents **US1-US81** on the attached IDS Forms are submitted.

It is respectfully requested that the Examiner initial and return a copy of the enclosed IDS Forms, and indicate in the official file wrapper of this patent application that the documents have been considered.

Atty. Dkt. No. 3210.1280000

- 3 -                                          MARASS *et al.*
                                               Application No. 15/435,993

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or

credit any overpayment, to our Deposit Account No. 19-0036.

                              Respectfully submitted,

                              STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                              Lauren C. Schleh
                              Attorney for Applicant
                              Registration No. 65,457

Date: 9/8/17

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600
8238305_1.docx

                                               Atty. Dkt. No. 3210.1280000

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

Application or Docket Number
15/435,993

### APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 280 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 600 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 720 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 22 minus 20 = | * 2 | | | OR | x 80 = | 160 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = | | | | | x 420 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1760 |

### APPLICATION AS AMENDED - PART II

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 15/435,993 | 02/17/2017 | 2649 | 1760 | 3210.1280000 | 22 | 3 |

CONFIRMATION NO. 1254

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

FILING RECEIPT


OC000000089479492

Date Mailed: 02/27/2017

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Jason MARASS, Fairhope, AL;
Brian PETERS, St. Paul, MN;
Garth JOHNSON, Indianapolis, IN;
Stephen Lee HODGE, Dallas, TX;

**Applicant(s)**

GLOBAL TEL*LINK CORPORATION, Reston, VA;

**Power of Attorney:** The patent practitioners associated with Customer Number 26111

**Domestic Applications for which benefit is claimed - None.**
*A proper domestic benefit claim must be provided in an Application Data Sheet in order to constitute a claim for domestic benefit. See 37 CFR 1.76 and 1.78.*

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 02/24/2017

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 15/435,993**

**Projected Publication Date:** 08/23/2018

**Non-Publication Request:** No

**Early Publication Request:** No
**Title**

      SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

**Preliminary Class**

      455

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

### *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

PTO/AIA/15 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

# UTILITY
# PATENT APPLICATION
# TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| Attorney Docket No. | 3210.1280000 |
| First Named Inventor | Jason MARASS |
| Title | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| Express Mail Label No. | |

## APPLICATION ELEMENTS
*See MPEP chapter 600 concerning utility patent application contents.*

| | | ADDRESS TO: | **Commissioner for Patents**<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 |
|---|---|---|---|

1. ☐ **Fee Transmittal Form**
   (PTO/SB/17 or equivalent)
2. ☐ **Applicant asserts small entity status.**
   See 37 CFR 1.27
3. ☐ **Applicant certifies micro entity status.** See 37 CFR 1.29.
   Applicant must attach form PTO/SB/15A or B or equivalent.
4. ☒ **Specification** *[Total Pages* __38__ *]*
   Both the claims and abstract must start on a new page.
   *(See MPEP § 608.01(a) for information on the preferred arrangement)*
5. ☒ **Drawing(s)** (35 U.S.C. 113) *[Total Sheets* __10__ *]*
6. **Inventor's Oath or Declaration** *[Total Pages* __4__ *]*
   *(including substitute statements under 37 CFR 1.64 and assignments
   serving as an oath or declaration under 37 CFR 1.63(e))*
   a. ☒ Newly executed (original or copy)
   b. ☐ A copy from a prior application (37 CFR 1.63(d))
7. ☒ **Application Data Sheet** * See note below.
   See 37 CFR 1.76 (PTO/AIA/14 or equivalent)
8. **CD-ROM or CD-R**
   in duplicate, large table, or Computer Program *(Appendix)*
   ☐ Landscape Table on CD
9. **Nucleotide and/or Amino Acid Sequence Submission**
   *(if applicable, items a. – c. are required)*
   a. ☐ Computer Readable Form (CRF)
   b. ☐ Specification Sequence Listing on:
      i. ☐ CD-ROM or CD-R (2 copies); or
      ii. ☐ Paper
   c. ☐ Statements verifying identity of above copies

## ACCOMPANYING APPLICATION PAPERS

10. ☐ **Assignment Papers**
    (cover sheet & document(s))
    Name of Assignee _____
11. ☐ **37 CFR 3.73(c) Statement**      ☒ Power of Attorney
    *(when there is an assignee)*
12. ☐ **English Translation Document**
    *(if applicable)*
13. ☐ **Information Disclosure Statement**
    (PTO/SB/08 or PTO-1449)
    ☐ Copies of citations attached
14. ☐ **Preliminary Amendment**
15. ☐ **Return Receipt Postcard**
    *(MPEP § 503) (Should be specifically itemized)*
16. ☐ **Certified Copy of Priority Document(s)**
    *(if foreign priority is claimed)*
17. ☐ **Nonpublication Request**
    Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35
    or equivalent.
18. ☒ **Other:** Authorization under 37 CFR 1.136(a)(3)
    _____
    _____
    _____

***Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an
assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary
interest in the matter. See 37 CFR 1.46(b).*

## 19. CORRESPONDENCE ADDRESS

☒ The address associated with Customer Number: __26111__      OR  ☐  Correspondence address below

| Name | | | |
|---|---|---|---|
| Address | | | |
| City | | State | | Zip Code | |
| Country | | Telephone | | Email | |

| Signature | | Date | 2/9/18 |
|---|---|---|---|
| Name<br>(Print/Type) | Lauren C. Schleh | Registration No.<br>(Attorney/Agent) | 65,457 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

5038069



LAUREN C. SCHLEH
ASSOCIATE
(202) 772-8587
LSCHLEH@SKGF.COM

February 17, 2017

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Re:    U.S. Non-Provisional Patent Application under 37 C.F.R. § 1.53(b)
        Appl. No. *To Be Assigned*; Filed: *Herewith*
        For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
        Inventors:   MARASS *et al.*
        Our Ref:   3210.1280000

Commissioner:

The following documents are transmitted herewith for appropriate action by the U.S. Patent and Trademark Office:

1.    Payment made electronically for **$1,760.00** to cover:

        **$1,600.00** Patent Application fees (*including basic filing, search, and examination fees*); and
        **$160.00** Two claims in excess of 20;

2.    Utility Patent Application Transmittal Form (PTO/AIA/15);

3.    Authorization to Treat a Reply As Incorporating An Extension of Time Under 37 C.F.R. § 1.136(a)(3);

4.    U.S. Utility Patent Application entitled:

    **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

    and naming as inventors:

    **Jason MARASS**
    **Brian PETERS**
    **Garth JOHNSON**
    **Stephen Lee HODGE**

    the application consisting of:

    a.    An Application Data Sheet (37 C.F.R. § 1.76) Form (PTO/AIA/14);

Commissioner for Patents
February 17, 2017
Page 2

    b.    Signed Inventors' Declarations;

    c.    A specification containing:

        i.    31 pages of description prior to the claims;

        ii.    6 pages of claims (22 claims);

        iii.    a one (1) page abstract; and

    d.    10 sheets of drawings: (Figures 1, 2, 3A, 3B, 4, 5, 6A, 6B, 7, 8A, 8B, 8C and 9); and

5.    An executed Power of Attorney by Applicant (PTO/AIA/82B) and the Transmittal for Power of Attorney form (PTO/AIA/82A).

*The above-listed documents are filed electronically.*

    Fee payment is provided via electronic filing. The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

                Respectfully submitted,

                STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                Lauren C. Schleh
                Attorney for Applicant
                Registration No. 65,457

LCS/EAJ:dbj
Enclosures

5038060_1

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Dana Bennett Jackson |
| **Attorney Docket Number:** | 3210.1280000 |

Filed as Large Entity

**Filing Fees for  Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY APPLICATION FILING | 1011 | 1 | 280 | 280 |
| UTILITY SEARCH FEE | 1111 | 1 | 600 | 600 |
| UTILITY EXAMINATION FEE | 1311 | 1 | 720 | 720 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| CLAIMS IN EXCESS OF 20 | 1202 | 2 | 80 | 160 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **1760** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 28391744 |
| **Application Number:** | 15435993 |
| **International Application Number:** | |
| **Confirmation Number:** | 1254 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Dana Bennett Jackson |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280000 |
| **Receipt Date:** | 17-FEB-2017 |
| **Filing Date:** | |
| **Time Stamp:** | 15:19:49 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $1760 |
| RAM confirmation Number | 022117INTEFSW15210000 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 3210128spec.pdf | 195248<br><br>5df42c1a5fc5c625323fb9adf154437a15c11a5f | yes | 38 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | | Start | End |
| Abstract | | 38 | 38 |
| Claims | | 32 | 37 |
| Specification | | 1 | 31 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Drawings-only black and white line drawings | 3210128figs.pdf | 317109<br><br>4d982a7f50b430ee12bab499aecdd76f2fc523b7 | no | 10 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | | 32101280000filing.pdf | 12295392<br><br>86a8ece9adc2e92d841711c1e3015ac802a05cbc | yes | 18 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | | Start | End |
| Power of Attorney | | 17 | 18 |
| Application Data Sheet | | 9 | 16 |
| Oath or Declaration filed | | 5 | 8 |
| Authorization for Extension of Time all replies | | 4 | 4 |

| | Transmittal of New Application | 3 | 3 |
| | Miscellaneous Incoming Letter | 1 | 2 |

**Warnings:**

**Information:**

| 4 | Fee Worksheet (SB06) | fee-info.pdf | 36720<br>cdb948bda37e19ed37c947309aa1f9400e173abb | no | 2 |

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 12844469 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

- 38 -

## ABSTRACT

A layered security suite is disclosed wherein multiple security barriers that prevent the unsanctioned use of a mobile device issued by a controlled-environment facility. The security barriers are implemented along multiple points within the communication path between the mobile device with outside networks, including on the mobile device, on wireless access points that serve data traffic for the mobile device, and a firewall device that monitors all data coming to and from the wireless access points. The barriers on the mobile device prevent the user from performing unsanctioned application and settings changes, including both software and hardware components, while the barrier on the wireless access point detects and prevents unauthorized connections between mobile devices and unsanctioned wireless access points. The firewall device discards packets with unsanctioned internet addresses. The layers work in concert to prevent all manner of tampering with the mobile device by members of the controlled-environment facility.

4898792_6

Atty. Dkt. No. 3210.1280000

- 32 -

WHAT IS CLAIMED IS:

1.      A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

detect a first attempt to perform an unsanctioned function of an application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the first attempt; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

detect a second attempt to access device settings of the mobile device; and

prevent the processor of the mobile device from executing operations related to the second attempt;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.


2.      The system of claim 1, wherein the front plate and the back plate of the hardware barrier are configured to form a seal around the device that allows physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.


3.      The system of claim 2, further comprising a diode connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.


4.      The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

Atty. Dkt. No. 3210.1280000

- 33 -

5.      The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to install a second application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

6.      The system of claim 1, wherein the application barrier is further configured to:

detect an over-the-air command received by the mobile device over a wireless link;

determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

7.      The system of claim 1, wherein the second attempt is initiated by the application.

8.      The system of claim 1, wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

9.      A mobile device, comprising:

a memory that stores a first set of operations of an application barrier and a second set of operations of an operating system (OS) barrier; and

a processor configured to:

execute the first set of operations of the application barrier, the first set of operations comprising:

detecting a first attempt by a user of the mobile device to perform an unsanctioned function of an application stored on the memory; and

preventing the processor from executing operations related to the first attempt; and

Atty. Dkt. No. 3210.1280000

- 34 -

execute the second set of operations of the OS barrier, the second set of operations comprising:

detecting a second attempt to access device settings of the mobile device; and

preventing the processor from executing operations related to the second attempt;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility; and

wherein the device settings include a wireless access point setting.

10.    The mobile device of claim 9, wherein a hardware barrier that includes a front plate and a back plate fastened together by tamper-resistant screws is configured to form a seal around the device that allows direct physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

11.    The mobile device of claim 10, wherein a diode is connected to  the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

12.    The mobile device of claim 9, wherein first set of operations further comprises: detecting an attempt to delete the application on the mobile device; and sending a command to the processor to cancel the attempt.

13.    The mobile device of claim 9, wherein first set of operations further comprises: detecting an attempt to install a second application on the mobile device; and sending a command to the processor of the mobile device to cancel the installation attempt.

14.    The mobile device of claim 9, wherein the first set of operations further comprises: detecting an over-the-air command received by the mobile device over a wireless link; determining that the over-the-air command is from a sanctioned source; and

Atty. Dkt. No. 3210.1280000

- 35 -

in response to determining that the command is from the sanctioned source, allowing the command to be executed by the processor.

15. The mobile device of claim 9, wherein the second attempt is initiated by the application.

16. The mobile device of claim 9, wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

17. A system of layered security barriers designed to prevent unsanctioned use of a mobile device in a controlled environment facility, comprising:

a hardware barrier that includes a front plate and a back plate configured to form a seal around the mobile device that allows limited physical contact with the mobile device;

an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device;

an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change of device settings of the mobile device; and

an access control barrier implemented on a firewall device between a wireless access point serving the controlled-environment facility and a network, the access control barrier configured to perform filtering of a plurality of packets directed to or transmitted by the mobile device.

18. The system of claim 17, the system further comprising a wireless intrusion barrier implemented on the wireless access point device, the wireless intrusion barrier configured to:

detect an attempt by the mobile device to connect with a second wireless access point device;

obtain a wireless access point identifier associated with the second wireless access point device;

determine that the second wireless access point identifier is not among a plurality of wireless access point identifiers stored on the wireless access point device; and

Atty. Dkt. No. 3210.1280000

- 36 -

in response to the determining, attack the mobile device using a deauthentication denial of service attack.

19.     The system of claim 18, wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

20.     The system of claim 17, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

21.     The system of claim 17, wherein the operating system (OS) is configured to prevent the unsanctioned change of the device settings by:

detecting an attempt by a user to access the device settings on the mobile device; and

preventing the processor of the mobile device from executing operations related to the attempt,

wherein the device settings include a wireless access point setting.

22.     The system of claim 17, wherein the access control barrier is configured to perform filtering of the plurality of packets by:

receiving a packet transmitted by or directed to the mobile device;

performing an inspection of a packet, the inspection including obtaining an address of the packet;

determining that the address is not among a plurality of addresses stored on the firewall device; and

Atty. Dkt. No. 3210.1280000

- 37 -

in response to the determining, discarding the packet.

# SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

Inventors: Jason Marass, Brian Peters, Garth Johnson, Stephen Lee HODGE

# BACKGROUND

Field

[0001]     The disclosure relates to a system and method for detecting and locating contraband devices in a correctional facility utilizing mobile devices.

Background

[0002]     In corrections environments such as prisons, telecommunications are highly monitored and controlled. Typically, a correctional facility makes use of an inmate communication system (ICS), sometimes called an inmate telecommunication system (ITS), that provides both the infrastructure for inmates to communicate with individuals outside of the facility. The ICS also provides correctional facility personnel the ability to record, monitor and control these communications. Inmates are typically afforded a small number of individuals that they can communicate with, such as lawyers, family members, and friends. Inmates are also typically subject to specific restrictions on their communications. For example, inmates are explicitly restricted from contacting other parties, such as judges, witnesses, or accomplices related to their alleged offenses. There also may be a time of day, a length of call, three-way call or other restrictions on calls, all of which must be controlled by way of various instrumentalities that may include computer controlled equipment at the facility and/or at remote locations in addition to human monitoring and/or control. To facilitate these communications and the security measures required to enforce these and other restrictions, an ICS may deploy a wireless infrastructure within the correctional facility grounds and mobile devices sanctioned by the correctional facility may be issued to inmates to allow them perform these communications.

[0003]     Great lengths are taken to prevent the illicit use of the ICS. An ICS may be configured to record and monitor inmate communications attempted using a mobile device issued to an inmate. With the advances of communications technologies, there may be new

- 2 -

methods to bypass security measures. Inmates may seek to discover and exploit the new technology to overcome the restrictions placed on their communications. In particular, the mobile devices, once issued by the correctional facility, may be subject to all manner of tampering.

[0004] While various aspects and alternative features are known in the field of communication monitoring, no one design has emerged that generally addresses the concerns of the prison industry, as discussed herein.

## BRIEF DESCRIPTION OF THE DRAWINGS/FIGURES

[0005] The accompanying drawings, which are incorporated herein and form a part of the specification, illustrate embodiments of the present disclosure and, together with the description, further serve to explain the principles of the disclosure and to enable a person skilled in the pertinent art to make and use the embodiments.

[0006] FIG. 1 illustrates a block diagram of a detection and monitoring system, according to an exemplary embodiment of the present disclosure.

[0007] FIG. 2 illustrates the structure of the security barriers, according to an exemplary embodiment of the present disclosure.

[0008] FIG. 3A-3B illustrate the hardware barrier and its relation to the mobile device, according to an exemplary embodiment of the present disclosure.

[0009] FIG. 4 illustrates the security barriers implemented on the mobile device, according to an exemplary embodiment of the present disclosure.

[0010] FIG. 5 illustrates the functional elements of a wireless access point, according to an exemplary embodiment of the present disclosure.

[0011] FIG. 6A-6B illustrate two scenarios of wireless intrusion, according to exemplary embodiments of the present disclosure.

[0012] FIG. 7 illustrates the firewall and its relation to the other network elements, according to an exemplary embodiment of the present disclosure.

[0013] FIG. 8A-8C illustrate the operative security barriers for different scenarios, according to an exemplary embodiment of the present disclosure.

Atty. Dkt. No. 3210.1280000

- 3 -

[0014]       FIG. 9 illustrates a computer system, according to an exemplary embodiment of the present disclosure.

[0015]       The present disclosure will be described with reference to the accompanying drawings. In the drawings, like reference numbers indicate identical or functionally similar elements. Additionally, the left most digit(s) of a reference number identifies the drawing in which the reference number first appears.

## DETAILED DESCRIPTION

[0016]       As discussed above, with the advances in communications technologies, correctional facilities and ICS providers now have the need to secure sanctioned mobile devices against all manner of new threats. With the advent of smart devices such as smartphones and tablet devices that allow both traditional voice and data communication capabilities, it is now common in correctional facilities for mobile devices to be issued to inmates for temporary use. The ICS provider will typically deploy a wireless network infrastructure, comprising wireless access points and internet backbone connection to the prison to enable these mobile devices to communicate with the outside world. These mobile devices, in conjunction with the wireless network infrastructure, allow the inmates to engage in several activities that are sanctioned by the correctional facility, such as telephone conversation with allowed parties and limited internet access with approved websites and services. However, because of the much wider functionality available in devices as compared to traditional controlled environment telephone systems, such as internet access through cellular and wireless communications technologies and the installation of use of software applications on memory in the device, these devices also pose new security risks that must be addressed by ICS providers. These new security risks are manifold, and when exploited allow the inmates to use the mobile device for unsanctioned functions, connect to wireless networks not sanctioned by or deployed in the correctional facility, and access internet and other data content not authorized by the correctional facility.

[0017]       An inmate may physically tamper with a mobile device such that the inner circuitry of the device is altered to allow for unsanctioned activity in the phone. Because mobile devices are typically equipped with at least one of the common variants of a universal serial bus

Atty. Dkt. No. 3210.1280000

- 4 -

(USB) connector (e.g. micro-USB, mini-USB, USB 3.0, etc.) the power of the battery may be used to charge a contraband device that has been smuggled into the correctional facility by a wily inmate. Access to the USB connector also allows other smuggled peripheral devices (e.g. a keyboard, wireless hot spot adapter, etc.) to be used with the phone to provide functionality not sanctioned by the correctional facility. In fact, the battery itself may also be used as a weapon or a tool for escape or other shenanigans, as mobile device batteries are typically made with potentially dangerous, corrosive, or flammable substances such as a lithium-ion battery.

[0018]     The software applications installed on the mobile device also pose security risks to the phone. A clever inmate may prod applications for vulnerabilities either secured poorly or unconsidered by the correctional facility or ICS provider. Many applications (e.g. Facebook, Yelp, etc.) provide social functions such as commenting and messaging that can be used for clandestine communications between an inmate and an unauthorized outside party that may evade detection by the correctional facility. Other applications have features that have unintended implications for security risks. For example, while there are several applications that serve as dedicated internet web browsers that may be thoughtfully regulated by a correctional facility or ICS provider, such as Chrome or Firefox, other applications often employ a proprietary web-browser that would escape such thoughtful regulation. Inmates could use these proprietary web-browsers to access unauthorized internet web domains. Furthermore, an inmate can simply install new applications on an unsecured mobile device that allow for unsanctioned functionalities without any knowledge by the correctional facility. As such, application management functions and the applications themselves need to be secured by the ICS provider.

[0019]     An unsecured operating system (OS) of the mobile device poses yet another set of security risks to the phone. The operating system typically governs the capabilities of the device, such as which radios the mobile device has switched on (WiFi, Bluetooth, Cellular), which wireless networks to connect to and any required login information, and other important device settings. These settings will typically be accessible through a simple graphical user interface (GUI). Inmates may access these settings to allow the mobile device to connect to a wireless access point outside of the correctional facility or otherwise not

Atty. Dkt. No. 3210.1280000

- 5 -

provided or monitored by the ICS provider, which in turn allows the mobile device to circumvent network security measures operating on the wireless infrastructure deployed by the ICS. Access to shortwave radio technology such as Bluetooth allows the device to pair, communicate, and exchange data with another mobile device or a contraband device smuggled into the facility without the correctional facility personnel ever detecting it. Therefore, the ICS provider must also take steps to secure the operating system from allowing unsanctioned activity.

[0020]     The wireless access points themselves may also implement security features to prevent unsanctioned use of the mobile device. Wireless access points may be equipped with wireless intrusion prevention (WIP) systems that detect activity between sanctioned mobile devices and wireless access points outside of the correctional facility. Furthermore, the supporting wired network that links the wireless access points to outside networks such as the internet may also provide security features such as access control lists to prevent data packets from certain websites and IP addresses.

[0021]     In light of the above, the present disclosure provides details of a layered security system for preventing unsanctioned use of a mobile device within a correctional facility. In embodiments, multiple security barriers are devised in the hardware and software of the mobile device and in the wireless network infrastructure deployed by the ICS provider in the correctional facility that prevent the unsanctioned use. These barriers are "layered" in that they act as a next barrier of protection when a previous barrier fails.

[0022]     FIG. 1 illustrates a block diagram of a correctional facility 100 within a correctional facility environment, according to embodiments of the present disclosure. In an exemplary embodiment, the system comprises mobile devices 101-103 and wireless access point devices 104-106 within the correctional facility grounds 110, a firewall device 120, a network 130, and a communications processing center 150 connected to the internet 170. Within the correctional facility grounds 110, mobile devices 101-103 are devices which are issued by the correctional facility to facilitate inmate communications with individuals outside of the correctional facility environment. The mobile devices are configured to perform authorized communications with outside parties, including texting, audio, and video communication.

Atty. Dkt. No. 3210.1280000

- 6 -

[0023]     In the present disclosure, different security measures are deployed on the mobile devices 101-103, the wireless access point devices 104-106, and the firewall device 120 to prevent unsanctioned use of the mobile devices 101-103. The security measures are designed in a layered or stacked fashion, wherein if an inmate manages to bypass one security measure in the stack, the next barrier of the stack should provide additional protection against unsanctioned use of the devices. This security layer structure will be discussed further below.

[0024]     In embodiments, mobile devices may be capable of accessing limited data services such as internet to law websites, music, and other services. The mobile devices may be encased in a hardware barrier, sometimes called a "clam shell" case, that prevents inmates from physically tampering with the mobile device or having access to all of the ports typically available on such a device, such as the universal serial bus (USB) port. Furthermore, the software applications and the operating system on these mobile devices are designed or otherwise modified by the inmate communication system (ICS) provider and approved by the correctional facility for the purpose of securing and preventing unsanctioned usage of the mobile devices. The design of the hardware barrier, software, and operating system security functions will be described in greater detail below.

[0025]     The wireless access point devices 104-106 are devices that are deployed by the ICS provider in the correctional facility to server the communications initiated by the mobile devices 101-103. These wireless access point devices will run a version of the IEEE 802.11 "WiFi" protocol that specifies the media access control (MAC) layer and physical (PHY) layer standards that allow wireless communication with the mobile devices. The mobile devices 101-103 form wireless connections with one of the wireless access point devices 104-106. Wireless access point devices 104-106 are deployed throughout the correctional facility. In embodiments, some may serve specific enclosed areas such as a room designated for voice or video call communications, a cafeteria, library, etc. The wireless access point devices are modified to perform wireless intrusion prevention (WIP) functionality that can detect and neutralize unsanctioned wireless activity by the mobile devices 101-103. These functionalities will be described in greater detail below.

[0026]     In embodiments, wireless access points that are not deployed for use in the correctional facility are also located outside of the facility, as illustrated by wireless access

Atty. Dkt. No. 3210.1280000

- 7 -

point 107. Such wireless access points are deployed in neighboring buildings without nefarious purpose and are known to the wireless access points 104-106. In another embodiment, wireless access point 107 is smuggled in or around the correctional facility for the purpose of allowing inmates to circumvent the correctional facility wireless network infrastructure and security. In embodiments, security measures on both the mobile devices 101-103 as well as the WIP functionality on wireless access points 104-106 are all designed to prevent mobile devices 101-103 from forming connections devices as exemplified by wireless access point 107, and neutralizing mobile device wireless functionality when they do. These security functions are described in greater detail below.

[0027]     In embodiments, any communications involving the mobile devices and parties outside the correctional facility are delivered using packetized data. The packetized data is routed through the wireless access points 104-106 to the communications processing center 150 via network 130. Voice is served over packetized voice protocols such as Voice over Internet Protocol (VoIP). Typical packetized data protocols such as transport control protocol/internet protocol (TCP/IP) serve mobile device data services such as restricted web-browsing or music. In embodiments, the mobile devices also connect to the communication center via wired communication links that use other common MAC and PHY layer protocols, such as those associated with the IEEE 802.3 "Ethernet" standard. These wired communication links may be available in designated areas of the correctional facility such as a dedicated telecommunication room or a library.

[0028]     In embodiments, all communications from the mobile devices are routed through one of the wireless access points 104-106 to a firewall device 120 followed by a network 130. The firewall device stores an access control list (ACL) that enumerates the internet protocol (IP) addresses or the domain names of websites that mobile devices within the correctional facility are allowed to communicate with. All data traffic to or from any mobile device within the facility flows through the firewall device 120. For ease of discussion, the firewall device 120 is shown as a separate device other network elements outside of the correctional facility 110, but this separation is not necessary in all embodiments. The firewall device 120 may be located within the network 130 or the communications processing center 150.  The firewall

- 8 -

device may be a dedicated set of servers designed to filter all traffic through the ACL, or may be implemented on one or more common routers within network 130.

[0029]     In embodiments, the network 130 consists of a local area network (LAN), a wide area network (WAN), or the internet. Network 130 is made up of routers and switches running well-known protocols such as IEEE 802.3 "Ethernet" protocol. The network may be owned and provisioned by the correctional facility 110, the ICS provider, or may be part of a public network such as the internet. The network 130 serves to connect the correctional facility's local network infrastructure to a communications processing center 150.

[0030]     The communication processing center 150 is responsible for monitoring the usage of the mobile devices for any signs of illicit behavior on the part of the inmate using the device. In voice communications, for example, the communication center is responsible for authenticating the inmate party and the outside party to ensure that these parties are allowed to communicate with each other. This will typically be done by comparing the inmate and the outside party to a "white list" or a "black list" of allowed or disallowed parties, such that inmates can only communicate with parties on their white list or not on their black list. Such lists may also be stored on the mobile devices themselves, such that when the mobile device is issued to a particular inmate, the inmate will only be allowed to contact their allowed parties. For data communications, both the communication center and the mobile devices themselves will typically be responsible for preventing the user of the mobile device from accessing prohibited data.

[0031]     FIG. 2 illustrates the layers of security barriers 200 that prevent unsanctioned use of a mobile device. As discussed above, the security measures are implemented on the mobile devices, the wireless access point devices, and the firewall device, such as mobile devices 101-103, wireless access points 104-106, and firewall device 120 as seen in FIG. 1. Inmate 209 must bypass the security barriers 210-250 in order to perform unsanctioned activity. As indicated in FIG. 2, security barriers 210, 220, and 230 are deployed on the mobile devices as embodied by mobile devices 101-103 of FIG. 1, barrier 240 is deployed at wireless access points within the correctional facility as embodied by wireless access points 104-106 of FIG. 1, and barrier 250 is deployed at the firewall device as embodied by firewall device 120 of FIG. 1. Below is a brief description of the barriers and their interactions. All barriers are

- 9 -

described in greater detail with respect to FIGs. 3A-3B and FIGs. 4-7. FIG. 2 also depicts call processing center 260, which is an embodiment of call processing center 150 from FIG. 1.

[0032]        Barrier 210 is the hardware barrier that comprises a physical hardware barrier placed on a mobile device. In an embodiment, the barrier is in the form of a secured case that encloses the mobile device and prevents the inmate from physically altering the mobile device or gaining access to the mobile device power source. Barrier 220 is the application security barrier, implemented on a mobile device, in which applications which are installed on the mobile device are modified and managed to prevent applications form performing unsanctioned activity on the mobile device. Applications stripped of functions that are considered unsanctioned by the correctional facility such as social functions, or the functions may be disabled as deemed necessary by the correctional facility. Furthermore, applications are prevented from being installed or removed on the mobile device.

[0033]        Barrier 230 is the OS security barrier, also implemented on a mobile device, in which the OS of the mobile device is secured to prevent tampering with the settings of the device. This barrier prevents the inmate user from accessing the device settings GUI that is common on most mobile devices, and also prevents applications running on the device from being able to alter the mobile device settings. While in exemplary embodiments application features that may allow the application to alter the device settings would typically be disabled or removed completely in accordance with application security barrier 220, the OS barrier 230 offers a second barrier to the inmate in the event that such features are accessed. For example, if an inmate is able to bypass the application security barrier 220 by obtaining access to an unsanctioned feature of a particular application in use, the OS security barrier 230 prevents the inmate from changing or manipulating any device settings on the mobile device through the unsanctioned feature of the application.

[0034]        In an embodiment, barrier 240 is the wireless security barrier, implemented on a wireless access point within the correctional facility, that detects and neutralizes mobile device wireless activity deemed unsanctioned by the correctional facility. This barrier comprises a wireless intrusion prevention (WIP) system that detects when a mobile device is attempting to either access an unsanctioned wireless access point, as embodied in wireless access point 107 of FIG. 1, or the mobile devices is itself attempting to act as a wireless hot

- 10 -

spot. Thus, if an inmate is able to bypass the OS security barrier 230 and, for example, disconnect from a sanctioned wireless access point device to try to connect to an unsanctioned wireless access point, the wireless security barrier 240 initiates the WIP system implemented on the wireless access point to prevent the successful communication between the mobile device and an unsanctioned wireless access point.

[0035]    Finally, barrier 250 is the access control security barrier, implemented on a firewall device as embodied by firewall device 120 of FIG. 1, in which a mobile device is prevented from sending to or receiving traffic from an unauthorized internet address. This barrier monitors all traffic to or from every mobile device within the correctional facility, determines if the traffic is coming to or from a trusted source outside the correctional facility, and discards any traffic that does not come from a trusted source. Thus, if an inmate is able to bypass the application security barrier 220 or the OS security barrier 230 to access a feature of an application or the OS that directs traffic to an unknown source, the access control security barrier 250 captures and discards all traffic to and from that source, thereby preventing successful communication between the mobile device and that source.

[0036]    It should be noted that not all unsanctioned activity requires the bypassing of all five security barriers depicted in FIG. 2. In embodiments, there are several scenarios in which some security barriers may pose no hindrance to the unsanctioned behavior being attempted by an inmate in possession of a mobile device. For example, if an inmate desires to charge a contraband device using the battery of the mobile device, in an embodiment the inmate only needs to break through the hardware barrier 210 to gain access to a USB connector on the device, the application barrier 220, and the OS security barrier 230 to force the USB connector to allow a reverse current flow from the mobile device to the contraband device. On the other hand, to access an unsanctioned website, the inmate has to bypass the application security barrier 220, OS security barrier 230, and access control barrier 250. Thus, the five barriers of security provide redundancy in the security system that is robust in handling multiple security threats of various kinds. A single barrier would not be secure enough to handle the myriad security threats present in the correctional facility environment.

[0037]    FIG. 3A illustrates the mobile device hardware 300 and connectors 320 and 330 that are authorized for that device. Device 300 is an exemplary embodiment of the hardware of

- 11 -

mobile devices 101-103 that are illustrated in FIG. 1. The figure is intended to demonstrate the security vulnerabilities of the mobile device that exist due to the hardware of the device. The mobile device contains a screen 305A that occupies the majority of the face of the device. This screen responds to physical contact by the inmate, and typically displays, when first used by an inmate, a "home" screen where icons that represent sanctioned applications available on the device are displayed on the screen. When the icons are pressed by the inmate, the mobile device opens an application to run on the mobile device.

[0038]     Typically, the mobile device face also comprises a bezel 312 that surrounds the screen on all sides, beginning at the edge of the screen 306B to the edge of the device 306A on all sides. The bezel does not respond to physical contact from the inmate, but will generally be significantly wider on one side of the device face to allow space for a button 302. In some embodiments, there are several buttons similar to button 302 implemented on the bezel of the device. Button 302 will typically function as a "home" button where, regardless of what application is being used by the inmate, pressing the button 302 will allow the mobile device to return to the "home" screen where, as described before, the icons representing programs available on the device will be displayed, allowing the inmate to choose to use a different application. Depending on application design, there is typically a way to move to the "home" screen without access to this button. This button may be either tactile response or touch-sensitive similar to the touch screen 305A.

[0039]     Mobile device 300 will also typically include connector ports for various functions. Ports 307A, 309A, and 310 are all examples of ports that are implemented on a common mobile device. However, in many embodiments, additional ports may be available, and the existing ports 307A, 309A, and 310 may be placed in different areas of the mobile device 300. Port 307A is an "audio jack," otherwise known as a "phone connector", "phone jack", or "headphone jack." Port 310 is a universal serial bus (USB) port. Port 309A is a "barrel charger" for charging the battery of the mobile device.

[0040]     Port 307A allows for an audio peripheral such as headphones or headphone/microphone combinations. This connector is nearly universal for mobile devices. The male connector 330 corresponds to port 307A. These peripherals allow for a device to output audio to a set of headphones to play audio directly into the ears of an inmate, or a

- 12 -

microphone to allow for better reception of inmate speech during an audio call. While standards for the audio jack are not particularly strict, the audio jack connector 330 will typically come in one of several configurations, such as "tip/sleeve" (TS), "tip/ring/sleeve" (TRS), "tip/ring/ring/sleeve" (TRRS), and "tip/ring/ring/ring/sleeve" (TRRRS). The ring refers to the portion between two black bands as seen on connector 330. 330B and 330C would each be considered a "ring" while 330A is the "tip" and 330D the "sleeve." The addition of rings adds a new input or output interface to be added to the jack, such that it may support more services. For example, a simple TS connector may only support audio output from headphones, while a TRRS may support audio output, microphone input, and microphone button input that allows simple interaction such as pausing audio playback in a music-playing application running on the mobile device. Typically, at least a TRRS functionality is employed in most embodiments of modern mobile devices. In embodiments, the correctional facility considers this functionality allowable for inmates. In addition, certain rings of the audio jack may be disabled as deemed necessary by the correctional facility to only allow for more basic functionalities of the audio jack (e.g. allowing audio and microphone input/output interfaces while disabling the "microphone button" input).

[0041]     Mobile device 300 will also typically support a universal serial bus (USB) jack 310. There are multiple forms of the USB, most commonly "micro-USB", "mini-USB" and "USB 3.0." In commercial use, this connector serves two main functions, power charging and data transfer when connected to another computing device. At least one form of this connector is implemented in nearly all mobile devices.  The functioning of these ports is defined in a series of standards titled "USB 1.x", "USB 2.0", "USB 3.0/3.1", and more recently "USB Type-C". In exemplary embodiments, the correctional facility disallows use of this connector for the user by both modifying the OS kernel to disable functionality of this port, and denying physical access to the port. However, this is not limiting, and some correctional facilities may consider this port usable by inmates. Additionally, field technicians sanctioned by the ICS provider or the correctional facility may connect to this port, using proprietary computing equipment, to change settings on the mobile device.

[0042]     The port 309A is the port for a connector called a "barrel charger", otherwise known as a "direct current (DC) connector" or a "coaxial power connector," and is used explicitly

- 13 -

for charging the battery of the mobile device. The male connector 320 corresponds to port 309A. These connectors operate under several international standards such as IEC in the U.S., EIAJ in Japan, and DIN in Germany, although several other standards and proprietary implementations exist. Unlike ports 307A and 310, port 309A is not commonly implemented in mobile devices, which have opted for a USB port as embodied by 310 due to its support for data transfer as well as power charging functions. In the exemplary embodiment, the connector is added to the mobile device by the ICS provider to allow for a port that charges the battery of a mobile device but does not allow for data-related functionality that can be performed using the USB port 310. This port is therefore sanctioned by the ICS provider and correctional facility, and is the main means by which an inmate or correctional facility staff charges the mobile device.

[0043]    Internal to the device, a diode is also placed in series with the barrel charger to the leads of the battery to disallow a reverse current flow. This prevents current from flowing out of the device through the barrel charger port. Without this security feature in place, an inmate is able to charge a contraband device using the energy of a well-charged battery of the mobile device.

[0044]    FIG. 3B illustrates an exemplary embodiment for the hardware barrier of the device, otherwise known as a "clam shell" case. The case comprises a front plate 350 which fits over the screen side of the device and a back plate 370 that fits over the back of the device. Front and back plates 350 and 370 can together be considered an exemplary embodiment of the hardware barrier 210 in FIG. 2.

[0045]    In an exemplary embodiment, the front plate 350 fits over the front of the device, with a large opening 305B that exactly matches the location and dimensions of the screen. Therefore, the inner edge 306C of the front matches perfectly with the edge of the screen 306B on the mobile device. Along the outer rim of the front plate, there are 8 holes 352A-H which fit tamper-resistant screws that fasten the front plate to the back plate. The case does not allow access to the button 302 on mobile device 300, instead covering that button such that it cannot be depressed by the inmate user. The tamper resistant screws may have a screw head shape for which screwdrivers are not readily available, and the holes 352A-H are

- 14 -

recessed such that they cannot be tampered with using conventional means such as coins, paper clips, or improvised tools by inmates.

[0046]    The back plate 370 is a solid piece of plastic which contains no holes that are accessible to the user. There are 8 receptacles 352I-P that receive the tamper-resistant screws from the front plate 350. When fastened together properly, the front plate 350 and back plate 370 form a complete seal over all portions of the device, such that an inmate cannot gain access to the inner workings of the device without devising a method to separate the front and back plates from each other.

[0047]    The front and back plates, when fastened, do allow for two access points to the device. 307B and 307C form a hole when the front and back plates are sealed that allows for access to the audio jack 307A of the mobile device, and 309B and 309C similarly allow access to the barrel charger port 309A. Access to the micro-USB port 310 is not allowed by the front and back plate 350 and 370. In some embodiments, the case is designed more liberally to allow for access to the USB port 310, or to allow an aerated area over speakers on mobile device 300. However, in general, the case is designed to be extremely secure and to disallow physical access to any part of the device deemed vulnerable to security threat.

[0048]    FIG. 4 illustrates the mobile device 400 with where application and OS security barriers have been implemented. The mobile device 400 may be an exemplary embodiment of mobile devices 101-103 as seen in FIG. 1. While the previous FIG. 3A is also an embodiment of the mobile devices 101-103, FIG. 3A is intended to demonstrate the security vulnerabilities of the mobile device due to hardware accessibility, while FIG. 4 illustrates the interaction of the security measures implemented on the mobile device software, namely the application and management security barrier 420 and OS security barrier 430. Specifically, FIG. 4 shows how the security barriers implemented on the device interact with both the user input/output (I/O) modules implemented on the mobile device and the radio of the mobile device that sends out communications.

[0049]    In an embodiment, the mobile device has I/O circuitry 410 which allows the user to interact with the device. This I/O circuitry 410 includes input such as the touch screen of the mobile device as embodied by 305A of FIG. 3, the microphone, camera, and ports such as the audio jack and barrel charger jack as embodied by 307A and 309A of FIG. 3A. I/O

- 15 -

circuitry 410 also includes as USB port, as illustrated by 310 of FIG. 3A, as well as button 302 as embodied by 302 in FIG. 3A. As noted in reference to FIG. 3B, the inmate is explicitly denied access to both the button 302 and the USB port 310 by the hardware barrier embodied by front and back plate 350 and 370 as illustrated in FIG. 3B, but if the hardware barrier is bypassed, then application management and security barrier 420 and OS security barrier 430 still neutralizes any threats that arise from inmate access to those particular I/O means.

[0050]    In embodiments, the inmate interacts with the mobile device using the I/O circuitry 410. As described with reference to FIG. 3A, this interaction will mainly take place in the form of initiating and interacting with applications on the touch screen. The application management and security barrier 420 monitors these interactions to ensure that no unsanctioned activity can be initiated via any applications that the inmate is otherwise authorized to use.

[0051]    In embodiments, commercially available applications often provide functionalities that are superfluous to their main function and provide means for circumventing security monitoring in a controlled-environment setting. For example, some applications provide a simple web browser functionality that is initiated when a user selects a particular action. This provides a means of escaping IP address or domain name filters implemented on the mobile device to prevent certain internet content from being accessed by the inmate. Other applications whose main goal is not social interaction nonetheless provide basic social interaction functions such as commenting, rating functions, interactive messaging/chatting features, and voice/video chat. These functionalities provide means for inmates to engage in clandestine communications that evade security monitoring. In general, extraneous functions provided by a commercially available application provide possible means for circumventing correctional facility rules. Additionally, many commercial applications make ad-hoc changes to settings in the mobile device that may be unsanctioned by the correctional facility. An application, for example, can attempt to make changes to WiFi settings, turn on a Bluetooth radio, or turn on the GPS radio of the mobile device. This too may evade security monitoring.

- 16 -

[0052]     Given the broad range of threats inherent in applications, in embodiments, the application security barrier 420 takes two approaches. The first approach is application modification 422, in which applications that are considered useful for inmates are first stripped of any application features which are considered to be security vulnerabilities by either the ICS provider or the correctional facility. The ICS provider may also provide applications for allowable social interactions where the ICS programs in the ability to monitor the use of those applications. This monitoring may occur at the call processing center, such as call processing center 150 depicted in FIG. 1. There, data traffic that travels to and from that application can be monitored to determine if any illicit activity is occurring.

[0053]     The second approach to the application security barrier 420 is the application management 424. This module disallows the addition or removal of any applications currently on the device, as well as modifications of settings on applications considered important to the security of the device. By disallowing inmates to install new applications on the device, the inmate is prevented from gaining access to new applications that have unforeseen means of performing illicit activity that are not detectable by the ICS provider. By preventing the removal of applications by the inmate, security-related applications in particular are prevented from being removed from the device. The module also detects attempts by the user of the mobile device to use a function on an application that is unsanctioned by the correctional facility. In such cases, the module will attempt to prevent the function from being executed by the mobile device processing circuitry. In embodiments, when such activity is detected, the application security barrier 420 also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity.

[0054]     In embodiments, if application security barrier 420 is bypassed, the OS Security barrier 430 acts as the next security barrier in preventing inmates from engaging in illicit activity. Some discussion of an OS is warranted here to convey the importance of OS security barrier 430.  The main element of an OS is a "kernel", a software module that controls the interaction between applications and the mobile device hardware. The kernel serves several functions, including reserving processing resources in which the application executes its functions, and acting as the interface between the application and the hardware

- 17 -

devices on the mobile device. These hardware devices include the general I/O such as the touch screen and any tactile buttons on the mobile device, mobile device radios such as WiFi, and cellular radios, and hardware interfaces such as the USB port 310 or the audio jack 307A as shown in FIG. 3. These interfaces are shown as communication interface module 440 in FIG. 4. Connected to communication module 440 is an antennae 445. In embodiments, antennae 445 may be one or more antenna that serve the multiple wireless interfaces listed above.

[0055]    Consider the following example. An application desires data from a network connection served over a wireless interface such as Bluetooth, and also GPS coordinates from the GPS radio. The application sends requests called "system calls" to the kernel that specify actions desired by the application, and the kernel performs the necessary translations to fulfill those system calls. In this example, the kernel engages the Bluetooth radio to send and receive data, the GPS radio to receive GPS coordinates, and the processor and memory to allow the application to temporarily store the data received by the Bluetooth and GPS radios. As such, the OS, and the kernel in particular, provides a key point for ICS providers to implement security features on the mobile device.

[0056]    In embodiments, the OS security barrier 430 prevents the inmate from accessing settings of the device that controls the communication interfaces 440. In common implementations of commercially available OS, the device settings are directly accessible from the home screen as an icon similar to an application icon. This icon, and any underlying GUI that allows for easy mobile device setting changes, is removed from the mobile device. In particular, the OS barrier prevents the access to the WiFi settings to prevent the inmate inputting a non-sanctioned access point service set identifier (SSID) and passcode, such as access point 107 depicted in FIG. 1, into the mobile device. The passcode may be in the form of a wired equivalent privacy (WEP), WiFi Protected Access (WPA) or WiFi Protected Access 2 (WPA2) key. The OS barrier detects attempts by the inmate to toggle radios on and off in the mobile device, such as the WiFi, Bluetooth, or cellular radios. The access icon to settings from the operating system environment is removed, thereby preventing the one-click access to these settings. It also detects attempts by an application to make these device

- 18 -

settings changes, such as a radio being switched on to perform an function specific to the application.

[0057]      Furthermore, the OS barrier 430 also prevents the surreptitious access of the mobile device settings through applications whose security barriers have been bypassed. In many commercially available applications, a common feature allows the application to access mobile device settings directly. A common example is a map application that seeks to automatically switch on the mobile device's GPS radio when the device is engaged. In cases where the application security barrier 420 is bypassed, or simply omitted due to an oversight by the ICS provider, the application attempts to access mobile device settings, thereby allowing the inmate to change these mobile device settings. The OS barrier, at the kernel, prevents applications from accessing the mobile device settings.

[0058]      Another key feature of the OS security barrier 430 is to prevent devices that have been plugged into the available ports of the mobile device, such as USB port 310 or the audio jack 307A depicted in FIG. 3, from accessing or changing the mobile device settings. In the event that the hardware barrier, such as that depicted in FIG. 3B, is bypassed, the OS security barrier 430 also prevents peripheral devices that are plugged into the available ports on the mobile device from interacting with the applications or the settings of the mobile device. In embodiments, when such activity is detected, the OS security barrier also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity.

[0059]      While it is desirable to prohibit the inmate from changing settings or manipulating applications on the device, the ICS provider still requires access to the device settings to make various operational changes. In embodiments, the ICS provider uses an over-the-air (OTA) update functionality to access a mobile device's setting. In OTA applications, mobile device settings and application changes can be made through wireless transmission to the devices. Several applications exist that provide this functionality, where the application initiates a background process "daemon" at the mobile device startup which recognizes specific data types and commands received wirelessly. Using the OTA method, the ICS provider can send settings changes directly to mobile devices without any interaction from

- 19 -

the inmate, such as updating a WiFi SSID or password, installing, updating, or deleting applications, or initiating other operating system updates.

[0060]    In an embodiment, the other way ICS providers changes settings is by physical access to the device, wherein a terminal such as a laptop can be linked directly to the mobile device using the USB port such as 310 in FIG. 3. Though settings icons and GUIs are removed as part of the OS security barrier 230, the terminal implements software that allows access to the underlying operating system software on the mobile device to make changes as necessary. As with OTA updates described above, the operator of the terminal makes changes to the mobile device settings, install or otherwise update applications on the device, or initiate operating system updates.

[0061]    The mobile device 400 may also be fitted with a radio frequency identification (RFID) tags. RFID tags typically work in concert with an RFID reader, which sends an interrogating signal that prompts an RFID tag to send identifying information back to the reader. In an embodiment, RFID tags tied to the mobile device may emit an identification (ID) signal to an interrogating RFID reader. RFID tags typically are associated with an electronic product code (EPC) that contains a protocol, organization, and serial number component that is unique for each RFID tag. RFID tags may be either active or passive, meaning that they possess or lack a power source, respectively. Active RFID tags are capable of more complex security mechanisms to protect the communications between RFID tag and reader.

[0062]    RFID readers may be placed throughout the correctional facility in a way that allows each reader to cover all tags within a highly defined area. For example, one or more RFID readers can be placed in a particular location of a facility, such as a cafeteria, a cell block, or a courtyard, and can send interrogating signals to all mobile devices equipped with RFID tags. The RFID tags then respond with the identifying information signified in their EPC, where this code can be checked against the known codes that have been utilized by the correctional facility to track their mobile devices. There are numerous ways in which RFID tags affixed to mobile devices and RFID readers can be used to add additional security to the mobile devices.

- 20 -

[0063]        In an embodiment, an RFID tag with its associated EPC is paired with a particular device having an associated MAC address. If no RFID reader detects the reader, a signal can be sent to correctional facility administrators that a particular mobile device appears to not be within the facility grounds, and corrective steps can be taken to locate the device, question the inmate that the device has been issued to, and so on. In another embodiment, a mobile device's RFID tag may communicate with an RFID reader in an area of the facility that either the mobile device or the inmate issued the mobile device has not been permitted to occupy. In such cases, correctional facility administrators may be informed so that corrective actions can be triggered, such as searching the area of the facility in which the device was detected, questioning the inmate in possession of the device, and so on.

[0064]        Other security layer may also utilize the information obtained by RFID readers to activate security protocols against the mobile device. In one embodiment, the wireless security layer 240 may be utilized to attack the mobile device using the mobile device's associated MAC address, as is detailed FIG. 5. In another embodiment, a firewall device implementing the access control barrier 250 may be informed of the mobile device's location violation, and disregard all traffic transmitted to and received from that device, as detailed further below with respect to FIG. 7.

[0065]        A key security issue with RFID tags is that they are can be easily cloned if proper security steps are not taken. Because a basic EPC may amount to nothing more than a permanently fixed bit string, care must be taken by correctional facility administrators to prevent nefarious parties from mimicking the signal of a particular RFID tag. This can be accomplished through various forms of encryption that allow RFID readers and RFID tags to communicate securely.

[0066]        FIG. 5 illustrates a wireless access point 500. Access point 500 may be an exemplary embodiment of the access points 104-106 depicted in FIG. 1. The wireless access point 500 demonstrates an exemplary embodiment of the wireless security barrier 240 as seen in FIG. 2. The wireless access point is made up of a wireless communication interface 510 and antennae 512 coupled to the communication interface, processing circuitry 520 comprised of processor 522 and memory 524, network interface 530, and wireless intrusion prevention sensor 540 and antennae 542 coupled to the wireless intrusion prevention sensor. The

Atty. Dkt. No. 3210.1280000

- 21 -

wireless intrusion prevention sensor 540 and antennae 542 allow the wireless access point to carry out the functions of the wireless security barrier 240, while the other components serve to allow the access point 500 to serve data to and from the mobile devices, such as 101-103 in FIG. 1.

[0067]    As discussed above, the wireless access point 500 serves data wirelessly to the mobile devices 101-103. This device will typically operate under a version of the IEEE 802.11 "WiFi" protocol that allows a bi-directional link between the access point 500 and multiple mobile devices. The wireless communication interface 510 and accompanying antennae 512 allow access point 500 to communicate wirelessly with the mobile device. The processing circuitry 520, with component processor 522 and memory 524, are programmed to allow the access point to execute instructions in accordance with the WiFi protocol. The processing circuitry also carries and executes operations in accordance with the wireless intrusion prevention sensor 540 to form the wireless security barrier 240, as will be discussed in further detail below. Finally, the network interface 530 is the wireline interface that connects the access point 500 with a wider outside network, such as a LAN, WAN, or the internet. This connection serves as the backbone connection to the data networks and VoIP networks which serve data to and from the mobile devices 101-103. Typically, this interface will operate in accordance with the IEEE 802.3 "Ethernet" protocol.

[0068]    In an embodiment, the wireless intrusion prevention sensor (WIPS) 540 and antennae 542 enable the wireless access point 500 to implement wireless security barrier 240. In scenarios where the inmate has managed to bypass the application and OS security barriers 220 and 230 as depicted in FIG. 2 and discussed in greater detail relative to FIG. 4, an inmate gains access to the mobile device WiFi settings and engage in any number of unsanctioned behaviors. WIPS 540 and antennae 542 are designed to detect transmissions indicative of these unsanctioned behaviors and transmit signals to block the unsanctioned behavior from being engaged successfully by the inmate.

[0069]    The two key situations are depicted in FIGs. 6A-6B. Both figures depict a scenario within a correctional facility in which the application and OS security barriers have been bypassed by the inmate in some fashion. Specifically, in FIG. 6A, mobile device 604 has bypassed the application and OS security barriers 220 and 230 to gain access to the WiFi

- 22 -

settings in mobile device 604, and has connected to an unsanctioned wireless access point 610 outside of the correctional facility 110A. In such a case, the wireless access point 618 within the correctional facility 110A equipped with a WIPS system would detect the activity and attack mobile device 604 to prevent it from engaging successfully in the unsanctioned activity. The WIPS system also attacks the outside wireless access point device 610 if that device is determined to be an unsanctioned wireless access point that is established near the correctional facility.

[0070]    In FIG. 6B, a different scenario occurs in which an inmate in possession of mobile device 612, having bypassed the application and OS security barriers 220 and 230, gains access to the WiFi settings of the mobile device and begins behaving like a WiFi hot spot. Mobile device 612 forms wireless connections with another mobile device 614 to connect with and begin serving data to. This allows mobile devices 614 to engage in unsanctioned activity as well. In such a case, the wireless access point 628 within the correctional facility 110A equipped with a WIPS system would detect the activity and attack mobile device 604 to prevent it from engaging successfully in the unsanctioned activity.

[0071]    Returning to FIG. 5, in an exemplary embodiment, the wireless access point 500 stores in memory 524 a MAC address white list which contains the MAC addresses for all of the mobile devices issued by the prison which are authorized to access the correctional facility network. In an embodiment, the device also stores a MAC address black list of devices which are explicitly prohibited from accessing the network. The wireless access point 500 also stores a list of known wireless access point service set identifiers (SSIDs) that the ICS provider, correctional facility, or other authority recognizes as a valid network near the correctional facility. This list contains SSIDs of neighboring wireless access points, such as those that are deployed in nearby office buildings, businesses, etc. that are near the correctional facility.

[0072]    WIPS 540 is capable of detecting when unsanctioned activity related to the initiation of WiFi connections occurs. In embodiments, a typical wireless access point is associated with a SSID and a wireless media access control (MAC) address. Any mobile device connecting to a wireless access point will also have a MAC address. When a mobile device attempts to connect to a wireless access point, the wireless access point advertise its SSID

- 23 -

(and in some embodiments its MAC address) while the mobile device also exposes its MAC address. The WIPS 540 and accompanying antennae also receives the MAC address and SSID information and make a decision to perform an intervention if any of this information indicates illicit behavior on the part of an inmate within the correctional facility.

[0073]     If the WIPS 540 detects such unsanctioned behavior, it can use the information of the SSID, access point MAC address, or mobile device MAC address to attack the device engaged in the unsanctioned activity to prevent that activity from being successful. The WIPS 540 attack is through a deauthentication denial of service attack. In this attack, the WIPS 540 and antennae 542 repeatedly sends deauthentication frames to the device engaged in the unsanctioned activity. By "flooding" the target device with these frames, the WIPS can essentially render the target device inoperable due to the target device's attempt to process these frames. The examples of FIGs. 6A and 6B are exemplary embodiments of situations in which a mobile device bypasses the application and OS security barriers and gain access to the WiFi device. In embodiments, when such activity is detected, the WiFi device also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified  of such activity.

[0074]     In FIG. 6A, mobile device 604, having been compromised by the inmate that possesses it, disconnects from a sanctioned wireless access point, such as 616 and 618 within the correctional facility 110a, and attempts to connect with a wireless access point 610 outside the correctional facility. The wireless access points 616 and 618, having been provisioned by the ICS provider, are equipped with WIPS systems as embodied by WIPS 540 in access point device 500. When the mobile device 604 and wireless access point 610 exchange messages during common WiFi authentication procedure, the WIPS sensors on one or both of the wireless access point 616 and 618 detect the MAC address of the mobile device 604 and recognizes the device as a mobile device issued by the correctional facility 110a, and detects that it is attempting to authenticate with a wireless access point 610 that is not provisioned within the correctional facility 110a. Note that wireless access point 610 is on the whitelist of recognized outside wireless access points. In such cases, this wireless access point 610 would be ignored by the WIPS system of any of the wireless access points

- 24 -

within correctional facility 110a so long as they were not engaged in any activity with a mobile device issued by the correctional facility.

[0075]     At this point, the wireless access point 618 determines that the behavior is unsanctioned, and attacks the mobile device 604 using a deauthentication attack as described above. If the wireless access point 610 is not found on the whitelist of acceptable outside wireless access points based on its SSID or MAC address, the wireless access point 618 also attacks the wireless access point device 610 using a similar deauthentication attack. It should be noted that in some embodiments, the wireless access point 610 could also be a wireless access point that an inmate has snuck into the correctional facility. The WIPS system would not distinguish between these situations, and would attack this wireless access point as long as it was not on the access point whitelist as described above.

[0076]     In FIG. 6B, mobile device 612 disconnects from a sanctioned wireless access point such as access point 628 or 630 within correctional facility 110B. In this embodiment, mobile device 612 begins functioning as a wireless hot spot, wherein the device 612 essentially behaves like a typical wireless access point using the IEEE 802.11 protocol and form WiFi wireless connections with other devices. Another mobile device 614 within the facility then forms a wireless WiFi connection with 612. In such a case, the WIPS system of the wireless access point 628 would detect the device 612 either through its SSID or MAC address and use a deauthentication attack as described above against the mobile device 612. Additionally, it may attack mobile device 614 because it detects that this device is issued by the correctional facility and is attempting to access a wireless access point (in this case mobile device 612 behaving as a WiFi hot spot) that is not recognized by the facility.

[0077]     FIG. 7 depicts the firewall 700 that implements the access control security barrier. Firewall 700 may be considered an exemplary embodiment of the access control security barrier 250 as depicted in FIG. 2. FIG. 7 depicts the firewall 700 in relation to a correctional facility 110C. In embodiments, the firewall 700 may be implemented on existing router hardware in network 730 or in dedicated hardware that can implement "fully qualified domain name" (FQDN) filtering. This distinction will be fully discussed below. In an embodiment, the correctional facility 110C contains several mobile devices 701-703 issued by the correctional facility, along with wireless access points 704-706 that are placed

- 25 -

throughout the correctional facility by the ICS provider. These wireless access points 704-706 may be implementations of wireless access point 500 that include a wireless intrusion prevention sensor 540 and antennae 542 as depicted in FIG. 5. The wireless access points 704-706 serve to connect mobile devices 701-703 with applications and services requiring network connectivity that are sanctioned by the correctional facility.

[0078]     In an embodiment, the wireless access points have wireline connections to the firewall 700, which then connects to the network 730. Network 730 may be an embodiment of network 130 as depicted in FIG. 1. The wireless access points, as discussed relative to FIG. 5, are connected to other routing and switching devices, including a firewall 700, via high bandwidth wireline connections operating on existing protocols such as IEEE 802.3 Ethernet protocol. The firewall 700 implements an access control list 710 that contains lists of allowable internet protocol (IP) addresses that are allowed to communicate with the mobile devices. Network 730, as described previously, consists of routers and switches running well-known protocols such as IEEE 802.3 "Ethernet" protocol. The network may be owned and provisioned by the correctional facility 110C, the ICS provider, or may be part of a public network such as the internet. The network 730 then connects to a call processing center controlled by the ICS provider, as depicted in FIG. 1 (150).

[0079]     Thus, in the architecture shown in FIG. 7 (and FIG. 1), any data traffic that is sent or received by the mobile devices 701-703 is routed through the firewall 700. The access control list 710 lists the allowable IP addresses and/or web domains that are allowed to exchange data with the mobile devices issued by the correctional facility. Since all data traffic to or from the mobile devices passes through the firewall 700, the firewall device engages in packet inspection operations that can determine the IP addresses and/or the web domains of each individual packet. If the firewall device detects packets that are not addressed to or from the list of IP addresses or web domains contained on the access control list 710, the firewall device can simply discard the packets without allowing them to travel to their intended destination. In embodiments, when such activity is detected, the firewall may also send a notification to the call processing center such that ICS or correctional facility personnel may be notified  of such activity. This alert may contain identifier information of

- 26 -

the mobile device engaging in the activity such as the MAC address, the SSID or other identifier information of an unsanctioned WiFi hotspot, or otherwise.

[0080]     Thus, the firewall 700 and its access control list 710 form the final security barrier between the mobile devices 701-703 and the outside world. In situations in which the inmate in possession of the mobile device has managed to bypass the application and OS security barriers by gaining access to an unsanctioned application or function which allows them to attempt to communicate with an unsanctioned website or IP address, any traffic routed through the ICS provider system will be routed necessarily through the firewall 700. This may happen if an application is installed on the mobile device which has a web browser function, or if an existing application is hacked. Thus, firewall 700, detecting traffic directed to or from unsanctioned addresses, discards any such traffic before it reaches the inmate or the unsanctioned address. It should be noted, however, that in embodiments the access control barrier embodied by firewall 700 does not serve as a security barrier for certain types of unsanctioned activity. For example, if a mobile device manages to connect to an outside wireless access point, as depicted in FIG. 6A, the traffic between the mobile device and outside wireless access point is not subject to the packet inspection and filtering operations of the firewall 700.

[0081]     For clarity, the firewall 700 is depicted as a separate device, but depending on the scope of the access control list 710, may in fact be implemented on existing router hardware in the network 730. For example, if the access control list is made up entirely of Internet Protocol version 4 (IPv4) addresses, which are made up of four 3-digit numbers separated by periods such as "195.168.0.0" seen in FIG. 7, then the access control list 710 may be implemented directly on the routers of network 730, and as such would not require a fully separate firewall 700. However, if a correctional facility sanctions access to website domains for a particular service, such as a law-related website called "www.legalaide.com" as seen in FIG. 7, the access control list requires a fully qualified domain name (FQDN) firewall which is implemented on dedicated hardware. In such cases, the firewall 700 would indeed be a separate entity from the routers and switches comprising the network 730. Simply put, for the firewall 700 to satisfy the requirements of access control barrier 250 is that all data traffic to or from the mobile devices must be passed through devices that can implement the packet

- 27 -

inspection and discarding operations described above. Even in cases where correctional facilities only require an access control list 700 comprised of only IPv4 addresses, a separate firewall 700 may be desired due to the significantly more flexible and customizable nature of the hardware in implementing an access control list.

[0082]     FIG. 8A-C illustrate the security barriers that an inmate may need to bypass in order to engage in three different types of unsanctioned behavior. As is demonstrated, not all security barriers are operative depending on the type of unsanctioned behavior the inmate wishes to engage in, but the multiple security barriers interact together to provide a robust security suite in all scenarios. It should be noted that these figures are meant to be illustrative, and in no way represent the entirety of unsanctioned behaviors or security breaches that an inmate may wish to engage. In the embodiment depicted in FIG. 8A, the inmate 209 desires to charge a contraband device using the power source of the mobile device. In order to gain access to the battery of the mobile device and allow for a reverse current to travel from the battery to the contraband device, the inmate would have to bypass the hardware barrier 210 by either opening the mobile device case (350 and 370) to gain access to USB connector port (310) or manipulating the barrel connector diode (such as 309A as depicted in FIG. 3A) to allow a reverse electrical current. The inmate then must bypass both the application and OS security barriers 220 and 230 to change the settings of the USB connector port 310 to allow a reverse electrical current to travel from the mobile device to the contraband device. If inmate 209 managed to bypass these three barriers, the inmate is able to charge the contraband device. Notice that, because the goal of the security breach is to charge a contraband device, the wireless security barrier 240 and access control list barrier 250 do not pose any hindrance to the inmate 209.

[0083]     In the embodiment depicted in FIG. 8B, the inmate 209 wishes to access an unsanctioned social network website. In order to engage in this behavior, in embodiments the inmate 209 has to bypass the hardware security barrier to connect a peripheral device to the mobile device. The inmate 209 has to also bypass the application security barrier in order to either install an application not yet installed on the mobile device or change an existing application on the mobile device to allow the inmate to use a web browser. The inmate may also need to bypass the operating system security barrier 230 in order to install applications

Atty. Dkt. No. 3210.1280000

- 28 -

on the mobile device. Finally, if the inmate manages to break all barriers of security localized on the mobile device, the access control list barrier 250 still needs to be bypassed in order to send between the mobile device and the unsanctioned destination. Notice, however, that the wireless security barrier 240 is not present in the security barrier stack. This is because typically the wireless access point that implements the wireless security barrier 240 does not necessarily have the functionality to perform packet inspection. As such, this barrier may pose no hindrance to the inmate 209 in this particular scenario. However, in other embodiments, more advanced wireless access points may be capable of packet inspection and packet discarding.

[0084]      Finally, in FIG. 8C, the inmate 209 may wish to disconnect the mobile device from its sanctioned wireless access point within the correctional facility and connect to an outside wireless access point. This scenario is also described with reference to FIG. 6A. In this scenario, the inmate 209 may need to bypass the hardware security in order to connect a peripheral device to the mobile device via the USB connector port such as port 310 in FIG. 3A, then bypass both the application and OS security barriers 220 and 230 to gain access to the wireless settings of the mobile device. Once those barriers are bypassed, meaning that the inmate 209 has managed to change the mobile device wireless settings in order to attempt to connect to an unsanctioned wireless access point, the wireless security barrier 240 implemented on a sanctioned wireless access point detects this breach and attack the mobile device and potentially the outside wireless access point with a deauthentication attack as described above with reference to FIG. 5, FIG. 6A, and FIG. 6B above. Notice that in this case the access control barrier 250 is not a hindrance to inmate 209 because the firewall that implements the access control list of barrier 250 does not filter the traffic of a wireless access point outside of the correctional facility.

[0085]      In all three cases, different barriers of the security suite 200 due to the nature of the unsanctioned activity attempted by the inmate 209. This demonstrates the need for and interplay between the security barriers 210-250 – not all barriers are capable of providing security against all types of security bypass attempts, but several barriers hinder any single security bypass attempt.

Atty. Dkt. No. 3210.1280000

- 29 -

[0086]      FIG. 9 depicts a computer system 900 which can be used to implement It will be apparent to persons skilled in the relevant art(s) that various elements and features of the present disclosure, as described herein, can be implemented in hardware using analog and/or digital circuits, in software, through the execution of computer instructions by one or more general purpose or special-purpose processors, or as a combination of hardware and software.

[0087]      The following description of a general purpose computer system is provided for the sake of completeness. Embodiments of the present disclosure can be implemented in hardware, or as a combination of software and hardware. Consequently, embodiments of the disclosure may be implemented in the environment of a computer system or other processing system. For example, the method of FIGS. 5-6 can be implemented in the environment of one or more computer systems or other processing systems. An example of such a computer system 900 is shown in FIG. 9. One or more of the modules depicted in the previous figures can be at least partially implemented on one or more distinct computer systems 900.

[0088]      Computer system 900 includes one or more processors, such as processor 904. Processor 904 can be a special purpose or a general purpose digital signal processor. Processor 904 is connected to a communication infrastructure 902 (for example, a bus or network). Various software implementations are described in terms of this exemplary computer system. After reading this description, it will become apparent to a person skilled in the relevant art(s) how to implement the disclosure using other computer systems and/or computer architectures.

[0089]      Computer system 900 also includes a main memory 906, preferably random access memory (RAM), and may also include a secondary memory 908. Secondary memory 908 may include, for example, a hard disk drive 910 and/or a removable storage drive 912, representing a floppy disk drive, a magnetic tape drive, an optical disk drive, or the like. Removable storage drive 912 reads from and/or writes to a removable storage unit 916 in a well-known manner. Removable storage unit 916 represents a floppy disk, magnetic tape, optical disk, or the like, which is read by and written to by removable storage drive 912. As will be appreciated by persons skilled in the relevant art(s), removable storage unit 916 includes a computer usable storage medium having stored therein computer software and/or data.

Atty. Dkt. No. 3210.1280000

- 30 -

[0090]    In alternative implementations, secondary memory 908 may include other similar means for allowing computer programs or other instructions to be loaded into computer system 900. Such means may include, for example, a removable storage unit 918 and an interface 914. Examples of such means may include a program cartridge and cartridge interface (such as that found in video game devices), a removable memory chip (such as an EPROM, or PROM) and associated socket, a thumb drive and USB port, and other removable storage units 918 and interfaces 914 which allow software and data to be transferred from removable storage unit 918 to computer system 900.

[0091]    Computer system 900 may also include a communications interface 920. Communications interface 920 allows software and data to be transferred between computer system 900 and external devices. Examples of communications interface 920 may include a modem, a network interface (such as an Ethernet card), a communications port, a PCMCIA slot and card, etc. Software and data transferred via communications interface 920 are in the form of signals which may be electronic, electromagnetic, optical, or other signals capable of being received by communications interface 920. These signals are provided to communications interface 920 via a communications path 922. Communications path 922 carries signals and may be implemented using wire or cable, fiber optics, a phone line, a cellular phone link, an RF link and other communications channels.

[0092]    As used herein, the terms "computer program medium" and "computer readable medium" are used to generally refer to tangible storage media such as removable storage units 916 and 918 or a hard disk installed in hard disk drive 910. These computer program products are means for providing software to computer system 900.

[0093]    Computer programs (also called computer control logic) are stored in main memory 906 and/or secondary memory 908. Computer programs may also be received via communications interface 920. Such computer programs, when executed, enable the computer system 900 to implement the present disclosure as discussed herein. In particular, the computer programs, when executed, enable processor 904 to implement the processes of the present disclosure, such as any of the methods described herein. Accordingly, such computer programs represent controllers of the computer system 900. Where the disclosure is implemented using software, the software may be stored in a computer program product and

Atty. Dkt. No. 3210.1280000

- 31 -

loaded into computer system 900 using removable storage drive 912, interface 914, or communications interface 920.

[0094]     In another embodiment, features of the disclosure are implemented primarily in hardware using, for example, hardware components such as application-specific integrated circuits (ASICs) and gate arrays. Implementation of a hardware state machine so as to perform the functions described herein will also be apparent to persons skilled in the relevant art(s).

[0095]     It is to be appreciated that the Detailed Description section, and not the Abstract section, is intended to be used to interpret the claims. The Abstract section may set forth one or more, but not all exemplary embodiments, and thus, is not intended to limit the disclosure and the appended claims in any way.

[0096]     The disclosure has been described above with the aid of functional building blocks illustrating the implementation of specified functions and relationships thereof. The boundaries of these functional building blocks have been arbitrarily defined herein for the convenience of the description. Alternate boundaries may be defined so long as the specified functions and relationships thereof are appropriately performed.

[0097]     It will be apparent to those skilled in the relevant art(s) that various changes in form and detail can be made therein without departing from the spirit and scope of the disclosure. Thus, the disclosure should not be limited by any of the above-described exemplary embodiments, but should be defined only in accordance with the following claims and their equivalents.

Atty. Dkt. No. 3210.1280000



FIG. 1

4905299_1 / 1

<u>200</u>



**FIG. 2**

4905299_1 / 3



330A
330B
330C
330D

320

330

**FIG. 3A**



300

306A

306B

307A

305A

302

309A

310

312



**FIG. 3B**

4905299_1 / 4

400



**FIG. 4**



**FIG. 5**

4905299_1 / 6



**FIG. 6B**



**FIG. 6A**

4905299_1 / 7



4905299_1 / 8

FIG. 7



209

210  Hardware

220  Application

230  Operating system

240  Wireless Security

**FIG. 8C**

209

210  Hardware

220  Application

230  Operating system

250  Access control

**FIG. 8B**

209

210  Hardware

220  Application

230  Operating system

**FIG. 8A**

4905299_1 / 9



FIG. 9

Doc Code: PA.
Document Description: Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| Application Number | *To Be Assigned* |
|---|---|
| Filing Date | *Herewith* |
| First Named Inventor | Jason MARASS |
| Title | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| Art Unit | *To Be Assigned* |
| Examiner Name | *To Be Assigned* |
| Attorney Docket Number | 3210.1280000 |

### SIGNATURE of Applicant or Patent Practitioner

| Signature | | Date (Optional) | 2/13/17 |
|---|---|---|---|
| Name | Lauren C. Schleh | Registration Number | 65,457 |
| Title (if Applicant is a juristic entity) | Attorney for Applicant | | |
| Applicant Name (if Applicant is a juristic entity) | GLOBAL TEL*LINK CORPORATION | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

[X] *Total of 1 forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

5038124     *If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014  OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in __either__ the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note:  The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[X]  I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:    | 26111 |

OR

[ ]  I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above.  (Note:  Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[X]  The address associated with the above-mentioned Customer Number

OR

[ ]  The address associated with Customer Number:    | 26111 |

OR

| Firm or Individual Name |  | | |
|---|---|---|---|
| Address |  | | |
| City |  | State | Zip |
| Country |  | | |
| Telephone |  | Email | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

Global Tel*Link Corp.

[ ]  Inventor or Joint Inventor (title not required below)

[ ]  Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[X]  Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ]  Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

**SIGNATURE of Applicant for Patent**

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature |  | Date (Optional) | 8-22-2016 |
|---|---|---|---|
| Name | Stephen L. Hodge | | |
| Title | Senior Vice President, Research and Development | | |

**NOTE:**  Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[X] Total of   1   forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2*

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280000 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor    1**    [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Jason | | MARASS | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|

| City | Fairhope | State/Province | AL | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 410 Myrtle Ave. | | |
|---|---|---|---|
| Address 2 | | | |
| City | Fairhope | State/Province | AL |
| Postal Code | 36532 | Country i | US |

**Inventor    2**    [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Brian | | PETERS | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|

| City | St. Paul | State/Province | MN | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 1375 Fairmount Ave. | | |
|---|---|---|---|
| Address 2 | | | |
| City | St. Paul | State/Province | MN |
| Postal Code | 55105 | Country i | US |

**Inventor    3**    [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Garth | | JOHNSON | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|

EFS Web 2.2.12

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280000 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

| City | Indianapolis | State/Province | IN | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 8920 Stormhaven Ct. | | |
|---|---|---|---|
| Address 2 | | | |
| City | Indianapolis | State/Province | IN |
| Postal Code | 46256 | Country i | US |

Inventor    4                                                     Remove
Legal Name

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Stephen | Lee | HODGE | |

| Residence Information (Select One) | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|

| City | Dallas | State/Province | TX | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 10030 Inwood Road | | |
|---|---|---|---|
| Address 2 | | | |
| City | Dallas | State/Province | TX |
| Postal Code | 75229 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the Add button.                 Add

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ An Address is being provided for the correspondence Information of this application.

| Customer Number | 26111 | |
|---|---|---|
| Email Address | | Add Email    Remove Email |

## Application Information:

| Title of the Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |
|---|---|---|
| Attorney Docket Number | 3210.1280000 | Small Entity Status Claimed ☐ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Total Number of Drawing Sheets (if any) | 10 | Suggested Figure for Publication (if any) |

PTO/AIA/14 (11–15)
Approved for use through 04/30/2017.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 3210.1280000 |
| | Application Number | |
| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed.  Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
| --- | --- | --- |
| | | |

## Publication Information:

☐  Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐  **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ⦿  Customer Number | ◯  US Patent Practitioner | ◯  Limited Recognition (37 CFR 11.9) |
| --- | --- | --- | --- |
| Customer Number | 26111 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | | | Remove |
| --- | --- | --- | --- |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | | | |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280000 |
|---|---|---|
| | Application Number | |
| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the
**Add** button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280000 |
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |

## Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

1. **Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

A. **Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

B. **Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

2. **Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

NOTE: Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 3210.1280000 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant    1**

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[ Clear ]

| ◉ Assignee | ○ Legal Representative under  35 U.S.C. 117 | ○ Joint Inventor |
|---|---|---|
| ○ Person to whom the inventor is obligated to assign. | ○ Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.          ☒

| Organization Name | GLOBAL TEL*LINK CORPORATION |
|---|---|

**Mailing Address Information For Applicant:**

| Address 1 | 12021 Sunset Hills Road | | |
|---|---|---|---|
| Address 2 | Suite 100 | | |
| City | Reston | State/Province | VA |
| Country | US | Postal Code | 20190 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 3210.1280000 |
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| --- | --- |

| **Assignee     1** |
| --- |

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

If the Assignee or Non-Applicant Assignee is an Organization check here.    ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
| --- | --- | --- | --- | --- |
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
| --- | --- |
| Address 2 | |
| **City** | | **State/Province** | |
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

## Signature:

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).

   This Application Data Sheet must be signed by a patent practitioner if one or more of the applicants is a juristic entity (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, all joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of all joint inventor-applicants.

   See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | | **Date** (YYYY-MM-DD) | 2019-08-19 |
| --- | --- | --- | --- |
| First Name | Lauren C. | Last Name | Schleh | Registration Number | 65457 |

Additional Signature may be generated within this form by selecting the Add button.

PTO/AIA/14 (11-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280000 |
|---|---|---|
|  | Application Number |  |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Jason MARASS        Date (Optional): 2/6/17

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2

5206644

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any wilful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Brian PETERS        Date (Optional): 3/1/17

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2

5026644

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Garth JOHNSON          Date (Optional): 1/30/2017

Signature: _[signature]_

Note: An application data sheet (PTO/AIA/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. This information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

502684

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Stephen Lee HODGE

Date (Optional) : 2-6-2017

Signature:

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

5026644

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: *To Be Assigned* |
| Applicant: GLOBAL TEL*LINK CORPORATION | Art Unit: *To Be Assigned* |
| Application No.: *To Be Assigned* | Examiner: *To Be Assigned* |
| Filing Date: *Herewith* | Atty. Docket: 3210.1280000 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

### Authorization to Treat a Reply as Incorporating an Extension of Time Under 37 C.F.R. § 1.136(a)(3)

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

The U.S. Patent and Trademark Office is hereby authorized to treat any concurrent or future reply that requires a petition for an extension of time under this paragraph for its timely submission, as incorporating a petition for extension of time for the appropriate length of time. The U.S. Patent and Trademark Office is hereby authorized to charge all required extension of time fees to our Deposit Account No. 19-0036, if such fees are not otherwise provided for in such reply.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date: 2/17/17

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

5038022_1

**EXHIBIT 38**



Google Play

Games    Apps    Movies & TV    Books    Kids



# NCIC Mobile Video Visitation
Keeping Intouch

| 3.5 ★ | 50K+ | Teen ⓘ |
|---|---|---|
| 309 reviews | Downloads | |

Install

🔖 Add to wishlist



## About this app

The NCIC App is the most convenient way to stay connected to your family and/or friend that is incarcerated. NCIC allows you to send and receive text messages, giphys, emojis, video messages, pictures, and have remote video visitations.
Features:
Create or Login to your NCIC account
Add funds using a credit/debit card
Send text messages, giphys, and emojis...

### Updated on
Feb 17, 2023

Communication

## Data safety

Safety starts with understanding how developers collect and share your data. Data privacy and security practices may vary based on your use, region, and age. The developer provided this information and may update it over time.

🔗 **No data shared with third parties**
Learn more about how developers declare sharing

☁ **No data collected**
Learn more about how developers declare collection

See details

## Ratings and reviews



Google Play

Games     Apps     Movies & TV     Books     Kids

3.5
★★★½☆
309 reviews

| | |
|---|---|
| 4 | |
| 3 | |
| 2 | |
| 1 | |

**Sydney Woiderski**

★☆☆☆☆    February 17, 2023

Terrible experience since the recent update... it's updated twice in the past week. Last night I couldn't even access the video call thru the app or thru the actual website on a computer. Today, just now we had another visit this time the video pops up and you can only see like 3/4 of theirs and mine face! Makes me not want to pay for it at all now. On top of that video showing part of our face constantly moves around. So frustrating.

6 people found this review helpful

Did you find this helpful?    Yes    No

**Marie Gilbert**

★★★☆☆    March 14, 2023

Like the new layout/color scheme. I haven't had any issues opening the app since update (mine automatically updated). The issue I'm now having since the latest update is that I no longer receive a notification when a message is sent to me. Update 3/14/2023 Issue with no notifications was fixed, but since that fix now unable to send short videos. Says that my camera isn't working, but can take/send pictures all day long....grr

5 people found this review helpful

Did you find this helpful?    Yes    No

**Crystal Bonner**

★☆☆☆☆    February 16, 2023

This has been the worse thing to happen to this app!! It keeps kicking me off and I can never log into it for that same reason. The old one was alot better!! It stayed logged in all the time and I got all my messages sent all kinds of videos and visiting was better. This update is terrible now

7 people found this review helpful

Did you find this helpful?    Yes    No

See all reviews

## What's new

- Fixed issues with calls and notifications

## Developer contact                                                                    ⌄

## Similar apps                                                                         →

| | | | |
|---|---|---|---|
| Commissary CLICK2GO | STCU Mobile Banking | | |
| Commissary CLICK2GO | Spokane Teachers Credit Union | | |
| 4.5 ★ | 4.7 ★ | | |
| Ameelio Mail: Photos to Prison | TextBehind Inmate Texting App | | |
| Ameelio | TextBehind, Inc | | |
| 4.0 ★ | 4.4 ★ | | |
| Deseret 1st CU Mobile Banking | Chime Real Estate CRM | | |
| Deseret First Credit Union | Chime Technologies, Inc. | | |



Games          Apps          Movies & TV          Books          Kids

**Google Play**

Play Pass

Play Points

Gift cards

Redeem

Refund policy

**Kids & family**

Parent Guide

Family sharing

Terms of Service     Privacy     About Google Play     Developers     Google Store     🇺🇸 United States (English (United States))

**EXHIBIT 39**



# Va. tech company providing inmates with tablets with goal of increased education access

by 7News Staff | Wed, April 19th 2023, 8:48 PM PDT

[▶]

3
VIEW ALL PHOTOS

*A Falls Church based tech company is looking to use technology to give prisoners a better opportunity upon release (ViaPath Technologies)*

FALLS CHURCH, VA. (7News) — Falls Church based **ViaPath Technologies** is widely known as a prison phone company, but their social impact initiatives now have them focusing on recidivism.

Communities throughout the DMV have seen lives disrupted, and certain crime rise recently.

The experts trying to find out how to stop this cycle often turn their attention to the likelihood of those who are imprisoned and released ending up right back behind bars.

"We cannot continue to just lock people up and never give them an opportunity to change," said Tony Lowden, the Chief Social Impact Officer of ViaPath Technologies. He previously served as the White House Reentry Czar.

Promoted Links



**HELLO BREAKTHROUGHS.GOODBYE OBSTACLES**

Children's National Hospital

[Learn More]

This month the Biden administration declared April **"Second Chance Month,"** aiming to help prisoners start new and build a safer society.

"The last thing we want them to do is be so desperate they do desperate things," Lowden said. "We also need to look at when they



1/6

desperate things," Lowden said. "We also need to look at when they come home how do we change their criminal thinking. Instead of trying to do criminal things to provide for their family or themselves, or being entrepreneurs in an illegal space we have to give them the tools on the inside."

ViaPath's mission is getting technology, including tablets, into the hands of inmates serving time for nonviolent crimes.

"So, when they come home they become viable, added members to their communities," said Lowden.

**READ ALSO: Incarcerated to inventor--how a Georgetown program is helping former inmates add value**

The tablets are safe and secure with no access to off-limit areas on the internet. They are pre-loaded with what inmates need to get a GED, vocational certifications, and technical apprenticeships.

"We put 39,000 tablets in North Carolina six months ago," he said. "Today, we have over 300,000 certificates, which means 300,000 completed courses in six months in North Carolina prisons."

Antonio Sadler knows firsthand the struggles of trying to improve while in prison, where Lowden says there may be two or three computers for 4,000-5,000 inmates.

"Before (the program), you'd be lucky to have a teacher that's working part-time, some torn-up books that somebody donated, and 100 or 200 guys trying to get in a classroom that's only built for 20 people," Sadler said.

**READ ALSO: Second chance at life: Former inmate becomes CEO of app that sends postcards to prison**

He served 10 years but was able to take full advantage of the program.

"I had a personal tablet that was assigned to me," he said. "I could sit on my bed as much as I wanted, wherever I went and I could be studying in times I would just be doing nothing or possibly getting into trouble," he said.

Sadler was able to get certified in operating a forklift.

He ended up being hired by ViaPath's second chance program once he was released from prison.

With a shortage of skilled workers, Lowden said it is time to up-skill people who are hungry to work even if they've made mistakes in the past.

"We have over 78,000,000 people in our nation right now that have a felony on their records," Lowden said. 78 million people. That should not put a person in a lifetime of poverty."

💬 **JOIN THE CONVERSATION (0)**

He's calling on local governments to join the company in expanding the access to technology and educational programs.

MORE TO EXPLORE

School board votes to stop hiring from Christian college, says beliefs make people unsafe

Police arrest man in possession of over 2,000 fentanyl pills

With white pants stained, Kenyan senator fights menstruation taboo

SPONSORED CONTENT                                                by Taboola

HELLO BREAKTHROUGHS.GOOD BYE OBSTACLES
Children's Nationa... | SPONSORED

Online Strategy Game 2022
Total Battle - Tacti... | SPONSORED

Don't Play This Game if You Are Under 40 Years Old
BuzzDaily Winners | SPONSORED

AdChoices ▷                                                  Sponsored

## Conversation

Your voice matters. Discussions are moderated for civility. See our guidelines.

Be the first to comment...

No one seems to have shared their thoughts on this topic yet

Leave a comment so your voice will be heard first.

Powered by ⚪ OpenWeb                    Terms | Privacy | Feedback

ADVERTISEMENT

## NEWS IN PHOTOS:  "Local"



**UPDATED** NFL Draft: Washington Commanders not looking for a quarterback



Uber Eats debuts sidewalk robot deliveries in Fairfax, Virginia -- here's how it works



Charles County student hospitalized after ingesting substance from vape pen: Officials



1 dead after crashing into tow truck, police vehicle in Prince George's County: MSP

ADVERTISEMENT



## All clear given after shelter in place at Marine Corps Base Quantico: Officials

by 7News Staff  |  Thu, April 20th 2023, 10:40 AM PDT



*Personnel at Marine Corps Base Quantico was under a shelter in place order Thursday afternoon, according to officials at the Virginia base.*

QUANTICO, Va. (7News) — The all-clear was given after a shelter in place order at Marine Corps Base Quantico on Thursday, according to officials at the Virginia base.

As of 1:45 p.m., authorities have not indicated a reason for the shelter in place. All inbound and outbound traffic is open again, officials said.

💬 JOIN THE CONVERSATION (0)

No further details were immediately available.

Look For Any High School Yearbook, It's Free

Look For Any High School Yearbook, It's Free

Classmates

⋯  JOIN THE CONVERSATION (0)

No further details were immediately available.

MORE TO EXPLORE



**Maryland woman killed in private jet bound for Leesburg didn't die from turbulence: Report**

**Ohio teen dies attempting TikTok challenge, parents warn other families**

**31-year-old high school employee accused of sexually assaulting student**

SPONSORED CONTENT                                          by Taboola

**Look For Any High School Yearbook, It's Free**
Classmates | SPONSORED

**If You Used Roundup and Suffer From Cancer You Could Be Entitled To Compensation**
Roundup | SPONSORED

**People in Ashburn are Loving Martha Stewart's Meal Kit**
Martha Stewart & … | SPONSORED

AdChoices                                          Sponsored

## Conversation

👥 41 Viewing

Your voice matters. Discussions are moderated for civility. See our guidelines.

Be the first to comment…                                          😊

💬

**No one seems to have shared their thoughts on this topic yet**

Leave a comment so your voice will be heard first.

**EXHIBIT 40**

**JACS SOLUTIONS LLC**
8808 Centre Park Drive Suite 305 Columbia, MD 21045, USA
TEL: (410) 493-6718  FAX: +1 866-723-3050

DATE : Aug. 6, 2018

Equipment Autorisation Division
Federal Communications Commission
7435 Oakland Mills Road
Columbia, MD 21046

FCC ID: 2AGCDJACSTG801
Product Name: 8inch Tablet
**Request for Confidentiality**

Pursuant to Sections 0.457 and 0.459 of the commissions rules, we hereby request that
the following documents be held confidential:

(List here the documents for which you are seeking confidentiality – for example …)

- Schematics
- Block diagram
- Operation description

These materials contain trade secrets and proprietary information and are not
customarily released to the public.  The public disclosure of this information might be
harmful to the company and provide unjustified benefits to our competitors.

*Dated*      *8-6-2018*
*this*        _____

*By:*    _____        *Candy Zhang*_____
                    *Signature*                              *Printed*

*Title:*   *Manager*_____

*On behalf of :*        *JACS SOLUTIONS LLC*___

*Telephone:*   *(410) 493-6718*_____

**EXHIBIT 41**















**EXHIBIT 42**



2021/8/24


Federal Communications Commission
Office of Engineering and Technology
445 12th ST SW
Washington, DC 20554


Attention: Equipment Registration Services
RE: Change in ID Approval


JACS Solutions, Inc.
Original FCC ID: 2AGCDJACSTG801
**Name: 8inch Tablet;**
Original Approval Date: 08/26/2018


To Whom It May Concern:

JACS Solutions, Inc.  gives authorization to the Federal Communications Commission to use information on file to grant Change in ID certification to JACS Solutions, Inc.. The new FCC ID is 2AGCDJACSTR810. The model to be multiple-listed is identical in design and construction to the originally approved model.


The original test results continue to be representative of and applicable to the equipment bearing the multiple-listed model.

If you required any additional information, please contact us.

Regards,

Contact name: Candy Zhang
Title:  Treasurer
Tel: (410) 493-6718
Email: candy@jacs-solutions.com
JACS Solutions, Inc.


JACS Solutions, Inc.   809 Pinnacle Drive, STE R, Linthicum Heights, MD 21090

**EXHIBIT 43**

FCC ID:2AGCDJACSTR810















**EXHIBIT 44**



**MICHAEL D. SPECHT**
Director
202-772-8756
mspecht@sternekessler.com

September 22, 2022

Steel Liu                                                    *Via Email*
JACS Solutions LLP                              *steel@jacs-solutions.com*
809 Pinnacle Drive, Suite R
Linthicum Heights, MD 21090
steel@jacs-solutions.com

     Re:     ViaPath Technologies and JACS Solutions LLP Manufacturing and Services
                 Agreement

Dear Mr. Liu:

     This law firm represents Global Tel*Link Corporation d/b/a ViaPath Technologies
("ViaPath"). For more than 10 years, ViaPath and JACS Solutions have maintained a
partnership, including a contractual arrangement for the exclusive supply of various inmate
facing handheld devices and inmate accessible wall mounted devices, along with the
accompanying software for the devices ("Software"). It has come to ViaPath's attention that
JACS Solution has breached the parties' Manufacturing and Services Agreement, dated
December 13, 2018 ("MSA"). Based on our preliminary investigation, it appears that, at a
minimum, JACS Solution violated Section 3.8 of the MSA by selling a rebranded version of the
Inspire 3 ("TG801") to NCIC, an inmate communications provider, for use in the Yellowstone
County, Montana correctional facilities.

     Our client ViaPath has attempted to discuss and resolve this issue with you in writing and
in person to no avail. Please be advised that JACS Solutions has an obligation to preserve all
relevant evidence directly and indirectly related to the MSA, including but not limited to emails,
voicemails, texts, all messaging services, electronic documents, paper documents, software (all
versions), and tablets.

     Moreover, <u>within five days of receipt of this letter</u>, JACS Solutions must agree in writing
to:

-    Comply with Section 3.8 of the MSA by refraining from supplying NCIC, or any
  other third party providing services, directly or indirectly, to the corrections
  vertical, with similar products that JACS Solution has manufactured or supplied
  to ViaPath; and

-    Refrain from any further sale, license, distribution, publication, access or use of
  the Software without ViaPath's explicit written consent.

     Additionally, <u>within five days of receipt of this letter</u>, JACS Solutions must:

Steel Liu
September 22, 2022
Page 2

- Deliver to ViaPath the Android Open Source Project Source Code for TG801 and TP 156 and JACS IP (Kernel) in object code and binaries, as required under Section 3.5 of the MSA.

The foregoing is the ***minimum*** immediate expectation ViaPath has of JACS Solutions. ViaPath expressly reserves all rights to seek monetary damages and injunctive relief related to JACS Solutions' harmful acts. ViaPath expects any final resolution to include, *inter alia*, a substantial monetary payment from JACS to ViaPath to compensate ViaPath for the damages due to JACS Solutions' actions.

We also advise you that the manufacturing and sale of wireless tablets and supporting software, developed under services agreements between the parties likely infringes numerous ViaPath patents, including but not limited to the following:

- U.S. Patent No. 9,667,663 – Electronic Messaging Exchange
- U.S. Patent No. 10,116,707 – Electronic Messaging Exchange
- U.S. Patent No. 10,560,488 – Electronic Messaging Exchange
- U.S. Patent No. 9,307,386 – Multifunction Wireless Device
- U.S. Patent No. 9,614,954 – Multifunction Wireless Device
- U.S. Patent No. 10,757,249 – Multifunction Wireless Device
- U.S. Patent No. 11,184,342 – Multifunction Wireless Device
- U.S. Patent No. 11,228,672 – Security System for Inmate Wireless Devices

If JACS Solutions does not satisfy the above conditions ViaPath will seek all available recourse for breach of contract. ViaPath will consider all other approaches to protect its business interests and intellectual property, including but not limited to actions for patent infringement and misappropriation of ViaPath's intellectual property.

We understand that there on ongoing business discussions that seek to resolve this matter. We are hopeful that those discussions can be successful, but provide this notice in the event that is not the case.

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Michael D. Specht
Director

MDS

**EXHIBIT 45**

# BakerHostetler

Baker&Hostetler LLP

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403

T 202.861.1500
F 202.861.1783
www.bakerlaw.com

Jack Fornaciari
direct dial: 2028611612
jfornaciari@bakerlaw.com

October 3, 2022

**VIA E-MAIL (MSPECHT@STERNEKESSLER.COM)**

Michael D. Specht
Director

*Re:*    *ViaPath Technologies Letter Dated September 22, 2022*

Dear Mr. Specht:

We represent JACS Solutions Inc. ("JACS") and we write to respond to your letter addressed to Mr. Steel Liu dated September 22, 2022. JACS treats Global Tel*Link Corporation d/b/a ViaPath Technologies ("ViaPath") as an important customer and has invested heavily in providing premium service and products to ViaPath in the past decade.

JACS has complied with the terms established in the Manufacturing and Service Agreement dated December 13, 2018("MSA"), including Section 3.8. The MSA expired on December 13, 2021 and the parties did not extend the MSA in writing as required under Section 2 of the MSA.

JACS has never sold or supplied any product to any customer that contains ViaPath proprietary information.

After the expiry of the MSA, ViaPath and JACS entered into a Software License Agreement ("Agreement") on July 6, 2022.  In July 2022, JACS provided ViaPath access to AOSP and the encapsulated product kernel for TG801 pursuant to the terms of the Agreement.

ViaPath's request to preclude JACS in supplying any products to any third party directly or indirectly to the corrections vertical may constitute unreasonable restraint of trade and attempt to  monopolize under Sections 1 and 2 of the Sherman Act.

JACS values the benefits of ongoing business discussion. ViaPath terminated these discussions when it abruptly ended an in-person meeting between CEOs and other senior management of the two companies on September 19, 2022.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *Atlanta* | *Chicago* | *Cincinnati* | *Cleveland* | *Columbus* | *Costa Mesa* | *Dallas* | *Denver* | *Houston* |
| *Los Angeles* | *New York* | *Orlando* | *Philadelphia* | *San Francisco* | *Seattle* | *Washington, DC* | *Wilmington* | |

Michael D. Specht
October 3, 2022
Page 2


JACS is always prepared to discuss a reasonable resolution of the disputes and is prepared to supply ViaPath according to the terms of the purchase orders.

Sincerely,

Jack Fornaciari
Partner

**EXHIBIT 46**

**REDACTED IN ITS ENTIRETY**

**EXHIBIT 47**



# When off the she
# table

JACS Solutions Inc. is a global provider of custom connectivity s
Things (IoT) applications. JACS partners with clients to design, i
integrated solutions that make essential business operations s
risks and vulnerabilities that are inherent with off-the-shelf, co

Select Industry

**Get Started**

## Industries  ⌄

Healthcare

Transportation & Logistics

Education

Manufacturing & Industrial

Public Sector

Retail & Hospitality

Other Connected Industries

## IoT Solutions  ›

## Partners  ›

## Support  ›

## About Us  ›





**IoT Solutions**

# Tailored IoT Solutions

Experts in cellular, Wi-Fi, and Private LTE, we deliver fully customized IoT solutions that address organizational challenges and enable future business models across diverse industry sectors.

**Our Technologies**





**Where We Specialize**

# Hardware and Firmware Customization

Our innovative approach to customization of hardware, firmware, and software maximizes both physical and data security of devices and provides technology managers with total control over what users and applications connect to their networks.

**Our Services**



**JACS Platforms**

# Portfolio of Customized Solutions

Built on a portfolio of platforms that includes conventional and ruggedized tablets, connectivity solutions, touch displays, and more, our solutions have been proven to lower total cost of ownership, improve productivity, minimize operational downtime, and address privacy and security concerns in today's always-connected business environment.

| Select Platform ⌄ |
| --- |

**Get Started**

## Why JACS

# Leader in Maximizing Everyday Operations for Enterprises

 ### Secure

Protect your operations with locked-down firmware, encrypted data transfer and a tamper-proof interface.

 ### Connected

Modernize and transform your infrastructure by connecting people and devices from anywhere.

 ### Productive

Keep your equipment and workforce connected and productive so you can always make the right business decisions at the right time.

 ### Customizable

Solutions that meet your exact specifications, from hardware and display requirements to customizable accessories.

 ### Total Cost of Ownership

Reduce cost of ownership with a solution that is built to last and designed to maximize productivity without interruption.

 ### Enterprise and Industrial Grade

Solutions purpose-built to withstand even the harshest environments, whether in a facility, on the road, or in the field.

## 43+

### Countries

Serving customers all over the world.

## 835,620+

### Devices Deployed

Helping businesses do more, more often.

# Use Cases

**See Use Cases ›**



## Keep students engaged in learning with device charging and management

Learn how modular charging cart solutions for classroom and remote applications keep smart devices charged, protected, and accessible.



## Mobile workstation for warehouses and distribution centers

Using smart devices in warehouses and distribution centers enables companies to share large amounts of data quickly, leading to improved operations and less...

Continue Reading  ›
Continue Reading  ›



## Overcoming network and device security challenges in government facilities

Learn more about how the implementation of private networks in challenging environments has led to the adoption of secure, custom-built devices.

Continue Reading  ›

# Solutions Stories

**Explore All Articles**  ›





## 4 Key Takeaways from the 2021 GSMA Climate Action Report

August 8, 2022 — Four key takeaways from the 2021 Mobile Net Zero climate action report released by the GSMA.

**Continue Reading  ›**

## Building Durable Mobile Devices for Use in Tough Industries

June 24, 2022 — Building durable mobile devices for use in tough industries is a multi-step process.

**Continue Reading  ›**



## Why Are Schools Investing in Private LTE Technology?

May 31, 2022 — As demand for flexible learning grows, education is one business sector that stands to benefit from the adoption of Private LTE technology.

**Continue Reading  ›**

*solutions*



809 Pinnacle Dr., Suite R
Linthicum Heights, MD 21090, USA
**sales@jacs-solutions.com**

## Contact Us

Mon – Fri 8am – 5pm
General: **+1 (443) 718 4333**
Support: **+1 (443) 718 4333 ext. 8803**

| Industries | IoT Solutions | Partners | Support | About Us |
|---|---|---|---|---|
| Healthcare | Customization Services | Partner Program | Support & Services | Who We Are |
| Transportation & Logistics | Technologies | | FAQs | News & Events |
| Education | Use Cases | | Warranty Policy | Solutions Stories |
| Manufacturing & Industrial | Customizable Tablets | | | Become a Partner |
| Public Sector | Connectivity Solutions | | | Careers |
| Retail & Hospitality | Display Solutions | | | |
| Other Connected Industries | Charging Carts | | | |
| | Platforms | | | |
| | Accessories | | | |




Devices Certified By






Privacy :: Sitemap

Copyright © 2022 **JACS Solutions**. All Rights Reserved. An **ISO9001:2015 certified** company.

   

**EXHIBIT 48**

https://www.jacs-solutions.com/    Go

170 captures
15 Mar 2015 - 16 Mar 2023

OCT  JAN  MAR
     27
2022 2023 2024

About this capture



# When off the she... table

JACS Solutions Inc. is a global provider of custom connectivity s...
Things (IoT) applications. JACS partners with clients to design, ...
integrated solutions that make essential business operations s...
risks and vulnerabilities that are inherent with off-the-shelf, co...

Select Industry

**Get Started**

**Industries** ⌄

Healthcare

Education

Public Sector

Corrections

Transportation & Logistics

Manufacturing & Industrial

Retail & Hospitality

Other Connected Industries

**IoT Solutions** ›

**Platforms** ›

**Partners** ›





**IoT Solutions**

# Tailored IoT Solutions

Experts in cellular, Wi-Fi, and Private LTE, we deliver fully customized IoT solutions that address organizational challenges and enable future business models across diverse industry sectors.

**Our Technologies**





**Where We Specialize**

# Hardware and Firmware Customization

Our innovative approach to customization of hardware, firmware, and software maximizes both physical and data security of devices and provides technology managers with total control over what users and applications connect to their networks.

**Our Services**



**JACS Platforms**

# Portfolio of Customized Solutions

Built on a portfolio of platforms that includes conventional and ruggedized tablets, connectivity solutions, touch displays, and more, our solutions have been proven to lower total cost of ownership, improve productivity, minimize operational downtime, and address privacy and security concerns in today's always-connected business environment.

| Select Platform ⌄ |
| --- |

**Get Started**

Why JACS

# Leader in Maximizing Everyday Operations for Enterprises

 ## Secure

Protect your operations with locked-down firmware, encrypted data transfer and a tamper-proof interface.

 ## Connected

Modernize and transform your infrastructure by connecting people and devices from anywhere.

 ## Productive

Keep your equipment and workforce connected and productive so you can always make the right business decisions at the right time.

 ## Customizable

Solutions that meet your exact specifications, from hardware and display requirements to customizable accessories.

 ## Total Cost of Ownership

Reduce cost of ownership with a solution that is built to last and designed to maximize productivity without interruption.

 ## Enterprise and Industrial Grade

Solutions purpose-built to withstand even the harshest environments, whether in a facility, on the road, or in the field.

## Countries

Serving customers all over the world.

## Devices Deployed

Helping businesses do more, more often.

# Use Cases

**See Use Cases** ›



## Accelerate your productivity

Connect employees, customers, and the office from home with reliable, high-speed wireless connectivity for rural and remote locations.

**Continue Reading** ›



## Powering secure self-service kiosks in terminals

Learn how secure and dependable touchscreen solutions are wirelessly connecting travelers, security, and staff on Private LTE networks to streamline the ever-changing workflows...

Continue Reading ❯



## Industrial Remote Connectivity in Rural Areas

Keeping miles of fuel pipelines running at peak performance safely and efficiently with real-time data insights using wireless 4G LTE connectivity devices.

**Continue Reading** ❯

# Solutions Stories

**Explore All Articles** ❯





## Rural Connectivity: JACS Solutions Sitdown Episode 5

January 19, 2023 — JACS Solutions Sitdown - Rural Connectivity...

**Continue Reading** ›

## Rugged Technology: JACS Solutions Sitdown Episode 4

December 5, 2022 — JACS Solutions Sitdown Series - Rugged Technology...

**Continue Reading** ›



## Bloatware: JACS Solutions Sitdown Episode 3

November 16, 2022 — JACS Solutions Sitdown Series - Bloatware...

**Continue Reading** ›



809 Pinnacle Dr., Suite R
Linthicum Heights, MD 21090, USA
sales@jacs-solutions.com