## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GLOBAL TEL*LINK CORPORATION D/B/A/ VIAPATH TECHNOLOGIES<br><br>*Plaintiff*,<br><br>v.<br><br>JACS SOLUTIONS, INC.,<br><br>*Defendant*. | Civil Action No. 23-cv-00500-MN<br><br>**JURY TRIAL DEMANDED** |

### FIRST AMENDED COMPLAINT

Plaintiff Global Tel*Link Corporation d/b/a ViaPath Technologies ("ViaPath" or "Plaintiff") files this First Amended Complaint against Defendant JACS Solutions, Inc. ("JACS" or "Defendant") and alleges as follows:

### NATURE OF ACTION

1.      This is a civil action arising out of Defendant's patent infringement in violation of the Patent Laws of the United States, 35 U.S.C. §§ 271 and 281-285.

### THE PARTIES

2.      ViaPath is a corporation organized and existing under the laws of the State of Idaho with a principal place of business at 3120 Fairview Park Drive, Suite 300, Falls Church, Virginia 22042.

3.      On information and belief, Defendant is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 809 Pinnacle Drive, Suite R, Linthicum Heights, Maryland 21090.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over ViaPath's patent-infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendant because of Defendant's continuous contacts within this jurisdiction and its incorporation in the State of Delaware.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because Defendant is incorporated in and resides in the State of Delaware.

## BACKGROUND

7.      For over 30 years, ViaPath has been a leading developer of innovative and impactful technologies in correctional facilities such as prisons, jails, and other detention centers. Wireless tablets are one of ViaPath's most important innovations. ViaPath now has numerous patents, including the Patents-In-Suit, protecting these innovative wireless tablets. *See* Exhibits 5-9.

8.      To deliver these next-generation wireless tablets to incarcerated individuals, ViaPath worked with Defendant, an upstart manufacturer of tablets with no prior experience in the design, development, or manufacturing of wireless tablets for use in correctional facilities. ViaPath agreed to share its industry knowledge and patented technology with Defendant, but *only after* Defendant agreed to certain exclusivity and confidentiality provisions set forth in a 2014 mutual nondisclosure agreement (the "NDA") and a 2018 Manufacturing and Services Agreement (the "M&S Agreement"). *See* Exhibit 29. Unfortunately, Defendant (i) failed to live up to its promises under those agreements and (ii) has been infringing ViaPath's patents by providing wireless tablets and supporting software to ViaPath's competitors. ViaPath brought a first suit in a different forum to address, among other things, Defendant's breach of the M&S Agreement. *See Global Tel\*Link Corp. d/b/a ViaPath Techs. v. JACS Solutions Inc.*, 1:23-cv-

2

00179-TSE-WEF (E.D.V.A.). ViaPath now brings this suit here to protect its intellectual property and promote fair and reasonable marketplace competition.

> **A.    For almost three decades, ViaPath has been a leading developer of innovative and impactful technologies deployed in correctional facilities.**

9.      Founded in the 1980s, Global Tel*Link Corporation ("GTL") d/b/a ViaPath Technologies ("ViaPath") is an industry leader that develops and deploys information technology solutions in correctional facilities. Throughout its history, GTL has developed inventive solutions that improve conditions in correctional facilities and ease the burdens faced by managing authorities. GTL's patented techniques have been integrated into a comprehensive suite of products and services. In 2022, GTL began doing business as ViaPath to better reflect its mission and vision of supporting incarcerated individuals and their families and formerly incarcerated individuals reentering society.

10.     ViaPath's products ensure incarcerated individuals have access to technology and education while incarcerated. For example, ViaPath's *wireless tablets*—the technology at issue here—support educational training, entertainment packages, video visitation, phone and messaging services, voice messaging, financial services, and other essential services. These specially adapted wireless tablets are fundamentally important to ensure effective, secure delivery of these services. By providing access to key educational resources, contact with family and friends, and connection to essential services, ViaPath's wireless tablets promote rehabilitation, improve personal outcomes, and reduce recidivism.

11.     For example, ViaPath's wireless tablets were recently featured in a news article by ABC-7 news in the Washington, DC area. The article states:

> ViaPath's mission is getting technology, including tablets, into the hands of inmates serving time for nonviolent crimes.
>
> . . .

> The tablets are safe and secure with no access to off-limit areas on the internet. They are pre-loaded with what inmates need to get a GED, vocational certifications, and technical apprenticeships.

Exhibit 39, 2.

12.     ViaPath's wireless tablets and supporting software also promote safe and efficient operations in correctional facilities. Administrators face difficult challenges in maintaining the safety, health, and well-being of incarcerated individuals and staff. ViaPath's wireless tablets and supporting software stand up to these operational rigors and meet the high standards of safety and reliability necessary in these environments. As a result, ViaPath's wireless tablets and supporting software help correctional facilities run steadily, smoothly, cost-efficiently, and securely.

13.     ViaPath's innovative technologies have been widely adopted in the marketplace. ViaPath now serves roughly 2,000 correctional facilities in all 50 states. These facilities house more than 1.8 million incarcerated individuals. ViaPath provides services, directly or indirectly, to clients which include Federal agencies, states, cities, and counties that operate correctional or detention facilities.

14.     Generally for each new business opportunity, ViaPath responds to a competitive procurement process. ViaPath has excelled against competition due to its high-quality products, which are uniquely adapted for correctional facilities. ViaPath's tablets serve as the platform for providing innovative services to incarcerated individuals, and other industry players and competitors deliver services using tablets that lack the benefit of ViaPath's patented technologies. Thus, the ingenuity of ViaPath's tablets is a primary driver of ViaPath's successful bids.

15.     Throughout its history as a trusted technologist, ViaPath recognized the importance and value of its innovations. ViaPath had the foresight to invest significant capital to

4

secure its intellectual property and protect its innovations, filing its first patent application in 1996. After thorough examination from the United States Patent and Trademark Office ("USPTO"), ViaPath has built a robust and strong patent portfolio including over 300 U.S. patents. These patents cover a variety of services in correctional facilities including voice communications, electronic messaging, electronic tablets, video visitation, electronic content services, security, and wireless services, to name a few. Many of ViaPath's patents have withstood attempts to invalidate them, including several patents challenged in *inter partes review* proceedings before the Patent Trial and Appeal Board.

> **B.** **Defendant is an upstart manufacturer of customized smart devices with whom ViaPath has shared its industry knowledge and proprietary tablet technology.**

16.     Defendant was founded in 2011 and provides connectivity solutions to businesses across a variety of industries, *e.g.*, healthcare, education, transportation, and logistics. On information and belief, before working with ViaPath, Defendant had no prior experience in the correctional-facility space.

17.     In November 2014, ViaPath entered into the NDA with Defendant to protect ViaPath's proprietary information. *See* Exhibit 29. With that agreement in place, ViaPath advised Defendant in developing and enabling Wi-Fi®- and LTE-enabled tablets and using hardware, software, and firmware in correctional facilities.

18.     In October 2017, Defendant presented ViaPath with a proposal for a Wi-Fi®-enabled wireless tablet—the TG801—that was developed exclusively for ViaPath based on instructions, and confidential and proprietary information from ViaPath. Together, both parties worked to develop additional features and improve the TG801 tablet. On information and belief, these improvements became the subject of later tablet models such as the TR820. *See* Exhibit 31; Exhibit 32.

**C.      ViaPath and Defendant entered into the M&S Agreement, which includes a confidentiality clause and an exclusivity clause.**

19.      After years of development, in December 2018, the parties expanded their relationship by entering into the M&S Agreement. This agreement specified that Defendant would perform certain manufacturing, preloading and configuring of hardware, operation systems and software applications, and related services. Among the products governed by the M&S Agreement are ViaPath's Inspire 2 (TG800), Inspire 3 (TG801), TP156V1, and TP156V2. In connection with the M&S Agreement, Defendant sought approval from the Federal Communications Commission ("FCC") in 2018 for the Inspire 2 (TG800), with FCC ID number, 2AGCDJACSTG801. *See* Exhibit 40. The external photos of this tablet that Defendant submitted for approval clearly included a "GTL" label. *See* Exhibit 41.



**Figure 1 –Defendant's External Photo included with its 2018 FCC Approval Application**

20.      After seeking this FCC approval, Defendant contractually promised to refrain from manufacturing similar Products for any third party providing services, directly or indirectly,

to the corrections vertical in the geographic markets in which ViaPath is currently operating in the United States. Defendant also agreed not to disclose ViaPath's confidential information—which was broadly defined to include all confidential and proprietary information that is reasonably identifiable as the confidential or proprietary information of ViaPath—to any third party without prior written consent. In exchange for Defendant's promise to exclusively manufacture the TG800, TG801, TP156V1, TP156V2, and other similar smart tablets for ViaPath, ViaPath agreed to purchase certain minimum amounts from Defendant each year. And every year from 2019 through 2022, ViaPath met the minimum purchase requirement, paying Defendant *over $70 million* so that ViaPath would enjoy *the exclusive rights* to these smart tablets.

21.     But Defendant failed to live up to its exclusivity and confidentiality obligations as set forth in the M&S Agreement.

**D.     Defendant knowingly infringes ViaPath's patents by manufacturing, selling, offering to sell, and distributing products and services that implement ViaPath's protected intellectual property.**

22.     At least as early as August 2021, Defendant began to take steps to provide the TG801 to ViaPath's competitors—despite Defendant's contractual promise to manufacture this wireless tablet *exclusively* for ViaPath. As set forth above, Defendant had already received an FCC approval for the TG801 in August 2018 (FCC ID: 2AGCDJACS**TG801**). But, then, in August 2021, Defendant sought FCC approval to *rebrand* the TG801 with a new FCC ID (2AGCDJACS**TR810**) and explained that the rebranded model "is identical in design and construction to the originally approved model." Exhibit 42. In fact, the external photos that Defendant used for its August 2021 rebranding request (Exhibit 43) were *exactly* the same as those used in Defendant's 2018 FCC approval request, including the "GTL" label:

7



**Figure 2 --Defendant's External Photo included with its 2021 FCC Rebranding Application**

23.     On information and belief, Defendant's 2021 FCC filing to rebrand the TG801 as the TR810 with a new FCC ID demonstrates Defendant's specific intent to sell that exact same tablet to ViaPath's competitors. Because the TG801 had already been approved by the FCC in 2018, Defendant could have simply continued selling the TG801 *to ViaPath* without seeking a new FCC ID for the TG801 in 2021. By obtaining the new FCC ID in 2021, Defendant could sell the rebranded version of the TG801 *to third parties* other than ViaPath.

24.     And that is exactly what Defendant did. Defendant provided the TG801, the TR810, or similar tablets to ViaPath's competitors, such as Network Communications International Corporation ("NCIC")—a company that, on information and belief, sells telecommunication systems to correctional facilities but does not manufacture or develop any tablet hardware or software on its own. NCIC then included the TG801, the TR810, or similar tablets in at least five different bids: (i) an August 2021 bid to Washoe County, Nevada; (ii) a February 2022 bid to Williamson County, Texas; (iii) an August 2022 bid to the Yellowstone County Sheriff's Office, Montana; (iv) a September 2022 bid to the Louisville Jefferson County, Kentucky; and (v) a November 2022 bid to the Saline County Sheriff's. *See, e.g.*, Exhibit 2, 14;

Exhibit 51, 8; Exhibit 53, 23; Exhibit 54, 44. With the Inspire 3 TG801 Tablet included in its proposal, NCIC won the Yellowstone County contract.



**Figure 3 – Annotated Excerpt of Exhibit 2**
**Showing TG801 included in NCIC's Aug. 2022 Bid to Yellowstone County**



**Figure 4 – Excerpt of NCIC's Nov. 2022 Bid to the Saline County Sheriff's Office showing that NCIC was offering the TR810 (Exhibit 51)**

25.     In October 2022, Defendant marketed the *rebranded* TR810 and other similar tablets on its website.[1] *See* Exhibit 27, 7.

**E.     After becoming aware that Defendant was providing the TG801 and similar tablets to ViaPath's competitors, ViaPath informed Defendant that it was infringing ViaPath's patents.**

26.     On September 22, 2022, ViaPath sent a letter ("First Notice Letter") via FedEx to Defendant explaining that ViaPath had recently discovered that Defendant appeared to be violating the parties' M&S Agreement by selling a rebranded version of the TG801 to ViaPath's competitors. *See* Exhibit 44. That letter also explained that, by providing wireless tablets—such as the TG801—and supporting software to corrections-industry service providers, Defendant infringed many of ViaPath's patents, including one of the Patents-in-Suit—U.S. Patent No. 11,228,672. *Id.*, 2. To remedy those issues and to salvage the parties' working relationship, ViaPath sought written confirmation that, among other things, Defendant would comply with the exclusivity provisions in the parties' M&S Agreement by refraining from providing wireless tablets and supporting software—including the TG801 and similar products—to corrections-industry service providers. *Id.*, 2-3.

27.     Defendant sent a responsive letter on October 3, 2022 that did nothing to allay ViaPath's concerns. *See* Exhibit 45. Rather than agreeing to comply with the exclusivity provisions in the parties' M&S Agreement, Defendant's responsive letter claimed that the M&S Agreement had expired on December 13, 2021 (*id.*, 1)—despite the fact that, well after this so-called expiration, Defendant had continued to accept millions of dollars' worth of additional purchase orders from ViaPath in 2022 as explicitly provided for in the M&S Agreement. And conspicuously absent from Defendant's responsive letter was any discussion of Defendant's

---

[1] Defendant appears to refer to the rebranded version of the TG801 as the TR810 or the TR0810.

infringement of ViaPath's patents by providing the TG801 and similar products to other corrections-industry service providers.

28.     In an additional effort to avoid protracted litigation and reach a business resolution, ViaPath again reached out to Defendant—this time via a November 15, 2022 letter from ViaPath's CEO, Deb Alderson, to Defendant's CEO, Steel Liu. *See* Exhibit 46. That letter set forth explicit steps that would "enable the parties to move forward as partners." *Id.*, 1. That letter also warned, however, that if Defendant failed to comply, ViaPath would have "no other choice but to pursue legal action, including actions based on [Defendant's] breach of [the parties'] contract and patent infringement." *Id.*, 2. Defendant never responded. As a result, ViaPath then sued Defendant in December 2022 for breach of contract under Virginia law, breach of an implied contract under Virginia law, actual fraud under Virginia law, constructive fraud under Virginia law, and unjust enrichment under Virginia law. *See Global Tel*Link Corporation d/b/a ViaPath Technologies v. JACS Solutions Inc.*, 1:23-00179-TSE-WEF (E.D.V.A.).

29.     Rather than capitulate, Defendant doubled down on its wrongful activity by increasing its marketing efforts in 2023 to sell wireless tablets to ViaPath's competitors, as demonstrated by at least two overt acts. *First*, after being informed in 2022 that sales of wireless tablets to corrections-industry service providers infringed ViaPath's patents, Defendant ***added*** "Corrections" in 2023 to its website listing of the "Industries" it served, as seen in the following side-by-side comparison:

 

**Exhibit 47, Oct. 5, 2022 Snap Shot of "Industries" on Defendant's Website**

**Exhibit 48, Jan. 27, 2023 Snap Shot of "Industries" on Defendant's Website (annotated)**

*Second*, Defendant also began marketing on its website in 2023 how wireless tablets could be used to reduce recidivism within the corrections industry, as illustrated by the following screenshot:



**Exhibit 49, Apr. 18, 2023 Snapshot of Defendant's Website Illustrating
a Corrections Industry "Use Case[ ]" for the Wireless Tablets that Defendant Offered**

These overt acts by Defendant in 2023 to *increase* its marketing of wireless tablets to

corrections-industry service providers *after* receiving ViaPath's September 2022 notice letter

shows Defendant's *deliberate* intent to infringe and cause infringement of ViaPath's patents.

30.     In an April 20, 2023 letter ("Second Notice Letter") (Exhibit 3), ViaPath again

advised Defendant that its use, manufacturing, sale, offer for sale, and/or importation of the

Inspire 2 (TG800), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, TR800,

and similar products infringes numerous ViaPath patents, including but not limited to the

following patents (which includes, among others, the patents listed in ViaPath's September 22,

2022 letter and includes the Patents-in-Suit):

- U.S. Patent No. 9,030,292 – Multifunction Wireless Device
- U.S. Patent No. 9,307,386 – Multifunction Wireless Device
- U.S. Patent No. 9,614,954 – Multifunction Wireless Device
- U.S. Patent No. 9,667,663 – Electronic Messaging Exchange
- U.S. Patent No. 9,807,123 – Electronic Messaging Exchange
- U.S. Patent No. 10,116,707 – Electronic Messaging Exchange
- U.S. Patent No. 10,560,488 – Electronic Messaging Exchange
- U.S. Patent No. 10,638,322 – Provisioning of Tablets
- U.S. Patent No. 10,645,443 – Controlled Environment Media System
- U.S. Patent No. 10,721,624 – Multifunction Wireless Device
- U.S. Patent No. 10,757,249 – Multifunction Wireless Device
- U.S. Patent No. 11,184,342 – Multifunction Wireless Device
- U.S. Patent No. 11,228,672 – Security System for Inmate Wireless Devices
- U.S. Patent No. 11,290,499 – Electronic Messaging Exchange
- U.S. Patent No. 11,394,751 – Electronic Messaging Exchange

31.     On April 27, 2023, Defendant sent a responsive letter and stated—without any explanation or supporting evidence—that it "believes its business is consistent with the MSA and does not infringe ViaPath's patents." Exhibit 52.

32.     ViaPath now brings this lawsuit against Defendant based on the following patents.

## THE PATENTS-IN-SUIT

### A.     The '443 Patent

33.     On May 5, 2020, the USPTO lawfully issued U.S. Patent No. 10,645,443 ("the '443 patent") entitled "Controlled Environment Media and Communication System." The '443 patent was duly assigned to GTL d/b/a ViaPath and is listed on ViaPath's website in accordance with the virtual patent marking provisions of 35 U.S.C. § 287(a). GTL d/b/a ViaPath is the assignee of all right, title, and interest in and to the '443 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '443 patent is valid and enforceable. A true and correct copy of the '443 patent is attached hereto as Exhibit 5.

34.     The inventors of the '443 patent recognized that secure facilities "endeavor to provide residents with an ever-growing capability for communication and entertainment." Exhibit 5, 2:59-61. But to deliver these capabilities, prisons faced technological challenges in controlling access and operating cost efficiently at a scale that could accommodate a large resident population. *Id.*, 3:15-31.

35.     The '443 patent delivers an innovative, comprehensive IP-based platform that offers "significant advantages" over legacy systems by "integrat[ing] television, local/network video/audio content, with other IP-based services" such as video conferencing. *Id.*, 2:61-3:1. The unconventional technique deploys *an access kiosk*, which may be in the form of a tablet computer, as an intermediary to both a *media distribution server* and a *video visitation server*. *Id.*, 4:66-5:19. By coordinating access to both services, traffic generated by the *access kiosk* may leverage core network features. *Id.*, 4:52-64 ("These features become even more important to the functioning of core network 130 when multiple services utilize the network such as media distribution, video visitation, and voice services."). Because the *access kiosk* is configured to both *playback the selected media for consumption* and *communicate with the video visitation server over the network to participate in video visitation sessions*—both aspects can employ optimization techniques to reduce network load and increase bandwidth efficiency. *Id.*, 7:58-64, 8:56-60.

36.     The USPTO recognized the specific and unconventional nature of these technological features of the '443 patent, issuing a Notice of Allowance on January 8, 2020. *See* Exhibit 33, 26-30.

**B.     The '123 Patent**

37.     On October 31, 2017, the USPTO lawfully issued U.S. Patent No. 9,807,123 ("the '123 patent") entitled "Electronic Messaging Exchange." The '123 patent was duly

assigned to GTL d/b/a ViaPath and is listed on ViaPath's website in accordance with the virtual

patent marking provisions of 35 U.S.C. § 287(a). GTL d/b/a ViaPath is the assignee of all right,

title, and interest in and to the '123 patent and possesses the exclusive right of recovery for past,

present, and future infringement. Each and every claim of the '123 patent is valid and

enforceable. A true and correct copy of the '123 patent is attached hereto as Exhibit 6.

38.     The inventors of the '123 patent recognized deficiencies in existing electronic

messaging tools deployed in prisons. *See* Exhibit 6, 2:8-31. These legacy tools failed to both:

(1) monitor and archive messages while preventing incarcerated individuals from bypassing

control features; and simultaneously: (2) provide the same functionality as a normal messaging

system. *Id.*, 2:18-22, 2:39-44.

39.     The '123 patent enhances such tools with *a control platform* that intelligently

surveys and archives messages using keyword and phrase scanning, language translation,

intended-recipient filters, suspect criteria, etc. *Id.*, 3:64-4:5, 4:32-49. The *control platform*

notifies administrators of suspicious activities. *Id.*, 10:18-21. In particular, the '123 patent recites

a feature of *converting the instant message into a format suitable for an automated security scan*

*and transmission of the instant message*. This feature allows the *control platform* to store

messages in a searchable form for future analysis, regardless of the message type. *Id.*, 10:2-22. In

a messaging tool enhanced with this technique, incarcerated individuals retain access to these

varied messaging features but cannot exploit a vulnerability to circumvent oversight. *Id.*, 6:42-

47, 10:63-11:2.

40.     The USPTO recognized the specific and unconventional nature of this

technological feature of the '123 patent, issuing a Notice of Allowance on August 31, 2017. *See*

Exhibit 34, 24-30. The Notice of Allowability indicated that "applicant's arguments filed on

8/16/17 are persuasive"—the referenced arguments advanced claim amendments that added the *converting* step to the independent claims. *Id.*, 29, 44-57.

### C.  The '292 Patent

41.     On May 12, 2015, the USPTO lawfully issued U.S. Patent No. 9,030,292 ("the '292 patent") entitled "Interactive Audio/Video System and Device for Use in a Secure Facility." The '292 patent was duly assigned to GTL d/b/a ViaPath and is listed on ViaPath's website in accordance with the virtual patent marking provisions of 35 U.S.C. § 287(a). GTL d/b/a ViaPath is the assignee of all right, title, and interest in and to the '292 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '292 patent is valid and enforceable. A true and correct copy of the '292 patent is attached hereto as Exhibit 7.

42.     The inventors of the '292 patent noted that secure facilities require additional levels of monitoring and oversight when conducting video conferencing. *See* Exhibit 7, 1:19-21. The '292 patent recognized that legacy systems lacked technical solutions to prevent inappropriate images from being transmitted. *Id.*, 14:53-61.

43.     The '292 patent improves the security of video conferencing systems with a specific, innovative solution that *periodically extracts a frame of the video*. *Id.*, 14:62-65. The facial verification system *performs a check to determine if a face is present in the frame*. *Id*., 14:57-59. If the detected image does not match a face image stored in a database or if no face is detected, the technique obscures the image to prevent inappropriate images from being transmitted—*i.e.*, *blurs the video being transmitted to the destination when the check determines that the face is not present in the frame*. *Id.*, 14:59-61.

44.     The USPTO recognized the specific and unconventional nature of these technological features of the '292 patent, issuing a Notice of Allowance on March 20, 2015. *See*

Exhibit 35, 30-36. The Examiner noted that the prior art lacked "a system for providing video services to a secure facility that periodically authenticates a user of a kiosk in the facility by performing biometrics authentication of the video after an initial authentication, and blurs the video being transmitted when it is determined that a face is not present in the frame." *Id.*, 35.

### D.     The '672 Patent

45.     On January 18, 2022, the USPTO lawfully issued U.S. Patent No. 11,228,672 ("the '672 patent") entitled "Security System for Inmate Wireless Devices." The '672 patent was duly assigned to GTL d/b/a ViaPath and is listed on ViaPath's website in accordance with the virtual patent marking provisions of 35 U.S.C. § 287(a). GTL d/b/a ViaPath is the assignee of all right, title, and interest in and to the '672 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '672 patent is valid and enforceable. A true and correct copy of the '672 patent is attached hereto as Exhibit 8.

46.     The inventors of the '672 patent recognized that legacy systems failed to prevent residents of correctional facilities from exploiting vulnerabilities and security risks in unsecured applications on distributed communication devices. *See* Exhibit 8, 3:17-39. For example, incarcerated individuals could send clandestine communications to outside locations via social applications, access unauthorized domains, and install unsanctioned applications. *Id.*, 3:20-25.

47.     The '672 patent enhances existing technologies with a specific, unconventional solution by deploying *an application barrier* on a mobile device operating among multiple security barriers. *Id.*, 4:7-11, 6:15-22. This *application barrier* prevents "applications from performing unsanctioned activit[ies]" by *disabling non-secure functions* (*i.e.*, functions that modify settings of the mobile device). *Id.*, 6:39-43, 11:6-9, 11:16-20. The *application barrier* prevents applications "from being installed or removed." *Id.*, 6:43-49, 11:28-49. The *application barrier* also *monitors social interactions conducted using the social functions*. *Id.*, 11:20-27.

18

48.     The USPTO recognized the specific and unconventional nature of these technological features of the '672 patent, issuing a Notice of Allowance on September 14, 2021. *See* Exhibit 36, 21-28.

**E.      The '624 Patent**

49.     On July 21, 2020, the USPTO lawfully issued U.S. Patent No. 10,721,624 ("the '624 patent") entitled "Security System for Inmate Wireless Devices." The '624 patent was duly assigned to GTL d/b/a ViaPath and is listed on ViaPath's website in accordance with the virtual patent marking provisions of 35 U.S.C. § 287(a). GTL d/b/a ViaPath the assignee of all right, title, and interest in and to the '624 patent and possesses the exclusive right of recovery for past, present, and future infringement. Each and every claim of the '624 patent is valid and enforceable. A true and correct copy of the '624 patent is attached hereto as Exhibit 9.

50.     The inventors of the '624 patent recognized a deficiency in legacy technologies— existing systems failed to protect devices from evolving methods of bypassing device security measures. *See* Exhibit 9, 1:38-47. Incarcerated individuals could exploit vulnerabilities in legacy devices intended for sanctioned communications—*e.g.*, security risks were present in unsecured applications (such as applications with social functions and web browsers), unsecured operating systems, Wi-Fi® access points, and physical access to ports and other hardware. *Id.*, 2:59-3:51.

51.     The '624 patent improves upon existing technologies by employing "layered" security barriers to prevent unsanctioned use of a communication device. *Id.*, 3:62-4:3. The multiple security barriers construct multi-faceted protection should a previous barrier fail. *Id.*, 4:2-3, 4:22-26. Specifically, the layered security barriers include a *hardware barrier*, *an application barrier*, and *operating system barrier*. *Id.*, FIG. 2; 4:28-42, 6:5-10. The *hardware barrier* obstructs *access to at least one port of the mobile device. Id.*, 6:24-29. *The application barrier* disables *non-secure functions* of applications, *monitors user activity*, *prevents*

*installation or removal of an application*, and prevents the *processor* from executing *an*

*unsanctioned function*. *Id.*, 6:29-39. The *operating system barrier* prevents *at a kernel of an*

*operating system* the alteration of device setting including *a wireless access point setting*. *Id.*,

6:40-57.

52.     The USPTO recognized the specific and unconventional nature of these

technological features of the '624 patent, issuing a Notice of Allowance on March 11, 2020. *See*

Exhibit 37, 25-31.

### COUNT I:
### DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,645,443

53.     ViaPath re-alleges and incorporates by reference Paragraphs 1-52 above, as if

fully set forth herein.

54.     Claim 1 of the '443 patent recites:

1.     A media distribution system for distributing media and facilitating
video visitation within a secured facility, the media distribution system being
available to a resident of the secured facility, the media distribution system
comprising:
a media distribution server configured to receive media from a plurality of
media sources, generate a catalog of the received media based on the plurality of
media sources and metadata associated with the received media, and make the
media available on a network via the catalog, the plurality of media sources
including a real-time media source and an on-demand media source;
encoding the received media;
storing the encoded received media for later distribution;
a video visitation server configured to conduct video visitation sessions
between a first video visitation endpoint and a second video visitation endpoint, at
least one of the first and second video visitation endpoints having connectivity to
the network; and
an access kiosk placed within a residential unit of the secured facility and
accessible by the resident, the access kiosk configured to:
communicate with the video visitation server over the network to
participate in video visitation sessions with one or more other video visitation
endpoints; and
display the catalog to the resident;
receive a user selection from the catalog;
receive the encoded media from the media distribution server over the
network based on the user selection; and

playback the selected media for consumption.

Exhibit 5, 17:20-51.

55.    Defendant has infringed and will continue to infringe at least one claim of the '443 patent by developing, testing, using, distributing, offering to sell, and selling customized hardware and software that it specifically intends, directs, and encourages to be used in a system for distributing media and facilitating video visitation within a secured facility. Defendant is liable for direct infringement, either literally or under the doctrine of equivalents of the '443 patent pursuant to 35 U.S.C. § 271(a).

56.    On information and belief, the use of Defendant's tablets—including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800—meets each and every feature of claim 1 of the '443 patent. For example, on information and belief, the use of Defendant's Inspire 3 Tablet in NCIC's "InTouch Communications Suite" meets each and every feature of claim 1 of the '443 patent, as set forth in the attached claim chart. *See* Exhibit 10. It is also expected that discovery will likely reveal additional evidentiary support that Defendant's tablets perform the above limitations and other limitations of the '443 patent.

57.    Defendant has had actual knowledge of the '443 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '443 patent since no later than April 20, 2023, the date on which Defendant received the Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '443 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '443 patent and Defendant's infringement of the '443 patent. *See GlobalTech*

*Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

58.     Defendant could not have reasonably or subjectively believed that its actions do not constitute infringement of the '443 patent. Nor could Defendant reasonably or subjectively believe that the '443 patent is invalid. Given that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '443 patent.

59.     By its actions, Defendant's infringement of the '443 patent has irreparably harmed ViaPath. Unless Defendant's infringing acts are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

60.     By its actions, Defendant's infringement of the '443 patent has damaged, and continues to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

<u>**COUNT II:**</u>
<u>**INDUCED INFRINGEMENT OF U.S. PATENT NO. 10,645,443**</u>

61.     ViaPath re-alleges and incorporates by reference Paragraphs 1-60 above, as if fully set forth herein.

62.     Defendant is liable for indirect infringement by actively inducing infringement of the '443 patent pursuant to 35 U.S.C. § 271(b).

63.     On information and belief, Defendant's customers directly infringe the '443 patent by using Defendant's tablets, including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800, in the manner alleged above. *See* Exhibit 10. On information and belief, Defendant's tablets are implemented within systems offered, deployed, and maintained by Defendant's customers, including within

22

NCIC's InTouch Communications Suite. NCIC's InTouch Communications Suite is a system for distributing media and facilitating video visitation within a secured facility, as recited in claim 1 of the '443 patent. *See id.* Defendant's customers therefore directly infringe the '443 patent by using systems that implement Defendant's tablets.

64.     On information and belief, Defendant specifically intends that its customers infringe the '443 patent, and Defendant and its customers do in fact directly infringe the '443 patent by using the systems that implement Defendant's tablets in the manner alleged above. *See* Exhibit 10. Defendant markets its products to prison facilities as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. Defendant markets its tablets to its correctional facility customers knowing that use of its tablets will inevitably lead its customers to implement the tablets as part of a system having a media distribution server, a video visitation server, and an access kiosk, as recited in claim 1 of the '443 patent. For example, on information and belief, Defendant's marketing caused NCIC to implement Defendant's Inspire 3 Tablet in NCIC's InTouch Communications Suite, which includes the media distribution server, video visitation server, and access kiosk recited in claim 1 of the '443 patent. *See* Exhibit 10. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite, has no substantial non-infringing uses. *See id*.

65.     On information and belief, Defendant encourages customers to use its tablets within correctional facilities in an infringing manner. *See* Exhibit 2, 14. For example, Defendant actively participates in maintaining and servicing hardware and software for its tablets. *See* Exhibit 24, 5-6.

66.     Defendant has had actual knowledge of the '443 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '443 patent since no later than April 20, 2023, the date on which Defendant received ViaPath's Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '443 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '443 patent and Defendant's infringement of the '443 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

67.     Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '443 patent. Nor could Defendant reasonably or subjectively believe that the '443 patent is invalid. Despite that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '443 patent.

68.     The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

69.     The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

## COUNT III:
## CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 10,645,443

70. ViaPath re-alleges and incorporates by reference Paragraphs 1-69 above, as if fully set forth herein.

71. Defendant is liable for indirect infringement by way of contributory infringement of the '443 patent pursuant to 35 U.S.C. § 271(c). Defendant has sold and continues to sell, offers to sell, or imports into the United States products and services knowing that they are especially made or adapted to operate in a way that infringes the '443 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

72. Defendant has had actual knowledge of the '443 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '443 patent since no later than April 20, 2023, the date on which Defendant received ViaPath's Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '443 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '443 patent and Defendant's infringement of the '443 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

73. Defendant markets its products to customers as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, on

information and belief, Defendant's Inspire 3 Tablet as used within NCIC's InTouch

Communications Suite has no substantial non-infringing uses. *See* Exhibit 10.

74.     Defendant could not have reasonably or subjectively believed that its actions do

not constitute indirect infringement of the '443 patent. Nor could Defendant reasonably or

subjectively believe that the '443 patent is invalid. Despite that knowledge and subjective belief,

Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully

infringes the '443 patent.

75.     The infringing actions of Defendant have irreparably harmed ViaPath. Unless

these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable

injury. ViaPath has no adequate remedy at law.

76.     The infringing actions of Defendant have damaged, and continue to damage,

ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that

ViaPath would have made but for Defendant's infringing acts.

## COUNT IV:
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,807,123

77.     ViaPath re-alleges and incorporates by reference Paragraphs 1-76 above, as if

fully set forth herein.

78.     Claim 1 of the '123 patent recites:

> 1.     A secure electronic message exchange system usable inside a
> secured inmate facility, the secure electronic message exchange system
> comprising:
>         a safe terminal configured to:
>             authenticate a local user,
>             allow the local user to generate an instant message, and
>             transmit the instant message via a data connection,
>             wherein the safe terminal accesses secure system software only and
> restricts the local user from accessing the internet; and
>         a control platform configured to:
>             receive the instant message from the safe terminal,

> convert the instant message into a format suitable for an automated security scan and transmission of the instant message;
>
> perform the automated security scan of the instant message, authenticate a remote user, and
>
> based on the automated security scan, transmit the instant message to a device associated with the authenticated remote user or transmit a notification to an administrator and store the instant message in a database,
>
> the control platform including a central computer control platform configured to allow the local user and the remote user to communicate via electronic messages.

Exhibit 6, 13:48-14:7.

79.     Defendant has infringed and will continue to infringe at least one claim of the '123 patent by developing, testing, using, distributing, offering to sell, and selling customized hardware and software that it specifically intends, directs, and encourages to be used in an electronic message exchange system. Defendant is liable for direct infringement, either literally or under the doctrine of equivalents of the '123 patent pursuant to 35 U.S.C. § 271(a).

80.     On information and belief, the use of Defendant's tablets—including at, least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800—in its customers' systems meets each and every feature of claim 1 of the '123 patent. For example, on information and belief, the use of Defendant's Inspire 3 Tablet in NCIC's "InTouch Communications Suite" meets each and every feature of claim 1 of the '123 patent, as set forth in the attached claim chart. *See* Exhibit 11. It is also expected that discovery will likely reveal additional evidentiary support that Defendant's tablets perform the above limitations and other limitations of the '123 patent.

81.     Defendant has had actual knowledge of the '123 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '123 patent since no later than April 20, 2023, the date on which Defendant received the Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's

patent portfolio and that Defendant infringes the '123 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '123 patent and Defendant's infringement of the '123 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

82.     Defendant could not have reasonably or subjectively believed that its actions do not constitute infringement of the '123 patent. Nor could Defendant reasonably or subjectively believe that the '123 patent is invalid. Given that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '123 patent.

83.     By its actions, Defendant's infringement of the '123 patent has irreparably harmed ViaPath. Unless Defendant's infringing acts are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

84.     By its actions, Defendant's infringement of the '123 patent has damaged, and continues to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

## COUNT V:
## INDUCED INFRINGEMENT OF U.S. PATENT NO. 9,807,123

85.     ViaPath re-alleges and incorporates by reference Paragraphs 1-84 above, as if fully set forth herein.

86.     Defendant is liable for indirect infringement by actively inducing infringement of the '123 patent pursuant to 35 U.S.C. § 271(b).

87.     On information and belief, JACS' customers directly infringe the '123 patent by using Defendant's tablets, including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3

(TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800, in the manner alleged above. *See* Exhibit 11. On information and belief, Defendant's tablets are implemented within systems offered, deployed, and maintained by Defendant's customers, including within NCIC's InTouch Communications Suite. NCIC's InTouch Communications Suite, including Defendant's Inspire 3 Tablet, is an electronic message exchange system, as recited in claim 1 of the '123 patent. *See id.* Defendant's customers therefore directly infringe the '123 patent by using systems that implement Defendant's tablets.

88.     On information and belief, Defendant specifically intends that its customers infringe the '123 patent, and Defendant and its customers do in fact directly infringe the '123 patent by using the systems that implement Defendant's tablets in the manner alleged above. *See* Exhibit 11. Defendant markets its products to prison facilities as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. Defendant markets its tablets to its correctional facility customers knowing that use of its tablets will inevitably lead its customers to implement the tablets as part of a secure message exchange system, having a control platform and a secure platform, as recited in claim 1 of the '123 patent. For example, on information and belief, Defendant's marketing caused NCIC to implement Defendant's Inspire 3 Tablet in NCIC's InTouch Communications Suite, which includes the control platform, secure platform, and wireless terminal recited in claim 1 of the '123 patent. *See* Exhibit 11. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite, has no substantial non-infringing uses. *See id*.

89.     On information and belief, Defendant encourages customers to use its tablets within correctional facilities in an infringing manner. *See* Exhibit 2, 14. For example, Defendant actively participates in maintaining and servicing hardware and software for its tablets. *See* Exhibit 24, 5-6.

90.     Defendant has had actual knowledge of the '123 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '123 patent since no later than April 20, 2023, the date on which Defendant received ViaPath's Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '123 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '123 patent and Defendant's infringement of the '123 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

91.     Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '123 patent. Nor could Defendant reasonably or subjectively believe that the '123 patent is invalid. Despite that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '123 patent.

92.     The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

93.     The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

**COUNT VI:**
**CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 9,807,123**

94.     ViaPath re-alleges and incorporates by reference Paragraphs 1-93 above, as if fully set forth herein.

95.     Defendant is liable for indirect infringement by way of contributory infringement of the '123 patent pursuant to 35 U.S.C. § 271(c). Defendant has sold and continues to sell, offers to sell, or imports into the United States products and services knowing that they are especially made or adapted to operate in a way that infringes the '123 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

96.     Defendant has had actual knowledge of the '123 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '123 patent since no later than April 20, 2023, the date on which Defendant received ViaPath's Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '123 patent, among others. *See id.* Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '123 patent and Defendant's infringement of the '123 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

97.     Defendant markets its products to customers as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically

secure." *See* Exhibit 22, 1. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, on information and belief, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite has no substantial non-infringing uses. *See* Exhibit 11.

98.     Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '123 patent. Nor could Defendant reasonably or subjectively believe that the '123 patent is invalid. Despite that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '123 patent.

99.     The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

100.     The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

## COUNT VII:
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,030,292

101.     ViaPath re-alleges and incorporates by reference Paragraphs 1-100 above, as if fully set forth herein.

102.     Claim 1 of the '292 patent is directed to a *system* that includes *a kiosk*, which the '292 patent explicitly says may be *a tablet computer device*. Exhibit 7, 8:47-50. Claim 1 recites:

> 1.     A system for providing services to a secure facility, the system comprising:
> a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

a server that communicates with the kiosk via a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the network connection;

wherein the server records the audio and video and transmits the audio and video to a destination;

wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

wherein, after the user identity has been authenticated by the kiosk and during the transmission of the video, the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to blur the video being transmitted to the destination when the check determines that the face is not present in the frame; and

wherein the destination is a device communicating with the server, and the server is configured to authenticate a user of the device.

Exhibit 7, 18:50-19:11.

103.    Defendant has infringed and will continue to infringe at least one claim of the '292 patent by developing, testing, using, distributing, offering to sell, and selling customized hardware and software that it specifically intends, directs, and encourages to be used in a system for providing video visitation services to a secure facility. Defendant is liable for direct infringement, either literally or under the doctrine of equivalents of the '292 patent pursuant to 35 U.S.C. § 271(a).

104.    On information and belief, the use of Defendant's tablets—including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800—in its customers' systems meets each and every feature of claim 1 of the '292 patent. For example, on information and belief, the use of Defendant's Inspire 3 Tablet in NCIC's "InTouch Communications Suite" meets each and every feature of claim 1 of the '292 patent, as set forth in the attached claim chart. *See* Exhibit 12. It is also expected that discovery

will likely reveal additional evidentiary support that Defendant's tablets perform the above limitations and other limitations of the '292 patent.

105.    Defendant has had actual knowledge of the '292 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '292 patent since no later than April 20, 2023, the date on which Defendant received the Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '292 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '292 patent and Defendant's infringement of the '292 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

106.    Defendant could not have reasonably or subjectively believed that its actions do not constitute infringement of the '292 patent. Nor could Defendant reasonably or subjectively believe that the '292 patent is invalid. Given that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '292 patent.

107.    By its actions, Defendant's infringement of the '292 patent has irreparably harmed ViaPath. Unless Defendant's infringing acts are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

108.    By its actions, Defendant's infringement of the '292 patent has damaged, and continues to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

**COUNT VIII:**
**INDUCED INFRINGEMENT OF U.S. PATENT NO. 9,030,292**

109.     ViaPath re-alleges and incorporates by reference Paragraphs 1-108 above, as if fully set forth herein.

110.     Defendant is liable for indirect infringement by actively inducing infringement of the '292 patent pursuant to 35 U.S.C. § 271(b).

111.     On information and belief, Defendant's customers directly infringe the '292 patent by using Defendant's tablets, including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800, in the manner alleged above. *See* Exhibit 12. On information and belief, Defendant's tablets are implemented within systems offered, deployed, and maintained by Defendant's customers, including within NCIC's InTouch Communications Suite. NCIC's InTouch Communications Suite is a system for providing video visitation services to a secure facility, as recited in claim 1 of the '292 patent. *See id.* Defendant's customers therefore directly infringe the '292 patent by using systems that implement Defendant's tablets.

112.     On information and belief, Defendant specifically intends that its customers infringe the '292 patent, and Defendant and its customers do in fact directly infringe the '292 patent by using the systems that implement Defendant's tablets in the manner alleged above. *See* Exhibit 12. Defendant markets its products to prison facilities as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. Defendant markets its tablets to its correctional facility customers knowing that use of its tablets will inevitably lead its customers to implement the tablets as part of a system having a kiosk, as recited in claim 1 of the '292 patent. For example, on information and belief, Defendant's marketing caused NCIC to implement Defendant's Inspire 3 Tablet in

NCIC's InTouch Communications Suite, which includes the kiosk recited in claim 1 of the '292 patent. *See* Exhibit 12. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite, has no substantial non-infringing uses. *See id*.

113.    On information and belief, Defendant encourages customers to use its tablets within correctional facilities in an infringing manner. *See* Exhibit 2, 14. For example, Defendant actively participates in maintaining and servicing hardware and software for its tablets. *See* Exhibit 24, 5-6.

114.    Defendant has had actual knowledge of the '292 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '292 patent since no later than April 20, 2023, the date on which Defendant received ViaPath's Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '292 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '292 patent and Defendant's infringement of the '292 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

115.    Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '292 patent. Nor could Defendant reasonably or subjectively believe that the '292 patent is invalid. Despite that knowledge and subjective belief,

36

Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '292 patent.

116.     The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

117.     The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

**COUNT IX:**
**CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 9,030,292**

118.     ViaPath re-alleges and incorporates by reference Paragraphs 1-117 above, as if fully set forth herein.

119.     Defendant is liable for indirect infringement by way of contributory infringement of the '292 patent pursuant to 35 U.S.C. § 271(c). Defendant has sold and continues to sell, offers to sell, or imports into the United States products and services knowing that they are especially made or adapted to operate in a way that infringes the '292 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

120.     Defendant has had actual knowledge of the '292 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '292 patent since no later than April 20, 2023, the date on which Defendant received ViaPath's Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '292 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '292 patent and Defendant's infringement of the '292 patent. *See*

*GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

121.    Defendant markets its products to customers as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, on information and belief, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite has no substantial non-infringing uses. *See* Exhibit 12.

122.    Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '292 patent. Nor could Defendant reasonably or subjectively believe that the '292 patent is invalid. Despite that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '292 patent.

123.    The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

124.    The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

## COUNT X:
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 11,228,672

125.    ViaPath re-alleges and incorporates by reference Paragraphs 1-124 above, as if fully set forth herein.

126.     Claim 1 of the '672 patent recites:

1.      A system for preventing unsanctioned use of a mobile device within a controlled environment facility, comprising:

an application barrier stored on a memory of the mobile device, the application barrier configured to:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including functions that modify settings of the mobile device;

disable applications deemed non-useful by the controlled environment facility;

enable applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitor the social interactions of the social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity.

Exhibit 8, 21:50-22:2.

127.     Defendant has infringed and will continue to infringe at least one claim of the '672 patent by developing, testing, using, distributing, offering to sell, and selling customized hardware and software that it specifically intends, directs, and encourages to be used in a system for preventing unsanctioned use of a mobile device within a controlled environment facility. Defendant is liable for direct infringement, either literally or under the doctrine of equivalents of the '672 patent pursuant to 35 U.S.C. § 271(a).

128.     On information and belief, the use of Defendant's tablets—including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800—in its customers' systems meets each and every feature of claim 1 of the '672 patent. For example, on information and belief, the use of Defendant's Inspire 3 Tablet in NCIC's "InTouch Communications Suite" meets each and every feature of claim 1 of the '672 patent, as set forth in the attached claim chart. *See* Exhibit 13. It is also expected that discovery

will likely reveal additional evidentiary support that Defendant's tablets perform the above limitations and other limitations of the '672 patent.

129.    Defendant has had actual knowledge of the '672 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '672 patent since no later than September 22, 2022, the date on which Defendant received the First Notice Letter. *See* Exhibit 44. The First Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '672 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '672 patent and Defendant's infringement of the '672 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

130.    Defendant could not have reasonably or subjectively believed that its actions do not constitute infringement of the '672 patent. Nor could Defendant reasonably or subjectively believe that the '672 patent is invalid. Given that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '672 patent.

131.    By its actions, Defendant's infringement of the '672 patent has irreparably harmed ViaPath. Unless Defendant's infringing acts are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

132.    By its actions, Defendant's infringement of the '672 patent has damaged, and continues to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

## COUNT XI:
## INDUCED INFRINGEMENT OF U.S. PATENT NO. 11,228,672

133.    ViaPath re-alleges and incorporates by reference Paragraphs 1-132 above, as if fully set forth herein.

134.    Defendant is liable for indirect infringement by actively inducing infringement of the '672 patent pursuant to 35 U.S.C. § 271(b).

135.    On information and belief, Defendant's customers directly infringe the '672 patent by using Defendant's tablets, including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800, in the manner alleged above. *See* Exhibit 13. On information and belief, Defendant's tablets are implemented within systems offered, deployed, and maintained by Defendant's customers, including within NCIC's InTouch Communications Suite. NCIC's InTouch Communications Suite is a system for preventing unsanctioned use of a mobile device within a controlled environment facility, as recited in claim 1 of the '672 patent. Defendant's customers therefore directly infringe the '672 patent by using systems that implement Defendant's tablets.

136.    On information and belief, Defendant specifically intends that its customers infringe the '672 patent, and Defendant and its customers do in fact directly infringe the '672 patent by using the systems that implement Defendant's tablets in the manner alleged above. *See* Exhibit 13. Defendant markets its products to prison facilities as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. Defendant markets its tablets to its correctional facility customers knowing that use of its tablets will inevitably lead its customers to implement the tablets as part of a system having an application barrier, as recited in claim 1 of the '672 patent. For example, on information and belief, Defendant's marketing caused NCIC to implement Defendant's

41

Inspire 3 Tablet in NCIC's InTouch Communications Suite, which includes the application barrier recited in claim 1 of the '672 patent. *See* Exhibit 13. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite, has no substantial non-infringing uses. *See id*.

137.    On information and belief, Defendant encourages customers to use its tablets within correctional facilities in an infringing manner. *See* Exhibit 2, 14. For example, Defendant actively participates in maintaining and servicing hardware and software for its tablets. *See* Exhibit 24, 5-6.

138.    Defendant has had actual knowledge of the '672 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '672 patent since no later than September 22, 2022, the date on which Defendant received ViaPath's First Notice Letter. *See* Exhibit 44. The First Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '672 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '672 patent and Defendant's infringement of the '672 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

139.    Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '672 patent. Nor could Defendant reasonably or subjectively believe that the '672 patent is invalid. Despite that knowledge and subjective belief,

Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '672 patent.

140.    The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

141.    The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

**COUNT XII:**
**CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 11,228,672**

142.    ViaPath re-alleges and incorporates by reference Paragraphs 1-141 above, as if fully set forth herein.

143.    Defendant is liable for indirect infringement by way of contributory infringement of the '672 patent pursuant to 35 U.S.C. § 271(c). Defendant has sold and continues to sell, offers to sell, or imports into the United States products and services knowing that they are especially made or adapted to operate in a way that infringes the '672 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

144.    Defendant has had actual knowledge of the '672 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '672 patent since no later than September 22, 2022, the date on which Defendant received ViaPath's First Notice Letter. *See* Exhibit 44. The First Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '672 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '672 patent and Defendant's infringement of the '672 patent. *See*

*GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

145.    Defendant markets its products to customers as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, on information and belief, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite has no substantial non-infringing uses. *See* Exhibit 13.

146.    Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '672 patent. Nor could Defendant reasonably or subjectively believe that the '672 patent is invalid. Despite that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '672 patent.

147.    The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

148.    The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

## COUNT XIII:
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,721,624

149.    ViaPath re-alleges and incorporates by reference Paragraphs 1-148 above, as if fully set forth herein.

44

150.    Claim 1 of the '624 patent recites:

1.    A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate, the hardware barrier obstructing access to at least one port of the mobile device;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application;

monitor user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity;

prevent installation or removal of an application;

detect an attempt to perform an unsanctioned function of the application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

detect an attempt to access device settings of the mobile device by a user of the mobile device; and

prevent, at a kernel of an operating system operating on the mobile device, the processor of the mobile device from executing operations that attempt to access or alter the device settings of the mobile device;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of a controlled environment facility; and

wherein the device settings of the mobile device include a wireless access point setting.

Exhibit 9, 21:39-22:7.

151.    Defendant has infringed and will continue to infringe at least one claim of the '624 patent by developing, testing, using, distributing, offering to sell, and selling customized hardware and software that it specifically intends, directs, and encourages to be used in a system of layered security barriers that prevents unsanctioned use of a mobile device. Defendant is liable for direct infringement, either literally or under the doctrine of equivalents, of the '624 patent pursuant to 35 U.S.C. § 271(a).

152.     On information and belief, the use of Defendant's tablets—including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800—in its customers' systems meets each and every feature of claim 1 of the '624 patent. For example, on information and belief, the use of Defendant's Inspire 3 Tablet in NCIC's "InTouch Communications Suite" meets each and every feature of claim 1 of the '624 patent, as set forth in the attached claim chart. *See* Exhibit 14. It is also expected that discovery will likely reveal additional evidentiary support that Defendant's tablets perform the above limitations and other limitations of the '624 patent.

153.     Defendant has had actual knowledge of the '624 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '624 patent since no later than April 20, 2023, the date on which Defendant received the Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '624 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '624 patent and Defendant's infringement of the '624 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

154.     Defendant could not have reasonably or subjectively believed that its actions do not constitute infringement of the '624 patent. Nor could Defendant reasonably or subjectively believe that the '624 patent is invalid. Given that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '624 patent.

155.     By its actions, Defendant's infringement of the '624 patent has irreparably harmed ViaPath. Unless Defendant's infringing acts are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

156.     By its actions, Defendant's infringement of the '624 patent has damaged, and continues to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

## COUNT XIV:
## INDUCED INFRINGEMENT OF U.S. PATENT NO. 10,721,624

157.     ViaPath re-alleges and incorporates by reference Paragraphs 1-156 above, as if fully set forth herein.

158.     Defendant is liable for indirect infringement by actively inducing infringement of the '624 patent pursuant to 35 U.S.C. § 271(b).

159.     On information and belief, Defendant's customers directly infringe the '624 patent by using Defendant's tablets, including, at least, the Inspire 2 (TG800), Inspire 3 (TG801), Inspire 3 (TG801), TP156V1, TP156V2, TR810, TR820, TT1001, and TR800, in the manner alleged above. *See* Exhibit 14. On information and belief, Defendant's tablets are implemented within systems offered, deployed, and maintained by Defendant's customers, including within NCIC's InTouch Communications Suite. NCIC's InTouch Communications Suite is a system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, as recited in claim 1 of the '624 patent. *See id.* Defendant's customers therefore directly infringe the '624 patent by using systems that implement Defendant's tablets.

160.     On information and belief, Defendant specifically intends that its customers infringe the '624 patent, and Defendant and its customers do in fact directly infringe the '624 patent by using the systems that implement Defendant's tablets in the manner alleged above. *See*

47

Exhibit 14. Defendant markets its products to prison facilities as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. Defendant markets its tablets to its correctional facility customers knowing that use of its tablets will inevitably lead its customers to implement the tablets as part of a system having a hardware barrier, an application barrier, and an operating system barrier, as recited in claim 1 of the '624 patent. For example, on information and belief, Defendant's marketing caused NCIC to implement Defendant's Inspire 3 Tablet in NCIC's InTouch Communications Suite, which includes the hardware barrier, an application barrier, and an operating system barrier, as recited in claim 1 of the '624 patent. *See* Exhibit 14. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite, has no substantial non-infringing uses.

161.    On information and belief, Defendant encourages customers to use its tablets within correctional facilities in an infringing manner. *See* Exhibit 2, 14. For example, Defendant actively participates in maintaining and servicing hardware and software for its tablets. *See* Exhibit 24, 5-6.

162.    Defendant has had actual knowledge of the '624 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '624 patent since no later than April 20, 2023, the date on which Defendant received ViaPath's Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '624 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '624 patent and Defendant's infringement of the '624 patent. *See*

48

*GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

163.    Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '624 patent. Nor could Defendant reasonably or subjectively believe that the '624 patent is invalid. Despite that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '624 patent.

164.    The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

165.    The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

**COUNT XV:**
**CONTRIBUTORY INFRINGEMENT OF U.S. PATENT NO. 10,721,624**

166.    ViaPath re-alleges and incorporates by reference Paragraphs 1-165 above, as if fully set forth herein.

167.    Defendant is liable for indirect infringement by way of contributory infringement of the '624 patent pursuant to 35 U.S.C. § 271(c). Defendant has sold and continues to sell, offers to sell, or imports into the United States products and services knowing that they are especially made or adapted to operate in a way that infringes the '624 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

168.    Defendant has had actual knowledge of the '624 patent since at least the filing of the original Complaint in this action. Defendant has also had actual knowledge of the '624 patent since no later than April 20, 2023, the date on which Defendant received ViaPath's Second Notice Letter. *See* Exhibit 3. The Second Notice Letter alerted Defendant of the existence of ViaPath's patent portfolio and that Defendant infringes the '624 patent, among others. *See id*. Accordingly, Defendant has had actual knowledge or has remained willfully blind regarding both the existence and validity of the '624 patent and Defendant's infringement of the '624 patent. *See GlobalTech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing.").

169.    Defendant markets its products to customers as "custom-built devices" used in correctional facilities that "must prioritize connectivity while remaining digitally and physically secure." *See* Exhibit 22, 1. On information and belief, Defendant's tablets as used within the correctional facility systems have no substantial non-infringing uses. For example, on information and belief, Defendant's Inspire 3 Tablet as used within NCIC's InTouch Communications Suite has no substantial non-infringing uses. *See* Exhibit 14.

170.    Defendant could not have reasonably or subjectively believed that its actions do not constitute indirect infringement of the '624 patent. Nor could Defendant reasonably or subjectively believe that the '624 patent is invalid. Despite that knowledge and subjective belief, Defendant's actions are egregious and beyond typical infringement. Defendant thus willfully infringes the '624 patent.

171.    The infringing actions of Defendant have irreparably harmed ViaPath. Unless these actions are enjoined by this Court, ViaPath will continue to suffer additional irreparable injury. ViaPath has no adequate remedy at law.

172.    The infringing actions of Defendant have damaged, and continue to damage, ViaPath in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that ViaPath would have made but for Defendant's infringing acts.

## DEMAND FOR JURY TRIAL

173.    ViaPath demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

174.    Wherefore, ViaPath respectfully requests that this Court enter judgment against Defendant as follows:

a.    That one or more claims of the '443 patent have been infringed by Defendant;

b.    That Defendant's infringement of the '443 patent has been willful;

c.    That one or more claims of the '123 patent have been infringed by Defendant;

d.    That Defendant's infringement of the '123 patent has been willful;

e.    That one or more claims of the '292 patent have been infringed by Defendant;

f.    That Defendant's infringement of the '292 patent has been willful;

g.    That one or more claims of the '672 patent have been infringed by Defendant;

h.    That Defendant's infringement of the '672 patent has been willful;

i.      That one or more claims of the '624 patent have been infringed by Defendant;

j.      That Defendant's infringement of the '624 patent has been willful;

k.      An award of damages adequate to compensate ViaPath for the patent infringements that have occurred, together with pre-judgment interest and costs;

l.      An accounting for acts of infringement not presented at trial and/or up to the judgment and an award by the Court of additional damage for any such acts of infringement;

m.      A preliminary and permanent injunction against Defendant from further infringement, or alternatively, award an ongoing royalty for Defendant's post-verdict infringement, payable on each product or service offered by Defendant that is found to infringe one or more of the patents asserted herein, and on all future products and services that are not colorably different from those found to infringe;

n.      An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

o.      A finding that this is an exceptional case and an award to ViaPath of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

p.      Such other relief, including other monetary and equitable relief, as this Court deems just and proper.

Dated: May 22, 2023

*Of Counsel*:

Michael D. Specht (*pro hac vice*)
Jonathan Tuminaro (*pro hac vice*)
Uma Everett (*pro hac vice*)
Daniel S. Block (*pro hac vice*)
Ryan C. Richardson (*pro hac vice*)
Lauren Watt (*pro hac vice*)
STERNE, KESSLER, GOLDSTEIN
    & FOX PLLC
1100 New York Avenue, NW
Washington, DC  20005
mspecht@sternekessler.com
jtuminar@sternekessler.com
ueverett@sternekessler.com
dblock@sternekessler.com
rrichardson@sternekessler.com
lwatt@sternekessler.com

/s/ Adam W. Poff
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
 Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
swilson@ycst.com

***Attorneys for Plaintiff***
***Global Tel\*Link Corporation d/b/a***
***ViaPath Technologies***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 22, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jeffrey J. Lyons
BAKER & HOSTETLER LLP
1201 North Market Street, Suite 1407
Wilmington, DE 19801
jjlyons@bakerlaw.com

David A. Mancino
Derek M. Freitas
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
dmancino@bakerlaw.com
dfreitas@bakerlaw.com

Kevin W. Kirsch
Andrew E. Samuels
Mark S. Einsiedel
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
kkirsch@bakerlaw.com
asamuels@bakerlaw.com
meinsiedel@bakerlaw.com

Sally Yuanyuan Qin
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW, Suite 1100
Washington, DC 20036
sqin@bakerlaw.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff*
*Global Tel\*Link Corporation d/b/a*
*ViaPath Technologies*