**EXHIBIT 35**

PTO/SB/47 (03-09)
Approved for use through 07/31/2018. OMB 0651-0016
U.S. Patent and Trademark Office; U. S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# "FEE ADDRESS" INDICATION FORM

**Address to:**
**Mail Stop M Correspondence**
**Commissioner for Patents**
P.O. Box 1450
**Alexandria, VA 22313-1450**

**- OR -**

**Fax to:**
**571-273-6500**

> **INSTRUCTIONS:** The issue fee must have been paid for application(s) listed on this form.  In addition, only an address represented by a Customer Number can be established as the fee address for maintenance fee purposes (hereafter, fee address).  A fee address should be established when correspondence related to maintenance fees should be mailed to a different address than the correspondence address for the application. **When to check the first box below**: If you have a Customer Number to represent the fee address.  **When to check the second box below**: If you have no Customer Number representing the desired fee address, in which case a completed Request for Customer Number (PTO/SB/125) must be attached to this form.  For more information on Customer Numbers, see the Manual of Patent Examining Procedure (MPEP) § 403.

For the following listed application(s), please recognize as the "Fee Address" under the provisions of 37 CFR 1.363 the address associated with:

[X] Customer Number: 204

*OR*

[ ] The attached Request for Customer Number (PTO/SB/125) form.

| PATENT NUMBER (if known) | APPLICATION NUMBER |
|---|---|
| | 13/088,883 |

Completed by (check one):

[ ] Applicant/Inventor

[X] Attorney or Agent of record    42,709 (Reg. No.)

[ ] Assignee of record of the entire interest. See 37 CFR 3.71. Statement under 37 CFR 3.73(b) is enclosed. (Form PTO/SB/96)

[ ] Assignee recorded at Reel _____ Frame _____

/Jeffri A. Kaminski/
Signature

Jeffri A. Kaminski
Typed or printed name

(202) 344-4000
Requester's telephone number

January 14, 2019
Date

NOTE:  Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more that one signature is required, see below*.

[X] * Total of    1    forms are submitted.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 34845287 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 130664 |
| **Filer:** | Jeffri Kaminski/Hyebin Hwang |
| **Filer Authorized By:** | Jeffri Kaminski |
| **Attorney Docket Number:** | 130113-379888 (INV-003) |
| **Receipt Date:** | 14-JAN-2019 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 15:10:44 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Maintenance Fee Address Change | F_Fee_Indication.pdf | 22276 / d0a4ea0ff718d68d9b0ec3474ebd1e7b751054671 | no | 1 |

**Warnings:**

| Information: | | |
|---|---|---|
| **Total Files Size (in bytes):** | | 22276 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 05/12/2015 | 9030292 | 130113-379888 | 9388 |

130664        7590        04/22/2015

TELMATE LLC C/O VENABLE LLP
P.O. Box 34385
Washington, DC 20043-9998

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 172 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Richard Torgersrud, San Francisco, CA;
Kevin O'Neil, Parma, ID;
Grant Gongaware, San Francisco, CA;
Morgan Collins, San Mateo, CA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

OK TO ENTER: /L.N./

Application No. 13/088,883                          Docket No.: 130113-379888 (INV-003)
Response to Notice of Allowance dated March 20, 2015

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Torgersrud et al.                                  Art Unit:  2683

Application No:  13/088,883                         Examiner:  Laura N. Nguyen

Confirmation No:  9388

Filed:  April 18, 2011                              Atty. Docket No:  130113-379888 (INV-003)

Customer No:
For:  INTERACTIVE AUDIO/VIDEO SYSTEMS              130664
      AND DEVICE FOR USE IN A SECURE              PATENT TRADEMARK OFFICE
      FACILITY

## AMENDMENT UNDER 37 C.F.R. § 1.312

M/S Issue Fee
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Madam:

    In response to the Notice of Allowance dated March 20, 2015, please amend the above-
identified U.S. patent application as follows prior to issuance of the patent.

    **Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of
this paper.

    **Remarks** begin on page 9 of this paper.

1

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | 130113-379888 | 9388 |

130664     7590     04/15/2015
TELMATE LLC C/O VENABLE LLP
P.O. Box 34385
Washington, DC 20043-9998

| EXAMINER |
|---|
| NGUYEN, LAURA N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2683 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/15/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| *Response to Rule 312 Communication* | Application No. | Applicant(s) |
|---|---|---|
| | 13/088,883 | TORGERSRUD ET AL. |
| | **Examiner** | **Art Unit** |
| | LAURA NGUYEN | 2683 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address –*

1. ☒ The amendment filed on <u>03 April 2015</u> under 37 CFR 1.312 has been considered, and has been:

   a) ☒ entered.

   b) ☐ entered as directed to matters of form not affecting the scope of the invention.

   c) ☐ disapproved because the amendment was filed after the payment of the issue fee.
   Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1) and the required fee to withdraw the application from issue.

   d) ☐ disapproved.  See explanation below.

   e) ☐ entered  in part. See explanation below.

| /BRIAN ZIMMERMAN/ | /LAURA NGUYEN/ |
|---|---|
| Supervisory Patent Examiner, Art Unit 2683 | Examiner, Art Unit 2683 |

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** __Mail__      **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or __Fax__ **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

| | |
|---|---|
| CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)<br><br>TELMATE LLP<br>c/o VENABLE LLP<br>P.O. Box 34385<br>Washington, DC  20043-9998 | Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.<br>**Certificate of Mailing or Transmission**<br>I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.<br><br>_____ (Depositor's name)<br>_____ (Signature)<br>_____ (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | 130113-379888 | 9388 |

TITLE OF INVENTION:    INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960.00 | | | $960.00 | 06/20/2015 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| L. N. Nguyen | 2683 | |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).<br><br>☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.<br><br>☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.** | 2. For printing on the patent front page, list<br>(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,<br>(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. | 1 __Venable LLP__<br><br>2 _____<br><br>3 _____ |

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

| (A) NAME OF ASSIGNEE | (B) RESIDENCE: (CITY and STATE or COUNTRY) |
|---|---|
| Telmate, LLC | |

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☒ Corporation or other private group entity  ☐ Government

| 4a. The following fee(s) are submitted:<br><br>☒ Issue Fee<br><br>☐ Publication Fee (No small entity discount permitted)<br><br>☐ Advance Order - # of Copies _____ | 4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)<br><br>☐ A check is enclosed.<br><br>☐ Payment by credit card. Form PTO-2038 is attached.<br><br>☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number __22-0261__ (enclose an extra copy of this form). |

| 5. Change in Entity Status (from status indicated above) | |
|---|---|
| ☐ Applicant certifying micro entity status. See 37 CFR 1.29 | NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment. |
| ☐ Applicant asserting small entity status. See 37 CFR 1.27 | NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status. |
| ☐ Applicant changing to regular undiscounted fee status. | NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable. |

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature | _/s/ [signature]_ | Date | 4/3/2015 |
|---|---|---|---|
| Typed or printed name | Leslie A. Lee | Registration No. | 66,644 |

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
9434505

Application No. 13/088,883                          Docket No.: 130113-379888 (INV-003)
Response to Notice of Allowance dated March 20, 2015

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Torgersrud et al.                                  Art Unit: 2683

Application No: 13/088,883                          Examiner: Laura N. Nguyen

Confirmation No: 9388

Filed: April 18, 2011                               Atty. Docket No: 130113-379888 (INV-003)

                                                    Customer No:
For: INTERACTIVE AUDIO/VIDEO SYSTEMS                      130664
     AND DEVICE FOR USE IN A SECURE               PATENT TRADEMARK OFFICE
     FACILITY

## AMENDMENT UNDER 37 C.F.R. § 1.312

M/S Issue Fee
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Madam:

        In response to the Notice of Allowance dated March 20, 2015, please amend the above-
identified U.S. patent application as follows prior to issuance of the patent.

        **Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of
this paper.

        **Remarks** begin on page 9 of this paper.

1

Application No. 13/088,883                                              Docket No.: 130113-379888 (INV-003)
Response to Notice of Allowance dated March 20, 2015

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions, and listings, of claims in the application:


1. (Previously Presented)  A system for providing services to a secure facility, the system comprising:

     a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

     a server that communicates with the kiosk via a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

     the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the network connection;

     wherein the server records the audio and video and transmits the audio and video to a destination;

     wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

     wherein, after the user identity has been authenticated by the kiosk and during the transmission of the video, the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to blur the video being transmitted to the destination when the check determines that the face is not present in the frame; and

     wherein the destination is a device communicating with the server, and the server is configured to authenticate a user of the device.

2-3.  (Canceled).

Application No. 13/088,883                                    Docket No.: 130113-379888 (INV-003)
Response to Notice of Allowance dated March 20, 2015

4. (Previously Presented)  The system of claim 1, further comprising:

a second kiosk located in a visitation area of the secure facility; and

a local server located at the secure facility;

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area; and

wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5. (Canceled).

6. (Original)  The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7. (Previously Presented)  The system of claim 1, wherein during a singular communications session, the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8-10. (Canceled).

11. (Previously Presented)  The system of claim 1, wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages.

12. (Canceled).

13.  (Previously Presented)  The system of claim 1, wherein the server is configured to receive an incoming call for the user from a third party caller, determine whether the user has permission to receive incoming calls, if the user has permission, transmit the incoming call to the kiosk and at least a second kiosk, and

wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input the log in information.

14.  (Previously Presented)  The system of claim 1, wherein the kiosk is configured to provide the user with at least two of: access to audio, video, and text of educational material stored on the server and/or the kiosk, access to audio, video, and text of religious material stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.

15.  (Canceled).

16.  (Original)  The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

17-18.  (Canceled).

19.  (Previously Presented)  A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a speaker connected to the bus;

4

Application No. 13/088,883                                    Docket No.: 130113-379888 (INV-003)
Response to Notice of Allowance dated March 20, 2015

a touchscreen display connected to the bus; and

a network interface connected to the bus for communicating with a server via a network connection,

wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification, records audio and video communications and transmits the audio and video communications to the server, and provides access to internet web pages via a web proxy, and

wherein, after the user has been authenticated and during the transmission of the video, the kiosk is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the kiosk is further configured to blur video being transmitted to a destination when the check determines that the face is not present in the frame.

20.  (Canceled).

21.  (Previously Presented)  The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational material; access to audio, video, and text of religious material; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.  (Previously Presented)  A  method of monitoring use of an interactive kiosk during a video transmission, comprising:

authenticating the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

using a camera of the kiosk to capture video of a user of the kiosk during use of the kiosk;

transmitting the video to a server;

periodically extracting, at the server, a frame of the video;

performing a check after the user identity has been authenticated by the kiosk and during the transmission of the video, at the server, to determine if a face is present during the frame; and

blurring the video transmission, at the server, to a destination if the check determines that the face is not present in the frame.

23-25. (Canceled).

26.  (Previously Presented)  The system of claim 1, wherein the log in information is a personal identification number.

27.  (Currently amended)  The ~~system~~ <u>kiosk</u> of claim 19, wherein the personal log in information is a personal identification number.

28.   (Previously Presented) A system for providing services to a secure facility, the system comprising:

a plurality of kiosks located at a secure facility, each kiosk comprising a processor, display, speaker, and microphone; and

a server that communicates with the kiosks and a device of an outside party via one or more network connections, the server comprising a server processor, a network interface unit, and a computer memory;

wherein the server is configured to receive a communications request from the device of the outside party and, in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk,

wherein the kiosk is configured to receive the message, and, upon receipt of the message, display an incoming communications request message and initiate a login procedure,

wherein the server is configured to authenticate a user of the device, and

6

wherein, after the user has been authenticated and during a transmission of a video, the video being transmitted from the kiosk to the calling party, the server is configured to periodically extract a frame of the video; and perform a check to determine if a face is present in the frame, and the server is further configured to blur the video being transmitted to the calling party when the check determines that the face is not present in the frame.

29.   (Previously Presented)  The system of claim 28, wherein the communications request is a request to initiate a voice call or a video call.

30.   (Previously Presented)  The system of claim 28, wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server.

31.   (Previously Presented)  The system of claim 28, wherein the kiosk is configured to play an alert tone or audio message upon receiving the message.

32.   (Previously Presented)  The system of claim 1, wherein the biometric verification comprises a facial authentication via the camera.

33.   (Previously Presented)  The system of claim 1, wherein the biometric verification comprises a voice authentication via the microphone.

34.   (Previously Presented)  The kiosk of claim 19, wherein the biometric verification comprises a facial authentication of an image captured by the camera.

35.   (Previously Presented)  The kiosk of claim 19, wherein the biometric verification comprises a voice authentication of an audible phrase recorded using the microphone.

36.   (Previously Presented)  The system of claim 1, wherein the server is configured to detect the presence of a second face in the video frame and, while the presence of the second face is detected, the kiosk is configured to blur the video.

Application No. 13/088,883                                      Docket No.: 130113-379888 (INV-003)
Response to Notice of Allowance dated March 20, 2015

37. (Previously Presented)  The system of claim 1, wherein the server is configured to record video in a tele-medical session mode wherein the blurring the video being transmitted to the destination is not performed when the check determines that the face is not present in the frame.

38. (Previously Presented)  The system of claim 1, further comprising a plurality of kiosks located at the secure facility, wherein the server is configured to receive a request for a resident from a caller outside the secure facility, identify one of the plurality of kiosks that is located in an area the resident is housed in using a schedule of the resident, and activate the identified one of the plurality of kiosks to play an alert tone and display the resident's name.

39. (Previously Presented)  The kiosk of claim 19, wherein the kiosk is configured to detect the presence of a second face in the video frame and, while the presence of the second face is detected, the kiosk is configured to blur the video.

40. (Previously Presented)  The kiosk of claim 19, wherein the kiosk is configured to record video in a tele-medical session mode wherein the blurring the video being transmitted to the destination is not performed when the check determines that the face is not present in the frame.

41. (Previously Presented)  The method of claim 22, further comprising:

        detecting the presence of a second face in the video frame and, while the presence of the second face is detected, blurring the video transmission, at the server, to the destination.

42. (Previously Presented)  The system of claim 28, wherein the server is configured to detect the presence of a second face in the video frame and, while the presence of the second face is detected, the server is configured to blur the video being transmitted to the calling party.

43. (Previously Presented)  The system of claim 28, wherein the server is configured to receive a request for a resident from the device of outside party, identify one of the plurality of kiosks that is located in an area the resident is housed in using a schedule of the resident, and activate the identified one of the plurality of kiosks to play an alert tone and display the resident's name.

Application No. 13/088,883                              Docket No.: 130113-379888 (INV-003)
Response to Notice of Allowance dated March 20, 2015

## **REMARKS**

Applicant acknowledges the Notice of Allowance dated March 20, 2015, and the Notice of Allowability allowing claims 1, 4, 6, 7, 11, 13, 14, 16, 19, 21, 22 and 26-43.  Applicant respectfully requests that the present amendment be entered under 37 C.F.R. 1.312.

Pursuant to M.P.E.P. § 714.16, the amendment is (a) needed for proper disclosure and protection of the invention and (b) requires no substantial amount of additional work on the part of the Office.  No new matter is added.  Specifically, claim 27 has been amended to recite "the kiosk of claim 19," rather than "the system of claim 19," because claim 19 recites "[a] kiosk for providing facility services in a secure manner."

Applicant believes that no additional fee is necessary for this submission. Nonetheless, the Commissioner is hereby authorized to charge any deficiency in the fees due for the filing of this Amendment under 37 C.F.R. § 1.312, and to refund any excess payment of fees to Deposit Account number 22-0261, which reference to Order number 130113-379888.

If the Examiner believes, for any reasons, that personal communication will expedite prosecution of this application, the Examiner is hereby invited to telephone the undersigned at the number provided.


Dated:  April 3, 2015                        Respectfully submitted,

9432263                                      By /Leslie A. Lee/
                                             Leslie A. Lee
                                                 Registration No.: 66,644
                                             Jeffri A. Kaminski
                                                 Registration No.: 42,709
                                             VENABLE LLP
                                             P.O. Box 34385
                                             Washington, DC  20043-9998
                                             (202) 344-4000
                                             (202) 344-8300 (Fax)
                                             Attorney For Applicant

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13088883 |
| **Filing Date:** | 18-Apr-2011 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard Torgersrud |
| **Filer:** | Leslie Ann Lee/Moira Anderson |
| **Attorney Docket Number:** | 130113-379888 |

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Reissue issue fee | 1511 | 1 | 960 | 960 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| | | **Total in USD ($)** | | **960** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 21970649 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 130664 |
| **Filer:** | Leslie Ann Lee/Moira Anderson |
| **Filer Authorized By:** | Leslie Ann Lee |
| **Attorney Docket Number:** | 130113-379888 |
| **Receipt Date:** | 03-APR-2015 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 19:34:12 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $960 |
| RAM confirmation Number | 4182 |
| Deposit Account | 220261 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: |
| Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees) |
| Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees) |

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | 379888_Issue_Fee_Transmittal.pdf | 103690<br>8728feddaa3da877a4443cb8a72b5800a95034e4 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | | 379888_Amendment_Under_1_312.pdf | 78577<br>3edf6dc65a402e01929ba6dcacdea1f654b6f1da | yes | 9 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | Start | | End |
| Amendment after Notice of Allowance (Rule 312) | 1 | | 1 |
| Claims | 2 | | 8 |
| Applicant Arguments/Remarks Made in an Amendment | 9 | | 9 |

| | | | | | |
|---|---|---|---|---|---|
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 30334<br>7227d71ae1c68a292bb4e3d34683c1f34ec55468 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| **Total Files Size (in bytes):** | | | 212601 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/AIA/80 (07-12)
Approved for use through 11/30/2014. OMB 0651-0035
U.S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO

I hereby revoke all previous powers of attorney given in the application identified in the attached statement under 37 CFR 3.73(c).

I hereby appoint:

☒ Practitioners associated with Customer Number: | **130664**

**OR**

☐ Practitioner(s) named below (if more than ten patent practitioners are to be named, then a customer number must be used):

| Name | Registration Number | | Name | Registration Number |
|------|--------------------|---|------|--------------------|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO) in connection with any and all patent applications assigned <u>only</u> to the undersigned according to the USPTO assignment records or assignments documents attached to this form in accordance with 37 CFR 3.73(c).

Please change the correspondence address for the application identified in the attached statement under 37 CFR 3.73(c) to:

☒ The address associated with Customer Number: | **130664**

**OR**

| Firm or Individual Name |  |  |  |
|-------------------------|---|---|---|
| Address |  |  |  |
| City |  | State | Zip |
| Country |  |  |  |
| Telephone |  | Email |  |

Assignee Name and Address: Telmate LLC
655 Montgomery Street, Suite# 1800
San Francisco, CA 94111

**A copy of this form, together with a statement under 37 CFR 3.73(c) (Form PTO/AIA/96 or equivalent) is required to be Filed in each application in which this form is used. The statement under 37 CFR 3.73(c) may be completed by one of The practitioners appointed in this form, and must identify the application in which this Power of Attorney is to be filed.**

### SIGNATURE of Assignee of Record
The individual whose signature and title is supplied below is authorized to act on behalf of the assignee

| Signature | *[signature]* | Date | 03/09/2015 |
|-----------|--------------|------|-----------|
| Name | Scott Lam | Telephone | (415) 300-4323 |
| Title | General Counsel | | |

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 21958054 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 130664 |
| **Filer:** | Leslie Ann Lee/Allyson M. Bell |
| **Filer Authorized By:** | Leslie Ann Lee |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 02-APR-2015 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 16:52:15 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Assignee showing of ownership per 37 CFR 3.73 | Statement3.pdf | 28238 b09101b4dad75f907d466cf3ae2a2b1bb1b 9b5be | no | 1 |

**Warnings:**

**Information:**

| 2 | Power of Attorney | TelmateGenPOA.pdf | 108388<br><br>81796d51613e0de4c41d5a622f3142c7292<br>3db04 | no | 1 |

| **Warnings:** |
| **Information:** |

| | **Total Files Size (in bytes):** | 136626 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/96 (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(b)

Applicant/Patent Owner:   Torgersrud et al.

Application No./Patent No.:         13/088,883          Filed/Issue Date:         April 18, 2011

Titled:      INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

|  |  |
|---|---|
| Telmate LLC | a Limited Liability Company |
| (Name of Assignee) | (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.) |

states that it is:

1.   [x]   the assignee of the entire right, title, and interest in;

2.   [ ]   an assignee of less than the entire right, title, and interest in
              (The extent (by percentage) of its ownership interest is _____ %); or

3.   [ ]   an assignee of an undivided interest in the entirety of (a complete assignment from one of the joint inventors was made)
the patent application/patent identified above by virtue of either:

A.   [x]   An assignment from the inventor(s) of the patent application/patent identified above. The assignment was
              recorded in the United States Patent and Trademark Office at Reel         026144       ,
              Frame        0452        , or for which a copy thereof is attached.

**OR**

B.   [ ]   A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:
              1. From: _____    To: _____
                    The document was recorded in the United States Patent and Trademark Office at
                    Reel _____ , Frame _____ , or for which a copy thereof is attached.

              2. From: _____    To: _____
                    The document was recorded in the United States Patent and Trademark Office at
                    Reel _____ , Frame _____ , or for which a copy thereof is attached.

              3. From: _____    To: _____
                    The document was recorded in the United States Patent and Trademark Office at
                    Reel _____ , Frame _____ , or for which a copy thereof is attached.

              [ ]   Additional documents in the chain of title are listed on a supplemental sheet(s).

[x]   As required by 37 CFR 3.73(b)(1)(i), the documentary evidence of the chain of title from the original owner to the
        assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

        [NOTE:  A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment
        Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO.  See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

|  |  |
|---|---|
| /Leslie A. Lee/ | April 2, 2015 |
| Signature | Date |
|  | Attorney/Agent |
| Leslie A. Lee | 66,644 |
| Printed or Typed Name | Title |

 United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 |

**CONFIRMATION NO. 9388**

113003
Dickstein Shapiro LLP (Telmate)
1825 Eye Street NW
Washington, DC 20006

**POWER OF ATTORNEY NOTICE**


*OC000000074258796*

Date Mailed: 03/26/2015

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/20/2015.

- The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

/sibrahim/

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

 U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 |

**CONFIRMATION NO. 9388**

130664
TELMATE LLC C/O VENABLE LLP
P.O. Box 34385
Washington, DC 20043-9998

**POA ACCEPTANCE LETTER**

*OC000000074258831*

Date Mailed: 03/26/2015

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/20/2015.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/sibrahim/
_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | |
|---|---|---|---|
| 113003 | 7590 | 03/20/2015 | |

Dickstein Shapiro LLP (Telmate)
1825 Eye Street NW
Washington, DC 20006

| EXAMINER |
|---|
| NGUYEN, LAURA N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2683 | |

DATE MAILED: 03/20/2015

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 | 9388 |

TITLE OF INVENTION: INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 06/22/2015 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.  THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.  <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>  SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.  IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: <u>Mail</u>    Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or <u>Fax</u>   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

113003        7590        03/20/2015
Dickstein Shapiro LLP (Telmate)
1825 Eye Street NW
Washington, DC 20006

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 | 9388 |

TITLE OF INVENTION: INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 06/22/2015 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| NGUYEN, LAURA N | 2683 | 340-005530 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2.** For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

Page 2 of 3



U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 | 9388 |

113003        7590        03/20/2015

Dickstein Shapiro LLP (Telmate)
1825 Eye Street NW
Washington, DC 20006

| EXAMINER |
|---|
| NGUYEN, LAURA N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2683 | |

DATE MAILED: 03/20/2015

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No.<br>13/088,883 | Applicant(s)<br>TORGERSRUD ET AL. | |
|---|---|---|---|
| | Examiner<br>LAURA NGUYEN | Art Unit<br>2683 | AIA (First Inventor to File) Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *1/26/2015*.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1,4,6,7,11,13,14,16,19,21,22 and 26-43*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All   b) ☐ Some   *c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date 1/29/2014
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

/LAURA NGUYEN/
Examiner, Art Unit 2683

Application/Control Number: 13/088,883                                    Page 2
Art Unit: 2683

## DETAILED ACTION

### *Continued Examination Under 37 CFR 1.114*

1.     A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on

1/26/2015 has been entered.

## REASONS FOR ALLOWANCE

2.     Claims 1, 4, 6, 7, 11, 13, 14, 16, 19, 21-22, and 26-43 are allowed.

3.     The following is an examiner's statement of reasons for allowance:

The prior art of record does not disclose, nor is there motivation to combine, a

system for providing video services to a secure facility that periodically authenticates a

user of a kiosk in the facility by performing biometric authentication of the video after an

initial authentication, and blurs the video being transmitted when it is determined that a

face is not present in the frame.

The application is in condition for allowance based upon the aforementioned

rationale in combination with the other claimed elements.

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

Application/Control Number: 13/088,883                                          Page 3
Art Unit: 2683

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


### Conclusion

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to LAURA NGUYEN whose telephone number is (571)270-

3785.  The examiner can normally be reached on Monday - Friday 9:00 AM - 5:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Brian Zimmerman can be reached on (571) 272-3059.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/LAURA NGUYEN/
Examiner, Art Unit 2683

                        /BRIAN ZIMMERMAN/
                        Supervisory Patent Examiner, Art Unit 2683

Used in Lieu of PTO/SB/08A/B
(Based on PTO 10-07 version)

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | Application Number | 13/088,883-Conf. #9388 |
| | | Filing Date | April 18, 2011 |
| | | First Named Inventor | Kevin O'Neil |
| | | Art Unit | 2683 |
| | | Examiner Name | L. Nguyen |
| Sheet | 1 | of | 1 | Attorney Docket Number | P5789.0006/P006 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | AA | 7,529,357 | 05/05/2009 | Rae et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1]Applicant's unique citation designation number (optional). [2]Applicant is to place a check mark here if English language Translation is attached.

| Examiner Signature | /Laura Nguyen/ | Date Considered | 03/03/2015 |
|---|---|---|---|

DSMDB-3229822v1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /L.N./

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 13088883 | TORGERSRUD ET AL. |
| | **Examiner** | **Art Unit** |
| | LAURA NGUYEN | 2683 |

**CPC**

| Symbol | | | | Type | Version |
|---|---|---|---|---|---|
| G06F | 21 | 32 | | F | 2013-01-01 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**CPC Combination Sets**

| Symbol | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|
| | | | | | | |

| /LAURA NGUYEN/ Examiner.Art Unit 2683 | 3/3/2015 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 29 | |
| /BRIAN ZIMMERMAN/ Supervisory Patent Examiner.Art Unit 2683 | 03/06/2015 | **O.G. Print Claim(s)** | **O.G. Print Figure** |
| (Primary Examiner) | (Date) | 1 | 2 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13088883 | TORGERSRUD ET AL. |
| | **Examiner** | **Art Unit** |
| | LAURA NGUYEN | 2683 |

| US ORIGINAL CLASSIFICATION | | INTERNATIONAL CLASSIFICATION | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | | **NON-CLAIMED** | | | | | |
| | | G | 0 | 6 | F | 21 / 32 (2013.01.01) | | | | | | | |
| **CROSS REFERENCE(S)** | | | | | | | | | | | | | |
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| /LAURA NGUYEN/ Examiner.Art Unit 2683 | 3/3/2015 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 29 | |
| /BRIAN ZIMMERMAN/ Supervisory Patent Examiner.Art Unit 2683 | 03/06/2015 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 2 |

| *Issue Classification* | Application/Control No. | | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | 13088883 | | TORGERSRUD ET AL. |
| | **Examiner** | | **Art Unit** |
| | LAURA NGUYEN | | 2683 |

| ☐ | Claims renumbered in the same order as presented by applicant | | | ☐ | CPA | ☐ | T.D. | ☐ | R.1.47 |

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 27 | 31 | | | | | | | | | | | | |
| 2 | 4 | 10 | 32 | | | | | | | | | | | | |
| 3 | 6 | 11 | 33 | | | | | | | | | | | | |
| 4 | 7 | 18 | 34 | | | | | | | | | | | | |
| 5 | 11 | 19 | 35 | | | | | | | | | | | | |
| 6 | 13 | 12 | 36 | | | | | | | | | | | | |
| 7 | 14 | 13 | 37 | | | | | | | | | | | | |
| 8 | 16 | 14 | 38 | | | | | | | | | | | | |
| 15 | 19 | 20 | 39 | | | | | | | | | | | | |
| 16 | 21 | 21 | 40 | | | | | | | | | | | | |
| 22 | 22 | 23 | 41 | | | | | | | | | | | | |
| 9 | 26 | 28 | 42 | | | | | | | | | | | | |
| 17 | 27 | 29 | 43 | | | | | | | | | | | | |
| 24 | 28 | | | | | | | | | | | | | | |
| 25 | 29 | | | | | | | | | | | | | | |
| 26 | 30 | | | | | | | | | | | | | | |

| /LAURA NGUYEN/ Examiner.Art Unit 2683 | | 3/3/2015 | **Total Claims Allowed:** | |
|---|---|---|---|---|
| (Assistant Examiner) | | (Date) | 29 | |
| /BRIAN ZIMMERMAN/ Supervisory Patent Examiner.Art Unit 2683 | | 03/06/2015 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | | (Date) | 1 | 2 |

U.S. Patent and Trademark Office

Part of Paper No. 20150303

| *Search Notes*  | Application/Control No. 13088883 | Applicant(s)/Patent Under Reexamination O'NEIL ET AL. |
|---|---|---|
| | Examiner LAURA NGUYEN | Art Unit 2683 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 340 | 5.51-5.54,5.8,5.81-5.85,5.2,5.21,5.28,5.31 | 3/10/2014 | LN |
| 725 | 9,10,12,14,30,98,99 | 3/10/2014 | LN |
| 382 | 115,118 | 3/10/2014 | LN |
| 348 | 14.01-14.16 | 3/10/2014 | LN |
| 345 | 173 | 3/10/2014 | LN |
| 713 | 168,186 | 3/10/2014 | LN |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST Search | 4/18/2013 | LN |
| Updated EAST Search | 9/23/2013 | LN |
| Updated EAST Search | 3/10/2014 | LN |
| Updated EAST Search | 3/3/2015 | LN |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| G06F | 21/32 | 3/3/2015 | LN |

| /L.N./ Examiner.Art Unit 2683 | |
|---|---|

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S189 | 8 | ((blur) with (video audio sound)) same (authenticat$3 authoriz$5) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 16:24 |
| S190 | 28 | ((blur$4) with (video audio sound)) same (authenticat$3 authoriz$5) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 16:25 |
| S191 | 362 | ((blur$4)) same (authenticat$3 authoriz$5) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 16:46 |
| S192 | 66 | ((blur$4)) same (authenticat$3 authoriz$5) same (video audio sound) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 16:47 |
| S193 | 214 | ((blur$4)) same (authenticat$3 authoriz$5) same (video audio sound image) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 16:47 |
| S194 | 1295 | (transmit$4 send$3) with (blur$4 vague indistinct) with (video audio image) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 17:08 |
| S195 | 8 | S194 same (authenticat$3 authoriz$5) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 17:09 |
| S196 | 460 | ((blur$4) with (video audio sound)) and (authenticat$3 authoriz$5) with (user person individual) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 17:13 |
| S197 | 2635 | ((blur$4) with (video audio sound image)) and ((authenticat$3 authoriz$5) with (user person individual) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 17:13 |
| S198 | 367 | ((blur$4) with (video)) and ((authenticat$3 authoriz$5) with (user person individual)) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 17:13 |
| S199 | 367 | ((blur$4) with (video)) and ((authenticat$3 authoriz$5) with (user person individual)) | US-PGPUB; USPAT | OR | OFF | 2015/02/11 17:15 |
| S200 | 383 | ((blur$4) with (video)) and ((authenticat$3 authoriz$5) with (user person individual)) | US-PGPUB; USPAT | OR | ON | 2015/02/11 17:15 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 3981 | G06F21/32.cpc. | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:27 |
| L2 | 374 | (blur$4 with video).clm. | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:27 |
| L3 | 0 | 2 and 1 | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:27 |

| L4 | 3 | (periodic$4 with authenticat$3 with face).clm. | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:28 |
| L5 | 3 | 4 and 1 | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:28 |
| L6 | 68 | (server with determin$3 with face).clm. | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:28 |
| L7 | 9 | 6 and 1 | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:28 |
| L8 | 0 | (log with in with biometric with verification).clm. | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:29 |
| L9 | 6 | (log with biometric with verification).clm. | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:29 |
| L10 | 2 | 9 and 1 | US-PGPUB; USPAT; UPAD | OR | ON | 2015/03/03 14:29 |

**3/3/2015 2:30:35 PM**
**C:\Users\lnguyen8\Documents\EAST\Workspaces\13088883_Kiosk to authenticate users using login info and biometrics in order to provide authorized services and content to the user.wsp**

PTO/AIA/80 (07-12)
Approved for use through 11/30/2014. OMB 0651-0035
U.S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO

I hereby revoke all previous powers of attorney given in the application identified in the attached statement under 37 CFR 3.73(c).

I hereby appoint:

☒ Practitioners associated with Customer Number:

**130664**

**OR**

☐ Practitioner(s) named below (if more than ten patent practitioners are to be named, then a customer number must be used):

| Name | Registration Number | Name | Registration Number |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO) in connection with any and all patent applications assigned <u>only</u> to the undersigned according to the USPTO assignment records or assignments documents attached to this form in accordance with 37 CFR 3.73(c).

Please change the correspondence address for the application identified in the attached statement under 37 CFR 3.73(c) to:

☒ The address associated with Customer Number:

**130664**

**OR**

| Firm or Individual Name |  |  |  |
|---|---|---|---|
| Address |  |  |  |
| City |  | State |  | Zip |
| Country |  |  |  |
| Telephone |  | Email |  |

Assignee Name and Address: Telmate LLC
655 Montgomery Street, Suite# 1800
San Francisco, CA 94111

A copy of this form, together with a statement under 37 CFR 3.73(c) (Form PTO/AIA/96 or equivalent) is required to be Filed in each application in which this form is used. The statement under 37 CFR 3.73(c) may be completed by one of The practitioners appointed in this form, and must identify the application in which this Power of Attorney is to be filed.

### SIGNATURE of Assignee of Record
The individual whose signature and title is supplied below is authorized to act on behalf of the assignee

| Signature | *[signature]* | Date | 03/09/2015 |
|---|---|---|---|
| Name | Scott Lam | Telephone | (415) 300-4323 |
| Title | General Counsel |  |  |

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/SB/96 (07-09)
Approved for use through 07/31/2012.  OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# STATEMENT UNDER 37 CFR 3.73(b)

Applicant/Patent Owner:     Tordersrud et al.

Application No./Patent No.:          13/088,883          Filed/Issue Date:          April 18, 2011

Titled:     COMPRESSION-DISTRACTION SPINAL FIXATION SYSTEM

Telmate LLC                               ,                    a Limited Liability Company
(Name of Assignee)                                            (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that it is:

1. ☐ the assignee of the entire right, title, and interest in;

   ☐ an assignee of less than the entire right, title, and interest in
       (The extent (by percentage) of its ownership interest is _____ %); or

3. ☒ an assignee of an undivided interest in the entirety of (a complete assignment from one of the joint inventors was made)
the patent application/patent identified above by virtue of either:

A. ☐ An assignment from the inventor(s) of the patent application/patent identified above. The assignment was
       recorded in the United States Patent and Trademark Office at Reel _____ ,
       Frame _____ , or for which a copy thereof is attached.

OR

B. ☒ A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

    1. From:   Richard Torgersrud                    To:   Telmate LLC
       The document was recorded in the United States Patent and Trademark Office at
       Reel     026144     , Frame     0452     , or for which a copy thereof is attached.

    2. From:   Kevin O'Neil                          To:   Telmate LLC
       The document was recorded in the United States Patent and Trademark Office at
       Reel     026144     , Frame     0452     , or for which a copy thereof is attached.

    3. From:   Grant Gongaware                       To:   Telmate LLC
       The document was recorded in the United States Patent and Trademark Office at
       Reel     026144     , Frame     0452     , or for which a copy thereof is attached.

    ☒ Additional documents in the chain of title are listed on a supplemental sheet(s).

☒ As required by 37 CFR 3.73(b)(1)(i), the documentary evidence of the chain of title from the original owner to the
   assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

   [NOTE:  A separate copy (*i.e.*, a true copy of the original assignment document(s)) must be submitted to Assignment
   Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO.  See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

| /Leslie A. Lee/ | March 20, 2015 |
| Signature | Date |
| | Attorney/Agent |
| Leslie A. Lee | 66,644 |
| Printed or Typed Name | Title |

SUPPLEMENTAL SHEET FOR USE WITH PTO/SB/96 (07-09)

## Supplemental Sheet

4. From: Morgan Collins                           To: Telmate LLC
   The document was recorded in the United States Patent and Trademark Office at
   Reel: 026144, Frame: 0452

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 21836556 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 113003 |
| **Filer:** | Leslie Ann Lee/Allyson M. Bell |
| **Filer Authorized By:** | Leslie Ann Lee |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 20-MAR-2015 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 16:05:06 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | TelmateGenPOA.pdf | 108388<br><br>81796d51613e0de4c41d5a622f3142c7292 3db04 | no | 1 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

| 2 | Assignee showing of ownership per 37 CFR 3.73. | Statement373.pdf | 27747<br><br>7b1ecefbbed8feec8cb6b886367ecf73ca09 0b7a | no | 2 |

| Warnings: | |
| --- | --- |
| Information: | |

| | Total Files Size (in bytes): | 136135 |
| --- | --- | --- |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

USED IN LIEU OF PTO/SB/30 (07-09)

| Request for Continued Examination (RCE) Transmittal | |
|---|---|
| **Request for Continued Examination (RCE) Transmittal**<br><br>Address to:<br>Mail Stop RCE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | **Application Number** — 13/088,883-Conf. #9388<br>**Filing Date** — April 18, 2011<br>**First Named Inventor** — Kevin O'Neil<br>**Art Unit** — 2683<br>**Examiner Name** — L. Nguyen<br>**Attorney Docket Number** — P5789.0006/P006 |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. **Submission required under 37 CFR 1.114** Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

       i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

       ii. ☐ Other _____

   b. ☒ Enclosed

       i. ☒ Amendment/Reply      iii. ☐ Information Disclosure Statement (IDS)

       ii. ☐ Affidavit(s)/Declaration(s)      iv. ☐ Other _____

2. **Miscellaneous**

   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

   b. ☐ Other _____

3. **Fees** The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

   a. ☒ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. 04-1073 .

       i. ☒ RCE fee required under 37 CFR 1.17(e)

       ii. ☒ Extension of time fee (37 CFR 1.136 and 1.17)

       iii. ☐ Other _____

   b. ☐ Check in the amount of $ _____ enclosed

   c. ☒ Payment by credit card.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED | | | |
|---|---|---|---|
| Signature | *[signature]* | Date | January 26, 2015 |
| Name (Print/Type) | Jonathan L. Falkler | Registration No. | 62,115 |

PTO/SB/22 (03-13)
Approved for use through 3/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) | Docket Number (Optional) P5789.0006/P006 | |
|---|---|---|
| Application Number | 13/088,883-Conf. #9388 | Filed April 18, 2011 |
| For INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY | | |
| Art Unit 2683 | Examiner | L. Nguyen |

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a reply in the above-identified application.

The requested extension and fee are as follows (check time period desired and enter the appropriate fee below):

| | | Fee | Small Entity Fee | Micro Entity Fee | |
|---|---|---|---|---|---|
| ☐ | One month (37 CFR 1.17(a)(1)) | $200 | $100 | $50 | $ _____ |
| ☐ | Two months (37 CFR 1.17(a)(2)) | $600 | $300 | $150 | $ _____ |
| ☒ | Three months (37 CFR 1.17(a)(3)) | $1,400 | $700 | $350 | $ 1,400.00 |
| ☐ | Four months (37 CFR 1.17(a)(4)) | $2,200 | $1,100 | $550 | $ _____ |
| ☐ | Five months (37 CFR 1.17(a)(5)) | $3,000 | $1,500 | $750 | $ _____ |

☐ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
   Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

☐ A check in the amount of the fee is enclosed.

☒ Payment by credit card.

☐ The Director has already been authorized to charge fees in this application to a Deposit Account.

☒ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account Number   04-1073   .

☒ Payment made via EFS-Web.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

☐ applicant/inventor.

☐ assignee of record of the entire interest. See 37 CFR 3.71. 37 CFR 3.73(b) statement is enclosed (Form PTO/SB/96).

☒ attorney or agent of record. Registration number   62,115   .

☐ attorney or agent acting under 37 CFR 1.34. Registration number   _____   .

| /Jt L L/L/ | January 26, 2015 |
|---|---|
| Signature | Date |
| Jonathan L. Falkler | (202) 420-4742 |
| Typed or printed name | Telephone Number |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below*.

| ☐ | * Total of   1   forms are submitted. |
|---|---|

Docket No.: P5789.0006/P006
(PATENT)

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Patent Application of:
Kevin O'Neil et al.

Application No.: 13/088,883          Confirmation No.: 9388

Filed: April 18, 2011          Art Unit: 2683

For:   INTERACTIVE AUDIO/VIDEO SYSTEM AND     Examiner: L.N. Nguyen
      DEVICE FOR USE IN A SECURE FACILITY

**<u>AMENDMENT ACCOMPANYING RCE</u>**

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

**INTRODUCTORY COMMENTS**

In response to the Final Rejection dated July 24, 2014, please amend the above-identified

U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2

of this paper.

**Remarks** begin on page 9 of this paper.

DSMDB-3306381 v1

Application No. 13/088,883                                    Docket No.: P5789.0006/P006

## <u>AMENDMENTS TO THE CLAIMS</u>

1.      (Currently amended)  A system for providing services to a secure facility, the system comprising:

a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

a server that communicates with the kiosk via a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the network connection;

wherein the server records the audio and video and transmits the audio and video to a destination;

wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

wherein, after the user identity has been authenticated by the kiosk and during the transmission of the video, the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to blur or obscure the video being transmitted to the destination when the check determines that the face is not present in the frame; and

wherein the destination is a device communicating with the server, and the server is configured to authenticate a user of the device.

2-3.    (Canceled)

4.      (Previously presented)  The system of claim 1, further comprising:

2

a second kiosk located in a visitation area of the secure facility; and

a local server located at the secure facility;

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area; and

wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5.      (Canceled)

6.      (Original)   The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7.      (Previously presented)  The system of claim 1, wherein during a singular communications session, the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8-10.   (Canceled)

11.     (Previously presented)  The system of claim 1, wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages.

12.     (Canceled)

13.     (Previously presented)  The system of claim 1, wherein the server is configured to receive an incoming call for the user from a third party caller, determine whether the user has permission to receive incoming calls, if the user has permission, transmit the incoming call to the kiosk and at least a second kiosk, and

3

wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input the log in information.

14.     (Previously presented)  The system of claim 1, wherein the kiosk is configured to provide the user with at least two of: access to audio, video, and text of educational material stored on the server and/or the kiosk, access to audio, video, and text of religious material stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.

15.     (Canceled)

16.     (Original)  The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

17-18.  (Canceled)

19.     (Currently amended) A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a speaker connected to the bus;

a touchscreen display connected to the bus; and

a network interface connected to the bus for communicating with a server via a network connection,

4

Application No. 13/088,883          Docket No.: P5789.0006/P006

wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification, records audio and video communications and transmits the audio and video communications to the server, and provides access to internet web pages via a web proxy, and

wherein, after the user has been authenticated and during the transmission of the video, the kiosk is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the kiosk is further configured to blur ~~or obscure~~ video being transmitted to a destination when the check determines that the face is not present in the frame.

20.     (Canceled)

21.     (Previously presented)  The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational material; access to audio, video, and text of religious material; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.     (Currently amended)  A method of monitoring use of an interactive kiosk during a video transmission, comprising:

authenticating the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

using a camera of the kiosk to capture video of a user of the kiosk during use of the kiosk;

transmitting the video to a server;

periodically extracting, at the server, a frame of the video;

performing a check after the user identity has been authenticated by the kiosk and during the transmission of the video, at the server, to determine if a face is present during the frame; and

5

blurring ~~or obscuring~~ the video transmission, at the server, to a destination if the check determines that the face is not present in the frame.

23-25.  (Canceled)

26.     (Previously presented)  The system of claim 1, wherein the log in information is a personal identification number.

27.     (Previously presented)   The system of claim 19, wherein the personal log in information is a personal identification number.

28.     (Currently amended)  A system for providing services to a secure facility, the system comprising:

a plurality of kiosks located at a secure facility, each kiosk comprising a processor, display, speaker, and microphone; and

a server that communicates with the kiosks and a device of an outside party via one or more network connections, the server comprising a server processor, a network interface unit, and a computer memory;

wherein the server is configured to receive a communications request from the device of the outside party and, in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk,

wherein the kiosk is configured to receive the message, and, upon receipt of the message, display an incoming communications request message and initiate a login procedure,

wherein the server is configured to authenticate a user of the device, and

wherein, after the user has been authenticated and during a transmission of a video, the video being transmitted from the kiosk to the calling party, the server is configured to periodically extract a frame of the video; and perform a check to determine if a face is present in the frame, and the

6

server is further configured to blur ~~or obscure~~ the video being transmitted to the calling party when the check determines that the face is not present in the frame.

29.     (Previously presented)  The system of claim 28, wherein the communications request is a request to initiate a voice call or a video call.

30.     (Previously presented)  The system of claim 28, wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server.

31.     (Previously presented)  The system of claim 28, wherein the kiosk is configured to play an alert tone or audio message upon receiving the message.

32.     (Previously presented)  The system of claim 1, wherein the biometric verification comprises a facial authentication via the camera.

33.     (Previously presented)  The system of claim 1, wherein the biometric verification comprises a voice authentication via the microphone.

34.     (Previously presented)  The kiosk of claim 19, wherein the biometric verification comprises a facial authentication of an image captured by the camera.

35.     (Previously presented)  The kiosk of claim 19, wherein the biometric verification comprises a voice authentication of an audible phrase recorded using the microphone.

36.     (New)  The system of claim 1, wherein the server is configured to detect the presence of a second face in the video frame and, while the presence of the second face is detected, the kiosk is configured to blur the video.

37.     (New)  The system of claim 1, wherein the server is configured to record video in a tele-medical session mode wherein the blurring the video being transmitted to the destination is not performed when the check determines that the face is not present in the frame.

DSMDB-3306381 v1

38.    (New) The system of claim 1, further comprising a plurality of kiosks located at the secure facility, wherein the server is configured to receive a request for a resident from a caller outside the secure facility, identify one of the plurality of kiosks that is located in an area the resident is housed in using a schedule of the resident, and activate the identified one of the plurality of kiosks to play an alert tone and display the resident's name.

39.    (New)  The kiosk of claim 19, wherein the kiosk is configured to detect the presence of a second face in the video frame and, while the presence of the second face is detected, the kiosk is configured to blur the video.

40.    (New)  The kiosk of claim 19, wherein the kiosk is configured to record video in a tele-medical session mode wherein the blurring the video being transmitted to the destination is not performed when the check determines that the face is not present in the frame.

41.    (New)  The method of claim 22, further comprising:

detecting the presence of a second face in the video frame and, while the presence of the second face is detected, blurring the video transmission, at the server, to the destination.

42.    (New)  The system of claim 28, wherein the server is configured to detect the presence of a second face in the video frame and, while the presence of the second face is detected, the server is configured to blur the video being transmitted to the calling party.

43.    (New) The system of claim 28, wherein the server is configured to receive a request for a resident from the device of outside party, identify one of the plurality of kiosks that is located in an area the resident is housed in using a schedule of the resident, and activate the identified one of the plurality of kiosks to play an alert tone and display the resident's name.

DSMDB-3306381 v1

Application No. 13/088,883                                   Docket No.: P5789.0006/P006

## REMARKS

Claims 1, 4, 6, 7, 11, 13, 14, 16, 19, 21-22, and 26-43 are pending in this application. Claims 1, 19, 22, and 28 have been amended. Claims 2-3, 5, 8-10, 12, 15, 17-18, 20, and 23-25 were previously canceled, without prejudice, and new claims 36-43 have been added. Applicant reserves the right to pursue the original claims and other claims in this and other applications. In view of the amendments to the claims and the remarks below, Applicant respectfully requests that the rejections be withdrawn and the claim allowed.

### Responses to Rejections under 35 U.S.C. § 103

1. Claims 1, 4, 6-7, 11, 16, 22, 26, and 32-33 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae (U.S. Patent No. 8,340,260) and further in view of Kenoyer (U.S. Publication No. 2006/0259755) and Hodge (U.S. Publication No. 2006/0285667).

Claim 1 recites a system for providing services to a secure facility that includes "a kiosk located at a secure facility" and "a server that communicates with the kiosk via a network connection." The kiosk has "a camera" and is configured to "receive communications from the camera . . . and transmit video of the communications to the server." The kiosk is configured to authenticate a user using log in information and biometric information and "after the user identify has been authenticated by the kiosk and during the transmission of the video," the server periodically "extract[s] a frame of the video, and perform[s] a check to determine if a face is present in the frame." Claim 1, as amended, recites that, when the face is not present in the frame, the server is configured to "blur the video being transmitted to the destination" (the claim previously recited that the server was configured to "blur or obscure" the video).

The Office Action (at 5) concedes that Rae does not disclose checking to determine whether a face is present in a frame of video and blurring video when no face is present. The Office Action relies on Kenoyer to cure the deficiency. More specifically, the Office Action (at 5-6) states that Kenoyer discloses continuously determining if a face is present and matches that of the

9

authenticated user, and that Kenoyer is configured to deny the user access and continued participation in the video conference, thus obscuring transmission of video of the unauthenticated user to the destination. Kenoyer's disclosure of terminating the video conference when an authentication fails, however, is different than the claimed system, which, in addition to performing an authentication by verifying log in information and performing a biometric verification, will also blur video when it detects that a face is not present on the screen.

The claimed system blurs video, for example, to "prevent[] inappropriate images from being transmitted." Specification at [0085]. Blurring the video is a different solution than Kenoyer's termination of a call. In the claimed system, the blurred video, and potentially audio, can still be transmitted. Since the call is not necessarily dropped, a user can, for example, correct the issue. In the Kenoyer system, on the other hand, the call is terminated when the face is not present. Kenoyer does not teach or suggest blurring video when a face is not present.

Hodge does not cure the deficiencies of Kenoyer and Rae. Hodge describes a biometric authentication which can be used in a secure telephone management system, but does not disclose or suggest blurring a video transmission where a face is not present in a frame.

Accordingly, claim 1 is allowable over Rae, Kenoyer and Hodge. Claims 4, 6-7, 11, 16, 22, 26, and 32-33 depend from claim 1 or include similar limitations and are allowable for at least the same reasons.

New claims 36-38 and 41 depend respectively from claims 1 and 22, and are allowable for at least the same reasons that their respective base claims are allowable. These claims recite additional allowable features as well. For example, the claims recite features such as detecting the presence of a second face in the video frame and blurring the video, recording video in a tele-medical session mode wherein the blurring is not performed, and receiving requests from outside callers and playing an alert tone at a kiosk located in an area a resident is housed. Accordingly, claims 36-38 and 41 are allowable for additional reasons, as well.

DSMDB-3306381 v1

2. Claims 13 and 28-31 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae, Kenoyer, and Hodge as applied to claim 1, and further in view of Cree (U.S. Patent No. 6,665,380) and Mattila (U.S. Publication No. 2008/0129816).

Claim 13 depends from claim 1 and includes all limitations of claim 1. As described above, Rae, Kenoyer, and Hodge do not disclose all features of claim 1, and Cree and Mattila fail to cure the deficiencies of those references. Cree is merely relied upon for disclosing the transmission of the incoming call to a kiosk, and Mattila is merely relied upon for disclosing a display screen notifying the user of the incoming call. None of these references, however, teach or suggest a server that is configured to "blur the video being transmitted to the destination when the check determines that the face is not present in the frame," Accordingly, claim 13 is allowable for at least the same reasons that claim 1 is allowable.

Claims 28-31 include similar limitations as claim 1 and are allowable for similar reasons as those discussed above. For example, claim 28 recites a system for providing services to a secure facility comprising a server configured to "periodically extract a frame of a video . . . perform a check to determine if a face is present in the frame, and . . . blur the video . . . when the check determines that the face is not present in the frame." Claims 29-31 and 42-43 depend from claim 28. Accordingly, claims 28-31 and 42-43 are allowable for at least the same reasons that claim 1 is allowable.

3. Claim 14 stands rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae, Kenoyer, and Hodge as applied to claim 1, and further in view of Hanna (U.S. Publication No. 2011/0047473).

Claim 14 depends from claim 1 and includes all limitations of claim 1. As described above Rae, Kenoyer, and Hodge do not disclose all features of claim 1, and Hanna does not cure the deficiencies of those references. Hanna is merely relied upon for disclosing a kiosk configured to provide inmates access to commissary items and remote teaching. It does not teach or suggest a server configured to "blur the video being transmitted to the destination when the check determines

that the face is not present in the frame." Accordingly, claim 14 is allowable for at least the same reasons that claim 1 is allowable.

> 4. Claims 19, 21, 27, 34, and 35 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae, Kenoyer, and Hodge, and further in view of Kennedy (U.S. Publication No. 2010/0256500).

Claim 19 includes similar limitations as claim 1 and is allowable for similar reasons. Claim 19 recites a kiosk for providing facility services in a secure manner wherein, the kiosk is configured to "blur video being transmitted to a destination when the check determines that the face is not present in the frame." As mentioned above with respect to claim 1, these features are not disclosed in Rae, Kenoyer, and Hodge, and Kennedy does not cure this deficiency. Kennedy is relied upon merely for disclosing a touchscreen display. Claim 19 is therefore allowable for at least the same reasons that claim 1 is allowable. Claims 21, 27, 34, 35, 39, and 40 depend from claim 19 and are allowable for at least the same reasons.

In view of the above, Applicant believes the pending application is in condition for allowance.

Application No. 13/088,883                                      Docket No.: P5789.0006/P006

     The Director is hereby authorized to charge any deficiency or credit any overpayment in the fees filed, asserted to be filed or which should have been filed herewith (or with any paper hereafter filed in this application by this firm) to our Deposit Account No. 04-1073, under Order No. P5789.0006/P006.

Dated:  January 26, 2015            Respectfully submitted,

                               By _____

                               Mark J. Thronson
                                 Registration No.: 33,082
                               Jonathan L. Falkler
                                 Registration No.: 62,115
                               DICKSTEIN SHAPIRO LLP
                               1825 Eye Street, NW
                               Washington, DC  20006-5403
                               (202) 420-2200
                               Attorneys for Applicant

DSMDB-3306381 v1

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13088883 |
| **Filing Date:** | 18-Apr-2011 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard Torgersrud |
| **Filer:** | Donald Anthony Gregory/Alice Weaver |
| **Attorney Docket Number:** | P5789.0006/P006 |

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 3 months with $0 paid | 1253 | 1 | 1400 | 1400 |
| **Miscellaneous:** | | | | |
| RCE- 2nd and Subsequent Request | 1820 | 1 | 1700 | 1700 |
| **Total in USD ($)** | | | | **3100** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 21309834 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 113003 |
| **Filer:** | Donald Anthony Gregory/Alice Weaver |
| **Filer Authorized By:** | Donald Anthony Gregory |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 26-JAN-2015 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 15:48:56 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $3100 |
| RAM confirmation Number | 2690 |
| Deposit Account | 041073 |
| Authorized User | THRONSON, MARK J. |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | P57890006.pdf | 595794<br>569fc28126e605057aa70fa04f3e0bfdafbf8a40 | yes | 15 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | Document Description | Start | | End |
| | Request for Continued Examination (RCE) | 1 | | 1 |
| | Extension of Time | 2 | | 2 |
| | Amendment Submitted/Entered with Filing of CPA/RCE | 3 | | 3 |
| | Amendment Copy Claims/Response to Suggested Claims | 4 | | 10 |
| | Applicant Arguments/Remarks Made in an Amendment | 11 | | 15 |

| Warnings: |
|---|

| Information: |
|---|

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 32714<br>213659a4fa4b4aea8ec34a1c3abdfb387b41be791 | no | 2 |

| Warnings: |
|---|

| Information: |
|---|

| Total Files Size (in bytes): | | 628508 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 | 9388 |

113003          7590          07/24/2014

Dickstein Shapiro LLP (Telmate)
1825 Eye Street NW
Washington, DC 20006

| EXAMINER |
|---|
| NGUYEN, LAURA N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2683 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/24/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 13/088,883 | TORGERSRUD ET AL. |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | LAURA NGUYEN | 2683 | No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>19 June 2014</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☒ This action is **FINAL.**    2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒ Claim(s) <u>1,4,6,7,11,13,14,16,19,21,22 and 26-35</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) <u>1,4,6,7,11,13,14,16,19,21,22 and 26-35</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☒ The drawing(s) filed on <u>4/18/2011</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
    a) ☐ All  b) ☐ Some \*  c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    \* See the attached detailed Office action for a list of the certified copies not received.

**Interim copies:**
    a) ☐ All  b) ☐ Some  c) ☐ None of the: Interim copies of the priority documents have been received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
4) ☐ Other: _____.

Application/Control Number: 13/088,883                                          Page 2
Art Unit: 2683

## DETAILED ACTION

1.      In the amendment filed on 6/19/2014, no new claims have been added.

Therefore, claims 1, 4, 6-7, 11, 13-14, 16, 19, 21-22, and 26-35 are currently pending in

the application.

2.      Applicant's arguments filed 6/19/2014 have been fully considered but they are

not persuasive.


### *Claim Rejections - 35 USC § 103*

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

4.      Claims 1, 4, 6-7, 11, 16, 22,  26, and 32-33 are rejected under 35 U.S.C. 103(a)

as being unpatentable over Rae (U.S. Pat 8,340,260), and further in view of Kenoyer

(U.S. Pub 2006/0259755) and Hodge (2006/0285667).

         Regarding claim 1, Rae discloses **a system for providing services to a secure**

**facility** (col. 6 line 52-65; The call processing system got prisons, nursing homes,

camps, dormitories)**, the system comprising:**

         **a kiosk located at a secure facility, the kiosk comprising a processor,**

**display, speaker, microphone, and a camera** (Figure 1 element 141; col. 7 line 3-16;

col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminal 141, where speakers are

an inherent component of a telephone.  A camera and microphone may be placed at the

Application/Control Number: 13/088,883                                    Page 3
Art Unit: 2683

terminal for biometric authentication or general use.  Rae does not explicitly disclose a

display.  However, in an alternative embodiment, Rae discloses that the system may

also be implemented with video phones and computers.  At the time of invention, it

would have been obvious to one of ordinary skill in the art to have a workstation that

combines the embodiments so that there is a computer and a video phone in order to

provide more services to the workstation user.  Additionally, computers and

videophones are well known in the art to have a processor and display.  Therefore, it

would have been obvious to one of ordinary skill in the art to have a display and

processor at the workstation as a part of the computer or videophone)**; and**

      **a server that communicates with the kiosk via a network connection** (col. 9

line 50-64; The network 111), **the server comprising a server processor, a network**

**interface unit, and a computer memory** (col. 9 line 50-64; The processor-based

server having a media gateway to provide communications to the user terminal.  It is

well known in the art that servers have memory.  Therefore, at the time of invention, it

would have been obvious to one of ordinary skill in the art to include memory in the

processor-based server)**;**

      **the kiosk being configured to receive communications from the camera**

**and microphone and transmit audio and video of the communications to the**

**server via the network connection** (col 9 line 50-64; col. 25 line 6-13; The user

terminal receives communications from the server via the media gateway.  It is obvious

to one of ordinary skill in the art that if a video phone is being used, audio and video

information would be transmitted from the microphone and camera input)**;**

Application/Control Number: 13/088,883                                    Page 4
Art Unit: 2683

**wherein the server records the audio and video and transmits the audio and video to a destination** (col 10 line 51-67; col. 11 line 1-2; col. 25 lines 6-13; The call recording system records the call at a workstation for retrieval or playback at workstations.  Rae does not explicitly disclose transmitting audio and video.  However, In an alternative embodiment, Rae discloses using a videophone instead of a telephone.  At the time of invention, it would have been obvious to one of ordinary skill in the art that if a videophone is used in place of a telephone, that audio and video would be recorded and transmitted)**;**

**wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user** (col. 19 line 19-28; An inmate uses their PIN number or identifier to make a call) **and also performing a biometric verification** (col. 19 line 19-28; Biometric information is also used for authentication.  It is obvious to one of ordinary skill in the art to use both logon and biometric authentication methods for additional security)**; and**

**wherein the destination is a device communicating with the server and the server is configured to authenticate a user of the device** (col. 25 line 6-13; col 11 line 57-65; col. 9 line 14-29; The system may be used with cellular phones, video phones, or PDAs.  A validation system verifies the identity of the called party, or the call management system may request a PIN number from the called party.  One of ordinary skill in the art recognizes that the called party may be on a cellular phone, video phone, or PDA)**.**

Application/Control Number: 13/088,883          Page 5
Art Unit: 2683

    Rae does not explicitly disclose **wherein<u>, after the user identity has been</u> <u>authenticated and during transmission of the video,</u> the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to <u>blur or</u> obscure the video being transmitted to the destination when the check determines that a face is not present in the frame**.

    In an analogous art, Kenoyer discloses **<u>after the user identity has been</u> <u>authenticated and during transmission of the video,</u>** the system is **configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame** (paragraph [0041]-[0044]; paragraph [0035]; The video conferencing system performs an initial authentication of the user before logging the user onto the videoconference network. Once the user is logged in, throughout the videoconference, the system continuously determines if a face is present and matches the stored image to ensure that the user is in the videoconference continues to be the same authenticated user)**, and the server is further configured to <u>blur or</u> obscure the video being transmitted to the destination when the check determines that a face is not present in the frame** (paragraph [0042]; paragraph [0044]; The user is only authenticated if the currently captured image matches the stored image. If no match is found, the user is denied access to the network. It is obvious to one of ordinary skill in the art that if the user is not authenticated, for example when the same face is not present, the user is denied access and may not continue to participate in the video conference, thus obscuring  transmission of video of the unauthenticated user to the

Application/Control Number: 13/088,883                                    Page 6
Art Unit: 2683

destination.  Because the claim limitation only requires one of blurring or obscuring the

video, Kenoyer's system with denies access, analogous to obscuring, meets the claim

limitations).

At the time of invention, it would have been obvious to one of ordinary skill in the

art to combine Kenoyer's method of continuously authenticating the user in video

transmission in Rae's call processing system with video phone to ensure that an

unauthenticated user does not communicate over the call processing system.

The combination of Rae and Kenoyer does not explicitly disclose **the server**

performing authentication.

In an analogous art, Hodge discloses **the server** performing authentication

(paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the

art to substitute Hodge's method of authenticating the user on the server in Rae and

Kenoyer's system with biometric authentication so that there is a central location for

storing all authentication data, instead of storing authentication data at each terminal.

Regarding claim 4, Rae **discloses further comprising:**

**a second kiosk located in a visitation area of the secure facility** (col 7. line 9-

16; col. 25 line 6-13;  Call processing between the telephone terminals 141 and the

visitation telephones 143.  The system may also be used with video phones and

computers.  It is obvious to one of ordinary skill in the art to place the video phone and

computer at the visitation telephone terminal 143 for communications with the user

terminal 141 that also contains these components)**; and**

Application/Control Number: 13/088,883                                    Page 7
Art Unit: 2683

**a local server located at the secure facility; the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area** (col. 9 line 10-21; The call management system of the facility has a server the completes calls between the telephone terminals 141 and visitation telephones 143)**; and**

**wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area** (col. 8 line 50-60; col 10 line 51-67; col. 11 line 1-29; col. 25 lines 6-13; The computer-based platform of the facility comprising a call management system and call recording system records calls, such as the exchange of data provided by the call, for retrieval or playback at the visitation telephones 143.  In an alternative embodiment, Rae discloses the use of video phones in place of telephones in the call management system.  It is obvious to one of ordinary skill in the art that if a video phone is used instead of a telephone, that audio and video information are recorded and transmitted to the visitation terminal, since audio and video are both exchanged data in a video phone)**.**

Regarding claim 6, Rae discloses the system **configured to periodically extract a frame of video and authenticate a face in the frame against a stored identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication.  Biometric authentication may be required every time a user makes a call.  If a user makes multiple calls, this is considered to be "periodically extracting a frame of video").

Application/Control Number: 13/088,883                                      Page 8
Art Unit: 2683

Hodge discloses **the server** performing authentication (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

Regarding claim 7, Rae discloses **wherein the kiosk is configured to periodically record a frame of video and authenticates a face in the frame against a stored identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication.  Biometric authentication may be required every time a user makes a call)**.**

Kenoyer discloses **during a singular communications session, the kiosk is configured to periodically record a frame of video** (paragraph [0044]; paragraph [0041]; The user is continuously authenticated by the videoconference system capturing an image of the user).

Hodge discloses **transmit the frame to the server, and wherein the server processor authenticates** (paragraph [0321]-[0322]; The biometric information is transmitted from the scanner at the telephone to the site server for authentication).

Regarding claim 11, Rae discloses **wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages** (col. 19 line 24-28; col. 25 line 6-13; col. 20 line 26-30; The kiosk requires the user to logon to the terminal before use.  The terminal may have a computer, which is well known in the art to be capable of transmitting messages.  The call management system allows the user to have access to external services, analogous to providing a third party access to the messages)**.**

Application/Control Number: 13/088,883                                    Page 9
Art Unit: 2683

Regarding claim 16, Rae discloses **wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk** (Abstract; col. 15 line 37-44; The call management system has an inmate management system that allows individuals to view notification of events on a computer for all occasions, which is interpreted to include an idle screen of a computer.  Notifications may be in the form of emails).

Regarding claim 22, Rae discloses **a method of monitoring use of an interactive kiosk during a video transmission, comprising: <u>authenticating the identity of a user of the kiosk by verifying login information entered by the user</u>** (col. 13 line 57-67; col. 14 line 1-8; A user logs in to a workstation with their logon ID information that allows them access to the workstation) **<u>and also performing a biometric verification</u>** (col. 16 line 10-27; col. 19 line 18-28; Biometric information is captured.  When the inmate makes a call, they may be required to enter their PIN and other biometric information)**; and**

**using a camera of the kiosk to capture video of a user of the kiosk during use of the kiosk** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication.  The image may be still or moving image, where moving image is analogous to video).

Rae does not explicitly disclose **transmitting the video to a server;**

**periodically extracting, at the server, a frame of the video;**

Application/Control Number: 13/088,883                    Page 10
Art Unit: 2683

**performing a check <u>after the user has been authenticated by the kiosk and during transmission of the video</u>, at the server, to determine if a face is present during <u>the</u> frame; and**

**<u>blurring or </u>obscuring the video transmission, at the server, to a destination if the check determines that the face is not present in the frame.**

Kenoyer discloses **periodically extracting a frame of the video** (paragraph [0041]; paragraph [0044]; The video conferencing system continuously determines if a face is present and matches the stored image)**;**

**performing a check <u>after the user has been authenticated by the kiosk and during transmission of the video</u> to determine if a face is present during a frame** (paragraph [0041]-[0044]; paragraph [0035]; The video conferencing system performs an initial authentication of the user before logging the user onto the videoconference network.  Once the user is logged in, throughout the videoconference, the system continuously determines if a face is present and matches the stored image to ensure that the user is in the videoconference continues to be the same authenticated user)**; and**

**<u>blurring or </u>obscuring the video transmission, at the server, to a destination if the check determines that the face is not present in the frame** (paragraph [0042]; paragraph [0044]; The user is only authenticated if the currently captured image matches the stored image.  If no match is found, the user is denied access to the network.  It is obvious to one of ordinary skill in the art that if the user is not authenticated, for example when the face is not present, the user is denied access and

Application/Control Number: 13/088,883                                              Page 11
Art Unit: 2683

may not continue to participate in the video conference, thus obscuring  transmission of

video of the unauthenticated user to the destination).

At the time of invention, it would have been obvious to one of ordinary skill in the

art to combine Kenoyer's method of continuously authenticating the user in video

transmission in Rae's call processing system with video phone to ensure that an

unauthenticated user does not communicate over the call processing system.

The combination of Rae and Kenoyer does not explicitly disclose **transmitting

the video to a server, and extracting and checking at the server.**

In an analogous art, Hodge discloses **transmitting the video to a server**

(paragraph [0321]-[0322]; The site server storing the biometric data for authentication);

and

**extracting and checking at the server** (paragraph [0322]; The site server

processes the biometric information for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the

art to substitute Hodge's method of authenticating the user on the server in Rae and

Kenoyer's system with biometric authentication so that there is a central location for

storing all authentication data, instead of storing authentication data at each terminal.

Regarding claim 26, Rae discloses **wherein the log in information is a

personal identification number** (col. 19 line 24-28).

Regarding claim 32, Rae discloses **wherein the biometric verification

comprises a facial authentication via the camera** (col. 16 line 10-27).

Application/Control Number: 13/088,883                                   Page 12
Art Unit: 2683

Regarding claim 33, Rae discloses **wherein the biometric verification**

**comprises a voice authentication via the microphone** (col. 16 line 10-27).


5.      Claims 13 and 28-31 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Rae, Kenoyer, and Hodge as applied to claim 1 above, and further in view of Cree

(U.S. Pat 6,665,380) and Mattila (U.S. Pub 2008/0129816).

Regarding claim 13, Rae discloses **wherein the server is configured to**

**receive an incoming call for the user from a third party caller** (col. 25 line 6-13;

Where a third party caller is interpreted as a caller using a cellular phone**), determine**

**whether the user has permission to receive incoming calls** (col. 11 line 57-67; The

validation system verifies that the user is authorized to receive calls from the calling

party**), and if the user has permission, transmit the incoming call to a kiosk** (col. 12

line 27-32; The validation system used to allow calls to be completed).

The combination of Rae, Kenoyer, and Hodge does not explicitly disclose

**transmit the incoming call to the kiosk and at least a second kiosk, and wherein**

**the kiosk and the second kiosk are configured to, upon receipt of the incoming**

**call, display a screen notifying the user of the incoming call, and prompt the user**

**to input the log in information.**

Cree discloses **transmit the incoming call to the kiosk and at least a second**

**kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone

number in the cell block, where the cell block telephone is analogous to the kiosk.  At

the time of invention, it would have been obvious to one of ordinary skill in the art to

Application/Control Number: 13/088,883                                         Page 13
Art Unit: 2683

place two cell block telephones in the cell block, as this is a mere duplication of
essential working parts, in order to provide more telephones for the users)**, and
wherein the kiosk and the second kiosk are configured to, upon receipt of the
incoming call, notifying the user of the incoming call** (col. 10 line 38-50; The
inmates in the vicinity of the cell block telephone are notified that they have messages)
**and prompt the user to input the log in information** (col. 11 line 10-16)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the
art substitute Cree's method of notifying a user of an incoming call and requiring input of
login information in Rae, Kenoyer, and Hodge's call processing system that has user
terminals with computers in order to alert users of incoming messages on a more
modern system that provides more user functions.

The combination of Rae, Kenoyer, Hodge, and Cree does not explicitly disclose
**display a screen notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of
the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the
art to combine Mattila's method of notifying the user of an incoming call at the terminal
in Rae, Kenoyer, Hodge, and Cree's call system with user terminals for receiving calls in
order to effectively notify a user of the terminal with a video phone and computer of an
incoming call request.

Regarding claim 28, Rae discloses **a system for providing services to a
secure facility, the system comprising:**

Application/Control Number: 13/088,883                                    Page 14
Art Unit: 2683

**a plurality of kiosks located at a secure facility, each kiosk comprising a processor, display, speaker, and microphone** (Figure 1 element 141 and 143; col. 7 line 3-16; col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminals 141 and visitation telephones 143, where speakers are an inherent component of a telephone.  A camera and microphone may be placed at the terminal for biometric authentication or general use.  In an alternative embodiment, the system may also be implemented with video phones and computers.  At the time of invention, it would have been obvious to one of ordinary skill in the art to have a workstation that combines the embodiments so that there is a computer and a video phone in order to provide more services to the workstation user.  Additionally, computers are well known in the art to have a processor and display.  Therefore, it would have been obvious to one of ordinary skill in the art to have a display and processor at the workstation as a part of the computer)**; and**

**a server that communicates with the kiosks and a device of an outside party via one or more network connections** (col. 9 line 14-21; col. 9 line 50-64; The network 111 connecting the telephone terminals, or any device that is coupled to the network)**, the server comprising a server processor, a network interface unit, and a computer memory** (col. 9 line 50-64; The processor-based server having a media gateway to provide communications to the user terminal.  It is well known in the art that servers have memory.  Therefore, at the time of invention, it would have been obvious to one of ordinary skill in the art to include memory in the processor-based server)**; and**

Application/Control Number: 13/088,883                                    Page 15
Art Unit: 2683

**wherein the server is configured to receive a communications request from the device of the outside party** (col. 25 line 6-13; Where a device of the outside party is interpreted as a caller using a cellular phone)**;**

**wherein the server is configured to authenticate a user of the device** (col. 25 line 6-13; col 11 line 57-65; col. 9 line 14-29; The system may be used with cellular phones, video phones, or PDAs.  A validation system verifies the identity of the called party, or the call management system may request a PIN number from the called party. One of ordinary skill in the art recognizes that the called party may be on a cellular phone, video phone, or PDA); **and**

**the video being transmitted from the kiosk to the calling party** (col. 9 line 14-21; col. 25 line 6-13; Calls may be transmitted between a visitation telephone 143 to the telephone terminal 141, where the visitation terminal is analogous to the calling party. The terminals may be video phones)**.**

Rae does not explicitly disclose **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message and initiate a login procedure; and**

**wherein, after the user has been authenticated and during a transmission of a video, the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is**

Application/Control Number: 13/088,883                                     Page 16
Art Unit: 2683

**further configured to <u>blur or </u>obscure the video being transmitted to the**

**destination when the check determines that a face is not present in the frame**.

In an analogous art, Kenoyer discloses **wherein<u>, after the user has been</u>**

**<u>authenticated and during a transmission of a video,</u> the system is configured to**

**periodically extract a frame of the video and perform a check to determine if a**

**face is present in the frame** (paragraph [0041]-[0044]; paragraph [0035]; The video

conferencing system performs an initial authentication of the user before logging the

user onto the videoconference network.  Once the user is logged in, throughout the

videoconference, the system continuously determines if a face is present and matches

the stored image to ensure that the user is in the videoconference continues to be the

same authenticated user)**, and further configured to <u>blur or </u>obscure the video**

**being transmitted to the destination when the check determines that a face is not**

**present in the frame** (paragraph [0042]; paragraph [0044]; The user is only

authenticated if the currently captured image matches the stored image.  If no match is

found, the user is denied access to the network.  It is obvious to one of ordinary skill in

the art that if the user is not authenticated, for example when the same face is not

present, the user is denied access and may not continue to participate in the video

conference, thus obscuring  transmission of video of the unauthenticated user to the

destination.  Because the claim limitation only requires one of blurring or obscuring the

video, Kenoyer's system with denies access, analogous to obscuring, meets the claim

limitations).

Application/Control Number: 13/088,883                                    Page 17
Art Unit: 2683

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Kenoyer's method of continuously authenticating the user in video transmission in Rae's call processing system with video phone to ensure that an unauthenticated user does not communicate over the call processing system.

The combination of Rae and Kenoyer do not explicitly disclose **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message and initiate a login procedure, and**

**the server** performing extracting and checking.

In an analogous art, Hodge discloses **the server** performing extracting and checking (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae and Kenoyer's system with biometric authentication so that there is a central location for storing all authentication data, instead of storing authentication data at each terminal.

The combination of Rae, Kenoyer, and Hodge does not explicitly disclose **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and**

Application/Control Number: 13/088,883          Page 18
Art Unit: 2683

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message and initiate a login procedure.**

In an analogous art, Cree discloses i**n response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone number in the cell block if the inmate, where the cell block telephone is analogous to the kiosk)**, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message** (col. 10 line 38-50; The inmates in the vicinity of the cell block telephone are notified that they have messages) **and initiate a login procedure** (col. 11 line 10-16).

At the time of invention, it would have been obvious to one of ordinary skill in the art substitute Cree's method of notifying a user of an incoming call and requiring input of login information in Rae, Kenoyer, and Hodge's call processing system that has user terminals with computers in order to alert users of incoming messages on a more modern system that provides more user functions.

The combination of Rae, Kenoyer, Hodge, and Cree does not explicitly disclose **display a screen notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of the incoming call** (Figure 3 element 158; paragraph [0048])**.**

Application/Control Number: 13/088,883                                    Page 19
Art Unit: 2683

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Mattila's method of notifying the user of an incoming call at the terminal in Rae, Kenoyer, Hodge, and Cree's call processing system with user terminals for receiving calls in order to effectively notify a user of the terminal with a video phone and computer of an incoming request.

Regarding claim 29, Rae discloses **wherein the communications request is a request to initiate a voice call or a video call** (col 25 line 6-13; The system used with telephones, cell phones, or video phones)**.**

Regarding claim 30, Rae discloses **wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server** (col. 20 line 46-60; col. 9 line 10-14; The system can store information regarding what cells the inmates are assigned to, and may schedule facility resources like establishing telephone availability schedules.  It is obvious to one of ordinary skill in the art that this may be stored in memory of the processor-based server of the system).

Regarding claim 31, Mattila discloses **wherein the kiosk is configured to play an alert tone or audio message upon receiving the message** (paragraph [0048]).


6.      Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae, Kenoyer, and Hodge as applied to claim 1 above, and further in view of Hanna (U.S. Pub 2011/0047473).

Application/Control Number: 13/088,883                                      Page 20
Art Unit: 2683

Regarding claim 14, Rae discloses **wherein the kiosk is configured to provide the user with the ability to order items from a list of commissary items** (col. 20 line 19-20; The inmate may purchase commissary goods).

The combination of Rae, Kenoyer, and Hodge does not explicitly disclose **configured to provide the user with at least two of: access to audio, video, and text of educational material stored on the server and/or the kiosk, access to audio, video, and text of religious material stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.**

In an analogous art, Hanna discloses **configured to provide the user with at least two of: access to audio, video, and text of educational material stored on the server and/or the kiosk, access to audio, video, and text of religious material stored on the server and/or the kiosk, and the ability to order items from a list of commissary items** (paragraph [0048]-[0049]; Inmates have access to commissary items and remote teaching, analogous to education material).

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Hanna's system that provides inmates with access to commissary items and education in Rae, Kenoyer, and Hodge's inmate kiosk that provides commissary services in order to enable the kiosk to provide more functions to the inmates.

7.      Claim 19, 21, 27, 34, and 35 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rae (U.S. Pat 8,340,260), and further in view of Kenoyer, Hodge, and Kennedy (U.S. Pub 2010/0256500).

Application/Control Number: 13/088,883                                          Page 21
Art Unit: 2683

Regarding claim 19, Rae discloses **a kiosk for providing facility services in a secure manner, comprising:**

**a computer processor** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  A processor is an inherent component of a computer)**;**

**a memory connected to the processor via a bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  Memory is an inherent component of a computer)**;**

**a camera connected to the bus for inputting video communications** (col. 16 line 13-27; The camera can capture moving images)**;**

**a microphone connected to the bus for inputting audio communications** (col. 16 line 13-27; The microphone)**;**

**a speaker connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A telephone may be at the terminal.  A speaker is an inherent component of a telephone)**;**

**a display connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  It is well known in the art that a display is a component of a personal computer.  Therefore, at the time of invention, it would have been obvious to one of ordinary skill in the art to include a display at the kiosk)**; and**

**a network interface connected to the bus for communicating with a server via a network connection** (col. 9 line 50-64; The media gateway 117 that comprises a processor-based server connects the user terminals via a network 111 in order to provide communications)**,**

Application/Control Number: 13/088,883                                    Page 22
Art Unit: 2683

**wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification** (col. 19 line 24-28; The user enters in a PIN and biometric information)**, records audio and video communications and transmits the audio and video communications to the server** (col 9 line 50-64; col. 25 line 6-13; col 10 line 51-67; col. 11 line 1-2; The user terminal receives communications from the server via the media gateway.  It is obvious to one of ordinary skill in the art that if a video phone is being used, audio and video information would be transmitted from the microphone and camera input.  The call recording system records the call at a workstation for retrieval or playback at workstations)**, and provides access to internet web pages via a web proxy** (col. 9 line 50-64; col. 25 line 6-13; In the call management system, the processor-based server of the call application management system 110 acts as a proxy server between the user terminals to provide interfacing.  In an embodiment that includes computers, with access to the Internet, one of ordinary skill in the art recognizes that the server of the management system would also serve as a proxy server to provide interfacing between web pages)**.**

Rae does not disclose **a touchscreen display; and**

**wherein, after the user has been authenticated and during the transmission of the video, the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server**

Application/Control Number: 13/088,883                                      Page 23
Art Unit: 2683

**is further configured to <u>blur or </u>obscure the video being transmitted to the
destination when the check determines that a face is not present in the frame**.

        In an analogous art, Kenoyer discloses **wherein<u>, after the user has been
authenticated and during the transmission of the video,</u> the system is configured
to periodically extract a frame of the video and perform a check to determine if a
face is present in the frame** (paragraph [0041]-[0044]; paragraph [0035]; The video
conferencing system performs an initial authentication of the user before logging the
user onto the videoconference network.  Once the user is logged in, throughout the
videoconference, the system continuously determines if a face is present and matches
the stored image to ensure that the user is in the videoconference continues to be the
same authenticated user)**, and further configured to <u>blur or </u>obscure the video
being transmitted to the destination when the check determines that a face is not
present in the frame** (paragraph [0042]; paragraph [0044]; The user is only
authenticated if the currently captured image matches the stored image.  If no match is
found, the user is denied access to the network.  It is obvious to one of ordinary skill in
the art that if the user is not authenticated, for example when the same face is not
present, the user is denied access and may not continue to participate in the video
conference, thus obscuring  transmission of video of the unauthenticated user to the
destination.  Because the claim limitation only requires one of blurring or obscuring the
video, Kenoyer's system with denies access, analogous to obscuring, meets the claim
limitations).

Application/Control Number: 13/088,883                                    Page 24
Art Unit: 2683

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Kenoyer's method of continuously authenticating the user in video transmission in Rae's call processing system with video phone to ensure that an unauthenticated user does not communicate over the call processing system.

The combination of Rae and Kenoyer does not explicitly disclose **a touchscreen display, and the server** performing authentication.

In an analogous art, Hodge discloses **the server** performing authentication (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae and Kenoyer's system with biometric authentication so that there is a central location for storing all authentication data, instead of storing authentication data at each terminal.

The combination of Rae, Kenoyer, and Hodge does not explicitly disclose **a touchscreen display.**

In an analogous art, Kennedy discloses **a touchscreen display** (paragraph [0031]).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Kennedy's touchscreen display in Rae, Kenoyer, and Hodge's computer in order to modernize the computer interface.

Regarding claim 21, it is interpreted and rejected for the same reasons as set forth in claims 11 and 14 above, with the additional limitations set forth in claim 19 above.

Application/Control Number: 13/088,883                                    Page 25
Art Unit: 2683

Regarding claim 27, it is interpreted and rejected for the same reasons as set forth in claim 26 above, with the additional limitations set forth in claim 19 above.

Regarding claim 34, it is interpreted and rejected for the same reasons as set forth in claim 32 above, with the additional limitations set forth in claim 19 above.

Regarding claim 35, it is interpreted and rejected for the same reasons as set forth in claim 33 above, with the additional limitations set forth in claim 19 above.

### *Response to Arguments*

8.    Applicant's arguments filed 6/19/2014 have been fully considered but they are not persuasive.

In response to applicant's argument on page 9 that the references fail to show certain features of applicant's invention, it is noted that the features upon which applicant relies (i.e., obscuring the video being transmitted when *no* face is present in the frame extracted from the video) are not recited in the rejected claim(s).  Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims.  See *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993).

Regarding Applicant's arguments that the references do not disclose the amended subject matter on pages 9-12, the Examiner respectfully disagrees.  The claim limitations specifically say that the check is to "determine if a face is present in the frame" and then obscuring the video "when the check determines that *the* face is not present in the frame."  That is, the video is obscured if the face that was initially present

Application/Control Number: 13/088,883                                    Page 26
Art Unit: 2683

is not present in the subsequent frame.  Kenoyer discloses an initial biometric

authentication of a user in paragraphs  [0041]-[0042], where the user is authenticated in

order to log in to the videoconference network.  This is analogous to the limitation "after

the user identity has been authenticated by the kiosk".  Kenoyer further goes on to say

that the user is continuously authenticated to ensure that the user in front of the

videoconference system continues to be the same authenticated user at all times,

paragraph [0044].  This would apply, then, to during the actual video conference, where

video is being transmitted to other participants of the video conference, as discussed in

paragraph [0046] where the user joins a video conference in progress.  In cases where

the user is not authenticated, the user is denied access to the videoconference network,

paragraph [0042].  It is obvious to one of ordinary skill in the art that the denial of access

is applied in all cases where a user is not authenticated, including during a video

conference that is in progress.

So, during the continuous authentication disclosed by Kenoyer, it is plausible that

during a first authentication, the user is the same and is thus authenticated.  This is

analogous to the limitation "configured to periodically extract a frame of video and

perform a check to determine if a face is present in the frame."  In this case, the user

would be allowed to remain in the video conference that is in progress.  However, in the

continuous authentication of Kenoyer, it is also plausible that the user may switch with a

second user that is not authenticated.  In Kenoyer's system, the second user that is not

authenticated would not have the same face as the authenticated user, and the second

user would be denied access to the videoconference system.  This is analogous to the

Application/Control Number: 13/088,883                                    Page 27
Art Unit: 2683

limitation "configured to obscure the video being transmitted to the destination when the check determines that *the* face is not present in the frame."  Because the same face is not present in the frame, the user may no longer access the video conference network, and the video associated with that particular user would no longer be transmitted to other participants of the video conference.  The limitation in the claim states that the video is blurred or obscured, in the alternative.  Therefore, the claim does not require the reference to disclose both blurring and obscuring the video.  As such, Kenoyer discloses the amended subject matter required by the claim.


### *Conclusion*

9.    **THIS ACTION IS MADE FINAL**.  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

Application/Control Number: 13/088,883                                            Page 28
Art Unit: 2683

     Any inquiry concerning this communication or earlier communications from the examiner should be directed to LAURA NGUYEN whose telephone number is (571)270-3785.  The examiner can normally be reached on Monday - Friday 9:00 AM - 5:00 PM.

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Brian Zimmerman can be reached on (571) 272-3059.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/LAURA NGUYEN/
Examiner, Art Unit 2683

                /BRIAN ZIMMERMAN/
                Supervisory Patent Examiner, Art Unit 2683

Docket No.: P5789.0006/P006
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Kevin O'Neil et al.

| | |
|---|---|
| Application No.: 13/088,883 | Confirmation No.: 9388 |
| Filed: April 18, 2011 | Art Unit: 2683 |
| For:  INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY | Examiner: L.N. Nguyen |

### AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

### INTRODUCTORY COMMENTS

In response to the Non-Final Rejection dated March 19, 2014, please amend the above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 8 of this paper.

Application No. 13/088,883
Reply to Office Action of March 19, 2014

Docket No.: P5789.0006/P006

## AMENDMENTS TO THE CLAIMS

1.      (Currently amended)  A system for providing services to a secure facility, the system comprising:

a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

a server that communicates with the kiosk via a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the network connection;

wherein the server records the audio and video and transmits the audio and video to a destination;

wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

wherein, after the user identity has been authenticated by the kiosk and during the transmission of the video, the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to blur or obscure the video being transmitted to the destination when the check determines that the face is not present in the frame; and

wherein the destination is a device communicating with the server, and the server is configured to authenticate a user of the device.

2-3.      (Canceled)

4.      (Previously presented)  The system of claim 1, further comprising:

2

Application No. 13/088,883                                                                        Docket No.: P5789.0006/P006
Reply to Office Action of March 19, 2014

a second kiosk located in a visitation area of the secure facility; and

a local server located at the secure facility;

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area; and

wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5.      (Canceled)

6.      (Original)   The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7.      (Previously presented)  The system of claim 1, wherein during a singular communications session, the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8-10.   (Canceled)

11.     (Previously presented)  The system of claim 1, wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages.

12.     (Canceled)

13.     (Previously presented)  The system of claim 1, wherein the server is configured to receive an incoming call for the user from a third party caller, determine whether the user has permission to receive incoming calls, if the user has permission, transmit the incoming call to the kiosk and at least a second kiosk, and

3

Application No. 13/088,883

Docket No.: P5789.0006/P006

Reply to Office Action of March 19, 2014

wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input the log in information.

14.     (Previously presented)  The system of claim 1, wherein the kiosk is configured to provide the user with at least two of: access to audio, video, and text of educational material stored on the server and/or the kiosk, access to audio, video, and text of religious material stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.

15.     (Canceled)

16.     (Original)  The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

17-18.  (Canceled)

19.     (Currently amended) A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a speaker connected to the bus;

a touchscreen display connected to the bus; and

a network interface connected to the bus for communicating with a server via a network connection,

wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification, records audio and video communications and transmits the audio and video communications to the server, and provides access to internet web pages via a web proxy, and

wherein, after the user has been authenticated and during the transmission of the video, the kiosk is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the kiosk is further configured to blur or obscure video being transmitted to a destination when the check determines that the face is not present in the frame.

20.    (Canceled)

21.    (Previously presented)  The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational material; access to audio, video, and text of religious material; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.    (Currently amended)  A method of monitoring use of an interactive kiosk during a video transmission, comprising:

authenticating the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

using a camera of the kiosk to capture video of a user of the kiosk during use of the kiosk;

transmitting the video to a server;

periodically extracting, at the server, a frame of the video;

performing a check after the user identity has been authenticated by the kiosk and during the transmission of the video, at the server, to determine if a face is present during a the frame; and

5

blurring or obscuring the video transmission, at the server, to a destination if the check determines that the face is not present in the frame.

23-25.  (Canceled)

26.  (Previously presented)  The system of claim 1, wherein the log in information is a personal identification number.

27.  (Previously presented)  The system of claim 19, wherein the personal log in information is a personal identification number.

28.  (Currently amended)  A system for providing services to a secure facility, the system comprising:

a plurality of kiosks located at a secure facility, each kiosk comprising a processor, display, speaker, and microphone; and

a server that communicates with the kiosks and a device of an outside party via one or more network connections, the server comprising a server processor, a network interface unit, and a computer memory;

wherein the server is configured to receive a communications request from the device of the outside party and, in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk,

wherein the kiosk is configured to receive the message, and, upon receipt of the message, display an incoming communications request message and initiate a login procedure,

wherein the server is configured to authenticate a user of the device, and

wherein, after the user has been authenticated and during a transmission of a video, the video being transmitted from the kiosk to the calling party, the server is configured to periodically extract a frame of a the video, the video being transmitted from the kiosk to the calling party; and perform a

6

Application No. 13/088,883
Reply to Office Action of March 19, 2014

Docket No.: P5789.0006/P006

check to determine if a face is present in the frame, and the server is further configured to <u>blur or</u> obscure the video being transmitted to the calling party when the check determines that the face is not present in the frame.

29.    (Previously presented)  The system of claim 28, wherein the communications request is a request to initiate a voice call or a video call.

30.    (Previously presented)  The system of claim 28, wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server.

31.    (Previously presented)  The system of claim 28, wherein the kiosk is configured to play an alert tone or audio message upon receiving the message.

32.    (Previously presented)  The system of claim 1, wherein the biometric verification comprises a facial authentication via the camera.

33.    (Previously presented)  The system of claim 1, wherein the biometric verification comprises a voice authentication via the microphone.

34.    (Previously presented)  The kiosk of claim 19, wherein the biometric verification comprises a facial authentication of an image captured by the camera.

35.    (Previously presented)  The kiosk of claim 19, wherein the biometric verification comprises a voice authentication of an audible phrase recorded using the microphone.

DSMDB-3260608 v1

Application No. 13/088,883                                      Docket No.: P5789.0006/P006
Reply to Office Action of March 19, 2014

## REMARKS

Claims 1, 4, 6, 7, 11, 13, 14, 16, 19, 21-22, and 26-35 are pending in this application. Claims 1, 19, 22, and 28 have been amended. Claims 2-3, 5, 8-10, 12, 15, 17-18, 20, and 23-25 have been previously canceled, without prejudice. Applicant reserves the right to pursue the original claims and other claims in this and other applications. In view of the amendments to the claims and the remarks below, Applicant respectfully requests that the rejections be withdrawn and the claim allowed.

### Responses to Rejections under 35 U.S.C. § 103

1. Claims 1, 4, 6-7, 11, 16, 22, 26, and 32-33 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae (U.S. Patent No. 8,340,260) and further in view of Kenoyer (U.S. Publication No. 2006/0249755) and Hodge (U.S. Publication No. 2006/0285667).

Claim 1 recites a system for providing services to a secure facility comprising, "a kiosk located at a secure facility" and "a server that communicates with the kiosk via a network connection." The kiosk of claim 1 comprises "a camera." The kiosk of claim 1 "receive[s] communications from the camera . . . and transmit[s] video of the communications to the server." The kiosk is further "configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification." "[A]*fter* the user identify has been authenticated by the kiosk and during the transmission of the video," the server periodically "extract[s] a frame of the video, and perform[s] a check to determine if a face is present in the frame." When the face is not present in the frame, the server "blur[s] or obscure[s] the video being transmitted to the destination." *See, e.g.*, Application, ¶ [0085].

Similarly, claim 22 recites a method of monitoring use of an interactive kiosk during a video transmission comprising, "authenticating the identity of a user of the kiosk," "using a camera of the kiosk to capture video of a user of the kiosk during use of the kiosk," and "transmitting the video to a server." The method of claim 22, further comprises "performing a check *after* the user

8

Application No. 13/088,883                                                      Docket No.: P5789.0006/P006
Reply to Office Action of March 19, 2014

identify has been authenticated by the kiosk and during the transmission of the video . . . to determine if a face is present in the frame," and "blurring or obscuring the video transmission . . . to a destination if the check determines that the fact is not present in the frame." The support for the amended claim 22 can be found at least in ¶ [0085].

As the Examiner has recognized, Rae fails to disclose a system or a method where a frame of a video being transmitted is checked to determine whether a face is present and the transmission of the video is blurred or obscured when there is no face present. 03/19/2014 Office Action, p 5. The Examiner relies on Kenoyer and Hodge to cure this deficiency.

Kenoyer, however, neither discloses nor suggests blurring or obscuring a video transmission where a face is not present in a frame thereof, as recited in claims 1 and 22. Kenoyer, at most, discloses that a face detect module 404 and face match module 406 could be used to *authorize* a user attempting to log in to a system. Kenoyer, at ¶¶ [0041]-[0044]. Unlike the system and method of claims 1 and 22, Kenoyer does not disclose a system where *a video being transmitted, after user authorization*, is checked to determine whether a face is present. Kenoyer also fails to disclose a system where a video being transmitted is blurred or obscured where there is no face present in a frame extracted from the video.

Hodge also fails to disclose the system or method of claims 1 and 22. Hodge, at most, discloses a biometric authentication which can be used in a secure telephone management system. Unlike the system and method of claims 1 and 22, Hodge neither discloses nor suggests blurring or obscuring a video transmission where a face is not present in a frame thereof, *after* user has been authenticated by a system and during the transmission of the video.

Accordingly, claims 1 and 22 are allowable over Rae, Kenoyer and Hodge. Claims 4, 6-7, 11, 16, 26, and 32-33 depend from claim 1 and are allowable for at least the same reasons.

2. Claims 13 and 28-31 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae, Kenoyer, and Hodge as applied to claim 1, and further in view of Cree (U.S. Patent No. 6,665,380) and Mattila (U.S. Publication No. 2008/0129816).

Claim 13 depends from claim 1 and includes all limitations of claim 1. As described above, claim 1 has been amended to recite a server "configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame" and "further configured to blur or obscure the video being transmitted to the destination when the check determines that the face is not present in the frame," "*after* the user identity has been authenticated by the kiosk and during the transmission of the video." As mentioned above with relation to claim 1, these features are not disclosed in Rae, Kenoyer, and Hodge. Cree and Mattila do not cure this deficiency.

In particular, Cree is relied upon for disclosing the transmission of the incoming call to a kiosk. Mattila is relied upon for disclosing a display screen notifying the user of the incoming call. None of these references, however, teach or suggest a server that is configured to "periodically extract a frame of the video and perform a check to determine if a face is present in the frame" and "blur or obscure the video being transmitted to the destination when the check determines that the face is not present in the frame," "*after* the user identity has been authenticated by the kiosk and during the transmission of the video." Accordingly, claim 13 is allowable for at least the same reasons that claim 1 is allowable.

Claims 28-31 include similar limitations as claim 1 and are allowable for similar reasons. For example, claim 28 recites a system for providing services to a secure facility comprising a server configured to "periodically extract a frame of a video . . . perform a check to determine if a face is present in the frame, and . . . blur or obscure the video . . . when the check determines that the face is not present in the frame," "*after* the user has been authenticated and during a transmission of a video." Claims 29-31 depend from claim 28. Accordingly, claims 28-31 are allowable for at least the same reasons that claim 1 is allowable.

Application No. 13/088,883
Reply to Office Action of March 19, 2014

Docket No.: P5789.0006/P006

3. Claim 14 stands rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae,
Kenoyer, and Hodge as applied to claim 1, and further in view of Hanna (U.S.
Publication No. 2011/0047473).

Claim 14 depends from claim 1 and includes all limitations of claim 1. As described
above, claim 1 has been amended to recite a server "configured to periodically extract a frame of the
video and perform a check to determine if a face is present in the frame" and "further configured to
blur or obscure the video being transmitted to the destination when the check determines that the
face is not present in the frame," "*after* the user identity has been authenticated by the kiosk and
during the transmission of the video." As mentioned above with relation to claim 1, these features
are not disclosed in Rae, Kenoyer, and Hodge. Hanna does not cure this deficiency.

In particular, Hanna is relied upon for disclosing a kiosk configured to provide inmates
access to commissary items and remote teaching. However, Hanna neither teaches nor suggests a
server that is configured to "periodically extract a frame of the video and perform a check to
determine if a face is present in the frame" and "blur or obscure the video being transmitted to the
destination when the check determines that the face is not present in the frame," "*after* the user
identity has been authenticated by the kiosk and during the transmission of the video." Accordingly,
claim 14 is allowable for at least the same reasons that claim 1 is allowable.

4. Claims 19, 21, 27, 34, and 35 stand rejected under 35 U.S.C. § 103(a) as being
unpatentable over Rae, Kenoyer, and Hodge, and further in view of Kennedy (U.S.
Publication No. 2010/0256500).

Claim 19 includes similar limitations as claim 1 and is allowable for similar reasons.
Claim 19 recites a kiosk for providing facility services in a secure manner wherein, the kiosk is
configured to "periodically extract a frame of the video. . . perform a check to determine if a face is
present in the frame, and . . . blur or obscure video being transmitted to a destination when the check
determines that the face is not present in the frame," "*after* the user has been authenticated and

11

Application No. 13/088,883
Reply to Office Action of March 19, 2014

Docket No.: P5789.0006/P006

during the transmission of the video." As mentioned above with relation to claim 1, these features are not disclosed in Rae, Kenoyer, and Hodge. Kennedy does not cure this deficiency.

In particular, Kennedy is relied upon for disclosing a touchscreen display. However, Kenney neither teaches nor suggests a server that is configured to "periodically extract a frame of the video and perform a check to determine if a face is present in the frame" and "blur or obscure the video being transmitted to the destination when the check determines that the face is not present in the frame," "*after* the user identity has been authenticated by the kiosk and during the transmission of the video." Claims 21, 27, 34, and 35 depend from claim 19. Accordingly, claims 19, 21, 27, 34, and 35 are allowable for at least the same reasons that claim 1 is allowable.

In view of the above, Applicant believes the pending application is in condition for allowance.

Dated: June 19, 2014

Respectfully submitted,

By /s/ Mark J. Thronson

Mark J. Thronson
   Registration No.: 33,082
Jonathan L. Falkler
   Registration No.: 62,115
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200
Attorneys for Applicant

DSMDB-3260608 v1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 19355441 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 113003 |
| **Filer:** | Thomas J. D'Amico/Cheryl deLopez |
| **Filer Authorized By:** | Thomas J. D'Amico |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 19-JUN-2014 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 16:00:41 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | amendp006.pdf | 486882<br>cc3823a6ef2e68a2b0da6090b99aa82f4a166381 | yes | 12 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 7 |
| Applicant Arguments/Remarks Made in an Amendment | 8 | 12 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 486882 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** Substitute for Form PTO-875 | Application or Docket Number 13/088,883 | Filing Date 04/18/2011 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☒ LARGE   ☐ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

(Column 1)          (Column 2)

| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

(Column 1)          (Column 2)          (Column 3)

| | **06/19/2014** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| AMENDMENT | Total (37 CFR 1.16(i)) | * 21 Minus | ** 35 | = 0 | x $80 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 4 Minus | *** 4 | = 0 | x $420 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

(Column 1)          (Column 2)          (Column 3)

| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| AMENDMENT | Total (37 CFR 1.16(i)) | * Minus | ** | = | x $ = | |
| | Independent (37 CFR 1.16(h)) | * Minus | *** | = | x $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/CHERYL CLARK/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 | 9388 |

113003          7590          03/19/2014

Dickstein Shapiro LLP (Telmate)
1825 Eye Street NW
Washington, DC 20006

| EXAMINER |
|---|
| NGUYEN, LAURA N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2683 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/19/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| **Office Action Summary** | **Application No.**<br>13/088,883 | **Applicant(s)**<br>TORGERSRUD ET AL. |
|---|---|---|
| | **Examiner**<br>LAURA NGUYEN | **Art Unit**<br>2683 | **AIA (First Inventor to File)**<br>**Status**<br>No |

*Note: the AIA Status column spans its own cell.*

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS,
WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on <u>27 December 2013</u>.
   ☐  A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐  This action is **FINAL.**     2b)☒  This action is non-final.
3)☐  An election was made by the applicant in response to a restriction requirement set forth during the interview on
   _____; the restriction requirement and election have been incorporated into this action.
4)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
   closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5)☒  Claim(s) <u>1,4,6,7,11,13,14,16,19,21,22 and 26-35</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6)☐  Claim(s) _____ is/are allowed.
7)☒  Claim(s) <u>1,4,6,7,11,13,14,16,19,21,22 and 26-35</u> is/are rejected.
8)☐  Claim(s) _____ is/are objected to.
9)☐  Claim(s) _____ are subject to restriction and/or election requirement.
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a
participating intellectual property office for the corresponding application. For more information, please see
http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐  The specification is objected to by the Examiner.
11)☒  The drawing(s) filed on <u>4/18/2011</u> is/are:  a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
   a)☐ All  b)☐ Some *  c)☐ None of the:
   1.☐  Certified copies of the priority documents have been received.
   2.☐  Certified copies of the priority documents have been received in Application No. _____.
   3.☐  Copies of the certified copies of the priority documents have been received in this National Stage
       application from the International Bureau (PCT Rule 17.2(a)).
   * See the attached detailed Office action for a list of the certified copies not received.

**Interim copies:**
   a)☐ All  b)☐ Some  c)☐ None of the:  Interim copies of the priority documents have been received.

**Attachment(s)**

1)☐  Notice of References Cited (PTO-892)
2)☐  Information Disclosure Statement(s) (PTO/SB/08)
     Paper No(s)/Mail Date _____.
3)☐  Interview Summary (PTO-413)
     Paper No(s)/Mail Date. _____ .
4)☐  Other: _____.

Application/Control Number: 13/088,883                                    Page 2
Art Unit: 2683

## DETAILED ACTION

### Continued Examination Under 37 CFR 1.114

1.      A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on 12/27/2013 has been entered.

### Claim Rejections - 35 USC § 103

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3.      Claims 1, 4, 6-7, 11, 16, 22,  26, and 32-33 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rae (U.S. Pat 8,340,260), and further in view of Kenoyer (U.S. Pub 2006/0259755) and Hodge (2006/0285667).

Regarding claim 1, Rae discloses **a system for providing services to a secure facility** (col. 6 line 52-65; The call processing system got prisons, nursing homes, camps, dormitories)**, the system comprising:**

Application/Control Number: 13/088,883                                    Page 3
Art Unit: 2683

**a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera** (Figure 1 element 141; col. 7 line 3-16; col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminal 141, where speakers are an inherent component of a telephone.  A camera and microphone may be placed at the terminal for biometric authentication or general use.  Rae does not explicitly disclose a display.  However, in an alternative embodiment, Rae discloses that the system may also be implemented with video phones and computers.  At the time of invention, it would have been obvious to one of ordinary skill in the art to have a workstation that combines the embodiments so that there is a computer and a video phone in order to provide more services to the workstation user.  Additionally, computers and videophones are well known in the art to have a processor and display.  Therefore, it would have been obvious to one of ordinary skill in the art to have a display and processor at the workstation as a part of the computer or videophone)**; and**

**a server that communicates with the kiosk via a network connection** (col. 9 line 50-64; The network 111), **the server comprising a server processor, a network interface unit, and a computer memory** (col. 9 line 50-64; The processor-based server having a media gateway to provide communications to the user terminal.  It is well known in the art that servers have memory.  Therefore, at the time of invention, it would have been obvious to one of ordinary skill in the art to include memory in the processor-based server)**;**

**the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the**

Application/Control Number: 13/088,883                                    Page 4
Art Unit: 2683

**server via the network connection** (col 9 line 50-64; col. 25 line 6-13; The user terminal receives communications from the server via the media gateway. It is obvious to one of ordinary skill in the art that if a video phone is being used, audio and video information would be transmitted from the microphone and camera input)**;**

    **wherein the server records the audio and video and transmits the audio and video to a destination** (col 10 line 51-67; col. 11 line 1-2; col. 25 lines 6-13; The call recording system records the call at a workstation for retrieval or playback at workstations. Rae does not explicitly disclose transmitting audio and video. However, In an alternative embodiment, Rae discloses using a videophone instead of a telephone. At the time of invention, it would have been obvious to one of ordinary skill in the art that if a videophone is used in place of a telephone, that audio and video would be recorded and transmitted)**;**

    **wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user** (col. 19 line 19-28; An inmate uses their PIN number or identifier to make a call) **and also performing a biometric verification** (col. 19 line 19-28; Biometric information is also used for authentication. It is obvious to one of ordinary skill in the art to use both logon and biometric authentication methods for additional security)**; and**

    **wherein the destination is a device communicating with the server and the server is configured to authenticate a user of the device** (col. 25 line 6-13; col 11 line 57-65; col. 9 line 14-29; The system may be used with cellular phones, video phones, or PDAs. A validation system verifies the identity of the called party, or the call

Application/Control Number: 13/088,883                                      Page 5
Art Unit: 2683

management system may request a PIN number from the called party.  One of ordinary

skill in the art recognizes that the called party may be on a cellular phone, video phone,

or PDA)**.**

Rae does not explicitly disclose **wherein the server is configured to**

**periodically extract a frame of the video and perform a check to determine if a**

**face is present in the frame, and the server is further configured to obscure the**

**video being transmitted to the destination when the check determines that a face**

**is not present in the frame**.

In an analogous art, Kenoyer discloses **configured to periodically extract a**

**frame of the video and perform a check to determine if a face is present in the**

**frame** (paragraph [0041]; paragraph [0044]; The video conferencing system

continuously determines if a face is present and matches the stored image)**, and the**

**server is further configured to obscure the video being transmitted to the**

**destination when the check determines that a face is not present in the frame**

(paragraph [0042]; paragraph [0044]; The user is only authenticated if the currently

captured image matches the stored image.  If no match is found, the user is denied

access to the network.  It is obvious to one of ordinary skill in the art that if the user is

not authenticated, for example when a face is not present and an image cannot be

captured, the user is denied access and may not continue to participate in the video

conference, thus obscuring  transmission of video of the unauthenticated user to the

destination).

Application/Control Number: 13/088,883                                          Page 6
Art Unit: 2683

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Kenoyer's method of continuously authenticating the user in video transmission in Rae's call processing system with video phone to ensure that an unauthenticated user does not communicate over the call processing system.

The combination of Rae and Kenoyer does not explicitly disclose **the server** performing authentication.

In an analogous art, Hodge discloses **the server** performing authentication (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae and Kenoyer's system with biometric authentication so that there is a central location for storing all authentication data, instead of storing authentication data at each terminal.

Regarding claim 4, Rae **discloses further comprising:**

**a second kiosk located in a visitation area of the secure facility** (col 7. line 9-16; col. 25 line 6-13;  Call processing between the telephone terminals 141 and the visitation telephones 143.  The system may also be used with video phones and computers.  It is obvious to one of ordinary skill in the art to place the video phone and computer at the visitation telephone terminal 143 for communications with the user terminal 141 that also contains these components)**; and**

**a local server located at the secure facility; the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area** (col. 9 line 10-21; The

Application/Control Number: 13/088,883                                           Page 7
Art Unit: 2683

call management system of the facility has a server the completes calls between the

telephone terminals 141 and visitation telephones 143); **and**

       **wherein the local server is configured to record the audio and video and**

**transmit the audio and video to the second kiosk located in the visitation area**

(col. 8 line 50-60; col 10 line 51-67; col. 11 line 1-29; col. 25 lines 6-13; The computer-

based platform of the facility comprising a call management system and call recording

system records calls, such as the exchange of data provided by the call, for retrieval or

playback at the visitation telephones 143.  In an alternative embodiment, Rae discloses

the use of video phones in place of telephones in the call management system.  It is

obvious to one of ordinary skill in the art that if a video phone is used instead of a

telephone, that audio and video information are recorded and transmitted to the

visitation terminal, since audio and video are both exchanged data in a video phone)**.**

       Regarding claim 6, Rae discloses the system **configured to periodically**

**extract a frame of video and authenticate a face in the frame against a stored**

**identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A camera is

used to capture an image of the user's face for authentication.  Biometric authentication

may be required every time a user makes a call.  If a user makes multiple calls, this is

considered to be "periodically extracting a frame of video").

       Hodge discloses **the server** performing authentication (paragraph [0321]-[0322];

The site server storing the biometric data for authentication).

       Regarding claim 7, Rae discloses **wherein the kiosk is configured to**

**periodically record a frame of video and authenticates a face in the frame against**

Application/Control Number: 13/088,883                                     Page 8
Art Unit: 2683

**a stored identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A

camera is used to capture an image of the user's face for authentication.  Biometric

authentication may be required every time a user makes a call)**.**

Kenoyer discloses **during a singular communications session, the kiosk is**

**configured to periodically record a frame of video** (paragraph [0044]; paragraph

[0041]; The user is continuously authenticated by the videoconference system capturing

an image of the user).

Hodge discloses **transmit the frame to the server, and wherein the server**

**processor authenticates** (paragraph [0321]-[0322]; The biometric information is

transmitted from the scanner at the telephone to the site server for authentication).

Regarding claim 11, Rae discloses **wherein the kiosk is configured to accept**

**messages input by the user after the user has logged on and transmit the**

**messages to the server, and the server is configured to provide a third party**

**access to the messages** (col. 19 line 24-28; col. 25 line 6-13; col. 20 line 26-30; The

kiosk requires the user to logon to the terminal before use.  The terminal may have a

computer, which is well known in the art to be capable of transmitting messages.  The

call management system allows the user to have access to external services,

analogous to providing a third party access to the messages)**.**

Regarding claim 16, Rae discloses **wherein the kiosk is configured to receive**

**text-based messages from a server, and to display a notification of an available**

**text-based message on an idle screen of the kiosk** (Abstract; col. 15 line 37-44; The

call management system has an inmate management system that allows individuals to

Application/Control Number: 13/088,883                                    Page 9
Art Unit: 2683

view notification of events on a computer for all occasions, which is interpreted to include an idle screen of a computer.  Notifications may be in the form of emails).

Regarding claim 22, Rae discloses **a method of monitoring use of an interactive kiosk <u>during a video transmission</u>, comprising: using a camera of the kiosk to capture <u>video</u> of a user of the kiosk during use of the kiosk** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication.  The image may be still or moving image, where moving image is analogous to video).

Rae does not explicitly disclose **transmitting the <u>video</u> to a server;**

**<u>periodically extracting, at the server, a frame of the video;</u>**

**<u>performing a check, at the server, to determine if a face is present during a frame; and</u>**

**<u>obscuring the video transmission, at the server, to a destination if the check determines that the face is not present in the frame.</u>**

Kenoyer discloses **<u>periodically extracting a frame of the video</u>** (paragraph [0041]; paragraph [0044]; The video conferencing system continuously determines if a face is present and matches the stored image)**<u>;</u>**

**<u>performing a check to determine if a face is present during a frame</u>** (paragraph [0041]; paragraph [0044]; The video conferencing system continuously determines if a face is present and matches the stored image)**<u>; and</u>**

**<u>obscuring the video transmission, at the server, to a destination if the check determines that the face is not present in the frame</u>** (paragraph [0042];

Application/Control Number: 13/088,883                                      Page 10
Art Unit: 2683

paragraph [0044]; The user is only authenticated if the currently captured image

matches the stored image.  If no match is found, the user is denied access to the

network.  It is obvious to one of ordinary skill in the art that if the user is not

authenticated, for example when a face is not present and an image cannot be

captured, the user is denied access and may not continue to participate in the video

conference, thus obscuring  transmission of video of the unauthenticated user to the

destination)**.**

      At the time of invention, it would have been obvious to one of ordinary skill in the

art to combine Kenoyer's method of continuously authenticating the user in video

transmission in Rae's call processing system with video phone to ensure that an

unauthenticated user does not communicate over the call processing system.

      The combination of Rae and Kenoyer does not explicitly disclose **transmitting**

**the <u>video</u> to a server, and <u>extracting and checking at the server</u>.**

      In an analogous art, Hodge discloses **transmitting the <u>video</u> to a server**

(paragraph [0321]-[0322]; The site server storing the biometric data for authentication);

and

      **<u>extracting and checking at the server</u>** (paragraph [0322]; The site server

processes the biometric information for authentication).

      At the time of invention, it would have been obvious to one of ordinary skill in the

art to substitute Hodge's method of authenticating the user on the server in Rae and

Kenoyer's system with biometric authentication so that there is a central location for

storing all authentication data, instead of storing authentication data at each terminal.

Application/Control Number: 13/088,883                                    Page 11
Art Unit: 2683

Regarding claim 26, Rae discloses **wherein the log in information is a personal identification number** (col. 19 line 24-28)**.**

Regarding claim 32, Rae discloses **wherein the biometric verification comprises a facial authentication via the camera** (col. 16 line 10-27)**.**

Regarding claim 33, Rae discloses **wherein the biometric verification comprises a voice authentication via the microphone** (col. 16 line 10-27).

4.      Claims 13 and 28-31 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rae, Kenoyer, and Hodge as applied to claim 1 above, and further in view of Cree (U.S. Pat 6,665,380) and Mattila (U.S. Pub 2008/0129816).

Regarding claim 13, Rae discloses **wherein the server is configured to receive an incoming call for the user from a third party caller** (col. 25 line 6-13; Where a third party caller is interpreted as a caller using a cellular phone)**, determine whether the user has permission to receive incoming calls** (col. 11 line 57-67; The validation system verifies that the user is authorized to receive calls from the calling party)**, and if the user has permission, transmit the incoming call to a kiosk** (col. 12 line 27-32; The validation system used to allow calls to be completed).

The combination of Rae, Kenoyer, and Hodge does not explicitly disclose **transmit the incoming call to the kiosk and at least a second kiosk, and wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input the log in information.**

Application/Control Number: 13/088,883                                 Page 12
Art Unit: 2683

Cree discloses **transmit the incoming call to the kiosk and at least a second kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone number in the cell block, where the cell block telephone is analogous to the kiosk.  At the time of invention, it would have been obvious to one of ordinary skill in the art to place two cell block telephones in the cell block, as this is a mere duplication of essential working parts, in order to provide more telephones for the users)**, and wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, notifying the user of the incoming call** (col. 10 line 38-50; The inmates in the vicinity of the cell block telephone are notified that they have messages) **and prompt the user to input the log in information** (col. 11 line 10-16)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art substitute Cree's method of notifying a user of an incoming call and requiring input of login information in Rae, Kenoyer, and Hodge's call processing system that has user terminals with computers in order to alert users of incoming messages on a more modern system that provides more user functions.

The combination of Rae, Kenoyer, Hodge, and Cree does not explicitly disclose **display a screen notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Mattila's method of notifying the user of an incoming call at the terminal in Rae, Kenoyer, Hodge, and Cree's call system with user terminals for receiving calls in

Application/Control Number: 13/088,883                                    Page 13
Art Unit: 2683

order to effectively notify a user of the terminal with a video phone and computer of an

incoming call request.

Regarding claim 28, Rae discloses **a system for providing services to a

secure facility, the system comprising:**

**a plurality of kiosks located at a secure facility, each kiosk comprising a

processor, display, speaker, and microphone** (Figure 1 element 141 and 143; col. 7

line 3-16; col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminals 141 and

visitation telephones 143, where speakers are an inherent component of a telephone.  A

camera and microphone may be placed at the terminal for biometric authentication or

general use.  In an alternative embodiment, the system may also be implemented with

video phones and computers.  At the time of invention, it would have been obvious to

one of ordinary skill in the art to have a workstation that combines the embodiments so

that there is a computer and a video phone in order to provide more services to the

workstation user.  Additionally, computers are well known in the art to have a processor

and display.  Therefore, it would have been obvious to one of ordinary skill in the art to

have a display and processor at the workstation as a part of the computer)**; and**

**a server that communicates with the kiosks and a device of an outside

party via one or more network connections** (col. 9 line 14-21; col. 9 line 50-64; The

network 111 connecting the telephone terminals, or any device that is coupled to the

network)**, the server comprising a server processor, a network interface unit, and

a computer memory** (col. 9 line 50-64; The processor-based server having a media

gateway to provide communications to the user terminal.  It is well known in the art that

Application/Control Number: 13/088,883                                    Page 14
Art Unit: 2683

servers have memory.  Therefore, at the time of invention, it would have been obvious

to one of ordinary skill in the art to include memory in the processor-based server)**; and**

      **wherein the server is configured to receive a communications request from**

**the device of the outside party** (col. 25 line 6-13; Where a device of the outside party

is interpreted as a caller using a cellular phone)**; and**

      **wherein the server is configured to authenticate a user of the device** (col. 25

line 6-13; col 11 line 57-65; col. 9 line 14-29; The system may be used with cellular

phones, video phones, or PDAs.  A validation system verifies the identity of the called

party, or the call management system may request a PIN number from the called party.

One of ordinary skill in the art recognizes that the called party may be on a cellular

phone, video phone, or PDA)**.**

      Rae does not explicitly disclose **in response to the received communications**

**request, identify a kiosk in a vicinity of a requested party and transmit a message**

**to the kiosk, and**

      **wherein the kiosk is configured to receive the message, and, upon receipt**

**of the message, notify an incoming communications request message and initiate**

**a login procedure; and**

      **wherein the server is configured to periodically extract a frame of the video**

**and perform a check to determine if a face is present in the frame, and the server**

**is further configured to obscure the video being transmitted to the destination**

**when the check determines that a face is not present in the frame.**

Application/Control Number: 13/088,883                                    Page 15
Art Unit: 2683

In an analogous art, Kenoyer discloses **configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame** (paragraph [0041]; paragraph [0044]; The video conferencing system continuously determines if a face is present and matches the stored image)**, and further configured to obscure the video being transmitted to the destination when the check determines that a face is not present in the frame** (paragraph [0042]; paragraph [0044]; The user is only authenticated if the currently captured image matches the stored image.  If no match is found, the user is denied access to the network.  It is obvious to one of ordinary skill in the art that if the user is not authenticated, for example when a face is not present and an image cannot be captured, the user is denied access and may not continue to participate in the video conference, thus obscuring  transmission of video of the unauthenticated user to the destination).

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Kenoyer's method of continuously authenticating the user in video transmission in Rae's call processing system with video phone to ensure that an unauthenticated user does not communicate over the call processing system.

The combination of Rae and Kenoyer do not explicitly disclose **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and**

Application/Control Number: 13/088,883                                    Page 16
Art Unit: 2683

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message and initiate a login procedure, and**

**the server** performing extracting and checking.

In an analogous art, Hodge discloses **the server** performing extracting and checking (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae and Kenoyer's system with biometric authentication so that there is a central location for storing all authentication data, instead of storing authentication data at each terminal.

The combination of Rae, Kenoyer, and Hodge does not explicitly disclose **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message and initiate a login procedure.**

In an analogous art, Cree discloses i**n response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone number in the cell block if the inmate, where the cell block telephone is analogous to the kiosk)**, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message** (col. 10 line 38-50; The inmates in the vicinity of the cell block telephone are notified that they have messages) **and initiate a login procedure** (col. 11 line 10-16).

At the time of invention, it would have been obvious to one of ordinary skill in the art substitute Cree's method of notifying a user of an incoming call and requiring input of login information in Rae, Kenoyer, and Hodge's call processing system that has user terminals with computers in order to alert users of incoming messages on a more modern system that provides more user functions.

The combination of Rae, Kenoyer, Hodge, and Cree does not explicitly disclose **display a screen notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Mattila's method of notifying the user of an incoming call at the terminal in Rae, Kenoyer, Hodge, and Cree's call processing system with user terminals for receiving calls in order to effectively notify a user of the terminal with a video phone and computer of an incoming request.

Regarding claim 29, Rae discloses **wherein the communications request is a request to initiate a voice call or a video call** (col 25 line 6-13; The system used with telephones, cell phones, or video phones)**.**

Application/Control Number: 13/088,883                                   Page 18
Art Unit: 2683

Regarding claim 30, Rae discloses **wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server** (col. 20 line 46-60; col. 9 line 10-14; The system can store information regarding what cells the inmates are assigned to, and may schedule facility resources like establishing telephone availability schedules.  It is obvious to one of ordinary skill in the art that this may be stored in memory of the processor-based server of the system).

Regarding claim 31, Mattila discloses **wherein the kiosk is configured to play an alert tone or audio message upon receiving the message** (paragraph [0048]).


5.    Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae, Kenoyer, and Hodge as applied to claim 1 above, and further in view of Hanna (U.S. Pub 2011/0047473).

Regarding claim 14, Rae discloses **wherein the kiosk is configured to provide the user with the ability to order items from a list of commissary items** (col. 20 line 19-20; The inmate may purchase commissary goods).

The combination of Rae, Kenoyer, and Hodge does not explicitly disclose **configured to provide the user with at least two of: access to audio, video, and text of educational <u>material</u> stored on the server and/or the kiosk, <u>access to audio, video, and text of religious material stored on the server and/or the kiosk</u>, and the ability to order items from a list of commissary items.**

Application/Control Number: 13/088,883                                        Page 19
Art Unit: 2683

In an analogous art, Hanna discloses **configured to provide the user with at least two of: access to audio, video, and text of educational <u>material</u> stored on the server and/or the kiosk, <u>access to audio, video, and text of religious material stored on the server and/or the kiosk</u>, and the ability to order items from a list of commissary items** (paragraph [0048]-[0049]; Inmates have access to commissary items and remote teaching, analogous to education material).

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Hanna's system that provides inmates with access to commissary items and education in Rae, Kenoyer, and Hodge's inmate kiosk that provides commissary services in order to enable the kiosk to provide more functions to the inmates.

6.      Claim 19, 21, 27, 34, and 35 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rae (U.S. Pat 8,340,260), and further in view of Kenoyer, Hodge, and Kennedy (U.S. Pub 2010/0256500).

Regarding claim 19, Rae discloses **a kiosk for providing facility services in a secure manner, comprising:**

**a computer processor** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  A processor is an inherent component of a computer);

**a memory connected to the processor via a bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  Memory is an inherent component of a computer);

Application/Control Number: 13/088,883                                    Page 20
Art Unit: 2683

**a camera connected to the bus for inputting video communications** (col. 16 line 13-27; The camera can capture moving images);

**a microphone connected to the bus for inputting audio communications** (col. 16 line 13-27; The microphone);

**a speaker connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A telephone may be at the terminal.  A speaker is an inherent component of a telephone);

**a display connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  It is well known in the art that a display is a component of a personal computer.  Therefore, at the time of invention, it would have been obvious to one of ordinary skill in the art to include a display at the kiosk); **and**

**a network interface connected to the bus for communicating with a server via a network connection** (col. 9 line 50-64; The media gateway 117 that comprises a processor-based server connects the user terminals via a network 111 in order to provide communications),

**wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification** (col. 19 line 24-28; The user enters in a PIN and biometric information), **records audio and video communications and transmits the audio and video communications to the server** (col 9 line 50-64; col. 25 line 6-13; col 10 line 51-67; col. 11 line 1-2; The user terminal receives communications from the server via the media gateway.  It is obvious to one of ordinary skill in the art that if a

Application/Control Number: 13/088,883                                Page 21
Art Unit: 2683

video phone is being used, audio and video information would be transmitted from the

microphone and camera input.  The call recording system records the call at a

workstation for retrieval or playback at workstations)**, and provides access to internet**

**web pages via a web proxy** (col. 9 line 50-64; col. 25 line 6-13; In the call

management system, the processor-based server of the call application management

system 110 acts as a proxy server between the user terminals to provide interfacing.  In

an embodiment that includes computers, with access to the Internet, one of ordinary

skill in the art recognizes that the server of the management system would also serve

as a proxy server to provide interfacing between web pages)**.**

  Rae does not disclose **a touchscreen display;** <u>**and**</u>

  <u>**wherein the server is configured to periodically extract a frame of the video**</u>

<u>**and perform a check to determine if a face is present in the frame, and the server**</u>

<u>**is further configured to obscure the video being transmitted to the destination**</u>

<u>**when the check determines that a face is not present in the frame**</u>.

  In an analogous art, Kenoyer discloses **configured to periodically extract a**

**frame of the video and perform a check to determine if a face is present in the**

**frame** (paragraph [0041]; paragraph [0044]; The video conferencing system

continuously determines if a face is present and matches the stored image)**, and**

**further configured to obscure the video being transmitted to the destination when**

**the check determines that a face is not present in the frame** (paragraph [0042];

paragraph [0044]; The user is only authenticated if the currently captured image

matches the stored image.  If no match is found, the user is denied access to the

Application/Control Number: 13/088,883                                  Page 22
Art Unit: 2683

network.  It is obvious to one of ordinary skill in the art that if the user is not

authenticated, for example when a face is not present and an image cannot be

captured, the user is denied access and may not continue to participate in the video

conference, thus obscuring  transmission of video of the unauthenticated user to the

destination).

     At the time of invention, it would have been obvious to one of ordinary skill in the

art to combine Kenoyer's method of continuously authenticating the user in video

transmission in Rae's call processing system with video phone to ensure that an

unauthenticated user does not communicate over the call processing system.

     The combination of Rae and Kenoyer does not explicitly disclose **a touchscreen**

**display, and the server** performing authentication.

     In an analogous art, Hodge discloses **the server** performing authentication

(paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

     At the time of invention, it would have been obvious to one of ordinary skill in the

art to substitute Hodge's method of authenticating the user on the server in Rae and

Kenoyer's system with biometric authentication so that there is a central location for

storing all authentication data, instead of storing authentication data at each terminal.

     The combination of Rae, Kenoyer, and Hodge does not explicitly disclose **a**

**touchscreen display.**

     In an analogous art, Kennedy discloses **a touchscreen display** (paragraph

[0031]).

Application/Control Number: 13/088,883                    Page 23
Art Unit: 2683

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Kennedy's touchscreen display in Rae, Kenoyer, and Hodge's computer in order to modernize the computer interface.

Regarding claim 21, it is interpreted and rejected for the same reasons as set forth in claims 11 and 14 above, with the additional limitations set forth in claim 19 above.

Regarding claim 27, it is interpreted and rejected for the same reasons as set forth in claim 26 above, with the additional limitations set forth in claim 19 above.

Regarding claim 34, it is interpreted and rejected for the same reasons as set forth in claim 32 above, with the additional limitations set forth in claim 19 above.

Regarding claim 35, it is interpreted and rejected for the same reasons as set forth in claim 33 above, with the additional limitations set forth in claim 19 above.


### *Response to Arguments*

7.    Applicant's arguments filed 12/27/2013 have been fully considered but they are not persuasive.

Regarding Applicant's arguments that none of the references disclose a server configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server configured to obscure the video being transmitted to the destination when the check determines that the face is not present in the frame, the Examiner respectfully disagrees.  Kenoyer discloses a video conferencing system that periodically extracts a frame of the video and performs a

Application/Control Number: 13/088,883                                          Page 24
Art Unit: 2683

check to determine if a face is present in the frame in paragraphs [0035] and [0041],
where the video conferencing system may periodically or continuously determine if a
face is present.  Kenoyer further discloses a video conferencing system that obscures
the video being transmitted to the destination when the check determines that the face
is not present in the frame in paragraphs [0042] and [0044], where the user is only
authenticated if the currently captured image matches the stored image.  If no match is
found, the user is denied access to the network.  It is obvious to one of ordinary skill in
the art that if the user is not authenticated, for example when a face is not present and
an image cannot be captured, the user is denied access and may not continue to
participate in the video conference, thus obscuring  transmission of video of the
unauthenticated user to the destination.  Hodge is relied on for the server performing
authentication, disclosed in paragraph [0321]-[0322], where the site server stores the
biometric data and performs authentication.  Thus, the combination of Rae, Kenoyer,
and Hodge disclose all the elements of the claim.


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to LAURA NGUYEN whose telephone number is (571)270-
3785.  The examiner can normally be reached on Monday - Friday 9:00 AM - 5:00 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Brian Zimmerman can be reached on (571) 272-3059.  The fax phone

Application/Control Number: 13/088,883                                    Page 25
Art Unit: 2683

number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/LAURA NGUYEN/
Examiner, Art Unit 2683

                    /BRIAN ZIMMERMAN/
                    Supervisory Patent Examiner, Art Unit 2683

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S156 | 2176 | 713/186.ccls. | US-PGPUB; USPAT | OR | ON | 2014/02/24 12:40 |
| S157 | 5383 | 382/115,118.ccls. | US-PGPUB; USPAT | OR | ON | 2014/02/24 12:40 |
| S158 | 0 | ((detect$3 determin$3 sens$3) near10 (facial) near10 (presen$2 absen$2)) same ((auto automatically) with (stop$4 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference)) | US-PGPUB; USPAT | OR | ON | 2014/02/24 12:41 |
| S159 | 0 | ((detect$3 determin$3 sens$3) with (face facial) with (presen$2 absen$2)) same ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference)) | US-PGPUB; USPAT | OR | ON | 2014/02/24 12:42 |
| S160 | 0 | ((detect$3 determin$3 sens$3) with (face facial) with (presen$2 absen$2)) same3 ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference)) | US-PGPUB; USPAT | OR | ON | 2014/02/24 12:42 |
| S161 | 505 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference)) | US-PGPUB; USPAT | OR | ON | 2014/02/24 12:43 |
| S162 | 1 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference) with (unauthoriz$3 unauthentic$4)) | US-PGPUB; USPAT | OR | ON | 2014/02/24 12:43 |
| S163 | 17 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (unauthoriz$3 unauthentic$4)) | US-PGPUB; USPAT | OR | ON | 2014/02/24 12:45 |
| S164 | 5416 | 382/115,118.ccls. | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:41 |
| S165 | 5362 | 340/5.51-5.54,5.8,5.81-5.85,5.2,5.21,5.28,5.31.ccls. | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:41 |
| S166 | 2553 | 725/9,10,12,14,98,99.ccls. | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:42 |
| S167 | 6274 | 348/14.01-14.16.ccls. | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:42 |
| S168 | 16699 | 345/173.ccls. | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:42 |
| S169 | 8661 | 713/168,186.ccls. | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:42 |
| S170 | 509 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference)) | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:44 |
| S171 | 1425 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference call)) | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:44 |
| S172 | 3 | S171 and S164 | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:45 |
| S173 | 6 | S171 and S165 | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:45 |
| S174 | 4 | S171 and S166 | US- | OR | ON | 2014/03/10 |

| | | | US-PGPUB; USPAT | | | 15:45 |
|---|---|---|---|---|---|---|
| S175 | 43 | S171 and S167 | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:45 |
| S176 | 2 | S171 and S168 | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:45 |
| S177 | 1 | S171 and S169 | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:45 |
| S178 | 2 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference call) with (unauthoriz$3 unauthentic$4)) | US-PGPUB; USPAT | OR | ON | 2014/03/10 15:50 |

**EAST Search History (Interference)**

< This search history is empty>

**3/10/2014 3:51:55 PM**
**C:\ Users\ LNGUYEN8\ Documents\ EAST\ Workspaces\ 13088883_Kiosk to authenticate users using login info and biometrics in order to provide authorized services and content to the user.wsp**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13088883 | O'NEIL ET AL. |
| | **Examiner** | **Art Unit** |
| | LAURA NGUYEN | 2683 |

### CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### CPC COMBINATION SETS - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 340 | 5.51-5.54,5.8,5.81-5.85,5.2,5.21,5.28,5.31 | 3/10/2014 | LN |
| 725 | 9,10,12,14,30,98,99 | 3/10/2014 | LN |
| 382 | 115,118 | 3/10/2014 | LN |
| 348 | 14.01-14.16 | 3/10/2014 | LN |
| 345 | 173 | 3/10/2014 | LN |
| 713 | 168,186 | 3/10/2014 | LN |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST Search | 4/18/2013 | LN |
| Updated EAST Search | 9/23/2013 | LN |
| Updated EAST Search | 3/10/2014 | LN |

### INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

/L.N./
Examiner.Art Unit 2683

| | | |
|---|---|---|
| *Index of Claims* | **Application/Control No.**<br><br>13088883 | **Applicant(s)/Patent Under Reexamination**<br><br>O'NEIL ET AL. |
| [barcode] | **Examiner**<br><br>LAURA NGUYEN | **Art Unit**<br><br>2683 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant      ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/18/2013 | 09/23/2013 | 03/10/2014 | | | | | |
| | 1 | ✓ | ✓ | ✓ | | | | | |
| | 2 | ✓ | - | - | | | | | |
| | 3 | ✓ | ✓ | | | | | | |
| | 4 | ✓ | ✓ | ✓ | | | | | |
| | 5 | ✓ | ✓ | - | | | | | |
| | 6 | ✓ | ✓ | ✓ | | | | | |
| | 7 | ✓ | ✓ | ✓ | | | | | |
| | 8 | ✓ | ✓ | - | | | | | |
| | 9 | ✓ | ✓ | - | | | | | |
| | 10 | ✓ | ✓ | - | | | | | |
| | 11 | ✓ | ✓ | ✓ | | | | | |
| | 12 | ✓ | ✓ | - | | | | | |
| | 13 | ✓ | ✓ | ✓ | | | | | |
| | 14 | ✓ | ✓ | ✓ | | | | | |
| | 15 | ✓ | ✓ | - | | | | | |
| | 16 | ✓ | ✓ | ✓ | | | | | |
| | 17 | ✓ | ✓ | - | | | | | |
| | 18 | ✓ | ✓ | - | | | | | |
| | 19 | ✓ | ✓ | ✓ | | | | | |
| | 20 | ✓ | - | | | | | | |
| | 21 | ✓ | ✓ | ✓ | | | | | |
| | 22 | ✓ | ✓ | ✓ | | | | | |
| | 23 | ✓ | ✓ | - | | | | | |
| | 24 | ✓ | ✓ | - | | | | | |
| | 25 | ✓ | ✓ | - | | | | | |
| | 26 | ✓ | ✓ | ✓ | | | | | |
| | 27 | ✓ | ✓ | ✓ | | | | | |
| | 28 | ✓ | ✓ | ✓ | | | | | |
| | 29 | ✓ | ✓ | ✓ | | | | | |
| | 30 | ✓ | ✓ | ✓ | | | | | |
| | 31 | ✓ | ✓ | ✓ | | | | | |
| | 32 | ✓ | ✓ | ✓ | | | | | |
| | 33 | ✓ | ✓ | ✓ | | | | | |
| | 34 | ✓ | ✓ | ✓ | | | | | |
| | 35 | ✓ | ✓ | ✓ | | | | | |

Used in Lieu of PTO/SB/08A/B
(Based on PTO 10-07 version)

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | Application Number | 13/088,883-Conf. #9388 |
| | | Filing Date | April 18, 2011 |
| | | First Named Inventor | Kevin O'Neil |
| | | Art Unit | 2683 |
| | | Examiner Name | L. Nguyen |
| Sheet | 1 | of | 1 | Attorney Docket Number | P5789.0006/P006 |

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | AA | 7,529,357 | 05/05/2009 | Rae et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1]Applicant's unique citation designation number (optional). [2]Applicant is to place a check mark here if English language Translation is attached.

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

DSMDB-3229822v1

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 18054484 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 113003 |
| **Filer:** | Mark J. Thronson/Cheryl deLopez |
| **Filer Authorized By:** | Mark J. Thronson |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 29-JAN-2014 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 11:14:20 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | IDS.pdf | 100454<br>3190bd7979b725f1feaf58d8cccf6315bfa0f089 | yes | 3 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Transmittal Letter | 1 | 2 |
| Information Disclosure Statement (IDS) Form (SB08) | 3 | 3 |

| Warnings: |
|---|

| Information: |
|---|

| Total Files Size (in bytes): | 100454 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Docket No.: P5789.0006/P006
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Kevin O'Neil et al.

Application No.: 13/088,883                     Confirmation No.: 9388

Filed: April 18, 2011                           Art Unit: 2683

For:  INTERACTIVE AUDIO/VIDEO SYSTEM AND        Examiner: L. Nguyen
       DEVICE FOR USE IN A SECURE FACILITY

## INFORMATION DISCLOSURE STATEMENT (IDS)

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Madam:

      Pursuant to 37 C.F.R. § 1.56, 1.97 and 1.98, the attention of the Patent and Trademark Office is hereby directed to the references listed on the attached PTO/SB/08. It is respectfully requested that the information be expressly considered during the prosecution of this application, and that the references be made of record therein and appear among the "References Cited" on any patent to issue therefrom.

      This Information Disclosure Statement is filed before the mailing date of a first Office Action after the filing of a Request for Continued Examination under 37 C.F.R. § 1.114 (37 C.F.R. § 1.97(b)(4)).

      Copies of the references on the PTO/SB/08 are not provided.

Application No.: 13/088,883                                   Docket No.: P5789.0006/P006

     In accordance with 37 C.F.R. § 1.97(g), the filing of this Information Disclosure Statement shall not be construed to mean that a search has been made or that no other material information as defined in 37 C.F.R. § 1.56(a) exists. In accordance with 37 C.F.R. § 1.97(h), the filing of this Information Disclosure Statement shall not be construed to be an admission that any patent, publication or other information referred to therein is "prior art" for this invention unless specifically designated as such.

     It is submitted that the Information Disclosure Statement is in compliance with 37 C.F.R. § 1.98 and the Examiner is respectfully requested to consider the listed references.

     The Director is hereby authorized to charge any deficiency in the fees filed, asserted to be filed or which should have been filed herewith (or with any paper hereafter filed in this application by this firm) to our Deposit Account No. 04-1073, under Order No. P5789.0006/P006.

Dated: January 29, 2014                    Respectfully submitted,

                                By

                                Mark J. Thronson
                                  Registration No.: 33,082
                                DICKSTEIN SHAPIRO LLP
                                1825 Eye Street, NW
                                Washington, DC  20006-5403
                                (202) 420-2200
                                Attorney for Applicants

PTO/SB/30 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| Request for Continued Examination (RCE) Transmittal | | |
|---|---|---|
| | Application Number | 13/088,883-Conf. #9388 |
| | Filing Date | April 18, 2011 |
| | First Named Inventor | Kevin O'Neil |
| Address to:<br>**Mail Stop RCE**<br>**Commissioner for Patents**<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | Art Unit | 2683 |
| | Examiner Name | L.N. Nguyen |
| | Attorney Docket Number | P5789.0006/P006 |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. Submission required under 37 CFR 1.114 Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

    a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

        i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

        ii. ☐ Other _____

    b. ☒ Enclosed

        i. ☒ Amendment/Reply        iii. ☐ Information Disclosure Statement (IDS)

        ii. ☐ Affidavit(s)/Declaration(s)        iv. ☐ Other _____

2. Miscellaneous

    a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

    b. ☐ Other _____

3. Fees The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

    a. ☒ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any Overpayments, to Deposit Account No. 04-1073 .

        i. ☒ RCE fee required under 37 CFR 1.17(e)

        ii. ☐ Extension of time fee (37 CFR 1.136 and 1.17)

        iii. ☐ Other _____

    b. ☐ Check in the amount of $ _____ enclosed

    c. ☒ Payment by credit card (Form PTO-2038 enclosed)

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED | | | |
|---|---|---|---|
| Signature | *[signature]* | Date | December 27, 2013 |
| Name (Print/Type) | Mark J. Thronson | Registration No. | 33,082 |

DSMDB-3222745v1

Docket No.: P5789.0006/P006
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Kevin O'Neil et al.

Application No.: 13/088,883                    Confirmation No.: 9388

Filed: April 18, 2011                          Art Unit: 2683

For:  INTERACTIVE AUDIO/VIDEO SYSTEM AND        Examiner: L.N. Nguyen
      DEVICE FOR USE IN A SECURE FACILITY

## AMENDMENT ACCOMPANYING REQUEST FOR CONTINUED EXAMINATION (RCE)

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

### INTRODUCTORY COMMENTS

In response to the Final Rejection dated September 27, 2013, please amend the above-

identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2

of this paper.

**Remarks** begin on page 9 of this paper.

DSMDB-3222934v1

Application No. 13/088,883                                                Docket No.: P5789.0006/P006
Reply to Office Action of April 26, 2013

## AMENDMENTS TO THE CLAIMS

1.      (Currently amended)  A system for providing services to a secure facility, the system comprising:

        a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

        a server that communicates with the kiosk via a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

        the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the network connection;

        wherein the server records the audio and video and transmits the audio and video to a destination;

        wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

        wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to obscure the video being transmitted to the destination when the check determines that the face is not present in the frame; and

        wherein the destination is a device communicating with the server, and the server is configured to authenticate a user of the device.

2-3.    (Canceled)

4.      (Previously presented)  The system of claim 1, further comprising:

        a second kiosk located in a visitation area of the secure facility; and

2

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

a local server located at the secure facility;

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area; and

wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5.      (Canceled)

6.      (Original)   The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7.      (Previously presented)  The system of claim 1, wherein during a singular communications session, the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8-10.   (Canceled)

11.     (Previously presented)  The system of claim 1, wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages.

12.     (Canceled)

13.     (Previously presented)  The system of claim 1, wherein the server is configured to receive an incoming call for the user from a third party caller, determine whether the user has permission to receive incoming calls, if the user has permission, transmit the incoming call to the kiosk and at least a second kiosk, and

DSMDB-3222934v1

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input the log in information.

14.    (Currently amended)  The system of claim 1, wherein the kiosk is configured to provide the user with at least two of: access to audio, video, and text of educational ~~and religious materials~~ material stored on the server and/or the kiosk, <u>access to audio, video, and text of religious material stored on the server and/or the kiosk,</u> and the ability to order items from a list of commissary items.

15.    (Canceled)

16.    (Original)  The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

17-18.  (Canceled)

19.    (Currently amended) A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a speaker connected to the bus;

a touchscreen display connected to the bus; and

DSMDB-3222934v1

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

a network interface connected to the bus for communicating with a server via a network connection,

wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification, records audio and video communications and transmits the audio and video communications to the server, and provides access to internet web pages via a web proxy, and

~~wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, warn the user to face the camera if the face is not present in the field of view of the camera and stop transmitting video if the face is still not present~~

wherein the kiosk is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the kiosk is further configured to obscure video being transmitted to a destination when the check determines that the face is not present in the frame.

20.      (Canceled)

21.      (Currently amended)  The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational material ~~and religious materials~~; access to audio, video, and text of religious material; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.      (Currently amended)  A method of monitoring use of an interactive kiosk during a video transmission, comprising:

using a camera of the kiosk to ~~periodically~~ capture ~~an image~~ video of a user of the kiosk during use of the kiosk;

5

DSMDB-3222934v1

transmitting the ~~image~~ video to a server;

periodically extracting, at the server, a frame of the video;

performing a check, at the server, to determine if a face is present during a frame; and

obscuring the video transmission, at the server, to a destination if the check determines that the face is not present in the frame

~~comparing, at the server, the image with a pre-stored image of the user of the kiosk;~~

~~warning the user to face the camera for another image capture when the image does not match the pre-stored image to a predetermined degree; and~~

~~restricting use of the kiosk when the another image capture does not match the pre-stored image to a predetermined degree.~~

23-25.   (Canceled)

26.     (Previously presented)  The system of claim 1, wherein the log in information is a personal identification number.

27.     (Previously presented)  The system of claim 19, wherein the personal log in information is a personal identification number.

28.     (Currently amended)  A system for providing services to a secure facility, the system comprising:

a plurality of kiosks located at a secure facility, each kiosk comprising a processor, display, speaker, and microphone; and

a server that communicates with the kiosks and a device of an outside party via one or more network connections, the server comprising a server processor, a network interface unit, and a computer memory;

6

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

wherein the server is configured to receive a communications request from the device of the outside party and, in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk,

wherein the kiosk is configured to receive the message, and, upon receipt of the message, display an incoming communications request message and initiate a login procedure, [[and]]

wherein the server is configured to authenticate a user of the device, and

wherein the server is configured to periodically extract a frame of a video, the video being transmitted from the kiosk to the calling party; and perform a check to determine if a face is present in the frame, and the server is further configured to obscure the video being transmitted to the calling party when the check determines that the face is not present in the frame.

29.     (Previously presented)  The system of claim 28, wherein the communications request is a request to initiate a voice call or a video call.

30.     (Previously presented)  The system of claim 28, wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server.

31.     (Previously presented)  The system of claim 28, wherein the kiosk is configured to play an alert tone or audio message upon receiving the message.

32.     (Previously presented)  The system of claim 1, wherein the biometric verification comprises a facial authentication via the camera.

33.     (Previously presented)  The system of claim 1, wherein the biometric verification comprises a voice authentication via the microphone.

34.     (Previously presented)  The kiosk of claim 19, wherein the biometric verification comprises a facial authentication of an image captured by the camera.

7

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

35.    (Previously presented)  The kiosk of claim 19, wherein the biometric verification comprises a voice authentication of an audible phrase recorded using the microphone.

8

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

## REMARKS

Claims 1, 4, 6, 7, 11, 13, 14, 16, 19, 21-22, 26-35 are pending in this application. Claims 1, 4, 7, 14, 19, 21, 22 and 28 have been amended, and claims 2-3, 5, 8-10, 12, 15, 17-18, 20 and 23-25 have been canceled, without prejudice. Applicant reserves the right to pursue the original claims and other claims in this and other applications. In view of the amendments to the claims and the remarks below, Applicant respectfully requests that the rejections be withdrawn and the claim allowed.

Claims 1, 3-4, 9, 11, 15-17, 24-26, and 32-33 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae (U.S. Pat 8,340,260). The rejection is respectfully traversed.

Claim 1 recites, among other things a kiosk located at a secure facility and a server that communicates with the kiosk via a network connection. The kiosk receives communications from a camera and microphone and transmits audio and video to the server. The server transmits the audio and video to a destination. Claim 1, as amended, recites that "the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to obscure the video being transmitted to the destination when the check determines that the face is not present in the frame." This feature is described, for example, at paragraph [0085] of the application. The prior art of record does not teach or suggest the features of amended claim 1.

Rae is relied upon as disclosing an inmate management and call processing system that serves a plurality of facilities. Rae does not, however, disclose a server configured to periodically extract a frame of video, perform a check to determine if a face is present in the frame, and obscure the video when the check determines the face is not present in the frame. Accordingly, for at least these reasons, claim 1 is allowable over Rae. Claims 4, 11, 16, 26, and 32-33 depend from claim 1 and are allowable for at least the same reasons.

Claims 5, 6, 7, 8, 10, 12, 13, 14, 18, 19, 21-24, 27-31, 34 and 35 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae in various combinations with Kenoyer (U.S. Pub

9

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

2006/0259755), Hodge (U.S. Pub 2006/0285667), Cree (U.S. Pat. 6,665,380), Aiu (U.S. Pub. 2004/003079), Banti (U.S. Pub. 2010/0313276), Mattila (U.S. Pub 2008/0129816),  Kennedy (U.S. Pub 2010/0256500), Klapman (U.S. Pub. 2002/0101513), and Swink (U.S. Pub. 2011/0088086). The rejection is respectfully traversed.

Claims 6, 7, 13, 14, depend from claim 1 and include all limitations of claim 1.  As described above, claim 1 has been amended to recite "the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to obscure the video being transmitted to the destination when the check determines that the face is not present in the frame."  These features are not disclosed in Rae, for the reasons described above, and the other cited references do not cure the deficiencies of Raoe with respect to this feature.

Kenoyer, for example, is relied on as disclosing facial authentication.  Kenoyer describes detecting facial images of a user, generating biometrics of the detected facial images, and comparing the generated biometrics with biometrics information of authorized users.  Kenoyer Abstract.  Kenoyer describes using this authentication to log in to a system or to continually monitor to insure only authorized users are allowed access.  *Id.* at [0035].  Kenoyer does not, however, teach or suggest that "[a] server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to obscure the video being transmitted to the destination when the check determines that the face is not present in the frame" among other things.

The other cited references do not disclose this feature, either.  Hodge is relied upon merely for describing a server storing biometric data, Cree is relied upon for disclosing anonymous input, Aui is relied upon for disclosing notification messages, Banti is relied upon for disclosing a web interface, Mattila is relied upon for disclosing the transmission of a message to a cell block telephone number, Hanna is relied upon for disclosing access to commissary and education materials, Kennedy is relied upon as disclosing a touchscreen display, Klapman is relied upon as disclosing the display of an icon when a face is not present, and Swink is relied upon as disclosing

10

the display of an error message when authentication credentials do not match.  None of these references, however, teach or suggest "the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to obscure the video being transmitted to the destination when the check determines that the face is not present in the frame."

Accordingly, claims 6, 7, 13, 14 are allowable for at least the same reasons that claim 1 is allowable.  Claims 19, 21, 22, 27-31, 34 and 35 include similar limitations as claim 1 and are allowable for similar reasons.  For example, claim 19 recites "the  kiosk is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the kiosk is further configured to obscure video being transmitted to a destination when the check determines that the face is not present in the frame" and claims 21, 27, 34 and 35 depend from claim 19.  Claim 22 recites "periodically extracting, at the server, a frame of the video; performing a check, at the server, to determine if a face is present during a frame; and obscuring the video transmission, at the server, to a destination if the check determines that the face is not present in the frame."  Claim 28 recites "wherein the server is configured to periodically extract a frame of a video, the video being transmitted from the kiosk to the calling party; and perform a check to determine if a face is present in the frame, and the server is further configured to obscure the video being transmitted to the calling party when the check determines that the face is not present in the frame" and claims 29-31 depend from claim 28.

DSMDB-3222934v1

Application No. 13/088,883                                          Docket No.: P5789.0006/P006
Reply to Office Action of April 26, 2013

      In view of the above, Applicant believes the pending application is in condition for

allowance.

Dated:  December 27, 2013                    Respectfully submitted,

                                By

                                Mark J. Thronson
                                  Registration No.: 33,082
                                Jonathan L. Falkler
                                  Registration No.: 62,115
                                DICKSTEIN SHAPIRO LLP
                                1825 Eye Street, NW
                                Washington, DC  20006-5403
                                (202) 420-2200
                                Attorneys for Applicant

DSMDB-3222934v1

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13088883 |
| **Filing Date:** | 18-Apr-2011 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard Torgersrud |
| **Filer:** | Mark J. Thronson/Cheryl deLopez |
| **Attorney Docket Number:** | P5789.0006/P006 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for Continued Examination | 1801 | 1 | 1200 | 1200 |
| **Total in USD ($)** | | | | **1200** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 17767306 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard  Torgersrud |
| **Customer Number:** | 113003 |
| **Filer:** | Mark J. Thronson/Cheryl deLopez |
| **Filer Authorized By:** | Mark J. Thronson |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 27-DEC-2013 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 13:40:05 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 1200 |
| RAM confirmation Number | 7604 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | | amendp006.pdf | 467413<br>02baac6de69bb5d17c8a1ff3b6e97ee67e1<br>6e21d | yes | 13 |
|---|---|---|---|---|---|

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Request for Continued Examination (RCE) | 1 | 1 |
| Amendment Submitted/Entered with Filing of CPA/RCE | 2 | 2 |
| Claims | 3 | 9 |
| Applicant Arguments/Remarks Made in an Amendment | 10 | 13 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30483<br>5b3528b6eb2a56cad147d5da46c059749f<br>6918a | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 497896 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>13/088,883 | Filing Date<br>04/18/2011 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:**   ☒ LARGE   ☐ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| | | | | | RATE ($) | ADDITIONAL FEE ($) |
| **AMENDMENT** | **12/27/2013** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | |
| | Total (37 CFR 1.16(i)) | * 21 | Minus | ** 35 | = 0 | x $80 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | *** 4 | = 0 | x $420 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| **AMENDMENT** | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/DELEACHES YOUNG/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 | 9388 |

113003          7590          09/27/2013
Dickstein Shapiro LLP (Telmate)
1825 Eye Street NW
Washington, DC 20006

| EXAMINER |
|---|
| NGUYEN, LAURA N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2683 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/27/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| ***Office Action Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 13/088,883 | TORGERSRUD ET AL. |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | LAURA NGUYEN | 2683 | No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

### Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

### Status

1) ☒ Responsive to communication(s) filed on <u>26 July 2013</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☒ This action is **FINAL**.    2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

### Disposition of Claims

5) ☒ Claim(s) <u>1,3-19 and 21-35</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) <u>1, 3-19, and 21-35</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

### Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☒ The drawing(s) filed on <u>4/18/2011</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

### Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a) ☐ All  b) ☐ Some *  c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

  **Interim copies:**
    a) ☐ All  b) ☐ Some  c) ☐ None of the: Interim copies of the priority documents have been received.

**Attachment(s)**
1) ☒ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
4) ☐ Other: _____.

Application/Control Number: 13/088,883                                    Page 2

Art Unit: 2683

## DETAILED ACTION

1.      In the amendment filed on 7/26/2013, claims 2 and 20 are canceled and no new

claims have been added.  Therefore, claims 1, 3-19, and 21-35 are currently pending in

the application.


### *Claim Rejections - 35 USC § 103*

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

3.      Claims 1, 3-4, 9, 11, 15-17, 24-26, and 32-33 are rejected under 35 U.S.C.

103(a) as being unpatentable over Rae (U.S. Pat 8,340,260).

Regarding claim 1, Rae discloses **a system for providing services to a secure**

**facility** (col. 6 line 52-65; The call processing system got prisons, nursing homes,

camps, dormitories)**, the system comprising:**

**a kiosk located at a secure facility, the kiosk comprising a processor,**

**display, speaker, microphone, and a camera** (Figure 1 element 141; col. 7 line 3-16;

col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminal 141, where speakers are

an inherent component of a telephone.  A camera and microphone may be placed at the

terminal for biometric authentication or general use.  Rae does not explicitly disclose a

display.  However, in an alternative embodiment, Rae disclose that the system may also

be implemented with video phones and computers.  At the time of invention, it would

Application/Control Number: 13/088,883                                    Page 3
Art Unit: 2683

have been obvious to one of ordinary skill in the art to have a workstation that combines

the embodiments so that there is a computer and a video phone in order to provide

more services to the workstation user.  Additionally, computers and videophones are

well known in the art to have a processor and display.  Therefore, it would have been

obvious to one of ordinary skill in the art to have a display and processor at the

workstation as a part of the computer or videophone)**; and**

**a server that communicates with the kiosk via a network connection** (col. 9

line 50-64; The network 111 ) **, the server comprising a server processor, a network**

**interface unit, and a computer memory** (col. 9 line 50-64; The processor-based

server having a media gateway to provide communications to the user terminal.  It is

well known in the art that servers have memory.  Therefore, at the time of invention, it

would have been obvious to one of ordinary skill in the art to include memory in the

processor-based server)**;**

**the kiosk being configured to receive communications from the camera**

**and microphone and transmit audio and video of the communications to the**

**server via the network connection** (col 9 line 50-64; col. 25 line 6-13; The user

terminal receives communications from the server via the media gateway.  It is obvious

to one of ordinary skill in the art that if a video phone is being used, audio and video

information would be transmitted from the microphone and camera input)**;**

**wherein the server records the audio and video and transmits the audio**

**and video to a destination** (col 10 line 51-67; col. 11 line 1-2; col. 25 lines 6-13; The

call recording system records the call at a workstation for retrieval or playback at

Application/Control Number: 13/088,883                                    Page 4
Art Unit: 2683

workstations.  Rae does not explicitly disclose transmitting audio and video.  However,

In an alternative embodiment, Rae discloses using a videophone instead of a

telephone.  At the time of invention, it would have been obvious to one of ordinary skill

in the art that if a videophone is used in place of a telephone, that audio and video

would be recorded and transmitted)**;**

**wherein the kiosk is configured to authenticate the identity of a user of the

kiosk by verifying log in information entered by the user** (col. 19 line 19-28; An

inmate uses their PIN number or identifier to make a call) **and also performing a

biometric verification** (col. 19 line 19-28; Biometric information is also used for

authentication.  It is obvious to one of ordinary skill in the art to use both logon and

biometric authentication methods for additional security)**; and**

**wherein the destination is a device communicating with the server and the**

**server is configured to authenticate a user of the device** (col. 25 line 6-13; col 11

line 57-65; col. 9 line 14-29; The system may be used with cellular phones, video

phones, or PDAs.  A validation system verifies the identity of the called party, or the call

management system may request a PIN number from the called party.  One of ordinary

skill in the art recognizes that the called party may be on a cellular phone, video phone,

or PDA)**.**

Regarding claim 3, Rae **discloses wherein the destination is a second kiosk

located in a visitation area of a second secure facility** (col 7. line 9-16; Call

processing between the telephone terminals 141 and the visitation telephones 143)**.**

Regarding claim 4, Rae **discloses further comprising:**

Application/Control Number: 13/088,883                                    Page 5
Art Unit: 2683

**a second kiosk located in a visitation area of the secure facility** (col 7. line 9-16; col. 25 line 6-13;  Call processing between the telephone terminals 141 and the visitation telephones 143.  The system may also be used with video phones and computers.  It is obvious to one of ordinary skill in the art to place the video phone and computer at the visitation telephone terminal 143 for communications with the user terminal 141 that also contains these components)**; and**

**a local server located at the secure facility; the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area** (col. 9 line 10-21; The call management system of the facility has a server the completes calls between the telephone terminals 141 and visitation telephones 143)**; and**

**wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area** (col. 8 line 50-60; col 10 line 51-67; col. 11 line 1-29; col. 25 lines 6-13; The computer-based platform of the facility comprising a call management system and call recording system records calls, such as the exchange of data provided by the call, for retrieval or playback at the visitation telephones 143.  In an alternative embodiment, Rae discloses the use of video phones in place of telephones in the call management system.  It is obvious to one of ordinary skill in the art that if a video phone is used instead of a telephone, that audio and video information are recorded and transmitted to the visitation terminal, since audio and video are both exchanged data in a video phone)**.**

Application/Control Number: 13/088,883                                          Page 6
Art Unit: 2683

Regarding claim 9, Rae discloses **wherein the kiosk is configured to allow the user to reserve use of the kiosk by receiving a user request for use at a certain time and checking permissions related to the user that are stored on the server, and, when the user request is granted, the kiosk does not allow anyone other than the user to log in at the certain time** (col. 20 line 41-60; The system may also be used for tracking privileges and managing facility resources such as establishing telephone availability schedules.  Establishing a telephone schedule is analogous to reserving use of a kiosk.  It is obvious to one of ordinary skill in the art that the tracked privileges may apply to scheduling telephone availability.  It is further obvious to one of ordinary skill in the art to recognize that if a telephone is not available because it is already scheduled to another user, no other users but the scheduled user may be permitted to use the telephone).

Regarding claim 11, Rae discloses **wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages** (col. 19 line 24-28; col. 25 line 6-13; col. 20 line 26-30; The kiosk requires the user to logon to the terminal before use.  The terminal may have a computer, which is well known in the art to be capable of transmitting messages.  The call management system allows the user to have access to external services, analogous to providing a third party access to the messages)**.**

Regarding claim 15, Rae discloses **wherein the kiosk is configured to connect to the Internet and provide access to authorized Internet web pages** (col. 15 line 7-

Application/Control Number: 13/088,883                                    Page 7
Art Unit: 2683

13; col. 11 line 57-67; col. 25 line 6-13; Data may be provided via the Internet.  A
validation system determines if the user is authorized to call certain parties in the
telephone only embodiment of the invention.  However, in an embodiment that allows
Internet over personal computers, one of ordinary skill recognizes that the authorization
may apply to web pages as well, as this is a medium the user may contact via the
Internet, analogous to a medium the user may contact via the telephone)**, and the
kiosk is configured to log all visited Internet web pages and to transmit logs to
the server** (col. 10 line 51-67; col. 25 line 6-13; col. 15 line 7-13; The telephone only
embodiment of the invention has a call recording system that tracks and archives all call
information.  It is obvious to one of ordinary skill in the art to recognize that this same
tracking and archiving functionality may apply to all activities on an embodiment that
uses a computer which allows access to the Internet)**.**

　　　Regarding claim 16, Rae discloses **wherein the kiosk is configured to receive
text-based messages from a server, and to display a notification of an available
text-based message on an idle screen of the kiosk** (Abstract; col. 15 line 37-44; The
call management system has an inmate management system that allows individuals to
view notification of events on a computer for all occasions, which is interpreted to
include an idle screen of a computer.  Notifications may be in the form of emails)**.**

　　　Regarding claim 17, Rae discloses **wherein the kiosk is configured to receive
voice or video messages from a server, and to display a notification of an
available voice or video message on an idle screen of the kiosk** (Abstract; col. 15
line 37-44; The call management system has an inmate management system that

Application/Control Number: 13/088,883                                      Page 8
Art Unit: 2683

allows individuals to view notification of events on a computer for all occasions, which is

interpreted to include an idle screen of a computer.  Notifications may be in the form of

voicemails or videomails).

Regarding claim 24, Rae discloses **wherein the network is the Internet** (col. 15

3-13; Data provided via the Internet).

Regarding claim 25, Rae discloses **wherein the kiosk is configured to provide**

**access to Internet web pages via a proxy server** (col. 9 line 50-64; col. 25 line 6-13;

In the call management embodiment, the processor-based server of the call application

management system 110 acts as a proxy server between the user terminals to provide

interfacing.  In an embodiment that includes computers, with access to the Internet, one

of ordinary skill in the art recognizes that the server of the management system would

also serve as a proxy server to provide interfacing between web pages of the Internet).

Regarding claim 26, Rae discloses **wherein the log in information is a**

**personal identification number** (col. 19 line 24-28).

Regarding claim 32, Rae discloses **wherein the biometric verification**

**comprises a facial authentication via the camera** (col. 16 line 10-27).

Regarding claim 33, Rae discloses **wherein the biometric verification**

**comprises a voice authentication via the microphone** (col. 16 line 10-27)


4.     Claim 5 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Kenoyer (U.S. Pub 2006/0259755).

Application/Control Number: 13/088,883 Page 9
Art Unit: 2683

Regarding claim 5, Rae does not explicitly disclose **wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video.**

In an analogous art, Kenoyer discloses **wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame** (paragraph [0041]; paragraph [0044]; The video conferencing system continuously determines if a face is present and matches the stored image)**, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video** (paragraph [0042]; paragraph [0044]; The user is only authenticated if the currently captured image matches the stored image. It is obvious to one of ordinary skill in the art that if the user is not authenticated, the user may not continue to participate in the video conference, thus ending transmission of video of the unauthenticated user to the destination)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Kenoyer's method of continuously authenticating the user in video transmission in Rae's call processing system with video phone to ensure that an unauthenticated user does not communicate over the call processing system.

Application/Control Number: 13/088,883                                    Page 10
Art Unit: 2683

5.      Claim 6 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Hodge (U.S. 2006/0285667).

        Regarding claim 6, Rae discloses the system **configured to periodically**

**extract a frame of video and authenticate a face in the frame against a stored**

**identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A camera is

used to capture an image of the user's face for authentication.  Biometric authentication

may be required every time a user makes a call.  If a user makes multiple calls, this is

considered to be "periodically extracting a frame of video").

        Rae does not explicitly disclose **the server** performing authentication.

        In an analogous art, Hodge discloses **the server** performing authentication

(paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

        At the time of invention, it would have been obvious to one of ordinary skill in the

art to substitute Hodge's method of authenticating the user on the server in Rae's

system with biometric authentication so that there is a central location for storing all

authentication data, instead of storing authentication data at each terminal.


6.      Claim 7 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Hodge (U.S. 2006/0285667) and

Kenoyer.

        Regarding claim 7, Rae discloses **wherein the kiosk is configured to**

**periodically record a frame of video and authenticates a face in the frame against**

**a stored identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A

Application/Control Number: 13/088,883                    Page 11
Art Unit: 2683

camera is used to capture an image of the user's face for authentication.  Biometric

authentication may be required every time a user makes a call).

Rae does not explicitly disclose **during a singular communications session,**

**the kiosk is configured to periodically record a frame of video; and**

**transmit the frame to the server, and wherein the server processor**

**authenticates**.

In an analogous art, Kenoyer discloses **during a singular communications**

**session, the kiosk is configured to periodically record a frame of video** (paragraph

[0044]; paragraph [0041]; The user is continuously authenticated by the

videoconference system capturing an image of the user).

At the time of invention, it would have been obvious to one of ordinary skill in the

art to combine Kenoyer's method of continuously authenticating the user in video

transmission in Rae's call processing system with video phone to ensure that an

unauthenticated user does not communicate over the call processing system.

The combination of Rae and Kenoyer does not explicitly disclose **transmit the**

**frame to the server, and wherein the server processor authenticates.**

In an analogous art, Hodge discloses **transmit the frame to the server, and**

**wherein the server processor authenticates** (paragraph [0321]-[0322]; The biometric

information is transmitted from the scanner at the telephone to the site server for

authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the

art to substitute Hodge's method of authenticating the user on the server in Rae and

Application/Control Number: 13/088,883                                      Page 12
Art Unit: 2683

Kenoyer's system with biometric authentication so that there is a central location for

storing all authentication data, instead of storing authentication data at each terminal.


7.      Claims 8 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Cree (U.S. Pat 6,665,380).

        Regarding claim 8, Rae does not explicitly disclose **wherein the kiosk accepts**

**anonymous messages input by the user without requiring the user to enter the**

**log in information.**

        In an analogous art, Cree discloses **wherein the kiosk accepts anonymous**

**messages input by the user without requiring the user to enter the log in**

**information** (col. 10 line 65-67; col. 11 line 1-16; Any inmate may pick up the phone

and see if they have messages.  They can access corresponding functions, and only if

they want to select a messaging function are they required to enter their account

number and PIN)**.**

        At the time of invention, it would have been obvious to one of ordinary skill in the

art to combine Cree's system that allows anonymous input in Rae's call processing

system so that users do not have to unnecessarily log in to the terminal if they don't

have any messages.


8.      Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Aiu (U.S. Pub 2004/003079).

Application/Control Number: 13/088,883                                      Page 13
Art Unit: 2683

Regarding claim 10, Rae does not explicitly disclose **wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification messages alerting the second user that the second user will be logged off at the certain time due to a reservation.**

In an analogous art, Aiu discloses **wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification messages alerting the second user that the second user will be logged off at the certain time due to a reservation** (Figure 3; paragraph [0038])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Aiu's method of displaying an alert to the current user when the current user is about to be restricted in Rae's call processing system with video phone in order to alert the user that another user is scheduled to use the terminal system at an upcoming time, and the current user will no longer be allowed to use the terminal.


9.      Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as applied to claim 1 above, and further in view of Banti (U.S. Pub 2010/0313276).

Regarding claim 12, Rae does not explicitly disclose **wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages.**

In an analogous art, Banti discloses **wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages** (Figure 3 element 255; paragraph [0015];

Application/Control Number: 13/088,883                                    Page 14
Art Unit: 2683

The mail server prevents a second user from taking an action that is restricted, such as forwarding the message to another user).

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Banti's method of restricting actions on messages in Rae's call processing system to prevent outside parties from manipulating the secure messages sent from the secure facility.

10.     Claims 13, 18, and 28-31 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as applied to claim 1 above, and further in view of Cree (U.S. Pat 6,665,380) and Mattila (U.S. Pub 2008/0129816).

Regarding claim 13, Rae discloses **wherein the server is configured to receive an incoming call for the user from a third party caller** (col. 25 line 6-13; Where a third party caller is interpreted as a caller using a cellular phone)**, determine whether the user has permission to receive incoming calls** (col. 11 line 57-67; The validation system verifies that the user is authorized to receive calls from the calling party)**, and if the user has permission, transmit the incoming call to a kiosk** (col. 12 line 27-32; The validation system used to allow calls to be completed).

Rae does not explicitly disclose **transmit the incoming call to the kiosk and at least a second kiosk, and wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input the log in information.**

Application/Control Number: 13/088,883                                    Page 15
Art Unit: 2683

Cree discloses **transmit the incoming call to the kiosk and at least a second kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone number in the cell block, where the cell block telephone is analogous to the kiosk.  At the time of invention, it would have been obvious to one of ordinary skill in the art to place two cell block telephones in the cell block, as this is a mere duplication of essential working parts, in order to provide more telephones for the users)**, and wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, notifying the user of the incoming call** (col. 10 line 38-50; The inmates in the vicinity of the cell block telephone are notified that they have messages) **and prompt the user to input the log in information** (col. 11 line 10-16)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art substitute Cree's method of notifying a user of an incoming call and requiring input of login information in Rae's call processing system that has user terminals with computers in order to alert users of incoming messages on a more modern system that provides more user functions.

The combination of Rae and Cree does not explicitly disclose **display a screen notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Mattila's method of notifying the user of an incoming call at the terminal in Rae and Cree's call system with user terminals for receiving calls in order to

Application/Control Number: 13/088,883                                    Page 16
Art Unit: 2683

effectively notify a user of the terminal with a video phone and computer of an incoming

call request.

Regarding claim 18, Mattila discloses **wherein the kiosk is configured to**

**receive a visitation request from a server** (Figure 22 element 28; paragraph [0045];

The video conference terminal may accept conference sessions from another video

conference terminal.  The conference session request is analogous to the visitation

request.  The conference server handles the conference requests)**, and to display a**

**notification of an available visitation request on an idle screen of the kiosk**

(paragraph [0048]; paragraph [0057]; The notification is displayed on the terminal,

where the terminal may also display an idle screen.  It is obvious to one of ordinary skill

in the art that if the notification has an idle screen, a notification may be displayed on

the idle screen)**.**


Regarding claim 28, Rae discloses **a system for providing services to a**

**secure facility, the system comprising:**

**a plurality of kiosks located at a secure facility, each kiosk comprising a**

**processor, display, speaker, and microphone** (Figure 1 element 141 and 143; col. 7

line 3-16; col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminals 141 and

visitation telephones 143, where speakers are an inherent component of a telephone.  A

camera and microphone may be placed at the terminal for biometric authentication or

general use.  In an alternative embodiment, the system may also be implemented with

video phones and computers.  At the time of invention, it would have been obvious to

Application/Control Number: 13/088,883                                    Page 17
Art Unit: 2683

one of ordinary skill in the art to have a workstation that combines the embodiments so

that there is a computer and a video phone in order to provide more services to the

workstation user.  Additionally, computers are well known in the art to have a processor

and display.  Therefore, it would have been obvious to one of ordinary skill in the art to

have a display and processor at the workstation as a part of the computer)**; and**

**a server that communicates with the kiosks and a device of an outside**

**party via one or more network connections** (col. 9 line 14-21; col. 9 line 50-64; The

network 111 connecting the telephone terminals, or any device that is coupled to the

network)**, the server comprising a server processor, a network interface unit, and**

**a computer memory** (col. 9 line 50-64; The processor-based server having a media

gateway to provide communications to the user terminal.  It is well known in the art that

servers have memory.  Therefore, at the time of invention, it would have been obvious

to one of ordinary skill in the art to include memory in the processor-based server)**; and**

**wherein the server is configured to receive a communications request from**

**the device of the outside party** (col. 25 line 6-13; Where a device of the outside party

is interpreted as a caller using a cellular phone)**; and**

**wherein the server is configured to authenticate a user of the device** (col. 25

line 6-13; col 11 line 57-65; col. 9 line 14-29; The system may be used with cellular

phones, video phones, or PDAs.  A validation system verifies the identity of the called

party, or the call management system may request a PIN number from the called party.

One of ordinary skill in the art recognizes that the called party may be on a cellular

phone, video phone, or PDA)**.**

Application/Control Number: 13/088,883                                             Page 18
Art Unit: 2683

Rae does not explicitly disclose **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message and initiate a login procedure**.

In an analogous art, Cree discloses i**n response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone number in the cell block if the inmate, where the cell block telephone is analogous to the kiosk)**, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message** (col. 10 line 38-50; The inmates in the vicinity of the cell block telephone are notified that they have messages) **and initiate a login procedure** (col. 11 line 10-16).

At the time of invention, it would have been obvious to one of ordinary skill in the art substitute Cree's method of notifying a user of an incoming call and requiring input of login information in Rae's call processing system that has user terminals with computers in order to alert users of incoming messages on a more modern system that provides more user functions.

The combination of Rae and Cree does not explicitly disclose **display a screen notifying the user of the incoming call.**

Application/Control Number: 13/088,883                                    Page 19
Art Unit: 2683

In an analogous art, Mattila discloses **display a screen notifying the user of the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Mattila's method of notifying the user of an incoming call at the terminal in Rae and Cree's call processing system with user terminals for receiving calls in order to effectively notify a user of the terminal with a video phone and computer of an incoming request.

Regarding claim 29, Rae discloses **wherein the communications request is a request to initiate a voice call or a video call** (col 25 line 6-13; The system used with telephones, cell phones, or video phones)**.**

Regarding claim 30, Rae discloses **wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server** (col. 20 line 46-60; col. 9 line 10-14; The system can store information regarding what cells the inmates are assigned to, and may schedule facility resources like establishing telephone availability schedules.  It is obvious to one of ordinary skill in the art that this may be stored in memory of the processor-based server of the system).

Regarding claim 31, Mattila discloses **wherein the kiosk is configured to play an alert tone or audio message upon receiving the message** (paragraph [0048]).

11.    Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as applied to claim 1 above, and further in view of Hanna (U.S. Pub 2011/0047473).

Application/Control Number: 13/088,883                                    Page 20
Art Unit: 2683

Regarding claim 14, Rae discloses **wherein the kiosk is configured to provide the user with at least one of: access to audio, video, and text of educational and religious materials stored on the server and/or the kiosk, and the ability to order items from a list of commissary items** (col. 20 line 19-20; The inmate may purchase commissary goods).

Rae does not explicitly disclose **configured to provide the user with at least <u>two</u> of access to audio, video, and text of educational and religious materials stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.**

In an analogous art, Hanna discloses **configured to provide the user with at least <u>two</u> of access to audio, video, and text of educational and religious materials stored on the server and/or the kiosk, and the ability to order items from a list of commissary items** (paragraph [0048]-[0049]; Inmates have access to commissary items and remote teaching)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Hanna's system that provides inmates with access to commissary items and education in Rae's inmate kiosk that provides commissary services in order to enable the kiosk to provide more functions to the inmates.

12.     Claim 19, 27, 34, and 35 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rae (U.S. Pat 8,340,260), and further in view of Kennedy (U.S. Pub 2010/0256500), Klapman (U.S. Pub 2002/0101512), and Kenoyer.

Application/Control Number: 13/088,883                          Page 21
Art Unit: 2683

Regarding claim 19, Rae discloses **a kiosk for providing facility services in a secure manner, comprising:**

**a computer processor** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  A processor is an inherent component of a computer)**;**

**a memory connected to the processor via a bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  Memory is an inherent component of a computer)**;**

**a camera connected to the bus for inputting video communications** (col. 16 line 13-27; The camera can capture moving images)**;**

**a microphone connected to the bus for inputting audio communications** (col. 16 line 13-27; The microphone)**;**

**a speaker connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A telephone may be at the terminal.  A speaker is an inherent component of a telephone)**;**

**a display connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  It is well known in the art that a display is a component of a personal computer.  Therefore, at the time of invention, it would have been obvious to one of ordinary skill in the art to include a display at the kiosk)**; and**

**a network interface connected to the bus for communicating with a server via a network connection** (col. 9 line 50-64; The media gateway 117 that comprises a processor-based server connects the user terminals via a network 111 in order to provide communications)**,**

Application/Control Number: 13/088,883                                    Page 22
Art Unit: 2683

**wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification** (col. 19 line 24-28; The user enters in a PIN and biometric information)**, records audio and video communications and transmits the audio and video communications to the server** (col 9 line 50-64; col. 25 line 6-13; col 10 line 51-67; col. 11 line 1-2; The user terminal receives communications from the server via the media gateway.  It is obvious to one of ordinary skill in the art that if a video phone is being used, audio and video information would be transmitted from the microphone and camera input.  The call recording system records the call at a workstation for retrieval or playback at workstations)**, and provides access to internet web pages via a web proxy** (col. 9 line 50-64; col. 25 line 6-13; In the call management system, the processor-based server of the call application management system 110 acts as a proxy server between the user terminals to provide interfacing.  In an embodiment that includes computers, with access to the Internet, one of ordinary skill in the art recognizes that the server of the management system would also serve as a proxy server to provide interfacing between web pages)**.**

Rae does not disclose **a touchscreen display; and**

**wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, warn the user to face the camera if the face is not present in the field of view of the camera and stop transmitting video if the face is still not present.**

Application/Control Number: 13/088,883                    Page 23
Art Unit: 2683

In an analogous art, Kennedy discloses **a touchscreen display** (paragraph [0031]).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Kennedy's touchscreen display in Rae's computer in order to modernize the computer interface.

The combination of Rae and Kennedy does not explicitly disclose **wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, warn the user to face the camera if the face is not present in the field of view of the camera and stop transmitting video if the face is still not present.**

In an analogous art, Klapman discloses **wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, warn the user to face the camera if the face is not present in the field of view of the camera** (paragraph [0034]; The video processor detects that the person's head is not present, and warns the user that the head is not present by displaying a blinking icon).

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Klapman's displaying of an icon to the user if the head is not present in a remote calling system in Rae and Kennedy's computer to allow the user to quickly detect whether he or she is outside of the camera's field of view.

The combination of Rae, Kennedy, and Klapman does not explicitly disclose **stop transmitting video if the face is still not present**.

In an analogous art, Kenoyer discloses **stop transmitting video if the face is still not present** (paragraph [0044]; paragraph [0042]; The user is continuously

Application/Control Number: 13/088,883                                    Page 24
Art Unit: 2683

authenticated throughout the video conference.  If the user is not present, it is obvious

to one of ordinary skill in the art that a match cannot be found in the authentication, that

thus the user is denied access, where the denial of access is analogous to stopping the

transmission of video).

At the time of invention, it would have been obvious to one of ordinary skill in the

art to combine Kenoyer's method of denying access to a user if their face cannot be

authenticated in Rae, Kennedy, and Klapman's computer system with video

conferencing capabilities to ensure that the user in front of the videoconference system

continues to be the same authenticated user, as taught by Kenoyer.

Regarding claim 21, it is interpreted and rejected for the same reasons as set

forth in claims 9, 11, and 14 above, with the additional limitations set forth in claim 19

above.

Regarding claim 27, it is interpreted and rejected for the same reasons as set

forth in claim 26 above, with the additional limitations set forth in claim 19 above.

Regarding claim 34, it is interpreted and rejected for the same reasons as set

forth in claim 32 above, with the additional limitations set forth in claim 19 above.

Regarding claim 35, it is interpreted and rejected for the same reasons as set

forth in claim 33 above, with the additional limitations set forth in claim 19 above.


13.    Claim 22 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae

(U.S. Pat 8,340,260), and further in view of Hodge and Swink (U.S. Pub 2011/0088086).

Application/Control Number: 13/088,883                                    Page 25
Art Unit: 2683

Regarding claim 22, Rae discloses **a method of monitoring use of an interactive kiosk, comprising: using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication. Biometric authentication may be required every time a user makes a call.  If a user makes multiple calls, this is considered to be "periodically extracting a frame of video") **and restricting use of the kiosk when the image does not match the pre-stored image to a predetermined degree** (col. 19 line 24-28; The call is blocked if the PIN and biometric data do not match)**.**

Rae does not explicitly disclose **transmitting the image to a server;**

**comparing, at the server, the image with a pre-stored image of the user of the kiosk;**

<u>**warning the user to face the camera for another image capture when the image does not match the pre-stored image to a predetermined degree; and**</u>

**restricting use of the kiosk when <u>another</u> image <u>capture</u> does not match**.

In an analogous art, Hodge discloses **transmitting the image to a server; and comparing, at the server, the image with a pre- stored image of the user of the kiosk** (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae's call processing system with biometric authentication so that there is a central location for

Application/Control Number: 13/088,883                               Page 26
Art Unit: 2683

storing all authentication data, instead of having to store authentication data at each terminal.

The combination of Rae and Hodge does not explicitly disclose **warning the user to face the camera for another image capture when the image does not match the pre-stored image to a predetermined degree; and**

**restricting use of the kiosk when another image capture does not match.**

In an analogous art, Swink discloses **warning the user to face the camera for another image capture when the image does not match the pre-stored image to a predetermined degree** (paragraph [0112]; paragraph [0110]; The user interface displays an error message to the user when the authentication credentials, such as a facial recognition, does not match the stored credentials, and prompts the user to enter the authentication credentials again)**; and**

**restricting use of the kiosk when another image capture does not match** (paragraph [0112]; If the maximum number of unsuccessful attempts is reached, analogous to another image capture not matching, the communication device is locked from further access).

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Swink's method of restricting use of a communication device after multiple unsuccessful attempts at entering authentication credentials in Rae and Hodge's call processing system requiring biometric authentication, since Swink's method provides additional security features in communications devices.

Application/Control Number: 13/088,883                                    Page 27
Art Unit: 2683

14.    Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae,

Hodge, and Swink as applied to claim 22 above, and further in view of Kenoyer (U.S.

Pub 2006/0259755).

        Regarding claim 23, it is interpreted and rejected for the same reasons set forth

in claim 5 above, with the additional limitations set forth in claim 12 above.


                            ***Response to Arguments***

15.    Applicant's arguments with respect to claims 7, 14, 19, and 22 have been

considered but are moot because the arguments do not apply to the present rejection.

16.    Applicant's arguments filed 7/26/2013 have been fully considered but they are

not persuasive.

        Regarding Applicant's arguments on page 9-10 that Rae does not teach or

suggest the user of the device is authenticated, the Examiner respectfully disagrees.  In

column 9, lines 10-29, Rae discloses the call management system 110 completing calls

between a party using any of one of the telephone terminals 141, visitation phones 143,

or other telephone terminals coupled to the network and another party, and soliciting

information such as a personal identification number from the parties, which includes

both the calling party and the called party.  In column 11, lines 57-65, Rae discloses the

validation system determines if the called party is authorized to receive calls from the

calling party.  The authorization of the called party is analogous to authorizing the user

of the device, since the calling party is attempting to reach the called party through a

Application/Control Number: 13/088,883                                          Page 28
Art Unit: 2683

device, discussed in col. 25 lines 6-13, and the called party is subject to authorization

from the system.  The solicitation of a personal identification number, wherein the user

being solicited may be the called party, is also analogous to authorizing the user of the

device, since soliciting a PIN inherently means that a particular PIN is required from the

called party.

Regarding Applicant's arguments on page 9-10 that Rae does not teach or

suggest the server recording and transmitting audio and video to a second kiosk located

in the visitation area, the Examiner respectfully disagrees.  In column 9, lines 10-29,

Rae discloses the call management system 110 completing calls between a party using

any of one of the telephone terminals 141 and visitation phones 143.  In column 25 lines

6-13, Rae discloses any user device with the same capabilities as what has already

been disclosed for the telephone terminals, including computers or video phones

coupled to the inmate call processing system.  Therefore, a video phone may be

coupled to the system in place of the visitation phones.  In column 10 lines 51-67, Rae

discloses the call recording system recording any exchange of data provided by the call.

It is obvious to one of ordinary skill in the art that for a video phone, the exchange of

data would encompass audio and video information that is recorded.  Column 10 lines

65-67 and column 11 lines 1-2 further discloses the content of a call being recorded for

retrieval or playback at a workstation, where the workstation is also a device coupled to

the call processing system.


*Conclusion*

Application/Control Number: 13/088,883                                      Page 29
Art Unit: 2683

17.     Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to LAURA NGUYEN whose telephone number is (571)270-

3785.  The examiner can normally be reached on Monday - Friday 9:00 AM - 5:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Brian Zimmerman can be reached on (571) 272-3059.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Application/Control Number: 13/088,883                                    Page 30
Art Unit: 2683

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/LAURA  NGUYEN/
Examiner, Art Unit 2683


/Brian A Zimmerman/
Supervisory Patent Examiner, Art Unit 2683

| *Notice of References Cited* | Application/Control No. 13/088,883 | Applicant(s)/Patent Under Reexamination TORGERSRUD ET AL. | |
|---|---|---|---|
| | Examiner LAURA NGUYEN | Art Unit 2683 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2002/0101512 A1 | 08-2002 | Klapman et al. | 348/207 |
| * | B | US-6,665,380 B1 | 12-2003 | Cree et al. | 379/88.25 |
| * | C | US-2004/0003079 A1 | 01-2004 | Aiu et al. | 709/225 |
| * | D | US-2006/0259755 A1 | 11-2006 | KENOYER, MICHAEL | 713/001 |
| * | E | US-2006/0285667 A1 | 12-2006 | Hodge, Stephen Lee | 379/142.05 |
| * | F | US-2008/0129816 A1 | 06-2008 | Mattila et al. | 348/14.08 |
| * | G | US-2010/0259500 A1 | 10-2010 | Kennedy, Peter | 345/173 |
| * | H | US-2010/0313276 A1 | 12-2010 | Banti et al. | 726/28 |
| * | I | US-2011/0047473 A1 | 02-2011 | Hanna et al. | 715/740 |
| * | J | US-2011/0088086 A1 | 04-2011 | Swink et al. | 726/7 |
| * | K | US-8,340,260 B1 | 12-2012 | Rae et al. | 379/189 |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20130923

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S87 | 0 | (inmate arrestee prison jail penal correctional) and (comissary same (education$3 religious) same (text audio video)) | US-PGPUB; USPAT | OR | ON | 2013/09/18 18:13 |
| S88 | 0 | (comissary same (education$3 religious) same (text audio video)) | US-PGPUB; USPAT | OR | ON | 2013/09/18 18:13 |
| S89 | 133 | (inmate arrestee prison jail penal correctional) and ((religious educational) with (material text audio video)) | US-PGPUB; USPAT | OR | ON | 2013/09/18 18:14 |
| S90 | 1 | ((12/814201) or (11/041431)).APP. | US-PGPUB; USPAT | OR | OFF | 2013/09/18 18:18 |
| S91 | 6 | ((religious educational) same (commissary)) | US-PGPUB; USPAT | OR | ON | 2013/09/18 18:23 |
| S92 | 8 | ((religious educational) same3 (commissary)) | US-PGPUB; USPAT | OR | ON | 2013/09/18 18:27 |
| S93 | 1081 | 340/5.52-5.53.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/18 18:42 |
| S94 | 43 | (warn$3 indicat$3 display$3) with (image) with (match) and S93 | US-PGPUB; USPAT | OR | ON | 2013/09/18 18:42 |
| S95 | 1283 | ((biometric tracking) same (face facial)) same3 ((warn$3 indicat$3) with (match authenticat$3 authoriz$5)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 12:46 |
| S96 | 1503 | ((biometric tracking) same (face facial)) same3 ((warn$3 indicat$3 notify notification alert$3) with (match authenticat$3 authoriz$5)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 12:46 |
| S97 | 1081 | 340/5.52-5.53.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 12:47 |
| S98 | 5831 | 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 12:47 |
| S99 | 63 | S96 and S97 | US-PGPUB; USPAT | OR | ON | 2013/09/19 12:47 |
| S100 | 17 | S96 and S98 | US-PGPUB; USPAT | OR | ON | 2013/09/19 12:47 |
| S101 | 697 | ((biometric tracking) same (face facial)) same3 (((warn$3 indicat$3 notify notification alert$3) with (match authenticat$3 authoriz$5)) same (display LED LCD device)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:17 |
| S102 | 1081 | 340/5.52-5.53.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:17 |
| S103 | 37 | S101 and S102 | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:19 |
| S104 | 27 | ((biometric tracking) same (face facial)) same3 (((warn$3 indicat$3 notify notification alert$3) with (match authenticat$3 authoriz$5) with (failure unsuccessful)) same (display LED LCD device)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:19 |
| S105 | 5831 | 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:28 |
| S106 | 7 | ((face facial) near5 (tracking)) same3 ((warn$3 notify$3 | US- | OR | ON | 2013/09/19 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | notification indicat$3) with (present absent)) | US-PGPUB; USPAT | | | 15:36 |
| S107 | 170 | ((face facial) near5 (tracking)) same3 ((warn$3 notify$3 notification indicat$3) with (present absent presence absence)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:37 |
| S108 | 7 | S107 and S105 | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:37 |
| S109 | 13865 | ((face facial)) same3 ((warn$3 notify$3 notification indicat$3) with (present absent presence absence)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:42 |
| S110 | 15 | S109 and S102 | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:43 |
| S111 | 75 | S109 and S105 | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:43 |
| S112 | 1549 | ((face facial) with (warn$3 notify$3 notification indicat$3) with (present absent presence absence)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:43 |
| S113 | 16 | S112 and S105 | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:44 |
| S114 | 6 | S112 and S102 | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:48 |
| S115 | 28 | ((face facial) with (warn$3 notify$3 notification indicat$3) with (present absent presence absence)) same2 ((stop$4 end$3 terminat$3 discontinu$3) with (video transmission communication)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 15:54 |
| S116 | 326 | 348/14.16.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:00 |
| S117 | 43165 | ((warn$3 notify$3 notification indicat$3) with (present absent presence absence)) and ((stop$4 end$3 terminat$3 discontinu$3) with (video transmission communication)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:00 |
| S118 | 7 | S117 and S116 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:01 |
| S119 | 1 | ((warn$3 notify$3 notification indicat$3) with (present absent presence absence)) and ((stop$4 end$3 terminat$3 discontinu$3) with (video transmission communication)) and "20020101512".pn. | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:02 |
| S120 | 1549 | ((warn$3 notify$3 notification indicat$3) with (present absent presence absence) with (face facial)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:05 |
| S121 | 6 | S120 and S102 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:06 |
| S122 | 5 | ((stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with video) same ((absen$2 presen$2) with (face facial)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:10 |
| S123 | 139 | ((stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with video) same ((absen$2 presen$2) with (user)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:12 |
| S124 | 0 | S123 and S102 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:12 |
| S125 | 6 | S123 and S105 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:12 |
| S126 | 145 | (auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3)) same ((absen$2 presen$2) with (user)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:17 |
| S127 | 2 | S126 and S105 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:17 |
| S128 | 0 | S126 and S116 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:17 |

| S129 | 2 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with video) same ((absen$2 presen$2) with (user)) | | OR | ON | 2013/09/19 16:19 |
|---|---|---|---|---|---|---|---|
| S130 | 14 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with video) same ((absen$2 presen$2)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:19 |
| S131 | 6 | ((face facial) with (warn$3 notify$3 notification indicat$3) with (present absent presence absence)) and S102 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:22 |
| S132 | 2077 | 713/186.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:24 |
| S133 | 5064 | 382/115,118.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:25 |
| S134 | 1549 | ((face facial) with (warn$3 notify$3 notification indicat$3) with (present absent presence absence)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:25 |
| S135 | 0 | S126 and S132 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:25 |
| S136 | 0 | S126 and S133 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:25 |
| S137 | 5 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3) with (video conference teleconference meeting)) same ((absen$2 presen$2) with (user)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:26 |
| S138 | 145 | ((auto automatically) with (stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3)) same ((absen$2 presen$2) with (user)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:27 |
| S139 | 0 | S138 and S132 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:27 |
| S140 | 0 | S138 and S133 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:27 |
| S141 | 675 | 725/10,30.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:29 |
| S142 | 0 | S138 and S141 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:29 |
| S143 | 3061 | ((stop$4 end$3 terminat$3 discontinu$3) with (transmission transmit$4 communicat$3 send$3)) same ((absen$2 presen$2) with (user)) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:29 |
| S144 | 6 | S143 and S141 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:30 |
| S145 | 6 | (stop$4 end$3 terminat$3 discontinu$3 ceas$3) with (transmission transmit$4 communicat$3 send$3)) same ((absen$2 presen$2) with (user)) and S141 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:33 |
| S146 | 1 | S145 and (face facial) | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:33 |
| S147 | 6096 | 713/168.ccls. | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:34 |
| S148 | 26 | S143 and S147 | US-PGPUB; USPAT | OR | ON | 2013/09/19 16:34 |
| S149 | 2 | (("20090052859") or ("20070133603")).PN. | US-PGPUB; USPAT | OR | OFF | 2013/09/19 16:37 |
| S150 | 2 | (11/855309).APP. | US-PGPUB; USPAT | OR | OFF | 2013/09/19 16:40 |
| S151 | 13 | (inmate arrestee prison jail penal correctional) and (commissary same3 (education$3 religious)) | US-PGPUB; | OR | ON | 2013/09/19 16:42 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | USPAT | | | |
| S152 | 4 | ((10/135878) or (10/135883) or (10/190315) or (10/360442)).APP. | US-PGPUB; USPAT | OR | OFF | 2013/09/23 12:37 |
| S153 | 0 | (validat$3 authoriz$3 authenticat$3) with (identity) and S152 | US-PGPUB; USPAT | OR | ON | 2013/09/23 12:38 |
| S154 | 0 | ((10/135878) or (10/360442)).APP. | US-PGPUB; USPAT | OR | OFF | 2013/09/23 12:39 |
| S155 | 1 | ("5,247,569").PN. | US-PGPUB; USPAT | OR | OFF | 2013/09/23 15:24 |

**EAST Search History (Interference)**

< This search history is empty>

**9/23/2013 4:39:45 PM**
**C:\ Users\ LNGUYEN8\ Documents\ EAST\ Workspaces\ 13088883_Kiosk to authenticate users using login info and biometrics in order to provide authorized services and content to the user.wsp**

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13088883 | O'NEIL ET AL. |
| | Examiner | Art Unit |
| | LAURA NGUYEN | 2683 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant      ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/18/2013 | 09/23/2013 | | | | | | | |
| | 1 | ✓ | ✓ | | | | | | | |
| | 2 | ✓ | - | | | | | | | |
| | 3 | ✓ | ✓ | | | | | | | |
| | 4 | ✓ | ✓ | | | | | | | |
| | 5 | ✓ | ✓ | | | | | | | |
| | 6 | ✓ | ✓ | | | | | | | |
| | 7 | ✓ | ✓ | | | | | | | |
| | 8 | ✓ | ✓ | | | | | | | |
| | 9 | ✓ | ✓ | | | | | | | |
| | 10 | ✓ | ✓ | | | | | | | |
| | 11 | ✓ | ✓ | | | | | | | |
| | 12 | ✓ | ✓ | | | | | | | |
| | 13 | ✓ | ✓ | | | | | | | |
| | 14 | ✓ | ✓ | | | | | | | |
| | 15 | ✓ | ✓ | | | | | | | |
| | 16 | ✓ | ✓ | | | | | | | |
| | 17 | ✓ | ✓ | | | | | | | |
| | 18 | ✓ | ✓ | | | | | | | |
| | 19 | ✓ | ✓ | | | | | | | |
| | 20 | ✓ | - | | | | | | | |
| | 21 | ✓ | ✓ | | | | | | | |
| | 22 | ✓ | ✓ | | | | | | | |
| | 23 | ✓ | ✓ | | | | | | | |
| | 24 | ✓ | ✓ | | | | | | | |
| | 25 | ✓ | ✓ | | | | | | | |
| | 26 | ✓ | ✓ | | | | | | | |
| | 27 | ✓ | ✓ | | | | | | | |
| | 28 | ✓ | ✓ | | | | | | | |
| | 29 | ✓ | ✓ | | | | | | | |
| | 30 | ✓ | ✓ | | | | | | | |
| | 31 | ✓ | ✓ | | | | | | | |
| | 32 | ✓ | ✓ | | | | | | | |
| | 33 | ✓ | ✓ | | | | | | | |
| | 34 | ✓ | ✓ | | | | | | | |
| | 35 | ✓ | ✓ | | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13088883 | O'NEIL ET AL. |
| | **Examiner** | **Art Unit** |
| | LAURA NGUYEN | 2683 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 340 | 5.51-5.54,5.8,5.81-5.85,5.2,5.21,5.28,5.31 | 9/23/2013 | LN |
| 725 | 9,10,12,14,30,98,99 | 9/23/2013 | LN |
| 382 | 115,118 | 9/23/2013 | LN |
| 348 | 14.01-14.16 | 9/23/2013 | LN |
| 345 | 173 | 9/23/2013 | LN |
| 713 | 168,186 | 9/23/2013 | LN |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| EAST Search | 4/18/2013 | LN |
| Updated EAST Search | 9/23/2013 | LN |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| /L.N./ Examiner.Art Unit 2683 | |
|---|---|

Docket No.: P5789.0006/P006
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Kevin O'Neil et al.

Application No.: 13/088,883                   Confirmation No.: 9388

Filed: April 18, 2011                         Art Unit: 2683

For:  INTERACTIVE AUDIO/VIDEO SYSTEM AND      Examiner: L.N. Nguyen
      DEVICE FOR USE IN A SECURE FACILITY

## <u>AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION</u>

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

### INTRODUCTORY COMMENTS

In response to the Office Action dated April 26, 2013, please amend the above-identified

U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2

of this paper.

**Remarks** begin on page 9 of this paper.

DSMDB-3183869v1

Application No. 13/088,883                                        Docket No.: P5789.0006/P006
Reply to Office Action of April 26, 2013

## AMENDMENTS TO THE CLAIMS

1.      (Currently amended)   A system for providing services to a secure facility, the system comprising:

a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

a server that communicates with the kiosk via a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the network connection[[,]];

wherein the server records the audio and video and transmits the audio and video to a destination, and;

wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification; and

wherein the destination is a device communicating with the server, and the server is configured to authenticate a user of the device.

2.      (Canceled)

3.      (Original)      The system of claim 1, wherein the destination is a second kiosk located in a visitation area of a second secure facility.

4.      (Currently amended)   The system of claim 1, further comprising:

a second kiosk located in a visitation area of the secure facility; and

a local server located at the secure facility;

2

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area[[,]]; and

wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5.      (Original)      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video.

6.      (Original)      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7.      (Currently amended)   The system of claim 1, wherein during a singular communications session, the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8.      (Previously presented)      The system of claim 1, wherein the kiosk accepts anonymous messages input by the user without requiring the user to enter the log in information.

9.      (Original)      The system of claim 1, wherein the kiosk is configured to allow the user to reserve use of the kiosk by receiving a user request for use at a certain time and checking permissions related to the user that are stored on the server, and, when the user request is granted, the kiosk does not allow anyone other than the user to log in at the certain time.

10.     (Original)      The system of claim 9, wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification messages alerting the second user that the second user will be logged off at the certain time due to a reservation.

3

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

11.     (Previously presented)       The system of claim 1, wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages.

12.     (Original)       The system of claim 11, wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages.

13.     (Previously presented)       The system of claim 1, wherein the server is configured to receive an incoming call for the user from a third party caller, determine whether the user has permission to receive incoming calls, if the user has permission, transmit the incoming call to the kiosk and at least a second kiosk, and

wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input the log in information.

14.     (Currently amended)   The system of claim 1, wherein the kiosk is configured to provide the user with at least ~~one~~ two of: access to audio, video, and text of educational and religious materials stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.

15.     (Previously presented)       The system of claim 1, wherein the kiosk is configured to connect to the Internet and provide access to authorized Internet web pages, and the kiosk is configured to log all visited Internet web pages and to transmit logs to the server.

16.     (Original)       The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

DSMDB-3183869v1

17.    (Original)    The system of claim 1, wherein the kiosk is configured to receive voice or video messages from a server, and to display a notification of an available voice or video message on an idle screen of the kiosk.

18.    (Original)    The system of claim 1, wherein the kiosk is configured to receive a visitation request from a server, and to display a notification of an available visitation request on an idle screen of the kiosk.

19.    (Currently amended)   A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a speaker connected to the bus;

a touchscreen display connected to the bus; and

a network interface connected to the bus for communicating with a server via a network connection,

wherein the kiosk authenticates a user by receiving personal log in information and comparing the received personal log in information against a known personal log in information associated with the user, verifies the user's identity using a biometric verification, records audio and video communications and transmits the audio and video communications to the server, and provides access to internet web pages via a web proxy, and

5

Application No. 13/088,883                                    Docket No.: P5789.0006/P006
Reply to Office Action of April 26, 2013

wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, warn the user to face the camera if the face is not present in the field of view of the camera and stop transmitting video if the face is still not present.

20.    (Canceled)

21.    (Original)    The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational and religious materials; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.    (Currently amended)   A method of monitoring use of an interactive kiosk, comprising:

using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk;

transmitting the image to a server;

comparing, at the server, the image with a pre-stored image of the user of the kiosk; ~~and~~

warning the user to face the camera for another image capture when the image does not match the pre-stored image to a predetermined degree; and

restricting use of the kiosk when the another image capture does not match the pre-stored image to a predetermined degree.

23.    (Original)    The method of claim 22, further comprising:

periodically extracting a frame of the video information during use of the kiosk to transmit video information;

determining whether the frame includes an image of a human face; and restricting transmission of the video information when the frame does not include an image of a face.

6

DSMDB-3183869v1

Application No. 13/088,883                                        Docket No.: P5789.0006/P006
Reply to Office Action of April 26, 2013

24.     (Previously presented)        The system of claim 1, wherein the
network is the Internet.

25.     (Previously presented)        The system of claim 15, wherein the kiosk is
configured to provide access to Internet web pages via a proxy server.

26.     (Previously presented)        The system of claim 1, wherein the log
in information is a personal identification number.

27.     (Previously presented)        The system of claim 19, wherein the personal log in
information is a personal identification number.

28.     (Currently amended)   A system for providing services to a secure facility, the system
comprising:

a plurality of kiosks located at a secure facility, each kiosk comprising a processor, display,
speaker, and microphone; and

a server that communicates with the kiosks and a device of an outside party via one or more
network connections, the server comprising a server processor, a network interface unit, and a
computer memory;

wherein the server is configured to receive a communications request from the device of the
outside party and, in response to the received communications request, identify a kiosk in a vicinity
of a requested party and transmit a message to the kiosk, ~~and~~

wherein the kiosk is configured to receive the message, and, upon receipt of the message,
display an incoming communications request message and initiate a login procedure, and

<u>wherein the server is configured to authenticate a user of the device.</u>

29.     (Previously presented)        The system of claim 28, wherein the communications
request is a request to initiate a voice call or a video call.

7

Application No. 13/088,883
Reply to Office Action of April 26, 2013

Docket No.: P5789.0006/P006

30.     (Previously presented)        The system of claim 28, wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server.

31.     (Previously presented)        The system of claim 28, wherein the kiosk is configured to play an alert tone or audio message upon receiving the message.

32.     (Previously presented)        The system of claim 1, wherein the biometric verification comprises a facial authentication via the camera.

33.     (Previously presented)        The system of claim 1, wherein the biometric verification comprises a voice authentication via the microphone.

34.     (Previously presented)        The kiosk of claim 19, wherein the biometric verification comprises a facial authentication of an image captured by the camera.

35.     (Previously presented)        The kiosk of claim 19, wherein the biometric verification comprises a voice authentication of an audible phrase recorded using the microphone.

DSMDB-3183869v1

## REMARKS

Claims 1, 3-19 and 21-35 are pending in this application. Claims 1, 4, 7, 14, 19, 22 and 28 have been amended, and claims 2 and 20 have been canceled, without prejudice. Applicant reserves the right to pursue the original claims and other claims in this and other applications. In view of the amendments to the claims and the remarks below, Applicant respectfully requests that the rejections be withdrawn and the claim allowed.

Claim 4 stands objected to because of informalities. Claim 4 has been amended to add punctuation, correcting the informalities. Reconsideration is respectfully requested.

Claims 1-4, 9, 11, 14-17, 24-26, and 32-33 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae (U.S. Pat 8,340,260). The rejection is respectfully traversed.

Claim 1 has been amended to include features similar to those recited in former claim 2. Claim 1, as amended, describes a system for providing services to a secure facility and recites, among other things, "a kiosk located at a secure facility" and "a server that communicates with the kiosk via a network connection." The kiosk is "configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the network connection" and "the server records the audio and video and transmits the audio and video to a destination." Importantly, "the destination is a device communicating with the server, and the server is configured to authenticate a user of the device." In the claim 1 system, the user of the kiosk is authenticated with log in information and biometrics, and the user of the destination device is also authenticated by the server.

Rae does not teach or suggest a server transmitting the audio and video to a destination device wherein "the server is configured to authenticate a user of the device" (emphasis added). Rae, at column 25, line 6-13 (cited by the Office Action as teaching features formerly recited in claim 2), describes that the system can be used with any type of user device, such as a computer, cell phone, or PDA. At column 11, lines 57-65, Rae describes that a validation system 113 may be used to verify that the called party consents to receiving calls or is authorized to receive calls from

9

the calling party.  In other words, the Rae system can determine if the party that the caller is attempting to reach is one that is allowed to receive calls from them – it determines if the destination number is an authorized one.  Rae, however, does not disclose that <u>the server will actually verify that the called party is actually the correct person</u>.  Accordingly, Rae does not disclose a server that is configured to "authenticate <u>a user of the device</u>" that is at the destination as recited in claim 1.

For at least these reasons, claim 1 is allowable.  Claims 3-4, 9, 11, 14-17, 24-26, and 32-33 depend from claim 1 or include similar limitations and are allowable for at least the same reasons.

Claim 4 is allowable for an additional reason, as well.  Claim 4 recites "a second kiosk located in a visitation area of the secure facility" wherein communications intended for the second kiosk are transmitted to a local server by the first kiosk.  "[T]he <u>local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area</u>" (emphasis added).  Importantly, the audio and video are both recorded <u>and</u> transmitted by the local server.  Rae does not describe a local server that will both transmit to a second kiosk in a visitation area, and also record the audio and video information.  Accordingly, claim 4 is allowable for at least this additional reason.

Claim 14 is allowable for additional reasons, as well.  Claim 14, as amended, recites that "the kiosk is configured to provide the user with at least two of: access to audio, video, and text of educational and religious materials stored on the server and/or the kiosk, and the ability to order items from a list of commissary items."  Rae, at column 20, lines 19-20, describes using the call system to access a commissary account, but it does not describe a kiosk configured to perform two of the above-recited functions.  Accordingly, claim 14 is allowable for at least this additional reason.

Claim 5 stands rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae in view of Kenoyer (U.S. Pub 2006/0259755).  The rejection is respectfully traversed.

Claim 5 depends from claim 1 and includes all limitations of claim 1.  As described above, claim 1 is allowable over Rae, and Kenoyer does not cure the deficiencies of Rae with respect to claim 1.  Kenoyer is merely relied upon as disclosing the extraction of a frame of video to determine if a face is present in the frame.  Among other things, Kenoyer does not teach or suggest that the destination "is a device communicating with the server, and the server is configured to authenticate a user of the device."  Accordingly, claim 5 is allowable for at least the same reasons that claim 1 is allowable.

Claims 6, 7, and 22 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae in view of Hodge (U.S. Pub 2006/0285667).  The rejection is respectfully traversed.

Claims 6 and 7 depend from claim 1 and include all limitations of claim 1.  As described above, claim 1 is allowable over Rae, and Hodge does not cure the deficiencies of Rae with respect to claim 1.  Hodge is merely relied upon as disclosing a server storing biometric data for authentication.  Among other things, Hodge does not teach or suggest that the destination "is a device communicating with the server, and the server is configured to authenticate a user of the device" – Hodge merely authenticates a caller.  Accordingly, claims 6 and 7 are allowable for at least the same reasons that claim 1 is allowable.

Claim 7 is allowable for additional reasons, as well.  Claim 7, as amended, recites that "during a singular communications session, the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user."  In other words, the system will re-authenticate a user during a communication session to make sure, for example, that the user hasn't switched places with another inmate mid-call to allow the other inmate to make calls he would not be authorized to make.  This is not described in Rae, which merely describes performing authentication each time a user makes a call. *See* Rae col. 16, ll. 13-27; col. 19, ll. 24-28.  This is not described in Hodge, either, which is merely relied upon as disclosing the transmission of a frame to a server that performs the authentication.  Accordingly, claim 7 is allowable for at least this additional reason.

DSMDB-3183869v1

Claim 22, as amended, describes method of monitoring use of an interactive kiosk and recites "using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk" and "comparing, at the server, the image with a pre-stored image of the user of the kiosk." The method further comprises "warning the user to face the camera for another image capture when the image does not match the pre-stored image to a predetermined degree; and restricting use of the kiosk when the another image capture does not match the pre-stored image to a predetermined degree." Accordingly, the method performs two actions when the captured image does not match the pre-stored image: (1) it warns the user to face the camera for a second image capture and (2) if the second image capture does not match the pre-stored image, then use of the kiosk is restricted.

This feature is described, for example, in paragraph [0086] of the specification:

[0086]  The facial detection software may also periodically pass images to a facial verification system.  The facial verification system compares a detected face image with a face image stored in a database.  If the detected image does not match the pre-stored image, a warning is displayed to prompt the resident to face the camera so that a second image can be captured.  If the second image does not match or a face is not detected, the account will be logged off the system.  This can be logged as a violation at the processing center. The facial verification ensures that the logged-in resident has not allowed another resident to use the account after logging in.  The facial detection software may also detect when a second face is present in the frame, and may blur or disconnect a conference when a second face is present.

Hodge is relied upon by the Office Action (at 11) as disclosing the transmission of an image to a server for comparison. Hodge, however, does not teach or suggest the claimed actions that are performed if an image does not match. Hodge does not disclose warning a user to face the camera for a second image capture, nor does it disclose restricting access when a second image capture does not match a pre-stored image. Rae does not teach or suggest these features, either, and the Office Action does not suggest otherwise. Moreover, there would be no apparent reason to

12

Application No. 13/088,883                                    Docket No.: P5789.0006/P006
Reply to Office Action of April 26, 2013

modify the references to provide these features, absent the use of the present application as a roadmap. Accordingly, claim 22 is allowable for at least these reasons.

Claim 8 stands rejected under 35 U.S.C. 103(a) as being unpatentable over Rae in view of Cree (U.S. Pat. 6,665,380). The rejection is respectfully traversed.

Claim 8 depends from claim 1 and includes all limitations of claim 1. As described above, claim 1 is allowable over Rae, and Cree does not cure the deficiencies of Rae with respect to claim 1. Cree is merely relied upon as disclosing accepting input without requiring a user to enter log in information. Among other things, Cree does not teach or suggest that the destination "is a device communicating with the server, and the server is configured to authenticate a user of the device." Accordingly, claim 8 is allowable for at least the same reasons that claim 1 is allowable.

Claim 10 stands rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae in view of Aiu (U.S. Pub. 2004/003079). The rejection is respectfully traversed.

Claim 10 depends from claim 1 and includes all limitations of claim 1. As described above, claim 1 is allowable over Rae, and Aiu does not cure the deficiencies of Rae with respect to claim 1. Aiu is merely relied upon as disclosing a log off notification. Among other things, Aiu does not teach or suggest that the destination "is a device communicating with the server, and the server is configured to authenticate a user of the device." Accordingly, claim 10 is allowable for at least the same reasons that claim 1 is allowable.

Claim 12 stands rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae in view of Banti (U.S. Pub. 2010/0313276). The rejection is respectfully traversed.

Claim 12 depends from claim 1 and includes all limitations of claim 1. As described above, claim 1 is allowable over Rae, and Banti does not cure the deficiencies of Rae with respect to claim 1. Banti is merely relied upon as disclosing preventing a restricted action such as forwarding a message. Among other things, Banti does not teach or suggest that the destination "is a device

13

communicating with the server, and the server is configured to authenticate a user of the device."
Accordingly, claim 12 is allowable for similar reasons that claim 1 is allowable.

Claims 13, 18, and 28-31 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae in view of Cree and Mattila (U.S. Pub 2008/0129816). The rejection is respectfully traversed.

Claims 13, 18, and 28-31 depend from claim 1 or include similar limitations as claim 1. As described above, claim 1 is allowable over Rae and Cree, and Mattila does not cure the deficiencies of those references with respect to claim 1. Mattila is merely relied upon as disclosing displaying a screen notification for a user. Among other things, Mattila does not teach or suggest that the destination "is a device communicating with the server, and the server is configured to authenticate a user of the device" (as recited in claim 1) or "server is configured to authenticate a user of the device" (as recited in claim 28). Accordingly, claims 13, 18, and 28-31 are allowable for similar reasons that claim 1 is allowable.

Claims 19, 21, 27, 34, and 35 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Rae in view of Kennedy (U.S. Pub 2010/0256500). The rejection is respectfully traversed.

Claim 19, as amended, describes method of monitoring use of an interactive kiosk and recites that "the kiosk is configured to detect when a face is not present in the field of view of the camera, warn the user to face the camera if the face is not present in the field of view of the camera and stop transmitting video if the face is still not present." This feature is described, for example, in paragraph [0086] of the specification:

> [0086]  The facial detection software may also periodically pass images to a facial verification system. The facial verification system compares a detected face image with a face image stored in a database. If the detected image does not match the pre-stored image, a warning is displayed to prompt the resident to face the camera so that a second image can be captured. If the second image does not

Application No. 13/088,883                                    Docket No.: P5789.0006/P006
Reply to Office Action of April 26, 2013

> match or a face is not detected, the account will be logged off the
> system. This can be logged as a violation at the processing center.
> The facial verification ensures that the logged-in resident has not
> allowed another resident to use the account after logging in. The
> facial detection software may also detect when a second face is
> present in the frame, and may blur or disconnect a conference when a
> second face is present.

This feature is not disclosed in Rae or Kennedy (relied upon merely as disclosing a touchscreen), and the Office Action does not suggest otherwise. In reference to former claim 20, Kenoyer is relied upon by the Office Action (at 9, 22) as disclosing periodically checking for a face in paragraphs [0041] and [0044]. Kenoyer describes detecting a face and forwarding the detected facial image to the biometrics generation module. Kenoyer at [0041]. It also describes that a user can be continuously authenticated to ensure that the user in front of the system continues to be the same user. It does not, however, disclose the claimed features of (1) "warn[ing] the user to face the camera if the face is not present in the field of view" or (2) "stop transmitting video if the face is still not present." By warning users, the claimed system avoids cutting communications when a user has merely shifted position, for example, and by cutting off video if the face is still not present, the system ensures that unauthorized access is prevented. None of the cited references disclose taking such measures when a face is not present, and there would be no apparent reason to modify the references to provide this feature, absent the use of the present application as a roadmap.

For at least these reasons, claim 19 is allowable. Claims 21, 27, 34, and 35 depend from claim 19 and are allowable for at least the same reasons.

Claim 20 stands rejected under 35 U.S.C. 103(a) as being unpatentable over Rae in view of Kennedy and Kenoyer (U.S. Pub 2006/0259755). Claim 20 has been canceled, obviating the rejection.

Claim 23 stands rejected under 35 U.S.C. 103(a) as being unpatentable over Rae in view of Hodge and Kenoyer. The rejection is respectfully traversed.

15

Application No. 13/088,883                                    Docket No.: P5789.0006/P006
Reply to Office Action of April 26, 2013

Claim 23 depends from claim 22 and includes all limitations of claim 22.  As described above, claim 22 is allowable over Rae and Hodge, and Kenoyer does not cure the deficiencies of Rae with respect to claim 22.  As described above, Kenoyer does not disclose, among other things, "warning the user to face the camera for another image capture when the image does not match the pre-stored image to a predetermined degree; and restricting use of the kiosk when the another image capture does not match the pre-stored image to a predetermined degree."  Accordingly, claim 23 is allowable for at least the same reasons that claim 22 is allowable.

In view of the above, Applicant believes the pending application is in condition for allowance.

Dated:  July 26, 2013                         Respectfully submitted,

                                              By _____
                                              Mark J. Thronson
                                                  Registration No.: 33,082
                                              Jonathan L. Falkler
                                                  Registration No.: 62,115
                                              DICKSTEIN SHAPIRO LLP
                                              1825 Eye Street, NW
                                              Washington, DC  20006-5403
                                              (202) 420-2200
                                              Attorneys for Applicant

16

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 16425749 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard Torgersrud |
| **Customer Number:** | 113003 |
| **Filer:** | Stephen A. Soffen/Monick Lewis |
| **Filer Authorized By:** | Stephen A. Soffen |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 26-JUL-2013 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 12:30:31 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment/Req. Reconsideration-After Non-Final Reject | P57890006.pdf | 705425 <br> 4a18279b2d64fc9a65412059005d1cda652033d6 | no | 16 |

| |
|---|
| Warnings: |
| Information: |

Total Files Size (in bytes):                                    705425

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 |

**CONFIRMATION NO. 9388**

113003
Dickstein Shapiro LLP (Telmate)
1825 Eye Street NW
Washington, DC 20006

**POA ACCEPTANCE LETTER**


*OC000000061040305*

Date Mailed: 05/13/2013

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 05/01/2013.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/zabraha/
_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 |

**CONFIRMATION NO. 9388**

24998
DICKSTEIN SHAPIRO LLP
1825 EYE STREET NW
Washington, DC 20006-5403

**POWER OF ATTORNEY NOTICE**


*OC000000061040270*

Date Mailed: 05/13/2013

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 05/01/2013.

- The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

/zabraha/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

PTO/AIA/82A (07-12)
Approved for use through 11/30/2014. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B or equivalent) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5. If the Power of Attorney by Applicant form is not accompanied by this transmittal form or an equivalent, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | 13/088,883 |
| Filing Date | April 18, 2011 |
| First Named Inventor | Richard Torgersrud |
| Title | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| Art Unit | 2683 |
| Examiner Name | Laura N. Nguyen |
| Attorney Docket Number | P5789.0006/P006 |

### SIGNATURE of Applicant or Patent Practitioner

| Signature | | Date | 5-1-13 |
|---|---|---|---|
| Name | Mark J. Thronson | Telephone | (202) 420-2200 |
| Registration Number | 33,082 | | |

NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications.

☐   *Total of ___1___ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

1

PTO/SB/80 (11-08)
Approved for use through 11/30/2011. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO

I hereby revoke all previous powers of attorney given in the application identified in the attached statement under 37 CFR 3.73(b).

I hereby appoint:

[✓] Practitioners associated with the Customer Number | 113003

OR

[ ] Practitioner(s) named below (if more than ten patent practitioners are to be named, then a customer number must be used):

| Name | Registration Number | Name | Registration Number |
|------|---------------------|------|---------------------|
|      |                     |      |                     |
|      |                     |      |                     |
|      |                     |      |                     |
|      |                     |      |                     |

as attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO) in connection with any and all patent applications assigned only to the undersigned according to the USPTO assignment records or assignments documents attached to this form in accordance with 37 CFR 3.73(b).

Please change the correspondence address for the application identified in the attached statement under 37 CFR 3.73(b) to:

[✓] The address associated with Customer Number | 113003

OR

[ ] Firm or Individual Name

Address

| City | | State | | Zip |
|------|--|-------|--|-----|
| Country | | | | |
| Telephone | | | E mail | |

Assignee Name and Address:

Palmate LLC
264 Front Street, Second Floor
San Francisco, CA 94111

A copy of this form, together with a statement under 37 CFR 3.73(b) (Form PTO/SB/96 or equivalent) is required to be filed in each application in which this form is used. The statement under 37 CFR 3.73(b) may be completed by one of the practitioners appointed in this form if the appointed practitioner is authorized to act on behalf of the assignee, and must identify the application in which this Power of Attorney is to be filed.

## SIGNATURE of Assignee of Record

The individual whose signature and title is supplied below is authorized to act on behalf of the assignee

| Signature | | Date | April 26, 2013 |
|-----------|--|------|----------------|
| Name | Scott A. Lam | Telephone | +1 415 360 4323 |
| Title | General Counsel | | |

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

Applicant/Patent Owner:   TELMATE, LLC

Application No./Patent No.:   13/088,883        Filed/Issue Date:   April 18, 2011

Titled:   INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

_____TELMATE, LLC_____, a _____Corporation_____
(Name of Assignee)              (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [X] The assignee of the entire right, title, and interest.

2. [ ] An assignee of less than the entire right, title, and interest (check applicable box):

   [ ] (The extent (by percentage) of its ownership interest is _____%). Additional Statement(s) by the owners holding the balance of the interest **must be submitted** to account for 100% of the ownership interest.

   [ ] There are unspecified percentages of ownership. The other parties, including inventors, who together own the entire right, title and interest are:

   [                                                                    ]

   Additional Statement(s) by the owner(s) holding the balance of the interest **must be submitted** to account for the entire right, title, and interest.

3. [ ] The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

   [                                                                    ]

   Additional Statement(s) by the owner(s) holding the balance of the interest **must be submitted** to account for the entire right, title, and interest.

4. [ ] The recipient, via a court proceeding or the like (e.g., bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made). The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2, or 3 above (not option 4) is evidence by either (choose **one** of options A or B below):

A. [X] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel   026144  ,
Frame   0452  , or for which a copy thereof is attached.

B. [ ] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

   1. From _____ To: _____
   The document was recorded in the United States Patent and Trademark Office at
   Reel _____ , Frame _____ , or for which a copy thereof is attached.

   2. From _____ To: _____
   The document was recorded in the United States Patent and Trademark Office at
   Reel _____ , Frame _____ , or for which a copy thereof is attached.

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

3. From: _____ To: _____
   The document was recorded in the United States Patent and Trademark Office at
   Reel _____ , Frame _____ , or for which a copy thereof is attached.

4. From: _____ To: _____
   The document was recorded in the United States Patent and Trademark Office at
   Reel _____ , Frame _____ , or for which a copy thereof is attached.

5. From: _____ To: _____
   The document was recorded in the United States Patent and Trademark Office at
   Reel _____ , Frame _____ , or for which a copy thereof is attached.

6. From: _____ To: _____
   The document was recorded in the United States Patent and Trademark Office at
   Reel _____ , Frame _____ , or for which a copy thereof is attached.

[ ] Additional documents in the chain of title are listed on a supplemental sheet(s).

[x] As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

[NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

Signature _____         Date   5-1-13

Mark J. Thronson                          Attorney for Assignee
Printed or Typed Name                     Title or Registration Number   #33,082

[Page 2 of 2]

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 15666925 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard Torgersrud |
| **Customer Number:** | 24998 |
| **Filer:** | Stephen A. Soffen/Cheryl deLopez |
| **Filer Authorized By:** | Stephen A. Soffen |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 01-MAY-2013 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 16:51:15 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | p006.pdf | 2068207<br>cb59da7119164 3f2e52ec73b91a51ff7f730 de40 | yes | 4 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Power of Attorney | 1 | 2 |
| Assignee showing of ownership per 37 CFR 3.73. | 3 | 4 |

| Warnings: | |
|---|---|
| Information: | |
| **Total Files Size (in bytes):** | 2068207 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 | 9388 |

24998         7590         04/26/2013
DICKSTEIN SHAPIRO LLP
1825 EYE STREET NW
Washington, DC 20006-5403

| EXAMINER |
|---|
| NGUYEN, LAURA N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2683 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/26/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 13/088,883 | O'NEIL ET AL. |
| | **Examiner** | **Art Unit** | **AIA (First Inventor to File) Status** |
| | LAURA NGUYEN | 2683 | No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>3 February 2012</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**   2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

5) ☒ Claim(s) <u>1-35</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) <u>1-35</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☒ The drawing(s) filed on <u>4/18/2011</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

   a) ☐ All   b) ☐ Some *   c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
   * See the attached detailed Office action for a list of the certified copies not received.

**Interim copies:**

   a) ☐ All   b) ☐ Some   c) ☐ None of the:   Interim copies of the priority documents have been received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 13/088,883 Page 2
Art Unit: 2683

## DETAILED ACTION

### *Claim Objections*

1.      Claim 4 is objected to because of the following informalities:  Typo after the
limitation "a local server located at the secure facility" where punctuation is absent.
Appropriate correction is suggested.

### *Claim Rejections - 35 USC § 103*

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all
obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

3.      Claims 1-4, 9, 11, 14-17, 24-26, and 32-33 are rejected under 35 U.S.C. 103(a)
as being unpatentable over Rae (U.S. Pat 8,340,260).

Regarding claim 1, Rae discloses **a system for providing services to a secure**
**facility** (col. 6 line 52-65; The call processing system got prisons, nursing homes,
camps, dormitories)**, the system comprising:**

**a kiosk located at a secure facility, the kiosk comprising a processor,**
**display, speaker, microphone, and a camera** (Figure 1 element 141; col. 7 line 3-16;
col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminal 141, where speakers are
an inherent component of a telephone.  A camera and microphone may be placed at the
terminal for biometric authentication or general use.  In an alternative embodiment, the

Application/Control Number: 13/088,883                                   Page 3
Art Unit: 2683

system may also be implemented with video phones and computers.  At the time of

invention, it would have been obvious to one of ordinary skill in the art to have a

workstation that combines the embodiments so that there is a computer and a video

phone in order to provide more services to the workstation user.  Additionally,

computers are well known in the art to have a processor and display.  Therefore, it

would have been obvious to one of ordinary skill in the art to have a display and

processor at the workstation as a part of the computer)**; and**

       **a server that communicates with the kiosk via a network connection** (col. 9

line 50-64; The network 111) **, the server comprising a server processor, a network**

**interface unit, and a computer memory** (col. 9 line 50-64; The processor-based

server having a media gateway to provide communications to the user terminal.  It is

well known in the art that servers have memory.  Therefore, at the time of invention, it

would have been obvious to one of ordinary skill in the art to include memory in the

processor-based server)**;**

       **the kiosk being configured to receive communications from the camera**

**and microphone and transmit audio and video of the communications to the**

**server via the network connection** (col 9 line 50-64; col. 25 line 6-13; The user

terminal receives communications from the server via the media gateway.  It is obvious

to one of ordinary skill in the art that if a video phone is being used, audio and video

information would be transmitted from the microphone and camera input)**,**

Application/Control Number: 13/088,883                                    Page 4
Art Unit: 2683

**wherein the server records the audio and video and transmits the audio and video to a destination** (col 10 line 51-67; col. 11 line 1-2; The call recording system records the call at a workstation for retrieval or playback at workstations)**, and**

**wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user** (col. 19 line 19-28; An inmate uses their PIN number or identifier to make a call) **and also performing a biometric verification** (col. 19 line 19-28; Biometric information is also used for authentication.  It is obvious to one of ordinary skill in the art to use both logon and biometric authentication methods for additional security)**.**

Regarding claim 2, Rae discloses **wherein the destination is a device communicating with the server and the server is configured to authenticate a user of the device** (col. 25 line 6-13; col 11 line 57-65; The system may be used with cellular phones, video phones, or PDAs.  A validation system verifies the identity of the called party.  One of ordinary skill in the art recognizes that the called party may be on a cellular phone, video phone, or PDA)**.**

Regarding claim 3, Rae **discloses wherein the destination is a second kiosk located in a visitation area of a second secure facility** (col 7. line 9-16; Call processing between the telephone terminals 141 and the visitation telephones 143)**.**

Regarding claim 4, Rae **discloses further comprising:**

**a second kiosk located in a visitation area of the secure facility** (col 7. line 9-16; col. 25 line 6-13;  Call processing between the telephone terminals 141 and the visitation telephones 143.  The system may also be used with video phones and

Application/Control Number: 13/088,883                                          Page 5
Art Unit: 2683

computers.  It is obvious to one of ordinary skill in the art to place the video phone and

computer at the visitation telephone terminal 143 for communications with the user

terminal 141 that also contains these components)**; and**

**a local server located at the secure facility the kiosk being configured to**

**transmit the audio and video to the local server when the communications are**

**intended for the second kiosk located in the visitation area** (col. 9 line 10-21; The

call management system of the facility has a server the completes calls between the

telephone terminals 141 and visitation telephones 143)**, and**

**wherein the local server is configured to record the audio and video and**

**transmit the audio and video to the second kiosk located in the visitation area**

(col. 8 line 50-60; col 10 line 51-67; col. 11 line 1-29; The computer-based platform of

the facility comprising a call management system and call recording system records

calls for retrieval or playback  at the visitation telephones 143.  It is obvious to one of

ordinary skill in the art that if a video phone is used, audio and video information are

recorded and transmitted to the visitation terminal)**.**

Regarding claim 9, Rae discloses **wherein the kiosk is configured to allow the**

**user to reserve use of the kiosk by receiving a user request for use at a certain**

**time and checking permissions related to the user that are stored on the server,**

**and, when the user request is granted, the kiosk does not allow anyone other**

**than the user to log in at the certain time** (col. 20 line 41-60; The system may also be

used for tracking privileges and managing facility resources such as establishing

telephone availability schedules.  Establishing a telephone schedule is analogous to

Application/Control Number: 13/088,883                                    Page 6
Art Unit: 2683

reserving use of a kiosk.  It is obvious to one of ordinary skill in the art that the tracked

privileges may apply to scheduling telephone availability.  It is further obvious to one of

ordinary skill in the art to recognize that if a telephone is not available because it is

already scheduled to another user, no other users but the scheduled user may be

permitted to use the telephone).

Regarding claim 11, Rae discloses **wherein the kiosk is configured to accept**
**messages input by the user after the user has logged on and transmit the**
**messages to the server, and the server is configured to provide a third party**
**access to the messages** (col. 19 line 24-28; col. 25 line 6-13; col. 20 line 26-30; The

kiosk requires the user to logon to the terminal before use.  The terminal may have a

computer, which is well known in the art to be capable of transmitting messages.  The

call management system allows the user to have access to external services,

analogous to providing a third party access to the messages)**.**

Regarding claim 14, Rae discloses **wherein the kiosk is configured to provide**
**the user with at least one of: access to audio, video, and text of educational and**
**religious materials stored on the server and/or the kiosk, and the ability to order**
**items from a list of commissary items** (col. 20 line 19-20; The inmate may purchase

commissary goods).

Regarding claim 15, Rae discloses **wherein the kiosk is configured to connect**
**to the Internet and provide access to authorized Internet web pages** (col. 15 line 7-

13; col. 11 line 57-67; col. 25 line 6-13; Data may be provided via the Internet.  A

validation system determines if the user is authorized to call certain parties in the

Application/Control Number: 13/088,883                                    Page 7
Art Unit: 2683

telephone only embodiment of the invention.  However, in an embodiment that allows
Internet over personal computers, one of ordinary skill recognizes that the authorization
may apply to web pages as well, as this is a medium the user may contact via the
Internet, analogous to a medium the user may contact via the telephone)**, and the
kiosk is configured to log all visited Internet web pages and to transmit logs to
the server** (col. 10 line 51-67; col. 25 line 6-13; col. 15 line 7-13; The telephone only
embodiment of the invention has a call recording system that tracks and archives all call
information.  It is obvious to one of ordinary skill in the art to recognize that this same
tracking and archiving functionality may apply to all activities on an embodiment that
uses a computer which allows access to the Internet)**.**

 Regarding claim 16, Rae discloses **wherein the kiosk is configured to receive
text-based messages from a server, and to display a notification of an available
text-based message on an idle screen of the kiosk** (Abstract; col. 15 line 37-44; The
call management system has an inmate management system that allows individuals to
view notification of events on a computer for all occasions, which is interpreted to
include an idle screen of a computer.  Notifications may be in the form of emails)**.**

 Regarding claim 17, Rae discloses **wherein the kiosk is configured to receive
voice or video messages from a server, and to display a notification of an
available voice or video message on an idle screen of the kiosk** (Abstract; col. 15
line 37-44; The call management system has an inmate management system that
allows individuals to view notification of events on a computer for all occasions, which is

Application/Control Number: 13/088,883                                        Page 8
Art Unit: 2683

interpreted to include an idle screen of a computer.  Notifications may be in the form of

voicemails or videomails)**.**

Regarding claim 24, Rae discloses **wherein the network is the Internet** (col. 15

3-13; Data provided via the Internet)**.**

Regarding claim 25, Rae discloses **wherein the kiosk is configured to provide**

**access to Internet web pages via a proxy server** (col. 9 line 50-64; col. 25 line 6-13;

In the call management embodiment, the processor-based server of the call application

management system 110 acts as a proxy server between the user terminals to provide

interfacing.  In an embodiment that includes computers, with access to the Internet, one

of ordinary skill in the art recognizes that the server of the management system would

also serve as a proxy server to provide interfacing between web pages of the Internet).

Regarding claim 26, Rae discloses **wherein the log in information is a**

**personal identification number** (col. 19 line 24-28)**.**

Regarding claim 32, Rae discloses **wherein the biometric verification**

**comprises a facial authentication via the camera** (col. 16 line 10-27)**.**

Regarding claim 33, Rae discloses **wherein the biometric verification**

**comprises a voice authentication via the microphone** (col. 16 line 10-27)


4.      Claim 5 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as

applied to claim 1 above, and further in view of Kenoyer (U.S. Pub 2006/0259755).

Regarding claim 5, Rae does not explicitly disclose **wherein the server is**

**configured to periodically extract a frame of the video and perform a check to**

**determine if a face is present in the frame, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video.**

In an analogous art, Kenoyer discloses **wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame** (paragraph [0041]; paragraph [0044]; The video conferencing system continuously determines if a face is present and matches the stored image)**, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video** (paragraph [0042]; paragraph [0044]; The user is only authenticated if the currently captured image matches the stored image.  It is obvious to one of ordinary skill in the art that if the user is not authenticated, the user may not continue to participate in the video conference, thus ending transmission of video of the unauthenticated user to the destination)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Kenoyer's method of continuously authenticating the user in video transmission in Rae's call processing system with video phone to ensure that an unauthenticated user does not communicate over the call processing system system.

5.      Claims 6, 7 and 22 rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as applied to claim 1 above, and further in view of Hodge (U.S. 2006/0285667).

Application/Control Number: 13/088,883                                          Page 10
Art Unit: 2683

Regarding claim 6, Rae discloses the system **configured to periodically extract a frame of video and authenticate a face in the frame against a stored identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication.  Biometric authentication may be required every time a user makes a call.  If a user makes multiple calls, this is considered to be "periodically extracting a frame of video").

Rae does not explicitly disclose **the server** performing authentication.

In an analogous art, Hodge discloses **the server** performing authentication (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae's system with biometric authentication so that there is a central location for storing all authentication data, instead of storing authentication data at each terminal.

Regarding claim 7, Rae discloses **wherein the kiosk is configured to periodically record a frame of video and authenticates a face in the frame against a stored identification image of the user** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication.  Biometric authentication may be required every time a user makes a call.  If a user makes multiple calls, this is considered to be "periodically extracting a frame of video")**.**

Hodge discloses **transmit the frame to the server, and wherein the server processor authenticates** (paragraph [0321]-[0322]; The biometric information is transmitted from the scanner at the telephone to the site server for authentication).

Application/Control Number: 13/088,883                                          Page 11
Art Unit: 2683

Regarding claim 22, Rae discloses **a method of monitoring use of an interactive kiosk, comprising: using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk** (col. 16 line 13-27; col. 19 line 24-28; A camera is used to capture an image of the user's face for authentication. Biometric authentication may be required every time a user makes a call. If a user makes multiple calls, this is considered to be "periodically extracting a frame of video") **and restricting use of the kiosk when the image does not match the pre-stored image to a predetermined degree** (col. 19 line 24-28; The call is blocked if the PIN and biometric data do not match)**.**

Rae does not explicitly disclose **transmitting the image to a server; and comparing, at the server, the image with a pre-stored image of the user of the kiosk**.

In an analogous art, Hodge discloses **transmitting the image to a server; and comparing, at the server, the image with a pre- stored image of the user of the kiosk** (paragraph [0321]-[0322]; The site server storing the biometric data for authentication).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Hodge's method of authenticating the user on the server in Rae's call processing system with biometric authentication so that there is a central location for storing all authentication data, instead of having to store authentication data at each terminal.

Application/Control Number: 13/088,883                                    Page 12
Art Unit: 2683

6.      Claims 8 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as
applied to claim 1 above, and further in view of Cree (U.S. Pat 6,665,380).

        Regarding claim 8, Rae does not explicitly disclose **wherein the kiosk accepts
anonymous messages input by the user without requiring the user to enter the
log in information.**

        In an analogous art, Cree discloses **wherein the kiosk accepts anonymous
messages input by the user without requiring the user to enter the log in
information** (col. 10 line 65-67; col. 11 line 1-16; Any inmate may pick up the phone
and see if they have messages.  They can access corresponding functions, and only if
they want to select a messaging function are they required to enter their account
number and PIN)**.**

        At the time of invention, it would have been obvious to one of ordinary skill in the
art to combine Cree's system that allows anonymous input in Rae's call processing
system so that users do not have to unnecessarily log in to the terminal if they don't
have any messages.


7.      Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as
applied to claim 1 above, and further in view of Aiu (U.S. Pub 2004/003079).

        Regarding claim 10, Rae does not explicitly disclose **wherein, in intervals of
time leading up to the certain time, when a second user is logged in, the kiosk is
configured to display notification messages alerting the second user that the
second user will be logged off at the certain time due to a reservation.**

Application/Control Number: 13/088,883                                      Page 13
Art Unit: 2683

In an analogous art, Aiu discloses **wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification messages alerting the second user that the second user will be logged off at the certain time due to a reservation** (Figure 3; paragraph [0038])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Aiu's method of displaying an alert to the current user when the current user is about to be restricted in Rae's call processing system with video phone in order to alert the user that another user is scheduled to use the terminal system at an upcoming time, and the current user will no longer be allowed to use the terminal.

8.      Claim 12 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae as applied to claim 1 above, and further in view of Banti (U.S. Pub 2010/0313276).

Regarding claim 12, Rae does not explicitly disclose **wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages.**

In an analogous art, Banti discloses **wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages** (Figure 3 element 255; paragraph [0015]; The mail server prevents a second user from taking an action that is restricted, such as forwarding the message to another user)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Banti's method of restricting actions on messages in Rae's call

Application/Control Number: 13/088,883                                          Page 14
Art Unit: 2683

processing system to prevent outside parties from manipulating the secure messages

sent from the secure facility.


9.      Claims 13, 18, and 28-31 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Rae as applied to claim 1 above, and further in view of Cree (U.S.

Pat 6,665,380) and Mattila (U.S. Pub 2008/0129816).

        Regarding claim 13, Rae discloses **wherein the server is configured to**

**receive an incoming call for the user from a third party caller** (col. 25 line 6-13;

Where a third party caller is interpreted as a caller using a cellular phone)**, determine**

**whether the user has permission to receive incoming calls** (col. 11 line 57-67; The

validation system verifies that the user is authorized to receive calls from the calling

party)**, and if the user has permission, transmit the incoming call to a kiosk** (col. 12

line 27-32; The validation system used to allow calls to be completed).

        Rae does not explicitly disclose **transmit the incoming call to the kiosk and at**

**least a second kiosk, and wherein the kiosk and the second kiosk are configured**

**to, upon receipt of the incoming call, display a screen notifying the user of the**

**incoming call, and prompt the user to input the log in information.**

        Cree discloses **transmit the incoming call to the kiosk and at least a second**

**kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone

number in the cell block, where the cell block telephone is analogous to the kiosk.  At

the time of invention, it would have been obvious to one of ordinary skill in the art to

place two cell block telephones in the cell block, as this is a mere duplication of

Application/Control Number: 13/088,883                                    Page 15
Art Unit: 2683

essential working parts, in order to provide more telephones for the users)**, and wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, notifying the user of the incoming call** (col. 10 line 38-50; The inmates in the vicinity of the cell block telephone are notified that they have messages) **and prompt the user to input the log in information** (col. 11 line 10-16)**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art substitute Cree's method of notifying a user of an incoming call and requiring input of login information in Rae's call processing system that has user terminals with computers in order to alert users of incoming messages on a more modern system that provides more user functions.

The combination of Rae and Cree does not explicitly disclose **display a screen notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Mattila's method of notifying the user of an incoming call at the terminal in Rae and Cree's call system with user terminals for receiving calls in order to effectively notify a user of the terminal with a video phone and computer of an incoming call request.

Regarding claim 18, Mattila discloses **wherein the kiosk is configured to receive a visitation request from a server** (Figure 22 element 28; paragraph [0045]; The video conference terminal may accept conference sessions from another video

Application/Control Number: 13/088,883                         Page 16
Art Unit: 2683

conference terminal.  The conference session request is analogous to the visitation

request.  The conference server handles the conference requests)**, and to display a**

**notification of an available visitation request on an idle screen of the kiosk**

(paragraph [0048]; paragraph [0057]; The notification is displayed on the terminal,

where the terminal may also display an idle screen.  It is obvious to one of ordinary skill

in the art that if the notification has an idle screen, a notification may be displayed on

the idle screen)**.**


Regarding claim 28, Rae discloses **a system for providing services to a**

**secure facility, the system comprising:**

**a plurality of kiosks located at a secure facility, each kiosk comprising a**

**processor, display, speaker, and microphone** (Figure 1 element 141 and 143; col. 7

line 3-16; col. 25 lines 6-13; col. 16 line 13-27;  The telephone terminals 141 and

visitation telephones 143, where speakers are an inherent component of a telephone.  A

camera and microphone may be placed at the terminal for biometric authentication or

general use.  In an alternative embodiment, the system may also be implemented with

video phones and computers.  At the time of invention, it would have been obvious to

one of ordinary skill in the art to have a workstation that combines the embodiments so

that there is a computer and a video phone in order to provide more services to the

workstation user.  Additionally, computers are well known in the art to have a processor

and display.  Therefore, it would have been obvious to one of ordinary skill in the art to

have a display and processor at the workstation as a part of the computer)**; and**

Application/Control Number: 13/088,883                              Page 17
Art Unit: 2683

**a server that communicates with the kiosks and a device of an outside party via one or more network connections** (col. 9 line 14-21; col. 9 line 50-64; The network 111 connecting the telephone terminals, or any device that is coupled to the network)**, the server comprising a server processor, a network interface unit, and a computer memory** (col. 9 line 50-64; The processor-based server having a media gateway to provide communications to the user terminal.  It is well known in the art that servers have memory.  Therefore, at the time of invention, it would have been obvious to one of ordinary skill in the art to include memory in the processor-based server)**; and**

**wherein the server is configured to receive a communications request from the device of the outside party** (col. 25 line 6-13; Where a device of the outside party is interpreted as a caller using a cellular phone)**.**

Rae does not explicitly disclose **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and**

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message and initiate a login procedure**.

In an analogous art, Cree discloses **in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk** (col. 10 line 19-24; The system transmits the message to the cell block telephone number in the cell block if the inmate, where the cell block telephone is analogous to the kiosk)**, and**

Application/Control Number: 13/088,883                                      Page 18
Art Unit: 2683

**wherein the kiosk is configured to receive the message, and, upon receipt of the message, notify an incoming communications request message** (col. 10 line 38-50; The inmates in the vicinity of the cell block telephone are notified that they have messages) **and initiate a login procedure** (col. 11 line 10-16).

At the time of invention, it would have been obvious to one of ordinary skill in the art substitute Cree's method of notifying a user of an incoming call and requiring input of login information in Rae's call processing system that has user terminals with computers in order to alert users of incoming messages on a more modern system that provides more user functions.

The combination of Rae and Cree does not explicitly disclose **display a screen notifying the user of the incoming call.**

In an analogous art, Mattila discloses **display a screen notifying the user of the incoming call** (Figure 3 element 158; paragraph [0048])**.**

At the time of invention, it would have been obvious to one of ordinary skill in the art to combine Mattila's method of notifying the user of an incoming call at the terminal in Rae and Cree's call processing system with user terminals for receiving calls in order to effectively notify a user of the terminal with a video phone and computer of an incoming request.

Regarding claim 29, Rae discloses **wherein the communications request is a request to initiate a voice call or a video call** (col 25 line 6-13; The system used with telephones, cell phones, or video phones)**.**

Application/Control Number: 13/088,883                                      Page 19
Art Unit: 2683

Regarding claim 30, Rae discloses **wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server** (col. 20 line 46-60; col. 9 line 10-14; The system can store information regarding what cells the inmates are assigned to, and may schedule facility resources like establishing telephone availability schedules.  It is obvious to one of ordinary skill in the art that this may be stored in memory of the processor-based server of the system).

Regarding claim 31, Mattila discloses **wherein the kiosk is configured to play an alert tone or audio message upon receiving the message** (paragraph [0048]).


10.     Claim 19, 21, 27, 34, and 35 are rejected under 35 U.S.C. 103(a) as being unpatentable over Rae (U.S. Pat 8,340,260), and further in view of Kennedy (U.S. Pub 2010/0256500).

Regarding claim 19, Rae discloses **a kiosk for providing facility services in a secure manner, comprising:**

**a computer processor** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  A processor is an inherent component of a computer)**;**

**a memory connected to the processor via a bus** (col. 25 lines 6-13; col. 16 line 13-27; A terminal that may have a personal computer.  Memory is an inherent component of a computer)**;**

**a camera connected to the bus for inputting video communications** (col. 16 line 13-27; The camera can capture moving images)**;**

Application/Control Number: 13/088,883                                    Page 20
Art Unit: 2683

**a microphone connected to the bus for inputting audio communications**
(col. 16 line 13-27; The microphone)**;**

**a speaker connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A
telephone may be at the terminal.  A speaker is an inherent component of a telephone)**;**

**a display connected to the bus** (col. 25 lines 6-13; col. 16 line 13-27; A
terminal that may have a personal computer.  It is well known in the art that a display is
a component of a personal computer.  Therefore, at the time of invention, it would have
been obvious to one of ordinary skill in the art to include a display at the kiosk)**; and**

**a network interface connected to the bus for communicating with a server
via a network connection** (col. 9 line 50-64; The media gateway 117 that comprises a
processor-based server connects the user terminals via a network 111 in order to
provide communications)**,**

**wherein the kiosk authenticates a user by receiving personal log in
information and comparing the received personal log in information against a
known personal log in information associated with the user, verifies the user's
identity using a biometric verification** (col. 19 line 24-28; The user enters in a PIN
and biometric information)**, records audio and video communications and transmits
the audio and video communications to the server** (col 9 line 50-64; col. 25 line 6-
13; col 10 line 51-67; col. 11 line 1-2; The user terminal receives communications from
the server via the media gateway.  It is obvious to one of ordinary skill in the art that if a
video phone is being used, audio and video information would be transmitted from the
microphone and camera input.  The call recording system records the call at a

Application/Control Number: 13/088,883                                    Page 21
Art Unit: 2683

workstation for retrieval or playback at workstations)**, and provides access to internet web pages via a web proxy** (col. 9 line 50-64; col. 25 line 6-13; In the call management system, the processor-based server of the call application management system 110 acts as a proxy server between the user terminals to provide interfacing.  In an embodiment that includes computers, with access to the Internet, one of ordinary skill in the art recognizes that the server of the management system would also serve as a proxy server to provide interfacing between web pages)**.**

Rae does not disclose **a touchscreen display.**

In an analogous art, Kennedy discloses **a touchscreen display** (paragraph [0031]).

At the time of invention, it would have been obvious to one of ordinary skill in the art to substitute Kennedy's touchscreen display in Rae's computer in order to modernize the computer interface.

Regarding claim 21, it is interpreted and rejected for the same reasons as set forth in claims 9, 11, and 14 above, with the additional limitations set forth in claim 19 above.

Regarding claim 27, it is interpreted and rejected for the same reasons as set forth in claim 26 above, with the additional limitations set forth in claim 19 above.

Regarding claim 34, it is interpreted and rejected for the same reasons as set forth in claim 32 above, with the additional limitations set forth in claim 19 above.

Regarding claim 35, it is interpreted and rejected for the same reasons as set forth in claim 33 above, with the additional limitations set forth in claim 19 above.

Application/Control Number: 13/088,883                                        Page 22
Art Unit: 2683

11.     Claim 20 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae and

Kennedy as applied to claim 19 above, and further in view of Kenoyer (U.S. Pub

2006/0259755).

        Regarding claim 20, it is interpreted and rejected for the same reasons set forth

in claim 5 above, with the additional limitations set forth in claim 19 above.


12.     Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over Rae and

Hodge as applied to claim 22 above, and further in view of Kenoyer (U.S. Pub

2006/0259755).

        Regarding claim 23, it is interpreted and rejected for the same reasons set forth

in claim 5 above, with the additional limitations set forth in claim 12 above.


                                   ***Conclusion***

        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to LAURA NGUYEN whose telephone number is (571)270-

3785.  The examiner can normally be reached on Monday - Friday 9:00 AM - 5:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Brian Zimmerman can be reached on (571) 272-3059.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Application/Control Number: 13/088,883                                      Page 23
Art Unit: 2683

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/LAURA  NGUYEN/
Examiner, Art Unit 2683


                                    /Brian A Zimmerman/
                                    Supervisory Patent Examiner, Art Unit 2683

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| ***Notice of References Cited*** | | 13/088,883 | O'NEIL ET AL. |
| | | Examiner | Art Unit | |
| | | LAURA NGUYEN | 2683 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,665,380 B1 | 12-2003 | Cree et al. | 379/88.25 |
| * | B | US-2004/0003079 A1 | 01-2004 | Aiu et al. | 709/225 |
| * | C | US-2006/0259755 A1 | 11-2006 | KENOYER, MICHAEL | 713/001 |
| * | D | US-2006/0285667 A1 | 12-2006 | Hodge, Stephen Lee | 379/142.05 |
| * | E | US-2008/0129816 A1 | 06-2008 | Mattila et al. | 348/14.08 |
| * | F | US-2010/0259500 A1 | 10-2010 | Kennedy, Peter | 345/173 |
| * | G | US-2010/0313276 A1 | 12-2010 | Banti et al. | 726/28 |
| * | H | US-8,340,260 B1 | 12-2012 | Rae et al. | 379/189 |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13088883 | O'NEIL ET AL. |
| | Examiner | Art Unit |
| | LAURA NGUYEN | 2683 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 04/18/2013 | | | | | | | | |
| | 1 | ✓ | | | | | | | | |
| | 2 | ✓ | | | | | | | | |
| | 3 | ✓ | | | | | | | | |
| | 4 | ✓ | | | | | | | | |
| | 5 | ✓ | | | | | | | | |
| | 6 | ✓ | | | | | | | | |
| | 7 | ✓ | | | | | | | | |
| | 8 | ✓ | | | | | | | | |
| | 9 | ✓ | | | | | | | | |
| | 10 | ✓ | | | | | | | | |
| | 11 | ✓ | | | | | | | | |
| | 12 | ✓ | | | | | | | | |
| | 13 | ✓ | | | | | | | | |
| | 14 | ✓ | | | | | | | | |
| | 15 | ✓ | | | | | | | | |
| | 16 | ✓ | | | | | | | | |
| | 17 | ✓ | | | | | | | | |
| | 18 | ✓ | | | | | | | | |
| | 19 | ✓ | | | | | | | | |
| | 20 | ✓ | | | | | | | | |
| | 21 | ✓ | | | | | | | | |
| | 22 | ✓ | | | | | | | | |
| | 23 | ✓ | | | | | | | | |
| | 24 | ✓ | | | | | | | | |
| | 25 | ✓ | | | | | | | | |
| | 26 | ✓ | | | | | | | | |
| | 27 | ✓ | | | | | | | | |
| | 28 | ✓ | | | | | | | | |
| | 29 | ✓ | | | | | | | | |
| | 30 | ✓ | | | | | | | | |
| | 31 | ✓ | | | | | | | | |
| | 32 | ✓ | | | | | | | | |
| | 33 | ✓ | | | | | | | | |
| | 34 | ✓ | | | | | | | | |
| | 35 | ✓ | | | | | | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 4 | ((RICHARD) near2 (TORGERSRUD)).INV. | US-PGPUB; USPAT | OR | ON | 2013/04/11 14:53 |
| S2 | 3695 | 340/5.51-5.54,5.8,5.81-5.85.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:06 |
| S3 | 1286 | 340/5.82-5.84.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:07 |
| S4 | 1033 | 340/5.52-5.53.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:08 |
| S5 | 143 | (access$3 admission entry admittance entra$4) near5 (internet audo video music movie book) and S3 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:13 |
| S6 | 126 | (access$3 admission entry admittance entra$4) near5 (internet audo video music movie book) and S4 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:13 |
| S7 | 95 | ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book)) and ((biometric facial) same (log$in identification identifier id) and S3 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:14 |
| S8 | 85 | ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book)) and ((biometric facial) same (log$in identification identifier id) and S4 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:14 |
| S9 | 297 | 725/30.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:53 |
| S10 | 16 | (biometric facial) and S9 | US-PGPUB; USPAT | OR | ON | 2013/04/11 15:54 |
| S11 | 4 | ((11/371641) or (10/215367)).APP. | US-PGPUB; USPAT | OR | OFF | 2013/04/11 16:01 |
| S12 | 12 | ("20020042879" \| "20030229492" \| "4054756" \| "4933965" \| "4935956" \| "5274695" \| "5717743" \| "5923746" \| "6182221" \| "6219439" \| "6282566" \| "6377699").PN. OR ("7844252").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2013/04/11 16:01 |
| S13 | 43 | ("20020042879" \| "20020177433" \| "5274695" \| "5473671" \| "5485507" \| "5502759" \| "5655013" \| "5717743" \| "5923746" \| "5943403" \| "6084967" \| "6104922" \| "6182221" \| "6213391" \| "6219439" \| "6282566" \| "6377699" \| "6389397" \| "6668045" \| "6687733" \| "6819219" \| "6836556" \| "6950508").PN. OR ("7333798").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2013/04/11 16:02 |
| S14 | 310 | ("20010028649" \| "20010036821" \| "20010041590" \| "20010047333" \| "20020017537" \| "20020141386" \| "20020159440" \| "20020176403" \| "20030002639" \| "20030023714" \| "20030041326" \| "20030091028" \| "20030126470" \| "20030133558" \| "20030185204" \| "20030198325" \| "20040052218" \| "20040181433" \| "20060209797" \| "20060285650" \| "20060286962" \| "20070041545" \| "20070071206" \| "20070115924" \| "20070242658" \| "20070263812" \| "20080040780" \| "3096404" \| "3113185" \| "3350515" \| "3397288" \| "3398288" \| "3626107" \| "3660610" \| "3676605" \| "3798382" \| "3813495" \| "3829617" \| "3851121" \| "3864519" \| "3952160" \| "3985956" \| "3997731" \| "4001513" \| "4002848" \| "4027109" \| "4054756" \| "4055730" \| "4122308" \| "4156799" \| "4188508" \| "4196317" \| "4310726" \| "4319091" \| "4326123" \| "4333056" \| "4371752" \| "4387274" \| "4405833" \| "4439636" \| "4445211" \| "4477698" \| "4518825" \| "4538030" \| "4540855" \| "4552996" \| "4559416" \| "4585904" \| "4593157" \| "4595983" \| "4602129" \| "4626630" \| "4629829" \| "4644109" \| "4686699" \| "4696028" \| "4696031" \| "4698840" | US-PGPUB; USPAT; USOCR | OR | ON | 2013/04/11 16:03 |

```
"4712230" | "4723273" | "4726057" | "4727577" | "4731818"
"4736405" | "4737982" | "4746786" | "4763350" | "4766604"
"4768223" | "4768227" | "4769834" | "4777647" | "4782516"
"4791640" | "4794642" | "4797910" | "4799255" | "4802207"
"4803718" | "4815120" | "4825460" | "4839917" | "4850011"
"4868873" | "4885765" | "4890317" | "4896348" | "4899358"
"4899375" | "4901341" | "4908852" | "4916733" | "4920562"
"4922519" | "4922520" | "4924488").PN. OR ("4924501" |
"4932062" | "4933966" | "4933967" | "4935956" | "4937856"
"4937862" | "4943995" | "4944001" | "4947422" | "4947425"
"4979214" | "4991203" | "4993062" | "4993068" | "5003595"
"5008923" | "5020095" | "5022067" | "5023869" | "5023896"
"5023906" | "5033088" | "5054059" | "5063593" | "5093858"
"5109405" | "5131024" | "5134651" | "5150357" | "5153907"
"5155761" | "5163083" | "5164989" | "5181237" | "5187740"
"5193110" | "5200995" | "5210789" | "5216702" | "5218636"
"5220501" | "5222120" | "5229764" | "5247569" | "5255305"
"5274698" | "5276731" | "5283825" | "5283829" | "5287401"
"5305312" | "5309505" | "5311589" | "5319701" | "5319702"
"5321754" | "5323448" | "5325421" | "5325427" | "5327489"
"5329578" | "5333181" | "5335266" | "5345501" | "5345595"
"5351285" | "5351287" | "5355403" | "5369699" | "5375161"
"5381474" | "5394465" | "5416831" | "5425087" | "5428662"
"5442696" | "5450485" | "5452347" | "5455819" | "5461665"
"5465293" | "5465387" | "5471519" | "5473686" | "5483582"
"5483593" | "5485507" | "5497414" | "5504810" | "5524141"
"5524145" | "5535261" | "5539812" | "5544231" | "5566229"
"5577116" | "5583920" | "5583934" | "5606604" | "5617471"
"5619561" | "5627887" | "5634126" | "5651056" | "5655013"
"5682386" | "5722418" | "5724404" | "5742905" | "5745553"
"5745558" | "5757781" | "5768355" | "5777558" | "5796811"
"5799068" | "5805685" | "5809125" | "5844978" | "5859907"
"5862519" | "5867559" | "5875230" | "5883945").PN. OR
("5907602" | "5923746" | "5926533" | "5937042" | "5943403"
"5946386" | "5960064" | "6031895" | "6052454" | "6064963"
"6072860" | "6075843" | "6097804" | "6134320" | "6141406"
"6169789" | "6188751" | "6249570" | "6320946" | "6320948"
"6324280" | "6363065" | "6366653" | "6381321" | "6404764"
"6404857" | "6404870" | "6445682" | "6480590" | "6487200"
"6496477" | "6529500" | "6529602" | "6553336" | "6560323"
"6560325" | "6611583" | "6621812" | "6654722" | "6665380"
"6687360" | "6731630" | "6788775" | "6795444" | "6816469"
"6876647" | "6904139" | "6920209" | "6985478" | "7039171"
"7042992" | "7046782" | "7075922" | "7085359" | "7203186"
"7248680" | "7302053" | "7333798" | "7360087" | "7360090"
"7505406" | "7505409" | "7529357" | "RE37073").PN. OR
("8340260").URPN.
```

| | | | US- | OR | ON | |
|---|---|---|---|---|---|---|
| S15 | 4954 | 340/5.51-5.54,5.8,5.81-5.85,5.2,5.21,5.28,5.31.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:09 |
| S16 | 452 | (prison inmate institution) and S15 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:09 |
| S17 | 203 | (prison inmate institution) and ((access$3 admission entry admittance entra$4) near5 internet audo video music movie book media phone call telephone)) and S15 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:11 |
| S18 | 41 | (prison inmate penal correctional) and ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book media phone call telephone)) and S15 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:15 |
| S19 | 2 | (11/870157).APP. | US-PGPUB; USPAT | OR | OFF | 2013/04/11 16:18 |
| S20 | 2 | (prison inmate penal correctional) and ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book media phone call telephone)) and S19 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:20 |
| S21 | 1 | (prison inmate penal correctional) and S9 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:22 |
| S22 | 6 | (institution) and S9 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:23 |
| S23 | 168 | 455/26.1.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:25 |
| S24 | 55 | ((access$3 admission entry admittance entra$4) near5 (internet audo video music movie book media phone call | US-PGPUB; | | | 2013/04/11 16:25 |

EAST Search History

| | | | | | |
|---|---|---|---|---|---|
| | | telephone)) and S23 | USPAT | | |
| S25 | 35 | (prison inmate penal correctional) and ((access$3 admission entry admittance entra$4) near5 (internet audio video music movie book phone call telephone)) and S15 | US-PGPUB; USPAT | OR | ON | 2013/04/11 16:35 |
| S26 | 4 | ((RICHARD) near2 (TORGERSRUD)).INV. | US-PGPUB; USPAT | OR | ON | 2013/04/15 11:50 |
| S27 | 26 | (US-20120206236-$ or US-20120023518-$ or US-20100312616-$ or US-20100083000-$ or US-20100070989-$ or US-20090228336-$ or US-20060285667-$ or US-20020116508-$ or US-20120124615-$ or US-20120096483-$ or US-20100138856-$ or US-20070250851-$ or US-20060020960-$ or US-20030198325-$ or US-20030041326-$ or US-20090046841-$ or US-20080273684-$ or US-20080040748-$ or US-20110006881-$).did. or (US-6979264-$ or US-6972660-$ or US-5923746-$ or US-8340260-$ or US-7529357-$ or US-6665380-$ or US-8374127-$).did. | US-PGPUB; USPAT | OR | ON | 2013/04/15 15:46 |
| S28 | 1 | (touchscreen) and S27 | US-PGPUB; USPAT | OR | ON | 2013/04/15 15:46 |
| S29 | 243 | (touchscreen) near5 computer and 345/173.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/16 12:21 |
| S30 | 17377 | (rout$3) with (incoming receiv$3) with (communication message request) with (terminal computer station) | US-PGPUB; USPAT | OR | ON | 2013/04/16 15:46 |
| S31 | 40 | S30 and (inmate arrestee prison jail penal correctional) | US-PGPUB; USPAT | OR | ON | 2013/04/16 15:48 |
| S32 | 1 | (10/642532).APP. | US-PGPUB; USPAT | OR | OFF | 2013/04/16 15:57 |
| S33 | 1181 | (inmate arrestee prison jail penal correctional) same (call$3 messag$3) | US-PGPUB; USPAT | OR | ON | 2013/04/16 16:55 |
| S34 | 902 | S33 and ((incoming receiv$3) with (communication message request call)) | US-PGPUB; USPAT | OR | ON | 2013/04/16 16:56 |
| S35 | 169 | S34 and "370"/$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/16 16:57 |
| S36 | 648 | S33 same5 ((incoming receiv$3) with (communication message request call)) | US-PGPUB; USPAT | OR | ON | 2013/04/16 16:58 |
| S37 | 3 | S36 and (visitation near5 request) | US-PGPUB; USPAT | OR | ON | 2013/04/16 17:09 |
| S38 | 19 | S33 same5 ((incoming receiv$3) with (communication message request call) with video) | US-PGPUB; USPAT | OR | ON | 2013/04/16 17:13 |
| S39 | 21 | (inmate arrestee prison jail penal correctional) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/16 17:17 |
| S40 | 2936 | (internet (web near3 page)) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 10:38 |
| S41 | 751 | (internet (web near3 page)) with access and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 10:38 |
| S42 | 1 | (11/359289).APP. | US-PGPUB; USPAT | OR | OFF | 2013/04/17 10:39 |
| S43 | 1211 | (reserv$3 request$3) with (computer terminal station) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 11:37 |
| S44 | 115 | ((reserv$3 request$3) near5 (computer terminal station)) and ((internet (web near3 page)) near5 access) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 11:38 |
| S45 | 161 | ((reserv$3 request$3 schedul$3) near5 (conference meeting visit visitation) near5 (computer terminal station)) and | US-PGPUB; | OR | ON | 2013/04/17 11:57 |

| | | 348/14.$.ccls. | | | | |
|---|---|---|---|---|---|---|
| S46 | 19 | ((display$3 show$3) near7 (reserv$5 request$3 schedul$3) near5 (conference meeting visit visitation) near5 (computer terminal station) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 11:59 |
| S47 | 4 | ((identify$3 determin$3 find$3) near5 (computer terminal station) near5 (nearby vicinity)) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 12:06 |
| S48 | 45 | ((server) with (rout$3) with (incoming receiv$3) with (message call visit vistation communication request) and 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 12:10 |
| S49 | 2770 | 382/118.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:09 |
| S50 | 32 | ((stop$4 end$3 terminat$3 restrict$3) with (video) with (transmit$4 transmission send$3 communicat$3)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:10 |
| S51 | 0 | ((stop$4 end$3 terminat$3 restrict$3) with (video)) same ((face facial) with (absent present)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:16 |
| S52 | 5467 | 348/14.$.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:17 |
| S53 | 1026 | ((stop$4 end$3 terminat$3 restrict$3) with (video) with (transmit$4 transmission send$3 communicat$3)) and S52 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:17 |
| S55 | 0 | ((stop$4 end$3 terminat$3 restrict$3) with (transmit$4 transmission send$3 communicat$3)) same ((face facial) with (absent absence present remov$3 missing)) and S52 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:19 |
| S56 | 5 | ((stop$4 end$3 terminat$3 restrict$3) with (video)) same ((face facial) with (absent absence present remov$3 missing)) and S52 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:20 |
| S57 | 9 | ((stop$4 end$3 terminat$3 restrict$3) with (video)) same ((face facial biometric) with (absent absence present remov$3 missing authoriz$3 unauthoriz$3 authenticat$3)) and S52 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:21 |
| S58 | 186 | ((stop$4 end$3 terminat$3 restrict$3) with (video conference$3)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:30 |
| S59 | 113 | ((stop$4 end$3 terminat$3 restrict$3) near5 (video conference$3)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:31 |
| S60 | 100 | ((stop$4 end$3 terminat$3) near5 (video conferenc$3)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:31 |
| S61 | 86 | (((stop$4 end$3 terminat$3) near5 (video conferenc$3)) same4 (face facial)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:31 |
| S62 | 54 | (((stop$4 end$3 terminat$3) near5 (video conferenc$3)) same (face facial)) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:32 |
| S63 | 31 | ((stop$4 end$3 terminat$3) with (video)) same ((face facial) with track$3) and S49 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:35 |
| S64 | 1 | ((stop$4 end$3 terminat$3) near5 (video) near5 (transmit$4 transmission)) same ((face facial) near5 (absent absence present presence)) | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:37 |
| S65 | 115 | (face facial) same (track$3) same (end$3 terminat$3 stop$4) same (video conferenc$3) same (transmit$4 transmission send$3 communicat$3) | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:42 |
| S66 | 1748 | 725/9,10,12,14.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:54 |
| S67 | 123 | ((stop$4 end$3 terminat$3) with (transmit$4 transmission send$3 communicat$3 play$3 playback broadcast$3)) and (face facial) and S66 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:56 |
| S68 | 17 | ((stop$4 end$3 terminat$3) with (transmit$4 transmission send$3 communicat$3 play$3 playback broadcast$3)) and ((face facial) with (absent absence present presence)) and S66 | US-PGPUB; USPAT | OR | ON | 2013/04/17 17:56 |
| S69 | 12 | ((stop$4 end$3 terminat$3 restrict$3) near5 (video)) same | US- | | | 2013/04/17 |

EAST Search History

| | | | | | |
|---|---|---|---|---|---|
| | | ((face facial) near5 (present presence absent absence missing remov$3)) | PGPUB; USPAT | | 18:06 |
| S70 | 385 | 725/98,99.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:12 |
| S71 | 76 | ((stop$4 end$3 terminat$3 restrict$3) with (video) with (transmit$4 transmission send$3 communicat$3)) and S70 | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:12 |
| S72 | 63 | ((notification alert warning) near10 (log$off (log$3 near3 off))) same (kiosk terminal station computer device) same (request reservation reserved) | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:27 |
| S73 | 52 | (US-20120206236-$ or US-20120023518-$ or US-20100312616-$ or US-20100083000-$ or US-20100070989-$ or US-20090228336-$ or US-20060285667-$ or US-20020116508-$ or US-20120124615-$ or US-20120096483-$ or US-20100138856-$ or US-20070250851-$ or US-20060020960-$ or US-20030198325-$ or US-20030041326-$ or US-20090046841-$ or US-20080273684-$ or US-20080040748-$ or US-20110006881-$ or US-20100259500-$ or US-20110261807-$ or US-20110206038-$ or US-20110110367-$ or US-20110110276-$ or US-20090213844-$ or US-20080170561-$).did. or (US-20070242658-$ or US-20060087555-$ or US-20050114192-$ or US-20120293597-$ or US-20110096139-$ or US-20040252184-$ or US-20070118389-$ or US-20110254913-$ or US-20040181801-$ or US-20110115877-$ or US-20060259755-$ or US-20120060176-$).did. or (US-6979264-$ or US-6972660-$ or US-5923746-$ or US-8340260-$ or US-7529357-$ or US-6665380-$ or US-8374127-$ or US-6697469-$ or US-8098804-$ or US-8019354-$ or US-7256816-$ or US-7061521-$ or US-5914747-$ or US-7362349-$).did. | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:30 |
| S74 | 15 | (minute) and S73 | US-PGPUB; USPAT | OR | ON | 2013/04/17 18:31 |
| S75 | 17 | biometric and (user near5 (present presence absent absence)) and 725/9,10,12,14.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/18 11:47 |
| S76 | 34 | ((detect$3 sens$3) near5 (user)) same ((turn$3 shut$4 power$3 terminat$3 end$3 stop$4) near5 (transmission transmit$4 send$3 off)) and 725/9,10,12,14.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/18 11:51 |
| S77 | 29 | ((detect$3 sens$3) near5 (user)) same ((turn$3 shut$4 power$3 terminat$3 end$3 stop$4) near5 (transmission transmit$4 send$3 off)) and 382/118.ccls. | US-PGPUB; USPAT | OR | ON | 2013/04/18 11:58 |
| S78 | 1 | ("20090092293").PN. | US-PGPUB; USPAT | OR | OFF | 2013/04/18 12:05 |
| S79 | 4 | (display$3) near5 (notification alert reminder) near10 (user) near5 (log$off (logged near2 off)) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:24 |
| S80 | 80 | (display$3 show$3) near5 (notification alert reminder message) near10 (log$off (logged near2 off)) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:25 |
| S81 | 8078 | (display$3 show$3) near5 (notification alert reminder message) near10 (interval period$7) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:28 |
| S82 | 44 | S81 same ((log$4 sign$3) near3 (off out)) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:30 |
| S83 | 161 | (restrict$3) near5 (copy$3 forward$3) near5 (message) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:36 |
| S84 | 6 | S83 same ((remote third) near3 (party user)) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:46 |
| S85 | 18 | S83 same ((display$3 show$3 present$3) near3 message) | US-PGPUB; USPAT | OR | ON | 2013/04/18 13:52 |
| S86 | 1 | ("20080129816").PN. | US-PGPUB; USPAT | OR | OFF | 2013/04/18 14:15 |

**EAST Search History (Interference)**

< This search history is empty>

**4/ 18/ 2013 2:23:01 PM**
**C:\ Users\ LNGUYEN8\ Documents\ EAST\ Workspaces\ 13088883_Kiosk to authenticate users using login info and biometrics in order to provide authorized services and content to the user.wsp**



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 9388**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 13/088,883 | 04/18/2011 **RULE** | 340 | 2683 | P5789.0006/P006 |

**APPLICANTS**
  Richard Torgersrud, San Francisco, CA;
  Kevin O'Neil, Parma, ID;
  Grant Gongaware, San Francisco, CA;
  Morgan Collins, San Mateo, CA;

** CONTINUING DATA ***************************

** FOREIGN APPLICATIONS ***************************

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED **
  05/24/2011

| Foreign Priority claimed ☐ Yes ☑ No | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☐ No | ☐ Met after Allowance | CA | 18 | 23 | 3 |
| Verified and Acknowledged /LAURA N NGUYEN/ Examiner's Signature | Initials | | | | |

**ADDRESS**

DICKSTEIN SHAPIRO LLP
1825 EYE STREET NW
Washington, DC 20006-5403
UNITED STATES

**TITLE**

INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

| | | |
|---|---|---|
| **FILING FEE RECEIVED** 2216 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 13088883 | O'NEIL ET AL. |
| | Examiner | Art Unit |
| | LAURA NGUYEN | 2683 |

| CPC- SEARCHED | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 340 | 5.51-5.54,5.8,5.81-5.85,5.2,5.21,5.28,5.31 | 4/18/2013 | LN |
| 725 | 9,10,12,14,30,98,99 | 4/18/2013 | LN |
| 382 | 118 | 4/18/2013 | LN |
| 348 | 14.01-14.16 | 4/18/2013 | LN |
| 345 | 173 | 4/18/2013 | LN |

| SEARCH NOTES | | |
|---|---|---|
| Search Notes | Date | Examiner |
| EAST Search | 4/18/2013 | LN |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
| | | | |

| /L.N./ Examiner.Art Unit 2683 | |
|---|---|

U.S. Patent and Trademark Office

Part of Paper No. :  20130415

PLUS Search Results for S/N 13088883, Searched Tue Apr 09 08:44:36 EDT 2013
The Patent Linguistics Utility System (PLUS) is a USPTO automated search system
for U.S. Patents from 1971 to the present PLUS is a query-by-example search system which
produces a list of patents that are most closely related linguistically to the application
searched. This search was prepared by the staff of the Scientific and Technical Information
Center, SIRA.

| | |
|---|---|
| 5983200 72 | 20030038835 61 |
| 6163822 66 | |
| 6292830 66 | |
| 7740171 66 | |
| 7815107 66 | |
| 20070022008 66 | |
| 20070022046 66 | |
| 20070022047 66 | |
| 20070022048 66 | |
| 20080034065 66 | |
| 6086173 64 | |
| 6131874 64 | |
| 5940811 62 | |
| 6105007 62 | |
| 6195694 62 | |
| 5218633 61 | |
| 5255028 61 | |
| 5457636 61 | |
| 5774663 61 | |
| 5897623 61 | |
| 5949411 61 | |
| 6026387 61 | |
| 6219087 61 | |
| 6219087 61 | |
| 6246990 61 | |
| 6286029 61 | |
| 6326934 61 | |
| 6577907 61 | |
| 6680714 61 | |
| 6688518 61 | |
| 6867876 61 | |
| 6901374 61 | |
| 6959285 61 | |
| 6959286 61 | |
| 6980312 61 | |
| 7016854 61 | |
| 7249052 61 | |
| 7265776 61 | |
| 7283972 61 | |
| 7359078 61 | |
| 7664679 61 | |
| 7797374 61 | |
| 8190483 61 | |
| 20020078459 61 | |
| 20020082962 61 | |
| 20020089971 61 | |
| 20020097715 61 | |
| 20020123933 61 | |
| 20020165923 61 | |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 13/088,883 | 04/18/2011 | Richard Torgersrud | P5789.0006/P006 |

CONFIRMATION NO. 9388

24998
DICKSTEIN SHAPIRO LLP
1825 EYE STREET NW
Washington, DC 20006-5403

PUBLICATION NOTICE

*OC000000057150969*

**Title:** INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

**Publication No.** US-2012-0262271-A1
**Publication Date:** 10/18/2012

# NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

Docket No.: P5789.0006/P006
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Kevin O'Neil et al.

| | |
|---|---|
| Application No.: 13/088,883 | Confirmation No.: 9388 |
| Filed: April 18, 2011 | Art Unit: 2172 |
| For:  INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY | Examiner: Not Yet Assigned |

## FIRST PRELIMINARY AMENDMENT UNDER 37 C.F.R. 1.115

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Madam:

### INTRODUCTORY COMMENTS

Prior to examination on the merits, please amend the above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 9 of this paper.

Application No. 13/088,883
First Preliminary Amendment                                       Docket No.: P5789.0006/P006

## AMENDMENTS TO THE CLAIMS

1.      (Currently amended)   A system for providing services to a secure facility, the system comprising:

a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

a server that communicates with the kiosk via ~~an internet~~ a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the ~~internet~~ network connection,

wherein the server records the audio and video and transmits the audio and video to a destination, and

wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying ~~a personal identification number~~ log in information entered by the user and also performing a biometric verification ~~one or more of a facial recognition via the camera and a biometric voice recognition via the microphone~~.

2.      (Currently amended)   The system of claim 1, wherein the destination is a ~~computer~~ device communicating with the server ~~via a web interface,~~ and the server is configured to authenticate a user of the ~~computer~~ device ~~via the web interface~~.

3.      (Original)      The system of claim 1, wherein the destination is a second kiosk located in a visitation area of a second secure facility.

4.      (Currently amended)   The system of claim 1, further comprising:

a second kiosk located in a visitation area of the secure facility; and

DSMDB-3014989v1

2

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

a local server located at the secure facility

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area, and

wherein the local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5.      (Original)      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video.

6.      (Original)      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7.      (Original)      The system of claim 1, wherein the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8.      (Currently amended)   The system of claim 1, wherein the kiosk accepts anonymous messages input by the user without requiring the user to enter the log in information ~~personal identification number~~.

9.      (Original)      The system of claim 1, wherein the kiosk is configured to allow the user to reserve use of the kiosk by receiving a user request for use at a certain time and checking permissions related to the user that are stored on the server, and, when the user request is granted, the kiosk does not allow anyone other than the user to log in at the certain time.

10.      (Original)      The system of claim 9, wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification

DSMDB-3014989v1

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

messages alerting the second user that the second user will be logged off at the certain time due to a reservation.

11. (Currently amended)  The system of claim 1, wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages ~~via a web interface of the server~~.

12. (Original)     The system of claim 11, wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages.

13. (Currently amended)  The system of claim 1, wherein the server is configured to receive an incoming call for the user from a third party caller, determine whether the user has permission to receive incoming calls, if the user has permission, transmit the incoming call to the kiosk and at least a second kiosk, and

wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input the log in information.

14. (Original)     The system of claim 1, wherein the kiosk is configured to provide the user with at least one of: access to audio, video, and text of educational and religious materials stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.

15. (Currently amended)  The system of claim 1, wherein the kiosk is configured to connect to the Internet and provide access to authorized Internet web pages ~~via a proxy that restricts access to authorized domains~~, and the kiosk is configured to log all visited Internet web pages and to transmit logs to the server.

DSMDB-3014989v1

16.     (Original)     The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

17.     (Original)     The system of claim 1, wherein the kiosk is configured to receive voice or video messages from a server, and to display a notification of an available voice or video message on an idle screen of the kiosk.

18.     (Original)     The system of claim 1, wherein the kiosk is configured to receive a visitation request from a server, and to display a notification of an available visitation request on an idle screen of the kiosk.

19.     (Currently amended)   A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a speaker connected to the bus speaker;

a touchscreen display connected to the bus; and

a network interface connected to the bus for communicating with a server via the Internet a network connection,

wherein the kiosk authenticates a user by receiving personal log in information a personal identification number and comparing the received personal log in information identification number against a known personal log in information identification number associated with the user, verifies the user's identity using a biometric verification one of facial authentication of an image captured by

5

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

~~the camera and voice authentication of an audible phrase recorded using the microphone~~, records audio and video communications and transmits the audio and video communications to the server, and provides access to ~~the~~ internet <u>web pages</u> via a web proxy.

20.    (Original)    The kiosk of claim 19, wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, and stop transmitting video when a face is not present.

21.    (Original)    The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational and religious materials; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.    (Original)    A method of monitoring use of an interactive kiosk, comprising:

using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk; transmitting the image to a server; comparing, at the server, the image with a pre-stored image of the user of the kiosk; and restricting use of the kiosk when the image does not match the pre-stored image to a predetermined degree.

23.    (Original)    The method of claim 22, further comprising:

periodically extracting a frame of the video information during use of the kiosk to transmit video information;

determining whether the frame includes an image of a human face; and restricting transmission of the video information when the frame does not include an image of a face.

24.    (New)  The system of claim 1, wherein the network is the Internet.

25.    (New)  The system of claim 15, wherein the kiosk is configured to provide access to Internet web pages via a proxy server.

DSMDB-3014989v1

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

26.    (New)  The system of claim 1, wherein the log in information is a personal identification number.

27.    (New)  The system of claim 19, wherein the personal log in information is a personal identification number.

28.    (New)  A system for providing services to a secure facility, the system comprising:

a plurality of kiosks located at a secure facility, each kiosk comprising a processor, display, speaker, and microphone; and

a server that communicates with the kiosks and a device of an outside party via one or more network connections, the server comprising a server processor, a network interface unit, and a computer memory;

wherein the server is configured to receive a communications request from the device of the outside party and, in response to the received communications request, identify a kiosk in a vicinity of a requested party and transmit a message to the kiosk, and

wherein the kiosk is configured to receive the message, and, upon receipt of the message, display an incoming communications request message and initiate a login procedure.

29.    (New)  The system of claim 28, wherein the communications request is a request to initiate a voice call or a video call.

30.    (New)  The system of claim 28, wherein the server identifies the kiosk in the vicinity of the requesting party by referencing a resident schedule that is stored on a computer readable medium of the server.

31.    (New)  The system of claim 28, wherein the kiosk is configured to play an alert tone or audio message upon receiving the message.

DSMDB-3014989v1

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

32. (New) The system of claim 1, wherein the biometric verification comprises a facial authentication via the camera.

33. (New) The system of claim 1, wherein the biometric verification comprises a voice authentication via the microphone.

34. (New) The kiosk of claim 19, wherein the biometric verification comprises a facial authentication of an image captured by the camera.

35. (New) The kiosk of claim 19, wherein the biometric verification comprises a voice authentication of an audible phrase recorded using the microphone.

DSMDB-3014989v1

Application No. 13/088,883
First Preliminary Amendment

Docket No.: P5789.0006/P006

## REMARKS

Applicant requests entry of the foregoing amendment prior to examination. Claims 1-35 are pending. Claims 1, 2, 4, 8, 11, 13, 15, and 19 have been amended and claims 24-35 are newly added. Applicant reserves the right to pursue the original claims and other claims in this and other applications. Favorable consideration on the merits is respectfully solicited.

Dated: February 3, 2012

Respectfully submitted,

By _____
Gianni Minutoli
   Registration No.: 41,198
Jonathan L. Falkler
   Registration No.: 62,115
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403
(202) 420-2200
Attorneys for Applicant

DSMDB-3014989v1

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 13088883 |
| **Filing Date:** | 18-Apr-2011 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard Torgersrud |
| **Filer:** | Mark J. Thronson/Madeline Baker |
| **Attorney Docket Number:** | P5789.0006/P006 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 1202 | 12 | 60 | 720 |
| Independent claims in excess of 3 | 1201 | 1 | 250 | 250 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **970** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 11995866 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Richard Torgersrud |
| **Customer Number:** | 24998 |
| **Filer:** | Mark J. Thronson/Madeline Baker |
| **Filer Authorized By:** | Mark J. Thronson |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 03-FEB-2012 |
| **Filing Date:** | 18-APR-2011 |
| **Time Stamp:** | 15:00:10 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 970 |
| RAM confirmation Number | 1395 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | | Document.pdf | 346997<br><br>5fae5418c7a13bd5b24e5a25e6c4cd4abbe8a915 | yes | 9 |
|---|---|---|---|---|---|

| **Multipart Description/PDF files in .zip description** | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Preliminary Amendment | 1 | 1 |
| Claims | 2 | 8 |
| Applicant Arguments/Remarks Made in an Amendment | 9 | 9 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 32009<br><br>9ddcc4e731a67db142de3df747b19b7f8c261d83 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 379006 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>13/088,883 | Filing Date<br>04/18/2011 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
|---|---|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | | | | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|---|---|

| AMENDMENT | 02/03/2012 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 35 | Minus ** 23 | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus *** 3 | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/PEGGY YARBOROUGH/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 13/088,883 | 04/18/2011 | 2172 | 1246 | P5789.0006/P006 | 23 | 3 |

**CONFIRMATION NO. 9388**

24998
DICKSTEIN SHAPIRO LLP
1825 EYE STREET NW
Washington, DC 20006-5403

**FILING RECEIPT**

*OC000000047858268*

Date Mailed: 05/26/2011

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Applicant(s)**

Richard Torgersrud, San Francisco, CA;
Kevin O'Neil, Parma, ID;
Grant Gongaware, San Francisco, CA;
Morgan Collins, San Mateo, CA;

**Power of Attorney:** The patent practitioners associated with Customer Number 24998

**Domestic Priority data as claimed by applicant**

**Foreign Applications** (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)

**If Required, Foreign Filing License Granted:** 05/24/2011

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 13/088,883**

**Projected Publication Date:** 10/18/2012

**Non-Publication Request:** No

**Early Publication Request:** No

page 1 of 3

**Title**

INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY

**Preliminary Class**

715

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4158).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**<u>GRANTED</u>**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as

set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

## NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 13/088,883 |

### APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 330 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 540 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 220 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 23 minus 20 = | * 3 | | | OR | x 52 = | 156 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = | * | | | | x 220 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1246 |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| **AMENDMENT A** | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| **AMENDMENT B** | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

PTO/SB/05 (08-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office. U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| UTILITY PATENT APPLICATION TRANSMITTAL *(ONLY FOR NEW NONPROVISIONAL APPLICATIONS UNDER 37 CFR 1.53(B))* | Attorney Docket No. | P5789.0006/P006 |
|---|---|---|
| | First Inventor | Kevin O'Neil |
| | Title | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| | Express Mail Label No. | |

| APPLICATION ELEMENTS *See MPEP chapter 600 concerning utility patent application contents.* | ADDRESS TO: | Commissioner for Patents P.O. Box 1450 Alexandria, VA 22313-1450 |
|---|---|---|

**ACCOMPANYING APPLICATION PARTS**

1. [ ] Fee Transmittal Form (e.g., PTO/SB/17)
2. [ ] Applicant claims small entity status. See 37 CFR 1.27.
3. [X] Specification    [Total Pages]  43
   Both the claims and abstract must start on a new page (For information on the preferred arrangement, see MPEP 608.01(a))
4. [X] Drawing(s) (35 U.S.C. 113)    [Total Sheets]  18
5. [ ] Oath or Declaration    [Total Sheets]  20
   a. [X] Newly executed (original or copy)
   b. [ ] A copy from a prior application (37 CFR 1.63(d)) (for continuation/divisional with Box 18 completed)
      i. [ ] DELETION OF INVENTOR(S) Signed statement attached deleting inventor(s) name in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).
6. [ ] Application Data Sheet. See 37 CFR 1.76
7. [ ] CD-ROM or CD-R in duplicate, large table or Computer Program (Appendix)
   [ ] Landscape Table on CD
8. [ ] Nucleotide and/or Amino Acid Sequence Submission (if applicable, items a. – c. are required)
   a. [ ] Computer Readable Form (CRF)
   b. [ ] Specification Sequence Listing on:
      i. [ ] CD-ROM or CD-R (2 copies); or   ii. [ ] Paper
   c. [ ] Statements verifying identity of above copies

9. [ ] Assignment Papers (cover sheet & document(s))
   Name of Assignee

10. [ ] 37 CFR 3.73(b) Statement (when there is an assignee)   [ ] Power of Attorney
11. [ ] English Translation Document (if applicable)
12. [ ] Information Disclosure Statement (PTO/SB/08 or PTO-1449)
    [ ] Copies of citations attached
13. [ ] Preliminary Amendment
14. [ ] Return Receipt Postcard (MPEP 503) (Should be specifically itemized)
15. [ ] Certified Copy of Priority Document(s) (if foreign priority is claimed)
16. [ ] Nonpublication Request under 35 U.S.C.122 (b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.
17. [ ] Other:

18. If a CONTINUING APPLICATION, check appropriate box, and supply the requisite information below and in the first sentence of the specification following the title, or in an Application Data Sheet under 37 CFR 1.76:
   [ ] Continuation   [ ] Divisional   [ ] Continuation-in-part (CIP)   of prior application No.: _____
   *Prior application information:*   Examiner _____   Art Unit: _____

### 19. CORRESPONDENCE ADDRESS

| [X] The address associated with Customer Number: | 24998 | OR | [ ] Correspondence address below |
|---|---|---|---|

| Name | Gianni Minutoli DICKSTEIN SHAPIRO LLP |
|---|---|
| Address | 1825 Eye Street, NW |
| City | Washington | State | DC | Zip Code | 20006-5403 |
| Country | US | Telephone | (202) 420-2200 | Email | |

| Signature | | Date | April 18, 2011 |
|---|---|---|---|
| Name (Print/Type) | Gianni Minutoli | Registration No. (Attorney/Agent) | 41,198 |

DSMDB-2921541v1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICATION FOR U.S. LETTERS PATENT

Title:

INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE
FOR USE IN A SECURE FACILITY

Inventors:

Richard Torgersrud
Kevin O'Neil
Grant Gongaware
Morgan Collins

Citizenships: US, US, US, US

DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403
(202) 420-2200

DSMDB-2863401v1

# INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE
## FOR USE IN A SECURE FACILITY

## FIELD OF THE INVENTION

[0001]    Embodiments described herein relate generally to interactive computer systems, and more specifically to providing a mutipurpose interactive audio/video platform and device for use in a secure facility.

## BACKGROUND OF THE INVENTION

[0002]    Secure facilities such as prisons, institutions, and other government facilities house large populations of individuals in confinement.  Such facilities present unique administrative challenges – including challenges related to providing educational, entertainment, communications, and other services.  Most notably, secure facilities require additional levels of monitoring and oversight that are not required when similar services provided to other populations.  Additionally, since a large number of individuals may be confined in a relatively small space, certain efficiencies must be achieved to effectively administer the various services of the facility.

[0003]    Currently, the services are provided piecemeal – with each service handled by different technological means and often even different departments or service providers.  For example, one service provider may provide telecommunications service, while another handles educational or entertainment programs.  These services are provided separately from purely administrative services such as scheduling visitations, processing complaints, providing commissary services, or other facility requirements that may be provided by in-house departments of the secure facility.  Significant efficiencies can be achieved by automating these various services and by providing them in a centralized manner.  Moreover, providing these

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

services by a centralized computer system can facilitate more effective monitoring of resident

activity.  With more effective monitoring in place, it is possible to provide additional services

that can provide supplemental revenue to the facilities.  Accordingly, there is a need for a way to

administer various services required in a secure facility that is efficient, secure, and effective.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0004]      FIG. 1 illustrates an embodiment of the interactive audio/video platform.

[0005]      FIG. 2 illustrates the organization and interaction of clusters of another

embodiment of the interactive audio/video platform.

[0006]      FIG. 3 illustrates an example kiosk for use in the interactive audio/video

platform.

[0007]      FIG. 4 illustrates an example processor-based computer system of the

kiosk.

[0008]      FIG. 5 illustrates an example idle screen of a kiosk interface described

herein.

[0009]      FIG. 6 illustrates an example reservation screen of the kiosk interface.

[0010]      FIG. 7 illustrates an example login screen of the kiosk interface.

[0011]      FIG. 8 illustrates an example voice verification screen of the kiosk

interface.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

**[0012]**   FIG. 9 illustrates an example facial recognition verification screen of the kiosk interface.

**[0013]**   FIG. 10 illustrates an example main screen of the kiosk interface.

**[0014]**   FIG. 11 illustrates an example phone screen of the kiosk interface.

**[0015]**   FIG. 12 illustrates an example voicemail screen of the kiosk interface.

**[0016]**   FIG. 13 illustrates an example bail bonds screen of the kiosk interface.

**[0017]**   FIG. 14 illustrates an example video conferencing screen of the kiosk interface.

**[0018]**   FIG. 15 illustrates an example video messaging screen of the kiosk interface.

**[0019]**   FIG. 16 illustrates an example kite screen of the kiosk interface.

**[0020]**   FIG. 17 illustrates an example internet screen of the kiosk interface.

**[0021]**   FIG. 18 illustrates an example fund request screen of the kiosk interface.

DETAILED DESCRIPTION OF THE INVENTION

**[0022]**   Embodiments described herein address the problems with current provision of administrative services for secure facilities such as prisons or other government detention centers. The described embodiments provide a customized interactive audio/video platform for providing administrative services. The customized interactive audio/video platform includes, among other things, kiosks at secure facilities that are interconnected via a central

3

Docket  No.:   P5789.0006/P006

processing platform providing enhanced security and monitoring services. The kiosks provide, among other things, telephony services, video conferencing, text messaging, tele-medical services, religious and educational services, commissary services, entertainment services, and social networking. The services are provided in a manner that meets the strict guidelines of a secured facility such as, e.g., a prison.

[0023]     Embodiments may be implemented using computer hardware or software, or a combination of both. Computer software implementing features of the embodiments may be stored as instructions on a tangible computer readable medium. References to the "system" or "platform" describe specific embodiments and do not limit the scope of the claimed invention.

[0024]     Though embodiments are described with reference to facilities such as prisons or detention facilities, the embodiments described herein could be used in any facility requiring consolidated secure services.

[0025]     It should be understood that embodiments of the invention are not limited by the example embodiments described herein and that changes can be made thereto.  Example embodiments are now described with reference to the accompanying figures wherein like reference numbers are used consistently for like features throughout the drawings.

[0026]     FIG. 1 illustrates an embodiment of an example interactive audio/video platform 25 that includes kiosks 102 for providing administrative services at multiple facilities 100. The platform 25 includes a processing center 150 connected to one or more facilities 100 through a network such as, e.g., the Internet 190. Facilities 100 may be any facilities requiring voice, video and/or information services, especially those with security requirements and a large traffic volumes, including secure facilities such as prisons or other government detention

Docket No.:   P5789.0006/P006

facilities. Each facility 100 contains at least one kiosk 102. Each kiosk 102 is connected to a router 104 via a networking link 120. The routers 104 are configured to communicate with the processing center 150, which may be distributed across several locations. The routers 104 each connect the communications received from the kiosks 102 to the Internet 190, and exchange IP (Internet Protocol) packets bidirectionally between the processing center 150 and facility 100. The processing center 150 includes application hardware and software for data processing and the other functions described below.

[0027]     The processing center 150 is a system that is distributed across multiple clusters 151-153, which may or may not be geographically diverse (described below in more detail). Each cluster 151-153 hosts multiple nodes, including an application node, a database node, and a traffic processing node (discussed below in relation to FIG. 2). The clusters 151-153 communicate with each other via the Internet or dedicated connections, and information in any database node can be shared among the clusters 151-153. Data storage and retrieval can be performed across several clusters. The clusters 151-153 can also provide fail-over for one another, and routers 104 at each facility may be configured to communicate with another cluster if a primary cluster is unavailable. Similarly, resources of the nodes within a cluster (which may include multiple computers) can be reallocated as processing needs require.

[0028]     One function of the processing center 150 is to route communications from facility residents using kiosks 102 to outside parties 180, 181.  The processing center 150 routes voice, text, and/or video traffic from facility kiosks 102 to their ultimate destinations 180, 181.  To route voice communications traffic, the processing center 150 communicates via internet protocol to a "VoIP-to-POTS" provider 160, which converts VoIP communications to POTS communications.  Example VoIP-to-POTS providers 160 include Paetech, Level 3, and

Docket No.:   P5789.0006/P006

Verizon. After converting the VoIP signal to a POTS signal, the VoIP-to-POTS provider 160 provides the communication to a telecommunications provider 170 that routes the call to the called parties 180, 181.

[0029] The processing center 150 may be in communication with multiple VoIP-to-POTS providers 160, and may route communications to any one of the providers 160 based on various factors including time-of-day, load, or rates. Similarly, the processing center 150 or the VoIP-to-POTS provider 160 may route calls to various telecommunications providers 170 based on factors including time-of-day, load, or rates. For example, VoIP-to-POTS providers 160 often have connection limits. Therefore, the processing center 150 may be configured to first attempt a connection to a primary VoIP-to-POTS provider 160 with a low rate for a given call destination. If that connection is refused, then the processing center 150 would be configured to attempt connections to a second, and perhaps third VoIP-to-POTS provider 160 until a connection is established.

[0030] The processing center 150 can also receive calls from outside parties 180, 181 and route the calls to facility kiosks 102. The VoIP-to-POTS provider 160 may convert the POTS signal to a VoIP signal before the communication is sent to the processing center 150. Alternatively, although not shown in FIG. 1, the outside callers 180, 181 may place a call using the traditional telecommunications provider 170 and may be directly connected to the processing center 150 where the signal is converted using an A/D converter. The processing center can connect outside callers 180, 181 to residents and can also allow outside callers 180, 181 to leave voicemail messages.

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

[0031]      The processing center 150 also routes video and text communications. Communications received from facility routers 104 are stored or cached on web servers in the processing center 150 or on third party web servers.  In addition to storing communications routed through the processing center 150, the processing center 150 may be configured to receive and store recordings of local communications that have been recorded at the facilities 100 (e.g., local video communications).  The communications stored at the processing center 150 can be accessed by an outside party 180, 181 by using a web browser on a computer connected to the Internet 190.  The processing center is also configured to receive requests for data from the routers 104, such as hypertext transfer protocol (HTTP) requests, and return information to the routers 104, such as information on a third party website.

[0032]      Another function of the processing center 150 is to log information into databases.  The processing center 150 logs all voice and data traffic, and may record voice or video traffic according to predefined rules.  The processing center 150 also logs all failed and/or blocked communication attempts, such as attempts to call third parties that a facility resident is prohibited from contacting.  Local activity logs on the kiosks 102 may be periodically uploaded to the processing center 150.

[0033]      FIG. 2 is a system diagram showing the organization and interaction of clusters of another example interactive audio/video platform 225. FIG. 2 illustrates multiple facilities 200, each connected to the Internet 290 via a router 204.  The facilities 200, which may include at least one kiosk, communicate, via the Internet 290, with a processing center 250 that is made up of multiple call clusters 251-254.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0034]    FIG. 2 illustrates a first central processing cluster 251 in location A, a second central processing cluster 252 in location B, a third central processing cluster 253 in location C, and a fourth central processing cluster 254 in location D.  The central processing clusters 251-254 together operate as the processing center 250, and each cluster may include one or many computers functioning together to perform various tasks.  The central processing clusters 251-254 may be located in different geographic regions, and one or more of the central processing clusters 251-254 may function as backup clusters or overflow clusters, operating only when other clusters are unavailable or overloaded.

[0035]    The routers 204 at each facility 200 may be configured to route communications for a particular facility to a predetermined central processing cluster, and may be set to route communications to another central processing cluster if the predetermined central processing cluster is unavailable.  Alternatively, the routers 204 may be configured to distribute communications across multiple processing clusters according to a predetermined ratio (described below).  These two configurations may be used alternatively or in conjunction with one another, and their use could be determined based on the traffic load on a network.

[0036]    The routers 204 may also be configured to route communications over multiple outbound network connections at each facility 200.  The router 204 may be configured to use a second network connection when a first network connection is unavailable.  For example, a facility may be serviced (i.e., communication with the outside world) by a DSL line and a T1 line, and the DSL line may be used as a backup when the T1 line becomes unavailable.  As mentioned above, a router 204 may also be configured to distribute communications across multiple network connections according to a predetermined ratio.  For example, if a facility is serviced by multiple T1 lines, the router 204 may be configured to distribute the call-data load

8

Docket No.:   P5789.0006/P006

across the T1 lines to a single cluster, or multiple clusters, allowing a large capacity of calls to be carried simultaneously.  These configurations may be used alternatively or in conjunction with one another, and their use could be determined based on the traffic load on the network.

[0037]    Each central processing cluster 251-254 includes multiple nodes each performing various functions.  A central processing cluster may be one computer that is divided into virtual servers, each of which is treated as a node in the cluster.  Alternatively, each node may be a dedicated computer, or multiple computers can form each node.  Servers can be added as necessary to increase capacity of the cluster.

[0038]    An example cluster for use in a secure facility is now described.  Secure facilities, such as prisons, have unique features that must be addressed by the interactive audio/video platform 225.  For example, residents have limited access to cash, and so the platform provides various ways of paying for telephone and/or data access.  An account is established for each resident, and funding of the account is provided via kiosks, calling cards, and an interactive voice response system.  Provisioning for outside funding may also be desirable.  Accordingly, the platform 225 may provide for funding of an account by an outside party via live customer service, an interactive voice response system, a website, or kiosks in visiting areas of the facilities.

[0039]    The interactive audio/video platform 225 may also allow collect calls to be placed  by residents.  A common problem with collect call systems is that, because a called party may not recognize the number or know what individual from the facility is calling, there must be a way for a resident to identify themselves.  In traditional collect call systems, an individual may be allowed to record their name to be played to a called party.  This, however,

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

can permit the transmission of a short message without payment for use of the system. Accordingly, the platform 225 may instead retrieve and play an audio clip of the inmate's name that was recorded under supervision, or that was recorded by another party, or generated by a voice synthesizer.

[0040]    System accounts must be tied to particular facility residents and must be only accessible by those facility residents. To accomplish this, the platform 225 may require a resident, upon accessing the system, to enter a unique PIN number that is associated with the resident. Additional PIN numbers may be required to access voicemail or other secure features. The platform 225 may also include voice and/or facial recognition features, described in more detail below.

[0041]    Secure facilities also often place restrictions on the communications of residents. Accordingly, the platform 225 is able to automatically restrict a resident from making calls or video and text communications with certain destinations based on restrictions noted in the residents' accounts. Similarly, the platform 225 prevents outside callers from leaving voicemail messages for inmates that are restricted from communicating with the outside caller. The platform 225 may also place time limits on calls, and may include audio and/or video warnings that a call may be cut off due to time restrictions. Additionally, the platform 225 may prevent a resident from accessing certain kiosk features, such as entertainment features, based on a variety of time, facility, or other rules.

[0042]    Secure facilities also require activity logging and monitoring capabilities. The logging may include storing information such as when a communication was made, to whom, and how long it lasted. Full audio and/or video recording of communications may also be

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

necessary in prisons, for example, where virtually all communications need to be recorded and retrieved by investigators.  Investigators may also need to monitor live communications.  These functions can be automated by the platform 225.  The platform 225 may also be set to not record certain communications, such as communications between an inmate and his attorney or a doctor.  This can be automated by including attorney or doctor numbers on a "do-not-record" list for the system or resident's account or by providing an option to request that a communication not be recorded via an interactive response system.  The request may be reviewed by a live operator for authenticity, or may be logged for further review to detect abuse.

[0043]     Each central processing cluster 251-254 includes a data processing node 256.  The data processing node 256 hosts data routing, communication recording, and logging functionality.  The data processing node 256 is also responsible for digital signal processing.  Audio routing and recording may be used to process and route calls to destination parties, or to record and retrieve voicemail messages or communications records.  The data processing node 210 may be one or many computers functioning together to form the node.

[0044]     The data processing node 256 is responsible for routing communications to telecommunications providers 270 and routing video and data traffic to and from other kiosks 102 or third party servers 203.  For telephone calls, a distributed carrier system allows clusters to access multiple VoIP-to-POTS providers 260 and telecommunications providers 270 to terminate any call.  If one carrier is overloaded, the data processing node 256 will seek the next available carrier based on a set of predefined rules that govern priority.  Priority can be set based on factors such as rate, time of day, call termination point, and carrier load.  The data processing node 256 may optionally track the number of connections sent to a single carrier, and

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

automatically route calls to a different carrier based on the carrier load.  Call processing administrators can adjust the priority at any time via a single, dedicated interface.

[0045]      Each central processing cluster 251-254 includes an application node 257. The application node 257 hosts payment validation, security, user interface, and business logic functionality.  Business logic functionality includes all the rules governing communications or information access.  This could include, for example, fraud prevention and protection, schedule limits defined per resident, facility, phone, or destination number, or alarms for triggering investigation.  The application node 257 is also responsible for implementing rules related to call acceptance, communications blocking, recording, and logging functionality.  The application node 257 can be accessed by authorized users via an administrative web page.  By accessing the application node, administrators and investigators 240 can retrieve recorded calls, and can review records and adjust settings, such as calling or voicemail permissions for facility residents. Customer service personnel 241 can also use a web page to review issues reported by facility residents or outside callers.  The application node 257 may be one or many computers functioning together to form the node.

[0046]      Each central processing cluster 251-254 also includes a database node 258.  The database node hosts settings for the business logic functionality.  The database node 258 also stores indexed logs, audio and video communication recordings, voicemail recordings, and settings for individual residents and facilities.  The database node 258 may be one or many computers functioning together to form the node.  The database nodes 258 at each central processing cluster 251-254 may replicate some or all of the data at another database node.  Since some facilities may impose rules regarding the geographic location where their data is stored, the

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

central processing cluster 251-254 may include rules that define the data that the databases will replicate for each facility.

[0047]     Central processing clusters 251-254 are connected to a communications network and to one another via smart load balancers 255.  The smart load balancers 255 may be configured to communicate with one another over the Internet or through a dedicated communications network or link.  The smart load balancers 255 may be configured to communicate to periodically update status information stored at each smart load balancer.  The smart load balancers 255 can accordingly redirect incoming communications received from routers 204 based on the availability or load on a particular central processing cluster, and can redirect outgoing communications based on the responsiveness of a provider network.

[0048]     Central processing clusters 251-254 can also share and retrieve data from one another directly via a communications link or over the Internet.  For example, if a resident at Facility A makes a request for a voicemail or text message, and the request has been routed to central processing cluster 251, but the desired data is stored on central processing cluster 252, cluster 251 can retrieve the audio from cluster 252 for playback.  Similarly, an investigator reviewing recordings via the web site interface can be communicating with the application node 257 using any central processing cluster 251-254 and can retrieve recordings from any cluster. Logs and recordings can be stored at multiple geographically diverse locations and may be backed up at separate locations for redundancy.  A central processing cluster 251-254 can identify a storage location of data by referencing a cluster identifier that is included with each piece of call data in a database node 258.  Accordingly, the databases storing data do not need to be replicated across clusters (though they can be).

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0049]    The multiple central processing clusters 251-254 provide full cluster fail-over.  That is, if one of the central processing clusters 251-254 fails, the routers 204 at the facilities are configured to automatically seek and connect to another cluster.  Similarly, the smart load balancers 255 are configured to redirect incoming and/or outgoing communications when a particular cluster 251-254 is unavailable or non-responsive.  In both instances, the other cluster can take over call processing duties and allow communications to continue.  Using multiple computers at each node of a cluster ensures that, if a single node in the cluster fails, another node can take over all of the functions of the failed node.  Resources of a node in a cluster may be reallocated based on processing requirements.  This all happens seamlessly without affecting configurations at the facilities 200 or the routers 204.

[0050]    Investigators and administrators 292 can access the platform 225 using a computer with a web browser.  The web interface of the platform 225 enables investigators and administrators 292 to view logs, listen to and view audio and video recordings, and change configuration settings for their facility.  Outside parties 291 can also use a web browser to access a web interface that enables them to create an account, add funds to their account or to a resident account, or send and receive audio, text, and/or video messages to and from a resident, as described in more detail below.

[0051]    By removing the processing centers 150, 250 from the facility 100, 200 and distributing it across multiple clusters, sensitive computer hardware can be housed in special environmentally controlled and secure hosting environments that may be geographically dispersed.  Clusters of computer hardware can operate independent of one another, allowing for redundancy and failovers.  If a cluster completely fails, another functional cluster can take over all computing processes.  Additionally, an individual cluster is redundant within itself, so that

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

should any node of the cluster fail, resources can be reallocated to perform the required functions of the node.

[0052]    Computing clusters can handle large volumes of voice and data traffic from multiple locations more effectively than non-cluster solutions.  This is a result of clusters being able to adapt to call load and expand capacity as needed.  The resources within a cluster 251-254 can also be adjusted dynamically as service needs require.  For example, if a call processing node 256 becomes overloaded, resources can be redirected from another node.  This applies across clusters 251-254 as well; if a cluster starts to come under heavy load or become nonresponsive, connected clients can be shifted to a different cluster.

[0053]    Multiple clusters also facilitate maintenance and expansion, as they allow operations at a single location to be interrupted for planned or unplanned servicing without bringing down communications and services.  Clusters allow near limitless scalability as service needs expand.  This can be accomplished by increasing computing capacity of the cluster, with no downtime.  This also leads to hardware cost savings as service capacity can be increased with minimal hardware investment.  Services within a cluster can be upgraded, or computing capacity added without affecting service availability.  Higher uptime results in enhanced revenue.  Fast replacement and maintenance is facilitated by having service personnel and replacement equipment in close proximity to a small number of cluster locations.

[0054]    FIG. 3 illustrates an example kiosk 102 used in an embodiment of the interactive audio/video platform.  The kiosk 102 includes an integrated camera 303 that can be used for video communications or for user authentication via facial recognition.  The kiosk 102 also includes a touch screen 301 that displays images and can detect the presence and location of

DSMDB-2865401v1

Docket No.:   P5789.0006/P006

a user's touch within the display area.  The touch screen 301, may be, for example, a 15 inch capacitive or resistive touch screen display.  The touch screen 301 serves as the main kiosk interface with a user.  A telephone handset 302 connected to the kiosk 102 includes a speaker and a microphone.  The telephone handset 302 can be used to issue voice commands and provide voice authentication as required, or it can be used for voice and video communications, among other things.  The telephone handset 302 is optional, as a kiosk user may instead plug in a headphones or headphones with an in-line microphone using one or more stereo headphone jacks 304.  Stereo headphone jacks 304 can also be located on the side of the kiosk 102 or behind a movable panel 311, which can be locked in a position exposing the jacks 304, or in a position blocking them, depending on the preferences of the facility.  A USB interface optionally located behind the movable panel 311 can be used for system diagnostics by technicians or to synchronize files to an external device, such as a portable media player.  The kiosk 102 also includes a speaker 305 that provides audio output.

[0055]    While FIG. 3 illustrates a kiosk that is a wall-mountable kiosk, other structural forms, enclosures, or designs are possible.  The kiosk 102 may be any shape or size suitable to providing the described components and services.  The kiosk 102 may be, for example, a standalone structure, a personal computer, a laptop, a mobile device, or a tablet computer device.  If the kiosk 102 is in the form of a laptop, mobile device, or tablet computer, it may be a ruggedized device designed to withstand physical shock, and may be integrated with a docking system that connects to the device for locking, storage, display, additional connectivity and/or charging.  The kiosk 102 may be tethered to a structure by known methods, such as a security lock cable.

Docket No.:   P5789.0006/P006

[0056]     Internally, the kiosk 102 includes a processor-based computer system 400, such as the one illustrated in the FIG. 4 block diagram.  The processor-based system 400 may be a computer system or any other processor system, including computer systems designed for use in mobile devices or tablet computers.  The system 400 includes one or more central processing units (CPUs) 402, that communicate with random access memory (RAM) 408, read-only memory (ROM) 410, a hard disk drive 414, a network interface controller (NIC) 406, a touch screen interface 501, and other Input/output (I/O) devices 404 over a bus 420.  It must be noted that the bus 420 may be a series of buses and bridges commonly used in a processor-based system, but for convenience purposes only, the bus 420 has been illustrated as a single bus.  I/O devices 404 may include features described above in reference to FIG. 3 including the telephone handset 302, the camera 303, or the headphone jacks 304 and may also be connected to the bus 420.  The processor-based system 400 also includes ROM 410 which may be used to store a software program.  Portions of the software program may also be stored on the hard disk drive 414, and the software program may write and read data such as logs to and from the hard disk drive 414.  A NIC 506 handles incoming and outgoing network communications, such as IP communications via Ethernet.

[0057]     The hard disk drive 414 of the kiosk 102 optional, as the device could be configured to utilize network storage instead.  When configured to utilize network storage, the kiosk 102, upon being powered on, will search the network (which may be a local network) for a server (which may be a local server) to locate a boot image.  When a boot image is located, the device will download and run the boot image (a "netboot").  When the device is in this mode, all temporary information after booting is stored in the local memory of the device (RAM 408).

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

Important information, such as logs of user activities, is sent directly to a server (local or remote) for permanent storage.

[0058]     The kiosks 102 may be configured to communicate directly with servers at the processing centers 150, 250 (illustrated in FIGS. 1 and 2), or they may be networked to communicate with a local server computer at the facility 100 that coordinates communication with servers at the processing centers 150, 250.  In another configuration, they may communicate with a server at a location remote to both the facility 100 and the processing centers 150, 250. The processor-based computer system 400 may run an operating system such as the Linux operating system, or may be configured with a custom operating system.  Although the FIG. 4 block diagram depicts only one CPU 402, the FIG. 4 system could also be configured as a parallel processor machine for performing parallel processing.

[0059]     FIG. 5 illustrates an example idle screen 501 of the kiosk interface (i.e., touch screen 301).  The idle screen 501 is displayed when no resident has logged on or reserved the system for use.  The kiosk interface may display a video 502 of a handset being lifted, a finger touching the screen, and a headset being plugged into the audio jacks, which instructs the resident how to interact with the kiosk 102.  The video 502 may also display advertisements or other facility messages.

[0060]     Three primary interaction options are presented on the idle screen 501. First, a resident can select the login icon 503 to log in to the system.  The login procedure is described in more detail below in reference to FIG. 7.  Second, a resident can select the tip icon 504 to submit an anonymous crime tip without logging in.  Once this icon 504 is selected, the resident is presented with the ability to type or record a crime tip that is forwarded to the

DSMDB-2863401v1

Docket No.:  P5789.0006/P006

appropriate authorities.  Third, a resident can select the PREA icon 505, which is used to report an incident under the Prison Rape Elimination Act (PREA).  As with crime tips, these incident reports are prepared anonymously and forwarded to the appropriate authorities.  Accordingly, the resident is not required to log in for some functionality.

[0061]     The idle screen 501 also displays an appointments schedule 415, which shows reservations of the kiosk 102.  Facility residents are able to use the kiosk 102 to reserve use of the kiosks at certain times, as is discussed in more detail below.  The appointments schedule 415 shows when this particular kiosk 102 is reserved.  The "Requested" tab shows requests submitted by inmates, and the "Confirmed" tab shows reservations that have been confirmed by the appropriate administrative staff.  Requested reservations may be transmitted to administrative staff, enabling staff to view and approve the reservations using a web interface. Alternatively, the approval of reservations can be automated, so that each resident is permitted to make a certain number of reservations within a predefined time period.  The activity display 506 shows recent activity for a particular kiosk 102 or group of kiosks 102.

[0062]     Other features on the idle screen 501 include a scroll 507 that can display various facility messages, such as facility bulletins, set by an administrator.  The scroll 507 can also be used to display advertisements or information about features of the kiosk 102.  Icons 508-511 at the bottom of the display are persistent icons that are displayed on most or all screens of the kiosk interface.  A resident can select the volume icon 508 to change the volume of the speakers, headphones, or handset.  Selecting the repeat prompt icon 509 causes the system to replay the last voice prompt.  The help icon 510 takes a resident to a help menu, which may include interactive help with audio and video instructions.  The language icon 511 changes the language of the text displayed on the kiosk 102.  In the illustrated example, the language icon

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

511 can be selected to switch the language to Spanish, but the language icon 511 may allow

switching between additional languages such as French or Russian.

[0063]     When a kiosk 102 has been reserved, a reservation screen 601 is

displayed on the kiosk interface, as illustrated in FIG. 6.  In the illustrated example, the resident's

name is displayed in an icon 602, which instructs the resident to log on.  When a kiosk 102 has

been reserved, only the resident with the reservation can log on.  If another user is already

accessing the system when there is an upcoming reservation, the current user is warned of the

upcoming reservation via messages displayed on the kiosk 102.  Warnings can be displayed in

several intervals, for example 5 minutes, 1 minutes, and 20 seconds prior to a scheduled

appointment time.  Once the scheduled time arrives, the current user is automatically logged off

of the device.

[0064]     FIG. 7 illustrates a login screen 701 of the kiosk interface.  At the login

screen 701, a resident is requested to enter a personal identification number (PIN) using a virtual

key pad 702 and login icon 703 to log in to the kiosk 102.  Each resident at a facility is given a

unique personal identification number to ensure security.  During the log in process, the camera

of the kiosk 102 is activated.  An image or video of the resident logging on is recorded, and

stored along with a record of the attempted log in.  Administrators can later view images or video

of these log in attempts. In addition, the kiosk 102 will use facial detection software to ensure

that a face is present in the camera field of view.  If no face is present (for example, because a

resident is blocking the camera with their hand or other obstruction), the system will not permit a

log in to be completed.  During a resident's log in, the kiosk 102 may display a video feed 705

on the login screen 701, providing a visual reminder to the resident that the images are being

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

recorded.  Additional secondary verification systems (such as voice biometrics and

individualized facial recognition) may also be utilized, as illustrated in FIGS. 7-8.

[0065]     FIG. 8 illustrates a voice verification screen 801 of the kiosk interface.

The voice verification system utilizes a voice ID audio clip that was previously recorded by the

facility resident.  The pre-recorded clip can be recorded under the supervision of facility

administrative staff, and may be, for example, a recording of a resident stating their name or

another short phrase.  At the voice verification screen 801, the facility resident is requested to lift

the telephone handset and speak the pre-recorded phrase.  After speaking the phrase, the resident

selects the login icon 802 to log into the system.  The voice verification system records the

phrase spoken by the facility resident, and compares a digital signature of the audio to the pre-

recorded audio clip.  The pre-recorded clips may be created and stored locally at the kiosk 102

(not shown) or may be created by another mechanism and stored at a database 258 of the

processing center 250 (as illustrated in FIG. 2).  Accordingly, the comparison may be made by

software on the kiosk 102 or at the processing center 250.  If the recorded audio matches the pre-

recorded audio clip, the resident is granted access.

[0066]     FIG. 9 illustrates a facial recognition verification screen 901 of the kiosk

interface.  Facial recognition verification may be used in combination with one or more of the

other verification systems, including the PIN verification and the voice verification.  On the

facial recognition verification screen 901, the video preview window 902 displays the field of

view of the camera.  The display requests that the resident line up their eyes with the eye level

marks 903 displayed next to the video preview window 902.  This ensures that an appropriate

image is captured for verification.  When the resident selects the verify icon 904, facial

verification is performed.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0067]     As with the voice verification system, the facial verification processing may be performed locally at the kiosk 102 or may be performed at the processing center 150.  In either case, the facial verification processing includes comparing an image captured by the camera 303 of the kiosk 102 with a pre-stored image of the resident.  The facial recognition system uses facial "landmarks" generated by mathematical formulas to present a score which indicates a likelihood that the captured image matches the pre-stored image.  If the images match to a sufficient degree, the verification is approved and the resident is granted access to the system.  If the images do not match, the system may store the captured image and other usage details for review by administration officials.

[0068]     Once a resident has logged into the system, they are presented with a main screen 1011 of the kiosk interface, illustrated in FIG. 10.  From this screen, a resident can access all other features of the kiosk 102.  Features can include phone calling, internet access, text messaging, video conferencing and messaging, religious services, law library access, tele-medical sessions, commissary ordering, educational materials, Kite recording, and access to other facility services.  As such, the screen 1011 can have a phone icon 1001, an internet icon 1002, a messaging icon 1003, a video icon 1004, a religious services icon 1005, a law library icon 1006, a tele-medical icon 1007, a commissary icon 1008, an education icon 1009, and a kite icon 1010.  The icons in FIG. 10 are a sampling of possible icons, but other icons may be provided for additional features.  The options available at the main screen 1011 can be configured by facility administrators, and each resident can be configured with a unique profile limiting the available options to some sub-set of all of the options.  Accordingly, certain restrictions can be placed on individual residents of the facility due to misuse of the system or for other reasons.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0069]     Communications features are central to the kiosk functionality.  Residents can communicate via voice, video, or text messaging.  To initiate a voice communication, a resident can select the phone icon 1001 from the main screen 1011.  The resident is then presented with a phone screen 1111, such as the one illustrated in FIG. 11.  Depending on the configuration preferred by a facility, additional authentication may be performed prior to the voice communication (voice authentication, facial recognition authentication, or other forms of authentication).

[0070]     As shown in FIG. 11, at the phone screen 1111 a resident is presented with a virtual key pad 1101 that can be used to dial a telephone number.  The resident can also select a number using the call history 1102 or phonebook features 1103.  The call history 1102 is automatically constructed from a resident's history of incoming and/or outgoing calls.  The phonebook can be edited by the resident.  Quick dials 1104 are presented for frequently used administrative numbers such as customer service, funds transfer, anonymous crime tip, PREA reporting, bail bonds, or voicemail.  A resident's call is routed, via the internet, to a processing center such as processing centers 150, 250 illustrated in FIGS. 1 and 2.  Processing at the processing centers determines whether the resident has permission to make calls to the dialed party and whether the resident has sufficient funds, and either allows or denies the call.  The processing center 150, 250 can also log and record the call, as appropriate.  If the call is approved, it is processed according to the descriptions above in reference to FIGS. 1 and 2.

[0071]     From the phone screen 1111, a resident can access voicemail using the quick dial icon 1104.  FIG. 12 illustrates an example voicemail screen 1201.  As shown in FIG. 12, voicemail messages can be displayed visually in a list 1202.  The voicemail can be stored locally on the kiosk 102 or may be stored at a processing center (such as processing centers 150,

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

250 illustrated in FIGS. 1 and 2). The resident may be permitted only a limited number of playbacks of voicemail recordings, indicated by icons 1204 displaying a number of remaining playbacks. Limits on playbacks may be optionally removed, depending on the desires of a particular facility. Optionally, the kiosk 102 may be configured so that a voicemail may be played more than a predetermined number of times only after a fee is paid. The call back icon 1203 allows the resident to return the call of the individual displayed on the list 1202. Voicemail messages are stored permanently on the server of the processing center, so that administrative staff always has an archive of voicemails received by the residents.

[0072]    A resident may also access a bail bonds screen 1301 from the phone screen 1111. The bail bonds screen 1301 is displayed in FIG. 13. As shown in FIG. 13, available bail bond companies may be displayed in a random order in a list 1302. It should be appreciated that the companies can be listed in alphabetical or other orders too. The resident may select from this list or may select the search icon 1303 to search for a bail bond company by name. If the search icon 1303 is selected, the resident can enter the name of a bail bond company using an on-screen keyboard, and a database of known bail bond companies will be searched.

[0073]    The kiosk 102 also enables incoming calls. An outside caller, such as parties 180, 181, 280 in FIGS. 1 and 2, can dial a number assigned to one or more facilities and, using an IVR with dial-by-name functionality, locate the inmate they wish to call. Alternatively, the resident may have a personalized number assigned, for an additional fee. If the resident has permission to receive incoming calls from the calling party, and if the resident or the outside caller has sufficient funds in their account, then kiosks 102 that are identified as being located in the area that the resident is housed in will play an alert tone. Optionally, the schedule of the

Docket  No.:    P5789.0006/P006

resident can be stored in the system and different kiosks 102 may be activated according to the
predicted location of a resident based on the schedule.  When there is an incoming call, the kiosk
102 would display the resident's name, and optionally, a caller ID for the incoming call.  The
kiosk 102 may also audibly announce the incoming call and the name of the receiving party (this
may be enabled or disabled on a per-facility basis).

[0074]    To answer the call, the resident would need to log into a kiosk 102 using
the login procedure described above.  Only the resident associated with the called number will be
permitted to answer the call.  During the resident's log in, a voice message can be played to the
outside caller, so that they are informed that the resident is in the processing of logging in.  If a
resident does not log in after a predetermined period of time, the caller is prompted to leave a
voicemail message.

[0075]    When there are multiple incoming calls received simultaneously, the
kiosk 102 will announce the names of the multiple calling parties.  The login screen would
display the names of the calling parties or the called parties, and the resident would select the
appropriate name from the screen and then proceed to the login procedure.

[0076]    The incoming call can also be a video call.  In this case, the caller would
log into an internet website providing a video conferencing interface (described in more detail
below).  As with voice calls, an alert tone would be played by one or more kiosks 102 in the
vicinity of the resident, and the resident would be prompted to log in to receive the video call.

[0077]    Using the kiosk 102 for telephone communications has significant
advantages over ordinary telephone systems.  The touch screen of the kiosk 102 can display extra
information, such as caller ID, available funds, time left on a call, or help options.  The touch

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

screen can also display advertisements or facility messages during the call.  Additionally, through integration with the processing centers 150, 250, additional security, logging, monitoring, and recording functionality is enabled.

[0078]     The kiosk 102 also provides secure text-based messaging between residents of the facility and the public.  A resident can access text-based messaging functionality by selecting the messaging icon 1003 from the main screen 1011 illustrated in FIG. 10.  On the messaging screen (not shown), the resident can select to retrieve received messages or to compose and send a new message.  To send a new message, the resident types a recipient name or selects a name from an address book similar to how text messaging is done on cellular phones, smart phones, and PDAs.  An on-screen keyboard allows the resident to type a message. Residents can be charged per-message or by alphanumeric character, as desired by the facility.

[0079]     Messages sent by residents are transmitted to a processing center (such as processing centers 150, 250 of FIGS. 1 and 2) where they are stored.  The processing center sends an email or SMS message to a pre-registered email address or cellular phone number of the recipient, notifying that they have an available message.  Optionally, messages may include photo or video attachments taken with the kiosk camera.  Attachment functionality may be enabled or disabled based on facility preference.  The message itself is not displayed in the email or SMS message, the message is only available for viewing when the outside user logs into a secure website.  This ensures secure delivery of the message.  For additional security, the messaging functionality may be set so that messages viewed on the website cannot be forwarded or copied from the secure website.  This provides the facility with an additional level of control over the messages.  Thus, while the system resembles email, the messages are not accessible via email, and can not be copied or forwarded like email.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

[0080]     All messages transmitted via the system are logged at the processing centers 150, 250 (as illustrated in FIGS. 1 and 2).  Even messages that are deleted by a resident our outside party can be stored for audit and investigative purposes.  Additionally, messaging may be restricted on a per-resident or group basis: prohibiting particular inmates from sending or receiving messages to all, or just some, persons, as well as prohibiting some outside parties from messaging specific inmates.  An outside party may need to have an account with the system, and may need to have proper funds or credits in the account and pass an ID verification check, which may include the verification methods above (PIN number, voice identification and/or facial recognition).

[0081]     The kiosk 103 also provides secure video conferencing and video messaging.  A resident can access video conferencing functionality by selecting the video icon 1004 from the main screen 1011 illustrated in FIG. 10.  FIG. 14 illustrates an example of a video conferencing screen 1501.  Incoming video is displayed in a video window 1502, and a resident can view outgoing video in a smaller window 1503.  The video conferencing feature may also allow residents to save a snapshot of the incoming video.  The snapshots may incur an additional charge to the resident's account.

[0082]     Full motion color video conferencing can be provided between a resident in a secure facility and either (a) a remote party connected over the internet with a standard internet browser or (b) a party at another kiosk 102 located in the same or at another facility.  For example, kiosks 102 may be located in a visitor's area of a facility.

[0083]     An outside party can connect to an internet website that provides video conferencing with a facility and log in with a pre-registered account or create a new account.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

The outside party may need to have an account with the system, and may need to have proper funds or credits in the account and pass an ID verification check, which may include the verification methods described above (PIN number, voice identification and/or facial recognition).  The remote party can add funds to his/her account to cover the cost of video conferencing, which may be charged on a per-session or per-minute basis, as set by the facility. From the website, the outside party can either schedule a call or connect to a pre-scheduled call. The outside party can also attempt a live call to the facility (as described above).  To participate in the video conference, the outside party would need a computer with an internet connection, a web camera, a microphone, and speakers (or headset).

[0084]    An outside party can also use another kiosk 102 located in the same facility.  As with the internet website, the outside party would log into a visitation kiosk 102 and could add funds to an account to cover the cost of video conferencing (as mentioned above, a resident may also be allotted a certain amount of free visitation time).  The outside party can either schedule a call or connect to a pre-scheduled call.  It is also possible to route communications from one facility to another, so that a party at a first facility can communicate with a resident in another.  When two kiosks 102 in the same facility are used for a video conference, the video may be transmitted through a local media server at the facility, instead of being routed through servers at a processing center 150, 250 as illustrated in FIGS. 1 and 2.

[0085]    Facial detection software is utilized to provide additional security and to monitor use of the video conferencing feature.  The facial detection software may be executed locally on the kiosk 102, or may be executed at processing centers that are routing the communications.  The facial detection software uses video analysis of individual frames of video to detect that a human face is present inside the video frame.  If a face is not detected, the system

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

blurs or otherwise obscures the image.  This prevents inappropriate images from being

transmitted.

[0086]     The facial detection software may also periodically pass images to a

facial verification system.  The facial verification system compares a detected face image with a

face image stored in a database.  If the detected image does not match the pre-stored image, a

warning is displayed to prompt the resident to face the camera so that a second image can be

captured.  If the second image does not match or a face is not detected, the account will be

logged off the system.  This can be logged as a violation at the processing center.  The facial

verification ensures that the logged-in resident has not allowed another resident to use the

account after logging in.  The facial detection software may also detect when a second face is

present in the frame, and may blur or disconnect a conference when a second face is present.

[0087]     The facial verification feature can be active even when the resident is not

intentionally using the camera, such as when the resident is using entertainment or text

messaging features.  Images taken periodically and compared against pre-stored images ensure

that only authorized residents are accessing system features.  Facial verification may also be used

on video being captured by an outside user during a video conference or video message.  Outside

parties that wish to use the video conferencing features may be required to register a facial image

with their account.  This ensures that only authorized individuals are communicating with a

resident during a conference.

[0088]     Video messaging allows a resident and outside party to send video

messages to one another using the kiosk 102, in a similar manner to the text-based messaging

described above.  An example video messaging screen 1601 is illustrated in FIG. 15.  An outside

Docket No.:   P5789.0006/P006

party receiving a video message would receive an SMS or email message alerting them to the availability of the video message.  As with the text-based messaging, the outside party would log into a secure website to view the message.  Video messages can be charged on a per-message or per-minute basis.

[0089]    Another option available from the main screen 1011 of the kiosk 102 (illustrated in FIG. 10) is a tele-medical session 1007.  This feature allows residents to participate in a video conference with a medical professional or record video that can used to pre-screen patients before they are allowed to schedule an appointment with a doctor.  All video can be logged to allow facility staff to review and follow up on any potential medical situations.  Optionally, the facial detection features described above may be disabled for tele-medical sessions.

[0090]    By selecting the religious services icon 1005 of the main screen 1011 (illustrated in FIG. 10), a resident can access video and audio recordings of religious services.  The resident can also access religious texts.  The law library icon 1006 (illustrated in FIG. 10) provides access to electronic versions of law books and statutes in a searchable format.  Locally-relevant law books may be provided (i.e., the laws for the state the facility is located in).  Law libraries may be stored on servers at the processing center, or may be accessed via publicly available websites.

[0091]    Selecting the education icon 1009 of the main screen 1011 (illustrated in FIG. 10) provides a resident with access to various educational material.  Facility rules and procedures are presented for text-based browsing.  These can include handbook material covering facility rules, procedures, and other information.  The educational function may also

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

provide access to facility orientation videos that explain facility operations, rules, and procedures.  Access to this section can be made available without charge, but with limited viewing time to avoid monopolizing the kiosk 102.  Distance learning programs may also be offered as video and text coursework, for free or based on a charge, depending on facility rules.

[0092]    Selecting the commissary icon 1008 (illustrated in FIG. 10) from the main screen 1011 allows a resident to place orders from a facility commissary by browsing a collection of items and making selections.  The resident can purchase items using a shopping cart metaphor as implemented on internet shopping websites.  The resident must have available funds in their account to purchase items from the commissary.  Time spent browsing the commissary can be limited to a predetermined number of minutes per day, so that the function can be provided free of charge while not monopolizing the kiosk 102.

[0093]    Selecting the Kite icon 1010 provided on the main screen 1011 (illustrated in FIG. 10) allows a resident to prepare Kite messages.  Kites are a form of written communications in jails, and typically include requests for medical treatment, complaints or concerns about housing, commissary, food, and the facility itself.  The Kite menu is available to all residents, and does not require funds to access.  Kites are recorded using video from the camera 303, and audio from the telephone handset 302 of the kiosk 102.  The resident stands in front of the device and records their request verbally, and video (with audio) of the kite requests is recorded.  When recording a video, the kiosk 102 will indicate when the video is starting and will display a preview window during the recording.

[0094]    The resident can use the kiosk 102 to receive a history of all of their Kite requests and their current status, as illustrated on the example Kite screen 1701 illustrated in

Docket No.:   P5789.0006/P006

FIG. 16.  A resident can click the read response icons 1702 to read responses to past kite

requests.  When the resident submits a new Kite, the video message becomes available for

review by facility staff using the web interface of the central platform.  Kite messages are

presented to administrators as a queue of video messages to view and respond to.  A text-based

response can be prepared for viewing on the kiosk 102 by the resident.  Any action undertaken in

connection to the Kite (viewing, responding, changing status, etc.) can be logged in a Kite audit

trail and can be reviewed by facility administrative staff.

[0095]      The internet icon 1002 on the main screen 1011 (illustrated in FIG. 10)

provides access to information on internet web sites.  All traffic through the internet browser is

routed through a proxy server hosted at the processing center or locally at the facility.  The proxy

server can block any site that is not on a pre-approved list of websites.  The default behavior is to

block access to a website, and only a site added to a whitelist are reachable.  To facilitate

browsing of approved sites, the resident may be presented with a list of categories and pre-

approved sites.  By selecting a category, the resident is presented with a list of sites in that

category.  FIG. 17 provides an example of an Internet screen 1701 showing available websites

1702 in an Education Category 1703.  Category 1703 shows certain categories (e.g., Adult and

Continuing Education) but is not so limited.  Any category approved by the facility can be

displayed.  The Internet browser can provide access to the full text of books in the public domain

and made available through public websites.  Streaming television may be accessed through pre-

approved sites.

[0096]      The only method of text input for the internet feature is via an on-screen

keyboard on the kiosk display.  The keyboard may be enabled/disabled on a per site basis.  This

can be used to prevent residents from entering comments or messages on sites where they can

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

not be monitored.  For example, a resident may be permitted to view stories on a news site, but not permitted to enter comments onto the site.

[0097]     For additional security, the resident may be blocked from entering their own internet address, and the only method of browsing may be the selection of pre-approved sites.  The proxy server can be configured prevent a resident from obtaining content from a site that is not on a pre-approved domain.

[0098]     All actions taken on a kiosk 102 are logged and recorded in the resident's records that are stored at the processing center.  Examples of information logged in an audit trail include each session start, location of the session (e.g., kiosk number), length, and audio or video recordings of activities.  The system can also log phone calls placed, including call destination, length, billing method, and a recording of the audio.  Video conferences can also be recorded (at both sides of the conference), and the time, length, and billing method are logged.  Text messages sent and received can be stored, along with message text, time, and destination.  The log can contain a list of every internet site and visited, at what time, and for how long.  All visitations attended, requested, or denied, and all interactions with outside parties can also be logged.  All applications and services accessed can be logged, including the time started and the length used.  As with the other features, the logging capabilities can be configured on a per-facility basis, allowing each facility to customize the level of reporting and monitoring, as appropriate.  Administrators can access logs or configuration settings using a web interface provided by the processing center 150, 250 (illustrated in FIGS. 1 and 2).

[0099]     All recorded communications are logged and made available for review by administrative staff.  Recordings (audio, video, and text) are associated with the resident and

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

the destination party.  Playback of recordings is made available through an administrative web interface provided by the processing center.  Recordings and text are also available for remote download via the web interface provided by the processing center.

[00100]     The described system can charge residents for access on a timed (per minute) basis.  The billing rate can be adjusted based on the activity and the time of day.  For example, video calls at 6am may be $.20/min and at 8pm they may be $.50/min.  Each resident has their own account, and funds are deducted from their account as they use the kiosk 102.  The kiosk 102 may display a running total of funds or remaining time for a particular activity.  When a resident launches a new application on the kiosk 102, they are informed of the current rate for that activity.  Pricing can be set using the administrative web interface.

[0100]     Additionally, the system may support multiple accounts for different features.  For example, a commissary account may be separate and external from a prepaid calling account or an entertainment account.  The kiosk 102 can provide the ability to transfer funds from one account to another, if enabled by administrative staff.

[0101]     If a resident has exhausted available funds, a prompt is displayed allowing the resident to send a pre-formatted email to contacts that have been associated with them.  An example fund request screen 1801 is illustrated in FIG. 18.  The associated contacts 1802 would be individuals that have in the past provided funds to the resident's account.  The pre-formatted email would request additional funds.  The system can restrict the number of requests that are allowed in a given time period.  For example, the system may only allow one request to be sent to each associated contact every 30 days.  The system will only allow one outstanding request per contact to avoid harassment.  The receiving party can reply to the email to have their name

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

blocked at any time.  Since the message is pre-formatted, the resident cannot use the fund request email for any other purpose.

[0102]    The kiosk 102 also allows a resident to request a visitation appointment. A resident can request a visitation with anyone that has a system account and has an established relationship with the resident.  For example, the resident can request a visitation appointment with individuals that have made a funds deposit for the resident or have communicated via phone, text, or video.  The resident can optionally pay for both sides of the visitation using their available funds, or only their own side, or they can request that the outside party accepting the visitation pay for both sides.  The appointment request message is submitted, and if approved by administrative staff, is forwarded to the visitor by SMS or email messaging.  The visitor can proceed to schedule the appointing using a web interface accessible via the Internet. Alternatively, a visitor can initiate a visitation request using the website, and it can be forwarded to the resident for scheduling via the kiosk 102.  When a visitor requests a visitation, they may be required to pay for both sides of the visitation.

[0103]    Appointment reminders may be provided via the kiosk 102 in increments leading up to the appointment (e.g., 2 days, 1 day, and 1 hour before an appointment).  The resident must log in to an available kiosk 102 during their visitation window to participate in the appointment.  If the resident has not logged in after a predetermined period of time, the appointment may be canceled.

[0104]    Visitation fees can be set to accrue at both ends of the conversation.  For example, the resident may pay a rate based on the minute rate in effect at the current time, and

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

the visitor would pay the rate at their location.  Visitation fees may be pre-paid at the time of reservation.

[0105]    Visitation rules can be set on a per-facility basis.  For example, facilities may limit the number and times of visits on a global or a per-resident basis.  The rules are defined in the administrative web interface and can be selected or changed at any time.  On-site visits can be conducted through kiosks 102 in a visitor's area of the secure facility.  If required at the facility, these visits may be provided without charge.  A visitor may, however, elect to exceed an allotted free time by paying for additional time, if permitted by the configuration settings of the facility.  Funds can be deposited locally via the kiosk 102, or by accessing funds in a pre-existing account.

[0106]    The kiosk 102 may also provide remote monitoring capabilities.  By accessing a web interface provided by the processing center 150, 250 (illustrated in FIG. 2 and 3), an administrator can remotely activate the camera and/or microphone on a kiosk 102.  This would enable the administrator to covertly monitor the area within the kiosk camera 303 field-of-view.

[0107]    The above description and drawings are only to be considered illustrative of specific embodiments, which achieve the features and advantages describe herein. Modifications and substitutions for specific conditions and materials can be made.  Accordingly, the embodiments are not considered as being limited by the foregoing description and drawings, but are only limited by the scope of the appended claims.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

## CLAIMS

1.      A system for providing services to a secure facility, the system comprising:

a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

a server that communicates with the kiosk via an internet connection, the server comprising a server processor, a network interface unit, and a computer memory;

the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the internet connection,

wherein the server records the audio and video and transmits the audio and video to a destination, and

wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying a personal identification number entered by the user and also  performing one or more of a facial recognition via the camera and a biometric voice recognition via the microphone.

2.      The system of claim 1, wherein the destination is a computer communicating with the server via a web interface, and the server is configured to authenticate a user of the computer via the web interface.

3.      The system of claim 1, wherein the destination is a second kiosk located in a visitation area of a second secure facility.

4.      The system of claim 1, further comprising:

a second kiosk located in a visitation area of the secure facility; and

a local server located at the secure facility

the kiosk being configured to transmit the audio and video to the local server when the communications are intended for the second kiosk located in the visitation area, and

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

wherein local server is configured to record the audio and video and transmit the audio and video to the second kiosk located in the visitation area.

5.      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to stop transmitting video to the destination when the check determines that a face is not present in the video.

6.      The system of claim 1, wherein the server is configured to periodically extract a frame of the video and authenticate a face in the frame against a stored identification image of the user.

7.      The system of claim 1, wherein the kiosk is configured to periodically record a frame of video and transmit the frame to the server, and wherein the server processor authenticates a face in the frame against a stored identification image of the user.

8.      The system of claim 1, wherein the kiosk accepts anonymous messages input by the user without requiring the user to enter the personal identification number.

9.      The system of claim 1, wherein the kiosk is configured to allow the user to reserve use of the kiosk by receiving a user request for use at a certain time and checking permissions related to the user that are stored on the server, and, when the user request is granted, the kiosk does not allow anyone other than the user to log in at the certain time.

10.     The system of claim 9, wherein, in intervals of time leading up to the certain time, when a second user is logged in, the kiosk is configured to display notification messages alerting the second user that the second user will be logged off at the certain time due to a reservation.

11.     The system of claim 1, wherein the kiosk is configured to accept messages input by the user after the user has logged on and transmit the messages to the server, and the server is configured to provide a third party access to the messages via a web interface of the server.

12.     The system of claim 11, wherein the server is configured to present the messages via the web interface such that the third party is restricted from copying or forwarding the messages.

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

13.     The system of claim 1, wherein the server is configured to receive an incoming call for the user from a third party caller, determine whether the user has permission to receive incoming calls, if the user has permission, transmit the incoming call to the kiosk and at least a second kiosk, and

wherein the kiosk and the second kiosk are configured to, upon receipt of the incoming call, display a screen notifying the user of the incoming call, and prompt the user to input log in information.

14.     The system of claim 1, wherein the kiosk is configured to provide the user with at least one of: access to audio, video, and text of educational and religious materials stored on the server and/or the kiosk, and the ability to order items from a list of commissary items.

15.     The system of claim 1, wherein the kiosk is configured to provide access to Internet web pages via a proxy that restricts access to authorized domains, and the kiosk is configured to log all visited Internet web pages and to transmit logs to the server.

16.     The system of claim 1, wherein the kiosk is configured to receive text-based messages from a server, and to display a notification of an available text-based message on an idle screen of the kiosk.

17.     The system of claim 1, wherein the kiosk is configured to receive voice or video messages from a server, and to display a notification of an available voice or video message on an idle screen of the kiosk.

18.     The system of claim 1, wherein the kiosk is configured to receive a visitation request from a server, and to display a notification of an available visitation request on an idle screen of the kiosk.

19.     A kiosk for providing facility services in a secure manner, comprising:

a computer processor;

a memory connected to the processor via a bus;

DSMDB-2863401v1

Docket  No.:   P5789.0006/P006

a camera connected to the bus for inputting video communications;

a microphone connected to the bus for inputting audio communications;

a connected to the bus speaker;

a touchscreen display connected to the bus; and

a network interface connected to the bus for communicating with a server via the Internet,

wherein the kiosk authenticates a user by receiving a personal identification number and comparing the received personal identification number against a known personal identification number associated with the user, verifies the user's identity using one of facial authentication of an image captured by the camera and voice authentication of an audible phrase recorded using the microphone, records audio and video communications and transmits the audio and video communications to the server, and provides access to the internet via a web proxy.

20.     The kiosk of claim 19, wherein the kiosk is configured to detect when a face is not present in the field of view of the camera, and stop transmitting video when a face is not present.

21.     The kiosk of claim 19, wherein the kiosk provides the user with at least one of: access to audio, video, and text of educational and religious materials; the ability to order items from a list of commissary items; the ability to reserve times for using the kiosk; and the ability to send text messages to third parties.

22.     A method of monitoring use of an interactive kiosk, comprising:

using a camera of the kiosk to periodically capture an image of a user of the kiosk during use of the kiosk; transmitting the image to a server; comparing, at the server, the image with a pre-stored image of the user of the kiosk; and restricting use of the kiosk when the image does not match the pre-stored image to a predetermined degree.

23.     The method of claim 22, further comprising:

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

periodically extracting a frame of the video information during use of the kiosk to transmit video information;

determining whether the frame includes an image of a human face; and restricting transmission of the video information when the frame does not include an image of a face.

DSMDB-2863401v1

Docket No.:   P5789.0006/P006

# ABSTRACT

A system and device for providing services to a secure facility.  The system includes a kiosk with a processor, display, speaker, microphone, and a camera, and the kiosk communicates with a server that includes a server processor, a network interface unit, and a computer memory.  The kiosk receives communications and transmits audio and video of the communications to the server via an internet connection, and the server records the audio and video and transmits the audio and video to a destination.  The kiosk is configured to authenticate the identity of a user by verifying a personal identification number entered by the user and also performing one or more of a facial recognition via the camera or a biometric voice recognition via the microphone.  The kiosk provides access to services including internet services, text-based messaging, tele-medical services, religious and educational materials, commissary ordering, and entertainment.

DSMDB-2863401v1



Figure 1



Figure 2



Figure 3



Figure 4

501

502

503

504

505

506

515

508  509  510  511



Figure 5

601



602

Figure 6



701

702

703

705

Figure 7

801

Telmate

Friday, July 31  3:15pm

**Welcome Ken Jones**

**ID Check:**

**Lift handset and speak your voice verification phrase.**

| < Cancel Login | | Login > |

802

Login will be cancelled in 15 seconds.

Volume    Repeat Prompt    Help    Español

Figure 8

901



902

903

904

FIG. 9

1011



Figure 10



Figure 11

1201

| Telmate | Ken Jones | Prepaid Balance: $5.00 | T-Phone Reserved at 5:00pm | Friday, July 31  3:15pm |

**<<**  Voicemail

^ UP ^

1202    1203

| > 2 Plays Left | 4/12/10 @ 3:12pm | (505) 121-1234 | Inmate S. | $ | Call Back | X |
| ‖ 1 Play Left | 4/12/10 @ 3:00pm | (626) 555-1212 | Inmate J. | | Call Back | X |
| No Plays Left | 4/10/10 @ 2:00pm | (714) 123-2341 | Indiana Jones | $ | Call Back | X |
| No Plays Left | 4/8/10 @ 11:12am | (818) 135-5613 | Jenny Jones | $ | Call Back | X |
| No Plays Left | 4/6/10 @ 7:02am | (213) 135-1356 | | | Call Back | X |
| No Plays Left | 3/12/10 @ 8:02am | (650) 133-1351 | Ginger | $ | Call Back | X |
| No Plays Left | 3/12/10 @ 7:21pm | (800) 135-1351 | Don Draper | | Call Back | X |
| No Plays Left | 2/6/10 @ 6:00pm | (866) 121-1315 | Mom | | Call Back | X |

1204

v DOWN v

Logout    Buy Tphone Time    Main Menu         Volume    Help    Español

Figure 12

1301



1303

1302

Figure 13

1401



1403

1402

Figure 14

1501



| Tel.mate 📞 | Ken Jones | Tphone Time Purchased: 13:48 | | Friday, July 31  3:15pm |

**<<**

Recording

**1:30 remaining**

Video Recording Preview

| Stop Recording & Save | Cancel |

Logout    My Account    Main Menu                    Volume    Help    Español

Figure 15



Figure 16

Figure 17

1801

| Telmate | Ken Jones   T-Phone Reserved at 5:00pm | Friday, July 31   3:15pm |

**EMail Friends**

Telmate will send a message to your
Friends who have deposited funds for
you before.

Tap the names you wish to notify.

If a name isn't available, it's because the party did not
give us permission to contact them, or you have already
requested funds from them.

| ^ UP ^ |

| Touch to Email | |
| Jackie Jones | |
| Will Email | ✓ |
| Margret Jones | |
| Touch to Email | |
| Frank Smith | |
| Touch to Email | |
| Barbara Smith | |
| Will Email | ✓ |
| January Jackson | |
| Will Email | ✓ |
| Larry Leroy | |
| Touch to Email | |
| Smith Regan | |
| Touch to Email | |
| Michael Michaels | |

| v DOWN v |

1802

**Send Email**

**Cancel**

Logout   My Account   Main Menu          Volume   Help   Español

Figure 18

Attorney Docket No.: P5789.0006/P006

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

INTERACTIVE AUDIO/VIDEO PLATFORM AND DEVICE FOR
USE IN A SECURE FACILITY

the specification of which is attached hereto.

In the event that the filing date and/or Application No. are not entered above at the time I execute this document, and if such information is deemed necessary, I hereby authorize and request my attorneys/agent(s) at **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, to insert above the filing date and/or Application No. of said application.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to herein.

I acknowledge the duty to disclose all information known to me that is material to patentability as defined in 37 CFR 1.56.

FOREIGN PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code § 119(a)-(d) of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

[x] no such foreign applications have been filed

[ ] such foreign applications have been filed as follows:

Page 1 of 7

Attorney Docket No.: P5789.0006/P006

**EARLIEST FOREIGN APPLICATION(S), IF ANY FILED WITHIN 12 MONTHS (6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION**

| Application Number | Country | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**ALL FOREIGN APPLICATION(S), IF ANY FILED MORE THAN 12 MONTHS (6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION**

| Application Number | Country | Date of Filing |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**CLAIM FOR BENEFIT OF EARLIER U.S. PROVISIONAL APPLICATIONS**

I hereby claim priority benefits under Title 35, United States Code §119(e), of any United States provisional patent application(s) listed below:

[x] no such U.S. provisional applications have been filed.

[ ] such U.S. provisional applications have been filed as follows:

| Application Number | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)**

I hereby claim the benefit under Title 35, United States Code, §120 of the United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose all information that is material to patentability as defined in 37 CFR 1.56 which became available to me between the filing date of the prior application and the national or PCT international filing date of this application:

[x] no such U.S./PCT applications have been filed.

Attorney Docket No.: P5789.0006/P006

☐ such U.S./PCT applications have been filed as follows:

| Application Number | Relationship | Parent Application | Date of Filing |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint:

All practitioners at Customer Number 24998

all of **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC  20006-5403, jointly, and each of them severally, my attorneys at law/patent agent(s), with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent, and to transact all business in the U.S. Patent and Trademark Office connected therewith.

Please mail all correspondence to Gianni Minutoli, whose address is:

> **Dickstein Shapiro LLP**
> 1825 Eye Street, NW
> Washington, DC  20006-5403

Please direct telephone calls to Gianni Minutoli at (202) 420-3191.

Please direct facsimiles to: (202) 420-2201

Attorney Docket No.: P5789.0006/P006

| | |
|---|---|
| Full name of sole or first inventor<br>Richard Torgersrud | |
| Sole or first inventor's signature | Date<br>7 April 11 |
| Residence<br>San Francisco, CA | |
| Citizenship   US | |
| Mailing Address<br><br>683 Brannan Street, #304<br>San Francisco, CA 94107 | |

# All-purpose Acknowledgment

STATE OF *California* , COUNTY OF *San Francisco*

On *April 07, 2011* before me, the undersigned, a Notary Public in and for said State, personally appeared *Richard Torgersrvd*

_ personally known to me  –OR– ✓ proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

Name (type or printed) *Maria Teresa Ocegueda*

My commission expires: *April 29, 2011*

(Seal)

MARIA TERESA OCEGUEDA
COMM. #1742663
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Apr. 29, 2011

HE17494 (2-66 925(6)

Attorney Docket No.: P5789.0006/P006

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

INTERACTIVE AUDIO/VIDEO PLATFORM AND DEVICE FOR
USE IN A SECURE FACILITY

the specification of which is attached hereto.

In the event that the filing date and/or Application No. are not entered above at the time I execute this document, and if such information is deemed necessary, I hereby authorize and request my attorneys/agent(s) at **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, to insert above the filing date and/or Application No. of said application.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to herein.

I acknowledge the duty to disclose all information known to me that is material to patentability as defined in 37 CFR 1.56.

FOREIGN PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code § 119(a)-(d) of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

[x] no such foreign applications have been filed

[ ] such foreign applications have been filed as follows:

Attorney Docket No.: P5789.0006/P006

EARLIEST FOREIGN APPLICATION(S), IF ANY FILED WITHIN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

ALL FOREIGN APPLICATION(S), IF ANY FILED MORE THAN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S. PROVISIONAL APPLICATIONS

I hereby claim priority benefits under Title 35, United States Code §119(e), of any United States
provisional patent application(s) listed below:

[x] no such U.S. provisional applications have been filed.

[ ] such U.S. provisional applications have been filed as follows:

| Application Number | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)

I hereby claim the benefit under Title 35, United States Code, §120 of the United States
application(s) listed below and, insofar as the subject matter of each of the claims of this
application is not disclosed in the prior United States application in the manner provided by the
first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose all
information that is material to patentability as defined in 37 CFR 1.56 which became available to
me between the filing date of the prior application and the national or PCT international filing
date of this application:

[x] no such U.S./PCT applications have been filed.

Attorney Docket No.: P5789.0006/P006

☐  such U.S./PCT applications have been filed as follows:

| Application Number | Relationship | Parent Application | Date of Filing |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint:

All practitioners at Customer Number 24998

all of **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC  20006-5403, jointly, and each of them severally, my attorneys at law/patent agent(s), with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent, and to transact all business in the U.S. Patent and Trademark Office connected therewith.

Please mail all correspondence to Gianni Minutoli, whose address is:

**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC  20006-5403

Please direct telephone calls to Gianni Minutoli at (202) 420-3191.

Please direct facsimiles to: (202) 420-2201

Attorney Docket No.: P5789.0006/P006

| Full name of sole or first inventor | | |
|---|---|---|
| Kevin O'Neil | | |
| Sole or first inventor's signature | | Date |
| | | 4/7/11 |
| Residence | | |
| Parma, ID | | |
| Citizenship    US | | |
| Mailing Address | | |
| 3705 Elmore Road, Parma, ID 83660 | | |

# All-purpose Acknowledgment

STATE OF *California*, COUNTY OF *San Francisco*

On *April 07, 2011* before me, the undersigned, a Notary Public in and for said State, personally appeared *Kevin O'Neil*

personally known to me –OR– ✓ proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature

Name (type or printed) *Maria Teresa Ocegueda*    (Seal)

My commission expires: *April 29, 2011*

MARIA TERESA OCEGUEDA
COMM. #1742663
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Apr. 29, 2011
PC01 PC01

H1L7494 (2 06 979918)

Attorney Docket No.: P5789.0006/P006

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

INTERACTIVE AUDIO/VIDEO PLATFORM AND DEVICE FOR
USE IN A SECURE FACILITY

the specification of which is attached hereto.

In the event that the filing date and/or Application No. are not entered above at the time I execute this document, and if such information is deemed necessary, I hereby authorize and request my attorneys/agent(s) at **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, to insert above the filing date and/or Application No. of said application.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to herein.

I acknowledge the duty to disclose all information known to me that is material to patentability as defined in 37 CFR 1.56.

FOREIGN PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code § 119(a)-(d) of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

[x] no such foreign applications have been filed

[ ] such foreign applications have been filed as follows:

Page 1 of 7

Attorney Docket No.: P5789.0006/P006

EARLIEST FOREIGN APPLICATION(S), IF ANY FILED WITHIN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

ALL FOREIGN APPLICATION(S), IF ANY FILED MORE THAN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S. PROVISIONAL APPLICATIONS

I hereby claim priority benefits under Title 35, United States Code §119(e), of any United States
provisional patent application(s) listed below:

[x] no such U.S. provisional applications have been filed.

[ ] such U.S. provisional applications have been filed as follows:

| Application Number | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|
| | | |
| | | |
| | | |

CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)

I hereby claim the benefit under Title 35, United States Code, §120 of the United States
application(s) listed below and, insofar as the subject matter of each of the claims of this
application is not disclosed in the prior United States application in the manner provided by the
first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose all
information that is material to patentability as defined in 37 CFR 1.56 which became available to
me between the filing date of the prior application and the national or PCT international filing
date of this application:

[x] no such U.S./PCT applications have been filed.

Attorney Docket No.: P5789.0006/P006

☐ such U.S./PCT applications have been filed as follows:

| Application Number | Relationship | Parent Application | Date of Filing |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint:

All practitioners at Customer Number 24998

all of **Dickstein Shapiro LLP,** 1825 Eye Street, NW, Washington, DC  20006-5403, jointly, and each of them severally, my attorneys at law/patent agent(s), with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent, and to transact all business in the U.S. Patent and Trademark Office connected therewith.

Please mail all correspondence to Gianni Minutoli, whose address is:

**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC  20006-5403

Please direct telephone calls to Gianni Minutoli at (202) 420-3191.

Please direct facsimiles to: (202) 420-2201

Page 3 of 7

Attorney Docket No.: P5789.0006/P006

| Full name of sole or first inventor | |
| --- | --- |
| Grant Gongaware | |
| Sole or first inventor's signature | Date |
| | 4-7-2011 |
| Residence | |
| San Francisco, CA | |
| Citizenship     US | |
| Mailing Address | |
| 355 Berry Street, #515 San Francisco, CA 94158 | |

# All-purpose Acknowledgment

STATE OF _California_ , COUNTY OF _San Francisco_

On _April 07, 2011_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Grant Gongaware_

____ personally known to me  –OR–  ____ proved to me on the basis of satisfactory evidence, to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ____

Name (type or printed) _Maria Teresa Ocegueda_                    (Seal)

My commission expires: _April 29, 2011_

MARIA TERESA OCEGUEDA
COMM. #1742663
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Apr. 29, 2011

Attorney Docket No.: P5789.0006/P006

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### DECLARATION FOR PATENT APPLICATION

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled:

INTERACTIVE AUDIO/VIDEO PLATFORM AND DEVICE FOR
USE IN A SECURE FACILITY

the specification of which is attached hereto.

In the event that the filing date and/or Application No. are not entered above at the time I execute this document, and if such information is deemed necessary, I hereby authorize and request my attorneys/agent(s) at **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, to insert above the filing date and/or Application No. of said application.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to herein.

I acknowledge the duty to disclose all information known to me that is material to patentability as defined in 37 CFR 1.56.

FOREIGN PRIORITY CLAIM

I hereby claim foreign priority benefits under Title 35, United States Code § 119(a)-(d) of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

[x] no such foreign applications have been filed

[ ] such foreign applications have been filed as follows:

Attorney Docket No.: P5789.0006/P006

EARLIEST FOREIGN APPLICATION(S), IF ANY FILED WITHIN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

ALL FOREIGN APPLICATION(S), IF ANY FILED MORE THAN 12 MONTHS
(6 MONTHS FOR DESIGN) PRIOR TO THIS U.S. APPLICATION

| Application Number | Country | Date of Filing |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

CLAIM FOR BENEFIT OF EARLIER U.S. PROVISIONAL APPLICATIONS

I hereby claim priority benefits under Title 35, United States Code §119(e), of any United States provisional patent application(s) listed below:

[x] no such U.S. provisional applications have been filed.

[ ] such U.S. provisional applications have been filed as follows:

| Application Number | Date of Filing | Priority Claimed Under 35 USC 119 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

CLAIM FOR BENEFIT OF EARLIER U.S./PCT APPLICATION(S)

I hereby claim the benefit under Title 35, United States Code, §120 of the United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose all information that is material to patentability as defined in 37 CFR 1.56 which became available to me between the filing date of the prior application and the national or PCT international filing date of this application:

[x] no such U.S./PCT applications have been filed.

Attorney Docket No.: P5789.0006/P006

☐ such U.S./PCT applications have been filed as follows:

| Application Number | Relationship | Parent Application | Date of Filing |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint:

All practitioners at Customer Number 24998

all of **Dickstein Shapiro LLP**, 1825 Eye Street, NW, Washington, DC 20006-5403, jointly, and each of them severally, my attorneys at law/patent agent(s), with full power of substitution, delegation and revocation, to prosecute this application, to make alterations and amendments therein, to receive the patent, and to transact all business in the U.S. Patent and Trademark Office connected therewith.

Please mail all correspondence to Gianni Minutoli, whose address is:

**Dickstein Shapiro LLP**
1825 Eye Street, NW
Washington, DC 20006-5403

Please direct telephone calls to Gianni Minutoli at (202) 420-3191.

Please direct facsimiles to: (202) 420-2201

Attorney Docket No.: P5789.0006/P006

| Full name of sole or first inventor | |
| Morgan Collins | |
| Sole or first inventor's signature | Date |
| | 4/7/2011 |
| Residence | |
| San Mateo, CA | |
| Citizenship          US | |
| Mailing Address | |
| 18 Mounds Road, #3 San Mateo, CA 94402 | |

Page 7 of 7

# All-purpose Acknowledgment

STATE OF *California* , COUNTY OF *San Francisco*

On *April 07, 2011* _____ before me, the undersigned, a Notary Public in and for said State, personally appeared *Morgan Collins*

_____ personally known to me  –OR–  proved to me on the basis of satisfactory evidence  to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Name (type or printed) *Maria Teresa Ocegueda* (Seal)

My commission expires *April 29, 2011*

MARIA TERESA OCEGUEDA
COMM. #1742663
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Apr. 29, 2011

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Kevin O'Neil |
| **Filer:** | Ryan Holbrook Flax/Monick Lewis |
| **Attorney Docket Number:** | P5789.0006/P006 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility application filing | 1011 | 1 | 330 | 330 |
| Utility Search Fee | 1111 | 1 | 540 | 540 |
| Utility Examination Fee | 1311 | 1 | 220 | 220 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 1202 | 3 | 52 | 156 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1246** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 9902156 |
| **Application Number:** | 13088883 |
| **International Application Number:** | |
| **Confirmation Number:** | 9388 |
| **Title of Invention:** | INTERACTIVE AUDIO/VIDEO SYSTEM AND DEVICE FOR USE IN A SECURE FACILITY |
| **First Named Inventor/Applicant Name:** | Kevin  O'Neil |
| **Customer Number:** | 24998 |
| **Filer:** | Ryan Holbrook Flax/Monick Lewis |
| **Filer Authorized By:** | Ryan Holbrook Flax |
| **Attorney Docket Number:** | P5789.0006/P006 |
| **Receipt Date:** | 18-APR-2011 |
| **Filing Date:** | |
| **Time Stamp:** | 16:26:26 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $1246 |
| RAM confirmation Number | 2962 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | | P57890006.PDF | 4026578 | yes | 82 |
| | | | 7e434302aba1dcce25160703710716e79dd 1ed2b | | |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | **Document Description** | **Start** | **End** |
| | Transmittal of New Application | 1 | 1 |
| | Specification | 2 | 44 |
| | Drawings-only black and white line drawings | 45 | 62 |
| | Oath or Declaration filed | 63 | 82 |

| Warnings: | | | | | |
|---|---|---|---|---|---|
| Information: | | | | | |
| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 36904 | no | 2 |
| | | | 5d8bbb1c201537d90381863 9aae33da4b2 526a68 | | |
| Warnings: | | | | | |
| Information: | | | | | |

| | Total Files Size (in bytes): | 4063482 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.