**EXHIBIT 36**

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 01/18/2022 | 11228672 | 3210.1280001 | 2188 |

26111        7590        12/28/2021

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

INVENTOR(s)  (Please see PAIR WEB site http://pair.uspto.gov for additional inventors):

Jason MARASS, Fairhope, AL;
Brian PETERS, St. Paul, MN;
Garth JOHNSON, Indianapolis, IN;
Stephen Lee HODGE, Dallas, TX;

APPLICANT(s)  (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

GLOBAL TEL*LINK CORPORATION, Reston, VA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

26111        7590        12/16/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/16/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

PTOL-90A (Rev. 04/07)

| *Response to Rule 312 Communication* | Application No. | | Applicant(s) | |
|---|---|---|---|---|
| | 16/925,076 | | MARASS et al. | |
| | Examiner | | Art Unit | AIA (FITF) Status |
| | BARRY W TAYLOR | | 2646 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☑ The amendment filed on <u>10 December 2021</u> under 37 CFR 1.312 has been considered, and has been:

a) ☐ entered.

b) ☑ entered as directed to matters of form not affecting the scope of the invention.

c) ☐ disapproved because the amendment was filed after the payment of the issue fee.

   Any amendment filed after the date the issue fee is paid must be accompanied by a petition under 37 CFR 1.313(c)(1) and the required fee to withdraw the application from issue.

d) ☐ disapproved. See explanation below.

e) ☐ entered in part. See explanation below.

_____

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

OK TO ENTER: /B.W.T/

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| First Named Inventor: Jason MARASS | Confirmation No.: 2188 |
| Applicant: Global Tel*Link Corporation | Art Unit: 2646 |
| Application No.: 16/925,076 | Examiner: TAYLOR, BARRY W |
| Filed: July 9, 2020 | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment Under 37 C.F.R. § 1.312

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Submitted herein is an Amendment Under 37 C.F.R. § 1.312. As payment of the issue fee

has not yet been made or is filed herewith, Applicant respectfully submits that filing under 37

C.F.R. § 1.312 is proper. (M.P.E.P. § 714.16.)

It is not believed that extensions of time are required beyond those that may otherwise be

provided for in documents accompanying this paper. However, if additional extensions of time are

necessary to prevent abandonment of this application, then such extensions of time are hereby

petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or

appeal of this application (including issue fee, fees for net addition of claims or forwarding to

appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| First Named Inventor: Jason MARASS | Confirmation No.: 2188 |
| Applicant: Global Tel*Link Corporation | Art Unit: 2646 |
| Application No.: 16/925,076 | Examiner: TAYLOR, BARRY W |
| Filed: July 9, 2020 | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment Under 37 C.F.R. § 1.312

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Submitted herein is an Amendment Under 37 C.F.R. § 1.312. As payment of the issue fee has not yet been made or is filed herewith, Applicant respectfully submits that filing under 37 C.F.R. § 1.312 is proper. (M.P.E.P. § 714.16.)

It is not believed that extensions of time are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

- 2 -

Jason MARASS
Application No. 16/925,076

## *Amendments to the Claims*

This listing of claims will replace all prior versions, and listings, of claims in the application.

1-22.   (Canceled)

23.   (Previously Presented) A system for preventing unsanctioned use of a mobile device within a controlled environment facility, comprising:

an application barrier stored on a memory of the mobile device, the application barrier configured to:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including functions that modify settings of the mobile device;

disable applications deemed non-useful by the controlled environment facility;

enable applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitor the social interactions of the social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity.

24.   (Currently Amended) The system of claim 23, wherein the application barrier is further configured to prevent installation or removal of [[an]] the application.

25.   (Previously Presented) The system of claim 23, wherein the application barrier is further configured to detect an attempt to perform an unsanctioned function of the enabled applications stored in the memory of the mobile device.

26.     (Previously Presented) The system of claim 25, wherein the application barrier is further configured to prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function.

27.     (Currently Amended) The system of claim 23, wherein the application barrier is further configured to:

     detect an attempt to delete ~~one of the applications on~~ <u>the application from</u> the mobile device; and

     send a command to [[the]] <u>a</u> processor of the mobile device to cancel the attempt <u>to delete</u>.

28.     (Currently Amended) The system of claim 23, wherein the application barrier is further configured to:

     detect an attempt to install an outside application on the mobile device; and

     send a command to [[the]] <u>a</u> processor of the mobile device to cancel the attempt <u>to install</u>.

29.     (Currently Amended) The system of claim 23, wherein the application barrier is further configured to:

     detect an over-the-air command received by the mobile device over a wireless link;

     determine that the <u>over-the-air</u> command meets a security requirement of a second application sanctioned to change the ~~device~~ settings <u>of the mobile device</u>; and

     in response to determining that the <u>over-the-air</u> command meets the security requirement, allow the <u>over-the-air</u> command to be executed by a processor of the mobile device.

30.     (Previously Presented) The system of claim 25, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

31.     (Currently Amended) A mobile device for use in a controlled environment facility, comprising:

       a memory that stores a set of operations of an application barrier; and

       a processor configured to:

execute the set of operations of the application barrier, the set of operations comprising:

disabling ~~disable~~ non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including functions that modify settings of the mobile device;

disabling ~~disable~~ applications deemed non-useful by the controlled environment facility;

enabling ~~enable~~ applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enabling ~~enable~~ a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitoring ~~monitor~~ the social interactions of the social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity.

32.     (Currently Amended) The mobile device of claim 31, wherein the set of operations further includes detecting an attempt by a user of the mobile device to perform an unsanctioned function of [[an]] the application ~~stored on the memory~~.

33.     (Previously Presented) The mobile device of claim 32, wherein the set of operations further includes preventing the processor from executing operations related to the attempt to perform the unsanctioned function.

34.     (Previously Presented) The mobile device of claim 32, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

35.     (Currently Amended) The mobile device of claim 32, wherein the set of operations further includes:

- 5 -                                                      Jason MARASS
                                                  Application No. 16/925,076

detecting an attempt to delete ~~one of the applications on~~ the application from the mobile

device; and

sending a command to the processor to cancel the attempt to delete.


36.    (Currently Amended) The mobile device of claim 32, wherein the set of operations includes:

detecting an attempt to install a second application on the mobile device; and

sending a command to the processor of the mobile device to cancel the ~~installation~~ attempt to

install.


37.    (Currently Amended) The mobile device of claim 32, wherein the set of operations includes:

detecting an over-the-air command received by the mobile device over a wireless link;

determining that the over-the-air command is from a sanctioned source; and

in response to determining that the over-the-air command is from the sanctioned source,

allowing the over-the-air command to be executed by the processor.


38.    (Currently Amended) A system for use in a controlled environment facility for preventing

unsanctioned use of a mobile device in [[a]] the controlled environment facility, comprising:

an application barrier, stored on a memory of the mobile device, configured to

prevent an unsanctioned function from being performed on the mobile device, the

application barrier configured to:

perform application modification in which non-secure functions of an

application stored in the memory of the mobile device are disabled, the non-secure

functions including functions that modify settings of the mobile device;

perform application enablement, including:

disabling applications deemed non-useful by the controlled

environment facility;

enabling applications deemed useful by the controlled environment

facility, modified such that social media functions of the enabled applications are

disabled; and

enabling a social application having social functions and

programming to allow for monitoring of social interactions conducted using the

social functions; and

performing monitoring of the social interactions of the social application, the

monitoring including gathering social interactions of the social application and reviewing the social

interactions for illicit activity.

39.    (Currently Amended) The system of claim 38, wherein the application barrier is configured

to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete ~~one of the applicatoins~~ the

application from the memory of the mobile device, a second attempt by the user to install a

second application on the mobile device, and a third attempt by the application to access

content from a disallowed source outside of the controlled environment facility; and

preventing a processor of the mobile device from executing any operations related to

the first attempt, the second attempt, and the third attempt.

40.    (Previously Presented) The system of claim 39, wherein the unsanctioned function includes

exchanging data with an unsanctioned source outside of the controlled environment facility.

41.    (Currently Amended) The system of claim 38, wherein the application barrier is further

configured to:

detect an attempt to delete ~~one of the applications on~~ the application from the mobile device;

and

send a command to [[the]] a processor [[the]] to cancel the attempt to delete.

- 7 -                                                    Jason MARASS
                                                  Application No. 16/925,076

## *Remarks*

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 23-41 are pending in the application, with claims 23, 31, and 38 being the independent claims. Claims 24, 27-29, 31, 32, 35-39, and 41 are sought to be amended. The amendments correct minor informalities in the claims. Applicant reserves the right to prosecute similar or broader claims, with respect to the amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:     December 10, 2021

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

17729816.1

Atty. Dkt. No. 3210.1280001

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 16925076 |
| **Filing Date:** | 09-Jul-2020 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Attorney Docket Number:** | 3210.1280001 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 1501 | 1 | 1200 | 1200 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1200** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 44483576 |
| **Application Number:** | 16925076 |
| **International Application Number:** | |
| **Confirmation Number:** | 2188 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280001 |
| **Receipt Date:** | 10-DEC-2021 |
| **Filing Date:** | 09-JUL-2020 |
| **Time Stamp:** | 13:57:10 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $1200 |
| RAM confirmation Number | E2021B0D57274247 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2021-12-10-Cover-Letter-Issue-Fee-3210-1280001.pdf | 192177<br>a50dbdeb29634886␣2a8edfc32ea9502898a91d14 | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Issue Fee Payment (PTO-85B) | 2021-12-10-Issue-Fee-3210-1280001.PDF | 90556<br>f2a7b3227c6b9534d97cae63d3155b3a65b4cb06 | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Post Allowance Communication - Incoming | 2021-12-10-Comments-Reasons-Allowance-3210-1280001.pdf | 102053<br>82fe5830b8ed3bad439d6071b9d8b␣ba2c54def7a | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | | 2021-12-10-Amendment-312-3210-1280001.pdf | 127716<br>ca99cc6725f8312acf108572d916fde52433f4024 | yes | 7 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | Document Description | | Start | End |
| | Amendment after Notice of Allowance (Rule 312) | | 1 | 1 |
| | Claims | | 2 | 6 |
| | Applicant Arguments/Remarks Made in an Amendment | | 7 | 7 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Fee Worksheet (SB06) | fee-info.pdf | 37915<br>3565a38013e51dfb81bf29eda15737b3dcaeb8f | no | 2 |

| Warnings: | |
|---|---|
| Information: | |
| **Total Files Size (in bytes):** | 550417 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**LAUREN C. SCHLEH**
COUNSEL
202-772-8587
LSCHLEH@STERNEKESSLER.COM

December 10, 2021

Commissioner for Patents
PO Box 1450
Alexandria, VA  22313-1450

*__Confirmation No. 2188__*
*__Attn: Mail Stop Issue Fee__*

     Re:     Allowed U.S. Utility Patent Application
               Appl. No. 16/925,076; Filed: July 9, 2020
               For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
               First Named Inventor:  Jason MARASS
               Our Ref:     3210.1280001

Commissioner:

     In response to the **Notice of Allowance and Fee(s) Due** dated **September 14, 2021**, the following documents are transmitted for appropriate action by the U.S. Patent and Trademark Office:

     1.   Issue Fee Transmittal (Form PTOL-85);
     2.   Online Credit Card Payment Authorization for **$1,200** to cover the Issue Fee;
     3.   Comments on Statement of Reasons for Allowance; and
     4.   Amendment Under 37 C.F.R. §1.312.

     The above-listed documents are filed electronically.

     Fee payment is provided through online credit card payment.

     The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

                           Respectfully submitted,

                           STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                           /Lauren C. Schleh/

                           Lauren C. Schleh
                           Attorney for Applicant
                           Registration No. 65,457

LCS/crb
Enclosure(s)
17734012.1

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26111     7590     09/14/2021

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 12/14/2021 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TAYLOR, BARRY W | 2646 | 455-411000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _Sterne, Kessler, Goldstein & Fox P.L.L.C._
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Global Tel✳Link Corporation

(B) RESIDENCE: (CITY AND STATE OR COUNTRY)

Reston, VA

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☒ Issue Fee  ☐ Publication Fee (if required)  ☐ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via EFS-Web  ☐ Enclosed check  ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. 19-0036

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature | /Lauren C. Schleh/ | Date | December 10, 2021 |
|---|---|---|---|
| Typed or printed name | Lauren C. Schleh | Registration No. | 65,457 |

PTOL-85 Part B (08-18) Approved for use through 01/31/2020     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| First Named Inventor: Jason MARASS | Confirmation No.: 2188 |
| Applicant: GLOBAL TEL*LINK CORPORATION | Art Unit: 2646 |
| Application No.: 16/925,076 | Examiner: TAYLOR, BARRY W |
| Filing Date: July 9, 2020 | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Comments on Statement of Reasons for Allowance

Commissioner for Patents  *Mail Stop: Issue Fee*
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Applicant thanks the Examiner for indicating the allowability of claims 23-41 in the Notice of Allowance dated September 14, 2021.

***Comments on Statement of Reasons for Allowance***

Applicant notes the Examiner's Statement of Reasons for Allowance presented on page 2 of the Notice of Allowance. Applicant reserves the right to demonstrate claims 23-41 are allowable over the art made of record for further reasons related to any of their recited features. Applicant further contends that reservation of this right does not give rise to any implication regarding whether the Applicant agrees with or acquiesces in the reasoning provided by the Examiner.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:    December 10, 2021
1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

17733997.1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 26111 | 7590 | 09/14/2021 |
|---|---|---|

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

DATE MAILED: 09/14/2021

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 12/14/2021 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE<br>Commissioner for Patents<br>P.O. Box 1450<br>Alexandria, Virginia 22313-1450 | By fax, send to: | (571)-273-2885 |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26111        7590        09/14/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

TITLE OF INVENTION: SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 12/14/2021 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TAYLOR, BARRY W | 2646 | 455-411000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐Issue Fee ☐Publication Fee (if required) ☐Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid issue fee shown above)*

☐ Electronic Payment via EFS-Web ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

26111        7590        09/14/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

DATE MAILED: 09/14/2021

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record in this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No.<br>16/925,076 | Applicant(s)<br>MARASS et al. | |
|---|---|---|---|
| | Examiner<br>BARRY W TAYLOR | Art Unit<br>2646 | AIA (FITF) Status<br>Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to amnd 9/3/2021.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 23-41 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All   b) ☐ Some*   c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
   Paper No./Mail No. _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☑ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08),
   Paper No./Mail Date _____.
3. ☐ Examiner's Comment Regarding Requirement for Deposit
   of Biological Material _____.
4. ☐ Interview Summary (PTO-413),
   Paper No./Mail Date. _____.

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

| /BARRY W TAYLOR/<br>Primary Examiner, Art Unit 2646 | |
|---|---|

Application/Control Number: 16/925,076                                                        Page 2
Art Unit: 2646

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Allowable Subject Matter*

1.      Claims 23-41 are allowed.

2.      The following is an examiner's statement of reasons for allowance.

Claims 23-41 are allowed for the reasons as set forth in Applicant's response

filed 9/3/2021, page 7 – page 8.

Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

### *Conclusion*

3.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

---(2019/0215696) Ying et al teaches antitheft software installed on mobile

terminal.  When another SIM card is put into a lost mobile device, the mobile

automatically sends an SMS message to a preprogrammed phone number (0004 ).

Monitor whether the antitheft security module has been modified in any manner at any

time during execution of the terminal retrieving applications, so as to implement

functions such as prompt, tracking, and retrieving of the UE when the UE retrieving

application is uninstalled or when ROM flashing is performed on the UE (figure 7, 0042).

Application/Control Number: 16/925,076                                    Page 3
Art Unit: 2646

   ---(2018/0165936) Smith et al teaches a monitoring App may be downloaded on

the UE.  The monitoring App may be configured to intercept communications, content,

and/or data determined to be inappropriate or illegal before transmitted by the UE

and/or before being saved on the UE (0012).


4.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to BARRY W TAYLOR whose telephone number is

(571)272-7509.  The examiner can normally be reached on Monday-Thursday: 7-5.

       Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

       If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

       Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 16/925,076                                    Page 4
Art Unit: 2646

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

| *Notice of References Cited* | Application/Control No. 16/925,076 | Applicant(s)/Patent Under Reexamination MARASS et al. | |
|---|---|---|---|
| | Examiner BARRY W TAYLOR | Art Unit 2646 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20180165936-A1 | 06-2018 | Smith; Kenneth | H04L43/08 | 1/1 |
| * | B | US-20190215696-A1 | 07-2019 | Ying; Jindong | H04L9/3247 | 1/1 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| H04W 12/08, 12/35, 12/126, 12/37 | 05/28/2021 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| updated search for parent application and Google Scholar | 05/28/2021 | BWT |
| updated search. | 09/09/2021 | BWT |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| H04W | 12/08, 12/35, 12/126, 12/37 | 09/09/2021 | BWT |

| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | |
|---|---|
| | |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

**CPC**

| Symbol | | | | | Type | Version |
|---|---|---|---|---|---|---|
| H04M | / | 1 | / | 185 | F | 2013-01-01 |
| H04W | / | 4 | / | 50 | I | 2018-02-01 |
| H04W | / | 12 | / | 08 | I | 2013-01-01 |
| H04W | / | 12 | / | 082 | I | 2021-01-01 |
| H04W | / | 12 | / | 084 | I | 2021-01-01 |
| H04W | / | 12 | / | 088 | I | 2021-01-01 |
| H04W | / | 4 | / | 80 | A | 2018-02-01 |
| H04M | / | 1 | / | 67 | A | 2013-01-01 |
| H04M | / | 1 | / | 72409 | A | 2021-01-01 |
| H04W | / | 12 | / | 126 | A | 2021-01-01 |
| H04W | / | 12 | / | 35 | A | 2021-01-01 |
| H04W | / | 12 | / | 37 | A | 2021-01-01 |

**CPC Combination Sets**

| Symbol | | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|---|
| | / | | / | | | | |

| | | | |
|---|---|---|---|
| NONE | | **Total Claims Allowed:** | |
| (Assistant Examiner) | (Date) | 19 | |
| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | 09 September 2021 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 7 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

**INTERNATIONAL CLASSIFICATION**

**CLAIMED**

| H04W | | 12 | | 37 |
|---|---|---|---|---|

**NON-CLAIMED**

| | | | |
|---|---|---|---|

**US ORIGINAL CLASSIFICATION**

| CLASS | SUBCLASS |
|---|---|
| | |

**CROSS REFERENCES(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 19 | |
| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | 09 September 2021 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 7 |

Part of Paper No.: 20210909

| *Issue Classification* | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 10 | | 19 | 7 | 28 | 15 | 37 | | | | | | |
| | 2 | | 11 | | 20 | 8 | 29 | 16 | 38 | | | | | | |
| | 3 | | 12 | | 21 | 5 | 30 | 17 | 39 | | | | | | |
| | 4 | | 13 | | 22 | 9 | 31 | 18 | 40 | | | | | | |
| | 5 | | 14 | 1 | 23 | 10 | 32 | 19 | 41 | | | | | | |
| | 6 | | 15 | 2 | 24 | 11 | 33 | | | | | | | | |
| | 7 | | 16 | 3 | 25 | 12 | 34 | | | | | | | | |
| | 8 | | 17 | 4 | 26 | 13 | 35 | | | | | | | | |
| | 9 | | 18 | 6 | 27 | 14 | 36 | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 19 | |
| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | 09 September 2021 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 7 |

U.S. Patent and Trademark Office                                                                 Part of Paper No.: 20210909

monitor social media for illicit activities - Google Scholar

Digital **social media**, youth, and nonmedical use of prescription drugs: the need for reform

TK Mackey, BA Liang, SA Strathdee - Journal of medical internet research, 2013 - jmir.org

… Additionally, use of **monitoring** companies such as LegitScript, which has clients such as Google, Microsoft … and the FDA, may better ensure that authorized sites are actively **monitored** and remain … that **social media** sites do little to enforce their own policies or **monitor** their content …

☆ 99 Cited by 55 Related articles All 13 versions ≫

Global reach of direct-to-consumer advertising using **social media** for **illicit** online drug sales

TK Mackey, BA Liang - Journal of medical internet research, 2013 - jmir.org

… Importantly, **illicit** online pharmacy **activities** and lack of appropriate eDTCA marketing regulation is compounded by an absence of online pharmacy regulation globally [14] … Further, because of the potential global reach of **social media** marketing in enabling this **illicit** trade, we …

☆ 99 Cited by 71 Related articles All 11 versions ≫

Tracking **illicit** drug dealing and abuse on Instagram using multimodal analysis

X Yang, J Luo - ACM Transactions on Intelligent Systems and …, 2017 - dl.acm.org

… [2015] **monitored** adolescent alcohol … [2016] used network information of Instagram user timelines to **monitor** potential drug … While these works show great promise in using **social media** for drug use **tracking**, our work is differentiated from them primarily by proposing more robust …

☆ 99 Cited by 45 Related articles All 6 versions

Analyzing and retrieving **illicit** drug-related posts from **social media**

T Ding, A Roy, Z Chen, Q Zhu … - 2016 IEEE international …, 2016 - ieeexplore.ieee.org

… 10], community and event detection [11], influenza trend detection [12], crime **monitoring** [13], drug use … terminologies are constantly evolving, our model allows us to retrieve and **monitor** drug abuse … [11] H. Sayyadi, M. Hurst, and A. Maykov, "Event detection and **tracking** in social …

☆ 99 Cited by 10 Related articles All 6 versions

**Social media** surveillance and law enforcement

A Mateescu, D Brunton, A Rosenblat, D Patton … - Data Civ …, 2015 - datasociety.net

… Other documents show that DHS **monitored** the **social media activity** of prominent #blacklivesmatter … in "**monitoring** of First Amendment protected **activities** for public dissent," questions remain about the … The ability to cheaply **monitor** huge quantities of public information …

☆ 99 Cited by 26 Related articles All 6 versions ≫

Analyzing the **social media** footprint of street gangs

S Wijeratne, D Doran, A Sheth … - 2015 IEEE international …, 2015 - ieeexplore.ieee.org

… powered platform to discover the structure, function, and operation of gangs: 1. **Monitor** negative community … This **monitoring** requires finding entities relevant to gang **activities** in posts as well as … This includes **tracking** the creation and diffusion of information across a network of re …

☆ 99 Cited by 29 Related articles All 11 versions

Machine learning and natural language processing for geolocation-centric **monitoring** and characterization of opioid-related **social media** chatter

A Sarker, G Gonzalez-Hernandez, Y Ruan… - JAMA network …, 2019 - jamanetwork.com

… 17. Sarker A, O'Connor K, Ginn R, et al. **Social media** mining for toxicovigilance: automatic **monitoring** of prescription medication abuse from Twitter … **Social media** fact sheet. https://www.pewinternet.org/fact-sheet/**social-media** … Leveraging **social networks** for toxicovigilance …

☆ 99 Cited by 21 Related articles All 7 versions ≫

'Going viral'and 'Going country': the expressive and instrumental **activities** of street gangs on **social media**

ML Storrod, JA Densley - Journal of youth studies, 2017 - Taylor & Francis

… of gangs and how **social** rules and behaviours within them are **monitored** and enforced … Our respondents also talked about gang members '**monitoring**' who had 'liked', 'tagged' or 'retweeted … 2010, 142) describes as 'remote mothering' – that is, the ability to **monitor** where someone …

☆ 99 Cited by 119 Related articles All 6 versions

monitor social media for illicit activities - Google Scholar

## Social media and drug markets

D Thanki, BJ Frederick - 2016 - eprints.glos.ac.uk

... The British Broadcasting Corporation (BBC) recently reported that most **social media** owners
do not actively **monitor** and/or remove drug ... l Further research and **monitoring** Research exploring
the link between new forms of **media**, in particular **social media**, and drug supply and ...

☆    ⁇    Cited by 24    Related articles    ≫

## Social media analytics and research test-bed (SMART dashboard)

MH Tsou, CT Jung, C Allen, JA Yang ... - ... on social media & ..., 2015 - dl.acm.org

... 5.3 **Tracking** Ebola in West Africa and US Cities The recent emergence of the lethal ... for Disease
Control and Prevention (CDC) have good tools for reporting, **monitoring**, and measuring the ... One
potential use of the SMART dashboard is to **monitor** public opinions and responses ...

☆    ⁇    Cited by 30    Related articles    All 4 versions


## Related searches

social media illicit **online drug sales**

social media illicit **drug use behaviors**

social media **analytics**

monitoring **and characterization** social media **chatter**

social media **footprint**

**dark side of** social media

**nonmedical use digital** social media

social media **posts**

social media **prescription drug abuse**

social media **global health implications**

social media **drug markets**

social media **alternative treatments**

**high healthcare utilization** social networks

social media **nonmedical prescription medication use**

social media **misuse of prescription opioids**

social media **facebook accounts**

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 7,187 | (H04W12/35 or H04W12/126 or H04W12/37).CPC. | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:33 |
| L2 | 273 | (monitor$4 near7 interaction$1 near7 ((social$5 adj3 (media or functions)) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:34 |
| L3 | 0 | 1 and 2 | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:34 |
| L4 | 1,383,636 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/09/09 07:35 |
| L5 | 82 | L4 same ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) same (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan) same (settings or configuration$1)) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:35 |
| L6 | 97,474 | (enabl$5 or disabl$5) same (chat or facebook$3 or face-book$5 or twitter$2 or whatsapp$3 or snapchat$3 or snap-chat$5 or social) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:36 |
| L7 | 373 | 6 same (monitor$4 near7 interaction$1) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:37 |
| L8 | 326 | 7 and (@ad<="20170217" or @rlad<="20170217" or @pd<="20170217") | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:38 |
| L9 | 3 | 7 and ((correction$4 adj3 facilit$4) or prison$4 or inmate$4 or incarcerat$4 or convict or jail or jailbird) | US-PGPUB; USPAT | OR | ON | 2021/09/09 07:39 |

9/9/2021 7:40:33 AM
C:\Users\btaylor\Documents\EAST\Workspaces\Workspaces\%15,435,993 prevent use of mobile for inmates.wsp

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** Substitute for Form PTO-875 | Application or Docket Number 16/925,076 | Filing Date 07/09/2020 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE  ☐ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 19 minus 20 = * 0 | | x $100 = | 0 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = * 0 | | x $460 = | 0 |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 0 |

## APPLICATION AS AMENDED - PART II

| AMENDMENT | 09/03/2021 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 19 | Minus | ** 20 | = 0 | x $100 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $480 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| | |
|---|---|
| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /GERALDINE L STANLEY/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| First Named Inventor: Jason MARASS | Confirmation No.: 2188 |
| Applicant: Global Tel*Link Corporation | Art Unit: 2646 |
| Application No.: 16/925,076 | Examiner: TAYLOR, BARRY W |
| Filed: July 9, 2020 | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Amendment and Reply Under 37 C.F.R. § 1.111

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In reply to the Office Action dated June 3, 2021, Applicant submits the following Amendment and Remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page **2** of this paper.

**Remarks and Arguments** begin on page **7** of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

- 2 -

Jason MARASS

Reply to Office Action of June 3, 2021

Application No. 16/925,076

## *Amendments to the Claims*

This listing of claims will replace all prior versions, and listings, of claims in the application.

1-22.  (Canceled)

23.  (Currently Amended)  A system for preventing unsanctioned use of a mobile device within a controlled environment facility, comprising:

an application barrier stored on a memory of the mobile device, the application barrier configured to:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including ~~social functions of the application~~functions that modify settings of the mobile device; [[and]]

disable applications deemed non-useful by the controlled environment facility;

enable applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitor ~~user activity~~the social interactions of [[a]]the social application, the monitoring including gathering social interactions of the social application and ~~review~~reviewing the social interactions for illicit activity.

24.  (Previously Presented)  The system of claim 23, wherein the application barrier is further configured to prevent installation or removal of an application.

25.  (Currently Amended)  The system of claim 23, wherein the application barrier is further configured to detect an attempt to perform an unsanctioned function of the ~~application~~enabled applications stored in the memory of the mobile device.

26.     (Previously Presented)  The system of claim 25, wherein the application barrier is further configured to prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function.

27.     (Currently Amended) The system of claim 23, wherein the application barrier is further configured to:

      detect an attempt to delete ~~the application~~<u>one of the applications</u> on the mobile device; and

      send a command to the processor of the mobile device to cancel the attempt.

28.     (Currently Amended)  The system of claim 23, wherein the application barrier is further configured to:

      detect an attempt to install an <u>outside</u> application on the mobile device; and

      send a command to the processor of the mobile device to cancel the attempt.

29.     (Previously Presented)  The system of claim 23, wherein the application barrier is further configured to:

      detect an over-the-air command received by the mobile device over a wireless link;

      determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

      in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

30.     (Previously Presented)  The system of claim 25, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

31.     (Currently Amended)  A mobile device for use in a controlled environment facility, comprising:

      a memory that stores a set of operations of an application barrier; and

      a processor configured to:

- 4 -                                                                                           Jason MARASS
Reply to Office Action of June 3, 2021                          Application No. 16/925,076

execute the set of operations of the application barrier, the set of operations comprising:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including ~~social functions of the application; and~~functions that modify settings of the mobile device;

disable applications deemed non-useful by the controlled environment facility;

enable applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

monitor ~~user activity~~ the social interactions of [[a]]the social application, the monitoring including gathering social interactions of the social application and ~~review~~reviewing the social interactions for illicit activity.

32.   (Previously Presented)  The mobile device of claim 31, wherein the set of operations further includes detecting an attempt by a user of the mobile device to perform an unsanctioned function of an application stored on the memory.

33.   (Previously Presented)  The mobile device of claim 32, wherein the set of operations further includes preventing the processor from executing operations related to the attempt to perform the unsanctioned function.

34.   (Previously Presented)  The mobile device of claim 32, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

35.   (Currently Amended)  The mobile device of claim 32, wherein the set of operations further includes:

detecting an attempt to delete ~~the application~~one of the applications on the mobile device; and sending a command to the processor to cancel the attempt.

Atty. Dkt. No. 3210.1280001

- 5 -                                    Jason MARASS
Reply to Office Action of June 3, 2021          Application No. 16/925,076

36.     (Previously Presented)  The mobile device of claim 32, wherein the set of operations includes:

detecting an attempt to install a second application on the mobile device; and

sending a command to the processor of the mobile device to cancel the installation attempt.

37.     (Previously Presented)  The mobile device of claim 32, wherein the set of operations includes:

detecting an over-the-air command received by the mobile device over a wireless link;

determining that the over-the-air command is from a sanctioned source; and

in response to determining that the command is from the sanctioned source, allowing the

command to be executed by the processor.


38.     (Currently Amended)  A system for use in a controlled environment facility for preventing

unsanctioned use of a mobile device in a controlled environment facility, comprising:

an application barrier, stored on a memory of the mobile device, configured to

prevent an unsanctioned function from being performed on the mobile device, the

application barrier configured to:

perform application modification in which non-secure functions of an

application stored in the memory of the mobile device are disabled, the non-secure

functions including ~~social functions of the application~~functions that modify settings

of the mobile device; [[and]]

perform application enablement, including:

disabling applications deemed non-useful by the controlled

environment facility;

enabling applications deemed useful by the controlled environment

facility, modified such that social media functions of the enabled applications are

disabled; and

enabling a social application having social functions and

programming to allow for monitoring of social interactions conducted using the

social functions; and

Atty. Dkt. No. 3210.1280001

performing monitor~~ing of~~ ~~user activity of a~~the social interactions of the social application, the monitoring including gathering social interactions of the social application and ~~review~~reviewing the social interactions for illicit activity.


39.     (Currently Amended)  The system of claim 38, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

detecting at least one of a first attempt by a user to delete ~~an application~~one of the applicatoins from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.


40.     (Previously Presented)  The system of claim 39, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.


41.     (Currently Amended)  The system of claim 38, wherein the application barrier is further configured to:

detect an attempt to delete ~~the application~~one of the applications on the mobile device; and send a command to the processor the cancel the attempt.

- 7 -                                                                    Jason MARASS

## *Remarks*

Reconsideration of this Application is respectfully requested.

Upon entry of the foregoing amendment, claims 23-41 are pending in the application, with claims 23, 31, and 38 being the independent claims. By this Amendment, claims 23, 25, 27, 28, 31, 35, 38, 39 and 41 are sought to be amended. Applicant respectfully reserves the right to prosecute similar or broader claims, with respect to the canceled and/or amended claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

Based on the above amendment and the following remarks, Applicant respectfully requests that the Examiner reconsider all outstanding objections and rejections and that they be withdrawn.

### *Rejections under 35 U.S.C. § 103*

The Office Action rejects claims 23-28, 30-36, and 38-41 under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Publication No. 2015/0040246 to Yuen *et al.* in view of U.S. Patent Publication No. 2017/0149795 to Day, II; and rejects claims 29 and 37 under 35 U.S.C. § 103 as allegedly being unpatentable over Yuen *et al.* in view of Day, II further in view of U.S. Patent Publication No. 2014/0226487 to Forssell *et al.*

The applied references fail to disclose and would not have rendered obvious at least "disable applications deemed non-useful by the controlled environment facility," as recited in independent claim 23.

The Office Action relies on Yuen to disclose the disabling aspects of the claims. However, Yuen merely describes disabling function calls to a newly-installed application. Yuen, ¶ [0041]. Additionally, Yuen discloses disabling an icon associated with an application to prevent its access. Yuen, ¶¶ [0053]-[0055]. But nothing in Yuen discloses that this disabling is based on any

usefulness determination. Rather, Yuen suggests that all newly-installed and/or unknown applications are disabled in some form. The remaining references are silent with respect to this feature and therefore fail to at least cure Yuen's deficiencies.

For at least similar reasons, the applied references fail to disclose and would not have rendered obvious at least "disable applications deemed non-useful by the controlled environment facility," as recited in independent claim 31, and "disabling applications deemed non-useful by the controlled environment facility," as recited in independent claim 38.

Additionally, the applied references also fail to disclose and would not have rendered obvious "enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions," as recited in independent claim 23.

The Office Action acknowledges that Yuen does not disclose monitoring social application activity, but alleges that Day cures Yuen's deficiencies. Office Action, p. 4. Day discloses a module that monitors social traffic for illicit activity, such as swearing or photographs. Day, ¶¶ [0004], [0122], and [0154]. But Day's security module is separate software from the social application being monitored. For example, Day discloses that "the user system control module 118 can intercept or otherwise access and analyze image or video feeds from or to the camera module of the user systems 130" (¶ [0109]), and "[t]he user systems controls module 118 can intercept the communications…[by] captur[ing] packets received at the communications module of the user system 130." Day, ¶ [0121]. Thus, Day's monitoring is performed separately from the applications being monitored, and there is no indication in Day that its social application has "programming to allow for monitoring of social interactions conducted using the social functions." The remaining

Jason MARASS
Reply to Office Action of June 3, 2021                    Application No. 16/925,076

references are silent with respect to these features, and therefore fail to at least cure Day's
deficiencies.

For at least similar reasons, the applied references fail to disclose and would not have
rendered obvious at least "enable a social application having social functions and programming to
allow for monitoring of social interactions conducted using the social functions," as recited in
independent claim 31, and "enabling a social application having social functions and programming
to allow for monitoring of social interactions conducted using the social functions," as recited in
independent claim 38.

Therefore, independent claims 23, 31 and 38 are patentable over the applied references.
Claims 24-30, 32-37 and 39-41 are patentable at least for their dependencies from the independent
claims, as well as for the additional features they recite.

Accordingly, Applicant respectfully requests withdrawal of the rejections.

Atty. Dkt. No. 3210.1280001

- 10 -

Jason MARASS
Reply to Office Action of June 3, 2021                                    Application No. 16/925,076

## *Conclusion*

All of the stated grounds of objection and rejection have been properly traversed, accommodated, or rendered moot. Applicant therefore respectfully requests that the Examiner reconsider all presently outstanding objections and rejections and that they be withdrawn. Applicant believes that a full and complete reply has been made to the outstanding Office Action and, as such, the present application is in condition for allowance. If the Examiner believes, for any reason, that personal communication will expedite prosecution of this application, the Examiner is invited to telephone the undersigned at the number provided.

Prompt and favorable consideration of this Amendment and Reply is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date: ___September 3, 2021___

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

17059243.1

Atty. Dkt. No. 3210.1280001

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 43680771 |
| **Application Number:** | 16925076 |
| **International Application Number:** | |
| **Confirmation Number:** | 2188 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason  MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280001 |
| **Receipt Date:** | 03-SEP-2021 |
| **Filing Date:** | 09-JUL-2020 |
| **Time Stamp:** | 15:57:01 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2021-09-03-Cover-Letter-3210-1280001.PDF | 171258<br>5a323bf3c4463514485052723f05a033e1e7de64 | no | 1 |

**Warnings:**

**Information:**

| 2 | | | 2021-09-03-Amendment-Reply-111-3210-1280001.PDF | 146613 | yes | 10 |
|---|---|---|---|---|---|---|
| | | | | 768dac90c86df44b38905b68ce1aeef8ebab97eb | | |

| **Multipart Description/PDF files in .zip description** | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 6 |
| Applicant Arguments/Remarks Made in an Amendment | 7 | 10 |

| **Warnings:** |
|---|
| **Information:** |

| **Total Files Size (in bytes):** | 317871 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**LAUREN C. SCHLEH**
COUNSEL
202-772-8587
LSCHLEH@STERNEKESSLER.COM

September 3, 2021

Commissioner for Patents                                    ***Confirmation No. 2188***
PO Box 1450                                                       *Art Unit: 2646*
Alexandria, VA  22313-1450                         *Attn: Mail Stop Amendment*

> Re:     U.S. Utility Patent Application
>         Appl. No. 16/925,076; Filing Date: July 9, 2020
>         For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
>         First Named Inventor:  Jason MARASS
>         Our Ref: 3210.1280001

Commissioner:

Transmitted herewith for appropriate action is a document entitled ***Amendment and Reply Under 37 C.F.R. § 1.111***, which is submitted electronically.

In the event that extensions of time are necessary to prevent abandonment of this patent application, then such extensions of time are hereby petitioned.

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims, or forwarding to appeal), or credit any overpayment, to our Deposit Account No. 19-0036.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

LCS/crb
Enclosure(s)
17284345_1.docx

# United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 | 2188 |

26111          7590          06/03/2021
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| TAYLOR, BARRY W |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2646 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/03/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

e-office@sternekessler.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
| | 16/925,076 | MARASS et al. |
| | Examiner | Art Unit | AIA (FITF) Status |
| | BARRY W TAYLOR | 2646 | Yes |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING
DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on _____.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.          2b) ☑ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview
    on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
    closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)  ☑ Claim(s) <u>23-41</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)  ☐ Claim(s) _____ is/are allowed.

7)  ☑ Claim(s) <u>23-41</u> is/are rejected.

8)  ☐ Claim(s) _____ is/are objected to.

9)  ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a
participating intellectual property office for the corresponding application. For more information, please see
http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on <u>09 July 2020</u> is/are:  a)☑  accepted or  b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a)☐ All   b)☐ Some**   c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage
         application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 16/925,076                                    Page 2
Art Unit: 2646

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

This application currently names joint inventors. In considering patentability of the

claims the examiner presumes that the subject matter of the various claims was

commonly owned as of the effective filing date of the claimed invention(s) absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to

point out the inventor and effective filing dates of each claim that was not commonly

owned as of the effective filing date of the later invention in order for the examiner to

consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2)

prior art against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

Application/Control Number: 16/925,076                                    Page 3
Art Unit: 2646

1.      Claims 23-28, 30-36, 38- 41 are rejected under 35 U.S.C. 103 as being

unpatentable over Yuen et al (2015/0040246) in view of Day, II (2017/0149795).

        Regarding claim 23.  Yuen teaches  a system for preventing unsanctioned use of

a mobile device, comprising:

        **an application barrier stored on a memory of the mobile device, the**

**application barrier configured to** (figure 1, 0031-0032 wherein smartphone item 10

has mobile agent item 20 for managing content of an installed application list 22, figure

3, 0039-0043 wherein mobile agent identifies via an Operation System of the mobile

that the application was changed (e.g., installed, removed, downloaded, updated):

        **disable non-secure functions of an application stored in the memory of the**

**mobile device** (0041 – one example means for disabling (i.e., not allowing user of the

mobile device to access and execute) the newly installed application, another example

means for disabling by the mobile agent to disable or otherwise redirect a system of

function call associated with the newly installed application, such that mobile agent

would not allow the system of function call issued by the Operating System of the

device infrastructure to be received by the newly installed application.  Another example

means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of

a user interface 27 icon (e.g., a graphical user interface) associated with the newly

installed application, 0053-0055 as discussed above, each mobile device is configured

with Mobile Agent 20 for managing content of the application list 22, containing

identification of all mobile applications presently installed (and/or removed) on the

mobile device and the mobile agent can quarantine/disable non-compliant applications)**,**

Yuen does not teach **the non-secure functions including social functions of the application**; and **monitor user activity of a social application, the monitoring including gathering social interactions of the social application and review the social interactions for illicit activity**.

Day teaches monitoring non-secure functions including social functions of the application (**abstract** – access and extract data from or about one or more of the smartphone software applications, including at least two of texting application, a **social media application**, image application that facilitates TX and RX of images, web browser application, **0005** – smartphone app tracks/monitors applications such as posts to social network, **0007** – smartphone app tracks/monitors any applications downloaded including content of any social network posts created, viewed or sent,  **0098** – monitor and control activities on smartphone wherein activities include social media, text messages, chat services, and websites, **0101** – flag conversations with illicit content, **0102** – smartphone has a safety system plugin 132 (e.g., **Application Barrier**) to monitor social application(s) and is helpful in controlling the local functionality of the UE, **0109** – Thus it can prevent, inhibit, deter, or monitor taking or receiving inappropriate pictures, **0111** – **portions of the safety system 110 (e.g., Application Barrier) can be installed on the UE 130**, 0112 – Facebook, Twitter, etc., **0121** -  the safety system (e.g., Application Barrier) can monitor and review Whatsapp message**, SnapChat messages, Facebook messages, etc.**, **0122** – these communications can be analyzed by the analysis module 112.  Some or all of this analysis can occur either onboard the UE, on a server, and/or within a safety system 110.  **For example, the communication may contain illicit content such as profanity or inappropriate images**, **0123** –

monitor social media data, **0131** – filter content from various software applications on

the UE, such as web browser clients, social media clients, SMS, MMS, etc.  The safety

system 110 (e.g., **Application Barrier**) can also work as a plug-in for these

applications.  The safety system (**Application Barrier**) can review the content and

determine any content to block or flag for review via the administration portal or user

interface module.  In some embodiments, application monitoring, filtering and blocking

may also be implemented as described herein with respect to Apps Agent, **0132** – the

UE can alert a user and/or prohibit, inhibit, or block downloading and installations of

certain applications, **0134-0135** – Website monitoring, filtering and blocking and alerting

with respect to pornography, profanity, nudity, violence, drugs, images – gang symbols,

genitalia, other body parts, etc. **0137** – analysis of web pages visited, URLs employed,

applications run, and messages sent or received or recording evidence of illicit

activities, **0148** – disable access to web browsing or social networking links from UEs

during work hours, **0149** – software on the smartphone can be employed to track

attempts to circumvent any settings or restrictions and report any clandestine usage

(e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system

110 (e.g., Application Barrier) can also track any attempts at tampering or disabling

features of the safety system, **0154** – safety system (e.g., Application Barrier) can

intercept data being transferred to and/or from the camera on the phone.  During video

chatting (FaceTime, Skype, etc.), the system can perform image recognition and block

any indecent content in real time, as well as, monitoring external communications.  For

example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school

geofenced, **0167-0168** – monitoring social media activities, **0173** – monitor applications

Application/Control Number: 16/925,076                                      Page 6
Art Unit: 2646

on a smartphone and alert when an application is installed, monitor text messages, monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from images (for example sent or received via messages, posted on Facebook, or SnapChat, etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on messaging use, application use, social network use, picture capturing usage, etc. Based on this data gathered, determine whether a particular behavior with respect to using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile agent as taught by Yuen to include gathering social interactions of the social application(s) and review the interactions as taught by Day in order to enable the parent/administrator to quickly identify misbehavior and/or illicit activities on Facebook, Whatsapp, Snapchat, Twitter, etc. and disable the applications when appropriate.

Regarding claim 31.  Yuen teaches a mobile device for use in a controlled environment facility, comprising:

**a memory that stores a set of operations of an application barrier** (figure 1, 0031-0032 wherein smartphone item 10 has mobile agent item 20 for managing content of an installed application list 22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the mobile that the application was changed (e.g., installed, removed, downloaded, updated)**; and a processor configured to: execute the set of operations of the application barrier, the set of operations comprising: disable**

**non-secure functions of an application stored in the memory of the mobile device**

(0041 – one example means for disabling (i.e., not allowing user of the mobile device to

access and execute) the newly installed application, another example means for

disabling by the mobile agent to disable or otherwise redirect a system of function call

associated with the newly installed application, such that mobile agent would not allow

the system of function call issued by the Operating System of the device infrastructure

to be received by the newly installed application.  Another example means is by the

mobile agent to disable operation or otherwise hide (e.g., grayed out) of a user interface

27 icon (e.g., a graphical user interface) associated with the newly installed application,

0053-0055 as discussed above, each mobile device is configured with Mobile Agent 20

for managing content of the application list 22, containing identification of all mobile

applications presently installed (and/or removed) on the mobile device and the mobile

agent can quarantine/disable non-compliant applications).

     Yuen does not teach **the non-secure functions including social functions of**

**the application**; and **monitor user activity of a social application, the monitoring**

**including gathering social interactions of the social application and review the**

**social interactions for illicit activity**.

     Day teaches monitoring non-secure functions including social functions of the

application (**abstract** – access and extract data from or about one or more of the

smartphone software applications, including at least two of texting application, a **social**

**media application**, image application that facilitates TX and RX of images, web

browser application, **0005** – smartphone app tracks/monitors applications such as posts

to social network, **0007** – smartphone app tracks/monitors any applications downloaded

including content of any social network posts created, viewed or sent, **0098** – monitor

and control activities on smartphone wherein activities include social media, text

messages, chat services, and websites, **0101** – flag conversations with illicit content,

**0102** – smartphone has a safety system plugin 132 (e.g., **Application Barrier**) to

monitor social application(s) and is helpful in controlling the local functionality of the UE,

**0109** – Thus it can prevent, inhibit, deter, or monitor taking or receiving inappropriate

pictures, **0111** – **portions of the safety system 110 (e.g., Application Barrier) can be**

**installed on the UE 130**, 0112 – Facebook, Twitter, etc., **0121** -  the safety system

(e.g., Application Barrier) can monitor and review Whatsapp message**, SnapChat**

**messages, Facebook messages, etc.**, **0122** – these communications can be analyzed

by the analysis module 112.  Some or all of this analysis can occur either onboard the

UE, on a server, and/or within a safety system 110.  **For example, the communication**

**may contain illicit content such as profanity or inappropriate images**, 0123 –

monitor social media data, **0131** – filter content from various software applications on

the UE, such as web browser clients, social media clients, SMS, MMS, etc.  The safety

system 110 (e.g., **Application Barrier**) can also work as a plug-in for these

applications.  The safety system (**Application Barrier**) can review the content and

determine any content to block or flag for review via the administration portal or user

interface module.  In some embodiments, application monitoring, filtering and blocking

may also be implemented as described herein with respect to Apps Agent, **0132** – the

UE can alert a user and/or prohibit, inhibit, or block downloading and installations of

certain applications, **0134-0135** – Website monitoring, filtering and blocking and alerting

with respect to pornography, profanity, nudity, violence, drugs, images – gang symbols,

genitalia, other body parts, etc. **0137** – analysis of web pages visited, URLs employed, applications run, and messages sent or received or recording evidence of illicit activities, **0148** – disable access to web browsing or social networking links from UEs during work hours, **0149** – software on the smartphone can be employed to track attempts to circumvent any settings or restrictions and report any clandestine usage (e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system 110 (e.g., Application Barrier) can also track any attempts at tampering or disabling features of the safety system, **0154** – safety system (e.g., Application Barrier) can intercept data being transferred to and/or from the camera on the phone.  During video chatting (FaceTime, Skype, etc.), the system can perform image recognition and block any indecent content in real time, as well as, monitoring external communications.  For example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school geofenced, **0167**-**0168** – monitoring social media activities, **0173** – monitor applications on a smartphone and alert when an application is installed, monitor text messages, monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from images (for example sent or received via messages, posted on Facebook, or SnapChat, etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on messaging use, application use, social network use, picture capturing usage, etc. Based on this data gathered, determine whether a particular behavior with respect to using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the mobile agent as taught by Yuen to

include gathering social interactions of the social application(s) and review the

interactions as taught by Day in order to enable the parent/administrator to quickly

identify misbehavior and/or illicit activities on Facebook, Whatsapp, Snapchat, Twitter,

etc. and disable the applications when appropriate.

Regarding claim 38.  Yuen teaches a system for use in a controlled environment

facility for preventing unsanctioned use of a mobile device in a controlled environment

facility, comprising:

**an application barrier** (figure 1, 0031-0032 wherein smartphone item 10 has

mobile agent item 20 for managing content of an installed application list 22, figure 3,

0039-0043 wherein mobile agent identifies via an Operation System of the mobile that

the application was changed (e.g., installed, removed, downloaded, updated), **stored**

**on a memory of the mobile device, configured to prevent an unsanctioned**

**function from being performed on the mobile device, the application barrier**

**configured to** (0041 – one example means for disabling (i.e., not allowing user of the

mobile device to access and execute) the newly installed application, another example

means for disabling by the mobile agent to disable or otherwise redirect a system of

function call associated with the newly installed application, such that mobile agent

would not allow the system of function call issued by the Operating System of the

device infrastructure to be received by the newly installed application.  Another example

means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of

a user interface 27 icon (e.g., a graphical user interface) associated with the newly

Application/Control Number: 16/925,076                                                    Page 11
Art Unit: 2646

installed application, 0053-0055 as discussed above, each mobile device is configured

with Mobile Agent 20 for managing content of the application list 22, containing

identification of all mobile applications presently installed (and/or removed) on the

mobile device and the mobile agent can quarantine/disable non-compliant applications)**:**

**perform application modification in which non-secure functions of an**

**application stored in the memory of the mobile device are disabled** ((figure 1,

0031-0032 wherein smartphone item 10 has mobile agent item 20 having an installed

application list item 22, figure 3, 0039-0043 wherein mobile agent identifies via an

Operation System of the mobile that the application was changed (e.g., installed or

removed, 0041 – one example means for disabling (i.e., not allowing user of the mobile

device to access and execute) the newly installed application, another example means

for disabling by the mobile agent to disable or otherwise redirect a system of function

call associated with the newly installed application, such that mobile agent would not

allow the system of function call issued by the Operating System of the device

infrastructure to be received by the newly installed application.  Another example means

is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of a user

interface 27 icon (e.g., a graphical user interface) associated with the newly installed

application, 0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications).

    Yuen does not teach **the non-secure functions including social functions of**

**the application; and monitor user activity of a social application, the monitoring**

**including gathering social interactions of the social application and review the**

**social interactions for illicit activity.**

Day teaches monitoring non-secure functions including social functions of the

application (**abstract** – access and extract data from or about one or more of the

smartphone software applications, including at least two of texting application, a **social**

**media application**, image application that facilitates TX and RX of images, web

browser application, **0005** – smartphone app tracks/monitors applications such as posts

to social network, **0007** – smartphone app tracks/monitors any applications downloaded

including content of any social network posts created, viewed or sent,  **0098** – monitor

and control activities on smartphone wherein activities include social media, text

messages, chat services, and websites, **0101** – flag conversations with illicit content,

**0102** – smartphone has a safety system plugin 132 (e.g., **Application Barrier**) to

monitor social application(s) and is helpful in controlling the local functionality of the UE,

**0109** – Thus it can prevent, inhibit, deter, or monitor taking or receiving inappropriate

pictures, **0111** – **portions of the safety system 110 (e.g., Application Barrier) can be**

**installed on the UE 130**, 0112 – Facebook, Twitter, etc., **0121** -  the safety system

(e.g., Application Barrier) can monitor and review Whatsapp message**, SnapChat**

**messages, Facebook messages, etc.**, **0122** – these communications can be analyzed

by the analysis module 112.  Some or all of this analysis can occur either onboard the

UE, on a server, and/or within a safety system 110.  **For example, the communication**

**may contain illicit content such as profanity or inappropriate images**, 0123 –

monitor social media data, **0131** – filter content from various software applications on

the UE, such as web browser clients, social media clients, SMS, MMS, etc.  The safety

system 110 (e.g., **Application Barrier**) can also work as a plug-in for these

applications.  The safety system (**Application Barrier**) can review the content and

determine any content to block or flag for review via the administration portal or user

interface module.  In some embodiments, application monitoring, filtering and blocking

may also be implemented as described herein with respect to Apps Agent, **0132** – the

UE can alert a user and/or prohibit, inhibit, or block downloading and installations of

certain applications, **0134-0135** – Website monitoring, filtering and blocking and alerting

with respect to pornography, profanity, nudity, violence, drugs, images – gang symbols,

genitalia, other body parts, etc. **0137** – analysis of web pages visited, URLs employed,

applications run, and messages sent or received or recording evidence of illicit

activities, **0148** – disable access to web browsing or social networking links from UEs

during work hours, **0149** – software on the smartphone can be employed to track

attempts to circumvent any settings or restrictions and report any clandestine usage

(e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system

110 (e.g., Application Barrier) can also track any attempts at tampering or disabling

features of the safety system, **0154** – safety system (e.g., Application Barrier) can

intercept data being transferred to and/or from the camera on the phone.  During video

chatting (FaceTime, Skype, etc.), the system can perform image recognition and block

any indecent content in real time, as well as, monitoring external communications.  For

example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school

geofenced, **0167-0168** – monitoring social media activities, **0173** – monitor applications

on a smartphone and alert when an application is installed, monitor text messages,

monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed

and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from images (for example sent or received via messages, posted on Facebook, or SnapChat, etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on messaging use, application use, social network use, picture capturing usage, etc. Based on this data gathered, determine whether a particular behavior with respect to using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile agent as taught by Yuen to include gathering social interactions of the social application(s) and review the interactions as taught by Day in order to enable the parent/administrator to quickly identify misbehavior and/or illicit activities on Facebook, Whatsapp, Snapchat, Twitter, etc. and disable the applications when appropriate.

Regarding claim 24.  Yuen teaches wherein the application barrier is further configured to prevent installation or removal of an application (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Day teaches the application barrier is further configured to prevent installation or removal of an application (**0132-0133**– the safety system can alert a user and/or prohibit, inhibit, or block downloading and installation of certain applications, **0152** – safety system (**Application Barrier**) can also track any attempts at tampering or disabling features of the safety system.  For example, a user may try to remove the safety system and the safety system can attempt to block removal or disabling of its features, **0221** – prevent bypassing the curfew screen).

Regarding claims 25 and 32.  Yuen teaches wherein the application barrier is further configured to detect an attempt to perform an unsanctioned function of the application stored in the memory of the mobile device (figure 1, 0031-0032 wherein smartphone item 10 has mobile agent item 20 having an installed application list item 22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the mobile that the application was changed (e.g., installed or removed), 0041 – one example means for disabling (i.e., not allowing user of the mobile device to access and execute) the newly installed application, another example means for disabling by the mobile agent to disable or otherwise redirect a system of function call associated with the newly installed application, such that mobile agent would not allow the system of function call issued by the Operating System of the device infrastructure to be received by the newly installed application.  Another example means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of a user interface 27 icon (e.g., a graphical user interface) associated with the newly installed application, 0053-0055 as discussed above, each mobile device is configured with Mobile Agent 20 for managing content of the application list 22, containing identification of all mobile applications

presently installed (and/or removed) on the mobile device and the mobile agent can

quarantine/disable non-compliant applications).

Day teaches wherein the application barrier is further configured to detect an

attempt to perform an unsanctioned function of the application stored in the memory

of the mobile device (**abstract** – access and extract data from or about one or more of

the smartphone software applications, including at least two of texting application, **a**

**social media application**, image application that facilitates TX and RX of images, web

browser application, **0005** – smartphone app tracks/monitors applications such as

**posts to social network**, **0007** – smartphone app tracks/monitors any applications

downloaded including content of any social network posts created, viewed or sent,

**0098** – monitor and control activities on smartphone wherein activities **include social**

**media, text messages, chat services, and websites**, 0101 – <u>flag conversations</u>

<u>with illicit content</u>, **0102** – smartphone has a safety system plugin 132 (e.g.,

**Application Barrier**) to monitor social application(s) and is helpful in controlling the

local functionality of the UE, **0109** – <u>**Thus it can prevent, inhibit, deter, or monitor**</u>

<u>**taking or receiving inappropriate pictures**</u>, **0111** – portions of the safety system 110

(e.g., Application Barrier) can be installed on the UE 130, 0112 – Facebook, Twitter,

etc., **0121** - the safety system (e.g., Application Barrier) can monitor and review

Whatsapp message**<u>, SnapChat messages, Facebook messages, etc.</u>**, **0122** – these

communications can be analyzed by the analysis module 112.  Some or all of this

analysis can occur either onboard the UE, on a server, and/or within a safety system

110.  **For example, the communication may contain <u>illicit</u> content such as**

**profanity or inappropriate images**, **0123** – monitor social media data, **0131** – filter

content from various software applications on the UE, such as web browser clients,

social media clients, SMS, MMS, etc.  The safety system 110 (e.g., **Application**

**Barrier**) can also work as a plug-in for these applications.  The safety system

(**Application Barrier**) can <u>**review the content and determine any content to block**</u>

<u>**or flag for review via the administration portal or user interface module**</u>.  In some

embodiments, application monitoring, filtering and blocking may also be implemented as

described herein with respect to Apps Agent, **0132** – the UE can alert a user and/or

prohibit, inhibit, or block downloading and installations of certain applications, **0134-**

**0135** – Website monitoring, filtering and blocking and alerting with respect to

<u>**pornography, profanity, nudity, violence, drugs, images – gang symbols,**</u>

<u>**genitalia, other body parts, etc.**</u> **0137** – analysis of web pages visited, URLs

employed, applications run, and messages sent or received or recording <u>**evidence of**</u>

<u>**illicit activities**</u>, **0148** – disable access to web browsing or social networking links from

UEs during work hours, **0149** – software on the smartphone can be employed to <u>**track**</u>

<u>**attempts to circumvent any settings or restrictions and report any clandestine**</u>

<u>**usage**</u> (e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety

system 110 (e.g., Application Barrier) can also track any attempts at tampering or

disabling features of the safety system, **0154** – safety system (e.g., Application Barrier)

can intercept data being transferred to and/or from the camera on the phone.  During

video chatting (FaceTime, Skype, etc.), the system can perform image recognition and

<u>**block any indecent content in real time, as well as, monitoring external**</u>

<u>**communications.  For example, SnapChat, Whatsapp, etc.,**</u> **0157** – disable

Facebook inside of school geofenced, **0167-0168** – monitoring social media activities,

**0173** – monitor applications on a smartphone and alert when an application is installed, monitor text messages, monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also **identify from images (for example sent or received via messages, posted on Facebook, or SnapChat, etc.) that the child is holding a can of beer** (**illicit activity**), **0204** – collect data on messaging use, application use, social network use, picture capturing usage, etc.  Based on this data gathered, determine whether a **particular behavior** with respect to using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.) in the UE.

Regarding claims 26 and 33.  Yuen teaches wherein the application barrier is further configured to prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function (figure 1, 0031-0032 wherein smartphone item 10 has mobile agent item 20 having an installed application list item 22, figure 3, 0039-0043 wherein mobile agent identifies via an Operation System of the mobile that the application was changed (e.g., installed or removed), 0041 – one example means for disabling (i.e., not allowing user of the mobile device to access and execute) the newly installed application, another example means for disabling by the mobile agent to disable or otherwise redirect a system of function call associated with the newly installed application, such that mobile agent would not allow the system of function call issued by the Operating System of the device infrastructure to be received by the newly installed application.  Another example means is by the mobile agent to disable operation or otherwise hide (e.g., grayed out) of a user

Application/Control Number: 16/925,076                                      Page 19
Art Unit: 2646

interface 27 icon (e.g., a graphical user interface) associated with the newly installed

application, 0053-0055 as discussed above, each mobile device is configured with

Mobile Agent 20 for managing content of the application list 22, containing identification

of all mobile applications presently installed (and/or removed) on the mobile device and

the mobile agent can quarantine/disable non-compliant applications).

Day teaches wherein the application barrier is further configured to prevent a

processor of the mobile device from executing operations related to the attempt to

perform the unsanctioned function (**abstract** – access and extract data from or about

one or more of the smartphone software applications, including at least two of texting

application, **a social media application**, image application that facilitates TX and RX of

images, web browser application, **0005** – smartphone app tracks/monitors applications

such as **posts to social network**, **0007** – smartphone app tracks/monitors any

applications downloaded including content of any social network posts created, viewed

or sent,  **0098** – monitor and control activities on smartphone wherein activities **include**

**social media, text messages, chat services, and websites**, 0101 – <u>flag</u>

<u>conversations with illicit content</u>, 0102 – smartphone has a safety system plugin 132

(e.g., **Application Barrier**) to monitor social application(s) and is helpful in controlling

the local functionality of the UE, **0109** – <u>**Thus it can prevent, inhibit, deter, or monitor**</u>

<u>**taking or receiving inappropriate pictures**</u>, **0111** – portions of the safety system 110

(e.g., Application Barrier) can be installed on the UE 130, 0112 – Facebook, Twitter,

etc., **0121** -  the safety system (e.g., Application Barrier) can monitor and review

Whatsapp message<u>**, SnapChat messages, Facebook messages, etc.**</u>, **0122** – these

communications can be analyzed by the analysis module 112.  Some or all of this

analysis can occur either onboard the UE, on a server, and/or within a safety system

110.  **For example, the communication may contain <u>illicit</u> content such as**

**profanity or inappropriate images**, **0123** – monitor social media data, **0131** – filter

content from various software applications on the UE, such as web browser clients,

social media clients, SMS, MMS, etc.  The safety system 110 (e.g., **Application**

**Barrier**) can also work as a plug-in for these applications.  The safety system

(**Application Barrier**) can <u>review the content and determine any content to block</u>

<u>or flag for review via the administration portal or user interface module</u>.  In some

embodiments, application monitoring, filtering and blocking may also be implemented as

described herein with respect to Apps Agent, **0132** – the UE can alert a user and/or

prohibit, inhibit, or block downloading and installations of certain applications, **0134-**

**0135** – Website monitoring, filtering and blocking and alerting with respect to

**<u>pornography, profanity, nudity, violence, drugs, images – gang symbols,</u>**

**<u>genitalia, other body parts, etc.</u> 0137** – analysis of web pages visited, URLs

employed, applications run, and messages sent or received or recording **<u>evidence of</u>**

**<u>illicit activities</u>, 0148** – disable access to web browsing or social networking links from

UEs during work hours, **0149** – software on the smartphone can be employed to **<u>track</u>**

**<u>attempts to circumvent any settings or restrictions and report any clandestine</u>**

**<u>usage</u>** (e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety

system 110 (e.g., Application Barrier) can also track any attempts at tampering or

disabling features of the safety system, **0154** – safety system (e.g., Application Barrier)

can intercept data being transferred to and/or from the camera on the phone.  During

video chatting (FaceTime, Skype, etc.), the system can perform image recognition and

**block any indecent content in real time, as well as, monitoring external**

**communications.  For example, SnapChat, Whatsapp, etc., 0157** – disable

Facebook inside of school geofenced, **0167-0168** – monitoring social media activities,

**0173** – monitor applications on a smartphone and alert when an application is installed,

monitor text messages, monitor web browsing, monitor social media, **0189, figure 14** –

Facebook installed and/or uninstalled, **0201** – safety system (e.g., Application Barrier)

can also **identify from images (for example sent or received via messages, posted**

**on Facebook, or SnapChat, etc.) that the child is holding a can of beer** (**illicit**

**activity**), **0204** – collect data on messaging use, application use, social network use,

picture capturing usage, etc.  Based on this data gathered, determine whether a

**particular behavior** with respect to using the UE is deviating from the norm (**illicit**

**activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.)

in the UE.

  Regarding claims 27, 35 and 41.  Yuen teaches wherein the application barrier is

further configured to: detect an attempt to delete the application on the mobile device;

and send a command to the processor of the mobile device to cancel the attempt (figure

1, 0039 wherein mobile is configured with a mobile agent to identify applications that

have been installed or removed, 0045 – removed application is not authorized, 0050

mobile agent also maintains a list of all currently disabled newly installed applications,

0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or

removed applications); and send a command to the processor of the mobile device to

cancel the attempt (0040 – mobile agent first disables the newly installed application,

0041 – the mobile disables or hides the icon associated with the installed application,

0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Day teaches wherein the application barrier is further configured to: detect an attempt to delete the application on the mobile device; and send a command to the processor of the mobile device to cancel the attempt (**0132-0133**– the safety system can alert a user and/or prohibit, inhibit, or block downloading and installation of certain applications, **0152** – safety system (**Application Barrier**) can also track any attempts at tampering or disabling features of the safety system.  For example, a user may try to remove the safety system and the safety system can attempt to block removal or disabling of its features, **0221** – prevent bypassing the curfew screen).

Regarding claims 28 and 36.  Yuen teaches wherein the application barrier is further configured to: detect an attempt to install an application on the mobile device; and send a command to the processor of the mobile device to cancel the attempt (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Day teaches wherein the application barrier is further configured to: detect an attempt to install an application on the mobile device; and send a command to the processor of the mobile device to cancel the attempt (**0132-0133**– the safety system can alert a user and/or prohibit, inhibit, or block downloading and installation of certain applications, **0152** – safety system (**Application Barrier**) can also track any attempts at tampering or disabling features of the safety system.  For example, a user may try to remove the safety system and the safety system can attempt to block removal or disabling of its features, **0221** – prevent bypassing the curfew screen)

Regarding claims 30, 34 and 40.  Yuen does not teach wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

Day teaches monitoring non-secure functions including social functions of the application (**abstract** – access and extract data from or about one or more of the smartphone software applications, including at least two of texting application, a **social media application (e.g., unsanctioned source outside of the controlled home/facility)**, image application that facilitates TX and RX of images, web browser application, **0005** – smartphone app tracks/monitors applications such as **posts to social network (e.g., unsanctioned source outside of the controlled home/facility)**, **0007** – smartphone app tracks/monitors any applications downloaded including content of any **social network posts created, viewed or sent (e.g., unsanctioned source outside of the controlled home/facility)**,  **0098** – monitor and control activities on smartphone wherein activities include **social media**, text messages, **chat services**, **and websites**, **0101** – **flag conversations with illicit content**, **0102** – smartphone has

Application/Control Number: 16/925,076                                                    Page 24
Art Unit: 2646

a safety system plugin 132 (e.g., **Application Barrier**) to monitor **social application(s)**
**(e.g., unsanctioned source outside of the controlled home/facility)** and is helpful in
controlling the local functionality of the UE, **0109** – Thus it can prevent, inhibit, deter, or
monitor taking or receiving inappropriate pictures, **0111** – portions of the safety system
110 (e.g., Application Barrier) can be installed on the UE 130, 0112 – Facebook,
Twitter, etc. **(e.g., unsanctioned source outside of the controlled home/facility)**,
**0121** -  the safety system (e.g., Application Barrier) can monitor and review Whatsapp
message**, SnapChat messages, Facebook messages, etc. (e.g., unsanctioned**
**source outside of the controlled home/facility)**, **0122** – these communications can
be analyzed by the analysis module 112.  Some or all of this analysis can occur either
onboard the UE, on a server, and/or within a safety system 110.  **For example, the**
**communication may contain <u>illicit</u> content such as profanity or inappropriate**
**images**, **0123** – monitor social media data, **0131** – filter content from various software
applications on the UE, such as web browser clients, social media clients, SMS, MMS,
etc.  The safety system 110 (e.g., **Application Barrier**) can also work as a plug-in for
these applications.  The safety system (**Application Barrier**) can review the content
and determine any content to block or flag for review via the administration portal or
user interface module.  In some embodiments, application monitoring, filtering and
blocking may also be implemented as described herein with respect to Apps Agent,
**0132** – the UE can alert a user and/or prohibit, inhibit, or block downloading and
installations of certain applications, **0134-0135** – Website monitoring, filtering and
blocking and alerting with respect to pornography, profanity, nudity, violence, drugs,
images – gang symbols, genitalia, other body parts, etc. **0137** – analysis of web pages

visited, URLs employed, applications run, and messages sent or received or recording evidence of illicit activities, **0148** – disable access to web browsing or social networking links from UEs during work hours, **0149** – software on the smartphone can be employed to track attempts to circumvent any settings or restrictions and report any clandestine usage (e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system 110 (e.g., Application Barrier) can also track any attempts at tampering or disabling features of the safety system, **0154** – safety system (e.g., Application Barrier) can intercept data being transferred to and/or from the camera on the phone.  During video chatting (FaceTime, Skype, etc.), the system can perform image recognition and block any indecent content in real time, as well as, monitoring external communications. For example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school geofenced, **0167**-**0168** – monitoring social media activities, **0173** – monitor applications on a smartphone and alert when an application is installed, monitor text messages, monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from images (for example sent or received via messages, posted on Facebook, or SnapChat, etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on messaging use, application use, social network use, picture capturing usage, etc. Based on this data gathered, determine whether a particular behavior with respect to using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective filing date of the claimed invention to modify the mobile agent as taught by Yuen to

include gathering social interactions of the social application(s) **(e.g., unsanctioned source outside of the controlled home/facility)** and review the interactions as taught by Day in order to enable the parent/administrator to quickly identify misbehavior and/or illicit activities on Facebook, Whatsapp, Snapchat, Twitter, etc. and disable the applications when appropriate.

Regarding claim 39.  Yuen teaches wherein the application barrier is configured to prevent an unsanctioned function from being performed by: detecting at least one of a **first attempt by a user to <u>delete</u> an application** from the memory of the mobile device, **a second attempt by the user to <u>install</u> a second application** on the mobile device and preventing the processor of the UE from executing any operations related to the first attempt, the second attempt, and the ~~third attempt~~ (figure 1, 0039 wherein mobile is configured with a mobile agent to identify applications that have been installed or removed, 0045 – removed application is not authorized, 0050 mobile agent also maintains a list of all currently disabled newly installed applications, 0053 wherein mobile agent has list (item 22 figure 1) identifying all installed and/or removed applications); and send a command to the processor of the mobile device to cancel the attempt (0040 – mobile agent first disables the newly installed application, 0041 – the mobile disables or hides the icon associated with the installed application, 0054-0055 wherein mobile agent can quarantine/disable all applications defined by the difference).

Yuen does not teach **a third attempt by the application to <u>access content from a disallowed source outside of the controlled environment facility</u>**; and preventing a processor of the mobile device from executing any operations related to the ~~first attempt, the second attempt, and~~ the third attempt.

Application/Control Number: 16/925,076                                         Page 27
Art Unit: 2646

Day also teaches wherein the application barrier is further configured to: detect

an attempt to delete the application on the mobile device; and send a command to the

processor of the mobile device to cancel the attempt (**0132-0133**– the safety system

can alert a user and/or prohibit, inhibit, or block downloading and installation of certain

applications, **0152** – safety system (**Application Barrier**) can also track any attempts at

tampering or disabling features of the safety system.  For example, a user may try to

remove the safety system and the safety system can attempt to block removal or

disabling of its features, **0221** – prevent bypassing the curfew screen)

Day teaches monitoring non-secure functions including social functions of the

application (**abstract** – access and extract data from or about one or more of the

smartphone software applications, including at least two of texting application, a **<u>social</u>**

**<u>media application</u> (e.g., disallowed source outside of the controlled home/facility)**,

image application that facilitates TX and RX of images, web browser application, **0005** –

smartphone app tracks/monitors applications such as **posts to social network (e.g.,**

**disallowed source outside of the controlled home/facility)**, **0007** – smartphone app

tracks/monitors any applications downloaded including content of any **<u>social network</u>**

**<u>posts created, viewed or sent</u> (e.g., disallowed source outside of the controlled**

**home/facility)**,  **0098** – monitor and control activities on smartphone wherein activities

include **<u>social media</u>**, text messages, **<u>chat services</u>**, **<u>and websites</u>**, **0101** – **<u>flag</u>**

**<u>conversations with illicit content</u>**, **0102** – smartphone has a safety system plugin 132

(e.g., **Application Barrier**) to monitor **social application(s) (e.g., disallowed source**

**outside of the controlled home/facility)** and is helpful in controlling the local

functionality of the UE, **0109** – Thus it can prevent, inhibit, deter, or monitor taking or

receiving inappropriate pictures, **0111** – portions of the safety system 110 (e.g.,

Application Barrier) can be installed on the UE 130, 0112 – Facebook, Twitter, etc.

**(e.g., disallowed source outside of the controlled home/facility)**, **0121** -  the safety

system (e.g., Application Barrier) can monitor and review Whatsapp message**,**

**SnapChat messages, Facebook messages, etc. (e.g., disallowed source outside**

**of the controlled home/facility)**, **0122** – these communications can be analyzed by the

analysis module 112.  Some or all of this analysis can occur either onboard the UE, on

a server, and/or within a safety system 110.  **For example, the communication may**

**contain illicit content such as profanity or inappropriate images**, **0123** – monitor

social media data, **0131** – filter content from various software applications on the UE,

such as web browser clients, social media clients, SMS, MMS, etc.  The safety system

110 (e.g., **Application Barrier**) can also work as a plug-in for these applications.  The

safety system (**Application Barrier**) can review the content and determine any content

to block or flag for review via the administration portal or user interface module.  In

some embodiments, application monitoring, filtering and blocking may also be

implemented as described herein with respect to Apps Agent, **0132** – the UE can alert a

user and/or prohibit, inhibit, or block downloading and installations of certain

applications, **0134-0135** – Website monitoring, filtering and blocking and alerting with

respect to pornography, profanity, nudity, violence, drugs, images – gang symbols,

genitalia, other body parts, etc. **0137** – analysis of web pages visited, URLs employed,

applications run, and messages sent or received or recording evidence of illicit

activities, **0148** – disable access to web browsing or social networking links from UEs

during work hours, **0149** – software on the smartphone can be employed to track

attempts to circumvent any settings or restrictions and report any clandestine usage

(e.g., **illicit usage**) that is contrary to the curfew restrictions, **0152** – the safety system

110 (e.g., Application Barrier) can also track any attempts at tampering or disabling

features of the safety system, **0154** – safety system (e.g., Application Barrier) can

intercept data being transferred to and/or from the camera on the phone.  During video

chatting (FaceTime, Skype, etc.), the system can perform image recognition and block

any indecent content in real time, as well as, monitoring external communications.  For

example, SnapChat, Whatsapp, etc., **0157** – disable Facebook inside of school

geofenced, **0167**-**0168** – monitoring social media activities, **0173** – monitor applications

on a smartphone and alert when an application is installed, monitor text messages,

monitor web browsing, monitor social media, **0189, figure 14** – Facebook installed

and/or uninstalled, **0201** – safety system (e.g., Application Barrier) can also identify from

images (for example sent or received via messages, posted on Facebook, or SnapChat,

etc.) that the child is holding a can of beer (**illicit activity**), **0204** – collect data on

messaging use, application use, social network use, picture capturing usage, etc.

Based on this data gathered, determine whether a particular behavior with respect to

using the UE is deviating from the norm (**illicit activity**), 0209 – block some or all

functionalities (for example texting, Facebook, etc.) in the UE.

It would have been obvious for one of ordinary skill in the art before the effective

filing date of the claimed invention to modify the mobile agent as taught by Yuen to

include gathering social interactions of the social application(s) **(e.g., disallowed

source outside of the controlled home/facility)** and review the interactions as taught

by Day in order to enable the parent/administrator to quickly identify misbehavior and/or

Application/Control Number: 16/925,076                                          Page 30
Art Unit: 2646

illicit activities on Facebook, Whatsapp, Snapchat, Twitter, etc. and disable the

applications when appropriate.

2.      Claims 29 and 37 are rejected under 35 U.S.C. 103 as being unpatentable over

Yuen in view of Day, II further in view of Forssell et al (2014/0226487).

        Regarding claims 29 and 37.  Yuen in view of Day do not explicitly show wherein

the application barrier is further configured to: detect an over-the-air command received

by the mobile device over a wireless link; determine that the command meets a security

requirement of a second application sanctioned to change the device settings; and in

response to determining that the command meets the security requirement, allow the

command to be executed by a processor of the mobile device.

        However, Day teaches parents can enable or disable remotely, over a network,

some or all of the features of the safety system 110 on their child's UE using one or

more authentication mechanisms  (**0218, 233, 310-0311, 0316-0317, 0328**).  Day

further teaches parent can send command to child's UE to enable/disable certain

applications (**0220, 0314, 0316, 0319, 0322**).

        Forssell teaches device management server, like Nokia Siemens Network's

SADM, may be used to configure user devices automatically Over-the-Air.  DM server

may configure into user devices Wi-Fi network settings, like SSID, and used

authentication method (0113-0118).

        It would have been extremely obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the mobile device as taught by

Yuen in view of Day to use a Device Management Server as taught by Forssell in order

to automatically configure device Wi-Fi settings Over-the-Air.

Application/Control Number: 16/925,076                                                Page 31
Art Unit: 2646

### *Conclusion*

3.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to BARRY W TAYLOR whose telephone number is

(571)272-7509.  The examiner can normally be reached on Monday-Thursday: 7-5.

         Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

         If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Lester Kincaid can be reached on 571-272-7922.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

         Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/BARRY W TAYLOR/
Primary Examiner, Art Unit 2646

Application/Control Number: 16/925,076                                    Page 32
Art Unit: 2646

| *Notice of References Cited* | Application/Control No.<br>16/925,076 | Applicant(s)/Patent Under Reexamination<br>MARASS et al. | |
|---|---|---|---|
| | Examiner<br>BARRY W TAYLOR | Art Unit<br>2646 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20140226487-A1 | 08-2014 | Forssell; Mika | H04W60/005 | 370/235 |
| * | B | US-20150040246-A1 | 02-2015 | Yuen; Chun Fung | H04W12/10 | 726/30 |
| * | C | US-20170149795-A1 | 05-2017 | Day, II; Rowland William | H04W12/086 | 1/1 |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | Examiner | Art Unit |
| | BARRY W TAYLOR | 2646 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| H04W 12/08, 12/35, 12/126, 12/37 | 05/28/2021 | BWT |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| updated search for parent application and Google Scholar | 05/28/2021 | BWT |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| /BARRY W TAYLOR/ Primary Examiner, Art Unit 2646 | |
|---|---|
| | |

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/925,076 | MARASS et al. |
| | **Examiner** | **Art Unit** |
| | BARRY W TAYLOR | 2646 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 05/28/2021 | | | | | | | | |
| | 1 | - | | | | | | | | |
| | 2 | - | | | | | | | | |
| | 3 | - | | | | | | | | |
| | 4 | - | | | | | | | | |
| | 5 | - | | | | | | | | |
| | 6 | - | | | | | | | | |
| | 7 | - | | | | | | | | |
| | 8 | - | | | | | | | | |
| | 9 | - | | | | | | | | |
| | 10 | - | | | | | | | | |
| | 11 | - | | | | | | | | |
| | 12 | - | | | | | | | | |
| | 13 | - | | | | | | | | |
| | 14 | - | | | | | | | | |
| | 15 | - | | | | | | | | |
| | 16 | - | | | | | | | | |
| | 17 | - | | | | | | | | |
| | 18 | - | | | | | | | | |
| | 19 | - | | | | | | | | |
| | 20 | - | | | | | | | | |
| | 21 | - | | | | | | | | |
| | 22 | - | | | | | | | | |
| | 23 | ✓ | | | | | | | | |
| | 24 | ✓ | | | | | | | | |
| | 25 | ✓ | | | | | | | | |
| | 26 | ✓ | | | | | | | | |
| | 27 | ✓ | | | | | | | | |
| | 28 | ✓ | | | | | | | | |
| | 29 | ✓ | | | | | | | | |
| | 30 | ✓ | | | | | | | | |
| | 31 | ✓ | | | | | | | | |
| | 32 | ✓ | | | | | | | | |
| | 33 | ✓ | | | | | | | | |
| | 34 | ✓ | | | | | | | | |
| | 35 | ✓ | | | | | | | | |
| | 36 | ✓ | | | | | | | | |
| | 37 | ✓ | | | | | | | | |
| | 38 | ✓ | | | | | | | | |
| | 39 | ✓ | | | | | | | | |
| | 40 | ✓ | | | | | | | | |
| | 41 | ✓ | | | | | | | | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 2 | ("20170149795" or "20080222692").pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 15:51 |
| L2 | 6 | ("20170149795" or "20080222692") | US-PGPUB; USPAT | OR | ON | 2021/05/26 15:52 |
| L3 | 8 | "10237280" | US-PGPUB; USPAT | OR | ON | 2021/05/26 15:59 |
| L4 | 1 | "10237280".pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 15:59 |
| L5 | 4 | ("20130040604" or "20140214668" or "20140310403" or "20160294962").pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:01 |
| L6 | 2 | "20150040246" | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:19 |
| L7 | 1 | "20150040246".pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:21 |
| L8 | 1 | "9305162".pn. | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:21 |
| L9 | 1,351,801 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:26 |
| L10 | 3,701 | L9 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:26 |
| L11 | 1,351,801 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:27 |

| L12 | 289 | L11 same ((disallow$4 or forbid$5 or deny$5 or cancel$5) near7 (removal or delet$4 or install or access or chang$4 or download$4) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:27 |
|---|---|---|---|---|---|---|
| L15 | 2,564 | ((unsanctione$4 or sanction$4 or contraband or illicit or illegal or pirated or smuggled or unauthoriz$6 or bootlegged or unlawful) near7 (ap or (access adj2 point) or wifi or wi-fi or wlan or w-lan)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:43 |
| L16 | 12,854 | ((jailbroken or jailbreak$4 or (jail aj2 (brokn or break$4))) near7 (os or (operat$6 adj3 system))) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:44 |
| L17 | 64 | L16 and (ssid$1 or essid$1 or (service adj3 set adj3 identifier$1)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:44 |
| L18 | 1,351,801 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:46 |
| L19 | 3,701 | L18 same ((delet$4 or install) near7 (software or application or (device adj3 (configuration$1 or settings)))) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:46 |
| L20 | 16,712 | (H04W12/08 or H04W4/001 or H04W4/008).CPC. | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:46 |
| L21 | 282 | L19 and L20 | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:46 |
| L22 | 1,351,801 | ((tamper$5 or chang$4 or meddl$4 or modify or modification or tamper-proof) near7 (mobile or terminal or device or phone or smartphone or telephone or wtru$3 or ue$2 or wcd$2 or wtu$2 or pda or cellphone)) | US-PGPUB; USPAT | OR | OFF | 2021/05/26 16:46 |
| L23 | 131 | L22 same ((monitor$4 or interactions) near7 ((social$3 adj3 media) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:46 |
| L24 | 268 | (monitor$4 near7 interaction$1 near7 ((social$5 adj3 (media or functions)) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:48 |

| L25 | 0 | 24 same ((prevent$5 or cancel$5) near7 (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:51 |
|---|---|---|---|---|---|---|
| L26 | 6 | 24 and ((prevent$5 or cancel$5) near7 (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:51 |
| L27 | 13 | 24 and ((prevent$5 or cancel$5) same (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 16:52 |
| L28 | 2,917 | (monitor$4 same interaction$1 same ((social$5 adj3 (media or functions)) or facebook$4 or yelp$4 or snap$7 or twitter)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:00 |
| L29 | 14 | 28 same ((prevent$5 or cancel$5) same (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:02 |
| L30 | 229 | 28 and ((prevent$5 or cancel$5) same (download$5 or install$7 or delet$5 or unsaction$4)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:05 |
| L31 | 130 | 28 and ((prevent$5 or cancel$5) same (download$5 or install$7 or delet$5 or unsaction$4) same (app$1 or application$1)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:05 |
| L32 | 302 | 28 and ((prevent$5 or cancel$5 or block$4) same (download$5 or install$7 or delet$5 or unsaction$4) same (app$1 or application$1)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:08 |
| L33 | 172 | 32 not 31 | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:49 |
| L34 | 69 | 28 and ((prevent$5 or cancel$5 or block$4) near7 (download$5 or install$7 or delet$5 or unsaction$4) same (app$1 or application$1)) | US-PGPUB; USPAT | OR | ON | 2021/05/26 17:53 |

5/26/2021 5:57:55 PM
C:\Users\btaylor\Documents\EAST\Workspaces\Workspaces\%15,435,993 prevent use of mobile for inmates.wsp

# Bibliographic Data

Application No:  16/925,076

Foreign Priority claimed:  ◯ Yes  ⬤ No

35 USC 119 (a-d) conditions met:  ☑ Yes  ☐ No  ☐ Met After Allowance

Verified and Acknowledged:

| /BARRY W TAYLOR/ | BWT |
|---|---|
| Examiner's Signature | Initials |

Title:  SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/09/2020 **RULE** | 455 | 2646 | 3210.1280001 |

**APPLICANTS**

GLOBAL TEL*LINK CORPORATION, Reston, VA, UNITED STATES

**INVENTORS**

Jason MARASS, Fairhope, AL, UNITED STATES

Brian PETERS, St. Paul, MN, UNITED STATES

Garth JOHNSON, Indianapolis, IN, UNITED STATES

Stephen Lee HODGE, Dallas, TX, UNITED STATES

**CONTINUING DATA**

This application is a CON of 15435993 02/17/2017 PAT 10721624

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

07/20/2020

**STATE OR COUNTRY**

UNITED STATES

**ADDRESS**

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

1100 NEW YORK AVENUE, N.W.

WASHINGTON, DC 20005

UNITED STATES

**FILING FEE RECEIVED**

$1,880

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 1 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 10,068,398  B1 | 09-04-2018 | Hodge | |
| | US2 | 10,205,727 | 02-12-2019 | Hodge | |
| | US3 | 10,205,820 | 02-12-2019 | Hodge | |
| | US4 | 10,341,484 B2 | 07-02-2019 | Hodge et al. | |
| | US5 | 10,464,474 B2 | 11-05-2019 | Hodge | |
| | US6 | 2002/0071537 A1 | 06-13-2002 | Gainsboro | |
| | US7 | 2003/0036381 A1 | 02-20-2003 | Nagashima | |
| | US8 | 2003/0086546 A1 | 05-08-2003 | Falcone et al. | |
| | US9 | 2003/0126470 A1 | 07-03-2003 | Crites et al. | |
| | US10 | 2003/0198325 A1 | 10-23-2003 | Bayne | |
| | US11 | 2003/0224764 A1 | 12-04-2003 | Baker | |
| | US12 | 2004/0023698 A1 | 02-05-2004 | Chang | |
| | US13 | 2005/0265529 A1 | 12-01-2005 | Hogg, Jr. et al. | |
| | US14 | 2006/0062355 A1 | 03-23-2006 | Leonard | |
| | US15 | 2006/0095175 A1 | 05-04-2006 | deWaal et al. | |
| | US16 | 2006/0176169 A1 | 08-10-2006 | Doolin et al. | |
| | US17 | 2007/0041545 A1 | 02-22-2007 | Gainsboro | |
| | US18 | 2007/0047694 A1 | 03-01-2007 | Bouchard et al. | |
| | US19 | 2007/0057763 A1 | 03-15-2007 | Blattner et al. | |
| | US20 | 2008/0057976 A1 | 03-06-2008 | Rae et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 2 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US21 | 2008/0200156 A1 | 08-21-2008 | Hicks et al. | |
| | US22 | 2009/0080629 A1 | 03-26-2009 | Rokosky et al. | |
| | US23 | 2009/0128356 A1 | 05-21-2009` | Nitta et al. | |
| | US24 | 2010/0062833 A1 | 03-11-2010 | Mattice et al. | |
| | US25 | 2010/0189228 A1 | 07-29-2010 | Seyfetdinov | |
| | US26 | 2010/0260173 A1 | 10-14-2010 | Johnson | |
| | US27 | 2011/0004878 A1 | 01-06-2011 | Divoux | |
| | US28 | 2011/0039581 A1 | 02-17-2011 | Cai et al. | |
| | US29 | 2011/0158223 A1 | 06-30-2011 | Liu et al. | |
| | US30 | 2011/0162060 A1 | 06-30-2011 | Vijayakumar et al. | |
| | US31 | 2011/0213618 A1 | 09-01-2011 | Hodge et al. | |
| | US32 | 2011/0237226 A1 | 09-29-2011 | Dhuna | |
| | US33 | 2012/0099714 A1 | 04-26-2012 | Hodge | |
| | US34 | 2012/0252411 A1 | 10-04-2012 | Johsgard et al. | |
| | US35 | 2012/0262271 A1 | 10-18-2012 | Torgersrud et al. | |
| | US36 | 2013/0179210 A1 | 07-11-2013 | Collins | |
| | US37 | 2013/0293378 A1 | 11-07-2013 | Aninye et al. | |
| | US38 | 2013/0311364 A1 | 11-21-2013 | Shipman et al. | |
| | US39 | 2013/0318594 A1 | 11-28-2013 | Hoy et al. | |
| | US40 | 2014/0032691 A1 | 01-30-2014 | Barton et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 3 | of | 7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US41 | 2014/0044242 A1 | 02-13-2014 | Hodge et al. | |
| | US42 | 2014/0089849 A1 | 03-27-2014 | Choi et al. | |
| | US43 | 2014/0108649 A1 | 04-17-2014 | Barton | |
| | US44 | 2014/0109174 A1 | 04-17-2014 | Barton et al. | |
| | US45 | 2014/0115466 A1 | 04-24-2014 | Barak et al. | |
| | US46 | 2014/0157141 A1 | 06-05-2014 | Hussain | |
| | US47 | 2014/0219432 A1 | 08-07-2014 | Bengston et al. | |
| | US48 | 2014/0226487 A1 | 08-14-2014 | Forssell et al. | |
| | US49 | 2014/0267547 A1 | 09-18-2014 | Torgersrud et al. | |
| | US50 | 2014/0273929 A1 | 09-18-2014 | Torgersrud | |
| | US51 | 2014/0282868 A1 | 09-18-2014 | Sheller et al. | |
| | US52 | 2014/0287715 A1 | 09-25-2014 | Hodge et al. | |
| | US53 | 2014/0333425 A1 | 11-13-2014 | Giraud | |
| | US54 | 2015/0040246 A1 | 02-05-2015 | Yuen et al. | |
| | US55 | 2015/0105105 A1 | 04-16-2015 | Van Heerden et al. | |
| | US56 | 2015/0237052 A1 | 08-20-2015 | Brique et al. | |
| | US57 | 2015/0242629 A1 | 08-27-2015 | Lindo et al. | |
| | US58 | 2016/0055323 A1 | 02-25-2016 | Stuntebeck et al. | |
| | US59 | 2016/0066182 A1 | 03-03-2016 | Hodge et al. | |
| | US60 | 2016/0088021 A1 | 03-24-2016 | Jayanti Venkata et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 4 | of | 7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US61 | 2016/0094560 A1 | 03-31-2016 | Stuntebeck | |
| | US62 | 2016/0219146 A1 | 07-28-2016 | Hodge et al. | |
| | US63 | 2016/0267257 A1 | 09-15-2016 | Wisgo | |
| | US64 | 2016/0291643 A1 | 10-06-2016 | Sande | |
| | US65 | 2016/0309008 A1 | 10-20-2016 | Hangsleben | |
| | US66 | 2016/0330084 A1 | 11-10-2016 | Hunter et al. | |
| | US67 | 2016/0381212 A1 | 12-29-2016 | Hodge et al. | |
| | US68 | 2016/0381219 A1 | 12-29-2016 | Hodge et al. | |
| | US69 | 2016/0381556 A1 | 12-29-2016 | Hodge et al. | |
| | US70 | 2017/0013393 A1 | 01-12-2017 | Chang | |
| | US71 | 2017/0039784 A1 | 02-09-2017 | Gelbart et al. | |
| | US72 | 2017/0061006 A1 | 03-02-2017 | Hildebrand et al. | |
| | US73 | 2017/0084150 A1 | 03-23-2017 | Keyton | |
| | US74 | 2017/0146801 A1 | 05-25-2017 | Stempora | |
| | US75 | 2017/0168164 A1 | 06-15-2017 | Lee | |
| | US76 | 2017/0177892 A1 | 06-22-2017 | Tingstrom et al. | |
| | US77 | 2017/0193622 A1 | 07-06-2017 | Rosado | |
| | US78 | 2017/0208468 A1 | 07-20-2017 | Hodge et al. | |
| | US79 | 2017/0233168 A1 | 08-17-2017 | Horvath et al. | |
| | US80 | 2017/0244729 A1 | 08-24-2017 | Fahrny et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | **Complete if Known** | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 5 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code [2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US81 | 2017/0329966 A1 | 11-16-2017 | Koganti | |
| | US82 | 2018/0039779 A1 | 02-08-2018 | Li et al. | |
| | US83 | 2018/0159972 A1 | 06-07-2018 | Hodge et al. | |
| | US84 | 2018/0242155 A1 | 08-23-2018 | Marass et al. | |
| | US85 | 2018/0275859 A1 | 09-27-2018 | Hodge | |
| | US86 | 2018/0316675 A1 | 11-01-2018 | Hodge | |
| | US87 | 4,495,386 | 01-22-1985 | Brown et al. | |
| | US88 | 5,255,306 | 10-19-1993 | Melton et al. | |
| | US89 | 5,896,556 | 04-20-1999 | Moreland et al. | |
| | US90 | 6,054,928 | 04-25-2000 | Lemelson et al. | |
| | US91 | 6,058,173 | 05-02-2000 | Penfield et al. | |
| | US92 | 6,668,045 B1 | 12-23-2003 | Mow | |
| | US93 | 6,965,590 B1 | 11-15-2005 | Schmidl et al. | |
| | US94 | 7,085,359 B2 | 08-01-2006 | Crites et al. | |
| | US95 | 7,106,843 B1 | 09-12-2006 | Gainsboro et al. | |
| | US96 | 7,218,993 B2 | 05-15-2007 | Yasukawa et al. | |
| | US97 | 7,254,708 B2 | 08-07-2007 | Silvester | |
| | US98 | 7,280,816 B2 | 10-09-2007 | Fratti et al. | |
| | US99 | 7,333,798 B2 | 02-19-2008 | Hodge | |
| | US100 | 7,366,782 B2 | 04-29-2008 | Chong et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W. TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | To Be Assigned |
| | | | Filing Date | Herewith |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | To Be Assigned |
| | | | Examiner Name | To Be Assigned |
| Sheet | 6 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US101 | 7,529,357 B1 | 05-05-2009 | Rae et al. | |
| | US102 | 7,587,067 B1 | 09-08-2009 | Schiller | |
| | US103 | 7,742,581 B2 | 06-22-2010 | Hodge et al. | |
| | US104 | 7,804,941 B2 | 09-28-2010 | Keiser et al. | |
| | US105 | 7,860,222 B1 | 12-28-2010 | Sidler et al. | |
| | US106 | 7,899,167 B1 | 03-01-2011 | Rae | |
| | US107 | 8,019,354 B2 | 09-13-2011 | Rae et al. | |
| | US108 | 8,031,052 B2 | 10-04-2011 | Polozola | |
| | US109 | 8,370,206 B2 | 02-05-2013 | Collins | |
| | US110 | 8,428,559 B2 | 04-23-2013 | Silva | |
| | US111 | 8,498,937 B1 | 07-30-2013 | Shipman, Jr. et al. | |
| | US112 | 8,571,525 B2 | 10-29-2013 | Weinstein et al. | |
| | US113 | 8,639,926 B2 | 01-28-2014 | Brown et al. | |
| | US114 | 8,646,056 B2 | 02-04-2014 | Poplett | |
| | US115 | 8,917,848 B2 | 12-23-2014 | Torgersrud et al. | |
| | US116 | 9,094,500 B1 | 07-28-2015 | Edwards | |
| | US117 | 9,124,763 B2 | 09-01-2015 | Humphries | |
| | US118 | 9,232,051 B2 | 01-05-2016 | Torgersrud et al. | |
| | US119 | 9,262,604 B2 | 02-16-2016 | Kimbrell | |
| | US120 | 9,272,713 B1 | 03-01-2016 | Dvoskin | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 7 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US121 | 9,282,188 B2 | 03-08-2016 | Hodge et al. | |
| | US122 | 9,307,386 B2 | 04-05-2016 | Hodge et al. | |
| | US123 | 9,614,954 B2 | 04-04-2017 | Hodge et al. | |
| | US124 | 9,614,955 B2 | 04-04-2017 | Hodge et al. | |
| | US125 | 9,661,128 B2 | 05-23-2017 | Hodge et al. | |
| | US126 | 9,674,338 B2 | 06-06-2017 | Hodge et al. | |
| | US127 | 9,866,680 B2 | 01-09-2018 | Hodge et al. | |
| | US128 | 9,871,915 B2 | 01-16-2018 | Hodge et al. | |
| | US129 | 9,878,660 B1 | 01-30-2019 | Hodge | |
| | US130 | 9,888,108 B2 | 02-06-2018 | Hodge et al. | |
| | US131 | 9,892,242 B1 | 02-13-2018 | Hodge | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | | | *Complete if Known* | |
|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | | Application Number | To Be Assigned |
| | | | | | Filing Date | Herewith |
| | | | | | First Named Inventor | Jason MARASS |
| | | | | | Art Unit | To Be Assigned |
| | | | | | Examiner Name | To Be Assigned |
| Sheet | 1 | of | 2 | | Attorney Docket Number | 3210.1280001 |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published | T[2] |
|---|---|---|---|
| | NPL1 | "Criminal Calls: A Review of the Bureau of Prisons' Management of Inmate Telephone Privileges," U.S. Department of Justice, Office of the Inspector General, August 1999. | |
| | NPL2 | European Search Report and Opinion directed to European Patent Application No. 14769931.8, dated October 26, 2016; 10 pages. | |
| | NPL3 | International Search Report and Written Opinion of the International Searching Authority, directed to related International Patent Application No. PCT/US14/31339, mailed November 6, 2014; 19 pages. | |
| | NPL4 | Knox, "The Problem of Gangs and Security Threat Groups (STG's) in American Prisons Today: Recent Research Findings From the 2004 Prison Gang Survey," National Gang Crime Research Center, 2005; 67 pages. | |
| | NPL5 | Rey, R.F., ed., "Engineering and Operations in the Bell System," 2nd Edition, AT&T Bell Laboratories: Murray Hill, NJ, 1983. | |
| | NPL6 | Rosenberg, et al., "SIP: Session Initial Protocol," Network Working Group, Standard Track, June 2002; 269 pages. | |
| | NPL7 | U.S. Provisional Appl. No. 61/801,861, "Handheld Video Visitation," to TORGERSRUD, ET AL., filed March 15, 2013. | |
| | NPL8 | Winterdyk et al., "Managing Prison Gangs," Journal of Criminal Justice, Vol. 38, 2010; pp. 730-736. | |
| | NPL9 | U.S. Provisional Application No. 61/804,479, filed March 22, 2013. | |
| | NPL10 | International Search Report and Written Opinion of the International Searching Authority directed to International Patent Application No. PCT/US2018/024611, mailed June 11, 2018; 8 pages. | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | To Be Assigned |
| | | | Filing Date | Herewith |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | To Be Assigned |
| | | | Examiner Name | To Be Assigned |
| Sheet | 2 | of | 2 | Attorney Docket Number | 3210.1280001 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume number, publisher, city and/or country where published | T[2] |
| | NPL11 | International Search Report and Written Opinion of the International Searching Authority directed to related International Patent Application No. PCT/US2018/000080, mailed April 30, 2018; 13 pages. | |
| | NPL12 | File History of U.S. Patent No. 9,094,500, Appl. No. 14/322,869, filed July 2, 2014. | |
| | NPL13 | File History of U.S. Patent No. 9,307,386, Appl. No. 13/946,637, filed July 19, 2013. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /BARRY W TAYLOR/ | Date Considered | 05/28/2021 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /B.W.T/

## Mental health among jail and prison **inmates**

Y Yi, K Turney, C Wildeman - American journal of men's ..., 2017 - journals.sagepub.com
... Download Citation. Download article citation data for: Mental Health Among Jail and Prison
**Inmates**. Youngmin Yi, MA , Kristin Turney, PhD , and Christopher Wildeman, PhD. American
Journal of Men's Health 2016 11:4, 900-909. Share. Share ... Share this article via **social media** ...
☆ ⯗⯗ Cited by 52   Related articles   All 5 versions   »

## What are we feeding our **inmates**?

SA Collins, SH Thompson - Journal of Correctional Health ..., 2012 - journals.sagepub.com
... Download Citation. Download article citation data for: What Are We Feeding Our **Inmates**?
Shayda A. Collins and Sharon H. Thompson, EdD, CHES. Journal of Correctional Health Care
2012 18:3, 210-218. Share. Share ... Share this article via **social media** ...
☆ ⯗⯗ Cited by 77   Related articles   All 12 versions   »

## Tweeting the *Jihad*: **Social Media** Networks of Western Foreign Fighters in Syria and Iraq

J Klausen - Studies in Conflict & Terrorism, 2015 - Taylor & Francis
... August and September 2014 alluded to the jumpsuits worn by the **inmates** in Guantanamo ... British
fighter with ISIL, used Twitter to circulate a screenshot made **using** Instagram of ... The pictures of
violence starkly highlighted the role played by **social media** in contemporary terrorist ...
☆ ⯗⯗ Cited by 668   Related articles   All 10 versions

## Measuring suicidality **using** the Personality Assessment Inventory: A convergent validity study with federal **inmates**

MW Patry, PR Magaletta - Assessment, 2015 - journals.sagepub.com
... Tips on citation download. Download Citation. Download article citation data for: Measuring
Suicidality **Using** the Personality Assessment Inventory. Marc W. Patry and Philip R. Magaletta.
Assessment 2014 22:1, 36-45. Share. Share ... Share this article via **social media** ...
☆ ⯗⯗ Cited by 30   Related articles   All 8 versions   »

## Training and preparing **inmates** for post-prison employment

D Wells, National Institute of Justice (NIJ) ... - Corrections Today, 2014 - ncjrs.gov
... shift in how jobs are advertised — print ads to online job boards and **social media** websites —
it ... ers and acquire skills in **using** the Internet, including creating email accounts; **using** search
engines ... **Inmates** should leave prison with copies of a generic cover letter and resume that ...
☆ ⯗⯗ Cited by 4   Related articles   All 2 versions   »

## Sporting girls, streetwalkers, and **inmates** of houses of ill repute: **Media** narratives and the historical mutability of prostitution stigmas

HK Hallgrímsdóttir, R Phillips ... - Sociological ..., 2008 - journals.sagepub.com
... All the articles were coded **using** an "open-coding" technique ... Sporting Girls, Streetwalkers, and
**Inmates** of Houses of Ill Repute ... The final theme (8 percent of the articles) deals with concerns
regarding the failure of **social** institutions (primarily, the family, schools, and religious ...
☆ ⯗⯗ Cited by 95   Related articles   All 11 versions   »

## The pains of permanent imprisonment: Examining perceptions of confinement among older life without parole **inmates**

ME Leigey, MA Ryder - International journal of offender ..., 2015 - journals.sagepub.com
... Share this article via **social media**. The e-mail addresses that you supply to use this
service will not be used for any other purpose without your consent. Recommend
to a friend. Email a link to the following content: *Recipient's ...
☆ ⯗⯗ Cited by 38   Related articles   All 6 versions   »

## Hepatitis C seroprevalence among prison **inmates** since 2001: still high but declining

AK Varan, DW Mercer, MS Stein ... - Public Health ..., 2014 - journals.sagepub.com
... Seroprevalence among Prison **Inmates** since 2001: Still High but Declining. Aiden K. Varan, MPH ,
Daniel W. Mercer, MPH , Matthew S. Stein, MSPH , and Anne C. Spaulding, MD, MPH. Public
Health Reports 2014 129:2, 187-195. Share. Share ... Share this article via **social media** ...
☆ ⯗⯗ Cited by 100   Related articles   All 8 versions   »

Racial and ethnic differences in the predictive validity of the Level of Service Inventory—Revised among prison **inmates**
JL Chenane, PK Brennan, B Steiner… - Criminal Justice and …, 2015 - journals.sagepub.com
… in the Predictive Validity of the Level of Service Inventory–Revised Among Prison **Inmates**.
Joselyne L. Chenane, Pauline K. Brennan, Benjamin Steiner, and Jared M. Ellison. Criminal
Justice and Behavior 2014 42:3, 286-303. Share. Share … Share this article via **social media** …

☆ 🇩 Cited by 48 Related articles All 7 versions

**Social media** dilemmas in the employment context
H Lam - Employee Relations, 2016 - emerald.com
… on the internet, including a hospital staff breaching patient confidentiality, a prison officer
befriending **inmates**, employees badmouthing the … Similar to the various arguments against
cybervetting discussed above, employers **using social media** for disciplinary actions need to …

☆ 🇩 Cited by 53 Related articles All 2 versions

## Related searches

social media **profiles**

**world of** social media

social media **policies**

social media **networks western foreign fighters**

**islamic state** social media

**public private boundaries** social media

**skilled worker shortage** social media

**reasonable expectation of privacy** social media

**evolving role of** social **networking**

social **stigma** media **narratives**

social media **networks syria and iraq**

**german federal employment agency** social media

**risks and rewards** social media

**first insights** social media

**employment relations** social media

**management responsibilities** social **networking**



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 |

**CONFIRMATION NO. 2188**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**PUBLICATION NOTICE**

*OC000000122369565*

**Title:** SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

**Publication No.** US-2020-0412860-A1
**Publication Date:** 12/31/2020

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

# PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

**Application or Docket Number**
16/925,076

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 300 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 660 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 760 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 19 | minus 20 = * | | | OR | x 100 = | 0.00 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 | minus 3 = * | | | | x 460 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1720 |

## APPLICATION AS AMENDED - PART II

### AMENDMENT A

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

### AMENDMENT B

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | | 1880 | 3210.1280001 | 19 | 3 |

**CONFIRMATION NO. 2188**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**UPDATED FILING RECEIPT**

|||||||||||||||| CC000000120082228

Date Mailed: 09/23/2020

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
    Jason MARASS, Fairhope, AL;
    Brian PETERS, St. Paul, MN;
    Garth JOHNSON, Indianapolis, IN;
    Stephen Lee HODGE, Dallas, TX;
**Applicant(s)**
    GLOBAL TEL*LINK CORPORATION, Reston, VA;
**Assignment For Published Patent Application**
    GLOBAL TEL*LINK CORPORATION, Reston, VA

**Power of Attorney:** The patent practitioners associated with Customer Number 26111

**Domestic Priority data as claimed by applicant**
    This application is a CON of 15/435,993 02/17/2017 PAT 10721624

**Foreign Applications** for which priority is claimed  (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

page 1 of 3

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 07/20/2020
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/925,076**
**Projected Publication Date:** 12/31/2020
**Non-Publication Request:** No
**Early Publication Request:** No
**Title**

SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.


**Sterne Kessler**
STERNE KESSLER GOLDSTEIN & FOX

LAUREN C. SCHLEH
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

September 21, 2020

Commissioner for Patents
PO Box 1450
Alexandria, VA  22313-1450

*Confirmation No. 2188*
*Mail Stop Missing Parts*

Re:   U.S. Utility Patent Application
Appl. No. 16/925,076; Filed:  July 9, 2020
For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
Inventors:  MARASS *et al.*
Our Ref:  3210.1280001

Commissioner:

In reply to the "Notice to File Missing Parts of Non-Provisional Application," dated July 22, 2020, Applicant transmits the following documents for appropriate action by the U.S. Patent and Trademark Office:

1.     Online Credit Card Payment Authorization for **$1,880.00** to cover:
$ 1,720.00 Patent Application fee (including basic filing, search and examination fees);
$    160.00 Surcharge for late filing fee or late Oath or Declaration; and
2.     Preliminary Amendment Under 37 C.F.R. § 1.115.

The above-listed documents are filed electronically.

Fee payment is provided through online credit card payment.  The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.  If extensions of time under 37 C.F.R. § 1.136 other than those otherwise provided for herewith are required to prevent abandonment of the present patent application, then such extensions of time are hereby petitioned, and any fees therefor are hereby authorized to be charged to our Deposit Account No. 19-0036.

Respectfully submitted,
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

LCS/crb
Enclosure(s)

15589842.1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventor: MARASS *et al.* | Confirmation No.: 2188 |
| Applicant: Global Tel*Link Corporation | Art Unit: To Be Assigned |
| Application No.: 16/925,076 | Examiner: To Be Assigned |
| (*Continuation of Appl. No. 15/435,993; Filed: February 17, 2017*) | Atty. Docket: 3210.1280001 |
| Filing Date: July 9, 2020 | |

Title:  **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Preliminary Amendment Under 37 C.F.R. § 1.115

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

In advance of prosecution, Applicant submits the following amendments and remarks.

**Amendments to the Claims** are reflected in the listing of claims which begins on page **2** of this paper.

**Remarks and Arguments** begin on page **6** of this paper.

It is not believed that extensions of time are required beyond those that may otherwise be provided for in documents accompanying this paper. However, if additional extensions of time are necessary to prevent abandonment of this application, then such extensions of time are hereby petitioned under 37 C.F.R. § 1.136(a), and any additional fees required to continue prosecution or appeal of this application (including issue fee, fees for net addition of claims or forwarding to appeal) are hereby authorized to be charged to our Deposit Account No. 19-0036.

- 2 -

MARASS *et al.*
Application No. 16/925,076

## *Amendments to the Claims*

This listing of claims will replace all prior versions, and listings, of claims in the application.

1-22.   (Canceled)

23.    (New)  A system for preventing unsanctioned use of a mobile device, comprising:

an application barrier stored on a memory of the mobile device, the application barrier configured to:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including social functions of the application; and

monitor user activity of a social application, the monitoring including gathering social interactions of the social application and review the social interactions for illicit activity.

24.    (New) The system of claim 23, wherein the application barrier is further configured to prevent installation or removal of an application.

25.    (New) The system of claim 23, wherein the application barrier is further configured to detect an attempt to perform an unsanctioned function of the application stored in the memory of the mobile device.

26.    (New) The system of claim 25, wherein the application barrier is further configured to prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function.

27.    (New) The system of claim 23, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

Atty. Dkt. No. 3210.1280001

28.     (New)  The system of claim 23, wherein the application barrier is further configured to:

detect an attempt to install an application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

29.     (New)  The system of claim 23, wherein the application barrier is further configured to:

detect an over-the-air command received by the mobile device over a wireless link;

determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

30.     (New)  The system of claim 25, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

31.     (New)  A mobile device for use in a controlled environment facility, comprising:

a memory that stores a set of operations of an application barrier; and

a processor configured to:

execute the set of operations of the application barrier, the set of operations comprising:

disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including social functions of the application; and

monitor user activity of a social application, the monitoring including gathering social interactions of the social application and review the social interactions for illicit activity.

32.     (New)   The mobile device of claim 31, wherein the set of operations further includes detecting an attempt by a user of the mobile device to perform an unsanctioned function of an application stored on the memory.

- 4 -                                                                    MARASS *et al.*
                                                      Application No. 16/925,076

33.     (New)   The mobile device of claim 32, wherein the set of operations further includes preventing the processor from executing operations related to the attempt to perform the unsanctioned function.

34.     (New)   The mobile device of claim 32, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

35.     (New)  The mobile device of claim 32, wherein the set of operations further includes:
        detecting an attempt to delete the application on the mobile device; and
        sending a command to the processor to cancel the attempt.

36.     (New)  The mobile device of claim 32, wherein the set of operations includes:
        detecting an attempt to install a second application on the mobile device; and
        sending a command to the processor of the mobile device to cancel the installation attempt.

37.     (New)  The mobile device of claim 32, wherein the set of operations includes:
        detecting an over-the-air command received by the mobile device over a wireless link;
        determining that the over-the-air command is from a sanctioned source; and
        in response to determining that the command is from the sanctioned source, allowing the command to be executed by the processor.

38.     (New)  A system for use in a controlled environment facility for preventing unsanctioned use of a mobile device in a controlled environment facility, comprising:
        an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device, the application barrier configured to:
                perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application; and

- 5 -                                                     MARASS *et al.*
                                                    Application No. 16/925,076

monitor user activity of a social application, the monitoring including gathering social interactions of the social application and review the social interactions for illicit activity.

39.     (New)  The system of claim 38, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

        detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

        preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

40.     (New)  The system of claim 39, wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility.

41.     (New)  The system of claim 38, wherein the application barrier is further configured to:
        detect an attempt to delete the application on the mobile device; and
        send a command to the processor the cancel the attempt.

Atty. Dkt. No. 3210.1280001

- 6 -                                                          MARASS *et al.*
                                                       Application No. 16/925,076

## *Remarks*

Upon entry of the foregoing amendment, claims 23-41 are pending in the application, with claims 23, 31, and 38 being independent. By this Amendment, claims 23-41 are added and claims 1-22 are canceled without prejudice to or disclaimer of the subject matter therein.  Applicant respectfully reserves the right to prosecute similar or broader claims, with respect to the canceled claims, in the future. These changes are believed to introduce no new matter, and their entry is respectfully requested.

## *Conclusion*

Prompt and favorable consideration of this Preliminary Amendment is respectfully requested. Applicant believes the present application is in condition for allowance. If the Examiner believes, for any reason, that personal communication will expedite prosecution of this application, the Examiner is invited to telephone the undersigned at the number provided.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date: ___September 21, 2020___

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

15586444.1

Atty. Dkt. No. 3210.1280001

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 16925076 |
| **Filing Date:** | 09-Jul-2020 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Attorney Docket Number:** | 3210.1280001 |

Filed as Large Entity

**Filing Fees for** **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY APPLICATION FILING | 1011 | 1 | 300 | 300 |
| UTILITY SEARCH FEE | 1111 | 1 | 660 | 660 |
| UTILITY EXAMINATION FEE | 1311 | 1 | 760 | 760 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| LATE FILING FEE FOR OATH OR DECLARATION | 1051 | 1 | 160 | 160 |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **1880** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 40612979 |
| **Application Number:** | 16925076 |
| **International Application Number:** | |
| **Confirmation Number:** | 2188 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280001 |
| **Receipt Date:** | 21-SEP-2020 |
| **Filing Date:** | 09-JUL-2020 |
| **Time Stamp:** | 15:28:54 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $1880 |
| RAM confirmation Number | E20209KF29128640 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Applicant Response to Pre-Exam Formalities Notice | 2020-09-21-Reply-Missing-Parts-3210-1280001.pdf | 273220<br><br>b79d7937f40a09ad618b2fe56df47s8efe685dc7 | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | | 2020-09-21-Preliminary-Amendment-3210-1280001.pdf | 140229<br><br>cfb753fc114a23b331504b6d788f90249fe1cf79 | yes | 6 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | Start | End | |
| Preliminary Amendment | 1 | 1 | |
| Claims | 2 | 5 | |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 6 | |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 37088<br><br>28d227ce7f0e856f577cd6c9ee629d9c7b5119b4 | no | 2 |

**Warnings:**

**Information:**

| | | |
|---|---|---|
| **Total Files Size (in bytes):** | | 450537 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/925,076 | 07/09/2020 | | 0.00 | 3210.1280001 | 22 | 3 |

**CONFIRMATION NO. 2188**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**FILING RECEIPT**

|||||||||||||||||||||||||||||||
OC000000118611303

Date Mailed: 07/22/2020

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**
Jason MARASS, Fairhope, AL;
Brian PETERS, St. Paul, MN;
Garth JOHNSON, Indianapolis, IN;
Stephen Lee HODGE, Dallas, TX;

**Applicant(s)**
GLOBAL TEL*LINK CORPORATION, Reston, VA;

**Assignment For Published Patent Application**
GLOBAL TEL*LINK CORPORATION, Reston, VA

**Power of Attorney:** The patent practitioners associated with Customer Number 26111

**Domestic Priority data as claimed by applicant**
This application is a CON of 15/435,993 02/17/2017 PAT 10721624

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 07/20/2020
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/925,076**
**Projected Publication Date:** To Be Determined - pending completion of Missing Parts
**Non-Publication Request:** No
**Early Publication Request:** No
**Title**

               SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/925,076 | 07/09/2020 | Jason MARASS | 3210.1280001 |

**CONFIRMATION NO. 2188**

26111
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

**FORMALITIES LETTER**

*OC000000118611304*

Date Mailed: 07/22/2020

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
- The application search fee must be submitted.
- The application examination fee must be submitted.
- Additional claim fees of $ **200** as an undiscounted entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.
- Surcharge as set forth in 37 CFR 1.16(f) must be submitted.
  The surcharge is due for any one of:
  - late submission of the basic filing fee, search fee, or examination fee,
  - late submission of inventor's oath or declaration,
  - filing an application that does not contain at least one claim on filing, or
  - submission of an application filed by reference to a previously filed application.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. No entity status discount is in effect. If applicant is qualified for small entity status, a written assertion of small entity status must be submitted to establish small entity status. (See 37 CFR 1.27). If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

- $ **300** basic filing fee.
- $ **160** surcharge.
- $ **660** search fee.
- $ **760** examination fee.
- $ **200** for **2** total claims over 20.

- $( **0**) previous unapplied payment amount.
- $ **2080** TOTAL FEE BALANCE DUE.

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice". https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/eruga/
_____

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 16/925,076 |

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY RATE($) | FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 300 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 660 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 760 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 22 minus 20 = | * 2 | | | OR | x 100 = | 200 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 minus 3 = | | | | | x 460 = | 0.00 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0.00 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0.00 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1920 |

### APPLICATION AS AMENDED - PART II

**AMENDMENT A**

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

**AMENDMENT B**

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet  |  1  | of  | 2 | Attorney Docket Number | 3210.1280001 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) volume-issue number(s), publisher, city and/or country where published | T[2] |
| | NPL1 | "Criminal Calls: A Review of the Bureau of Prisons' Management of Inmate Telephone Privileges," U.S. Department of Justice, Office of the Inspector General, August 1999. | |
| | NPL2 | European Search Report and Opinion directed to European Patent Application No. 14769931.8, dated October 26, 2016; 10 pages. | |
| | NPL3 | International Search Report and Written Opinion of the International Searching Authority, directed to related International Patent Application No. PCT/US14/31339, mailed November 6, 2014; 19 pages. | |
| | NPL4 | Knox, "The Problem of Gangs and Security Threat Groups (STG's) in American Prisons Today: Recent Research Findings From the 2004 Prison Gang Survey," National Gang Crime Research Center, 2005; 67 pages. | |
| | NPL5 | Rey, R.F., ed., "Engineering and Operations in the Bell System," 2nd Edition, AT&T Bell Laboratories: Murray Hill, NJ, 1983. | |
| | NPL6 | Rosenberg, et al., "SIP: Session Initial Protocol," Network Working Group, Standard Track, June 2002; 269 pages. | |
| | NPL7 | U.S. Provisional Appl. No. 61/801,861, "Handheld Video Visitation," to TORGERSRUD, ET AL., filed March 15, 2013. | |
| | NPL8 | Winterdyk et al., "Managing Prison Gangs," Journal of Criminal Justice, Vol. 38, 2010; pp. 730-736. | |
| | NPL9 | U.S. Provisional Application No. 61/804,479, filed March 22, 2013. | |
| | NPL10 | International Search Report and Written Opinion of the International Searching Authority directed to International Patent Application No. PCT/US2018/024611, mailed June 11, 2018; 8 pages. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08b (7-09)

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 2 | of | 2 | Attorney Docket Number | 3210.1280001 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume number, publisher, city and/or country where published | T[2] |
| | NPL11 | International Search Report and Written Opinion of the International Searching Authority directed to related International Patent Application No. PCT/US2018/000080, mailed April 30, 2018; 13 pages. | |
| | NPL12 | File History of U.S. Patent No. 9,094,500, Appl. No. 14/322,869, filed July 2, 2014. | |
| | NPL13 | File History of U.S. Patent No. 9,307,386, Appl. No. 13/946,637, filed July 19, 2013. | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

Document Description:  Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form.  If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| Application Number | To Be Assigned |
|---|---|
| Filing Date | Herewith |
| First Named Inventor | Jason MARASS |
| Title | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| Art Unit | To Be Assigned |
| Examiner Name | To Be Assigned |
| Attorney Docket Number | 3210.1280001 |

| SIGNATURE of Applicant or Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Lauren C. Schleh/ | Date (Optional) | |
| Name | Lauren C. Schleh | Registration Number | 65,457 |
| Title (if Applicant is a juristic entity) | Attorney for Applicant | | |
| Applicant Name (if Applicant is a juristic entity) | Global Tel*Link Corporation | | |

**NOTE:**  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

[✔] *Total of   1   forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[X] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

**26111**

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:

[X] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number: **26111**

OR

| Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

Global Tel*Link Corporation

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[X] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

## SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | | Date (Optional) | 9-29-2015 |
|---|---|---|---|
| Name | Stephen Hodge | | |
| Title | Senior Vice President, Research and Development | | |

NOTE: Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[X] Total of   1   forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

2043372.1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: To Be Assigned |
| Applicant: GLOBAL TEL*LINK CORPORATION | Art Unit: To Be Assigned |
| Application No.: To Be Assigned | Examiner: To Be Assigned |
| Filing Date: Herewith | Atty. Docket: 3210.1280001 |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Information Disclosure Statement

*Mail Stop Amendment*

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

Listed on accompanying IDS Forms PTO/SB/08a equivalent and/or PTO/SB/08b equivalent are documents that may be considered material to the patentability of this application as defined in 37 C.F.R. §1.56, and in compliance with the duty of disclosure requirements of 37 C.F.R. §§ 1.97 and 1.98.

Applicant has listed publication dates on the attached IDS Forms based on information presently available to the undersigned. However, the listed publication dates should not be construed as an admission that the information was actually published on the date indicated.

Applicant reserves the right to establish the patentability of the claimed invention over any of the information provided herewith, and/or to prove that this information may not be prior art, and/or to prove that this information may not be enabling for the teachings purportedly offered.

- 2 -                                                                    MARASS *et al.*
                                                          Application No. To Be Assigned

This statement should not be construed as a representation that a search has been made, or that information more material to the examination of the present patent application does not exist. The Examiner is specifically requested not to rely solely on the material submitted herewith.

Filing under 37 C.F.R. § 1.97(b). This Information Disclosure Statement is being filed within three months of the date of filing of a national application other than a continued prosecution application (CPA), OR within three months of the date of entry of the national stage as set forth in 37 C.F.R. § 1.491 in an international application, OR before the mailing date of a first Office Action on the merits OR before the mailing of a first Office Action after the filing of a request for continued examination under 37 C.F.R. § 1.114. No statement or fee is required.

In accordance with 37 C.F.R. § 1.98(a)(2)(ii), no copies of U.S. patents and patent application publications cited as documents **US1-US131** on the attached IDS Forms are submitted.

Copies of the documents **NPL1-NPL13** were cited by or submitted to the Office in an IDS that complies with 37 C.F.R. § 1.98(a)-(c) in Application No. 15/435,993, filed February 17, 2017 (now pending), which is relied upon for an earlier filing date under 35 U.S.C. § 120. Thus, copies of these documents are not attached. 37 C.F.R. § 1.98(d).

It is expected that the examiner will review the prosecution and cited art in the parent Application No. 15/435,993, filed February 17, 2017 (now pending), in accordance with MPEP 2001.06(b), and indicate in the next communication from the office that the art cited in the earlier prosecution history has been reviewed in connection with the present application.

Atty. Dkt. No. 3210.1280001

- 3 -                                                    MARASS *et al.*
                                                    Application No. To Be Assigned

It is respectfully requested that the Examiner initial and return a copy of the enclosed IDS

Forms, and indicate in the official file wrapper of this patent application that the documents have

been considered.

The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or

credit any overpayment, to our Deposit Account No. 19-0036.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:      July 9, 2020

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

Atty. Dkt. No. 3210.1280001

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 1 | of | 7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US1 | 10,068,398  B1 | 09-04-2018 | Hodge | |
| | US2 | 10,205,727 | 02-12-2019 | Hodge | |
| | US3 | 10,205,820 | 02-12-2019 | Hodge | |
| | US4 | 10,341,484 B2 | 07-02-2019 | Hodge et al. | |
| | US5 | 10,464,474 B2 | 11-05-2019 | Hodge | |
| | US6 | 2002/0071537 A1 | 06-13-2002 | Gainsboro | |
| | US7 | 2003/0036381 A1 | 02-20-2003 | Nagashima | |
| | US8 | 2003/0086546 A1 | 05-08-2003 | Falcone et al. | |
| | US9 | 2003/0126470 A1 | 07-03-2003 | Crites et al. | |
| | US10 | 2003/0198325 A1 | 10-23-2003 | Bayne | |
| | US11 | 2003/0224764 A1 | 12-04-2003 | Baker | |
| | US12 | 2004/0023698 A1 | 02-05-2004 | Chang | |
| | US13 | 2005/0265529 A1 | 12-01-2005 | Hogg, Jr. et al. | |
| | US14 | 2006/0062355 A1 | 03-23-2006 | Leonard | |
| | US15 | 2006/0095175 A1 | 05-04-2006 | deWaal et al. | |
| | US16 | 2006/0176169 A1 | 08-10-2006 | Doolin et al. | |
| | US17 | 2007/0041545 A1 | 02-22-2007 | Gainsboro | |
| | US18 | 2007/0047694 A1 | 03-01-2007 | Bouchard et al. | |
| | US19 | 2007/0057763 A1 | 03-15-2007 | Blattner et al. | |
| | US20 | 2008/0057976 A1 | 03-06-2008 | Rae et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 2 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US21 | 2008/0200156 A1 | 08-21-2008 | Hicks et al. | |
| | US22 | 2009/0080629 A1 | 03-26-2009 | Rokosky et al. | |
| | US23 | 2009/0128356 A1 | 05-21-2009` | Nitta et al. | |
| | US24 | 2010/0062833 A1 | 03-11-2010 | Mattice et al. | |
| | US25 | 2010/0189228 A1 | 07-29-2010 | Seyfetdinov | |
| | US26 | 2010/0260173 A1 | 10-14-2010 | Johnson | |
| | US27 | 2011/0004878 A1 | 01-06-2011 | Divoux | |
| | US28 | 2011/0039581 A1 | 02-17-2011 | Cai et al. | |
| | US29 | 2011/0158223 A1 | 06-30-2011 | Liu et al. | |
| | US30 | 2011/0162060 A1 | 06-30-2011 | Vijayakumar et al. | |
| | US31 | 2011/0213618 A1 | 09-01-2011 | Hodge et al. | |
| | US32 | 2011/0237226 A1 | 09-29-2011 | Dhuna | |
| | US33 | 2012/0099714 A1 | 04-26-2012 | Hodge | |
| | US34 | 2012/0252411 A1 | 10-04-2012 | Johsgard et al. | |
| | US35 | 2012/0262271 A1 | 10-18-2012 | Torgersrud et al. | |
| | US36 | 2013/0179210 A1 | 07-11-2013 | Collins | |
| | US37 | 2013/0293378 A1 | 11-07-2013 | Aninye et al. | |
| | US38 | 2013/0311364 A1 | 11-21-2013 | Shipman et al. | |
| | US39 | 2013/0318594 A1 | 11-28-2013 | Hoy et al. | |
| | US40 | 2014/0032691 A1 | 01-30-2014 | Barton et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO<br><br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>*(Use as many sheets as necessary)* | *Complete if Known* | |
|---|---|---|
| | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet      3      of      7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number<br>Number-Kind Code [2] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US41 | 2014/0044242 A1 | 02-13-2014 | Hodge et al. | |
| | US42 | 2014/0089849 A1 | 03-27-2014 | Choi et al. | |
| | US43 | 2014/0108649 A1 | 04-17-2014 | Barton | |
| | US44 | 2014/0109174 A1 | 04-17-2014 | Barton et al. | |
| | US45 | 2014/0115466 A1 | 04-24-2014 | Barak et al. | |
| | US46 | 2014/0157141 A1 | 06-05-2014 | Hussain | |
| | US47 | 2014/0219432 A1 | 08-07-2014 | Bengston et al. | |
| | US48 | 2014/0226487 A1 | 08-14-2014 | Forssell et al. | |
| | US49 | 2014/0267547 A1 | 09-18-2014 | Torgersrud et al. | |
| | US50 | 2014/0273929 A1 | 09-18-2014 | Torgersrud | |
| | US51 | 2014/0282868 A1 | 09-18-2014 | Sheller et al. | |
| | US52 | 2014/0287715 A1 | 09-25-2014 | Hodge et al. | |
| | US53 | 2014/0333425 A1 | 11-13-2014 | Giraud | |
| | US54 | 2015/0040246 A1 | 02-05-2015 | Yuen et al. | |
| | US55 | 2015/0105105 A1 | 04-16-2015 | Van Heerden et al. | |
| | US56 | 2015/0237052 A1 | 08-20-2015 | Brique et al. | |
| | US57 | 2015/0242629 A1 | 08-27-2015 | Lindo et al. | |
| | US58 | 2016/0055323 A1 | 02-25-2016 | Stuntebeck et al. | |
| | US59 | 2016/0066182 A1 | 03-03-2016 | Hodge et al. | |
| | US60 | 2016/0088021 A1 | 03-24-2016 | Jayanti Venkata et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet | 4 | of | 7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US61 | 2016/0094560 A1 | 03-31-2016 | Stuntebeck | |
| | US62 | 2016/0219146 A1 | 07-28-2016 | Hodge et al. | |
| | US63 | 2016/0267257 A1 | 09-15-2016 | Wisgo | |
| | US64 | 2016/0291643 A1 | 10-06-2016 | Sande | |
| | US65 | 2016/0309008 A1 | 10-20-2016 | Hangsleben | |
| | US66 | 2016/0330084 A1 | 11-10-2016 | Hunter et al. | |
| | US67 | 2016/0381212 A1 | 12-29-2016 | Hodge et al. | |
| | US68 | 2016/0381219 A1 | 12-29-2016 | Hodge et al. | |
| | US69 | 2016/0381556 A1 | 12-29-2016 | Hodge et al. | |
| | US70 | 2017/0013393 A1 | 01-12-2017 | Chang | |
| | US71 | 2017/0039784 A1 | 02-09-2017 | Gelbart et al. | |
| | US72 | 2017/0061006 A1 | 03-02-2017 | Hildebrand et al. | |
| | US73 | 2017/0084150 A1 | 03-23-2017 | Keyton | |
| | US74 | 2017/0146801 A1 | 05-25-2017 | Stempora | |
| | US75 | 2017/0168164 A1 | 06-15-2017 | Lee | |
| | US76 | 2017/0177892 A1 | 06-22-2017 | Tingstrom et al. | |
| | US77 | 2017/0193622 A1 | 07-06-2017 | Rosado | |
| | US78 | 2017/0208468 A1 | 07-20-2017 | Hodge et al. | |
| | US79 | 2017/0233168 A1 | 08-17-2017 | Horvath et al. | |
| | US80 | 2017/0244729 A1 | 08-24-2017 | Fahrny et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document — Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | Application Number | To Be Assigned |
| | | | Filing Date | Herewith |
| | | | First Named Inventor | Jason MARASS |
| | | | Art Unit | To Be Assigned |
| | | | Examiner Name | To Be Assigned |
| Sheet | 5 | of | 7 | Attorney Docket Number | 3210.1280001 |

### U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US81 | 2017/0329966 A1 | 11-16-2017 | Koganti | |
| | US82 | 2018/0039779 A1 | 02-08-2018 | Li et al. | |
| | US83 | 2018/0159972 A1 | 06-07-2018 | Hodge et al. | |
| | US84 | 2018/0242155 A1 | 08-23-2018 | Marass et al. | |
| | US85 | 2018/0275859 A1 | 09-27-2018 | Hodge | |
| | US86 | 2018/0316675 A1 | 11-01-2018 | Hodge | |
| | US87 | 4,495,386 | 01-22-1985 | Brown et al. | |
| | US88 | 5,255,306 | 10-19-1993 | Melton et al. | |
| | US89 | 5,896,556 | 04-20-1999 | Moreland et al. | |
| | US90 | 6,054,928 | 04-25-2000 | Lemelson et al. | |
| | US91 | 6,058,173 | 05-02-2000 | Penfield et al. | |
| | US92 | 6,668,045 B1 | 12-23-2003 | Mow | |
| | US93 | 6,965,590 B1 | 11-15-2005 | Schmidl et al. | |
| | US94 | 7,085,359 B2 | 08-01-2006 | Crites et al. | |
| | US95 | 7,106,843 B1 | 09-12-2006 | Gainsboro et al. | |
| | US96 | 7,218,993 B2 | 05-15-2007 | Yasukawa et al. | |
| | US97 | 7,254,708 B2 | 08-07-2007 | Silvester | |
| | US98 | 7,280,816 B2 | 10-09-2007 | Fratti et al. | |
| | US99 | 7,333,798 B2 | 02-19-2008 | Hodge | |
| | US100 | 7,366,782 B2 | 04-29-2008 | Chong et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | | | | Application Number | To Be Assigned |
| | | | | Filing Date | Herewith |
| | | | | First Named Inventor | Jason MARASS |
| | | | | Art Unit | To Be Assigned |
| | | | | Examiner Name | To Be Assigned |
| Sheet | 6 | of | 7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Document Number<br>Number-Kind Code [2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US101 | 7,529,357 B1 | 05-05-2009 | Rae et al. | |
| | US102 | 7,587,067 B1 | 09-08-2009 | Schiller | |
| | US103 | 7,742,581 B2 | 06-22-2010 | Hodge et al. | |
| | US104 | 7,804,941 B2 | 09-28-2010 | Keiser et al. | |
| | US105 | 7,860,222 B1 | 12-28-2010 | Sidler et al. | |
| | US106 | 7,899,167 B1 | 03-01-2011 | Rae | |
| | US107 | 8,019,354 B2 | 09-13-2011 | Rae et al. | |
| | US108 | 8,031,052 B2 | 10-04-2011 | Polozola | |
| | US109 | 8,370,206 B2 | 02-05-2013 | Collins | |
| | US110 | 8,428,559 B2 | 04-23-2013 | Silva | |
| | US111 | 8,498,937 B1 | 07-30-2013 | Shipman, Jr. et al. | |
| | US112 | 8,571,525 B2 | 10-29-2013 | Weinstein et al. | |
| | US113 | 8,639,926 B2 | 01-28-2014 | Brown et al. | |
| | US114 | 8,646,056 B2 | 02-04-2014 | Poplett | |
| | US115 | 8,917,848 B2 | 12-23-2014 | Torgersrud et al. | |
| | US116 | 9,094,500 B1 | 07-28-2015 | Edwards | |
| | US117 | 9,124,763 B2 | 09-01-2015 | Humphries | |
| | US118 | 9,232,051 B2 | 01-05-2016 | Torgersrud et al. | |
| | US119 | 9,262,604 B2 | 02-16-2016 | Kimbrell | |
| | US120 | 9,272,713 B1 | 03-01-2016 | Dvoskin | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Equivalent of Form PTO/SB/08a (07-09)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** *(Use as many sheets as necessary)* | Application Number | To Be Assigned |
| | Filing Date | Herewith |
| | First Named Inventor | Jason MARASS |
| | Art Unit | To Be Assigned |
| | Examiner Name | To Be Assigned |
| Sheet   7   of   7 | Attorney Docket Number | 3210.1280001 |

## U.S. PATENT DOCUMENTS

| Examiner initials* | Cite No.¹ | Document Number — Number-Kind Code² (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | US121 | 9,282,188 B2 | 03-08-2016 | Hodge et al. | |
| | US122 | 9,307,386 B2 | 04-05-2016 | Hodge et al. | |
| | US123 | 9,614,954 B2 | 04-04-2017 | Hodge et al. | |
| | US124 | 9,614,955 B2 | 04-04-2017 | Hodge et al. | |
| | US125 | 9,661,128 B2 | 05-23-2017 | Hodge et al. | |
| | US126 | 9,674,338 B2 | 06-06-2017 | Hodge et al. | |
| | US127 | 9,866,680 B2 | 01-09-2018 | Hodge et al. | |
| | US128 | 9,871,915 B2 | 01-16-2018 | Hodge et al. | |
| | US129 | 9,878,660 B1 | 01-30-2019 | Hodge | |
| | US130 | 9,888,108 B2 | 02-06-2018 | Hodge et al. | |
| | US131 | 9,892,242 B1 | 02-13-2018 | Hodge | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner initials* | Cite No.¹ | Foreign Patent Document — Country Code³-Number⁴-Kind Code⁵ (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T⁶ |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. ¹ Applicant's unique citation designation number (optional). ² See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. ³ Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). ⁴ For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. ⁵ Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. ⁶ Applicant is to place a check mark here if English language Translation is attached.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 39960115 |
| **Application Number:** | 16925076 |
| **International Application Number:** | |
| **Confirmation Number:** | 2188 |
| **Title of Invention:** | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| **First Named Inventor/Applicant Name:** | Jason MARASS |
| **Customer Number:** | 26111 |
| **Filer:** | Lauren Carl Schleh/Renee Bennett |
| **Filer Authorized By:** | Lauren Carl Schleh |
| **Attorney Docket Number:** | 3210.1280001 |
| **Receipt Date:** | 09-JUL-2020 |
| **Filing Date:** | |
| **Time Stamp:** | 17:58:57 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | 2020-07-09-Miscellaneous-Letter-3210-1280001.PDF | 280895 <br> dc801ab0ae42c835963396dc5a492f21fc73 1882 | no | 2 |

**Warnings:**

| Information: | | | | | |
| --- | --- | --- | --- | --- | --- |
| 2 | Authorization for Extension of Time all replies | 2020-07-09-EOT-Authorization-3210-1280001.PDF | 108376<br>0ee3dc2193034363e293dde98bbab5fe8a320f68 | no | 1 |

| Warnings: | | | | | |
| --- | --- | --- | --- | --- | --- |

| Information: | | | | | |
| --- | --- | --- | --- | --- | --- |
| 3 | Application Data Sheet | 2020-07-09-ADS-3210-1280001.PDF | 1256187<br>18fccbcac4a8f80e1da0b1c0a3486395d2a4ae67 | no | 9 |

| Warnings: | | | | | |
| --- | --- | --- | --- | --- | --- |

| Information: | | | | | |
| --- | --- | --- | --- | --- | --- |
| 4 | Oath or Declaration filed | 2020-07-09-Declaration-3210-1280001.PDF | 531952<br>442fe80daca6b1b3fd84133de69b6870c11fd3f6 | no | 4 |

| Warnings: | | | | | |
| --- | --- | --- | --- | --- | --- |

| Information: | | | | | |
| --- | --- | --- | --- | --- | --- |
| 5 | | 2020-07-09-Continued-Prosecution-Application-3210-1280001.pdf | 241259<br>88d23c5c9178c43dfabd6c5f5cb93bc29cec0cfc | yes | 36 |

| Multipart Description/PDF files in .zip description | | | |
| --- | --- | --- | --- |
| Document Description | | Start | End |
| Specification | | 1 | 30 |
| Claims | | 31 | 35 |
| Abstract | | 36 | 36 |

| Warnings: | | | | | |
| --- | --- | --- | --- | --- | --- |

| Information: | | | | | |
| --- | --- | --- | --- | --- | --- |
| 6 | Drawings-only black and white line drawings | 2020-07-09-Drawings-3210-1280001.PDF | 103450<br>2f46df071d52aae5ccb80d74c8a8c0a7c5e1ce55 | no | 10 |

| Warnings: | | | | | |
| --- | --- | --- | --- | --- | --- |

| Information: | | | | | |
| --- | --- | --- | --- | --- | --- |
| 7 | Power of Attorney | 2020-07-09-POA-82A-3210-1280001.PDF | 207346<br>072fbcc0c119549cbafec347d66ebcb59c3bf2f60 | no | 1 |

| | | | | | |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Power of Attorney | 2020-07-09-POA-82B-3210-1280001.PDF | 985797<br><br>0dc7fde447d96a758b49ad4ef49200edf4ad8511 | no | 1 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 9 | Transmittal Letter | 2020-07-09-IDS-Pleading-3210-1280001.PDF | 119167<br><br>6a194c3f60922927fc27e3563fa1525d8c99da57 | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 10 | Information Disclosure Statement (IDS) Form (SB08) | 2020-07-09-IDS-SB08a-3210-1280001.PDF | 203446<br><br>e5f4b87f296233326d652d4413387cf7ae402a71 | no | 7 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 11 | Information Disclosure Statement (IDS) Form (SB08) | 2020-07-09-IDS-SB08b-3210-1280001.PDF | 145704<br><br>de954dfc9610b2e26e05e8619f5f251744a8e9e3 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| This is not an USPTO supplied IDS fillable form | | | | | |
| 12 | Transmittal of New Application | 2020-07-09-Utility-Transmittal-3210-1280001.pdf | 1271362<br><br>93001a075e643aebaec996afbf63a301a4ef8039 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | | **Total Files Size (in bytes):** | 5454941 | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Inventors: MARASS *et al.* | Confirmation No.: To Be Assigned |
| Applicant: GLOBAL TEL*LINK CORPORATION | Art Unit: To Be Assigned |
| Application No.: To Be Assigned | Examiner: To Be Assigned |
| (*Continuation of Appl. No. 15/435,993; Filed: February 17, 2017*) | Atty. Docket: 3210.1280001 |
| Filed: Herewith | |

Title: **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

## Authorization to Treat a Reply as Incorporating an Extension of Time Under 37 C.F.R. § 1.136(a)(3)

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

Commissioner:

The U.S. Patent and Trademark Office is hereby authorized to treat any concurrent or future reply that requires a petition for an extension of time under this paragraph for its timely submission, as incorporating a petition for extension of time for the appropriate length of time. The U.S. Patent and Trademark Office is hereby authorized to charge all required extension of time fees to our Deposit Account No. 19-0036, if such fees are not otherwise provided for in such reply.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

/Lauren C. Schleh/

Lauren C. Schleh
Attorney for Applicant
Registration No. 65,457

Date:  July 9, 2020

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600

15184223.1

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2  (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | Remove |
|---|---|---|---|
| Legal Name | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Jason | | MARASS | |

**Residence Information (Select One)**  ● US Residency      Non US Residency      Active US Military Service

| City | Fairhope | State/Province | AL | Country of Residence i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 410 Myrtle Ave. |
|---|---|
| Address 2 | |
| City | Fairhope | State/Province | AL |
| Postal Code | 36532 | Country i | US |

| Inventor | 2 | | Remove |
|---|---|---|---|
| Legal Name | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Brian | | PETERS | |

**Residence Information (Select One)**  ◉ US Residency      Non US Residency      Active US Military Service

| City | St. Paul | State/Province | MN | Country of Residence i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 1375 Fairmount Ave. |
|---|---|
| Address 2 | |
| City | St. Paul | State/Province | MN |
| Postal Code | 55105 | Country i | US |

| Inventor | 3 | | Remove |
|---|---|---|---|
| Legal Name | | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Garth | | JOHNSON | |

**Residence Information (Select One)**  ◉ US Residency      Non US Residency      Active US Military Service

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

| City | Indianapolis | State/Province | IN | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 3920 Stormhaven Ct. |
|---|---|
| Address 2 | |
| City | Indianapolis | State/Province | IN |
| Postal Code | | Country i | US |

| Inventor | 4 | | Remove |
|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Stephen | Lee | HODGE | |

| Residence Information (Select One) | ● US Residency | Non US Residency | Active US Military Service |
|---|---|---|---|

| City | Dallas | State/Province | TX | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 10030 Inwood Road |
|---|---|
| Address 2 | |
| City | Dallas | State/Province | TX |
| Postal Code | 75229 | Country i | US |

| All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button. | Add |
|---|---|

## Correspondence Information:

| Enter either Customer Number or complete the Correspondence Information section below. For further information see 37 CFR 1.33(a). |
|---|
| ☐ An Address is being provided for the correspondence Information of this application. |

| Customer Number | 26111 |
|---|---|
| Email Address | | Add Email | Remove Email |

## Application Information:

| Title of the Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |
|---|---|---|
| Attorney Docket Number | 3210.1280001 | Small Entity Status Claimed ☐ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Total Number of Drawing Sheets (if any) | 10 | Suggested Figure for Publication (if any) | |

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a).  Do not complete this section if application papers including a specification and any drawings are being filed.  Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

| | |
|---|---|
| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
| ☐ | **Request Not to Publish.**  I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 26111 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending ▼ | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation of ▼ | 15/435993 | 2017-02-17 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.     Add

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
|  | Application Number |  |
| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

Remove

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
|  |  |  |  |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

PTO/AIA/14 (02-18)
Approved for use through 01/31/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |
| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |

## Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**:  This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application.  After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s).  Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1.  Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A.  Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2)  any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B.  Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2.  Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

    A.  Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed.  If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐

    B.  Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

☐

**NOTE:**  Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |
| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES | |

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant** 1     [Remove]

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[Clear]

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

[ ▼ ]

| Name of the Deceased or Legally Incapacitated Inventor: | |
|---|---|
| If the Applicant is an Organization check here. | ☒ |
| Organization Name | GLOBAL TEL*LINK CORPORATION |

**Mailing Address Information For Applicant:**

| **Address 1** | 12021 Sunset Hills Road | | |
|---|---|---|---|
| Address 2 | Suite 100 | | |
| **City** | Reston | **State/Province** | VA |
| **Country** | US | Postal Code | 20190 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    [Add]

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

**Assignee** 1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here.   ☒

| Organization Name | GLOBAL TEL*LINK CORPORATION |
|---|---|

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | 12021 Sunset Hills Road | | |
|---|---|---|---|
| Address 2 | Suite 100 | | |
| City | Reston | State/Province | VA |
| Country i | US | Postal Code | 20190 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.   Add

**Signature:**   Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /Lauren C. Schleh/ | | Date (YYYY-MM-DD) | 2020-07-09 |
|---|---|---|---|---|
| First Name | Lauren C. | Last Name | Schleh | Registration Number | 65,457 |

Additional Signature may be generated within this form by selecting the Add button.   Add

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 3210.1280001 |
|---|---|---|
| | Application Number | |

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.   The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.   A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.   A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.   A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.   A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.   A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.   A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.   A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.   A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:  [X]  The attached application, or

[ ]  United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Jason MARASS                          Date (Optional): 2/6/17

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2

5206644

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X]   The attached application, or

[ ]   United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any wilful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Brian PETERS                                        Date (Optional): 2/1/17

Signature:

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

5026644

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that

This declaration is directed to:

[X]  The attached application, or

[ ]  United States application or PCT international application number _____

filed on _____

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Garth JOHNSON                        Date (Optional): 1/30/2017

Signature:

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

502684*

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Stephen Lee HODGE     Date (Optional): 2-6-2017

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

5026644

- 1 -

# SECURITY SYSTEM FOR INMATE WIRELESS DEVICES

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]     This application is a continuation of U.S. Patent Application No. 15/435,993, filed February 17, 2017, which is incorporated by reference herein in its entirety.

# BACKGROUND

### Field

[0002]     The disclosure relates to a system and method for detecting and locating contraband devices in a correctional facility utilizing mobile devices.

### Background

[0003]     In corrections environments such as prisons, telecommunications are highly monitored and controlled. Typically, a correctional facility makes use of an inmate communication system (ICS), sometimes called an inmate telecommunication system (ITS), that provides both the infrastructure for inmates to communicate with individuals outside of the facility. The ICS also provides correctional facility personnel the ability to record, monitor and control these communications. Inmates are typically afforded a small number of individuals that they can communicate with, such as lawyers, family members, and friends. Inmates are also typically subject to specific restrictions on their communications. For example, inmates are explicitly restricted from contacting other parties, such as judges, witnesses, or accomplices related to their alleged offenses. There also may be a time of day, a length of call, three-way call or other restrictions on calls, all of which must be controlled by way of various instrumentalities that may include computer controlled equipment at the facility and/or at remote locations in addition to human monitoring and/or control. To facilitate these communications and the security measures required to enforce these and other restrictions, an ICS may deploy a wireless infrastructure within the correctional facility grounds and mobile devices sanctioned by the correctional facility may be issued to inmates to allow them perform these communications.

Atty. Dkt. No. 3210.1280001

- 2 -

[0004]     Great lengths are taken to prevent the illicit use of the ICS. An ICS may be configured to record and monitor inmate communications attempted using a mobile device issued to an inmate. With the advances of communications technologies, there may be new methods to bypass security measures. Inmates may seek to discover and exploit the new technology to overcome the restrictions placed on their communications. In particular, the mobile devices, once issued by the correctional facility, may be subject to all manner of tampering.

[0005]     While various aspects and alternative features are known in the field of communication monitoring, no one design has emerged that generally addresses the concerns of the prison industry, as discussed herein.

## BRIEF DESCRIPTION OF THE DRAWINGS/FIGURES

[0006]     The accompanying drawings, which are incorporated herein and form a part of the specification, illustrate embodiments of the present disclosure and, together with the description, further serve to explain the principles of the disclosure and to enable a person skilled in the pertinent art to make and use the embodiments.

[0007]     FIG. 1 illustrates a block diagram of a detection and monitoring system, according to an exemplary embodiment of the present disclosure.

[0008]     FIG. 2 illustrates the structure of the security barriers, according to an exemplary embodiment of the present disclosure.

[0009]     FIG. 3A-3B illustrate the hardware barrier and its relation to the mobile device, according to an exemplary embodiment of the present disclosure.

[0010]     FIG. 4 illustrates the security barriers implemented on the mobile device, according to an exemplary embodiment of the present disclosure.

[0011]     FIG. 5 illustrates the functional elements of a wireless access point, according to an exemplary embodiment of the present disclosure.

[0012]     FIG. 6A-6B illustrate two scenarios of wireless intrusion, according to exemplary embodiments of the present disclosure.

[0013]     FIG. 7 illustrates the firewall and its relation to the other network elements, according to an exemplary embodiment of the present disclosure.

[0014]     FIG. 8A-8C illustrate the operative security barriers for different scenarios, according to an exemplary embodiment of the present disclosure.

Atty. Dkt. No. 3210.1280001

- 3 -

[0015]     FIG. 9 illustrates a computer system, according to an exemplary embodiment of the present disclosure.

[0016]     The present disclosure will be described with reference to the accompanying drawings. In the drawings, like reference numbers indicate identical or functionally similar elements. Additionally, the left most digit(s) of a reference number identifies the drawing in which the reference number first appears.

## DETAILED DESCRIPTION

[0017]     As discussed above, with the advances in communications technologies, correctional facilities and ICS providers now have the need to secure sanctioned mobile devices against all manner of new threats. With the advent of smart devices such as smartphones and tablet devices that allow both traditional voice and data communication capabilities, it is now common in correctional facilities for mobile devices to be issued to inmates for temporary use. The ICS provider will typically deploy a wireless network infrastructure, comprising wireless access points and internet backbone connection to the prison to enable these mobile devices to communicate with the outside world. These mobile devices, in conjunction with the wireless network infrastructure, allow the inmates to engage in several activities that are sanctioned by the correctional facility, such as telephone conversation with allowed parties and limited internet access with approved websites and services. However, because of the much wider functionality available in devices as compared to traditional controlled environment telephone systems, such as internet access through cellular and wireless communications technologies and the installation of use of software applications on memory in the device, these devices also pose new security risks that must be addressed by ICS providers. These new security risks are manifold, and when exploited allow the inmates to use the mobile device for unsanctioned functions, connect to wireless networks not sanctioned by or deployed in the correctional facility, and access internet and other data content not authorized by the correctional facility.

[0018]     An inmate may physically tamper with a mobile device such that the inner circuitry of the device is altered to allow for unsanctioned activity in the phone. Because mobile devices are typically equipped with at least one of the common variants of a universal serial bus (USB) connector (e.g. micro-USB, mini-USB, USB 3.0, etc.) the

- 4 -

power of the battery may be used to charge a contraband device that has been smuggled into the correctional facility by a wily inmate. Access to the USB connector also allows other smuggled peripheral devices (e.g. a keyboard, wireless hot spot adapter, etc.) to be used with the phone to provide functionality not sanctioned by the correctional facility. In fact, the battery itself may also be used as a weapon or a tool for escape or other shenanigans, as mobile device batteries are typically made with potentially dangerous, corrosive, or flammable substances such as a lithium-ion battery.

[0019]      The software applications installed on the mobile device also pose security risks to the phone. A clever inmate may prod applications for vulnerabilities either secured poorly or unconsidered by the correctional facility or ICS provider. Many applications (e.g. Facebook, Yelp, etc.) provide social functions such as commenting and messaging that can be used for clandestine communications between an inmate and an unauthorized outside party that may evade detection by the correctional facility. Other applications have features that have unintended implications for security risks. For example, while there are several applications that serve as dedicated internet web browsers that may be thoughtfully regulated by a correctional facility or ICS provider, such as Chrome or Firefox, other applications often employ a proprietary web-browser that would escape such thoughtful regulation. Inmates could use these proprietary web-browsers to access unauthorized internet web domains. Furthermore, an inmate can simply install new applications on an unsecured mobile device that allow for unsanctioned functionalities without any knowledge by the correctional facility. As such, application management functions and the applications themselves need to be secured by the ICS provider.

[0020]      An unsecured operating system (OS) of the mobile device poses yet another set of security risks to the phone. The operating system typically governs the capabilities of the device, such as which radios the mobile device has switched on (WiFi, Bluetooth, Cellular), which wireless networks to connect to and any required login information, and other important device settings. These settings will typically be accessible through a simple graphical user interface (GUI). Inmates may access these settings to allow the mobile device to connect to a wireless access point outside of the correctional facility or otherwise not provided or monitored by the ICS provider, which in turn allows the mobile device to circumvent network security measures operating on the wireless infrastructure deployed by the ICS. Access to shortwave radio technology such as Bluetooth allows the

- 5 -

device to pair, communicate, and exchange data with another mobile device or a contraband device smuggled into the facility without the correctional facility personnel ever detecting it. Therefore, the ICS provider must also take steps to secure the operating system from allowing unsanctioned activity.

[0021]     The wireless access points themselves may also implement security features to prevent unsanctioned use of the mobile device. Wireless access points may be equipped with wireless intrusion prevention (WIP) systems that detect activity between sanctioned mobile devices and wireless access points outside of the correctional facility. Furthermore, the supporting wired network that links the wireless access points to outside networks such as the internet may also provide security features such as access control lists to prevent data packets from certain websites and IP addresses.

[0022]     In light of the above, the present disclosure provides details of a layered security system for preventing unsanctioned use of a mobile device within a correctional facility. In embodiments, multiple security barriers are devised in the hardware and software of the mobile device and in the wireless network infrastructure deployed by the ICS provider in the correctional facility that prevent the unsanctioned use. These barriers are "layered" in that they act as a next barrier of protection when a previous barrier fails.

[0023]     FIG. 1 illustrates a block diagram of a correctional facility 100 within a correctional facility environment, according to embodiments of the present disclosure. In an exemplary embodiment, the system comprises mobile devices 101-103 and wireless access point devices 104-106 within the correctional facility grounds 110, a firewall device 120, a network 130, and a communications processing center 150 connected to the internet 170. Within the correctional facility grounds 110, mobile devices 101-103 are devices which are issued by the correctional facility to facilitate inmate communications with individuals outside of the correctional facility environment. The mobile devices are configured to perform authorized communications with outside parties, including texting, audio, and video communication.

[0024]     In the present disclosure, different security measures are deployed on the mobile devices 101-103, the wireless access point devices 104-106, and the firewall device 120 to prevent unsanctioned use of the mobile devices 101-103. The security measures are designed in a layered or stacked fashion, wherein if an inmate manages to bypass one security measure in the stack, the next barrier of the stack should provide additional

- 6 -

protection against unsanctioned use of the devices. This security layer structure will be discussed further below.

[0025]     In embodiments, mobile devices may be capable of accessing limited data services such as internet to law websites, music, and other services. The mobile devices may be encased in a hardware barrier, sometimes called a "clam shell" case, that prevents inmates from physically tampering with the mobile device or having access to all of the ports typically available on such a device, such as the universal serial bus (USB) port. Furthermore, the software applications and the operating system on these mobile devices are designed or otherwise modified by the inmate communication system (ICS) provider and approved by the correctional facility for the purpose of securing and preventing unsanctioned usage of the mobile devices. The design of the hardware barrier, software, and operating system security functions will be described in greater detail below.

[0026]     The wireless access point devices 104-106 are devices that are deployed by the ICS provider in the correctional facility to server the communications initiated by the mobile devices 101-103. These wireless access point devices will run a version of the IEEE 802.11 "WiFi" protocol that specifies the media access control (MAC) layer and physical (PHY) layer standards that allow wireless communication with the mobile devices. The mobile devices 101-103 form wireless connections with one of the wireless access point devices 104-106. Wireless access point devices 104-106 are deployed throughout the correctional facility. In embodiments, some may serve specific enclosed areas such as a room designated for voice or video call communications, a cafeteria, library, etc. The wireless access point devices are modified to perform wireless intrusion prevention (WIP) functionality that can detect and neutralize unsanctioned wireless activity by the mobile devices 101-103. These functionalities will be described in greater detail below.

[0027]     In embodiments, wireless access points that are not deployed for use in the correctional facility are also located outside of the facility, as illustrated by wireless access point 107. Such wireless access points are deployed in neighboring buildings without nefarious purpose and are known to the wireless access points 104-106. In another embodiment, wireless access point 107 is smuggled in or around the correctional facility for the purpose of allowing inmates to circumvent the correctional facility wireless network infrastructure and security. In embodiments, security measures on both

- 7 -

the mobile devices 101-103 as well as the WIP functionality on wireless access points 104-106 are all designed to prevent mobile devices 101-103 from forming connections devices as exemplified by wireless access point 107, and neutralizing mobile device wireless functionality when they do. These security functions are described in greater detail below.

[0028]     In embodiments, any communications involving the mobile devices and parties outside the correctional facility are delivered using packetized data. The packetized data is routed through the wireless access points 104-106 to the communications processing center 150 via network 130. Voice is served over packetized voice protocols such as Voice over Internet Protocol (VoIP). Typical packetized data protocols such as transport control protocol/internet protocol (TCP/IP) serve mobile device data services such as restricted web-browsing or music. In embodiments, the mobile devices also connect to the communication center via wired communication links that use other common MAC and PHY layer protocols, such as those associated with the IEEE 802.3 "Ethernet" standard. These wired communication links may be available in designated areas of the correctional facility such as a dedicated telecommunication room or a library.

[0029]     In embodiments, all communications from the mobile devices are routed through one of the wireless access points 104-106 to a firewall device 120 followed by a network 130. The firewall device stores an access control list (ACL) that enumerates the internet protocol (IP) addresses or the domain names of websites that mobile devices within the correctional facility are allowed to communicate with. All data traffic to or from any mobile device within the facility flows through the firewall device 120. For ease of discussion, the firewall device 120 is shown as a separate device other network elements outside of the correctional facility 110, but this separation is not necessary in all embodiments. The firewall device 120 may be located within the network 130 or the communications processing center 150.  The firewall device may be a dedicated set of servers designed to filter all traffic through the ACL, or may be implemented on one or more common routers within network 130.

[0030]     In embodiments, the network 130 consists of a local area network (LAN), a wide area network (WAN), or the internet. Network 130 is made up of routers and switches running well-known protocols such as IEEE 802.3 "Ethernet" protocol. The network may be owned and provisioned by the correctional facility 110, the ICS provider, or may be

- 8 -

part of a public network such as the internet. The network 130 serves to connect the correctional facility's local network infrastructure to a communications processing center 150.

[0031]     The communication processing center 150 is responsible for monitoring the usage of the mobile devices for any signs of illicit behavior on the part of the inmate using the device. In voice communications, for example, the communication center is responsible for authenticating the inmate party and the outside party to ensure that these parties are allowed to communicate with each other. This will typically be done by comparing the inmate and the outside party to a "white list" or a "black list" of allowed or disallowed parties, such that inmates can only communicate with parties on their white list or not on their black list. Such lists may also be stored on the mobile devices themselves, such that when the mobile device is issued to a particular inmate, the inmate will only be allowed to contact their allowed parties. For data communications, both the communication center and the mobile devices themselves will typically be responsible for preventing the user of the mobile device from accessing prohibited data.

[0032]     FIG. 2 illustrates the layers of security barriers 200 that prevent unsanctioned use of a mobile device. As discussed above, the security measures are implemented on the mobile devices, the wireless access point devices, and the firewall device, such as mobile devices 101-103, wireless access points 104-106, and firewall device 120 as seen in FIG. 1. Inmate 209 must bypass the security barriers 210-250 in order to perform unsanctioned activity. As indicated in FIG. 2, security barriers 210, 220, and 230 are deployed on the mobile devices as embodied by mobile devices 101-103 of FIG. 1, barrier 240 is deployed at wireless access points within the correctional facility as embodied by wireless access points 104-106 of FIG. 1, and barrier 250 is deployed at the firewall device as embodied by firewall device 120 of FIG. 1. Below is a brief description of the barriers and their interactions. All barriers are described in greater detail with respect to FIGs. 3A-3B and FIGs. 4-7. FIG. 2 also depicts call processing center 260, which is an embodiment of call processing center 150 from FIG. 1.

[0033]     Barrier 210 is the hardware barrier that comprises a physical hardware barrier placed on a mobile device. In an embodiment, the barrier is in the form of a secured case that encloses the mobile device and prevents the inmate from physically altering the mobile device or gaining access to the mobile device power source. Barrier 220 is the

- 9 -

application security barrier, implemented on a mobile device, in which applications which are installed on the mobile device are modified and managed to prevent applications form performing unsanctioned activity on the mobile device. Applications stripped of functions that are considered unsanctioned by the correctional facility such as social functions, or the functions may be disabled as deemed necessary by the correctional facility. Furthermore, applications are prevented from being installed or removed on the mobile device.

[0034]     Barrier 230 is the OS security barrier, also implemented on a mobile device, in which the OS of the mobile device is secured to prevent tampering with the settings of the device. This barrier prevents the inmate user from accessing the device settings GUI that is common on most mobile devices, and also prevents applications running on the device from being able to alter the mobile device settings. While in exemplary embodiments application features that may allow the application to alter the device settings would typically be disabled or removed completely in accordance with application security barrier 220, the OS barrier 230 offers a second barrier to the inmate in the event that such features are accessed. For example, if an inmate is able to bypass the application security barrier 220 by obtaining access to an unsanctioned feature of a particular application in use, the OS security barrier 230 prevents the inmate from changing or manipulating any device settings on the mobile device through the unsanctioned feature of the application.

[0035]     In an embodiment, barrier 240 is the wireless security barrier, implemented on a wireless access point within the correctional facility, that detects and neutralizes mobile device wireless activity deemed unsanctioned by the correctional facility. This barrier comprises a wireless intrusion prevention (WIP) system that detects when a mobile device is attempting to either access an unsanctioned wireless access point, as embodied in wireless access point 107 of FIG. 1, or the mobile devices is itself attempting to act as a wireless hot spot. Thus, if an inmate is able to bypass the OS security barrier 230 and, for example, disconnect from a sanctioned wireless access point device to try to connect to an unsanctioned wireless access point, the wireless security barrier 240 initiates the WIP system implemented on the wireless access point to prevent the successful communication between the mobile device and an unsanctioned wireless access point.

[0036]     Finally, barrier 250 is the access control security barrier, implemented on a firewall device as embodied by firewall device 120 of FIG. 1, in which a mobile device is

- 10 -

prevented from sending to or receiving traffic from an unauthorized internet address. This barrier monitors all traffic to or from every mobile device within the correctional facility, determines if the traffic is coming to or from a trusted source outside the correctional facility, and discards any traffic that does not come from a trusted source. Thus, if an inmate is able to bypass the application security barrier 220 or the OS security barrier 230 to access a feature of an application or the OS that directs traffic to an unknown source, the access control security barrier 250 captures and discards all traffic to and from that source, thereby preventing successful communication between the mobile device and that source.

[0037] It should be noted that not all unsanctioned activity requires the bypassing of all five security barriers depicted in FIG. 2. In embodiments, there are several scenarios in which some security barriers may pose no hindrance to the unsanctioned behavior being attempted by an inmate in possession of a mobile device. For example, if an inmate desires to charge a contraband device using the battery of the mobile device, in an embodiment the inmate only needs to break through the hardware barrier 210 to gain access to a USB connector on the device, the application barrier 220, and the OS security barrier 230 to force the USB connector to allow a reverse current flow from the mobile device to the contraband device. On the other hand, to access an unsanctioned website, the inmate has to bypass the application security barrier 220, OS security barrier 230, and access control barrier 250. Thus, the five barriers of security provide redundancy in the security system that is robust in handling multiple security threats of various kinds. A single barrier would not be secure enough to handle the myriad security threats present in the correctional facility environment.

[0038] FIG. 3A illustrates the mobile device hardware 300 and connectors 320 and 330 that are authorized for that device. Device 300 is an exemplary embodiment of the hardware of mobile devices 101-103 that are illustrated in FIG. 1. The figure is intended to demonstrate the security vulnerabilities of the mobile device that exist due to the hardware of the device. The mobile device contains a screen 305A that occupies the majority of the face of the device. This screen responds to physical contact by the inmate, and typically displays, when first used by an inmate, a "home" screen where icons that represent sanctioned applications available on the device are displayed on the screen.

- 11 -

When the icons are pressed by the inmate, the mobile device opens an application to run on the mobile device.

[0039]    Typically, the mobile device face also comprises a bezel 312 that surrounds the screen on all sides, beginning at the edge of the screen 306B to the edge of the device 306A on all sides. The bezel does not respond to physical contact from the inmate, but will generally be significantly wider on one side of the device face to allow space for a button 302. In some embodiments, there are several buttons similar to button 302 implemented on the bezel of the device. Button 302 will typically function as a "home" button where, regardless of what application is being used by the inmate, pressing the button 302 will allow the mobile device to return to the "home" screen where, as described before, the icons representing programs available on the device will be displayed, allowing the inmate to choose to use a different application. Depending on application design, there is typically a way to move to the "home" screen without access to this button. This button may be either tactile response or touch-sensitive similar to the touch screen 305A.

[0040]    Mobile device 300 will also typically include connector ports for various functions. Ports 307A, 309A, and 310 are all examples of ports that are implemented on a common mobile device. However, in many embodiments, additional ports may be available, and the existing ports 307A, 309A, and 310 may be placed in different areas of the mobile device 300. Port 307A is an "audio jack," otherwise known as a "phone connector", "phone jack", or "headphone jack." Port 310 is a universal serial bus (USB) port. Port 309A is a "barrel charger" for charging the battery of the mobile device.

[0041]    Port 307A allows for an audio peripheral such as headphones or headphone/microphone combinations. This connector is nearly universal for mobile devices. The male connector 330 corresponds to port 307A. These peripherals allow for a device to output audio to a set of headphones to play audio directly into the ears of an inmate, or a microphone to allow for better reception of inmate speech during an audio call. While standards for the audio jack are not particularly strict, the audio jack connector 330 will typically come in one of several configurations, such as "tip/sleeve" (TS), "tip/ring/sleeve" (TRS), "tip/ring/ring/sleeve" (TRRS), and "tip/ring/ring/ring/sleeve" (TRRRS). The ring refers to the portion between two black bands as seen on connector 330. 330B and 330C would each be considered a "ring" while 330A is the "tip" and 330D

- 12 -

the "sleeve." The addition of rings adds a new input or output interface to be added to the jack, such that it may support more services. For example, a simple TS connector may only support audio output from headphones, while a TRRS may support audio output, microphone input, and microphone button input that allows simple interaction such as pausing audio playback in a music-playing application running on the mobile device. Typically, at least a TRRS functionality is employed in most embodiments of modern mobile devices. In embodiments, the correctional facility considers this functionality allowable for inmates. In addition, certain rings of the audio jack may be disabled as deemed necessary by the correctional facility to only allow for more basic functionalities of the audio jack (e.g. allowing audio and microphone input/output interfaces while disabling the "microphone button" input).

[0042]     Mobile device 300 will also typically support a universal serial bus (USB) jack 310. There are multiple forms of the USB, most commonly "micro-USB", "mini-USB" and "USB 3.0." In commercial use, this connector serves two main functions, power charging and data transfer when connected to another computing device. At least one form of this connector is implemented in nearly all mobile devices.  The functioning of these ports is defined in a series of standards titled "USB 1.x", "USB 2.0", "USB 3.0/3.1", and more recently "USB Type-C". In exemplary embodiments, the correctional facility disallows use of this connector for the user by both modifying the OS kernel to disable functionality of this port, and denying physical access to the port. However, this is not limiting, and some correctional facilities may consider this port usable by inmates. Additionally, field technicians sanctioned by the ICS provider or the correctional facility may connect to this port, using proprietary computing equipment, to change settings on the mobile device.

[0043]     The port 309A is the port for a connector called a "barrel charger", otherwise known as a "direct current (DC) connector" or a "coaxial power connector," and is used explicitly for charging the battery of the mobile device. The male connector 320 corresponds to port 309A. These connectors operate under several international standards such as IEC in the U.S., EIAJ in Japan, and DIN in Germany, although several other standards and proprietary implementations exist. Unlike ports 307A and 310, port 309A is not commonly implemented in mobile devices, which have opted for a USB port as embodied by 310 due to its support for data transfer as well as power charging functions.

Atty. Dkt. No. 3210.1280001

- 13 -

In the exemplary embodiment, the connector is added to the mobile device by the ICS provider to allow for a port that charges the battery of a mobile device but does not allow for data-related functionality that can be performed using the USB port 310. This port is therefore sanctioned by the ICS provider and correctional facility, and is the main means by which an inmate or correctional facility staff charges the mobile device.

[0044]     Internal to the device, a diode is also placed in series with the barrel charger to the leads of the battery to disallow a reverse current flow. This prevents current from flowing out of the device through the barrel charger port. Without this security feature in place, an inmate is able to charge a contraband device using the energy of a well-charged battery of the mobile device.

[0045]     FIG. 3B illustrates an exemplary embodiment for the hardware barrier of the device, otherwise known as a "clam shell" case. The case comprises a front plate 350 which fits over the screen side of the device and a back plate 370 that fits over the back of the device. Front and back plates 350 and 370 can together be considered an exemplary embodiment of the hardware barrier 210 in FIG. 2.

[0046]     In an exemplary embodiment, the front plate 350 fits over the front of the device, with a large opening 305B that exactly matches the location and dimensions of the screen. Therefore, the inner edge 306C of the front matches perfectly with the edge of the screen 306B on the mobile device. Along the outer rim of the front plate, there are 8 holes 352A-H which fit tamper-resistant screws that fasten the front plate to the back plate. The case does not allow access to the button 302 on mobile device 300, instead covering that button such that it cannot be depressed by the inmate user. The tamper resistant screws may have a screw head shape for which screwdrivers are not readily available, and the holes 352A-H are recessed such that they cannot be tampered with using conventional means such as coins, paper clips, or improvised tools by inmates.

[0047]     The back plate 370 is a solid piece of plastic which contains no holes that are accessible to the user. There are 8 receptacles 352I-P that receive the tamper-resistant screws from the front plate 350. When fastened together properly, the front plate 350 and back plate 370 form a complete seal over all portions of the device, such that an inmate cannot gain access to the inner workings of the device without devising a method to separate the front and back plates from each other.

- 14 -

[0048]     The front and back plates, when fastened, do allow for two access points to the device. 307B and 307C form a hole when the front and back plates are sealed that allows for access to the audio jack 307A of the mobile device, and 309B and 309C similarly allow access to the barrel charger port 309A. Access to the micro-USB port 310 is not allowed by the front and back plate 350 and 370. In some embodiments, the case is designed more liberally to allow for access to the USB port 310, or to allow an aerated area over speakers on mobile device 300. However, in general, the case is designed to be extremely secure and to disallow physical access to any part of the device deemed vulnerable to security threat.

[0049]     FIG. 4 illustrates the mobile device 400 with where application and OS security barriers have been implemented. The mobile device 400 may be an exemplary embodiment of mobile devices 101-103 as seen in FIG. 1. While the previous FIG. 3A is also an embodiment of the mobile devices 101-103, FIG. 3A is intended to demonstrate the security vulnerabilities of the mobile device due to hardware accessibility, while FIG. 4 illustrates the interaction of the security measures implemented on the mobile device software, namely the application and management security barrier 420 and OS security barrier 430. Specifically, FIG. 4 shows how the security barriers implemented on the device interact with both the user input/output (I/O) modules implemented on the mobile device and the radio of the mobile device that sends out communications.

[0050]     In an embodiment, the mobile device has I/O circuitry 410 which allows the user to interact with the device. This I/O circuitry 410 includes input such as the touch screen of the mobile device as embodied by 305A of FIG. 3, the microphone, camera, and ports such as the audio jack and barrel charger jack as embodied by 307A and 309A of FIG. 3A. I/O circuitry 410 also includes as USB port, as illustrated by 310 of FIG. 3A, as well as button 302 as embodied by 302 in FIG. 3A. As noted in reference to FIG. 3B, the inmate is explicitly denied access to both the button 302 and the USB port 310 by the hardware barrier embodied by front and back plate 350 and 370 as illustrated in FIG. 3B, but if the hardware barrier is bypassed, then application management and security barrier 420 and OS security barrier 430 still neutralizes any threats that arise from inmate access to those particular I/O means.

[0051]     In embodiments, the inmate interacts with the mobile device using the I/O circuitry 410. As described with reference to FIG. 3A, this interaction will mainly take

- 15 -

place in the form of initiating and interacting with applications on the touch screen. The application management and security barrier 420 monitors these interactions to ensure that no unsanctioned activity can be initiated via any applications that the inmate is otherwise authorized to use.

[0052]     In embodiments, commercially available applications often provide functionalities that are superfluous to their main function and provide means for circumventing security monitoring in a controlled-environment setting. For example, some applications provide a simple web browser functionality that is initiated when a user selects a particular action. This provides a means of escaping IP address or domain name filters implemented on the mobile device to prevent certain internet content from being accessed by the inmate. Other applications whose main goal is not social interaction nonetheless provide basic social interaction functions such as commenting, rating functions, interactive messaging/chatting features, and voice/video chat. These functionalities provide means for inmates to engage in clandestine communications that evade security monitoring. In general, extraneous functions provided by a commercially available application provide possible means for circumventing correctional facility rules.   Additionally, many commercial applications make ad-hoc changes to settings in the mobile device that may be unsanctioned by the correctional facility. An application, for example, can attempt to make changes to WiFi settings, turn on a Bluetooth radio, or turn on the GPS radio of the mobile device. This too may evade security monitoring.

[0053]     Given the broad range of threats inherent in applications, in embodiments, the application security barrier 420 takes two approaches. The first approach is application modification 422, in which applications that are considered useful for inmates are first stripped of any application features which are considered to be security vulnerabilities by either the ICS provider or the correctional facility. The ICS provider may also provide applications for allowable social interactions where the ICS programs in the ability to monitor the use of those applications. This monitoring may occur at the call processing center, such as call processing center 150 depicted in FIG. 1. There, data traffic that travels to and from that application can be monitored to determine if any illicit activity is occurring.

[0054]     The second approach to the application security barrier 420 is the application management 424. This module disallows the addition or removal of any applications

- 16 -

currently on the device, as well as modifications of settings on applications considered important to the security of the device. By disallowing inmates to install new applications on the device, the inmate is prevented from gaining access to new applications that have unforeseen means of performing illicit activity that are not be detectable by the ICS provider. By preventing the removal of applications by the inmate, security-related applications in particular are prevented from being removed from the device. The module also detects attempts by the user of the mobile device to use a function on an application that is unsanctioned by the correctional facility. In such cases, the module will attempt to prevent the function from being executed by the mobile device processing circuitry. In embodiments, when such activity is detected, the application security barrier 420 also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity.

[0055]       In embodiments, if application security barrier 420 is bypassed, the OS Security barrier 430 acts as the next security barrier in preventing inmates from engaging in illicit activity. Some discussion of an OS is warranted here to convey the importance of OS security barrier 430.  The main element of an OS is a "kernel", a software module that controls the interaction between applications and the mobile device hardware. The kernel serves several functions, including reserving processing resources in which the application executes its functions, and acting as the interface between the application and the hardware devices on the mobile device. These hardware devices include the general I/O such as the touch screen and any tactile buttons on the mobile device, mobile device radios such as WiFi, and cellular radios, and hardware interfaces such as the USB port 310 or the audio jack 307A as shown in FIG. 3. These interfaces are shown as communication interface module 440 in FIG. 4. Connected to communication module 440 is an antennae 445. In embodiments, antennae 445 may be one or more antenna that serve the multiple wireless interfaces listed above.

[0056]       Consider the following example. An application desires data from a network connection served over a wireless interface such as Bluetooth, and also GPS coordinates from the GPS radio. The application sends requests called "system calls" to the kernel that specify actions desired by the application, and the kernel performs the necessary translations to fulfill those system calls. In this example, the kernel engages the Bluetooth radio to send and receive data, the GPS radio to receive GPS coordinates, and the

- 17 -

processor and memory to allow the application to temporarily store the data received by the Bluetooth and GPS radios. As such, the OS, and the kernel in particular, provides a key point for ICS providers to implement security features on the mobile device.

[0057]     In embodiments, the OS security barrier 430 prevents the inmate from accessing settings of the device that controls the communication interfaces 440. In common implementations of commercially available OS, the device settings are directly accessible from the home screen as an icon similar to an application icon. This icon, and any underlying GUI that allows for easy mobile device setting changes, is removed from the mobile device. In particular, the OS barrier prevents the access to the WiFi settings to prevent the inmate inputting a non-sanctioned access point service set identifier (SSID) and passcode, such as access point 107 depicted in FIG. 1, into the mobile device. The passcode may be in the form of a wired equivalent privacy (WEP), WiFi Protected Access (WPA) or WiFi Protected Access 2 (WPA2) key. The OS barrier detects attempts by the inmate to toggle radios on and off in the mobile device, such as the WiFi, Bluetooth, or cellular radios. The access icon to settings from the operating system environment is removed, thereby preventing the one-click access to these settings. It also detects attempts by an application to make these device settings changes, such a radio being switched on to perform an function specific to the application.

[0058]     Furthermore, the OS barrier 430 also prevents the surreptitious access of the mobile device settings through applications whose security barriers have been bypassed. In many commercially available applications, a common feature allows the application to access mobile device settings directly. A common example is a map application that seeks to automatically switch on the mobile device's GPS radio when the device is engaged. In cases where the application security barrier 420 is bypassed, or simply omitted due to an oversight by the ICS provider, the application attempts to access mobile device settings, thereby allowing the inmate to change these mobile device settings. The OS barrier, at the kernel, prevents applications from accessing the mobile device settings.

[0059]     Another key feature of the OS security barrier 430 is to prevent devices that have been plugged into the available ports of the mobile device, such as USB port 310 or the audio jack 307A depicted in FIG. 3, from accessing or changing the mobile device settings. In the event that the hardware barrier, such as that depicted in FIG. 3B, is bypassed, the OS security barrier 430 also prevents peripheral devices that are plugged

- 18 -

into the available ports on the mobile device from interacting with the applications or the settings of the mobile device. In embodiments, when such activity is detected, the OS security barrier also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity.

[0060]       While it is desirable to prohibit the inmate from changing settings or manipulating applications on the device, the ICS provider still requires access to the device settings to make various operational changes. In embodiments, the ICS provider uses an over-the-air (OTA) update functionality to access a mobile device's setting. In OTA applications, mobile device settings and application changes can be made through wireless transmission to the devices. Several applications exist that provide this functionality, where the application initiates a background process "daemon" at the mobile device startup which recognizes specific data types and commands received wirelessly. Using the OTA method, the ICS provider can send settings changes directly to mobile devices without any interaction from the inmate, such as updating a WiFi SSID or password, installing, updating, or deleting applications, or initiating other operating system updates.

[0061]       In an embodiment, the other way ICS providers changes settings is by physical access to the device, wherein a terminal such as a laptop can be linked directly to the mobile device using the USB port such as 310 in FIG. 3. Though settings icons and GUIs are removed as part of the OS security barrier 230, the terminal implements software that allows access to the underlying operating system software on the mobile device to make changes as necessary. As with OTA updates described above, the operator of the terminal makes changes to the mobile device settings, install or otherwise update applications on the device, or initiate operating system updates.

[0062]       The mobile device 400 may also be fitted with a radio frequency identification (RFID) tags. RFID tags typically work in concert with an RFID reader, which sends an interrogating signal that prompts an RFID tag to send identifying information back to the reader. In an embodiment, RFID tags tied to the mobile device may emit an identification (ID) signal to an interrogating RFID reader. RFID tags typically are associated with an electronic product code (EPC) that contains a protocol, organization, and serial number component that is unique for each RFID tag. RFID tags may be either active or passive, meaning that they possess or lack a power source, respectively. Active RFID tags are

- 19 -

capable of more complex security mechanisms to protect the communications between RFID tag and reader.

[0063]     RFID readers may be placed throughout the correctional facility in a way that allows each reader to cover all tags within a highly defined area. For example, one or more RFID readers can be placed in a particular location of a facility, such as a cafeteria, a cell block, or a courtyard, and can send interrogating signals to all mobile devices equipped with RFID tags. The RFID tags then respond with the identifying information signified in their EPC, where this code can be checked against the known codes that have been utilized by the correctional facility to track their mobile devices. There are numerous ways in which RFID tags affixed to mobile devices and RFID readers can be used to add additional security to the mobile devices.

[0064]     In an embodiment, an RFID tag with its associated EPC is paired with a particular device having an associated MAC address. If no RFID reader detects the reader, a signal can be sent to correctional facility administrators that a particular mobile device appears to not be within the facility grounds, and corrective steps can be taken to locate the device, question the inmate that the device has been issued to, and so on. In another embodiment, a mobile device's RFID tag may communicate with an RFID reader in an area of the facility that either the mobile device or the inmate issued the mobile device has not been permitted to occupy. In such cases, correctional facility administrators may be informed so that corrective actions can be triggered, such as searching the area of the facility in which the device was detected, questioning the inmate in possession of the device, and so on.

[0065]     Other security layer may also utilize the information obtained by RFID readers to activate security protocols against the mobile device. In one embodiment, the wireless security layer 240 may be utilized to attack the mobile device using the mobile device's associated MAC address, as is detailed FIG. 5. In another embodiment, a firewall device implementing the access control barrier 250 may be informed of the mobile device's location violation, and disregard all traffic transmitted to and received from that device, as detailed further below with respect to FIG. 7.

[0066]     A key security issue with RFID tags is that they are can be easily cloned if proper security steps are not taken. Because a basic EPC may amount to nothing more than a permanently fixed bit string, care must be taken by correctional facility administrators to

- 20 -

prevent nefarious parties from mimicking the signal of a particular RFID tag. This can be accomplished through various forms of encryption that allow RFID readers and RFID tags to communicate securely.

[0067]       FIG. 5 illustrates a wireless access point 500. Access point 500 may be an exemplary embodiment of the access points 104-106 depicted in FIG. 1. The wireless access point 500 demonstrates an exemplary embodiment of the wireless security barrier 240 as seen in FIG. 2. The wireless access point is made up of a wireless communication interface 510 and antennae 512 coupled to the communication interface, processing circuitry 520 comprised of processor 522 and memory 524, network interface 530, and wireless intrusion prevention sensor 540 and antennae 542 coupled to the wireless intrusion prevention sensor. The wireless intrusion prevention sensor 540 and antennae 542 allow the wireless access point to carry out the functions of the wireless security barrier 240, while the other components serve to allow the access point 500 to serve data to and from the mobile devices, such as 101-103 in FIG. 1.

[0068]       As discussed above, the wireless access point 500 serves data wirelessly to the mobile devices 101-103. This device will typically operate under a version of the IEEE 802.11 "WiFi" protocol that allows a bi-directional link between the access point 500 and multiple mobile devices. The wireless communication interface 510 and accompanying antennae 512 allow access point 500 to communicate wirelessly with the mobile device. The processing circuitry 520, with component processor 522 and memory 524, are programmed to allow the access point to execute instructions in accordance with the WiFi protocol. The processing circuitry also carries and executes operations in accordance with the wireless intrusion prevention sensor 540 to form the wireless security barrier 240, as will be discussed in further detail below. Finally, the network interface 530 is the wireline interface that connects the access point 500 with a wider outside network, such as a LAN, WAN, or the internet. This connection serves as the backbone connection to the data networks and VoIP networks which serve data to and from the mobile devices 101-103. Typically, this interface will operate in accordance with the IEEE 802.3 "Ethernet" protocol.

[0069]       In an embodiment, the wireless intrusion prevention sensor (WIPS) 540 and antennae 542 enable the wireless access point 500 to implement wireless security barrier 240. In scenarios where the inmate has managed to bypass the application and OS

- 21 -

security barriers 220 and 230 as depicted in FIG. 2 and discussed in greater detail relative to FIG. 4, an inmate gains access to the mobile device WiFi settings and engage in any number of unsanctioned behaviors. WIPS 540 and antennae 542 are designed to detect transmissions indicative of these unsanctioned behaviors and transmit signals to block the unsanctioned behavior from being engaged successfully by the inmate.

[0070]        The two key situations are depicted in FIGs. 6A-6B. Both figures depict a scenario within a correctional facility in which the application and OS security barriers have been bypassed by the inmate in some fashion. Specifically, in FIG. 6A, mobile device 604 has bypassed the application and OS security barriers 220 and 230 to gain access to the WiFi settings in mobile device 604, and has connected to an unsanctioned wireless access point 610 outside of the correctional facility 110A. In such a case, the wireless access point 618 within the correctional facility 110A equipped with a WIPS system would detect the activity and attack mobile device 604 to prevent it from engaging successfully in the unsanctioned activity. The WIPS system also attacks the outside wireless access point device 610 if that device is determined to be an unsanctioned wireless access point that is established near the correctional facility.

[0071]        In FIG. 6B, a different scenario occurs in which an inmate in possession of mobile device 612, having bypassed the application and OS security barriers 220 and 230, gains access to the WiFi settings of the mobile device and begins behaving like a WiFi hot spot. Mobile device 612 forms wireless connections with another mobile device 614 to connect with and begin serving data to. This allows mobile devices 614 to engage in unsanctioned activity as well. In such a case, the wireless access point 628 within the correctional facility 110A equipped with a WIPS system would detect the activity and attack mobile device 604 to prevent it from engaging successfully in the unsanctioned activity.

[0072]        Returning to FIG. 5, in an exemplary embodiment, the wireless access point 500 stores in memory 524 a MAC address white list which contains the MAC addresses for all of the mobile devices issued by the prison which are authorized to access the correctional facility network. In an embodiment, the device also stores a MAC address black list of devices which are explicitly prohibited from accessing the network. The wireless access point 500 also stores a list of known wireless access point service set identifiers (SSIDs) that the ICS provider, correctional facility, or other authority recognizes as a valid network near the correctional facility. This list contains SSIDs of

- 22 -

neighboring wireless access points, such as those that are deployed in nearby office buildings, businesses, etc. that are near the correctional facility.

[0073]     WIPS 540 is capable of detecting when unsanctioned activity related to the initiation of WiFi connections occurs. In embodiments, a typical wireless access point is associated with a SSID and a wireless media access control (MAC) address. Any mobile device connecting to a wireless access point will also have a MAC address. When a mobile device attempts to connect to a wireless access point, the wireless access point advertise its SSID (and in some embodiments its MAC address) while the mobile device also exposes its MAC address. The WIPS 540 and accompanying antennae also receives the MAC address and SSID information and make a decision to perform an intervention if any of this information indicates illicit behavior on the part of an inmate within the correctional facility.

[0074]     If the WIPS 540 detects such unsanctioned behavior, it can use the information of the SSID, access point MAC address, or mobile device MAC address to attack the device engaged in the unsanctioned activity to prevent that activity from being successful. The WIPS 540 attack is through a deauthentication denial of service attack. In this attack, the WIPS 540 and antennae 542 repeatedly sends deauthentication frames to the device engaged in the unsanctioned activity. By "flooding" the target device with these frames, the WIPS can essentially render the target device inoperable due to the target device's attempt to process these frames. The examples of FIGs. 6A and 6B are exemplary embodiments of situations in which a mobile device bypasses the application and OS security barriers and gain access to the WiFi device. In embodiments, when such activity is detected, the WiFi device also sends a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity.

[0075]     In FIG. 6A, mobile device 604, having been compromised by the inmate that possesses it, disconnects from a sanctioned wireless access point, such as 616 and 618 within the correctional facility 110a, and attempts to connect with a wireless access point 610 outside the correctional facility. The wireless access points 616 and 618, having been provisioned by the ICS provider, are equipped with WIPS systems as embodied by WIPS 540 in access point device 500. When the mobile device 604 and wireless access point 610 exchange messages during common WiFi authentication procedure, the WIPS sensors on one or both of the wireless access point 616 and 618 detect the MAC address

- 23 -

of the mobile device 604 and recognizes the device as a mobile device issued by the correctional facility 110a, and detects that it is attempting to authenticate with a wireless access point 610 that is not provisioned within the correctional facility 110a. Note that wireless access point 610 is on the whitelist of recognized outside wireless access points. In such cases, this wireless access point 610 would be ignored by the WIPS system of any of the wireless access points within correctional facility 110a so long as they were not engaged in any activity with a mobile device issued by the correctional facility.

[0076]     At this point, the wireless access point 618 determines that the behavior is unsanctioned, and attacks the mobile device 604 using a deauthentication attack as described above. If the wireless access point 610 is not found on the whitelist of acceptable outside wireless access points based on its SSID or MAC address, the wireless access point 618 also attacks the wireless access point device 610 using a similar deauthentication attack. It should be noted that in some embodiments, the wireless access point 610 could also be a wireless access point that an inmate has snuck into the correctional facility. The WIPS system would not distinguish between these situations, and would attack this wireless access point as long as it was not on the access point whitelist as described above.

[0077]     In FIG. 6B, mobile device 612 disconnects from a sanctioned wireless access point such as access point 628 or 630 within correctional facility 110B. In this embodiment, mobile device 612 begins functioning as a wireless hot spot, wherein the device 612 essentially behaves like a typical wireless access point using the IEEE 802.11 protocol and form WiFi wireless connections with other devices. Another mobile device 614 within the facility then forms a wireless WiFi connection with 612. In such a case, the WIPS system of the wireless access point 628 would detect the device 612 either through its SSID or MAC address and use a deauthentication attack as described above against the mobile device 612. Additionally, it may attack mobile device 614 because it detects that this device is issued by the correctional facility and is attempting to access a wireless access point (in this case mobile device 612 behaving as a WiFi hot spot) that is not recognized by the facility.

[0078]     FIG. 7 depicts the firewall 700 that implements the access control security barrier. Firewall 700 may be considered an exemplary embodiment of the access control security barrier 250 as depicted in FIG. 2. FIG. 7 depicts the firewall 700 in relation to a

- 24 -

correctional facility 110C. In embodiments, the firewall 700 may be implemented on existing router hardware in network 730 or in dedicated hardware that can implement "fully qualified domain name" (FQDN) filtering. This distinction will be fully discussed below. In an embodiment, the correctional facility 110C contains several mobile devices 701-703 issued by the correctional facility, along with wireless access points 704-706 that are placed throughout the correctional facility by the ICS provider. These wireless access points 704-706 may be implementations of wireless access point 500 that include a wireless intrusion prevention sensor 540 and antennae 542 as depicted in FIG. 5. The wireless access points 704-706 serve to connect mobile devices 701-703 with applications and services requiring network connectivity that are sanctioned by the correctional facility.

[0079]     In an embodiment, the wireless access points have wireline connections to the firewall 700, which then connects to the network 730. Network 730 may be an embodiment of network 130 as depicted in FIG. 1. The wireless access points, as discussed relative to FIG. 5, are connected to other routing and switching devices, including a firewall 700, via high bandwidth wireline connections operating on existing protocols such as IEEE 802.3 Ethernet protocol. The firewall 700 implements an access control list 710 that contains lists of allowable internet protocol (IP) addresses that are allowed to communicate with the mobile devices. Network 730, as described previously, consists of routers and switches running well-known protocols such as IEEE 802.3 "Ethernet" protocol. The network may be owned and provisioned by the correctional facility 110C, the ICS provider, or may be part of a public network such as the internet. The network 730 then connects to a call processing center controlled by the ICS provider, as depicted in FIG. 1 (150).

[0080]     Thus, in the architecture shown in FIG. 7 (and FIG. 1), any data traffic that is sent or received by the mobile devices 701-703 is routed through the firewall 700. The access control list 710 lists the allowable IP addresses and/or web domains that are allowed to exchange data with the mobile devices issued by the correctional facility. Since all data traffic to or from the mobile devices passes through the firewall 700, the firewall device engages in packet inspection operations that can determine the IP addresses and/or the web domains of each individual packet. If the firewall device detects packets that are not addressed to or from the list of IP addresses or web domains contained on the access

- 25 -

control list 710, the firewall device can simply discard the packets without allowing them to travel to their intended destination. In embodiments, when such activity is detected, the firewall may also send a notification to the call processing center such that ICS or correctional facility personnel may be notified of such activity. This alert may contain identifier information of the mobile device engaging in the activity such as the MAC address, the SSID or other identifier information of an unsanctioned WiFi hotspot, or otherwise.

[0081]    Thus, the firewall 700 and its access control list 710 form the final security barrier between the mobile devices 701-703 and the outside world. In situations in which the inmate in possession of the mobile device has managed to bypass the application and OS security barriers by gaining access to an unsanctioned application or function which allows them to attempt to communicate with an unsanctioned website or IP address, any traffic routed through the ICS provider system will be routed necessarily through the firewall 700. This may happen if an application is installed on the mobile device which has a web browser function, or if an existing application is hacked. Thus, firewall 700, detecting traffic directed to or from unsanctioned addresses, discards any such traffic before it reaches the inmate or the unsanctioned address. It should be noted, however, that in embodiments the access control barrier embodied by firewall 700 does not serve as a security barrier for certain types of unsanctioned activity. For example, if a mobile device manages to connect to an outside wireless access point, as depicted in FIG. 6A, the traffic between the mobile device and outside wireless access point is not subject to the packet inspection and filtering operations of the firewall 700.

[0082]    For clarity, the firewall 700 is depicted as a separate device, but depending on the scope of the access control list 710, may in fact be implemented on existing router hardware in the network 730. For example, if the access control list is made up entirely of Internet Protocol version 4 (IPv4) addresses, which are made up of four 3-digit numbers separated by periods such as "195.168.0.0" seen in FIG. 7, then the access control list 710 may be implemented directly on the routers of network 730, and as such would not require a fully separate firewall 700. However, if a correctional facility sanctions access to website domains for a particular service, such as a law-related website called "www.legalaide.com" as seen in FIG. 7, the access control list requires a fully qualified domain name (FQDN) firewall which is implemented on dedicated hardware. In such

- 26 -

cases, the firewall 700 would indeed be a separate entity from the routers and switches comprising the network 730. Simply put, for the firewall 700 to satisfy the requirements of access control barrier 250 is that all data traffic to or from the mobile devices must be passed through devices that can implement the packet inspection and discarding operations described above. Even in cases where correctional facilities only require an access control list 700 comprised of only IPv4 addresses, a separate firewall 700 may be desired due to the significantly more flexible and customizable nature of the hardware in implementing an access control list.

[0083]     FIG. 8A-C illustrate the security barriers that an inmate may need to bypass in order to engage in three different types of unsanctioned behavior. As is demonstrated, not all security barriers are operative depending on the type of unsanctioned behavior the inmate wishes to engage in, but the multiple security barriers interact together to provide a robust security suite in all scenarios. It should be noted that these figures are meant to be illustrative, and in no way represent the entirety of unsanctioned behaviors or security breaches that an inmate may wish to engage. In the embodiment depicted in FIG. 8A, the inmate 209 desires to charge a contraband device using the power source of the mobile device. In order to gain access to the battery of the mobile device and allow for a reverse current to travel from the battery to the contraband device, the inmate would have to bypass the hardware barrier 210 by either opening the mobile device case (350 and 370) to gain access to USB connector port (310) or manipulating the barrel connector diode (such as 309A as depicted in FIG. 3A) to allow a reverse electrical current. The inmate then must bypass both the application and OS security barriers 220 and 230 to change the settings of the USB connector port 310 to allow a reverse electrical current to travel from the mobile device to the contraband device. If inmate 209 managed to bypass these three barriers, the inmate is able to charge the contraband device. Notice that, because the goal of the security breach is to charge a contraband device, the wireless security barrier 240 and access control list barrier 250 do not pose any hindrance to the inmate 209.

[0084]     In the embodiment depicted in FIG. 8B, the inmate 209 wishes to access an unsanctioned social network website. In order to engage in this behavior, in embodiments the inmate 209 has to bypass the hardware security barrier to connect a peripheral device to the mobile device. The inmate 209 has to also bypass the application security barrier in order to either install an application not yet installed on the mobile device or change an

- 27 -

existing application on the mobile device to allow the inmate to use a web browser. The inmate may also need to bypass the operating system security barrier 230 in order to install applications on the mobile device. Finally, if the inmate manages to break all barriers of security localized on the mobile device, the access control list barrier 250 still needs to be bypassed in order to send between the mobile device and the unsanctioned destination. Notice, however, that the wireless security barrier 240 is not present in the security barrier stack. This is because typically the wireless access point that implements the wireless security barrier 240 does not necessarily have the functionality to perform packet inspection. As such, this barrier may pose no hindrance to the inmate 209 in this particular scenario. However, in other embodiments, more advanced wireless access points may be capable of packet inspection and packet discarding.

[0085]     Finally, in FIG. 8C, the inmate 209 may wish to disconnect the mobile device from its sanctioned wireless access point within the correctional facility and connect to an outside wireless access point. This scenario is also described with reference to FIG. 6A. In this scenario, the inmate 209 may need to bypass the hardware security in order to connect a peripheral device to the mobile device via the USB connector port such as port 310 in FIG. 3A, then bypass both the application and OS security barriers 220 and 230 to gain access to the wireless settings of the mobile device. Once those barriers are bypassed, meaning that the inmate 209 has managed to change the mobile device wireless settings in order to attempt to connect to an unsanctioned wireless access point, the wireless security barrier 240 implemented on a sanctioned wireless access point detects this breach and attack the mobile device and potentially the outside wireless access point with a deauthentication attack as described above with reference to FIG. 5, FIG. 6A, and FIG. 6B above. Notice that in this case the access control barrier 250 is not a hindrance to inmate 209 because the firewall that implements the access control list of barrier 250 does not filter the traffic of a wireless access point outside of the correctional facility.

[0086]     In all three cases, different barriers of the security suite 200 due to the nature of the unsanctioned activity attempted by the inmate 209. This demonstrates the need for and interplay between the security barriers 210-250 – not all barriers are capable of providing security against all types of security bypass attempts, but several barriers hinder any single security bypass attempt.

Atty. Dkt. No. 3210.1280001

- 28 -

[0087]       FIG. 9 depicts a computer system 900 which can be used to implement It will be apparent to persons skilled in the relevant art(s) that various elements and features of the present disclosure, as described herein, can be implemented in hardware using analog and/or digital circuits, in software, through the execution of computer instructions by one or more general purpose or special-purpose processors, or as a combination of hardware and software.

[0088]       The following description of a general purpose computer system is provided for the sake of completeness. Embodiments of the present disclosure can be implemented in hardware, or as a combination of software and hardware. Consequently, embodiments of the disclosure may be implemented in the environment of a computer system or other processing system. For example, the method of FIGS. 5-6 can be implemented in the environment of one or more computer systems or other processing systems. An example of such a computer system 900 is shown in FIG. 9. One or more of the modules depicted in the previous figures can be at least partially implemented on one or more distinct computer systems 900.

[0089]       Computer system 900 includes one or more processors, such as processor 904. Processor 904 can be a special purpose or a general purpose digital signal processor. Processor 904 is connected to a communication infrastructure 902 (for example, a bus or network). Various software implementations are described in terms of this exemplary computer system. After reading this description, it will become apparent to a person skilled in the relevant art(s) how to implement the disclosure using other computer systems and/or computer architectures.

[0090]       Computer system 900 also includes a main memory 906, preferably random access memory (RAM), and may also include a secondary memory 908. Secondary memory 908 may include, for example, a hard disk drive 910 and/or a removable storage drive 912, representing a floppy disk drive, a magnetic tape drive, an optical disk drive, or the like. Removable storage drive 912 reads from and/or writes to a removable storage unit 916 in a well-known manner. Removable storage unit 916 represents a floppy disk, magnetic tape, optical disk, or the like, which is read by and written to by removable storage drive 912. As will be appreciated by persons skilled in the relevant art(s), removable storage unit 916 includes a computer usable storage medium having stored therein computer software and/or data.

Atty. Dkt. No. 3210.1280001

- 29 -

[0091]    In alternative implementations, secondary memory 908 may include other similar means for allowing computer programs or other instructions to be loaded into computer system 900. Such means may include, for example, a removable storage unit 918 and an interface 914. Examples of such means may include a program cartridge and cartridge interface (such as that found in video game devices), a removable memory chip (such as an EPROM, or PROM) and associated socket, a thumb drive and USB port, and other removable storage units 918 and interfaces 914 which allow software and data to be transferred from removable storage unit 918 to computer system 900.

[0092]    Computer system 900 may also include a communications interface 920. Communications interface 920 allows software and data to be transferred between computer system 900 and external devices. Examples of communications interface 920 may include a modem, a network interface (such as an Ethernet card), a communications port, a PCMCIA slot and card, etc. Software and data transferred via communications interface 920 are in the form of signals which may be electronic, electromagnetic, optical, or other signals capable of being received by communications interface 920. These signals are provided to communications interface 920 via a communications path 922. Communications path 922 carries signals and may be implemented using wire or cable, fiber optics, a phone line, a cellular phone link, an RF link and other communications channels.

[0093]    As used herein, the terms "computer program medium" and "computer readable medium" are used to generally refer to tangible storage media such as removable storage units 916 and 918 or a hard disk installed in hard disk drive 910. These computer program products are means for providing software to computer system 900.

[0094]    Computer programs (also called computer control logic) are stored in main memory 906 and/or secondary memory 908. Computer programs may also be received via communications interface 920. Such computer programs, when executed, enable the computer system 900 to implement the present disclosure as discussed herein. In particular, the computer programs, when executed, enable processor 904 to implement the processes of the present disclosure, such as any of the methods described herein. Accordingly, such computer programs represent controllers of the computer system 900. Where the disclosure is implemented using software, the software may be stored in a

- 30 -

computer program product and loaded into computer system 900 using removable storage drive 912, interface 914, or communications interface 920.

**[0095]**　　　In another embodiment, features of the disclosure are implemented primarily in hardware using, for example, hardware components such as application-specific integrated circuits (ASICs) and gate arrays. Implementation of a hardware state machine so as to perform the functions described herein will also be apparent to persons skilled in the relevant art(s).

**[0096]**　　　It is to be appreciated that the Detailed Description section, and not the Abstract section, is intended to be used to interpret the claims. The Abstract section may set forth one or more, but not all exemplary embodiments, and thus, is not intended to limit the disclosure and the appended claims in any way.

**[0097]**　　　The disclosure has been described above with the aid of functional building blocks illustrating the implementation of specified functions and relationships thereof. The boundaries of these functional building blocks have been arbitrarily defined herein for the convenience of the description. Alternate boundaries may be defined so long as the specified functions and relationships thereof are appropriately performed.

**[0098]**　　　It will be apparent to those skilled in the relevant art(s) that various changes in form and detail can be made therein without departing from the spirit and scope of the disclosure. Thus, the disclosure should not be limited by any of the above-described exemplary embodiments, but should be defined only in accordance with the following claims and their equivalents.

- 31 -

WHAT IS CLAIMED IS:

1.     A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

a hardware barrier that includes a front plate and a back plate;

an application barrier stored on a memory of the mobile device, the application barrier configured to:

detect a first attempt to perform an unsanctioned function of an application stored in the memory of the mobile device;

prevent a processor of the mobile device from executing operations related to the first attempt; and

an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

detect a second attempt to access device settings of the mobile device; and

prevent the processor of the mobile device from executing operations related to the second attempt;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of; and

wherein the device settings include a wireless access point setting.

2.     The system of claim 1, wherein the front plate and the back plate of the hardware barrier are configured to form a seal around the device that allows physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

3.     The system of claim 2, further comprising a diode connected to the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

4.     The system of claim 1, wherein the application barrier is further configured to:

detect an attempt to delete the application on the mobile device; and

send a command to the processor of the mobile device to cancel the attempt.

Atty. Dkt. No. 3210.1280001

- 32 -

5. The system of claim 1, wherein the application barrier is further configured to:

   detect an attempt to install a second application on the mobile device; and

   send a command to the processor of the mobile device to cancel the attempt.

6. The system of claim 1, wherein the application barrier is further configured to:

   detect an over-the-air command received by the mobile device over a wireless link;

   determine that the command meets a security requirement of a second application sanctioned to change the device settings; and

   in response to determining that the command meets the security requirement, allow the command to be executed by a processor of the mobile device.

7. The system of claim 1, wherein the second attempt is initiated by the application.

8. The system of claim 1, wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

9. A mobile device, comprising:

   a memory that stores a first set of operations of an application barrier and a second set of operations of an operating system (OS) barrier; and

   a processor configured to:

    execute the first set of operations of the application barrier, the first set of operations comprising:

     detecting a first attempt by a user of the mobile device to perform an unsanctioned function of an application stored on the memory; and

     preventing the processor from executing operations related to the first attempt; and

    execute the second set of operations of the OS barrier, the second set of operations comprising:

- 33 -

detecting a second attempt to access device settings of the mobile device; and

preventing the processor from executing operations related to the second attempt;

wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of the controlled environment facility; and

wherein the device settings include a wireless access point setting.

10.    The mobile device of claim 9, wherein a hardware barrier that includes a front plate and a back plate fastened together by tamper-resistant screws is configured to form a seal around the device that allows direct physical contact with only a screen of the mobile device, a headphone port of the mobile device, a barrel charger port of the mobile device, and a universal serial bus (USB) port of the mobile device.

11.    The mobile device of claim 10, wherein a diode is connected to  the barrel charger port, the diode preventing electrical current from flowing out of the barrel charger port.

12.    The mobile device of claim 9, wherein first set of operations further comprises:

detecting an attempt to delete the application on the mobile device; and

sending a command to the processor to cancel the attempt.

13.    The mobile device of claim 9, wherein first set of operations further comprises:

detecting an attempt to install a second application on the mobile device; and

sending a command to the processor of the mobile device to cancel the installation attempt.

14.    The mobile device of claim 9, wherein the first set of operations further comprises:

detecting an over-the-air command received by the mobile device over a wireless link;

determining that the over-the-air command is from a sanctioned source; and

in response to determining that the command is from the sanctioned source, allowing the command to be executed by the processor.

Atty. Dkt. No. 3210.1280001

- 34 -

15.     The mobile device of claim 9, wherein the second attempt is initiated by the application.

16.     The mobile device of claim 9, wherein the device settings further include a Bluetooth radio setting and a cellular radio setting, the Bluetooth radio setting determining whether or not the mobile device may receive data over a Bluetooth wireless link, and the cellular radio setting determining whether or not the mobile device may receive data over a cellular wireless link.

17.     A system of layered security barriers designed to prevent unsanctioned use of a mobile device in a controlled environment facility, comprising:

        a hardware barrier that includes a front plate and a back plate configured to form a seal around the mobile device that allows limited physical contact with the mobile device;

        an application barrier, stored on a memory of the mobile device, configured to prevent an unsanctioned function from being performed on the mobile device;

        an operating system (OS) barrier stored on the memory of the mobile device, configured to prevent an unsanctioned change of device settings of the mobile device; and

        an access control barrier implemented on a firewall device between a wireless access point serving the controlled-environment facility and a network, the access control barrier configured to perform filtering of a plurality of packets directed to or transmitted by the mobile device.

18.     The system of claim 17, the system further comprising a wireless intrusion barrier implemented on the wireless access point device, the wireless intrusion barrier configured to:

        detect an attempt by the mobile device to connect with a second wireless access point device;

        obtain a wireless access point identifier associated with the second wireless access point device;

        determine that the second wireless access point identifier is not among a plurality of wireless access point identifiers stored on the wireless access point device; and

        in response to the determining, attack the mobile device using a deauthentication denial of service attack.

Atty. Dkt. No. 3210.1280001

- 35 -

19.    The system of claim 18, wherein the wireless intrusion barrier is further configured to attack the second wireless access point using another deauthentication denial of service attack in response to the determining.

20.    The system of claim 17, wherein the application barrier is configured to prevent an unsanctioned function from being performed by:

        detecting at least one of a first attempt by a user to delete an application from the memory of the mobile device, a second attempt by the user to install a second application on the mobile device, and a third attempt by the application to access content from a disallowed source outside of the controlled environment facility; and

        preventing a processor of the mobile device from executing any operations related to the first attempt, the second attempt, and the third attempt.

21.    The system of claim 17, wherein the operating system (OS) is configured to prevent the unsanctioned change of the device settings by:

        detecting an attempt by a user to access the device settings on the mobile device; and

        preventing the processor of the mobile device from executing operations related to the attempt,

        wherein the device settings include a wireless access point setting.

22.    The system of claim 17, wherein the access control barrier is configured to perform filtering of the plurality of packets by:

        receiving a packet transmitted by or directed to the mobile device;

        performing an inspection of a packet, the inspection including obtaining an address of the packet;

        determining that the address is not among a plurality of addresses stored on the firewall device; and

        in response to the determining, discarding the packet.

- 36 -

# ABSTRACT

A layered security suite is disclosed wherein multiple security barriers that prevent the unsanctioned use of a mobile device issued by a controlled-environment facility. The security barriers are implemented along multiple points within the communication path between the mobile device with outside networks, including on the mobile device, on wireless access points that serve data traffic for the mobile device, and a firewall device that monitors all data coming to and from the wireless access points. The barriers on the mobile device prevent the user from performing unsanctioned application and settings changes, including both software and hardware components, while the barrier on the wireless access point detects and prevents unauthorized connections between mobile devices and unsanctioned wireless access points. The firewall device discards packets with unsanctioned internet addresses. The layers work in concert to prevent all manner of tampering with the mobile device by members of the controlled-environment facility.

15184020.1

Atty. Dkt. No. 3210.1280001

100



FIG. 1

4905299_1 / 1



**FIG. 2**

4905299_1 / 3





**FIG. 3A**



FIG. 3B

4905299_1 / 4



**FIG. 4**



**FIG. 5**



630

628

614

110B

**FIG. 6B**

612

4905299_1/7



616

618

110A

610

**FIG. 6A**

602

604



**FIG. 7**

4905299_1 / 8



FIG. 8A

FIG. 8B

FIG. 8C

209

210 Hardware
220 Application
230 Operating system
240 Wireless Security
250 Access control

4905299_1 / 9



FIG. 9

PTO/AIA/15 (10-17)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY
# PATENT APPLICATION
# TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| Attorney Docket No. | 3210.1280001 |
|---|---|
| First Named Inventor | Jason MARASS |
| Title | SECURITY SYSTEM FOR INMATE WIRELESS DEVICES |
| Priority Mail Express® Label No. | |

## APPLICATION ELEMENTS
*See MPEP chapter 600 concerning utility patent application contents.*

1. [ ] **Fee Transmittal Form**
   (PTO/SB/17 or equivalent)
2. [ ] **Applicant asserts small entity status.**
   See 37 CFR 1.27
3. [ ] **Applicant certifies micro entity status.** See 37 CFR 1.29.
   Applicant must attach form PTO/SB/15A or B or equivalent.
4. [✓] **Specification**  *[Total Pages* 36 *]*
   Both the claims and abstract must start on a new page.
   (See MPEP § 608.01(a) for information on the preferred arrangement)
5. [✓] **Drawing(s) (35 U.S.C. 113)**  *[Total Sheets* 10 *]*
6. [ ] **Inventor's Oath or Declaration**  *[Total Pages* 4 *]*
   *(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))*
   a. [ ] Newly executed (original or copy)
   b. [✓] A copy from a prior application (37 CFR 1.63(d))
7. [✓] **Application Data Sheet**  * See note below.
   See 37 CFR 1.76 (PTO/AIA/14 or equivalent)
8. [ ] **CD-ROM or CD-R**
   in duplicate, large table, or Computer Program *(Appendix)*
   [ ] Landscape Table on CD
9. [ ] **Nucleotide and/or Amino Acid Sequence Submission**
   *(if applicable, items a. – c. are required)*
   a. [ ] Computer Readable Form (CRF)
   b. [ ] Specification Sequence Listing on:
   i. [ ] CD-ROM or CD-R (2 copies); or
   ii. [ ] Paper
   c. [ ] Statements verifying identity of above copies

*ADDRESS TO:*  **Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

## ACCOMPANYING APPLICATION PAPERS

10. [ ] **Assignment Papers**
    (cover sheet & document(s))
    Name of Assignee  Global Tel*Link Corporation
11. [ ] **37 CFR 3.73(c) Statement**      [✓] **Power of Attorney**
    (when there is an assignee)
12. [ ] **English Translation Document**
    (if applicable)
13. [✓] **Information Disclosure Statement**
    (PTO/SB/08 or PTO-1449)
    [ ] Copies of citations attached
14. [ ] **Preliminary Amendment**
15. [ ] **Return Receipt Postcard**
    (MPEP § 503) (Should be specifically itemized)
16. [ ] **Certified Copy of Priority Document(s)**
    (if foreign priority is claimed)
17. [ ] **Nonpublication Request**
    Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach PTO/SB/35 or equivalent.
18. [✓] **Other:** Authorization under 37 CFR 1.136(a)(3)
    _____
    _____
    _____
    _____
    _____

***Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

## 19. CORRESPONDENCE ADDRESS

[✓] The address associated with Customer Number: 26111        **OR**   [ ] Correspondence address below

| Name | |
|---|---|
| Address | |
| City | State | Zip Code |
| Country | Telephone | Email |

| Signature | /Lauren C. Schleh/ | Date | July 9, 2020 |
|---|---|---|---|
| Name (Print/Type) | Lauren C. Schleh | Registration No. (Attorney/Agent) | 65,457 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.



**LAUREN C. SCHLEH**
ASSOCIATE
(202) 772-8587
LSCHLEH@STERNEKESSLER.COM

July 9, 2020

Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450

     Re:    U.S. Non-Provisional Patent Application under 37 C.F.R. § 1.53(b)
            *(Continuation of Appl. No. 15/435,993; Filed: February 17, 2017)*
            Appl. No. To Be Assigned; Filed: Herewith
            For:   **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**
            Inventors:   MARASS *et al.*
            Our Ref:   3210.1280001

Commissioner:

     The following documents are transmitted herewith for appropriate action by the U.S. Patent and Trademark Office:

    1.     Utility Patent Application Transmittal Form (PTO/AIA/15);

    2.     Authorization to Treat a Reply As Incorporating An Extension of Time Under 37 C.F.R. § 1.136(a)(3);

    3.     U.S. Utility Patent Application entitled:

          **SECURITY SYSTEM FOR INMATE WIRELESS DEVICES**

          and naming as inventor:

          **Jason MARASS, Brian PETERS, Garth JOHNSON** and **Stephen Lee HODGE**

          the application consisting of:

          a.     An Application Data Sheet (37 C.F.R. § 1.76);

          b.     Signed Inventor's Declaration, as originally filed in prior Appl. No. 15/435,993;

          c.     A specification containing:

               i.     **30** pages of description prior to the claims;

Commissioner for Patents
July 9, 2020
Page 2

        ii.     **5** pages of claims (22 claims);

        iii.    a one (**1**) page abstract; and

    d.    **10** sheets of drawings: (Figure(s) **1-2, 3A-3B, 4-5, 6A-6B, 7, 8A-8C,** and **9**); and

4.    Information Disclosure Statement;

5.    Form PTO/SB/08a (7 sheets) listing 131 documents (**US1-US131**);

6.    Form PTO/SB/08b (2 sheets) listing 13 documents (**NPL1-NPL13**); and

6.    A Transmittal for Power of Attorney form (PTO/AIA/82A) and an executed Power of Attorney by Applicant (PTO/AIA/82B).

The above-listed documents are filed electronically.

Correspondence should be sent to Customer Number 26111.

This patent application is being submitted under 37 C.F.R. § 1.53(b) without the required fees.

                    Respectfully submitted,

                    STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                    /Lauren C. Schleh/

                    Lauren C. Schleh
                    Attorney for Applicant
                    Registration No. 65,457

LCS/crb
Enclosure(s)

15184263.1