**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GLOBAL TEL*LINK CORPORATION D/B/A VIAPATH TECHNOLOGIES, | ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | C.A. No. 23-500 (MN) |
| v. | ) | |
| | ) | |
| JACS SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JACS SOLUTIONS, INC.'S
OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS**

Dated: June 21, 2023

BAKER & HOSTETLER LLP

Jeffrey J. Lyons (#6437)
1201 North Market Street, Suite 1407
Wilmington, DE 19801
(302) 468-7088
jjlyons@bakerlaw.com

Kevin W. Kirsch (*pro hac vice*)
Andrew E. Samuels (*pro hac vice*)
Mark S. Einsiedel (*pro hac vice*)
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
(614) 228-1541
kkirsch@bakerlaw.com
asamuels@bakerlaw.com
meinsiedel@bakerlaw.com

David A. Mancino (*pro hac vice*)
Derek M. Freitas (*pro hac vice*)
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
(513) 929-3400
dmancino@bakerlaw.com
dfreitas@bakerlaw.com

Sally Y. Qin (*pro hac vice*)
1050 Connecticut Avenue, NW, Suite 1100
Washington, DC 20036
(202) 861-1500
sqin@bakerlaw.com

*Attorneys for JACS Solutions, Inc.*

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ....................................................1

III.   SUMMARY OF ARGUMENT ............................................................................2

IV.   FACTS ..................................................................................................................3

      A.    ViaPath's patents claim broad categories of the telecommunications field. ...........3

           1.    U.S. Patent No. 10,645,443 (D.I. 17-8) .............................................3

           2.    U.S. Patent No. 9,807,123 (D.I. 17-9) ...............................................4

           3.    U.S. Patent No. 9,030,292 (D.I. 17-10) .............................................6

           4.    U.S. Patent No. 11,228,672 (D.I. 17-11) ...........................................8

           5.    U.S. Patent No. 10,721,624 (D.I. 17-12) ...........................................9

V.    ARGUMENT ......................................................................................................11

      A.    ViaPath's amended complaint should be dismissed with prejudice because ViaPath's patent claims are directed to patent-ineligible subject matter. ..............11

      B.    Claim 1 of U.S. Patent No. 10,645,443 (D.I. 17-8) fails *Alice* steps one and two..................................................................................................................12

           1.    *Alice* step one: claim 1 of the '443 Patent is directed to the abstract idea of a prison visitation room. ................................................12

           2.    *Alice* step two: claim 1 of the '443 Patent lacks an inventive concept. .....13

      C.    Claim 1 of U.S. Patent No. 9,807,123 (D.I. 17-9) fails *Alice* steps one and two..................................................................................................................14

           1.    *Alice* step one: claim 1 of the '123 Patent is directed to the abstract idea of secure messaging. ................................................14

           2.    *Alice* step two: claim 1 of the '123 Patent lacks an inventive concept. .....15

      D.    Claim 1 of U.S. Patent No. 9,030,292 (D.I. 17-10) fails *Alice* steps one and two..................................................................................................................16

1.     *Alice* step one: claim 1 of the '292 Patent is directed to the abstract idea of a secure prison visit.................................................................16

2.     *Alice* step two: claim 1 of the '292 Patent lacks an inventive concept. ......17

E.    Claim 1 of U.S. Patent No. 11,228,672 (D.I. 17-11) fails *Alice* steps one and two............................................................................................................18

1.     *Alice* step one: claim 1 of the '672 Patent is directed to the abstract idea of controlling access to resources.........................................................18

2.     *Alice* step two: claim 1 of the '672 Patent lacks an inventive concept. ......19

F.    Claim 1 of U.S. Patent No. 10,721,624 (D.I. 17-12) fails *Alice* steps one and two............................................................................................................20

1.     *Alice* step one: claim 1 of the '624 Patent is directed to the abstract idea of controlling access to resources.........................................................20

2.     *Alice* step two: claim 1 of the '624 Patent lacks an inventive concept. ......20

VI.   CONCLUSION................................................................................................20

## TABLE OF CITATIONS

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l,*
573 U.S. 208 (2014).................................................................................... *passim*

*Apple, Inc. v. Ameranth, Inc.,*
842 F.3d 1229 (Fed. Cir. 2016).....................................................................13, 17

*ClearDoc, Inc. v. RiversideFM, Inc.,*
No. 21-1422, 2022 WL 3355960 (D. Del. Aug. 15, 2022)...................................2, 13

*Diogenes Ltd. v. DraftKings, Inc.,*
623 F. Supp. 3d 423 (D. Del. 2022).......................................................................14

*Ginegar LLC v. Slack Techs., Inc.,*
No. 22-cv-00044, 2022 WL 2064978 (N.D. Cal. June 8, 2022)..........................2, 14

*HLFIP Holding, Inc. v. York Cnty.,*
600 F. Supp. 3d 526 (M.D. Pa. 2022) ...................................................................14

*Intell. Ventures I LLC v. Symantec Corp.,*
838 F.3d 1307 (Fed. Cir. 2016)..........................................................................14, 15

*Maxell, Ltd. v. Fandango Media, LLC,*
No. 17-07534, 2018 WL 4502492 (C.D. Cal. Sept. 11, 2018), *aff'd*, 779 F.
App'x 745 (Fed. Cir. 2019) ..............................................................................19, 20

*Prism Techs. LLC v. T-Mobile USA, Inc.,*
696 F. App'x 1014 (Fed. Cir. 2017) ...................................................................2, 18

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.,*
No. 2021-1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022)............................2, 16

*Securus Techs., Inc. v. Global Tel\*Link Corp.,*
No. 3:13-CV-03009, 2015 WL 6703221 (N.D. Tex. Nov. 2, 2015)..........................1

*SkillSurvey, Inc. v. Checkster LLC,*
178 F. Supp. 3d 247 (E.D. Pa. 2016) ...................................................................17

*In re TLI Commc'ns LLC Pat. Litig.,*
823 F.3d 607 (Fed. Cir. 2016).............................................................................15

*Universal Secure Registry LLC v. Apple Inc.,*
10 F.4th 1342 (Fed. Cir. 2021) .............................................................................11

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) ................................................................................15

*Virtual Immersion Techs. LLC v. Safran S.A.*,
    No. 22-1248 (C.D. Cal. June 5, 2023), D.I. 52 .......................................................13

*Yu v. Apple Inc.*,
    1 F.4th 1040, 1046 (Fed. Cir. 2021) .......................................................................11

**Statutes**

35 U.S.C. § 101 ...................................................................................................................1

**Rules**

Fed. R. Civ. P. 12(b)(6) .....................................................................................................11

iv

## I.      INTRODUCTION

JACS Solutions has been sued for patent infringement by a company that claims to have invented the wireless tablet. *See, e.g.*, D.I. 17 ¶ 7 ("Wireless tablets are one of [plaintiff's] most important innovations."), ¶ 10 ("[Plaintiff's] *wireless tablets*—the technology at issue here— . . . are fundamentally important . . . .") (emphasis in original), ¶ 14 (alleging "ingenuity of [plaintiff's] tablets"). But the plaintiff here is not Apple or Samsung or Microsoft. It is ViaPath, a prison-telecommunications company whose technological glitches and customer-service mishaps were the subject of a recent Slate exposé. *See* Charlotte West, *Inside the Frustrating, Error-Ridden, Expensive World of Prison Messaging*, Slate (May 10, 2023), https://tinyurl.com/2jnw9kzp. And the technology at issue is not a wireless tablet. It is the basic implementation of abstract ideas such as a prison visitation room, secure messaging, a secure prison visit, and controlling access to resources. Each of ViaPath's asserted patent claims is directed to an abstract idea, lacks an inventive concept, and should be held invalid under 35 U.S.C. § 101. ViaPath's amended complaint (D.I. 17) should be dismissed with prejudice.

## II.     NATURE AND STAGE OF PROCEEDINGS

When it was known as Global Tel*Link, ViaPath had 31 patent claims (not at issue here) held invalid under 35 U.S.C. § 101. *Securus Techs., Inc. v. Global Tel*Link Corp.*, No. 3:13-CV-03009, 2015 WL 6703221 (N.D. Tex. Nov. 2, 2015). Despite this track record, ViaPath sued JACS Solutions for patent infringement on May 8, 2023 (D.I. 1) and amended its complaint on May 22, 2023 (D.I. 17). ViaPath alleges that, "by providing wireless tablets" to "corrections-industry service providers," JACS Solutions "infringes numerous ViaPath patents." (*Id.* ¶¶ 26, 30.) The complaint incorporates claim charts that allegedly show infringement of claim 1 of each of five asserted patents. (D.I. 17-13, 17-14, 17-15, 17-16, 17-17.) ViaPath does not specifically accuse JACS Solutions of infringing any other claims of any other patents.

1

## III.    SUMMARY OF ARGUMENT

ViaPath's amended complaint should be dismissed with prejudice because:

1.      Claim 1 of each asserted patent is "directed to a patent-ineligible concept." *Alice*

*Corp. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014).

   a.    **U.S. Patent No. 10,645,443 (D.I. 17-8)** is directed to the abstract idea of a prison visitation room. The room can "deliver[] media content," but that is itself an abstract idea. *ClearDoc, Inc. v. RiversideFM, Inc.*, No. 21-1422, 2022 WL 3355960, at *3 (D. Del. Aug. 15, 2022).

   b.    **U.S. Patent No. 9,807,123 (D.I. 17-9)** is directed to the abstract idea of secure messaging, which is analogous to the abstract idea of "[u]sing rules to sort instant messages." *Ginegar LLC v. Slack Techs., Inc.*, No. 22-cv-00044, 2022 WL 2064978, at *7 (N.D. Cal. June 8, 2022).

   c.    **U.S. Patent No. 9,030,292 (D.I. 17-10)** is directed to the abstract idea of a secure prison visit, which is analogous to the abstract idea of "credentialing visitors and checking them in and out of an access-controlled environment." *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021-1906, 2022 WL 794981, at *2 (Fed. Cir. Mar. 15, 2022).

   d.    **U.S. Patent No. 11,228,672 (D.I. 17-11)** is directed to the abstract idea of controlling access to resources, such as "providing restricted access to [electronic] resources." *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017).

   e.    **U.S. Patent No. 10,721,624 (D.I. 17-12)** also is directed to the abstract idea of controlling access to resources. *See Prism*, 696 F. App'x at 1017.

2.      Claim 1 of each asserted patent lacks "an inventive concept sufficient to transform

the claimed abstract idea into a patent-eligible application" of the idea. *Alice*, 573 U.S. at 221

(quotation omitted). For example:

   a.    **U.S. Patent No. 10,645,443 (D.I. 17-8)** admits that the alleged invention "can be run on any client computing device" with "Internet" access. (*Id.* at 4:42, 6:30–31.)

   b.    **U.S. Patent No. 9,807,123 (D.I. 17-9)** admits that instant messaging is "prominent," that the alleged invention "should be able to perform the same functions as a normal electronic messaging system," and that the alleged invention simply "encompasses" those functions "into a single system." (*Id.* at 2:9, 2:40–41, 2:48.)

c.   **U.S. Patent No. 9,030,292 (D.I. 17-10)** admits that the alleged invention can be carried out on "a personal computer, a laptop, a mobile device, or a tablet computer device" with a "standard internet browser." (*Id.* at 8:48–50, 14:19–20.)

d.   **U.S. Patent No. 11,228,672 (D.I. 17-11)** admits that the alleged invention can be "implemented on existing router hardware," which is enclosed within a "'clam shell' case" and which runs a generic "wireless intrusion prevention (WIP) system[.]" (*Id.* at 7:5–6, 9:41–42, 18:20.)

e.   **U.S. Patent No. 10,721,624 (D.I. 17-12)** contains the same admissions as U.S. Patent No. 11,228,672. (*Id.* at 6:62–63, 9:32–33, 18:9.)

## IV.   FACTS

### A.   ViaPath's patents claim broad categories of the telecommunications field.

ViaPath claims the right to exclude JACS Solutions and others from providing "a variety of services in correctional facilities," including broad categories of services such as "voice communications, electronic messaging, electronic tablets, video visitation, electronic content services, security, and wireless services, to name a few." (D.I. 17 ¶ 15.) All five asserted patents claim broad categories of the telecommunications field.

### 1.   U.S. Patent No. 10,645,443 (D.I. 17-8)

U.S. Patent No. 10,645,443 discusses a "Controlled Environment Media and Communication System" that "delivers communications services to residents of controlled facilities," such as prisons, "using a common network architecture." (D.I. 17-8 at Abstract.) These services include "media distribution, video visitation, [and] intra-facility messaging." (*Id.*) And they can be performed "on any client computing device" with "Internet" access. (*Id.* at 4:42, 6:30–31.) The "client computing device" may be a tablet or a smartphone. (*Id.* at 6:30–33, Fig. 4.)



Claim 1 of the '443 Patent recites a "media distribution system for," among other things, "distributing media." A user of the system can select stored "media" for "playback" (think Netflix) and also can "participate in video visitation sessions" (think Zoom):

[1.P] A media distribution system for distributing media and facilitating video visitation within a secured facility, the media distribution system being available to a resident of the secured facility, the media distribution system comprising:

[1.1] a media distribution server configured to receive media from a plurality of media sources, generate a catalog of the received media based on the plurality of media sources and metadata associated with the received media, and make the media available on a network via the catalog, the plurality of media sources including a real-time media source and an on-demand media source;

[1.2] encoding the received media;

[1.3] storing the encoded received media for later distribution;

[1.4] a video visitation server configured to conduct video visitation sessions between a first video visitation endpoint and a second video visitation endpoint, at least one of the first and second video visitation endpoints having connectivity to the network; and

[1.5] an access kiosk placed within a residential unit of the secured facility and accessible by the resident, the access kiosk configured to:

[1.6] communicate with the video visitation server over the network to participate in video visitation sessions with one or more other video visitation endpoints; and

[1.7] display the catalog to the resident;

[1.8] receive a user selection from the catalog;

[1.9] receive the encoded media from the media distribution server over the network based on the user selection; and

[1.10] playback the selected media for consumption.

The media may be encoded by "any suitable" means. (*Id.* at 6:58–67.)

## 2.    U.S. Patent No. 9,807,123 (D.I. 17-9)

U.S. Patent No. 9,807,123, titled "Electronic Messaging Exchange," discusses a "system and method for secure electronic message exchange." (D.I. 17-9 at Abstract.) The patent admits

that "[e]lectronic messaging, such as emailing and instant messaging, has become prominent in recent years." (*Id.* at 2:8–9.) According to the patent, the alleged invention "should be able to perform the same functions as a normal electronic messaging system." (*Id.* at 2:40–41.) The alleged invention simply "encompasses" those functions "into a single system" with the aid of a "control platform." (*Id.* at Abstract, 2:48.) The patent depicts the "control platform" as a black box:



(*Id.* at Fig. 4A.)

Claim 1 of the '123 Patent recites a "secure electronic message exchange system" that performs generic authentication, messaging, and security functions:

[1.P] A secure electronic message exchange system usable inside a secured inmate facility, the secure electronic message exchange system comprising:

[1.1] a safe terminal configured to:

[1.2] authenticate a local user,

[1.3] allow the local user to generate an instant message, and

[1.4] transmit the instant message via a data connection,

[1.5] wherein the safe terminal accesses secure system software only and restricts the local user from accessing the internet; and

[1.6] a control platform configured to:

[1.7] receive the instant message from the safe terminal,

[1.8] convert the instant message into a format suitable for an automated security scan and transmission of the instant message;

[1.9] perform the automated security scan of the instant message,

[1.10] authenticate a remote user, and

[1.11] based on the automated security scan, transmit the instant message to a device associated with the authenticated remote user or transmit a notification to an administrator and store the instant message in a database,

[1.12] the control platform including a central computer control platform configured to allow the local user and the remote user to communicate via electronic messages.

The "conver[sion]" and "scan" of the instant messages are performed by a "multi-function unit (MFU)" and "conversion engine." (*Id.* at 8:40–56.) The MFU and the conversion engine, like the "control platform," are depicted as black boxes. (*Id.* at Fig. 1.)

### 3.   U.S. Patent No. 9,030,292 (D.I. 17-10)

U.S. Patent No. 9,030,292, titled "Interactive Audio/Video System and Device for Use in a Secure Facility," discusses a "kiosk with a processor, display, speaker, microphone, and a camera." (D.I. 17-10 at Abstract.) The kiosk may be "a personal computer, a laptop, a mobile device, or a tablet computer device" with a "standard internet browser." (*Id.* at 8:48–50, 14:19–20.) Or it may be a "touchscreen" with an "optional" "telephone handset" attached:



Figure 3

(*Id.* at Fig. 3.)

Claim 1 of the '292 Patent recites a kiosk for transmitting data over a network, authenticating a user, taking screenshots of a video chat to review for inappropriate activity, and blurring the screen if something inappropriate is found in a screenshot:

[1.P] A system for providing services to a secure facility, the system comprising:

[1.1] a kiosk located at a secure facility, the kiosk comprising a processor, display, speaker, microphone, and a camera; and

[1.2] a server that communicates with the kiosk via a network connection, the server comprising a server processor, a network interface unit, and a computer memory;

[1.3] the kiosk being configured to receive communications from the camera and microphone and transmit audio and video of the communications to the server via the network connection;

[1.4] wherein the server records the audio and video and transmits the audio and video to a destination;

[1.5] wherein the kiosk is configured to authenticate the identity of a user of the kiosk by verifying log in information entered by the user and also performing a biometric verification;

[1.6] wherein, after the user identity has been authenticated by the kiosk and during the transmission of the video, the server is configured to periodically extract a frame of the video and perform a check to determine if a face is present in the frame, and the server is further configured to blur the video being transmitted to the destination when the check determines that the face is not present in the frame; and

[1.7] wherein the destination is a device communicating with the server, and the server is configured to authenticate a user of the device.

The patent provides no detail about *how* "the server is further configured to blur the video."

### 4.        U.S. Patent No. 11,228,672 (D.I. 17-11)

U.S. Patent No. 11,228,672, titled "Security System for Inmate Wireless Devices," discusses "[a] system for preventing unsanctioned use of a mobile device within a controlled environment facility," such as a prison. (D.I. 17-11 at cl. 1.) The claimed invention uses a generic "application barrier" to disable unwanted applications, to enable other applications, and to monitor social media use. (*See id.*) The patent depicts the "application barrier" as a black box on a "mobile device." (*Id.* at Fig. 2.)



Claim 1 of the '672 Patent recites that the "application barrier" is configured to disable "non-secure" and "non-useful" applications, to enable a "social application," and to "monitor the social interactions of the social application" for, among other things, "illicit activity":

[1.P] A system for preventing unsanctioned use of a mobile device within a controlled environment facility, comprising:

[1.1] an application barrier stored on a memory of the mobile device, the application barrier configured to:

[1.2] disable non-secure functions of an application stored in the memory of the mobile device, the non-secure functions including functions that modify settings of the mobile device;

[1.3] disable applications deemed non-useful by the controlled environment facility;

[1.4] enable applications deemed useful by the controlled environment facility, modified such that social media functions of the enabled applications are disabled;

[1.5] enable a social application having social functions and programming to allow for monitoring of social interactions conducted using the social functions; and

[1.6] monitor the social interactions of the social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity.

The patent does not explain *how* applications are enabled or disabled. It simply states that applications "are modified and managed to prevent . . . unsanctioned activity" and "may be disabled as deemed necessary." (*Id.* at 6:39–49.)

### 5.     U.S. Patent No. 10,721,624 (D.I. 17-12)

U.S. Patent No. 10,721,624 is also titled "Security System for Inmate Wireless Devices," though it allegedly differs from the '672 Patent because it involves "multiple security barriers." (D.I. 17-12 at Abstract.) The barriers include a physical "hardware barrier" and an "operating system (OS) barrier." (*Id.* at cl. 1.) The patent defines "hardware barrier" as simply "a 'clam shell' case, that prevents inmates from physically tampering with the mobile device." (*Id.* at 4:31–33.)



(*Id.* at Fig. 3B.) The patent does not define "operating system (OS) barrier" at all. It just says what the OS barrier does: "prevent[] the inmate from accessing settings of [a] device." (*Id.* at 12:7–8.)

Claim 1 of the '624 Patent identifies these three barriers in purely functional terms:

[1.P] A system of layered security barriers of a mobile device that prevents unsanctioned use of the mobile device, comprising:

[1.1] a hardware barrier that includes a front plate and a back plate, the hardware barrier obstructing access to at least one port of the mobile device;

[1.2] an application barrier stored on a memory of the mobile device, the application barrier configured to:

[1.3] perform application modification in which non-secure functions of an application stored in the memory of the mobile device are disabled, the non-secure functions including social functions of the application;

[1.4] monitor user activity of a social application, the monitoring including gathering social interactions of the social application and reviewing the social interactions for illicit activity;

[1.5] prevent installation or removal of an application;

[1.6] detect an attempt to perform an unsanctioned function of the application stored in the memory of the mobile device;

[1.7] prevent a processor of the mobile device from executing operations related to the attempt to perform the unsanctioned function; and

[1.8] an operating system (OS) barrier stored in the memory of the mobile device, the OS barrier configured to:

[1.9] detect an attempt to access device settings of the mobile device by a user of the mobile device; and

[1.10] prevent, at a kernel of an operating system operating on the mobile device, the processor of the mobile device from executing operations that attempt to access or alter the device settings of the mobile device;

[1.11] wherein the unsanctioned function includes exchanging data with an unsanctioned source outside of a controlled environment facility; and

[1.12] wherein the device settings of the mobile device include a wireless access point setting.

While the claim says *what* the barriers are "configured to" do, it does not say anything about *how* to configure them.

## V.   ARGUMENT

### A.   ViaPath's amended complaint should be dismissed with prejudice because ViaPath's patent claims are directed to patent-ineligible subject matter.

ViaPath's amended complaint should be dismissed with prejudice under Rule 12(b)(6) because all claims of ViaPath's patents are directed to patent-ineligible "abstract ideas." *Alice*, 573 U.S. at 216 (quotation omitted). Patent ineligibility can be determined at the Rule 12(b)(6) stage when no factual allegations prevent resolving the issue as a matter of law. *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021). And "[i]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Diogenes Ltd. v. DraftKings, Inc.*, 623 F. Supp. 3d 423, 433 (D. Del. 2022) (quoting *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021)).

In all five ViaPath patents, claim 1 fails both steps of the *Alice* test for patent eligibility. The first step is to "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. Claim 1 of each patent fails this step because the claims are directed to abstract ideas, such as: a prison visitation room ('443 Patent), secure messaging ('123 Patent), a secure prison visit ('292 Patent), and controlling access to resources ('672 Patent and '624 Patent).

The second step requires "examin[ation] [of] the elements of the claim[s] to determine whether [they] contain[] an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (quotation omitted). The claims also fail this

11

step because they implement the abstract ideas using standard networking technology and provide no details about how to configure that technology in any inventive way.

**B.      Claim 1 of U.S. Patent No. 10,645,443 (D.I. 17-8) fails *Alice* steps one and two.**

**1.      *Alice* step one: claim 1 of the '443 Patent is directed to the abstract idea of a prison visitation room.**

Claim 1 of the '443 Patent recites a "video visitation" system for prisons that enables "video visitation sessions" and "playback" of either a "real-time media source" or an "on-demand media source." (D.I. 17-8 at cl. 1.) This claim is directed to the abstract idea of a prison visitation room.

By definition, a prison visitation room hosts "visitation sessions." And many prison visitation rooms allow media to be played. For example, the visitation room at the Morris Community Corrections Center in Dover, Delaware (left) provides visitation tables on the floor and a television on the wall. Similarly, the Sussex Correctional Institution in Georgetown, Delaware (right) provides visitation booths on the floor and a television on the wall:

 

Cris Barrish, *Delaware reopens prison visitation to pre-pandemic levels*, WHYY (Feb. 17, 2023), https://tinyurl.com/y9a4adx7; Cris Barrish, *Delaware resumes in-person prison visits to 'strengthen those connections' interrupted three times during pandemic*, WHYY (Feb. 12, 2022), https://tinyurl.com/33p4e6vc. ViaPath does not and cannot deny that this abstract idea predates its patent.

Claim 1 merely implements this abstract idea on a "media distribution system." (D.I. 17-8 at cl. 1.) The "media distribution system" simply "provides support for" any "real-time and on-demand media as required" by the prison. (*Id.* at 6:44–57.) Media options include "broadcast television, broadcast radio, cable television, [and] satellite television." (*Id.* at 6:47–48.) But "controlling the . . . delivering of media content on a [] device" is itself an abstract idea. *ClearDoc*, 2022 WL 3355960, at *3. And "simply combining" abstract ideas, such as adding media delivery to a prison visitation room, "is just a rephrase of the abstract idea itself." *Id.*; *see also* Order Granting Defendant's Motion for Judgment on the Pleadings, *Virtual Immersion Techs. LLC v. Safran S.A.*, No. 22-1248 (C.D. Cal. June 5, 2023), D.I. 52 at 5 (finding claim directed to "merging live performance and communication with a virtual reality experience" abstract) (Ex. A). For each of these reasons, claim 1 fails *Alice* step one.

## 2.   *Alice* **step two: claim 1 of the '443 Patent lacks an inventive concept.**

Claim 1 of the '443 Patent does not claim new technology for prison visitation. It "merely requir[es] generic computer implementation" of a prison visitation room, which "fails to transform [that] abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 212; *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir. 2016) ("It is not enough to point to conventional applications and say 'do it on a computer.'").

ViaPath argues that the claimed invention "*may* leverage core network features" and "*can* employ optimization techniques to reduce network load and increase bandwidth efficiency." (D.I.

17 ¶ 35 (citing D.I. 17-8 at 4:52–64, 7:58–64, 8:56–60) (emphasis added).) But ViaPath cites only the patent specification for these arguments. And it is "err[or]" to rely on information "not set forth in the claims" to "find an inventive concept." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016); *see also Diogenes Ltd.*, 623 F. Supp. 3d at 433 (adopting report and recommendation of invalidity in part "because the claim itself is missing an inventive concept").

Claim 1 does not say anything about "core network features," let alone how to "leverage" them. Nor does it identify or explain any "optimization techniques." It simply lists hardware components of a "system" and says *what* the components are "configured to" do, without explaining *how* they are configured. (D.I. 17-8 at cl. 1.) This generic computer implementation fails *Alice* step two.

> **C.** **Claim 1 of U.S. Patent No. 9,807,123 (D.I. 17-9) fails *Alice* steps one and two.**
>
> **1.** ***Alice* step one: claim 1 of the '123 Patent is directed to the abstract idea of secure messaging.**

Claim 1 of the '123 Patent recites a "secure electronic message exchange system" that may authenticate users, allow users to exchange instant messages, and perform "automated security scan[s]" of the messages. (D.I. 17-9 at cl. 1.) But secure messaging is an abstract idea. The analogous idea of "[u]sing rules to sort instant messages" has been held "an abstract idea, akin to filtering emails, and [] also an activity that can be completed by humans." *Ginegar*, 2022 WL 2064978, at *7. Another court reached a similar result in the context of "screening," "scanning," and transmitting electronic copies of paper mail to inmates, finding that these steps amounted to an abstract idea. *See HLFIP Holding, Inc. v. York Cnty.*, 600 F. Supp. 3d 526, 537 (M.D. Pa. 2022). This Court should reach a similar result and find that claim 1 fails *Alice* step one.

ViaPath's argument that the claimed invention also prevents inmates from "bypassing control features" should be disregarded. (D.I. 17 ¶ 38 (citing D.I. 17-9 at 2:18–22, 2:39–44)). This

14

alleged feature appears nowhere in the claims—or even in the sections of the specification that ViaPath cites. *See Intell. Ventures*, 838 F.3d at 1322.

> 2. ***Alice* step two: claim 1 of the '123 Patent lacks an inventive concept.**

Claim 1 of the '123 Patent does not claim new technology for secure messaging. It "merely requir[es] generic computer implementation" of secure messaging, which "fails to transform that abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 212.

The '123 Patent admits that "[e]lectronic messaging, such as emailing and instant messaging, has become prominent in recent years as a medium of information transfer." (D.I. 17-9 at 2:8–10.) It also admits that the claimed messaging system "should be able to perform the same functions as a normal electronic messaging system." (*Id.* at 2:40–41.) The '123 Patent simply "encompasses all the elements" of normal electronic messaging "into a single system." (*Id.* at 2:47–50.) No improvement to any system is claimed, and the system's "control platform," "multi-function unit," and "conversion engine" are depicted as black boxes. (*Id.* at Abstract, 8:40–56, Fig. 1, Fig. 4.)

Because the system's functions and elements are "purely conventional," the claim fails *Alice* step two. *See Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015); *see also In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (finding no inventive concept because claims were directed to "use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by *combining* the two" (emphasis added)).

**D.      Claim 1 of U.S. Patent No. 9,030,292 (D.I. 17-10) fails *Alice* steps one and two.**

**1.      *Alice* step one: claim 1 of the '292 Patent is directed to the abstract idea of a secure prison visit.**

Claim 1 of the '292 Patent recites an "audio and video" communication system that authenticates users and "periodically" checks for inappropriate activity during the visit. (D.I. 17-10 at cl. 1–29.) This is simply an implementation of the abstract idea of a secure prison visit, which is analogous to the abstract idea of "credentialing visitors and checking them in and out of an access-controlled environment." *Repifi*, 2022 WL 794981, at *2.

To visit an inmate in a Delaware prison, a visitor must provide "picture identification." *Visit an Inmate*, Delaware Department of Corrections, https://tinyurl.com/mr3hbpva (last visited June 21, 2023). During the visit, "[t]he visitor and inmate will sit in a place designated by [a] Visiting Room Officer." *Id.* With few exceptions, "[v]isitors are not permitted to leave the Visiting Room." *Id.* The terms of the visit are strict: no property may be exchanged, only one inmate may be visited at a time, and "generally misbehaving" is forbidden. If these terms are violated, visitors may be "turn[ed] away." *Id.*



Cris Barrish, *Delaware reopens prison visitation to pre-pandemic levels*, WHYY (Feb. 17, 2023), https://tinyurl.com/y9a4adx7.

16

Claim 1 merely automates these visitation procedures. A "kiosk," such as a smartphone, is configured to "authenticate the identity of a user." (*E.g.*, D.I. 17-10 at cl. 1.) After authentication is completed, audio and video visitation begin. (*Id.*) During visitation, screenshots are taken to see who and what is in the virtual visitation room. (*Id.*) If the visitor leaves the virtual visitation room, then the screen is blurred and the visit is effectively over. (*Id.*) This is the video version of a typical secure prison visit, and implementing the visit on a "kiosk" does not make it any less abstract.

### 2.   *Alice* step two: claim 1 of the '292 Patent lacks an inventive concept.

Claim 1 of the '292 Patent lacks an inventive concept. It implements the abstract idea of a secure prison visit on generic computer components, such as "a processor, display, speaker, microphone, and a camera." (*E.g.*, D.I. 17-10 at cl. 1.) A "standard internet browser" is enough to facilitate the visit. (*Id.* at 14:19–20.) No new technology is claimed.

Claim 1's bare command to "blur the video" if the visitor's "face is not present in the frame" does not supply an inventive concept. This is the only supposedly inventive feature alleged in the complaint. (D.I. 17 ¶ 43.) But the patent provides no explanation, technical or otherwise, of how to do the blurring. The blurring is just another way of saying that if the visitation rules are violated, then the visit is over. (*See* D.I. 17-10 at 14:61) ("This [blurring] prevents inappropriate images from being transmitted."). But taking a concept from the "pre-Internet world," such as ending a secure prison visit due to inmate or visitor misconduct, and simply "apply[ing] it with a computer," is not inventive. *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 259 (E.D. Pa. 2016); *see also Apple, Inc.*, 842 F.3d at 1243. Claim 1 of the '292 Patent fails *Alice* step two.

**E.      Claim 1 of U.S. Patent No. 11,228,672 (D.I. 17-11) fails *Alice* steps one and two.**

**1.      *Alice* step one: claim 1 of the '672 Patent is directed to the abstract idea of controlling access to resources.**

The '672 Patent claims recite an "application barrier" configured to disable "non-secure" and "non-useful" applications, to enable a "social application," and to "monitor the social interactions of the social application" for, among other things, "illicit activity." (D.I. 17-11 at cl. 1.) In other words, the claims are directed to the abstract idea of controlling access to resources, such as "providing restricted access to [electronic] resources." *Prism*, 696 F. App'x at 1017.

Contrary to ViaPath's allegation that the claimed invention "enhances existing technologies" (D.I. 17 ¶ 47), this abstract idea was widespread in 2017 when the earliest priority application for the '672 Patent was filed. (D.I. 17-11 at cover.) By 2016, parental controls existed for virtually every electronic device and every operating system available. *See A Guide to Parental Controls By Device*, Parents (Oct. 18, 2016), https://tinyurl.com/2p89va8e. According to a 2016 Pew poll, about 2 in 5 parents "report[ed] using parental controls for blocking, filtering, or monitoring their teen's online activities."



*Parents, Teens and Digital Monitoring*, Pew Research Center (Jan. 7, 2016), https://tinyurl.com/2b6sk4mf. ViaPath cannot exclude others from building upon this abstract idea.

### 2. *Alice* step two: claim 1 of the '672 Patent lacks an inventive concept.

The '672 Patent admits that the alleged invention can be "implemented on existing router hardware," which is enclosed within a "'clam shell' case" and which runs a generic "wireless intrusion prevention (WIP) system[.]" (D.I. 17-11 at 7:5–6, 9:41–42, 18:20.) Although claim 1 lists various "configur[ation]" settings of the claimed "application barrier," it says nothing about *how* those configuration settings are implemented or executed. Nor does it propose a technological solution for controlling access to resources. So the claim lacks an inventive concept. *See Maxell, Ltd. v. Fandango Media, LLC*, No. 17-07534, 2018 WL 4502492, at *5 (C.D. Cal. Sept. 11, 2018), *aff'd*, 779 F. App'x 745 (Fed. Cir. 2019).

In *Maxell*, the patent claims were allegedly "directed to a method for applying a set of time restriction rules to enforce access to content." *Id.* But "[t]his characterization d[id] not reveal any technological improvement." *Id.* Instead, it was "just a more specific-sounding way to describe an abstract concept." *Id.* It was not inventive.

Similarly here, claim 1 lacks a technological improvement. It simply recites a generic "system," including a generic "application barrier," which "disable[s]" some applications, "enable[s]" others, and monitors activity. It does not teach *how* to disable, enable, and monitor. This is just a more specific-sounding way of describing the abstract idea of controlling access to resources. It is not inventive.

**F.      Claim 1 of U.S. Patent No. 10,721,624 (D.I. 17-12) fails *Alice* steps one and two.**

> **1.      *Alice* step one: claim 1 of the '624 Patent is directed to the abstract idea of controlling access to resources.**

Like claim 1 of the '672 Patent (which is a continuation of the '624 Patent), claim 1 of the '624 Patent is directed to the abstract idea of controlling access to resources. *See Maxell*, 2018 WL 4502492, at *5. Claim 1 of the '624 Patent merely adds a "hardware barrier" and an "operating system (OS) barrier" to the "application barrier" of the '672 Patent. But these additional "barriers" are also supposed to restrict access to electronic resources, which remains an abstract idea. So claim 1 of the '624 Patent also fails *Alice* step one.

> **2.      *Alice* step two: claim 1 of the '624 Patent lacks an inventive concept.**

Claim 1 of the '624 Patent lacks an inventive concept for the same reasons that claim 1 of the '672 Patent lacks an inventive concept. It recites a generic "system" of generic "barriers" that enable or disable applications. No technological improvement is claimed. This is not inventive. *See Maxell*, 2018 WL 4502492, at *5.

**VI.     CONCLUSION**

Claim 1 of each of U.S. Patent No. 10,645,443 (D.I. 17-8), U.S. Patent No. 9,807,123 (D.I. 17-9), U.S. Patent No. 9,030,292 (D.I. 17-10), U.S. Patent No. 11,228,672 (D.I. 17-11), and U.S. Patent No. 10,721,624 (D.I. 17-12) is invalid for being directed to patent-ineligible subject matter. Because these are the only patent claims that ViaPath accuses JACS Solutions of infringing (*see* D.I. 17-13 through 17-17), ViaPath's amended complaint (D.I. 17) should be dismissed with prejudice.

Dated: June 21, 2023

BAKER & HOSTETLER LLP

*/s/  Jeffrey J. Lyons*
Jeffrey J. Lyons (#6437)
1201 North Market Street, Suite 1407
Wilmington, DE 19801
(302) 468-7088
jjlyons@bakerlaw.com

Kevin W. Kirsch (*pro hac vice*)
Andrew E. Samuels (*pro hac vice*)
Mark S. Einsiedel (*pro hac vice*)
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
(614) 228-1541
kkirsch@bakerlaw.com
asamuels@bakerlaw.com
meinsiedel@bakerlaw.com

David A. Mancino (*pro hac vice*)
Derek M. Freitas (*pro hac vice*)
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
(513) 929-3400
dmancino@bakerlaw.com
dfreitas@bakerlaw.com

Sally Y. Qin (*pro hac vice*)
1050 Connecticut Avenue, NW, Suite 1100
Washington, DC 20036
(202) 861-1500
sqin@bakerlaw.com

*Attorneys for JACS Solutions, Inc.*