**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

<table>
<tr><td>

GLOBAL TEL*LINK CORPORATION
D/B/A/ VIAPATH TECHNOLOGIES,

*Plaintiff*,

v.

JACS SOLUTIONS, INC.,

*Defendant*.

</td><td>

C.A. No. 23-00500-MN

</td></tr>
</table>

**PLAINTIFF GLOBAL TEL*LINK CORPORATION'S**
**(D/B/A/ VIAPATH TECHNOLOGIES) OPPOSITION TO**
**<u>DEFENDANT JACS SOLUTIONS, INC.'S MOTION TO DISMISS</u>**

Dated: July 5, 2023

*Of Counsel*:

Michael D. Specht (*pro hac vice pending*)
Jonathan Tuminaro (*pro hac vice pending*)
Uma Everett (*pro hac vice pending*)
Daniel S. Block (*pro hac vice pending*)
Ryan C. Richardson (*pro hac vice pending*)
Lauren Watt (*pro hac vice pending*)
STERNE, KESSLER, GOLDSTEIN
 & FOX PLLC
1100 New York Avenue, NW
Washington, DC  20005
mspecht@sternekessler.com
jtuminar@sternekessler.com
ueverett@sternekessler.com
dblock@sternekessler.com
rrichardson@sternekessler.com
lwatt@sternekessler.com

Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
swilson@ycst.com

***Attorneys for Plaintiff***
***Global Tel*Link Corporation d/b/a***
***ViaPath Technologies***

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

NATURE AND STAGE OF THE PROCEEDING.........................................................1

SUMMARY OF THE ARGUMENT ...........................................................................1

COUNTERSTATEMENT OF FACTS ........................................................................3

    A.    The '624 and '672 Patents Deploy Security Barriers to Protect Mobile
        Devices from Various Security Threats. .........................................................3

    B.    The '443 Patent's Kiosk System Simultaneously Enables Secure Access to
        Internet Media Content and Intra-Facility Videoconferencing.............................4

    C.    The '123 Patent's Control Platform Enhances Security for Electronic
        Messaging Without Diminishing Functionality........................................................5

    D.    The '292 Patent Uses Verification and Recognition Techniques to
        Enhance Security During Videoconferencing. .........................................................6

ARGUMENT ..........................................................................................................6

I.    JACS Improperly Seeks to Dismiss ViaPath's Complaint in its Entirety by
    Addressing Just Five of the Patents' 110 Claims..................................................7

II.    JACS Has Not Shown that Any Asserted Patent Claim Is Directed to Patent-
    Ineligible Subject Matter.......................................................................................8

    A.    No Claim Is Directed to an Abstract Idea. ..............................................................8

    B.    ViaPath Plausibly Alleged that the Claims Recite Inventive Concepts.................16

        1.    JACS Fails to Consider the Claims as an "Ordered Combination." ..........16

        2.    The Claims Recite Inventive Concepts....................................................16

CONCLUSION.......................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)..........................................................................6

*Adaptive Avenue Associates, Inc. v. Micro Electronics, Inc.*,
    No. 1:21-cv-01786-MN, D.I. 20 (D. Del. May 17, 2022) ......................................7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)..................................................................16, 18

*Ancora Technologies, Inc. v. HTC America, Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018)..............................................................2, 8, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................6

*Avocent Huntsville, LLC v. ZPE Systems, Inc.*,
    2018 WL 1411100 (N.D. Cal. 2018) .............................................................13

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..................................................................16, 18

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)..................................................................7

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997)....................................................................10

*ClearDoc, Inc. v. RiversideFM, Inc.*,
    2022 WL 3355960 (D. Del. 2022) ...............................................................12

*Cooperative Entertainment, Inc. v. Kollective Technology, Inc.*,
    50 F.4th 127 (Fed. Cir. 2022) ..................................................................16, 17

*CosmoKey Solutions GmbH & Co. v. Duo Security LLC*,
    15 F.4th 1091 (Fed. Cir. 2021) .................................................................19, 20

*Data Engine Technologies, LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018)...................................................................15

*Diogenes Ltd. v. DraftKings, Inc.*,
    623 F. Supp. 3d 423 (D. Del. 2022)..............................................................7

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)................................................................2, 10

*EOS Positioning Systems, Inc. v. ProStar Geocorp, Inc.*,
2023 WL 2709037 (D. Del. 2023) ...................................................................16

*Estech Systems IP, LLC v. Mitel Networks, Inc.*,
2022 WL 4477303 (E.D. Tex. 2022) ...............................................................12

*Estech Systems IP, LLC v. Mitel Netwroks, Inc.*,
2022 WL 4477724 (E.D. Tex. 2022) ...............................................................12

*F5 Network, Inc. v. Radware, Inc.*,
2016 WL 6947414 (W.D. Wash. 2016) ............................................................17

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018).......................................................................13

*Ginegar LLC v. Slack Technologies, Inc.*,
2022 WL 2064978 (N.D. Cal. 2022) ................................................................14

*HLFIP Holding, Inc. v. York County, Pennsylvania*,
600 F. Supp. 3d 526 (M.D. Pa 2022) ...............................................................14

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
607 F. Supp. 3d 464 (D. Del. 2022)..................................................................18

*Maxell, Ltd. v. Fandango Media, LLC*,
2018 WL 4502492 (C.D. Cal. 2018)..................................................................11

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010)...............................................................................6

*McRO, Inc. v. Bandai Maco Games America Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)..............................................................11, 12, 15

*Meetrix IP, LLC v. Citrix Systems, Inc.*,
2017 WL 5653950 (W.D. Tex. 2017).................................................................15

*Neustar, Inc. v. Prove, Inc.*,
No. 1:20-cv-01633-MN-CJB, D.I. 24 (D. Del. Apr. 29, 2021) ..............................7

*Osteoplastics, LLC v. ConforMIS, Inc.*,
2020 WL 12895019 (D. Del. 2020)......................................................................8

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
696 F. App'x 1014 (Fed. Cir. 2017) ..................................................................11

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
   2022 WL 794981 (Fed. Cir. 2022) ........................................................................15

*Roku, Inc. v. Almondnet, Inc.*,
   No. 1:21-cv-01035-MN, D.I. 35 (D. Del. May 10, 2022) ........................................7

*Shire Viro Pharma Inc. v. CSL Behring LLC*,
   2019 WL 3546692 (D. Del. 2019) ...........................................................................8

*SkillSurvey, Inc. v. Checkster LLC*,
   178 F. Supp. 3d 247 (E.D. Pa. 2016) .....................................................................20

*SRI International, Inc. v. Cisco Systems, Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) ...............................................................................9

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020)..............................................................................12

*Teladoc Health, Inc. v. American Well Corp.*,
   No. 1:20-cv-01377-MN, D.I. 30 (D. Del. May 7, 2021) ..........................................7

*Teleconference Systems LLC v. Metaswitch Networks Corp.*,
   2019 WL 6699820 (E.D. Tex. 2019) ......................................................................15

*TMI Solutions LLC v. Bath & Body Works Direct, Inc.*,
   2018 WL 4660370 (D. Del. 2018) ..........................................................................10

*Trident Holdings, Inc. v. HubSpot, Inc.*,
   2022 WL 823514 (D. Del. 2022) .........................................................................2, 10

*Uberfan, LLC v. Snap Inc.*,
   No. 1:21-cv-00842-MN, D.I. 24 (D. Del. Nov. 19, 2021) ........................................7

*Universal Secure Registry LLC v. Apple, Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) ..............................................................................20

*Vaporstream, Inc. v. Snap Inc.*,
   2018 WL 1116530 (C.D. Cal. 2018)........................................................................16

*Virtual Immersion Technologies LLC v. Safran S.A.*,
   No. 8:22-cv-01248-JAK-MRW, D.I. 52 (C.D. Cal. June 5, 2023)...........................13

**Statutes**

35 U.S.C. § 101 ............................................................................................................1

**INTRODUCTION**

Plaintiff ViaPath is a leading developer of innovative and impactful technologies in correctional facilities for educating incarcerated individuals, promoting rehabilitation, improving personal outcomes, and reducing recidivism. D.I. 17 ("FAC") ¶¶ 7-10. Defendant JACS, a provider of connectivity services in various industries, partnered with ViaPath to manufacture tablets covering ViaPath's patented technology. *Id.* ¶¶ 16-21. But JACS ultimately breached its contract by selling that very technology to ViaPath's competitors. *Id.* ¶¶ 22-31. ViaPath thus brought this action to address JACS's patent infringement.

Now, facing serious infringement risks, JACS tries to invalidate the patents as directed to abstract ideas. To be clear, JACS tries to invalidate not just one or two of the asserted patents, but *all five* (containing 110 claims) based on cursory arguments addressing just *a single claim* of each patent, and at the pleading stage no less. Contrary to JACS's assertions, the patents provide technological solutions to computer security problems in correctional facilities. They are patent eligible.[1]

**NATURE AND STAGE OF THE PROCEEDING**

ViaPath filed its amended complaint on May 22, 2023. D.I. 17. JACS moved to dismiss, alleging that the asserted patent claims are invalid under 35 U.S.C. § 101. D.I. 20 ("Mot.").

**SUMMARY OF THE ARGUMENT**

Managing electronic communications is always difficult, but it is especially so in correctional facilities, which present "unique" security concerns that "require additional levels of monitoring and oversight" not required in other contexts. D.I. 17-10, 1:13-21. These concerns, in

---

[1] JACS makes irrelevant and inflammatory statements about ViaPath's business, reputation, and other (unrelated) patents. ViaPath vehemently disagrees with these statements but will not respond in kind and focuses its arguments instead on the applicable legal standard.

turn, give rise to technological problems not encountered elsewhere. ViaPath's patents describe and claim novel solutions to these problems in the form of complex systems that protect different aspects of mobile devices, networks, and electronic communications. In short, the patents "[i]mprov[e] security" in computer systems by performing "a specific technique that departs from earlier approaches to solve a specific computer problem." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018). They are patent eligible.

JACS's contrary arguments are severely under-developed, some comprising just a few sentences for each patent. Further, JACS gives short shrift to the most critical aspect of the claims—i.e., improving computer security. In fact, most of JACS's cited cases do not involve computer security at all. At bottom, though, JACS's motion fails for three reasons:

- First, JACS requests dismissal of ViaPath's complaint based on an analysis of just *a single claim of each patent*. But ViaPath's complaint is not limited to those claims, and JACS has not shown that the claims are representative of the patents' 110 claims. At the very least, it would be a waste of judicial resources to address JACS's merits arguments at this juncture when some of the challenged claims might not even be asserted at trial.

- Second, at *Alice* Step 1, JACS oversimplifies the claims, reducing them to a few buzz words ("prison visitation room," "secure messaging," "secure prison visit," "controlling access to resources"). But "describing the claims at such a high level of abstraction" is improper. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). Indeed, "[c]ourts in this district regularly deny motions to dismiss" when the "proffered abstract idea fails to satisfactorily capture the substance of the claims." *Trident Holdings, Inc. v. HubSpot, Inc.*, 2022 WL 823514, at *5 n.15 (D. Del. 2022). The Court should do so here.

- Third, at *Alice* Step 2, JACS performs the wrong legal analysis. JACS plucks out components from the claims and concludes they are conventional. But the claims must be analyzed as *an ordered combination*. In any event, JACS cites nothing in the specifications supporting its argument. Nor can it—the specifications emphasize the *unconventional* nature of the inventions, as ViaPath has plausibly alleged.

Any one of these deficiencies is sufficient alone to deny JACS's motion.

In the end, JACS does not come close to carrying its burden to show by clear and convincing evidence that the claims are invalid, much less at the pleading stage, where the complaint's factual allegations must be accepted as true. The Court should deny JACS's motion.

## COUNTERSTATEMENT OF FACTS

A.     **The '624 and '672 Patents Deploy Security Barriers to Protect Mobile
       Devices from Various Security Threats.**

The '624 and '672 patents—which share a specification—address the problem of
securing mobile devices against unauthorized use. Advances in communications technology
brought about new ways for bypassing existing security. D.I. 17-12, 1:41-45, 2:33-37; FAC ¶ 50.
For example, inmates can tamper with a mobile device to access its battery, which can be used as
a weapon or tool for escape. D.I. 17-12, 2:59-3:7. Further, inmates can use a mobile device's
social-media applications to engage in unauthorized communications. *Id.* 3:8-30. Inmates can
also modify a mobile device's operating system (OS) settings to connect to unauthorized
networks, enable GPS, or use the device in some other unauthorized way. *Id.* 3:31-51.

The '624 patent solves these problems by deploying a "layered security system" within a
correctional facility, in which "security barriers" protect against different types of security
threats. *Id.* 21:39-22:7 (claim 1), 3:62-4:3; FAC ¶ 51. The claims recite several such barriers:

- A "hardware barrier" (a case that encloses the mobile device) protects the device from
  physical tampering. D.I. 17-12, 21:42-44 (claim 1), 4:28-35, 6:24-29, 9:31-10:7.

- An "application barrier stored on a memory of the mobile device" prevents unauthorized
  use of software applications. It does so by performing several steps: (1) disabling
  applications' "non-secure functions," (2) monitoring "user activity of a social
  application," (3) preventing "installation or removal of an application," (4) detecting "an
  attempt to perform an unsanctioned function of the application," and (5) preventing the
  device from "perform[ing] the unsanctioned function." *Id.* 21:45-61, 22:3-5 (claim 1).

- An "operating system (OS) barrier" secures the device's OS (and, in particular, the OS's
  "kernel"—a software module that controls the system) against tampering by detecting an
  attempt to access device settings and preventing users and applications from "access[ing]
  or alter[ing] the device settings." *Id.* 21:62-22:2, 22:6-7 (claim 1), 11:39-12:56.

- An "access control barrier" prevents mobile devices from sending or receiving data from
  an authorized Internet address. *Id.* 24:24-29 (claim 17), 7:8-22, 16:59-18:32.

- A "wireless intrusion barrier" detects and neutralizes unauthorized wireless activity. *Id.*
  24:30-42 (claim 18), 4:43-5:10, 6:58-7:7, 14:13-14:63.

By deploying various combinations of these barriers, the '624 patent's system can protect mobile devices against "multiple security threats of various kinds." *Id.* 7:38-40; FAC ¶ 51.

The '672 patent focuses specifically on a novel type of "application barrier" that performs all the application-barrier steps recited in the '624 patent claims as well as two others: (1) disabling "applications deemed non-useful by the controlled environment facility," and (2) enabling "applications deemed useful," but in a modified form "such that social media functions . . . are disabled." D.I. 17-11, 21:50-22:2 (claim 1); FAC ¶¶ 46-47.

### B.    The '443 Patent's Kiosk System Simultaneously Enables Secure Access to Internet Media Content and Intra-Facility Videoconferencing.

The '443 patent solves a security problem related to media distribution and videoconferencing technology. Correctional facilities strive to provide such services to promote rehabilitation and reduce recidivism. D.I. 17-8, 1:25-29, 2:59-61; FAC ¶¶ 9-10. But widespread access to these services leads to increased security risks and network load. D.I. 17-8, 7:58-64, 8:56-60. "[C]onventional media and communication systems" could not address these concerns nor "the unique needs and requirements" of correctional facilities. *Id.* 3:41-44; FAC ¶ 34.

The '443 patent solves this problem by providing a kiosk system offering secure access to Internet media content and intra-facility videoconferencing. D.I. 17-8, 2:61-3:1, 3:45-49; FAC ¶ 35. Claim 1, for example, recites an "access kiosk" for downloading and streaming content from "a plurality of media sources" (both real-time and on-demand) on the Internet. D.I. 17-8, 17:24-33, 17:39-51, 4:66-6:13, 6:40-8:38. Importantly, content is downloaded and encoded locally and made available on the facility's secure network—that way, inmates can consume the content without accessing the Internet. *Id.* 17:24-33. At the same time, the kiosk communicates with a "video visitation server" located elsewhere in the facility and connected to the same network. *Id.* 17:34-38, 8:39-10:57; FAC ¶ 35. In some claims, network features such as

multicast routing can be leveraged to reduce network load. *Id.* 17:61-65 (claim 5), 7:58-64. And in other claims, the network is partitioned into multiple "segments," each having a different level of protection to achieve additional flexibility. *Id.* 17:66-18:3 (claim 6), 4:4-44.

By providing secure access to media content and intra-facility video-visitation services, the claimed system offers "significant advantages" over the prior art. *Id.* 2:61-3:1; FAC ¶ 35.

### C.     The '123 Patent's Control Platform Enhances Security for Electronic Messaging Without Diminishing Functionality.

The '123 patent focuses on security measures for electronic-messaging tools. The patent recognizes that "unique monitoring and control functions" are required in correctional facilities. D.I. 17-9, 2:25-28. But prior-art electronic-messaging systems lacked "secure control methods" like the ability to monitor messaging. *Id.* 2:8-16; FAC ¶ 38.

The patent provides the best of both worlds: a system that "perform[s] the same functions as a normal electronic messaging system" *and that* enhances security by permitting administrators to perform security scans on the electronic messages. D.I. 17-9, 2:39-50. For example, claim 1 recites a "safe terminal" (a kiosk) that an inmate can use to generate an instant message, as well as a "control platform" that "convert[s] the . . . message into a format suitable for an automated security scan." D.I. 17-9, 13:48-14:7, 9:20-64. The conversion can be achieved by performing optical character recognition (OCR) and intelligent character recognition (ICR), or by converting the electronic message into a text-based message, email, voice call, or voice message. *Id.* 13:60-62, 14:15-20 (claims 4-5), 8:57-9:6, 10:62-11:13. The central platform then executes a security scan on the converted message and, based on the result, transmits the message to a remote user or flags the message for review. *Id.* 13:63-14:3; FAC ¶¶ 38-39.

The claimed system's unconventional conversion process thus permits security review on the back end without unduly limiting communication functionality on the front end. FAC ¶ 39.

- 5 -

**D.    The '292 Patent Uses Verification and Recognition Techniques to Enhance Security During Videoconferencing.**

The '292 patent addresses security issues unique to videoconferencing: (1) how to authenticate an inmate, and (2) how to prevent transmission of inappropriate content. D.I. 17-10, 2:20-24, 5:62-52. In the correctional-facility context, traditional authentication methods such as entering a PIN are ineffective, as such information can be shared, stolen, or coerced. Further, videoconferencing typically had no way to prevent transmission of inappropriate content.

The '292 patent's kiosk system solves both of these problems. FAC ¶¶ 42-43. To authenticate an inmate, the claimed system uses a "biometric verification" procedure, whereby an image captured by a kiosk's camera is compared to a pre-stored image of the inmate. D.I. 17-10, 18:52-67 (claim 1). For example, the system can use facial "landmarks" to derive a score indicating a likelihood that the captured image matches the pre-stored image. *Id.* 18:64-67 (claim 1), 10:40-59, 11:13-36. To prevent transmission of inappropriate content, the claimed system "periodically extract[s] a frame of the video and perform[s] a check to determine if a face is present in the frame," and if not, "blur[s] the video being transmitted." *Id.* 19:1-8 (claim 1), 14:53-65; FAC ¶ 43. By employing these unconventional security measures, the '292 patent provides a technological way to limit unauthorized use of videoconferencing services.

## ARGUMENT

Well-pled factual allegations in the complaint must be accepted as true and viewed in the light most favorable to ViaPath. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). Dismissal is appropriate only if a complaint does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Patent eligibility is determined in a two-step analysis. Under *Alice* Step 1, courts

"determine whether the claims at issue are directed to a patent-ineligible concept." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1366 (Fed. Cir. 2018) (cleaned up). If not, the claims are patent eligible. Under *Alice* Step 2, courts "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (cleaned up). The claims here pass both steps.

## I.     JACS IMPROPERLY SEEKS TO DISMISS VIAPATH'S COMPLAINT IN ITS ENTIRETY BY ADDRESSING JUST FIVE OF THE PATENTS' 110 CLAIMS.

JACS's motion improperly requests dismissal of ViaPath's complaint based on an analysis of just a single claim (claim 1) of each patent. As an initial matter, it is unclear whether JACS challenges all 110 claims or *only* those five claims expressly referenced in JACS's motion. *Compare* Mot. 11 ("*[A]ll claims* of ViaPath's patents are directed to patent-ineligible 'abstract ideas.'" (emphasis added)), *with id.* 20 (referring only to claim 1). Either way, its motion fails.

To the extent JACS challenges all claims, its motion fails because JACS does not show that the five claims it addresses are representative. As JACS's own cited case makes clear, a defendant's "paltry effort at showing representativeness" cannot render all claims ineligible. *Diogenes Ltd. v. DraftKings, Inc.*, 623 F. Supp. 3d 423, 429-30 (D. Del. 2022). Here, JACS makes *no* effort to show representativeness, paltry or otherwise, and its failure warrants denying its motion.[2] For the avoidance of doubt, claim 1 of each patent is *not* representative. *See, e.g.*, D.I. 17-12, 24:24-42 (claims 17 and 18 reciting "access control barrier" and "wireless intrusion barrier" not recited in claim 1); D.I. 17-11, 22:30-41 (claim 8 requiring the application barrier to determine whether over-the-air commands meet security requirements of sanctioned

---

[2] *See, e.g.*, *Roku, Inc. v. Almondnet, Inc.*, 21-cv-01035, D.I. 35 (D. Del. 2022); *Adaptive Avenue Assocs., Inc. v. Micro Elecs., Inc.*, 21-cv-01786, D.I. 20 (D. Del. 2022); *Uberfan, LLC v. Snap Inc.*, 21-cv-00842, D.I. 24 (D. Del. 2021); *Teladoc Health, Inc. v. Am. Well Corp.*, 20-cv-01377, D.I. 30 (D. Del. 2021); *Neustar, Inc. v. Prove, Inc.*, 20-cv-01633, D.I. 24 (D. Del. 2021).

applications); D.I. 17-8, 17:61-65 (claim 5 reciting multicast routing), 17:66-18:3 (claim 6

reciting "segmented" network); D.I. 17-9, 14:15-20 (claims 4-5 reciting converting messages to

voice mail); D.I. 17-10, 19:37-45 (claim 6 reciting kiosk accepting incoming call).

     To the extent JACS limits its motion to only claim 1 of each patent, the motion still fails

because the requested relief (dismissal of the complaint) is too broad. The complaint is not

limited to asserting only those five claims. Rather, it alleges that JACS has infringed "*at least*

*one claim*" of each patent, *including but not limited to* claim 1. FAC ¶¶ 55, 79, 103, 127, 151

(emphasis added). The Delaware Default Standard requires ViaPath to provide detailed

infringement contentions for claims ViaPath alleges are infringed, Del. Def. Std. ¶ 4(c), which

"obviate[s] the need" to expressly recite all asserted claims in the complaint, *Shire Viro Pharma*

*Inc. v. CSL Behring LLC*, 2019 WL 3546692, at *6 (D. Del. 2019). But all claims are asserted

here, and JACS's challenge to only five claims does not justify dismissal of ViaPath's complaint.

     Regardless, judicial economy counsels in favor of denying JACS's motion. ViaPath is

entitled to proceed on the unchallenged claims regardless of the outcome here, and some or all of

the challenged claims might not even "be in issue at later stages of the case." *Osteoplastics, LLC*

*v. ConforMIS, Inc.*, 2020 WL 12895019, at *1 (D. Del. 2020). It would "not [be] an efficient use

of the Court's time" to address only a handful of claims at this juncture. *Id.* Accordingly, JACS's

motion should be denied without ever reaching the merits.

## II.    JACS HAS NOT SHOWN THAT ANY ASSERTED PATENT CLAIM IS DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER.

### A.    No Claim Is Directed to an Abstract Idea.

     Federal Circuit precedent is clear: "Improving security" in computers is "non-abstract" if

"done by a specific technique that departs from earlier approaches to solve a specific computer

problem." *Ancora*, 908 F.3d at 1348. That is exactly what the patent claims do here—they recite

specific techniques for solving computer-security problems in correctional facilities.

**'624 and '672 Patents:** The '624 patent is directed to a layered system that deploys "security barriers" to protect mobile devices from "multiple security threats of various kinds." D.I. 17-12, 7:38-40, 19:43-49. Claim 1, for example, recites a "hardware barrier" that protects the mobile device's power source and circuitry, as well as an "application barrier" that disables certain software-application functionality, monitor's user activity, prevents installation or removal of applications, and detects attempts to perform unauthorized functions. *Id.* 21:42-61, 22:3-5. The claim also recites an "operating system (OS) barrier" that protects the device's OS kernel from modification. *Id.* 21:62-22:2, 22:6-7. Other claims recite additional barriers (access-point and network barriers) designed to detect and neutralize network intrusions. *Id.* 24:24-42 (claims 17-18). The '672 patent claims focus on a specific type of application barrier—one that enables useful applications while disabling functionalities that are most likely to present security risks at correctional facilities. D.I. 17-11, 21:50-22:2 (claim 1).

The patents explain that these solutions are rooted in computer technology: "advances in communications technologies" gave rise to the "security risks" the inventions solve. D.I. 17-12, 1:41-45, 2:33-37, 4:28-5:10, 6:29-7:22, 10:47-12:56. The claims are thus similar to those upheld by the Federal Circuit. In *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295 (Fed. Cir. 2019), for example, the claims were drawn to methods for reducing a computer "network's susceptibility to attacks from hackers, malware, and other security threats" by deploying network monitors "that each analyze specific types of data on the network." *Id.* at 1300-03. Relying on specification passages stating that the claimed invention sought to protect security vulnerabilities created by the advent of network technology, the court found the claims eligible. *Id.* at 1303-04. Likewise, in *Ancora*, the claims were drawn to a method for "restricting software operation" by storing an

- 9 -

otherwise conventional data structure (license verification data) in an unconventional place (the computer's BIOS memory, which is more difficult to hack than other types of computer memory). 908 F.3d at 1344-45. This, in turn, led to "improv[ed] security." *Id.* at 1348. The Federal Circuit held the claims eligible because they solved a particular computer problem: protecting "against a computer's unauthorized use of a program." *Id.* at 1348-49.

As in *SRI* and *Ancora*, the '624 and '672 patents solve a problem created by advances in computer technology, and, also like *SRI*, the '624 patent deploys a combination of components (security barriers) as part of its solution. As in *Ancora*, moreover, the '624 and '672 patents improve mobile-device security by restricting software operation, and the '624 patent does so in part by storing a barrier structure in the kernel of the OS, which is more difficult to modify than other parts of the device, also like *Ancora*. In fact, the '624 patent claims go even further than those in *Ancora* because they *also* protect against unauthorized use of the mobile device *itself* (the power source within the device and the device's OS settings).

JACS overgeneralizes the claims, asserting that they are directed to the abstract idea of "controlling access to resources," akin to a parent monitoring her child's online activity. Mot. 18, 20.[3] As an initial matter, JACS's position that the claimed "hardware barrier" (a protective case) is abstract strains credulity. In any event, JACS characterizes the claims at an inappropriately "high level of abstraction and untethered from the language of the claims." *Enfish*, 822 F.3d at 1337. This alone warrants denying JACS's motion. *Trident*, 2022 WL 823514, at *5 n.15 (noting

---

[3] Tellingly, rather than citing anything in the patents to support that assertion, JACS relies on extra-record articles and websites (both here and for other patents as well). Mot. 12-13, 16, 18-19. JACS's reliance on such materials is improper, as a "court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Fact. Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *TMI Sol'ns LLC v. Bath & Body Works Direct, Inc.*, 2018 WL 4660370, at *8 n.6 (D. Del. 2018) (Stark, C.J.) (courts "cannot consider" evidence "outside the complaint, including online and newspaper articles," when addressing motions to dismiss).

that courts have denied "motions to dismiss based on patent ineligibility . . . when the defendant's proffered abstract idea fails to satisfactorily capture the substance of the claims").

The claimed system does not merely "control[] access to resources"; it combines security barriers to combat threats (e.g., stealing a mobile device's battery to use as a weapon or tool, or tampering with OS settings to connect to unauthorized networks) unique to computers in correctional-facility settings. And, to the extent JACS focuses solely on the application barrier to arrive at its articulation of the alleged abstract idea, JACS errs by failing to consider the claims "in their entirety" and "as a whole" to determine what they are "directed to." *McRO, Inc. v. Bandai Maco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016).

Further, JACS's cases are inapposite, as each involves claims that restrict user access to online content in business-related transactions. *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017-18 (Fed. Cir. 2017) (claims to secure-transaction system that limited access to online resources based on whether a mobile-device user's identity had been verified); *Maxell, Ltd. v. Fandango Media, LLC*, 2018 WL 4502492, at *1, *4 (C.D. Cal. 2018) (claims to online video-rental services that addressed copyright issues by disabling access to rented videos after a predefined period of time). Neither case has anything to do with protecting a mobile device against security threats using concrete and specific security barriers.

**'443 Patent:** The '443 patent is directed to a kiosk system that enables secure access to Internet media content and intra-facility videoconferencing. Claim 1, for example, recites an "access kiosk" that allows inmates to download and stream media content from "a plurality of media sources" on the Internet, while, at the same time, communicate with a "video visitation server" in the facility. D.I. 17-8, 17:24-51. The downloaded content is stored and encoded locally and made available on the facility's network so as to avoid having inmates access the Internet.

*Id.* 17:24-33. Because the visitation server and media content are available on the same secure network, features such as multicast routing can be leveraged to reduce network load. *Id.* 17:61-65 (claim 5), 7:58-64. In some claims, moreover, the network is partitioned into multiple "segments," each having a different level of protection. *Id.* 17:66-18:3 (claim 6), 4:4-44.

The claimed system provides "significant advantages" over prior-art systems, which could not "address the unique needs and requirements of a system designed for controlled environments." *Id.* 2:61-3:1, 3:41-44. The claims are thus similar to those upheld by courts involving technology for facilitating media distribution. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1295-96 (Fed. Cir. 2020) (claims to "multimedia security in a data network" allowing for "transmission of secure information"); *Estech Sys. IP, LLC v. Mitel Net., Inc.*, 2022 WL 4477724, at *3 (E.D. Tex. 2022) (holding that prioritization of multimedia data transmission "is a problem specifically arising in the realm of data networks"), *adopted*, 2022 WL 4477303.

Rather than analyzing claim 1 in its entirety, JACS dissects it into pieces. JACS characterizes elements involving the kiosk communicating with the video-visitation server as akin to "a prison visitation room," and characterizes elements involving the kiosk downloading content from sources as akin to "deliver[ing] media content." Mot. 2, 12-14. JACS's piecemeal approach is improper—the claims must be analyzed "as a whole." *McRO*, 837 F.3d at 1312. JACS has not shown that the *combination* of video-visitation capabilities and media distribution over a *single* network and accessed by a *single* kiosk is abstract. Nor can it—conventional systems lacked the security control the claimed invention achieves. D.I. 17-8, 2:61-3:1, 3:41-44.

Notably, neither of JACS's cited cases addresses the combination of multimedia distribution and videoconferencing, let alone in a manner that reduces security risks and network load. *ClearDoc, Inc. v. RiversideFM, Inc.*, 2022 WL 3355960, at *1 (D. Del. 2022) (claims to a

method for recording and storing a livestream taken by another individual's mobile device); *Virtual Immersion Techs. LLC v. Safran S.A.*, 22-1248, D.I. 52, at 1-2 (C.D. Cal. 2023) (claims to virtual-reality computer system that allowed participants to interact with live performers).

**'123 Patent:** The '123 patent is directed to a control platform that enhances security for electronic messaging without diminishing functionality. Claim 1 recites a "safe terminal" that an inmate may use to generate an electronic message and a "control platform" that converts the message "into a format suitable for an automated security scan," by, for example, converting the message into a text-based message, email, voice call, or voice message. D.I. 17-9, 13:48-14:7 (claim 1), 14:15-20 (claims 4-5), 8:57-9:6, 10:62-11:13. The claimed system permits security screening on the back end while preserving functionality on the front end. As a result, the invention achieves better security while leaving the user experience unaffected, thus improving upon the prior art, which lacked "secure control" altogether. *Id.* 2:8-16.

The claims are thus similar to those that courts have upheld involving novel technology for monitoring and scanning electronic data to detect security threats. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304-05 (Fed. Cir. 2018) (claims to a "new kind of file that enables a computer security system" to scan downloadables for viruses); *Avocent Huntsville, LLC v. ZPE Sys., Inc.*, 2018 WL 1411100, at *7 (N.D. Cal. 2018) (claims that "convert[ed] different types of management data into a common management data format, and communicat[ed] that common management data to a network management system that enables remote monitoring").

JACS declares that the claims are merely directed to "secure messaging." Mot. 2, 14-15. But the claims recite a *particular system* for enabling an inmate to send secure electronic messages by converting them into a reviewable format. Notably, JACS does not even address the converting step even though the Examiner relied on it when allowing the claims. FAC ¶ 40.

- 13 -

Further, the specification explains (and the complaint emphasizes) that the converting step "prevent[s] inmates from exploiting any loop-holes" in traditional electronic- and voice-messaging systems. D.I. 17-9, 2:32-35; FAC ¶¶ 38-39.

Again, JACS's cases are inapposite. The claims in *Ginegar LLC v. Slack Techs., Inc.*, 2022 WL 2064978 (N.D. Cal. 2022), were drawn to a method for processing instant messages based on "handling rules" designed to promote user convenience. *Id.* at *2, 6-7. The claims in *HLFIP Holding, Inc. v. York Cnty., Pa.*, 600 F. Supp. 3d 526 (M.D. Pa 2022), were drawn to methods for "eliminating contraband in postal mail" by making electronic copies (similar to how facilities had made photocopies in the past). *Id.* at 534-35. Unlike *Ginegar*, the '123 patent claims facilitate technological security goals (rather than user-convenience goals). And unlike *HLFIP*, the '123 patent claims address security shortcomings for processing *electronic messages* (rather than paper mail). Further, the claimed system does not simply automate a prior-art manual process—to the contrary, the specification emphasizes that prior-art electronic-messaging systems lacked sufficient "secure control methods." D.I. 17-9, 2:8-16; FAC ¶ 38.

**'292 Patent:** Finally, the '292 patent is directed to specific authentication and monitoring techniques for enhancing security during videoconferencing. Claim 1, for example, recites a "biometric verification" procedure that authenticates an inmate videoconferencing with an individual outside the correctional facility by "us[ing] facial 'landmarks' generated by mathematical formulas to present a score which indicates a likelihood that the captured image matches the pre-stored image." D.I. 17-10, 18:64-67, 11:29-32. The claim also recites a facial recognition technique that "periodically extract[s] a frame of the video and perform[s] a check to determine if a face is present," and, if not, "blur[s] the video being transmitted." *Id.* 19:1-8.

These security features improve videoconferencing systems in ways that were "not

required" in the prior art. *Id.* 1:19-21; FAC ¶¶ 42-43. They are thus analogous to the type of improvements that courts have held to be non-abstract. *McRO*, 837 F.3d at 1314-15 (claims to methods for modeling animated characters' facial expressions by using "limited mathematical rules" rather than "subjective determinations"); *Teleconf. Sys. LLC v. Metaswitch Net. Corp.*, 2019 WL 6699820, at *1, 4 (E.D. Tex. 2019) (denying motion to dismiss challenging claims to "improvements over previous videoconferencing systems"); *Meetrix IP, LLC v. Citrix Sys., Inc.* 2017 WL 5653950, at *3-4 (W.D. Tex. 2017) (denying motion to dismiss challenging claims reciting unconventional techniques for authenticating videoconferencing users).

JACS's characterization of the claims as directed to "a secure prison visit," Mot. 2, 16-17, is wildly over-generalized.[4] In any event, "[i]t is not enough[] . . . to merely trace the invention to some real-world analogy." *Data Engine Techs., LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018). Rather, Step 1 asks whether "the claim is 'directed to' the abstract idea." *Id.* Here, the '292 patent claims facilitate secure videoconferencing by employing specific techniques for correctional facilities—they do not merely "automate" the idea of conducting an abstract idea, as in JACS's cited case. *Repifi Vendor Log., Inc. v. IntelliCentrics, Inc.*, 2022 WL 794981, at *1-2 (Fed. Cir. 2022) (claims to automated "credentialing process" using "electronic badges" rather than physical badges). Further, the claimed techniques are specific to virtual interactions. In traditional visitation settings, it is easy to ensure that an inmate communicating with a visitor is in fact the inmate that the visitor wishes to see. But that is not the case for videoconferences, where reliable and secure user authentication is technologically challenging. Likewise, in traditional settings, a security guard can stop a visitor from acting inappropriately.

---

[4] This is the *same* abstract idea to which JACS contends the '443 patent is directed ("prison visitation room"). That JACS contends two patents having different claims and specifications are directed to the same abstract idea casts doubt on the accuracy of JACS's characterizations.

Not so for virtual visitations, where the inmate and visitor are in different locations.

**B.     ViaPath Plausibly Alleged that the Claims Recite Inventive Concepts.**

**1.     JACS Fails to Consider the Claims as an "Ordered Combination."**

JACS's Step 2 analysis is also flawed. JACS cherry picks certain components from each claim (e.g., "computer," "processor," "display"), declares that they are conventional, and then concludes that the claims lack an inventive concept merely because "no new technology is claimed." Mot. 13, 15, 17. But "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Rather, the claims must be considered "as *an ordered combination*." *Id.* at 1347 (emphasis added). Thus, even a claim that recites generic components is patent eligible if it "requires that the[] generic components operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016).

JACS makes no attempt to analyze the claim elements as an "ordered combination." That failure of proof provides yet *another* basis for denying JACS's motion. *Vaporstream, Inc. v. Snap Inc.*, 2018 WL 1116530, at *6 (C.D. Cal. 2018) (denying motion for summary judgment of invalidity where defendant "failed to conduct a proper ordered combination analysis" and instead simply broke "apart the asserted claims into their individual elements").

**2.     The Claims Recite Inventive Concepts.**

In any event, JACS's Step 2 arguments fail on their own terms. A complaint need only plausibly allege that the claims contain an inventive concept. *Cooperative Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 135-36 (Fed. Cir. 2022). ViaPath clears that threshold here, and, at most, JACS's contrary arguments create factual disputes that "preclude[] dismissal." *EOS Pos. Sys., Inc. v. ProStar Geocorp, Inc.*, 2023 WL 2709037, at *6 (D. Del. 2023).

- 16 -

**'624 and '672 Patents:** The '624 patent claims recite an ordered combination of elements ("security barriers" protecting different aspects of a mobile device's hardware and software) that provide unprecedented security for mobile devices. D.I. 17-12, 21:39-22:7. Likewise, the '672 patent claims recite a unique "application barrier" that performs concrete steps to prevent unauthorized use of software applications. D.I. 17-11, 21:50-22:2. Neither of these solutions, nor the problems they solve, are conventional—they are of recent vintage, triggered by "advances in communications technologies." D.I. 17-12, 1:41-45, 2:33-37. At the very least, ViaPath plausibly alleged as much. FAC ¶¶ 46-47, 50-52; *Cooperative*, 50 F.4th at 135-36; *F5 Network, Inc. v. Radware, Inc.*, 2016 WL 6947414, at *6 (W.D. Wash. 2016).

JACS baldly asserts that the claimed security barriers are "generic." Mot. 20. But JACS cites nothing in the record—and certainly nothing in the patents themselves—to support such an assertion. Nor can it, as the patents explain that the claimed solutions protect against "multiple security threats of various kinds," which prior-art systems were unable to do. D.I. 17-12, 7:38-40, 19:43-49. And notably, JACS nowhere addresses the "hardware barrier" and "OS barrier" recited in the '624 patent claims, much less how those barriers interact with each other.

**'443 Patent:** These claims recite an ordered combination of elements (an "access kiosk" communicating with a "video visitation server" *and* securely obtaining media content from Internet media sources) that offer access to media and communications services while providing security protection. D.I. 17-8, 17:20-51. The patent makes clear that the claimed solution offers "significant advantages" over legacy systems, *id.* 2:61-3:1, and the complaint alleges that the claimed solution "leverage[s] core network features" in an unconventional way, FAC ¶ 35. This is more than sufficient at the pleading stage. *Cooperative*, 50 F.4th at 135-36.

JACS asserts (at 13-14) that the claims do not support ViaPath's allegation that the

- 17 -

invention "leverage[s] core network features." But by permitting the kiosk and video visitation-server to communicate on the same network, and by making Internet content available on that network, the claims *necessarily* leverage the network's features. Further, certain claims recite network features such as multicast routing that can be leveraged to reduce network load. D.I. 17-8, 17:61-65 (claim 5), 7:58-64. JACS also asserts (at 14) that the claims do not explain "how" the components are configured. But the claims recite specific components (e.g., servers, kiosks, etc.) performing specific tasks (e.g., storing and encoding data, etc.), which is sufficient. *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 485 (D. Del. 2022) (Bryson, J.) ("The recited components perform a function and achieve a result, but what is claimed is a particular arrangement of particular components, not the abstract idea of transmitting messages through an intermediary, regardless of how that result might be achieved."). The specification, moreover, provides details about how the components achieve the claimed steps, D.I. 17-8, 2:61-3:1, 3:45-49, 6:40-10:57, which likewise undermines JACS's arguments, *Amdocs*, 841 F.3d at 1300-02 (upholding claims to general "computer code for" receiving, correlating, and using information, where the specification provided details about how the steps were unconventional).

**'123 Patent:** The '123 patent claims recite an ordered combination of elements (a "safe terminal" sending electronic messages to a "control platform" that "convert[s]" the messages into a format suitable for a security scan) that achieve "secure control methods" lacking in the prior art. D.I. 17-9, 2:8-16. Notably, the "converting" step distinguished the claims from the prior art during prosecution. FAC ¶ 40. The claims are analogous to those in *BASCOM*, which were drawn to a system for filtering Internet content that combined "the benefits of a filter on a local computer" (more flexibility) with "the benefits of a filter on the ISP server" (greater security). 827 F.3d at 1349-51. Similarly here, the '123 patent claims combine the benefits of conventional

- 18 -

electronic-messaging systems (superior functionality) with the benefits of access controls (greater security). At the very least, ViaPath plausibly alleged as much. FAC ¶¶38-40.

JACS asserts that the patent "admits" electronic-messaging systems were known and that the claimed system "should be able to perform the same functions as a normal electronic messaging system." Mot. 15 (quoting D.I. 17-9, 2:8-10, 2:40-41). But the quoted passages do *not* equate the claimed invention to conventional systems—rather, the passages emphasize that the invention performs security scans (unlike conventional systems), *while still* providing all of the same functions as conventional systems. Thus, far from supporting JACS, the cited passage "makes clear that the claimed steps . . . yield certain advantages over the described prior art." *CosmoKey Sol'ns GmbH & Co. v. Duo Sec. LLC*, 15 F.4th 1091, 1098 (Fed. Cir. 2021).

JACS also asserts (at 15) that the claimed "control platform" is "depicted as [a] black box[.]" But the claims themselves recite the control platform interacting with the kiosk to perform a tangible step—i.e., converting an instant message into a format on which a security scan can be performed. The specification likewise describes the control platform in considerable detail. *See, e.g.*, D.I. 17-9, 8:40-9:6. To the extent JACS alleges that the "control platform's" meaning is unclear, that at most suggests claim construction may be required, which further undermines JACS's assertion that patent eligibility can be resolved at this juncture.

**'292 Patent:** Finally, the '292 patent claims recite an ordered combination of elements (a correctional-facility "kiosk" performing "a biometric verification" to authenticate inmates and periodic facial recognition to "blur the video" if a face is not detected) that provide unprecedented security. ViaPath plausibly alleged that this is an inventive concept. FAC ¶¶ 42-44. Indeed, the Examiner found that the prior art lacked an ability to provide secure videoconferencing in this manner, *id.* ¶ 44, which undermines JACS's contention that the claims

- 19 -

are conventional. At bottom, the claims provide an easily-implementable solution for enhancing security in videoconferencing in an unconventional way. *Compare CosmoKey*, 15 F.4th at 1093, 1098 (upholding claims to a method of "authenticating a user to a transaction at a terminal" that "increases security"), *with Univ. Secure Registry LLC v. Apple, Inc.*, 10 F.4th 1342, 1353 (Fed. Cir. 2021) (invalidating claims to system for facilitating financial transactions where "nothing in the specification" suggested that the claimed "conventional authentication techniques achieve[] more than the expected sum of the security provided by each technique").

Ignoring the full claim scope, JACS asserts that "blurring is just another way of saying that if the visitation rules are violated, then the visit is over," which JACS says existed in the "pre-Internet world." Mot. 17. JACS cites nothing in the record to support such an assertion. In any event, the system does not terminate the videoconference if a rule is violated; rather, the system *continues* the videoconference and blurs the image *so long as* a face is not detected. D.I. 17-10, 19:1-8. Such flexibility can *only* be achieved in a post-Internet world, in contrast to JACS's cited case. *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 258 (E.D. Pa. 2016) (using a computer to perform "the abstract concept of reference checking" a job applicant).

## CONCLUSION

In the end, JACS's motion fails because it seeks to invalidate five patents (containing 110 claims) based on an analysis of just one claim from each patent. Regardless, JACS's merits arguments also fail. ViaPath's patents claim specific components (e.g., security barriers, control platforms, kiosks, etc.) performing specific functions (e.g., disabling portions of installed applications, converting electronic messages into a format appropriate for security review) in a particular environment (correctional facilities) to solve specific computer-security problems not arising elsewhere. They thus do not preempt all (or even most) ways of performing the abstract ideas to which JACS alleges the claims are directed. The Court should deny JACS's motion.

Dated: July 5, 2023

*Of Counsel*:

Michael D. Specht (*pro hac vice*)
Jonathan Tuminaro (*pro hac vice*)
Uma Everett (*pro hac vice*)
Daniel S. Block (*pro hac vice*)
Ryan C. Richardson (*pro hac vice*)
Lauren Watt (*pro hac vice*)
STERNE, KESSLER, GOLDSTEIN
   & FOX PLLC
1100 New York Avenue, NW
Washington, DC 20005
mspecht@sternekessler.com
jtuminar@sternekessler.com
ueverett@sternekessler.com
dblock@sternekessler.com
rrichardson@sternekessler.com
lwatt@sternekessler.com

/s/ Adam W. Poff
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
swilson@ycst.com

***Attorneys for Plaintiff***
***Global Tel*Link Corporation d/b/a***
***ViaPath Technologies***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 5, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY E-MAIL:**

Jeffrey J. Lyons
BAKER & HOSTETLER LLP
1201 North Market Street, Suite 1407
Wilmington, DE 19801
jjlyons@bakerlaw.com

David A. Mancino
Derek M. Freitas
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
dmancino@bakerlaw.com
dfreitas@bakerlaw.com

Kevin W. Kirsch
Andrew E. Samuels
Mark S. Einsiedel
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
kkirsch@bakerlaw.com
asamuels@bakerlaw.com
meinsiedel@bakerlaw.com

Sally Yuanyuan Qin
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW, Suite 1100
Washington, DC 20036
sqin@bakerlaw.com

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
swilson@ycst.com

*Attorneys for Plaintiff*
*Global Tel*Link Corporation d/b/a*
*ViaPath Technologies*